# EXHIBIT 2

| | |
|---|---|
| IN THE UNITED STATES BANKRUPTCY COURT FOR THE DISTRICT OF DELAWARE | |
| In re<br><br>The Hertz Corporation, *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 20-11218 (MFW)<br><br>(Jointly Administered)<br><br>Re: D.I. 1038 |

## DECLARATION OF NICOLE STEVENS IN SUPPORT OF FALSE POLICE REPORT PLAINTIFFS' MOTION FOR RELIEF FROM STAY

1. My name is Nicole Stevens. I submit this Declaration in support of False Police Report Plaintiffs' Motion for Relief from Stay and in opposition to Debtors' Motion for Preliminary Injunction. I have personal knowledge of the facts stated in this declaration, which were alleged in my complaint against Hertz, and I can testify competently to them if called upon to do so:

2. Nicole Stevens is a citizen of Texas and was prosecuted in Harris County, Texas.

3. She is a 38-year old mother of 10 children (plus a nephew she has cared for since he was an infant).

4. On April 18, 2018, Plaintiff Nicole Stevens rented a car from the Hertz location in Jersey Village, TX to help with childcare needs. She was a Hertz Gold Club member.

---

[1] The last four digits of the Hertz Corporation's tax identification number are 8568. The location of the debtors' service address is 8501 Williams Road. Estero. Fl 33928. Due to the large number of debtors in these chapter 11 cases, for which join administration for procedural purposes has been requested, a complete list of the debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the debtors' claims and noticing agent at https://restructing.primeclerk.com/hertz.

5. She called the 1-800 Hertz number for extensions and extended the rental several times.

6. At some point in late May or early June 2018, Ms. Stevens called the Hertz 1-800 number for roadside assistance, and told Hertz to pick up the car because a tire on the car had hit a curb. At this point, Ms. Stevens was in Chicago.

7. Around the time of this call she spoke with an Arab woman in the billing department who confirmed that that Hertz was going to be towed to the Hertz location at O'Hare airport, and from there taken back to the Jersey Village location.

8. Ms. Stevens then continued traveling up to Minnesota where she has roots. She was told by someone in Chicago that the car had been towed.

9. A Hertz invoice shows that she paid a total of $1,101.25 for the rental to Hertz, and that her amount due to Hertz is "0.00".

10. She moved on with her life and continued taking care of her large family.

11. However, Hertz and its employee, manager Christopher Green, had called the police on June 27, 2018, and accused Ms. Stevens of felony theft of a vehicle.

12. Hertz and Green falsely told the police that Stevens "had rented a vehicle and never returned it"—despite the fact that Stevens had called Hertz to pick up the vehicle. Hertz also alleged that the vehicle's return date was April 25, 2018, and that they never were able to contact her after her initial rental. None of this was true.

13. The false police report also claimed that she had taken the vehicle "with the intent to deprive the Complainant of the property." The theft report also claimed that Stevens owed $1101.25 to Hertz.

14. This was bizarre because Stevens had extended the rental with the corporate phone number, and repeatedly spoke with both corporate HQ employees and Jersey Village, TX branch employees after April 25, 2018.

15. At no point were the misrepresentations and omissions in the police report corrected or withdrawn by Defendants.

16. Stevens was pulled over in October 2018 in Minnesota for wearing her seatbelt incorrectly. When the police officer ran her license, he returned to the car with his hand on his gun, said she had a warrant out for theft, and demanded that she get out of the vehicle. She responded, "I have 10 kids, I haven't stolen anything." He asked again, she got out, and he arrested her and chained her to a fence—she was totally baffled by what was happening.

17. Starting with her arrest, Plaintiff began a one-month hellish journey being transported in prison vans from Minnesota to Texas.

18. Conditions were gross and humiliating and included repeated strip searches, cells the size of dog kennels, and being forced to wear the same panties and bra for one week with no changing or washing. Female inmates with prurient interests in mind placed their hands on her and attempted to sexually assault her.

19. When the jail finally began to transfer her to Texas, it was not a straight-shot 16-hour drive. Instead, it was a circuitous route to 5 different jails all over the country. She and the other inmates were shackled on their wrists and ankles. Any movement tightened the cuffs which dug into her skin and bone. She was stuffed in the front of the van with two other inmates and was forced to sleep sitting up.

20. Upon arriving in Arkansas, she was then jailed there for ten days while she waited for further transfer to Texas. The Arkansas jail was awful. At one point, the first floor of the jail flooded with raw sewage forcing Stevens and the fellow inmates to sit on tables.

21. After her stay in Arkansas she took a prison bus (a Greyhound type bus with cages installed for each seat) to a prison near the Rio Grande, and was then put in another prison van and transported for 5 to 10 hours at night to the Harris County lockup.

22. She then sat in prison for three more days before being released.

23. Despite the fact that Hertz knew she had told Hertz to pick up the car, she was told by the court personnel when she showed up to multiple hearings from November 2018 to June 2019 that the Hertz employee who reported her, Green, was the one who had to withdraw the allegation. This was never done by Green, Hertz, or anyone else.

24. At no point was there probable cause to continue with the prosecution. In addition to having never been filed, the report and prosecution should have been withdrawn immediately.

25. It was only in June 2019, after paying for an attorney and attending several court hearings (which were repeatedly continued), that she learned that the prosecutor had dismissed her case.

26. The dismissal stated: "no probable cause exists at this time to believe the defendant committed the offense". In fact, there was no probable cause for Hertz to report or prosecute Stevens.

27. Stevens suffered severe mental and emotional damages, which included miscarrying.

I declare under the penalty of perjury of the United States of America that the foregoing is true and correct.

Dated: September 6th, 2020       /s/ Nicole Stevens
                                 Declarant

Dated: September 6th, 2020     5    /s/ Nicole Stevens
                                    Declarant