AOC-E-035 WarCode: WA
Rev. 01-08
Commonwealth of Kentucky
Court of Justice
RCr 2.05; RCr2.06



| | |
|---|---|
| Case Number: | |
| County: | JEFFERSON |
| Court: | DISTRICT COURT |
| Warrant Number: | E05610002172657 |
| Generated: | 5/5/2015  7:14:21AM |



**Warrant of Arrest**
**Warrant**

Page 1 of 1

*Plaintiff.* **COMMONWEALTH VS.** Tracie Dunkin *Defendant*

**TO ALL PEACE OFFICERS IN THE COMMONWEALTH OF KENTUCKY.** You are hereby commanded to arrest:

Tracie Dunkin

| | |
|---|---|
| Gender | |
| Race | |
| Date of Birth | |
| Height | |
| Weight | |
| Operator License# | |

and bring him/her forthwith before JEFFERSON COUNTY - DISTRICT COURT.

[X]  to answer charges that he/she committed the offense(s) of:

| Chg# | UOR Code | KRS | Type | Description | ASCF | Counts | Disp Dt | Disp |
|---|---|---|---|---|---|---|---|---|
| 1 | 23231 | 514.070 | F | THEFT BY FAILURE TO MAKE REQUIRED DISP OF PROP | N/A | 1 | | |

against the peace and dignity of the commonwealth; or

[ ]  because:

if the court is not in session, you will deliver him/her to the jailer of          JEFFERSON COUNTY - DISTRICT COURT

[ ]  The defendant may post bail in the amount of $ , secured by

[ ]  the defendant may not give bail.

## Complaint

The Affiant, Brandi Holland, states that  on 3/29/2015 at 22:51 in JEFFERSON County, Kentucky, the above named defendant unlawfully: and until present, deft failed to return a 2012 Nissan Versa that was rented from Thrifty Car Rental. Deft rented the vehicle on 3/20/2015 and did sign a rental agreement. Deft was to make the required payment and/or return the vehicle. Deft failed to do so. Deft ignored letters and phone calls demanding the car back.  Attempts to locate deft and/or recover the vehicle has been unsuccessful.  Value of vehicle $12,987.00

EXECUTION

Served By: HARDIN, RADCLIFF POLICE DEPARTMENT, Rossell, Wyatt, HARDIN-COUNTY JAIL ELIZABETHTOWN-KY047013C. on 05/31/2015

Electronically signed by District Court Judge A.Haynie on 5/4/2015 at  5:25:10PM.

Date printed:    Tuesday, May 5, 2015

Agency Local Code:
A E-RAW
Case ID: 151103380
Control No.: 17090690

# KYIBRS REPORT

## COMMONWEALTH OF KENTUCKY

KSP RECORDS

**ADMINISTRATIVE**

| AGENCY ORI/NAME | **0566900 LOUISVILLE AIRPORT POLICE** | | | INCIDENT NUMBER | **KY P15-0148** | |
|---|---|---|---|---|---|---|

| INCIDENT DATE/TIME | EXACT/ESTIMATE | REPORT DATE | RECEIVED | DISPATCHED | ARRIVED | CLEARED |
|---|---|---|---|---|---|---|
| 05/13/2015 17:40 TO 05/13/2015 17:41 | **ESTIMATE** | 05/13/2015 | 17:26 | 17:28 | 17:28 | 17:40 |

| REPORTED BY: **HOLLAND-KNOX, BRANDI** | HOW REPORTED |
|---|---|

| LICENSE/ID STATE: | LICENSE/ID NUMBER: |
|---|---|

| ADDRESS: **3700 CRITTENDEN DR** | | | |
|---|---|---|---|

| CITY: **LOUISVILLE** | STATE: **KY** | ZIP CODE: **40209** | PHONE NUMBER: **(502) 403-1293** |
|---|---|---|---|

| EXACT LOCATION OF OFFENSE | **3700 CRITTENDEN DR** | | |
|---|---|---|---|
| | ADDRESS: **3700 CRITTENDEN DR** | | SECTOR NO: |
| | CITY: **LOUISVILLE** | STATE: **KY** | ZIP CODE: **40209** |
| | COUNTY: **JEFFERSON** | LATITUDE **38 DEG 11.511 MIN** | LONGITUDE **85 DEG 45.055 MIN** |

**OFFENSE DATA**

| SEQUENCE # **1** OF **1** | LOCATION TYPE: **AIR/BUS/TRAIN TERMINAL** | TYPE WEAPON/FORCE INVOLVED | CRIMINAL ACTIVITY/GANG IFO |
|---|---|---|---|

OFFENSE DESCRIPTION: **TBUT OR DISP AUTO - $10,000 OR MORE BUT U/$1,000,000**

| OFFENSE CODE: **24044** | ASCF CODE: **0** | KRS CODE: **514.030** | CLASS: **C** | DEGREE: **F** | COUNTS: **1** |
|---|---|---|---|---|---|

| BIAS MOTIVATION: **UNKNOWN (MOTIVATION NOT KNOWN)** | METHOD ENTRY: | NUMBER PREMISES: |
|---|---|---|

| SCHOOL NAME: | SCHOOL TYPE: | CAMPUS? |
|---|---|---|

| OFFENDER SUSPECTED OF USING: **NOT APPLICABLE** | COURT ORDER TYPE: |
|---|---|

| SEQUENCE # OF | LOCATION TYPE: | TYPE WEAPON/FORCE INVOLVED | CRIMINAL ACTIVITY/GANG IFO |
|---|---|---|---|

OFFENSE DESCRIPTION:

| OFFENSE CODE: | ASCF CODE: | KRS CODE: | CLASS: | DEGREE: | COUNTS: |
|---|---|---|---|---|---|

| BIAS MOTIVATION: | METHOD ENTRY: | NUMBER PREMISES: |
|---|---|---|

| SCHOOL NAME: | SCHOOL TYPE: | CAMPUS? |
|---|---|---|

| OFFENDER SUSPECTED OF USING: | COURT ORDER TYPE: |
|---|---|

| SEQUENCE # OF | LOCATION TYPE: | TYPE WEAPON/FORCE INVOLVED | CRIMINAL ACTIVITY/GANG IFO |
|---|---|---|---|

OFFENSE DESCRIPTION:

| OFFENSE CODE: | ASCF CODE: | KRS CODE: | CLASS: | DEGREE: | COUNTS: |
|---|---|---|---|---|---|

| BIAS MOTIVATION: | METHOD ENTRY: | NUMBER PREMISES: |
|---|---|---|

| SCHOOL NAME: | SCHOOL TYPE: | CAMPUS? |
|---|---|---|

| OFFENDER SUSPECTED OF USING: | COURT ORDER TYPE: |
|---|---|

**PROPERTY DATA**

**UNIT**

| SEQ # | PROPERTY DESCRIPTION | TYPE OF LOSS | VALUE | RECVRD VALUE | REC. COND. | DATE RECOVERED |
|---|---|---|---|---|---|---|
| 1 | AUTOMOBILES | STOLEN (NOT RECOVERED) | $31,000.00 | | | |

| UNIT TYPE | VEHICLE MAKE: | VEHICLE MODEL | YEAR | VEHICLE TYPE |
|---|---|---|---|---|
| ROADWAY VEHICLE | CHEVROLET | SILVERADO 4X4 | 2015 | PICKUP |

| VEHICLE COLOR | VIN NUMBER | OWNER APPLIED # | REGISTRATION STATE, YEAR, & NUMBER | | |
|---|---|---|---|---|---|
| SILVER/ALUMINUM | 1GCVKREH2FZ204533 | 015951190479 | KY | 2016 | 356TBC |

| | | VEHICLE DESCRIPTORS | | KEYS LEFT IN UNIT? | OWNER |
|---|---|---|---|---|---|
| | | | | NO | Victim 1 |

**GENERAL**

| SEQ # | PROPERTY DESCRIPTION | TYPE OF LOSS | VALUE | RECVRD VALUE | REC. COND. | DATE RECOVERED |
|---|---|---|---|---|---|---|
| | | | PROPERTY DESCRIPTION | | | |
| | | | | | | |
| | OWNER APPLED NUMBER | | | SERIAL NUMBER | | |
| | MAKE | | | MODEL | | OWNER |

| TOTAL STOLEN VALUE: | $31,000.00 | TOTAL RECOVERED VALUE: | $0.00 | TOTAL VEHICLES STOLEN: | 1 | TOTAL VEHICLES RECOVERED: | 0 |
|---|---|---|---|---|---|---|---|

**STATUS**

| INCIDENT STATUS | CLOSED DATE | CLEARANCE TYPE | CLEARED EXCEPTIONALLY | EX. CLEARANCE DATE | UCR REPORTING FOR OTHER AGENCY |
|---|---|---|---|---|---|
| **OPEN** | | | | | YES ☐ |

| SUBMITTING OFFICER | INVESTIGATING OFFICER | UNIT/BADGE # | REVIEWED BY | TIME SPENT |
|---|---|---|---|---|
| Z SWANSON | Z SWANSON | 5853 | E SEDLOCK | 1 hrs |

Case ID: 151103380
Control No: 17090690

# KYIBRS REPORT

### COMMONWEALTH OF KENTUCKY

KSP RECORDS

## VICTIM DATA

| VICTIM SEQUENCE | | VICTIM NAME | | PHONE |
|---|---|---|---|---|
| 1 of 1 | HERTZ RENTAL CAR | | | (502) 403-1293 |

| LICENSE/ID STATE: | LICENSE/ID NUMBER: |
|---|---|

Address Unknown ☐ ADDRESS: **3700 CRITTENDEN DR**    VICTIM TYPE: **BUS**

| CITY: **LOUISVILLE** | STATE: **KY** | ZIP CODE: **40209** | KY RESIDENT: |
|---|---|---|---|

| DATE OF BIRTH | SSN | HEIGHT | WEIGHT | EYE COLOR | HAIR COLOR |
|---|---|---|---|---|---|

| GENDER | RACE | ETHNIC ORIGIN | PEACE OFFICER? YES ☐ |
|---|---|---|---|

| NBR | OFFENDER # | VICTIM RELATIONSHIP TO OFFENDER: VICTIM WAS | NBR | OFFENDER # | VICTIM RELATIONSHIP TO OFFENDER: VICTIM WAS | NBR | INJURY TYPE |
|---|---|---|---|---|---|---|---|
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |

| VICTIM OF OFFENSE(S) | AGG ASSAULT/ HOMICIDE CIRC | ADDTL JUSTIFIABLE HOMICIDE CIRC |
|---|---|---|
| 24044 | | |

| LEOKA ASSIGNMENT | LEOKA ACTIVITY |
|---|---|

## SUSPECT/ARRESTEE DATA

| SUSPECT SEQ. # of | NAME: ALIAS: | | ARRESTED? YES ☐ | ARREST DATE |
|---|---|---|---|---|

| LICENSE/ID STATE: | LICENSE/ID NUMBER: |
|---|---|

| ADDRESS | | | | |
|---|---|---|---|---|

| CITY: | STATE: | ZIP CODE: | DATE OF BIRTH: | PHONE: | KY RESIDENT: |
|---|---|---|---|---|---|

| SSN | SEX | RACE | ETHNIC ORIGIN | HEIGHT | WEIGHT | EYE COLOR | HAIR COLOR |
|---|---|---|---|---|---|---|---|

| ARRESTEE SEQ. # of | MULTIPLE ARREST IND. | ARREST TYPE | RELATED CITATION NUMBERS | | | | |
|---|---|---|---|---|---|---|---|
| ARRESTEE ARMED WITH | | | 1 | 4 | | 8 | |
| | | | 2 | 5 | | 7 | |
| | | | 3 | 6 | | 9 | |

| SUSPECT SEQ. # of | NAME: ALIAS: | | ARRESTED? YES ☐ | ARREST DATE |
|---|---|---|---|---|

| LICENSE/ID STATE: | LICENSE/ID NUMBER: |
|---|---|

| ADDRESS | | | | |
|---|---|---|---|---|

| CITY: | STATE: | ZIP CODE: | DATE OF BIRTH: | PHONE: | KY RESIDENT: |
|---|---|---|---|---|---|

| SSN | SEX | RACE | ETHNIC ORIGIN | HEIGHT | WEIGHT | EYE COLOR | HAIR COLOR |
|---|---|---|---|---|---|---|---|

| ARRESTEE SEQ. # of | MULTIPLE ARREST IND. | ARREST TYPE | RELATED CITATION NUMBERS | | | | |
|---|---|---|---|---|---|---|---|
| ARRESTEE ARMED WITH | | | 1 | 4 | | 7 | |
| | | | 2 | 5 | | 8 | |
| | | | 3 | 6 | | 9 | |

## WITNESS DATA

| WITNESS SEQUENCE of | WITNESS NAME | PHONE |
|---|---|---|

| LICENSE/ID STATE: | LICENSE/ID NUMBER: |
|---|---|

| ADDRESS: | | | | DATE OF BIRTH |
|---|---|---|---|---|

| CITY: | STATE: | ZIP CODE: | SSN: |
|---|---|---|---|

Case ID: 151103380
Control No.: 17090690

## KYIBRS REPORT: UOR2 SUPPLEMENT

KSP RECORDS

### COMMONWEALTH OF KENTUCKY

*SYNOPSIS:*
Hertz brought the Louisville Airport Police information on a vehicle that was stolen sometime after 2/23/2015. The vehicle missing is a 2015 Chevrolet Silverado 4WD Registration KY 356TBC.

*MODUS OPERANDI:*
Stolen

*DATE & TIME OF OCCURRENCE:*
Unknown when the vehicle when was taken but it was reported 5/13/2015 and there has been no record of it after 2/23/2015.

*ACCUSED:*

*SUSPECTS:*

*STOLEN PROPERTY:*
2015 Chevrolet Silverado
4 WD Pickup Truck
VIN:1GCVKREH2FZ204533
KY 356TBC
Silver in color

*OTHER PROPERTY:*

*EVIDENCE & HOW MARKED:*
NONE

*EVIDENCE DISPOSITION:*
UNKNOWN

*INVESTIGATION:*
OPEN

*STATUS OF CASE:*
OPEN

*ATTACHMENT*

Case ID: 151103380
Control No.: 17090690

*SUPPLEMENT*

# KYIBRS REPORT

## COMMONWEALTH OF KENTUCKY

| ADMINISTRATIVE | | | | | |
|---|---|---|---|---|---|
| AGENCY ORI/NAME  **0566900 LOUISVILLE AIRPORT POLICE** | | | INCIDENT NUMBER  **KY P15-0149** | | |

| INCIDENT DATE/TIME | EXACT / ESTIMATE | REPORT DATE | RECEIVED | DISPATCHED | ARRIVED | CLEARED |
|---|---|---|---|---|---|---|
| 5/13/2015 17:40 TO 5/13/2015 17:41 | **EXACT** | **5/13/2015** | **17:28** | **17:30** | **17:30** | **17:40** |

| REPORTED BY: **HOLLAND-KNOX, BRANDI** | | HOW REPORTED |
|---|---|---|
| LICENSE/ID STATE: | LICENSE/ID NUMBER: | **IN PERSON** |

ADDRESS: **3700 CRITTENDEN DR**

| CITY **LOUISVILLE** | STATE: **KY** | ZIP CODE: **40209** | PHONE NUMBER: **502-403-1293** |
|---|---|---|---|

EXACT LOCATION OF OFFENSE

| | **3700 CRITTENDEN DR** | | SECTOR NO: |
|---|---|---|---|
| | ADDRESS **3700 CRITTENDEN DR** | | |
| | CITY **LOUISVILLE** | STATE: **KY** | ZIP CODE: **40209** |
| | COUNTY **JEFFERSON** | LATITUDE **38 DEG  11.534 MIN** | LONGITUDE **85 DEG  45.054 MIN** |

### OFFENSE DATA

| SEQUENCE #  **1** OF **1** | LOCATION TYPE: **AIR, BUS, TRAIN TERMINAL** | TYPE WEAPON/FORCE INVOLVED | CRIMINAL ACTIVITY/GANG IFO |
|---|---|---|---|

OFFENSE DESCRIPTION: **TBUT OR DISP AUTO - $10,000 OR MORE BUT U/$1,000,000**

| OFFENSE CODE: **24044** | ASCF CODE: **0** | KRS CODE: **514.030** | CLASS: **C** | DEGREE: **F** | COUNTS: **1** |
|---|---|---|---|---|---|
| BIAS MOTIVATION: **UNKNOWN (MOTIVATION NOT KNOWN)** | | METHOD ENTRY: | NUMBER PREMISES: **0** | | |

| SCHOOL NAME: | SCHOOL TYPE: | CAMPUS? |
|---|---|---|

OFFENDER SUSPECTED OF USING: **NOT APPLICABLE**    COURT ORDER TYPE:

| SEQUENCE #  OF | LOCATION TYPE: | TYPE WEAPON/FORCE INVOLVED | CRIMINAL ACTIVITY/GANG IFO |
|---|---|---|---|

OFFENSE DESCRIPTION:

| OFFENSE CODE: | ASCF CODE: | KRS CODE: | CLASS: | DEGREE: | COUNTS: |
|---|---|---|---|---|---|
| BIAS MOTIVATION: | | METHOD ENTRY: | NUMBER PREMISES: | | |

| SCHOOL NAME: | SCHOOL TYPE: | CAMPUS? |
|---|---|---|

OFFENDER SUSPECTED OF USING:    COURT ORDER TYPE:

| SEQUENCE #  OF | LOCATION TYPE: | TYPE WEAPON/FORCE INVOLVED | CRIMINAL ACTIVITY/GANG IFO |
|---|---|---|---|

OFFENSE DESCRIPTION:

| OFFENSE CODE: | ASCF CODE: | KRS CODE: | CLASS: | DEGREE: | COUNTS: |
|---|---|---|---|---|---|
| BIAS MOTIVATION: | | METHOD ENTRY: | NUMBER PREMISES: | | |

| SCHOOL NAME: | SCHOOL TYPE: | CAMPUS? |
|---|---|---|

OFFENDER SUSPECTED OF USING:    COURT ORDER TYPE:

### PROPERTY DATA

| SEQ # | PROPERTY DESCRIPTION | TYPE OF LOSS | VALUE | RECVRD VALUE | REC. COND. | DT RECOVERED |
|---|---|---|---|---|---|---|
| 1 | AUTOMOBILES | STOLEN (NOT RECOVERED) | $14,451.00 | | | |

#### VEHICLE

| UNIT TYPE | VEHICLE MAKE: | VEHICLE MODEL | YEAR | VEHICLE TYPE |
|---|---|---|---|---|
| BICYCLE | CHEVROLET | CRUZE | 2015 | SEDAN/4 DOOR |

| VEHICLE COLOR | VIN NUMBER | OWNER APPLIED # | REGISTRATION STATE, YEAR, & NUMBER | | |
|---|---|---|---|---|---|
| SILVER\ALUMINUM | 1G1PE5SB1F7136173 | 01595 1187475 | KY | 2016 | 306TAC |

| VEHICLE DESCRIPTORS | KEYS LEFT IN UNIT? | OWNER |
|---|---|---|
| | NO | Victim 1 |

| SEQ # | PROPERTY DESCRIPTION | TYPE OF LOSS | VALUE | RECVRD VALUE | REC. COND. | DT RECOVERED |
|---|---|---|---|---|---|---|

#### GENERAL

PROPERTY DESCRIPTION

| OWNER APPLED NUMBER | SERIAL NUMBER |
|---|---|
| MAKE | MODEL | OWNER |

| TOTAL STOLEN VALUE: **$14,451.00** | TOTAL RECOVERED VALUE: | TOTAL VEHICLES STOLEN: **1** | TOTAL VEHICLES RECOVERED: |
|---|---|---|---|

### STATUS

| INCIDENT STATUS | CLOSED DATE | CLEARANCE TYPE | CLEARED EXCEPTIONALLY | EX. CLEARANCE DATE | UCR REPORTING FOR OTHER AGENCY |
|---|---|---|---|---|---|
| **CLOSED** | **9/19/2015** | **TIME CLOSED** | | | ☐ YES |

| ORIGINATING OFFICER | ASSIGNED TO | UNIT/BADGE # | REVIEWED BY | SUPPLEMENTED BY |
|---|---|---|---|---|
| **SWANSON, Z** | **SWANSON, Z** | **5853** | **E SEDLOCK** | |

Grimes, Joshua
Control No 0337097090690
Camera ID LS1T03380
Badge # 5829

# KYIBRS REPORT

## COMMONWEALTH OF KENTUCKY

| VICTIM SEQUENCE | | VICTIM NAME | PHONE |
|---|---|---|---|
| 1 of 1 | | HERTZ RENTAL CAR | 502-403-1293 |

| LICENSE/ID STATE: | LICENSE/ID NUMBER: | |
|---|---|---|

☐ Address Unknown  ADDRESS: **3700 CRITTENDEN DR**                                    VICTIM TYPE: **BUS**

| CITY: **LOUISVILLE** | STATE: **KY** | ZIP CODE: **40209** | KY RESIDENT: |
|---|---|---|---|

| DATE OF BIRTH | SSN | HEIGHT | WEIGHT | EYE COLOR | HAIR COLOR |
|---|---|---|---|---|---|

| GENDER | RACE | ETHNIC ORIGIN | PEACE OFFICER? |
|---|---|---|---|
| | | | ☐ YES |

| NBR | OFFENDER # | VICTIM RELATIONSHIP TO OFFENDER: VICTIM WAS | NBR | OFFENDER # | VICTIM RELATIONSHIP TO OFFENDER: VICTIM WAS | NBR | INJURY TYPE |
|---|---|---|---|---|---|---|---|
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |

| VICTIM OF OFFENSE(S) | AGG ASSAULT/ HOMICIDE CIRC | ADDTL JUSTIFIABLE HOMICIDE CIRC |
|---|---|---|
| 24044 | | |

| LEOKA ASSIGNMENT | LEOKA ACTIVITY |
|---|---|

| SUSPECT SEQ. # | NAME: | | ARRESTED? | ARREST DATE |
|---|---|---|---|---|
| of | ALIAS: | | ☐ YES | |

| LICENSE/ID STATE: | LICENSE/ID NUMBER: | |
|---|---|---|

| ADDRESS | DATE OF BIRTH: | PHONE: | KY RESIDENT: |
|---|---|---|---|

| CITY: | STATE: | ZIP CODE: |
|---|---|---|

| SSN | SEX | RACE | ETHNIC ORIGIN | HEIGHT | WEIGHT | EYE COLOR | HAIR COLOR |
|---|---|---|---|---|---|---|---|

| ARRESTEE SEQ. # | MULTIPLE ARREST IND. | ARREST TYPE | RELATED CITATION NUMBERS | | | |
|---|---|---|---|---|---|---|
| of | | | 1 | 4 | 8 | |
| | ARRESTEE ARMED WITH | | 2 | 5 | 7 | |
| | | | 3 | 6 | 9 | |

| SUSPECT SEQ. # | NAME: | | ARRESTED? | ARREST DATE |
|---|---|---|---|---|
| of | ALIAS: | | ☐ YES | |

| LICENSE/ID STATE: | LICENSE/ID NUMBER: | |
|---|---|---|

| ADDRESS | DATE OF BIRTH: | PHONE: | KY RESIDENT: |
|---|---|---|---|

| CITY: | STATE: | ZIP CODE: |
|---|---|---|

| SSN | SEX | RACE | ETHNIC ORIGIN | HEIGHT | WEIGHT | EYE COLOR | HAIR COLOR |
|---|---|---|---|---|---|---|---|

| ARRESTEE SEQ. # | MULTIPLE ARREST IND. | ARREST TYPE | RELATED CITATION NUMBERS | | | |
|---|---|---|---|---|---|---|
| of | | | 1 | 4 | 7 | |
| | ARRESTEE ARMED WITH | | 2 | 5 | 8 | |
| | | | 3 | 6 | 9 | |

| WITNESS/OTHER SEQ | WITNESS/OTHER NAME | PHONE |
|---|---|---|
| of | | |

| LICENSE/ID STATE: | LICENSE/ID NUMBER: | |
|---|---|---|

| ADDRESS: | | DATE OF BIRTH |
|---|---|---|

| CITY: | STATE: | ZIP CODE: | SSN: | |
|---|---|---|---|---|

Case ID: 151103380
Case ID No: 587090690

## KYIBRS REPORT: NARRATIVE

### COMMONWEALTH OF KENTUCKY

## SYNOPSIS:

Hertz brought the Louisville Airport Police information on a vehicle that was stolen sometime after 12/01/2014. The Vehicle Missing is a 2015 Chevrolet Cruze Registration KY 306TAC

## INVESTIGATION:

OPEN

MODUS OPERANDI: Stolen

DATE/TIME OF OCCURRENCE: Unknown when the vehicle was stolen but it was reported on 5/13/2015 and there has been no record of it after 12/01/2014.

STOLEN PROPERTY: 2015 Chevrolet Cruze
4 Door Car
VIN:1G1PE5SB1F136173
KY 306TAC
Silver in color

EVIDENCE AND HOW MARKED: NONE

EVIDENCE DISPOSITION: STOLEN

STATUS OF CASE: OPEN

*CLOSED 9/19/2015* - Vehicle recovered by Plainfield PD at Adesa Auto Auction lot 2950 E Main Street in Plainfield, IN ready for auction.  The vehicle was returned from lease on 6/17/2015 and forgot about by Hertz.

## ATTACHMENTS:

## METHODS OF OPERATION:

Case ID: 151103380

DRAFT

# ACTIVITY LOG
## COMMONWEALTH OF KENTUCKY

0566900

7/28/17 9:38 AM

Incident Number:  P15-0149    Agency ORI: 0566900    Badge # No: 5829

Case ID: 151103380
07090690

*SUPPLEMENT*

# KYIBRS REPORT
## COMMONWEALTH OF KENTUCKY

KSP RECORDS

**ADMINISTRATIVE**

| AGENCY ORI/NAME | 0566900 LOUISVILLE AIRPORT POLICE | | | INCIDENT NUMBER | KY P15-0162 | | |
|---|---|---|---|---|---|---|---|

| INCIDENT DATE/TIME | EXACT/ESTIMATE | REPORT DATE | RECEIVED | DISPATCHED | ARRIVED | CLEARED |
|---|---|---|---|---|---|---|
| 03/27/2015 08:00 TO 03/27/2015 18:00 | ESTIMATE | 05/28/2015 | 12:37 | 12:37 | 12:37 | 13:07 |

| REPORTED BY: HERTZ, RENT A CAR | HOW REPORTED |
|---|---|

| LICENSE/ID STATE: | LICENSE/ID NUMBER: |
|---|---|

ADDRESS: **440 HURON**

| CITY: **LOUISVILLE** | STATE: **KY** | ZIP CODE: **40209** | PHONE NUMBER: **(502) 235-6364** |
|---|---|---|---|

| EXACT LOCATION OF OFFENSE | 600 TERMINAL DR | | |
|---|---|---|---|
| | ADDRESS: **600 TERMINAL DR** | | |
| | CITY: **LOUISVILLE** | STATE: **KY** | ZIP CODE: **40209** |

| COUNTY: **JEFFERSON** | LATITUDE **38 DEG 11.182 MIN** | LONGITUDE **85 DEG 44.513 MIN** |
|---|---|---|

**OFFENSE DATA**

| SEQUENCE # 1 OF 1 | LOCATION TYPE: AIR/BUS/TRAIN TERMINAL | TYPE WEAPON/FORCE INVOLVED | CRIMINAL ACTIVITY/GANG IFO |
|---|---|---|---|

OFFENSE DESCRIPTION: TBUT OR DISP AUTO - $10,000 OR MORE BUT U$1,000,000

| OFFENSE CODE: 24044 | ASCF CODE: 0 | KRS CODE: 514.030 | CLASS: C | DEGREE: F | COUNTS: 1 |
|---|---|---|---|---|---|

| BIAS MOTIVATION: NONE (NO BIAS) | METHOD ENTRY: | NUMBER PREMISES: |
|---|---|---|

| SCHOOL NAME: | SCHOOL TYPE: | CAMPUS? |
|---|---|---|

| OFFENDER SUSPECTED OF USING: NOT APPLICABLE | COURT ORDER TYPE: |
|---|---|

| SEQUENCE # OF | LOCATION TYPE: | TYPE WEAPON/FORCE INVOLVED | CRIMINAL ACTIVITY/GANG IFO |
|---|---|---|---|

OFFENSE DESCRIPTION:

| OFFENSE CODE: | ASCF CODE: | KRS CODE: | CLASS: | DEGREE: | COUNTS: |
|---|---|---|---|---|---|

| BIAS MOTIVATION: | METHOD ENTRY: | NUMBER PREMISES: |
|---|---|---|

| SCHOOL NAME: | SCHOOL TYPE: | CAMPUS? |
|---|---|---|

| OFFENDER SUSPECTED OF USING: | COURT ORDER TYPE: |
|---|---|

| SEQUENCE # OF | LOCATION TYPE: | TYPE WEAPON/FORCE INVOLVED | CRIMINAL ACTIVITY/GANG IFO |
|---|---|---|---|

OFFENSE DESCRIPTION:

| OFFENSE CODE: | ASCF CODE: | KRS CODE: | CLASS: | DEGREE: | COUNTS: |
|---|---|---|---|---|---|

| BIAS MOTIVATION: | METHOD ENTRY: | NUMBER PREMISES: |
|---|---|---|

| SCHOOL NAME: | SCHOOL TYPE: | CAMPUS? |
|---|---|---|

| OFFENDER SUSPECTED OF USING: | COURT ORDER TYPE: |
|---|---|

**PROPERTY DATA**

**UNIT**

| SEQ # | PROPERTY DESCRIPTION | TYPE OF LOSS | VALUE | RECVRD VALUE | REC. COND. | DATE RECOVERED |
|---|---|---|---|---|---|---|
| 1 | AUTOMOBILES | STOLEN AND RECOVERED | $10,300.00 | $10,300.00 | UNDAMAGED | 10/07/2015 |

| UNIT TYPE | VEHICLE MAKE | VEHICLE MODEL | YEAR | VEHICLE TYPE |
|---|---|---|---|---|
| ROADWAY VEHICLE | VOLKSWAGEN | JETTA | 2012 | SEDAN/4 DOOR |

| VEHICLE COLOR | VIN NUMBER | OWNER APPLIED # | | REGISTRATION STATE, YEAR, & NUMBER | |
|---|---|---|---|---|---|
| BLACK | 3VW2K7AJXCM465757 | | NJ | 2015 | T20CHG |

| VEHICLE DESCRIPTORS | KEYS LEFT IN UNIT? | OWNER |
|---|---|---|
| | YES | Victim 1 |

**GENERAL**

| SEQ # | PROPERTY DESCRIPTION | TYPE OF LOSS | VALUE | RECVRD VALUE | REC. COND. | DATE RECOVERED |
|---|---|---|---|---|---|---|

| PROPERTY DESCRIPTION |
|---|

| OWNER APPLED NUMBER | SERIAL NUMBER |
|---|---|

| MAKE | MODEL | OWNER |
|---|---|---|

| TOTAL STOLEN VALUE: **$10,300.00** | TOTAL RECOVERED VALUE: **$10,300.00** | TOTAL VEHICLES STOLEN: **1** | TOTAL VEHICLES RECOVERED: **1** |
|---|---|---|---|

**STATUS**

| INCIDENT STATUS | CLOSED DATE | CLEARANCE TYPE | CLEARED EXCEPTIONALLY | EX. CLEARANCE DATE | UCR REPORTING FOR OTHER AGENCY |
|---|---|---|---|---|---|
| CLOSED | 10/07/2015 | | | | YES ☐ |

| SUBMITTING OFFICER | INVESTIGATING OFFICER | UNIT/BADGE # | REVIEWED BY | TIME SPENT |
|---|---|---|---|---|
| J SENG | J SENG | 5799 | J SENG | 30 min |

Case ID: 151103380
Control No.: 17090690

# KYIBRS REPORT

## COMMONWEALTH OF KENTUCKY

KSP RECORDS

### VICTIM DATA

| VICTIM SEQUENCE | VICTIM NAME | PHONE |
|---|---|---|
| 1 of 1  HERTZ | | (502) 235-6364 |

| LICENSE/ID STATE: | LICENSE/ID NUMBER: | |
|---|---|---|

Address Unknown ☐  ADDRESS: **440 HURON**    VICTIM TYPE: **BUS**

| CITY: **LOUISVILLE** | STATE: **KY** | ZIP CODE: **40209** | KY RESIDENT: |
|---|---|---|---|

| DATE OF BIRTH | SSN | HEIGHT | WEIGHT | EYE COLOR | HAIR COLOR |
|---|---|---|---|---|---|

| GENDER | RACE | ETHNIC ORIGIN | PEACE OFFICER? |
|---|---|---|---|
| | | | YES ☐ |

| NBR | OFFENDER # | VICTIM RELATIONSHIP TO OFFENDER: VICTIM WAS | NBR | OFFENDER # | VICTIM RELATIONSHIP TO OFFENDER: VICTIM WAS | NBR | INJURY TYPE |
|---|---|---|---|---|---|---|---|
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |

| VICTIM OF OFFENSE(S) | AGG ASSAULT/ HOMICIDE CIRC | ADDTL JUSTIFIABLE HOMICIDE CIRC |
|---|---|---|
| **24044** | | |

| LEOKA ASSIGNMENT | LEOKA ACTIVITY |
|---|---|

### SUSPECT/ARRESTEE DATA

| SUSPECT SEQ. # | NAME: | ARRESTED? | ARREST DATE |
|---|---|---|---|
| of | ALIAS: | YES ☐ | |

| LICENSE/ID STATE: | LICENSE/ID NUMBER: |
|---|---|

| ADDRESS | DATE OF BIRTH: | PHONE: | KY RESIDENT: |
|---|---|---|---|

| CITY: | STATE: | ZIP CODE: |
|---|---|---|

| SSN | SEX | RACE | ETHNIC ORIGIN | HEIGHT | WEIGHT | EYE COLOR | HAIR COLOR |
|---|---|---|---|---|---|---|---|

| ARRESTEE SEQ. # | MULTIPLE ARREST IND. | ARREST TYPE | RELATED CITATION NUMBERS | | | |
|---|---|---|---|---|---|---|
| of | | | 1 | 4 | 8 | |
| | ARRESTEE ARMED WITH | | 2 | 5 | 7 | |
| | | | 3 | 6 | 9 | |

### SUSPECT/ARRESTEE DATA

| SUSPECT SEQ. # | NAME: | ARRESTED? | ARREST DATE |
|---|---|---|---|
| of | ALIAS: | YES ☐ | |

| LICENSE/ID STATE: | LICENSE/ID NUMBER: |
|---|---|

| ADDRESS | DATE OF BIRTH: | PHONE: | KY RESIDENT: |
|---|---|---|---|

| CITY: | STATE: | ZIP CODE: |
|---|---|---|

| SSN | SEX | RACE | ETHNIC ORIGIN | HEIGHT | WEIGHT | EYE COLOR | HAIR COLOR |
|---|---|---|---|---|---|---|---|

| ARRESTEE SEQ. # | MULTIPLE ARREST IND. | ARREST TYPE | RELATED CITATION NUMBERS | | | |
|---|---|---|---|---|---|---|
| of | | | 1 | 4 | 7 | |
| | ARRESTEE ARMED WITH | | 2 | 5 | 8 | |
| | | | 3 | 6 | 9 | |

### WITNESS DATA

| WITNESS SEQUENCE | WITNESS NAME | PHONE |
|---|---|---|
| of | | |

| LICENSE/ID STATE: | LICENSE/ID NUMBER: |
|---|---|

| ADDRESS: | DATE OF BIRTH |
|---|---|

| CITY: | STATE: | ZIP CODE: | SSN: |
|---|---|---|---|

Case ID: 151103380
Control No.: 17090690

# KYIBRS REPORT: UOR2 SUPPLEMENT

KSP RECORDS

## COMMONWEALTH OF KENTUCKY

*SYNOPSIS:*

Vehicle was rented but suffered a break down. AAA states they dropped the vehicle at hertz's facility but hertz has been unable to locate it.
Vehicle was found on the Enterprise Rental lot today. No other info available.

*MODUS OPERANDI:*

*DATE & TIME OF OCCURRENCE:*

*ACCUSED:*

*SUSPECTS:*

*STOLEN PROPERTY:*

*OTHER PROPERTY:*

*EVIDENCE & HOW MARKED:*

*EVIDENCE DISPOSITION:*

*INVESTIGATION:*

*STATUS OF CASE:*

*ATTACHMENT*

Case No. 151103380
Control No.: 17090690

# KYIBRS REPORT

## COMMONWEALTH OF KENTUCKY

KSP RECORDS

**ADMINISTRATIVE**

| AGENCY ORI/NAME | 0566900 LOUISVILLE AIRPORT POLICE | | | INCIDENT NUMBER | KY P15-0182 | | |
|---|---|---|---|---|---|---|---|
| INCIDENT DATE/TIME | | EXACT/ESTIMATE | REPORT DATE | RECEIVED | DISPATCHED | ARRIVED | CLEARED |
| 03/26/2015 07:00 TO 06/18/2015 11:00 | | ESTIMATE | 06/18/2015 | 12:55 | 12:55 | 12:55 | 13:25 |
| REPORTED BY: HERTZ, RENT A CAR | | | | | HOW REPORTED | | |

LICENSE/ID STATE:    LICENSE/ID NUMBER:

ADDRESS: 440 HURON AVE

| CITY: LOUISVILLE | STATE: KY | ZIP CODE: 40209 | PHONE NUMBER: (502) 235-6364 |
|---|---|---|---|

EXACT LOCATION OF OFFENSE: 600 TERMINAL DR

ADDRESS: 600 TERMINAL DR

| CITY: LOUISVILLE | | STATE: KY | ZIP CODE: 40209 |
|---|---|---|---|
| COUNTY: JEFFERSON | LATITUDE 38 DEG 11.190 MIN | LONGITUDE 85 DEG 44.506 MIN | |

**OFFENSE DATA**

| SEQUENCE # 1 OF 1 | LOCATION TYPE: AIR/BUS/TRAIN TERMINAL | TYPE WEAPON/FORCE INVOLVED | CRIMINAL ACTIVITY/GANG IFO |
|---|---|---|---|

OFFENSE DESCRIPTION: TBUT OR DISP AUTO - $10,000 OR MORE BUT U$1,000,000

| OFFENSE CODE: 24044 | ASCF CODE: 0 | KRS CODE: 514.030 | CLASS: C | DEGREE: F | COUNTS: 1 |
|---|---|---|---|---|---|

| BIAS MOTIVATION: NONE (NO BIAS) | METHOD ENTRY: | NUMBER PREMISES: | |
|---|---|---|---|
| SCHOOL NAME: | SCHOOL TYPE: | CAMPUS? | |
| OFFENDER SUSPECTED OF USING: NOT APPLICABLE | COURT ORDER TYPE: | | |

| SEQUENCE # OF | LOCATION TYPE: | TYPE WEAPON/FORCE INVOLVED | CRIMINAL ACTIVITY/GANG IFO |
|---|---|---|---|

OFFENSE DESCRIPTION:

| OFFENSE CODE: | ASCF CODE: | KRS CODE: | CLASS: | DEGREE: | COUNTS: |
|---|---|---|---|---|---|

| BIAS MOTIVATION: | METHOD ENTRY: | NUMBER PREMISES: | |
|---|---|---|---|
| SCHOOL NAME: | SCHOOL TYPE: | CAMPUS? | |
| OFFENDER SUSPECTED OF USING: | COURT ORDER TYPE: | | |

| SEQUENCE # OF | LOCATION TYPE: | TYPE WEAPON/FORCE INVOLVED | CRIMINAL ACTIVITY/GANG IFO |
|---|---|---|---|

OFFENSE DESCRIPTION:

| OFFENSE CODE: | ASCF CODE: | KRS CODE: | CLASS: | DEGREE: | COUNTS: |
|---|---|---|---|---|---|

| BIAS MOTIVATION: | METHOD ENTRY: | NUMBER PREMISES: | |
|---|---|---|---|
| SCHOOL NAME: | SCHOOL TYPE: | CAMPUS? | |
| OFFENDER SUSPECTED OF USING: | COURT ORDER TYPE: | | |

**PROPERTY DATA**

**UNIT**

| SEQ # | PROPERTY DESCRIPTION | TYPE OF LOSS | VALUE | RECVRD VALUE | REC. COND. | DATE RECOVERED |
|---|---|---|---|---|---|---|
| 1 | AUTOMOBILES | STOLEN (NOT RECOVERED) | $17,000.00 | | | |

| UNIT TYPE | VEHICLE MAKE: | VEHICLE MODEL | YEAR | VEHICLE TYPE |
|---|---|---|---|---|
| ROADWAY VEHICLE | CHEVROLET | SONIC | 2015 | SEDAN/4 DOOR |

| VEHICLE COLOR | VIN NUMBER | OWNER APPLIED # | | REGISTRATION STATE, YEAR, & NUMBER | | |
|---|---|---|---|---|---|---|
| GRAY | 1G1JC5SH3F4122793 | | TN | 2015 | T0467F | |

| VEHICLE DESCRIPTORS | KEYS LEFT IN UNIT? | OWNER |
|---|---|---|
| | NO | Victim 1 |

**GENERAL**

| SEQ # | PROPERTY DESCRIPTION | TYPE OF LOSS | VALUE | RECVRD VALUE | REC. COND. | DATE RECOVERED |
|---|---|---|---|---|---|---|
| | | | | | | |

| PROPERTY DESCRIPTION | | |
|---|---|---|
| OWNER APPLED NUMBER | SERIAL NUMBER | |
| MAKE | MODEL | OWNER |

| TOTAL STOLEN VALUE: $17,000.00 | TOTAL RECOVERED VALUE: $0.00 | TOTAL VEHICLES STOLEN: 1 | TOTAL VEHICLES RECOVERED: 0 |
|---|---|---|---|

**STATUS**

| INCIDENT STATUS | CLOSED DATE | CLEARANCE TYPE | CLEARED EXCEPTIONALLY | EX. CLEARANCE DATE | UCR REPORTING FOR OTHER AGENCY |
|---|---|---|---|---|---|
| OPEN | | | | | YES ☐ |

| SUBMITTING OFFICER | INVESTIGATING OFFICER | UNIT/BADGE # | REVIEWED BY | TIME SPENT |
|---|---|---|---|---|
| J SENG | J SENG | 5799 | J SENG | |

Case ID: 151103380
Control No.: 17090690

# KYIBRS REPORT
## COMMONWEALTH OF KENTUCKY

KSP RECORDS

### VICTIM DATA

| VICTIM SEQUENCE | | VICTIM NAME | PHONE |
|---|---|---|---|
| 1  of  1 | HERTZ | | (502) 235-6364 |

| LICENSE/ID STATE: | LICENSE/ID NUMBER: | |
|---|---|---|

Address Unknown ☐  ADDRESS: **440 HURON AVE**    VICTIM TYPE: **BUS**

| CITY: **LOUISVILLE** | STATE: **KY** | ZIP CODE: **40209** | KY RESIDENT: |
|---|---|---|---|

| DATE OF BIRTH | SSN | HEIGHT | WEIGHT | EYE COLOR | HAIR COLOR |
|---|---|---|---|---|---|

| GENDER | RACE | ETHNIC ORIGIN | PEACE OFFICER? |
|---|---|---|---|
| | | | YES ☐ |

| NBR | OFFENDER # | VICTIM RELATIONSHIP TO OFFENDER: VICTIM WAS | NBR | OFFENDER # | VICTIM RELATIONSHIP TO OFFENDER: VICTIM WAS | NBR | INJURY TYPE |
|---|---|---|---|---|---|---|---|
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |

| VICTIM OF OFFENSE(S) | AGG ASSAULT/ HOMICIDE CIRC | ADDTL JUSTIFIABLE HOMICIDE CIRC |
|---|---|---|
| 24044 | | |

| LEOKA ASSIGNMENT | LEOKA ACTIVITY |
|---|---|

### SUSPECT/ARRESTEE DATA

| SUSPECT SEQ.# | NAME: | ARRESTED? | ARREST DATE |
|---|---|---|---|
| of | ALIAS: | YES ☐ | |

| LICENSE/ID STATE: | LICENSE/ID NUMBER: |
|---|---|

| ADDRESS | DATE OF BIRTH: | PHONE: | KY RESIDENT: |
|---|---|---|---|

| CITY: | STATE: | ZIP CODE: |
|---|---|---|

| SSN | SEX | RACE | ETHNIC ORIGIN | HEIGHT | WEIGHT | EYE COLOR | HAIR COLOR |
|---|---|---|---|---|---|---|---|

| ARRESTEE SEQ.# | MULTIPLE ARREST IND. | ARREST TYPE | RELATED CITATION NUMBERS | | | | | |
|---|---|---|---|---|---|---|---|---|
| of | | | 1 | | 4 | | 8 | |
| | ARRESTEE ARMED WITH | | 2 | | 5 | | 7 | |
| | | | 3 | | 6 | | 9 | |

### SUSPECT/ARRESTEE DATA

| SUSPECT SEQ.# | NAME: | ARRESTED? | ARREST DATE |
|---|---|---|---|
| of | ALIAS: | YES ☐ | |

| LICENSE/ID STATE: | LICENSE/ID NUMBER: |
|---|---|

| ADDRESS | DATE OF BIRTH: | PHONE: | KY RESIDENT: |
|---|---|---|---|

| CITY: | STATE: | ZIP CODE: |
|---|---|---|

| SSN | SEX | RACE | ETHNIC ORIGIN | HEIGHT | WEIGHT | EYE COLOR | HAIR COLOR |
|---|---|---|---|---|---|---|---|

| ARRESTEE SEQ.# | MULTIPLE ARREST IND. | ARREST TYPE | RELATED CITATION NUMBERS | | | | | |
|---|---|---|---|---|---|---|---|---|
| of | | | 1 | | 4 | | 7 | |
| | ARRESTEE ARMED WITH | | 2 | | 5 | | 8 | |
| | | | 3 | | 6 | | 9 | |

### WITNESS DATA

| WITNESS SEQUENCE | WITNESS NAME | PHONE |
|---|---|---|
| of | | |

| LICENSE/ID STATE: | LICENSE/ID NUMBER: |
|---|---|

| ADDRESS | DATE OF BIRTH |
|---|---|

| CITY: | STATE: | ZIP CODE: | SSN: |
|---|---|---|---|

Case ID: 151103380
Control No.: 17090690

# KYIBRS REPORT: UOR2 SUPPLEMENT

KSP RECORDS

## COMMONWEALTH OF KENTUCKY

*SYNOPSIS:*

Hertz reports the above vehicle missing from inventory since March 26th, 2015.

*MODUS OPERANDI:*

*DATE & TIME OF OCCURRENCE:*

*ACCUSED:*

*SUSPECTS:*

*STOLEN PROPERTY:*

*OTHER PROPERTY:*

*EVIDENCE & HOW MARKED:*

*EVIDENCE DISPOSITION:*

*INVESTIGATION:*

*STATUS OF CASE:*

*ATTACHMENT*

Case ID: 151103380
Control No.: 17090690

*SUPPLEMENT*

# KYIBRS REPORT

KSP RECORDS

### COMMONWEALTH OF KENTUCKY

## ADMINISTRATIVE

| AGENCY ORI/NAME | 0566900 LOUISVILLE AIRPORT POLICE | | | INCIDENT NUMBER | KY P15-0184 | |
|---|---|---|---|---|---|---|

| INCIDENT DATE/TIME | EXACT/ESTIMATE | REPORT DATE | RECEIVED | DISPATCHED | ARRIVED | CLEARED |
|---|---|---|---|---|---|---|
| 05/01/2015 07:00 TO 06/18/2015 11:00 | ESTIMATE | 06/18/2015 | 14:25 | 14:25 | 14:25 | 14:55 |

| REPORTED BY: HERTZ, RENT A CAR | HOW REPORTED |
|---|---|

| LICENSE/ID STATE: | LICENSE/ID NUMBER: |
|---|---|

| ADDRESS: 440 HURON AVE | | | | |
|---|---|---|---|---|
| CITY: LOUISVILLE | STATE: KY | ZIP CODE: 40209 | PHONE NUMBER: (502) 235-6364 |

**EXACT LOCATION OF OFFENSE**

| 600 TERMINAL DR | | |
|---|---|---|
| ADDRESS: 600 TERMINAL DR | | SECTOR NO: |
| CITY: LOUISVILLE | STATE: KY | ZIP CODE: 40209 |
| COUNTY: JEFFERSON | LATITUDE 38 DEG 11.178 MIN | LONGITUDE 85 DEG 44.527 MIN |

## OFFENSE DATA

| SEQUENCE # 1 OF 1 | LOCATION TYPE: AIR/BUS/TRAIN TERMINAL | TYPE WEAPON/FORCE INVOLVED | CRIMINAL ACTIVITY/GANG IFO |
|---|---|---|---|

OFFENSE DESCRIPTION: TBUT OR DISP AUTO - $10,000 OR MORE BUT U/$1,000,000

| OFFENSE CODE: 24044 | ASCF CODE: 0 | KRS CODE: 514.030 | CLASS: C | DEGREE: F | COUNTS: 1 |
|---|---|---|---|---|---|

| BIAS MOTIVATION: NONE (NO BIAS) | METHOD ENTRY: | NUMBER PREMISES: |
|---|---|---|

| SCHOOL NAME: | SCHOOL TYPE: | CAMPUS? |
|---|---|---|

OFFENDER SUSPECTED OF USING: NOT APPLICABLE — COURT ORDER TYPE:

| SEQUENCE # OF | LOCATION TYPE: | TYPE WEAPON/FORCE INVOLVED | CRIMINAL ACTIVITY/GANG IFO |
|---|---|---|---|

OFFENSE DESCRIPTION:

| OFFENSE CODE: | ASCF CODE: | KRS CODE: | CLASS: | DEGREE: | COUNTS: |
|---|---|---|---|---|---|

| BIAS MOTIVATION: | METHOD ENTRY: | NUMBER PREMISES: |
|---|---|---|

| SCHOOL NAME: | SCHOOL TYPE: | CAMPUS? |
|---|---|---|

OFFENDER SUSPECTED OF USING: — COURT ORDER TYPE:

| SEQUENCE # OF | LOCATION TYPE: | TYPE WEAPON/FORCE INVOLVED | CRIMINAL ACTIVITY/GANG IFO |
|---|---|---|---|

OFFENSE DESCRIPTION:

| OFFENSE CODE: | ASCF CODE: | KRS CODE: | CLASS: | DEGREE: | COUNTS: |
|---|---|---|---|---|---|

| BIAS MOTIVATION: | METHOD ENTRY: | NUMBER PREMISES: |
|---|---|---|

| SCHOOL NAME: | SCHOOL TYPE: | CAMPUS? |
|---|---|---|

OFFENDER SUSPECTED OF USING: — COURT ORDER TYPE:

## PROPERTY DATA

| SEQ # | PROPERTY DESCRIPTION | TYPE OF LOSS | VALUE | RECVRD VALUE | REC. COND. | DATE RECOVERED |
|---|---|---|---|---|---|---|
| 1 | AUTOMOBILES | STOLEN AND RECOVERED | $25,000.00 | $25,000.00 | UNDAMAGED | 10/06/2015 |

**UNIT**

| UNIT TYPE | VEHICLE MAKE | VEHICLE MODEL | YEAR | VEHICLE TYPE |
|---|---|---|---|---|
| ROADWAY VEHICLE | TOYOTA | RAV4 | 2014 | CARRY-ALL (Rugged trail vehic) |

| VEHICLE COLOR | VIN NUMBER | OWNER APPLIED # | REGISTRATION STATE, YEAR, & NUMBER | | |
|---|---|---|---|---|---|
| GRAY | 2T3ZFREV2EW109433 | | TN | 2016 | 7359N |

| VEHICLE DESCRIPTORS | KEYS LEFT IN UNIT? | OWNER |
|---|---|---|
| | YES | Victim 1 |

| SEQ # | PROPERTY DESCRIPTION | TYPE OF LOSS | VALUE | RECVRD VALUE | REC. COND. | DATE RECOVERED |
|---|---|---|---|---|---|---|

**GENERAL**

| PROPERTY DESCRIPTION | |
|---|---|

| OWNER APPLED NUMBER | SERIAL NUMBER |
|---|---|

| MAKE | MODEL | OWNER |
|---|---|---|

| TOTAL STOLEN VALUE: $25,000.00 | TOTAL RECOVERED VALUE: $25,000.00 | TOTAL VEHICLES STOLEN: 1 | TOTAL VEHICLES RECOVERED: 1 |
|---|---|---|---|

## STATUS

| INCIDENT STATUS | CLOSED DATE | CLEARANCE TYPE | CLEARED EXCEPTIONALLY | EX. CLEARANCE DATE | UCR REPORTING FOR OTHER AGENCY |
|---|---|---|---|---|---|
| CLOSED | 10/07/2015 | | | | YES ☐ |

| SUBMITTING OFFICER | INVESTIGATING OFFICER | UNIT/BADGE # | REVIEWED BY | TIME SPENT |
|---|---|---|---|---|
| J SENG | J SENG | 5799 | J SENG | 30 min |

Case ID: 151103380
Control No.: 17090690

# KYIBRS REPORT
## COMMONWEALTH OF KENTUCKY

KSP RECORDS

**VICTIM DATA**

| VICTIM SEQUENCE | | VICTIM NAME | | PHONE |
|---|---|---|---|---|
| 1 of 1 | HERTZ | | | (502) 235-6364 |

| LICENSE/ID STATE: | LICENSE/ID NUMBER: | |
|---|---|---|

| Address Unknown ☐ | ADDRESS: 440 HURON AVE | VICTIM TYPE: BUS |
|---|---|---|

| CITY: LOUISVILLE | STATE: KY | ZIP CODE: 40209 | KY RESIDENT: |
|---|---|---|---|

| DATE OF BIRTH | SSN | HEIGHT | WEIGHT | EYE COLOR | HAIR COLOR |
|---|---|---|---|---|---|

| GENDER | RACE | ETHNIC ORIGIN | PEACE OFFICER? |
|---|---|---|---|
| | | | YES ☐ |

| NBR | OFFENDER # | VICTIM RELATIONSHIP TO OFFENDER: VICTIM WAS | NBR | OFFENDER # | VICTIM RELATIONSHIP TO OFFENDER: VICTIM WAS | NBR | INJURY TYPE |
|---|---|---|---|---|---|---|---|
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |

| VICTIM OF OFFENSE(S) | AGG ASSAULT/ HOMICIDE CIRC | ADDTL JUSTIFIABLE HOMICIDE CIRC |
|---|---|---|
| 24044 | | |

| LEOKA ASSIGNMENT | LEOKA ACTIVITY |
|---|---|

**SUSPECT/ARRESTEE DATA**

| SUSPECT SEQ. # | NAME: | | ARRESTED? | ARREST DATE |
|---|---|---|---|---|
| of | ALIAS: | | YES ☐ | |

| LICENSE/ID STATE: | LICENSE/ID NUMBER: | |
|---|---|---|

| ADDRESS | DATE OF BIRTH: | PHONE: | KY RESIDENT: |
|---|---|---|---|

| CITY: | STATE: | ZIP CODE: |
|---|---|---|

| SSN | SEX | RACE | ETHNIC ORIGIN | HEIGHT | WEIGHT | EYE COLOR | HAIR COLOR |
|---|---|---|---|---|---|---|---|

| ARRESTEE SEQ. # | MULTIPLE ARREST IND. | ARREST TYPE | RELATED CITATION NUMBERS | | | | |
|---|---|---|---|---|---|---|---|
| of | | | 1 | 4 | | 8 | |
| ARRESTEE ARMED WITH | | | 2 | 5 | | 7 | |
| | | | 3 | 6 | | 9 | |

**SUSPECT/ARRESTEE DATA**

| SUSPECT SEQ. # | NAME: | | ARRESTED? | ARREST DATE |
|---|---|---|---|---|
| of | ALIAS: | | YES ☐ | |

| LICENSE/ID STATE: | LICENSE/ID NUMBER: | |
|---|---|---|

| ADDRESS | DATE OF BIRTH: | PHONE: | KY RESIDENT: |
|---|---|---|---|

| CITY: | STATE: | ZIP CODE: |
|---|---|---|

| SSN | SEX | RACE | ETHNIC ORIGIN | HEIGHT | WEIGHT | EYE COLOR | HAIR COLOR |
|---|---|---|---|---|---|---|---|

| ARRESTEE SEQ. # | MULTIPLE ARREST IND. | ARREST TYPE | RELATED CITATION NUMBERS | | | | |
|---|---|---|---|---|---|---|---|
| of | | | 1 | 4 | | 7 | |
| ARRESTEE ARMED WITH | | | 2 | 5 | | 8 | |
| | | | 3 | 6 | | 9 | |

**WITNESS DATA**

| WITNESS SEQUENCE | WITNESS NAME | PHONE |
|---|---|---|
| of | | |

| LICENSE/ID STATE: | LICENSE/ID NUMBER: |
|---|---|

| ADDRESS: | DATE OF BIRTH |
|---|---|

| CITY: | STATE: | ZIP CODE: | SSN: |
|---|---|---|---|

Case ID: 151103380
Control No.: 17090690

## KYIBRS REPORT: UOR2 SUPPLEMENT

COMMONWEALTH OF KENTUCKY

KSP RECORDS

*SYNOPSIS:*
Vehicle missing from inventory. Last seen on May 1,2015.
Vehicle was found on the lot on 10-07-2015 with keys in it. No other info given.

*MODUS OPERANDI:*

*DATE & TIME OF OCCURRENCE:*

*ACCUSED:*

*SUSPECTS:*

*STOLEN PROPERTY:*

*OTHER PROPERTY:*

*EVIDENCE & HOW MARKED:*

*EVIDENCE DISPOSITION:*

*INVESTIGATION:*

*STATUS OF CASE:*

*ATTACHMENT*

Case ID: 151103380
Control No.: 17090690

# KYIBRS REPORT

## COMMONWEALTH OF KENTUCKY

KSP RECORDS

### ADMINISTRATIVE

| AGENCY ORI/NAME | 0566900 LOUISVILLE AIRPORT POLICE | | INCIDENT NUMBER | KY P15-0287 | |
|---|---|---|---|---|---|

| INCIDENT DATE/TIME | EXACT/ESTIMATE | REPORT DATE | RECEIVED | DISPATCHED | ARRIVED | CLEARED |
|---|---|---|---|---|---|---|
| 09/30/2015 17:45 TO 09/30/2015 18:50 | ESTIMATE | 09/30/2015 | 17:45 | 17:45 | 17:45 | 18:50 |

| REPORTED BY: BRANDI, BRANDI | | HOW REPORTED |
|---|---|---|

| LICENSE/ID STATE: | LICENSE/ID NUMBER: | |
|---|---|---|

ADDRESS: 4100 HURON DR

| CITY: LOUISVILLE | STATE: KY | ZIP CODE: 40209 | PHONE NUMBER: |
|---|---|---|---|

EXACT LOCATION OF OFFENSE
600 TERMINAL DR

| ADDRESS: 600 TERMINAL DR | | SECTOR NO: |
|---|---|---|

| CITY: LOUISVILLE | STATE: KY | ZIP CODE: 40209 |
|---|---|---|

| COUNTY: JEFFERSON | LATITUDE | 38 DEG | 11.210 MIN | LONGITUDE | 85 DEG | 44.477 MIN |
|---|---|---|---|---|---|---|

### OFFENSE DATA

| SEQUENCE # 1 OF 1 | LOCATION TYPE: AIR/BUS/TRAIN TERMINAL | TYPE WEAPON/FORCE INVOLVED | CRIMINAL ACTIVITY/GANG IFO |
|---|---|---|---|

OFFENSE DESCRIPTION: TBUT OR DISP AUTO - $10,000 OR MORE BUT U/$1,000,000

| OFFENSE CODE: 24044 | ASCF CODE: 0 | KRS CODE: 514.030 | CLASS: C | DEGREE: F | COUNTS: 1 |
|---|---|---|---|---|---|

| BIAS MOTIVATION: UNKNOWN (MOTIVATION NOT KNOWN) | METHOD ENTRY: | NUMBER PREMISES: |
|---|---|---|

| SCHOOL NAME: | SCHOOL TYPE: | CAMPUS? |
|---|---|---|

| OFFENDER SUSPECTED OF USING: NOT APPLICABLE | COURT ORDER TYPE: |
|---|---|

| SEQUENCE # OF | LOCATION TYPE: | TYPE WEAPON/FORCE INVOLVED | CRIMINAL ACTIVITY/GANG IFO |
|---|---|---|---|

OFFENSE DESCRIPTION:

| OFFENSE CODE: | ASCF CODE: | KRS CODE: | CLASS: | DEGREE: | COUNTS: |
|---|---|---|---|---|---|

| BIAS MOTIVATION: | METHOD ENTRY: | NUMBER PREMISES: |
|---|---|---|

| SCHOOL NAME: | SCHOOL TYPE: | CAMPUS? |
|---|---|---|

| OFFENDER SUSPECTED OF USING: | COURT ORDER TYPE: |
|---|---|

| SEQUENCE # OF | LOCATION TYPE: | TYPE WEAPON/FORCE INVOLVED | CRIMINAL ACTIVITY/GANG IFO |
|---|---|---|---|

OFFENSE DESCRIPTION:

| OFFENSE CODE: | ASCF CODE: | KRS CODE: | CLASS: | DEGREE: | COUNTS: |
|---|---|---|---|---|---|

| BIAS MOTIVATION: | METHOD ENTRY: | NUMBER PREMISES: |
|---|---|---|

| SCHOOL NAME: | SCHOOL TYPE: | CAMPUS? |
|---|---|---|

| OFFENDER SUSPECTED OF USING: | COURT ORDER TYPE: |
|---|---|

### PROPERTY DATA

| SEQ # | PROPERTY DESCRIPTION | TYPE OF LOSS | VALUE | RECVRD VALUE | REC. COND. | DATE RECOVERED |
|---|---|---|---|---|---|---|
| 1 | AUTOMOBILES | STOLEN (NOT RECOVERED) | $25,000.00 | | | |

UNIT

| UNIT TYPE | VEHICLE MAKE | VEHICLE MODEL | YEAR | VEHICLE TYPE |
|---|---|---|---|---|
| ROADWAY VEHICLE | NISSAN | ALTIMA | 2015 | SEDAN/4 DOOR |

| VEHICLE COLOR | VIN NUMBER | OWNER APPLIED # | REGISTRATION STATE, YEAR, & NUMBER |
|---|---|---|---|
| | 1N4AL3APXFC246849 | 1171107 | KY 2015 152TCL |

| VEHICLE DESCRIPTORS | KEYS LEFT IN UNIT? | |
|---|---|---|
| HERTZ RENTAL CAR | YES | Victim 1 |

| SEQ # | PROPERTY DESCRIPTION | TYPE OF LOSS | VALUE | RECVRD VALUE | REC. COND. | DATE RECOVERED |
|---|---|---|---|---|---|---|
| | | | | | | |

GENERAL

| PROPERTY DESCRIPTION | |
|---|---|

| OWNER APPLED NUMBER | SERIAL NUMBER |
|---|---|

| MAKE | MODEL | OWNER |
|---|---|---|

| TOTAL STOLEN VALUE: $25,000.00 | TOTAL RECOVERED VALUE: $0.00 | TOTAL VEHICLES STOLEN: 1 | TOTAL VEHICLES RECOVERED: 0 |
|---|---|---|---|

### STATUS

| INCIDENT STATUS | CLOSED DATE | CLEARANCE TYPE | CLEARED EXCEPTIONALLY | EX. CLEARANCE DATE | UCR REPORTING FOR OTHER AGENCY |
|---|---|---|---|---|---|
| OPEN | | | | | YES ☐ |

| SUBMITTING OFFICER | INVESTIGATING OFFICER | UNIT/BADGE # | REVIEWED BY | TIME SPENT |
|---|---|---|---|---|
| J HAIRGROVE | J HAIRGROVE | 5855 | C COPE | 1 hrs |

Case ID: 151103380
Control No.: 17090690

# KYIBRS REPORT

## COMMONWEALTH OF KENTUCKY

KSP RECORDS

### VICTIM DATA

| VICTIM SEQUENCE | | VICTIM NAME | | PHONE |
|---|---|---|---|---|
| 1 of 1 | HERTZ RENTAL | | | (502) 367-4636 |

| LICENSE/ID STATE: | LICENSE/ID NUMBER: | |
|---|---|---|

Address Unknown ☐  ADDRESS: **4100 HURON DR**    VICTIM TYPE: **BUS**

CITY: **LOUISVILLE**    STATE: **KY**    ZIP CODE: **40209**    KY RESIDENT:

| DATE OF BIRTH | SSN | HEIGHT | WEIGHT | EYE COLOR | HAIR COLOR |
|---|---|---|---|---|---|

| GENDER | RACE | ETHNIC ORIGIN | PEACE OFFICER? |
|---|---|---|---|
| | | | YES ☐ |

| NBR | OFFENDER # | VICTIM RELATIONSHIP TO OFFENDER: VICTIM WAS | NBR | OFFENDER # | VICTIM RELATIONSHIP TO OFFENDER: VICTIM WAS | NBR | INJURY TYPE |
|---|---|---|---|---|---|---|---|
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |

| VICTIM OF OFFENSE(S) | AGG ASSAULT/ HOMICIDE CIRC | ADDTL JUSTIFIABLE HOMICIDE CIRC |
|---|---|---|
| 24044 | | |

| LEOKA ASSIGNMENT | LEOKA ACTIVITY |
|---|---|

### SUSPECT/ARRESTEE DATA

| SUSPECT SEQ. # | NAME: | | ARRESTED? | ARREST DATE |
|---|---|---|---|---|
| of | ALIAS: | | YES ☐ | |

| LICENSE/ID STATE: | LICENSE/ID NUMBER: | |
|---|---|---|

ADDRESS    DATE OF BIRTH:    PHONE:    KY RESIDENT:

CITY:    STATE:    ZIP CODE:

| SSN | SEX | RACE | ETHNIC ORIGIN | HEIGHT | WEIGHT | EYE COLOR | HAIR COLOR |
|---|---|---|---|---|---|---|---|

| ARRESTEE SEQ. # | MULTIPLE ARREST IND. | ARREST TYPE | RELATED CITATION NUMBERS | | |
|---|---|---|---|---|---|
| of | | | 1 | 4 | 8 |
| | ARRESTEE ARMED WITH | | 2 | 5 | 7 |
| | | | 3 | 6 | 9 |

| SUSPECT SEQ. # | NAME: | | ARRESTED? | ARREST DATE |
|---|---|---|---|---|
| of | ALIAS: | | YES ☐ | |

| LICENSE/ID STATE: | LICENSE/ID NUMBER: | |
|---|---|---|

ADDRESS    DATE OF BIRTH:    PHONE:    KY RESIDENT:

CITY:    STATE:    ZIP CODE:

| SSN | SEX | RACE | ETHNIC ORIGIN | HEIGHT | WEIGHT | EYE COLOR | HAIR COLOR |
|---|---|---|---|---|---|---|---|

| ARRESTEE SEQ. # | MULTIPLE ARREST IND. | ARREST TYPE | RELATED CITATION NUMBERS | | |
|---|---|---|---|---|---|
| of | | | 1 | 4 | 7 |
| | ARRESTEE ARMED WITH | | 2 | 5 | 8 |
| | | | 3 | 6 | 9 |

### WITNESS DATA

| WITNESS SEQUENCE | WITNESS NAME | PHONE |
|---|---|---|
| of | | |

| LICENSE/ID STATE: | LICENSE/ID NUMBER: | |
|---|---|---|

ADDRESS    DATE OF BIRTH

CITY:    STATE:    ZIP CODE:    SSN:

Case ID: 151103380
Control No.: 17090690

# KYIBRS REPORT: UOR2 SUPPLEMENT

KSP RECORDS

### COMMONWEALTH OF KENTUCKY

**SYNOPSIS:**
Stolen vehicle from Hertz rental

**MODUS OPERANDI:**

**DATE & TIME OF OCCURRENCE:**

**ACCUSED:**

**SUSPECTS:**

**STOLEN PROPERTY:**
2015 Nissan Altima
Ky Reg 152-TCL
VIN - 1N4AL3APXFC246849

**OTHER PROPERTY:**

**EVIDENCE & HOW MARKED:**

**EVIDENCE DISPOSITION:**

**INVESTIGATION:**
Hertz rental notified airport police of a vehicle that has been stolen from their fleet of vehicles. They advised that the vehicle was on their lot, but has been taken. Keys were with the vehicle.

**STATUS OF CASE:**
Open

**ATTACHMENT**

Case ID: 151103380
Control No.: 17090690

# KYIBRS REPORT

### COMMONWEALTH OF KENTUCKY

KSP RECORDS

## ADMINISTRATIVE

| AGENCY ORI/NAME | 0566900 LOUISVILLE AIRPORT POLICE | | INCIDENT NUMBER | KY P15-0288 |
|---|---|---|---|---|

| INCIDENT DATE/TIME | EXACT/ESTIMATE | REPORT DATE | RECEIVED | DISPATCHED | ARRIVED | CLEARED |
|---|---|---|---|---|---|---|
| 09/30/2015 17:45 TO 09/30/2015 18:50 | ESTIMATE | 09/30/2015 | 17:45 | 17:45 | 17:45 | 18:50 |

REPORTED BY: **BRANDI, BRANDI**                   HOW REPORTED

LICENSE/ID STATE:          LICENSE/ID NUMBER:

ADDRESS: **4100 HURIN DR**

CITY: **LOUISVILLE**   STATE: **KY**   ZIP CODE: **40209**   PHONE NUMBER: **(502) 367-4636**

EXACT LOCATION OF OFFENSE
- **600 TERMINAL DR**                   SECTOR NO:
- ADDRESS: **600 TERMINAL DR**
- CITY: **LOUISVILLE**   STATE: **KY**   ZIP CODE: **40209**
- COUNTY: **JEFFERSON**   LATITUDE: **38 DEG 11.197 MIN**   LONGITUDE: **85 DEG 44.504 MIN**

## OFFENSE DATA

| SEQUENCE # | 1 OF 1 | LOCATION TYPE: AIR/BUS/TRAIN TERMINAL | TYPE WEAPON/FORCE INVOLVED | CRIMINAL ACTIVITY/GANG IFO |
|---|---|---|---|---|

OFFENSE DESCRIPTION: TBUT OR DISP AUTO - $10,000 OR MORE BUT U/$1,000,000

| OFFENSE CODE: 24044 | ASCF CODE: 0 | KRS CODE: 514.030 | CLASS: C | DEGREE: F | COUNTS: 1 |
|---|---|---|---|---|---|

BIAS MOTIVATION: UNKNOWN (MOTIVATION NOT KNOWN)   METHOD ENTRY:   NUMBER PREMISES:

SCHOOL NAME:   SCHOOL TYPE:   CAMPUS?

OFFENDER SUSPECTED OF USING: NOT APPLICABLE   COURT ORDER TYPE:

| SEQUENCE # | OF | LOCATION TYPE: | TYPE WEAPON/FORCE INVOLVED | CRIMINAL ACTIVITY/GANG IFO |
|---|---|---|---|---|

OFFENSE DESCRIPTION:

| OFFENSE CODE: | ASCF CODE: | KRS CODE: | CLASS: | DEGREE: | COUNTS: |
|---|---|---|---|---|---|

BIAS MOTIVATION:   METHOD ENTRY:   NUMBER PREMISES:

SCHOOL NAME:   SCHOOL TYPE:   CAMPUS?

OFFENDER SUSPECTED OF USING:   COURT ORDER TYPE:

| SEQUENCE # | OF | LOCATION TYPE: | TYPE WEAPON/FORCE INVOLVED | CRIMINAL ACTIVITY/GANG IFO |
|---|---|---|---|---|

OFFENSE DESCRIPTION:

| OFFENSE CODE: | ASCF CODE: | KRS CODE: | CLASS: | DEGREE: | COUNTS: |
|---|---|---|---|---|---|

BIAS MOTIVATION:   METHOD ENTRY:   NUMBER PREMISES:

SCHOOL NAME:   SCHOOL TYPE:   CAMPUS?

OFFENDER SUSPECTED OF USING:   COURT ORDER TYPE:

## PROPERTY DATA

| SEQ # | PROPERTY DESCRIPTION | TYPE OF LOSS | VALUE | RECVRD VALUE | REC. COND. | DATE RECOVERED |
|---|---|---|---|---|---|---|
| 1 | AUTOMOBILES | STOLEN (NOT RECOVERED) | $25,000.00 | | | |

### UNIT

| UNIT TYPE | VEHICLE MAKE | VEHICLE MODEL | YEAR | VEHICLE TYPE |
|---|---|---|---|---|
| ROADWAY VEHICLE | TOYOTA | CAMRY | 2015 | SEDAN/4 DOOR |

| VEHICLE COLOR | VIN NUMBER | OWNER APPLIED # | REGISTRATION STATE, YEAR, & NUMBER |
|---|---|---|---|
| WHITE | 4T1BF1FK9FU950005 | 1192715 | KY 2015 429TKL |

| VEHICLE DESCRIPTORS | KEYS LEFT IN UNIT? | OWNER |
|---|---|---|
| HERTZ RENTAL CAR | YES | Victim 1 |

| SEQ # | PROPERTY DESCRIPTION | TYPE OF LOSS | VALUE | RECVRD VALUE | REC. COND. | DATE RECOVERED |
|---|---|---|---|---|---|---|

### GENERAL

PROPERTY DESCRIPTION

| OWNER APPLED NUMBER | SERIAL NUMBER |
|---|---|

| MAKE | MODEL | OWNER |
|---|---|---|

| TOTAL STOLEN VALUE: | $25,000.00 | TOTAL RECOVERED VALUE: | $0.00 | TOTAL VEHICLES STOLEN: | 1 | TOTAL VEHICLES RECOVERED: | 0 |
|---|---|---|---|---|---|---|---|

## STATUS

| INCIDENT STATUS | CLOSED DATE | CLEARANCE TYPE | CLEARED EXCEPTIONALLY | EX. CLEARANCE DATE | UCR REPORTING FOR OTHER AGENCY |
|---|---|---|---|---|---|
| OPEN | | | | | YES ☐ |

| SUBMITTING OFFICER | INVESTIGATING OFFICER | UNIT/BADGE # | REVIEWED BY | TIME SPENT |
|---|---|---|---|---|
| J HAIRGROVE | J HAIRGROVE | 5855 | C COPE | 1 hrs |

Case ID: 151103380
Control No.: 17090690

# KYIBRS REPORT
## COMMONWEALTH OF KENTUCKY

KSP RECORDS

**VICTIM DATA**

| VICTIM SEQUENCE | VICTIM NAME | PHONE |
|---|---|---|
| 1 of 1 | HERTZ RENTAL | (502) 367-4636 |

| LICENSE/ID STATE: | LICENSE/ID NUMBER: | |
|---|---|---|

Address Unknown ☐ | ADDRESS: **4100 HURON DR** | VICTIM TYPE: **BUS**

CITY: **LOUISVILLE** | STATE: **KY** | ZIP CODE: **40209** | KY RESIDENT:

| DATE OF BIRTH | SSN | HEIGHT | WEIGHT | EYE COLOR | HAIR COLOR |
|---|---|---|---|---|---|

| GENDER | RACE | ETHNIC ORIGIN | PEACE OFFICER? |
|---|---|---|---|
| | | | YES ☐ |

| NBR | OFFENDER # | VICTIM RELATIONSHIP TO OFFENDER: VICTIM WAS | NBR | OFFENDER # | VICTIM RELATIONSHIP TO OFFENDER: VICTIM WAS | NBR | INJURY TYPE |
|---|---|---|---|---|---|---|---|
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |

| VICTIM OF OFFENSE(S) | AGG ASSAULT / HOMICIDE CIRC | ADDTL JUSTIFIABLE HOMICIDE CIRC |
|---|---|---|
| 24044 | | |

| LEOKA ASSIGNMENT | LEOKA ACTIVITY |
|---|---|

**SUSPECT/ARRESTEE DATA**

| SUSPECT SEQ. # | NAME: | ARRESTED? | ARREST DATE |
|---|---|---|---|
| of | ALIAS: | YES ☐ | |

| LICENSE/ID STATE: | LICENSE/ID NUMBER: |
|---|---|

| ADDRESS | DATE OF BIRTH: | PHONE: | KY RESIDENT: |
|---|---|---|---|

| CITY: | STATE: | ZIP CODE: |
|---|---|---|

| SSN | SEX | RACE | ETHNIC ORIGIN | HEIGHT | WEIGHT | EYE COLOR | HAIR COLOR |
|---|---|---|---|---|---|---|---|

| ARRESTEE SEQ. # | MULTIPLE ARREST IND. | ARREST TYPE | RELATED CITATION NUMBERS | | | | | |
|---|---|---|---|---|---|---|---|---|
| of | | | 1 | 4 | | 8 | | |
| | ARRESTEE ARMED WITH | | 2 | 5 | | 7 | | |
| | | | 3 | 6 | | 9 | | |

| SUSPECT SEQ. # | NAME: | ARRESTED? | ARREST DATE |
|---|---|---|---|
| of | ALIAS: | YES ☐ | |

| LICENSE/ID STATE: | LICENSE/ID NUMBER: |
|---|---|

| ADDRESS | DATE OF BIRTH: | PHONE: | KY RESIDENT: |
|---|---|---|---|

| CITY: | STATE: | ZIP CODE: |
|---|---|---|

| SSN | SEX | RACE | ETHNIC ORIGIN | HEIGHT | WEIGHT | EYE COLOR | HAIR COLOR |
|---|---|---|---|---|---|---|---|

| ARRESTEE SEQ. # | MULTIPLE ARREST IND. | ARREST TYPE | RELATED CITATION NUMBERS | | | | | |
|---|---|---|---|---|---|---|---|---|
| of | | | 1 | 4 | | 7 | | |
| | ARRESTEE ARMED WITH | | 2 | 5 | | 8 | | |
| | | | 3 | 6 | | 9 | | |

**WITNESS DATA**

| WITNESS SEQUENCE | WITNESS NAME | PHONE |
|---|---|---|
| of | | |

| LICENSE/ID STATE: | LICENSE/ID NUMBER: |
|---|---|

| ADDRESS: | DATE OF BIRTH |
|---|---|

| CITY: | STATE: | ZIP CODE: | SSN: |
|---|---|---|---|

Case ID: 151103380
Control No.: 17090690

## KYIBRS REPORT: UOR2 SUPPLEMENT

KSP RECORDS

### COMMONWEALTH OF KENTUCKY

**SYNOPSIS:**
Stolen vehicle

**MODUS OPERANDI:**

**DATE & TIME OF OCCURRENCE:**

**ACCUSED:**

**SUSPECTS:**

**STOLEN PROPERTY:**
2015 Toyota Camry  / White
Ky Reg 429-TKL
VIN 4T1BF1FK9FU950005

**OTHER PROPERTY:**

**EVIDENCE & HOW MARKED:**

**EVIDENCE DISPOSITION:**

**INVESTIGATION:**
Hertz rental notified airport police of a vehicle that had been stolen from the lot. The keys are with the vehicle. They advised that vehicle was on their lot on 8/14/15, but it is now missing.

**STATUS OF CASE:**
Open

**ATTACHMENT**

Case ID: 151103380
Control No.: 17090690

# KYIBRS REPORT
## COMMONWEALTH OF KENTUCKY

KSP RECORDS

<table>
<tr><td colspan="2">AGENCY ORI/NAME <b>0566900 LOUISVILLE AIRPORT POLICE</b></td><td colspan="2">INCIDENT NUMBER <b>KY P15-0289</b></td></tr>
</table>

**ADMINISTRATIVE**

| INCIDENT DATE/TIME | EXACT/ESTIMATE | REPORT DATE | RECEIVED | DISPATCHED | ARRIVED | CLEARED |
|---|---|---|---|---|---|---|
| 09/30/2015 17:45 TO 09/30/2015 18:50 | ESTIMATE | 09/30/2015 | 17:45 | 17:45 | 17:45 | 18:50 |

REPORTED BY: **BRANDI, BRANDI** — HOW REPORTED

LICENSE/ID STATE:    LICENSE/ID NUMBER:

ADDRESS: **4100 HURON DR**

| CITY: **LOUISVILLE** | STATE: **KY** | ZIP CODE: **40209** | PHONE NUMBER: **(502) 367-4636** |
|---|---|---|---|

EXACT LOCATION OF OFFENSE: **600 TERMINAL DR**

ADDRESS: **600 TERMINAL DR** — SECTOR NO:

| CITY: **LOUISVILLE** | STATE: **KY** | ZIP CODE: **40209** |
|---|---|---|

| COUNTY: **JEFFERSON** | LATITUDE **38 DEG** | **11.206 MIN** | LONGITUDE **85 DEG** | **44.477 MIN** |
|---|---|---|---|---|

**OFFENSE DATA**

SEQUENCE # **1** OF **1** — LOCATION TYPE: **AIR/BUS/TRAIN TERMINAL** — TYPE WEAPON/FORCE INVOLVED — CRIMINAL ACTIVITY/GANG IFO

OFFENSE DESCRIPTION: **TBUT OR DISP AUTO - $10,000 OR MORE BUT U$1,000,000**

| OFFENSE CODE: **24044** | ASCF CODE: **0** | KRS CODE: **514.030** | CLASS: **C** | DEGREE: **F** | COUNTS: **1** |
|---|---|---|---|---|---|

BIAS MOTIVATION: **UNKNOWN (MOTIVATION NOT KNOWN)** — METHOD ENTRY: — NUMBER PREMISES:

SCHOOL NAME: — SCHOOL TYPE: — CAMPUS?

OFFENDER SUSPECTED OF USING: **NOT APPLICABLE** — COURT ORDER TYPE:

SEQUENCE # OF — LOCATION TYPE: — TYPE WEAPON/FORCE INVOLVED — CRIMINAL ACTIVITY/GANG IFO

OFFENSE DESCRIPTION:

| OFFENSE CODE: | ASCF CODE: | KRS CODE: | CLASS: | DEGREE: | COUNTS: |
|---|---|---|---|---|---|

BIAS MOTIVATION: — METHOD ENTRY: — NUMBER PREMISES:

SCHOOL NAME: — SCHOOL TYPE: — CAMPUS?

OFFENDER SUSPECTED OF USING: — COURT ORDER TYPE:

SEQUENCE # OF — LOCATION TYPE: — TYPE WEAPON/FORCE INVOLVED — CRIMINAL ACTIVITY/GANG IFO

OFFENSE DESCRIPTION:

| OFFENSE CODE: | ASCF CODE: | KRS CODE: | CLASS: | DEGREE: | COUNTS: |
|---|---|---|---|---|---|

BIAS MOTIVATION: — METHOD ENTRY: — NUMBER PREMISES:

SCHOOL NAME: — SCHOOL TYPE: — CAMPUS?

OFFENDER SUSPECTED OF USING: — COURT ORDER TYPE:

**PROPERTY DATA**

**UNIT**

| SEQ # | PROPERTY DESCRIPTION | TYPE OF LOSS | VALUE | RECVRD VALUE | REC. COND. | DATE RECOVERED |
|---|---|---|---|---|---|---|
| 1 | AUTOMOBILES | STOLEN (NOT RECOVERED) | $25,000.00 | | | |

| UNIT TYPE | VEHICLE MAKE: | VEHICLE MODEL | YEAR | VEHICLE TYPE |
|---|---|---|---|---|
| ROADWAY VEHICLE | CHRYSLER | 200 SERIES | 2015 | SEDAN/4 DOOR |

| VEHICLE COLOR | VIN NUMBER | OWNER APPLIED # | | REGISTRATION STATE, YEAR, & NUMBER | | |
|---|---|---|---|---|---|---|
| BLUE | 1C3CCCAB0FN713891 | 5204029 | SC | 2015 | LEA350 | |

| VEHICLE DESCRIPTORS | KEYS LEFT IN UNIT? | OWNER |
|---|---|---|
| HERTZ RENTAL | YES | Victim 1 |

**GENERAL**

| SEQ # | PROPERTY DESCRIPTION | TYPE OF LOSS | VALUE | RECVRD VALUE | REC. COND. | DATE RECOVERED |
|---|---|---|---|---|---|---|
| | | | | | | |

PROPERTY DESCRIPTION

OWNER APPLED NUMBER — SERIAL NUMBER

MAKE — MODEL — OWNER

| TOTAL STOLEN VALUE: **$25,000.00** | TOTAL RECOVERED VALUE: **$0.00** | TOTAL VEHICLES STOLEN: **1** | TOTAL VEHICLES RECOVERED: **0** |
|---|---|---|---|

**STATUS**

| INCIDENT STATUS | CLOSED DATE | CLEARANCE TYPE | CLEARED EXCEPTIONALLY | EX. CLEARANCE DATE | UCR REPORTING FOR OTHER AGENCY |
|---|---|---|---|---|---|
| OPEN | | | | | YES ☐ |

| SUBMITTING OFFICER | INVESTIGATING OFFICER | UNIT/BADGE # | REVIEWED BY | TIME SPENT |
|---|---|---|---|---|
| J HAIRGROVE | J HAIRGROVE | 5855 | C COPE | 1 hrs |

Case ID: 151103380
Control No.: 17090690

# KYIBRS REPORT

## COMMONWEALTH OF KENTUCKY

KSP RECORDS

### VICTIM DATA

| VICTIM SEQUENCE | | VICTIM NAME | PHONE |
|---|---|---|---|
| 1 of 1 | | HERTZ CAR RENTAL | (502) 367-4636 |

| LICENSE/ID STATE: | LICENSE/ID NUMBER: |
|---|---|

Address Unknown ☐ ADDRESS: 4100 HURON DR — VICTIM TYPE: BUS

| CITY: LOUISVILLE | STATE: KY | ZIP CODE: 40209 | KY RESIDENT: |
|---|---|---|---|

| DATE OF BIRTH | SSN | HEIGHT | WEIGHT | EYE COLOR | HAIR COLOR |
|---|---|---|---|---|---|

| GENDER | RACE | ETHNIC ORIGIN | PEACE OFFICER? |
|---|---|---|---|
| | | | YES ☐ |

| NBR | OFFENDER # | VICTIM RELATIONSHIP TO OFFENDER: VICTIM WAS | NBR | OFFENDER # | VICTIM RELATIONSHIP TO OFFENDER: VICTIM WAS | NBR | INJURY TYPE |
|---|---|---|---|---|---|---|---|
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |

| VICTIM OF OFFENSE(S) | AGG ASSAULT/ HOMICIDE CIRC | ADDTL JUSTIFIABLE HOMICIDE CIRC |
|---|---|---|
| 24044 | | |

| LEOKA ASSIGNMENT | LEOKA ACTIVITY |
|---|---|

### SUSPECT/ARRESTEE DATA

| SUSPECT SEQ. # | NAME: | ARRESTED? | ARREST DATE |
|---|---|---|---|
| of | ALIAS: | YES ☐ | |

| LICENSE/ID STATE: | LICENSE/ID NUMBER: |
|---|---|

| ADDRESS: | DATE OF BIRTH: | PHONE: | KY RESIDENT: |
|---|---|---|---|

| CITY: | STATE: | ZIP CODE: |
|---|---|---|

| SSN | SEX | RACE | ETHNIC ORIGIN | HEIGHT | WEIGHT | EYE COLOR | HAIR COLOR |
|---|---|---|---|---|---|---|---|

| ARRESTEE SEQ. # | MULTIPLE ARREST IND. | ARREST TYPE | RELATED CITATION NUMBERS | | |
|---|---|---|---|---|---|
| of | | | 1 | 4 | 8 |
| ARRESTEE ARMED WITH | | | 2 | 5 | 7 |
| | | | 3 | 6 | 9 |

| SUSPECT SEQ. # | NAME: | ARRESTED? | ARREST DATE |
|---|---|---|---|
| of | ALIAS: | YES ☐ | |

| LICENSE/ID STATE: | LICENSE/ID NUMBER: |
|---|---|

| ADDRESS: | DATE OF BIRTH: | PHONE: | KY RESIDENT: |
|---|---|---|---|

| CITY: | STATE: | ZIP CODE: |
|---|---|---|

| SSN | SEX | RACE | ETHNIC ORIGIN | HEIGHT | WEIGHT | EYE COLOR | HAIR COLOR |
|---|---|---|---|---|---|---|---|

| ARRESTEE SEQ. # | MULTIPLE ARREST IND. | ARREST TYPE | RELATED CITATION NUMBERS | | |
|---|---|---|---|---|---|
| of | | | 1 | 4 | 7 |
| ARRESTEE ARMED WITH | | | 2 | 5 | 8 |
| | | | 3 | 6 | 9 |

### WITNESS DATA

| WITNESS SEQUENCE | WITNESS NAME | PHONE |
|---|---|---|
| of | | |

| LICENSE/ID STATE: | LICENSE/ID NUMBER: |
|---|---|

| ADDRESS: | DATE OF BIRTH |
|---|---|

| CITY: | STATE: | ZIP CODE: | SSN: |
|---|---|---|---|

Case ID: 151103380
Control No.: 17090690

# KYIBRS REPORT: UOR2 SUPPLEMENT

## COMMONWEALTH OF KENTUCKY

KSP RECORDS

*SYNOPSIS:*
Stolen vehicle

*MODUS OPERANDI:*

*DATE & TIME OF OCCURRENCE:*

*ACCUSED:*

*SUSPECTS:*

*STOLEN PROPERTY:*
2015 Chrysler 200   /  Blue
SC Reg LEA350
VIN - 1C3CCCAB0FN713891

*OTHER PROPERTY:*

*EVIDENCE & HOW MARKED:*

*EVIDENCE DISPOSITION:*

*INVESTIGATION:*
Hertz rental notified police of a stolen vehicle from their lot. Vehicle was returned on 8/21/15, but they have not seen vehicle since then.

*STATUS OF CASE:*
Open

*ATTACHMENT*

Case #: 151103380
Control No.: 17090690

*SUPPLEMENT*

# KYIBRS REPORT

## COMMONWEALTH OF KENTUCKY

KSP RECORDS

| ADMINISTRATIVE | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| AGENCY ORI/NAME **0566900 LOUISVILLE AIRPORT POLICE** | | | | | INCIDENT NUMBER **KY P15-0359** | | | |
| INCIDENT DATE/TIME | | EXACT/ESTIMATE | REPORT DATE | RECEIVED | DISPATCHED | ARRIVED | CLEARED | |
| **10/30/2015 12:50 TO 10/30/2015 12:50** | | **ESTIMATE** | **12/03/2015** | **12:00** | **12:01** | **12:15** | **12:39** | |
| REPORTED BY: **COX, BRANDI** | | | | | HOW REPORTED | | | |
| LICENSE/ID STATE: | LICENSE/ID NUMBER: | | | | | | | |
| ADDRESS: **600 TERMINAL DR** | | | | | | | | |
| CITY: **LOUISVILLE** | | STATE: **KY** | ZIP CODE: **40209** | | PHONE NUMBER: **(502) 235-6364** | | | |
| EXACT LOCATION OF OFFENSE | **TERMINAL DR** | | | | | SECTOR NO: | | |
| | ADDRESS: **600 TERMINAL DR** | | | | | | | |
| | CITY: **LOUISVILLE** | | | | STATE: **KY** | ZIP CODE: **40209** | | |
| | COUNTY: **JEFFERSON** | | LATITUDE **38 DEG** | **11.193 MIN** | LONGITUDE **85 DEG** | **44.502 MIN** | | |

| OFFENSE DATA | | | | |
|---|---|---|---|---|
| SEQUENCE # **1** OF **1** | LOCATION TYPE: **AIR/BUS/TRAIN TERMINAL** | | TYPE WEAPON/FORCE INVOLVED | CRIMINAL ACTIVITY/GANG IFO |
| OFFENSE DESCRIPTION: **THEFT BY FAILURE TO MAKE REQUIRED DISP OF PROPERTY $10,000 OR MORE** | | | | |
| OFFENSE CODE: **23231** | ASCF CODE: **0** | KRS CODE: **514.070** | CLASS: **C** DEGREE: **F** COUNTS: **1** | |
| BIAS MOTIVATION: **UNKNOWN (MOTIVATION NOT KNOWN)** | | METHOD ENTRY: | NUMBER PREMISES: | |
| SCHOOL NAME: | | SCHOOL TYPE: | | CAMPUS? |
| OFFENDER SUSPECTED OF USING: **NOT APPLICABLE** | | | COURT ORDER TYPE: | |
| SEQUENCE # OF | LOCATION TYPE: | | TYPE WEAPON/FORCE INVOLVED | CRIMINAL ACTIVITY/GANG IFO |
| OFFENSE DESCRIPTION: | | | | |
| OFFENSE CODE: | ASCF CODE: | KRS CODE: | CLASS: DEGREE: COUNTS: | |
| BIAS MOTIVATION: | | METHOD ENTRY: | NUMBER PREMISES: | |
| SCHOOL NAME: | | SCHOOL TYPE: | | CAMPUS? |
| OFFENDER SUSPECTED OF USING: | | | COURT ORDER TYPE: | |
| SEQUENCE # OF | LOCATION TYPE: | | TYPE WEAPON/FORCE INVOLVED | CRIMINAL ACTIVITY/GANG IFO |
| OFFENSE DESCRIPTION: | | | | |
| OFFENSE CODE: | ASCF CODE: | KRS CODE: | CLASS: DEGREE: COUNTS: | |
| BIAS MOTIVATION: | | METHOD ENTRY: | NUMBER PREMISES: | |
| SCHOOL NAME: | | SCHOOL TYPE: | | CAMPUS? |
| OFFENDER SUSPECTED OF USING: | | | COURT ORDER TYPE: | |

| PROPERTY DATA | | | | | | |
|---|---|---|---|---|---|---|
| SEQ # | PROPERTY DESCRIPTION | TYPE OF LOSS | VALUE | RECVRD VALUE | REC. COND. | DATE RECOVERED |
| 1 | AUTOMOBILES | STOLEN (NOT RECOVERED) | $13,000.00 | | | |
| UNIT | UNIT TYPE | VEHICLE MAKE: | VEHICLE MODEL | YEAR | VEHICLE TYPE | |
| | **ROADWAY VEHICLE** | **TOYOTA** | **COROLLA** | **2014** | **SEDAN/4 DOOR** | |
| | VEHICLE COLOR | VIN NUMBER | OWNER APPLIED # | | REGISTRATION STATE, YEAR, & NUMBER | |
| | **RED** | **2T1BURHE5EC145002** | | **KY** | **2015**   **698RML** | |
| | VEHICLE DESCRIPTORS | | | KEYS LEFT IN UNIT? | OWNER | |
| | | | | **YES** | **Victim 1** | |
| SEQ # | PROPERTY DESCRIPTION | TYPE OF LOSS | VALUE | RECVRD VALUE | REC. COND. | DATE RECOVERED |
| GENERAL | PROPERTY DESCRIPTION | | | | | |
| | OWNER APPLED NUMBER | | SERIAL NUMBER | | | |
| | MAKE | | MODEL | | OWNER | |

| TOTAL STOLEN VALUE: **$13,000.00** | TOTAL RECOVERED VALUE: **$0.00** | TOTAL VEHICLES STOLEN: **1** | TOTAL VEHICLES RECOVERED: **0** | |
|---|---|---|---|---|

| STATUS | | | | | | |
|---|---|---|---|---|---|---|
| INCIDENT STATUS | CLOSED DATE | CLEARANCE TYPE | CLEARED EXCEPTIONALLY | EX. CLEARANCE DATE | UCR REPORTING FOR OTHER AGENCY | |
| **CLOSED** | **01/19/2016** | **TIME CLOSED** | | | YES ☐ | |
| SUBMITTING OFFICER | INVESTIGATING OFFICER | UNIT/BADGE # | REVIEWED BY | | TIME SPENT | |
| **M SIMS** | **M SIMS** | **5826** | **J GRIMES** | | **1 hrs** | |

Case ID: 151103380
Control No.: 17090690

# KYIBRS REPORT

## COMMONWEALTH OF KENTUCKY

KSP RECORDS

### VICTIM DATA

| VICTIM SEQUENCE | VICTIM NAME | PHONE |
|---|---|---|
| 1 of 1 | **HERTZ RENTAL** | **(502) 235-6364** |

| LICENSE/ID STATE: | LICENSE/ID NUMBER: | |
|---|---|---|

Address Unknown ☐  ADDRESS: **600 TERMINAL DR**    VICTIM TYPE: **BUS**

| CITY: **LOUISVILLE** | STATE: **KY** | ZIP CODE: **40209** | KY RESIDENT: |
|---|---|---|---|

| DATE OF BIRTH | SSN | HEIGHT | WEIGHT | EYE COLOR | HAIR COLOR |
|---|---|---|---|---|---|

| GENDER | RACE | ETHNIC ORIGIN | PEACE OFFICER? |
|---|---|---|---|
| | | | YES ☐ |

| NBR | OFFENDER # | VICTIM RELATIONSHIP TO OFFENDER: VICTIM WAS | NBR | OFFENDER # | VICTIM RELATIONSHIP TO OFFENDER: VICTIM WAS | NBR | INJURY TYPE |
|---|---|---|---|---|---|---|---|
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |

| VICTIM OF OFFENSE(S) | AGG ASSAULT/ HOMICIDE CIRC | ADDTL JUSTIFIABLE HOMICIDE CIRC |
|---|---|---|
| 23231 | | |

| LEOKA ASSIGNMENT | LEOKA ACTIVITY |
|---|---|

### SUSPECT/ARRESTEE DATA

| SUSPECT SEQ. # | NAME: | | ARRESTED? | ARREST DATE |
|---|---|---|---|---|
| of | ALIAS: | | YES ☐ | |

| LICENSE/ID STATE: | LICENSE/ID NUMBER: |
|---|---|

| ADDRESS | DATE OF BIRTH: | PHONE: | KY RESIDENT: |
|---|---|---|---|

| CITY: | STATE: | ZIP CODE: |
|---|---|---|

| SSN | SEX | RACE | ETHNIC ORIGIN | HEIGHT | WEIGHT | EYE COLOR | HAIR COLOR |
|---|---|---|---|---|---|---|---|

| ARRESTEE SEQ. # | MULTIPLE ARREST IND. | ARREST TYPE | RELATED CITATION NUMBERS | | |
|---|---|---|---|---|---|
| of | | | 1 | 4 | 8 |
| | ARRESTEE ARMED WITH | | 2 | 5 | 7 |
| | | | 3 | 6 | 9 |

| SUSPECT SEQ. # | NAME: | | ARRESTED? | ARREST DATE |
|---|---|---|---|---|
| of | ALIAS: | | YES ☐ | |

| LICENSE/ID STATE: | LICENSE/ID NUMBER: |
|---|---|

| ADDRESS | DATE OF BIRTH: | PHONE: | KY RESIDENT: |
|---|---|---|---|

| CITY: | STATE: | ZIP CODE: |
|---|---|---|

| SSN | SEX | RACE | ETHNIC ORIGIN | HEIGHT | WEIGHT | EYE COLOR | HAIR COLOR |
|---|---|---|---|---|---|---|---|

| ARRESTEE SEQ. # | MULTIPLE ARREST IND. | ARREST TYPE | RELATED CITATION NUMBERS | | |
|---|---|---|---|---|---|
| of | | | 1 | 4 | 7 |
| | ARRESTEE ARMED WITH | | 2 | 5 | 8 |
| | | | 3 | 6 | 9 |

### WITNESS DATA

| WITNESS SEQUENCE | WITNESS NAME | PHONE |
|---|---|---|
| of | | |

| LICENSE/ID STATE: | LICENSE/ID NUMBER: |
|---|---|

| ADDRESS: | | DATE OF BIRTH |
|---|---|---|
| CITY: | STATE: | ZIP CODE: | SSN: |

Case ID: 151103380
Control No.: 17090690

## KYIBRS REPORT: UOR2 SUPPLEMENT

KSP RECORDS

### COMMONWEALTH OF KENTUCKY

**SYNOPSIS:**
ON 12/03/2015 Hertz called to report a non-return rental from 10/30/2015

**MODUS OPERANDI:**
Non-return rental of vehicle

**DATE & TIME OF OCCURRENCE:**
10/30/2015 12:50 hours

**ACCUSED:**
Deja Gates  L

**SUSPECTS:**
same

**STOLEN PROPERTY:**
2015 Toyota Corolla 4door Red Ky 698RML   VIN: 2T1BURHE5EC145002

**OTHER PROPERTY:**

**EVIDENCE & HOW MARKED:**
Hertz rental car

**EVIDENCE DISPOSITION:**
Open

**INVESTIGATION:**
Vehicle is reported to be at the renters address

**STATUS OF CASE:**
No e -warrant was filed for this case

**ATTACHMENT**

Case ID: 151103380

Control No.: 17090690

## CRIME SUPPLEMENT
### COMMONWEALTH OF KENTUCKY

KSP RECORDS

| | | | | |
|---|---|---|---|---|
| **ADMINISTRATIVE** | CASE/INCIDENT NUMBER: **KY P15-0359** | | REPORT DATE: | **12/7/2015** |
| | REPORTING AGENCY ORI/NAME: **0566900 LOUISVILLE AIRPORT POLICE** | | | |
| | PRIMARY INVESTIGATING AGENCY ORI/NAME: **0566900 LOUISVILLE AIRPORT POLICE** | | | |
| | REPORTING OFFICER NAME: **M SIMS** | | REPORTING OFFICER UNIT BADGE ID: **5826** | |
| | PRIMARY OFFICER UNIT BADGE ID: **5826** | | | |
| | REVIEWED BY: **C COPE** | | | |

| | | | | | |
|---|---|---|---|---|---|
| **WITNESS DATA** | WITNESS SEQUENCE of | WITNESS NAME | | | PHONE |
| | ADDRESS: | | | | DATE OF BIRTH |
| | CITY: | STATE: | ZIP CODE: | SSN: | |
| | WITNESS SEQUENCE of | WITNESS NAME | | | PHONE |
| | ADDRESS: | | | | DATE OF BIRTH |
| | CITY: | STATE: | ZIP CODE: | SSN: | |

### NARRATIVE

AS Of 12/07/2015 this case is closed due to Hertz not attempting to obtain a warrant on the person listed last on the Non -Return rental. Vehicle was cleared/cancelled from NCIC on 12/07/2015 at 1037a.m.

Case ID: 151103380
Control No.: 17090690

# KYIBRS REPORT

## COMMONWEALTH OF KENTUCKY

**KSP RECORDS**

### ADMINISTRATIVE

| AGENCY ORI/NAME | 0566900 LOUISVILLE AIRPORT POLICE | | | INCIDENT NUMBER | KY P15-0360 | | |
|---|---|---|---|---|---|---|---|

| | INCIDENT DATE/TIME | EXACT/ESTIMATE | REPORT DATE | RECEIVED | DISPATCHED | ARRIVED | CLEARED |
|---|---|---|---|---|---|---|---|
| | 10/21/2015 22:21 TO 12/03/2015 12:03 | ESTIMATE | 12/03/2015 | 12:03 | 12:03 | 12:09 | 12:16 |

| REPORTED BY: COX, BRANDI | | HOW REPORTED |
|---|---|---|
| LICENSE/ID STATE: | LICENSE/ID NUMBER: | |
| ADDRESS: 600 TERMINAL DR | | |
| CITY: LOUISVILLE | STATE: KY  ZIP CODE: 40209 | PHONE NUMBER: (502) 235-6364 |

| EXACT LOCATION OF OFFENSE | TERMINAL DR | | |
|---|---|---|---|
| | ADDRESS: 600 TERMINAL DR | | SECTOR NO: |
| | CITY: LOUISVILLE | STATE: KY | ZIP CODE: 40209 |
| | COUNTY: JEFFERSON | LATITUDE 38 DEG  11.172 MIN | LONGITUDE 85 DEG  44.558 MIN |

### OFFENSE DATA

| SEQUENCE # 1 OF 1 | LOCATION TYPE: AIR/BUS/TRAIN TERMINAL | TYPE WEAPON/FORCE INVOLVED | CRIMINAL ACTIVITY/GANG IFO |
|---|---|---|---|

| OFFENSE DESCRIPTION: THEFT BY FAILURE TO MAKE REQUIRED DISP OF PROPERTY $10,000 OR MORE | | | |
|---|---|---|---|
| OFFENSE CODE: 23231 | ASCF CODE: 0 | KRS CODE: 514.070 | CLASS: C  DEGREE: F  COUNTS: 1 |
| BIAS MOTIVATION: UNKNOWN (MOTIVATION NOT KNOWN) | METHOD ENTRY: | NUMBER PREMISES: | |
| SCHOOL NAME: | | SCHOOL TYPE: | CAMPUS? |
| OFFENDER SUSPECTED OF USING: NOT APPLICABLE | | COURT ORDER TYPE: | |

| SEQUENCE # OF | LOCATION TYPE: | TYPE WEAPON/FORCE INVOLVED | CRIMINAL ACTIVITY/GANG IFO |
|---|---|---|---|

| OFFENSE DESCRIPTION: | | | |
|---|---|---|---|
| OFFENSE CODE: | ASCF CODE: | KRS CODE: | CLASS:  DEGREE:  COUNTS: |
| BIAS MOTIVATION: | METHOD ENTRY: | NUMBER PREMISES: | |
| SCHOOL NAME: | | SCHOOL TYPE: | CAMPUS? |
| OFFENDER SUSPECTED OF USING: | | COURT ORDER TYPE: | |

| SEQUENCE # OF | LOCATION TYPE: | TYPE WEAPON/FORCE INVOLVED | CRIMINAL ACTIVITY/GANG IFO |
|---|---|---|---|

| OFFENSE DESCRIPTION: | | | |
|---|---|---|---|
| OFFENSE CODE: | ASCF CODE: | KRS CODE: | CLASS:  DEGREE:  COUNTS: |
| BIAS MOTIVATION: | METHOD ENTRY: | NUMBER PREMISES: | |
| SCHOOL NAME: | | SCHOOL TYPE: | CAMPUS? |
| OFFENDER SUSPECTED OF USING: | | COURT ORDER TYPE: | |

### PROPERTY DATA

| SEQ # | PROPERTY DESCRIPTION | TYPE OF LOSS | VALUE | RECVRD VALUE | REC. COND. | DATE RECOVERED |
|---|---|---|---|---|---|---|
| 1 | AUTOMOBILES | STOLEN (NOT RECOVERED) | $17,500.00 | | | |

**UNIT**

| UNIT TYPE | VEHICLE MAKE | VEHICLE MODEL | YEAR | VEHICLE TYPE | | |
|---|---|---|---|---|---|---|
| ROADWAY VEHICLE | TOYOTA | CAMRY | 2015 | SEDAN/4 DOOR | | |

| VEHICLE COLOR | VIN NUMBER | OWNER APPLIED # | REGISTRATION STATE, YEAR, & NUMBER | | |
|---|---|---|---|---|---|
| SILVER/ALUMINUM | 4T1BF1FKXFU951020 | | KY | 2015 | 825TKN |

| VEHICLE DESCRIPTORS | KEYS LEFT IN UNIT? | OWNER |
|---|---|---|
| | YES | Victim 1 |

| SEQ # | PROPERTY DESCRIPTION | TYPE OF LOSS | VALUE | RECVRD VALUE | REC. COND. | DATE RECOVERED |
|---|---|---|---|---|---|---|

**GENERAL**

| PROPERTY DESCRIPTION | | |
|---|---|---|
| OWNER APPLED NUMBER | SERIAL NUMBER | |
| MAKE | MODEL | OWNER |

| TOTAL STOLEN VALUE: $17,500.00 | TOTAL RECOVERED VALUE: $0.00 | TOTAL VEHICLES STOLEN: 1 | TOTAL VEHICLES RECOVERED: 0 |
|---|---|---|---|

### STATUS

| INCIDENT STATUS | CLOSED DATE | CLEARANCE TYPE | CLEARED EXCEPTIONALLY | EX. CLEARANCE DATE | UCR REPORTING FOR OTHER AGENCY |
|---|---|---|---|---|---|
| OPEN | | | | | YES ☐ |

| SUBMITTING OFFICER | INVESTIGATING OFFICER | UNIT/BADGE # | REVIEWED BY | TIME SPENT |
|---|---|---|---|---|
| D HAWKINS | D HAWKINS | 5842 | E SEDLOCK | 30 min |

Case ID: 151103380
Control No.: 17090690

# KYIBRS REPORT
## COMMONWEALTH OF KENTUCKY

**KSP RECORDS**

| VICTIM SEQUENCE | | VICTIM NAME | | | PHONE |
|---|---|---|---|---|---|
| 1 of 1 | **HERTZ CAR RENTAL** | | | | **(502) 235-6364** |

**VICTIM DATA**

| LICENSE/ID STATE: | | LICENSE/ID NUMBER: | | | |
|---|---|---|---|---|---|
| Address Unknown ☐ ADDRESS: **600 TERMERIAL DR** | | | | | VICTIM TYPE: **BUS** |
| CITY: **LOUISVILLE** | | STATE: **KY** | ZIP CODE: **40209** | KY RESIDENT: | |
| DATE OF BIRTH | SSN | HEIGHT | WEIGHT | EYE COLOR | HAIR COLOR |
| | | | | | |

| GENDER | RACE | ETHNIC ORIGIN | PEACE OFFICER? |
|---|---|---|---|
| | | | YES ☐ |

| NBR | OFFENDER # | VICTIM RELATIONSHIP TO OFFENDER: VICTIM WAS | NBR | OFFENDER # | VICTIM RELATIONSHIP TO OFFENDER: VICTIM WAS | NBR | INJURY TYPE |
|---|---|---|---|---|---|---|---|
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |

| VICTIM OF OFFENSE(S) | AGG ASSAULT/ HOMICIDE CIRC | ADDTL JUSTIFIABLE HOMICIDE CIRC |
|---|---|---|
| **23231** | | |

| LEOKA ASSIGNMENT | LEOKA ACTIVITY |
|---|---|
| | |

**SUSPECT/ARRESTEE DATA**

| SUSPECT SEQ.# | NAME: **MADDOX, JAQUISHA M** | | ARRESTED? | ARREST DATE |
|---|---|---|---|---|
| 1 of 1 | ALIAS: | | YES ☐ | |

| LICENSE/ID STATE: | | LICENSE/ID NUMBER: | | | |
|---|---|---|---|---|---|
| ADDRESS | | | DATE OF BIRTH: | PHONE: | KY RESIDENT: |
| CITY: | | STATE: | ZIP CODE: | | |
| SSN | SEX | RACE | ETHNIC ORIGIN | HEIGHT | WEIGHT | EYE COLOR | HAIR COLOR |
| | **UNKNOWN** **UNKNOWN** | | **UNKNOWN** | | | | |

| ARRESTEE SEQ.# | MULTIPLE ARREST IND. | ARREST TYPE | RELATED CITATION NUMBERS | | |
|---|---|---|---|---|---|
| of | | | 1 | 4 | 8 |
| | ARRESTEE ARMED WITH | | 2 | 5 | 7 |
| | | | 3 | 6 | 9 |

| SUSPECT SEQ.# | NAME: | | ARRESTED? | ARREST DATE |
|---|---|---|---|---|
| of | ALIAS: | | YES ☐ | |

| LICENSE/ID STATE: | | LICENSE/ID NUMBER: | | | |
|---|---|---|---|---|---|
| ADDRESS | | | DATE OF BIRTH: | PHONE: | KY RESIDENT: |
| CITY: | | STATE: | ZIP CODE: | | |
| SSN | SEX | RACE | ETHNIC ORIGIN | HEIGHT | WEIGHT | EYE COLOR | HAIR COLOR |
| | | | | | | | |

| ARRESTEE SEQ.# | MULTIPLE ARREST IND. | ARREST TYPE | RELATED CITATION NUMBERS | | |
|---|---|---|---|---|---|
| of | | | 1 | 4 | 7 |
| | ARRESTEE ARMED WITH | | 2 | 5 | 8 |
| | | | 3 | 6 | 9 |

**WITNESS DATA**

| WITNESS SEQUENCE | | WITNESS NAME | | PHONE |
|---|---|---|---|---|
| of | | | | |
| LICENSE/ID STATE: | | LICENSE/ID NUMBER: | | |
| ADDRESS: | | | | DATE OF BIRTH |
| CITY: | | STATE: | ZIP CODE: | SSN: |

| Page 2 of 3 | Incident Number: P15-0360 | Agency ORI: 0566900 | Badge #: 5842 |
|---|---|---|---|

Case ID: 151103380
Control No.: 17090690

# KYIBRS REPORT: UOR2 SUPPLEMENT

KSP RECORDS

## COMMONWEALTH OF KENTUCKY

*SYNOPSIS:*
Dispatched to Hertz Car Rental, reference to this vehicle being rented out and not returned. The vehicle was rented on 10-14-15 at 2242 hrs. Supposed to been returned on 10-21-15 at 2221 hrs, it was not.

*MODUS OPERANDI:*

*DATE & TIME OF OCCURRENCE:*

*ACCUSED:*

*SUSPECTS:*

*STOLEN PROPERTY:*

*OTHER PROPERTY:*

*EVIDENCE & HOW MARKED:*

*EVIDENCE DISPOSITION:*

*INVESTIGATION:*

*STATUS OF CASE:*

*ATTACHMENT*

Case ID: 151103380
Control No.: 17090690

AOC-E-035 WarCode: WA
Rev. 01-08
Commonwealth of Kentucky
Court of Justice
RCr 2.05; RCr2.06



| Case Number: | P15-0360 |
| County: | JEFFERSON |
| Court: | DISTRICT COURT |
| Warrant Number: | E05610002354395 |
| Generated: | 12/10/2015   9:23:55AM |

# SERVED

**Warrant of Arrest**
## Complaint Warrant

Page 1 of 1

*Plaintiff.* **COMMONWEALTH VS. JAQUISHA M MADDOX** *Defendant*

**TO ALL PEACE OFFICERS IN THE COMMONWEALTH OF KENTUCKY:** You are commanded to arrest the person named below and bring him/her forthwith before the JEFFERSON COUNTY - DISTRICT COURT. If Court is not in session, you shall deliver him/her to the Jailer of JEFFERSON County.

JAQUISHA M MADDOX

| Gender | Race | Date of Birth | Height | Weight | Operator License# | State |
|--------|------|---------------|--------|--------|-------------------|-------|
|        |      |               |        |        |                   |       |

[X] to answer charges that he/she committed the offense(s) of:

| Chg# | UOR Code | KRS | Type | Description | ASCF | Counts | Disp Dt | Disp |
|------|----------|-----|------|-------------|------|--------|---------|------|
| 1 | 24044 | 514.030 | F | TBUT OR DISP AUTO - $10,000 OR MORE BUT U/$1,000,0 | N/A | 1 | | |

[ ] The defendant may post bail in the amount of $ , secured by

[ ] The defendant may not give bail.

## Complaint

The Affiant, Brandi N Holland-Knox, states that on 10/21/2015 in JEFFERSON County, Kentucky, the above named defendant unlawfully: and until present, deft has failed to return a 2015 Toyota Camry valued at $23,795.00. Deft came into Hertz (Airport location) and rented the vehicle on 10/14/2015. Deft was supposed to return the car on 10/21/2015 and or pay additional rental fees. Deft failed to return the car. Deft will not answer telephone calls from Hertz. A certified letter was sent to deft's home, which was picked up. Deft has still not returned the vehicle. The car's whereabouts are unknown. Airport Police report # P15-0360

EXECUTION

Served By: JEFFERSON, JEFFERSON COUNTY SHERIFF DEPT., Other, Ebel, Eric. on 02/16/2016

Electronically signed by District Court Judge S.Collins on 12/9/2015 at 5:22:28PM.

Date printed:    **Thursday, December 10, 2015**

Agency Local Code:

Prosecutor R Webb-RAW

Case ID: 151103380
Control No.: 17090690

*SUPPLEMENT*

# KYIBRS REPORT
## COMMONWEALTH OF KENTUCKY

KSP RECORDS

| ADMINISTRATIVE | | | | | | | | |
|---|---|---|---|---|---|---|---|---|

**AGENCY ORI/NAME**   **0566900 LOUISVILLE AIRPORT POLICE**    **INCIDENT NUMBER**   **KY P15-0361**

| INCIDENT DATE/TIME | EXACT/ESTIMATE | REPORT DATE | RECEIVED | DISPATCHED | ARRIVED | CLEARED |
|---|---|---|---|---|---|---|
| 04/30/2015  TO  11/10/2015 | ESTIMATE | 12/03/2015 | 12:03 | 12:03 | 12:09 | 12:16 |

**REPORTED BY: KNOX, BRANDI**     HOW REPORTED

LICENSE/ID STATE:    LICENSE/ID NUMBER:

ADDRESS: **600 TERMINAL DR**

CITY: **LOUISVILLE**    STATE: **KY**   ZIP CODE: **40209**   PHONE NUMBER: **(502) 235-6364**

**EXACT LOCATION OF OFFENSE**

TERMINAL DR    SECTOR NO:

ADDRESS: **600 TERMINAL DR**

CITY: **LOUISVILLE**    STATE: **KY**   ZIP CODE: **40209**

COUNTY: **JEFFERSON**    LATITUDE **38 DEG  11.168 MIN**   LONGITUDE **85 DEG  44.578 MIN**

### OFFENSE DATA

| SEQUENCE # 1 OF 1 | LOCATION TYPE: AIR/BUS/TRAIN TERMINAL | TYPE WEAPON/FORCE INVOLVED | CRIMINAL ACTIVITY/GANG IFO |
|---|---|---|---|

OFFENSE DESCRIPTION: TBUT OR DISP AUTO - $10,000 OR MORE BUT U/$1,000,000

| OFFENSE CODE: 24044 | ASCF CODE: 0 | KRS CODE: 514.030 | CLASS: C | DEGREE: F | COUNTS: 1 |
|---|---|---|---|---|---|

BIAS MOTIVATION: NONE (NO BIAS)    METHOD ENTRY:    NUMBER PREMISES:

SCHOOL NAME:    SCHOOL TYPE:    CAMPUS?

OFFENDER SUSPECTED OF USING: NOT APPLICABLE    COURT ORDER TYPE:

| SEQUENCE # OF | LOCATION TYPE: | TYPE WEAPON/FORCE INVOLVED | CRIMINAL ACTIVITY/GANG IFO |
|---|---|---|---|

OFFENSE DESCRIPTION:

| OFFENSE CODE: | ASCF CODE: | KRS CODE: | CLASS: | DEGREE: | COUNTS: |
|---|---|---|---|---|---|

BIAS MOTIVATION:    METHOD ENTRY:    NUMBER PREMISES:

SCHOOL NAME:    SCHOOL TYPE:    CAMPUS?

OFFENDER SUSPECTED OF USING:    COURT ORDER TYPE:

| SEQUENCE # OF | LOCATION TYPE: | TYPE WEAPON/FORCE INVOLVED | CRIMINAL ACTIVITY/GANG IFO |
|---|---|---|---|

OFFENSE DESCRIPTION:

| OFFENSE CODE: | ASCF CODE: | KRS CODE: | CLASS: | DEGREE: | COUNTS: |
|---|---|---|---|---|---|

BIAS MOTIVATION:    METHOD ENTRY:    NUMBER PREMISES:

SCHOOL NAME:    SCHOOL TYPE:    CAMPUS?

OFFENDER SUSPECTED OF USING:    COURT ORDER TYPE:

### PROPERTY DATA

| SEQ # | PROPERTY DESCRIPTION | TYPE OF LOSS | VALUE | RECVRD VALUE | REC. COND. | DATE RECOVERED |
|---|---|---|---|---|---|---|
| 1 | AUTOMOBILES | STOLEN (NOT RECOVERED) | $11,000.00 | | | |

| UNIT | | | | |
|---|---|---|---|---|

| UNIT TYPE | VEHICLE MAKE | VEHICLE MODEL | YEAR | VEHICLE TYPE |
|---|---|---|---|---|
| ROADWAY VEHICLE | VOLKSWAGEN | PASSAT | 2013 | SEDAN/4 DOOR |

| VEHICLE COLOR | VIN NUMBER | OWNER APPLIED # | REGISTRATION STATE, YEAR, & NUMBER | | |
|---|---|---|---|---|---|
| BLACK | 1VWAP7A30DC119587 | | IL | 2015 | P858796 |

| VEHICLE DESCRIPTORS | KEYS LEFT IN UNIT? | OWNER |
|---|---|---|
| | YES | Victim 1 |

| SEQ # | PROPERTY DESCRIPTION | TYPE OF LOSS | VALUE | RECVRD VALUE | REC. COND. | DATE RECOVERED |
|---|---|---|---|---|---|---|

**GENERAL**

PROPERTY DESCRIPTION

OWNER APPLED NUMBER    SERIAL NUMBER

MAKE    MODEL    OWNER

| TOTAL STOLEN VALUE: | $11,000.00 | TOTAL RECOVERED VALUE: | $0.00 | TOTAL VEHICLES STOLEN: | 1 | TOTAL VEHICLES RECOVERED: | 0 |
|---|---|---|---|---|---|---|---|

### STATUS

| INCIDENT STATUS | CLOSED DATE | CLEARANCE TYPE | CLEARED EXCEPTIONALLY | EX. CLEARANCE DATE | UCR REPORTING FOR OTHER AGENCY |
|---|---|---|---|---|---|
| CLOSED | 02/15/2016 | TIME CLOSED | | | YES ☐ |

| SUBMITTING OFFICER | INVESTIGATING OFFICER | UNIT/BADGE # | REVIEWED BY | TIME SPENT |
|---|---|---|---|---|
| D HAWKINS | D HAWKINS | 5842 | E SEDLOCK | 30 min |

Case ID: 151103380
Control No.: 17090690

# KYIBRS REPORT

## COMMONWEALTH OF KENTUCKY

KSP RECORDS

### VICTIM DATA

| VICTIM SEQUENCE | | VICTIM NAME | | | | PHONE |
|---|---|---|---|---|---|---|
| 1 of 1 | | HERTZ CAR RENTAL | | | | (502) 235-6364 |

| LICENSE/ID STATE: | | LICENSE/ID NUMBER: | | |
|---|---|---|---|---|

| Address Unknown ☐ | ADDRESS: 600 TERMINAL DR | | VICTIM TYPE: BUS |
|---|---|---|---|

| CITY: LOUISVILLE | STATE: KY | ZIP CODE: 40209 | KY RESIDENT: |
|---|---|---|---|

| DATE OF BIRTH | SSN | HEIGHT | WEIGHT | EYE COLOR | HAIR COLOR |
|---|---|---|---|---|---|

| GENDER | RACE | ETHNIC ORIGIN | PEACE OFFICER? |
|---|---|---|---|
| | | | YES ☐ |

| NBR | OFFENDER # | VICTIM RELATIONSHIP TO OFFENDER: VICTIM WAS | NBR | OFFENDER # | VICTIM RELATIONSHIP TO OFFENDER: VICTIM WAS | NBR | INJURY TYPE |
|---|---|---|---|---|---|---|---|
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |

| VICTIM OF OFFENSE(S) | AGG ASSAULT/ HOMICIDE CIRC | ADDTL. JUSTIFIABLE HOMICIDE CIRC |
|---|---|---|
| 24044 | | |

| LEOKA ASSIGNMENT | LEOKA ACTIVITY |
|---|---|

### SUSPECT/ARRESTEE DATA

| SUSPECT SEQ. # | NAME: | | ARRESTED? | ARREST DATE |
|---|---|---|---|---|
| of | ALIAS: | | YES ☐ | |

| LICENSE/ID STATE: | | LICENSE/ID NUMBER: | |
|---|---|---|---|

| ADDRESS | | DATE OF BIRTH: | PHONE: | KY RESIDENT: |
|---|---|---|---|---|

| CITY: | STATE: | ZIP CODE: |
|---|---|---|

| SSN | SEX | RACE | ETHNIC ORIGIN | HEIGHT | WEIGHT | EYE COLOR | HAIR COLOR |
|---|---|---|---|---|---|---|---|

| ARRESTEE SEQ. # | MULTIPLE ARREST IND. | ARREST TYPE | RELATED CITATION NUMBERS | | | |
|---|---|---|---|---|---|---|
| of | | | 1 | 4 | 8 | |
| ARRESTEE ARMED WITH | | | 2 | 5 | 7 | |
| | | | 3 | 6 | 9 | |

| SUSPECT SEQ. # | NAME: | | ARRESTED? | ARREST DATE |
|---|---|---|---|---|
| of | ALIAS: | | YES ☐ | |

| LICENSE/ID STATE: | | LICENSE/ID NUMBER: | |
|---|---|---|---|

| ADDRESS | | DATE OF BIRTH: | PHONE: | KY RESIDENT: |
|---|---|---|---|---|

| CITY: | STATE: | ZIP CODE: |
|---|---|---|

| SSN | SEX | RACE | ETHNIC ORIGIN | HEIGHT | WEIGHT | EYE COLOR | HAIR COLOR |
|---|---|---|---|---|---|---|---|

| ARRESTEE SEQ. # | MULTIPLE ARREST IND. | ARREST TYPE | RELATED CITATION NUMBERS | | | |
|---|---|---|---|---|---|---|
| of | | | 1 | 4 | 7 | |
| ARRESTEE ARMED WITH | | | 2 | 5 | 8 | |
| | | | 3 | 6 | 9 | |

### WITNESS DATA

| WITNESS SEQUENCE | | WITNESS NAME | PHONE |
|---|---|---|---|
| of | | | |

| LICENSE/ID STATE: | | LICENSE/ID NUMBER: | |
|---|---|---|---|

| ADDRESS: | | DATE OF BIRTH |
|---|---|---|

| CITY: | STATE: | ZIP CODE: | SSN: |
|---|---|---|---|

Case ID: 151103380
Control No.: 17090690

# KYIBRS REPORT: UOR2 SUPPLEMENT

KSP RECORDS

### COMMONWEALTH OF KENTUCKY

*SYNOPSIS:*
Dispatched to Hertz Car Rental in reference to a vehicle being stolen . The vehicle was last seen in the lot on 04-30-15. The vehicle was a Volkswagen Passat 4 door black in color. Illinois tag # P858796.

*MODUS OPERANDI:*

*DATE & TIME OF OCCURRENCE:*

*ACCUSED:*

*SUSPECTS:*

*STOLEN PROPERTY:*

*OTHER PROPERTY:*

*EVIDENCE & HOW MARKED:*

*EVIDENCE DISPOSITION:*

*INVESTIGATION:*

*STATUS OF CASE:*
This case is closed. JCSO called and reported LMPD 6th division recovered the vehicle on the Bardstown Rd. At Hertz lot undamaged. LMPD Officer called shortly after and reported that the vehicle was a misplaced inventory vehicle and not stolen .

*ATTACHMENT*

Case No.: 151103380
Control No.: 17090690

# KYIBRS REPORT

## COMMONWEALTH OF KENTUCKY

KSP RECORDS

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| **AGENCY ORI/NAME** 0566900 LOUISVILLE AIRPORT POLICE | | | | | INCIDENT NUMBER | KY P16-0020 | |

**ADMINISTRATIVE**

| INCIDENT DATE/TIME | EXACT/ESTIMATE | REPORT DATE | RECEIVED | DISPATCHED | ARRIVED | CLEARED |
|---|---|---|---|---|---|---|
| 12/10/2015 12:00 TO 01/20/2016 12:00 | **ESTIMATE** | 01/20/2016 | 11:00 | 11:00 | 11:01 | 11:59 |
| REPORTED BY: S, BRANDI | | | | | HOW REPORTED | |

| LICENSE/ID STATE: | LICENSE/ID NUMBER: | | |
|---|---|---|---|
| ADDRESS: 600 TERMINAL DR #11 | | | |
| CITY: LOUISVILLE | STATE: KY | ZIP CODE: 40209 | PHONE NUMBER: (502) 235-6364 |

| EXACT LOCATION OF OFFENSE | HURON AVE | | |
|---|---|---|---|
| | ADDRESS: HURON AVE | | SECTOR NO: |
| | CITY: LOUISVILLE | STATE: KY | ZIP CODE: 40209 |
| COUNTY: JEFFERSON | | LATITUDE 38 DEG 11.645 MIN | LONGITUDE 85 DEG 45.065 MIN |

**OFFENSE DATA**

| SEQUENCE # 1 OF 1 | LOCATION TYPE: AIR/BUS/TRAIN TERMINAL | TYPE WEAPON/FORCE INVOLVED | CRIMINAL ACTIVITY/GANG IFO |
|---|---|---|---|
| OFFENSE DESCRIPTION: TBUT OR DISP AUTO - $10,000 OR MORE BUT U/$1,000,000 | | | |

| OFFENSE CODE: 24044 | ASCF CODE: 0 | KRS CODE: 514.030 | CLASS: C | DEGREE: F | COUNTS: 1 |
|---|---|---|---|---|---|
| BIAS MOTIVATION: NONE (NO BIAS) | | METHOD ENTRY: | NUMBER PREMISES: | | |
| SCHOOL NAME: | | | SCHOOL TYPE: | | CAMPUS? |
| OFFENDER SUSPECTED OF USING: NOT APPLICABLE | | | COURT ORDER TYPE: | | |

| SEQUENCE # OF | LOCATION TYPE: | TYPE WEAPON/FORCE INVOLVED | CRIMINAL ACTIVITY/GANG IFO |
|---|---|---|---|
| OFFENSE DESCRIPTION: | | | |

| OFFENSE CODE: | ASCF CODE: | KRS CODE: | CLASS: | DEGREE: | COUNTS: |
|---|---|---|---|---|---|
| BIAS MOTIVATION: | | METHOD ENTRY: | NUMBER PREMISES: | | |
| SCHOOL NAME: | | | SCHOOL TYPE: | | CAMPUS? |
| OFFENDER SUSPECTED OF USING: | | | COURT ORDER TYPE: | | |

| SEQUENCE # OF | LOCATION TYPE: | TYPE WEAPON/FORCE INVOLVED | CRIMINAL ACTIVITY/GANG IFO |
|---|---|---|---|
| OFFENSE DESCRIPTION: | | | |

| OFFENSE CODE: | ASCF CODE: | KRS CODE: | CLASS: | DEGREE: | COUNTS: |
|---|---|---|---|---|---|
| BIAS MOTIVATION: | | METHOD ENTRY: | NUMBER PREMISES: | | |
| SCHOOL NAME: | | | SCHOOL TYPE: | | CAMPUS? |
| OFFENDER SUSPECTED OF USING: | | | COURT ORDER TYPE: | | |

**PROPERTY DATA**

| SEQ # | PROPERTY DESCRIPTION | TYPE OF LOSS | VALUE | RECVRD VALUE | REC. COND. | DATE RECOVERED |
|---|---|---|---|---|---|---|
| 1 | AUTOMOBILES | STOLEN (NOT RECOVERED) | $18,000.00 | | | |

**UNIT**

| UNIT TYPE | VEHICLE MAKE: | VEHICLE MODEL | YEAR | VEHICLE TYPE |
|---|---|---|---|---|
| ROADWAY VEHICLE | HYUNDAI | ELANTRA | 2016 | SEDAN/4 DOOR |

| VEHICLE COLOR | VIN NUMBER | OWNER APPLIED # | REGISTRATION STATE, YEAR, & NUMBER | | |
|---|---|---|---|---|---|
| SILVER/ALUMINUM | 5npdh4ae6gh751693 | | KY | 2017 | 541TYV |

| VEHICLE DESCRIPTORS | KEYS LEFT IN UNIT? | OWNER |
|---|---|---|
| RENTAL CAR | YES | Victim 1 |

| SEQ # | PROPERTY DESCRIPTION | TYPE OF LOSS | VALUE | RECVRD VALUE | REC. COND. | DATE RECOVERED |
|---|---|---|---|---|---|---|
| | | | | | | |

**GENERAL**

| PROPERTY DESCRIPTION | | |
|---|---|---|
| OWNER APPLED NUMBER | SERIAL NUMBER | |
| MAKE | MODEL | OWNER |

| TOTAL STOLEN VALUE: $18,000.00 | TOTAL RECOVERED VALUE: $0.00 | TOTAL VEHICLES STOLEN: 1 | TOTAL VEHICLES RECOVERED: 0 |
|---|---|---|---|

**STATUS**

| INCIDENT STATUS | CLOSED DATE | CLEARANCE TYPE | CLEARED EXCEPTIONALLY | EX. CLEARANCE DATE | UCR REPORTING FOR OTHER AGENCY |
|---|---|---|---|---|---|
| UNFOUNDED | | | | | YES ☐ |

| SUBMITTING OFFICER | INVESTIGATING OFFICER | UNIT/BADGE # | REVIEWED BY | TIME SPENT |
|---|---|---|---|---|
| M SIMS | M SIMS | 5826 | J GRIMES | 1 hrs |

Case ID: 151103380
Control No.: 17090690

# KYIBRS REPORT
## COMMONWEALTH OF KENTUCKY

KSP RECORDS

| VICTIM SEQUENCE | | VICTIM NAME | | PHONE |
|---|---|---|---|---|
| 1 of 1 | **HERTZ RENTAL** | | | **(502) 235-6364** |

| LICENSE/ID STATE: | | LICENSE/ID NUMBER: | | |
|---|---|---|---|---|

**Address Unknown** ☐ ADDRESS: **600 TERMINAL DR #11**   VICTIM TYPE: **BUS**

CITY: **LOUISVILLE**   STATE: **KY**   ZIP CODE: **40209**   KY RESIDENT:

| DATE OF BIRTH | SSN | HEIGHT | WEIGHT | EYE COLOR | HAIR COLOR |
|---|---|---|---|---|---|

| GENDER | RACE | ETHNIC ORIGIN | PEACE OFFICER? YES ☐ |
|---|---|---|---|

| NBR | OFFENDER # | VICTIM RELATIONSHIP TO OFFENDER: VICTIM WAS | NBR | OFFENDER # | VICTIM RELATIONSHIP TO OFFENDER: VICTIM WAS | NBR | INJURY TYPE |
|---|---|---|---|---|---|---|---|
| | | | | | | | |
| | | | | | | | |

| VICTIM OF OFFENSE(S) | AGG ASSAULT/ HOMICIDE CIRC | ADDTL JUSTIFIABLE HOMICIDE CIRC |
|---|---|---|
| **24044** | | |

| LEOKA ASSIGNMENT | LEOKA ACTIVITY |
|---|---|

**SUSPECT/ARRESTEE DATA**

| SUSPECT SEQ.# | NAME: | | ARRESTED? YES ☐ | ARREST DATE |
|---|---|---|---|---|
| of | ALIAS: | | | |

| LICENSE/ID STATE: | LICENSE/ID NUMBER: | | | |
|---|---|---|---|---|

| ADDRESS | | DATE OF BIRTH: | PHONE: | KY RESIDENT: |
|---|---|---|---|---|

| CITY: | STATE: | ZIP CODE: | |
|---|---|---|---|

| SSN | SEX | RACE | ETHNIC ORIGIN | HEIGHT | WEIGHT | EYE COLOR | HAIR COLOR |
|---|---|---|---|---|---|---|---|

| ARRESTEE SEQ.# | MULTIPLE ARREST IND. | ARREST TYPE | RELATED CITATION NUMBERS | | |
|---|---|---|---|---|---|
| of | | | 1 | 4 | 8 |
| | ARRESTEE ARMED WITH | | 2 | 5 | 7 |
| | | | 3 | 6 | 9 |

**SUSPECT/ARRESTEE DATA**

| SUSPECT SEQ.# | NAME: | | ARRESTED? YES ☐ | ARREST DATE |
|---|---|---|---|---|
| of | ALIAS: | | | |

| LICENSE/ID STATE: | LICENSE/ID NUMBER: | | | |
|---|---|---|---|---|

| ADDRESS | | DATE OF BIRTH: | PHONE: | KY RESIDENT: |
|---|---|---|---|---|

| CITY: | STATE: | ZIP CODE: | |
|---|---|---|---|

| SSN | SEX | RACE | ETHNIC ORIGIN | HEIGHT | WEIGHT | EYE COLOR | HAIR COLOR |
|---|---|---|---|---|---|---|---|

| ARRESTEE SEQ.# | MULTIPLE ARREST IND. | ARREST TYPE | RELATED CITATION NUMBERS | | |
|---|---|---|---|---|---|
| of | | | 1 | 4 | 7 |
| | ARRESTEE ARMED WITH | | 2 | 5 | 8 |
| | | | 3 | 6 | 9 |

**WITNESS DATA**

| WITNESS SEQUENCE | WITNESS NAME | PHONE |
|---|---|---|
| of | | |

| LICENSE/ID STATE: | LICENSE/ID NUMBER: | |
|---|---|---|

| ADDRESS: | | DATE OF BIRTH |
|---|---|---|

| CITY: | STATE: | ZIP CODE: | SSN: |
|---|---|---|---|

Case ID: 151103380
Control No.: 17090690

## KYIBRS REPORT: UOR2 SUPPLEMENT

KSP RECORDS

### COMMONWEALTH OF KENTUCKY

**SYNOPSIS:**
On 01/20/2016 Brandi with Hertz rental Car Company contacted and filed a statement that the following vehicle has been missing from the rental car lot since the original renter properly returned said vehicle on 12/10/2015.

**MODUS OPERANDI:**
UNKNOWN

**DATE & TIME OF OCCURRENCE:**
12/10/2015 - 01/13/2016

**ACCUSED:**
NONE

**SUSPECTS:**
NONE

**STOLEN PROPERTY:**
2016 Hyundai Elantra 4D Silver Vin: 5npdh4ae6gh751693  ky lic:541TYV

**OTHER PROPERTY:**
NONE

**EVIDENCE & HOW MARKED:**
N/A

**EVIDENCE DISPOSITION:**
N/A

**INVESTIGATION:**
REPORT TAKEN. ENTERNED INTO NCIC. DEA ASSISTING IN INVESTIGATION.

**STATUS OF CASE:**
OPEN,

**ATTACHMENT**
N/A

Case ID: 151103380
Control No.: 17090690

# KYIBRS REPORT
### COMMONWEALTH OF KENTUCKY

KSP RECORDS

| ADMINISTRATIVE | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| AGENCY ORI/NAME  **0566900 LOUISVILLE AIRPORT POLICE** | | | | INCIDENT NUMBER  **KY P14-0102** | | | | |
| INCIDENT DATE/TIME | | EXACT/ESTIMATE | REPORT DATE | RECEIVED | DISPATCHED | ARRIVED | | CLEARED |
| **04/21/2014 23:59 TO 04/21/2014 23:59** | | **ESTIMATE** | **05/30/2014** | **10:50** | | | | **11:20** |
| REPORTED BY:  **WILLIAMS, DEBBIE** | | | | | HOW REPORTED | | | |
| LICENSE/ID STATE: | LICENSE/ID NUMBER: | | | | | | | |
| ADDRESS:  **600 TERMINAL DR** | | | | | | | | |
| CITY:  **LOUISVILLE** | | STATE:  **KY** | ZIP CODE:  **40209** | PHONE NUMBER:  **(502) 210-2004** | | | | |
| EXACT LOCATION OF OFFENSE | **LOWER TERMINAL DR** | | | | | SECTOR NO: | | |
| | ADDRESS:  **LOWER TERMINAL DR** | | | | | | | |
| | CITY:  **LOUISVILLE** | | | | STATE:  **KY** | ZIP CODE:  **40209** | | |
| | COUNTY:  **JEFFERSON** | | LATITUDE  **38 DEG** | **11.182 MIN** | LONGITUDE  **85 DEG** | **44.517 MIN** | | |

| OFFENSE DATA | | | |
|---|---|---|---|
| SEQUENCE #  **1** OF **1** | LOCATION TYPE:  **AIR/BUS/TRAIN TERMINAL** | TYPE WEAPON/FORCE INVOLVED | CRIMINAL ACTIVITY/GANG IFO |
| OFFENSE DESCRIPTION:  **TBUT OR DISP AUTO - $10,000 OR MORE BUT U/$1,000,000** | | | |
| OFFENSE CODE:  **24044**  ASCF CODE:  **0**  KRS CODE:  **514.030** | CLASS:  **C**  DEGREE:  **F**  COUNTS:  **1** | | |
| BIAS MOTIVATION:  **NONE (NO BIAS)** | METHOD ENTRY: | NUMBER PREMISES: | |
| SCHOOL NAME: | SCHOOL TYPE: | | CAMPUS? |
| OFFENDER SUSPECTED OF USING:  **NOT APPLICABLE** | COURT ORDER TYPE: | | |
| SEQUENCE # OF | LOCATION TYPE: | TYPE WEAPON/FORCE INVOLVED | CRIMINAL ACTIVITY/GANG IFO |
| OFFENSE DESCRIPTION: | | | |
| OFFENSE CODE:  ASCF CODE:  KRS CODE: | CLASS:  DEGREE:  COUNTS: | | |
| BIAS MOTIVATION: | METHOD ENTRY: | NUMBER PREMISES: | |
| SCHOOL NAME: | SCHOOL TYPE: | | CAMPUS? |
| OFFENDER SUSPECTED OF USING: | COURT ORDER TYPE: | | |
| SEQUENCE # OF | LOCATION TYPE: | TYPE WEAPON/FORCE INVOLVED | CRIMINAL ACTIVITY/GANG IFO |
| OFFENSE DESCRIPTION: | | | |
| OFFENSE CODE:  ASCF CODE:  KRS CODE: | CLASS:  DEGREE:  COUNTS: | | |
| BIAS MOTIVATION: | METHOD ENTRY: | NUMBER PREMISES: | |
| SCHOOL NAME: | SCHOOL TYPE: | | CAMPUS? |
| OFFENDER SUSPECTED OF USING: | COURT ORDER TYPE: | | |

| PROPERTY DATA / UNIT | | | | | | |
|---|---|---|---|---|---|---|
| SEQ # | PROPERTY DESCRIPTION | TYPE OF LOSS | VALUE | RECVRD VALUE | REC. COND. | DATE RECOVERED |
| 1 | AUTOMOBILES | STOLEN (NOT RECOVERED) | $25,176.02 | | | |
| | UNIT TYPE | VEHICLE MAKE: | VEHICLE MODEL | YEAR | VEHICLE TYPE | |
| | ROADWAY VEHICLE | CHEVROLET | IMPALA | 2014 | SEDAN/4 DOOR | |
| | VEHICLE COLOR | VIN NUMBER | OWNER APPLIED # | | REGISTRATION STATE, YEAR, & NUMBER | |
| | WHITE | 1G11X5SL0EU151871 | | KY | 2014  971RCA | |
| | VEHICLE DESCRIPTORS | | | | KEYS LEFT IN UNIT? | OWNER |
| | NA | | | | UNKNOWN | Victim 1 |
| SEQ # | PROPERTY DESCRIPTION | TYPE OF LOSS | VALUE | RECVRD VALUE | REC. COND. | DATE RECOVERED |

| GENERAL | | | |
|---|---|---|---|
| PROPERTY DESCRIPTION | | | |
| OWNER APPLED NUMBER | | SERIAL NUMBER | |
| MAKE | | MODEL | OWNER |

| TOTAL STOLEN VALUE:  **$25,176.02** | TOTAL RECOVERED VALUE:  **$0.00** | TOTAL VEHICLES STOLEN:  **1** | TOTAL VEHICLES RECOVERED:  **0** |
|---|---|---|---|

| STATUS | | | | | |
|---|---|---|---|---|---|
| INCIDENT STATUS | CLOSED DATE | CLEARANCE TYPE | CLEARED EXCEPTIONALLY | EX. CLEARANCE DATE | UCR REPORTING FOR OTHER AGENCY |
| **OPEN** | | | | | YES ☐ |
| SUBMITTING OFFICER | INVESTIGATING OFFICER | UNIT/BADGE # | REVIEWED BY | | TIME SPENT |
| **J MUDD** | **J MUDD** | **5844** | **B SIMS** | | **30 min** |

Case ID: 151103380
Control No.: 17090690

# KYIBRS REPORT
## COMMONWEALTH OF KENTUCKY

KSP RECORDS

**VICTIM DATA**

| VICTIM SEQUENCE | VICTIM NAME | PHONE |
|---|---|---|
| 1 of 1 | HERTZ | |

| LICENSE/ID STATE: | LICENSE/ID NUMBER: | |
|---|---|---|

| Address Unknown ☐ | ADDRESS: 600 TERMINAL DR | VICTIM TYPE: BUS |
|---|---|---|

| CITY: LOUISVILLE | STATE: KY | ZIP CODE: 40209 | KY RESIDENT: |
|---|---|---|---|

| DATE OF BIRTH | SSN | HEIGHT | WEIGHT | EYE COLOR | HAIR COLOR |
|---|---|---|---|---|---|

| GENDER | RACE | ETHNIC ORIGIN | PEACE OFFICER? YES ☐ |
|---|---|---|---|

| NBR | OFFENDER # | VICTIM RELATIONSHIP TO OFFENDER: VICTIM WAS | NBR | OFFENDER # | VICTIM RELATIONSHIP TO OFFENDER: VICTIM WAS | NBR | INJURY TYPE |
|---|---|---|---|---|---|---|---|

| VICTIM OF OFFENSE(S) | AGG ASSAULT/ HOMICIDE CIRC | ADDTL JUSTIFIABLE HOMICIDE CIRC |
|---|---|---|
| 24044 | | |

| LEOKA ASSIGNMENT | LEOKA ACTIVITY |
|---|---|

**SUSPECT/ARRESTEE DATA**

| SUSPECT SEQ. # of | NAME: | ARRESTED? YES ☐ | ARREST DATE |
|---|---|---|---|
| | ALIAS: | | |

| LICENSE/ID STATE: | LICENSE/ID NUMBER: |
|---|---|

| ADDRESS | DATE OF BIRTH: | PHONE: | KY RESIDENT: |
|---|---|---|---|

| CITY: | STATE: | ZIP CODE: |
|---|---|---|

| SSN | SEX | RACE | ETHNIC ORIGIN | HEIGHT | WEIGHT | EYE COLOR | HAIR COLOR |
|---|---|---|---|---|---|---|---|

| ARRESTEE SEQ. # of | MULTIPLE ARREST IND. | ARREST TYPE | RELATED CITATION NUMBERS | | |
|---|---|---|---|---|---|
| | | | 1 | 4 | 8 |
| ARRESTEE ARMED WITH | | | 2 | 5 | 7 |
| | | | 3 | 6 | 9 |

| SUSPECT SEQ. # of | NAME: | ARRESTED? YES ☐ | ARREST DATE |
|---|---|---|---|
| | ALIAS: | | |

| LICENSE/ID STATE: | LICENSE/ID NUMBER: |
|---|---|

| ADDRESS | DATE OF BIRTH: | PHONE: | KY RESIDENT: |
|---|---|---|---|

| CITY: | STATE: | ZIP CODE: |
|---|---|---|

| SSN | SEX | RACE | ETHNIC ORIGIN | HEIGHT | WEIGHT | EYE COLOR | HAIR COLOR |
|---|---|---|---|---|---|---|---|

| ARRESTEE SEQ. # of | MULTIPLE ARREST IND. | ARREST TYPE | RELATED CITATION NUMBERS | | |
|---|---|---|---|---|---|
| | | | 1 | 4 | 7 |
| ARRESTEE ARMED WITH | | | 2 | 5 | 8 |
| | | | 3 | 6 | 9 |

**WITNESS DATA**

| WITNESS SEQUENCE of | WITNESS NAME | PHONE |
|---|---|---|

| LICENSE/ID STATE: | LICENSE/ID NUMBER: |
|---|---|

| ADDRESS: | DATE OF BIRTH |
|---|---|

| CITY: | STATE: | ZIP CODE: | SSN: |
|---|---|---|---|

Case ID: 151103380
Control No.: 17090690

## KYIBRS REPORT: UOR2 SUPPLEMENT

KSP RECORDS

### COMMONWEALTH OF KENTUCKY

*SYNOPSIS:*
Suspect rented the vehicle and failed to return on due date.

*MODUS OPERANDI:*
Suspect rented the car and failed to return the car on agreed upon due date.

*DATE & TIME OF OCCURRENCE:*
04/21/2014 2359 is the date that the agreement expired

*ACCUSED:*
See suspect

*SUSPECTS:*

*STOLEN PROPERTY:*
2014 Chevrolet Impala
White
VIN-   1G11X5SLOEU151871
REG-   KY-971RCA

*OTHER PROPERTY:*
NA

*EVIDENCE & HOW MARKED:*
NA

*EVIDENCE DISPOSITION:*
NA

*INVESTIGATION:*
Debbie Williams came to the Police office on 05-30-2014 at 1050hrs and reported a rented 2014 Chevy Impala stolen from her business, Hertz Rental. The car was rented by the suspect on 03-08-2014 and never returned. The agreement was extended to 04-21-2014 and attempts were made by Hertz to locate suspect for vehicle return but no contact was made.  Debbie went to the county attorney and had a warrant issued for the suspect.

*STATUS OF CASE:*
Open

*ATTACHMENT*
NA

Case ID: 151103380
Control No.: 17090690

# EXHIBIT 8

Case ID: 151103380
Control No.: 17090690

United States Courts
Southern District of Texas
FILED

JAN 20 2017

David J. Bradley, Clerk of Court

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION**

| | | |
|---|---|---|
| MICHAEL GRAY | § | |
| | § | |
| *Plaintiff*, | § | |
| VS. | § | CIVIL ACTION NO. 3:15-CV-92 |
| | § | |
| THE HERTZ CORPORATION | § | |
| | § | |
| *Defendant*. | § | |
| | § | |

## JURY CHARGE

MEMBERS OF THE JURY:

It is my duty and responsibility to instruct you on the law you are to apply in this case. The law contained in these instructions is the only law you may follow. It is your duty to follow what I instruct you the law is, regardless of any opinion that you might have as to what the law ought to be.

If I have given you the impression during the trial that I favor either party, you must disregard that impression. If I have given you the impression during the trial that I have an opinion about the facts of this case, you must disregard that impression. You are the sole judges of the facts of this case. Other than my instructions to you on the law, you should disregard anything I may have said or done during the trial in arriving at your verdict.

You should consider all of the instructions about the law as a whole and regard each instruction in light of the others, without isolating a particular statement or paragraph.

The testimony of the witnesses and other exhibits introduced by the parties constitute the evidence. The statements of counsel are not evidence; they are only arguments. It is important for you to distinguish between the arguments of counsel and the evidence on which those arguments rest. What the lawyers say or do is not evidence. You may, however, consider their arguments in light of the evidence that has been admitted and determine whether the evidence admitted in this trial supports the

Case ID: 151103380
Control No.: 17090690

arguments. You must determine the facts from all the testimony that you have heard and the other evidence submitted. You are the judges of the facts, but in finding those facts, you must apply the law as I instruct you.

You are required by law to decide the case in a fair, impartial, and unbiased manner, based entirely on the law and on the evidence presented to you in the courtroom. You may not be influenced by passion, prejudice, or sympathy you might have for the plaintiff or the defendant in arriving at your verdict. A corporation and all other persons are equal before the law and must be treated as equals in a court of justice.

### A. Burden of Proof

Except as otherwise instructed, Plaintiff has the burden of proving his case by a preponderance of the evidence. To establish by a preponderance of the evidence means to prove something is more likely so than not so. If you find that Plaintiff has failed to prove any element of their claim by a preponderance of the evidence, then he may not recover on that claim.

For certain claims, Plaintiff has the burden of proving their case by clear and convincing evidence. Clear and convincing evidence is evidence that produces in your mind a firm belief or conviction as to the truth of the matter sought to be established.

### B. Evidence

The evidence you are to consider consists of the testimony of the witnesses, the documents and other exhibits admitted into evidence, and any fair inferences and reasonable conclusions you can draw from the facts and circumstances that have been proven.

Generally speaking, there are two types of evidence. One is direct evidence, such as testimony of an eyewitness. The other is indirect or circumstantial evidence. Circumstantial evidence is evidence that proves a fact from which you can logically conclude another fact exists. As a general rule, the law makes no distinction between direct and circumstantial evidence, but simply requires that you find the facts from a preponderance of all the evidence, both direct and circumstantial.

2

Case ID: 151103380
Control No.: 17090690

### C. Witnesses

You alone are to determine the questions of credibility or truthfulness of the witnesses. In weighing the testimony of the witnesses, you may consider the witness's manner and demeanor on the witness stand, any feelings or interest in the case, or any prejudice or bias about the case, that he or she may have, and the consistency or inconsistency of his or her testimony considered in the light of the circumstances. Has the witness been contradicted by other credible evidence? Has he or she made statements at other times and places contrary to those made here on the witness stand? You must give the testimony of each witness the credibility that you think it deserves.

Even though a witness may be a party to the action and therefore interested in its outcome, the testimony may be accepted if it is not contradicted by direct evidence or by any inference that may be drawn from the evidence, if you believe the testimony.

You are not to decide this case by counting the number of witnesses who have testified on the opposing sides. Witness testimony is weighed; witnesses are not counted. The test is not the relative number of witnesses, but the relative convincing force of the evidence. The testimony of a single witness is sufficient to prove any fact, even if a greater number of witnesses testified to the contrary, if after considering all of the other evidence, you believe that witness.

### D. No Inference from Filing Suit.

The fact that a person brought a lawsuit and is in court seeking damages creates no inference that the person is entitled to a judgment. Anyone may make a claim and file a lawsuit. The act of making a claim in a lawsuit, by itself, does not in any way tend to establish that claim and is not evidence.

### E. Duty to Deliberate; Notes

It is now your duty to deliberate and to consult with one another in an effort to reach a verdict. Each of you must decide the case for yourself, but only after an impartial consideration of the evidence with your fellow jurors. During your deliberations, do not hesitate to re-examine your own opinions and change your mind if you are convinced that you were wrong. But do not give up on your honest beliefs because the other jurors think differently, or just to finish the case.

Case ID: 151103380
Control No.: 17090690

Remember at all times, you are the judges of the facts. You have been allowed to take notes during this trial. Any notes that you took during this trial are only aids to memory. If your memory differs from your notes, you should rely on your memory and not on the notes. The notes are not evidence. If you did not take notes, rely on your independent recollection of the evidence and do not be unduly influenced by the notes of other jurors. Notes are not entitled to greater weight than the recollection or impression of each juror about the testimony.

When you go into the jury room to deliberate, you may take with you a copy of this charge, the exhibits that I have admitted into evidence, and your notes. You must select a jury foreperson to guide you in your deliberations and to speak for you here in the courtroom. Please do not write on the exhibits.

Your verdict must be unanimous. After you have reached a unanimous verdict, your jury foreperson must fill out the answers to the written questions on the verdict form and sign and date it. After you have concluded your service and I have discharged the jury, you are not required to talk with anyone about the case.

If you need to communicate with me during your deliberations, the jury foreperson should write the inquiry and give it to the court security officer. After consulting with the attorneys, I will respond either in writing or by meeting with you in the courtroom. Keep in mind, however, that you must never disclose to anyone, not even to me, your numerical division on any question.

You may now proceed to the jury room to begin your deliberations.

Case ID: 151103380
Control No.: 17090690

# QUESTION NUMBER 1

Did the Hertz Corporation maliciously prosecute Michael Gray?

"Malicious prosecution" occurs when one person initiates or procures, with malice, and without probable cause at the time the prosecution is commenced, the prosecution of an innocent person.

"Initiates" means that a person makes a formal charge to law enforcement authorities.

"Procures" means that a person's actions caused the prosecution and the prosecution would not have occurred but for its actions.

"Malice" means such gross indifference to the rights of others as to amount to a willful or wanton act.

"Probable cause" means the existence of such facts and circumstances as would excite belief in a person of reasonable mind, acting on the facts or circumstances within his knowledge at the time the prosecution was commenced, that the other person was guilty of a criminal offense. The probable cause determination asks whether a reasonable person would believe that a crime had been committed given the facts as the complainant honestly and reasonably believed them to be before the criminal proceedings were instituted.  Whether the person failed to fully and fairly disclose all material information or knowingly provided false information to the authorities is irrelevant to determining whether probable cause existed.

Answer "Yes" or "No."

Answer: _____YES_____

5

Case ID: 151103380
Control No.: 17090690

## QUESTION NUMBER 2

Did the Hertz Corporation defame Michael Gray?

Defamation occurs when the Defendant publishes false defamatory statements concerning the Plaintiff while acting with actual malice.

"Publish" means to communicate the matter to a person other than Michael Gray who is capable of understanding its meaning.

"False" means that the statements are not substantially true.  A statement is "substantially true" if it varies from the literal truth in only minor details or if, in the mind of the average person, the gist of the statement is no more damaging to the person affected by it than a literally true statement would have been.

"Defamatory" means an ordinary person would interpret the statements in a way that tends to injure a living person's reputation and thereby expose the person to public hatred, contempt or ridicule, or financial injury or to impeach the person's honesty, integrity, virtue, or reputation.

In deciding whether statements are defamatory, you must construe the statements as a whole and in light of the surrounding circumstances based upon how a person of ordinary intelligence would perceive them.

"Actual malice" means that you find by clear and convincing evidence that, at the time the Hertz Corporation made the statements in question

(1) The Hertz Corporation knew they were false as they related to Michael Gray, or

(2) The Hertz Corporation made the statements with a high degree of awareness that they were probably false, to an extent that the Hertz Corporation in fact had serious doubts as to the truth of the statements.

"Clear and convincing evidence" is that measure or degree of proof that will produce in the mind of the jury a firm belief or conviction as to the truth of the allegations sought to be established.

Answer: _____NO_____

6

Case ID: 151103380
Control No.: 17090690

Case ID: 151103380 Document 52-2 Filed 10/21/21 Page 51 of 219 of 10

## CONSIDER DAMAGES ONLY IF NECESSARY

If the Plaintiff has proved his claim against the Defendant by a preponderance of the evidence, you must determine the damages to which the Plaintiff is entitled. You should not interpret the fact that I am giving instructions about the Plaintiff's damages as an indication in any way that I believe that the Plaintiff should, or should not, win this case. It is your task to decide whether the Defendant is liable. I am instructing you on damages only so that you will have guidance in the event you decide that the Defendant is liable and that the Plaintiff is entitled to recover money from the Defendant.

Answer Question Number 3 only if you answered "Yes" to either Question Number 1 or Question Number 2.

Case ID: 151103380
Control No.: 17090690

**QUESTION NUMBER 3**

What sum of money, if paid now in cash, would fairly and reasonably compensate Plaintiff Michael Gray for the injuries, if any, that resulted from the Hertz Corporation's conduct?

Consider the elements of damages listed below and none other. Consider each element separately. Do not award any sum of money on any element if you have otherwise, under some other element, awarded a sum of money for the same loss. That is, do not compensate twice for the same loss, if any. Do not include interest on any amount of damages you find.

You are instructed that any monetary recoveries for compensatory damages sought by Plaintiff Michael Gray are not subject to federal or state income taxes.

Answer separately, in dollars and cents, for damages, if any.

1. Mental anguish sustained by Plaintiff Michael Gray in the past.

   Answer: _____ 50,000.00 _____

2. Mental anguish that, in reasonable probability, Plaintiff Michael Gray will sustain in the future.

   Answer: _____ 0 _____

3. Economic loss.

   Answer: _____ 6049.13 _____

8

Case ID: 151103380
Control No.: 17090690

Answer Questions Number 4 and Number 5 only if you answered "Yes" to Question Number 1. Otherwise, do not answer Question No. 4 or Question Number 5.

## QUESTION NUMBER 4

Do you find by clear and convincing evidence that the harm to the Plaintiff resulted from malice or gross negligence on the part of The Hertz Corporation?

"Clear and convincing evidence" is the evidence that produces in your mind a firm belief or conviction as to the truth of the matter sought to be established.

"Malice" means a specific intent by the Hertz Corporation to cause substantial injury to Michael Gray.

"Gross Negligence" means an act or omission by the Hertz Corporation,

1. Which when viewed objectively from the standpoint of the Hertz Corporation at the time of its occurrence involves an extreme degree of risk, considering the probability and magnitude of the potential harm to others; and

2. Of which the Hertz Corporation has actual, subjective awareness of the risk involved, but nevertheless proceeds with conscious indifference to the rights, safety, or welfare of others.

In answering this Question, you are instructed that you cannot consider harm to persons other than the Plaintiff.

Answer: _____YES_____

9

Case ID: 151103380
Control No.: 17090690

## QUESTION NUMBER 5

What sum of money, if any, should be assessed against The Hertz Corporation and awarded to Michael Gray as exemplary damages for the conduct found in response to Question Number 4?

"Exemplary damages" means any damages awarded as a penalty or by way of punishment but not for compensatory purposes. Exemplary damages include punitive damages.

Factors to consider in awarding exemplary damages, if any, are—

    a.    The nature of the wrong.
    b.    The character of the conduct involved.
    c.    The degree of culpability of the wrongdoer.
    d.    The situation and sensibilities of the parties concerned.
    e.    The extent to which such conduct offends a public sense of justice and propriety.

The purpose of exemplary damages is to punish and deter, not to compensate. Exemplary damages serve to punish a defendant for malicious or reckless conduct and, by doing so, to deter others from engaging in similar conduct in the future. You are not required to award exemplary damages. If you do decide to award exemplary damages, you must use sound reason in setting the amount. Your award of exemplary damages must not reflect bias, prejudice, or sympathy toward any party. It should be presumed that Plaintiff has been made whole by compensatory damages, so exemplary damages should be awarded only if The Hertz Corporation's misconduct is so reprehensible as to warrant the imposition of further sanctions to achieve punishment or deterrence.

You are instructed that any award of exemplary damages must bear a reasonable relationship to the harm, if any, caused to the Plaintiff.

Answer in dollars and cents, if any.

Answer: _____ $120,000.00

10

Case ID: 151103380
Control No.: 17090690

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## GALVESTON DIVISION

| | | |
|---|---|---|
| **MICHAEL GRAY,** | § | |
| **Plaintiff,** | § | |
| | § | |
| **vs.** | § | **CAUSE NO. 3:15-cv-00092** |
| | § | |
| | § | |
| **THE HERTZ CORPORATION,** | § | |
| **Defendant.** | § | |

### PLAINTIFF MICHAEL GRAY'S FIRST AMENDED COMPLAINT

Plaintiff Michael Gray ("Plaintiff") files this his First Amended Complaint against Defendant The Hertz Corporation ("Defendant") as set forth below:

### I.      PARTIES

1.      Plaintiff, Michael Gray, is an individual who resides in Galveston County at 2284 Azahar Court, League City, Texas 77573.

2.      Defendant, The Hertz Corporation, is a foreign corporation doing business in the State of Texas. Defendant has answered and appeared herein. Therefore, no service of process is required.

### II.      JURISDICTION AND VENUE

3.      This case was removed to this Court by Defendant, and Jurisdiction is based on diversity of citizenship under 28 U.S.C. §1332. The amount in controversy exceeds the sum of $75,000.00, exclusive of interest and cost.

4.      Venue in this District is proper under Civil Practice and Remedies Code §15.017 a suit for defamation damages can only be maintained in the county in which the Plaintiff resided at the time of the accrual of the cause of action because Defendant is a non-resident of the state

Case ID: 151103380
Control No.: 17090690

of Texas.

### III.    FACTUAL BACKGROUND

5.      On or about October 7, 2014, Plaintiff and his fiancé landed at Miami International Airport after returning from vacation in the Bahamas.  While exiting the plane in Miami, Plaintiff was detained by law enforcement authorities who informed Plaintiff that a "nationwide" warrant had been issued for Plaintiff's arrest.  Plaintiff was immediately taken into custody and transported to jail in Miami.  Plaintiff was processed, fingerprinted, strip searched and placed in a jail cell.

6.      As a result of Plaintiff's incarceration, Plaintiff's mother and fiancé were required to hire counsel to defend Plaintiff from the criminal charges levied against him.  The law firm of Hager & Schwartz was retained to represent Plaintiff.  After investigation, the law firm of Hager & Schwartz determined that the arrest warrant was issued on May 20, 2014, by a court in Shreveport, Louisiana.  The incident report which caused the May 20, 2014, warrant to be issued was filed by Defendant and/or Defendant's agents/subsidiaries alleging that Plaintiff had rented a car owned by Defendant and failed to return the automobile pursuant to the rental agreement. On or about October 8th, Plaintiff appeared at a videotaped hearing where it was determined that Plaintiff was a victim of identity theft and the Court set a $5,000 bond for Plaintiff's release. Detective Angela Willis of the Shreveport Police Department was immediately contacted by Plaintiff's attorney who sent documentation proving that Plaintiff was not the individual who stole the Hertz rental car and Detective Willis agreed to recall the arrest warrant on October 8, 2014.

Case ID: 151103380
Control No.: 17090690

Case 3:15-cv-00692-M Document 13-1 Filed in TXSD on 12/29/15 Page 8 of 9

7.      Prior to Plaintiff's arrest, October 7, 2014, Plaintiff received correspondence from Dollar Thrifty Rent A Car ("Dollar") dated March 31, 2014.   The Dollar March 31st correspondence stated that Plaintiff had rented a car on or about March 11, 2014, and had not returned the car.  The correspondence provided a telephone number for Plaintiff to call in order to discuss the matter. Plaintiff immediately contacted Dollar and informed the representative that Plaintiff had never rented a car from Dollar.   After Plaintiff's discussion with the Dollar representative, it was clear that the only information that was correct on the Dollar rental agreement was Plaintiff's name, address and date of birth.  Plaintiff was informed that the phone number, e-mail address, Texas driver's license number listed on the rental agreement did not match any of Plaintiff's personal information.  On April 18, 2014, Plaintiff filed a police report that claimed identity theft.  On April 21, 2014, Plaintiff executed an "ID Theft Affidavit" stating that a Dollar vehicle was rented in Plaintiff's name, but Plaintiff did not rent the Dollar vehicle.  An arrest warrant was never issued due to the fact that Dollar contacted Plaintiff prior to taking any legal action against Plaintiff.  Unfortunately for Plaintiff, Defendant failed to exercise the same due diligence before filing a police report with Shreveport, Louisiana authorities causing an arrest warrant to be issued against Plaintiff.

8.      Particularly troubling, is the fact that Defendant merged with Dollar on or about November 2012. Therefore, Defendant's subsidiary had determined months before that Plaintiff's identity had been stolen but Defendant still filed criminal charges against Plaintiff which caused an arrest warrant to be issued May 2014.

Case ID: 151103380
Control No.: 17090690

## IV.    CAUSES OF ACTION

### A.    DEFAMATION

9.    Plaintiff incorporates by reference all the allegations set forth in paragraphs 1-8 as if fully set forth herein. The law of defamation embodies the public policy that an individual should be free to enjoy his or her reputation unimpaired by false and defamatory attacks, and an action for libel and/or slander is based on a violation of this right.  The right of a citizen to defend his reputation and good name from libelous publications is zealously guarded.

10.    Under Texas law, defamation involves:

- A false statement

- About a person

- Communicated to third party

- That damages the person's reputation or exposes him to public hatred, contempt, ridicule, or financial injury.

11.    In this case, Plaintiff will prove that the Defendant's filing of a police report accusing Plaintiff of stealing Defendant's property was false.  In addition, Defendant knew or should have known that Defendant's filing of a police report accusing Plaintiff of stealing Defendant's property was false.  As a result of Defendant filing the false police report, Plaintiff was arrested for a crime he did not commit, exposing Plaintiff to public contempt and ridicule and caused Plaintiff financial injury.

### B.    DEFAMATION *PER SE*

12.    Plaintiff incorporates by reference all the allegations set forth in paragraphs 1-11 as if fully set forth herein. Moreover, Texas law recognizes the notion of Defamation *per se*.

4

Case ID: 151103380
Control No.: 17090690

Defamation *per se* includes, but is not limited to, the allegation that the subject of the defamation committed a crime. In this case, Defendant accused Plaintiff of felony theft which is a crime in Texas and Plaintiff was arrested as a result of Defendant's defamatory statements.

13.    When a Defendant commits defamation *per se*, the Plaintiff no longer needs to prove damage to his reputation – damages are assumed under the law.

## VI.    MALICIOUS PROSECUTION

14.    Plaintiff incorporates by reference all the allegations set forth in paragraphs 1-13 as if fully set forth herein. As a result of Defendant filing a defamatory police report which resulted in warrant being issued for Plaintiff's arrest, Plaintiff was arrested on or about October 7, 2014. Defendant initiated and/or procured prosecution by filing a police report with the Shreveport, Louisiana law enforcement officials falsely accusing Plaintiff of committing felony theft. This police report filed on or about April 15, 2014, resulted in a nationwide warrant being issued for Plaintiff's arrest. The defamatory police report resulted in the arrest, processing and detention of Plaintiff. During Plaintiff's processing and detention, Plaintiff was fingerprinted; strip searched, subjected to DNA testing and forced to be held against Plaintiff's will in a Miami jail cell. Defendant's allegations to Shreveport, Louisiana law enforcement authorities were knowingly false and the arrest of Plaintiff would not have occurred without Defendant's false statements. Plaintiff was released from jail after it was determined that Defendant's defamatory police report was false. Plaintiff was innocent of Defendant's criminal complaint and would not have been arrested but for Defendant filing the defamatory and false police report with Shreveport, Louisiana law enforcement authorities.

5

Case ID: 151103380
Control No.: 17090690

## VII.  NEGLIGENCE

15.    Plaintiff incorporates by reference all the allegations set forth in paragraphs 1-14 as if fully set forth herein. Defendant's conduct constitutes negligence under Texas law because Defendant owed a duty to Plaintiff not to file a police report alleging Plaintiff committed theft until Defendant made contact with Plaintiff.  Defendant breached this duty by filing a false police report and filing such report before contacting Plaintiff.  Defendant's breach of this duty proximately caused damages to Plaintiff that he still suffers from today and will suffer in the future.

## VIII.  GROSS NEGLIGENCE/MALICE

16.    Plaintiff incorporates by reference all the allegations set forth in paragraphs 1-15 as if fully set forth herein. Defendant's actions described above were done with malicious intent to cause injury to Plaintiff and constitute gross negligence/malice under Texas law.  Defendant by deliberately filing a defamatory and false police report with actual knowledge that Plaintiff would be arrested and incarcerated constitutes gross negligence/malice under Texas law. Defendant's gross negligence/ malice have proximately caused harm to Plaintiff and Plaintiff hereby seeks all damages he is entitled to under Texas law.

## IX.  DAMAGES

### A.    ACTUAL DAMAGES

17.    Plaintiff will show that the defamatory, negligent, gross negligence and malicious prosecution conduct of Defendant complained of in paragraphs 7 through 18 herein were a producing and a proximate cause of the following damages sustained by Plaintiff:

a.    Damage to reputation.

6

Case ID: 151103380
Control No.: 17090690

b.      Damage to credibility amongst the community, clients and business associates.

c.      Damage to finances which have resulted in the necessity to hire criminal counsel in Texas and Florida.

d.      Economic damages sustained in past and future.

### B.      MENTAL ANGUISH

18.     Plaintiff would further show that the defamatory, negligent, gross negligence, malicious prosecution, acts and/or omissions described in paragraphs 5 through 17 hereinabove were committed knowingly by Defendant or Defendant knew or should have known the falsity of the police report filed with the Shreveport, Louisiana law enforcement authorities filed on or about April 15, 2014.  As a result of such acts and/or omissions contained in paragraphs 5 through 17, Plaintiff sustained a high degree of mental pain and distress of such nature, duration and severity that would permit the recovery of damages for mental anguish for which Plaintiff hereby sues in an amount in excess of the minimum jurisdictional limits of this Court.

### C.      EXEMPLARY DAMAGES

19.     Defendant's intentional, reckless and malicious conduct contained in paragraphs 5 through 18 allow Plaintiff to recover exemplary damages in accordance with Texas law.

### D.      ATTORNEY'S FEES

20.     Request is made for all costs and reasonable and necessary attorney's fees incurred by or on behalf of Plaintiff herein, including all fees necessary in the event of an appeal of this cause to the Court of Appeals and the Supreme Court of Texas, as the Court deems equitable and just.

Case ID: 151103380
Control No.: 17090690

## X.    PRAYER

**WHEREFORE, PREMISES CONSIDERED,** Plaintiff, Michael Gray, respectfully prays that the Defendant be cited to appear and answer herein, and that upon a final hearing of the cause, judgment be entered for the Plaintiff against Defendant, jointly and severally, for actual monetary damages requested hereinabove in an amount in excess of $1,000,000, together with prejudgment and post-judgment interest at the maximum rate allowed by law, attorney's fees, costs of court, and such other and further relief to which the Plaintiff may be entitled at law or in equity, whether pled or unpled.

Dated: December 23, 2015

Respectfully submitted,

PROVOST ★ UMPHREY
LAW FIRM, L.L.P.
490 Park Street
P. O. Box 4905
Beaumont, Texas  77704
Phone: (409) 835-6000
Fax:  (409) 813-8625
gfisher@pulf.com
Attorney for Plaintiff

By:    /s/ Guy G. Fisher
Guy G. Fisher
Texas Bar No. 07051010

8

Case ID: 151103380
Control No.: 17090690

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on this 23rd day of December, 2015, I electronically filed the foregoing with the Clerk of the Court by using CM/ECF system, which will send a notice of electronic filing to all counsel of record.

/s/ Guy G. Fisher
Guy G. Fisher

Case ID: 151103380
Control No.: 17090690

# Exhibit 9

Case ID: 151103380
Control No.: 17090690

Control No. 16110955

## IN THE COURT OF COMMON PLEAS OF PHILADELPHIA
## FIRST JUDICIAL DISTRICT OF PENNSYLVANIA
## CIVIL TRIAL DIVISION

| | |
|---|---|
| KELLY A. GRADY | : |
| **Plaintiff** | : |
| | : NOVEMBER TERM, 2015 |
| vs. | : |
| | : NO. 3380 |
| THE HERTZ CORPORATION, | : |
| HERTZ RENT-A-CAR PHILADELPHIA | : |
| INTERNATIONAL AIRPORT, and | : |
| JOHN DOE(s) | : |
| **Defendants** | : |

### ORDER

And Now, this 19 day of January, 2017, after considering the Motion for Summary Judgment filed by the Hertz Defendants, Plaintiff's Response thereto, and for the reasons set forth in Court Exhibit "A", attached hereto, it is hereby **ORDERED** that the Motion for Summary Judgment is **DENIED in Part**.   Summary Judgment is **GRANTED** as to the claims for punitive damages.

BY THE COURT:

FREDERICA A. MASSIAH-JACKSON, J.

Grady Vs The Hertz Corp-ORDER

15110338000100

Case ID: 151103380
Control No.: 17090690

---

### Court Exhibit "A"

---

a.    While it is true that the statute of limitations for **false imprisonment** is two years, when a court is presented with the request for application of the discovery rule, factual determinations must be made.  A Motion for Summary Judgment may be granted only where the right to judgment is free and clear from all doubt.  This Motions Court is unable to conclude that summary judgment can be entered as a matter of law in view of the disparate "he said/she said" assertions set forth in these Motion papers. See generally, Fine v. Checcio, 870 A.2d 850, 857 (Pa. 2005); Jones v. SEPTA, 772 A.2d 435, 438 (Pa. 2001).

b.    When there is a claim for **malicious prosecution**, and there is no conflict in the evidence and testimony, the determination of probable cause is exclusively for the Court. In the circumstances present here, where there exist significant factual disputes and variance of evidence, the issues raised must be submitted to a jury. See, Miller v. Pennsylvania Railroad Co., 89 A.2d 809 (Pa. 1952); Kelley v. Teamsters, Local 249, 544 A.2d 940 (Pa. Superior Ct. 1988); DeSalle v. Penn Central Co., 398 A.2d 680 (Pa. Superior Ct. 1979).

Plaintiff-Grady states at page 4 of 89:

> "If an investigation had been made in Grady's case it would have revealed that Ms. Grady was in constant contact with Hertz from April to July 2013, that Ms. Grady was charged $4,200 for the rental as of July 15, 2013, and that Ms. Grady had physically went to the Hertz location on July 18, 2013, to make sure her rental was authorized."

1

Case ID: 151103380
Control No.: 17090690

Defendant-Hertz states (unpaged):

> "On July 11, 2013, after having placed over 50 phone calls, sent a certified letter, contacted Plaintiff on Facebook, and gone out to the address to locate the renter and the vehicle, Hertz Vehicle Control Department officially labels the vehicle a conversion and prepares the theft package to be turned over to the local police department. This is 55 days after the vehicle was due back pursuant to the rental contract . . . .

> On July 22, 2013, Hertz Assistant Corporate Security Manager Ken Graeber presents the theft package to the Philadelphia Police Department, who upon reviewing its contents, enter the vehicle as stolen in the national law enforcement database NCIC."

Hugee v. Pa. Railroad Co., 101 A.2d 740, 743 (Pa. 1954), the question of existence of malice is always a question of fact for jury; Wainauskis v. Howard Johnson Co., 488 A.2d 1117, 1122-1123 (Pa. Superior Ct. 1985), when material facts relating to presence or absence of probable cause are at issue, the jury must decide.

c.    Claims for **intentional infliction of emotional distress** permit recovery in only the very egregious and extreme cases. Plaintiff-Grady has the burden to prove that the conduct of the tortfeasor was so outrageous in character, and so extreme in degree as to go beyond all possible bounds of decency and to be regarded as atrocious and utterly intolerable in a civilized community. Kazatsky v. King David Memorial Park, 527 A.2d 988 (Pa. 1987); Hoy v. Angelone, 691 A.2d 476 (Pa. Superior Ct. 1997); Buczek v. First National Bank, 531 A.2d 1122 (Pa. Superior Ct. 1987).

Case ID: 151103380

Control No.: 17090690

At this juncture, the role of a Motions Court is not to decide the facts but to determine whether an issue of fact exists.  Thus, while it would be inappropriate for this Court to assess the admissibility or weight of Plaintiff's medical expert, there does exist an issue for the Trial Court and summary judgment must be denied. Gray v. Huntzinger, 147 A.3d 924 (Pa. Superior Ct. 2016).

3

Case ID: 151103380

Control No.: 17090690

ATTACHMENT B

<table>
<tr><td colspan="2"><strong>IN THE UNITED STATES BANKRUPTCY COURT<br>FOR THE DISTRICT OF DELAWARE</strong></td></tr>
</table>

| | |
|---|---|
| In re | Chapter 11 |
| The Hertz Corporation, *et al.*,[1] | Case No. 20-11218 (MFW) |
| Debtors. | (Jointly Administered) |
| | **Re: D.I. 1038** |

### DECLARATION OF JENNIFER ROGERS

1.       My name is Jennifer Rogers. I have personal knowledge of the facts stated in this declaration, and I can testify competently to them if called upon to do so.

2.       In summation: In 2019 Jennifer rented with Hertz though State Farm in Knoxville, TN and stayed in contact with the location manager. At one point while Jennifer was in the hospital for a serious illness, she arranged for Hertz to tow the vehicle. Hertz never picked up the vehicle, and instead had her arrested without warning in Feb. 2020. She had seizures in jail, and was then shackled to a hospital bed for 9 days under armed guard, where she suffered a stroke. At a hearing to decide if she should be released, Hertz claimed in court that she was a danger to the community and kept her there for 2 additional days. Her husband confronted the Hertz manager and it turned out that she had been reported without Hertz even talking to the location manager, who knew she was not a car thief. Her case was dismissed in late 2020 after 10 months of baseless prosecution.

---

[1] The last four digits of the Hertz Corporation's tax identification number are 8568.  The location of the debtors' service address is 8501 Williams Road, Estero, Fl 33928.  Due to the large number of debtors in these chapter 11 cases, for which join administration for procedural purposes has been requested, a complete list of the debtors and the last four digits of their federal tax identification numbers is not provided herein.  A complete list of such information may be obtained on the website of the debtors' claims and noticing agent at https://restructing.primeclerk.com/hertz.

3.       Jennifer obtained a Hertz rental (a Chevy Equinox) through State Farm in July 2019 at the North 7 Oaks Drive location in Knoxville, TN. It was being direct billed to State Farm. Jennifer was also a Hertz Gold Member, and had rented previously with the company.

4.       The Hertz manager, Kevin Baker, told her State Farm would cover 28 days. Afterwards, she took over the rental and it was extended. She also followed up with Kevin Baker, the Hertz manager, and left several voicemails about extending.

5.       On September 9, 2019, she was charged $1,648.71. Jennifer thought the rental was continuing and that everything was fine. She never got any calls from Hertz or State Farm.

6.       In October/November, she was in the hospital with a serious illness. At this point Jennifer got a call about the car from a Hertz investigator claiming the vehicle had to be returned. Her husband gave Hertz the location so Hertz could pick up the car, since they were at the hospital. Hertz responded that it would pick up the car the next day.

7.       Her husband called their neighbor to make sure that someone could open the garage for Hertz to pick up the car. However, Hertz never came and picked up the car, nor did Hertz follow up with them. At all points Hertz had her card.

8.       Then, without warning, Jennifer was arrested on February 10, 2020. Hertz had never made any further attempts to contain Jennifer.

9.       Jennifer initially spent 4 days in jail and had three seizures. The jail did not initially believe she was seriously ill, and thus kept her there until someone at the facility realized that there was a serious problem.

10.       When she was finally taken to the hospital, her nightmare got worse. She was there for 11 days and was shackled to the bed the entire time. While there, she had a stroke. She was not allowed to leave the room, or participate in physical therapy.

11.     Incredibly, while she was in jail (around February 12, 2020), Hertz manager Kevin Baker called her husband and claimed that the car (which had just been towed back to Hertz) had a broken light (which broke while towing). After her husband grew extremely angry and explained why he was infuriated, Baker stated that he remembered Jennifer and had no idea she was reported for theft.

12.     Hertz had reported the car stolen without even checking with the manager of the location, despite having a duty to investigate and verify each theft report the company files.

13.     After 9 days in the hospital under guard there was a court hearing (which she did not attend).

14.     Hertz absurdly requested that she remain in custody as a threat to public safety, instead of releasing her on her own recognizance. As a result she was not released and kept under armed guard at the hospital. She was then sent back to the jail several days later, where she spent another day imprisoned.

15.     In total, she spent 16 days in custody. She was prosecuted until late 2020 when the case was dismissed.

16.     As a direct and proximate result of Hertz's conduct, Jennifer was falsely arrested and imprisoned for 16 days, suffered multiple untreated seizures, suffered a stroke, was falsely prosecuted, was subjected to extreme mental and emotional distress, and had her reputation destroyed.

17.     There was no probable cause for Hertz to report Jennifer for theft.

I declare under the penalty of perjury of the United States of America that the foregoing is true and correct.

Dated:  October ___14___, 2021

/s/ _____

3

ATTACHMENT C

## DECLARATION OF PAULA MURRAY

1.      My name is Paula Murray.  I have personal knowledge of the facts stated in this declaration, and I can testify competently to them if called upon to do so.

2.      In summation: Paula Murray rented a car from the Parkview location in Chesapeake, VA, in or around late 2016. She extended the rental every week, and when Hertz called her to tell her to return it, she brought it back immediately. She diligently confirmed that the car was returned, and then thought nothing more of the rental for years. In January 2021, she interviewed with the Virginia State Police to be a dispatcher. She got the job, and attended a meeting for the background check and final details. She brought her grandchildren with her, ages 8 and 4. Instead of getting the job, she was utterly shocked to be told there was an active warrant for her arrest for car theft from 2016. She was humiliatingly arrested on the spot and taken out in handcuffs from the building she was supposed to start working in as a dispatcher. The case was dismissed in March 2021 because it was utterly baseless.

3.      Paula Murray rented a car from the Parkview location in Chesapeake, VA in or around October-November 2016. The rental was weekly, and she extended every week with the location.

4.      When she had the rental for around 1 month, she made another extension. After the extension was made, the location called her and told her that it should not have given her the extension because the rental was over 30 days. Hertz asked her to return it. She returned the car immediately as asked.

5.      The next day an investigator called her and started threatening her out of the blue. The investigator claimed that Hertz was going to put a warrant out for her arrest. Paula corrected the investigator and made it clear that the car was already returned. The investigator said that it

1

would have to be confirmed the car was returned, and promised to call back after confirming.

6.    The investigator did not call back for a few days. Paula therefore texted the investigator and asked whether it had been confirmed the car was returned. The investigator responded that Hertz had confirmed the car was returned and that Paula was clear.

7.    Paula thought nothing more of the rental.

8.    In January 2021, she applied to be a dispatcher at the Virginia State Police. Against a great deal of competition, she was the top applicant. She was scheduled for an intake appointment and to conduct a background check on January 4, 2021. Thinking that this was a formality, and excited about the new opportunity, she brought her grandchildren, ages 8 and 4, with her.

9.    Needless to say, she did not get the job. She was bluntly informed the background check said there was a warrant out for her arrest for car theft. She was shocked and baffled. A woman asked if she had ever rented a car from Hertz and if she still had it. Paula responded indignantly that she had rented and returned a car 5 years ago. She was told that she had allegedly failed to return a Nissan Altima.

10.    She was told she was being arrested and would be taken away. She asked what she should do with her grandchildren, whom she was being humiliated in front of. She was told she could make a call. Paula had to have her husband drive 30 minutes to pick up the grandchildren. Again, the entire experience was beyond humiliating and degrading.

11.    Paula was then marched out in handcuffs—of the building she thought she was going to be working in. She was placed in a patrol car and taken to Hampton for processing, where she went in front of a magistrate. She explained what happened, was released without paying bail, and was scheduled for a hearing in court case no. GC21000059-00.

12.    After being let go by the magistrate, Paula then called Hertz for 1-week straight.

2

No one had an answer or any records, although she received many profuse apologies.

13.     She spoke with something she thinks was Richard Livingston, who is a corporate security manager for Hertz. She was told that Hertz had an internal list of customers who were reported for theft and that she was not on it. He claimed he could find nothing on her and that he did not know what happened.

14.     Livingston never informed Paula that Hertz was in bankruptcy, nor that she had a potential claim, despite the fact that Livingston knew she was claiming to be falsely arrested and that Livingston could see for himself that Hertz had not properly kept records.

15.     Livingston did not tell Paula that he was extensively deposed during the Grady v. Hertz case in 2016, and is well aware of the false theft reports inside the company and its horrible record keeping.

16.     Livingston's denials are highly suspect; the docket for Paula's case indicates that the "offense date" was November 4, 2016, meaning that Hertz provided specific information to the police to obtain the arrest warrant. Hertz should have the information it provided to the police.

17.     When Paula's public defender hired an investigator, the investigator contacted Hertz trying to get answers. Hertz refused to call him back.

18.     Her public defender then appeared in court in March 2021 to explain what happened; the court dismissed the case on March 30, 2021.

19.     It should be noted that Paula had no idea she was reported for theft until she was arrested on January 4, 2021; she therefore had no idea of the basis for her claims against Hertz until that date.

20.     Moreover, Paula was never provided notice by Hertz that the company was in bankruptcy, nor did Paula know such a fact until June 2021.

21.    As a direct and proximate result of Hertz's conduct, Paula was falsely arrested and held, and then prosecuted. She lost her job, had her reputation sullied, and suffered extreme and severe mental and emotional distress.

22.    There was no probable cause for Hertz to accuse or prosecute Paula for any crime.

I declare under the penalty of perjury of the United States of America that the foregoing is true and correct.

Dated:  October ___15_____, 2021            /s/ ___Paula Murray_____
                                                                     Declarant

# ATTACHMENT D

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re<br>The Hertz Corporation, *et al.*,[1]<br>Debtors. | Chapter 11<br>Case No. 20-11218 (MFW)<br>(Jointly Administered)<br>**Re: D.I. 1038** |

### DECLARATION OF GUY SAPP (Chief of Police – Wilmington, Delaware)

1.    My name is Guy Sapp. I am a competent adult over the age of 18 and have personal knowledge of the facts stated in this declaration and I can testify competently to them if called upon to do so:

2.    I was a police officer for 22 years and the chief of police of for the Wilmington, Delaware Police Department for 4 years. I handled and supervised many auto theft cases and am familiar with the statutes and requirements. I am also familiar with the crime codes which relate to false statements to police and authorities.

3.    I have been retained on behalf of the False Police Report Plaintiffs to provide expert opinion on police theft reports, how police evaluate them, the probable cause determination, the arrest of suspects and the standards and practices governing the same. Specifically, I am opining on these topics with respect to The Hertz Corporation's theft reporting procedures and practices.

### THE OUTCOME OF FILING A VEHICLE THEFT REPORT

4.    When Hertz files a vehicle theft report, they know that the result will be law enforcement attempting to apprehend the driver of the stolen vehicle in a felony stop that requires the show of force by the police. This places the police in a very precarious and dangerous position.

---

[1] The last four digits of the Hertz Corporation's tax identification number are 8568. The location of the debtors' service address is 8501 Williams Road, Estero, Fl 33928. Due to the large number of debtors in these chapter 11 cases, for which join administration for procedural purposes has been requested, a complete list of the debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the debtors' claims and noticing agent at https://restructing.primeclerk.com/hertz.

But worse, Hertz knows this places a bullseye on the renters head and places those in the car, often family and children, in the worst possible position.

5.     Theft reports of this kind are very serious. The crimes alleged are almost always felonies and if the renter is arrested with the car, it will be a felony stop typically with guns drawn. Immediate detention, jail time and prosecution almost always follow.

6.     The unfortunate consequence of such action is that it places the police at odds with civilians by Hertz using the police to strong arm its customers.

7.     Making matters worse is that it puts civilians at odds with police and causes discord when blame is cast upon the police rather than the reporting party, Hertz.

8.     Therefore, police reports for theft should not be made if it is: 1) a payment dispute, or 2) a situation where Hertz simply lost a car due to bad inventory control.

9.     In other words, where the renter has provided their real name, real address, real phone number, real driver's license, real and valid credit or debit card, and has been in contact with Hertz, this suggests that this isn't a theft but a billing or payment dispute.

10.    In contrast, a classic rental car theft case is where there is a first time renter, who rents for 1 day, never contacts the company again, and then sells the car illegally or takes it to a chop shop. It is almost never a returning renter, VIP customer, or someone who has extensive renting history with the rental car company.

11.    For these reasons, reports of vehicle theft should only be made when there is actual knowledge that such a crime has occurred, through first-hand knowledge, or documented by reliable evidence.

## POLICE REPORTS

12.    A police report is a document that should present detailed, true, and complete information about a crime. The report must be reliable. The reporting party is submitting a police report sometimes under oath and always to the best of their knowledge.

13.    If material information is omitted from a police report, it must be supplemented. If a reporting party who submitted a police report later learns that the report contained erroneous or incomplete information that could affect the probable cause determination, it must inform the police so that the appropriate action can be taken.

14.    I understand Hertz has a policy of submitting police reports knowing it will force a charge and be paid immediately after filing the police report.  Hertz's omission of this information to police in my opinion amounts to a false report.

15.    Detective Michael Wojciechowski correctly noted in the Grady v. Hertz malicious prosecution trial Hertz lost in 2017 that omitted facts must be supplemented:

> Q. Detective Wojciechowski, would you agree with me that a report to the police must be true?
>
> A. True.
>
> Q. Would you agree that it must be accurate?
>
> A. Yes.
>
> Q. Would you agree that it must be correct?
>
> A. Yes.
>
> Q. Would you agree that if there is omitted facts when given a police report, that those omitted facts must be corrected?
>
> A. Yes.

9/12/2017 AM Testimony, at p.64.

16.    In essence, the police are evaluating whether there is probable cause to file a theft report and charge a person with a crime, and they want all pertinent information.

3

17.     In consumer theft cases such as the ones being discussed, a major consideration is whether the dispute is criminal in nature and the customer had the requisite intent, or whether it is a civil dispute about payment.

18.     When evaluating a theft report, the police authorities are highly dependent on the complaining witness/victim providing truthful and complete information. This goes even more so where the reporting party is a car rental company and the company maintains and controls the records that determine the veracity of the claim. In such a scenario, it is also critical that the company preserves the pertinent underlying records.

19.     Where the report is from a major corporation with a security department staffed with professionals, there is an expectation and presumption of reliability in the information being provided.

20.     As it pertains to the subject matter of this case, police authorities will often receive theft reports from rental car corporations. One is for overdue rentals, and another for vehicles missing from the location.

21.     Police authorities, upon taking these type of theft reports, generally do not perform an independent investigation since the rental company has the pertinent records, but are relying on the accuracy of the provided documents and the professionalism and reputation of the reporting company.

## PENALTIES FOR FILING FALSE THEFT REPORTS

22.     There are severe penalties for filing false theft reports, to punish and deter those who would take advantage of the criminal justice systems for an improper purpose. See e.g. 11 Del. C. § 1245

4

## FAILURE TO WITHDRAW FALSE REPORTS OR SUPPLEMENT

23.     A reporting party has a duty to correct a false or incomplete report, or at a minimum supplement to the police the required information.

24.     Hertz, however, never withdraws false reports, nor corrects misstatements or omissions about payment, renter contacts, renter extensions, whether the renter was an insurance rental or Uber driver, or any other critical information.

25.     Hertz admitted to the Philadelphia Inquirer:

> Hertz has no mechanism to withdraw a criminal referral because, the company spokesperson said, it has to maintain a relationship of "integrity and responsibility" with law enforcement.

> "In the rare instances this happens, if you report a crime, and you later say it didn't happen, then law enforcement tends not to believe you if you retract it or say you were mistaken," the spokesperson said. "Hertz's continued good relationship with law enforcement is important."

Sam Wood, "Bankrupt Hertz is Still Wrongly Accusing Customers of Stealing Cars," Page A1, Philadelphia Inquirer (Aug. 3, 2020), available at https://www.inquirer.com/business/retail/hertz-stolen-car-grand-theft-auto-malofiy-bankruptcy-lawsuit-20200803.html.

41.     It is my understanding that Hertz never provided payment information to the police subsequent to the initial police report. Payment information is highly significant, as Detective Wojciechowski testified in the Grady case this information was not provided to him in the initial report or subsequently and would have changed his position regarding whether or not there was probable cause. I agree with the Detective in this regard:

> BY MR. MALOFIY:

> Q. Did Hertz ever tell you that the total amount of money that was paid for that car was $4,250?

> A. No.

Q. Is that pertinent information that you would like to know in determining whether or not probable cause existed if the car was fully paid for?

A. If the car rental had been fully paid for, yes, that would be pertinent.

Q. And that would change your sworn oath as to probable cause; correct?

A. Yes.

     ***

Q. Would it change your position on probable cause if the car was fully paid for and there was regular contact by Ms. Grady, and her renewal was extended?

A. Yes.

Q. Thank you, no further questions.

9/12/2017 Testimony, at p.67-68.

26.    **Conclusion**: The veracity of theft reports is of the utmost importance. Hertz's admission that it does not correct false reports to avoid alerting the police to the fact that a false theft report was filed is damning. Hertz's conduct falls far below that required to show probable cause to obtain a theft report and charge a customer.

## EXCULPATORY EVIDENCE

27.    From a police officer's standpoint, one thing that stands out in these theft cases and makes matters worse is Hertz's failure to produce the exculpatory evidence. When evidence exists which would exonerate and individual, that evidence should be produced. This is especially true where the police and prosecutor aren't doing independent investigations and are relying on the investigation and theft package produced by Hertz

28.    Specific conduct that stands out includes: deletion of records, erasing rental extensions and backdating return dates, falsifying payment information, not providing bank records (evidence of payment), not providing phone records (evidence of renter contact and extensions), failure to update, failure to identify all renter contact, failure to fully investigate,

failure to provide all relevant and material facts to police, and providing false information to police.,

**FRUIT OF THE POISONOUS TREE**

29.    I would note that in an investigation where it has been determined that a *single* report was filed which was false or contained information improperly acquired, the report and the conviction will be thrown out. Police and prosecutors can't rely on false reports or improper evidence to arrest, jail, prosecute, or convict someone.

30.    If on the other hand, it is not a *single* report but a police officer who was a bad actor which infected multiple investigations or reports, then all of that police officer's investigations or reports would be called into question. Those arrested, jailed, prosecuted, or convicted would be set free because of the unreliability of the reports and the false or deceptive information acquired or received.

31.    Likewise, in this situation with Hertz, given that many police reports were based on Hertz's false reporting of that crime (including failure to provide or supplement payment information and backdating of due dates) the only reasonable result should be no different than what we would do for corrupted police investigations: those arrested, jailed, prosecuted, or convicted should be set free because of the unreliability. A one-time human mistake is understandable. But, where Hertz has mass filed false police reports to turn a payment dispute into a criminal matter, then at the very least, every one of these cases should be opened up and examined.

32.    In this instance, because police and prosecutors have unsuspectingly used these reports, it can't be a city or even state that can address this nationwide Hertz failure in their filing of police reports. Perhaps it is this court who can consider and rule on this issue.

7

I declare under the penalty of perjury of the United States of America that the foregoing is true and correct.

Dated:    October 20, 2021                     /s/ _____
                                                     Declarant

<u>Curriculum Vitae</u>
GUY H. SAPP
1225 King Street, Suite 400
Wilmington, Delaware 198998
gsapp@orourkeinvestigative.com

## PERSONAL DATA

| | |
|---|---|
| Date of Birth: | 28 June 1950 |
| Place of Birth: | Wilmington, Delaware |
| Marital Status: | Married Patricia A. Hackett |
| | 25 September 1971 |
| Children: | Jason and Corey |

## EDUCATION AND TRAINING

| | |
|---|---|
| 1977 | Bachelor of Science, Criminal Justice Wilmington College, New Castle, DE    1977 |
| | Associates Degree, Criminal Justice |
| 1973 | Brandywine College, Wilmington, DE |
| 1968 | Attended University of Delaware, Business Administration, Newark, DE |
| | Management/Supervision Courses: |
| | Federal Bureau of Investigation, Law Enforcement Executive Development Seminar |
| | Federal Emergency Management Administration's Emergency Management Response Course |
| | Certified Instructor, State of Delaware |

## PROFESSIONAL EXPERIENCE

(2012-present)   O'Rourke Investigative Associates, Wilmington, DE
Serve as Director of Government Affairs and Corporate Solutions Division for O'Rourke Investigative Associates and Licensed Private Investigator.

(2006- 2012)   State of Delaware, Wilmington, DE
Court Administrator, Family Court for the State of Delaware
Returned to Family Court in July of 2006 to assist the Court through an anticipated three to six month transitional period necessitated by the retirement of the Court Administrator. I acted as liaison to the State Legislature and other State agencies. Responsible for the budget of the Court, 24M+ and all operational personnel, 300+. Managed Labor/Management relations with a newly formed union. Managed numerous minor capital projects and spearheaded the effort to build new courthouses in two of three counties.

(2005-2006)   New Castle County Government
Director, Department of Public Safety
Managed 4 direct reports (Chiefs) and 500 + personnel in Police, Emergency Medical Services, 911 call center and Office of Emergency Management with an 80M+ budget. Took over a department suffering from mismanagement and inappropriate political influence and brought much needed change to the organization. Conducted major investigations in three of the four divisions, and brought about change in leadership at the top of two of those organizations. Restored a promotional process in the police department that had been suffering from cronyism and managed the search for a new Chief of Police and Director of Public Safety.

(1993 - 2005)   State of Delaware, Wilmington, DE
Director of Special Court Services, Family Court for the State of Delaware (2000-

2005)

Managed statewide Court Special Services including Court Appointed Special Advocates program, grant funding; act as liaison to other state departments, law enforcement community, domestic violence community; manage the quality assurance program; provide security oversight with respect to policy and procedure; and represent the Court on various committees.

Executive Director, Domestic Violence Coordinating Council    (1998 - 2000)
Managed statewide coordinating council consisting of sixteen members and numerous subcommittees.

Director, Division of Youth Rehabilitative Services   (1993- 1998)
Managed statewide juvenile secure care facilities and community services with 355 personnel. Administered 34M+ budget. Completed 20M+ in capital projects, workforce transformation, study of juvenile recidivism, system wide benchmarking effort resulting in the merger of two program units. Advocated for legislation to transfer serious juvenile offenders to the adult system. Completed successful monitoring period by American Civil Liberties Union of two institutions.

(1993 January - May)Administrative Aide, Public Defender's Office
Managed statewide intake process and investigation of cases assigned to Public Defender's Office.  Supervised ten employees at six locations and administered special projects.

(1971 - 1993)       City of Wilmington, Wilmington, DE

(1988 - 1993) Chief of Police    Managed and directed diverse urban police agency with 340 personnel.  Administered $20M+ budget and over $2M in state and federal grants.   Developed and implemented five-year plan as part of Management's Administrative Planning Process. Involved at local, state and federal levels of government with various projects, committees, and planning functions. Initiated numerous successful community oriented programs, strengthened community relations. Hired over 100 new officers and made over 50 promotional decisions.

Inspector of Operations    (1987 - 1988) Deputy to the chief, directly managed and administered 90% of departmental personnel.

Captain     (1986 - 1987) Commander of Patrol Division, largest division within department, supervisory cadre of 25+, and 125+ line officers.

Lieutenant, Sergeant, Patrol Officer   (1971 - 1986) - Shift Commander in Patrol Division.  (1981 - 1983; 1985 - 1986) Managed all uniformed operational police services, SWAT commander. Division Commander of Personnel Division, subject matter expert in three external promotional processes, twice in Philadelphia and once in Columbus Ohio. (1983 - 1985) Personnel Division Commander, administered promotional system, directed Police Academy, coordinated Employee Assistance Program, including psychological services. (1978-1981) First Line supervisor assignments included Patrol Division, Criminal Investigations Division, and Communications Division. (1971-1978) Patrol and Detective Divisions.

## PUBLIC SERVICE/COMMUNITY RELATIONS

Senior Co-chair, National Conference of Christians and Jews, Delaware Region
Member, Wilmington College Advisory Committees, Criminal Justice Curriculum/Masters in Counseling
Member, N.A.A.C.P. Race Relations Committee

## SPECIAL AWARDS/HONORS

Wilmington Police/Community Advisory Council 1992
Wilmington Police/Business Advisory Council 1992

United States Attorney's Award, District of Delaware 1992
Thomas McKean High School, Wall of Fame 1994
Red Clay Valley Kiwanis, Community Service Award 1995
State of Delaware Distinguished Service Award 1998
 Delaware Association for Public Administration, Public Service Award 1999

PROFESSIONAL AFFILIATIONS
U.S. Conference of Mayors' Police Policy Committee
International Association of Chiefs of Police
Police Executive Research Forum
Consultant, Department of Personnel, State of New Jersey
Member, Criminal Justice Council of Delaware
Member, Delaware State Juvenile Justice Advisory Group
Member, Delaware Council on Police Training
Member, Delaware Police Chiefs' Council
Member, Delaware Quality Partnership Board
American Society for Industrial Security

# ATTACHMENT E

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | :  Chapter 11 |
| | : |
| THE HERTZ CORPORATION, *et al.*, | :  Case No. 20-11218 (MFW) |
| Debtors. | : |
| | : |
| | : |
| | : |
| | : |
| | : |

# Declaration of Steven P. Wood, Esq.
## In Support of
## <u>False Police Report Claimants Responses to Debtors' 21st and 22nd Omnibus</u>
## <u>Objections</u>

I, Steven P. Wood, declare as follows:

1.      I am a Partner in the Wilmington, Delaware office of McCarter & English. I have

been retained by Counsel for the False Police Report Claimants to offer opinion testimony in this

matter.  I submit this declaration in support of the False Police Report Claimants' Responses to

the Debtor's 21st and 22nd Omnibus Objections. I have personal knowledge of the facts and

opinions stated in this declaration and can testify competently to them if called to do so.

A.      <u>Background and Qualifications</u>

2.      I earned my undergraduate degree from the University of Delaware and my law

degree from Emory University School of Law. I was admitted to practice law in the State of

Delaware in 1985.  Before joining McCarter & English, I served as a Deputy Attorney General

with the Delaware Department of Justice for 31 years, becoming the Department's most senior and

experienced trial prosecutor. I served as the lead prosecutor in hundreds of jury trials, including

dozens of complex homicide investigations. I headed the Delaware DOJ's New Castle Office from 1998 to 2001, and the Criminal Division as State Prosecutor from 2001 to 2007. I was part of the homicide unit from 2010 to 2016.

3.      In recognition of my achievements as an attorney general, the Delaware DOJ honored me by placing me on its Wall of Excellence. I also currently serve as a member of the Delaware Supreme Court Court's Advisory Committee on the Delaware Uniform Rules of Evidence. I have taught several NITA classes and have served as an instructor for trial techniques programs offered by the Emory University School of Law, the Rutgers/Camden School of Law, the University of San Francisco School of Law, the Widener University School of Law, the Hofstra University School of Law, Equal Justice Works, the International Society of Barristers, the Oakland County (MI) Office of the Prosecuting Attorney, the New Jersey Office of Law Guardian, the Maryland Office of the Public Defender, the Florida Attorney General's Office, and the Philadelphia Bar Foundation. I am also a fellow of the American College of Trial Lawyers. My resume is attached as Exhibit A to this declaration.

B.      Scope of Work and Factual Background

4.      I have been retained by counsel for the False Police Report Claimants to provide opinion testimony related to (1) whether a reasonably prudent prosecutor would want to know whether Hertz intended to charge the credit card of a customer identified as the subject of a theft report and whether a reasonably prudent prosecutor would consider fact of payment as material fact, (2) whether a reasonably prudent prosecutor would prosecute a person in claimants' position given Hertz's policies, (3) whether someone in Hertz's position as the initiator of a theft report has a duty or obligation to include all obviously relevant facts that might reasonably be expected to support a determination whether or not probable cause exited to believe that a crime had been

2

committed by the accused, (4) whether someone in Hertz's position as the initiator of a theft report has a duty or obligation to correct mistakes or omission after filing a police report that might reasonably be expected to affect a previously-made probable cause determination by a prosecutor, (5) the kind of due diligence expected from an entity such as Hertz before filing such a police report, and (6) whether a reporting party would receive notice of actions taken based on a filed theft report.

5. As part of forming my opinions, I reviewed various filings in this case, including the May 2020 Complaint, Hertz's objections, various memoranda and correspondence served or sent to Hertz, portions of trial transcripts, and exemplary theft report packages.

6. I also reviewed certain descriptions of Hertz's practices and policies. I understand that Hertz has an official policy, W7-02(D) that its employees must not charge a card, or attempt to charge a card, until after he or she has filed a police report. My understanding is based, in part, upon my review of that written policy as it is set forth in Case No. 20-11218, D.I. 5032–2. According to W7-02(D), Hertz's OKC Vehicle Control Department must close the rental agreement after verifying the Theft Vehicle Report with police. I also understand that Hertz does not include with its theft report the fact that it has the ability and intent to charge the customer's card, and does not thereafter supplement the theft reports with the fact that the card has been charged.

7. I also reviewed certain relevant criminal statutes of the states of Delaware, including those cited herein.

8. Further, I understand that despite official policies to the contrary, Hertz has destroyed rental notes, recordings, and records regarding nearly two dozen claimants. These records are, of course, the best evidence of interactions between Hertz and its customers, and likely

rise to the equivalent of potentially exonerating information that Hertz must retain. I understand that at least in one previous case, the *Grady* case, the court issued spoliation sanctions against Hertz for its failure to retain material information related to Ms. Grady's case. Given the fact that the information related to an allegation of auto theft by Hertz, there is no excuse for destruction of this information in my view.

9.      I also understand that there is evidence that Hertz erases rental extensions and backdates vehicle due dates. I understand that Hertz does not routinely provide written confirmation of extensions to its customers, and there is evidence that Hertz's systems often automatically delete any record of extensions from the rental systems. There is evidence that Hertz only bills customers at the end of the rental, but during the rental it checks to make sure the card is active and that there is available credit on the card to pay the rental (an "authorization hold"). When an authorization hold is denied, Hertz deletes any record of the extension without notice to its employees or its customers. The theft report omits any record of the customer's contact with Hertz as well as any record of the rental period extension. I understand that there is evidence of this in relation to claimants Hanna "John" Ayoub, Laketa Collins, and Shontrell Higgs, among others.

10.      I understand that there is evidence that Hertz fails to thoroughly investigate its theft claims before filing a police report. I understand that Hertz has a policy, W7-02(a)(17), that every theft must be promptly investigated by the Security Manager responsible for the renting location. I understand that there is evidence that Hertz does not perform any investigation to verify its theft reports. I understand that in the *Grady* case, several Hertz employees testified that Hertz has given them instructions that theft packages should be immediately delivered to the police without any independent investigation or inquiry into whether payment has been made, whether the vehicle has been returned, or whether the rental has been extended. I understand that in many cases the putative

investigators are not even given the necessary information or access to even begin an investigation. Further, there is evidence that Hertz sometimes notes that private repossession services have been contacted when no such services were hired. During the *Grady* trial, there was testimony that Hertz's failure, or refusal, to perform independent investigations was a cost-cutting measure.

11.     I also understand that Hertz does not supplement or correct theft reports when they learn of inaccuracies or falsities in the report. Hertz never withdraws false reports, nor corrects misstatements or omissions about payment, renter contacts, renter extensions, whether the renter was an insurance rental or rideshare driver, or any other critical information. Indeed, Hertz admitted to the Philadelphia Inquirer:

> Hertz has no mechanism to withdraw a criminal referral because, the company spokesperson said, it has to maintain a relationship of "integrity and responsibility" with law enforcement.
>
> "In the rare instances this happens, if you report a crime, and you later say it didn't happen, then law enforcement tends not to believe you if you retract it or say you were mistaken," the spokesperson said. "Hertz's continued good relationship with law enforcement is important."

Sam Wood, "Bankrupt Hertz is Still Wrongly Accusing Customers of Stealing Cars," Page A1, Philadelphia Inquirer (Aug. 3, 2020), available at https://www.inquirer.com/business/retail/hertz-stolen-car-grand-theft-auto-malofiy-bankruptcy-lawsuit-20200803.html.

12.     It is my understanding that Hertz fails to provide exculpatory information concerning payments made by the accused subsequent to the filing of the initial police report. Payment information is highly significant. As Detective Wojciechowski testified in the *Grady* case, this information was not provided to him in the initial report or subsequently and would have changed his position regarding whether or not there was probable cause. I agree with the Detective in this regard:

Q. Did Hertz ever tell you that the total amount of money that was paid for that car was $4,250?

A. No.

Q. Is that pertinent information that you would like to know in determining whether or not probable cause existed if the car was fully paid for?

A. If the car rental had been fully paid for, yes, that would be pertinent.

Q. And that would change your sworn oath as to probable cause; correct?

A. Yes.

***

Q. Would it change your position on probable cause if the car was fully paid for and there was regular contact by Ms. Grady, and her renewal was extended?

A. Yes.

9/12/2017 Testimony, at p.67-68.

13.    This is further confirmed in the *Grady* trial by Officer Iannocone, who testified

similarly.

REDIRECT BY MR. MALOFIY:

Q. You were asked questions about probable cause and whether there was probable cause based on information you were provided; correct?

A. Correct.

Q. Now, if information was omitted from you, like payment of the car was paid in full, would that that change your view on probable cause; correct?

A. Most definitely.

Q. And if you weren't told about omitted facts about that she had -- excuse me. That Ms. Grady had spoke to Hertz for 88 minutes, 12 phone calls, and had paid a total of $4,250, that would be an important fact in coming to your conclusions about probable cause; correct?

A. I wouldn't know about the phone calls. I'm not listening. Obviously, the payment would definitely bear -- make bearing on it. They would all be factors taken into consideration, of course.

Q … No one from Hertz, and Mr. Graeber never followed up with you and provided you information that Ms. Grady was in constant contact with Hertz and also that $4,250 were paid to that car on 7-15-2013, seven days before your interview?

A. I was never provided that information.

Q. Is that information you would have liked to have known?

A. If anything truthful, I would like to know, yes.

6

9/17/2017 Redirect Examination of Officer Michael Iannocone, at p.65-67. I, too, agree that this would change the calculus on determining whether or not there was probable cause.

C.    Opinions

14.    Before providing my opinions regarding topics (1) – (6), I will add that I have no reason to doubt the veracity of the factual allegations in the Complaint at this point, especially considering the number of victims as well as similarity between the victims' complaints. At the outset, I must observe that every prosecutor has an ethical obligation to ensure that a criminal prosecution is supported at all times by probable cause. This obligation is universally understood to be a fundamental one. It is set forth, for example, in Rule 3.8 of the Delaware Lawyer's Rules of Professional Conduct, Standard 3-4.3(a) of the American Bar Association's Criminal Justice Standards, and Standard 4-2.2 of the National Prosecution Standards of the National District Attorneys Association.  It goes without saying that, to meet his or her ethical obligations, a prosecutor must rely upon a person or entity who reports a crime to provide all obviously relevant and material information in the reporting person or entity's possession as the time of the initial crime report. The prosecutor's probable cause obligation is ongoing throughout the life of a prosecution, and so the prosecutor must rely upon the reporting person or entity's continuing obligation to provide all relevant and material information should the facts change.

15.    In Delaware, and in most other jurisdictions, automobile theft is a felony. Consequently, warrants for automobile theft are not taken lightly. Felony warrant are more likely to result in armed car stops, and pre-trial detention is significantly more likely than would otherwise be the case. Thus, what appears to be, at the very best, a cavalier attitude by Hertz is deeply troubling.

16.    First, it is my opinion that whether or not a renter who is alleged to have stolen an automobile paid for his or her use of the subject vehicle is material fact that a prosecutor would absolutely need to know when determining whether probable cause existed to begin or continue a prosecution.  In fact, whether or not payment was made is an outcome determinative fact, as in Delaware (and in many other jurisdictions) if payment was made the crime of theft was not committed. No reasonable prosecutor would file charges knowing that the customer's card has been charged. This goes right to the heart of probable cause. The importance of whether or not payment was made is underscored by the fact that, in many of the cases that are discussed in the Complaint, a prosecutor dropped the charges upon learning that the defendant had, in fact, paid for the rental. If Hertz is able to charge a customer's card for a rental, that car was not stolen and should not be reported as stolen. Hertz cannot credibly take the position that a car can be stolen even if the renter's card has been charged.

17.    Second, given Hertz policies, a reasonable prosecutor with knowledge of Hertz's policies would not accept a theft report or file charges against a Hertz customer because those policies are inconsistent with the probable cause finding that must support a theft charge. Hertz's policy W7-02(D) that its employees must not charge a card, or attempt to charge a card, until after he or she has filed a police report raises serious doubts about the validity of any report, and thus undermines any probable cause. To a reasonable prosecutor—indeed, to a reasonable person generally—the more prudent and factually and legally sound approach would be to charge the card or attempt repeatedly to charge the card before going to the police because, absent such attempts, the probable cause necessary to initiate or continue a theft charge cannot be found. In particular, the fact that a defendant has paid for property that is subject to a theft charge is fatally inconsistent with the *mens rea* that is necessary element of the charge. For this reason, filing a theft report with

8

the police should be the last resort after all other avenues have been exhausted. This is particularly true when, as here, Hertz was easily able to charge the renter's credit card and therefore be fully compensated for the value of rental.

18.    What is apparent in these cases is that the triggering event is ***not*** the alleged "failure to return the vehicle," but rather a "denied" authorization for future payment. Since the catalyst is payment related, then this is squarely a civil matter and has no place occupying the police's or prosecutor's time. Further, it is the denied authorization for future payment that triggers the backdating of the rental due date—which allows Hertz to say that it was a "failure to return the vehicle." This is either an entirely false statement, or at best it is fundamentally misleading. This amounts to converting speculation about future payment which might mature into a civil payment dispute but not a criminal matter. Criminal charges cannot be based upon speculation about future events.

19.    I would note and agree that when police or prosecutorial misconduct severely taints a body of cases involving the same conduct reported by the same purported "victim," the courts recognize that convictions and pleas improperly obtained with falsified testimony/evidence or withheld evidence must be reversed and vacated:

- Sarah Blaskey, "*Culture of corruption in Bascayne Park Police: 'Way worse than I imagined,'*" Miami Herald (Feb. 27, 2019), https://www.miamiherald.com/news/local/crime/ article226890009.html;
- Joseph A. Slobodzian, "*Phila. Judge tosses 7 drug convictions tainted by police corruption probe,*" Philadelphia Inquirer (Nov. 4, 2016), https://www.inquirer.com/philly/news/20161105_Phila__judge_tosses_ 7_drug_convictions_tainted_by_police_corruption_probe.html (stating that 812 pleas and verdicts were overturned due to the perjured testimony of six police officers in hundreds of cases);
- "*6 Convictions are Voided,*" LA Times (May 5, 2000), https://www.latimes.com/archives/la-xpm-2000-may-05-me-26912-story. html;
- John Israel, "*A judge has already vacated 8 drug sentences and another 263 are under view,*" Think Progress (Sept. 22, 2018),

> https://thinkprogress.org/fired-cop-who-may-have-planted-drugs-shows-why-floridas-felon-voting-ban-is-so-insidious-b4143bf0e772/;
>
> ▪ Nancy West, "*Evidence of Police Dishonesty Leads to Overturned Convictions Nationwide*," The Crime Report (July 21, 2015), https://thecrimereport.org/2015/07/21/2015-07-evidence-of-police-dishonesty-leads-to-overturned-co/.

20. The result should be no different when it is a private corporation whose reports and investigations are relied upon by law enforcement as accurate, but are later shown to be manifestly false, and which therefore caused the prosecution of the defendant that was never supported by probable cause. This is because law enforcement and the prosecuting agency are relying on the initial investigation and report by the private corporation. There is a presumption that the report and investigation is accurate, correct, and submitted in good faith after sufficient due diligence.

21. When the information supporting a probable cause affidavit is determined to be based on false, misleading, or tainted evidence, justice requires that the investigation be re-opened. Often, those criminal arrests, prosecutions, and convictions are overturned. Here, because the filing of unverified theft reports contain false or misleading information regarding payment, return date, renter contact, and extensions with Hertz, and because this is a nationwide problem, all of the criminal prosecutions which relied on Hertz's deceptive theft package should be reinvestigated. This would be akin to discovering a forensic laboratory processing blood or DNA evidence that was later shown to have had unreliable, compromised, or tainted procedures. Convictions that relied upon such evidence would eventually be overturned.

22. It is my opinion that Hertz's conduct in this matter, as I understand it, may actually be criminal. In Delaware, and in most states, it is a criminal offense to falsely report a crime to the police. In Delaware, the crime of Falsely Reporting an Incident (11 Del. C. § 1245) is committed when a person or entity reports to law enforcement "the alleged occurrence of an offense or incident which did not in fact occur," or "false information relating to an actual offense or

10

incident." Hertz's conduct easily falls with the ambit of that offense. The fact that Hertz knew or should have known that in most or all of the cases that are described in the Complaint it was likely to be fully paid for the use of its rental vehicle suggests that the theft it reported "did not in fact occur"vas a matter of law.  Even if one assumes (against the weight of the evidence) that Hertz believed that its rental vehicle was stolen, the fact that it backdated the vehicle due dates constitutes providing "false information relating to an actual offense."

23.    Furthermore, depending upon the circumstances, Hertz's deletion of its records pertaining to the extension of the vehicle lease as described above may also constitute criminal conduct. In most states, it is a crime to intentionally alter or destroy evidence that one knows is likely be used in a criminal proceeding. In Delaware, the offense is called Tampering With Physical Evidence. (11 Del. C. § 1269).

24.    In my opinion, Hertz—and any other individual filing a theft report—has a duty and obligation, both legal and moral, to supplement the police report with additional information that may exonerate an individual. I understand that Hertz may take the position that any failure or refusal to correct or supplement the police report is not a crime. If Hertz were to actually take this position it would be clearly incorrect as a matter of basic decency. The notion that a person or entity is free to allow a prosecution that it initiated to continue after learning that the person it accused of a crime is actually innocent because no crime was committed is untenable. Moreover, prosecutors must rely upon those filing police reports to present facts as accurately as possible, and, if those facts are called into doubt by subsequent events, prosecutors must rely upon the complaining "victim" to correct their submissions and the factual record. Otherwise, prosecutors cannot meet their ethical duty to swiftly end a prosecution that is no longer supported by probable cause. That it may not be a crime if a person or entity fails to meet this basic obligation of a civil

11

society is irrelevant from a prosecutor's perspective. And in this case, Hertz is in the best position to supplement the theft report. It cannot lay that problem at the feet of the prosecutors or the customer.

25.     Finally, any reasonable prosecutor would expect a large company like Hertz to have policies and procedures in place for independently verifying automobile theft allegations *and to follow them*. Indeed, consensual use of automobiles for payment by a renter is Hertz's business. It is not unreasonable to expect that Hertz maintain reliable systems for inventory control, establish *and follow* reliable procedures for investigating potential thefts, and have a system of internal checks that is utilized before involving law enforcement. That there are repeated instances of Hertz failing to do so is a significant concern from a prosecutorial standpoint.

26.     I understand that at least two law enforcement agencies have suspended receipt of auto theft reports from Hertz. I understand that the Louisville Airport Department of Public Safety has stated that it will suspend taking stolen vehicle reports unless Hertz physically sees someone steal an auto, has evidentiary proof of such, or identifies an obvious non return. I also understand that in November 2016, the Indianapolis Airport Police similarly imposed restrictions on Hertz theft reports due to false reports leading to the wrongful arrests of customers. As a prosecutor, upon learning of the facts as alleged in the complaint I would have employed similar restrictions on Hertz in my jurisdiction.

27.     I understand that it is relevant to these proceedings whether Hertz was aware that the Claimants had been arrested and/or prosecuted in connection with theft reports filed by Hertz. In my experience as a prosecutor, I can attest that it is common practice for law enforcement and prosecutors to alert complaining parties when persons are arrested in connection with theft reports they have filed, and as the criminal case proceeds through the criminal justice system.  This would

include initial notification as well as close communication after a charging decision was made, after charges were filed, and concerning any court dates involving the matter. In many states, communication between the police, prosecutors, and "victims" of a crime is mandated by statute. In Delaware, the Victims Bill of Rights (11 Del. C. § 9401 *et. seq.*) establishes the obligation of the police and prosecutors to provide crime victims with notice as the case progresses through the system. Consequently, it is virtually certain that Hertz received multiple notices about each of the cases described in the Complaint and similar cases alerting it to the fact that a prosecution had commenced and was progressing. In Delaware, and in many states, the pre-trial custody status of the arrestee would be routinely provided to the victim. And, of course, notice that an arrest had occurred would be a natural part of returning the vehicle to Hertz. With each such notice in each case, Hertz would have been provided with the opportunity to advise the police and prosecutors that its original crime report was made in error and it would have been provided with contact information to facilitate the communication.  It is my understanding that Hertz never did so.

28.     The fact that Hertz would have received the notice as described in the preceding paragraph, when coupled with the information in its possession pertaining to its credit card billings and full lease payments in each of the cases described in the Complaint means that Hertz had actual knowledge, or at least should have known, that each of the defendants in each prosecution described in the Complaint were being wrongfully prosecuted for theft. The same would be true for others with similar fact patterns.

29.     As a prosecutor, if the facts alleged in the complaint were brought to my attention, I would have begun an investigation to determine whether there was probable cause to believe that Hertz was guilty of the crime of Falsely Reporting an Incident (11 Del. C. § 1245) and Tampering With Physical Evidence (11 Del. C. § 1269). As described in the Complaint, Hertz's cavalier use

13

of the criminal justice system is deeply troubling. The question of whether Hertz's conduct amounts to criminal conduct is worthy of a criminal investigation to determine whether Hertz should be prosecuted for its misconduct.

30.    I will add that as a former prosecutor, I find Hertz's actions and their effect on these individuals' lives to be extremely offensive. Assuming the allegations in the Complaint are true, I am of the opinion that there is more probable cause to conclude that Hertz committed a crime than there is probable cause to conclude that any Claimant committed a crime.

I declare under the penalty of perjury of the United States of America that the foregoing is true and correct.

Dated: October 20,2021                     Signed:    /s/ Steven P. Wood, Esq.

                                                       Steven  P. Wood, Esq.
                                                       Declarant

14



**McCARTER & ENGLISH**
ATTORNEYS AT LAW
www.mccarter.com

BOSTON | HARTFORD | STAMFORD | NEW YORK | NEWARK
EAST BRUNSWICK | PHILADELPHIA | WILMINGTON | WASHINGTON, DC

# STEVEN P. WOOD
## PARTNER
## WILMINGTON

**PRACTICE GROUP**
Business & Financial Services Litigation

**CONTACT**
Renaissance Centre
405 N. King Street
8th Floor
Wilmington, DE 19801
302.984.6312
swood@mccarter.com

**EDUCATION**
LL.M., Emory University School of Law, 1984
B.A., University of Delaware, 1981

**ADMITTED TO PRACTICE**
Delaware

**MEMBERSHIPS / PROFESSIONAL ACTIVITIES**
The American College of Trial Lawyers
National Institute for Trial Advocacy

Mr. Wood is a partner in the Business Litigation group. He joins McCarter & English after more than 30 years as a Deputy Attorney General with the Department of Justice of the State of Delaware. He was the Department's most senior and experienced trial prosecutor, and as such he represented the State as lead prosecutor in hundreds of jury trials, including dozens of complex homicide cases, many of which garnered regional or national media coverage. He has developed a particular expertise in cases involving psychiatric and other medical or scientific defenses. Mr. Wood was assigned to the Department's Homicide Unit from 2010 through 1016. From 2001 through 2007 he headed the Department's Criminal Division as State Prosecutor. From 1997 through 2000 he served as the Department's Chief Prosecutor for New Castle County, and he has previously supervised the Department's Felony Trial, Career Criminal and Felony Screening Units. Mr. Wood has also represented the State before the Delaware Supreme Court. He also served as legislative liaison for the Department to the Delaware General Assembly. His duties in that capacity included legislative drafting, analysis and advocacy, and through his decades of service he has developed extensive contacts within state government Mr. Wood is a member of the Delaware Supreme Court's Advisory Committee on the Delaware Uniform Rules of Evidence.

Mr. Wood's expertise and accomplishment as a trial lawyer led to his induction as a fellow of the American College of Trial Lawyers, which is an invitation-only national organization comprised of "experience trial lawyers who have mastered the art of advocacy." He is one of only 30 Delaware lawyers who has been so honored. Mr. Wood is also an experienced trial advocacy instructor. He is a graduate of the National Institute for Trial Advocacy's (NITA) Teacher Training Program, and he works extensively with NITA as an instructor in its programs all across the United States. He is frequently called upon to lecture other lawyers and law students on various trial technique topics including direct and cross examination, opening and closing statements, expert witnesses and evidence. Mr. Wood has been a member of the out-of-town faculty at the Emory University School of Law Trial Techniques Program since 1994, and he is also a faculty adjunct at the Rutgers-Camden School of Law's trial advocacy program. He has also served as an instructor at trial techniques programs offered by the Widener University School of Law, the Hofstra University School of Law, Equal Justice Works, the International Society of Barristers, the Oakland County (MI) Office of the Prosecuting Attorney, the New Jersey Office of Law Guardian, the Maryland Office of the Public Defender, the Florida Attorney General's Office and the Philadelphia Bar Foundation.

# ATTACHMENT I



**FRANCIS ALEXANDER**
— LIMITED —

**FEBRUARY 13, 2020**

Kathryn V. Marinello, CEO
THE HERTZ CORPORATION
8501 Williams Rd.
Estero, FL 33928
*E: kvmarinello@hertz.com*

Jay L. Edelstein, Esquire
EDELSTEIN LAW, LLP
230 South Broad Street | Suite 900
Philadelphia, PA 19102
T: (215) 893-9311
*E: JEdelstein@Edelsteinlaw.com*

**Re:    WIDESPREAD FALSE POLICE REPORTS BY HERTZ**

Dear Ms. Marinello and Counsel:

For several years now I have been warning Hertz—after winning a jury trial against it in 2017 for malicious prosecution, and settling two other cases—that the company has been systematically filing false police reports against innocent customers across the nation. The problem is now a major public safety crisis. I have attached demands from **23 clients** victimized by Hertz. The falsely accused come from all walks of life, but are **overwhelmingly** blacks and minorities. The signal this sends to your customers, and the public, is that you don't think Black Lives Matter.

I know, and you know, that Hertz's computer systems are—**obviously**—broken and outdated. The company can't keep track of inventory, doesn't know when rentals are extended or returned, can't account for payments, and isn't doing the local investigations mandated in its theft reporting standard operating procedure W7-02(A)(17). Compounding matters, the locations, OKC, and corporate security have no idea what each other are doing. In some cases, Hertz bizarrely rents cars to customers that Hertz reported stolen **before** the rental began.

Given the number of people who have approached me, six months ago I submitted to your company a list of clients detailing how they had been wrongfully detained, jailed, and prosecuted. These customers had paid, extended, and even returned their rentals. Since then, more customers have come forward.

As I previously shared, some were still in jail and others were locked in criminal cases—all of them terrified by what was happening. I pleaded with you to act quickly, not only for their and their families' sake, but also so that other customers would not have their lives destroyed.

Instead of taking this alarming problem seriously, their complaints were treated as a low-level concern. Hertz falsely told the public these cases were "rare." Those in jail remained in jail. The others have had to cope with what happened, some of them now homeless. Hertz's broken systems have remained broken, and the false reports have continued. In short, the alacrity Hertz showed in addressing wronged customers following the 2017 verdict has demonstrably waned.

My clients are tired of having their polite entreaties fall on deaf ears. They are making one last plea, on video, for someone within Hertz to do the right thing: https://bit.ly/37mvaZ1. I have enclosed with this letter a draft complaint for Nicole Stevens, which will be filed before the end of the month.

If you think you can continue to ignore this problem, you have made a grave miscalculation. I routinely handle large, complicated cases, and have tried them to verdict throughout the country—11 years undefeated in jury trials. I regularly post some of the largest verdicts and settlements in the country, including recently winning a $44.35 million verdict and judgment where the jury returned a $20.25 million punitive damages award (this was a top 100 verdict in the US). Not only do I know how to win these cases against Hertz—because I already have—but I have the resources to litigate every case to verdict.

In the prior case I tried against Hertz, I established that Hertz will be found liable for punitive damages given its conduct. The corporation has known about these problems for many years and yet continues to file false police reports, routinely violating its very own standard operating procedures. No jury will turn a blind-eye to a corporation which decided that cutting costs to increase profits was acceptable—especially when it is being done with reckless indifference to the human lives Hertz is harming. A company worth $2.5 billion that generates $10 billion in revenue cannot afford serial punitive damages verdicts against its reputation and goodwill.

That said, my goal is to come to an amicable resolution so we can fairly compensate my clients and protect your customers. Nothing that my clients are requesting is unreasonable. For peace to be brokered we need to address the following: (1) the points in the attached Addendum to ensure the safety of Hertz's customers, and (2) how to justly address my clients' injuries. I need a written response by Tuesday, February 18th and an in-person meeting with Hertz's corporate officers no later than Monday, February 24, 2020.

If Hertz does not timely address these issues which have been plaguing the company, then my firm will be forced to start filing the lawsuits through local counsel. Please ensure that all data and records concerning these customers are preserved.

Note that because some of the demands exceed Hertz's self-insured limit of $10 million per occurrence, you should notify your excess coverage insurer. Moreover, to the extent that Hertz's insurance does not cover those alleged to be individually liable, you should notify those officers and employees to immediately retain personal counsel.

Kathryn, tell me how we fix this; tell me how we make this right. The time has come to bridge our division and make sure that more customers do not have their lives destroyed.

Your move.

With every good wish, I am,



Francis Malofiy, Esquire

Cc:     M. David Galainena, Esquire - *Exec. Vice President, General Counsel*
         Richard McEvily, Esquire - *Senior Vice President, Deputy General Counsel*
         Clark Dubin - *Vice President, Risk Management & Claims*
         Christopher P. Morales - *Director, Technical Claims*

Encl:   ADDENDUM I        Points of Discussion for Proposed Meeting
         ADDENDUM II       Hertz Victims
         ADDENDUM III     News Coverage of Hertz Victims and Conduct
         Video                  Hertz Victim Video No. 1 - https://bit.ly/37mvaZ1
         Complaint            Proposed Nicole Stevens Complaint

# ADDENDUM I

# POINTS OF DISCUSSION:

## PROPOSED MEETING WITH THE
## CORPORATE OFFICERS OF HERTZ

- Hertz will review cases which I present and assign a dollar value within 30 days.

- Hertz will review cases which I present on an expedited basis where the client is still being prosecuted or is incarcerated, with next steps identified (e.g., recantation or withdrawal).

- Hertz will enter into tolling agreements where the statute of limitations is approaching on cases in the process of being resolved.

- During the theft reporting process, Hertz will take into consideration whether Hertz's dispute with the customer is truly criminal or civil in nature.

- Hertz will update its tracking and rental systems so that rental extensions and payments are communicated to all areas of the company, including location, OKC, and corporate security.

- Hertz will fully comply with its theft reporting policy W7-02 RAC(A)(17), which mandates an independent investigation by the corporate security manager at the location level to safeguard against inaccurate reports.

- Hertz will stop reporting customers to the police for theft *before* Hertz has charged the customers' cards. Hertz policy W7-02 RAC (D) will accordingly be revised.

- Hertz will take steps to ensure compliance with W7-02 RAC (E) so that vehicles reported stolen by Hertz are identified in Hertz's rental systems as "reported stolen," to ensure that "stolen" vehicles are not rented to customers.

- Hertz will stop reporting vehicles stolen which were already returned by the customer, and will withdraw prosecutions where the company discovers the vehicle was returned by the customer.

- Hertz will stop reporting "lost inventory" as "stolen" unless there is first-hand knowledge that the vehicle was actually stolen or there are other indicia of criminal activity.

- Hertz will implement and mandate monthly reviews of all ongoing prosecutions to determine if material facts were omitted from a theft report or police report to determine whether the prosecution needs supplemental data (e.g. payment data, rental extensions, or vehicle returns); and determine whether the police report needs to be corrected, supplemented, or withdrawn completely.

- Hertz will ascertain whether a customer being reported is on probation/parole, and will double check all such theft reports given that reports against those customers will result in them being jailed without the ability to bail or bond-out.

- Hertz will compensate each client for bail, attorneys' fees, expungement, and other expenses.

\*\*\*\*\*

# ATTACHMENT J



# Hertz Improperly Destroys Its Records

**SOP:**    W1-06: [LEGL-3.1] – <u>Records Retention Policy</u>

W1-06(E)(2) – <u>Issuance of a Litigation Hold Due to Anticipated or Actual</u>
<u>Governmental Investigations, Subpoenas, or Civil Litigation</u>

Destruction of Records in contemplation of governmental investigations or civil litigation is illegal in most jurisdictions and can potentially expose the Company to severe sanctions and the affected employees to criminal penalties including imprisonment. Beyond that, some jurisdictions, including the United States, require the Company to take the appropriate measures to preserve any and all Records in connection with the subject matter of the investigation or litigation (hereinafter "Relevant Records") as soon as such proceedings can reasonably be expected.

Destruction, disposal, alteration, mutilation or concealment of any Relevant Records is strictly prohibited once notification of a Litigation Hold has been provided. The issuance of a Litigation Hold automatically suspends the Records Retention Schedule for Records subject to the Litigation Hold. If there are questions, do not discard. Any questions regarding whether a Record relates to (1) any relevant government investigation, inquiry, litigation, or subpoena; or (2) any such investigation, inquiry, or litigation that is threatened or anticipated, should be directed to the Legal Department.

No Records in question may be destroyed or discarded until after such question is answered.

**SCOPE:**    This Worldwide Procedure applies to all Divisions and Subsidiaries of the Hertz Corporation.

**COMPLIANCE:**    Hertz Legal Department

**OWNER:**    Executive    Vice    President    and    General    Counsel

## I.    Introduction

The preparation of a theft package for delivery to the police triggers a duty on Hertz to preserve all relevant documents, data, voice recordings, and any other potentially incriminatory or

exculpatory evidence. This "duty to preserve" is well-established in the law and detailed in Hertz policy W1-06(E)(2) [LEGL-3.1] which, unfortunately, is routinely violated by Hertz. Hertz has admitted that various files, voice recordings, contract notes, and phone records of customers are purged from its system without regard for the fact that a case may go to suit and has been reported to the police as a crime. To purge information which could save an innocent person from being prosecuted and imprisoned is, at best, improper.

Hertz's conduct in connection with this policy resulted in censure in the *Grady* case, where the court granted spoliation sanctions against Hertz after Hertz admitted that it had destroyed Ms. Grady's file. Note that Hertz admitted in its April 9 phone call with us that no litigation hold had been placed on relevant bank records, phone records, and voice recordings. Under applicable law and Hertz's own record retention policy, Hertz had a duty to preserve all such records. Given this conduct, the same spoliation sanctions granted in *Grady* will likely be granted in each of the 21 matters we are currently handling.

## II.   It is Illegal and Against Hertz Policy to Destroy Relevant Documents and Records in Contemplation of Governmental Investigation

Hertz policy W1-06(E)(2) [LEGL-3.1] provides that destroying records in contemplation of governmental action is illegal. This means that the moment Hertz begins compiling a theft package, it has a duty to preserve all records that bear upon the matter at hand. There exists factual evidence that Hertz knowingly violated and violates this policy.

**First**, Hertz's own record retention policy proscribes the destruction of records once a governmental investigation is contemplated. The policy then goes on to state: "Destruction, disposal, alteration, mutilation or concealment of any Relevant Records is strictly prohibited once notification of a Litigation Hold has been provided." (*See* W1-06(E)(2) [LEGL-3.1]).

**Second**, according to state law and the Restatement (Second) of Torts, Hertz has a continuing duty to withdraw any police action that it learns lacks probable cause.[1] Further, Hertz is required to supplement theft reports with information that exonerates the accused or that contradicts information provided to police in the theft report. The fact that Hertz destroys this information instead of providing it to police further aggravates Hertz's inappropriate treatment of relevant records in cases where it has accused a renter of theft.

**Third**, Hertz corporate security designee Richard Livingston testified in *Grady* that Hertz has a seven-year retention policy for criminal prosecutions. *See* Exhibit 3 - Livingston Deposition, at pp. 78-79. We request that the retention schedule identified in Bates No. 1610 be provided.

---

[1] For 117 years it has been the law of Pennsylvania that malicious prosecution lies not only when criminal proceedings are initiated without probable cause, but also when they are continued without probable cause. Wenger v. Philips, 195 Pa. 214, 45 A. 927 (1900); Zamos v. Stroud, 87 P. 3d 802 (Cal. 2004) ("[S]o far as our research reveals, the rule in every other state [including Pennsylvania] that has addressed the question is, and in many states has long been, that the tort of malicious prosecution does include continuing to prosecute a lawsuit discovered to lack probable cause."); Arquette v. State, 290 P. 3d 493, FN12 (Haw. 2012) (accord); Shannahan v. Gigray, 962 P. 2d 1048, 1052 (Idaho 1998) ("This Court has held that probable cause must be present when a proceeding is initiated, and it must be present in order to continue the proceeding."); *see also* Restatement (Second) of Torts § 674.

## III.   HERTZ HAS ADMITTED DESTROYING RECORDS IN THE 21 CASES CURRENTLY BEING ADDRESSED

Hertz claims that rental notes, recordings, and records for all 21 matters that we are currently discussing were destroyed within 90 days to six months after the renter's account was closed. Notably, these rental notes and recordings are the best evidence of the renter's contacts and extensions with Hertz and are indispensable.

That Hertz claims it destroyed these records after initiating criminal prosecution is without any justification—especially since Hertz has been on notice for years that it has been making materially inaccurate police reports for years.

Furthermore, in some cases we contacted Hertz within six months of the rental, such as for Shontrell Higgs. The fact that Hertz destroyed these records provides additional evidence that Hertz acted with a motivation other than to destroy files in the ordinary course: there is no justification why Higgs's— or any other criminally-accused renter's—records should have been deleted.

It appears to us that, at a minimum, Hertz's failures in this category will lead to serious civil spoliation sanctions.

## IV.   THE COURT GRANTED SPOLIATION SANCTIONS AGAINST HERTZ IN *GRADY* FOR ITS FAILURE TO PRESERVE GRADY'S RENTAL RECORDS; THESE CASES ARE NO DIFFERENT

In the *Grady* case, when the plaintiff requested production of her rental information to prove that she had been contacting Hertz and extending her rental contract, Hertz failed to produce any information.

Hertz designee Joseph Jaussi admitted in testimony that Hertz purged and destroyed Grady's rental file, despite her being reported for car theft.

COUNSEL:   So you're telling me, as you sit here today, you're speaking, just so you know, as Hertz's voice. You're the corporate designee, the person most knowledgeable from Hertz to testify as to certain things. You've been identified as someone to speak to and you've identified that there was and an email, that you, as general manager, sent to Oklahoma City billing to determine whether or not the 2500 on 7/15 was a final bill, partial payment, full payment or what it is, correct?

JAUSSI:   Correct.

COUNSEL:   And as you sit here today, you're telling me that you personally do not know whether or not that payment was a final payment, or that payment was authorized, or that payment cleared, or that payment was a partial payment or a full payment, correct?

| JAUSSI: | Correct. All they stated from my recollection is that it was *purged*. It's been *purged*. There's no further information that could be provided because *that contract has been purged*. |
|---|---|

*See* Exhibit 1 - Jaussi Deposition, at pp. 37-38 (emphases added). Hertz corporate security designee Richard Livingston testified in *Grady* that Hertz has a seven-year retention policy for criminal prosecutions. *See* Exhibit 3 - Livingston Deposition, at pp. 78-79.

Due to the obvious illegality of destroying such evidence without any justification—and also hiding and attempting to improperly influence witnesses—the Court in *Grady* imposed serious spoliation sanctions against Hertz.

Kindly note that when Ms. Grady was pulled over, and the police called Hertz, a Hertz employee told the State Police that the overdue theft report against Grady had been a mistake and that this was solely a civil billing dispute:

> **Synopsis:**
> This incident occurred as Hertz Rental Company reported a vehicle as stolen. The vehicle was stopped at the above location and all occupants were identified. Upon calling Hertz Rental Company and the Philadelphia Police Department, it was determined this is a civil issue regarding late payment and the vehicle was not stolen.

> HERTZ Rental Company was contacted and advised that the credit card listed on the contract with the suspect had returned with insufficient funds and as a result the account was overdue. As a result they reported the vehicle stolen. HERTZ advised they would prefer the vehicle to be towed and picked up by a representative and would handle the civil tort regarding payment with the suspect.

> **Conclusion/Recommendation:**
> I recommend this investigation be terminated due to the fact that Hertz Rental Company will be handling this situation through civil action. It was found that the vehicle was reported as stolen from the Philadelphia Airport rental terminal after a miscommunication regarding an overcharged credit card as part of a Hertz Rental Car contract. Philadelphia PD has been provided all requested documentation and was advised the vehicle was towed/recovered.

> 8. INCIDENT DETAILS
> This incident occurred as a GMC YUKON was reported stolen by Hertz Rental Company. The vehicle was traveling southbound at the above location when the incident was reported. A traffic stop was conducted on SR 322, in Dauphin County, PA. Upon making contact with the operator of the vehicle and contacting Hertz, it was determined that this is a civil issue relating to late payment on a rental contract.

It is obvious that the Hertz representative mentioned above could see the rental had been extended and therefore stated this was just a civil issue (she was later arrested after Hertz corporate security insisted that the Philadelphia police continue the prosecution). These events provide additional proof that Hertz destroyed the rental records showing that Grady's rental had been extended.

We feel strongly that the courts will take into account that Hertz has known about this systemic failure for at least three years (the time of the 2017 *Grady* trial), but has done nothing to correct it.

## V.    Conclusion

According to Hertz's record retention policy and controlling case law, Hertz acts illegally when it destroys records related to an alleged car theft; i.e. when a governmental investigation is contemplated. Every time Hertz compiles a theft package, it must reasonably contemplate – in fact, it *intends* – governmental intervention; it knows that it is constrained to preserve the renter's records.

Hertz's records-destruction practices in connection with cases in which it has filed theft reports – cases in which it *seeks out and intends* government intervention – is inexplicable.  This failure is even more striking in light of: the fact that Hertz has had notice for years that its theft reports are materially inaccurate; and the fact that Hertz has already suffered spoliation sanctions for its failure to maintain records.

Based on the systemic failures permeating Hertz's record retention practices, we feel strongly that any attempt by Hertz to defend against the current cases, by asserting that the renter did not extend the rental and/or failed to contact Hertz, will be undermined by virtue of Hertz's intentional destruction of exonerating information.

# ATTACHMENT K



FRANCIS ALEXANDER
— LIMITED —

MARCH 6, 2020

Adam Schloss, Esquire
Richard McEvily, Esquire
THE HERTZ CORPORATION
8501 Williams Rd.
Estero, FL 33928
*E: aschloss@hertz.com*
*E: rmcevily@hertz.com*

Jay L. Edelstein, Esquire
EDELSTEIN LAW, LLP
230 South Broad Street | Suite 900
Philadelphia, PA 19102
T: (215) 893-9311
*E: JEdelstein@Edelsteinlaw.com*

    **RE:**   **WIDESPREAD FALSE POLICE REPORTS BY HERTZ**
            Formal Letter to Hertz General Counsel

Gentlemen:

As you are both aware, Jay met with Rudolph Di Massa and me on February 21 to discuss a potential resolution of matters arising from the improper arrest and/or incarceration of Hertz customers. As you also know, it is our position that these arrests/incarcerations have resulted from Hertz's failure and refusal to appropriately address and cure serious shortcomings in its investigation and reporting of missing Hertz vehicles.

While Hertz was kind enough to agree to a tolling arrangement in connection with the Steinberg matter, we are anxious to move forward to: (a) a resolution of all matters for which we have been retained (since our meeting, I have consulted with an additional five clients); (b) a resolution of all matters involving the improper arrest/incarceration of Hertz customers who have not been apprised of their rights to recourse; and (c) the establishment of a new protocol to ensure that there will be no future improper arrests.

In our view, it would be desirable for both sides to avoid litigation while at the same time efficiently address all existing and potential claims, together with the internal problems that precipitated them. As we have discussed, were we to file suit for our existing clients, it is highly likely that scores – if not hundreds or even thousands – of plaintiffs would surface. Needless to say, a logical corollary to these suits would be the initiation of shareholder derivative suits.

Due to the foregoing, we believe it makes sense for both sides to address this through some form of mediation. Consequently, before we initiate any additional litigation, we would expect to hear from you about your willingness to discuss a potential global settlement that would encompass the three items we have identified above. We can discuss the framework of such a mediation once we sit down to talk.

In the meantime, we ask that you give serious consideration to our proposal. Should you decline a meeting—or fail to respond to this letter by March 13, 2020—we will begin to file suit on behalf of our clients without further notice to you. Note that the initial demand letter was served on February 13, 2020, meaning that Hertz will have had 30 days to consider these matters as it requested. We anticipate that these suits will generate sufficient publicity that a wave of lawsuits will follow.

PAGE 2

With every good wish, I am,



Francis Malofiy, Esquire
    *Cc: Skip DiMassa, Esquire*

# ATTACHMENT L



# Missing Documents

## I. Introduction

In our initial phone conversation, both sides agreed to provide all relevant documents and records. We then presented Hertz with a comprehensive list of numerous key documents which were missing from Hertz's initial production, which we know Hertz can locate. Hertz's supplemental production was largely duplicative of what it already provided and nonresponsive to what we informed you was missing.

Hertz asserts these missing documents have been destroyed despite Hertz policy W1-06 [LEGL-3.1], which mandates Litigation Holds be placed on all rental records related to criminal or civil litigation. Yet, no litigation hold has been placed on any case. Hertz also asserts that after another rental is assigned a rental number that was previously used, it can no longer retrieve the information about the prior rental. Hertz has given no indication as to whether they actually checked the rental number, and what Hertz has done to preserve any records for the cases (i.e. Litigation Holds).

In this day and age every company has backups for files and data concerning customer information. There is no reason why Hertz would wipe out this information other than to prevent certain information to be seen.

In addition to the general missing records that apply to every renter, Hertz's production also raises concerns that there are important missing documents and data for specific renters. For instance, certain documents refers to key data, but then fail to produce or screenshot that data. These missing records must be produced.

## II. Missing Documents for All Renters

### 1. Native data and screenshots for Contract Rental Notebooks and Notes (See Hertz000128)

Hertz claims this information is deleted after 6 months, which is unconscionable considering these renters were accused of car theft and this information is potentially exonerating to the renter. (See Destruction of Evidence Brief). For example, Howard Junious is one renter who Hertz provided Contract Notebook notes for however, only 1 page of 9 was provided. Hertz has not provided Contract Notebook notes for any other renter despite having a legal and ethical duty to do so.

### 2. Hertz has failed to provide billing and authorization hold history for every client

It is obvious Hertz can look this information up internally at will. During Shontrell Higgs' prosecution, her attorneys requested the billing information and Hertz was able to confirm when

she was billed and what card she used. (See Hertz001445 as shown below) Note the billing and payment were verified by Hertz after the supposed 6 month retention time period.

> MARY:  THE DEFENSE IS SAYING THAT HERTZ RECEIVED PAYMENT FROM THE RENTERS WALMART MONEY CARD ON 3/21, 3/28 AND 4/3 FOR A TOTAL AMOUNT OF $1295.52.  THE CARD NUMBER ENDED IN 0796.  CAN YOU PLEASE VERIFY THE DATES AND AMOUNTS OF ANY AND ALL PAYMENTS ON THIS RR ALONG WITH THE CREDIT CARDS THOSE PAYMENTS WERE CHARGED TO?
>
> KAREN, WE BILLED THIS CUSTOMER FROM 2-28-19 TO 3-29-19 TO A VISA ENDING 9400 FOR 1057.81.  CURRENTLY, THIS HAS BEEN PAID.  HOWEVER, THE BANK HAS COME IN FOR A COPY OF THE RENTAL AND INVOICE.

The complete billing/payment history has only been provided for one case thus far, Magalie Sterlin, who rented with Hertz in 2017. If Hertz is able to recover Sterlin's billing/authorization hold summary from 3 years ago for Sterlin, then Hertz obviously does have the information regardless of its 6 month retention policy and there is no reason why the other renters' billing history cannot also be found.

Details and records of authorization holds are crucial in these cases because Hertz provides no physical record of extensions and the authorization holds indicate extensions were made. See Screenshots for Ayoub (Hertz00011) and Stevens (Hertz000562). In addition, Hertz must identify the system from which the screenshot on page 1445 was taken. If these records have been preserved as the law and Hertz internal policy dictate, then they must be provided in screen shot form from the original platform.

3.    **Hertz has not provided theft packages or has provided theft packages with incomplete information**

We still need theft packages for Essick, Williams, Johnson, Steinberg, Koss, Cullen-Smits, and Jones (only the cover page was provided). Further, much of the theft package information that was provided for the other renters is incomplete and there exists numerous communications between Hertz and the renters which are not indicated in the theft packages.

For example, there isn't any communication with the billing department shown in any of the theft packages provided to police. It is concerning that Hertz would chose to withhold payment information to the police when such information is highly relevant to the determination as to whether the renter stole the vehicle. Specifically, Michelle Johnson spoke extensively with the Hertz billing department in regards to her payment, yet this fact was not indicated in her theft report to police, which states she was not responding to Hertz's efforts to reach her.

Another issue within the theft packages provided to police, particularly the Overdue Vehicle Print Out, is that in every case the theft report indicates the renter has never held a prior rental with Hertz, regardless of whether that is actually true (See Hertz00377). In many cases this is a material falsehood, as the renters are in fact frequent customers of Hertz, which shows the renters have no intent to steal their vehicle. Withholding this information from the police makes the renter seem more likely to have intent to commit car theft.

4.    **Additional records not provided by Hertz**

Additionally, during our calls we identified the following documents which have yet to be provided:

- Financial and banking data for the rentals.
- Phone records and phone recordings for the rentals.
- Native data and screenshots for all information regarding the clients from DASH, CARRENT, or other systems with rental data.
- Reservations and accompanying information provided by the renter at the beginning of the rental.
- Full ERS notes, including for all tabs. We only have select snippets and summaries on Higgs, Stepanyan, Channell, and Collins.
- Full Case/Call Details and Notes, not selective screenshots. We have select screenshots for Collins, Higgs, Ayoub, Boyd, Stepanyan, and Burnside.
- Actual screenshots and data for Hertz00562. Screenshots from the system should be produced, as well as the system identified. Hertz summaries are not acceptable substitutes, especially where incorrectly summarized.
- No Vehicle Control missing vehicle checklist has been produced for any client.
- Hertz Record Retention Schedule as well as the definition of Litigation Hold ("as defined in 6B")
- The attached exhibits for all of the corporate policies provided. (See Hertz01566).
- The profiles/renter history of Hertz Gold Members.

## III. Missing Documents for Specific Renters

In addition to the overall deficiencies in what Hertz has provided, there exist specific documents and records missing from individual renters which need to be addressed by Hertz:

### Stevens

- The notes on Hertz000562 are unacceptable. We need screenshots, and all associated data. Hertz responded that it had checked and confirmed that the dates on page 562 are accurate, but we can show they are not.
- Do you have the police reports indicating how the vehicle was recovered? Where was it recovered from? How did it get there? Who are your tow companies in Illinois? They must have sent you a bill.
- The invoice on 5/30 seems to show 5/22/2018 call and authorization. Hertz00518. Yet, the theft package does not indicate this at all. Hertz000524.
- Maintenance records for car. Stevens claims the car had a flat tire. The records would help confirm her story.

### Essick

- Due date is off. Police told 2/12, but internal documents say 2/15. Why?
- The 2/19 note appears to have been made in the context of another note about extending the rental which was not provided.

- We have limited notes, and exactly one attempt to reach out to the renter before the police report was filed.
- We have no theft package.
- Was the bill paid?
- Were the police told?

### Ayoub

- Where are the extensions? Where are the authorization holds?
- Why was the theft package altered and filled with omissions?
- Where are original contacts with the investigator?
- Why weren't the Timothy Mucciante emails included in production?
- What contact did Hertz have with New Castle prosecutor?
- Why was certified letter sent on 5/20, just 4 days before rental was closed out?
- Police said, because of theft package, that Ayoub stopped contacting Hertz. Yet, Hertz produced a call note saying that the renter called to check balance on 5/25/2019? Why wasn't renter told about issue. Directly contradicts police report, as does Ayoub's voluminous evidence.

### Sterlin

- Incomplete theft package.
- What is this cancelled signature page?
- Why were supplemental notes provided but not the original notes?
- Explain why excel spreadsheet does not line up with theft package notes. There are recorded extensions that were not approved on the authorization hold excel spreadsheet. Theft package says that this is due to registration renewal.

### Collins

- Why don't you have insurance extensions?
- Why when she called about flat tire on 7/14 is there no discussion the rental is overdue? Hertz1230.
- ERS hold added. Not in theft package.
- We need full ERS and Call Notes.
- Appears to have been call before 8/31. The renter is calling you about the car. Does that sound like someone who stole a car?
- What is hertz1200 about cancelled signature?

### Williams

- Unredacted pages for Hertz00767-770 (from a police report)
- Need theft package.
- Need prior rental history, and rental in Philadelphia in 2008.

- Need how bank records were received. Believe they were sent to a Hertz attorney.
- Williams had extensive discussions with hertz in 2008 after arrest. Where are these documented? He was called after arrest and asked about location of the car. He called Hertz and demanded to know what was going on.

## Burnside

- Any communication with prosecutors

## Stepanyan

- Backdated overdue vehicle report.
- Need new rental agreement given to Stepanyan on 3/16. Nothing at all on this in the packet on rental no. 422571203.
- What does comment in theft package mean, they think they know who has the car? Hertz000432.
- Need the unit history for the correct F150. Why does unit history for dodge ram say placed on hold status on March 16, when it theft report not started until 5/31. Hertz000382.
- What is MVCL, showing 3/16 service. Hertz000432, 437.
- ERS call notes are attorney summary, not the actual screenshots. Hertz000442.
- Why would you create an overdue vehicle theft report after the fact, even when you know he returned the vehicle? When was this created?
- Why does it say card denied? Hertz000443.
- **W**hy especially would this be created when Hertz admits the vehicle was served on 3/16? Hertz00437-38.
- Why does a field operations checklist exist for him and no one else? Why does this differ from vehicle control checklist?
- What is cut off text on Hertz00437-38?
- Why is Stepanyan's contacts with David Nipper and Tim Burrell not in Hertz's records?
- Did Charlotte branch employees report screw up to CSM or Hertz's corporate? What system produced 425-30, renter's history report?
- Need Stepanyan invoices for all rentals.

## Channell

- Why was he given multi-month rental reservations and renewals for the license plate JBL, that hertz was reporting stolen?
- Michael Channel spoke with hertz, was apologized to, and was told where to get the vehicle from impound. Where is the record of this call?
- Police have wrong plate number on one narrative in the police report.

## Young

- Who was Young texting? PLT000503. Why isn't this text in the records provided?
- Why is Dec 2019 contact with CSM not in hertz's records? PLT000500.

### Higgs

- She gave them a new card on March 21. That's not in the theft report? Why? Where is that documented?
- We need history of authorization holds and charges**.**
- We need prior contacts shown by her phone calls.
- Why was she contacted by investigator after the police report was filed, and why don't we have those overdue notes?
- Why the delay in charging the TD Bank card? Rental closed out on 3/29 but card charged 2 weeks later?

### Person

- How did wrong dates get into police report? Extensions?

### Junious

- What is Hertz1702?
- Where are other contract rental notes? There is only have 1 out of 9

### Fernandez

- Recovery emails?
- Overdue vehicle print out for Fernandez (usually the second page of a theft packet).

### Johnson

- Need records Insurance contact. Why wasn't insurance company told about theft?
- Where is contact from billing?

**In addition to the above deficiencies, no records have been provided for the following renters:**

- Keene
- Koss
- Steinberg
- Cullen-Smits
- Jones

## IV.  Conclusion

The missing records listed above are not irrelevant details to be overlooked, but potentially exonerating information which detail all communication and payment history with the renter. Hertz has violated the law and their own internal policies to the extent they have destroyed the records. If both sides are to continue with negotiations, it is incumbent upon all parties to exchange information and not withhold key documents which reveal truth.

# ATTACHMENT M



FRANCIS ALEXANDER LLC

# Hertz's Botched Theft Report Caused Thomas Channell's Heart Attack

## I.   Introduction

Thomas Channell had a heart attack in May 2018 because Hertz had him arrested at gun point after the company submitted a false theft report to the police.

The error on Hertz's part is unambiguous. Hertz reported the car the Channells were renting as stolen on April 4, 2018, claiming it was rented on January 6, and due back on February 22, 2018, but had not been returned. Hertz failed to realize that the Channells were on an approved multi-month rental that started in 2017 and ended in June 2018; Hertz's own rental records show that the rental was extended month-after-month on February 22 and March 23—*after* the due date inserted in Hertz's theft report.

This was the result of Hertz's failure to investigate, Hertz's abysmal record-keeping practices, and Hertz's dysfunctional computer systems.

## II.   Hertz Ignored that the Channells had a Continuing and Specially Approved Multi-Month Contract; Hertz Botched a Vehicle Exchange Leading to the False Report

### a.   The Channells Entered into a Multi-Month Rental in November 2017 with a Malibu, but Exchanged the Malibu in January 2018 for a Camry; the Rental was Effective until June 2018

The Channells initially rented a Chevy Malibu in late 2017 on an approved multi-month rental contract. It was supposed to be continuing until June 2018. Hertz001080-89. On or around the 22nd of each month, the month-over-month rental would renew for the next month. Id.

In or around January 2018 the Channells exchanged the Malibu for a Toyota Camry with plate number JBLI54, as this addendum to the multi-month contract shows:



Hertz001090. As far as the Channells knew, the multi-month rental continued as normal.

Following the vehicle exchange, on February 22, 2018, Hertz issued the Channells an extension on the multi-month rental for another month, as these invoices show:





See Hertz001083, 1088. The Channells paid every month for the prior 30 days of rental charges, with no issues.

As planned, the multi-month rental was then renewed again on March 24, 2018, for another month (in accordance with the prior renewals under the multi-month contract):

```
RENTAL DETAILS
Rate Plan:          IN: MMR2     OUT: MMR2
Rented On:          03/24/2018 17:06   LOC# 746410
                    BOCA RATON, FL
Returned On:        03/30/2018 07:43   LOC# 746410
                    BOCA RATON, FL
Car Description:    JBLI54
Veh. No.:           7715337
CAR CLASS  Charged:    F          MILEAGE    In:
           Rented:     F                     Out:
           Reserved:   F                     Driven:
```

Hertz001084, 1089. To the Channells' knowledge everything was fine, and their rental was continuing until June 2018. However, for no apparent reason and without any explanation or notice to the Channells, Hertz closed out the Channells' rental contract on March 30, 2018.

**b. Hertz Botched the Vehicle Exchange and Reported the Car Stolen, Failing to Realize Due to Lack of Investigation that the Channells were in Possession of a Vehicle on a Continuing Multi-Month Rental Contract**

Hertz Vehicle Control erroneously believed that the Channells' rented vehicle was due back on February 22, 2018, and that the rental contract had not been extended or renewed. As can be seen from Hertz's own invoices, this was not the case. At some point, Hertz began treating the exchange addendum contract from January 2018 as a new contract, and failed to realize that it was merely an addendum to a ***continuing*** multi-month contract.

Hertz therefore compiled a theft package claiming the Channells had stolen the Camry with plate JBLI54 by not returning it on February 22, 2018:

| Unit No | Year | Make | Model |
|---|---|---|---|
| 0C07715337 | 2018 | TOYOTA | CAMRY |
| Lic Plate YR | Lic ST | Lic NO. | Odometer Out |
| 2018 | FL | JBLI54 | 5262 |
| Date & Time Rented | Rented From | | Due Date |
| 01/06/2018 14.17.00 | 01320-11 | | 02/22/2018 17.08.00 |

Hertz001094. While the theft package was being compiled, no one at Hertz investigated or verified any allegations contained therein. At best, Hertz failed to realize (1) that there was an ongoing multi-month rental, (2) that the exchange addendum to the multi-month rental was not a separate contract, and (3) that the information in the theft package itself was highly inconsistent regarding the start and end dates of the rental.

In fact, it appears that there was little to no human involvement at all in the drafting of the Channells' theft package, and that it was generated almost entirely by Hertz's compromised

computer systems. The theft package also failed to note that the Channells had paid many thousands of dollars for this rental.

Then, without any warning or notice to the Channells, Hertz finalized and printed the theft package on March 29, and then closed out the rental on March 30, 2018:

| Prepared Date: | 3/29/2018 | |
| Printed Date: | 3/29/2018 | 2:05:11 PM |

Hertz001094.

The theft package also falsely claimed that Hertz had performed a rigorous check of all its systems to safeguard against any type of mistaken report:

THE VEHICLE APPEARED ON THE OVERDUE REPORT. THE PHONE NUMBER ON THE RENTAL WAS CALLED. ALL AVAILABLE SYSTEMS HAVE BEEN CHECKED. NO ADDITIONAL INFORMATION HAS BEEN FOUND.

Hertz001094. This is boilerplate language that Hertz places in its theft packages, even though the company has acknowledged that it performs no such check.

Note that because the theft package was closing out a rental contract for the Camry with plate JBLI54 on March 30, 2018, this also had the simultaneous effect of closing out the continuing multi-month contract that was linked to the same car—*unbeknownst to the Channells and Hertz*. This is why the multi-month rental documents show that the Channells' March monthly renewal contract with a start date of March 24 (for the next 30 days) abruptly ended in less than a week.

The Channells, however, did not know this and believed everything was fine.

The April 4, 2018 police report reflects that a Hertz employee falsely told the police that the rental had started on January 6 and was due back on February 22, 2018, plainly doing no more than reading the face page of the theft package to the police. PLT000606. There was no mention of the multi-month rental, the February and March renewals, the vehicle exchange, that the rental was supposed to end in June 2018, or the thousands of dollars that the Channells had paid Hertz for the rental. Id.

Not only was there no investigation pursuant to W7-02(a)(17), or by Hertz vehicle control, but no one at Hertz even checked the report to ascertain whether the information the package contained was internally consistent (e.g., that this was a multi-month contract, and that the dates of rental provided in the theft package were wrong).

### c.  Thomas Channell is Pulled Over for Car Theft and has a Heart Attack

As a result of Hertz's false report, the car was recorded as stolen, and the car being driven by Mr. Channell was pulled over on May 12, 2018. Mr. Channell was arrested at gun point, and he immediately suffered a heart attack.

He had to undergo emergency heart surgery, and his and his family's life life has drastically changed as a result.

Hertz apologized to Channell's son, Michael, while Thomas was undergoing surgery.

## III.   CONCLUSION

Hertz claims to be "Number 1" in customer service. Hertz has to match words to deeds and make amends for what it did to the Channells. One of its regularly-paying customers was pulled over at gun point and had a heart attack due to Hertz's gross incompetence and recklessness.

The nostrum that the Channels share any blame for what happened, or that Hertz can attempt to ignore its liability, is preposterous. The case illustrates that Hertz's lack of investigation is a serious, systemic problem. It also illustrates that Hertz's computer systems and departments do not communicate with each other, and that Hertz's theft reports often vary wildly from the information in Hertz's possession and the facts of the case.

The fact that many of Hertz's theft reports are so inaccurate undercuts every assertion Hertz has made about the adequacy of its theft reporting processes and the reliability of its computer software. Given that Hertz deletes vital rental records that demonstrate that its theft reports contain inaccurate information, this also raises truly monumental concerns about the motives behind Hertz's document destruction.

Lastly, this case shows that even after being notified in 2017 by customers such as Michael Gray (Texas), Kelly Grady (Pennsylvania), and Nancy Cullen-Smits (Virginia) of these very real problems and their consequences, Hertz has steadfastly refused to make reforms.

# ATTACHMENT N



# Hertz Botched Stepanyan's Rental Contract, Failed to Investigate, and Prosecuted Him with False Data

## I.    Introduction

Hertz identified the wrong car in Arthur Stepanyan's rental contract, never called him about the error, and then reported the car he was driving stolen without a full investigation. Once Hertz realized after Stepanyan's arrest that the company had made a major error, the company ***sent false documents*** to the police to have Stepanyan prosecuted for a nonexistent crime to cover up its errors.

In March 2019 Arthur Stepanyan rented a silver Dodge Ram from the Charlotte Airport location for two weeks. At the end of the two weeks, on March 14, he returned the vehicle. However, he had a change of mind and rented it again. Upon checkout, Hertz incorrectly put a F150 on the contract, instead of the Dodge Ram Stepanyan was driving. Hertz then cleared him out of the lot, failing to realize he was not in a F150. This caused Hertz to think the Dodge Ram Stepanyan was driving was missing from inventory when in actuality Mr. Stepanyan was renting it (the facts of this case are very similar to those of the Cullen-Smits case that Hertz has already agreed to mediate).

Then, instead of simply calling the last known renter to see if he had the vehicle (as Hertz policy and common sense require), Hertz reported the car stolen. After Stepanyan was arrested, and Hertz realized there had been an error, Hertz then sent false documents to the police to justify an illegitimate prosecution of Stepanyan to cover up the botched rental. This was happening even as Stepanyan desperately asked Hertz managers to help him get the prosecution stopped, but was told they could do nothing.

Mr. Stepanyan routinely rented with the company and was well-known at the local Hertz office. The notion that one of Hertz's good customers intended to steal a car is absurd in and of itself.

## II.    Hertz Rented the Wrong Truck to Longtime Customer Arthur Stepanyan and then Fabricated Rental Documents to Cover Up the Error and Justify His Prosecution

### a.    Hertz Identifies the Wrong Vehicle on Stepanyan's Rental Contract

Arthur Stepanyan is a longtime Hertz customer who rented multiple times with Hertz, including several times in the months before the rental at issue.

Stepanyan was well-known at the Hertz Charlotte airport location. Mr. Stepanyan rented a Dodge Ram for two weeks in early March 2019, in connection with the rental contract ending in number 5791. Hertz records show that he returned the vehicle and checked back in on March 14, 2019. Hertz000431. However, after looking at an F150, Stepanyan decided to rent the Dodge Ram again.

Mr. Stepanyan was then checked out at the counter and given a new contract ending in 1203, which was then inspected at the booth. Personnel at both the counter and the checkout booth apparently failed to realize that Stepanyan's rental receipt erroneously reflected that Stepanyan was renting a Ford F150, and not the Dodge Ram he was actually driving. PLT00280.

Mr. Stepanyan spoke with Hertz several times after leaving the location and was not informed of any issues on Hertz's end. Furthermore, in the past, whenever there was an issue or an extension was needed, the Charlotte location would call him. He also knew that his valid credit card was on file and, pursuant to Hertz practice, would be charged when he returned the car (he had never had a problem before this during his many rentals). However, none of these steps were taken because Hertz failed to accurately record the truck he was renting on his contract.

**b. Hertz Reports Stepanyan's Rental Car as Missing from Inventory/Stolen, but Never Calls The Last Known Renter During its Investigation; Theft Notes Indicate Hertz was Eager to Have Stepanyan Arrested**

Hertz went to the police on August 1, 2019, and told them that the car was missing from their inventory after last being returned by Mr. Stepanyan on March 14, 2019:

VEHICLE CONTROL WAS NOTIFIED OF THE ABOVE THEFT LOT INFORMATION ON 05/31/2017. THE LAST DOCUMENTED MOVEMENT ON THIS VEHICLE WAS A CHECK-IN UNDER RENTAL RECORD# 40240579 TO THE 01880-12 LOCATION. THE VEHICLE WAS RETURNED BY THE LAST RENTER, STEPANYAN /ARTHUR TO THE ABOVE LOCATION PRIOR TO THE THEFT. THERE IS NO RECORD OF THIS VEHICLE BEING RENTED AND/OR TRANSPORTED TO ANOTHER LOCATION AFTER THE 03/14/2019 CHECK-IN.

Hertz000431. As a result, Stepanyan was arrested on August 5, 2019.

Hertz gave us a Power Point presentation claiming that it has the best policies and practices, including a checklist that has to be followed for each theft report. On that checklist it quite sensibly states that before any theft report can be made, Hertz has to call the last known renter:

8   **Confirmation with Last Known Renter** - Contact last known renter to 1) confirm the make model & color of vehicle rented/returned 2) determine if the vehicle was actually returned to a Hertz facility & specifically which facility, 3) review the return process, 4) obtain a customer description of the location and the name of the employee who assisted them and 5) ask about any problems or concerns with the vehicle's condition

In violation of its own policy, however, Hertz never attempted contact with Stepanyan. Had Hertz done so, the problem would have been cleared up without a theft report and subsequent arrest. This case illustrates what can happen if a full checklist pursuant to W7-02(a)(4) is not completed.

This case has other troubling aspects. For instance, the theft package shows that Hertz knew Stepanyan had the vehicle and that, instead of calling him (the last known renter), they

wanted him arrested:

> US 2019-07-30 09:37:21.301 19073000000 DTC3038  EMAIL FROM GM Bryce Kent any chance we can get the theft package today? We have good information?on who has this vehicle and the the police are just waiting for us to report it. thanks

Hertz000432. Instead of calling the last known renter to see what the issue was, or hiring a repossession service, Hertz's goal was instead to report the car stolen and arrest the customer.

This attitude—and palpable eagerness—to use the police to arrest a longtime and well-known customer, without even an attempt to contact him, is baffling.

### c.  After Stepanyan is Arrested, and Hertz Realized the Last Known Renter was in Possession of the Vehicle, Hertz Fabricated Documents to Cover Up the Error and Justify Prosecuting Stepanyan

This car was initially reported to the police as lost inventory and the theft package expressly acknowledged that Stepanyan had returned the car on March 14, 2019, in connection with the contract ending in 5791. Hertz000431. Instead of conducting an internal investigation to determine why the last known renter still had the car after returning it, Hertz engaged in a cover up.

In particular, Hertz had the police charge Stepanyan with a felony for "fail[ure] to return at the end of a rented period." PLT000282. There was just one problem: Hertz knew from its theft package that the Dodge Ram was in fact ***returned by Stepanyan on March 14 and fully paid for***:

> VEHICLE CONTROL WAS NOTIFIED OF THE ABOVE THEFT LOT INFORMATION ON 05/31/2017.
> THE LAST DOCUMENTED MOVEMENT ON THIS VEHICLE WAS A CHECK-IN UNDER RENTAL RECORD# 40240579 TO THE 01880 - 12 LOCATION. THE VEHICLE WAS RETURNED BY THE LAST RENTER, STEPANYAN /ARTHUR TO THE ABOVE LOCATION PRIOR TO THE THEFT. THERE IS NO RECORD OF THIS VEHICLE BEING RENTED AND/OR TRANSPORTED TO ANOTHER LOCATION AFTER THE 03/14/2019 CHECK-IN.

Hertz000431. The truck was then rented out to Stepanyan again but recorded incorrectly on his new contract, something Hertz knew or should have known had it simply performed a basic investigation before or after Stepanyan's arrest.

Later, on August 14, Hertz doubled down on prosecution. It sent a false Overdue Vehicle Report to the police alleging that Stepanyan had never returned the rental after renting it on March 1, 2019, and that it was overdue when Stepanyan was arrested. This Overdue Vehicle Print Report was not in the original theft package and was modified on August 14, 2018. It also claimed that Stepanyan's credit card was denied and that he had never rented with Hertz before:

| Work Sheet ID | Status | Time Created |
|---|---|---|
| 19031402438 | Clsd | 2019/03/14 05:35 |
| **Last Updated DT** | **Updated By** | **First/Last Name** |
| 2019/08/14 11:34 | TTROUPB1 | ARTHUR STEPANYAN |
| **Address1** | **City** | **ST Ctry** |
| 11071 PAINTED TREE RD | CHARLOTTE | NC US |
| **Phone1** | **Phone2** | **# Prior Rntls** |
| 7044510055 | | 0 |
| **RA Number** | **Days OD** | **Status** |
| 402405791 | 2 | P |
| **Area/Loc** | **Report DT** | **Due Date/Time** |
| 01880/12 | 2019/03/14 | 2019/03/13 20:58 |
| **Res ID** | **Res Type** | **Res Date** |



Hertz000443-444. In reality, Hertz knew Stepanyan had returned the car on March 14, 2019, and that claiming the rental on contract 5791 was overdue was simple false. Hertz also knew that the rental was paid for and that Stepanyan's card was not denied. Lastly, Stepanyan had rented with Hertz many times and was well known at the location. Hertz's "overdue report" document appears to have been fabricated/altered after the fact to make it appear as though Stepanyan failed to return the vehicle and pay for the rental.

It defies logic that Hertz would attempt to make it appear as if a longtime renter whom Hertz *knew* had returned the rental on March 14 and paid for it, (1) had never returned it, (2) had used a bad card and did not pay for it, and (3) was a first-time renter.

This overdue report was actually sent to the police/prosecutors by Hertz for the purpose of prosecuting Stepanyan and finding him guilty of serious crimes Hertz knew he never committed:

Overdue Notes for the worksheet ID: 19031402438

| User ID | Time |
|---------|------|
| TTPOUPE1 | 2019/08/14 11:04 |

Note

***41689-7990d17 Charlotte Mecklenburg PD 4153 Wilkinson Blvd, Charlotte, NC

Hertz000443-444. Why this matter was treated as an overdue rental after Stepanyan's arrest—when it was immediately apparent Hertz had made an error—is astounding and troubling.

Note that while Hertz was creating and sending this false document to the police, Stepanyan personally spoke with someone at the Hertz location (this employee apologized to him), David Nipper (the Area Manager), and Tim Burrell (the corporate security manager) *asking them to please drop the case*. They responded that they were powerless to help him or stop the prosecution.

After Stepanyan hired a lawyer to fight what was happening to him, Hertz refused to cooperate further with prosecutors, leading to the dismissal of the charges:

☒ 5. Other: *(specify)*    ☐ See additional information on reverse.
Victim business no longer cooperative.

PLT000284.

Given that Hertz has a duty to withdraw continuing prosecutions it knows no longer have probable cause, it is particularly egregious that, upon making the decision not to pursue the case, it would stop cooperating with prosecutors instead of dropping the case and making amends to Stepanyan.

## III.  Conclusion

The simple fact of this matter is that Hertz was, at best, grossly negligent when it identified the wrong car in Stepanyan's rental contract and failed to catch the error at the booth. It was, at best, reckless and malicious for Hertz to report the Dodge Ram stolen without even calling the last known renter—a basic investigative step mandated by Hertz policy—despite believing that Stepanyan (a longtime renter) was in possession of the vehicle.

It was, at best, knowing and malicious when Hertz, after Stepanyan's arrest, altered documents and pursued a prosecution of Stepanyan on grounds the company's own records proved were inaccurate.

Making matters even worse, when Stepanyan contacted Hertz managers and asked them to withdraw the prosecution, Hertz refused. The case was only dropped after Hertz ceased cooperating with the prosecution after Stepanyan hired a lawyer to fight what was happening.

# ATTACHMENT O

**THE COURT OF COMMON PLEAS OF PHILADELPHIA COUNTY
FIRST JUDICIAL DISTRICT OF PENNSYLVANIA
CIVIL TRIAL DIVISION**

| | | |
|---|---|---|
| KELLY A. GRADY | : | PHILADELPHIA COUNTY |
|       Plaintiff | : | COURT OF COMMON PLEAS |
| | : | |
|     vs. | : | NOVEMBER TERM, 2015 |
| | : | NO. 03380 |
| THE HERTZ CORPORATION, et al. | : | |
|       Defendants | : | |
| | : | |
| | : | |

## ORDER

**AND NOW**, this 13th day of November, 2017, upon consideration of Plaintiff's Motion for Post-Trial Relief, and Defendant's response thereto, it is hereby **ORDERED** and **DECREED** that Plaintiff's Motion is **GRANTED** as to punitive damages.  A trial on punitive damages shall take place on <u>**Thursday, November 30, 2017**</u>.  All other requests by Plaintiff are hereby **DENIED**.

Grady Vs The Hertz Corp-ORDER

15110338000372

**BY THE COURT:**

PAULA PATRICK, J.

DOCKETED
COMPLEX LIT CENTER

NOV 13 2017

J. STEWART

Control No.: 17093136

ATTACHMENT P



FRANCIS ALEXANDER LLC

# Hertz Erases Rental Extensions and Backdates the Vehicle Due Date

## I. Introduction

Every rental theft report is based on two main variables: payment and time. Many renters have come to us adamant that they extended their rental, and that they had permission to use the car. Yet Hertz's theft reports instead claim that Hertz was unable to contact the renter, or that the renter had refused to return the vehicle, with no mention of extensions. We have discovered that, for whatever reason, Hertz does not provide written confirmation of rental period extensions to its customers.

The evidence we have collected demonstrates that Hertz's systems often automatically delete any record of extensions from the rental systems. This happens when an authorization hold on a customer's card is denied. Hertz *only* bills customers at the end of the rental, but during the rental it checks to make sure the card is active and that there is available credit on the card to pay the rental (this is called an "authorization hold"). When an authorization hold is denied by the credit card company, as can be seen in the theft package overdue vehicle print reports, Hertz simply deletes any record of the extension without notice to its employees or its customers. The theft report omits any record of the customer's contact with Hertz as well as any record of the rental period extension which permitted the renter to use the vehicle.

One example of this practice is in a case that Hertz has already agreed to mediate: Hanna Ayoub. Hanna has provided us phone recordings evidencing that Hertz erased his agreed-to extension and deleted it from the system as if it never happened. These recordings are significant in that they call into question the validity of every Hertz overdue theft report prepared with current systems in place.

It is clear that Hertz's systems are compromised, and that Hertz's claims to the police that certain renters had not extended their vehicle return dates or contacted the company are false. At all points Hertz has known about this issue since (at the latest) the *Grady* trial, but has apparently not yet addressed it.

## II. Hanna Ayoub's Records Show that Hertz's Practice is to Erase Any Record of Rental Extensions Hertz Agrees To, and then Fail to tell the Police about the Extensions or the Contemporaneous Customer Contact

Each time a renter extends with Hertz, the company initiates an "authorization hold" on the customer's card. This is akin to an "exploratory charge" that allows Hertz to confirm that the card in question is active and will be available for a charge at the end of the rental period. The

authorization hold is not a final billing and is not actually payment. Hertz through policy and practice bills its customers after the rental is closed out. See Hertz001445.

In this category of cases, the problem arises when the renter extends his or her return date with Hertz, but the authorization hold initiated by Hertz is denied. When that happens, Hertz's systems apparently delete any record of the extension without notifying Hertz's employees or the Hertz customer, who is under the impression that the return date for the rented vehicle has been extended. As a result, the theft reports compiled by Hertz Vehicle Control often completely omit renter contact and extensions, despite the renter actuality having had multiple contacts with Hertz, and believing that the extension remains in effect.

This is precisely what happened in the Ayoub case. There, Hertz advised the police that Mr. Ayoub's rental was due on April 16, 2019, while Ayoub maintains that he extended through June. Mr. Ayoub has provided us a phone recording from April 15, 2019, on which he can be heard extending his rental with Hertz Wilmington until April 22, 2019. See Exhibit 1. In fact, Mr. Ayoub received notice of an authorization hold for $308 on April 15, 2019. See Exhibit 2. He then received a second charge for $55. Exhibit 2.

The next day on April 16, 2019, Hertz Wilmington left a message about the rental, and he called back. Exhibit 3. As the recording demonstrates, Hertz told Ayoub that his car was overdue and asked if he wanted to extend. He was baffled, as he knew he had extended the day before on the 15th. Although Ayoub kept insisting that he had extended, the Hertz employee was adamant that no record of the extension appeared in Hertz's systems, the charge to Ayoub's card, nor was the employee aware of Mr. Ayoub's telephonic communications with Hertz.

Ayoub eventually grew fed up with Hertz Wilmington on April 16, 2019, and called Hertz corporate, which extended the rental several times over the next 1 1/2 months. Not only is there no mention of the April 16, 2019 discussion in Hertz's theft package, but none of Ayoub's many other contacts with Hertz corporate and Wilmington after that date (pursuant to which Mr. Ayoub was given authorization to use the car through June 2019) were noted.

The implications of this failure are wide-reaching. Hertz has been denying that the renters at issue have extended their rentals—claiming that the theft packages are complete—but in reality Hertz is systematically deleting any record of the extensions which confirm that the renters have been advised by Hertz of the continued authorization to use the vehicles. This evidence undercuts every theft report that Hertz has ever submitted for an overdue rental. By erasing any record of the agreed-to extensions (and then backdating rental due dates), Hertz once again transforms a civil dispute into a criminal matter. This practice allows Hertz to avoid expensive arbitration, use the police as a repo service, charge the rental, and make an insurance claim for the full cash value of the vehicle thereby maximizing its income, asset's value, and reducing costs.

## III.    OTHER RENTERS HAVE PROOF OF ERASED EXTENSIONS

Other Hertz renters have provided evidence demonstrating that this is another systemic failure on Hertz's end:

**Laketa Collins** - GEICO rented Ms. Collins a car in early July 2018, which was initially due back July 11, 2018. Hertz told the police that the return date for the rented car had not been

extended past July 11, 2018. In fact, GEICO has confirmed that it extended the rental through July 18, 2018, whereupon Collins took over the rental and extended again. In essence, Hertz's system *erased extensions by the insurance company and the renter*.  GEICO also confirmed that it routinely has problems with Hertz.

**Shontrell Higgs** - Higgs rented a car in early March 2019, and then claims that her rental was extended several times. Hertz, on the other hand, advised the police that the car was due back March 8, 2019. But Hertz's own theft reports show that Higgs claimed that she had extended her rental beyond March 8, 2019. Furthermore, Hertz's production shows that Higgs provided Hertz a new charge card on March 21, 2019, and that Hertz initiated two authorization holds on that card. Hertz001445. Obviously, Hertz would only have initiated an authorization hold on the new card had the rental been extended. But nothing about a new card, or an agreed rental extension on March 21, appears anywhere in the theft package or in Hertz's production; the multiple extensions and renter contacts by Higgs are omitted and not documented in the theft report or anywhere else that we can see.

**Grady -** In the *Grady* case, Ms. Grady engaged in hours of phone calls with Hertz after the alleged rental due date, none of which were documented in Hertz's theft report. Furthermore, Hertz told the Pennsylvania State Police when Grady was pulled over that, according to Hertz's systems, the police report was a mistake and that there was only a civil payment dispute outstanding. In other words, Hertz employees looking at one Hertz system could see that Grady's rental had been extended, but the Hertz Vehicle Control employee who compiled the theft report could not.

Based on renters' records, we believe that many other renters experienced similar issues, such as:

- Michelle Jones
- Julius Burnside
- Howard Junious
- Antwone Person
- Nicole Stevens
- Cheryl Young
- Barbara Fernandez

## IV.  THE GRADY *CASE* REVEALED THAT HERTZ HAS BEEN ON NOTICE FOR YEARS THAT THERE ARE SERIOUS FAILURES IN ITS RENTAL SYSTEMS

As noted above, Hertz advised the police that Ms. Grady kept her rental months past its due date and had stopped contacting the company. The problems for Hertz were that: (1) her phone records showed voluminous contact over that time span to extend the vehicle, extensions which were not documented in Hertz's theft report; and (2) when Grady was pulled over, a Hertz

employee told the State Police that the overdue report had been a mistake and that all that was at issue was a billing dispute:

> **Synopsis:**
> This incident occurred as Hertz Rental Company reported a vehicle as stolen.  The vehicle was stopped at the above location and all occupants were identified.  Upon calling Hertz Rental Company and the Philadelphia Police Department, it was determined this is a civil issue regarding late payment and the vehicle was not stolen.

> HERTZ Rental Company was contacted and advised that the credit card listed on the contract with the suspect had returned with insufficient funds and as a result the account was overdue.  As a result they reported the vehicle stolen.  HERTZ advised they would prefer the vehicle to be towed and picked up by a representative and would handle the civil tort regarding payment with the suspect.

> **Conclusion/Recommendation:**
> I recommend this investigation be terminated due to the fact that Hertz Rental Company will be handling this situation through civil action.  It was found that the vehicle was reported as stolen from the Philadelphia Airport rental terminal after a miscommunication regarding an overcharged credit card as part of a Hertz Rental Car contract.  Philadelphia PD has been provided all requested documentation and was advised the vehicle was towed/recovered.

> 8. INCIDENT DETAILS
> This incident occurred as a GMC YUKON was reported stolen by Hertz Rental Company.  The vehicle was traveling southbound at the above location when the incident was reported.  A traffic stop was conducted on SR 322, in Dauphin County, PA.  Upon making contact with the operator of the vehicle and contacting Hertz, it was determined that this is a civil issue relating to late payment on a rental contract.

In fact, Grady had paid for her rental at this point, which Hertz's employee declined to tell the police. Obviously, the Hertz employee stated to the State Police that Grady's was just a civil issue because the employee could tell that Grady's rental contract had been extended. All of the foregoing notwithstanding, Ms. Grady was arrested at a later date after Hertz corporate security insisted that the Philadelphia Police Department continue the prosecution, without revealing what Hertz had earlier told the State Police.

What this apparently tells us is that the Vehicle Control employee who compiled the theft package was accessing a computer system that had no record of Grady's rental extensions or contacts with Hertz, while the employee who spoke with the State Police could see the continuing renter contact and extensions.

It is clear that Hertz's systems do not share information effectively and are inexplicably erasing customer extensions, resulting in backdated due dates. In Grady, Hertz claimed that it had destroyed and purged all of the Grady's renter data, and was then sanctioned by the court for having spoliated evidence

## V.    CONCLUSION

Hanna Ayoub's phone recordings show that Hertz's computer programs are deleting records of valid rental extensions. The evidence we have collected shows that this is happening on a widespread basis and has affected many renters.

Each time a renter extends with Hertz, the company initiates an "authorization hold" against the customer's charge card. This is a type of "exploratory charge" the purpose of which is to confirm that the customer's card is active and that the customer's account may be debited. The authorization hold is not an actual billing or debiting of the customer's account: Hertz only actually charges customers' accounts after the rental is closed out.

The problem is that when the renter extends with Hertz, but the preauthorization is denied, Hertz's systems delete any record of the extension without so notifying its employees or its customer. As a result, the theft reports compiled by Vehicle Control often omit information concerning contacts with customers and agreed-to extensions, despite the renter in actuality having had voluminous contact with Hertz and having been given authorization to extend the rental and return the vehicle at a later date.

Furthermore, the evidence shows that Hertz has known for years about the issue but has done nothing to address the problem. The facts of the *Grady* case demonstrate that Hertz is deleting information (much of it exculpatory), failing to reveal to police that it had been contacted by the renter about the vehicle in question, and operating with computer systems that are not tracking and maintaining critical information.

The seriousness of this failure, which converts simple disputes about payment into serious criminal cases, is self-evident. It, too, undercuts the reliability of Hertz's overdue vehicle reports.

# ATTACHMENT Q

| From: | Hershey, Sam |
|---|---|
| To: | John Lahad; Justin A. Nelson |
| Cc: | Albert A. Ciardi III; Walter Gouldsbury; Charla Clements; Vanesa Keller |
| Subject: | RE: False Police Report Plaintiffs Claims |
| Date: | Thursday, September 9, 2021 8:16:30 PM |
| Attachments: | image001.png |

EXTERNAL Email

Hi John,

To be clear, the numbers in tab one are the proof of claim numbers.  Essentially, the proofs of claim noted in tab one were purportedly filed on behalf of the Unknown Class and were not amended to be on behalf of False Police Report Claimants' No. 3.  Given that you are no longer asserting class claims, we believe these proofs of claim are obsolete and are asking you to withdraw them.

I will discuss your requests regarding tab two with my team and will follow up if we are amenable to them.

Best,
Sam

**Samuel P. Hershey**  |  Associate
**T** +1 (212) 819-2699   **M** +1 (914) 582-1628   **E** sam.hershey@whitecase.com
White & Case LLP  |  1221 Avenue of the Americas  |  New York, NY 10020-1095

**From:** John Lahad <jlahad@SusmanGodfrey.com>
**Sent:** Thursday, September 9, 2021 12:52 PM
**To:** Hershey, Sam <sam.hershey@whitecase.com>; Justin A. Nelson <jnelson@SusmanGodfrey.com>
**Cc:** Albert A. Ciardi III <Aciardi@ciardilaw.com>; Walter Gouldsbury <wgouldsbury@ciardilaw.com>; Charla Clements <CClements@susmangodfrey.com>; Vanesa Keller <VKeller@susmangodfrey.com>
**Subject:** RE: False Police Report Plaintiffs Claims

Sam,
With respect to the nine claims in the first tab of the spreadsheet at this time, could you please provide a little more explanation on your position? You mention outstanding proofs but the spreadsheet has claim numbers.

As to the purported non-renter defendants, we would be amenable to dropping the listed entities in the second tab provided that Hertz and any and all remaining Defendants ("Defendants") stipulate that:

1.  Defendants will not rely on corporate formalities to oppose discovery by, e.g., asserting that responsive information, documents, or witnesses are within the possession, custody, or control of any of the second tab entities, and will include any repositories of the second tab entities as part of the repositories of information and documents that will be reviewed for materials responsive to any discovery requests.

2.  The entities in the second tab are not involved in any way with any conduct related to the claims and defenses of the FPR Plaintiffs.

3.  Defendants will not rely on corporate formalities as a defense to liability. In other words, Defendants will not assert that they are not liable because a second tab entity undertook the conduct in question, e.g., filed the theft report or made a false statement in the report or to a third party.

4.    In the case of a final judgment adverse to Defendants, Defendants will not rely on corporate formalities as a grounds to challenge the judgment, oppose any recovery, or deny collectability of any damages award.

We are open to some kind of agreement, but the bottom line is that we do not want any dropping of defendants to prejudice our claims, discovery, or this case in any manner.
Thank you.
Best,
John


JOHN P. LAHAD
SUSMAN GODFREY LLP
713-653-7859 (OFFICE)
713-725-3557 (MOBILE)
CLICK HERE FOR BIO

---

**From:** Hershey, Sam <sam.hershey@whitecase.com>
**Sent:** Monday, September 6, 2021 12:20 PM
**To:** Justin A. Nelson <jnelson@SusmanGodfrey.com>
**Cc:** Albert A. Ciardi III <Aciardi@ciardilaw.com>; John Lahad <jlahad@SusmanGodfrey.com>; Walter Gouldsbury <wgouldsbury@ciardilaw.com>
**Subject:** False Police Report Plaintiffs Claims

EXTERNAL Email
Hi Justin,

I hope your holiday weekend is going well.  Apologies for the serial emails, but as you know, we are preparing our preliminary objections for filing on September 20.  To simplify things for the Court, we have identified certain claims that remain on file that we believe should be withdrawn.  They are reflected in the attached spreadsheet.  Specifically:

1)  Notwithstanding the purported amendments that allegedly superseded the purported "class" proofs of claim, there remain several "class" proofs of claim outstanding.  Please see attached in the first tab.  Please let us know if you are willing to withdraw these claims.

2)  There are also several claims outstanding against debtors for which there is no claim as the debtor does not rent cars.  Please see attached in the second tab.  Note that some of these claims overlap with the claims in the first tab.

Please let me know if you are willing to withdraw these claims.  I am available to discuss.

Best,
Sam

**Samuel P. Hershey** | Associate
**T** +1 (212) 819-2699  **M** +1 (914) 582-1628  **E** sam.hershey@whitecase.com
White & Case LLP | 1221 Avenue of the Americas | New York, NY 10020-1095

=======================================================================
This email communication is confidential and is intended only for the individual(s) or entity named above and others who have been specifically authorized to receive it. If you are not the intended recipient, please do not read, copy, use or disclose the contents of this communication to others. Please notify the sender that you have received this email in error by replying to the email or by telephoning +1 212 819 8200. Please then delete the email and any copies of it. Thank you.

Our external privacy policy is available on https://www.whitecase.com/privacy-policy.


=======================================================================

=========================================================================
This email communication is confidential and is intended only for the individual(s) or entity named above and others who have been specifically authorized to receive it. If you are not the intended recipient, please do not read, copy, use or disclose the contents of this communication to others. Please notify the sender that you have received this email in error by replying to the email or by telephoning +1 212 819 8200. Please then delete the email and any copies of it. Thank you.

Our external privacy policy is available on https://www.whitecase.com/privacy-policy.


=========================================================================

# ATTACHMENT R

Filed in Office Oct-04-2021 16:01:11
ID# 2021-0107326-CR
Page 1

Connie Taylor
Clerk of Superior Court Cobb County

## IN THE SUPERIOR COURT OF COBB COUNTY
## STATE OF GEORGIA

| | | |
|---|---|---|
| **STATE OF GEORGIA** | * | |
| **V.** | * | **IND/ACC NO.: 201405** |
| **DAIYON MACKELL DAVIS** | * | |

### NOLLE PROSEQUI

(1) A Nolle Prosequi of all charges contained in the above and foregoing Indictment/Accusation is HEREBY ENTERED for the following reason(s):

[X] Due to insufficient evidence to prove the charges contained therein beyond a reasonable doubt;

[ ] At the request, or due to unavailability, of the alleged victim;

[ ] A co-defendant, _____, has pled guilty and given sworn testimony exonerating this defendant;

[ ] Other: _____

(2) Pursuant to OCGA 35-3-37, criminal history record information regarding this case shall be restricted pursuant to OCGA 35-3-37(h)(2)(A).

This the ___4th___ day of ___October___, 2021

_____
DAVID WILLIAMSON
Assistant District Attorney
Cobb Judicial Circuit

APPROVED BY:

_____
HON. ANGELA Z. BROWN
Judge, Superior Court
Cobb Judicial Circuit

FILED IN COURT

THIS _____ 20___

AT _____ M

CONNIE TAYLOR
SUPERIOR COURT CLERK
COBB COUNTY, GEORGIA

# ATTACHMENT S

STATE OF _____ W ) _____

COUNTY OF _____ Dane _____

COMES NOW the undersigned, after being duly sworn according to law, and states the following:

1.

My name is Zachary Houston McGee, I am over 18 years of age, I suffer no disabilities, and I make this affidavit from my own personal knowledge for use in the matter of State of Georgia v. Daiyon Davis, Indictment Number 20-1405.

2.

I worked for Hertz from November 2016 to September 2019, as a district manager. I worked at the three Hertz brances: two in Rockford, IL and one in South Beloit, IL.

3.

Daiyon Davis was a regular customer of Hertz and frequented the branches that I managed. I initially met Daiyon through my predecessor, Kaitlyn Smith, who handled the contracts for Daiyon's car rentals. When Ms. Smith left Hertz, I took over Dayon's contracts. Upon information and belief, Ms. Smith had been handling Daiyon's contracts through Hertz for approximately three (3) years prior before I took over.

4.

When I handled Daiyon's contracts, he regularly rented cars for long periods of times.

5.

He always paid on time and never kept a car longer than he was supposed to without paying. He took excellent care of the cars that he rented and returned the cars in perfect condition.

6.

At Hertz, we had a system where contracts had to be renewed every 62 days.

7.

Oftentimes, Daiyon was out of town when the time would come to renew the contract on a rental car. Daiyon had a regualr practice of calling the branch and extending the contract over the phone until he was able to come in and renew in person. This was facilitated by me, and we were able to charge Daiyon because he kept a credit card on file with Hertz.

8.

I am aware of the allegations contained in the accusation against Daiyon. Based upon my business experience with Daiyon over the course of several years, I found the allegations very difficult to believe.

Further Affiant sayeth not.

THIS ⟨28⟩ day of September, 2021.

ZACHARY HOUSTON MCGEE

SWORN to and subscribed before me
this ⟨28⟩ day of September, 2021.

NOTARY PUBLIC

My commission expires ⟨9 - 10 - 22⟩



# ATTACHMENT T

<table>
<tr><td colspan="2" align="center"><strong>IN THE UNITED STATES BANKRUPTCY COURT<br>FOR THE DISTRICT OF DELAWARE</strong></td></tr>
<tr><td>In re<br><br>The Hertz Corporation, <em>et al.</em>,[1]<br><br> Debtors. </td><td>Chapter 11<br><br>Case No. 20-11218 (MFW)<br><br>(Jointly Administered)<br><br><strong>Re: D.I. 1038</strong></td></tr>
</table>

### DECLARATION OF JAMES TOLEN AND KRYSTAL D. CARTER

1.      Our names are James Tolen and Krystal D. Carter. We are competent adults over the age of 18 and have personal knowledge of the facts stated in this declaration and we can testify competently to them if called upon to do so:

2.      In summation: Krystal is a President's Circle renter who rented a car with Hertz at the 9150 South Main Street location in Houston, TX in October 2020. On December 23, 2020, her authorized driver James was arrested at gun point in the vehicle. Inexcusably, it had been reported stolen in September 2020 and Hertz then rented the "stolen" car to James.  Despite contact with Hertz and its assistant general counsel Adam Schloss, they were never told about by Hertz about the need to file claims in the bankruptcy. Their counsel in Texas filed a complaint on July 30, 2021. On August 24, 2021, their attorney was sent a threatening letter by Debtors' counsel Sam Hershey of White and Case. The letter threatened to file severe sanctions unless the complaint was withdrawn immediately. The letter claimed they should have filed claims by the Bar Date even

---

[1] The last four digits of the Hertz Corporation's tax identification number are 8568.  The location of the debtors' service address is 8501 Williams Road, Estero, Fl 33928.  Due to the large number of debtors in these chapter 11 cases, for which join administration for procedural purposes has been requested, a complete list of the debtors and the last four digits of their federal tax identification numbers is not provided herein.  A complete list of such information may be obtained on the website of the debtors' claims and noticing agent at https://restructing.primeclerk.com/hertz.

though their claim arose after the October 2020 bar date. As a result of Hertz's threatening letter, James and Krystal's counsel filed a nonsuit. James and Krystal only found out about the letter and the nonsuit in September 2021.

3.      Krystal Carter rented a car at the 9150 South Main St., Houston, TX location in October 2020. She has been a President's Circle member for 6 years. She extended the vehicle out through December 30, 2020. Her authorized driver was James Tolen.

4.      James was driving in the vehicle on December 23, 2020 in Third Ward a neighborhood of Houston, TX. He was pulled over and a loudspeaker told him to open the door. He was confused and scared.

5.      When he opened the door at least 4 officers had chambered guns pointed at him. They made him raise his shirt, then they patted him down, cuffed him and put him in the back of a squad car. It was humiliating and terrifying.

6.      It was only at that point did they tell him that he was driving a stolen vehicle. While riding to the station he told the officers that he is an authorized driver on the contract, that it had been extended, and that he had not stolen the car.

7.      When the police got to the station, they called Hertz to check out the contract. It was at that point that the officers realized that the contract was valid. Hertz had reported the car stolen in September 2020, before Krystal had ever rented the car. The officer was livid and told Hertz "do you know what you just put him through?"

8.      Krystal was charged $2,285.21 for the rental.

9.      Krystal then contacted Hertz's Executive Customer Service on December 27, 2020. Exhibit 1. Nycole from Hertz's corporate office called her back and said on a message that her supervisor had decided how to resolve the incident.  Exhibit 2.

2

10.     Hertz corporate indicated on a phone call that the company would refund the $2,285.21 but needed James and Krystal to sign a release and wavier allegedly due to the size of the refund. Exhibit 3. James and Krystal refused as they had previously been given a refund of $3,151.69 by Hertz in 2020 and knew that the purported need for a waiver was false. Exhibit 4.

11.     James and Krystal were outraged. Hertz had in a calculated manner, with false statements and reasons, tried to get James and Krystal to waive and otherwise harm their rights. After being called out by Krystal, Hertz refused to respond further. This was not the last time Hertz would harm their rights.

12.     At no point did Hertz inform James or Krystal about the bankruptcy or the need to file claims.

13.     Then, on January 8, 2021, Hertz assistant general counsel Adam Schloss began sending insulting emails to James and Krystal's Texas counsel, while claiming that Hertz was conducting a review and investigation.  Exhibit 5. Nowhere did Schloss provide notice of the bankruptcy, the need to file claims, nor the need to opt out of the releases in the plan.

14.     Even though Texas counsel told Schloss he was going to file suit, Exhibit 5, Schloss never told him he had to file a proof of claim—knowing full well that Hertz had no excuse for what it did to James.

15.     On January 14, 2021, Hertz's claim administrator ESIS stated it was evaluating the claim. It did not provide notice of the need to file claims in Hertz's bankruptcy. Exhibit 6.

16.     Jamesn and Krystal's counsel in Houston, TX filed suit on July 30, 2021. Exhibit 7. Although the complaint copies and pastes from the False Police Report Claimants' filings, no counsel for the False Police Report Claimants was involved. The complaint was served on Hertz on August 5, 2021.

3

17.     On August 24, 2021, Debtors' counsel Sam Hershey from White and Case and Winston and Strawn sent an extremely threatening letter to James and Krystal's Texas counsel. It threatened to have all of them sanctioned unless the complaint was withdrawn in 3 days. Exhibit 7. It further told Texas counsel that all claims had been discharged and waived because they had not filed a claim by the Bar Date, even though their claim had arisen after the deadline.

18.     Without their knowledge, their scared Texas attorney filed for a nonsuit without prejudice, which they only found out about in September 2021.

19.     In a childish, unprofessional, and underhanded action, Hertz assistant general counsel Adam Schloss snarkily responded to the January 8, 2021 email chain eight months later on September 2, 2021, after the Texas case was dismissed: "Didn't hertz so much after all I guess." Exhibit 5.

20.     Clearly Schloss had been waiting to send that email for months and was intimately involved in failing to inform James and Krystal about their rights. Restated, Schloss not only never provided notice of the need to file claims in the bankruptcy in January 2021, but then could not resist crowing and insulting James and Krystal's attorney.

21.     As a direct and proximate result of Hertz's actions and omissions, James was falsely arrested for car theft and suffered extreme mental and emotional distress.

22.     Hertz had no probable cause to have James arrested for car theft.

I declare under the penalty of perjury of the United States of America that the foregoing is true and correct.

Dated:  October _____19_____, 2021          /s/ _____
                                            Declarant


Dated:  October _____19_____, 2021          /s/ _____
                                            Declarant

# EXHIBIT 1



# Handcuffed and detained at gunpoint over a Hertz Clerical error. Inbox

me   Dec 27

to cmorrow1, edward.harris, james

I am a President's Circle Hertz client.  We've been loyal to Hertz this year as indicated by our status.  That makes the incident I'm reporting even more disturbing.

On the evening of December 23rd, James Tolen was pulled over for driving a stolen vehicle. At gunpoint, officers handcuffed and detained James and took him into the police station where they discovered that James was indeed on this current reservation and the truck had been reported stolen in September (prior to our reservation) which means that Hertz rented us a truck that had been reported stolen.

If the police had not further investigated, James, in addition to reliving having guns drawn on him by police every time he goes to sleep and randomly throughout the day, he would have missed the holidays (as there would have been no hearing for him on the 24th or 25th), and he would have had to spend the entire weekend in jail for driving a rental that we were paying handsomely for (roughly $2100) because of a clerical error on Hertz.

**Krystal D. Carter** | President & Chief Cloud Enthusiast
832.303.0107 | @kdcSFDClifer
Schedule a Consult

2700 Post Oak Blvd
21st Floor
Houston, TX 77056

# EXHIBIT 2



Krystal Carter <kdcarter@dannykayconsulting.com>

## New voicemail from (800) 654-3131

1 message

**Google Voice** <voice-noreply@google.com>                                                      Mon, Dec 28, 2020 at 4:10 PM
To: kdcarter@dannykaycloud.com

📞 Voice

PLAY MESSAGE

Hi Miss Carter, this is Nicola with the Hertz corporate office. Again. I was calling you to update you on the resolution that are my supervisor has decided on your incident. If you could give me a call back at 405-7206, I'm sorry +385-405-720-3385 so that we can further discuss. That'll be great. Thank you. Have a great rest of your day. Bye.

YOUR             HELP             HELP
ACCOUNT     CENTER       FORUM

This email was sent to you because you indicated that you'd like to receive email notifications for voicemail. If you don't want to receive such emails in the future, please update your email notification settings.

Google

Google LLC
1600 Amphitheatre Pkwy
Mountain View CA 94043 USA

9/22/21, 10:21 PM

Danny Kay Cloud Mail - New voicemail from (800) 654-3131

danny kay consulting

Krystal Carter <kdcarter@dannykayconsulting.com>

## New voicemail from (800) 654-3131
1 message

Tue, Dec 29, 2020 at 8:49 AM

**Google Voice** <voice-noreply@google.com>
To: kdcarter@dannykaycloud.com

Voice

Hi Ms. Carter, this is Nicole with the Hertz corporate office again. I was just calling to follow up with you about the police report that you were going to send to us. We have yet to receive that. I am going to send over the wrong way over here shortly, but we're really taking this matter seriously and want to get to the root of the the root cause of the stop that you guys had. So you can please provide at least the the agency number or anything regarding the police report, or if you can just send over the place for a copy of the replacement for it. That would be great so that we can move ahead and investigate that and find out why you were stopped. So if you have any other questions or concerns, feel free to give me a call back at 405-720-3585, and you can also just email us back with that information as well. Thank you, and have a great rest of your day. Bye.

PLAY MESSAGE

YOUR          HELP          HELP
ACCOUNT    CENTER      FORUM

This email was sent to you because you indicated that you'd like to receive email notifications for voicemail. If you don't want to receive such emails in the future, please update your email notification settings.

https://mail.google.com/mail/u/1?ik=7fe2a00c84&view=pt&search=all&permthid=thread-f%3A1687424461546792687&simpl=msg-f%3A1687424461546792687

1/2

# EXHIBIT 3

<u>GENERAL RELEASE AND CONFIDENTIAL SETTLEMENT AGREEMENT</u>

KNOW ALL MEN BY THESE PRESENTS that **KRYSTAL CARTER** does hereby acknowledge receipt of the sum of **$2,100.00**, which amount has been accepted in full compromise, settlement, and satisfaction of, and as sole consideration for, the final release and discharge of all actions, claims and demands whatsoever that now exist, or might hereafter accrue, against **THE HERTZ CORPORATION**, and any and all of its parents, subsidiaries, members or affiliates, any and all of its predecessors or successors or the predecessors or successors to its parents, subsidiaries, members or affiliates, any of its past, present or future directors, officers, employees, representatives and attorneys and any of the past, present and future directors, officers, employees, representatives and attorneys of its parents, subsidiaries, members, affiliates, predecessors or successors (hereinafter individually and collectively referred to as the **"HERTZ RELEASEES"),** which and who might be charged with responsibilities for injuries to the property or person of **KRYSTAL CARTER** and the consequences flowing therefrom, resulting, or to result, or which might result from incidents or occurrences that allegedly took place on or after December 23, 2020, and for which **KRYSTAL CARTER** claims the said persons or parties are legally liable in damages, but which legal liability and damages have been disputed and denied.  This Release shall not ever be construed as an admission of guilt or liability by any of the **HERTZ RELEASEES**.

 **KRYSTAL CARTER** warrants that no promise or inducement has been offered except as herein set forth.  **KRYSTAL CARTER** warrants further that this Release is being executed without reliance upon any statement or representation by any of the **HERTZ RELEASEES** concerning the nature and extent of the damages and/or legal liability, therefore.  **KRYSTAL CARTER** warrants further that she is of legal age, legally competent to execute this Release, and accepts full responsibility, therefore.  **KRYSTAL CARTER** agrees, as a further consideration and inducement for this compromise and settlement, that **IT IS A FULL AND FINAL GENERAL RELEASE** of all claims against the **HERTZ RELEASEES** and shall apply to all **KNOWN AND UNKNOWN INJURIES AND/OR** anticipated and unanticipated **DAMAGES**, which might have resulted from the incidents or occurrences that allegedly took place on or after December 23, 2020. **KRYSTAL CARTER** further agrees to defend, indemnify and save harmless the **HERTZ RELEASEES** from all liability, damages, costs and expenses of every kind and nature, including but not limited to all liens for expenses, bills, or other insurance benefits arising out of any damages allegedly sustained by **KRYSTAL CARTER**. **KRYSTAL CARTER** hereby declares that the terms of this Release have been completely read, are fully understood and voluntarily accepted by her for the purpose of making a full and final settlement of any and all claims, disputed or otherwise, on account of injuries and/or damages related to the claims set forth herein, and for the express purpose of precluding forever any further additional claims against the **HERTZ RELEASEES**.

 **KRYSTAL CARTER** and her authorized driver, **JAMES TOLEN**, agree and covenant to keep confidential and not disclose to any third party the terms and conditions of this Settlement Agreement, the existence of this Settlement Agreement, or any of the negotiations and discussions

that preceded its making, except as follows in which cases she will nevertheless use her best efforts to seek confidential treatment by any receiving party: (i) as is necessary to dismiss the instant action; (ii) as is necessary to effectuate any term or provision of the settlement, including any subsequent litigation to enforce the settlement, except that they shall take all reasonable steps to maintain the confidentiality of this information including filing documents under seal and entry of appropriate protective orders; (iii) to **KRYSTAL CARTER'S** insurers, as necessary

to pursue insurance claims; (iv) to **KRYSTAL CARTER** accountants; and (v) as required by law or court order upon notice sufficiently in advance of such disclosure to permit to seek a protective order.


The Confidentiality section of this Release shall be construed to expressly and without exception (except as provided in the preceding paragraph), preclude and prohibit **KRYSTAL CARTER** and **JAMES TOLEN** from being able to publicly acknowledge, discuss, publish, advertise or otherwise reference in any manner, the monetary amount of the settlement, as well as the terms and conditions of this settlement. **KRYATAL CARTER** and **JAMES TOLEN** acknowledge that any failure to honor the Confidentiality section of this Release will result in the immediate forfeiture of all settlement funds paid herein.

 Additionally, **KRYSTAL CARTER** and **JAMES TOLEN** acknowledge that any failure to comply with the Confidentiality section of this Release shall result in the imposition against her of monetary sanctions, penalties, costs and all other appropriate remedies, as deemed appropriate by the court presiding over the jurisdiction in which this Release was executed.

 **KRYSTAL CARTER** further understands and agrees that this Release, settlement and any payment made is not to be construed as an admission of liability. Rather, this is acknowledged to be a settlement of a disputed claim. **KRYSTAL CARTER** hereby agrees not to pursue any further claim, of any kind, with each side bearing its own costs and attorneys' fees. **KRYSTAL CARTER**


The invalidity or unenforceability of any term or provision herein shall not affect or impair the validity or enforcement of any other term or provision herein.  This General Release and Confidential Settlement Agreement contains the entire agreement entered into by **KRYSTAL CARTER** with respect to the subject matter hereof and may not be modified or any provision waived without the prior written consent of THE HERTZ CORPORATION.   IN WITNESS WHEREOF, **KRYSTAL CARTER** and **JAMES TOLEN** have hereunto set her hand and seal the 29th day of December 2020.




I HAVE READ THE FOREGOING RELEASE AND FULLY UNDERSTAND IT.


WITNESS: _____  _____


WITNESS: _____  _____


STATE OF                                                          :  SS.

                                                                         :

                                                                         :

On this _____ day of December in the year 2020, before me personally came_____ , said person being known to me to be the person who is described in and who executed the foregoing Release and acknowledged to me that she executed the same. _____ Notary Public

**WITH RESPECT TO THE CONFIDENTIALITY PROVISIONS**, _____has read and hereby agrees to such provisions.

December _____, 2020

# EXHIBIT 4

Krystal Carter <kdcarter@dannykayconsulting.com>

## Hertz Customer Care Case # 09934576

**Krystal Carter** <kdcarter@dannykaycloud.com>                                       Wed, Dec 30, 2020 at 10:12 AM
To: "executivecustomerservice@hertz.com" <executivecustomerservice@hertz.com>
Cc: james@blackjackrenovations.com, cmorrow1@hertz.com, edward.harris@hertz.com
Bcc: hadi@thehadlilawfirm.com

Nycole,

Thank you for sending this, however, I am not going to sign this. In our call you indicated that we would need to sign a waiver for you all to refund the $2,100 because of *the size of the refund*. However, in July there was another Hertz clerical error that resulted in us being charged $4,172.57 for a one month rental. You all refunded $3,151.69, an amount which exceeds the $2,100 being offered now, on July 23rd without the requirement of a waiver.  I would expect to not be charged for a rental that resulted in the ordeal that James experienced, with or without a waiver.

We will be closing out the reservation this around 1pm today.  Thanks.

# EXHIBIT 5



**Husein Hadi <huseinhadi@gmail.com>**

---

## RE: Ms. Carter - Hertz
8 messages

---

**Angel Pleitez** <angel@thehadilawfirm.com>         Mon, Jan 4, 2021 at 1:08 PM
To: aschloss@hertz.com

Good afternoon,

Please see the following attachment. Thank you.

--
Angel Pleitez
Legal Assistant
<span style="color:red">DOWNLOAD OUR APP</span> for **APPLE** and **ANDROID** devices

www.facebook.com/thehadilawfirm
www.thehadilawfirm.com

The Hadi Law Firm
7100 Regency Square Blvd, Suite 140
Houston, TX 77036
P: (832) 433-7977
F: (855) HADI-LAW (423-4529)

---

📄 **Burkhalter - Hertz LOR  (1).pdf**
405K

---

**Schloss, Adam** <aschloss@hertz.com>         Fri, Jan 8, 2021 at 11:42 AM
To: "angel@thehadilawfirm.com" <angel@thehadilawfirm.com>, "hadi@thehadilawfirm.com" <hadi@thehadilawfirm.com>
Cc: "info@thehadilawfirm.com" <info@thehadilawfirm.com>

Mr. Hadi:


I understand that your firm is high volume and we're certainly very impressed that "all you do is pick juries," but in the interests of professionalism, I thought I'd share that Hertz is continuing its internal investigation of this matter but unfortunately one of the employees we plan to speak with is out of the office until January 12th.  Hertz will send a formal response at that time.  The attached Notice of Representation makes little sense given the context of your client's allegations but again I recognize that your firm sends out boilerplate letters, so I won't read too much into the lack of detail on your end.  If you want to have a real discussion without hanging the phone up on me, I'm available at the number below.


**Adam Schloss**

Assistant General Counsel
**O:**  239-301-7298
**E:**  aschloss@hertz.com

The Hertz Corporation

8501 Williams Road

Estero, FL 33928



We're here to get you there.

[Quoted text hidden]
--------------- This message (including attachments) may contain information that is privileged, confidential or protected from disclosure. If you are not the intended recipient, you are hereby notified that dissemination, disclosure, copying, distribution or use of this message or any information contained in it is strictly prohibited. If you have received this message in error, please immediately notify the sender by reply e-mail and delete this message from your computer. Although we have taken steps to ensure that this e-mail and attachments are free from any virus, we advise that in keeping with good computing practice the recipient should ensure they are actually virus free. ---------------

 **Burkhalter - Hertz LOR  (1).pdf**
405K

---

**Husein Hadi** <Hadi@thehadilawfirm.com>               Fri, Jan 8, 2021 at 11:47 AM
To: "Schloss, Adam" <aschloss@hertz.com>
Cc: "angel@thehadilawfirm.com" <angel@thehadilawfirm.com>, "info@thehadilawfirm.com" <info@thehadilawfirm.com>

Mr. Schloss,

Please be respectful when emailing my office. Please do not mistake us for a "high volume" firm sir. Once we are prepared, we will file suit. You and I have nothing to discuss until that point.

If you have any questions, please, let us know.

Thanks.

Hadi.
[Quoted text hidden]
--

Husein Hadi
Attorney at Law

**The Only Law Firm in Texas with 2 Verdicts over Policy Limits in February 2018**
**30 trials to Verdict in 2019**
**3 TOP 100 Verdicts in 2019**


**DOWNLOAD OUR APP!**

**APPLE**

**ANDROID**



The Hadi Law Firm
7100 Regency Square Blvd, Suite 140
**Houston**, TX 77036

P: (832) 433-7977
F: (855) HADI-LAW (423-4529)



This message is being sent by or on behalf of a lawyer.  It is intended exclusively for the individual or entity to which it is addressed.   This communication may contain information that is proprietary, privileged or confidential or otherwise legally exempt from disclosure.  If you are not the named addressee, you are not authorized to read, print, retain, copy or disseminate this message or any part of it.  If you have received this message in error, please notify the sender immediately by e-mail and delete all copies of this message. **Be advised that all calls to The Hadi Law Firm are recorded and reviewed for training and quality purposes.**

---

**Schloss, Adam** <aschloss@hertz.com>                                    Fri, Jan 8, 2021 at 11:53 AM
To: Husein Hadi <Hadi@thehadilawfirm.com>
Cc: "angel@thehadilawfirm.com" <angel@thehadilawfirm.com>, "info@thehadilawfirm.com" <info@thehadilawfirm.com>

Mr. Hadi:


        You advised me on our short call that your firm is one of the most prolific case filers in Texas – and nationwide for that matter.  I believe that is the very definition of a high-volume law firm.  I question whether you actually spoke with your client before providing this response, but I suppose that is between the two of you.  And for the record, I am always professional.



**Adam Schloss**

Assistant General Counsel
**O:**  239-301-7298
**E:** aschloss@hertz.com


The Hertz Corporation

8501 Williams Road

Estero, FL 33928





**We're here to get you there.**


[Quoted text hidden]
[Quoted text hidden]

---

**Husein Hadi** <Hadi@thehadilawfirm.com>                                    Fri, Jan 8, 2021 at 11:55 AM
To: "Schloss, Adam" <aschloss@hertz.com>
Cc: "angel@thehadilawfirm.com" <angel@thehadilawfirm.com>, "info@thehadilawfirm.com" <info@thehadilawfirm.com>

Mr. Schloss,

Don't hertz yourself with this case.

Thanks.

Hadi.
[Quoted text hidden]

---

Schloss, Adam <aschloss@hertz.com>                                Thu, Sep 2, 2021 at 2:25 PM
To: Husein Hadi <Hadi@thehadilawfirm.com>
Cc: "angel@thehadilawfirm.com" <angel@thehadilawfirm.com>, "info@thehadilawfirm.com" <info@thehadilawfirm.com>


Didn't hertz so much after all I guess.



**Adam Schloss**

Assistant General Counsel
**O:**  239-301-7298
**E:**  aschloss@hertz.com


The Hertz Corporation

8501 Williams Road

Estero, FL 33928





[Quoted text hidden]
[Quoted text hidden]

---

**Husein Hadi** <Hadi@thehadilawfirm.com>                          Thu, Sep 2, 2021 at 2:28 PM
To: "Schloss, Adam" <aschloss@hertz.com>
Cc: "angel@thehadilawfirm.com" <angel@thehadilawfirm.com>, "info@thehadilawfirm.com" <info@thehadilawfirm.com>

It's gonna hertz when our Delaware firm gets involved. :D

Wait for it.
[Quoted text hidden]
[Quoted text hidden]



**The Only Law Firm in Texas with 2 Verdicts over Policy Limits in February 2018**
**30 trials to Verdict in 2019**
**3 TOP 100 Verdicts in 2019**

**Obtained the Most Powerful Verdict in the Practice of Personal Injury, in Texas, over the last 100+ years, on November 12, 2020, in Montgomery County; Stowers Trial Verdict.**

**DOWNLOAD OUR APP!**

**APPLE**

**ANDROID**

The Hadi Law Firm
7100 Regency Square Blvd, Suite 140
**Houston**, TX 77036
P: (832) 433-7977
F: (855) HADI-LAW (423-4529)

[Quoted text hidden]

---

**Husein Hadi** <Hadi@thehadilawfirm.com>                                        Thu, Sep 2, 2021 at 2:28 PM
To: Sedrick Stagg <stagg@thehadilawfirm.com>

This fool here. haha.
[Quoted text hidden]

# EXHIBIT 6



**Husein Hadi <huseinhadi@gmail.com>**

---

## Letter Of Representation - James Tolen and Krystal Carter
2 messages

---

**Lundy, Geoffrey M** <Geoffrey.Lundy@esis.com>                    Thu, Jan 14, 2021 at 3:52 PM
To: "angel@thehadilawfirm.com" <angel@thehadilawfirm.com>, "info@thehadilawfirm.com" <info@thehadilawfirm.com>

As we discussed,

Please provide us with all the information so that we may establish a claim for you clients from the 12/23/2020 loss where you are seeking damages.

Thank you.

**Geoffrey Lundy**

Claims Team Leader

Hertz Claims Office

# ESIS®

P.O. Box 6562

Scranton, PA 18505-0568

Phone   913-563-1997

Fax      844-890-6967

Email   Geoffrey.Lundy@esis.com

--------------- Forwarded Message ---------------
**From:** Angel Pleitez [angel@thehadilawfirm.com]
**Sent:** 1/4/2021 12:13 PM
**To:** executivecustomerservice@hertz.com
**Subject:** RE: Letter Of Representation

Good afternoon,

 Please see the following attachment. Thank you.

--

Angel Pleitez

Legal Assistant

**DOWNLOAD OUR APP for APPLE and ANDROID devices**

www.facebook.com/thehadilawfirm
www.thehadilawfirm.com

The Hadi Law Firm
7100 Regency Square Blvd, Suite 140
Houston, TX 77036
P: (832) 433-7977
F: (855) HADI-LAW (423-4529)


-------------- This message (including attachments) may contain information that is privileged, confidential or protected from disclosure. If you are not the intended recipient, you are hereby notified that dissemination, disclosure, copying, distribution or use of this message or any information contained in it is strictly prohibited. If you have received this message in error, please immediately notify the sender by reply e-mail and delete this message from your computer. Although we have taken steps to ensure that this e-mail and attachments are free from any virus, we advise that in keeping with good computing practice the recipient should ensure they are actually virus free. --------------

ref:_00D15EeK3._5001C1cL8CM:ref

-------------- This message (including attachments) may contain information that is privileged, confidential or protected from disclosure. If you are not the intended recipient, you are hereby notified that dissemination, disclosure, copying, distribution or use of this message or any information contained in it is strictly prohibited. If you have received this message in error, please immediately notify the sender by reply e-mail and delete this message from your computer. Although we have taken steps to ensure that this e-mail and attachments are free from any virus, we advise that in keeping with good computing practice the recipient should ensure they are actually virus free. --------------

---

This email (including any attachments) is intended for the designated recipient(s) only, and may be confidential, non-public, proprietary, and/or protected by the attorney-client or other privilege. Unauthorized reading, distribution, copying or other use of this communication is prohibited and may be unlawful. Receipt by anyone other than the intended recipient(s) should not be deemed a waiver of any privilege or protection. If you are not the intended recipient or if you believe that you have received this email in error, please notify the sender immediately and delete all copies from your computer system without reading, saving, printing, forwarding or using it in any manner. Although it has been checked for viruses and other malicious software ("malware"), we do not warrant, represent or guarantee in any way that this communication is free of malware or potentially damaging defects. All liability for any actual or alleged loss, damage, or injury arising out of or resulting in any way from the receipt, opening or use of this email is expressly disclaimed.

**Husein Hadi** <Hadi@thehadilawfirm.com>                    Fri, Jan 15, 2021 at 6:35 AM
To: Husein Hadi <themob@thehadilawfirm.com>

Only send a police report when we get it. Also, we need to send a FOIA request for all material recorded or obtained at the scene of the arrest.
[Quoted text hidden]
--
Husein Hadi Attorney at Law www.facebook.com/thehadilawfirm www.thehadilawfirm.com The Hadi Law Firm 7100 Regency Square Blvd, Suite 140 Houston, TX 77036 P: (832) 433-7977 F: (855) HADI-LAW (423-4529) The Hadi Law Firm 7901 Cameron Rd., Bldg 3, Suite 331 Austin, Texas 78754 Bahadori, Hadi & Thomas, PLLC 2 Park Plaza, Suite 450 Irvine, California 92614 This message is being sent by or on behalf of a lawyer. It is intended exclusively for the individual or entity to which it is addressed. This communication may contain information that is proprietary, privileged or confidential or otherwise legally exempt from disclosure. If you are not the named addressee, you are not authorized to read, print, retain, copy or disseminate this message or any part of it. If you have received this message in error, please notify the sender immediately by e-mail and delete all copies of this message.

# EXHIBIT 7

7/30/2021 3:55 PM
Marilyn Burgess - District Clerk Harris County
Envelope No. 55880329
By: Courtni Gilbert
Filed: 7/30/2021 3:55 PM

# 2021-46720 / Court: 295

NO. _____

| | | |
|---|---|---|
| **JAMES TOLEN** | § | **IN THE DISTRICT COURT** |
| *Plaintiff,* | § | |
| | § | |
| **V.** | § | **____ JUDICIAL DISTRICT** |
| | § | |
| | § | |
| **HERTZ GLOBAL HOLDINGS, INC.,** | § | |
| **ET AL** | § | |
| *Defendants.* | § | **OF HARRIS COUNTY, TEXAS** |

## PLAINTIFF'S ORIGINAL PETITION AND REQUEST FOR DISCLOSURES

**TO THE HONORABLE JUDGE OF SAID COURT:**

**NOW COMES**, JAMES TOLEN, hereinafter called Plaintiff, complaining of and about Hertz Global Holdings, Inc., The Hertz Corporation, Rental Car Intermediate Holdings, LLC, Hertz Investors, Inc., Hertz Vehicles, LLC, Hertz Vehicle Financing LLC, Hertz Vehicle Financing III, LLC, Hertz Local Edition Corp., Dollar Rent A Car, Inc., Icahn Associates Holding LLC, Icahn Enterprises, LP, Icahn Enterprises Holdings, LP, Icahn Capital, LP, and Icahn Enterprises GP, Inc., hereinafter called Defendants, and for cause of action show unto the Court the following:

### DISCOVERY CONTROL PLAN LEVEL

1.    Plaintiff affirmatively plead that they seek monetary relief in excess of $1,000,000.00, including damages of any kind, penalties, costs, expenses, pre-judgment interest and attorney fees and intends that discovery be conducted under Discovery Level 2.

### PARTIES AND SERVICE

2.    Plaintiff, JAMES TOLEN, is an individual who resides in Harris County, Texas.

3.    Defendant Hertz Global Holdings, Inc., is a Delaware corporation with principal executive offices located at 8501 Williams Road, Estero, Florida 33928. Its registered agent for

service of process within the State of Delaware is The Corporation Trust Company, Corporation Trust Center, 1209 Orange Street, Wilmington, Delaware 19801. Hertz is engaged in the automobile and equipment rental businesses worldwide. The Company's stock is traded on the New York Stock Exchange under the ticker symbol "HTZ."

4.      Defendant The Hertz Corporation is a Delaware corporation doing business in Texas. It may be served pursuant to article 2.11(A) of the Texas Business Corporations Act, or its successor statutes, sections 5.201 and 5.255 of the Texas Business Organizations Code, by serving its registered agent, CT Corporation System, 1999 Bryan Street, Suite 900, Dallas, TX 75201. Service of said Defendant as described herein may be affected by personal delivery.

5.      Defendant Rental Car Intermediate Holdings, LLC is a Delaware corporation doing business in Texas. It may be served pursuant to article 2.11(A) of the Texas Business Corporations Act, or its successor statutes, sections 5.201 and 5.255 of the Texas Business Organizations Code, by serving its registered agent, CT Corporation System, 1999 Bryan Street, Suite 900, Dallas, TX 75201. Service of said Defendant as described herein may be affected by personal delivery.

6.      Defendant Hertz Investors, Inc. is a Delaware corporation doing business in Texas. It may be served pursuant to article 2.11(A) of the Texas Business Corporations Act, or its successor statutes, sections 5.201 and 5.255 of the Texas Business Organizations Code, by serving its registered agent, CT Corporation System, 1999 Bryan Street, Suite 900, Dallas, TX 75201. Service of said Defendant as described herein may be affected by personal delivery.

7.      Defendant Hertz Vehicles, LLC is a Delaware corporation doing business in Texas. It may be served pursuant to article 2.11(A) of the Texas Business Corporations Act, or its successor statutes, sections 5.201 and 5.255 of the Texas Business Organizations Code, by serving its registered agent, CT Corporation System, 1999 Bryan Street, Suite 900, Dallas, TX 75201.

Service of said Defendant as described herein may be affected by personal delivery. Hertz Vehicles, LLC is the company that is listed as actually owning the vehicles rented out by Hertz.

8.     Defendant Hertz Vehicle Financing LLC is a Delaware corporation doing business in Texas. It may be served pursuant to article 2.11(A) of the Texas Business Corporations Act, or its successor statutes, sections 5.201 and 5.255 of the Texas Business Organizations Code, by serving its registered agent, CT Corporation System, 1999 Bryan Street, Suite 900, Dallas, TX 75201. Service of said Defendant as described herein may be affected by personal delivery.

9.     Defendant Hertz Vehicle Financing III, LLC is a Delaware corporation doing business in Texas. It may be served pursuant to article 2.11(A) of the Texas Business Corporations Act, or its successor statutes, sections 5.201 and 5.255 of the Texas Business Organizations Code, by serving its registered agent, CT Corporation System, 1999 Bryan Street, Suite 900, Dallas, TX 75201. Service of said Defendant as described herein may be affected by personal delivery.

10.     Defendant Hertz Local Edition Corp. is a Delaware corporation doing business in Texas. It may be served pursuant to article 2.11(A) of the Texas Business Corporations Act, or its successor statutes, sections 5.201 and 5.255 of the Texas Business Organizations Code, by serving its registered agent, CT Corporation System, 1999 Bryan Street, Suite 900, Dallas, TX 75201. Service of said Defendant as described herein may be affected by personal delivery.

11.     Dollar Rent A Car, Inc. is an Oklahoma Corporation doing business in Texas. It may be served pursuant to article 2.11(A) of the Texas Business Corporations Act, or its successor statutes, sections 5.201 and 5.255 of the Texas Business Organizations Code, by serving its registered agent, CT Corporation System, 1999 Bryan Street, Suite 900, Dallas, TX 75201. Service of said Defendant as described herein may be affected by personal delivery.

12.     Defendant Icahn Associates Holding LLC is a Delaware corporation doing business in Texas. It may be served pursuant to article 2.11(A) of the Texas Business Corporations Act, or its successor statutes, sections 5.201 and 5.255 of the Texas Business Organizations Code, by serving its registered agent, Corporation Service Company, 211 E. 7th Street, Suite 620, Austin, TX 78701. Service of said Defendant as described herein may be affected by personal delivery. Ichan Associates owns approximately 40% of Hertz stock, or approximately 55 million shares. IA is a subsidiary of Icahn Enterprises.

13.     Defendant Icahn Enterprises LP is a Delaware corporation doing business in Texas. It may be served pursuant to article 2.11(A) of the Texas Business Corporations Act, or its successor statutes, sections 5.201 and 5.255 of the Texas Business Organizations Code, by serving its registered agent, Corporation Service Company, 211 E. 7th Street, Suite 620, Austin, TX 78701. Service of said Defendant as described herein may be affected by personal delivery.

14.     Icahn Enterprises Holdings LP is a Delaware corporation doing business in Texas. It may be served pursuant to article 2.11(A) of the Texas Business Corporations Act, or its successor statutes, sections 5.201 and 5.255 of the Texas Business Organizations Code, by serving its registered agent, Corporation Service Company, 211 E. 7th Street, Suite 620, Austin, TX 78701. Service of said Defendant as described herein may be affected by personal delivery.

15.     Icahn Capital LP is a Delaware corporation doing business in Texas. It may be served pursuant to article 2.11(A) of the Texas Business Corporations Act, or its successor statutes, sections 5.201 and 5.255 of the Texas Business Organizations Code, by serving its registered agent, Corporation Service Company, 211 E. 7th Street, Suite 620, Austin, TX 78701. Service of said Defendant as described herein may be affected by personal delivery.

16.     Icahn Enterprises GP, Inc. is a Delaware corporation doing business in Texas. It may be served pursuant to article 2.11(A) of the Texas Business Corporations Act, or its successor statutes, sections 5.201 and 5.255 of the Texas Business Organizations Code, by serving its registered agent, Corporation Service Company, 211 E. 7th Street, Suite 620, Austin, TX 78701. Service of said Defendant as described herein may be affected by personal delivery.

17.     The five Icahn defendants actively manage Hertz, actively appoint board members, actively participate in appointing and removing officers, and participate in making policy at Hertz. The Icahn Defendants, indeed all Defendants, have been aware of the serious problems that affect Hertz's theft reporting since at least September 2017 but have done nothing to fix the issues despite having the ability and duty to do so.

### JURISDICTION AND VENUE

18.     The subject matter in controversy is within the jurisdictional limits of this court.

19.     This court has jurisdiction over the parties because Defendants are corporations that conduct business and have registered agents in Texas.

20.     Venue in Harris County is proper in this cause under Section 15.002(a)(1) of the Texas Civil Practice and Remedies Code because all or a substantial part of the events or omissions giving rise to this lawsuit occurred in this county.

### FACTS

21.     Defendants Hertz Global Holdings and The Hertz Corporation have been hiding a massive corporate scandal, aided and abetted by their directors and officers.

22.     Hertz has been falsely reporting untold numbers of customers for car theft, throwing them in jail on felony charges for months, prosecuting them, causing them to lose their jobs, giving

them criminal records, causing them to lose their homes, and separating them from their family and loved ones. These customers have paid for their cars and are authorized to use the rentals.

23.     The company's computer and inventory tracking systems are broken. However, the top corporate officers and directors have decided that verifying theft reports, and fixing their computers, would be too expensive.

24.     Defendant Hertz has instead decided—at the very highest level—to mass report its own customers to the police without verification, effectively using the police, criminal justice system, and taxpayers to subsidize inventory control for a private corporation.

25.     Hertz and its top officials are dishonestly and maliciously turning potential civil disputes with customers about payment (payment which Hertz has usually already received)— which are required to be arbitrated or addressed in small claims court—into criminal theft reports and prosecutions. As this Complaint explains, by doing so the company is savings tens of millions of dollars.

26.     Hertz's policies, procedures, and practice disproportionately condemn poor minorities to prison and prosecution while presuming their guilt. Many of these innocent individuals—lacking money and access to effective legal services—remain wrongfully imprisoned for months as their cases slowly wind their way through the courts. See www.truthhertz.net.

27.     This plan is as brilliant as it is evil, saving the company millions upon millions of dollars it would otherwise have to spend updating its broken systems and paying corporate security personnel to verify the thousands of theft reports it makes every year.

28.     As a result of this routine and systemic mass reporting, without verification or investigation, many innocent customers have been wrongfully detained, arrested, thrown in prison, prosecuted, and had their lives destroyed.

29.     This is not some sort of error. The company and its leadership have known about these problems for many years—since at least 2015, and likely far earlier—after falsely imprisoned customers and police agencies notified Hertz corporate about these serious issues. Hertz did nothing to address these problems, instead deliberately placing the Almighty Dollar before the lives and safety of their customers, including the Plaintiff.

30.     Hertz has even been sued and lost lawsuits for intentional infliction of emotional distress and malicious prosecution for the same conduct at issue in this case in 2017—but has continued to falsely report customers for theft calculating that it will make more money if it does not fix the problem.

31.     Hertz's corporate representatives testified in those lawsuits that their "marching orders" are to routinely disregard the standard operating procedures designed to safeguard against and prevent false reports as part of cost saving measures imposed by Hertz corporate.

32.     What differentiates this scandal from Worldcom, Enron, Arthur Anderson, Bear Stearns, FIFA, Volkswagen, WeWork, or even Madoff, is that those cases were only about money. Uniquely, the clients in this case had their lives destroyed, with consequences in the hundreds of millions of dollars. The tragedies that Hertz—who files thousands of police reports per year—has caused could fill many books.

33.     Hertz, a company which claims to be Number 1 in customer service, has been given every chance by Plaintiff to voluntarily address what they are doing to their customers, but the response has been callous disregard.

34.     There is no excuse for this conduct. The criminal justice system does not exist to be used as a repo service for a massive multinational company worth billions of dollars which cannot be bothered to track its vehicles and rentals. No company should be mass filing unverified

police reports, especially when those false reports endanger the freedom and safety of its customers and disproportionately impact minorities.

35.     Any theft report must be undertaken with the utmost seriousness given that it has the potential to ruin a customer's life. Hertz therefore has several corporate policies which are supposed to govern theft reporting by the company. These policies are allegedly designed to safeguard against false reports. In reality they are ignored and twisted to cut costs resulting in false theft reports.

36.     Hertz and its subsidiaries are Delaware corporations. Hertz also has approximately 15 corporate security managers who participate and supervise the theft reporting process at the various locations around the country.

37.     When a vehicle is missing or is allegedly overdue, Hertz Vehicle Control generates what Hertz calls a "theft package." This theft package is then given to the police to initiate a theft report. This theft package purports to detail all contact with the renter, payment information, the rental due date, extensions made by the renter, and the renter's prior rental history.

38.     Hertz has a major systemic failure in that it is filing false theft reports. These can be categorized as missing inventory and overdue rentals.

39.     Missing inventory reports are self-explanatory, and generally consist of vehicles allegedly missing from Hertz locations without permission where Hertz does not know what happened to the vehicle. In these cases, Hertz reports only the car stolen and does not name a customer in the theft report.

40.     Hertz has several nationwide systemic problems which are resulting in blatantly

false police reports for both missing inventory and overdue rental cases. This is resulting in innocent customers being thrown in jail and prosecuted, a massive civil rights issue. Unfortunately, this problem predominantly and invidiously affects black and minorities.

41.   These systemic issues are well known to the company but have been ignored for many years because fixing them would decrease Hertz's profits.

42.   The systemic problems cause blatantly false police reports to be submitted, resulting in the arrest and prosecution of customers without probable cause both for missing inventory cases and for allegedly overdue rentals:

a. **Falsification of Payment Information** - Hertz's theft reports falsely tells the police the renter never paid and provided a denied card. Secretly, however, Hertz actually fully charges the customer but never updates the police with the payment information. Incredibly, Hertz policy W7-02(D) specifically describes and requires this outrageous process, which guarantees that every Hertz theft report contains falsified payment information.

b. **Deletion of Rental Extensions** - In certain scenarios Hertz's computer systems secretly delete customer rental extensions, and backdate the rental due date, resulting in false police reports which claim that the renter never extended or contacted the company. Not only do customers believe they have an extension, but sometimes this extension process occurs over and over during the rental with the renter having no idea there is an issue. Hertz's systems provide no indication to employees who handle extensions that there is a problem with the rental so the customer is also not informed of the issue. The customer who believes the rental is extended, is then suddenly arrested despite having been in contact with the company.

c. **Failure to Perform Adequate Investigation** - Hertz has directed its vehicle control and corporate security personnel to violate Hertz policy W7-02(a)(17) which requires an investigation by a corporate security manager to confirm the accuracy of theft reports. Instead, Hertz has told the local security managers that their "marching orders" are to refrain from verifying, investigating, or otherwise double checking police reports for extensions or payment. This results in every Hertz theft report being unverified. Because no investigation or check is performed, every Hertz theft report contains significant inaccuracies regarding due dates, extensions, payments, customer contacts, returns, and other important information.

d. **Destruction of Records** - Despite criminally reporting customers for theft, and being required by Hertz policy and the law to preserve all related information, Hertz outrageously deletes almost all renter information and data. This information and data often contains proof that the renter paid and extended the rental, that the renter had no intent to steal the car, and that Hertz's initial theft report was false. In a prior lawsuit, the Court granted severe spoliation sanctions against Hertz for its destruction of documents.

43.    Hertz's false theft package which claim that: (1) the customers did not pay, (2) the customers did not extend or contact Hertz, (3) that Hertz internally verified the accuracy of the report, and (4) that there is probable cause to conclude that the customers have criminal intent to steal a vehicle.

44.    The authorities are unaware that the theft package is unverified, one-sided, does not fully capture the rental histories of the customer, fails to record and erases extensions, backdates due dates, contains false payment information, *and that Hertz destroys all internal data which could exonerate the customer and contradict the theft package*.

45.     For allegedly missing vehicles, authorities pursue charges because they rely on Hertz's false theft package which claim that :(1) they believe Hertz's theft package which says that the only way the vehicle could be missing is that it was stolen off of Hertz's lot, (2) they have no idea that Hertz routinely loses track of cars, (3) they do not know that instead of investigating where missing cars are, Hertz simply reports them stolen and has the police find them, and (4) they do not know that Hertz does not note in its rental system which cars it reported as "stolen," resulting in customers being rented stolen cars.

46.     Invariably, when the prosecution and police are informed that the customer had in fact paid for the rental, returned the rental, extended the rental, or was rented a stolen car the charges are dropped.

47.     Perniciously, despite filing these police reports, Hertz never intends to pursue a prosecution to trial, yet also never withdraws the cases. Instead, it lets the case linger while the innocent customer either sits in prison or is prosecuted. When the renter contacts Hertz to ask for help, Hertz falsely tells the customer that it is out of Hertz's hands whether to continue the prosecution.

48.     For what purpose would Hertz be filing false police reports but not actually pursuing prosecutions? The answer is that Hertz has realized that it is exponentially cheaper to simply file criminal theft reports against customers—even if they are false.

49.     By reporting missing or overdue vehicles to the police, with little or no investigation or verification, Hertz gets the following benefits:

a. Hertz avoids spending money on personnel to verify if the theft reports are accurate;

b. The police immediately recover the vehicle at taxpayer expense, instead of Hertz hiring repossession services;

c. If Hertz treated these rentals as a civil and not criminal issue, the rental contracts require that these matters be arbitrated. If Hertz arbitrated these matters it would cost an enormous amount of money. By filing a criminal report, Hertz avoids arbitration and instead receives restitution through the criminal justice system;

d. Hertz writes off the rental car and/or makes an insurance claim for the "stolen" property.

50.    If this seems incredible, it is all documented in Hertz's own policies and testimony, as described below.

51.    In every theft report there are two implicit variables: payment and time.

52.    If the rental vehicle is paid, or the renter has provided Hertz a valid form of credit (e.g., a credit card number), it should be clear that the renter does not intend to steal the car. Indeed, in any type of consumer theft report, the determinative factor is payment.

53.    Hertz routinely provides false information to the police in its theft packages about customer payment to secure criminal charges against the renter. To understand how and why, some background is needed on Hertz's billing process.

54.    When a customer initially rents a car from Hertz, they provide a credit card to Hertz as a letter of credit so that Hertz can charge for any costs associated with the rental.

55.    At the time of the initial rental, Hertz puts something called an "authorization hold" on the customer's card. An authorization hold is not a permanent charge, it simply checks the customer's account to see if it is valid and has funds. This temporary charge does not appear on any monthly billing statements, and is not a bill or payment.

56.    If the customer later extends the rental, Hertz also places an authorization hold on the customer's card. Again, this is not a final billing or payment.

57.     Only at the end of the rental, after the rental is closed out, does Hertz actually charge the customer's card for payment on the full rental.

58.     Although, an authorization hold may be denied during the rental for a variety of reasons, such as a low balance, ***this says nothing about whether the final billing charge will go through***.

59.     When filing theft reports, Hertz first finalizes and prints out paper theft packages compiled in Oklahoma City which claim that the customer never paid for the rental and that the

Page 11 of 92

card was "denied." However, when the theft package is printed out, ***the customer has not yet been billed***. The paper theft packages state that the customer owes the full balance of the rental. Then and only then, after the theft package is printed out, does Hertz charge the customer for the car rental. The final billing charge is almost always successful.

60.     Yet, despite having just charged the customer and received payment, Hertz then gives the now out-of-date paper theft package to the police claiming that the renter never paid, has an outstanding balance of many thousands of dollars, and that the renter provided an invalid card.

61.     At no point does Hertz inform the police that the customer has been charged.

62.     As is immediately obvious, this means that many if not all overdue Hertz police report contains materially false information.

62.     Incredibly, this is not the result of some sort of massive error, but instead has been deliberately    written    into    Hertz's    policy    since    at    least    2007.

63.     The reason the policy is written in this manner is because Hertz knows that if police were aware that Hertz had charged the customer, and always had a letter of credit to bill the customer at its discretion, the theft report would not be accepted.

13

64.     Indeed, when the customers provide proof of payment to the prosecutors, the prosecutions are dismissed.

65.     Hertz has known about this issue for many years but has stubbornly refused to revise the policy. Given that Hertz files at least 10,000 police reports a year, and this policy has been in place since at least 2007, the number of affected individual is huge.

66.     Every named Plaintiff reported for overdue rental theft was billed by Hertz after the theft report was printed out; in no cases were the police were told about the payments.

67.     This policy is at a minimum reckless, it is a corporate device to obtain police action against customers where there is otherwise no probable cause to do so. There is no legitimate or valid reason for such a policy.

68.     All corporate Hertz defendants and their employees, the named defendant directors, and the named defendant officers were aware of this policy and refused to change it or otherwise take action.

69.     In September 2017 Hertz lost a malicious prosecution trial in Philadelphia. As with Plaintiff's case explained in this Complaint, Hertz had given a theft package to the police which said she owed $2,445, when in reality Hertz had received payment of $2,445 a week before the police report.

70.     As noted, every rental theft report is based on two main variables: payment and time. In addition to misrepresenting payment, Hertz also utterly botches the time component of the overdue vehicle theft reports.

71.     In sum and substance, after renters extend the rental period, Hertz's computer systems outrageously deletes the customer extensions *without notice to the customer*.

72.    When a customer calls in to Hertz to extend the rental, the renter can call the location or Hertz corporate's 1800 extension number. When the customer extends, Hertz then places an authorization hold on the card. If the authorization hold is approved by the bank, then the extension appears on Hertz's records.

73.    However, if the authorization hold is denied, Hertz's computer systems at Vehicle Control erase the extension and backdate the due date of the rental. Not only that the customer ever extended, but that the renter ever attempted to contact Hertz in the first place.

74.    The problem is immediately apparent to even the most cursory observer. The renter has been told that he is authorized to use the car for an extended period, yet Hertz has secretly canceled the extension and erased any evidence it ever existed.

75.    It is one thing if Hertz wants a new form of payment and lets the customer know; it is something else entirely if Hertz memory holes the rental extension. In some cases, the renter has extended over 10 times and each time, without notice to the renter, Hertz secretly erased the extensions.

76.    Hertz then reports the customer to the police claiming that the due date of the rental was months before and that the renter never extended or contacted Hertz about the rental. This information not only goes directly to whether the renter extended and was authorized to use the vehicle, but also is vital information about whether the renter had actually absconded with an intent to steal the vehicle. No exculpatory information from the Contract Notebook is given to the police. Although the extension is erased, the Contract Notebook which contains a history of the rental contacts (which is not consulted by Vehicle Control), can retain information showing that the renter had contacted Hertz.

77.     Hertz policy specifically prohibits the destruction of records in contemplation of litigation, governmental investigation, or third party subpoenas—as does applicable spoliation law.

78.     Furthermore, the company requires that any records related to a criminal prosecution of a customer be retained for seven years.

79.     Yet, Hertz does none of this. Hertz instead deletes all recorded phone calls and all rental records including the Rental Contract Notebook, even for those customers who have been reported to the police for theft.

80.     Those phone calls and rental records often contain information proving that the customer contacted the company and extended the rental. This information is exculpatory. Because Hertz does not provide customers in writing proof of extensions or contacts with the company, these are often the only records of what happened during the rental.

81.     Notably, these records often completely contradict the what Hertz gives the police in the theft package.

82.     Plaintiff James Tolen rented a vehicle from Hertz. On **December 23, 2020**, Mr. Tolen was in the Hertz rental vehicle when the police pulled him over. The police commanded Mr. Tolen to get out of the car, and they put him in hand cuffs and seated him in the back seat of the police car as the officers loaded their weapons. Mr. Tolen was completely traumatized and feared that he would die. Mr. Tolen pleaded with the officers to read the paperwork in the glove box and notified them he had paid $2,100.00 to the rental place called Hertz-Car-Rental Company for the vehicle. The police told Mr. Tolen that the vehicle was reported stolen by Hertz. The police called Hertz Rental to confirm the details for the rental truck, and a Hertz representative stated that it was their mistake, because when the previous rental customer did not return the vehicle on time, Hertz

reported it stolen. It was only then that the police uncuffed Mr. Tolen and let him go.

83.    As a result of this incident, Mr. Tolen sustained serious personal injuries for which he had to seek the care of medical professionals.

84.    As a direct and proximate result of Defendant's acts and omissions, Plaintiff has incurred severe and substantial damages and actual harm. These damages include but are not limited to:

a.  Medical Expenses;

b.  Severe mental distress, as well as severe emotional distress, mental suffering, mental anguish, sleeplessness, restlessness, anxiety, and depression;

c.  Loss of reputation;

d.  Harm to personal, social, and professional relationships;

e.  Loss of Consortium; and

f.  Emotional pain and suffering.

## CAUSES OF ACTION

### COUNT I – Malicious Prosecution

85.    Plaintiff contends that: a. a criminal action was commenced against him; b. the prosecution of that criminal act was caused by Defendants or with their aid; 3. That action was terminated in Plaintiff's favor; 4. Plaintiff was innocent; 5. Defendants acted without probable cause; 6. Defendants acted with malice; and 7. The criminal proceeding damaged Plaintiff.

86.    All corporate defendants (jointly known as "Hertz") are alleged to be vicariously liable for the conduct of their employees.

87.    All Defendants' conduct, actions, and omissions were negligent, grossly negligent, reckless, malicious, and/or intentional.

88.     At all points the conduct, actions, omissions of Hertz employees was foreseeable to Hertz and done at Hertz's direction and with Hertz's blessing.

89.     Defendants directly and proximately caused police and prosecutorial actions to be initiated and continued against the Plaintiff without probable cause. Not only was materially false information provided to the police, but Defendants failed to supplement omitted and material information to the police and prosecutorial authorities, including information on payment and extensions.

90.     Defendants failed to withdraw or otherwise inform the police and prosecutorial authorities that they wished to withdraw the charges against the Plaintiff, and/or not continue with charges or prosecution, despite the absence of probable cause.

91.     Defendants, in filing the police reports, did not intend to follow through on the prosecution.

92.     Defendants are not using the criminal justice system for the legitimate purpose of bringing alleged criminals to justice, but instead as a free taxpayer funded repo service to cut costs. Defendants have long known that they have routinely been falsely reporting innocent customers for theft, or lost cars as stolen, but have taken no steps to correct the problem.

93.     As a direct and proximate result of Defendants' conduct in initiating criminal complaint without probable cause and failing to withdraw the criminal complaint as set forth above, Plaintiff has suffered severe damages, including but not limited to medical expenses, loss of freedom, severe emotional distress, mental suffering, mental anguish, sleeplessness, restlessness, anxiety, and depression.

94.     As a direct and proximate result of Defendants using the criminal justice system for an objective other than bringing Plaintiff to justice, Plaintiff has suffered severe damages,

including but not limited to medical expenses, loss of freedom, severe emotional distress, mental suffering, mental anguish, sleeplessness, restlessness, anxiety, and depression.

95.     Plaintiff also requests exemplary damages due to the outrageous behavior of Defendants, their reckless disregard for Plaintiff's rights and life, and because Defendants have had years of notice that the company is wrongly reporting innocent customers for car theft but has done nothing to fix the problems but instead continue to make false and unverified police reports.

**COUNT II – Abuse of Process**

96.     Plaintiff contends that: a. Defendants made an illegal, improper, or perverted use of the process, a use neither warranted nor authorized by the process; b. Defendants had an ulterior motive or purpose in exercising such illegal, perverted, or improper use of the process; and 3. Plaintiff suffered damage as a result of such illegal, improper, or perverted use.

97.     Hertz is alleged to be vicariously liable for the conduct of its employees.

98.     At all points the conduct, actions, and omissions of Hertz employees was foreseeable to Hertz and done at Hertz's direction and with Hertz's blessing.

99.     The initiation and continuation of criminal proceedings against Plaintiff by Defendants was done without probable cause.

100.    Defendants acted for a purpose other than bringing Plaintiff to justice as they knew or should have known when they filed the criminal complaint against Plaintiff that Defendants never intended to pursue a criminal case against the Plaintiff and were instead using the police as a taxpayer funded repo service.

101.    Hertz knew that the Plaintiff (1) had permission to use the rentals, (2) had provided payment or a letter of credit, and (3) otherwise had no intent to steal the car.

102.    At no point did Defendants correct the misrepresentations made in their police report and testimony, nor did they withdraw the prosecution despite there being no probable cause to continue with it.

103.    Hertz is not using the criminal justice system for the legitimate purpose of bringing alleged criminals to justice, but instead as a free taxpayer funded repo service to cut costs. Hertz knows that it has routinely been falsely reporting innocent customers for theft, but has taken no steps to correct the problem.

104.    Defendants made this false complaint carelessly and/or negligently and/or recklessly and/or knowingly and/or intentionally and/or maliciously. Hertz failed to follow, and in fact deliberately disregarded, its own basic standard operating procedures and protocols designed to prevent false police reports, including Hertz national policy W7-02.

105.    Defendants' failure to withdraw the criminal complaint they initiated against Plaintiff was careless and/or negligent and/or reckless and/or knowing and/or intentional and/or malicious.

106.    As a direct and proximate result of Defendants' conduct in initiating a criminal complaint without probable cause and failing to withdraw the criminal complaint as set forth above, Plaintiff has suffered severe damages, including but not limited to medical expenses, loss of freedom, severe emotional distress, mental suffering, mental anguish, sleeplessness, restlessness, anxiety, and depression.

107.    As a direct and proximate result of Defendants using the criminal justice system for an objective other than bringing Plaintiff to justice, Plaintiff has suffered severe damages, including but not limited to medical expenses, loss of freedom, severe emotional distress, mental suffering, mental anguish, sleeplessness, restlessness, anxiety, and depression.

108.    Defendants made these false complaints carelessly and/or negligently and/or recklessly and/or knowingly and/or intentionally and/or maliciously. Defendants failed to follow, and in fact deliberately disregarded, its own basic standard operating procedures and protocols designed to prevent false police reports, including Hertz national policy W7-02.

109.    Defendants' failure to withdraw the criminal complaints it initiated against Plaintiff was careless and/or negligent and/or reckless and/or knowing and/or intentional and/or malicious.

110.    As a direct and proximate result of Defendants' conduct in initiating criminal complaints and continuing them without probable cause as set forth above, Plaintiff has suffered severe damages, including but not limited to medical expenses, loss of freedom, severe emotional distress, mental suffering, mental anguish, sleeplessness, restlessness, anxiety, and depression.

111.    As a direct and proximate result of Defendants using the criminal justice system for an objective other than bringing Plaintiff to justice, Plaintiff has suffered severe damages, including but not limited to medical expenses, loss of freedom, severe emotional distress, mental suffering, mental anguish, sleeplessness, restlessness, anxiety, and depression.

112.    Plaintiff also requests exemplary damages due to the outrageous behavior of Defendants, their reckless disregard for Plaintiff's rights and life, and because Defendants have had years of notice that the company is wrongly reporting innocent customers for car theft but has done nothing to fix the problems but instead continue to make false and unverified police reports.

**COUNT III – False Arrest/Imprisonment**

113.    Plaintiff contends that: a. Defendants willfully caused and/or authorized Plaintiff to be detained without his consent; and b. Defendants willfully caused and/or authorized Plaintiff to be detained without authority of law.

114.    Hertz is alleged to be vicariously liable for the conduct of its employees.

115.    All Defendants' conduct, actions, and omissions were negligent, grossly negligent, reckless, malicious, and/or intentional.

116.    At all points the conduct, actions, and omissions of the Hertz employees was foreseeable to Hertz and done at Hertz's direction and with Hertz's blessing.

117.    The initiation and continuation of criminal proceedings against Plaintiff by Defendants was done without probable cause.

118.    As a direct and proximate result of the false, incomplete, and inaccurate information provided to police, Defendants caused Plaintiff to be wrongfully detained, arrested, and/or imprisoned, or otherwise unfree to leave.

119.    As a direct and proximate result of Defendants' conduct, actions, and omissions, Defendants caused severe damages to Plaintiff, including but not limited to medical expenses, loss of freedom, severe emotional distress, mental suffering, mental anguish, sleeplessness, restlessness, anxiety, and depression.

120.    Plaintiff also requests exemplary damages due to the outrageous behavior of Defendants, their reckless disregard for Plaintiff's rights and life, and because Defendants have had years of notice that the company is wrongly reporting innocent customers for car theft but has done nothing to fix the problems but instead continue to make false and unverified police reports.

**COUNTS IV AND V – Negligent and Intentional Infliction of Emotional Distress**

121.    Plaintiff contends that (1) Defendants were negligent, (2) Plaintiff suffered serious emotional distress, and (3) Defendants' negligence was a substantial factor in causing the serious emotional distress.

122. Plaintiff also contends that (1) Defendants acted intentionally or recklessly, (2) Defendants' acts and omissions were extreme and outrageous, (3) Plaintiff suffered serious

emotional distress, and (4) Defendants' conduct was a substantial factor in bringing about Plaintiff's serious emotional distress.

123.   Hertz is alleged to be vicariously liable for the conduct of its employees.

124.   All Defendants' conduct, actions, and omissions were negligent, grossly negligent, reckless, malicious, and/or intentional.

125.   At all points the conduct, actions, and omissions of the Hertz employees was foreseeable to Hertz and done at Hertz's direction and with Hertz's blessing.

126.   Knowing full well that Defendants' theft reporting procedures and policies resulted in false police reports, and knowing that Defendants were using the authorities for improper purposes, Defendants nevertheless initiated and continued criminal actions which led to arrest of Plaintiff.

127.   Defendants acted recklessly and/or maliciously and/or negligently and/or for a purpose other than bringing plaintiff to justice as they knew or should have known when they initiated and continued the criminal complaint against Plaintiff that he was not guilty of any crime.

128.   Defendants acted with negligence and/or reckless disregard and/or intentional disregard of the probability that Plaintiff (and many other customers across the country) would suffer severe emotional distress as result of their actions and omissions.

129.   Defendants' failure to withdraw the criminal complaint they initiated against Plaintiff was careless and/or negligent and/or reckless and/or knowing and/or intentional and/or malicious. Defendants acted with negligent and/or reckless disregard of the probability that Plaintiff (and many other customers across the country) would suffer severe emotional distress as result of its actions and omissions.

130.    As a direct and proximate result of Defendants' conduct in initiating criminal complaints and failing to withdraw the criminal complaints as set forth above, Plaintiff has suffered severe damages, including but not limited to medical expenses, loss of freedom, severe emotional distress, mental suffering, mental anguish, sleeplessness, restlessness, anxiety, and depression. Defendants' conduct was a substantial factor in causing Plaintiff serious and severe emotional distress.

131.    Defendants' failure to withdraw the criminal complaint they initiated against Plaintiff was intentional and/or reckless and/or negligent.

132.    The acts and omissions of Defendants were extreme and outrageous in a civilized society.

133.    The use of the criminal justice system is of the utmost seriousness and innocent individuals who have done nothing wrong should not be thrown in prison without warning and prosecuted for felonies, nor should their name be associated with extremely damaging felonious charges they did not commit.

134.    Plaintiff also requests exemplary damages due to the outrageous behavior of Defendants, their reckless disregard for Plaintiff's rights and life, and because Defendants have had years of notice that the company is wrongly reporting innocent customers for car theft but has done nothing to fix the problems but instead continue to make false and unverified police reports.

**COUNT VI – Negligence/Gross Negligence**

135.    Defendants had a duty to Plaintiff, which they breached, and that breach proximately caused damages to Plaintiff.

136    Hertz is alleged to be vicariously liable for the conduct of its employees.

137.    All Defendants' conduct, actions, and omissions were negligent, grossly negligent, reckless, malicious, and/or intentional.

138.    At all points the conduct, actions, and omissions of the Hertz employees was foreseeable to Hertz and done at Hertz's direction and with Hertz's blessing.

139.    Defendants owed Plaintiff a duty because he rented a car from Defendants.

140.    Defendants had a duty to conduct the rental properly and to not falsely report Plaintiff to the police because (1) Defendants rented a vehicle to Plaintiff, (2) undertook to file a police report with respect to the vehicle, and (3) because it was foreseeable that filing a false police report that the vehicle was stolen would result in severe damages. All Defendants also undertook to draft, institute, and promulgate theft reporting polices and processes, resulting in a duty to Plaintiff.

141.    At all points, Defendants had notice that Hertz had a serious problem with making false police reports, and keeping track of renter contacts, but at no point corrected these issues or ceased making the reports. This notice was especially apparent after the September 2017 Grady verdict, the November 13, 2017 order for a punitive damages trial, and a November 14, 2017 letter to then general counsel and executive vice president Richard Frecker detailing Hertz's problems and failures.

142.    At all points, Defendants had notice that Defendants were directing Hertz personnel to ignore W7-02(a)(4) and (17), and that they also knew and intended that false police be filed with false information regarding customer payments.

143.    The reporting to the police with false information, for improper purposes, breached the duty of care.

144.    The omissions of Defendants in failing to properly supervise the theft reporting process breached the duty of care, as did the improper management of the theft reporting process.

145.    The conduct of Defendants was not only careless, but also malicious, reckless, willful, wanton, and demonstrated a total indifference to the lives of Defendants' customers, including Plaintiff. Defendants exhibited a conscious disregard for the rights and safety of other persons that has a great probability of causing substantial harm.

146.    Due to Defendants' tortious conduct and omissions, the Defendants have directly and proximately caused Plaintiff monetary damages, had him arrested and imprisoned for crimes and conduct he had not committed. Plaintiff has suffered severe damages as a result of Defendants' actions, including but not limited to medical expenses, loss of freedom, severe emotional distress, mental suffering, mental anguish, sleeplessness, restlessness, anxiety, and depression.

147.    Plaintiff also requests exemplary damages due to the outrageous behavior of Defendants, their reckless disregard for Plaintiff's rights and life, and because Defendants have had years of notice that the company is wrongly reporting innocent customers for car theft but has done nothing to fix the problems but instead continue to make false and unverified police reports.

**COUNT VII – Negligent Hiring, Retention, and Supervision**

148.    Plaintiff also contends that Defendants failed to exercise reasonable care in the hiring, retention, and management of their employees, and this failure was a proximate cause of Plaintiff's damages.

149.    Hertz is alleged to be vicariously liable for the conduct of its employees.

150.    All Defendants' conduct, actions, and omissions were negligent, grossly negligent, reckless, malicious, and/or intentional.

151.    At all points the conduct, actions, and omissions of the individual Defendants and other Hertz employees was foreseeable to Hertz and done at Hertz's direction and with Hertz's blessing.

152.    Defendants owed Plaintiff a duty because he rented a car from Defendants.

153.    All Defendants' conduct, actions, and omissions were negligent, grossly negligent, reckless, malicious, and/or intentional.

154.    At all points the conduct, actions, and omissions of the Hertz employees was foreseeable to Hertz and done at Hertz's direction and with Hertz's blessing.

155.    Defendants had a duty not to falsely report Plaintiff to the police because they rented the vehicle to Plaintiff, because Defendants undertook to file a police report with respect to this vehicle, and because it was foreseeable that filing a false police report that the vehicle was stolen would result in severe damages. All Defendants also undertook to draft, institute, and promulgate theft reporting polices and processes.

156.    At all points Defendants had notice that Hertz had a serious problem with making false police reports, and keeping track of renter payment and contacts, but at no point corrected these issues or ceased making the reports. This notice was especially apparent after the September 2017 Grady verdict, the November 13, 2017 order for a punitive damages trial, and a November 14, 2017 letter to then general counsel and executive vice president Richard Frecker detailing Hertz's problems and failures.

157.    At all points Defendants had notice that Defendants were directing Hertz personnel to ignore W7-02(a)(4) and (17), and that they also knew and intended that false police be filed with false information regarding customer payments.

158.    The reporting to the police with false information, for improper purposes, breached the duty of care.

159.    The omissions of Defendants in failing to properly supervise the theft reporting process breached the duty of care, as did the improper management of the theft reporting process.

160.    The Defendants in this action also breached the duty of care when they reported the car Plaintiff was renting as stolen, despite having known or should have known that Plaintiff had not stolen the rental vehicle or that the vehicle was not stolen.

161.    The conduct of Defendants was not only careless, but also grossly negligent, malicious, reckless, willful, wanton, and demonstrated a total indifference to the lives of Defendants customers, including Plaintiff. Defendants exhibited a conscious disregard for the rights and safety of other persons that has a great probability of causing substantial harm.

162.    Due to Defendants' tortious conduct and omissions, the Defendants have directly and proximately caused Plaintiff monetary damages, had him arrested and imprisoned in the police vehicle for crimes and conduct he had not committed. Plaintiff has suffered severe damages as a result of Defendants' actions, including but not limited to medical expenses, loss of freedom, severe emotional distress, mental suffering, mental anguish, sleeplessness, restlessness, anxiety, and depression.

163.    Plaintiff also requests exemplary damages due to the outrageous behavior of Defendants, their reckless disregard for Plaintiff's rights and life, and because Defendants have had years of notice that the company is wrongly reporting innocent customers for car theft but has done nothing to fix the problems but instead continue to make false and unverified police reports.

**COUNT VIII – Deceptive Trade Practices**

164.    Plaintiff contends that Defendants' actions violate the Texas Deceptive Trade
Practices Act.

165.    Defendants deliberately and routinely files false and unverified theft reports against

166.    Defendants do not inform customers that they not only instruct employees to
disregard policy safeguards against false police reports, but that the policies are deliberately crafted
to result in false reports.

167.    Defendants' advertising and marketing schemes, including their material
omissions, are fraudulent and improperly do the following:

a.  Representing that goods or services have sponsorship, approval, characteristics,
    ingredients, uses, benefits or quantities that they do not have or that a person has a
    sponsorship, approval, status, affiliation, or connection that he does not have;

b.  Representing that goods or services are of a particular standard, quality or grade, or that
    goods are of a particular style or model, if they are of another;

c.  Advertising goods or services with intent not to sell them as advertised;

d.  Engaging in any other fraudulent or deceptive conduct which creates a
    likelihood of confusion or of misunderstanding.

168.    Plaintiff relied on Defendants advertising and marketing when renting a car with
Hertz, and had he known Hertz's actual customer service philosophy would have never rented with
the company.

169.    As a direct and proximate cause of Defendants' deceptive and fraudulent
advertising and marketing scheme, Plaintiff has suffered severe damages, including but not limited

to medical expenses, loss of freedom, severe emotional distress, mental suffering, mental anguish, sleeplessness, restlessness, anxiety, and depression.

170.    Plaintiff requests punitive damages, treble damages, or other exemplary damages due to the outrageous conduct of Defendants.

## SPOLIATION CLAUSE

Plaintiff demands that Defendant stake necessary actions to ensure the preservation of all documents and things related to the case—in any format—hardcopy, electronic, audio, and visual. Defendants are also put on notice to preserve all things including but not limited to information, materials, communications, or other content/data related to the averments in this case.

## PRAYER

Wherefore, Plaintiff demands judgment in his favor on all Counts and against Defendants, jointly and severally, for an amount well in excess of the jurisdictional amount required to guarantee a jury trial. Plaintiff requests that this Court determine and declare that Plaintiff is additionally awarded and afforded on all Counts:

1. Compensatory damages, inclusive of any and all harm attributable to Defendants' actions or inaction, including for loss of freedom, improper prosecution, mental suffering, mental anguish, and medical expenses;

2. Punitive damages to punish Defendants for its outrageous conduct, self-interest, and duplicitous behavior;

3. Exemplary damages to set an example for others;

4. Attorneys' fees and court costs;

5. The loss of time and opportunity;

6. Lost employment opportunities;

7. Delay damages; and

8. Restitutionary disgorgement of all profits Defendant obtained as a result of unlawful, unfair, and/or fraudulent business practices;

9. Mental and emotional pain and suffering;

10. Punitive and exemplary damages to punish Defendant and especially to deter other companies from acting in such a manner;

11. Costs and attorney's fees; and

12. Prejudgment interest;

13. Such other and further relief as the Court deems just, necessary, and appropriate under the circumstances or allowed by statute.

Respectfully submitted,

**THE HADI LAW FIRM, PLLC**

By: _____
Husein Hadi
Texas Bar No. 24067641
Jamil Thomas
Texas Bar No. 24066914
Carnegie H. Mims, III
Texas Bar No. 24046448
Sedrick Stagg
Texas Bar No. 24102815
Seve Thomas
Texas Bar No. 24115145
Ariana Mehdipour
Texas Bar No. 24123765
7100 Regency Square Boulevard, Suite 140
Houston, Texas 77036
Tel: (832) 433-7977
Fax: (855) 423-4529
litigation@thehadilawfirm.com
**ATTORNEYS FOR PLAINTIFF**

**PLAINTIFF HEREBY DEMANDS TRIAL BY JURY**

# EXHIBIT 8

8/26/2021 4:30:33 PM
Marilyn Burgess - District Clerk
Harris County
Envelope No: 56705148
By: FORD, DAVIA
Filed: 8/26/2021 4:30:33 PM

**NO. 2021-46720**

| | | |
|---|---|---|
| **JAMES TOLEN**<br>**Plaintiff,** | §<br>§<br>§<br>§<br>§ | **IN THE DISTRICT COURT** |
| **V.** | §<br>§<br>§ | **295TH JUDICIAL DISTRICT** |
| **HERTZ GLOBAL HOLDINGS, INC.**<br>**Defendant.** | §<br>§ | **OF HARRIS COUNTY, TEXAS** |

## ORDER GRANTING NOTICE OF NONSUIT WITHOUT PREJUDICE

Came before the Court Plaintiff JAMES TOLEN, and filed its Notice of Nonsuit Without Prejudice, stating that Plaintiff no longer wishes to prosecute his claims against Defendants and requests a nonsuit without prejudice of his claims

Now, therefore, it is ORDERED, ADJUDGED and DECREED that Plaintiff's Notice of Nonsuit Without Prejudice is granted, and that all claims of Plaintiff, JAMES TOLEN, are dismissed without prejudice.

It is, further, ORDERED that all costs herein are to be taxed against the party incurring same.

SIGNED this _____ day of _____, 2021.

Signed:
8/31/2021    _D. Roth_

**JUDGE PRESIDING**

**APPROVED AS TO FORM AND SUBSTANCE:**

Respectfully submitted,

**THE HADI LAW FIRM, PLLC**

By: _____

Husein Hadi
Texas Bar No. 24067641
Jamil Thomas
Texas Bar No. 24066914
Carnegie H. Mims, III
Texas Bar No. 24046448
Sedrick Stagg
Texas Bar No. 24102815
Seve Thomas
Texas Bar No. 24115145
7100 Regency Square Boulevard, Suite 140
Houston, Texas 77036
Tel: (832) 433-7977
Fax: (855) 423-4529
litigation@thehadilawfirm.com
**Attorneys for Plaintiff**

# ATTACHMENT U

# EXHIBIT 1

Case ID: 151103380
Control No.: 17090690

THE COURT OF COMMON PLEAS
PHILADELPHIA COUNTY, PENNSYLVANIA

KELLY A. GRADY

*Plaintiff*

vs.

THE HERTZ CORPORATION;
HERTZ RENT-A-CAR PHILADELPHIA INTL. AIRPORT;
JOHN DOE(S)[1]

*Defendants*

ACTION COMMENCED BY: WRIT OF
SUMMONS ON: NOVEMBER 23, 2015

NOVEMBER TERM, 2015

CIVIL ACTION NO.: 151103380

COMPLAINT FILED:
FEBRUARY 22, 2016

CAUSE OF ACTION:
MALICIOUS PROSECUTION

*JURY TRIAL DEMANDED*

## AFFIDAVIT OF RAMANDA VAN PAY

I, Ramanda Van Pay, an adult under no legal disability, being duly sworn under oath, state that I have personal knowledge of the following facts:

1.    I rented a Kia from Hertz on July 21, 2016, in Green Bay, Wisconsin after my car was totaled in an accident.

2.    While I was in Indianapolis on August 18, 2016, with the Kia, the car got a flat tire.

3.    I took the car to the Hertz rental location at the Indianapolis International Airport on August 18, 2016.

4.    The Hertz location allowed me to exchange the Kia for a Hyundai and gave me a vehicle exchange form. The employee who helped me was named Will McCain.

5.    I was told by Hertz in Indianapolis to take the car to the Green Bay location.

6.    When I got back to Green Bay, WI, I immediately took the car to a Hertz location in August 2016.

7.    I spoke with an employee named Ryan Hogan in August 24, 2016 when I returned to Green Bay. Hogan told me to keep the Hyundai and that it was now my rental vehicle under the original contract.

---

[1]  Manager(s) at Hertz Rent-A-Car Philadelphia Intl. Airport from March 2013 to June 2014.

Case ID: 151103380
Control No.: 17090690

8.    I called Mr. Hogan several times to make sure my rental was okay and he assured me it was fine. I also visited Mr. Hogan on occasion, also to confirm the rental was okay.

9.    Unbeknownst to me, Hertz reported my rental vehicle stolen on October 8, 2016, to the Indianapolis Airport Police.

10.    I was pulled over for a traffic violation on November 5, 2016, in Wisconsin by the Fond Du Lac's Sheriff's Department.

11.    After the deputy sheriffs pulled me over, they then told me that the car I was driving was reported stolen by Hertz. I told them I had no idea what they were talking about and that I had a valid rental.

12.    I had spoken with Hertz a day or two before November 5, 2016, to make sure my rental was fine. At no point before or after October 8, 2016, did any Hertz employee I spoke with tell me that the car I was renting was reported stolen. Please keep in mind that I both called and visited Hertz locations and was never told anything was wrong.

13.    I spent three days in jail because of Hertz's false police report even though I was absolutely authorized to possess the car.

14.    The charges against me were quickly dropped by the Fond Du Lac district attorney's office. It is my understanding this happened because I was in contact with Hertz, I was authorized to have the vehicle, and I did not steal the car. Also, when my car was exchanged because of the flat tire, Hertz never put the information in their system. I do not believe Hertz did any investigation before going to the police because if they had they would have realized I was given the vehicle after I got the flat tire.

15.    The Indianapolis Airport police stated that they laid the blame for what happened solely at Hertz's door.

16.    The Indianapolis Airport police also stated that they were aware of at least one other person within one month of my case who was also falsely reported by Hertz in Indiana, and they were also aware of another false report of a man in Pennsylvania.

17.    The Indianapolis police also stated that they were no longer putting Hertz theft reports in the NCIC because they could not validate the reports.

18.    I cannot stress enough that I called a Hertz location just one day before I was arrested, and had also visited the location, and was always assured I was authorized to possess the car; I was never told of any problems.

UNDER PENALTY OF PERJURY, I SWEAR THAT THE FOREGOING IS TRUE, ACCURATE, AND CORRECT.

Ramanda Van Pay

Subscribed and sworn to before me this _____ day of July 19, 2017.

Notary Public

Christopher T. Van Wagner

(Attorney #1024261-WI)