# ATTACHMENT AC



**FRANCIS ALEXANDER** LLC

November 14, 2017

Richard Frecker, Esquire
THE HERTZ CORPORATION
8501 Williams Rd
Estero, FL 33928
T: (239) 301-7000
F: (866) 888-3765
E: rfrecker@hertz.com



Dear Mr. Frecker,

By way of background, I have grown quite familiar with Hertz and its theft reporting procedures in the last few years. I have the privilege of representing another woman falsely accused of car theft by Hertz, Ms. Kelly Grady, who spent 12 days and 12 nights in jail because of Hertz's actions. A Philadelphia jury recently *returned a verdict for Ms. Grady and against Hertz for malicious prosecution and intentional infliction of emotional distress*. At trial it came out that Hertz knew that the car rented by Ms. Grady was not stolen and that the vehicle had been paid for, yet Hertz nevertheless reported Ms. Grady to the police anyway. As of November 13, 2017, the Philadelphia Court of Common Pleas also ordered a trial on punitive damages against Hertz for their conduct against Ms. Grady.

This is the second malicious prosecution and punitive damages trial against Hertz in the year, the other coming out of Texas. Hertz has known about these problems for quite some time, but has done nothing to fix its internal issues.

PAGE 2

In Ms. Van Pay's case, she rented a car in Green Bay and then got a flat in Indianapolis. She took the car in to Indianapolis and filled out an exchange form. A Hertz representative notated in the rental agreement system that Van Pay had exchanged her initial car rental for another one due to the flat. Hertz told her to check in with a Hertz location in Green Bay when she got back. Ms. Pay not only checked in with the location in person, but also routinely communicated by phone and in person with Hertz representatives to make sure her rental was fine.

She was therefore perplexed and terrified when she was pulled over for a traffic violation and thrown in jail for several days for car theft. She was separated from her two children over the weekend and it was a traumatizing experience for her and her young children. Hertz had shockingly reported the car she was driving as stolen from Indianapolis, despite the fact that Hertz gave her the car and she checked in with Green Bay. At no point did anyone from Hertz tell her that she was driving and making payments on a car that Hertz inexplicably reported stolen.

The Indianapolis Police and prosecutors in Wisconsin agreed to drop the charges immediately when they saw the vehicle exchange forms and rental notes, and that **they placed the blame squarely on Hertz** for what happened to Ms. Van Pay. I have attached those documents to this letter for your review.

How could something like this happen? The issue is that Hertz does not investigate its theft reports to police, and also has shockingly poor internal communications. Hertz's corporate security employees admitted at trial in the Grady case that they had been told by management not to follow Hertz policy W7-02 and never perform a mandated local investigation. In other words, once Julie Wilkerson's office at vehicle control in OKC assembles a theft package, little or nothing is done to verify that it's accurate or not. At trial in the Grady case, Hertz stipulated that it did not investigation because it was cutting costs. In addition, Hertz's inventory control and tracking is also extremely deficient.

During Ms. Grady's case, detectives from Philadelphia revealed that other law enforcement agencies around the country had been received false theft reports from Hertz. After following up with police authorities in Indianapolis, IN, Madison, WI, and Louisville, KY, I was able to confirm that *Hertz has a nationwide problem in making false car theft reports*. Several departments now refuse to enter Hertz theft reports into the NCIC. In fact, these authorities also told Hertz corporate security managers that its theft reporting policies were dismal and needed to be corrected, although nothing has been changed.

PAGE 3



I look forward to your response.

With every good wish, I am,

Francis Malony, Esquire

4021-1017-2908 ©1997, Hertz North America. All rights reserved. (1/05)

## Vehicle Exchange Addendum Form
### Hertz
#### Local Edition

Complete one (1) Vehicle Exchange Addendum for each HLE rental vehicle exchange, regardless of exchanging location. Distribute as required.

RENTER'S NAME **Ramanda Van Pay**

NOTE THE NUMBER OF EXCHANGES FOR THIS RENTAL (INCLUDING THIS ONE):

Green Bay, WI
1010 S. Military Avenue

Original Rental Record No. **915 21872**

### ORIGINAL OR CURRENT VEHICLE INFORMATION

| | |
|---|---|
| OWNING AREA **95635** | RENTAL AREA/LOCATION NUMBER **95635-04** |
| UNIT NUMBER **0436501** | VEHICLE LICENSE NUMBER |
| MAKE & YEAR **Kia 2016** | COLOR |
| ORIGINAL VEHICLE CLASS **C** | ORIGINAL RATE CODE **N/A** |

### EXCHANGE (NEW) VEHICLE INFORMATION

| | |
|---|---|
| OWNING AREA **00599** | EXCHANGING AREA/LOCATION NUMBER **1502-11** |
| UNIT NUMBER **1293356** | VEHICLE LICENSE NUMBER **N861742-IL** |
| MAKE & YEAR **Hyundai** | COLOR |
| NEW VEHICLE CLASS **C** | NEW RATE CODE **N/A** |

### ORIGINAL OR CURRENT RENTAL INFORMATION

| | |
|---|---|
| DATE OUT / / | DATE IN / / |
| TIME OUT | TIME IN |
| MILEAGE OUT | MILEAGE IN |
| FUEL LEVEL OUT E 1/8 1/4 3/8 1/2 5/8 3/4 7/8 F | FUEL LEVEL IN E 1/8 1/4 3/8 1/2 5/8 3/4 7/8 F |
| FUEL CHARGES $ | |

### EXCHANGE (NEW) RENTAL INFORMATION

| | |
|---|---|
| DATE OUT / / | DATE IN / / |
| TIME OUT | TIME IN |
| MILEAGE OUT | MILEAGE IN |
| FUEL LEVEL OUT E 1/8 1/4 3/8 1/2 5/8 3/4 7/8 F | FUEL LEVEL IN E 1/8 1/4 3/8 1/2 5/8 3/4 7/8 F |
| FUEL CHARGES TRANSFERRED $ | |

### EXCHANGE INFORMATION

REASON FOR EXCHANGE   VEHICLE RETURNED? (Y or N)

**Flat Tire**

IF VEHICLE WAS NOT RETURNED, NOTE LOCATION OF VEHICLE AND ROAD SERVICE NUMBER:

### EMPLOYEE INFORMATION

Prepared by: (Employee Name) **Will McCain**

EMPLOYEE ID #

DATE **8/18/16**

Addendum is valid only when used in conjunction with the original Rental Agreement. All Terms and Conditions outlined in original Rental Agreement continue to apply throughout the rental period. If a new vehicle class is requested, the customer is required to pay the rate differential, if applicable.

CUSTOMER SIGNATURE   DATE **8.18.16**

```
R/R No: 9152187-2          Rental Agreement System          Status: CLOS
out: RC    in: TB                                           drb: 09/09/16
```

┌Rental Edit/View Options─────────────────────────────┐

│ ┌──────────────────────────────────────────────┐ │
│ │            R e n t a l    N o t e s           │ │

┌ Notes ──────────────────────────────────────────────────────────┐
customer came in. she recieved a flat tire while in indianapolis. they gave he
r a vehicle exchange form. they told her they couldnt do it within the hertz s
ystem. I spoke to steve about it today, we will follow up on what to do next R
H 8-24-16
9/2/16 - RE-ASSIGEND 9 TOLLWAY VIOLATIONS FROM ILLINOIS TOLLWAY BACK TO THE CU
STOMER. JESSI
MECHANICAL EXCHANGE IN INDIANAPOLIS ON 8/18 BECAUSE OF FLAT TIRE. NEW UNIT # 1
293356. INDY GAVE CUSTOMER VEHICLE EXCHANGE ADDENDUM FORM. NO CONTRACT #. PREP
ARED BY WILL MCCAIN. HAVE COPY OF ADDENDUM FORM GIVEN TO CUSTOMER. TB 9/9
└──────────────────────────────────────────────────────────────────┘



```
┌F1───+  ┌F2───+  ┌F3───+   ┌──────────────┐   ┌F6───+  ┌F7───+  ┌F8───+
│     │  │     │  │     │   │      w   O   │   │     │  │     │  │     │
│     │  │     │  │     │   │    ate: 09/  │   │     │  │     │  │ Exit│
+─────+  +─────+  +─────+   └──────────────┘   +─────+  +─────+  +─────+
```

**Hertz**

Licensee

**Ryan Hogan**

*Lead Customer Service Representative*

651- 500-4357

**hle.military@hertzwi.com**
P  920 497 6490

**BROADWAY RENTAL CARS, INC.**
1010 S. Military Ave.
Green Bay, WI 54304

RENTAL: 07/21/16 13:02    GREEN BAY, WI          95635-04  #09 RT
DUE:    08/18/16 12:30    INDIANAPOLIS, IN        01502-11

BROADWAY RENTAL CARS GREEN BAY, WI
Hertz System Licensee
  (920)497-6490        RAMANDA/VAN PAY                    CDP: 1445130
                      PAID BY: MC zizv zaid gffx 5480 AUTH: $ 600.00/030416TYP
                      FT:                      HG:

OWN/VEH: 95635/0436501  16 FORTE KIA 4DR BL  LIC: WI 959TYY      VEH CLASS: C
MILES OUT: 02054  FUEL OUT: 8/8 `TK CAP: 13.2 READY STALL:

| | | | |
|---|---|---|---|
| RATE PLAN: CRD | | RATE CLASS: C | |
| DAY | (TX) $ | 18.24 EA/ | 0 MI |
| EX HOURS | (TX) $ | 0.00 EA/ | 0 MI |
| EX DAYS | (TX) $ | 18.24 EA/ | 0 MI |
| XDAY XHRS | (TX) $ | 0.00 EA/ | 0 MI |
| MILEAGE CHG | (TX) $ | 0.00 | |
| ADJUSTMENT | $ | 0.00 | |
| DISCOUNT 0% | | | |
| RT VEH TAX0 | | | |
| VLCR* | (TX)$ | .95 /DAY | |

THIS VEHICLE MUST BE RETURNED TO INDIANAPOLIS, IN ON 08/18/16
AT 13:02  OR A HIGHER RATE AND/OR INTER CITY FEE WILL APPLY.
MINIMUM KEEP: 1 RENTAL DAY
MAXIMUM KEEP: 62 DAYS @18.24/DAY

OPTIONAL SERVICES OF:
- LDW     DECLINED
- LIS     DECLINED - HERTZ LIABILITY PROTECTION IS SECONDARY
- PAI/PEC DECLINED
- FPO     DECLINED - FUEL & SVC  $ .290/MILE     8.99/GAL
          AT RETURN
NO "ADDITIONAL AUTHORIZED OPERATORS" WITHOUT 'HERTZ' PRIOR WRITTEN APPROVAL
YOU REPRESENT THAT YOU ARE SPECIFICALLY AUTHORIZED TO RECEIVE THE BENEFITS
EXTENDED TO EMPLOYEES/MEMBERS OF HLE STATE FARM APPLETON

THIS VEHICLE MAY NOT BE DRIVEN INTO MEXICO.

BY YOUR INITIALS YOU ACKNOWLEDGE AND AGREE TO THE ABOVE CONDITIONS: _____

IT: N/A VCHR: N/A
PLAN: 3590
RES: L160721VANX/CRD/C/RHO

BY YOUR DECLINING THE OPTIONAL LIABILITY INSURANCE SUPPLEMENT (LIS), PAR. 10(B) OF THE RENTAL TERMS WILL APPLY TO THIS
RENTAL. BY SIGNING BELOW, YOU AGREE THAT ANY INSURANCE THAT PROVIDES COVERAGE TO YOU OR TO AN AUTHORIZED OPERATOR
SHALL BE PRIMARY. THIS MEANS THAT, IN THE EVENT OF ANY CLAIMS ARISING FROM THE OPERATION OF THE CAR, SUCH INSURANCE
SHALL BE RESPONSIBLE FOR THE PAYMENT OF ALL PERSONAL INJURY AND/OR PROPERTY DAMAGE CLAIMS UP TO THE LIMITS OF SUCH
INSURANCE.

UNLESS YOU ACCEPT OPTIONAL LIS, TO THE EXTENT PERMITTED BY LAW, BY SIGNING BELOW YOU KNOWINGLY WAIVE AND REJECT ALL
OPTIONAL LIABILITY COVERAGES INCLUDING, BUT NOT LIMITED TO, UNINSURED AND UNDERINSURED MOTORIST AND SUPPLEMENTARY NO
FAULT.

PURSUANT TO PARAGRAPH 8 OF THE RENTAL AGREEMENT, FUEL & SERVICE CHARGES APPLY AT $8.99 PER GALLON OR, IF YOU DO NOT
BUY FUEL DURING THE RENTAL, AT .290 PER MILE. BOTH RATES PRODUCE APPROXIMATELY THE SAME RESULT.

THIS CONTRACT OFFERS A LOSS DAMAGE WAIVER(LDW), WHICH IS OPTIONAL--SEE PAR. 4 OF THE RENTAL AGREEMENT TERMS AND
CONDITIONS, WHICH APPEAR ON THE FOLDER (SWI1900013) DELIVERED TO YOU WITH THIS RENTAL RECORD (THE RENTAL TERMS). READ
THE SEPARATE LOSS DAMAGE WAIVER DISCLOSURE FORM BEFORE ACCEPTING THE RENTAL CAR. BY SIGNING BELOW, YOU ACKNOWLEDGE THAT
YOU HAVE READ, UNDERSTAND, ACCEPT AND AGREE TO THE ABOVE AND THE RENTAL TERMS, AND YOU ACCEPT OR DECLINE THE OPTIONAL
SERVICES AS SHOWN ABOVE. 4A OF THE RENTAL TERMS WHICH APPEAR ON THE RENTAL JACKET HAS BEEN REVISED TO READ AS FOLLOWS:
EXCEPT AS STATED BELOW, YOU ARE RESPONSIBLE FOR ANY AND ALL LOSS OR DAMAGE TO THE CAR RESULTING FROM ANY CAUSE,
INCLUDING BUT NOT LIMITED TO COLLISION, ROLLOVER, THEFT, VANDALISM, SEIZURE, FIRE, FLOOD, HAIL OR OTHER ACTS OF NATURE
OR GOD, REGARDLESS OF FAULT.

X _____

SMOKING PROHIBITED IN ALL VEHICLES. $100 FEE APPLY

PREPARED BY: RC

RENTAL RECORD N-9152187-2

```
          RENTAL: 07/21/16 13:02   GREEN BAY, WI        95635-04 #09 EST
          RETURN: 08/18/16 12:30   INDIANAPOLIS, IN     01502-11
BROADWAY RENTAL CARS GREEN BAY, WI
Hertz System Licensee                                    DAY      29 (TX) $    528.96
   (920)497-6490    RAMANDA/VAN PAY              CDP: 1445130    EX HOURS    0 (TX) $      .00
                                                               EX DAYS     0 (TX) $      .00
             FT:                   HG:                          MILEAGE CHG   (TX) $    ****
                                                               SUBTOTAL          $    528.96
OWN/VEH: 95635/043650-1  16 FORTE KIA 4DR B  lic: WI 959TYY   VEH CLASS: C   VLCR*        (TX) $     27.55
                                                               FUEL & SVC      (NT) $    ****
LDW    DECLINED                 MILEAGE IN:       7149         FUEL/SVC CHARGES CALCULATED AT RETURN
LIS    DECLINED                 MILEAGE OUT:      2054
PAI,PEC  DECLINED               MILES DRIVEN:     5095         TAXABLE SUBTOTAL    $      .00
FPO    DECLINED - FUEL & SVC APPLIED                           TAX .05000         $     27.08
       $ .290/MILE $ 8.99/GAL                                  TOTAL CHARGES      $    583.59
       FUEL OUT: 8/8  TK CAP: 13.20   MILES ALLOWED:    0
                                 MILES CHARGED:    ****        CHARGED TO MC      $    583.59

                                 PLAN IN:  CRD   $  18.24 / DAY
ADDITIONAL CHARGES:              PLAN OUT: CRD   $   0.00 / EX HOUR
                                 RATE CLASS: C   $  18.24 / EX DAY
                                                 $   0.00 / EX WEEK
                                                 $   0.00 / XDAY HR
                                                 $   0.00 / MILE
```

*THIS IS ONLY AN ESTIMATE.*

It assumes that (1) you will return the identified vehicle at the times and places indicated,
(2) if a mileage charge applies, you will drive no more than the number of miles indicated and
(3) you will not incur any charges that either are not listed above opposite "*****" or cannot
be calculated until return.  If any of these assumptions is incorrect, additional charges
or charges at higher rates may apply.

Customer is responsible for all unpaid charges.

```
CC AUTH WOULD BE:     $ 600.00
PRINTED: 11/11/2016 13:04
PREPARED BY: RC    COMPLETED BY: RC
```

                                    RENTAL RECORD N-9152187-2

THE COURT OF COMMON PLEAS
PHILADELPHIA COUNTY, PENNSYLVANIA

KELLY A. GRADY

*Plaintiff*

vs.

THE HERTZ CORPORATION;
HERTZ RENT-A-CAR PHILADELPHIA INTL. AIRPORT;
JOHN DOE(S)[1]

*Defendants*

ACTION COMMENCED BY: WRIT OF
SUMMONS ON: NOVEMBER 23, 2015

NOVEMBER TERM, 2015

CIVIL ACTION NO.: 151103380

COMPLAINT FILED:
FEBRUARY 22, 2016

CAUSE OF ACTION:
MALICIOUS PROSECUTION

*JURY TRIAL DEMANDED*

## AFFIDAVIT OF RAMANDA VAN PAY

I, Ramanda Van Pay, an adult under no legal disability, being duly sworn under oath, state that I have personal knowledge of the following facts:

1.      I rented a Kia from Hertz on July 21, 2016, in Green Bay, Wisconsin after my car was totaled in an accident.

2.      While I was in Indianapolis on August 18, 2016, with the Kia, the car got a flat tire.

3.      I took the car to the Hertz rental location at the Indianapolis International Airport on August 18, 2016.

4.      The Hertz location allowed me to exchange the Kia for a Hyundai and gave me a vehicle exchange form. The employee who helped me was named Will McCain.

5.      I was told by Hertz in Indianapolis to take the car to the Green Bay location.

6.      When I got back to Green Bay, WI, I immediately took the car to a Hertz location in August 2016.

7.      I spoke with an employee named Ryan Hogan in August 24, 2016 when I returned to Green Bay. Hogan told me to keep the Hyundai and that it was now my rental vehicle under the original contract.

---

[1]  Manager(s) at Hertz Rent-A-Car Philadelphia Intl. Airport from March 2013 to June 2014.

8.    I called Mr. Hogan several times to make sure my rental was okay and he assured me it was fine. I also visited Mr. Hogan on occasion, also to confirm the rental was okay.

9.    Unbeknownst to me, Hertz reported my rental vehicle stolen on October 8, 2016, to the Indianapolis Airport Police.

10.    I was pulled over for a traffic violation on November 5, 2016, in Wisconsin by the Fond Du Lac's Sheriff's Department.

11.    After the deputy sheriffs pulled me over, they then told me that the car I was driving was reported stolen by Hertz. I told them I had no idea what they were talking about and that I had a valid rental.

12.    I had spoken with Hertz a day or two before November 5, 2016, to make sure my rental was fine. At no point before or after October 8, 2016, did any Hertz employee I spoke with tell me that the car I was renting was reported stolen. Please keep in mind that I both called and visited Hertz locations and was never told anything was wrong.

13.    I spent three days in jail because of Hertz's false police report even though I was absolutely authorized to possess the car.

14.    The charges against me were quickly dropped by the Fond Du Lac district attorney's office. It is my understanding this happened because I was in contact with Hertz, I was authorized to have the vehicle, and I did not steal the car. Also, when my car was exchanged because of the flat tire, Hertz never put the information in their system. I do not believe Hertz did any investigation before going to the police because if they had they would have realized I was given the vehicle after I got the flat tire.

15.    The Indianapolis Airport police stated that they laid the blame for what happened solely at Hertz's door.

16.    The Indianapolis Airport police also stated that they were aware of at least one other person within one month of my case who was also falsely reported by Hertz in Indiana, and they were also aware of another false report of a man in Pennsylvania.

17.    The Indianapolis police also stated that they were no longer putting Hertz theft reports in the NCIC because they could not validate the reports.

18.    I cannot stress enough that I called a Hertz location just one day before I was arrested, and had also visited the location, and was always assured I was authorized to possess the car; I was never told of any problems.

UNDER PENALTY OF PERJURY, I SWEAR THAT THE FOREGOING IS TRUE, ACCURATE,
AND CORRECT.

Ramanda Van Pay

Subscribed and sworn to before
me this _____ day of May 19, 2017.

Notary Public
Christopher T. Van Wagner
(Attorney #1029261-WI)

●●●○○ AT&T  LTE          9:45 PM                    8% ▭

All          Missed                          Edit

other

+1 (317) 405-6363                  Friday    ⓘ
Indianapolis, IN

Mamma
mobile

●●●○○ AT&T  LTE                    9:45 PM                    8% 🔋

 Back

 **+1 (920) 497-6490**
Green Bay, WI

November 4, 2016

10:39 AM        **Outgoing Call**                7 minutes

Call

FaceTime

FaceTime Audio

Send Message

Share Contact

Create New Contact

Add to Existing Contact


Favorites


Recents


Contacts


Keypad


Voicemail

●●●○○ AT&T  LTE          9:45 PM                8% ☐

 Recents


# +1 (920) 499-3131
Green Bay, WI

---

**November 4, 2016**

10:48 AM      **Incoming Call**              1 minute

---

Call

---

FaceTime

---

FaceTime Audio

---

Send Message

---

Share Contact

---

Create New Contact

---

Add to Existing Contact

---

 Favorites     Recents     Contacts     Keypad     Voicemail

●●●○○ AT&T  LTE          9:45 PM              8% ▭

 Recents



# +1 (317) 405-6363
Indianapolis, IN

November 4, 2016

11:00 AM      **Outgoing Call**              2 minutes

Call

FaceTime

FaceTime Audio

Send Message

Share Contact

Create New Contact

Add to Existing Contact



Favorites



Recents



Contacts



Keypad



Voicemail

# ATTACHMENT AE



### FRANCIS ALEXANDER LLC

October 17, 2018

Richard Frecker, Esquire
THE HERTZ CORPORATION
8501 Williams Rd
Estero, FL 33928
T: (239) 301-7000
F: (866) 888-3765
E: rfrecker@hertz.com

Jay L. Edelstein, Esquire
Christopher Leeds, Esquire
EDELSTEIN LAW, LLP
230 South Broad Street | Suite 900
Philadelphia, PA 19102
T: (215) 893-9311
F: (215) 893-9310
E: JEdelstein@Edelsteinlaw.com

[redacted]

Dear Mr. Frecker,

[redacted]

Mr. Trammell had rented a car from Hertz in Cleveland, Ohio, and had just started a new job as a correctional officer in Nebraska, with the hopes of becoming a State Trooper. Mr. Trammell has no criminal record. At all points in time he had paid for the rental, and at all points in time the credit card he used for the rental was active and valid. In fact, throughout the rental Hertz kept putting charge/holds on his card to make sure it was active and valid.

Despite Mr. Trammell having a valid card tied to the rental, Hertz inexplicably had him arrested for felony theft on April 21, 2018, thrown in jail, and prosecuted. He never received any communication from Hertz prior to the arrest at his address and it is clear that Hertz is indiscriminately and improperly using the police for inventory recovery. As is well known at this point, Hertz fails to follow its own standard operating procedures and fails to conduct the requisite investigation at the local level before filing police theft reports en mass, and often do not even communicate with headquarters—leading to paying customers being wrongfully arrested.

The initial rental was on February 7, 2018 where he paid $360, and Mr. Trammell's credit card was hit for $1,728 on March 8, 2018, and another $1,156.97 on March 27, 2018. In fact, Hertz was charging Mr. Trammell's card even in May 2018, indicating that something is very wrong internally. Given my knowledge of Hertz's internal procedures for reporting cars stolen, and the April 21, 2018 arrest date, Hertz must have started the stolen report just days after the March 27 payment! Why is Hertz reporting a customer to the police just days after Hertz charged his credit card a total of $3,244.97 for the rental?

PAGE 2

The consequences of Hertz's failures could not have been more immediate and severe for Mr. Trammell. In jail he received racial insults, harassment, and was assaulted/battered. All of this was vastly exacerbated because he was the only black, gay man in the Nebraska jail. To make matters worse, his new job immediately fired him on April 25, 2018 due to the felony accusation and because he could not show up for work. A letter was placed in his file, essentially blocking his rehire. He was forced to move back to Ohio and, because his arrest was reported in the news online, his record and reputation are permanently stained. He was turned down from multiple jobs because of the pending felony. His goal of becoming a State Trooper is essentially dead, and he must now make a living scrapping metal. His life was destroyed, personally and financially, and he also lost his partner.

On August 21, 2018, the Nebraska court dropped all charges. However, for the time period before that the police repeatedly urged Mr. Trammell to take a plea deal—a deal he refused because he knew that he had done nothing wrong. To say that Mr. Trammell is incensed at his treatment, when he was a loyal Hertz customer without any problems, fails to convey the gravity of this problem.



With every good wish, I am,

Francis Malofiy, Esquire

Encl.:  Press Release – Philadelphia Lawyer Returns $44.35 Million Result:
        *** 1st Largest Verdict & Judgment in Pennsylvania ***

# ATTACHMENT AF



**FRANCIS ALEXANDER**
— LIMITED —

**FEBRUARY 13, 2020**

Kathryn V. Marinello, CEO
THE HERTZ CORPORATION
8501 Williams Rd.
Estero, FL 33928
*E: kvmarinello@hertz.com*

Jay L. Edelstein, Esquire
EDELSTEIN LAW, LLP
230 South Broad Street | Suite 900
Philadelphia, PA 19102
T: (215) 893-9311
*E: JEdelstein@Edelsteinlaw.com*

**Re:    WIDESPREAD FALSE POLICE REPORTS BY HERTZ**

Dear Ms. Marinello and Counsel:

For several years now I have been warning Hertz—after winning a jury trial against it in 2017 for malicious prosecution, and settling two other cases—that the company has been systematically filing false police reports against innocent customers across the nation. The problem is now a major public safety crisis. I have attached demands from *23 clients* victimized by Hertz. The falsely accused come from all walks of life, but are *overwhelmingly* blacks and minorities. The signal this sends to your customers, and the public, is that you don't think Black Lives Matter.

I know, and you know, that Hertz's computer systems are—*obviously*—broken and outdated. The company can't keep track of inventory, doesn't know when rentals are extended or returned, can't account for payments, and isn't doing the local investigations mandated in its theft reporting standard operating procedure W7-02(A)(17). Compounding matters, the locations, OKC, and corporate security have no idea what each other are doing. In some cases, Hertz bizarrely rents cars to customers that Hertz reported stolen *before* the rental began.

Given the number of people who have approached me, six months ago I submitted to your company a list of clients detailing how they had been wrongfully detained, jailed, and prosecuted. These customers had paid, extended, and even returned their rentals. Since then, more customers have come forward.

As I previously shared, some were still in jail and others were locked in criminal cases—all of them terrified by what was happening. I pleaded with you to act quickly, not only for their and their families' sake, but also so that other customers would not have their lives destroyed.

Instead of taking this alarming problem seriously, their complaints were treated as a low-level concern. Hertz falsely told the public these cases were "rare." Those in jail remained in jail. The others have had to cope with what happened, some of them now homeless. Hertz's broken systems have remained broken, and the false reports have continued. In short, the alacrity Hertz showed in addressing wronged customers following the 2017 verdict has demonstrably waned.

My clients are tired of having their polite entreaties fall on deaf ears. They are making one last plea, on video, for someone within Hertz to do the right thing: https://bit.ly/37mvaZ1. I have enclosed with this letter a draft complaint for Nicole Stevens, which will be filed before the end of the month.

If you think you can continue to ignore this problem, you have made a grave miscalculation. I routinely handle large, complicated cases, and have tried them to verdict throughout the country—11 years undefeated in jury trials. I regularly post some of the largest verdicts and settlements in the country, including recently winning a $44.35 million verdict and judgment where the jury returned a $20.25 million punitive damages award (this was a top 100 verdict in the US). Not only do I know how to win these cases against Hertz—because I already have—but I have the resources to litigate every case to verdict.

In the prior case I tried against Hertz, I established that Hertz will be found liable for punitive damages given its conduct. The corporation has known about these problems for many years and yet continues to file false police reports, routinely violating its very own standard operating procedures. No jury will turn a blind-eye to a corporation which decided that cutting costs to increase profits was acceptable—especially when it is being done with reckless indifference to the human lives Hertz is harming. A company worth $2.5 billion that generates $10 billion in revenue cannot afford serial punitive damages verdicts against its reputation and goodwill.

That said, my goal is to come to an amicable resolution so we can fairly compensate my clients and protect your customers. Nothing that my clients are requesting is unreasonable. For peace to be brokered we need to address the following: (1) the points in the attached Addendum to ensure the safety of Hertz's customers, and (2) how to justly address my clients' injuries. I need a written response by Tuesday, February 18th and an in-person meeting with Hertz's corporate officers no later than Monday, February 24, 2020.

If Hertz does not timely address these issues which have been plaguing the company, then my firm will be forced to start filing the lawsuits through local counsel. Please ensure that all data and records concerning these customers are preserved.

Note that because some of the demands exceed Hertz's self-insured limit of $10 million per occurrence, you should notify your excess coverage insurer. Moreover, to the extent that Hertz's insurance does not cover those alleged to be individually liable, you should notify those officers and employees to immediately retain personal counsel.

Kathryn, tell me how we fix this; tell me how we make this right. The time has come to bridge our division and make sure that more customers do not have their lives destroyed.

Your move.

With every good wish, I am,



Francis Malofiy, Esquire

    Cc:    M. David Galainena, Esquire - *Exec. Vice President, General Counsel*
             Richard McEvily, Esquire - *Senior Vice President, Deputy General Counsel*
             Clark Dubin - *Vice President, Risk Management & Claims*
             Christopher P. Morales - *Director, Technical Claims*

    Encl:   ADDENDUM I    Points of Discussion for Proposed Meeting
           ADDENDUM II  Hertz Victims
           ADDENDUM III News Coverage of Hertz Victims and Conduct
           Video         Hertz Victim Video No. 1 - https://bit.ly/37mvaZ1
           Complaint    Proposed Nicole Stevens Complaint

# ADDENDUM I

# POINTS OF DISCUSSION:

## PROPOSED MEETING WITH THE
## CORPORATE OFFICERS OF HERTZ

- Hertz will review cases which I present and assign a dollar value within 30 days.

- Hertz will review cases which I present on an expedited basis where the client is still being prosecuted or is incarcerated, with next steps identified (e.g., recantation or withdrawal).

- Hertz will enter into tolling agreements where the statute of limitations is approaching on cases in the process of being resolved.

- During the theft reporting process, Hertz will take into consideration whether Hertz's dispute with the customer is truly criminal or civil in nature.

- Hertz will update its tracking and rental systems so that rental extensions and payments are communicated to all areas of the company, including location, OKC, and corporate security.

- Hertz will fully comply with its theft reporting policy W7-02 RAC(A)(17), which mandates an independent investigation by the corporate security manager at the location level to safeguard against inaccurate reports.

- Hertz will stop reporting customers to the police for theft *before* Hertz has charged the customers' cards. Hertz policy W7-02 RAC (D) will accordingly be revised.

- Hertz will take steps to ensure compliance with W7-02 RAC (E) so that vehicles reported stolen by Hertz are identified in Hertz's rental systems as "reported stolen," to ensure that "stolen" vehicles are not rented to customers.

- Hertz will stop reporting vehicles stolen which were already returned by the customer, and will withdraw prosecutions where the company discovers the vehicle was returned by the customer.

- Hertz will stop reporting "lost inventory" as "stolen" unless there is first-hand knowledge that the vehicle was actually stolen or there are other indicia of criminal activity.

- Hertz will implement and mandate monthly reviews of all ongoing prosecutions to determine if material facts were omitted from a theft report or police report to determine whether the prosecution needs supplemental data (e.g. payment data, rental extensions, or vehicle returns); and determine whether the police report needs to be corrected, supplemented, or withdrawn completely.

- Hertz will ascertain whether a customer being reported is on probation/parole, and will double check all such theft reports given that reports against those customers will result in them being jailed without the ability to bail or bond-out.

- Hertz will compensate each client for bail, attorneys' fees, expungement, and other expenses.

\*\*\*\*\*

# ATTACHMENT AG

**Robin Weinburgh**

**From:** Francis Alexander Malofiy <francis@francisalexander.com>
**Sent:** Tuesday, March 24, 2020 8:19 AM
**To:** AJ Fluehr
**Subject:** Fwd: Hertz - 3/17/20 Ltr. O'Neil to Malofiy

Begin forwarded message:

**From:** "O'Neil, William" <WOneil@winston.com>
**Subject: RE: Hertz - 3/17/20 Ltr. O'Neil to Malofiy**
**Date:** March 20, 2020 at 4:31:59 PM EDT
**To:** Francis Alexander Malofiy <francis@francisalexander.com>
**Cc:** "DiMassa, Rudolph J." <DiMassa@duanemorris.com>, "Gallia, Anthony L."
<ALGallia@duanemorris.com>, "Webb, Dan" <DWebb@winston.com>, "Schloss, Adam"
<aschloss@hertz.com>, "Mcevily, Richard P." <RMcEvily@hertz.com>, Jay Edelstein
<JEdelstein@edelsteinlaw.com>

Francis,
Following up on your call with Dan this afternoon, we are confirmed for a WebEx conference on
Tuesday morning at 9:30 ET. At this point, you should have all received a calendar invitation
with a link to join the conference. When the conference begins, please join by clicking the web
link in the calendar invitation to access the visual portion of the presentation; please also join
via telephone. We plan to walk through some documents on the call as visual aid in addition to
speaking telephonically on the conference bridge.
Regarding the documents you have requested below, we are not willing or able to provide
those prior to Tuesday's call, but we are willing to discuss a potential exchange of
documentation on Tuesday's call.
Regarding your request to Dan that we identify which cases we are willing and not willing to
settle prior to Tuesday call, that is not feasible. We are still working—and will be throughout
this weekend—to make those assessments. We had a call with Hertz today and we have
another call scheduled for Monday to discuss those very issues. No final decisions have yet
been made, however, we are committed to sharing that information and our assessments with
you on Tuesday's call. We are also willing to have an open dialogue regarding each of the
claims.
Regards,
Bill

**William C. O'Neil**
**Partner**
Winston & Strawn LLP
35 W. Wacker Drive
Chicago, IL 60601-9703
D: +1 312-558-5308
F: +1 312-558-5700
VCard | Email | winston.com

1

**From:** Francis Alexander Malofiy <francis@francisalexander.com>
**Sent:** Wednesday, March 18, 2020 1:34 AM
**To:** Webb, Dan <DWebb@winston.com>; O'Neil, William <WOneil@winston.com>; Schloss, Adam <aschloss@hertz.com>; Mcevily, Richard P. <RMcEvily@hertz.com>; Jay Edelstein <JEdelstein@edelsteinlaw.com>
**Cc:** Francis Alexander Malofiy <francis@francisalexander.com>; DiMassa, Rudolph J. <DiMassa@duanemorris.com>; Gallia, Anthony L. <ALGallia@duanemorris.com>
**Subject:** RE: Hertz - 3/17/20 Ltr. O'Neil to Malofiy

Dear Dan,

I can appreciate your team (Bill and Jay) requesting additional information relating to the cases. As you know, I have already provided Hertz a one page demand write-up on each of the claims with specific information. Additionally, much of the information requested was already provided numerous times and as recent as November 2019.

However, as previously discussed, I am not opposed to providing additional information prior to our meeting. However, this exchange of information goes both ways.

We have been providing information to Hertz, but as discussed, Hertz needs to also provide the contract information on the clients as well as other relevant information—prior to our meeting. This would include:

- Rental Agreement;
- Theft Package;
- Contract Rental Notes;
- Billing, Charges, and Receipts;
- Communications and things related to Criminal Prosecution; and
- Whether or not there is insurance coverage regarding the claim.

Just as I have provided a one page write up on each of the claims, so too should Hertz. Additionally, if Hertz is planning on denying liability for any particular case, please inform us and cite the reasons and provide supporting documentation.

Please confirm that we are in agreement and that Hertz will provide this information in advance of our meeting on the 24th, and I will promptly supplement as requested with the additional information and names of new clients.

Lastly, to make sure that the March 24, 2020, meeting is as productive as possible, please make sure that you have full authority from Hertz to settle and negotiate the cases. If not, someone from Hertz will need to be present who has the authority and control to do so.

*****

With every good wish, I am,

Francis Malofiy, Esquire
Francis Alexander, LLC
280 N. Providence Road | Suite 1
Media, PA 19063
T: (215) 500-1000
F: (215) 500-1005
E: francis@francisalexander.com

**From:** O'Neil, William [mailto:WOneil@winston.com]
**Sent:** Tuesday, March 17, 2020 9:58 PM
**To:** Francis Alexander Malofiy <francis@francisalexander.com>
**Cc:** DiMassa, Rudolph J. <DiMassa@duanemorris.com>; ALGallia@duanemorris.com; Mcevily, Richard P. <RMcEvily@hertz.com>; Schloss, Adam <aschloss@hertz.com>; Webb, Dan <DWebb@winston.com>;

Jay Edelstein <JEdelstein@edelsteinlaw.com>
**Subject:** Hertz - 3/17/20 Ltr. O'Neil to Malofiy

Francis:

Please see the attached correspondence.

Best,

Bill

**William C. O'Neil**

**Partner**

Winston & Strawn LLP
35 W. Wacker Drive
Chicago, IL 60601-9703

D: +1 312-558-5308
F: +1 312-558-5700

VCard | Email | winston.com

The contents of this message may be privileged and confidential. If this message has been received in error, please delete it without reading it. Your receipt of this message is not intended to waive any applicable privilege. Please do not disseminate this message without the permission of the author. Any tax advice contained in this email was not intended to be used, and cannot be used, by you (or any other taxpayer) to avoid penalties under applicable tax laws and regulations.

# ATTACHMENT AH



FRANCIS ALEXANDER LLC

# Hertz Falsifies Payment Information in Police Reports to Secure Illegal Arrests & Prosecutions

**SOP:**
W7-02 RAC: [SCTY-4.1] - <u>Reporting Vehicle Thefts and Conversions</u>

W7-02(D) - <u>Closing Associated Rental Agreements</u>

The OKC Vehicle Control Department ... must close the RA after verifying the Theft Vehicle Report with police....*Once confirmed that the theft/conversion has been reported to the police*, the responsible management must Close RAs by inter alia: Applying the 'best' or lowest rate available.

**SCOPE:**
This Worldwide Procedure applies to the North American Rent-A-Car (RAC) Division

**COMPLIANCE:**
Location, Maintenance, Area, Country Head Office and OKC Management must ensure compliance to this procedure.

**OWNER:**
High Level Corporate Officers and General Counsel

## I.  Introduction

Every rental theft report is based on two variables: payment and time. When Hertz misrepresents one of these variables to the police, its report is already 50% inaccurate. Payment is the single most important factor in a consumer theft report, making Hertz's misrepresentations material.

The theft packages Hertz provides to the police in 100% of the cases contain false representations that the renter has not paid for the rental. However, in all of these cases, the renter has paid: after printing out the theft package and delivering it to the police for the purpose of initiating a criminal prosecution, Hertz charges the renter's card—*but never tells the police or prosecutors* that it has received payment. The customer is then prosecuted based on manipulated information apparently designed to ensure the arrest and criminal prosecution of an innocent individual.

During our April 9 and April 17, 2020 phone calls, Hertz and its attorneys outlined the steps Hertz takes in connection with preparation and delivery of a theft package: Hertz *first*

charges the customer for the rental, and then it generates the theft package; it always advises the police that the customer's credit card has been charged.

This is simply not true. Hertz has engaged in a contrary practice for many years, and this practice has been codified as an element of Hertz policy. W7-02(D).

## II. HERTZ POLICY MANDATES THAT THE COMPANY REPORT THE CUSTOMER FOR THEFT TO THE POLICE *BEFORE* CHARGING THE CUSTOMER FOR THE RENTAL; THE POLICE ARE NEVER TOLD ABOUT THE PAYMENT—*EVEN AFTER THE HERTZ REPRESENTATIVE CHARGES THE CUSTOMER'S CARD*

In every theft report there are two implicit variables: payment and time. If the rental vehicle is paid, or the renter has provided Hertz a valid form of credit (e.g., a credit card number), it should be clear that the renter does not intend to steal the car. Indeed, in any type of consumer theft report, the determinative factor is payment. As indicated in each of the reported thefts, it is a denied credit card authorization hold that triggers the theft reporting process. An authorization hold is a check that Hertz sends to verify the card is valid and has funds; it is not a final billing. The case where Hertz believes it has a valid card for a rental for which return date has passed, but reports the car stolen in any event, **does not exist.**

The police are less likely (or will simply refuse) to act on a Hertz theft report if the rental has been paid. Hertz policy therefore mandates that theft packages be printed out and given to the police ***before*** the customer is charged:



Hertz001471. The theft package contains a line item indicating that the customer still has a "net due" to Hertz and that the customer's card has been "denied." Nothing that Hertz provides to the police communicates that Hertz intends to charge the customer (a charge which is usually accepted by the credit card or bank card company) as soon as the theft package has been delivered to the authorities.

For this reason, Hertz purposely fails to disclose these facts to police and law enforcement, in effect transforming a civil dispute into a criminal matter, as the police are led to believe that the renter intends to steal the vehicle and has provided a stolen, fraudulent or invalid card. Hertz knows that this policy guarantees that a theft package contains no proof the customer was charged

and the rental was paid. ***We have never seen a case where Hertz supplemented payment information to the police***, or told the police that Hertz was going to charge the customer.

Hertz's omission of payment confers numerous legal and financial advantages upon Hertz. The omission enables Hertz to use the police as a taxpayer-funded repo service, it allows Hertz to avoid arbitration with customers, and it allows Hertz to collect insurance monies (the claim for which requires the filing of a police theft report). In essence, Hertz is getting the monies from the charge *and* the full asset value from its insurance claim. It then closes out the rental contract with its accounting department.

When Hertz told its attorneys and Plaintiffs that it first charges the customer, then closes out the rental, and then reports the customer—and that the police have been made aware of the payment—it was not being candid or accurate. As noted, Hertz policy actually mandates the preparation and delivery of the theft report to police and ***only then*** closing out the rental customer. *See* W7-02(D) (stating that OKC "must close the RA after verifying the Theft Vehicle Report with police."). This is further confirmed by Hertz's production, where in September 2019 a Hertz employee explains the process to a corporate security manager in the Higgs case:

> WE AUTHORIZED THE FOLLOWING:  THESE ARE AUTHORIZATION HOLDS ONLY, NOT BILLINGS  WE ONLY BILL THE CREDIT CARD/ DEBIT CARD WHEN THE RENTAL IT IS CLOSED OUT. WE ONLY RECEIVED TWO APPROVALS OUT OF THE ATTEMPTS AND THEN

Hertz0001445. As can be seen, a Hertz employee plainly states "we only bill the credit card/debit card when the rental it is closed out." Id.

This policy ensures that ***every one of Hertz's theft reports across the nation is incorrect***. As will be seen below, this is the procedure that was followed with every overdue rental report at issue—it is not an anomaly.

Hertz knows within a day or two whether its charge was successfully put through, and it also knows that most charges are successful. Yet, in each of our cases, Hertz conveys to the police that the rental payment has not been made.

## III.  The Evidence Shows that Hertz Charges the Customer after the Police Report is Delivered

There is overwhelming proof that Hertz is submitting police reports which omit any mention of its receipt of renter payments.

**First**, policy W7-02(D) spells out that theft reports (which are based on the information in Hertz's theft package) are to be completed and delivered to the police ***before*** the rental is closed out and the customer's account is charged.

**Second**, the theft packages that we have seen simply fail to communicate that the renter has paid for the rental, or that a charge is pending. In fact, it is improbable that any theft package contains such information, because W7-02(D) dictates that the package is to be printed out and delivered to the police before the customer's card is charged.

**Third**, we have not identified any document in Hertz's productions where Hertz advised the police that it had charged the customer's card, or that a charge was going to be made or was pending.

**Fourth**, the standard theft package contains a billing summary page which states that the renter owes a "net due" amount:



*See* Hertz00009 (Ayoub), 328 (Person), 532 (Stevens), 978 (Young), 1100 (Channell), 1320 (Fernandez), 1340 (Higgs), and 1741 (Sterlin). In all of these cases, the renter's account was charged after the theft report was printed out and taken to the police, but the police report was never supplemented to reflect the charge. For these renters, there was no "Net [amount] Due," contrary to the information Hertz provided to the police.

**Fifth**, the standard theft package contains an overdue rental print out which states that the charge to the renter's card was "denied:"

| Credit Card # | FOP | FMT | Restr? | Aprv Stat |
|---|---|---|---|---|
| XXXXXXXXXXX4306 | MC | ITB | N | DENIED |

*See* Hertz000013 (Ayoub), 130 (Junious), 353 (Person), 443 (Stepanyan), 497 (Sterlin), 521 (Stevens), 966 (Young), 1042 (Burnside), 1095 (Channell), 1177 (Collins), and 1376 (Higgs). In fact, this "denial" refers to Hertz's attempts to place an authorization hold on the credit card during the rental. The fact that an authorization hold has been denied does not in any way mean that a charge will be denied. In fact, almost all of the charges in our cases were approved. Unfortunately for the Hertz customer, however, the police are under the continuing impression that Hertz has never received payment, because Hertz never advises the police of its post-theft package charge.

Nothing that Hertz has told its attorneys about the post-police report charging procedure comports with Hertz's actual practice or the evidence.

## IV.    THE PROSECUTORS AND POLICE CONSIDER PAYMENT TO BE KEY INFORMATION IN ANY CONSUMER THEFT CASE

In any consumer theft case, whether the customer has paid or intends to pay for the services or goods is a critical fact in the probable cause determination, and it provides evidence of the renter's intent to commit theft. It goes without saying that any misrepresentation or omission about payment will seriously affect a customer's rights.

Indeed, as we will show, when the renters present the prosecutor or police with proof of payment, the cases are invariably dropped. The fact that 100% of cases have been dropped after the

customer provides proof of payment (which proof was withheld from police by Hertz) should alert (and should have alerted) Hertz to the gravity of its failure to update the information provided in theft reports. Below are some cases that illustrate the problem with Hertz's practice:

**Burnside** - In this case, a police report based upon the theft package provided by Hertz states: "As of March 27, 2018 Mr. Burnside had not paid for or returned the vehicle to said business." PLT000108. In fact, Burnside had been charged $2,343.02 on March 26, 2018, one day *before* the police report was completed. As in all known cases, Hertz falsely told the police that the renter had not paid and Hertz never corrected this information.

When Burnside was allowed to withdraw his guilty plea, the prosecutor simultaneously nolle prossed the case. She did so stating that there was no probable cause because, after reporting the car stolen, "Hertz subsequently closed out the rental and charged the defendant $2,343.02, which covered the rental cost from December 26, 2017 through March 26, 2018." PLT000125. There is no need to mince words: If Hertz tells the police that the customer owes $2,343.02 and omits that the customer's card has been – or shortly will be – charged, then Hertz has included a material misstatement of fact in its police report.

**Junious** - In the Junious case, both a police report dated March 15, 2018 (PLT000326) and the probable cause declaration dated March 21, 2018 state that "Junious has not made a payment since 01-23-18." PLT000289. Yet Junious had actually been charged $1,375.94 on March 13, 2018. PLT000356.

Not only did Hertz fail to supplement the payment information, but a Hertz employee gave false testimony during the case about that payment. On June 7, 2018, a preliminary hearing was held— while Junious had remained imprisoned since his arrest on May 1, 2018. The topic of payment was a major subject—as it is in all consumer theft cases—and Hertz manager James Nichols testified as follows:

> Prosecutor:     You testified earlier that the due date of the vehicle was January 29th, 2018. Had you received any payment for the vehicle after that date?
>
> Mr. Nichols:    No.

PLT000303-04. Nichols then clarified that State Farm had paid for part of Junious's rental, but reiterated that Junious had never paid anything since January 23, 2018. Put simply, this sworn testimony was false. At best, Hertz employee Nichols was looking at the false theft package and never bothered to actually check Hertz's systems to ascertain whether Nichols had extended the rental or made a payment. Based on Mr. Nichols's testimony, Junious remained in jail another month and his case remained active until November 2018. The case was eventually dropped.

**Young** - Similarly, in the Young case, the police report notes Hertz's claim that Young had not paid for the rental. Hertz000989-90. In fact, Ms. Young's card was overcharged for $3,932.47 (Hertz000951), and Hertz later reduced the amount of these charges. PLT000498.

**Ayoub** - When the prosecutor was approached with proof that Ayoub had extended his rental contract, her first question was whether Ayoub had paid for the rental. PLT000378-80. Upon learning that he had paid for the rental, she dropped the charges within days. *Id.*

There are many other cases where the renter was billed but the authorities were not told, including Johnson, Collins, Stevens, Sterlin, Fernandez, Channell, Jones, Higgs, Williams, Person,

and Essick. In all of these cases (except Jones, Sterlin, and Higgs), the charges were eventually dropped because the prosecutor was shown proof of payment.

## V.  The Grady Case Established that Hertz has Long had Notice of this Payment Issue

This is not the first time that Hertz has been less than forthcoming about its having received payment. In the <u>Grady</u> case tried in September 2017, Hertz's theft package had been printed on July 12, 2013, and Grady's card was charged for $2,445 on July 15, 2013. Grady was reported to the police with an outdated and incorrect theft package on July 22, 2013.

Julie Wilkerson, Hertz's vehicle control supervisor for all of the United States (who sat at the defense table for the entire trial as Hertz's representative), falsely testified during trial that the July 12, 2013 theft package given to the police showed Grady's $2,445 payment:

| COUNSEL: | Do you believe if there's -- I think you testified if there's omitted facts, they should be corrected, correct? |
| --- | --- |
| WILKERSON: | Yes. |
| COUNSEL: | Eventually did Hertz become aware of additional facts in regards to Ms. Grady's rental that should have been provided to the police? |
| WILKERSON: | Which facts? |
| COUNSEL: | Well, the payment of $2400. |
| WILKERSON: | **That was actually in the theft package. The police had that information.** |
| COUNSEL: | **The police had that information?** |
| WILKERSON: | **Yes, it's in the billing page of the theft package.** |

Wilkerson Testimony, at pp. 5-6 (emphasis added). This testimony was untrue. Wilkerson supervised Hertz vehicle control for decades, and she was—and is—well aware that a theft package provided to the police never contains payment information for the simple reason that the renter is charged only after the theft package is generated and taken to police. *See* W7-02(D).

When she later tried to repeat her misstatement, she was ultimately forced to admit that her testimony was untrue:

| COUNSEL: | Ma'am, I'm asking you was 2445 paid, yes or no? |
| --- | --- |
| WILKERSON: | Yes. |
| COUNSEL: | And that information was never updated to the police, correct? |

| WILKERSON: | No. |
|---|---|
| COUNSEL: | It was not corrected, correct? It was not updated to the police, correct? |
| WILKERSON: | **They had the information**. |
| COUNSEL: | I'm asking you if the information that it was paid was updated to the police, yes or no? |
| WILKERSON: | **The police actually have the theft package and this was in the theft package**. |
| COUNSEL: | Ma'am, you just identified that that is not a payment for 2445, it's what is owed. Do you understand the difference between -- |
| WILKERSON: | Yes. |
| COUNSEL: | -- money in your bank account -- |
| WILKERSON: | Yes. |
| COUNSEL: | -- and what is owed to you? It's the difference between an asset and a liability, right? |
| WILKERSON: | Yes. |
| COUNSEL: | Okay. Understand the difference? |
| WILKERSON: | Yes. |
| COUNSEL: | You deal with this every day? |
| WILKERSON: | Yes. |
| *COUNSEL:* | *So let's be clear. The police didn't know $2445 was paid before they signed an affidavit of probable cause allowing Ms. Grady to be arrested, correct? Correct, ma'am?* |
| *WILKERSON:* | *Correct.* |
| COUNSEL: | No further questions. |

Wilkerson Testimony, at pp. 54-55 (emphases added).

Note that not only does this show that Hertz knew as of September 2017 that the theft packages do not show payment, and that the police were not being told about renter payments, but Wilkerson's evasive testimony demonstrates that she was always well aware that it is impossible

for theft packages to show renter payments because the renter's credit card is charged after the theft package is generated.

## VI.  Conclusion

Payment is the critical factor in any consumer theft report and is obviously the focus of both the police and prosecutors. The denied authorization is what triggers the filing of the theft report, because Hertz fears that it might not get paid and does not want to lose rental income on a car that is outstanding without a good credit card to process payment. Yet, the plain language of Hertz policy W7-02(D) compels results in the delivery of inaccurate information to the police: it requires that the theft report be delivered to police before the customer's credit card is charged. Hertz's failure to advise the police that the rental was paid leads directly to the arrest and prosecution of an innocent individual.

To the police and prosecutors, the theft report indicates that Hertz is still owed a "net due" amount of money for the customer's use of its rental vehicle and that the customer failed to make payment because the card was "denied." However, nothing Hertz provides to law enforcement communicates that Hertz—in practice or in policy—will in fact charge the customer's card for the full amount of money *after it files the police report.* Hertz knows that law enforcement is focused on whether or not the renter has paid for the use of the rental vehicle; it is obviously "convenient," for Hertz's purposes, to shield this information from the authorities.

Never does Hertz tell law enforcement that the renter has a card on file and that Hertz is authorized to use and charge the card for the full amount of the rental. The fact that a renter has a card on file that acts as a blank check or letter of credit, indicates—at the very least—that the renter does not intend to steal Hertz's car. However, Hertz knowingly omits this payment information and instead misrepresents to the police that a "denied" authorization hold is a "denied" charge for payment of the rental—which it is not.

For this reason, Hertz purposely fails to disclose these facts to police and law enforcement, in effect transforming a civil dispute into a criminal matter, as the police are led to believe that the renter intends to steal the vehicle and has provided Hertz a stolen, fraudulent, or invalid card.

Hertz's omission of payment information confers numerous legal and financial advantages upon Hertz: it enables Hertz to claim that innocent customers are thieves, so that Hertz can use the police as a taxpayer-funded repo service; it allows Hertz to avoid costly arbitration with customers; and it provides the mechanism which ultimately allows Hertz to collect insurance monies (the claim for which requires a police theft report).

In essence, Hertz is getting the monies from the post-police report charge and the full asset value from the insurance claim. It then closes out the rental contract with the accounting department, after having accounted for the income from the post-police report charge and the asset cash value from the insurance claim.

Through practice and policy, Hertz maximizes its income (post-police report charge) and asset value (insurance claim) while reducing prohibitive costs such as private repo and arbitration.

# ATTACHMENT AI



# Hertz's Failure to Investigate Any Theft Reports Results in Illegal Arrests and Prosecutions

**SOP:**  W7-02 RAC: [SCTY-4.1] - <u>Reporting Vehicle Thefts and Conversions</u>

W7-02(a)(17) – <u>Corporate/County Security Manager Investigations</u>

Every theft/conversion/disappearance must be promptly investigated by the Corporate/Country Security Manager responsible for the location from which the related Theft Vehicle Report is filed. All employees are required to cooperate fully with such an investigation.

**SCOPE:**  This Worldwide Procedure applies to the North American Rent-A-Car (RAC) Division

**COMPLIANCE:**  Location, Maintenance, Area, Country Head Office and OKC Management must ensure compliance with this procedure.

**OWNER:**  High Level Corporate Officers and General Counsel

## I.  Introduction

Every rental theft report is based on two main variables: payment and time. The theft packages Hertz provides to the police are unverified in 100% of the cases, because Hertz has failed to follow its very own standard operating procedures. These procedures require an investigation, before the submission of police reports, to verify that the information contained therein is accurate. When Hertz misrepresents one of these variables to the police, the report is already 50% wrong. The failure to investigate means that Hertz routinely misrepresents both variables. The police would never accept and act on these theft reports if they knew that the reports were unverified and that Hertz was habitually violating its own policies.

Hertz policy W7-02(a)(17) mandates that all theft reports be independently investigated and verified by Hertz location corporate security managers. However, in 100% of the cases, Hertz does not perform this required investigation. Multiple Hertz corporate designees testified in the *Grady* case that Hertz corporate has given them "marching orders" that theft packages compiled by Vehicle Control in OKC are to be immediately delivered by location personnel to the police ***with no independent verification*** and no inquiry into whether payment has been made, the vehicle

returned, the rental period extended, the inventory lost, or any other facts that might be critical to the decision to accuse a customer of having stolen a Hertz vehicle.

At a minimum, Hertz should confirm in every case whether payment was made, a rental extension was procured, or whether the car has been returned. What we have learned, however, is that the local security manager does not even perform this minimal check in any of the cases. The failure to perform any investigation as required by Hertz standard operating procedures is inherently designed to result in the unlawful arrest and prosecution of innocent individuals.

Hertz corporate security designee Richard Livingston stated that he and his personnel *are not even given access to rental information in order to allow them to perform a check*, and that in the hundreds of cases he has personally handled he never performed the W7-02(a)(17) investigation. Joseph Jaussi, another designee, has confirmed that Livingston and his assistants do not perform the (a)(17) investigation and that their role is restricted to ferrying theft packages from Vehicle Control to the police. When Hertz vehicle control supervisor Julie Wilkerson testified at trial, she was constrained to admit that Livingston's admissions indicated practices that fell far below Hertz's own policies and procedures.

Although Wilkerson claimed that Livingston and the other CSMs should be performing the (a)(17) investigation—and admitted that not doing so violated Hertz policy—she was providing false testimony at the same time. Hertz's own training manuals, the content of which is controlled and managed by Wilkerson, state explicitly that theft packages prepared by Vehicle Control are to be immediately taken to the police by location staff upon receipt with no (a)(17) investigation—confirming Livingston and Jaussi's testimony.

Compounding matters, W7-02(a)(4) mandates that missing vehicle checklists be completed to insure that all options have been exhausted before the filing of a theft report for overdue rentals and missing inventory. During our recent telephone discussions, Hertz admitted that this procedure is almost never followed. In addition, Hertz is supposed to hire private repo services to find and tow the vehicles well before a police report is filed. Yet, we have been provided no evidence that any such tow companies were hired for the 21 cases we are currently handling.

This means that 100% of Hertz theft reports are unverified. Hertz does not follow its own theft-reporting policies. Had this investigation actually been conducted, most—if not all—of the theft reports we have reviewed would never have been made. This deviation from policy has the effect of transforming a civil payment dispute into a criminal matter. It enables Hertz to claim that innocent customers are thieves, so Hertz can use the police as a taxpayer funded repo service, avoid what would otherwise be a costly and inefficient arbitration process (N.B.: a process that Hertz imposes on its customers) and collect insurance monies (the claim for which requires a police theft report). In essence, Hertz is getting the monies from the forced charge and the full asset value from the insurance claim. It then disposes of the rental contract with its accounting department, after having accounted for the income from the forced charge and the cash value of the vehicle from the insurance claim.

Hertz admitted in the *Grady* trial that the reason for cutting corners on the investigations is to implement cost-cutting measures in its corporate security department. Instead of verifying the theft reports, Hertz is filing the unverified reports and letting the police sort things out—even if innocent customers are jailed and prosecuted in the process.

## II.    IN VIOLATION OF ITS OWN THEFT REPORTING POLICIES, HERTZ HAS ADMITTED THAT IT PERFORMS NO LOCAL INVESTIGATION TO VERIFY THEFT REPORTS

Hertz Theft Reporting Policy W7-02 requires that the corporate security manager for each location investigate each theft report for accuracy:

> Corporate/Country    Security    Manager    Investigations  -  Every theft/conversion/disappearance must be promptly investigated by the Corporate/Country Security Manager responsible for the location from which the related Theft Vehicle Report is filed. All employees are required to cooperate fully with such an investigation.

*See* Exhibit 1. This is a national policy with which all employees and managers must comply and in which they must participate.

However, Hertz's designee for corporate security testified that he and his office's "marching orders" were to not verify the reports:

| | |
|---|---|
| COUNSEL: | Is it your testimony that you don't go to the location and question any of the Hertz employees when you receive a theft package? |
| MR. LIVINGSTON: | That's my testimony, yes. |
| COUNSEL: | Why? |
| MR. LIVINGSTON: | Because I mean the package has been completed, all the reports have been reviewed, I guess, by OKC. **And my marching orders are to report the car stolen** when I get the -- again, I do look at it for everything being accurate, as far as I can tell, within the report itself. |
| COUNSEL: | Yeah. *But you don't do any independent investigation?* |
| MR. LIVINGSTON: | *I do not.* |
| COUNSEL: | *You don't do any check?* |
| MR. LIVINGSTON: | *I do not.* |

Exhibit 2 - Livingston Testimony, at p.194-96, 115-117 (emphasis added) (objections omitted). This was confirmed by another designee, a manager for the company:

| | |
|---|---|
| COUNSEL: | We deposed Mr. Rich Livingston Tuesday. He indicated that he doesn't put the package together. He just gets it from Oklahoma City and then basically just couriers it to the police. Is it your understanding that the corporate security manager or assistant corporate security manager actually puts the theft |

|  | package together? Or is it your understanding that the theft package is put together in Oklahoma City and then sent to the corporate security manager at the location where the car was allegedly taken from? |
|---|---|
| MR. JAUSSI: | *So it's my understanding that Oklahoma City generates the packet and all the pertaining documents within it, feeds Ken Graeber or Rich Livingston, right, and Ken Graeber or Rich Livingston essentially print, file, and go seek a police report claim or case number.* |
| COUNSEL: | Okay. *So the theft package is already completed in Oklahoma City before it's sent to the corporate security manager at the Hertz location* where the car was allegedly taken from, correct? |
| MR. JAUSSI: | *That's my understanding, correct.* |

*See* Exhibit 3 - Jaussi Testimony, at pp. 69-70 (emphases added) (objections omitted). According to Livingston, corporate security personnel do not even have access to rental information to verify the accuracy of theft reports:

| COUNSEL: | Do you have access to phone logs to determine when a renter called in? |
|---|---|
| MR. LIVINGSTON: | I do not. |
| COUNSEL: | Do you have access to any kind of logs that determine the contacts the renter had with Hertz? |
| MR. LIVINGSTON: | Do not. |

Exhibit 2, at p. 205. He also confirmed he does not attempt to ascertain whether a customer was billed, nor does he engage in any discussion with the location employees about the rental or the renter.

Hertz's recent production contains the "marching orders" Livingston and Jaussi testified about, which mandate that the W7-02(a)(17) investigation not be performed:

> d. **Renting Location Responsibilities**
>
>   1) Immediately report the theft to local law enforcement upon receipt of the theft package.

Hertz001485. This practice stands in stark contrast to the requirement of W7-02(a)(17).

Julie Wilkerson, Hertz's national supervisor for Vehicle Control (and trial designee), dissembled about whether Hertz expects its corporate security managers to conduct a local investigation:

| | |
|---|---|
| COUNSEL: | In fact, this is a procedure [W7-02(a)(17)] that you follow to make sure that innocent people aren't wrongfully arrested for accidental reporting to the police, correct? |
| WILKERSON: | Correct. |
| . . . . | |
| COUNSEL: | Now, it says here that the question was asked of [Livingston] or anyone working for him or working with him, if they did any check and his response was no, not on his side of the fence. Do you see that? |
| WILKERSON: | I do see that. |
| COUNSEL: | Now, you just testified that he would have checked the computer system of some sort, right? |
| WILKERSON: | *He should have checked the computer system.* |

Exhibit 4 - Wilkerson Testimony, at pp. 37-46 (objections omitted) (emphases added). In fact, Hertz had told Livingston and all other US personnel not to check the computer system nor do any other sort of investigative check.

She was then constrained to admit that the failure to conduct local investigations violated Hertz's policy W7-02(a)(17) in thousands of cases.

| | |
|---|---|
| COUNSEL: | How many theft reports have come out of Philadelphia? |
| MR. EDELSTEIN: | When? |
| COUNSEL: | In 2013-2014, ma'am. |
| WILKERSON: | A lot. |
| COUNSEL: | A lot? |
| WILKERSON: | Yes. |
| COUNSEL: | And what would you say? |
| WILKERSON: | Maybe 2000. |
| COUNSEL: | *Do you know – excuse me. Mr. Livingston testified that he's gone into court and handled about 400 of these and he's never done a local investigation to determine the truth and veracity of those theft packages?* |
| WILKERSON: | No, I didn't know that. |

| COUNSEL: | *That would fall well below the policies and procedures of even Hertz Corporate policies, correct?* |
| WILKERSON: | *Yes.* |

Exhibit 4 - Wilkerson Testimony, at pp. 37-46 (objections omitted) (emphases added). In fact, Hertz's own training manuals instruct vehicle control and corporate security employees ***not*** to do the investigation. In any case, Hertz has known about the issue since at least 2017 but has done nothing to correct the problem.

Essentially, Hertz has W7-02(a)(17) in place as window dressing so it can point to the policy and claim that it has a rigorous theft reporting process if anyone inquires—exactly as Hertz did on the first phone call with its Power Point presentation. In reality, Hertz actively disregards this policy which is supposed to safeguard against false reports.

## III. Hertz Does Not Complete Required Missing Vehicle Checklists, Nor Does It Hire a Private Towing Service During the Theft Reporting Process

In addition to performing no local investigation, Hertz cuts other corners in the theft reporting process. For instance, W7-02(a)(4) mandates that a missing vehicle checklist be completed before reporting all overdue rentals or missing inventory. In fact, Hertz presented a Vehicle Control checklist to us in its initial Power Point presentation. Yet no checklists have been produced by Hertz, and Hertz admitted on our recent phone calls that a checklist is almost never filled out by Hertz. This failure constitutes yet another violation of Hertz's policies and provides another indication that many of Hertz's rigorous investigative steps exist only on paper.

Furthermore, Hertz's documents are replete with references to hiring a private repo service to find and tow the vehicle as part of an exhaustive process aimed at avoiding the preparation and delivery of a theft report. Hertz's policies provide that if a car is recovered, then the car is no longer overdue and the matter is concluded. Yet, not a single record has been produced by Hertz showing a private tow company was ever hired to locate and tow the vehicle before the filing of a theft report, despite the fact that many of the vehicles in question were equipped with OnStar.

## IV. Hertz's Motives - Profits and Cost Savings

Like any corporation, Hertz is motivated to cut costs while increasing profits—but it should not do so at the expense of basic human rights. Hertz's designee testified that Hertz was engaging in "cost savings" in the corporate security area in 2015:

| COUNSEL | Okay. Do you understand the circumstances regarding [another corporate security manager] being laid off? |
| MR. LIVINGSTON | My understanding was, it was just a corporate decision to lay off a large group of people at that time for cost savings. |

Exhibit 2 - Livingston Testimony, at p. 54. Hertz stipulated at trial that Hertz had implemented layoffs in corporate security for cost savings in 2015:

| | |
|---|---|
| COUNSEL: | [A corporate security manager] was let go, according to Mr. Livingston's testimony, because Hertz wanted to cut costs. Do you remember that? |
| WILKERSON: | No. |
| COUNSEL: | Well, let's pull it up. |
| MR. EDELSTEIN: | *We'll stipulate that was the testimony, Judge.* |
| THE COURT: | *It's been stipulated to. All right.* |
| COUNSEL: | Hertz Corporation wanted to cut the costs so they let Mr. Graeber go, correct? |
| WILKERSON: | If you say-so, yes. |
| COUNSEL: | And by doing that, they're basically cutting cost at the local investigation -- at the local investigation preventing innocent people from being accused of car theft, correct? |
| MR. EDELSTEIN: | Objection, Your Honor. |
| THE COURT: | Sustained. |

Exhibit 4, at pp. 44-45.

Hertz knows that were it to actually adhere to its own rigorous policies and verify the tens of thousands of police reports it makes across the United States, the result would be the investment of enormous amount of time and money. This is apparently why Hertz does not comply with W7-02 and do a local investigation, complete the checklists, or hire a private repossession service; it is apparently why W7-02(D) is written to require that Hertz employees charge the customer's credit card after the theft package is delivered to the police.  Hertz's actual practice is to file unverified reports omitting critical payment information: this allows Hertz to pass off its inventory control costs to the police, prosecutors, and courts.

Hertz receives the following benefits as part of its scheme:

- Hertz can avoid hiring corporate security personnel to investigate purported thefts
- Hertz does not have to pay existing corporate security personnel to investigate and complete theft reports
- Police recover the car for Hertz so it can rent it out again
- Hertz charges the customer for the rental but does not tell the police
- Hertz gets restitution from the prosecution of the customer

- Hertz files an insurance claim for the "stolen" car and receives full cash value for the asset.
- Hertz does not have to engage in costly, time-consuming, and inefficient arbitration in thousands of cases around the country

## V. Due to Lack of Investigation, All Theft Reports are Unverified and False, and Adversely Affect All Customers

As noted, in 100% of the cases Hertz performs no local investigation. What this means is that in almost all cases the theft report is incomplete, out of date, and materially inaccurate.

The lack of investigation is particularly acute in the lost inventory cases, where Hertz lost track of vehicles, reported them stolen, and then rented these "stolen" vehicles to unsuspecting customers. It is obvious that, had Hertz conducted a local investigation, the arrests arising from vehicles "lost" by Hertz would have been prevented.

Furthermore, in almost all cases of alleged overdue rentals, the lack of investigation resulted in the submission of false police reports that were defective in another way: the reports omit any acknowledgment that the renter had extended his/her contract term, that payment had been made, and/or that there had been verbal contact and interaction with the customer. Some examples are:

- **Ayoub** - Lack of investigation resulted in failure to ascertain multiple extensions; extensive renter contact; payments by the renter; and extensive renter history.

- **Stepanyan** - Lack of investigation resulted in failure to ascertain that Hertz had identified the wrong car on the rental contract, failure to speak with location personnel who knew the last known renter was a faithful customer; failure to contact the last known renter; and failure to realize that Hertz records showed the customer was a frequent renter. Had the vehicle control checklist been utilized (which requires contact with last known renter), the car Stepanyan was driving would never have been reported stolen.

- **Channell** - Lack of investigation resulted in failure to ascertain that renter was actually on a multi-month contract that he was renewing monthly; that payments were ongoing; and that the alleged due date given to the police was contradicted by Hertz's own records. Had the vehicle control checklist been utilized (which requires verification that the renter is not a multi-month contract) the police report should never have been prepared.

- **Stevens** - Lack of investigation resulted in failure to ascertain that car had been towed and was sitting on a lot waiting to be picked up; and that customer's credit card was charged.

- **Higgs** - Lack of investigation resulted in failure to realize that rental extensions had been arranged; extensive customer contact existed; the customer had provided a new credit card to Hertz for the extensions; and payment for the rental was made.

- **Johnson** - Lack of investigation resulted in failure to realize that customer was a longtime Hertz customer; that she had been charged over $3,400 by Hertz and had contacted Hertz about billing issues; that she had been communicating with Hertz about returning the car; and that she and her insurance company had contacted Hertz about the car.

- **Junious** - Lack of investigation resulted in failure to realize that the due date given to police was inaccurate and that the renter had paid, which resulted in a Hertz employee giving false testimony under oath.

Again, in every one of these cases, Hertz simply failed to include in its theft reports any mention of actual payments or verbal contact with the renter. Note that there is ample evidence in the record demonstrating that the renters had contact with various Hertz departments (e.g., Hertz's billing department), but no mention of these contacts appears in the theft package. A local investigation would have revealed these contacts, thereby rendering the resulting police reports inaccurate and unreliable.

## VI.    THE *GRADY* CASE REVEALS THAT HERTZ HAS NOT BEEN COMPLYING WITH W7-02(A)(17) FOR MANY YEARS

As the testimony and corporate documents presented above show, it is apparent that location corporate security managers never conduct the (a)(17) investigation mandated by Hertz policy. In fact, according to Richard Livingston, corporate security personnel are not even able to access renter records—in effect, Hertz prevents these personnel from completing the investigation that Hertz policy requires they perform. Exhibit 2, at p.205.

It is also apparent that Hertz corporate has long been aware of this fact, yet Hertz continued to direct employees not to comply with corporate policy, instead passing its recovery costs off on to the police and taxpayers.

Hertz has known for years that its conduct and cost-cutting measures continue to cause serious problems with its theft reporting, but has done nothing to fix these problems.

## VII.    CONCLUSION

Hertz policy requires a local investigation when Hertz believes that a rental has not been timely paid or a car has passed its return date. Yet Hertz instructs its location employees not to investigate and verify theft packages. At a minimum, Hertz should confirm, for every theft report, whether payment has been made, an extension has been procured, or whether the vehicle in question has actually been returned. The failure to perform any investigation as set forth in Hertz's standard operating procedures is inherently designed to secure the arrest and prosecutions of innocent individuals.

The result of these failures is to turn a civil payment dispute (if at all) into a criminal matter. It enables Hertz to claim that innocent customers are thieves, so Hertz can use the police as a taxpayer-funded repo service, avoid arbitration with customers, and collect insurance monies (the claim for which requires a police theft report).

In essence, Hertz is getting the monies from the forced charge and the full asset value from its insurance claim. It then disposes of the rental contract with its accounting department, after having accounted for the income from the forced charge and the cash value of the vehicle from the insurance claim.

ATTACHMENT AJ

FRANCIS ALEXANDER, LLC
Francis Malofiy, Esquire
Attorney ID No.: 208494
280 N. Providence Road
Media, PA 19063
T: (215) 500-1000
F: (215) 500-1005
*Law Firm / Lawyer for Plaintiff*



*Filed and Attested by the
Office of Judicial Records
22 FEB 2016 07:28 pm
J. OSTROWSKI*

## THE COURT OF COMMON PLEAS
## PHILADELPHIA COUNTY, PENNSYLVANIA

| | |
|---|---|
| KELLY A. GRADY<br><br>*Plaintiff*<br><br>vs.<br><br>THE HERTZ CORPORATION;<br><br>HERTZ RENT-A-CAR PHILADELPHIA INTL. AIRPORT;<br><br>JOHN DOE(s)[1]<br><br>*Defendants* | ACTION COMMENCED BY:<br>WRIT OF SUMMONS ON:<br>NOVEMBER 23, 2015<br><br>NOVEMBER TERM, 2015<br><br>CIVIL ACTION NO.:<br>151103380<br><br>COMPLAINT FILED:<br>FEBRUARY 22, 2016<br><br>CAUSES OF ACTION:<br>1. FALSE IMPRISONMENT<br>2. MAL. ABUSE OF PROCESS<br>3. MALICIOUS PROSECUTION<br>4. INT. INFL. OF EMO. DIST.<br><br>*JURY TRIAL DEMANDED* |

## CIVIL ACTION COMPLAINT

**NOTICE**

You have been sued in court. If you wish to defend against the claims set forth in the following pages, you must take action within twenty (20) days after the complaint and notice are served, by entering a written appearance personally or by attorney and filing in writing with the court your defenses or objections to the claims set forth against you. You are warned that if you fail to do so the case may proceed without you and a judgment may be entered against you by the court without further notice for any money claimed in the complaint or for any other claim or relief requested by plaintiff. You may lose money or property or other rights important to you.

YOU SHOULD TAKE THIS PAPER TO YOUR LAWYER AT ONCE. IF YOU DO NOT HAVE A LAWYER OR CANNOT AFFORD ONE, GO TO OR TELEPHONE THE OFFICE SET FORTH BELOW TO FIND OUT WHERE YOU CAN GET LEGAL HELP.

PHILADELPHIA BAR ASSOCIATION
Lawyer Referral and Information Service
1101 Market Street, 11th Floor
Philadelphia, Pennsylvania 19107
(215) 238-1701

**AVISO**

Le han demandado a usted en la corte. Si usted quiere defenderse de estas demandas expuestas en las páginas siguientes, usted tiene veinte (20) días de plazo al partir de la fecha de la demanda y la notificatión. Hace falta asentar una comparecencia escrita o en persona o con un abogado y entregar a la corte en forma escrita sus defensas o sus objeciones a las demandas en contra de su persona. Sea avisado que si usted no se defiende, la corte tomará medidas y puede continuar la demanda en contra suya sin previo aviso o notificación. Además, la corte puede decidir a favor del demandante y requiere que usted cumpla con todas las provisiones de esta demanda. Usted puede perder dinero o sus propiedades u otros derechos importantes para usted.

LLEVE ESTA DEMANDA A UN ABOGADO INMEDIATAMENTE. SI NO TIENE ABOGADO O SI NO TIENE EL DINERO SUFICIENTE DE PAGAR TAL SERVICIO, VAYA EN PERSONA O LLAME POR TELEFONO A LA OFICINA CUYA DIRECCION SE ENCUENTRA ESCRITA ABAJO PARA AVERIGUAR DONDE SE PUEDE CONSEGUIR ASISTENCIA LEGAL.

ASOCIACIÓN DE LICENCIADOS DE FILADELFIA
Servicio De Referencia E Información Legal
1101 Market Street, 11th Floor
Filadelfia, Pennsylvania 19107
(215) 238-1701

---

[1]  Manager(s) at Hertz Rent-A-Car Philadelphia Intl. Airport from March 2013 to June 2014.

Case ID: 151103380

P1-001

FRANCIS ALEXANDER, LLC
Francis Malofiy, Esquire
Attorney ID No.: 208494
280 N. Providence Road
Media, PA 19063
T: (215) 500-1000
F: (215) 500-1005
*Law Firm / Lawyer for Plaintiff*

THE COURT OF COMMON PLEAS
PHILADELPHIA COUNTY, PENNSYLVANIA

| | |
|---|---|
| KELLY A. GRADY<br><br>　　　*Plaintiff*<br><br>　　　　　vs.<br><br>THE HERTZ CORPORATION;<br>HERTZ RENT-A-CAR PHILADELPHIA INTL. AIRPORT;<br>JOHN DOE(s)[2]<br><br>　　　*Defendants* | ACTION COMMENCED BY:<br>WRIT OF SUMMONS ON:<br>NOVEMBER 23, 2015<br><br>NOVEMBER TERM, 2015<br><br>CIVIL ACTION NO.:<br>151103380<br><br>COMPLAINT FILED:<br>FEBRUARY 22, 2016<br><br>CAUSES OF ACTION:<br>1. FALSE IMPRISONMENT<br>2. MAL. ABUSE OF PROCESS<br>3. MALICIOUS PROSECUTION<br>4. INT. INFL. OF EMO. DIST.<br><br>*JURY TRIAL DEMANDED* |

## CIVIL ACTION COMPLAINT

### INTRODUCTION

1.　　Plaintiff Kelly A. Grady is an attractive 35 year-old woman who was falsely imprisoned and maliciously prosecuted by Defendants, who falsely reported to various police authorities that she had stolen a car from the Hertz Rent-A-Car at the Philadelphia Airport.

2.　　These reports to the Pennsylvania State Police and the Philadelphia Police Department have no basis in the truth; Ms. Grady was authorized at all points by Hertz to be in possession of the vehicle she was renting.

---

[2]　Manager(s) at Hertz Rent-A-Car Philadelphia Intl. Airport from March 2013 to June 2014.

Case ID: 151103380

P1-002

3.     As a direct result of Hertz's false allegations of car theft, criminal complaints, and affidavits, Grady was imprisoned for over two weeks and prosecuted for over eight months without any basis for allegedly committing three felonies and one misdemeanor.

4.     At the end of her ordeal, the criminal case against Ms. Grady was dismissed for lack of prosecution because—after nine hearings and requests for continuances—Defendants and the District Attorney of Philadelphia were unable to find even a single witness willing to testify in court against Ms. Grady.

### Plaintiff was Arrested, Imprisoned, and Maliciously Prosecuted after Defendants Filed a False Criminal Complaint Against Her

5.     Plaintiff Kelly A. Grady is an attractive 35-year old woman with no criminal history:



6.     In April 2013 she rented a 2013 Chevrolet Yukon from The Hertz Corporation car rental service (also known as Hertz Rent-A-Car) at the Philadelphia Airport on or about April 17, 2013. Little did she know that a simple car rental would turn her life upside down.

7.     Ms. Grady followed all applicable rules and regulations and paid for the car rental as directed by Hertz.

8.     Ms. Grady contacted Hertz repeatedly in 2013, spoke with a Hertz employee she knew named John, and was assured that there were no issues with her rental.

9.      However, as she was driving in Pennsylvania on July 22, 2013, while on vacation a state trooper pulled her over. The officer stated that the car had been reported by OnStar as being taken without authorization.

Case ID: 151103380

P1-003

10.    Ms. Grady had the trooper contact the Philadelphia International Airport Hertz location where she rented the Yukon. The officer spoke with defendant Hertz's employees and agents who assured the officer that the report by OnStar was not accurate.

11.    As a result, the officer took no action against Ms. Grady and she was never given any sort of ticket or citation. However, the officer stated that because the there was a report in the system protocol required that he needed to tow the car—which was done without incident. The officer kindly allowed her to take her luggage from the vehicle and drove her to a Hardy's location so that she could secure transportation.

12.    Many months later in October 2013, Ms. Grady was traveling through New Jersey with the July 22, 2013 incident nothing but distant memory.

13.    A New Jersey police officer happened to pull her over for a traffic violation. The officer then ran her name through the system as is standard operating procedure. Ms. Grady was shocked and dismayed when the officer told her to step out of the car and place her hands on the hood of his patrol vehicle. She asked the officer if she was being arrested and he responded "Yes." She then asked why and he said "Because you're a fugitive from justice." She replied, "I don't know that that means." He then incorrectly told her that she was being arrested for fraud.

14.    Ms. Grady has never been charged or convicted of any crime in her entire life and had only accrued a few speeding tickets. Her mind was racing trying to figure out what she could have possibly done.

15.    Ms. Grady, an attractive young woman with no criminal record, languished for two weeks in the New Jersey prison system unaware of why she was being held and unable to post bail.

16.    During that time in New Jersey prison she was sexually and physically harassed, assaulted, battered, and terrorized.

17.    Eventually she was transferred to Philadelphia in early November 2013 where she was held for two more days.

18.    Throughout the entire time she spent in prison in New Jersey and Philadelphia no one ever explained what crime she had allegedly committed that justified imprisoning her.

19.    Her family, friends, and relatives thought that she had disappeared, went into a mental institution, abandoned her family, friends, and work, and/or was strung out on drugs. Furthermore, it was a significant factor in finalizing her divorce.

Case ID: 151103380

20.     She was released from prison in Philadelphia on November 5, 2013, and was charged with three felonies (Theft – Unlawful Taking, Theft by Deception, Theft – Receiving Stolen Property) and one misdemeanor (Unauthorized Use of Automobile). Her case number was MC51-CR-0042843-2013.

21.     At this point in time, no one informed Ms. Grady who the complainant was and what they actually alleged she had done.

22.     Upon her release, she was only told to appear at the Criminal Justice Center ("CJC") on Filbert Street in Philadelphia, Room 703, on November 19, 2013. She had no experience with the criminal justice system, was justifiably terrified and traumatized, and simply trying to follow the court's orders.

23.     Upon appearing on November 19, 2013, for a hearing before The Honorable Jacquelyn Frazier-Lyde—to learn why she was jailed for over two weeks in two different states— the Assistant DA claimed that the State was not ready to proceed with the case because the witness had not appeared.

24.     Again, no one told Ms. Grady what was going on and who had caused her to be arrested and jailed for over two weeks.

25.     The hearing was continued and she was directed by CJC personnel to reappear on December 17, 2013, at the CJC at Room 703 at 8:00 am.

26.     Again, Ms. Grady had no experience with the criminal justice system and assumed that she would be told what she had done wrong at a court hearing.

27.     When she appeared again at the CJC on December 17, 2013, before The Honorable David C. Shuter, she was informed that the hearing was to be continued because the DA's Office was again not prepared as their witness had failed to appear.

28.     At the December 17, 2013 hearing, Ms. Grady was directed to come back to the CJC, this time on January 7, 2014. Again, on January 7, 2014, the State was not able to bring a witness to testify against her and the hearing was continued yet again.

29.     Incredibly, from November 2013 until June 2014 she appeared at the CJC nine times for hearings. Each time the State was not prepared to offer witnesses to testify against her. Each time the State requested a continuance. The dates of these hearings where the State was unprepared were 11/19/2013, 12/19/2013, 1/7/2014, 2/03/2014, 2/28/2014, 3/25/2014, 4/25/2014, 5/13/2014, and 6/5/2014.

Case ID: 151103380

P1-005

30.     It was only at the March 25, 2014 hearing that she first learned anything about what she was being accused of. Having shown up six times for a hearing, and the hearing having been continued six times, one of the court's administrative personnel, a pregnant woman, took pity on her and told the judge that Ms. Grady had diligently appeared each time and had never been late. Ms. Grady was given the chance to speak and told the Court, "No one has ever even told me what I've done." It was only at this point that the Assistant District Attorney tell her that defendant Hertz had filed a criminal complaint against her for car theft.

31.     As she began to process that information over the next few days she realized that she had apparently been arrested in New Jersey because of the Hertz rental of the Chevrolet Yukon she had made in April 2013 in Pennsylvania.

32.     This realization in late-March, early-April 2014, however, still made no sense to her because the state trooper who had pulled her over in July 2013 had not cited her, had made sure with defendant Hertz that she did nothing wrong, and had even taken her to a Hardy's to make sure she safely got transportation.

33.     Upon information and belief, the Philadelphia Police and the District Attorney's Office contacted Defendants who refused to appear to testify against Ms. Grady.

34.     After the hearing was *__continued 8 times__* due to the State's total failure to have a witness appear, The Honorable T. Francis Shields dismissed all charges against Ms. Grady for lack of prosecution at the ninth hearing.

35.     At no point did the District Attorney's Office, the Philadelphia Police, the Pennsylvania State Police, or Defendants ever inform Plaintiff that the criminal complaint filed against her was meritless. They simply kept her coming to court nine times until the Court dismissed the case for lack of prosecution.

### Defendants' Baseless Initiation of a Criminal Case Against Ms. Grady for Car Theft

36.     Ms. Grady later learned that the defendant manager of the Hertz Rent-A-Car at the Philadelphia International Airport—whose name is yet unknown—had told police on July 22, 2013, that Ms. Grady had stolen a 2013 Chevrolet Yukon.

37.     This allegation was baseless.

38.     An affidavit submitted by a Detective Wojciechowski of the Philadelphia Police Department shows that the manager then allegedly told Detective Wojciechowski on August 27,

Case ID: 151103380

P1-006

2013, that Ms. Grady rented the car on April 17, 2013, and that the rental was to be returned on May 20, 2013. The manager claims that he unsuccessfully attempted to contact Ms. Grady for two months after the car was allegedly not returned. The manager then claims that on July 22, 2013, he reported the car stolen and that a trooper named "Kemmerling" of the State Police stopped the car after using OnStar tracking to find it. The Hertz manager claims that Trooper Kemmerling stopped the car and recovered it. Over one month after that stop, where Ms. Grady was not arrested, the defendant Hertz manager then filed the complaint against Ms. Grady.

39.    At all relevant points in time in 2013 Ms. Grady was in close contact with Hertz employees and was authorized to drive the Chevrolet Yukon.

40.    It is especially bafflingly that a criminal complaint would have been filed on August 27, 2013, by a Hertz manager, when a state trooper believed to be Kemmerling spoke with Hertz employees on July 22, 2013, determined that Ms. Grady had done nothing wrong, and did not arrest her.

41.    Defendants knew that Ms. Grady did nothing wrong, yet they filed a criminal complaint against her and at no point contacted police to withdraw their complaint, otherwise exonerate Ms. Grady, or halt her unjust criminal prosecution.

42.    As a direct result of Defendants' actions, Ms. Grady—a law abiding citizen—was unjustly imprisoned for two weeks for crimes she never committed and dragged through the Court system for over half a year without Defendants ever offering single witness to testify against her.

43.    To this day Ms. Grady has a public criminal history of being charged with three felonies and misdemeanor. The public docket does not say that she is not guilty or that the charges are baseless, only that the charges were dismissed because of a lack of prosecution because the State's witnesses were allegedly unavailable. This is a massive stain on her reputation and makes it seem to the public as if she did commit these crimes.

44.    Nor can she cannot afford to get the record expunged.

45.    As a result, she has lost employment, has been denied employment, and her putative criminal history has been raised in several professional situations as well her social and familial circles.

46.    In order to make ends meet she freelances as a hair dresser/stylist, going to friends and family member's houses to cut and color hair. She has been rejected from employment at

Case ID: 151103380

salons, and other odd jobs such as baby sitting and house cleaning, because of the false criminal history.

47.     She can no longer rent cars, obtain a mortgage, get a lease on an apartment, or simple everyday things that people take for granted.

48.     At no point did Defendants appear in Court to testify against Ms. Grady.

49.     Upon information and belief, the Philadelphia Police and the District Attorney's Office of Philadelphia contacted Defendants in 2013 and 2014 regarding the complaint filed against Ms. Grady.

50.     Upon information and belief, Defendants failed to appear in Court despite their presence being requested by the Philadelphia Police Department and the District Attorney's Office.

51.     At no point did Defendants withdraw the criminal complaint or otherwise attempt to exonerate Ms. Grady.

52.     Defendants' acts and omissions that were the subject of this complaint were knowing and/or careless and/or negligent and/or reckless and/or intentional and/or malicious.

53.     Upon information and belief, this problem had happened on multiple occasions to multiple Hertz customers and defendant Hertz's directors, officers, employees, and agents were on notice that this was a serious problem that needed to be addressed and fixed.

54.     As a direct and proximate result of Defendants' acts and omissions, Plaintiff has incurred severe and substantial damages and actual harm. These damages include but are not limited to:

   a.     Monetary damages

   b.     Attorneys' Fees for a Criminal Attorney

   c.     Severe mental distress, as well as severe emotional distress, mental suffering, mental anguish, sleeplessness, restlessness, anxiety, and depression

   d.     Loss of reputation.

   e.     Loss of the time she spent unjustly incarcerated.

   f.     Harm to personal, social, and professional relationships.

   g.     Emotional pain and suffering.

   h.     Lost wages.

*****

Case ID: 151103380

# Parties

### Plaintiff Kelly A. Grady

55.    Plaintiff Kelly A. Grady is a resident of Philadelphia, PA. She can be reached at 280 N. Providence Road, Suite 5, Media, PA, 19063.

### Defendant The Hertz Corporation

56.    Defendant The Hertz Corporation is a Delaware corporation.

57.    The Hertz Corporation operates a rental car location in Philadelphia, PA at either 1 Arrivals Road, Philadelphia, PA 19153 or 8800 Essington Ave., Philadelphia, PA 19153, or both.

### Defendant Hertz Rent-A-Car Philadelphia Intl. Airport

58.    Upon information and belief, defendant Hertz Rent-A-Car Philadelphia International Airport is a subsidiary of defendant The Hertz Corporation and operates a rental car service at either 1 Arrivals Road, Philadelphia, PA 19153 or 8800 Essington Ave., Philadelphia, PA 19153, or both.

### Defendant John Doe(s)

59.    The manager or managers of the Philadelphia Airport Hertz Rental Car location in 2013, specifically from April 2013 to June 2014, whose name(s) are presently unknown.

60.    This manager(s) of the Hertz rental care location at the Philadelphia Airport reported Ms. Grady to the Pennsylvania State Police and the Philadelphia Police Department in 2013 for allegedly stealing a 2013 Chevrolet Yukon.

*****

Case ID: 151103380

## Jurisdiction & Venue

61.     Jurisdiction over the parties in the Courts of the Commonwealth of Pennsylvania is proper pursuant to the provisions of 42 Pa. C.S. § 5301 *et seq.* Specifically, jurisdiction as to the Defendants is proper pursuant to 42 Pa. C.S. § 5301 (a)(3)(iii) by reason of "carrying on of a continuous and systematic part of its general business within this Commonwealth." Defendants transacted business in this Commonwealth and caused harm and compensable injury to Plaintiff by acts or omissions committed in the Commonwealth of Pennsylvania that are the subject of the present complaint.

62.     Venue is proper in the Philadelphia County Court of Common Pleas under Pennsylvania Rules of Civil Procedure 2130 and 1006 inasmuch as Defendants regularly conducted business in Philadelphia County and inasmuch as the cause of action arose and/or a majority of the harm, occurrences, and transactions regarding Plaintiff's cause of action arose and/or took place at least in part in Philadelphia County.

Case ID: 151103380

## COUNT I – FALSE IMPRISONMENT

*Kelly A. Grady*

*v.*

*The Hertz Corporation; Hertz Rent-A-Car Philadelphia Intl. Airport; John Doe(s)[3]*

63.    Plaintiff incorporates by reference and realleges the preceding paragraphs of this complaint pursuant to Pa. RCP 1019(g).

64.    Defendants filed a false complaint against Plaintiff with the Philadelphia Police Department falsely alleging that she had stolen a car from Defendants.

65.    Defendants made this false complaint carelessly and/or negligently and/or recklessly and/or knowingly and/or intentionally and/or maliciously.

66.    As a direct and eminently foreseeable result of Defendants' actions in filing a criminal complaint against Plaintiff, Plaintiff was falsely imprisoned for over two weeks in New Jersey and Pennsylvania.

67.    As a direct and proximate result of Defendants' conduct as set forth above, Plaintiff has suffered severe damages, including but not limited to monetary damages, severe emotional distress, mental suffering, mental anguish, sleeplessness, restlessness, anxiety, and depression.

****

---

[3]  Manager(s) at Hertz Rent-A-Car Philadelphia Intl. Airport from March 2013 to June 2014.

Case ID: 151103380

## COUNT II – MALICIOUS ABUSE OF PROCESS

*Kelly A. Grady*

*v.*

*The Hertz Corporation; Hertz Rent-A-Car Philadelphia Intl. Airport; John Doe(s)[4]*

68.    Plaintiff incorporates by reference and realleges the preceding paragraphs of this complaint pursuant to Pa. RCP 1019(g).

69.    The elements of malicious abuse of process are that Defendants (1) used a legal process against plaintiff, (2) primarily to accomplish a purpose for which the process was not designated, and (3) harm has been caused to Plaintiff.

70.    Defendants filed a false criminal complaint with the Philadelphia Police on August 27, 2013, alleging that Plaintiff had stolen a car from Defendants.

71.    This criminal complaint was a legal process used against Plaintiff by Defendants.

72.    This false criminal complaint was made so that Plaintiff would be arrested, imprisoned, and prosecuted. This purpose was improper as Plaintiff had done nothing wrong; the criminal justice system's purpose is not to arrest, incarcerate, and prosecute innocent and law-abiding citizens.

73.    Defendants made this false complaint carelessly and/or negligently and/or recklessly and/or knowingly and/or intentionally and/or maliciously. Defendants knew or should have known when they filed the criminal complaint against Plaintiff that she was authorized to use the car and had not stolen it.

74.    This is manifestly obvious as the state trooper who pulled over Plaintiff on July 22, 2013, believed to be named Kemmerling, spoke with Defendants on that date and Defendants assured him that Plaintiff was authorized to use the car. Plaintiff was not arrested by Trooper Kemmerling. It was thus beyond the pale for Defendants, over a month later, to file a completely false police complaint against Plaintiff that they knew was not true.

75.    As a direct and eminently foreseeable result of Defendants' actions in filing a criminal complaint against Plaintiff, Plaintiff was falsely imprisoned for over two weeks in New Jersey and Pennsylvania and prosecuted by the Philadelphia District Attorney's office for eight months.

---

[4] Manager(s) at Hertz Rent-A-Car Philadelphia Intl. Airport from March 2013 to June 2014.

Case ID: 151103380

76.    Furthermore, despite Plaintiff being haled into court nine different times during the course of the prosecution initiated by Defendants against Plaintiff, at no point during that eight month period did Defendants withdraw the criminal complaint they filed against Plaintiff, otherwise contact the authorities to notify them that the criminal complaint they filed against Plaintiff was false, or appear in court to testify against Plaintiff.

77.    Defendants' failure to withdraw the criminal complaint they initiated against Plaintiff was careless and/or negligent and/or reckless and/or knowing and/or intentional and/or malicious.

78.    As a direct and proximate result of Defendants' conduct in initiating a criminal complaint and failing to withdraw the criminal complaint as set forth above, Plaintiff has suffered severe damages, including but not limited to monetary damages, severe emotional distress, mental suffering, mental anguish, sleeplessness, restlessness, anxiety, and depression.

*****

Case ID: 151103380

## COUNT III –  MALICIOUS PROSECUTION

*Kelly A. Grady*

*v.*

*The Hertz Corporation; Hertz Rent-A-Car Philadelphia Intl. Airport; John Doe(s)[5]*

79.     Plaintiff incorporates by reference and realleges the preceding paragraphs of this complaint pursuant to Pa. RCP 1019(g).

80.     The elements of malicious prosecution are that Defendants (1) initiated a criminal proceedings against plaintiff, (2) the criminal proceedings ended in Plaintiff's favor, (3) the proceedings were initiated without probable cause, and (4) the defendant acted maliciously or for a purpose other than bringing Plaintiff to justice.

81.     Defendants initiated criminal proceedings against Plaintiff on August 27, 2013, by filing a false criminal complaint against Plaintiff with the Philadelphia Police, alleging that Plaintiff had stolen a car from Defendants.

82.     As a direct and eminently foreseeable result, Plaintiff was arrested and imprisoned for over two weeks in New Jersey and Pennsylvania. She was then prosecuted for over half a year for three felonies and one misdemeanor by the Philadelphia District Attorney's Office.

83.     This initiation of the criminal proceedings against Plaintiff was done without probable cause as Defendants knew that Plaintiff had valid contracts with Defendants for the car she had rented, knew that she had paid for the rental, and knew that she was otherwise authorized to be driving the car.

84.     Defendants acted maliciously and/or for a purpose other than bringing plaintiff to justice as they knew or should have known when they filed the criminal complaint against Plaintiff that she was authorized to use the car and had not stolen it.

85.     This is manifestly obvious as the state trooper who pulled over Plaintiff on July 22, 2013, believed to be named Kemmerling, spoke with Defendants on that date and Defendants assured him that Plaintiff was authorized to use the car. Plaintiff was not arrested by Trooper Kemmerling. It was thus beyond the pale for Defendants, over a month later, to file a completely false police complaint against Plaintiff that they knew was not true.

86.     Defendants made this false complaint carelessly and/or negligently and/or recklessly and/or knowingly and/or intentionally and/or maliciously.

---

[5]  Manager(s) at Hertz Rent-A-Car Philadelphia Intl. Airport from March 2013 to June 2014.

Case ID: 151103380

P1-014

87.    Furthermore, despite Plaintiff being haled into court nine different times during the course of the prosecution initiated by Defendants against Plaintiff, at no point during that eight month period did Defendants withdraw the criminal complaint they filed against Plaintiff or otherwise contact the authorities to notify them that the criminal complaint they filed against Plaintiff was false.

88.    Defendants' failure to withdraw the criminal complaint they initiated against Plaintiff was careless and/or negligent and/or reckless and/or knowing and/or intentional and/or malicious.

89.    As a direct and proximate result of Defendants' conduct in initiating a criminal complaint and failing to withdraw the criminal complaint as set forth above, Plaintiff has suffered severe damages, including but not limited to monetary damages, severe emotional distress, mental suffering, mental anguish, sleeplessness, restlessness, anxiety, and depression.

*****

Case ID: 151103380

## COUNT IV – Intentional Infliction of Emotional Distress

*Kelly A. Grady*

v.

*The Hertz Corporation; Hertz Rent-A-Car Philadelphia Intl. Airport; John Doe(s)[6]*

90.    Plaintiff incorporates by reference and realleges the preceding paragraphs of this complaint pursuant to Pa. RCP 1019(g).

91.    The elements of intentional infliction of emotional distress are that Defendants (1) Defendants acted intentionally or recklessly, (2) Defendants' acts and omissions were extreme and outrageous, (3) Plaintiff suffered severe emotional distress, and (4) Plaintiff's emotional distress was a result of Defendants' conduct.

92.    Defendants initiated criminal proceedings against Plaintiff on August 27, 2013, by filing a false criminal complaint against Plaintiff with the Philadelphia Police Department, alleging that Plaintiff had stolen a car from Defendants.

93.    As a direct and eminently foreseeable result of Defendants' conduct, Plaintiff was arrested and imprisoned for over two weeks in New Jersey and Pennsylvania. She was then prosecuted for over half a year for three felonies and one misdemeanor by the Philadelphia District Attorney's Office.

94.    Defendants acted intentionally and/or recklessly as they knew or should have known when they filed the criminal complaint against Plaintiff that she was authorized to use the car and had not stolen it.

95.    This is manifestly obvious as the state trooper who pulled over Plaintiff on July 22, 2013, believed to be named Kemmerling, spoke with Defendants on that date and Defendants assured him that Plaintiff was authorized to use the car. Plaintiff was not arrested by Trooper Kemmerling. It was thus beyond the pale for Defendants, over a month later, to file a completely false police complaint against Plaintiff that they knew was not true.

96.    Furthermore, despite Plaintiff being haled into court nine different times during the course of the prosecution initiated by Defendants against Plaintiff, at no point during that eight month period did Defendants withdraw the criminal complaint they filed against Plaintiff or otherwise contact the authorities to notify them that the criminal complaint they filed against Plaintiff was false.

---

[6] Manager(s) at Hertz Rent-A-Car Philadelphia Intl. Airport from March 2013 to June 2014.

Case ID: 151103380

97.   Defendants' failure to withdraw the criminal complaint they initiated against Plaintiff was intentional and/or reckless.

98.   The acts and omissions of Defendants were extreme and outrageous in a civilized society.

99.   The use of the criminal justice system is of the utmost seriousness and innocent individuals who have done nothing wrong should not be thrown in prison without warning and prosecuted for felonies for eight months, nor should their name be associated with extremely damaging felonious charges.

100.   As a direct and proximate result of the defendants' conduct as set forth above, plaintiff has suffered monetary damages as well as severe emotional distress, mental suffering, mental anguish, sleeplessness, restlessness, anxiety, and depression.

101.   The severe emotional distress suffered by Plaintiff was as a result of the intentional and/or reckless extreme and outrageous conduct of Defendants and was certain occur, was foreseeable, and manifestly reasonable reaction under the circumstances.

102.   Plaintiff suffered severe damages as a result of Defendants' conduct, including in initiating the criminal complaint and also in failing to withdraw the criminal complaint.

103.   As a result of the intentional and/or reckless conduct of Defendants, punitive damages are demanded of all defendants, individually and collectively.

*****

Case ID: 151103380

## RELIEF REQUESTED

**WHEREFORE**, Plaintiff demands judgment in its favor and against Defendants, jointly and severally, on all counts and claims compensatory damages in an amount in excess of this court's jurisdictional limitations, thereby guaranteeing Plaintiff a jury trial, exclusive of interests and costs, and an award of punitive damages, as well as prejudgment interest, post judgment interest, delay damages, costs, and such equitable relief as the Court deems necessary; and requests that this Court determine and declare that Plaintiff be awarded for all counts:

a.   Compensatory damages, inclusive of any and all harm attributable to Defendants' actions or inaction;

b.   Expectation, consequential (lost earnings, lost profits, lost opportunity), restitution, and reliance damages;

c.   Punitive damages to punish the Defendants for their outrageous conduct, self-interest, and duplicitous behavior;

d.   Exemplary damages to set an example for others;

e.   Attorneys' fees and court costs;

f.   the loss of time and opportunity;

g.   Delay damages; and

h.   Such other and further relief and/or equitable relief that this Court deems just and/or necessary.

*\*\*\*\*\**

*Respectfully submitted,*

FRANCIS ALEXANDER, LLC

*/s/ Francis Malofiy*

Francis Malofiy, Esquire
Attorney ID No.:  208494
280 N. Providence Road | Suite 105
Media, PA 19063
T:  (215) 500-1000
F:  (215) 500-1005
*Law Firm / Lawyer for Plaintiff*
*/d/   February 22, 2016*

Case ID: 151103380

## Spoliation Notice -- Preservation of Evidence

Plaintiff hereby demands and requests that Defendants take necessary actions to ensure the preservation of all documents, records, communications, whether electronic or otherwise, items and things in their possession or control, or any entity over which any party to this action has control, or from whom any party to this action has access to, any documents, items, or things which may in any manner be relevant to or relate to the subject matter of the causes of action and/or the allegations of this complaint.

Case ID: 151103380

## Jury Trial Demand

Plaintiff hereby demands a 12-person jury trial.

\*\*\*\*\*

*Respectfully submitted,*

Francis Alexander, LLC

*/s/ Francis Malofiy*

Francis Malofiy, Esquire
Attorney ID No.: 208494
280 N. Providence Road | Suite 105
Media, PA 19063
T: (215) 500-1000
F: (215) 500-1005
*Law Firm / Lawyer for Plaintiff*
/d/ *February 22, 2016*

Case ID: 151103380

## VERIFICATION

I, KELLY A. GRADY, hereby verify that that I have read the foregoing COMPLAINT and that the facts set forth herein are true and correct to the best of my knowledge, information, and belief. I further understand that the statements herein are made subject to the penalties of 18 Pa. Cons. Stat. Ann. § 4904 relating to unsworn falsification to authorities.

/s/ Kelly Grady
KELLY A. GRADY

/d/ 02/22/2016
DATE

Case ID: 151103380

# Certificate of Service

I hereby state that a true and correct copy of the foregoing Civil Action

Complaint was served on opposing counsel via the electronic filing system:

Jay L. Edelstein, Esquire
Edelstein Law, LLP
230 South Broad Street | Suite 900
Philadelphia, PA 19102
T: (215) 893-9311
F: (215) 893-9310
E: JEdelstein@Edelsteinlaw.com

*****

*Respectfully submitted,*
Francis Alexander, LLC
*/s/ Francis Malofiy*
Francis Malofiy, Esquire
Attorney ID No.:  208494
280 N. Providence Road | Suite 105
Media, PA 19063
T:  (215) 500-1000
F:  (215) 500-1005
*Law Firm / Lawyer for Plaintiff*
*/d/ February 22, 2016*

Case ID: 151103380

P1-022

# ATTACHMENT AK



**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re | Chapter 11 |
| The Hertz Corporation, *et al.*,[1] | Case No. 20-11218 (MFW) |
| Debtors. | (Jointly Administered) |
| | **Re: D.I. 1038** |

## DECLARATION OF CHERYL YOUNG IN SUPPORT OF FALSE POLICE REPORT PLAINTIFFS' MOTION FOR RELIEF FROM STAY

1. My name is Cheryl Young. I submit this Declaration in support of False Police Report Plaintiffs' Motion for Relief from Stay and in opposition to Debtors' Motion for Preliminary Injunction. I have personal knowledge of the facts stated in this declaration, which were alleged in my complaint against Hertz, and I can testify competently to them if called upon to do so:

2. Cheryl Young is a citizen of California and was prosecuted in San Joaquin County, California.

3. Young rented a car from the Manteca, CA location in May 2018 and gave them her Mastercard. For the first three weeks she extended with the location, and even visited the location to explore exchanging her vehicle.

---

[1] The last four digits of the Hertz Corporation's tax identification number are 8568. The location of the debtors' service address is 8501 Williams Road, Estero, Fl 33928. Due to the large number of debtors in these chapter 11 cases, for which join administration for procedural purposes has been requested, a complete list of the debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the debtors' claims and noticing agent at https://restructing.primeclerk.com/hertz.



4.      However, after three weeks, she then started extending with the 1800 corporate extension number and kept the car.

5.      As the rental continued into July she spoke with Hertz, and if there was an issue she called Hertz to extend and confirm she could use the rental.

6.      Then in early August 2018, she received an email from a Terry Wells, claiming that Hertz was taking legal action to recover the car. Wells apparently worked for a company hired by Hertz named Collateral Consultants.

7.      This was confusing, as Young had been extending the rental. Nevertheless, on August 9, 2018, Young told Wells she was returning the car and wrote: "I apologize for the inconvenience. I have no intention of stealing the vehicle." On August 10, 2018, she let Wells know the car had been returned by email, as well as called the Manteca location. In a voice call, Wells told Young that once the car was verified returned any action against Young would be stopped and taken care of.

8.      Following the return, Hertz billed Young $3,932.47. This was a significant overbilling. Young spoke with Hertz repeatedly and the bill was reduced to $1,899.47. Young's receipt says "Amount Due: 0.00 USD." At no point was she told by billing that she was being prosecuted.

9.      It was only in April 2019 that Young learned when applying for a job that Hertz had actually filed a police report on August 9, 2019, and then had formal charges filed against her on September 13, 2018. Why Hertz would initiate and continue a prosecution against a customer who had returned the car and paid?

10.      Because there was a pending felony case against her, Young was turned down for multiple jobs. She is a nurse/healthcare administrator and background checks are required.

2



11.    Unable to get work, she contacted Hertz to confirm that the vehicle was returned and ask why she was being prosecuted. A Hertz employee confirmed the return, but was singularly unhelpful about having the clearly unwarranted prosecution dropped. She was told to Google "OKC, OK":



12.    She later emailed Hertz' corporate security manager Clifford Gray in December 2019 asking him to drop the charges and pull the warrant. Gray falsely told her that Hertz could not stop pursuing the case against her.

13.    Young was forced to go to Court until the case was dropped shortly before Christmas 2019.

14.    Hertz had no probable cause to report or prosecute Young.

I declare under the penalty of perjury of the United States of America that the foregoing

is true and correct.

Dated:  September __/9__, 2020          /s/ _Cheryl Young_
                                        Declarant

# ATTACHMENT AL

<table>
<tr><td colspan="2" align="center"><strong>IN THE UNITED STATES BANKRUPTCY COURT<br>FOR THE DISTRICT OF DELAWARE</strong></td></tr>
</table>

| | |
|---|---|
| In re | Chapter 11 |
| The Hertz Corporation, *et al.*,[1] | Case No. 20-11218 (MFW) |
| Debtors. | (Jointly Administered) |
| | **Re: D.I. 1038** |

**DECLARATION OF KENNY FEARENCE, DAJANAE BRIDGES, AND BENITA BRIDGES**

1.      Our names are Kenny Fearence, Dajanae Bridges, son K.B, and Benita Bridges (mother of Dajanae). We have personal knowledge of the facts stated in this declaration, and we can testify competently to them if called upon to do so:

2.      Kenny rented on or around May 11-12, 2020, with Thrifty. The initial rental was for 1 week, and then he called and extended regularly. He told the company that it was going to be open ended (he was told that this was acceptable because they had his credit card on file and that he would be charged at the end of the rental). The rental was the Ontario Airport location in California.

3.      He first extended with the location. When the location closed for COVID, he then extended with corporate on the 1800 number, which he found out was Hertz when he called. During this time period, Thrifty/Hertz was placing holds on his credit card which he could see on his banking app.

---

[1] The last four digits of the Hertz Corporation's tax identification number are 8568.  The location of the debtors' service address is 8501 Williams Road, Estero, Fl 33928.  Due to the large number of debtors in these chapter 11 cases, for which join administration for procedural purposes has been requested, a complete list of the debtors and the last four digits of their federal tax identification numbers is not provided herein.  A complete list of such information may be obtained on the website of the debtors' claims and noticing agent at https://restructing.primeclerk.com/hertz.

4.      On July 21, 2020, he spoke with Thrifty Roadside. He said he wanted to return, but that he had tested positive for COVID. He was told that Thrifty would pick up the car, and that they would comp him the weeks he was sick.

5.      He left the car at the same location for weeks in Victorville, CA but Thrifty never picked up the car.

6.      Eventually he had to move it weeks later so it did not get towed by another service. He then called Roadside again and asked why the vehicle had not been picked up. He was told that someone would call him back. No one told him on the phone that anything was wrong, and certainly not that the company was going to reported for theft.

7.      No one called him back. The car was instead reported stolen by Hertz/Thrifty on August 10, 2020, unbeknownst to Kenny.

8.      As Kenny, Dajanae, Benita, and K.B were driving in the car in Hesperia, CA on August 14, 2020, they were pulled over and held at gun point. Dajanae, hysterically, shouted for them to put the guns down, but some police continued to point their guns at the child. The entire encounter was absolutely terrifying for all 4 of them.

9.      Kenny adamantly denied it was stolen and said he was waiting to hear back from Hertz. The police tried to call Hertz and verify, but Hertz never picked up.

10.     He went to jail for 12 hours and had to pay $5,000 bail.

11.     He was also charged $3,600 on his credit card, which Hertz did not tell police about.

12.     He was given a court date in or around December 2020. When he arrived he was told the case was dismissed by the prosecutor and that there were no charges.

13.     This experience resulted in a triggering of his preexisting PTSD. He did two tours in Iraq, 2007 and 2009, as a combat medic. He is now currently a nurse.

14.     As a direct and proximate result of Hertz and Thrifty's conduct, Kenny was falsely arrested, falsely imprisoned for 12 hours, falsely prosecuted for months, subjected to extreme mental and emotional distress, his PTSD was exacerbated and aggravated, and has had his reputation destroyed. He also had to pay $5,000 in bail.

15.     Dajanae, K.B., and Benita were also held at gun point and subjected to extreme mental and emotional distress.

16.     There was no probable cause for Hertz and Thrifty to report Kenny for theft, and have the entire family held at gun point.

I declare under the penalty of perjury of the United States of America that the foregoing is true and correct.

Dated:  October _____18_____, 2021            /s/ _____
                                              Kenny Fearence

Dated:  October _____18_____, 2021            /s/ _____
                                              Dajanae Bridges

Dated:  October _____18_____, 2021            /s/ _____
                                              Dajanae Bridges,
                                              on behalf of minor child K.B.

Dated:  October _____18_____, 2021            /s/ _____
                                              Benita Bridges

| | |
|---|---|
| **IN THE UNITED STATES BANKRUPTCY COURT**<br>**FOR THE DISTRICT OF DELAWARE** | |

| | |
|---|---|
| In re | Chapter 11 |
| The Hertz Corporation, *et al.*,[1] | Case No. 20-11218 (MFW) |
| Debtors. | (Jointly Administered) |
| | **Re: D.I. 1038** |

## DECLARATION OF DESIRAE WEEKS-PETERSON

1.      My name is Desirae Weeks-Peterson. I am a competent adult over the age of 18

and have personal knowledge of the facts stated in this declaration and I can testify competently

to them if called upon to do so.

2.      My father, Donald Peterson, died late in 2020.

3.      His estate is currently being formed and I will be the administrator.

4.      My father's Estate wishes to proceed with any and all claims against Debtors

related to or flowing from him being wrongfully arrested along with his friend Kathleen Scott in

August 2020.

        I declare under the penalty of perjury of the United States of America that the foregoing

is true and correct.

Dated:   October ___**19**___, 2021          /s/ *Desirae Weeks-P.*

                                            Declarant

---

[1] The last four digits of the Hertz Corporation's tax identification number are 8568.  The location of the debtors' service address is 8501 Williams Road, Estero, Fl 33928.  Due to the large number of debtors in these chapter 11 cases, for which join administration for procedural purposes has been requested, a complete list of the debtors and the last four digits of their federal tax identification numbers is not provided herein.  A complete list of such information may be obtained on the website of the debtors' claims and noticing agent at https://restructing.primeclerk.com/hertz.

<table>
<tr><td colspan="2" align="center"><b>IN THE UNITED STATES BANKRUPTCY COURT<br>FOR THE DISTRICT OF DELAWARE</b></td></tr>
</table>

| | |
|---|---|
| In re | Chapter 11 |
| The Hertz Corporation, *et al.*,[1] | Case No. 20-11218 (MFW) |
| Debtors. | (Jointly Administered) |
| | **Re: D.I. 1038** |

## DECLARATION OF JACQUELINE RAYBURN

1.      My name is Jacqueline Rayburn.  I have personal knowledge of the facts stated in this declaration, and I can testify competently to them if called upon to do so.

2.      Jacqueline was responsibly renting a car from Hertz through her insurance company at the Ft. Collins, CO. She was authorized to have the car by Hertz.

3.      Yet Hertz then began calling her, her employer, and her family members threatening to arrest her for auto theft. The local police even called her. The notion that she stole a car was absolutely false.

4.      Her personal account was then fraudulently charged for $2,000, even though State Farm was making the payments. Hertz never contacted State Farm.

5.      She was then pulled over and detained twice by the police.

---

[1] The last four digits of the Hertz Corporation's tax identification number are 8568.  The location of the debtors' service address is 8501 Williams Road, Estero, Fl 33928.  Due to the large number of debtors in these chapter 11 cases, for which join administration for procedural purposes has been requested, a complete list of the debtors and the last four digits of their federal tax identification numbers is not provided herein.  A complete list of such information may be obtained on the website of the debtors' claims and noticing agent at https://restructing.primeclerk.com/hertz.

1

¹ The last four digits of the Hertz Corporation's tax identification number are 8568. The location of the debtors' service address is 8501 Williams Road, Estero, Fl 33928. Due to the large number of debtors in these chapter 11 cases, for which join administration for procedural purposes has been requested, a complete list of the debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the debtors' claims and noticing agent at https://restructing.primeclerk.com/hertz.

1

6.      As a direct and proximate result of Hertz's conduct, Jacqueline was falsely accused of car theft, harassed, falsely arrested twice, fraudulently charged $2,000, and was subjected to extreme mental and emotional distress.

7.      Hertz had no probable cause to report Jacqueline for theft.

I declare under the penalty of perjury of the United States of America that the foregoing is true and correct.

Dated:  September **25**, 2021

/s/
Declarant

<table>
<tr><td colspan="2"><strong>IN THE UNITED STATES BANKRUPTCY COURT<br>FOR THE DISTRICT OF DELAWARE</strong></td></tr>
</table>

| | |
|---|---|
| In re | Chapter 11 |
| The Hertz Corporation, *et al.*,[1] | Case No. 20-11218 (MFW) |
| Debtors. | (Jointly Administered) |
| | **Re: D.I. 1038** |

## DECLARATION OF JENNIFER ROGERS

1.      My name is Jennifer Rogers. I have personal knowledge of the facts stated in this declaration, and I can testify competently to them if called upon to do so.

2.      In summation: In 2019 Jennifer rented with Hertz though State Farm in Knoxville, TN and stayed in contact with the location manager. At one point while Jennifer was in the hospital for a serious illness, she arranged for Hertz to tow the vehicle. Hertz never picked up the vehicle, and instead had her arrested without warning in Feb. 2020. She had seizures in jail, and was then shackled to a hospital bed for 9 days under armed guard, where she suffered a stroke. At a hearing to decide if she should be released, Hertz claimed in court that she was a danger to the community and kept her there for 2 additional days. Her husband confronted the Hertz manager and it turned out that she had been reported without Hertz even talking to the location manager, who knew she was not a car thief. Her case was dismissed in late 2020 after 10 months of baseless prosecution.

---

[1] The last four digits of the Hertz Corporation's tax identification number are 8568.  The location of the debtors' service address is 8501 Williams Road, Estero, Fl 33928.  Due to the large number of debtors in these chapter 11 cases, for which join administration for procedural purposes has been requested, a complete list of the debtors and the last four digits of their federal tax identification numbers is not provided herein.  A complete list of such information may be obtained on the website of the debtors' claims and noticing agent at https://restructing.primeclerk.com/hertz.

1

3.      Jennifer obtained a Hertz rental (a Chevy Equinox) through State Farm in July

2019 at the North 7 Oaks Drive location in Knoxville, TN. It was being direct billed to State

Farm. Jennifer was also a Hertz Gold Member, and had rented previously with the company.

4.      The Hertz manager, Kevin Baker, told her State Farm would cover 28 days.

Afterwards, she took over the rental and it was extended. She also followed up with Kevin

Baker, the Hertz manager, and left several voicemails about extending.

5.      On September 9, 2019, she was charged $1,648.71. Jennifer thought the rental

was continuing and that everything was fine. She never got any calls from Hertz or State Farm.

6.      In October/November, she was in the hospital with a serious illness. At this point

Jennifer got a call about the car from a Hertz investigator claiming the vehicle had to be returned.

Her husband gave Hertz the location so Hertz could pick up the car, since they were at the

hospital. Hertz responded that it would pick up the car the next day.

7.      Her husband called their neighbor to make sure that someone could open the

garage for Hertz to pick up the car. However, Hertz never came and picked up the car, nor did

Hertz follow up with them. At all points Hertz had her card.

8.      Then, without warning, Jennifer was arrested on February 10, 2020. Hertz had

never made any further attempts to contain Jennifer.

9.      Jennifer initially spent 4 days in jail and had three seizures. The jail did not

initially believe she was seriously ill, and thus kept her there until someone at the facility

realized that there was a serious problem.

10.     When she was finally taken to the hospital, her nightmare got worse. She was

there for 11 days and was shackled to the bed the entire time. While there, she had a stroke. She

was not allowed to leave the room, or participate in physical therapy.

11.     Incredibly, while she was in jail (around February 12, 2020), Hertz manager Kevin Baker called her husband and claimed that the car (which had just been towed back to Hertz) had a broken light (which broke while towing). After her husband grew extremely angry and explained why he was infuriated, Baker stated that he remembered Jennifer and had no idea she was reported for theft.

12.     Hertz had reported the car stolen without even checking with the manager of the location, despite having a duty to investigate and verify each theft report the company files.

13.     After 9 days in the hospital under guard there was a court hearing (which she did not attend).

14.     Hertz absurdly requested that she remain in custody as a threat to public safety, instead of releasing her on her own recognizance. As a result she was not released and kept under armed guard at the hospital. She was then sent back to the jail several days later, where she spent another day imprisoned.

15.     In total, she spent 16 days in custody. She was prosecuted until late 2020 when the case was dismissed.

16.     As a direct and proximate result of Hertz's conduct, Jennifer was falsely arrested and imprisoned for 16 days, suffered multiple untreated seizures, suffered a stroke, was falsely prosecuted, was subjected to extreme mental and emotional distress, and had her reputation destroyed.

17.     There was no probable cause for Hertz to report Jennifer for theft.

I declare under the penalty of perjury of the United States of America that the foregoing is true and correct.

Dated:  October  14 , 2021

/s/ _____
Jennifer

3

<table>
<tr><td colspan="2" align="center"><b>IN THE UNITED STATES BANKRUPTCY COURT<br>FOR THE DISTRICT OF DELAWARE</b></td></tr>
</table>

| | |
|---|---|
| In re | Chapter 11 |
| The Hertz Corporation, *et al.*,[1] | Case No. 20-11218 (MFW) |
| Debtors. | (Jointly Administered) |
| | **Re: D.I. 1038** |

### DECLARATION OF KATHLEEN SCOTT

1.      My name is Kathleen Scott. I have personal knowledge of the facts stated in this declaration, and I can testify competently to them if called upon to do so.

2.      Kathleen rented from the Dollar location at the Philadelphia Airport on March 4, 2020.

3.      She rented and extended every week on the corporate 1800 number.

4.      In June 2020, she was on vacation and got a call from the location about the rental. She told them she was on vacation and would address the rental when she got back in a few days.

5.      Then, the next day she got a threatening call from an investigator. Kathleen insisted that she had extended.

6.      Following the odd call from the investigator she then continued to extend and thought everything was fine. An automated Hertz number called her every few days and asked if

---

[1] The last four digits of the Hertz Corporation's tax identification number are 8568.  The location of the debtors' service address is 8501 Williams Road, Estero, Fl 33928.  Due to the large number of debtors in these chapter 11 cases, for which join administration for procedural purposes has been requested, a complete list of the debtors and the last four digits of their federal tax identification numbers is not provided herein.  A complete list of such information may be obtained on the website of the debtors' claims and noticing agent at https://restructing.primeclerk.com/hertz.

she wanted to extend, and she kept hitting the button on the phone for "extend rental."

7.      Kathleen had no idea that Hertz's computer systems were secretly deleting her rental extensions, and believed everything was fine because she had extended.

8.      Then in July 2020, $4,000 was taken from her account. She thought the rental was continuing.

9.      A few weeks later in August 2020, the car was pulled over and the officers started making accusations of car theft.

10.     At the time of the arrest, her friend Donald Peterson was the designated driver because she had had a few drinks.

11.     She was detained on the side of the road.  She had to wach as her friend Donald Peterson, who was doing her a favor by being the designated driver, was arrested, jailed, and the prosecuted. She was not taken to jail.

12.     However, she was terrified that a warrant was out for her arrest too.

13.     Tragically, as he was being prosecuted, Donald died in car accident in November 2020.

14.     As a direct and proximate result of Hertz's conduct, Kathleen was falsely reported to the police for theft, detained, and subjected to extreme mental and emotional distress.

15.     Hertz had no probable cause to report either Kathleen for theft or the car as stolen.

I declare under the penalty of perjury of the United States of America that the foregoing is true and correct.

Dated:  October ____17____, 2021         _/s/_ Kathleen Scott _____
                                        Declarant

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re | Chapter 11 |
| The Hertz Corporation, *et al.*,[1] | Case No. 20-11218 (MFW) |
| Debtors. | (Jointly Administered) |
| | **Re: D.I. 1038** |

**DECLARATION OF KIMBERLY LEVENE IN SUPPORT OF FALSE POLICE REPORT PLAINTIFFS' MOTION FOR RELIEF FROM STAY**

1.      My name is Kimberly Levene. I submit this Declaration in support of False Police Report Plaintiffs' Motion for Relief from Stay.  I have personal knowledge of the facts stated in this declaration, and I can testify competently to them if called upon to do so.

2.      Kimberly had an insurance rental with Hertz through State Farm in December 2018 after she was in an accident. The location was in Mobile, Alabama.

3.      State Farm called Hertz and told Hertz to pick her up from a Mercedes dealership. Her car was a total loss.

4.      She rented a Mustang convertible, for which her friend paid the deposit. She had the vehicle for three months.

5.      Kimberly and her friend kept in touch with Hertz.

6.      However, without notice or warning she found out in September 2019 that there was a warrant for her arrest. Kimberly was arrested, spent the night in jail, and was prosecuted

---

[1] The last four digits of the Hertz Corporation's tax identification number are 8568.  The location of the debtors' service address is 8501 Williams Road, Estero, Fl 33928.  Due to the large number of debtors in these chapter 11 cases, for which join administration for procedural purposes has been requested, a complete list of the debtors and the last four digits of their federal tax identification numbers is not provided herein.  A complete list of such information may be obtained on the website of the debtors' claims and noticing agent at https://restructing.primeclerk.com/hertz.

for theft of property.

7.      As a direct and proximate result of Hertz's conduct, Kimberely was falsely arrested and jailed for 2 days, was prosecuted, and has suffered extreme mental and emotional distress.

8.      Hertz had no probable cause to report Kimberly for theft.

I declare under the penalty of perjury of the United States of America that the foregoing is true and correct.


Dated:  September ____10/10/2021____,2021          /s/ _Kimberly Levene_____

                                                                              Declarant

2

<table>
<tr><td colspan="2" align="center"><strong>IN THE UNITED STATES BANKRUPTCY COURT<br>FOR THE DISTRICT OF DELAWARE</strong></td></tr>
</table>

| | |
|---|---|
| In re | Chapter 11 |
| The Hertz Corporation, *et al.*,[1] | Case No. 20-11218 (MFW) |
| Debtors. | (Jointly Administered) |
| | **Re: D.I. 1038** |

### DECLARATION OF MARSHALL ANTHONY BOURDIER

1.      My name is Marshall Anthony Bourdier.  I have personal knowledge of the facts stated in this declaration, and I can testify competently to them if called upon to do so.

2.      Marshall was in a wreck in 2012. Progressive rented him a car out of the New Orleans airport from Hertz, scheduled for May 4, 2012. The confirmation number was F4651824965.

3.      He then exchanged that car about a week into the rental. At all points he was authorized to have the rental.

4.      Out of the blue while he was driving around Baton Rogue he was pulled over and arrested for car theft.

5.      He spent two months in prison. He was told that if did not take a plea, he would spend many years more in prison.

6.      Ignorant of what Hertz was doing, and terrified of more jail time, he was forced to

---

[1] The last four digits of the Hertz Corporation's tax identification number are 8568.  The location of the debtors' service address is 8501 Williams Road, Estero, Fl 33928.  Due to the large number of debtors in these chapter 11 cases, for which join administration for procedural purposes has been requested, a complete list of the debtors and the last four digits of their federal tax identification numbers is not provided herein.  A complete list of such information may be obtained on the website of the debtors' claims and noticing agent at https://restructing.primeclerk.com/hertz.

take the plea.

7.      It was not until 2020 that Marshall learned that he was the victim of Hertz's false theft reporting practices and that there were many victims.

8.      As a direct and proximate result of Hertz's conduct, Marshall was falsely arrested and imprisoned for two months, prosecuted, convicted, and has been subjected to extreme mental and emotional distress.

9.      There was no probable cause for Hertz to report Marshall for theft.

I declare under the penalty of perjury of the United States of America that the foregoing is true and correct.

Dated:   October _____, 2021

_____
/s/
Declarant

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re | Chapter 11 |
| The Hertz Corporation, *et al.*,[1] | Case No. 20-11218 (MFW) |
| Debtors. | (Jointly Administered) |
| | **Re: D.I. 1038** |

**DECLARATION OF MELANIE MCDONALD IN SUPPORT OF FALSE POLICE REPORT**
**PLAINTIFFS' MOTION FOR RELIEF FROM STAY**

1. My name is Melanie McDonald. I submit this Declaration in support of False Police Report Plaintiffs' Motion for Relief from Stay. I have personal knowledge of the facts stated in this declaration, and I can testify competently to them if called upon to do so.

2. Melanie rented a car from Hertz's Westminster, MD location on January 25, 2020. It was a State Farm insurance rental.

3. She modified the reservation online, up through March 31, 2020 and got a Hertz gold club membership.

4. The insurance was supposed to cover the rental through March 26, 2020.  5. Then, without a phone call or any other contact from Hertz, it was recovered by the police and repo company the first week of April 2020.

6. She learned that, absurdly, grand theft auto charges had been filed against her, and that Hertz had reported the car stolen on February 4, 2020.

---

[1] The last four digits of the Hertz Corporation's tax identification number are 8568. The location of the debtors' service address is 8501 Williams Road, Estero, Fl 33928. Due to the large number of debtors in these chapter 11 cases, for which join administration for procedural purposes has been requested, a

complete list of the debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the debtors' claims and noticing agent at https://restructing.primeclerk.com/hertz.

1

7. She was completely baffled and confused how ***an insurance rental*** could lead to charges being filed against her.

8. Melanie had to turn herself in and is now being prosecuted.

9. As a direct and proximate result of Hertz's conduct, Melanie was falsely prosecuted and has been subjected to extreme mental and emotional distress, and has had his reputation destroyed.

10. There was no probable cause for Hertz to report Melanie for theft.   I declare under the penalty of perjury of the United States of America that the foregoing is true and correct.

Dated: March ___26___, 2021 */s/___Melanie R Shiller___*
                                        Declarant

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re | Chapter 11 |
| The Hertz Corporation, *et al.*,[1] | Case No. 20-11218 (MFW) |
| Debtors. | (Jointly Administered) |
| | **Re: D.I. 1038** |

### DECLARATION OF MICHAEL TOBIN

1.      My name is Michael Tobin. I have personal knowledge of the facts stated in this declaration, and I can testify competently to them if called upon to do so.

2.      Michael rented a Hertz vehicle from May 23, 2020 to May 26, 2020.

3.      He returned the vehicle after hours at the Hertz location he picked it up from.

4.      Thereafter, Michael was repeatedly harassed by email and by phone calls about a rental as if it wasn't returned—when in fact it was.

5.      He received multiple threatening calls stating that law enforcement action was being taken for his failure to return a rental vehicle (which he already returned). Michael is afraid that Hertz reported him for theft.

6.      As a direct and proximate result of Hertz's conduct, Michael was repeatedly harassed and threateded by Hertz that they were going to (and possibly have) wrongfully used law enforcement action. This harassment by Hertz and improper threat to use the police caused

---

[1] The last four digits of the Hertz Corporation's tax identification number are 8568.  The location of the debtors' service address is 8501 Williams Road, Estero, Fl 33928.  Due to the large number of debtors in these chapter 11 cases, for which join administration for procedural purposes has been requested, a complete list of the debtors and the last four digits of their federal tax identification numbers is not provided herein.  A complete list of such information may be obtained on the website of the debtors' claims and noticing agent at https://restructing.primeclerk.com/hertz.

extreme mental and emotional distress.

7.    There was no probable cause for Hertz to report Michael for theft, and no justification at for the company to behave this way given that the vehicle was returned at the appropriate date and time.

I declare under the penalty of perjury of the United States of America that the foregoing is true and correct.

Dated:   October   19th        , 2021                    /s/   _____

                                                                                                    Declarant

2

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re | Chapter 11 |
| The Hertz Corporation, *et al.*,[1] | Case No. 20-11218 (MFW) |
| Debtors. | (Jointly Administered) |
| | **Re: D.I. 1038** |

## DECLARATION OF MICHELLE LOWE

1.      My name is Michelle Lowe.  I have personal knowledge of the facts stated in this declaration, and I can testify competently to them if called upon to do so.

2.      Michelle was a returning Hertz customer.  She had spent approximately $5,000 over 5 to 6 months with the company.

3.      Each rental she made was from the Pensacola location, and was for 28 days. The location knew her, including an employee named Jeff.

4.      The rental at issue started on March 1, 2008. The rental was for 1 week, and she later extended via the corporate phone number.

5.      She then got a certified letter about 1 week later saying the car was stolen. She was confused. Then the police called her. She called the Pensacola location, and they said she owed $641.

6.      She immediately turned the car in and paid the balance. Hertz incorrectly billed

---

[1] The last four digits of the Hertz Corporation's tax identification number are 8568.  The location of the debtors' service address is 8501 Williams Road, Estero, Fl 33928.  Due to the large number of debtors in these chapter 11 cases, for which join administration for procedural purposes has been requested, a complete list of the debtors and the last four digits of their federal tax identification numbers is not provided herein.  A complete list of such information may be obtained on the website of the debtors' claims and noticing agent at https://restructing.primeclerk.com/hertz.

1

her twice, and then returned the $641 overbilling.

7.     However, she learned that Hertz had put a warrant out for her arrest. This was utterly baffling to her. She nonetheless turned herself in, and then bonded out.

8.     She was forced to take a plea deal which gave her 18 months probation. She however filed a motion to withdraw plea, which was denied.

9.     Michelle had no idea this was a larger problem until 2020, nor did she know that there were other victims. It is a shock to her many Hertz customers have been similarly mistreated over the past few decades.

10.     As a direct and proximate result of Hertz's conduct, Michelle was falsely arrested and imprisoned for 1 day, prosecuted, and has been subjected to extreme mental and emotional distress.

11.     There was no probable cause for Hertz to report Michelle for theft.

I declare under the penalty of perjury of the United States of America that the foregoing is true and correct.

Dated:   October   *18th* , 2021

/s/ *Michelle Rowe*
Declarant

2

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| In re | Chapter 11 |
|---|---|
| The Hertz Corporation, *et al.*,[1] | Case No. 20-11218 (MFW) |
| Debtors. | (Jointly Administered) |
| | Re: D.I. 1038 |

### DECLARATION OF NIESHA RUSH

1.      My name is Niesha Rush. I have personal knowledge of the facts stated in this declaration, and I can testify competently to them if called upon to do so.

2.      Niesha was twice arrested by Hertz for two different rentals.

3.      In or around 2016, Niesha rented from Hertz in Tallahassee, FL. The rental was for around two weeks, and then she extended twice on the 1800 number.

4.      She had the car about 1 month and 1 week, when she was arrested without warning. She was taken to the station and held overnight, until her family could come and get her.

5.      Bizarrely, she never heard anything further about that case.

6.      Figuring that this was just a bizarre error, and that a different location would have better customer service, Niesha then rented in or around 2018 from the Hertz location at the Atlanta, GA airport.

---

[1] The last four digits of the Hertz Corporation's tax identification number are 8568.  The location of the debtors' service address is 8501 Williams Road, Estero, Fl 33928.  Due to the large number of debtors in these chapter 11 cases, for which join administration for procedural purposes has been requested, a complete list of the debtors and the last four digits of their federal tax identification numbers is not provided herein.  A complete list of such information may be obtained on the website of the debtors' claims and noticing agent at https://restructing.primeclerk.com/hertz.

1

7.   This rental was for two weeks. Without warning, she was pulled over on the highway while her children were in the car.

8.   She was told by the police that the car was stolen. She could not believe this was happening again.

9.   Luckily, a lieutenant came to the scene and, seeing that she had children, let her go and did not take her to jail.

10.   She never heard anything further about the case.

11.   Hertz claimed that they did not have records of her rentals.

12.   To this day Niesha does not know what actually happened with either rental. Niesha had no idea why this happened to her until 2020.

13.   As a direct and proximate result of Hertz's conduct, multiple false police reports were filed, Niesha was twice arrested (once with her children present), Niesha was jailed, and she was subjected to extreme mental and emotional distress.

14.   There was no probable cause for Hertz to file a false police report that the car was stolen or accuse Niesha of theft.

I declare under the penalty of perjury of the United States of America that the foregoing is true and correct.

Dated:  October 12, 2021

/s/ _____
Declarant

<table>
<tr><td colspan="2" align="center"><strong>IN THE UNITED STATES BANKRUPTCY COURT<br>FOR THE DISTRICT OF DELAWARE</strong></td></tr>
</table>

| | |
|---|---|
| In re | Chapter 11 |
| The Hertz Corporation, *et al.*,[1] | Case No. 20-11218 (MFW) |
| Debtors. | (Jointly Administered) |
| | **Re: D.I. 1038** |

### DECLARATION OF RENITA YATES

1.      My name is Renita Yates. I am a competent adult over the age of 18 and have personal knowledge of the facts stated in this declaration and I can testify competently to them if called upon to do so:

2.      In summation: Renita rented a car from the Gary St. San Francisco, CA location in or around 2012-2013. She extended several times. She paid approximately $1,300. Without warning she was arrested at gunpoint and jailed in March 2013. Hertz had reported the car stolen. Renita was convicted, but the Superior Court reversed in 2014.

3.      Renita's car was stolen from her and so she began to rent with Hertz on or around December 30, 2012, at the Gary St., San Francisco, CA location. It was a black Chevy Impala, to her recollection. Her initial contact was employee Wilson La.

4.      She called the location and extended on January 4, 2013, and then several other times. Mr. La was not available, and she extended with Gerg Ordonez, the manager.

---

[1] The last four digits of the Hertz Corporation's tax identification number are 8568.  The location of the debtors' service address is 8501 Williams Road, Estero, Fl 33928.  Due to the large number of debtors in these chapter 11 cases, for which join administration for procedural purposes has been requested, a complete list of the debtors and the last four digits of their federal tax identification numbers is not provided herein.  A complete list of such information may be obtained on the website of the debtors' claims and noticing agent at https://restructing.primeclerk.com/hertz.

5.      During this time period, pending charges were appearing on her Visa Capital One Card. At one point a charge for around $1,300 was taken off her card.

6.      She had no idea anything was wrong. When she got notice about a parking ticket, she called Hertz and arranged for it to be paid. No one told her the rental was overdue, expired, or being reported for theft.

7.      Then, in March 2013, as she was driving with her niece to pick up her kids from daycare, she was pulled over. She was dragged out of the car and arrested at gunpoint in front of a high school for car theft. She was terrified and humiliated.

8.      She showed in her phone that Hertz has just billed her around $1,300. The police did not care. She is a law abiding citizen and could not believe this was happening.

9.      She was taken to jail and only released at 3:00 am the next day.

10.     Unbeknownst to her, the car had been reported stolen by Hertz. Hertz claimed that she had never extended the car, a completely false statement.

11.     Hertz never contacted her before filing the theft report. Hertz claimed that it sent her a letter telling her to return the car. However, despite having her full address, Hertz omitted her apartment number from the email and she never received it.

12.     Hertz told the authorities that it had no evidence of any extension or contact by Renita. Hertz did not disclose that its systems were deleting rental extensions and that the theft reports it makes to police do not reflect calls for extensions, and overall reflect just a fraction of the rental relationship.

13.     Hertz instead falsely claimed that its records are 100% accurate and complete.

14.     She was then prosecuted and underwent a trial for car theft. Based on Hertz's false evidence and dishonest statements, she was convicted.

15.     She then filed an appeal, and the Superior Court reversed her conviction on April 11, 2014. <u>See</u> APP-13-007626.

16.     The case then went back down for further proceedings.  Renita has been completely traumatized by these proceedings and does not recall what happened afterwards.

17.     As a direct and proximate result of Hertz's actions and omissions, Renita Yates was falsely reported for car theft, falsely arrested, falsely jailed, falsely and maliciously prosecuted for car theft, falsely convicted, was publicly humiliated and had her reputation destroyed, and has suffered extreme mental and emotional distress..

18.     Hertz had no probable cause to report or prosecute Moneck Wallace for any crime.

I declare under the penalty of perjury of the United States of America that the foregoing is true and correct.

Dated:   October _____20_____, 2021

/s/ _____
Declarant

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re | Chapter 11 |
| The Hertz Corporation, *et al.*,[1] | Case No. 20-11218 (MFW) |
| Debtors. | (Jointly Administered) |
| | **Re: D.I. 1038** |

## DECLARATION OF TANYSHA HARRIS

1.      My name is Tanysha Harris. I have personal knowledge of the facts stated in this declaration, and I can testify competently to them if called upon to do so.

2.      Tanysa was rented a car in 2017 by Progressive Insurance from Hertz after an accident. It was a white Kia.

3.      The Progressive representative said that Progressive was extending and paying. She was told that if she wanted it longer, then she would incur additional fees.

4.      Then, without warning, as Tanysha was at a nail salon, many police officers arrived with their guns out screaming "Get your f***ing hands up." The cops were screaming at her that she is a rental car thief. This was August 23, 2017.

5.      Tanysha was terrrifed, and then thrown in jail overnight. She was told she was charged with grand theft.

6.      Later, the District Attorney told her that Hertz had screwed up.

---

[1] The last four digits of the Hertz Corporation's tax identification number are 8568.  The location of the debtors' service address is 8501 Williams Road, Estero, Fl 33928.  Due to the large number of debtors in these chapter 11 cases, for which join administration for procedural purposes has been requested, a complete list of the debtors and the last four digits of their federal tax identification numbers is not provided herein.  A complete list of such information may be obtained on the website of the debtors' claims and noticing agent at https://restructing.primeclerk.com/hertz.

7.    As a direct and proximate result of Hertz's conduct, Tanysha was falsely arrested and jailed for 2 days, was prosecuted, and has suffered extreme mental and emotional distress. She has also had her ability to obtain adequate housing severely affected as a result of Hertz's false report.

8.    Hertz had no probable cause to report Tanysha for theft.

9.    Subseqeunt to this event, I was denied housing and employment by several parties, and have had no housing option other than a rooming house.  Said property is located in a high risk area, i.e.crime, high use of drugs and several pedifiles living in the immediate area.

10.    More importantly, I was sexually assaulted (rape) while living in this boarding home.

11.    Fulrthermore, my former boyfriend also broke into the room, physically assaulted me.  He was charged May 2, 2020, sentenced to a year in state prison.  (Jeffrey Grier)

I declare under the penalty of perjury of the United States of America that the foregoing is true and correct.

Dated:  October ___13___, 2021                    /s/ _Tanysha Nassi_____
                                                    Declarant

2

| | |
|---|---|
| **IN THE UNITED STATES BANKRUPTCY COURT** | |
| **FOR THE DISTRICT OF DELAWARE** | |

| | |
|---|---|
| In re | Chapter 11 |
| The Hertz Corporation, *et al.*,[1] | Case No. 20-11218 (MFW) |
| Debtors. | (Jointly Administered) |
| | **Re: D.I. 1038** |

### DECLARATION OF WENDY FENTON IN SUPPORT OF FALSE POLICE REPORT PLAINTIFFS' MOTION FOR RELIEF FROM STAY

1.        My name is Wendy Fenton. I submit this Declaration in support of False Police Report Plaintiffs' Motion for Relief from Stay. I have personal knowledge of the facts stated in this declaration, and I can testify competently to them if called upon to do so.

2.        Wendy was a longtime Hertz renter who was twice falsely accused by Hertz of stealing a rental car. Wendy was a preferred member and before these incidents was always treated as a highly valued customer. When she rented she always provided valid ID, card information, and contact information.

3.        The first false accusation was in June 2011. Wendy was renting a car from the Hertz location at the Denver International Airport, and a police officer randomly ran the plates on the rental car she was in. The officer then immediately placed in her handcuffs and arrested her in front of her two children, who were crying and distraught.

4.        He told her that the car was reported stolen. She was shocked and told him that it

---

[1] The last four digits of the Hertz Corporation's tax identification number are 8568.  The location of the debtors' service address is 8501 Williams Road, Estero, Fl 33928.  Due to the large number of debtors in these chapter 11 cases, for which join administration for procedural purposes has been requested, a complete list of the debtors and the last four digits of their federal tax identification numbers is not provided herein.  A complete list of such information may be obtained on the website of the debtors' claims and noticing agent at https://restructing.primeclerk.com/hertz.

was as rental and showed him the agreement. He said it was out of his hands and took her to jail.

5.      While she was in jail, Hertz was contacted. Hertz admitted a mistake had been made, she was released, and the case was dismissed. She assumed that this was just some sort of miscommunication.

6.      As a longtime and valued Hertz customer, she therefore rented another vehicle from Hertz but this time from the corporate location in downtown Denver. There were no issues when she rented the car, and Hertz charged her for the rental.

7.      The second time she was falsely arrested and jailed by Hertzs was in August 2011.

8.      On August 14, 2011, she was in a hotel and called police to report an assault. When they arrived, they took her identification and then arrested her, claiming that there was a felony warrant for her out of Denver for theft of rental property. The police did not know what it concerned, and at this time Wendy did not connect the situation to Hertz. She was arrested in front of her son and daughter, and her granddaugthers.

9.      She was booked and spent the night in jail.

10.      Then later in August 2011 a court hearing took place where she learned for the first time that it was Hertz who had filed theft charges against her. Wendy and her attorney tried to explain that it was a misunderstanding and that she was a longtime customer. Nevertheless, a another court date was set.

11.      Then, 1 year later, the prosecutors came forward with a plea deal. She was threatened with significant jail time and told that she had to take a plea so that she would spend "only" 30 to 60 days in jail. Wendy was in disbelief, but felt forced to take the plea deal.

12.      She ultimately spent 30 days in prison and now has a criminal record.

13.     It was not until 2020 that Wendy learned that what happened to her was caused by errors and mismanagement within Hertz. At this time she also learned that Hertz had done this to many customers across the nation.

14.     As a direct and proximate result of Hertz's conduct, Wendy was falsely arrested and jailed for a total of around 35 days, prosecuted, forced to plead, had to unjustly pay restitution, was put on probation, and has been subjected to extreme mental and emotional distress.

15.     Hertz had no probable cause to report Wendy for theft either time.

I declare under the penalty of perjury of the United States of America that the foregoing is true and correct.

Dated:   March _____, 2021
              02

/s/ _____
                    Declarant

# ATTACHMENT AM

## DECLARATION OF BREANNA ONEAL

1.      My name is Breanna Oneal.  I have personal knowledge of the facts stated in this declaration, and I can testify competently to them if called upon to do so.

2.      In summation: Breanna rented a car from Hertz in Reno, NV for 3 months. She paid $3,518.18 for the rental. Hertz filed a false police report which falsely stated that she had not paid and omitted the $3,518.18 payment. As a result, she was arrested, held overnight in jail, and is being prosecuted to this day.

3.      Breanna rented a car from the Hertz Reno, NV airport location on December 19, 2020.

4.      She had the car a total of 3 months. Hertz had her phone number and her bank card.

5.      During the rental, she only received a single confusing and unprofessional voicemail telling her to return a rental vehicle at some point in February. She assumed this was spam.

6.      On March 26, 2021, Hertz charged her $3,518.18 for the rental. She believed that everything was fine.

7.      However, she was arrested on April 10, 2021, when she pulled over after another car hit her and police were called.

8.      She was held overnight in the jail and is now being prosecuted for theft and embezzlement.

9.      Unknown to Breanna, Hertz had filed a false police report claiming that Breanna did not pay for the rental. This false theft report omitted her $4,000 payment. Furthermore, Hertz made minimal and entirely deficient attempts to contact Breanna before reporting her for car theft. This was not a car theft; it was a normal rental.

10.    As a direct and proximate result of Hertz's conduct, Breanna has been falsely arrested, jailed, prosecuted, and has been mentally and emotionally harmed.

11.    There was no probable cause for Hertz to report Breanna for any crime.

I declare under the penalty of perjury of the United States of America that the foregoing is true and correct.

Dated:  May _____, 2021

_____
Declarant

2

### DECLARATION OF CHARLES LEE BORT AND KWAI YEE CHAN

1.      Our names are Charles Lee Bort and Kwai Yee Chan, husband and wife.  We have personal knowledge of the facts stated in this declaration, and can testify competently to them if called upon to do so.

2.      In summation: Charles is an Uber driver who rented a car from Hertz in January 2020 through Uber, in Los Angeles, CA. Charles was a returning customer, and had stellar ratings from Uber. Then, on April 21, 2020, without any warning, Hertz had him and his wife baselessly arrested, jailed, and prosecuted until April 21, 2021 (the charges were dropped). He and his wife never received any notice of this bankruptcy

3.      Charles first rented from Hertz through Lyft for 8 months in 2018 and 2019 and had no issues.

4.      Then in late January 2020, Charles rented from Hertz through Uber. Similar to the 2018 rental with Lyft, he and his wife could see Hertz hitting the card each week for the rental (Hertz had charged his wife's card).

5.      During that time period, Uber renewed and extended the car's registration, and also fixed a problem with the car's tire. His customer ratings during that time were great. The rental was progressing as normal.

6.      Then, he and his wife were surprised when Hertz charged her card for $3,048 on April 21, 2020. They had barely any time to process what was happening.

7.      To their utter shock, at around the same time on April 21, they were pulled over in the car and 12 police officers held them both at gun point. They accused Charles and Kwai Yee of stealing the car.

8.      He and his wife feared for their lives. They were both handcuffed and placed in the

1

back of ^ squad cars.It was utterly humiliating and painful.
    ^ separate

9.      His wife was not taken to jail, but abandoned and left to fend for herself.

10.     Charles was taken to jail and processed for seven   hours, charged with
                                                        ^ and a half
embezzlement and theft, and then released.

11.     It appears that Hertz did not list his rental as an Uber contract, did not contact Uber

before arresting him, did not contact Charles before arresting him, did not try to repossess the

vehicle, performed little to no investigation, and falsely told the police that he had not paid for the

vehicle.

12.     Charles has a spotless record and could hardly believe what was happening. He was

then prosecuted until April 21, 2021 when the charges were dismissed.

13.     As a direct and proximate result of Hertz's conduct, Charles and Kwai Yee were

falsely arrested, Charles was jailed and falsely prosecuted, and they were both mentally and

emotionally devastated.

14.     There was no probable cause for Hertz to report Charles for any crime.

I declare under the penalty of perjury of the United States of America that the foregoing

is true and correct.

Dated:   __June 1st_____, 2021        /s/  _Charles Lee Bott_____

                                           Declarant



Dated:   __June 1st_____, 2021        /s/  _____

                                           Declarant

2

## DECLARATION OF HEATHER KASDAN

1.      My name is Heather Kasdan.  I have personal knowledge of the facts stated in this declaration, and I can testify competently to them if called upon to do so.

2.      In sum: Heather rented a car for 1 day in July 2019 and was rear ended that same day. Hertz was immediately notified and the car was supposed to be towed. Hertz then failed to recover the car, improperly charged her nearly $4,000, and falsely told the police she never returned the car and was guilty of car theft (she only found out about the theft report much later).

3.      Heather rented a car from Buffalo, NY airport on July 7, 2019, and paid for insurance. It was a 1-day rental.

4.      That same day, Heather was rear ended by another driver in Stroudsburg, PA, *en route* to her destination. The police were called, and Hertz was notified. Hertz Roadside said that they would tow the car.

5.      An incident report was submitted to Hertz on July 8, 2019, and labeled as Hertz Incident Report #0190203582.

6.      Heather never saw the car again.

7.      Then on August 29, 2019 she received a threatening, poorly written text message stating: "Auto theft task force investigator green at 972-532-6307 Warrant may be issued for Heather Kasdan for felony theft. Call me to resolve and return the rental vehicle."

8.      The same day she received a letter from Hertz also telling her that Hertz was going to report her for car theft unless she returned the vehicle.

9.      Upset and very confused, she immediately called Hertz on August 29, 2020, and spoke with a Josh, then a Sophia. Sophia told Heather, incredibly, that the rental was still open. Heather informed her what happened, and asked how that could be possible. Sophia had no

1

answers.

10.     When Sophia was quizzed about the threatening text message, she told Heather that this was not her normal department and that Hertz does not have an "auto theft task force."

11.     Sophia then transferred her to Wanda in vehicle control. The situation was explained to Wanda, and Wanda abruptly hung up on Heather stating: this "has gone way beyond me."

12.     Following Wanda's refusal to address Hertz's conduct, Heather called 1-800-582-7499 and spoke with Sheryl in the insurance replacement department. Sheryl told her she needed the claims management department. However, Sheryl sent her to Notice of Loss Department. The rep there, Casper, says she has the wrong department. Heather was getting the runaround.

13.     Heather was then transferred to Victoria Rodgers, who was handling her case in the claims department. A woman named Brittany was also on the call. Heather again explained that she did not have the car and that Hertz Roadside said they were towing it on July 7, 2019.

14.     At this point, Victoria and Brittany admitted that Hertz was unable to find the car.

15.     Heather then emailed customersrelations@hertz.com for answers: "Your company, Hertz, are the ones who set up and towed the vehicle. Why are you contacting me in regard to where it is?" She was never contacted back. She also tried to reach vehicle control again, but was unsuccessful. This email is attached to this declaration.

16.     On September 12, 2019, she saw that Hertz had egregiously overcharged her Amex card $3,932.03, whereas her actual bill should have been $188.67.

17.     She disputed this charge with Amex, then called Hertz again and spoke with Emily in Vehicle Control. Emily stated that Hertz had no roadside assistance call on file, despite the fact that Heather had spent an hour and half on the phone with Hertz Roadside.

18.     Emily then said that she could see in Hertz's system that the car was supposed to be towed by AAA, but that Hertz stopped that towing. Heather asked Emily how Hertz knew they had to tow the car if, as Emily said, no one had called Hertz (although Heather had actually spent over 1 hour on the phone with Hertz the day of the accident). Emily did not have a response. Emily then confusingly said that another towing service had been contacted to replace AAA, but when called, the service claimed to have never been contacted about the car. Essentially, Hertz's records were a mess, but at a minimum showed that Hertz knew about the accident and also knew that Heather did not have the car.

19.     Emily did confirm that the threatening text messages were from Hertz, and assured Heather that she would put a stop to them and that she would put everything into a file about what had happened so there was no further confusion.

20.     ***Unknown to Heather, Hertz filed a false police report on October 7, 2019, accusing her of car theft.*** Hertz ridiculously claimed that she had rented the car on July 7, 2019 and never returned it. The theft report also falsely omitted t***hat Heather had been charged $3,932.03 one month earlier.***

21.     Hertz's records submitted with the theft report contained none of Heather's extensive contacts with Hertz, including with Hertz Roadside, customer service, claims, vehicle control, nor any other department. Instead, the records falsely speculated that after the accident and the vehicle being impounded, that the vehicle had been released back to Heather. This was nonsensical, false, and directly contradicted by Heather multiple times in August and September 2019. None of Heather's multiple phone calls and emails were included.

22.     Again, Heather had no idea this outrageous report was filed at this time; in fact, she had been told by Emily that everything had been taken care of regarding the threatening messages

3

Heather had received and that she was not being accused of car theft.

23.    In November 2019, Amex then closed the dispute in Hertz's favor. Upon asking Amex why, Amex said Hertz had provided a bill—a bill which falsely charged her for having the car for 20 days!

24.    On November 19, 2019, she then spoke with Hertz again, both billing and roadside service (Henry and Nicholas in billing, Wami in Roadside Service). They knew nothing. She was then transferred to a supervisor named Tevon. Tevon assured her she was getting her money back in 5 to 7 days. No one told her a police report had been filed. On December 11, 2020, she called asking for a status update as Hertz had never refunded her. She was told by a female rep named Alex that she would not be provided a status update on the refund and that all Heather could do was send an email.

25.    On February 25, 2020, she spoke with Gerson in billing regarding her dispute. He said that his notes state she is not due an adjustment because the car was not returned until July 27, 2019. When she informed him that Hertz was supposed to tow on July 7, 2019, and that she had purchased insurance, he nonsensically stated: "the customer is responsible for all charges."

26.    Unable to tell her anything, Gerson then transferred her to Hya in the claims department. Heather demanded: "*I want for you to email me where in the terms and conditions that says that I am responsible for $4000 bill when I rented a car for one day with your loss and damage insurance*."

27.    Instead of answering, Hya tried to transfer her to billing, which Heather said was unacceptable and that she had just spoke with billing. Hya then put her on hold while Hya said she was speaking with customer service. However, instead of doing this, Hya transferred Heather back to billing without notice or permission.

4

28.    Heather never received any notice from Hertz about the bankruptcy. It was not until late November 2020 that she ever even learned Hertz had filed a police report against her.

29.    She is terrified that that she will be arrested and prosecuted based because of Hertz's outrageous conduct.

30.    Heather, tried to dispute the bill with Amex multiple times, but was unsuccessful.

31.    As a direct and proximate result of Hertz's conduct, Heather has had a false police report filed against her, she has been placed in fear of arrest and prosecution, she has been mentally and emotionally harmed, and she has been overcharged nearly $4,000.

32.    There was no probable cause for Hertz to report Heather for theft.

I declare under the penalty of perjury of the United States of America that the foregoing is true and correct.

Dated:  May ⟨20⟩ , 2021

/s/ Heather Kasda
Declarant

<table>
<tr><td colspan="2" align="center"><strong>IN THE UNITED STATES BANKRUPTCY COURT<br>FOR THE DISTRICT OF DELAWARE</strong></td></tr>
</table>

| | |
|---|---|
| In re | Chapter 11 |
| The Hertz Corporation, *et al.*,[1] | Case No. 20-11218 (MFW) |
| Debtors. | (Jointly Administered) |
| | **Re: D.I. 1038** |

### DECLARATION OF HOLLY HARRIS

1.    My name is Holly Ann Harris. I am a competent adult over the age of 18 and have personal knowledge of the facts stated in this declaration and I can testify competently to them if called upon to do so:

2.    In summation: Holly rented a car on October 18, 2018 from the Cape Coral, FL location on Del Prado Blvd. She was a Gold Member and returning renter. Hertz had her debit card on file and she regularly extended. She returned the car late in December 2018. Then, when she called the police for an unrelated matter on May 27, 2019, they showed up to her house and, to her shock, arrested her in front of her kids. She spent 30 hours in jail and prison and was then prosecuted for several months. Terrified, and unaware what Hertz was doing, she took a plea deal and is now still on probation. She had no idea what Hertz was doing, and that the company was in bankruptcy, until 2021. Hertz never provided her notice regarding the bankruptcy.

---

[1] The last four digits of the Hertz Corporation's tax identification number are 8568.  The location of the debtors' service address is 8501 Williams Road, Estero, Fl 33928.  Due to the large number of debtors in these chapter 11 cases, for which join administration for procedural purposes has been requested, a complete list of the debtors and the last four digits of their federal tax identification numbers is not provided herein.  A complete list of such information may be obtained on the website of the debtors' claims and noticing agent at https://restructing.primeclerk.com/hertz.

3.      Holly was a Gold Member and regularly rented with Hertz. She rented a Toyota Rav4 (FL plate BNUY83) from Hertz on October 16, 2018, from the Del Prado location in Cape Coral, FL.

4.      She regularly extended with the location and was well known there.

5.      On or around December 28 or 29, 2018, she returned the car after hours and put the key in the drop box at the Del Prado location. Hertz's invoice showed the car was returned on January 3, 2019.

6.      Unknown to Holly, Hertz reported her for car theft on January 18, 2019. A Hertz employee named Dianne Izquierdo told Officer Colgan from the Cape Coral Police that she had been directed by Hertz Vehicle Control to report the car stolen.

7.      Hertz falsely told Colgan that the car was due December 18, 2018, and that it had never been returned. Hertz also falsely told Colgan it had tried to contact Harris starting on December 28, 2018, to tell her to return the car but that she had not responded.

8.      None of this was true. Holly had not only extended the car, but she had returned it. Furthermore, Holly received no contact from Hertz at all.

9.      Hertz told the police that it had a sent a letter to Holly, but sent it to an old address in Sarasota. Hertz had her new address, and had even driven her to her house on prior occasions.

10.     The police report did not inform the police that Hertz was going to charge her card for the rental.

11.     Again, Holly did not know any of this was happening.

12.     She was billed $3,989.03 on January 23, 2021, and much more at other times. Hertz never told the police about this billing. Hertz also never told the police they found the returned car.

2

13.     Unknown to Holly, charges were filed on February 21, 2019, for failure to return a rental vehicle.

14.     On May 27, 2019, Holly called police on an unrelated matter. When the police arrived at her house, they told her there was a warrant for her arrest. She told them that was not possible. They assured her it was, placed her in cuffs in front of her kids, and hauled her off to jail.

15.     She spent 24 hours in jail and was then transferred to a big prison for part of another day. She was dressed in the orange jumpsuit and shackled in the transport van.

16.     She was then prosecuted for months and threatened with extensive jail time.

17.     Terrified, and not knowing how to fight back against a huge corporation everyone believed, she pled to the charge and was put on probation in September 2019. She remains on probation to this day.

18.     Holly had no knowledge until 2021 what had happened to her and what Hertz was doing. Holly did not know about the bankruptcy until 2021 and Hertz never provided her notice about the bankruptcy.

19.     As a direct and proximate result of Hertz's actions and omissions, Holly was falsely arrested, falsely jailed for around 30 hours, falsely and maliciously prosecuted, had to pay a private attorney, had to pay court costs, was overcharged for the rental, had her reputation destroyed, and suffered extreme mental and emotional distress.

20.     Hertz had no probable cause to report or prosecute Holly Harris for any crime.

I declare under the penalty of perjury of the United States of America that the foregoing is true and correct.

Dated:   October ___/ 9___, 2021          /s/ _____
                                          Declarant

3

## DECLARATION OF JESSICA MALONE

1.      My name is Jessica Malone.  I have personal knowledge of the facts stated in this declaration, and I can testify competently to them if called upon to do so.

2.      In summation: Jessica rented a car from the Longview, TX location in February 2017, and extended repeatedly. During the rental, after getting a flat around early April, she and her boyfriend Jason Cook took the vehicle to a Ft. Smith, AR location. That location said they were actually a franchise and that it could not be returned there. The franchise called Hertz at Longview, TX and Longview said to return the car to Longview. No one said a word about the car being stolen, or that anything else was wrong. Malone agreed to return it to Longview, but made it clear while the franchise was on the phone with Hertz Longview that she had to drop Jason off in Branson, MO on her way to Longview. There was no issue. Jessica and Jason never made it to Branson. They were pulled over in April 2017 in Madison County, AR and were arrested for car theft. Jason spent 11 days in jail, and Jessica spent 13. They refused to take a plea deal and the charges were dismissed in March 2018.

3.      Jessica rented a car from Hertz in February 2017 from the Longview, TX. She provided a debit card, as did her boyfriend Jason Cook.

4.      Jessica called the location to extend, usually for around 1 week. She also remembers calling the corporate 1800 number. When she would ask about the status of the rental when she called to extend, since she had the car for over 1 month, she was assured by Hertz that the rental was okay and valid.

5.      While in Arkansas in or around early April, the rental got a flat tire and they put the spare donut tire on. They called a corporate 1800 number to ask what to do; Hertz who told them that they needed to return it to Longview, TX, which was a 5 hour drive away. No one at corporate

1

told them that the car was being reported stolen or they were going to be arrested.

6.      Not wanting to drive that long on the donut spare, they took the car to the Ft. Smith, AR Airport location and tried to return it there.

7.      They were informed by the Ft. Smith location that it was an independently owned franchise and that it could not be returned there. The franchise management called Longview, and Longview told the franchise and Jessica that Jessica had to drive the car to Longview.

8.      Jessica made it clear on that phone call that she would take the car to Longview, but needed to drop Jason off in Branson, MO first. Neither Hertz Longview nor Hertz Ft. Smith had a problem with this.

9.      While driving to Branson, Jessica and Jason were pulled over and felony arrested for car theft on or around April 6, 2017. At around that time Jason's card was charged $1,200, and Jessica's was charged $3,000.

10.     Hertz falsely told the police that the rental was not extended and not paid for, and failed to tell police about the extensive contact Jessica and Jason had with Hertz over the course of the rental, including the arrangement made at Ft. Smith with the Longview location to return the vehicle to Longview.

11.     Jason was jailed for around 11 days. When he was able to pay bail of $500, he was released. He was then able to get Jessica out of jail around two days later. Jessica spent around 13 days in jail.

12.     Jessica's belongings in the car, worth several thousand dollars, were all lost when the car was impounded. She tried to find her things after being released, but could not do so.

13.     She called Hertz local and corporate repeatedly, demanding to know what happened. No one could explain what happened and they hung up on her.

14.     Jessica and Jason were then prosecuted in Madison County, AR for approximately one year. Jessica's case no. was 44CR-17-58. Jason's case number was 44CR-17-57.

15.     Jessica was pressured to turn on Jason and falsely implicate him as the ringleader of a scheme to steal the rental car. She refused as this was completely untrue. The pressure, however, was enormous.

16.     The entire matter was bizarre as they had been extending the vehicle, been in touch with Hertz who never told them about any car theft, and even tried to return the vehicle at a Hertz location just a few days before being arrested.

17.     Hertz never came to Court in either of their cases.

18.     The theft charges were dismissed in February 2018 for Jason and March 2018 for Jessica.

19.     Jessica had no idea what had happened, and why she had been reported for car theft, until June 8, 2021 when she read an article about Hertz filing false theft reports. https://katv.com/community/7-on-your-side/hertz-reportedly-still-wrongfully-accusing-customers-of-stealing-rental-cars-attorney-says. She immediately recognized that the same thing had happened to her. Jessica then let Jason know late on the evening of June 8, 2021.

20.     Until reading that article Jessica had no idea that Hertz had filed for bankruptcy, nor did she know what that meant. Hertz never provided Jessica any notice of the bankruptcy or her potential claims.

21.     As a direct and proximate result of Hertz's conduct, Jessica was falsely arrested, jailed for 13 days, and prosecuted for 1 year. She lost thousands of dollars in personal belongings, and she has suffered extreme and severe mental and emotional distress.

22.     There was no probable cause for Hertz to accuse Jessica of theft or report her for any crime.

I declare under the penalty of perjury of the United States of America that the foregoing is true and correct.

Dated:  October _____, 2021                        /s/ _____
                                                                          Declarant

20.    Until reading that article Jessica had no idea that Hertz had filed for bankruptcy, nor did she know what that meant. Hertz never provided Jessica any notice of the bankruptcy or her potential claims.

21.    As a direct and proximate result of Hertz's conduct, Jessica was falsely arrested, jailed for 13 days, and prosecuted for 1 year. She lost thousands of dollars in personal belongings, and she has suffered extreme and severe mental and emotional distress.

3

22.    There was no probable cause for Hertz to accuse Jessica of theft or report her for any crime.

I declare under the penalty of perjury of the United States of America that the foregoing is true and correct.

Dated:  October _11_, 2021                    /s/ JessicaMalone

                                                        Declarant

## DECLARATION OF KIMBERLI COSTABILE

1.      My name is Kimberli Costabile.  I have personal knowledge of the facts stated in this declaration, and I can testify competently to them if called upon to do so.

2.      Kimberli rented a car through State Farm from Hertz in Fairfax, VA in February 2020.

3.      After two weeks she assumed the rental and started making the payments. She needed the car to start a new job in Delaware.

4.      She routinely extended the rental and was otherwise authorized to have it.

5.      However, she started receiving harassing and threatening messages saying she stole the rental car She was baffled. She called the Fairfax location where the employees knew her, and also spoke with a manager named Justin.

6.      The local branch said to ignore the threatening messages, that her rental was valid, that corporate had bad systems, and that she was good to go.

7.      However, when Kimberli spoke with corporate, they insisted that the local branch was wrong and the car was stolen. This course of harassment and threats, because Hertz could not communicate internally nor track her rental appropriately, caused mental and emotional stress.

8.      Confused, but desperate to avoid being arrested, she returned the car on March 5, 2020. To do this, she had to take two days off from work.

9.      Because this was a new job, and she was on a probationary period, this reflected very poorly on her. Furthermore, the job viewed her as a possible car thief as they were aware of why Kimberli had to return the car back to Virginia. Even worse, after returning the rental car, she did not have reliable transportation, which did nothing to convince her new job that she was

1

a good employee. Not only was reliable transportation needed to get to work on-time but using the car to run work-related errands for mailings, meetings, event planning, and outreach was required.

10.    Kimberli was in fact let go and the main problem with the relationship was because of Hertz's conduct.

11.    As a direct and proximate result of Hertz's conduct, Kimberli was harassed, mentally and emotionally harmed, and lost her job.

I declare under the penalty of perjury of the United States of America that the foregoing is true and correct.

Dated:  October ___//___, 2021                    /s/  _Kimberli A. Costabile_
                                                                          Declarant

2

## DECLARATION OF LATESHIA JENKINS

1.     My name is Lateshia Jenkins. I have personal knowledge of the facts stated in this declaration, and I can testify competently to them if called upon to do so.

2.     In summation: Lateshia rented a vehicle from Hertz at Seattle Tacoma International Airport in 2005. She had the vehicle for 3 weeks and then returned it. She later moved to California. Unknown to her, Hertz had falsely reported her for car theft, which she only discovered in 2006. It is now 16 years later and Hertz still has an active warrant on her for felony grand theft auto.

3.     Lateshia rented a vehicle from Hertz at Seattle Tacoma International Airport in 2005.

4.     She had the car for a total of 3 weeks, and extended the rental. After she got a threatening phone call stating that she had to return the rental, she immediately returned the vehicle.

5.     She then relocated to California. In 2006, she was pulled over for a traffic violation. The police officer told her that there was a warrant for felony grand theft auto out of Washington state for her arrest. She was shocked and had not thought about her brief car rental for three years.

6.     The officer, however, said that California would not extradite her to Washington and therefore did not arrest her.

7.     Lateshia has never been arrested regarding the Hertz rental as of the date of this declaration in May 2021. The false theft report and warrant are still pending in Washington state.

9.      For instance, she tried to apply for a job with Uber in or around 2010; she was rejected due to the pending felony. This pending charge essentially means that she cannot change jobs or advance her career.

10.      Furthermore, she has twice applied for a passport. Both times the Department of Justice rejected her applications because of the pending felonies.

11.      This false police report and prosecution, for a car she returned, has damaged her life for the last 16 years.

12.      As a direct and proximate result of Hertz's conduct, Lateshia had a false police report filed against her, she was been prosecuted for 16 years, she has been denied jobs, she cannot advance her career, she cannot get a passport, and she has been mentally and emotionally harmed.

13.      There was no probable cause for Hertz to report Lateshia for any crime at any point in time.

I declare under the penalty of perjury of the United States of America that the foregoing is true and correct.

Dated: May ___25___, 2021

/s/ _____
Declarant

## DECLARATION OF MARISSA WHITE

1. My name is Marissa White.  I have personal knowledge of the facts stated in this declaration, and I can testify competently to them if called upon to do so.

2. In summation: Marissa was a Lyft Express driver who rented from Hertz through Lyft in San Diego on 2/8/2019. Marissa was at all points in contact with Lyft and was never contacted about any issue with the rental. Several months into the rental, on March 27, 2019, she was arrested without warning by police with guns drawn for stealing a car. She has no record and was hysterical and terrified. When taken to jail, her blood pressure skyrocketed and she was rushed to the ER by ambulance. Her children were home alone. At that point she was let go from the hospital, but is now being prosecuted for car theft.

3. Marissa rented through Lyft Express with Hertz in San Diego on 2/8/2019. She was in contact with Lyft and Lyft told her that her rental would start auto-renewing every week starting on Feb. 15, 2019.

4. The most recent weekly payment made for the rental was $69.60 on or around March 24, 2019, from Lyft to Hertz.

5. On the morning of March 27, 2019, she was driving in Apple Valley (San Bernardino County) and a Sheriff's Office vehicle put its lights on behind her.

6. She was confused, as she had obeyed all the traffic laws. Once she pulled over, to her shock, the sheriff's deputy and an undercover code enforcement officer pulled guns out and ordered her to put her hands out the window and exit the car. Approximately six police cars almost immediately arrived. It was a full blown felony stop.

7. She was placed under arrest and told she had stolen the vehicle. She pled with the officers that it was a Lyft Express rental and that this was some sort of horrible mistake. She showed them that she had just gotten a deposit from Lyft and the weekly rental rate was paid. It did not matter.

8. As she was being taken to jail in the car she almost passed out. At the jail, she was hyperventilating. She has a clean record. A nurse took her blood pressure and it was 212/176. An ambulance was immediately called and she was rushed to Victor Valley Hospital.

9. She was then released from the hospital by the police, but is still being prosecuted for grand theft to this day.

10. The accusation is completely bogus. In the first place, why would a Lyft driver be stealing a car? It makes no sense.

11. To make matters worse, Hertz never even contacted Lyft and she was unware there was even a problem. How could a theft report be filed against her without Lyft even being contacted about one of its drivers?

12. Marissa's entire life has been destroyed because of this ridiculous and false theft report. Marissa complained to Lyft about what Hertz had done, but Hertz never withdrew the false theft report.

13. Since the false report, Hertz has been threatening Marissa claiming she owes $1,686.25, and has sent collection agencies after her. This, too, makes no sense, because a Hertz invoice states that she owed $0.00.

14. COUNT I, for embezzlement and grand theft, alleges that Marissa committed a felony by removing, concealing, or disposing of the rental, intending to injure or defraud Hertz. Not only was she a Lyft driver who obviously had no intent whatsoever to defraud Hertz, but the car was always parked in her driveway at the residence Hertz had on file. Hertz never tried to retrieve or locate the vehicle, even though the car has GPS, before falsely reporting it stolen. In no way did Marissa conceal, dispose, or remove the vehicle.

15. Despite Hertz knowing that she was falsely accused, Hertz never provided notice to Marissa of the bankruptcy. Marissa did not learn about Hertz's false theft reporting problems, nor of the bankruptcy, until 2021.

16. As a direct and proximate result of Hertz's conduct, Marissa was falsely arrested at gun point, jailed, hospitalized as a result of the arrest and jailing, and is currently being prosecuted. Her reputation has been destroyed, she has had to spend money on a criminal defense attorney, and has suffered extreme and severe mental and emotional distress.

17. There was no probable cause for Hertz to accuse Marissa or have her prosecuted for any crime.

I declare under the penalty of perjury of the United States of America that the foregoing is true and correct.

Dated: October __14 th__, 2021                    /s/ Marissa White

                                                  Declarant

3

| IN THE UNITED STATES BANKRUPTCY COURT<br>FOR THE DISTRICT OF DELAWARE | |
| --- | --- |
| In re<br><br>The Hertz Corporation, *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 20-11218 (MFW)<br><br>(Jointly Administered)<br><br>**Re: D.I. 1038** |

### DECLARATION OF MONECK WALLACE

1.      My name is Moneck Wallace. I am a competent adult over the age of 18 and have personal knowledge of the facts stated in this declaration and I can testify competently to them if called upon to do so:

2.      In summation: Moneck rented a car from Hertz in March 2011 for two weeks. She returned the car 1 day early. When she called the next day to get the extra day taken off, Hertz told her the car was not returned. She asked for the manager to call her, and when he did not, she assumed Hertz had found the car. Several years later she opened her mail and was shocked to learn that there was a warrant for her arrest. She appeared in court 4 times during her prosecution, being humiliated and treated as a thief. After Hertz repeatedly did not show up, the case was thrown out.

3.      Moneck Wallace is a citizen of New Jersey and was prosecuted in Burlington County, NJ. She is a mother of 5 and a former detention officer.

---

[1] The last four digits of the Hertz Corporation's tax identification number are 8568.  The location of the debtors' service address is 8501 Williams Road, Estero, Fl 33928.  Due to the large number of debtors in these chapter 11 cases, for which join administration for procedural purposes has been requested, a complete list of the debtors and the last four digits of their federal tax identification numbers is not provided herein.  A complete list of such information may be obtained on the website of the debtors' claims and noticing agent at https://restructing.primeclerk.com/hertz.

4.      In March 2011, she rented a car from the Hertz location on Route 38, in Lumberton, NJ, near Mt. Holly. She reserved a car with the corporate number for 1 week initially. She then called the location and extended it for 1 more week.

5.      A day and a half before the end of the rental, she returned the car to the Hertz location and dropped the key in the drop box. She called the location the next day and inquired about having the extra day she did not use the car taken off her bill.

6.      To her surprise, the attendant told her the car had not been returned. Moneck asked that a manager call her immediately, and when no manager called her, she assumed everything was fine and went about her life.

7.      Then 5 months later, her sister told her that someone had been calling around looking for her about a car rental. She was confused, and called the location. She then got the run around and no one knew what she was talking about. Moneck then called a corporate 1800 number. She was put on hold for 1 hour, and then told to call another number. No one could tell her what was going on.

8.      Around 1 year after those calls, she then got a call from a man in NYC. He said that something was on his desk that he did "recovery." Moneck explained that she had returned the vehicle a day early and was not sure why she was being bothered. She gave him the plate number of the vehicle, which was from Massachusetts. The man told her that he was unsure why he was told to call her, because the car had been rented out since Moneck had rented the car, demonstrating that she had in fact returned it. He also told her that the car was no longer in Hertz's fleet, and had either been sold or destroyed.

9.      Moneck thought this was all very odd, but not her problem. She was unfortunately wrong.

10.     A couple years later she received mail stating that there was a warrant for her arrest. This was in 2014 or 2015. She was shocked.

11.     She called the Court and asked what was happening, and the Court said she had to turn herself in to be arrested for theft. It was hard to process that this could be true.

12.     Moneck scraped money together and paid a private attorney to get a court date set.

13.     Upon appearing for the first hearing, she was utterly humiliated. She was treated as a criminal and thief, condescended to, and told that she did not understand the seriousness of what was happening.

14.     The Court then set another hearing date 1 month later. Hertz did not show up.

15.     The Court then set another hearing date 1 month later. Hertz again did not show up.

16.     She asked the Court how many times she had to appear if Hertz did not show up. She was again humiliated in the Court, never had her question answered, and was told only that she had to keep coming to court. At all the court appearances she was visibly upset and distraught.

17.     One or two more hearings were scheduled, and Hertz again did not show up.

18.     The prosecutors eventually approached her and, seeing that she was clearly not a car thief and that Hertz was evidently never coming to court, had the case dismissed.

19.     Moneck had no idea why she was reported for theft or prosecuted, and had no idea Hertz was in bankruptcy, until September 2021.

20.     As a direct and proximate result of Hertz's actions and omissions, Moneck Wallace was falsely reported for car theft, falsely and maliciously prosecuted for car theft, had to pay bail, had to pay a private attorney, had her family harassed, and was publicly humiliated and accused of car theft.

21.     Hertz had no probable cause to report or prosecute Moneck Wallace for any crime.

I declare under the penalty of perjury of the United States of America that the foregoing

is true and correct.

Dated:   October _____, 2021

October 11

/s/ Moneek D. Wallace

Declarant

## DECLARATION OF PAULA MURRAY

1.      My name is Paula Murray.  I have personal knowledge of the facts stated in this declaration, and I can testify competently to them if called upon to do so.

2.      In summation: Paula Murray rented a car from the Parkview location in Chesapeake, VA, in or around late 2016. She extended the rental every week, and when Hertz called her to tell her to return it, she brought it back immediately. She diligently confirmed that the car was returned, and then thought nothing more of the rental for years. In January 2021, she interviewed with the Virginia State Police to be a dispatcher. She got the job, and attended a meeting for the background check and final details. She brought her grandchildren with her, ages 8 and 4. Instead of getting the job, she was utterly shocked to be told there was an active warrant for her arrest for car theft from 2016. She was humiliatingly arrested on the spot and taken out in handcuffs from the building she was supposed to start working in as a dispatcher. The case was dismissed in March 2021 because it was utterly baseless.

3.      Paula Murray rented a car from the Parkview location in Chesapeake, VA in or around October-November 2016. The rental was weekly, and she extended every week with the location.

4.      When she had the rental for around 1 month, she made another extension. After the extension was made, the location called her and told her that it should not have given her the extension because the rental was over 30 days. Hertz asked her to return it. She returned the car immediately as asked.

5.      The next day an investigator called her and started threatening her out of the blue. The investigator claimed that Hertz was going to put a warrant out for her arrest. Paula corrected the investigator and made it clear that the car was already returned. The investigator said that it

1

would have to be confirmed the car was returned, and promised to call back after confirming.

6.     The investigator did not call back for a few days. Paula therefore texted the investigator and asked whether it had been confirmed the car was returned. The investigator responded that Hertz had confirmed the car was returned and that Paula was clear.

7.     Paula thought nothing more of the rental.

8.     In January 2021, she applied to be a dispatcher at the Virginia State Police. Against a great deal of competition, she was the top applicant. She was scheduled for an intake appointment and to conduct a background check on January 4, 2021. Thinking that this was a formality, and excited about the new opportunity, she brought her grandchildren, ages 8 and 4, with her.

9.     Needless to say, she did not get the job. She was bluntly informed the background check said there was a warrant out for her arrest for car theft. She was shocked and baffled. A woman asked if she had ever rented a car from Hertz and if she still had it. Paula responded indignantly that she had rented and returned a car 5 years ago. She was told that she had allegedly failed to return a Nissan Altima.

10.     She was told she was being arrested and would be taken away. She asked what she should do with her grandchildren, whom she was being humiliated in front of. She was told she could make a call. Paula had to have her husband drive 30 minutes to pick up the grandchildren. Again, the entire experience was beyond humiliating and degrading.

11.     Paula was then marched out in handcuffs—of the building she thought she was going to be working in. She was placed in a patrol car and taken to Hampton for processing, where she went in front of a magistrate. She explained what happened, was released without paying bail, and was scheduled for a hearing in court case no. GC21000059-00.

12.     After being let go by the magistrate, Paula then called Hertz for 1-week straight.

No one had an answer or any records, although she received many profuse apologies.

13.     She spoke with something she thinks was Richard Livingston, who is a corporate security manager for Hertz. She was told that Hertz had an internal list of customers who were reported for theft and that she was not on it. He claimed he could find nothing on her and that he did not know what happened.

14.     Livingston never informed Paula that Hertz was in bankruptcy, nor that she had a potential claim, despite the fact that Livingston knew she was claiming to be falsely arrested and that Livingston could see for himself that Hertz had not properly kept records.

15.     Livingston did not tell Paula that he was extensively deposed during the Grady v. Hertz case in 2016, and is well aware of the false theft reports inside the company and its horrible record keeping.

16.     Livingston's denials are highly suspect; the docket for Paula's case indicates that the "offense date" was November 4, 2016, meaning that Hertz provided specific information to the police to obtain the arrest warrant. Hertz should have the information it provided to the police.

17.     When Paula's public defender hired an investigator, the investigator contacted Hertz trying to get answers. Hertz refused to call him back.

18.     Her public defender then appeared in court in March 2021 to explain what happened; the court dismissed the case on March 30, 2021.

19.     It should be noted that Paula had no idea she was reported for theft until she was arrested on January 4, 2021; she therefore had no idea of the basis for her claims against Hertz until that date.

20.     Moreover, Paula was never provided notice by Hertz that the company was in bankruptcy, nor did Paula know such a fact until June 2021.

21.    As a direct and proximate result of Hertz's conduct, Paula was falsely arrested and held, and then prosecuted. She lost her job, had her reputation sullied, and suffered extreme and severe mental and emotional distress.

22.    There was no probable cause for Hertz to accuse or prosecute Paula for any crime.

I declare under the penalty of perjury of the United States of America that the foregoing is true and correct.

Dated:  October ___15_____, 2021            /s/ ___Paula Murray_____
                                                          Declarant

## DECLARATION OF SEAN HURT

1.      My name is Sean Hurt. I have personal knowledge of the facts stated in this declaration, and I can testify competently to them if called upon to do so.

2.      In summation: Sean rented a truck from Dollar at the Dallas Fort Worth airport location in January 2020. It was a 1-week rental and he paid in advance. During the rental, the truck was stolen from him and he immediately reported the theft to Hertz and the police. Months later, without warning, Hertz outrageously charged him $2,588.57 and then had *him* arrested and prosecuted for felony car theft in November 2020. The charges were dismissed in May 2021.

3.      Sean rented a car from Dollar at the Dallas Fort Worth airport location in January 2020. The truck rental was only for 1 week, and he paid in advance.

4.      While helping someone move, the truck was stolen from him. Sean immediately reported the theft to Hertz and the police.

5.      Hertz had him fill out an affidavit at the location detailing what happened. It should be noted that Hertz had a GPS locator on the vehicle and could have immediately recovered the vehicle had it wanted.

6.      Hertz stated that if they needed Sean further, they would call him. Sean heard nothing further about the theft from Hertz.

7.      However, Hertz did improperly continue to charge his bank account as if the rental was continuing—even though Hertz knew he did not have the vehicle. Sean called Hertz and demanded that they stop billing him—and pointed out they could use the GPS to get the vehicle—but they refused to do so.

8.      In March 2020, he was then charged $2,588.57 by Hertz out of the blue, as if he had been renting the vehicle the entire time. He was furious as the charge drained his account and

1

he missed a car insurance payment. While his insurance had lapsed he got into an accident which totaled his car, causing $14,000 of damage that he is now personally responsible for.

9.    Sean tried to challenge the charge with Chase, but Hertz continued to dispute his challenge until Chase eventually charged the money. Sean was exasperated, and financially devastated, but thought that the ordeal was over. He was wrong.

10.    In November 2020, he had stopped to help a friend who had run out of gas. The police came to see what was going on and routinely ran his license. They informed Sean, to his shock, that he had a warrant out for his arrest. Unknown to Sean, Hertz had reported him for car theft in March 2020.

11.    He was arrested and jailed overnight until he could pay bail of $750. He then had to pay $300 to get his car out of the police impound lot.

12.    He was then forced to appear in court 5 times, until all charges were dropped in May 2021.

13.    As a direct and proximate result of Hertz's conduct, Sean was falsely arrested, jailed for 2 days, prosecuted, overcharged for $2,588.57, had $14,000 worth of damages, missed work, suffered mental and emotional harm, and otherwise had his life destroyed.

14.    There was no probable cause for Hertz to report Sean for any crime at any point in time.

I declare under the penalty of perjury of the United States of America that the foregoing is true and correct.

Dated:  May ____19____, 2021

DocuSigned by:

/s/ Sean L Hurst

Declarant

237FAAA67FA34CB...

## DECLARATION OF SIOBHAN ABRAMS

1.      My name is Siobhan Abrams.  I have personal knowledge of the facts stated in this declaration, and I can testify competently to them if called upon to do so.

2.      In summation: On July 20, 2019, Siobhan was falsely arrested for stealing her own car; a car that she purchased from Hertz's car sales program in October 2017. Hertz filed a false police report, accusing her of car theft, in March 2019. She was arrested, jailed for 5 days, and prosecuted—until August 2020 when all charges were dropped. Siobhan received no notice of the bankruptcy.

3.      Siobhan rented a car from Hertz in April 2017 from Las Vegas, NV. The rental was supposed to be continuing until October 2017.

4.      She, however, immediately ran into problems. Hertz made payment errors and lost track of her rental, resulting in multiple major billing errors that she had to deal with in May, June, and July 2017. She submitted a formal consumer complaint in June 2017.

5.      This culminated in July 2017, when Hertz falsely reported the rental stolen despite the fact that this was a civil consumer dispute and Hertz knew she was not a car thief. Siobhan, after much effort, had the false theft report resolved. Hertz admitted to fault and said that rental extensions were not properly updating in its system.

6.      Hertz promised to correct the issue by sending her a replacement vehicle. In August 2017, it finally arrived. Hertz told her that it was from sales inventory and that at the end of the rental in October 2017 she would have the option to purchase it.

7.      In October 2017, Siobhan in fact purchased the vehicle for $46,026.30 in Bitcoin through a third-party lender. Hertz confirmed that payment cleared. She used Bitcoin because it was a cash deal. Had she bought a car from another source (that she had not previously been

1

renting) she would not have used Bitcoin.

8.    Siobhan heard nothing further. Unknown to her, two years later in March 2019 Hertz filed a false police report accusing her of Burglary, Theft, and Forgery. Hertz claimed that Siobhan had, in person, submitted a fraudulent and altered check and had stolen the vehicle two years prior. She was given no prior warning by Hertz about any of these issues or the theft report.

9.    The theft report also absurdly referenced the prior theft report and claimed that Siobhan had previously stolen from Hertz—even though Hertz had admitted the prior report was false. The theft report also bizarrely claimed of the prior rental that Hertz had to recover the car, even though Siobhan had turned it in.

10.    The new theft report's allegations were even more bizarre and nonsensical than the prior report. It falsely claimed Siobhan had in person given Hertz a check, and that Siobhan had fraudulently altered the check. This was impossible has Siobhan had given Bitcoin to a third party company, and ***that third party company had submitted the payment to Hertz.*** Siobhan had no involvement and no role with the actual check submission; she had only provided the money to the third party lender.

11.    Indeed, nothing about Hertz's report made any sense, as Hertz had confirmed with Siobhan at the time of the purchase that the check from the third party lender had cleared and she had made full payment. The deposit receipt form shows the customer payment was received as "cash - verified".  If she paid directly with a check, then the payment would have been documented in the section titled "personal checks" or "other checks".

12.    As a result of the false report made two years after the purchase, Siobhan was shocked when she was arrested in July 2019. Upon being arrested, she immediately had a panic attack and had to be taken to the hospital after her blood pressure spiked to levels normally seen

in strokes. She spent 12 hours handcuffed to a hospital bed while doctors gave her anti-anxiety drugs. She was finally cleared to be booked and then taken to jail.

13.     It is important to note that Siobhan had never been on medication for anxiety before this.

14.     She spent 5 days in jail, which caused her incalculable mental and emotional harm.

15.     She was then prosecuted for 1 year while she was repeatedly threatened with jail time if she did not take a plea deal. On May 17, 2020 she had a panic attack which caused her to be hospitalized. However, despite the enormous pressure to take a plea deal, and the anxiety and stress this caused her, she refused to do so.

16.     Only in August 2020, after over 1 year of prosecution, was the case was dismissed by prosecutors at the preliminary hearing because there was no evidence at all to suggest she had done anything wrong.

17.     However, Hertz's conduct had taken its toll. On October 5, 2020, she was hospitalized for congestive heart failure due to the long-term effects of chronic anxiety. She was put on two different heart medications as well as anti-anxiety drugs.

18.     She is also now in weekly therapy to manage her PTSD, caused by Hertz's conduct. She also saw a doctor for heart treatments and stress management 3 days a week, 6 hours a day for several months in 2021. Overall, she has experienced a marked and drastic decline in her health and the quality of her life.

19.     Monetarily, she had to pay $12,000 in bail, she had to pay $9,000 to a defense attorney, and Hertz never returned the car she paid for. The car was worth $46,000 when purchased, but if she had retained the Bitcoin (which she only used due to the unique nature of the deal she was getting through Hertz), that Bitcoin would be worth approximately $400,000 to

$600,000 today.

20.    As a direct and proximate result of Hertz's conduct, Siobhan has had a false police report filed against her, was arrested and jailed for 5 days, she was falsely prosecuted, she experienced severe anxiety and panic attacks, has PTSD, and has had her health fall apart. Not only has she been falsely arrested and prosecuted and mentally, emotionally, and medically battered, but she has also suffered significant economic losses specified throughout this declaration.

21.    There was no probable cause for Hertz to report Siobhan for any crime at any point in time.

I declare under the penalty of perjury of the United States of America that the foregoing is true and correct.

Dated:   May 25, 2021              /s/_____

                                          Declarant

## DECLARATION OF ZANDERS PACE

1.      My name is Zanders Pace.  I have personal knowledge of the facts stated in this declaration, and I can testify competently to them if called upon to do so.

2.      In summation: Zanders, a returning renter, rented a car in June 2019 from the Houston Airport Hertz location. However, after an accident in July 2019, the car was taken to a shop. He reported the accident to his insurance company and to Hertz, and Hertz said they would pick the car up at the body shop in early August 2019. Despite the fact that Hertz knew where the car was and was supposed to pick it up, Hertz instead outrageously filed a false police report against him in September 2019. A Hertz employee later admitted the car should have been picked up and could not explain why this had not been done. To this day he has an active warrant out for his arrest for theft, which is destroying his life. He never received notice of the bankruptcy.

3.      Zanders had previously rented from Hertz and even bought a car from the rental company. He was a returning customer and Hertz knew that he was not a car thief.

4.      He rented a vehicle from Hertz in June 2019 from the Houston Airport location on JFK Blvd., and thereafter extended.

5.      On July 12, 2019, he was in a car accident. The car was towed to a shop.

6.      Zanders contacted Hertz corporate and told them about the accident. He also spoke with a manager named Simone at the location and told the location about the accident.

7.      Zanders also reported the accident to his insurer, including that the car was owned by Hertz.

8.      Hertz was well aware that he did not have the car, that there had been an accident, and that the car was in the shop.

9.      Bizarrely, he received a text on July 19, 2019 stating that he had to return the car.

1

As he had already spoken with Hertz, he figured this was out of date.

10.    Yet, then on July 24, 2019, a further text stated that the car would be repossessed via a recovery service if he did not return it. The text said nothing about reporting him for car theft.

11.    On July 24, 2019, he responded to Hertz that the car was in the shop—something Hertz already knew.

12.    On July 25, 2019, Hertz texted him again for clarification. Mr. Pace informed them, again, that it was in a wreck.

13.    On or around July 25, 2019, Hertz charged Zanders $1,527.13.

14.    Note that because Mr. Pace does not own the vehicle, he was not able to pick up the vehicle from the body shop.

15.    By July 31, 2019, the body shop even called Hertz Emergency Roadside and notified them the car was impounded. Hertz told the body shop on that date that they would pick up the car within a day or two.

16.    Hertz never picked up the car.

17.    In August 2019, there was a financial dispute regarding the payment for the repairs. The body shop notified BNY Mellon Trust Company that Hertz had abandoned the vehicle, and then BNY notified Hertz to pick up their vehicle on August 15, 2019.

18.    On September 16, 2019, it was to Zanders's great shock that he was called by a bail bondsman who told him that a felony warrant was put out on him for car theft on September 13, 2019.

19.    Bizarrely, the probable cause statement available on the public docket states that Hertz contacted Zanders on July 25, 2019 and told him to return the car. The affidavit falsely states that "Defendant did not respond, nor did he return the vehicle." The manager who submitted the

report was Simone!

20.    It was apparent that no one had investigated, verified, or checked whether any of the information in this report was remotely accurate. Zanders later found out in 2021 that Hertz routinely submits theft reports without anyone at Hertz verifying or investigating whether the information the reports contains is accurate.

21.    Nowhere is there any indication that Hertz told the police the car was in an accident, that an insurance report was filed, that the car was in an auto shop, that Mr. Zanders and the auto body shop on his behalf had in fact contacted Hertz repeatedly about the car, and that Hertz had failed to tow the car as scheduled.

22.    Nowhere is there any indication that Hertz told the police about the August 15, 2019 notification that the car was in shop and had been abandoned by Hertz.

23.    Nowhere is there any indication that Hertz told the police that Zanders had paid for the rental.

24.    Scared, Zanders repeatedly called and emailed Hertz at Emergency Roadside and Vehicle Control on September 17, 2019, and notified them that they had filed an absolutely false police theft report.

25.    Hertz Emergency Roadside admitted that in Hertz's system it indicated that the car was in an accident in July 2019 and was impounded. When he was asked why a false police report was filed against him, Emergency Roadside said they had no idea why that happened.

26.    Hertz vehicle control never responded to his emails.

27.    On September 19, 2019, the body shop called and asked Hertz customer service why in the world Mr. Pace was reported for car theft when Hertz knew it was at the body shop and was supposed to pick it up. The customer service representative expressed confusion as to why

Hertz had not picked up the car.

28.    When the body shop owner stated to Hertz that Hertz's police report was deceptive, the customer service representative agreed and said "I'm with you." She said she was going to call the Hertz location and demand to know why a theft report was filed.

29.    Two years later, as of the date this declaration was signed, there is a still a warrant out for Zander's arrest. Hertz has never withdrawn the false police report or prosecution, despite knowing at all points in time the theft report was false and baseless.

30.    The open warrant has been destroying Zanders and his family's life. He has 4 daughters aged 3, 11, 13, and 16, and every time he drives a car he is terrified that he will be pulled over and arrested.

31.    Because of the pending charges he has had extreme trouble finding an acceptable residence. He and his family have to live with family members, or pay extra fees and deposits to be allowed to rent. However, even when he can obtain a residence, it is undesirable areas.

32.    The last two years have been an unmitigated nightmare. It was only in 2021 that he discovered that he was far from the only Hertz customer who had been victimized by Hertz's false theft reporting.

33.    As a direct and proximate result of Hertz's conduct, Zanders has been falsely reported for car theft, falsely prosecuted, has an open warrant out for his arrest, has been unable to find acceptable living arrangements, had paid extra money for living arrangements, and has lived in fear for two years of being arrested. The pending theft charge has damaged his reputation and has mentally and emotionally devastated him.

34.    There was no probable cause for Hertz to report Zanders for any crime.

I declare under the penalty of perjury of the United States of America that the foregoing is true and correct.

Dated:   October _____, 2021          /s/_____
                                          Declarant

he discovered that he was far from the only Hertz customer who had been victimized by Hertz's false theft reporting.

33.     As a direct and proximate result of Hertz's conduct, Zanders has been falsely reported for car theft, falsely prosecuted, has an open warrant out for his arrest, has been unable to find acceptable living arrangements, had paid extra money for living arrangements, and has lived in fear for two years of being arrested. The pending theft charge has damaged his reputation and has mentally and emotionally devastated him.

34.     There was no probable cause for Hertz to report Zanders for any crime.

I declare under the penalty of perjury of the United States of America that the foregoing is true and correct.

Dated:   October ___3___, 2021                          /s/ _____
                                                                          Declarant

5