## EXHIBIT B

**Malofiy Declaration**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | : Chapter 11 |
| | : |
| Rental Car Intermediate Holdings, LLC,[1] | : Case No. 20-11247 (MFW) |
| Reorganized Debtors. | : |
| | : (Jointly Administered) |
| | : |
| | : **Status Conference Date: January 4, 2022 @ 2:00 p.m. E.T.** |
| | : **Objection Deadline: December 20, 2021 at 4:00 p.m. ET** |
| | : |
| | : **Ref. Case No. 20-11218, D.I. 5875, 5899.** |

## DECLARATION OF FRANCIS MALOFIY IN SUPPORT OF GROUP 4 FALSE POLICE REPORT CLAIMANTS' MOTION FOR RELIEF FROM THE CONFIRMATION ORDER TO PURSUE CLAIMS OUTSIDE OF BANKRUPTCY OR, IN THE ALTERNATIVE, FOR EXTENSION OF GENERAL AND ADMINISTRATIVE BAR DATES UNDER RULES 3003(c) AND 9006(b) AND RELATED RELIEF

I, Francis Malofiy, declare as follows[2]:

1.      I am a Partner of the law firm of Francis Alexander, LLC, counsel to the False

Police Report Plaintiffs. I submit this Declaration in support of Claimants' Motion to Deem Claims

Timely or For Extension of General Bar Date Under rules 3003(c) and 9006.

2.      I have personal knowledge of the facts stated in this declaration and I can testify

competently to them if called upon to do so.

---

[1] The last four digits of the tax identification number of reorganized debtor Rental Car Intermediate Holdings, LLC ("RCIH") are 2459. The location of the reorganized debtor's service address is 8501 Williams Road, Estero, FL 33928. On September 28, 2021, the Court entered a final decree closing each of the chapter 11 cases for The Hertz Corporation and its reorganized debtors (referred to herein as the "Reorganized Debtors," the "Debtors," or "Hertz") other than RCIH's chapter 11 case. Commencing on September 28, 2021, all motions, notices and other pleadings relating to any of the Reorganized Debtors shall be filed in RCIH's chapter 11 case, Case No. 20-11247 (MFW).

[2] All capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Motion.

1

3.      Attached hereto as **Attachment A** is a signed declaration from Movant Nirbhay Agarwal, which is a true and correct copy of the declaration he delivered to me.

4.      Attached hereto as **Attachment B** is a signed declaration from Movant Saurabh Rathi, which is a true and correct copy of the declaration he delivered to me.

5.      Attached hereto as **Attachment C** is a signed declaration from Manuel Garcia, which is a true and correct copy of the declaration he delivered to me.

6.      Attached hereto as **Attachment D** is a signed declaration from Movants James Tolen & Krystal Carter, which is a true and correct copy of the declaration they delivered to me.

7.      Attached hereto as **Attachment E** is a signed declaration from Movant Carmen Bosko, which is a true and correct copy of the declaration she delivered to me.

8.      Attached hereto as **Attachment F** is a signed declaration from Movant Reginald Brown, which is a true and correct copy of the declaration he delivered to me.

9.      Attached hereto as **Attachment G** is a signed declaration from Movant Della Davis, which is a true and correct copy of the declaration she delivered to me.

10.     Attached hereto as **Attachment H** is a signed declaration from Movant Dedrick Jackson, which is a true and correct copy of the declaration he delivered to me.

11.     Attached hereto as **Attachment I** is a signed declaration from Movant Larryelle Magee, which is a true and correct copy of the declaration she delivered to me.

12.     Attached hereto as **Attachment J** is a signed declaration from Movant Christian Mangano, which is a true and correct copy of the declaration he delivered to me.

13.     Attached hereto as **Attachment K** is a signed declaration from Movant Kellan McClellan, which is a true and correct copy of the declaration he delivered to me.

14.     Attached hereto as **Attachment L** is a signed declaration from Movant ReJeana Meado, which is a true and correct copy of the declaration she delivered to me.

15.     Attached hereto as **Attachment M** is a signed declaration from Movant Janelle Reece-Williams, which is a true and correct copy of the declaration she delivered to me.

16.     Attached hereto as **Attachment N** is a signed declaration from Movants Tonia Rich and Darnay Taper, which is a true and correct copy of the declaration they delivered to me.

17.     Attached hereto as **Attachment O** is a signed declaration from Movant Jeffrey Smith, which is a true and correct copy of the declaration he delivered to me.

18.     Attached hereto as **Attachment P** is a signed declaration from Movant Edward Solis, which is a true and correct copy of the declaration he delivered to me.

19.     Attached hereto as **Attachment Q** is a signed declaration from Movant Edward Sturkie Jr., which is a true and correct copy of the declaration he delivered to me.

20.     Attached hereto as **Attachment R** is a signed declaration from Movant Dr. Tederhi Usude, which is a true and correct copy of the declaration he delivered to me.

21.     Attached hereto as **Attachment S** is a signed declaration from Movant Steven Robinson Valdes, which is a true and correct copy of the declaration he delivered to me.

22.     Attached hereto as **Attachment T** is a signed declaration from Former Delaware Department of Justice Deputy Attorney General Steve Wood, which is a true and correct copy of the declaration he delivered to me.

23.     Attached hereto as **Attachment U** is a Jury Charge and Verdict Form from Cause No. 3:15-CV-92, *Michael Gray v. The Hertz Corporation*, which is a true and correct copy of the Jury Charge and Verdict Form found in the court records.

24.     Attached hereto as **Attachment V** is the Complaint filed in The Philadelphia Court of Common Please, Civil Action 151103380, Kelly A. Grady vs. The Hertz Corporation, which is a true and correct copy of the complaint found in the court records.

25.     Attached hereto as **Attachment W** is a verdict form from The Philadelphia Court of Common Pleas, Civil Action 151103380, Kelly A. Grady vs. The Hertz, which is a true and correct copy of the verdict form found in the court records.

26.     Attached hereto as **Attachment X** is an order for a trial on punitive damages from The Philadelphia Court of Common Pleas, Civil Action 151103380, Kelly A. Grady vs. The Hertz, which is a true and correct copy of the order form found in the court records.

27.     Attached hereto as **Attachment Y** is a signed affidavit from Ramanda Van Pay related to her experience with The Hertz Corporation and the Indianapolis Airport Police, which is a true and correct copy of the affidavit found in the court records of The Philadelphia Court of Common Pleas, Civil Action 151103380. On April 19, 2017, I had a phone discussion with Detective Diosdado Hernandez of the Indianapolis Airport Police Department. Detective Hernandez informed me that he was aware that Hertz had falsely accused Ramanda Van Pay of car theft. He stated that his department was aware of other false reports, including a man who had been pulled over in Pennsylvania. He told me that he placed the blame "squarely" on Hertz and that his department would no longer take Hertz theft reports without additional verification.

28.     Attached hereto as **Attachment Z is** a September 6, 2017 motion for punitive damages in the *Grady* case, a true and correct copy of which is attached hereto.

29.     Attached hereto as **Attachment AA** is an October 17, 2018 letter to Hertz counsel, a true and correct copy of which is attached hereto. Certain content in this letter has been redacted.

4

30. Attached hereto as **Attachment AB** is a February 13, 2020 letter to Hertz counsel, a true and correct copy of which is attached hereto.

31. Attached hereto as **Attachment AC** is a true and correct copy of a May 4, 2020 memorandum prepared by my office describing Claimant Thomas Channell's case. This memorandum was served on Hertz Counsel Dan Webb of Winston & Strawn on May 4, 2020. Mr. Webb acknowledged receipt on May 5, 2020.

32. Attached hereto as **Attachment AD** is a true and correct copy of a May 4, 2020 memorandum prepared by my office describing Claimant Arthur Stepanyan's case. This memorandum was served on Hertz Counsel Dan Webb of Winston & Strawn on May 4, 2020. Mr. Webb acknowledged receipt on May 5, 2020.

33. Attached hereto as **Attachment AE** is a true and correct copy of an April 27, 2020 memorandum prepared by my office regarding Hertz's systematic failures, specifically its destruction of documents. This brief was served on Hertz counsel Dan Webb of Winston & Strawn on April 28, 2020, and later docketed in the adversary proceeding at Case 20-50761-MFW, D.I. 11-8 on August 4, 2020.

34. Attached hereto as **Attachment AF** is a true and correct copy of the April 27, 2020 memorandum prepared by my office regarding Hertz's systematic failures, specifically its erasure of rental extensions without notice to the customer. Hertz counsel Dan Webb of Winston & Strawn on April 28, 2020, and later docketed in the adversary proceeding at Case 20-50761-MFW, D.I. 11-8 on August 4, 2020.

35. Attached hereto as **Attachment AG** is a true and correct copy of an April 27, 2020 memorandum prepared by my office regarding Hertz' systemic failures, specifically the providing of false and misleading payment information to authorities. This memo was served on Hertz

5

counsel Dan Webb of Winston & Strawn on April 28, 2020, and later docketed in the adversary proceeding at Case 20-50761-MFW, D.I. 11-8 on August 4, 2020

36.    Attached hereto as **Attachment AH** is a true and correct copy of an April 27, 2020 memorandum prepared by my office regarding Hertz's systemic failures, specifically its failure to investigate and verify theft reports. This memo was served on Hertz counsel Dan Webb of Winston & Strawn on April 28, 2020, and later docketed in the adversary proceeding at Case 20-50761-MFW, D.I. 11-8 on August 4, 2020.

37.    Attached hereto as **Attachment AI** is a complaint filed in The Montgomery County, Ohio Court of Common Pleas, Henry B. Essick III vs. The Hertz Corporation, which is a true and correct copy of the complaint found in the court records.

38.    Attached hereto as **Attachment AJ** is a complaint filed in The 13th Judicial Circuit Court of Florida, Brent D. Williams, Sr. vs. The Hertz Corporation, which is a true and correct copy of the complaint found in the court records.

39.    Attached hereto as **Attachment AK** is a complaint filed in The Fauquier County Circuit Court of Virginia, Ryan Smits. vs. The Hertz Corporation, which is a true and correct copy of the complaint found in the court records.

40.    Attached hereto as **Attachment AL** is a complaint filed in The Philadelphia County Court of Common Pleas, Roula Vangelis, on behalf of her minor children AG and CG vs. The Hertz Corporation, *et al.,* which is a true and correct copy of the complaint found in the court records.

41.    Attached hereto as **Attachment AM** is a true and correct copy of an August 24, 2021 letter from White & Case, counsel for Debtors, sent to Husein Hadi, counsel for James Tolen.

6

42.     Attached hereto as **Attachment AN** are true and correct copies of the relevant pages from September 8 & 11, 2017, court orders entered in *Grady* v. *The Hertz Corporation, et al.*, granting spoliation sanctions against The Hertz Corporation in another false-police-report case.

43.     Attached hereto as **Attachment AO** is a signed declaration from Movant Cynthia Vaughn, which is a true and correct copy of the declaration she delivered to me.

44.     Attached hereto as **Attachment AP** is a signed declaration from Paula Murray, which is a true and correct copy of the declaration she delivered to me.

45.     Attached hereto as **Attachment AQ** is a signed declaration from Movant Mary Lindsay Flannery, which is a true and correct copy of the declaration she delivered to me.

46.     Attached hereto as **Attachment AR** is a signed declaration from Movant John Prawat, which is a true and correct copy of the declaration he delivered to me.

47.     Attached hereto as **Attachment AS** is a signed declaration from Movant Melinda Smith, which is a true and correct copy of the declaration she delivered to me.

48.     Attached hereto as **Attachment AT** is a signed declaration from Movant Jessica Andolino, which is a true and correct copy of the declaration she delivered to me.

49.     Attached hereto as **Attachment AU** is a signed declaration from Movant Andrew Seaser, which is a true and correct copy of the declaration he delivered to me.

50.     Each of the Movants retained my firm after the Administrative Bar Date, and my firm has worked diligently to process and investigate these claims in preparation for this filing.


I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

7

Executed on _____, 2021

_____
Francis Malofiy, Esquire

# ATTACHMENT A

## DECLARATION OF NIRBHAY AGARWAL

1.      My name is Nirbhay Agarwal.  I have personal knowledge of the facts stated in this declaration, and I can testify competently to them if called upon to do so.

2.      In summation: Nirbhay rented a car from Hertz on February 12, 2021. A few hours after the rental, he and his friend Saurabh Rathi were pulled over, removed from the vehicle at gunpoint, and arrested by the police for possession of a stolen vehicle. After 1 hour, the police officers finally looked at the Hertz rental contract, realized that they had just rented the vehicle a few hours beforehand, contacted Hertz, and then released them.

3.      Nirbhay Agarwal rented a car from the San Jose Airport Hertz location on February 12, 2021, at 10:01 pm. The rental record # was 816259161. It was for 1 day as shown by the receipt stub:



4.      Nirbhay then drove to San Francisco to pick up Saurabh and continued towards their destination.

5.      Around midnight they saw flashing lights behind them and were pulled over by a police officer. Nirbhay was unaware as to why they were being pulled over as he believed they were going the legal speed limit and had not violated any traffic laws.

6.      The police commanded that they turn off the vehicle, and place their hands out the window so they were visible to the officer.

7.      Nirbhay was scared and could not explain why he was being felony stopped.  More police arrived on the scene, 4 cars in total.

8.      Both Nirbhay and Saurabh were handcuffed at gunpoint and placed in separate vehicles for questioning as if they had committed a major crime and the police did not want them to plan their stories.

9.      At this point a police helicopter began circling overhead. It was surreal. Nirbhay was reeling.

10.      Nirbhay sat in the back of a police car wondering what was happening until an officer finally informed him that he was driving a stolen car.

11.      The police eventually looked at the rental paperwork and realized that the car had just been rented a few hours prior.

12.      The police called Hertz who confirmed that Nirbhay had just rented the vehicle and that it was not due back for another 20 hours.

13.       The police told them that Hertz had rented Nirbhay a vehicle the company had previously reported as stolen. This fact is still incomprehensible to both Saurabh and Nirbhay; it should never happen.

14.      The cops, who had at first treated Saurabh and Nirbhay as felons, became profusely apologetic and embarrassed.  They were given official police documents stating that they had been arrested and were being released from custody:

15.     The entire arrest took 1 hour.

16.     When Nirbhay returned the rental on February 13th, Hertz did not charge him for the rental, clearly aware of what had happened.

17.     On February 14th, 2021, Saurabh contacted the Hertz customer care line to complaint about being falsely arrested.  A supervisor was supposed to call him back.  Hertz never followed up with any phone call.

18.     Based on the police contact with Hertz, the Hertz location not charging Nirbhay for the rental, and Saurabh's calls to Hertz demanding an explanation as to why Nirbhay and Saurabh were arrested, Hertz was well aware that Saurabh and Nirbhay were falsely arrested.

19.     Nirbhay did not know about any bar date nor about any bankruptcy plan.  He does not regularly *read USA Today, The Wall Street Journal, The New York Times, The Globe and Mail, The Philadelphia Inquirer, San Francisco Chronicle, Arizona Republic, Chicago Tribune, Los Angeles Times, The San Diego Union Tribune, Naples Daily News, El Diario De El Paso, or Journal De Montreal.*

20.     As a direct and proximate result of Hertz's conduct, Nirbhay was arrested, handcuffed at gunpoint and was detained for 1 hour. These experiences have caused severe emotional and mental harm.

21.     There was no probable cause for Hertz to have Nirbhay arrested for any crime.

I declare under the penalty of perjury of the United States of America that the foregoing is true and correct.

Dated:   December_____5_____, 2021

/s/   _Nirbhay Agarwal_

Declarant

STATE OF CALIFORNIA
DEPARTMENT OF CALIFORNIA HIGHWAY PATROL

## VEHICLE REPORT

NOTE: CHP 180 IS FURNISHED TO ALL PEACE OFFICERS BY THE CALIFORNIA HIGHWAY PATROL

**L06: 027**

STATE OF CALIFORNIA
DEPARTMENT OF CALIFORNIA HIGHWAY PATROL

### CERTIFICATE OF RELEASE FROM CUSTODY
CHP 103 (Rev. 1-17) OPI 061

COMPLETED BY:
Arresting officer's supervisor

DISTRIBUTION:
Original:   Filed with report
Duplicate:   To Detainee

FULL NAME OF DETAINED PERSON
NIRBHAYI AGARWAL

DATE AND TIME OF DETENTION
2/13/21    0029

**RELEASING OFFICER**

DATE RELEASED    NAME (Printed)               TITLE
2/13/21          BUTOLPH                      OFC

☐ SUPERVISOR   ☒ ARRESTING OFFICER   ☐ COURT OFFICER

SIGNATURE

---

Penal Code Section 849 provides in part:

(a)   When an arrest is made without a warrant by a peace officer or private person, the person arrested, if not otherwise released, shall, without unnecessary delay, be taken before the nearest or most accessible magistrate in the county in which the offense is triable, and a complaint stating the charge against the arrested person shall be laid before such magistrate.

(b)   Any peace officer may release from custody, instead of taking such person before a magistrate, any person arrested without a warrant whenever:

☒ (1)   He or she is satisfied that there are insufficient grounds for making a criminal complaint against the person arrested.

☐ (3)   The person was arrested only for being under the influence of a controlled substance or drug and such person is delivered to a facility or hospital for treatment and no further proceedings are desirable.

☐ (4)   The person was arrested for driving under the influence of alcohol or drugs and the person is delivered to a hospital for medical treatment that prohibits immediate delivery before a magistrate.

*(Amended by Stats. 2015, Ch, 499, Sec. 3. Effective January 1, 2016)*

Penal Code Section 851.6 provides:

(a) In any case in which a person is arrested and released pursuant to paragraph (1) or (3) of subdivision (b) of Section 849, the person shall be issued a certificate, signed by the releasing officer or his superior officer, describing the action as a detention.

Penal Code Section 849.5 provides:

☒ In any case in which a person is arrested and released and no accusatory pleading is filed charging him with an offense, any record of arrest of the person shall include a record of release. Thereafter, the arrest shall not be deemed an arrest, but a detention only.

Chp103_0117.pdf

Destroy Previous Editions

---

**L06: 027**

STATE OF CALIFORNIA
DEPARTMENT OF CALIFORNIA HIGHWAY PATROL

### CERTIFICATE OF RELEASE FROM CUSTODY
CHP 103 (Rev. 1-17) OPI 061

COMPLETED BY:
Arresting officer's supervisor

DISTRIBUTION:
Original:   Filed with report
Duplicate:   To Detainee

FULL NAME OF DETAINED PERSON
SAURABH VINODKUMAR RATHI

DATE AND TIME OF DETENTION
2/3/21    0029

**RELEASING OFFICER**

DATE RELEASED    NAME (Printed)               TITLE
2/13/21          BUTOLPH                      OFC

☐ SUPERVISOR   ☒ ARRESTING OFFICER   ☐ COURT OFFICER

SIGNATURE

---

Penal Code Section 849 provides in part:

(a)   When an arrest is made without a warrant by a peace officer or private person, the person arrested, if not otherwise released, shall, without unnecessary delay, be taken before the nearest or most accessible magistrate in the county in which the offense is triable, and a complaint stating the charge against the arrested person shall be laid before such magistrate.

(b)   Any peace officer may release from custody, instead of taking such person before a magistrate, any person arrested without a warrant whenever:

☒ (1)   He or she is satisfied that there are insufficient grounds for making a criminal complaint against the person arrested.

☐ (3)   The person was arrested only for being under the influence of a controlled substance or drug and such person is delivered to a facility or hospital for treatment and no further proceedings are desirable.

☐ (4)   The person was arrested for driving under the influence of alcohol or drugs and the person is delivered to a hospital for medical treatment that prohibits immediate delivery before a magistrate.

*(Amended by Stats. 2015, Ch, 499, Sec. 3. Effective January 1, 2016)*

nal Code Section 851.6 provides:

(a) In any case in which a person is arrested and released pursuant to agraph (1) or (3) of subdivision (b) of Section 849, the person shall be ued a certificate, signed by the releasing officer or his superior officer, cribing the action as a detention.

al Code Section 849.5 provides:

In any case in which a person is arrested and released and no accusatory pleading is filed charging him with an offense, any record of arrest of the person shall include a record of release. Thereafter, the arrest shall not be deemed an arrest, but a detention only.

Destroy Previous Editions

RIGHT SIDE

LEFT SIDE    I.D. NO.    SUPERVISOR

STATE OF CALIFORNIA
DEPARTMENT OF CALIFORNIA HIGHWAY PAT
**VEHICLE REPORT**
CHP 180 (Rev. 4-16) OPI-0


**Hertz** Rental Record# 816259161

TE: CHP 180 IS FURNISHED TO ALL PEACE
ICERS BY THE CALIFORNIA HIGHWAY PATR

**NIRBHAY AGARWAL**
CASJO11    0123611    3291    #01 EST

**VEHICLE** 01198/5547997    19 SIR 530I RWD SN
LIC CA 8KTM061 CLS  K   MILES OUT 24186    FUEL OUT 8/8
SAT RADIO  Y    TK CAP 18.0    STALL R  0  0161

### ESTIMATE OF CHARGES

RENTED: 02/12/21 22:01 @ SAN JOSE INTL AP
RETURN: 02/13/21 22:00 @ SAN JOSE INTL AP

THIS IS ONLY AN ESTIMATE. Taxable charges are denoted by a T, and
additional details about some charges appear beneath the table. Our
estimates of Your total charges appear on the right of the table below.
Our estimates assume (1) You will rent and return the vehicle at the
times and places indicated. (2) If a mileage charge applies, You will drive
no more than the distance indicated and (3) You will not incur any charges
that either are listed below opposite **** or cannot be calculated until
return. If any of these assumptions is incorrect, additional charges or
charges at higher rates may apply.

| CHARGE RATE / AMOUNT | | CHARGE ESTIMATE |
| --- | --- | --- |
| TIME / MILEAGE CHGS: RATE PLAN –RCUD1 | | CLASS – K |
| **Rental Rate\*** | 1 @ $ 128.05 per day  T $ | 128.05 |
| \*Includes Unlimited Miles | | |
| **Additional Products** | | |
| Loss Dmg Wvr | Accepted @ $  39.99 per day  $ | 39.99 |
| LIS | Accepted @ $  16.35 per day  $ | 16.35 |
| | | **** |
| **Fuel & Service** | $ .416 /MI  $9.99 /GAL  18.0/TK CAP  T $ | |
| **Service Charges/Taxes** | | |
| CONCESSION FEE RECOVERY | 11.11 %  T $ | 18.94 |
| CA TOURISM ASSESSMENT | 3.50 %  $ | 4.48 |
| TRANSPORTATION FEE | | 7.50 |
| Vehicle License Fee | Accepted @ $  2.40 per day  T $ | 2.40 |
| | 149.39    $ | 13.81 |
| Tax 1  9.250%  On Taxable Ttl $ | | **** |
| Tax 2  4.250%  On California Refueling | | |
| ADJUSTMENTS | | |

### TOTAL ESTIMATED CHARGE $ 231.52

**NIRBHAY AGARWAL**    Vehicle: 2019530
Lot R  Space:      161  License CA 8KTM061

| **Rental Rate\*** | 1 @ $ 128.05 per day  T $ | 128.05 |
| --- | --- | --- |
| \*Includes Unlimited Miles | | |
| **Additional Products** | | |
| Loss Dmg Wvr | Accepted @ $  39.99 per day  $ | 39.99 |
| LIS | Accepted @ $  16.35 per day  $ | 16.35 |
| Frequent Flyer Surcharge | T $ | .00 |
| | | **** |
| **Fuel & Service** | $ .416 /MI  $9.99 /GAL  18.0/TK CAP  T $ | |
| **Service Charges/Taxes** | | |
| CONCESSION FEE RECOVERY | 11.11 %  T $ | 18.94 |
| CA TOURISM ASSESSMENT | 3.50 %  $ | 4.48 |
| TRANSPORTATION FEE | | 7.50 |
| Vehicle License Fee | Accepted @ $  2.40 per day  T $ | 2.40 |
| | 149.39    $ | 13.81 |
| Tax 1  9.250%  On Taxable Ttl $ | | **** |
| Tax 2  4.250%  On California Refueling | | |
| ADJUSTMENTS | | |

### TOTAL ESTIMATED CHARGE $ 231.52

TIME DISPATCH NOTIFIED    LOG NO

☐ ONE  MONTH / YEAR
☒ TWO    07 / 21
TION BY  ☒ OFFICER  ☐ OWNER
☐ 501-4000  ☒ 4001+  ☐ S
ER

IDST CO N
WCSTERN  HWY
T 48033

COVERED - VEHICLE / COMF

STORAGE AUTHORITY /
27651 (

☐ JUNK  ☐ UNK    ☐ YES
| TIRES / WHEELS | CONDI |
| T FRONT | F |
| HT FRONT | A |
| T REAR | I |
| HT REAR | R |
| RE | NO |
| CAPS | NO |
| CIAL WHEELS | NO |
| GNATURE) | DATE / |

I CERTIFY THAT I AM LEGALLY
OF THE ABOVE DESCRIBED VI

Credit Card Authorization Amount $  432.00
**Rented by The Hertz Corporation**
Vehicle:01198 / 5547997 LocNum: CASJO11 / 0123611
Miles Out:    24186 Plan:    RCUD1  Class: K
Rental Location:  SAN JOSE INTL AP
Rental Time:  **02/12/21 at 10:01 PM**
Return Location:  SAN JOSE INTL AP
Return Time:  **02/13/21 at 10:00 PM**

Rental Extensions/Changes 1 – 800 – 654 – 4174
Emergency Road Service 1 – 800 – 654 – 5060

For Explanation of Charges: WWW.HERTZ.COM/CHARGEEXPLAINED
This estimate assumes you will rent and return at the locations and times
indicated, and that you will not exceed any mileage limitations.
Rental Rate subject to increase if you return Car more than 24 hours before
or 24 hours after scheduled Return Time. Late returns may be subject to
extra hour and/or extra day charges.
Charges indicated as **** will be calculated at return.
Taxable charges are preceded by a "T".    PG 1 OF 7 #01 RT
816259161

(S) REPORT    DRIVER LICENSE

DRIVER LICENSE

TELEPHONE OF
(    )

VALUE $    ☐ BILL OF LA

CC AUTH WOULD BE  $  432.00


FRONT


LEFT SIDE

SIGNATURE OF OFFICER TAKING REPORT

STATE OF CALIFORNIA
DEPARTMENT OF CALIFORNIA HIGHWAY PATROL

# VEHICLE REPORT
CHP 180 (Rev. 4-16) OPI 061

NOTE: CHP 180 IS FURNISHED TO ALL PEACE
OFFICERS BY THE CALIFORNIA HIGHWAY PATROL.

REPORTING DEPARTMENT
**CHP - SOLANO**

LOCATION TOWED / STOLEN FROM
**RED TOP RD @ I-80**

LOCATION CODE **365**

DATE / TIME OF REPORT **2/13/21 0116**

NOTICE OF STORED VEHICLE DELIVERED PERSONALLY

FILE NO.

YEAR **2019**   MAKE **BMW**   MODEL **530i**

ODOMETER READING **24275**

VIN CLEAR IN SVS? ☐ YES ☒ NO
LIC. CLEAR IN SVS? ☐ YES ☒ NO

DATE / TIME DISPATCH NOTIFIED    LOG NO.

VEHICLE IDENTIFICATION NO.
**WBAJA5C50KWW49672**

BODY TYPE **4D**

COLOR **GRY**

LICENSE NO. **8KTM061**    ☐ ONE ☒ TWO   MONTH / YEAR **07/21**   STATE **CA**

ENGINE NO. **N/A**

VALUATION BY ☒ OFFICER ☐ OWNER
☐ 0-500 ☐ 501-4000 ☒ 4001+ ☐ $

REGISTERED OWNER
**HERTZ VEHICLES LLC**
**8900 BELLANCA AVE**
**LOS ANGELES CA 90045**

☐ SAME AS R/O   LEGAL OWNER
**BNY MELLON TRST CO NA**
**26933 NORTHWESTERN HWY 100**
**SOUTHFIELD MI 48033**

☐ **STORED**

☐ **IMPOUNDED**

☐ **RELEASED**

☒ **RECOVERED - VEHICLE / COMPONENT**

TOWING / STORAGE CONCERN (NAME, ADDRESS, PHONE)

REASON FOR STOP
**BOLO**

STORAGE AUTHORITY / REASON
**22651 (c) VC**

| CONDITION | YES | NO | ITEMS | YES | NO | AIRBAG? ☒ YES ☐ NO | | | DRIVEABLE? ☐ 1 ☒ 2 ☐ YES ☐ NO | | VIN SWITCHED? ☐ YES ☒ NO | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| WRECKED | | | | | | ITEMS | YES | NO | ITEMS | YES | NO | |
| BURNED HULK per 431(c) CVC | | ☒ | SEAT (FRONT) | ☒ | | REGISTRATION | ☒ | | CAMPER | | ☒ | TIRES / WHEELS | CONDITION |
| VANDALIZED | | ☒ | SEAT (REAR) | ☒ | | ALT. / GENERATOR | ☒ | | VESSEL AS LOAD | | ☒ | LEFT FRONT | F |
| ENG. / TRANS. STRIP | | ☒ | RADIO | ☒ | | BATTERY | ☒ | | FIREARMS | | ☒ | RIGHT FRONT | A |
| MISC. PARTS STRIP | | ☒ | TAPE DECK | | ☒ | DIFFERENTIAL | ☒ | | OTHER | | ☒ | LEFT REAR | I |
| BODY METAL STRIP | | ☒ | TAPES | | ☒ | TRANSMISSION | ☒ | | | | | RIGHT REAR | R |
| SURGICAL STRIP per 431(b) CVC | | ☒ | OTHER RADIO | | ☒ | AUTOMATIC | ☒ | | | | | SPARE | NO |
| | | | IGNITION KEY | | ☒ | MANUAL | | ☒ | | | | HUB CAPS | NO |
| RELEASE VEHICLE TO: ☐ R/O OR AGENT ☐ AGENCY HOLD | | | ☐ 22850.3 CVC | | | | | | | | | SPECIAL WHEELS | NO |

GARAGE PRINCIPAL / AGENT STORING VEHICLE (SIGNATURE)    DATE / TIME

NAME OF PERSON / AGENCY AUTHORIZING RELEASE
**D. BUTOLPH**

I.D. NO. **2116**   DATE **2/13/21**

SIGNATURE OF PERSON AUTHORIZING RELEASE

CERTIFICATION: I, THE UNDERSIGNED, DO HEREBY CERTIFY THAT I AM LEGALLY
AUTHORIZED AND ENTITLED TO TAKE POSSESSION OF THE ABOVE DESCRIBED VEHICLE.

SIGNATURE OF PERSON TAKING POSSESSION

☐ **STOLEN VEHICLE / COMPONENT**

☐ **EMBEZZLED VEHICLE**

☐ **PLATE(S) REPORT**

DATE / TIME OF OCCURRENCE

DATE / TIME REPORTED

NAME OF REPORTING PARTY (R/P)

DRIVER LICENSE NO. / STATE

LAST DRIVER OF VEHICLE

DATE / TIME

ADDRESS OF R/P

TELEPHONE OF R/P
( )

SIGNATURE OF PERSON MAKING REPORT

I CERTIFY OR DECLARE UNDER PENALTY OF PERJURY UNDER THE LAWS OF
THE STATE OF CALIFORNIA THAT THE FOREGOING IS TRUE AND CORRECT.

**REMARKS**
[LIST PROPERTY, TOOLS, VEHICLE DAMAGE, ARRESTS]

**Y5416870**

ARRESTED / SECTION? ☐ YES ☒ NO

REPORTED BY **22-80**

CARGO / TYPE? ☐ YES ☒ NO

VALUE $    ☐ BILL OF LADING ATTACHED

DRIVER'S NAME
**NIRBHAY A GARWAL**

RIGHT SIDE

LEFT SIDE    I.D. NO. **7116**

SUPERVISOR

...tionally Accredited Agency

# ATTACHMENT B

## DECLARATION OF SAURABH RATHI

1.        My name is Saurabh Rathi.  I have personal knowledge of the facts stated in this declaration, and I can testify competently to them if called upon to do so.

2.        In summation: Saurabh was a passenger in a vehicle that was rented from Hertz on February 12, 2021, by his friend Nirbhay Agarwal.  A few hours after the rental, he and his friend were pulled over, removed from the vehicle at gunpoint, and arrested by the police for possession of a stolen vehicle. After 1 hour, the police officers finally looked at the Hertz rental contract, realized that they had just rented the vehicle a few hours beforehand, contacted Hertz, and then released them.

3.        Nirbhay Agarwal rented a car from the San Jose Airport Hertz location on February 12, 2021, at 10:01 pm. The rental record # was 816259161. It was for 1 day as shown by the receipt stub:



4.        Nirbhay then drove to San Francisco to pick up Saurabh and continued towards their destination.

5.      Around midnight they saw flashing lights behind them and were pulled over by a police officer. Saurabh was unaware as to why they were being pulled over as he believed they were going the legal speed limit and had not violated any traffic laws.

6.      The police commanded that they turn off the vehicle, and place their hands out the window so they were visible to the officer.

7.      Saurabh was terrified.  Although he had never been pulled over by the police before, this felt more dangerous than a normal traffic stop.  More police arrived on the scene, 4 cars in total.

8.      Both Nirbhay and Saurabh were handcuffed at gunpoint and placed in separate vehicles for questioning as if they had committed a major crime and the police did not want them to plan their stories.

9.      At this point a police helicopter began circling overhead. It was surreal. Saurabh's mind was racing. He felt like a fugitive in a movie.

10.      Saurabh wanted to inquire as to why he had been handcuffed and placed in the back of the police vehicle, but he was too scared at this point to appear confrontational.

11.      While handcuffed in backseat of the police car, he was finally informed that he was in possession of a stolen vehicle.

12.      Saurabh was astonished and told the cops about the Hertz rental agreement in the glove box.

13.      When the cops looked at the paperwork they realized that the car had just been rented a few hours prior.

14.      The police called Hertz who confirmed that Nirbhay had just rented the vehicle and that it was not due back for another 20 hours.

15.    The police told them that Hertz had rented Nirbhay a vehicle the company had previously reported as stolen. This fact is still incomprehensible to both Saurabh and Nirbhay; it should never happen.

16.    The cops, who had at first treated Saurabh and Nirbhay as felons, became profusely apologetic and embarrassed.  They were given official police documents stating that they had been arrested and were being released from custody:



17.    The entire arrest took 1 hour.

18.    When Nirbhay returned the rental on February 13th, Hertz did not charge him for the rental, clearly aware of what had happened.

19.    On February 14th, 2021, Saurabh contacted the Hertz customer care line to complaint about being falsely arrested.  A supervisor was supposed to call him back.  Hertz never followed up with any phone call.

20.    Based on the police contact with Hertz, the Hertz location not charging Nirbhay for the rental, and Saurabh's calls to Hertz demanding an explanation as to why Nirbhay and Saurabh were arrested, Hertz was well aware that Saurabh and Nirbhay were falsely arrested.

21.    Saurabh did not know about any bar date nor about any bankruptcy plan.  He does not regularly *read USA Today, The Wall Street Journal, The New York Times, The Globe and Mail,*

*The Philadelphia Inquirer, San Francisco Chronicle, Arizona Republic, Chicago Tribune, Los Angeles Times, The San Diego Union Tribune, Naples Daily News, El Diario De El Paso, or Journal De Montreal.*

22.    As a direct and proximate result of Hertz's conduct, Saurabh was arrested, handcuffed at gunpoint and was detained for 1 hour. These experiences have caused severe emotional and mental harm.

23.    There was no probable cause for Hertz to have Saurabh arrested for any crime.

I declare under the penalty of perjury of the United States of America that the foregoing is true and correct.

Dated:   December____5____, 2021        /s/_____
                                                      Declarant

STATE OF CALIFORNIA
DEPARTMENT OF CALIFORNIA HIGHWAY PATROL

**VEHICLE REPORT**

NOTE: CHP 180 IS FURNISHED TO ALL PEACE
OFFICERS BY THE CALIFORNIA HIGHWAY PATROL

---

STATE OF CALIFORNIA
DEPARTMENT OF CALIFORNIA HIGHWAY PATROL

**CERTIFICATE OF RELEASE FROM CUSTODY**

CHP 103 (Rev. 1-17) OPI 061

L06: 027

COMPLETED BY:
Arresting officer's supervisor

DISTRIBUTION:
Original:   Filed with report
Duplicate:  To Detainee

FULL NAME OF DETAINED PERSON
NIRBHAY AGARWAL

DATE AND TIME OF DETENTION
2/13/21   0029

**RELEASING OFFICER**

DATE RELEASED
2/13/21

NAME (Printed)
BUTALPH

TITLE
OFC

☐ SUPERVISOR  ☒ ARRESTING OFFICER  ☐ COURT OFFICER

SIGNATURE

Penal Code Section 849 provides in part:

(a)  When an arrest is made without a warrant by a peace officer or private person, the person arrested, if not otherwise released, shall, without unnecessary delay, be taken before the nearest or most accessible magistrate in the county in which the offense is triable, and a complaint stating the charge against the arrested person shall be laid before such magistrate.

(b)  Any peace officer may release from custody, instead of taking such person before a magistrate, any person arrested without a warrant whenever:

☒ (1)  He or she is satisfied that there are insufficient grounds for making a criminal complaint against the person arrested.

☐ (3)  The person was arrested only for being under the influence of a controlled substance or drug and such person is delivered to a facility or hospital for treatment and no further proceedings are desirable.

☐ (4)  The person was arrested for driving under the influence of alcohol or drugs and the person is delivered to a hospital for medical treatment that prohibits immediate delivery before a magistrate.

*(Amended by Stats. 2015, Ch, 499, Sec. 3. Effective January 1, 2016)*

Penal Code Section 851.6 provides:

(a) In any case in which a person is arrested and released pursuant to paragraph (1) or (3) of subdivision (b) of Section 849, the person shall be issued a certificate, signed by the releasing officer or his superior officer, describing the action as a detention.

Penal Code Section 849.5 provides:

☒ In any case in which a person is arrested and released and no accusatory pleading is filed charging him with an offense, any record of arrest of the person shall include a record of release. Thereafter, the arrest shall not be deemed an arrest, but a detention only.

Chp103_0117.pdf

Destroy Previous Editions

---

STATE OF CALIFORNIA
DEPARTMENT OF CALIFORNIA HIGHWAY PATROL

**CERTIFICATE OF RELEASE FROM CUSTODY**

CHP 103 (Rev. 1-17) OPI 061

L06: 027

COMPLETED BY:
Arresting officer's supervisor

DISTRIBUTION:
Original:   Filed with report
Duplicate:  To Detainee

FULL NAME OF DETAINED PERSON
SAURABH VINODKUMAR RATHI

DATE AND TIME OF DETENTION
2/13/21   0029

**RELEASING OFFICER**

DATE RELEASED
2/13/21

NAME (Printed)
BUTALPH

TITLE
OFC

☐ SUPERVISOR  ☒ ARRESTING OFFICER  ☐ COURT OFFICER

SIGNATURE

Penal Code Section 849 provides in part:

(a)  When an arrest is made without a warrant by a peace officer or private person, the person arrested, if not otherwise released, shall, without unnecessary delay, be taken before the nearest or most accessible magistrate in the county in which the offense is triable, and a complaint stating the charge against the arrested person shall be laid before such magistrate.

(b)  Any peace officer may release from custody, instead of taking such person before a magistrate, any person arrested without a warrant whenever:

☐ (1)  He or she is satisfied that there are insufficient grounds for making a criminal complaint against the person arrested.

☐ (3)  The person was arrested only for being under the influence of a controlled substance or drug and such person is delivered to a facility or hospital for treatment and no further proceedings are desirable.

☐ (4)  The person was arrested for driving under the influence of alcohol or drugs and the person is delivered to a hospital for medical treatment that prohibits immediate delivery before a magistrate.

*(Amended by Stats. 2015, Ch, 499, Sec. 3. Effective January 1, 2016)*

nal Code Section 851.6 provides:

(a) In any case in which a person is arrested and released pursuant to agraph (1) or (3) of subdivision (b) of Section 849, the person shall be ued a certificate, signed by the releasing officer or his superior officer, cribing the action as a detention.

al Code Section 849.5 provides:

In any case in which a person is arrested and released and no accusatory pleading is filed charging him with an offense, any record of arrest of the person shall include a record of release. Thereafter, the arrest shall not be deemed an arrest, but a detention only.

Destroy Previous Editions

RIGHT SIDE

LEFT SIDE    I.D. NO.

SUPERVISOR

STATE OF CALIFORNIA
DEPARTMENT OF CALIFORNIA HIGHWAY PA[...]

**VEHICLE REPORT**
CHP 180 (Rev. 4-16) OPI[...]



**Rental Record# 816259161**

E: CHP 180 IS FURNISHED TO ALL PEACE
[IC]ERS BY THE CALIFORNIA HIGHWAY PATR[...]

**NIRBHAY AGARWAL**
CASJO11    0123611    3291    #01 EST

**VEHICLE** 01198/5547997    19 SIR 530I RWD SN
LIC CA 8KTM061 CLS K  MILES OUT 24186   FUEL OUT 8/8
SAT RADIO Y  TK CAP 18.0         STALL R 0 0161

### ESTIMATE OF CHARGES

RENTED: 02/12/21 22:01 @ SAN JOSE INTL AP
RETURN: 02/13/21 22:00 @ SAN JOSE INTL AP

THIS IS ONLY AN ESTIMATE. Taxable charges are denoted by a T, and
additional details about some charges appear on the right of the table below.
Our estimates of Your total charges appear beneath the table. Our
estimates assume (1) You will rent and return the vehicle at the
times and places indicated. (2) if a mileage charge applies, You will drive
no more than the distance indicated and (3) You will not incur any charges
that either are listed below opposite **** or cannot be calculated until
return. If any of these assumptions is incorrect, additional charges or
charges at higher rates may apply.

| CHARGE RATE / AMOUNT | | CHARGE ESTIMATE |
|---|---|---|
| TIME / MILEAGE CHGS: RATE PLAN –RCUD1 | | CLASS – K |
| **Rental Rate*** | 1 @ $ 128.00 per day T $ | 128.05 |
| *Includes Unlimited Miles | | |
| **Additional Products** | | |
| Loss Dmg Wvr | Accepted @ $ 39.99 per day $ | 39.99 |
| LIS | Accepted @ $ 16.35 per day $ | 16.35 |
| | | **** |
| Fuel & Service $ .416 /MI $9.99 /GAL 18.0 /TK CAP T $ | | |
| **Service Charges/Taxes** | | |
| CONCESSION FEE RECOVERY | 11.11% T $ | 18.94 |
| CA TOURISM ASSESSMENT | 3.50% $ | 4.48 |
| TRANSPORTATION FEE | | 7.50 |
| Vehicle License Fee | Accepted @ $ 2.40 per day T $ | 2.40 |
| | 149.39 $ | 13.81 |
| Tax 1 9.250% On Taxable Ttl $ | | **** |
| Tax 2 4.250% On California Refueling | | |
| ADJUSTMENTS | | |

### TOTAL ESTIMATED CHARGE      $ 231.52

CC AUTH WOULD BE    $ 432.00

---

**NIRBHAY AGARWAL**

Vehicle: 2019530
Lot R  Space:       161  License CA 8KTM061
**Rental Rate***                    1 @ $ 128.05 per day T $ 128.05
*Includes Unlimited Miles
**Additional Products**
Loss Dmg Wvr          Accepted @ $ 39.99 per day  $   39.99
LIS                   Accepted @ $ 16.35 per day  $   16.35
Frequent Flyer Surcharge                     T $    .00
Fuel & Service  $ .416 /MI $9.99 /GAL 18.0 /TK CAP T $   ****
**Service Charges/Taxes**
CONCESSION FEE RECOVERY          11.11% $   18.94
CA TOURISM ASSESSMENT             3.50% $    4.48
TRANSPORTATION FEE                            7.50
Vehicle License Fee   Accepted @ $ 2.40 per day T $   2.40
                                  149.39 $   13.81
Tax 1 9.250% On Taxable Ttl $                    ****
Tax 2 4.250% On California Refueling
ADJUSTMENTS

### TOTAL ESTIMATED CHARGE      $ 231.52

Credit Card Authorization Amount $    432.00
**Rented by The Hertz Corporation**
Vehicle: 01198 / 5547997 LocNum: CASJO11 / 0123611
Miles Out:        24186  Plan:    RCUD1  Class: K
Rental Location:  SAN JOSE INTL AP
Rental Time:      02/12/21 at 10:01 PM
Return Location:  SAN JOSE INTL AP
Return Time:      02/13/21 at 10:00 PM

Rental Extensions/Changes 1 – 800 – 654 – 4174
Emergency Road Service 1 – 800 – 654 – 5060

For Explanation of Charges: WWW.HERTZ.COM/CHARGEEXPLAINED
This estimate assumes you will rent and return at the locations and times
indicated, and that you will not exceed any mileage limitations.
Rental Rate subject to increase if you return Car more than 24 hours before
or 24 hours after scheduled Return Time. Late returns may be subject to
extra hour and/or extra day charges.
Charges indicated as **** will be calculated at return.
Taxable charges are preceded by a "T".
816259161                                    PG 1 OF 7 #01 RT

---

TIME DISPATCH NOTIFIED          LOG NO[...]

☐ ONE   MONTH / YEAR
☒ TWO      07/ 21
[...]TION BY  ☒ OFFICER ☐ OWNER
☐ 501-4000 ☒ 4001+   ☐ S[...]
[...]ER

IRST CO N[...]
WESTERN HWY
T 48033

COVERED - VEHICLE / COMP[...]

STORAGE AUTHORITY /
22651 (

☐ JUNK  ☐ UNK          ☐ YES
                       VIN SWIT[...]
TIRES / WHEELS     COND[...]
T FRONT        E
HT FRONT       A
T REAR         I
HT REAR        R[...]
RE             NO
CAPS           NO
[C]IAL WHEELS   NO
[SI]GNATURE)    DATE [...]

I CERTIFY THAT I AM LEGALLY
OF THE ABOVE DESCRIBED V[...]

(S) REPORT          DRIVER LICENSE[...]

TELEPHONE OF
(    )

VALUE $
☐ BILL OF LA[...]





FRONT         LEFT SIDE

SIGNATURE OF OFFICER TAKING REPORT

STATE OF CALIFORNIA
DEPARTMENT OF CALIFORNIA HIGHWAY PATROL

# VEHICLE REPORT
CHP 180 (Rev. 4-16) OPI 061

NOTE: CHP 180 IS FURNISHED TO ALL PEACE
OFFICERS BY THE CALIFORNIA HIGHWAY PATROL.

REPORTING DEPARTMENT
CHP - SOLANO

| LOCATION TOWED / STOLEN FROM | LOCATION CODE | DATE / TIME OF REPORT | NOTICE OF STORED VEHICLE | FILE NO. |
|---|---|---|---|---|
| RED TOP RD @ I-80 | 365 | 2/13/21 0116 | DELIVERED PERSONALLY ☐ | |

| YEAR | MAKE | | ODOMETER READING | VIN CLEAR IN SVS? ☐ YES ☒ NO | DATE / TIME DISPATCH NOTIFIED | LOG NO. |
|---|---|---|---|---|---|---|
| 2019 | BMW | | 24275 | LIC. CLEAR IN SVS? ☐ YES ☒ NO | | |

| VEHICLE IDENTIFICATION NO. | MODEL | BODY TYPE | COLOR | LICENSE NO. | | MONTH / YEAR | STATE |
|---|---|---|---|---|---|---|---|
| WBAJA5C50KWW49672 | 530i | 4D | GRY | 8KTM061 | ☒ ONE ☐ TWO | 07/21 | CA |

ENGINE NO. N/A

VALUATION BY ☒ OFFICER ☐ OWNER
☐ 0-500 ☐ 501-4000 ☒ 4001+ ☐ $

| REGISTERED OWNER | LEGAL OWNER |
|---|---|
| HERTZ VEHICLES LLC | ☐ SAME AS R/O |
| 8900 BELLANCA AVE | BNY MELLON TRST CO NA |
| LOS ANGELES CA 90045 | 26933 NORTHWESTERN HWY 100 |
| | SOUTHFIELD MI 48033 |

☐ STORED

TOWING / STORAGE CONCERN (NAME, ADDRESS, PHONE)

☐ IMPOUNDED     ☐ RELEASED     ☒ RECOVERED - VEHICLE / COMPONENT

| REASON FOR STOP | STORAGE AUTHORITY / REASON |
|---|---|
| BOLO | 22651 (c) VC |

AIRBAG? ☒ YES ☐ NO     DRIVEABLE? ☐ 1 ☒ 2 ☐ YES ☐ NO     VIN SWITCHED? ☐ YES ☒ NO
☐ JUNK ☐ UNK

| CONDITION | YES | NO | ITEMS | YES | NO | ITEMS | YES | NO | ITEMS | YES | NO | TIRES / WHEELS | CONDITION |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| WRECKED | | | SEAT (FRONT) | ☒ | | REGISTRATION | ☒ | | CAMPER | | ☒ | LEFT FRONT | F |
| BURNED HULK per 431(c) CVC | | ☒ | SEAT (REAR) | ☒ | | ALT. / GENERATOR | ☒ | | VESSEL AS LOAD | | ☒ | RIGHT FRONT | A |
| VANDALIZED | | ☒ | RADIO | ☒ | | BATTERY | ☒ | | FIREARMS | | ☒ | LEFT REAR | I |
| ENG. / TRANS. STRIP | | ☒ | TAPE DECK | | | DIFFERENTIAL | ☒ | | OTHER | | ☒ | RIGHT REAR | R |
| MISC. PARTS STRIP | | ☒ | TAPES | ☒ | | TRANSMISSION | ☒ | | | | | SPARE | NO |
| BODY METAL STRIP | | ☒ | OTHER RADIO | ☒ | | AUTOMATIC | ☒ | | | | | HUB CAPS | NO |
| SURGICAL STRIP per 431(b) CVC | | ☒ | IGNITION KEY | ☒ | | MANUAL | | | | | | SPECIAL WHEELS | NO |
| RELEASE VEHICLE TO: ☐ R/O OR AGENT ☐ AGENCY HOLD | | | | | | 22850.3 CVC | ☒ | | | | | | |

GARAGE PRINCIPAL / AGENT STORING VEHICLE (SIGNATURE)     DATE / TIME

| NAME OF PERSON / AGENCY AUTHORIZING RELEASE | I.D. NO. | DATE |
|---|---|---|
| D. BUDOLPH | 2116 | 2/13/21 |

SIGNATURE OF PERSON AUTHORIZING RELEASE

CERTIFICATION: I, THE UNDERSIGNED, DO HEREBY CERTIFY THAT I AM LEGALLY
AUTHORIZED AND ENTITLED TO TAKE POSSESSION OF THE ABOVE DESCRIBED VEHICLE.

SIGNATURE OF PERSON TAKING POSSESSION

☐ STOLEN VEHICLE / COMPONENT     ☐ EMBEZZLED VEHICLE     ☐ PLATE(S) REPORT

| DATE / TIME OF OCCURRENCE | DATE / TIME REPORTED | NAME OF REPORTING PARTY (R/P) | DRIVER LICENSE NO. / STATE |
|---|---|---|---|
| | | ADDRESS OF R/P | TELEPHONE OF R/P ( ) |
| LAST DRIVER OF VEHICLE | DATE / TIME | SIGNATURE OF PERSON MAKING REPORT | |

I CERTIFY OR DECLARE UNDER PENALTY OF PERJURY UNDER THE LAWS OF
THE STATE OF CALIFORNIA THAT THE FOREGOING IS TRUE AND CORRECT.

## REMARKS
[LIST PROPERTY, TOOLS, VEHICLE DAMAGE, ARRESTS]

Y5416870

| REPORTED BY | CARGO / TYPE? | VALUE $ |
|---|---|---|
| ZZ-80 | ☐ YES ☒ NO | ☐ BILL OF LADING ATTACHED |

ARRESTED / SECTION? ☐ YES ☒ NO

DRIVER'S NAME
NIRBHAY A GARWAL

RIGHT SIDE

LEFT SIDE     I.D. NO.     SUPERVISOR     7116

ATTACHMENT C

## DECLARATION OF MANUEL GARCIA

1.      My name is Manuel Garcia. I have personal knowledge of the facts stated in this declaration, and I can testify competently to them if called upon to do so.

2.      In summation: Manuel rented a car in January 2021 with Hertz at the Doral, FL location. This was a specially approved multi-month rental, where automatic payments were taken out at the end of each month. These multi-month rentals are long term rentals and the customers are preferred. At the end of October he noticed that the regular payment had not been taken out. He called his contact at the Doral location, John, on November 3 and asked him why Hertz had not taken its money. John said it was probably time to renew, and Manuel told him he wanted to renew. John told him he would note the file and Manuel said he would come in person the weekend of November 13, 2021 since he lived an hour away. He was not told of any issues. Then, to his shock, his car was towed while he was out to dinner in Brickell on November 10, 2021. The tow driver told him the car was reported stolen. Manuel called the Hertz location and they said they had no idea what happened and that they had not been contacted about a theft report. He then emailed Hertz customer service and demanded to know if they had filed a police report. Hertz was evasive, but eventually admitted that a police report was filed. Hertz is refusing to withdraw it, and will not follow up on the evidence he provided to them showing that he had extended.

3.      Manuel started an approved multi-month rental with the Hertz Doral location in January 2021.

4.      He renewed in April, under contract number: 997087652. He was in a Nissan Altima.

5.      Hertz had his Amex card on file and would bill at the end of every month for around $573.54. These rentals are essentially short term leases and the customers are obviously not car

1

thieves.

6.      He continued renewing the rental and the payments continued to be taken out of his account at the end of every month. His contact at the location was John, who knew who he was and that he was a continuing renter.

7.      No one from Hertz called him to say there was a problem.

8.      At the end of October 2021, he noticed that Hertz had not taken its payment.

9.      As a diligent renter who wanted to make sure that Hertz got its money, he called the Doral location on November 3, 2021, at 3:47 pm:



10.      He spoke with John for 10 minutes and asked why the payment had not come out. John said it must be up for a renewal. Manuel told John that he wanted to renew. John said that was not a problem, that he would note the account for a renewal, and that Manuel should come in the next week or so.

11.     John did not tell him about a theft report or any other problems.

12.     It was to Manuel's shock that, while out to dinner in Brickell, his rental car was towed on November 10, 2021. When he ran outside to ask what was happening, the tow truck driver said that the car had been reported stolen.

13.     Manuel was reeling. He has no record. He is also in the middle of immigration proceedings and is terrified that they are going to be affected.

14.     The tow truck driver said that if Manuel tried to stop the towing he would call police and Manuel would be arrested.

15.     Manuel emailed Hertz at 3:06 am on November 11, 2021, and told them:

> **From:** Manuel Garcia <mlizgar@gmail.com>
> **Date:** November 11, 2021 at 3:01:06 AM EST
> **To:** "Allen, Chelsea" <Chelsea.Allen@hertz.com>
> **Cc:** executivecustomerservice@hertz.com, customerrelations@hertz.com
> **Subject: COMPLAINT: False police report RR#911903005**
>
> Dear Chelsea and Customer Relationship teams,
>
> I would like to file a complaint and express my total dissatisfaction with how I've been treated by Hertz corporation.  I've been renting the referenced vehicle (Nissan Altima EGZ 726) on a multi-month lease program that I've been renewing every 3-4 months periods for a YEAR approximately now and I've been paying every single month the lease, without failing a single one as I had automatic payments on my card and never had a payment returned for any reason. My last automatic payment on the card has been on September 30, 2021 as you can see on the screenshot below.
>
> After realizing that I had not been charged at month end (on October 30, 2021) as usual on my AMEX card and reading your note below, I got in touch with the Hertz office that I've been renting the vehicle from: 36th St, Doral, Florida and I spoke with a representative to let him know my willingness to extend the lease for additional 3-4 month period as I've been doing consistently for the past year. He mentioned that he was taking note of my renewal request, he said that I would be ok and expressed that I just needed to go to the office and sign a lease renewal as I've done in the past. I mentioned to him that I was going to go next Saturday to formalize ir as I work during the week and I am an hour away from the Doral office. See screenshot of my outgoing call to Hertz Doral office to 305-

436-5885. The representative who has always been extending/renewing the multi month lease program, his name is Facundo.

Tonight, November 10, 2021 at 11 pm EST, my car was towed while I was at a restaurant named "The Cocinita" in Brickell, Miami (5th st, Miami, FL), as you can see in the video enclosed to this e-mail, which I took when I saw the towing company loading the car in their truck. The towing company informed me that the car removal was done under the basis that it was reported by Hertz as been stolen and it been picked up by a cámara-radar nearby which alerted the Towing company. Despite identifying myself as the lessee, they towed the car and they stayed that the police will have to be informed.

Could someone explain how an "stolen report was filed" and consequently had my car removed if my last monthly charge was placed on the account on September 29th? How can no charge has been posted after that even as a hold? How can no one at at Hertz Doral or Corporation has contacted me to attempted to reach out to let me know that my car will be reported as stolen?? And most importantly, how can this false police report has been placed on me specially after speaking to Hertz Doral office and advised of my intention of renewing the lease. This a very serious matter and completely unacceptable. I experienced one of the worst grievances and it could have been even worse, I could have been detained by the police and ended up in prison because someone at Hertz didn't do properly their job and obviously couldn't care less and treated a loyal customer that never missed a rental payment and communicated its intention of renewing the lease, like a mere car thief. It was one of the most humiliating experiences. I feel deeply aggravated and extremely unfairly treated.

Please note that I will be seeking legal counsel and I reserve my rights to take potential legal actions against Hertz for having allegedly filed a false police report with the damages and consequences that I suffered.

Sincerely,

Manuel García

Mlizgar@gmail.com

16.    Hertz never responded to his email.

17.    At 9:52 am he called the Doral location on the 305-436-5885 number:



18.    He spoke with John for 25 minutes and asked why John would possibly report him for theft.

19.    John assured Manuel that it was Hertz corporate who had filed the theft report, that the location knew nothing about it, and that they were not the ones who had reported the car stolen.

20.    Manuel was baffled that Hertz corporate would accuse him of car theft without ever checking with the location he was renting from.

21.    Manuel then emailed Hertz corporate on November 28, 2021, and demanded to know if they had filed a police report against him for theft.

22.    Hertz's employee Lori Barnard responded that the screenshot he had provided proving that he had spoke to the Hertz Doral location on November 3 was not proof he extended. It was evident that Lori and Hertz had not bothered to contact John at the Doral location to confirm

what Manuel was saying.

23.    Manuel emailed Lori back and pointedly observed that Lori had avoided answering

whether a theft report was filed:

> Dear Lori Bernard,
>
> You did not answer my question. Did Hertz file a police report against me and reported the car as stolen? The Hertz Doral location absolutely knew that this was not a stolen car and this was not a car theft. I never received any phone call regarding this and I followed up with the location on November 3rd to verify that I needed to extend the rental and the representative confirmed that extent.
>
> It's inconceivable that Hertz would report a multimonth customer like me that I joined in January 2021 (not since April as you are stating) and has been extending the rental consistently ever since without missing a payment.
>
> Please let me know immediately when and where a theft report was filed.

24.    Lori responded on December 1, 2021, that Manuel had been reported for theft,

apparently without Hertz ever contacting the location Manuel had been renting from and in touch

with:

> As stated previously after reviewing our records, I found no evidence that our Doral, CA location extended the contract on November 3rd, 2021. Please keep in mind when a customer fails to return rental property as agreed without extending the contract this is considered theft. In addition, we are not empowered to dismiss the police report that was filed with the authorities. Therefore, you must address this matter through the court system.

25.    This response is bizarre for several reasons. Why would Hertz not contact the Doral

location before filing a theft report? Why would Hertz not contact Doral employees after he

complained the theft report was false to confirm Manuel's version of events?

26.    Most importantly, why would Hertz falsely tell Manuel that it is not "empowered

to dismiss the police report that was filed with authorities" now that Hertz knows that Manuel is

explicitly contesting its accuracy and has provided objective telephone evidence that needs to be

followed up on?

27.    Manuel is now preparing to be arrested. He has been utterly devastated by what is

happening. As noted, he is a green card holder and is terrified that this is going to harm his immigration status. This is a complete and total nightmare.

28.     Manuel did not know about any bar date and did not see it in any publication. He did not even know there was an issue until November 10, 2021, when the car was towed. Manuel does not regularly read *USA Today*, *The Wall Street Journal*, *The New York Times*, *The Globe and Mail*, *The Philadelphia Inquirer*, *San Francisco Chronicle*, *Arizona Republic*, *Chicago Tribune*, *Los Angeles Times*, *The San Diego Union Tribune*, *Naples Daily News*, *El Diario De El Paso*, or *Journal De Montreal.*

29.     As a direct and proximate result of Hertz's conduct, Manuel was accused of car theft, reported to the police, is facing prosecution, and has suffered severe mental and emotional harm. He is watching his life fall apart.

30.     There was no probable cause for Hertz to report Manuel for any crime at any point in time.

I declare under the penalty of perjury of the United States of America that the foregoing is true and correct.

Dated:   December _____1st_____, 2021          /s/ _____
                                                                    Declarant

**From:** Manuel Garcia <mlizgar@gmail.com>
**Date:** November 11, 2021 at 3:01:06 AM EST
**To:** "Allen, Chelsea" <Chelsea.Allen@hertz.com>
**Cc:** executivecustomerservice@hertz.com, customerrelations@hertz.com
**Subject: COMPLAINT: False police report RR#911903005**

Dear Chelsea and Customer Relationship teams,

I would like to file a complaint and express my total dissatisfaction with how I've been treated by Hertz corporation.  I've been renting the referenced vehicle (Nissan Altima EGZ 726) on a multi-month lease program that I've been renewing every 3-4 months periods for a YEAR approximately now and I've been paying every single month the lease, without failing a single one as I had automatic payments on my card and never had a payment returned for any reason. My last automatic payment on the card has been on September 30, 2021 as you can see on the screenshot below.

After realizing that I had not been charged at month end (on October 30, 2021) as usual on my AMEX card and reading your note below, I got in touch with the Hertz office that I've been renting the vehicle from: 36th St, Doral, Florida and I spoke with a representative to let him know my willingness to extend the lease for additional 3-4 month period as I've been doing consistently for the past year. He mentioned that he was taking note of my renewal request, he said that I would be ok and expressed that I just needed to go to the office and sign a lease renewal as I've done in the past. I mentioned to him that I was going to go next Saturday to formalize ir as I work during the week and I am an hour away from the Doral office. See screenshot of my outgoing call to Hertz Doral office to 305-436-5885. The representative who has always been extending/renewing the multi month lease program, his name is Facundo.

Tonight, November 10, 2021 at 11 pm EST, my car was towed while I was at a restaurant named "The Cocinita" in Brickell, Miami (5th st, Miami, FL), as you can see in the video enclosed to this e-mail, which I took when I saw the towing company loading the car in their truck. The towing company informed me that the car removal was done under the basis that it was reported by Hertz as been stolen and it been picked up by a cámara-radar nearby which alerted the Towing

company. Despite identifying myself as the lessee, they towed the car and they stayed that the police will have to be informed.

Could someone explain how an "stolen report was filed" and consequently had my car removed if my last monthly charge was placed on the account on September 29th? How can no charge has been posted after that even as a hold? How can no one at at Hertz Doral or Corporation has contacted me to attempted to reach out to let me know that my car will be reported as stolen?? And most importantly, how can this false police report has been placed on me specially after speaking to Hertz Doral office and advised of my intention of renewing the lease. This a very serious matter and completely unaceptable. I experienced one of the worst grievances and it could have been even worse, I could have been detained by the police and ended up in prison because someone at Hertz didn't do properly their job and obviously couldn't care less and treated a loyal customer that never missed a rental payment and communicated its intention of renewing the lease, like a mere car thief. It was one of the most humiliating experiences. I feel deeply aggravated and extremely unfairly treated.

Please note that I will be seeking legal counsel and I reserve my rights to take potential legal actions against Hertz for having allegedly filed a false police report with the damages and consequences that I suffered.

Sincerely,
Manuel García
Mlizgar@gmail.com



◀ Search

# Search

🔍 Hertz                                    ✕

Filters    📅 10 Apr - 10 Nov

**6 Transactions**

| | |
|---|---|
| Sep 29, 2021<br>HERTZ CAR RENTAL OKLAHOMA CITY OK | $551.48 |
| Aug 30, 2021<br>HERTZ CAR RENTAL OKLAHOMA CITY OK | $551.48 |
| Jul 1, 2021<br>HERTZ CAR RENTAL 800-654-4173 FL | $573.54 |
| Jun 1, 2021<br>HERTZ CAR RENTAL 800-654-4173 FL | $606.63 |
| May 23, 2021<br>HERTZ VIOLATION-ATS 877-977-5771 FL | $66.00 |
| May 2, 2021<br>HERTZ CAR RENTAL 800-654-4173 FL | $673.06 |



# ATTACHMENT D

<table>
<tr><td colspan="2" align="center"><b>IN THE UNITED STATES BANKRUPTCY COURT<br>FOR THE DISTRICT OF DELAWARE</b></td></tr>
</table>

| | |
|---|---|
| In re | Chapter 11 |
| The Hertz Corporation, *et al.*,[1] | Case No. 20-11218 (MFW) |
| Debtors. | (Jointly Administered) |
| | **Re: D.I. 1038** |

### DECLARATION OF JAMES TOLEN AND KRYSTAL D. CARTER

1.       Our names are James Tolen and Krystal D. Carter. We are competent adults over the age of 18 and have personal knowledge of the facts stated in this declaration and we can testify competently to them if called upon to do so:

2.       In summation: Krystal is a President's Circle renter who rented a car with Hertz at the 9150 South Main Street location in Houston, TX in October 2020. On December 23, 2020, her authorized driver James was arrested at gun point in the vehicle. Inexcusably, it had been reported stolen in September 2020 and Hertz then rented the "stolen" car to James.  Despite contact with Hertz and its assistant general counsel Adam Schloss, they were never told about by Hertz about the need to file claims in the bankruptcy. Their counsel in Texas filed a complaint on July 30, 2021. On August 24, 2021, their attorney was sent a threatening letter by Debtors' counsel Sam Hershey of White and Case. The letter threatened to file severe sanctions unless the complaint was withdrawn immediately. The letter claimed they should have filed claims by the Bar Date even

---

[1] The last four digits of the Hertz Corporation's tax identification number are 8568.  The location of the debtors' service address is 8501 Williams Road, Estero, Fl 33928.  Due to the large number of debtors in these chapter 11 cases, for which join administration for procedural purposes has been requested, a complete list of the debtors and the last four digits of their federal tax identification numbers is not provided herein.  A complete list of such information may be obtained on the website of the debtors' claims and noticing agent at https://restructing.primeclerk.com/hertz.

though their claim arose after the October 2020 bar date. As a result of Hertz's threatening letter, James and Krystal's counsel filed a nonsuit. James and Krystal only found out about the letter and the nonsuit in September 2021.

3.      Krystal Carter rented a car at the 9150 South Main St., Houston, TX location in October 2020. She has been a President's Circle member for 6 years. She extended the vehicle out through December 30, 2020. Her authorized driver was James Tolen.

4.      James was driving in the vehicle on December 23, 2020 in Third Ward a neighborhood of Houston, TX. He was pulled over and a loudspeaker told him to open the door. He was confused and scared.

5.      When he opened the door at least 4 officers had chambered guns pointed at him. They made him raise his shirt, then they patted him down, cuffed him and put him in the back of a squad car. It was humiliating and terrifying.

6.      It was only at that point did they tell him that he was driving a stolen vehicle. While riding to the station he told the officers that he is an authorized driver on the contract, that it had been extended, and that he had not stolen the car.

7.      When the police got to the station, they called Hertz to check out the contract. It was at that point that the officers realized that the contract was valid. Hertz had reported the car stolen in September 2020, before Krystal had ever rented the car. The officer was livid and told Hertz "do you know what you just put him through?"

8.      Krystal was charged $2,285.21 for the rental.

9.      Krystal then contacted Hertz's Executive Customer Service on December 27, 2020. Exhibit 1. Nycole from Hertz's corporate office called her back and said on a message that her supervisor had decided how to resolve the incident.  Exhibit 2.

2

10.     Hertz corporate indicated on a phone call that the company would refund the $2,285.21 but needed James and Krystal to sign a release and wavier allegedly due to the size of the refund. Exhibit 3. James and Krystal refused as they had previously been given a refund of $3,151.69 by Hertz in 2020 and knew that the purported need for a waiver was false. Exhibit 4.

11.     James and Krystal were outraged. Hertz had in a calculated manner, with false statements and reasons, tried to get James and Krystal to waive and otherwise harm their rights. After being called out by Krystal, Hertz refused to respond further. This was not the last time Hertz would harm their rights.

12.     At no point did Hertz inform James or Krystal about the bankruptcy or the need to file claims.

13.     Then, on January 8, 2021, Hertz assistant general counsel Adam Schloss began sending insulting emails to James and Krystal's Texas counsel, while claiming that Hertz was conducting a review and investigation.  Exhibit 5. Nowhere did Schloss provide notice of the bankruptcy, the need to file claims, nor the need to opt out of the releases in the plan.

14.     Even though Texas counsel told Schloss he was going to file suit, Exhibit 5, Schloss never told him he had to file a proof of claim—knowing full well that Hertz had no excuse for what it did to James.

15.     On January 14, 2021, Hertz's claim administrator ESIS stated it was evaluating the claim. It did not provide notice of the need to file claims in Hertz's bankruptcy. Exhibit 6.

16.     Jamesn and Krystal's counsel in Houston, TX filed suit on July 30, 2021. Exhibit 7. Although the complaint copies and pastes from the False Police Report Claimants' filings, no counsel for the False Police Report Claimants was involved. The complaint was served on Hertz on August 5, 2021.

3

17.     On August 24, 2021, Debtors' counsel Sam Hershey from White and Case and Winston and Strawn sent an extremely threatening letter to James and Krystal's Texas counsel. It threatened to have all of them sanctioned unless the complaint was withdrawn in 3 days. Exhibit 7. It further told Texas counsel that all claims had been discharged and waived because they had not filed a claim by the Bar Date, even though their claim had arisen after the deadline.

18.     Without their knowledge, their scared Texas attorney filed for a nonsuit without prejudice, which they only found out about in September 2021.

19.     In a childish, unprofessional, and underhanded action, Hertz assistant general counsel Adam Schloss snarkily responded to the January 8, 2021 email chain eight months later on September 2, 2021, after the Texas case was dismissed: "Didn't hertz so much after all I guess." Exhibit 5.

20.     Clearly Schloss had been waiting to send that email for months and was intimately involved in failing to inform James and Krystal about their rights. Restated, Schloss not only never provided notice of the need to file claims in the bankruptcy in January 2021, but then could not resist crowing and insulting James and Krystal's attorney.

21.     As a direct and proximate result of Hertz's actions and omissions, James was falsely arrested for car theft and suffered extreme mental and emotional distress.

22.     Hertz had no probable cause to have James arrested for car theft.

I declare under the penalty of perjury of the United States of America that the foregoing is true and correct.

Dated:  October ___19___, 2021

/s/ _____
Declarant

Dated:  October ___19___, 2021

/s/ _____
Declarant

4

# EXHIBIT 1

2:02

# Handcuffed and detained at gunpoint over a Hertz Clerical error.  Inbox

 **me** Dec 27
to cmorrow1, edward.harris, james ⌄

I am a President's Circle Hertz client. We've been loyal to Hertz this year as indicated by our status. That makes the incident I'm reporting even more disturbing.

On the evening of December 23rd, James Tolen was pulled over for driving a stolen vehicle. At gunpoint, officers handcuffed and detained James and took him into the police station where they discovered that James was indeed on this current reservation and the truck had been reported stolen in September (prior to our reservation) which means that Hertz rented us a truck that had been reported stolen.

If the police had not further investigated, James, in addition to reliving having guns drawn on him by police every time he goes to sleep and randomly throughout the day, he would have missed the holidays (as there would have been no hearing for him on the 24th or 25th), and he would have had to spend the entire weekend in jail for driving a rental that we were paying handsomely for (roughly $2100) because of a clerical error on Hertz.

**Krystal D. Carter** | President & Chief Cloud Enthusiast
832.303.0107 | @kdcSFDClifer
Schedule a Consult

2700 Post Oak Blvd
21st Floor
Houston, TX 77056

# EXHIBIT 2

dannykayconsulting

Krystal Carter <kdcarter@dannykayconsulting.com>

**New voicemail from (800) 654-3131**
1 message

**Google Voice** <voice-noreply@google.com>                        Mon, Dec 28, 2020 at 4:10 PM
To: kdcarter@dannykaycloud.com

📞 Voice

Hi Miss Carter, this is Nicola with the Hertz corporate office. Again. I was calling you to update you on the resolution that are my supervisor has decided on your incident. If you could give me a call back at 405-7206, I'm sorry +385-405-720-3385 so that we can further discuss. That'll be great. Thank you. Have a great rest of your day. Bye.

PLAY MESSAGE

YOUR            HELP            HELP
ACCOUNT      CENTER        FORUM

This email was sent to you because you indicated that you'd like to receive email notifications for voicemail. If you don't want to receive such emails in the future, please update your email notification settings.

Google

Google LLC
1600 Amphitheatre Pkwy
Mountain View CA 94043 USA



Krystal Carter <kdcarter@dannykayconsulting.com>

**New voicemail from (800) 654-3131**
1 message

**Google Voice** <voice-noreply@google.com>                                   Tue, Dec 29, 2020 at 8:49 AM
To: kdcarter@dannykaycloud.com

📞 Voice

Hi Ms. Carter, this is Nicole with the Hertz corporate office again. I was just calling to
follow up with you about the police report that you were going to send to us. We have
yet to receive that. I am going to send over the wrong way over here shortly, but we're
really taking this matter seriously and want to get to the root of the the root cause of
the stop that you guys had. So you can please provide at least the the agency number
or anything regarding the police report, or if you can just send over the place for a
copy of the replacement for it. That would be great so that we can move ahead and
investigate that and find out why you were stopped. So if you have any other
questions or concerns, feel free to give me a call back at 405-720-3585, and you can
also just email us back with that information as well. Thank you, and have a great rest
of your day. Bye.

PLAY MESSAGE

YOUR          HELP          HELP
ACCOUNT    CENTER      FORUM

This email was sent to you because you indicated that you'd like to receive email notifications
for voicemail. If you don't want to receive such emails in the future, please update your email
notification settings.

# EXHIBIT 3

GENERAL RELEASE AND CONFIDENTIAL SETTLEMENT AGREEMENT

KNOW ALL MEN BY THESE PRESENTS that **KRYSTAL CARTER** does hereby acknowledge receipt of the sum of **$2,100.00**, which amount has been accepted in full compromise, settlement, and satisfaction of, and as sole consideration for, the final release and discharge of all actions, claims and demands whatsoever that now exist, or might hereafter accrue, against **THE HERTZ CORPORATION**, and any and all of its parents, subsidiaries, members or affiliates, any and all of its predecessors or successors or the predecessors or successors to its parents, subsidiaries, members or affiliates, any of its past, present or future directors, officers, employees, representatives and attorneys and any of the past, present and future directors, officers, employees, representatives and attorneys of its parents, subsidiaries, members, affiliates, predecessors or successors (hereinafter individually and collectively referred to as the **"HERTZ RELEASEES"),** which and who might be charged with responsibilities for injuries to the property or person of **KRYSTAL CARTER** and the consequences flowing therefrom, resulting, or to result, or which might result from incidents or occurrences that allegedly took place on or after December 23, 2020, and for which **KRYSTAL CARTER** claims the said persons or parties are legally liable in damages, but which legal liability and damages have been disputed and denied.  This Release shall not ever be construed as an admission of guilt or liability by any of the **HERTZ RELEASEES**.

 **KRYSTAL CARTER** warrants that no promise or inducement has been offered except as herein set forth.  **KRYSTAL CARTER** warrants further that this Release is being executed without reliance upon any statement or representation by any of the **HERTZ RELEASEES** concerning the nature and extent of the damages and/or legal liability, therefore.  **KRYSTAL CARTER** warrants further that she is of legal age, legally competent to execute this Release, and accepts full responsibility, therefore.  **KRYSTAL CARTER** agrees, as a further consideration and inducement for this compromise and settlement, that **IT IS A FULL AND FINAL GENERAL RELEASE** of all claims against the **HERTZ RELEASEES** and shall apply to all **KNOWN AND UNKNOWN INJURIES AND/OR** anticipated and unanticipated **DAMAGES**, which might have resulted from the incidents or occurrences that allegedly took place on or after December 23, 2020. **KRYSTAL CARTER** further agrees to defend, indemnify and save harmless the **HERTZ RELEASEES** from all liability, damages, costs and expenses of every kind and nature, including but not limited to all liens for expenses, bills, or other insurance benefits arising out of any damages allegedly sustained by **KRYSTAL CARTER**. **KRYSTAL CARTER** hereby declares that the terms of this Release have been completely read, are fully understood and voluntarily accepted by her for the purpose of making a full and final settlement of any and all claims, disputed or otherwise, on account of injuries and/or damages related to the claims set forth herein, and for the express purpose of precluding forever any further additional claims against the **HERTZ RELEASEES**.

 **KRYSTAL CARTER** and her authorized driver, **JAMES TOLEN**, agree and covenant to keep confidential and not disclose to any third party the terms and conditions of this Settlement Agreement, the existence of this Settlement Agreement, or any of the negotiations and discussions

that preceded its making, except as follows in which cases she will nevertheless use her best efforts to seek confidential treatment by any receiving party: (i) as is necessary to dismiss the instant action; (ii) as is necessary to effectuate any term or provision of the settlement, including any subsequent litigation to enforce the settlement, except that they shall take all reasonable steps to maintain the confidentiality of this information including filing documents under seal and entry of appropriate protective orders; (iii) to **KRYSTAL CARTER'S** insurers, as necessary

to pursue insurance claims; (iv) to **KRYSTAL CARTER** accountants; and (v) as required by law or court order upon notice sufficiently in advance of such disclosure to permit to seek a protective order.

The Confidentiality section of this Release shall be construed to expressly and without exception (except as provided in the preceding paragraph), preclude and prohibit **KRYSTAL CARTER** and **JAMES TOLEN** from being able to publicly acknowledge, discuss, publish, advertise or otherwise reference in any manner, the monetary amount of the settlement, as well as the terms and conditions of this settlement. **KRYATAL CARTER** and **JAMES TOLEN** acknowledge that any failure to honor the Confidentiality section of this Release will result in the immediate forfeiture of all settlement funds paid herein.

Additionally, **KRYSTAL CARTER** and **JAMES TOLEN** acknowledge that any failure to comply with the Confidentiality section of this Release shall result in the imposition against her of monetary sanctions, penalties, costs and all other appropriate remedies, as deemed appropriate by the court presiding over the jurisdiction in which this Release was executed.

**KRYSTAL CARTER** further understands and agrees that this Release, settlement and any payment made is not to be construed as an admission of liability. Rather, this is acknowledged to be a settlement of a disputed claim. **KRYSTAL CARTER** hereby agrees not to pursue any further claim, of any kind, with each side bearing its own costs and attorneys' fees. **KRYSTAL CARTER**

The invalidity or unenforceability of any term or provision herein shall not affect or impair the validity or enforcement of any other term or provision herein.  This General Release and Confidential Settlement Agreement contains the entire agreement entered into by **KRYSTAL CARTER** with respect to the subject matter hereof and may not be modified or any provision waived without the prior written consent of THE HERTZ CORPORATION.   IN WITNESS WHEREOF, **KRYSTAL CARTER** and **JAMES TOLEN** have hereunto set her hand and seal the 29th day of December 2020.

I HAVE READ THE FOREGOING RELEASE AND FULLY UNDERSTAND IT.

WITNESS: _____   _____

WITNESS: _____   _____

STATE OF                                                            :  SS.

                                                                          :

                                                                          :

On this _____ day of December in the year 2020, before me personally came_____ , said person being known to me to be the person who is described in and who executed the foregoing Release and acknowledged to me that she executed the same. _____ Notary Public

**WITH RESPECT TO THE CONFIDENTIALITY PROVISIONS**, _____has read and hereby agrees to such provisions.

December ____, 2020

# EXHIBIT 4

Krystal Carter <kdcarter@dannykayconsulting.com>

## Hertz Customer Care Case # 09934576

**Krystal Carter** <kdcarter@dannykaycloud.com>                                   Wed, Dec 30, 2020 at 10:12 AM
To: "executivecustomerservice@hertz.com" <executivecustomerservice@hertz.com>
Cc: james@blackjackrenovations.com, cmorrow1@hertz.com, edward.harris@hertz.com
Bcc: hadi@thehadlilawfirm.com

Nycole,

Thank you for sending this, however, I am not going to sign this. In our call you indicated that we would need to sign a waiver for you all to refund the $2,100 because of *the size of the refund*. However, in July there was another Hertz clerical error that resulted in us being charged $4,172.57 for a one month rental. You all refunded $3,151.69, an amount which exceeds the $2,100 being offered now, on July 23rd without the requirement of a waiver. I would expect to not be charged for a rental that resulted in the ordeal that James experienced, with or without a waiver.

We will be closing out the reservation this around 1pm today. Thanks.

# EXHIBIT 5

 **Gmail**

**Husein Hadi <huseinhadi@gmail.com>**

## RE: Ms. Carter - Hertz
8 messages

**Angel Pleitez** <angel@thehadilawfirm.com>                    Mon, Jan 4, 2021 at 1:08 PM
To: aschloss@hertz.com

Good afternoon,

Please see the following attachment. Thank you.


--
Angel Pleitez
Legal Assistant
DOWNLOAD OUR APP **for APPLE and ANDROID devices**

www.facebook.com/thehadilawfirm
www.thehadilawfirm.com

The Hadi Law Firm
7100 Regency Square Blvd, Suite 140
Houston, TX 77036
P: (832) 433-7977
F: (855) HADI-LAW (423-4529)

---

📄 **Burkhalter - Hertz LOR  (1).pdf**
405K

---

**Schloss, Adam** <aschloss@hertz.com>                          Fri, Jan 8, 2021 at 11:42 AM
To: "angel@thehadilawfirm.com" <angel@thehadilawfirm.com>, "hadi@thehadilawfirm.com" <hadi@thehadilawfirm.com>
Cc: "info@thehadilawfirm.com" <info@thehadilawfirm.com>


Mr. Hadi:


I understand that your firm is high volume and we're certainly very impressed that "all you do is pick juries," but in the interests of professionalism, I thought I'd share that Hertz is continuing its internal investigation of this matter but unfortunately one of the employees we plan to speak with is out of the office until January 12th. Hertz will send a formal response at that time. The attached Notice of Representation makes little sense given the context of your client's allegations but again I recognize that your firm sends out boilerplate letters, so I won't read too much into the lack of detail on your end. If you want to have a real discussion without hanging the phone up on me, I'm available at the number below.


**Adam Schloss**

Assistant General Counsel
**O:** 239-301-7298
**E:** aschloss@hertz.com

The Hertz Corporation

8501 Williams Road

Estero, FL 33928



We're here to get you there.

[Quoted text hidden]

--------------- This message (including attachments) may contain information that is privileged, confidential or protected from disclosure. If you are not the intended recipient, you are hereby notified that dissemination, disclosure, copying, distribution or use of this message or any information contained in it is strictly prohibited. If you have received this message in error, please immediately notify the sender by reply e-mail and delete this message from your computer. Although we have taken steps to ensure that this e-mail and attachments are free from any virus, we advise that in keeping with good computing practice the recipient should ensure they are actually virus free. ---------------

---

 **Burkhalter - Hertz LOR  (1).pdf**
405K

---

**Husein Hadi** <Hadi@thehadilawfirm.com>             Fri, Jan 8, 2021 at 11:47 AM
To: "Schloss, Adam" <aschloss@hertz.com>
Cc: "angel@thehadilawfirm.com" <angel@thehadilawfirm.com>, "info@thehadilawfirm.com" <info@thehadilawfirm.com>

Mr. Schloss,

Please be respectful when emailing my office. Please do not mistake us for a "high volume" firm sir. Once we are prepared, we will file suit. You and I have nothing to discuss until that point.

If you have any questions, please, let us know.

Thanks.

Hadi.
[Quoted text hidden]
--

Husein Hadi
Attorney at Law

**The Only Law Firm in Texas with 2 Verdicts over Policy Limits in February 2018**
**30 trials to Verdict in 2019**
**3 TOP 100 Verdicts in 2019**


**DOWNLOAD OUR APP!**

**APPLE**

**ANDROID**



The Hadi Law Firm
7100 Regency Square Blvd, Suite 140
**Houston**, TX 77036

P: (832) 433-7977
F: (855) HADI-LAW (423-4529)



This message is being sent by or on behalf of a lawyer.  It is intended exclusively for the individual or entity to which it is addressed.   This communication may contain information that is proprietary, privileged or confidential or otherwise legally exempt from disclosure.  If you are not the named addressee, you are not authorized to read, print, retain, copy or disseminate this message or any part of it.  If you have received this message in error, please notify the sender immediately by e-mail and delete all copies of this message. **Be advised that all calls to The Hadi Law Firm are recorded and reviewed for training and quality purposes.**

---

**Schloss, Adam** <aschloss@hertz.com>                                            Fri, Jan 8, 2021 at 11:53 AM
To: Husein Hadi <Hadi@thehadilawfirm.com>
Cc: "angel@thehadilawfirm.com" <angel@thehadilawfirm.com>, "info@thehadilawfirm.com" <info@thehadilawfirm.com>

Mr. Hadi:


    You advised me on our short call that your firm is one of the most prolific case filers in Texas – and nationwide for that matter.  I believe that is the very definition of a high-volume law firm.  I question whether you actually spoke with your client before providing this response, but I suppose that is between the two of you.  And for the record, I am always professional.




**Adam Schloss**

Assistant General Counsel
**O:**  239-301-7298
**E:** aschloss@hertz.com


The Hertz Corporation

8501 Williams Road

Estero, FL 33928





We're here to get you there.


[Quoted text hidden]
[Quoted text hidden]

---

**Husein Hadi** <Hadi@thehadilawfirm.com>                                          Fri, Jan 8, 2021 at 11:55 AM
To: "Schloss, Adam" <aschloss@hertz.com>
Cc: "angel@thehadilawfirm.com" <angel@thehadilawfirm.com>, "info@thehadilawfirm.com" <info@thehadilawfirm.com>

Mr. Schloss,

Don't hertz yourself with this case.

Thanks.

Hadi.
[Quoted text hidden]

---

**Schloss, Adam** <aschloss@hertz.com>            Thu, Sep 2, 2021 at 2:25 PM
To: Husein Hadi <Hadi@thehadilawfirm.com>
Cc: "angel@thehadilawfirm.com" <angel@thehadilawfirm.com>, "info@thehadilawfirm.com" <info@thehadilawfirm.com>


Didn't hertz so much after all I guess.



**Adam Schloss**

Assistant General Counsel
**O:** 239-301-7298
**E:** aschloss@hertz.com


The Hertz Corporation

8501 Williams Road

Estero, FL 33928





[Quoted text hidden]
[Quoted text hidden]

---

**Husein Hadi** <Hadi@thehadilawfirm.com>            Thu, Sep 2, 2021 at 2:28 PM
To: "Schloss, Adam" <aschloss@hertz.com>
Cc: "angel@thehadilawfirm.com" <angel@thehadilawfirm.com>, "info@thehadilawfirm.com" <info@thehadilawfirm.com>

It's gonna hertz when our Delaware firm gets involved. :D

Wait for it.
[Quoted text hidden]
[Quoted text hidden]



**The Only Law Firm in Texas with 2 Verdicts over Policy Limits in February 2018**
**30 trials to Verdict in 2019**
**3 TOP 100 Verdicts in 2019**

**Obtained the Most Powerful Verdict in the Practice of Personal Injury, in Texas, over the last 100+ years, on November 12, 2020, in Montgomery County; Stowers Trial Verdict.**

**DOWNLOAD OUR APP!**

**APPLE**

**ANDROID**

The Hadi Law Firm
7100 Regency Square Blvd, Suite 140
**Houston**, TX 77036
P: (832) 433-7977
F: (855) HADI-LAW (423-4529)

[Quoted text hidden]

---

**Husein Hadi** <Hadi@thehadilawfirm.com>                    Thu, Sep 2, 2021 at 2:28 PM
To: Sedrick Stagg <stagg@thehadilawfirm.com>

This fool here. haha.
[Quoted text hidden]

# EXHIBIT 6

 Gmail

**Husein Hadi <huseinhadi@gmail.com>**

---

## Letter Of Representation - James Tolen and Krystal Carter
2 messages

---

**Lundy, Geoffrey M** <Geoffrey.Lundy@esis.com>      Thu, Jan 14, 2021 at 3:52 PM
To: "angel@thehadilawfirm.com" <angel@thehadilawfirm.com>, "info@thehadilawfirm.com" <info@thehadilawfirm.com>

As we discussed,

Please provide us with all the information so that we may establish a claim for you clients from the 12/23/2020 loss where you are seeking damages.


Thank you.


**Geoffrey Lundy**

Claims Team Leader

Hertz Claims Office

## ESIS®

P.O. Box 6562

Scranton, PA 18505-0568

Phone   913-563-1997

Fax     844-890-6967

Email   Geoffrey.Lundy@esis.com


--------------- Forwarded Message ---------------
**From:** Angel Pleitez [angel@thehadilawfirm.com]
**Sent:** 1/4/2021 12:13 PM
**To:** executivecustomerservice@hertz.com
**Subject:** RE: Letter Of Representation


Good afternoon,


 Please see the following attachment. Thank you.


--

Angel Pleitez

Legal Assistant

**DOWNLOAD OUR APP for APPLE and ANDROID devices**

www.facebook.com/thehadilawfirm
www.thehadilawfirm.com

The Hadi Law Firm
7100 Regency Square Blvd, Suite 140
Houston, TX 77036
P: (832) 433-7977
F: (855) HADI-LAW (423-4529)

--------------- This message (including attachments) may contain information that is privileged, confidential or protected from disclosure. If you are not the intended recipient, you are hereby notified that dissemination, disclosure, copying, distribution or use of this message or any information contained in it is strictly prohibited. If you have received this message in error, please immediately notify the sender by reply e-mail and delete this message from your computer. Although we have taken steps to ensure that this e-mail and attachments are free from any virus, we advise that in keeping with good computing practice the recipient should ensure they are actually virus free. ---------------

ref:_00D15EeK3._5001C1cL8CM:ref

--------------- This message (including attachments) may contain information that is privileged, confidential or protected from disclosure. If you are not the intended recipient, you are hereby notified that dissemination, disclosure, copying, distribution or use of this message or any information contained in it is strictly prohibited. If you have received this message in error, please immediately notify the sender by reply e-mail and delete this message from your computer. Although we have taken steps to ensure that this e-mail and attachments are free from any virus, we advise that in keeping with good computing practice the recipient should ensure they are actually virus free. ---------------

---

This email (including any attachments) is intended for the designated recipient(s) only, and may be confidential, non-public, proprietary, and/or protected by the attorney-client or other privilege. Unauthorized reading, distribution, copying or other use of this communication is prohibited and may be unlawful. Receipt by anyone other than the intended recipient(s) should not be deemed a waiver of any privilege or protection. If you are not the intended recipient or if you believe that you have received this email in error, please notify the sender immediately and delete all copies from your computer system without reading, saving, printing, forwarding or using it in any manner. Although it has been checked for viruses and other malicious software ("malware"), we do not warrant, represent or guarantee in any way that this communication is free of malware or potentially damaging defects. All liability for any actual or alleged loss, damage, or injury arising out of or resulting in any way from the receipt, opening or use of this email is expressly disclaimed.

---

**Husein Hadi** <Hadi@thehadilawfirm.com>                                     Fri, Jan 15, 2021 at 6:35 AM
To: Husein Hadi <themob@thehadilawfirm.com>

Only send a police report when we get it. Also, we need to send a FOIA request for all material recorded or obtained at the scene of the arrest.
[Quoted text hidden]
--
Husein Hadi Attorney at Law www.facebook.com/thehadilawfirm www.thehadilawfirm.com The Hadi Law Firm 7100 Regency Square Blvd, Suite 140 Houston, TX 77036 P: (832) 433-7977 F: (855) HADI-LAW (423-4529) The Hadi Law Firm 7901 Cameron Rd., Bldg 3, Suite 331 Austin, Texas 78754 Bahadori, Hadi & Thomas, PLLC 2 Park Plaza, Suite 450 Irvine, California 92614 This message is being sent by or on behalf of a lawyer. It is intended exclusively for the individual or entity to which it is addressed. This communication may contain information that is proprietary, privileged or confidential or otherwise legally exempt from disclosure. If you are not the named addressee, you are not authorized to read, print, retain, copy or disseminate this message or any part of it. If you have received this message in error, please notify the sender immediately by e-mail and delete all copies of this message.

# EXHIBIT 7

7/30/2021 3:55 PM
Marilyn Burgess - District Clerk Harris County
Envelope No. 55880329
By: Courtni Gilbert
Filed: 7/30/2021 3:55 PM

# 2021-46720 / Court: 295

**NO. _____**

| | | |
|---|---|---|
| **JAMES TOLEN** | § | **IN THE DISTRICT COURT** |
| *Plaintiff,* | § | |
| | § | |
| **V.** | § | **____ JUDICIAL DISTRICT** |
| | § | |
| | § | |
| **HERTZ GLOBAL HOLDINGS, INC.,** | § | |
| **ET AL** | § | |
| *Defendants.* | § | **OF HARRIS COUNTY, TEXAS** |

## PLAINTIFF'S ORIGINAL PETITION AND REQUEST FOR DISCLOSURES

## TO THE HONORABLE JUDGE OF SAID COURT:

**NOW COMES**, JAMES TOLEN, hereinafter called Plaintiff, complaining of and about Hertz Global Holdings, Inc., The Hertz Corporation, Rental Car Intermediate Holdings, LLC, Hertz Investors, Inc., Hertz Vehicles, LLC, Hertz Vehicle Financing LLC, Hertz Vehicle Financing III, LLC, Hertz Local Edition Corp., Dollar Rent A Car, Inc., Icahn Associates Holding LLC, Icahn Enterprises, LP, Icahn Enterprises Holdings, LP, Icahn Capital, LP, and Icahn Enterprises GP, Inc., hereinafter called Defendants, and for cause of action show unto the Court the following:

### DISCOVERY CONTROL PLAN LEVEL

1.    Plaintiff affirmatively plead that they seek monetary relief in excess of $1,000,000.00, including damages of any kind, penalties, costs, expenses, pre-judgment interest and attorney fees and intends that discovery be conducted under Discovery Level 2.

### PARTIES AND SERVICE

2.    Plaintiff, JAMES TOLEN, is an individual who resides in Harris County, Texas.

3.    Defendant Hertz Global Holdings, Inc., is a Delaware corporation with principal executive offices located at 8501 Williams Road, Estero, Florida 33928. Its registered agent for

service of process within the State of Delaware is The Corporation Trust Company, Corporation Trust Center, 1209 Orange Street, Wilmington, Delaware 19801. Hertz is engaged in the automobile and equipment rental businesses worldwide. The Company's stock is traded on the New York Stock Exchange under the ticker symbol "HTZ."

4.     Defendant The Hertz Corporation is a Delaware corporation doing business in Texas. It may be served pursuant to article 2.11(A) of the Texas Business Corporations Act, or its successor statutes, sections 5.201 and 5.255 of the Texas Business Organizations Code, by serving its registered agent, CT Corporation System, 1999 Bryan Street, Suite 900, Dallas, TX 75201. Service of said Defendant as described herein may be affected by personal delivery.

5.     Defendant Rental Car Intermediate Holdings, LLC is a Delaware corporation doing business in Texas. It may be served pursuant to article 2.11(A) of the Texas Business Corporations Act, or its successor statutes, sections 5.201 and 5.255 of the Texas Business Organizations Code, by serving its registered agent, CT Corporation System, 1999 Bryan Street, Suite 900, Dallas, TX 75201. Service of said Defendant as described herein may be affected by personal delivery.

6.     Defendant Hertz Investors, Inc. is a Delaware corporation doing business in Texas. It may be served pursuant to article 2.11(A) of the Texas Business Corporations Act, or its successor statutes, sections 5.201 and 5.255 of the Texas Business Organizations Code, by serving its registered agent, CT Corporation System, 1999 Bryan Street, Suite 900, Dallas, TX 75201. Service of said Defendant as described herein may be affected by personal delivery.

7.     Defendant Hertz Vehicles, LLC is a Delaware corporation doing business in Texas. It may be served pursuant to article 2.11(A) of the Texas Business Corporations Act, or its successor statutes, sections 5.201 and 5.255 of the Texas Business Organizations Code, by serving its registered agent, CT Corporation System, 1999 Bryan Street, Suite 900, Dallas, TX 75201.

2

Service of said Defendant as described herein may be affected by personal delivery. Hertz Vehicles, LLC is the company that is listed as actually owning the vehicles rented out by Hertz.

8.      Defendant Hertz Vehicle Financing LLC is a Delaware corporation doing business in Texas. It may be served pursuant to article 2.11(A) of the Texas Business Corporations Act, or its successor statutes, sections 5.201 and 5.255 of the Texas Business Organizations Code, by serving its registered agent, CT Corporation System, 1999 Bryan Street, Suite 900, Dallas, TX 75201. Service of said Defendant as described herein may be affected by personal delivery.

9.      Defendant Hertz Vehicle Financing III, LLC is a Delaware corporation doing business in Texas. It may be served pursuant to article 2.11(A) of the Texas Business Corporations Act, or its successor statutes, sections 5.201 and 5.255 of the Texas Business Organizations Code, by serving its registered agent, CT Corporation System, 1999 Bryan Street, Suite 900, Dallas, TX 75201. Service of said Defendant as described herein may be affected by personal delivery.

10.      Defendant Hertz Local Edition Corp. is a Delaware corporation doing business in Texas. It may be served pursuant to article 2.11(A) of the Texas Business Corporations Act, or its successor statutes, sections 5.201 and 5.255 of the Texas Business Organizations Code, by serving its registered agent, CT Corporation System, 1999 Bryan Street, Suite 900, Dallas, TX 75201. Service of said Defendant as described herein may be affected by personal delivery.

11.      Dollar Rent A Car, Inc. is an Oklahoma Corporation doing business in Texas. It may be served pursuant to article 2.11(A) of the Texas Business Corporations Act, or its successor statutes, sections 5.201 and 5.255 of the Texas Business Organizations Code, by serving its registered agent, CT Corporation System, 1999 Bryan Street, Suite 900, Dallas, TX 75201. Service of said Defendant as described herein may be affected by personal delivery.

3

12.     Defendant Icahn Associates Holding LLC is a Delaware corporation doing business in Texas. It may be served pursuant to article 2.11(A) of the Texas Business Corporations Act, or its successor statutes, sections 5.201 and 5.255 of the Texas Business Organizations Code, by serving its registered agent, Corporation Service Company, 211 E. 7th Street, Suite 620, Austin, TX 78701. Service of said Defendant as described herein may be affected by personal delivery. Ichan Associates owns approximately 40% of Hertz stock, or approximately 55 million shares. IA is a subsidiary of Icahn Enterprises.

13.     Defendant Icahn Enterprises LP is a Delaware corporation doing business in Texas. It may be served pursuant to article 2.11(A) of the Texas Business Corporations Act, or its successor statutes, sections 5.201 and 5.255 of the Texas Business Organizations Code, by serving its registered agent, Corporation Service Company, 211 E. 7th Street, Suite 620, Austin, TX 78701. Service of said Defendant as described herein may be affected by personal delivery.

14.     Icahn Enterprises Holdings LP is a Delaware corporation doing business in Texas. It may be served pursuant to article 2.11(A) of the Texas Business Corporations Act, or its successor statutes, sections 5.201 and 5.255 of the Texas Business Organizations Code, by serving its registered agent, Corporation Service Company, 211 E. 7th Street, Suite 620, Austin, TX 78701. Service of said Defendant as described herein may be affected by personal delivery.

15.     Icahn Capital LP is a Delaware corporation doing business in Texas. It may be served pursuant to article 2.11(A) of the Texas Business Corporations Act, or its successor statutes, sections 5.201 and 5.255 of the Texas Business Organizations Code, by serving its registered agent, Corporation Service Company, 211 E. 7th Street, Suite 620, Austin, TX 78701. Service of said Defendant as described herein may be affected by personal delivery.

4

16. Icahn Enterprises GP, Inc. is a Delaware corporation doing business in Texas. It may be served pursuant to article 2.11(A) of the Texas Business Corporations Act, or its successor statutes, sections 5.201 and 5.255 of the Texas Business Organizations Code, by serving its registered agent, Corporation Service Company, 211 E. 7th Street, Suite 620, Austin, TX 78701. Service of said Defendant as described herein may be affected by personal delivery.

17. The five Icahn defendants actively manage Hertz, actively appoint board members, actively participate in appointing and removing officers, and participate in making policy at Hertz. The Icahn Defendants, indeed all Defendants, have been aware of the serious problems that affect Hertz's theft reporting since at least September 2017 but have done nothing to fix the issues despite having the ability and duty to do so.

## JURISDICTION AND VENUE

18. The subject matter in controversy is within the jurisdictional limits of this court.

19. This court has jurisdiction over the parties because Defendants are corporations that conduct business and have registered agents in Texas.

20. Venue in Harris County is proper in this cause under Section 15.002(a)(1) of the Texas Civil Practice and Remedies Code because all or a substantial part of the events or omissions giving rise to this lawsuit occurred in this county.

## FACTS

21. Defendants Hertz Global Holdings and The Hertz Corporation have been hiding a massive corporate scandal, aided and abetted by their directors and officers.

22. Hertz has been falsely reporting untold numbers of customers for car theft, throwing them in jail on felony charges for months, prosecuting them, causing them to lose their jobs, giving

them criminal records, causing them to lose their homes, and separating them from their family and loved ones. These customers have paid for their cars and are authorized to use the rentals.

23.    The company's computer and inventory tracking systems are broken. However, the top corporate officers and directors have decided that verifying theft reports, and fixing their computers, would be too expensive.

24.    Defendant Hertz has instead decided—at the very highest level—to mass report its own customers to the police without verification, effectively using the police, criminal justice system, and taxpayers to subsidize inventory control for a private corporation.

25.    Hertz and its top officials are dishonestly and maliciously turning potential civil disputes with customers about payment (payment which Hertz has usually already received)— which are required to be arbitrated or addressed in small claims court—into criminal theft reports and prosecutions. As this Complaint explains, by doing so the company is savings tens of millions of dollars.

26.    Hertz's policies, procedures, and practice disproportionately condemn poor minorities to prison and prosecution while presuming their guilt. Many of these innocent individuals—lacking money and access to effective legal services—remain wrongfully imprisoned for months as their cases slowly wind their way through the courts. See www.truthhertz.net.

27.    This plan is as brilliant as it is evil, saving the company millions upon millions of dollars it would otherwise have to spend updating its broken systems and paying corporate security personnel to verify the thousands of theft reports it makes every year.

28.    As a result of this routine and systemic mass reporting, without verification or investigation, many innocent customers have been wrongfully detained, arrested, thrown in prison, prosecuted, and had their lives destroyed.

6

29.     This is not some sort of error. The company and its leadership have known about these problems for many years—since at least 2015, and likely far earlier—after falsely imprisoned customers and police agencies notified Hertz corporate about these serious issues. Hertz did nothing to address these problems, instead deliberately placing the Almighty Dollar before the lives and safety of their customers, including the Plaintiff.

30.     Hertz has even been sued and lost lawsuits for intentional infliction of emotional distress and malicious prosecution for the same conduct at issue in this case in 2017—but has continued to falsely report customers for theft calculating that it will make more money if it does not fix the problem.

31.     Hertz's corporate representatives testified in those lawsuits that their "marching orders" are to routinely disregard the standard operating procedures designed to safeguard against and prevent false reports as part of cost saving measures imposed by Hertz corporate.

32.     What differentiates this scandal from Worldcom, Enron, Arthur Anderson, Bear Stearns, FIFA, Volkswagen, WeWork, or even Madoff, is that those cases were only about money. Uniquely, the clients in this case had their lives destroyed, with consequences in the hundreds of millions of dollars. The tragedies that Hertz—who files thousands of police reports per year—has caused could fill many books.

33.     Hertz, a company which claims to be Number 1 in customer service, has been given every chance by Plaintiff to voluntarily address what they are doing to their customers, but the response has been callous disregard.

34.     There is no excuse for this conduct. The criminal justice system does not exist to be used as a repo service for a massive multinational company worth billions of dollars which cannot be bothered to track its vehicles and rentals. No company should be mass filing unverified

police reports, especially when those false reports endanger the freedom and safety of its customers and disproportionately impact minorities.

35.     Any theft report must be undertaken with the utmost seriousness given that it has the potential to ruin a customer's life. Hertz therefore has several corporate policies which are supposed to govern theft reporting by the company. These policies are allegedly designed to safeguard against false reports. In reality they are ignored and twisted to cut costs resulting in false theft reports.

36.     Hertz and its subsidiaries are Delaware corporations. Hertz also has approximately 15 corporate security managers who participate and supervise the theft reporting process at the various locations around the country.

37.     When a vehicle is missing or is allegedly overdue, Hertz Vehicle Control generates what Hertz calls a "theft package." This theft package is then given to the police to initiate a theft report. This theft package purports to detail all contact with the renter, payment information, the rental due date, extensions made by the renter, and the renter's prior rental history.

38.     Hertz has a major systemic failure in that it is filing false theft reports. These can be categorized as missing inventory and overdue rentals.

39.     Missing inventory reports are self-explanatory, and generally consist of vehicles allegedly missing from Hertz locations without permission where Hertz does not know what happened to the vehicle. In these cases, Hertz reports only the car stolen and does not name a customer in the theft report.

40.     Hertz has several nationwide systemic problems which are resulting in blatantly

false police reports for both missing inventory and overdue rental cases. This is resulting in innocent customers being thrown in jail and prosecuted, a massive civil rights issue. Unfortunately, this problem predominantly and invidiously affects black and minorities.

41.     These systemic issues are well known to the company but have been ignored for many years because fixing them would decrease Hertz's profits.

42.     The systemic problems cause blatantly false police reports to be submitted, resulting in the arrest and prosecution of customers without probable cause both for missing inventory cases and for allegedly overdue rentals:

a. **Falsification of Payment Information -** Hertz's theft reports falsely tells the police the renter never paid and provided a denied card. Secretly, however, Hertz actually fully charges the customer but never updates the police with the payment information. Incredibly, Hertz policy W7-02(D) specifically describes and requires this outrageous process, which guarantees that every Hertz theft report contains falsified payment information.

b. **Deletion of Rental Extensions -** In certain scenarios Hertz's computer systems secretly delete customer rental extensions, and backdate the rental due date, resulting in false police reports which claim that the renter never extended or contacted the company. Not only do customers believe they have an extension, but sometimes this extension process occurs over and over during the rental with the renter having no idea there is an issue. Hertz's systems provide no indication to employees who handle extensions that there is a problem with the rental so the customer is also not informed of the issue. The customer who believes the rental is extended, is then suddenly arrested despite having been in contact with the company.

9

c. **Failure to Perform Adequate Investigation** - Hertz has directed its vehicle control and corporate security personnel to violate Hertz policy W7-02(a)(17) which requires an investigation by a corporate security manager to confirm the accuracy of theft reports. Instead, Hertz has told the local security managers that their "marching orders" are to refrain from verifying, investigating, or otherwise double checking police reports for extensions or payment. This results in every Hertz theft report being unverified. Because no investigation or check is performed, every Hertz theft report contains significant inaccuracies regarding due dates, extensions, payments, customer contacts, returns, and other important information.

d. **Destruction of Records** - Despite criminally reporting customers for theft, and being required by Hertz policy and the law to preserve all related information, Hertz outrageously deletes almost all renter information and data. This information and data often contains proof that the renter paid and extended the rental, that the renter had no intent to steal the car, and that Hertz's initial theft report was false. In a prior lawsuit, the Court granted severe spoliation sanctions against Hertz for its destruction of documents.

43.     Hertz's false theft package which claim that: (1) the customers did not pay, (2) the customers did not extend or contact Hertz, (3) that Hertz internally verified the accuracy of the report, and (4) that there is probable cause to conclude that the customers have criminal intent to steal a vehicle.

44.     The authorities are unaware that the theft package is unverified, one-sided, does not fully capture the rental histories of the customer, fails to record and erases extensions, backdates due dates, contains false payment information, *and that Hertz destroys all internal data which could exonerate the customer and contradict the theft package*.

10

45.    For allegedly missing vehicles, authorities pursue charges because they rely on Hertz's false theft package which claim that :(1) they believe Hertz's theft package which says that the only way the vehicle could be missing is that it was stolen off of Hertz's lot, (2) they have no idea that Hertz routinely loses track of cars, (3) they do not know that instead of investigating where missing cars are, Hertz simply reports them stolen and has the police find them, and (4) they do not know that Hertz does not note in its rental system which cars it reported as "stolen," resulting in customers being rented stolen cars.

46.    Invariably, when the prosecution and police are informed that the customer had in fact paid for the rental, returned the rental, extended the rental, or was rented a stolen car the charges are dropped.

47.    Perniciously, despite filing these police reports, Hertz never intends to pursue a prosecution to trial, yet also never withdraws the cases. Instead, it lets the case linger while the innocent customer either sits in prison or is prosecuted. When the renter contacts Hertz to ask for help, Hertz falsely tells the customer that it is out of Hertz's hands whether to continue the prosecution.

48.    For what purpose would Hertz be filing false police reports but not actually pursuing prosecutions? The answer is that Hertz has realized that it is exponentially cheaper to simply file criminal theft reports against customers—even if they are false.

49.    By reporting missing or overdue vehicles to the police, with little or no investigation or verification, Hertz gets the following benefits:

a. Hertz avoids spending money on personnel to verify if the theft reports are accurate;

b. The police immediately recover the vehicle at taxpayer expense, instead of Hertz hiring repossession services;

11

c. If Hertz treated these rentals as a civil and not criminal issue, the rental contracts require that these matters be arbitrated. If Hertz arbitrated these matters it would cost an enormous amount of money. By filing a criminal report, Hertz avoids arbitration and instead receives restitution through the criminal justice system;

d. Hertz writes off the rental car and/or makes an insurance claim for the "stolen" property.

50.    If this seems incredible, it is all documented in Hertz's own policies and testimony, as described below.

51.    In every theft report there are two implicit variables: payment and time.

52.    If the rental vehicle is paid, or the renter has provided Hertz a valid form of credit (e.g., a credit card number), it should be clear that the renter does not intend to steal the car. Indeed, in any type of consumer theft report, the determinative factor is payment.

53.    Hertz routinely provides false information to the police in its theft packages about customer payment to secure criminal charges against the renter. To understand how and why, some background is needed on Hertz's billing process.

54.    When a customer initially rents a car from Hertz, they provide a credit card to Hertz as a letter of credit so that Hertz can charge for any costs associated with the rental.

55.    At the time of the initial rental, Hertz puts something called an "authorization hold" on the customer's card. An authorization hold is not a permanent charge, it simply checks the customer's account to see if it is valid and has funds. This temporary charge does not appear on any monthly billing statements, and is not a bill or payment.

56.    If the customer later extends the rental, Hertz also places an authorization hold on the customer's card. Again, this is not a final billing or payment.

57.    Only at the end of the rental, after the rental is closed out, does Hertz actually charge the customer's card for payment on the full rental.

58.    Although, an authorization hold may be denied during the rental for a variety of reasons, such as a low balance, *this says nothing about whether the final billing charge will go through*.

59.    When filing theft reports, Hertz first finalizes and prints out paper theft packages compiled in Oklahoma City which claim that the customer never paid for the rental and that the Page 11 of 92

card was "denied." However, when the theft package is printed out, *the customer has not yet been billed*. The paper theft packages state that the customer owes the full balance of the rental. Then and only then, after the theft package is printed out, does Hertz charge the customer for the car rental. The final billing charge is almost always successful.

60.    Yet, despite having just charged the customer and received payment, Hertz then gives the now out-of-date paper theft package to the police claiming that the renter never paid, has an outstanding balance of many thousands of dollars, and that the renter provided an invalid card.

61.    At no point does Hertz inform the police that the customer has been charged.

62.    As is immediately obvious, this means that many if not all overdue Hertz police report contains materially false information.

62.    Incredibly, this is not the result of some sort of massive error, but instead has been deliberately    written    into    Hertz's    policy    since    at    least    2007.

63.    The reason the policy is written in this manner is because Hertz knows that if police were aware that Hertz had charged the customer, and always had a letter of credit to bill the customer at its discretion, the theft report would not be accepted.

13

64. Indeed, when the customers provide proof of payment to the prosecutors, the prosecutions are dismissed.

65. Hertz has known about this issue for many years but has stubbornly refused to revise the policy. Given that Hertz files at least 10,000 police reports a year, and this policy has been in place since at least 2007, the number of affected individual is huge.

66. Every named Plaintiff reported for overdue rental theft was billed by Hertz after the theft report was printed out; in no cases were the police were told about the payments.

67. This policy is at a minimum reckless, it is a corporate device to obtain police action against customers where there is otherwise no probable cause to do so. There is no legitimate or valid reason for such a policy.

68. All corporate Hertz defendants and their employees, the named defendant directors, and the named defendant officers were aware of this policy and refused to change it or otherwise take action.

69. In September 2017 Hertz lost a malicious prosecution trial in Philadelphia. As with Plaintiff's case explained in this Complaint, Hertz had given a theft package to the police which said she owed $2,445, when in reality Hertz had received payment of $2,445 a week before the police report.

70. As noted, every rental theft report is based on two main variables: payment and time. In addition to misrepresenting payment, Hertz also utterly botches the time component of the overdue vehicle theft reports.

71. In sum and substance, after renters extend the rental period, Hertz's computer systems outrageously deletes the customer extensions *without notice to the customer*.

14

72.     When a customer calls in to Hertz to extend the rental, the renter can call the location or Hertz corporate's 1800 extension number. When the customer extends, Hertz then places an authorization hold on the card. If the authorization hold is approved by the bank, then the extension appears on Hertz's records.

73.     However, if the authorization hold is denied, Hertz's computer systems at Vehicle Control erase the extension and backdate the due date of the rental. Not only that the customer ever extended, but that the renter ever attempted to contact Hertz in the first place.

74.     The problem is immediately apparent to even the most cursory observer. The renter has been told that he is authorized to use the car for an extended period, yet Hertz has secretly canceled      the      extension      and      erased      any      evidence      it      ever      existed.

75.     It is one thing if Hertz wants a new form of payment and lets the customer know; it is something else entirely if Hertz memory holes the rental extension. In some cases, the renter has extended over 10 times and each time, without notice to the renter, Hertz secretly erased the extensions.

76.     Hertz then reports the customer to the police claiming that the due date of the rental was months before and that the renter never extended or contacted Hertz about the rental. This information not only goes directly to whether the renter extended and was authorized to use the vehicle, but also is vital information about whether the renter had actually absconded with an intent to steal the vehicle. No exculpatory information from the Contract Notebook is given to the police. Although the extension is erased, the Contract Notebook which contains a history of the rental contacts (which is not consulted by Vehicle Control), can retain information showing that the renter had contacted Hertz.

77.    Hertz policy specifically prohibits the destruction of records in contemplation of litigation, governmental investigation, or third party subpoenas—as does applicable spoliation law.

78.    Furthermore, the company requires that any records related to a criminal prosecution of a customer be retained for seven years.

79.    Yet, Hertz does none of this. Hertz instead deletes all recorded phone calls and all rental records including the Rental Contract Notebook, even for those customers who have been reported to the police for theft.

80.    Those phone calls and rental records often contain information proving that the customer contacted the company and extended the rental. This information is exculpatory. Because Hertz does not provide customers in writing proof of extensions or contacts with the company, these are often the only records of what happened during the rental.

81.    Notably, these records often completely contradict the what Hertz gives the police in the theft package.

82.    Plaintiff James Tolen rented a vehicle from Hertz. On **December 23, 2020**, Mr. Tolen was in the Hertz rental vehicle when the police pulled him over. The police commanded Mr. Tolen to get out of the car, and they put him in hand cuffs and seated him in the back seat of the police car as the officers loaded their weapons. Mr. Tolen was completely traumatized and feared that he would die. Mr. Tolen pleaded with the officers to read the paperwork in the glove box and notified them he had paid $2,100.00 to the rental place called Hertz-Car-Rental Company for the vehicle. The police told Mr. Tolen that the vehicle was reported stolen by Hertz. The police called Hertz Rental to confirm the details for the rental truck, and a Hertz representative stated that it was their mistake, because when the previous rental customer did not return the vehicle on time, Hertz

reported it stolen. It was only then that the police uncuffed Mr. Tolen and let him go.

83.     As a result of this incident, Mr. Tolen sustained serious personal injuries for which he had to seek the care of medical professionals.

84.     As a direct and proximate result of Defendant's acts and omissions, Plaintiff has incurred severe and substantial damages and actual harm. These damages include but are not limited to:

a.  Medical Expenses;

b.  Severe mental distress, as well as severe emotional distress, mental suffering, mental anguish, sleeplessness, restlessness, anxiety, and depression;

c.  Loss of reputation;

d.  Harm to personal, social, and professional relationships;

e.  Loss of Consortium; and

f.  Emotional pain and suffering.

## CAUSES OF ACTION

### COUNT I – Malicious Prosecution

85.     Plaintiff contends that: a. a criminal action was commenced against him; b. the prosecution of that criminal act was caused by Defendants or with their aid; 3. That action was terminated in Plaintiff's favor; 4. Plaintiff was innocent; 5. Defendants acted without probable cause; 6. Defendants acted with malice; and 7. The criminal proceeding damaged Plaintiff.

86.     All corporate defendants (jointly known as "Hertz") are alleged to be vicariously liable for the conduct of their employees.

87.     All Defendants' conduct, actions, and omissions were negligent, grossly negligent, reckless, malicious, and/or intentional.

88.     At all points the conduct, actions, omissions of Hertz employees was foreseeable to Hertz and done at Hertz's direction and with Hertz's blessing.

89.     Defendants directly and proximately caused police and prosecutorial actions to be initiated and continued against the Plaintiff without probable cause. Not only was materially false information provided to the police, but Defendants failed to supplement omitted and material information to the police and prosecutorial authorities, including information on payment and extensions.

90.     Defendants failed to withdraw or otherwise inform the police and prosecutorial authorities that they wished to withdraw the charges against the Plaintiff, and/or not continue with charges or prosecution, despite the absence of probable cause.

91.     Defendants, in filing the police reports, did not intend to follow through on the prosecution.

92.     Defendants are not using the criminal justice system for the legitimate purpose of bringing alleged criminals to justice, but instead as a free taxpayer funded repo service to cut costs. Defendants have long known that they have routinely been falsely reporting innocent customers for theft, or lost cars as stolen, but have taken no steps to correct the problem.

93.     As a direct and proximate result of Defendants' conduct in initiating criminal complaint without probable cause and failing to withdraw the criminal complaint as set forth above, Plaintiff has suffered severe damages, including but not limited to medical expenses, loss of freedom, severe emotional distress, mental suffering, mental anguish, sleeplessness, restlessness, anxiety, and depression.

94.     As a direct and proximate result of Defendants using the criminal justice system for an objective other than bringing Plaintiff to justice, Plaintiff has suffered severe damages,

18

including but not limited to medical expenses, loss of freedom, severe emotional distress, mental suffering, mental anguish, sleeplessness, restlessness, anxiety, and depression.

95.     Plaintiff also requests exemplary damages due to the outrageous behavior of Defendants, their reckless disregard for Plaintiff's rights and life, and because Defendants have had years of notice that the company is wrongly reporting innocent customers for car theft but has done nothing to fix the problems but instead continue to make false and unverified police reports.

### COUNT II – Abuse of Process

96.     Plaintiff contends that: a. Defendants made an illegal, improper, or perverted use of the process, a use neither warranted nor authorized by the process; b. Defendants had an ulterior motive or purpose in exercising such illegal, perverted, or improper use of the process; and 3. Plaintiff suffered damage as a result of such illegal, improper, or perverted use.

97.     Hertz is alleged to be vicariously liable for the conduct of its employees.

98.     At all points the conduct, actions, and omissions of Hertz employees was foreseeable to Hertz and done at Hertz's direction and with Hertz's blessing.

99.     The initiation and continuation of criminal proceedings against Plaintiff by Defendants was done without probable cause.

100.    Defendants acted for a purpose other than bringing Plaintiff to justice as they knew or should have known when they filed the criminal complaint against Plaintiff that Defendants never intended to pursue a criminal case against the Plaintiff and were instead using the police as a taxpayer funded repo service.

101.    Hertz knew that the Plaintiff (1) had permission to use the rentals, (2) had provided payment or a letter of credit, and (3) otherwise had no intent to steal the car.

102.    At no point did Defendants correct the misrepresentations made in their police report and testimony, nor did they withdraw the prosecution despite there being no probable cause to continue with it.

103.    Hertz is not using the criminal justice system for the legitimate purpose of bringing alleged criminals to justice, but instead as a free taxpayer funded repo service to cut costs. Hertz knows that it has routinely been falsely reporting innocent customers for theft, but has taken no steps to correct the problem.

104.    Defendants made this false complaint carelessly and/or negligently and/or recklessly and/or knowingly and/or intentionally and/or maliciously. Hertz failed to follow, and in fact deliberately disregarded, its own basic standard operating procedures and protocols designed to prevent false police reports, including Hertz national policy W7-02.

105.    Defendants' failure to withdraw the criminal complaint they initiated against Plaintiff was careless and/or negligent and/or reckless and/or knowing and/or intentional and/or malicious.

106.    As a direct and proximate result of Defendants' conduct in initiating a criminal complaint without probable cause and failing to withdraw the criminal complaint as set forth above, Plaintiff has suffered severe damages, including but not limited to medical expenses, loss of freedom, severe emotional distress, mental suffering, mental anguish, sleeplessness, restlessness, anxiety, and depression.

107.    As a direct and proximate result of Defendants using the criminal justice system for an objective other than bringing Plaintiff to justice, Plaintiff has suffered severe damages, including but not limited to medical expenses, loss of freedom, severe emotional distress, mental suffering, mental anguish, sleeplessness, restlessness, anxiety, and depression.

108. Defendants made these false complaints carelessly and/or negligently and/or recklessly and/or knowingly and/or intentionally and/or maliciously. Defendants failed to follow, and in fact deliberately disregarded, its own basic standard operating procedures and protocols designed to prevent false police reports, including Hertz national policy W7-02.

109. Defendants' failure to withdraw the criminal complaints it initiated against Plaintiff was careless and/or negligent and/or reckless and/or knowing and/or intentional and/or malicious.

110. As a direct and proximate result of Defendants' conduct in initiating criminal complaints and continuing them without probable cause as set forth above, Plaintiff has suffered severe damages, including but not limited to medical expenses, loss of freedom, severe emotional distress, mental suffering, mental anguish, sleeplessness, restlessness, anxiety, and depression.

111. As a direct and proximate result of Defendants using the criminal justice system for an objective other than bringing Plaintiff to justice, Plaintiff has suffered severe damages, including but not limited to medical expenses, loss of freedom, severe emotional distress, mental suffering, mental anguish, sleeplessness, restlessness, anxiety, and depression.

112. Plaintiff also requests exemplary damages due to the outrageous behavior of Defendants, their reckless disregard for Plaintiff's rights and life, and because Defendants have had years of notice that the company is wrongly reporting innocent customers for car theft but has done nothing to fix the problems but instead continue to make false and unverified police reports.

**COUNT III – False Arrest/Imprisonment**

113. Plaintiff contends that: a. Defendants willfully caused and/or authorized Plaintiff to be detained without his consent; and b. Defendants willfully caused and/or authorized Plaintiff to be detained without authority of law.

114. Hertz is alleged to be vicariously liable for the conduct of its employees.

115. All Defendants' conduct, actions, and omissions were negligent, grossly negligent, reckless, malicious, and/or intentional.

116. At all points the conduct, actions, and omissions of the Hertz employees was foreseeable to Hertz and done at Hertz's direction and with Hertz's blessing.

117. The initiation and continuation of criminal proceedings against Plaintiff by Defendants was done without probable cause.

118. As a direct and proximate result of the false, incomplete, and inaccurate information provided to police, Defendants caused Plaintiff to be wrongfully detained, arrested, and/or imprisoned, or otherwise unfree to leave.

119. As a direct and proximate result of Defendants' conduct, actions, and omissions, Defendants caused severe damages to Plaintiff, including but not limited to medical expenses, loss of freedom, severe emotional distress, mental suffering, mental anguish, sleeplessness, restlessness, anxiety, and depression.

120. Plaintiff also requests exemplary damages due to the outrageous behavior of Defendants, their reckless disregard for Plaintiff's rights and life, and because Defendants have had years of notice that the company is wrongly reporting innocent customers for car theft but has done nothing to fix the problems but instead continue to make false and unverified police reports.

### COUNTS IV AND V – Negligent and Intentional Infliction of Emotional Distress

121. Plaintiff contends that (1) Defendants were negligent, (2) Plaintiff suffered serious emotional distress, and (3) Defendants' negligence was a substantial factor in causing the serious emotional distress.

122. Plaintiff also contends that (1) Defendants acted intentionally or recklessly, (2) Defendants' acts and omissions were extreme and outrageous, (3) Plaintiff suffered serious

emotional distress, and (4) Defendants' conduct was a substantial factor in bringing about Plaintiff's serious emotional distress.

123. Hertz is alleged to be vicariously liable for the conduct of its employees.

124. All Defendants' conduct, actions, and omissions were negligent, grossly negligent, reckless, malicious, and/or intentional.

125. At all points the conduct, actions, and omissions of the Hertz employees was foreseeable to Hertz and done at Hertz's direction and with Hertz's blessing.

126. Knowing full well that Defendants' theft reporting procedures and policies resulted in false police reports, and knowing that Defendants were using the authorities for improper purposes, Defendants nevertheless initiated and continued criminal actions which led to arrest of Plaintiff.

127. Defendants acted recklessly and/or maliciously and/or negligently and/or for a purpose other than bringing plaintiff to justice as they knew or should have known when they initiated and continued the criminal complaint against Plaintiff that he was not guilty of any crime.

128. Defendants acted with negligence and/or reckless disregard and/or intentional disregard of the probability that Plaintiff (and many other customers across the country) would suffer severe emotional distress as result of their actions and omissions.

129. Defendants' failure to withdraw the criminal complaint they initiated against Plaintiff was careless and/or negligent and/or reckless and/or knowing and/or intentional and/or malicious. Defendants acted with negligent and/or reckless disregard of the probability that Plaintiff (and many other customers across the country) would suffer severe emotional distress as result of its actions and omissions.

130. As a direct and proximate result of Defendants' conduct in initiating criminal complaints and failing to withdraw the criminal complaints as set forth above, Plaintiff has suffered severe damages, including but not limited to medical expenses, loss of freedom, severe emotional distress, mental suffering, mental anguish, sleeplessness, restlessness, anxiety, and depression. Defendants' conduct was a substantial factor in causing Plaintiff serious and severe emotional distress.

131. Defendants' failure to withdraw the criminal complaint they initiated against Plaintiff was intentional and/or reckless and/or negligent.

132. The acts and omissions of Defendants were extreme and outrageous in a civilized society.

133. The use of the criminal justice system is of the utmost seriousness and innocent individuals who have done nothing wrong should not be thrown in prison without warning and prosecuted for felonies, nor should their name be associated with extremely damaging felonious charges they did not commit.

134. Plaintiff also requests exemplary damages due to the outrageous behavior of Defendants, their reckless disregard for Plaintiff's rights and life, and because Defendants have had years of notice that the company is wrongly reporting innocent customers for car theft but has done nothing to fix the problems but instead continue to make false and unverified police reports.

**COUNT VI – Negligence/Gross Negligence**

135. Defendants had a duty to Plaintiff, which they breached, and that breach proximately caused damages to Plaintiff.

136 Hertz is alleged to be vicariously liable for the conduct of its employees.

137.     All Defendants' conduct, actions, and omissions were negligent, grossly negligent, reckless, malicious, and/or intentional.

138.     At all points the conduct, actions, and omissions of the Hertz employees was foreseeable to Hertz and done at Hertz's direction and with Hertz's blessing.

139.     Defendants owed Plaintiff a duty because he rented a car from Defendants.

140.     Defendants had a duty to conduct the rental properly and to not falsely report Plaintiff to the police because (1) Defendants rented a vehicle to Plaintiff, (2) undertook to file a police report with respect to the vehicle, and (3) because it was foreseeable that filing a false police report that the vehicle was stolen would result in severe damages. All Defendants also undertook to draft, institute, and promulgate theft reporting polices and processes, resulting in a duty to Plaintiff.

141.     At all points, Defendants had notice that Hertz had a serious problem with making false police reports, and keeping track of renter contacts, but at no point corrected these issues or ceased making the reports. This notice was especially apparent after the September 2017 Grady verdict, the November 13, 2017 order for a punitive damages trial, and a November 14, 2017 letter to then general counsel and executive vice president Richard Frecker detailing Hertz's problems and failures.

142.     At all points, Defendants had notice that Defendants were directing Hertz personnel to ignore W7-02(a)(4) and (17), and that they also knew and intended that false police be filed with false information regarding customer payments.

143.     The reporting to the police with false information, for improper purposes, breached the duty of care.

144.    The omissions of Defendants in failing to properly supervise the theft reporting process breached the duty of care, as did the improper management of the theft reporting process.

145.    The conduct of Defendants was not only careless, but also malicious, reckless, willful, wanton, and demonstrated a total indifference to the lives of Defendants' customers, including Plaintiff. Defendants exhibited a conscious disregard for the rights and safety of other persons that has a great probability of causing substantial harm.

146.    Due to Defendants' tortious conduct and omissions, the Defendants have directly and proximately caused Plaintiff monetary damages, had him arrested and imprisoned for crimes and conduct he had not committed. Plaintiff has suffered severe damages as a result of Defendants' actions, including but not limited to medical expenses, loss of freedom, severe emotional distress, mental suffering, mental anguish, sleeplessness, restlessness, anxiety, and depression.

147.    Plaintiff also requests exemplary damages due to the outrageous behavior of Defendants, their reckless disregard for Plaintiff's rights and life, and because Defendants have had years of notice that the company is wrongly reporting innocent customers for car theft but has done nothing to fix the problems but instead continue to make false and unverified police reports.

## COUNT VII – Negligent Hiring, Retention, and Supervision

148.    Plaintiff also contends that Defendants failed to exercise reasonable care in the hiring, retention, and management of their employees, and this failure was a proximate cause of Plaintiff's damages.

149.    Hertz is alleged to be vicariously liable for the conduct of its employees.

150.    All Defendants' conduct, actions, and omissions were negligent, grossly negligent, reckless, malicious, and/or intentional.

151.     At all points the conduct, actions, and omissions of the individual Defendants and other Hertz employees was foreseeable to Hertz and done at Hertz's direction and with Hertz's blessing.

152.     Defendants owed Plaintiff a duty because he rented a car from Defendants.

153.     All Defendants' conduct, actions, and omissions were negligent, grossly negligent, reckless, malicious, and/or intentional.

154.     At all points the conduct, actions, and omissions of the Hertz employees was foreseeable to Hertz and done at Hertz's direction and with Hertz's blessing.

155.     Defendants had a duty not to falsely report Plaintiff to the police because they rented the vehicle to Plaintiff, because Defendants undertook to file a police report with respect to this vehicle, and because it was foreseeable that filing a false police report that the vehicle was stolen would result in severe damages. All Defendants also undertook to draft, institute, and promulgate theft reporting polices and processes.

156.     At all points Defendants had notice that Hertz had a serious problem with making false police reports, and keeping track of renter payment and contacts, but at no point corrected these issues or ceased making the reports. This notice was especially apparent after the September 2017 Grady verdict, the November 13, 2017 order for a punitive damages trial, and a November 14, 2017 letter to then general counsel and executive vice president Richard Frecker detailing Hertz's problems and failures.

157.     At all points Defendants had notice that Defendants were directing Hertz personnel to ignore W7-02(a)(4) and (17), and that they also knew and intended that false police be filed with false information regarding customer payments.

27

158.    The reporting to the police with false information, for improper purposes, breached the duty of care.

159.    The omissions of Defendants in failing to properly supervise the theft reporting process breached the duty of care, as did the improper management of the theft reporting process.

160.    The Defendants in this action also breached the duty of care when they reported the car Plaintiff was renting as stolen, despite having known or should have known that Plaintiff had not stolen the rental vehicle or that the vehicle was not stolen.

161.    The conduct of Defendants was not only careless, but also grossly negligent, malicious, reckless, willful, wanton, and demonstrated a total indifference to the lives of Defendants customers, including Plaintiff. Defendants exhibited a conscious disregard for the rights and safety of other persons that has a great probability of causing substantial harm.

162.    Due to Defendants' tortious conduct and omissions, the Defendants have directly and proximately caused Plaintiff monetary damages, had him arrested and imprisoned in the police vehicle for crimes and conduct he had not committed. Plaintiff has suffered severe damages as a result of Defendants' actions, including but not limited to medical expenses, loss of freedom, severe emotional distress, mental suffering, mental anguish, sleeplessness, restlessness, anxiety, and depression.

163.    Plaintiff also requests exemplary damages due to the outrageous behavior of Defendants, their reckless disregard for Plaintiff's rights and life, and because Defendants have had years of notice that the company is wrongly reporting innocent customers for car theft but has done nothing to fix the problems but instead continue to make false and unverified police reports.

**COUNT VIII – Deceptive Trade Practices**

164. Plaintiff contends that Defendants' actions violate the Texas Deceptive Trade Practices Act.

165. Defendants deliberately and routinely files false and unverified theft reports against

166. Defendants do not inform customers that they not only instruct employees to disregard policy safeguards against false police reports, but that the policies are deliberately crafted to result in false reports.

167. Defendants' advertising and marketing schemes, including their material omissions, are fraudulent and improperly do the following:

a. Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits or quantities that they do not have or that a person has a sponsorship, approval, status, affiliation, or connection that he does not have;

b. Representing that goods or services are of a particular standard, quality or grade, or that goods are of a particular style or model, if they are of another;

c. Advertising goods or services with intent not to sell them as advertised;

d. Engaging in any other fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding.

168. Plaintiff relied on Defendants advertising and marketing when renting a car with Hertz, and had he known Hertz's actual customer service philosophy would have never rented with the company.

169. As a direct and proximate cause of Defendants' deceptive and fraudulent advertising and marketing scheme, Plaintiff has suffered severe damages, including but not limited

to medical expenses, loss of freedom, severe emotional distress, mental suffering, mental anguish, sleeplessness, restlessness, anxiety, and depression.

170.    Plaintiff requests punitive damages, treble damages, or other exemplary damages due to the outrageous conduct of Defendants.

## SPOLIATION CLAUSE

Plaintiff demands that Defendant stake necessary actions to ensure the preservation of all documents and things related to the case—in any format—hardcopy, electronic, audio, and visual. Defendants are also put on notice to preserve all things including but not limited to information, materials, communications, or other content/data related to the averments in this case.

## PRAYER

Wherefore, Plaintiff demands judgment in his favor on all Counts and against Defendants, jointly and severally, for an amount well in excess of the jurisdictional amount required to guarantee a jury trial. Plaintiff requests that this Court determine and declare that Plaintiff is additionally awarded and afforded on all Counts:

1. Compensatory damages, inclusive of any and all harm attributable to Defendants' actions or inaction, including for loss of freedom, improper prosecution, mental suffering, mental anguish, and medical expenses;

2. Punitive damages to punish Defendants for its outrageous conduct, self-interest, and duplicitous behavior;

3. Exemplary damages to set an example for others;

4. Attorneys' fees and court costs;

5. The loss of time and opportunity;

6. Lost employment opportunities;

7. Delay damages; and

8. Restitutionary disgorgement of all profits Defendant obtained as a result of unlawful, unfair, and/or fraudulent business practices;

9. Mental and emotional pain and suffering;

10. Punitive and exemplary damages to punish Defendant and especially to deter other companies from acting in such a manner;

11. Costs and attorney's fees; and

12. Prejudgment interest;

13. Such other and further relief as the Court deems just, necessary, and appropriate under the circumstances or allowed by statute.

Respectfully submitted,

**THE HADI LAW FIRM, PLLC**

By: _____

Husein Hadi
Texas Bar No. 24067641
Jamil Thomas
Texas Bar No. 24066914
Carnegie H. Mims, III
Texas Bar No. 24046448
Sedrick Stagg
Texas Bar No. 24102815
Seve Thomas
Texas Bar No. 24115145
Ariana Mehdipour
Texas Bar No. 24123765
7100 Regency Square Boulevard, Suite 140
Houston, Texas 77036
Tel: (832) 433-7977
Fax: (855) 423-4529
litigation@thehadilawfirm.com
**ATTORNEYS FOR PLAINTIFF**

**PLAINTIFF HEREBY DEMANDS TRIAL BY JURY**

# EXHIBIT 8

8/26/2021 4:30:33 PM
Marilyn Burgess - District Clerk
Harris County
Envelope No: 56705148
By: FORD, DAVIA
Filed: 8/26/2021 4:30:33 PM

Pgs-2

NO. 2021-46720

4

| | | |
|---|---|---|
| **JAMES TOLEN** | § | **IN THE DISTRICT COURT** |
| **Plaintiff,** | § | |
| | § | |
| | § | |
| | § | |
| **V.** | § | **295TH JUDICIAL DISTRICT** |
| | § | |
| | § | |
| **HERTZ GLOBAL HOLDINGS, INC.** | § | |
| **Defendant.** | § | **OF HARRIS COUNTY, TEXAS** |

## ORDER GRANTING NOTICE OF NONSUIT WITHOUT PREJUDICE

Came before the Court Plaintiff JAMES TOLEN, and filed its Notice of Nonsuit Without Prejudice, stating that Plaintiff no longer wishes to prosecute his claims against Defendants and requests a nonsuit without prejudice of his claims

Now, therefore, it is ORDERED, ADJUDGED and DECREED that Plaintiff's Notice of Nonsuit Without Prejudice is granted, and that all claims of Plaintiff, JAMES TOLEN, are dismissed without prejudice.

It is, further, ORDERED that all costs herein are to be taxed against the party incurring same.

SIGNED this _____ day of _____, 2021.

Signed:
8/31/2021

_____
JUDGE PRESIDING

**APPROVED AS TO FORM AND SUBSTANCE:**

Respectfully submitted,

**THE HADI LAW FIRM, PLLC**

By: _____
Husein Hadi
Texas Bar No. 24067641
Jamil Thomas
Texas Bar No. 24066914
Carnegie H. Mims, III
Texas Bar No. 24046448
Sedrick Stagg
Texas Bar No. 24102815
Seve Thomas
Texas Bar No. 24115145
7100 Regency Square Boulevard, Suite 140
Houston, Texas 77036
Tel: (832) 433-7977
Fax: (855) 423-4529
litigation@thehadilawfirm.com
**Attorneys for Plaintiff**

# ATTACHMENT E

## DECLARATION OF CARMEN BOSKO

1.      My name is Carmen Bosko. I have personal knowledge of the facts stated in this declaration, and I can testify competently to them if called upon to do so.

2.      In summation: Carmen was a returning renter, and Gold plus member. She rented a car from the Mary Esther, FL location on January 20, 2021, and returned it on or around April 12, 2021. Hertz charged her card $3,964.99 around the April 2021. Unknown to her, Hertz never registered the car as returned and falsely reported the car as stolen and unpaid for on April 27, 2021. On August 9, 2021, she was pulled over in Clayton County, Georgia for a taillight violation. The officer ran her license and then told her she was under arrest for theft. She could not believe what she was hearing. She was then held for 38 days in hellish conditions in Clayton County jail, and then extradited by six hour van ride to Okaloosa County and spent two more days in jail. After 40 days in jail, in which she was separated from her 2 month old, she is now being prosecuted for theft.

3.      Carmen rented a car from the Mary Esther, FL location on January 20, 2021. She thereafter extended, and could see that Hertz was charging her card as the rental continued.

4.      In early April she called the 1800 corporate number and told them that she could not return the car to Florida. She told them that she was returning the car to the Morrow, GA location after hours.

5.      Hertz corporate told her this was okay and said they would contact the location to tell them to make sure they got the car. She dropped the car off on or around April 12, 2021, and heard nothing more from Hertz.

6.      Hertz charged her card $3,964.99 around late April 2021.

7.      Then in early June 2021, Carmen's parents had a detective visit them claiming

Carmen had stolen a car. She told her parents that it must be a mistake because the car was long since returned.

8.    She called the detective around June 10, 2021, and left a message, but never heard back.

9.    She went into labor and gave birth to a child on June 12, 2021.

10.    On August 9, 2021, she was driving in Clayton County, Georgia. She was pulled over for a taillight violation.

11.    The officer ran her license and then arrested her for car theft. Her car was turned inside out and taken away. Her belongings disappeared, including sensitive personal identification information on documents containing her social security number and child support numbers. Thereafter, while in jail, someone impersonated her and collected the money to be paid to her.

12.    She was taken to Clayton County Georgia jail to await extradition to Florida, where she spent 38 days. The conditions were hellish.

13.    She was taking care of a newborn and was sick to be separated, and she also missed a post-partum doctor's appointment.

14.    She was kept in lockdown 22 hours a day.

15.    While in jail she had her first period after having a baby. The jail had run out of toilet paper and pads. This happened repeatedly. The women in jail had to use rags. It was degrading and humiliating; the inmates were treated like animals.

16.    The male guards would look at the women while they were showering. This was extremely intimidating and humiliating, especially because she just had a baby.

17.    At another point, a prisoner asked to go to medical and a guard began to manhandle her. Other guards then ran in and started macing everyone, and she was caught in the crossfire.

She could barely breath.

18.     When she had been in labor two months prior she had high blood pressure. At first the jail gave her her medication, but took her off after 11 days. Her blood pressure skyrocketed and the paramedics had to be called.

19.     On another occasion, a guard accused her of taking the metal bolts off a cell door. This made no sense as she had no way of doing this, and they are computer controlled. As a result she was denied screen time contact with her family for 1 week.

20.     She had to wear the same uniform for 27 straight days; it was disgusting. She was not given a toothbrush for 24 days and a cavity became very infected. After being released, she had to miss work to have the cavity treated.

21.     She was the subject of racist verbal abuse.

22.     The plumbing broke and the inmates did not have clean water for 12 days.

23.     There was an ant infestation and she was bitten all over her body.

24.     She was extradited after 38 days to Florida. She was transported in a van for six hours, completely shackled, to the Okaloosa County jail.

25.     She is now being prosecuted for failure to return leased or rented property in Okaloosa County for a car that was returned to Hertz.

26.     She now not only has to deal with prosecution, but identity theft as someone has been using the information in her car she was arrested in to take her unemployment benefits and child support.

27.     Carmen did not know about any bar date and did not see it in any publication. She does not regularly read *USA Today*, *The Wall Street Journal*, *The New York Times*, *The Globe and Mail*, *The Philadelphia Inquirer*, *San Francisco Chronicle*, *Arizona Republic*, *Chicago Tribune*,

3

*Los Angeles Times*, *The San Diego Union Tribune*, *Naples Daily News*, *El Diario De El Paso*, or *Journal De Montreal*.

28.    As a direct and proximate result of Hertz's conduct, Carmen was arrested, jailed for 40 days, is being falsely prosecuted, overcharged for the rental, and has been severely emotionally and mentally harmed.

29.    There was no probable cause for Hertz to report Carmen for any crime at any point in time.

I declare under the penalty of perjury of the United States of America that the foregoing is true and correct.

Dated:  November 20TH, 2021

/s/ _____
Declarant

4

**2021 CF 002341 F - STATE OF FLORIDA vs. BOSKO, CARMEN NICOLE**

## SUMMARY

| | | |
|---|---|---|
| **Judge:** | **Court Type:** | **Case Type:** |
| STONE, WILLIAM F | Criminal Felony | |
| **Case Number:** | **Uniform Case Number:** | **Status:** |
| 2021 CF 002341 F | 462021CF002341XXXAFX | OPEN |
| **Clerk File Date:** | **Status Date:** | **Waive Speedy Trial:** |
| 9/15/2021 | 9/15/2021 | ☐ |
| **Total Fees Due:** | **Booking Number:** | **Agency:** |
| 0.00 | | OKALOOSA COUNTY SHERIFF |
| **Agency Report Number:** | **Custody Location:** | |
| 21OFF006263 | | |

## PARTIES

| TYPE | PARTY NAME | ATTORNEY |
|---|---|---|
| DEFENDANT | BOSKO, CARMEN NICOLE | |
| PLAINTIFF | STATE OF FLORIDA | |

## CHARGES

| COUNT | DESCRIPTION | LEVEL | DEGREE | PLEA | DISPOSITION | DISPOSITION DATE |
|---|---|---|---|---|---|---|
| 1 | FRAUD-FAIL REDELIV HIRED LEASED PROP 300 DOLS OR OVR (812.155(3)) | F | T | | | |

## EVENTS

| DATE | EVENT | JUDGE | LOCATION | RESULT |
|---|---|---|---|---|
| 1/11/2022 9:00 AM | PRETRIAL CONFERENCE | BROWN, JOHN T | FWB COURTHOUSE ANNEX EXTENSION | |
| 11/8/2021 9:00 AM | PRETRIAL CONFERENCE | STONE, WILLIAM F | FWB COURTHOUSE ANNEX EXTENSION | CONTINUED |
| 10/19/2021 3:30 PM | FELONY PLEA | WARD, JIM | Courtroom 1A | NOT GUILTY PLEA |

## CASE DOCKETS

| DATE | ENTRY |
|---|---|
| 10/29/2021 | NOTICE CREATED AND E-SERVED TO ATTY: SCOTT CLINES, ATTY: BRIAN D UPDIKE |
| 10/29/2021 | NOTICE CREATED AND E-SERVED TO BAIL BONDS BY MARK HARRIS |
| 10/28/2021 | NOTICE/FORM CREATED ISSUED |
| 10/28/2021 | PRETRIAL CONFERENCE SET FOR 01/11/2022 AT 9:00 AM IN FWB/ , JDG: BROWN, JOHN T |
| 10/28/2021 | COURT RESULT: PRETRIAL CONFERENCE SET FOR 11/08/2021 AT 9:00 AM - CONTINUED |
| 10/27/2021 | ORDER OF CONTINUANCE |
| 10/27/2021 | DEFENDANT'S RECIPROCAL DISCOVERY |
| 10/26/2021 | MOTION FOR CONTINUANCE FILED |
| 10/6/2021 | COURT RESULT: FELONY PLEA SET FOR 10/19/2021 AT 3:30 PM - NOT GUILTY PLEA |
| 10/6/2021 | WRITTEN PLEA OF NOT GUILTY |
| 9/29/2021 | DISCOVERY EXHIBIT FILED |
| 9/29/2021 | FILED SEQ: 1 - (SAME) - (812.155(3)) FRAUD-FAIL REDELIV HIRED LEASED PROP 300 DOLS OR OVR |
| 9/29/2021 | DEMAND FOR NOTICE OF ALIBI |
| 9/29/2021 | INFORMATION FILED |
| 9/27/2021 | NOTICE OF DISCOVERY |
| 9/23/2021 | NOTICE CREATED AND E-SERVED TO BAIL BONDS BY MARK HARRIS |
| 9/21/2021 | SURETY BOND AS3K473619 POSTED $2,000.00 |

| DATE | ENTRY |
|------|-------|
| 9/20/2021 | NOTICE CREATED AND E-SERVED TO ATTY: SCOTT CLINES, ATTY: BRIAN D UPDIKE |
| 9/20/2021 | EMAIL SENT- RECIPIENTS: CLINES, SCOTT SUBJECT: SERVICE OF COURT DOCUMENT - 2021 CF 002341 F, STATE OF FLORIDA VS. BOSKO, CARMEN NICOLE ATTACHMENT COUNT: 1 EMAILDOCKETDESCRIPTIONS: JRFAPD-9/16/2021 |
| 9/20/2021 | DEFENSE ATTORNEY: CLINES, SCOTT ASSIGNED |
| 9/16/2021 | NOTICE CREATED AND E-SERVED TO ATTY: BRIAN D UPDIKE |
| 9/16/2021 | JUDGE'S RECORD OF 1ST APPEARANCE FILED AND PUBLIC DEFENDER APPTD / ARREST REPORT |
| 9/16/2021 | REIMBURSEMENT REQ FOR PRISONER TRANSPORT |
| 9/15/2021 | PRETRIAL CONFERENCE SET FOR 11/08/2021 AT 9:00 AM IN FWB/ , JDG: STONE, WILLIAM F |
| 9/15/2021 | PROSECUTOR: UPDIKE, BRIAN D ASSIGNED |
| 9/15/2021 | ARREST REPORT/NOTICE TO APPEAR FILED |
| 9/15/2021 | FELONY PLEA SET FOR 10/19/2021 AT 3:30 PM IN FWB/ , JDG: WARD, JIM |
| 9/15/2021 | ARREST CHRG: 1 - (812.155(3)) FRAUD-FAIL REDELIV HIRED LEASED PROP 300 DOLS OR OVR |
| 9/15/2021 | JUDGE STONE, WILLIAM F: ASSIGNED |
| 9/15/2021 | CASE FILED 09/15/2021 CASE NUMBER 2021 CF 002341 F |
| 9/15/2021 | DEFENSE ATTORNEY: NO ATTORNEY ASSIGNED |

ATTACHMENT F

## DECLARATION OF REGINALD BROWN

1.      My name is Reginald Brown.  I have personal knowledge of the facts stated in this declaration, and I can testify competently to them if called upon to do so.

2.      In summation: In May 2019, Reginald was employed by Lyft and rented a car through Hertz using the Lyft App and program. He picked up the vehicle from the Roosevelt Hertz location in College Park, GA. He had no communication with Hertz, only with Lyft through their app. He returned the vehicle to Hertz on August 28th. In September 2019 he received a phone call from Hertz requesting he return the vehicle, and told them the vehicle had already been returned and to talk to Lyft. In late September he was stunned when he received a letter in the mail to go to the Magistrate Court for a warrant for Theft by Conversion. At his October 2019 court date he was arrested and forced to spend night in jail. He was scared and devastated this could be happening; it was devastating to him and his family. The criminal charge was dismissed in September 2021 after Hertz refused to show up to Court.

3.      Reginald was employed as a Lyft driver and used Lyft's partnership with Hertz to rent a car through Hertz on May 3, 2019. The rental number was 577571562. The program was called Lyft Express Drive.

4.      He picked up his vehicle at the Roosevelt location in College Park, GA.

5.      That was his only contact with Hertz.  All payment and rental business was conducted through the Lyft App with Lyft Express Drive. Each week, Lyft took Hertz's weekly payment out of his weekly earnings.

6.      On or around July 25, 2019, he was told by Lyft there was a problem with the rental. However, Reginald diligently addressed the issue and was assured by Lyft on July 27, 2019, that he was good to continue driving:



7.    On August 23, 2019, he returned the car to the Hertz.  He had a new job and was no longer working for Lyft.

8.      He even took a picture of the car on the Hertz lot when he returned it:







9.      Lyft, who had arranged the rental, sent Reginald confirmation that contract and final payment to Hertz was complete.

10.      Then, in September 2019, an investigator from Hertz called Reginald to inquire about the vehicle. He informed them that the car was returned on August 23, 2019, and he had

documentation from Lyft to prove it. He was told that Hertz could not find the car, but Reginald got the distinct impression they were not even looking for it.

11.     To his shock in late September 2019, Reginald received a letter requesting his appearance at Magistrate Court to answer to a warrant for Theft by Conversion. He could not understand how a Lyft driver who had returned a car could possibly be put in this position. The case number is 20SC176050 in Fulton County.

12.     When he arrived at court in October 2019, he was arrested and sent to jail.  As a single parent this caused immense stress as he feared for the safety of his children.

13.     He was jailed overnight and given a signature bond.

14.     Hertz had falsely told the police the car was due back on July 25, 2019, and had never been returned. As can be seen from the above screenshots, all of this was unequivocally false. It was readily apparent that Hertz had never contacted Lyft before reporting the car stolen.

15.     Due to missing work while prosecuted and jailed, he lost his full time job ($18/hr 40 hours per week) and was forced to take a part time job at a lower hourly rate and lower weekly hours.

16.     Due to the pandemic, his court case was postponed until 2021, while this prosecution hung over his head.

17.     During the first part of 2021, Reginald was been forced to attend monthly Court proceedings through Zoom. Despite the prosecution repeatedly reaching out to Hertz because Reginald was contesting what Hertz had told police, Hertz never showed up. The case was repeatedly delayed.

18.     His case was finally dismissed on September 29, 2021, after almost two years of baseless prosecution.

19.    Based on his contacts with Hertz telling them he returned the car, and Hertz's repeated failures to appear for court, Hertz was well aware that it filed a false report against Reginald.

20.    Reginald did not know about any bar date, nor about any bankruptcy plan. He does not regularly read *USA Today, The Wall Street Journal, The New York Times, The Globe and Mail, The Philadelphia Inquirer, San Francisco Chronicle, Arizona Republic, Chicago Tribune, Los Angeles Times, The San Diego Union Tribune, Naples Daily News, El Diario De El Paso, or Journal De Montreal.*

21.    As a direct and proximate result of Hertz's conduct, Reginald was arrested, thrown in jail for 2 days, was falsely prosecuted, lost wages and employment, had his reputation harm, and has been severely mentally and emotionally harmed.

22.    There was no probable cause for Hertz to report Reginald for any crime at any point in time.

I declare under the penalty of perjury of the United States of America that the foregoing is true and correct.

Dated:   December  2  , 2021

/s/_____
Declarant

ATTACHMENT G

## DECLARATION OF DELLA DAVIS

1.      My name is Della Davis.  I have personal knowledge of the facts stated in this declaration, and I can testify competently to them if called upon to do so.

2.      In summation: Della rented a car in 2003 after her car was stolen. It was an insurance rental and she always extended weekly. Later in 2003, after her husband was pulled over in the car for expired tags, the police impounded the vehicle. Della's husband made sure the police knew it was a rental and they said it would be returned. She was fully charged for the car. Then in 2005 she was arrested without warning; Hertz had accused her of car theft. Despite overwhelming evidence she was innocent, Hertz refused to drop the case for 11 months. It destroyed Della's life and has lasting effects all these years later.

3.      In September 2003, my family (husband and two children) and I relocated from Cincinnati, Ohio to the Metro Atlanta area, where we hoped to build a life for our young family. We moved into a Gwinnett County apartment on 9/13/2003 and two weeks later my Buick LeSabre was stolen from a strip mall parking lot in Dekalb County, which was the starting point of my interactions with Hertz. (Dekalb County police report #03130474)

4.      I contacted my car insurance company, Geico, to notify them that the car was stolen. They explained that my policy entitled me to a car rental in the case my car was stolen. Being new to the city, we did not have a cell phone or a home phone. After calling several rental car companies from a pay phone, Hertz was the only one willing to pick me up. The Hertz representative drove to our apartment and picked up our family, and we explained our situation in detail on the way to the Hertz location—we had just relocated from Ohio, our car was stolen, we didn't know how long we would use the car rental, our insurance was covering a portion of the cost, we did not have a

house phone, and our cell phone was a prepaid cellular phone that may not be on all the time. She

left the return date open on the rental contract due to the situation.

5.      On 10/4/2003, we were parked at a convenience store in the rented vehicle, and a

woman backed into the car with her van. We filed a police report (Atlanta Police Dept report

#032771183) and immediately called Hertz from a payphone. I went to Hertz and filed an incident

report on 10/6/2003, including the police report number and the information of the other driver.

The driver did cause some minor damage to the body of the rental; however, Hertz was not

concerned about it and released the vehicle back into my possession.

6.      My Buick LaSabre was eventually recovered by the DeKalb Police Dept; however,

when they finished their investigation and approved it for release, we found that the impound lot

expected us to pay them hundreds of dollars to retrieve the vehicle. At this point, we didn't have

jobs yet and had very little resources, so we could not afford to pull our car from the impound. We

continued on hoping things would get better. In the meantime, we were in contact with Hertz at

least weekly.

7.      By the 10/30/2003, we received an eviction notice. We moved out of the apartment

on 11/24/2003 in compliance with the eviction notice. We stayed in a nearby extended stay hotel,

where we resigned to the fact that things had not improved and we had exhausted every resource.

We developed a plan to move in with my sister in Gulfport, MS to regroup and strategize our

future. On 12/11/2003, my two children and I boarded a Greyhound bus bound to Gulfport. My

husband stayed back to find a way to secure our personal belongings, and would follow shortly

after. To reiterate, we were still in contact with Hertz at least weekly at this point.

8.      During this period, my husband was pulled over for an improper turn on 10/19/2003

and the vehicle was impounded because the tags and registration of the vehicle was expired. My

husband made the police aware that it was a rental vehicle, and was told that the police would ensure its return. My husband left the state of Georgia and joined the family in Gulfport two weeks after our arrival.

9.      Hertz invoiced my insurance company Geico on 12/22/2003 for their portion of the rental, and my credit union paid my balance to Hertz, in full, on 12/22/2003.

10.     In March 2004, we moved to Orlando, Florida to do what we intended to originally do in Atlanta. By December 2004, we brought our third child into the world. We were a struggling family, but by Fall of 2005, my husband and I were enrolled in our first semester of college. Then on 10/21/2005, we had just left Target after picking up professional photos of our children, and I was pulled over—no reason given. The Orlando Police officer had me step out of my car, while another officer was on the passenger side holding his weapon on my husband who had my baby in his arms. All three of my children (aged 10 months, 3 years, and 11 years) were in the vehicle along with my husband. The officer mentioned I had a warrant for a stolen vehicle stemming from Georgia. I stated that he had to be wrong about that, because it was actually my vehicle that was stolen in Georgia. He communicated back and forth with the dispatcher for a while for clarification, and concluded that I was actually wanted for "theft by taking" of a motor vehicle. They took me into custody at that point.

11.     What I learned by the time I had my first hearing was that the charges were related to the Hertz car rental and because the warrant stemmed from another state, I could not post bond in the state of Florida. I had to go to appear before a court in Georgia before posting bond. An attorney explained that I could waive my right to extradition, and Georgia would have up to 14 days to pick me up or I could sit in the Orange County Florida jailhouse until the extradition was cleared up, which could take more than a year. I signed the waiver of extradition.

12.     It took the transporter a full 14 days to pick me up. During that period, both my husband and I had to withdraw from our college courses. My husband could not work, because we could not afford childcare. My husband, who was not the main caretaker of our children, received a crash course to making bottles, dealing with diaper rashes, and all aspects of daily childcare. We had to learn how to quickly navigate and fund phone calls, commissary, and visitation. On my second day in jail, I put in a sick call slip because I was still nursing our baby, and I was so engorged with breast milk, I was in pain. The jail did not provide me any services or pain medication. I was subjected to strip search, "spreading my cheeks", communal showering and toileting, aggressive inmates, and trying to comfort my children via video screen visits and expensive phone calls.

13.     Another issue was that my own mother had shared the month before that her cancer was out of remission and she was given 6 months to live. The two weeks between 10/21/2005 and 11/4/2005 when transporters arrived was painful as a mother, and excruciating in that I not only felt I had to keep this from my mother to protect her wellbeing as she faced cancer treatment, which meant I couldn't speak to her from jail either. I was with the transporter for almost 72 whole hours. They came at night. I was not able to call my husband and he was not made aware I was being transported from Florida to Georgia. I was shackled and handcuffed and put into a van. The first row of seats was designated for female detainees and the back of the van were for male detainees. A metal grate partition separated us. For almost three days, the transporters traveled South through Florida, then back up through Florida and into Georgia. They stopped at several jails along the way to pick up and drop off detainees, and even got lost at one point. This was an agonizing journey, as we all remained shackled and handcuffed and piled into a hot van. We were allowed to relieve ourselves at some of the jails along the way, only freeing one hand to do so. I

was processed into a jail in Sarasota to spend one night. The rest of the time, we slept in the van. We were fed a small meal three times a day, which we ate while in the van handcuffed.

14.     I arrived to the Gwinnett County Detention Center on 11/7/2005 and was processed into general population over the course of 48 hours, which included getting pat down, overcrowded dirty detention rooms with women sitting on the floor when all benches were taken, strip searched, and communal showering and toileting. At my first appearance in Gwinnett County, the judge informed me that my bond was $22,100, but I could request a bond reduction hearing, which I did because even 10% of that was out of my league.

15.     When I arrived in general population, I was the third person assigned to a cell made for two, but due to overcrowding, bed pods were introduced to each cell to squeeze in another detainee. I quickly learned that, at this detention center, detainees could only be out of their cell for an hour a day in addition to the three meal times. My bond reduction hearing was set for 10 days after my arrival. I felt that financially, I had no choice but to wait for the bond reduction hearing on 11/17/2005. When that date finally arrived, I waited and waited for officers to take me to court. Finally, I reached out to the officer on duty, and she explained that my hearing was cancelled and would be rescheduled. I was crushed. I had been imprisoned for a month and I felt that if I continued to wait, the date might be rescheduled again and again. My attorney paid me a visit to explain, and I asked him to reach out to my sister to ask if she would help me pay a bondsman, which she did.

16.     I was released in a state where I had no family or friends. I wound up at the house of a woman I met in jail, to spend the night and catch a Greyhound bus back to Orlando in the morning. However, when I arrived, I didn't feel safe with the other people she had in her home, so I asked her to take me straight to Greyhound, and she did. I made it home on 11/20/2003, exactly

30 days after taken into custody. I was reunited with my family, and I was finally able to call my dying mother. However, I still had to battle the charges.

17.     The prosecutor in this case was not willing to drop charges due to the information given to them by Hertz and having no proof that the car rental charges were paid. Hertz did not provide the district attorney the invoice paid by my insurance company or any document showing my payment to them. My attorney explained that the district attorney proposed a sentence of 5-year probation as a first offender. I was adamant that I had done nothing wrong, and I insisted on fighting the charge. My attorney filed for discovery so we can see what story Hertz told. We found that Hertz presented a lot of unsubstantiated statements. They claimed:

• I agreed to return the vehicle on 10/17/2003 at the time of rental

• They sent me several demand letters

• They made several attempted phone calls

• They had no knowledge that the vehicle was an insurance rental due to my stolen vehicle

• There had been no contact between me and Hertz during the rental period

18.     I was scheduled for trial on the day of my mother's funeral 5/30/2006. My attorney had me send over her obituary and told me he would have the date rescheduled. However, he made a mistake and my bond was forfeited and a bench warrant was issued. I had to travel to Georgia on June 23, 2006 to stand before a judge. After my attorney and I explained the circumstances, the judge reinstated the bond.

19.     My trial date was then set for August 3, 2006. I traveled to Georgia, and the district attorney asked for a continuance stating she was waiting for evidence from my legal team that my car was actually stolen, leading to the Hertz rental. My case was put on the calendar for September 6, 2006, although I was excused from appearing. During this time period, both my attorney and

the district attorney contacted Hertz, shared evidence with them, and charges still were not dropped. My attorney appeared on my behalf and presented evidence that:

- My vehicle was stolen

- The rental vehicle contract had no return date

- Only one undeliverable demand letter was sent during the last week of November 2003

- Only one attempted phone call was made during the last week of November 2003

- They invoiced my car insurance carrier, so they knew it was an insurance rental

- My credit union account was debited for the full amount owed from the rental period

- There was at least one documented contact from me during the rental period when I stopped in the office and completed the incident report after a woman backed into the rental car with her van

20.    The assistant district attorney agreed to a nolle prosequi, which the judge signed on 9/14/2006.

21.    From the time I was arrested on 10/21/2005 until I received news of the dismissed charge on 9/28/2006, this case took a toll on me emotionally, physically, and financially. Many times, I felt I was on the verge of an emotional breakdown. The arrest and detention caused deep emotional stress to me and my family. I lost one month with my mother, who only had a few months to live at the time. Nursing a baby is a deep connection between mother and child, and the abrupt cutoff of this process was emotionally and physically devastating to me and my daughter. My oldest child was scarred from seeing his mother being arrested, while an officer had a weapon drawn on his father. When I arrived home from jail, I could not bring myself to drive for months and, when I did start driving again, I only did so when I absolutely needed to. My husband drove

me everywhere. I was afraid I would be pulled over. I was afraid every time I saw a police officer. I am still anxious when I am in the presence of a police officer.

22.     The court case was drawn out due to untrue statements made by Hertz, and their unwillingness to drop charges even after realizing they had both possession of the vehicle and payment was made. As the case was drawn out, we had to ponder what would happen if I were sent to prison for possibly up to 10 years, because I chose to stand firm in my innocence. We were a struggling family at the time, and it was very difficult financially to travel back and forth between Florida and Georgia for court dates. My husband and I were college students with young children, and our lives seemed to be in suspended animation for a year's time. The thoughts alone were painfully stressful. It is still difficult 16 years later to think about this experience, think of all the details, put it down on paper, and read it over and over again.

23.     Even though, my husband and I were able to accomplish some of our goals—attain degrees to the Masters level, raise our children in a safe community, and lay down the building blocks of our life—I still contend with this case until this day. I have had at least one job offer rescinded after the arrest came up on a background check and even after I presented documentation that the charges were dropped. I have worked in the senior living industry, for which the State of Florida requires a Level II background check every 5 years, which has required me to explain my arrest. I completed the expungement process in the State of Georgia; however, my initial arrest in Florida still appears in background searches. There doesn't seem to be an expungement process in Florida when there were never initial charges and a court case, so the arrest is there. Just this month, as I tried to become a substitute teacher, I ran into an issue with the background check. At this time, it is still pending. I am working on my real estate license, which will eventually require another background check. Every time I apply for a job, there is the possibility that I have to be

subjected to someone in an HR office acting as a judge and jury all over again in this case. Worse is, they can find me guilty of something a judge declared me innocent of, and deprive me of an opportunity to elevate myself, and some have already done just that. It is beyond frustrating.

24.     Based on the extensive communication with Hertz during the court case, and the dismissal of the charges, Hertz knows the police report it filed was false.

25.     I did not know about any bar date, nor about any bankruptcy plan. I do not regularly read *USA Today, The Wall Street Journal, The New York Times, The Globe and Mail, The Philadelphia Inquirer, San Francisco Chronicle, Arizona Republic, Chicago Tribune, Los Angeles Times, The San Diego Union Tribune, Naples Daily News, El Diario De El Paso, or Journal De Montreal.*

26.     As a direct and proximate result of Hertz's conduct, I was arrested, jailed for 1 month, falsely prosecuted for almost 1 year, was humiliated, lost wages, lost my reputation, has lost job opportunities, and has been severely mentally and emotionally harmed.

27.     There was no probable cause for Hertz to report me for any crime at any point in time.


I declare under the penalty of perjury of the United States of America that the foregoing is true and correct.

Dated:   December__3__, 2021

/s/ _ddavis_____

Declarant

ATTACHMENT H

## DECLARATION OF DEDRICK JACKSON

1.      My name is Dedrick Jackson.  I have personal knowledge of the facts stated in this declaration, and I can testify competently to them if called upon to do so.

2.      In summation: Dedrick rented a car for 1 month in Bremerton, WA from Hertz in early 2020. During the rental he had a blowout and could not drive it. He parked the car and called Hertz Roadside. Hertz gave him a claim number and then towed the car. Over 1 year later on June 29, 2021, Dedrick was walking back from Mexico to San Diego. He was stopped at the border after he handed over his passport; he was shocked when he was then arrested and told there was a warrant out and he was a fugitive. He was jailed for 3 days, and had no idea why he was jailed for the first two days. He was awaiting extradition, until friends and attorneys were able to get the matter dismissed by the Superior Court of California on third day he was jailed because Hertz's theft allegation was baseless.

3.      Dedrick is a successful businessman. He rented a Hertz car for around one month in Bremerton, Washington in early 2020.

4.      During the rental, one of the tires blew out and was no longer drivable. Dedrick left the car parked at his house and called Hertz Emergency Roadside to pick it up. Hertz gave him a claim number, 12045518, and then one or two days later towed the car.

5.      Dedrick assumed that the matter was finished and heard nothing further.

6.      On or around June 29, 2021, he had been visiting Mexico on foot, and was crossing back over into San Diego. He handed over his passport to the border agents.

7.      He was surprised when they took him aside and did not let him proceed. He was shocked when they told him that he was a fugitive and there was a warrant for his arrest.

8.      He was in fact arrested and taken to the San Diego County jail. He had never been arrested or jailed before and he was terrified. Making matters worse, he had no idea why there was a warrant for his arrest.

9.      The jail was a toxic and racist environment. As he sat there trying to avoid the worst elements, he tried to figure out what he could have possibly done to warrant this sort of treatment. He only knew that he was awaiting extradition and that it could be quite some time.

10.    After two days, friends and attorneys helping him told him that Hertz in Washington state had accused him of theft and there were criminal charges against him in Kitsap County. The case number was 20105451. It appeared from the filing date on the case that Hertz had accused him of theft on or around May 20, 2020.  He could scarcely believe his ears given that Hertz had towed the car after he called the company and asked him to do so.

11.    On the third day, the Superior Court of California, County of San Diego threw out the charges. The accusations were patently false. The case number in San Diego was CD390498.

12.    He contacted Hertz at the 1800 corporate number after the case was dismissed demanding to know why a false theft report was filed, but Hertz was evasive and refused to provide an explanation.

13.    Based on the prosecution and defense attorneys contacting Hertz after his arrest, and his own contacts, Hertz is fully aware that it filed a false theft report.

14.    Dedrick did not know about any bar date, nor about any bankruptcy plan.  Dedrick does not regularly *read USA Today, The Wall Street Journal, The New York Times, The Globe and Mail, The Philadelphia Inquirer, San Francisco Chronicle, Arizona Republic, Chicago Tribune, Los Angeles Times, The San Diego Union Tribune, Naples Daily News, El Diario De El Paso, or Journal De Montreal.*

15.    As a direct and proximate result of Hertz's conduct, Dedrick was arrested, thrown in jail for 3 days, falsely prosecuted,  humiliated, has his reputation damaged, and has been severely mentally and emotionally harmed.

16.    There was no probable cause for Hertz to report Dedrick for any crime at any point in time.

I declare under the penalty of perjury of the United States of America that the foregoing is true and correct.

Dated:   December __4__, 2021

/s/  _____
Declarant

 **Superior Court of California, County of San Diego**

**Court Index Home　Previous Page　New Case Number Search　Print**

## View Case Detail

Case Title:　　**DEFENDANT DEDRICK JACKSON**

Case Number:　**CD290498**　Case Location:　**San Diego**　　[ File Location ]

Case Type:　　**Criminal**　Date Filed:　　**06/29/2021**

| Defendant | | | | |
|---|---|---|---|---|
| Last Name | First Name | Birth Year | AKA | DA Number |
| **JACKSON** | **DEDRICK** | **1985** | | **N/A** |

| Imaged Case |
|---|
| **This case has not been imaged.** |

| Microfilm | | | |
|---|---|---|---|
| Microfilm ID | Location | Reel Number | Frame Number |
| **This case has not been microfilmed.** | | | |



search    site map    eservice center

Home    Case Search    Person Search    Attorney Search    Find My Court Date    Resources

⟳ Search History

## Case Search



🔍 **Case Search**

Here you can search for cases by Court Level.

Select Court Level
**Superior Courts** ▾    ⓘ

Select Search Type
**Search by name** ▾

Court Name
**KITSAP COUNTY SUPERIOR CO...** ▾

Case Type
**Criminal** ▾

Year Filed In/After
**01/01/2016** ▾

First Name*
**Dedrick** ✕

Last Name*
**Jackson** ✕

🔍 **Search**

## Search Results

1 RECORD(S) FOUND



🏛 **KITSAP COUNTY SUPERIOR COURT**

👤 **Name:** Jackson, Dedrick James

**Participant:** Defendant

**Status:** Archived No Docket Info

**Cause:** n/a

**Case No: 201005451**

📅 **File Date:** 05-20-20

## About Lists of Cases

📋

You are viewing a list of cases. Each court level has a different case numbering system. Docket case information is only available for Superior Court cases when the case status is open.

If the Case Status field indicates that the case has been archived, docket case information is not available.

To view the case details for an archived or closed, **contact the court or record** directly. The court will attempt to obtain information for you.

## Court Information 

**Address**
Kitsap Superior
614 Division St, MS 24
Port Orchard, WA 98366-4683

📍 Map & Directions

📞 **Phone:** 360-337-7140

📞 **Fax:** 350-337-4673

🌐 Visit Website

If the case was filed in Superior or Appellate Court, there may be docket information available. Docket information is not available for Municipal & District Court Cases.

To get directions or information about a Court in this list, view the **Washington Court Directory**.



Disclaimer

© Copyright 2021. Washington State Administrative Office of the Courts.

ATTACHMENT I

## DECLARATION OF LARRYELLE MAGEE

1.      My name is Larryelle Magee. I have personal knowledge of the facts stated in this declaration, and I can testify competently to them if called upon to do so.

2.      In summation: Larryelle rented a car in or around October 2017, from a Hertz location in League City, Texas. It was through State Farm. She was told that State Farm was handling the rental. She actually returned to the location after 1 month; Hertz told her to keep the car and said they would address it with State Farm. Two weeks later she was pulled over and arrested in Lamarque, TX. She tried to explain it was an insurance rental and she had gone back to the location and was told she was fine. It did not matter. She spent 2 days in Lamarque City Jail and then spent 10 hellish days in Galveston County Jail. She was prosecuted for 3 years for Unauthorized Use of a Motor Vehicle and repeatedly threatened to take a plea deal, but refused. In November 2020 she went to a bench trial at which she testified in her own defense and was acquitted. However, even though she ultimately won the criminal case, Hertz has irreparably destroyed her life.

3.      Larryelle, rented a car through State Farm in or around October 2017, after she was in a wreck. The rental was from a location in League City, Texas. She had been in a bad wreck on September 7, 2017.

4.      She was told by State Farm that they would handle the rental.

5.      She in fact returned to the location about 1 month into the rental. She let them know that she still needed the car. The Hertz employees told her to keep the car and that they would handle the rental with State Farm.

6.      Approximately 2 weeks later she was pulled over in Lamarque, TX. The police slapped cuffs on her and told her that the car was stolen. She tried to explain that this was an

insurance rental and that she had returned to the Hertz location. The police did not say or do anything; they simply took her away.

7.      She was taken to Lamarque City Jail for 2 days, and then transferred to Galveston County Jail for around 10 days.

8.      It was very bad experience. Galveston is a "no-movement" jail. Everything is in the cell and the prisoner is not allowed out of the cell. There is no sunlight and she was not allowed outside.

9.      There were repeated and heated arguments and the guards were horrible.

10.     The women are not given undergarments. The jail also does not hand out sanitary products. As a result, she had to wear an adult diaper. It was humiliating.

11.     After 12 days jailed she was finally released.

12.     She was then prosecuted for the next 3 years for Unauthorized Use of a Motor Vehicle. The case number was 18CR0163 in Galveston County.

13.     She was repeatedly threatened with plea deals and told that she was going to do years in prison if she did not plead.

14.     Her defense attorney repeatedly urged the prosecution to dismiss the case in 2020 in the lead up to trial. On March 26, 2020, he wrote to the prosecutor in an email:

> I am writing to suggest that you seriously consider dismissing the above case. Please understand that up front that nothing herein is meant to be critical of you or your office. You are doing your job, as you must. But you and your office are also being abused by Herz [sic].

15.     Her defense attorney went on to criticize Hertz's "'theft package' operation, which simply turns DA's offices into collection bureaus."

16.     Her defense attorney reiterated this request on June 16, 2020, after not getting a response. In response, the District Attorney tried to get Larryelle to take a plea deal to misdemeanor

2

theft.

17.     Larryelle refused to take a plea deal, despite the fact that the prosecution was having a devastating effect on her life, as described more below.

18.     The case went to a bench trial in November 2020 on charges of Unauthorized Use of a Motor Vehicle. She was facing 2 to 5 years in prison.

19.     Hertz sent a location employee, who knew next to nothing about the case, to testify against her. All this employee did was repeat the false facts from the theft report Hertz filed.

20.     Hertz never informed the Court that it has a theft reporting problem and is filing unverified, uninvestigated, and incomplete theft reports.

21.     Larryelle then took the stand for 20 minutes and explained that it was an insurance rental and that she had returned in person to the location 2 weeks before she was arrested and was told everything was okay by Hertz employee.

22.     The Court acquitted her of all charges in November 2020.

23.     Her court record was expunged in early 2021.

24.     Despite her victory in Court, her life has been ruined.

25.     She could not find a job because of the pending criminal charges.

26.     She became homeless because her job and apartment applications were continually rejected because of the pending charges.

27.     She tried to drive for Uber and Lyft, but she was turned down because of the pending criminal charges.

28.     Her uncle, cousins, and mom all assumed that Hertz would not lie and were not supportive. It is an understatement to say that her feelings are hurt; her reputation has been destroyed.

29.     As a result of the arrest, jailing, and prosecution she has gone through a deep and severe depression, coupled with anxiety. She currently owes approximately $2,000 in bills for the therapy.

30.     Because of what Hertz did to her, she has had to declare bankruptcy which is further ruining her life.

31.     Her whole life has been destroyed because of Hertz falsely reporting and prosecuting her.

32.     Based on the fact that Hertz sent an employee to her trial—albeit a low level employee who knew nothing about the rental—Hertz is absolutely aware that she claimed that it was a false theft report, at worst a civil matter, and that she was acquitted.

33.     Larryelle did not know about any bar date and did not see it in any publication, nor did she know about any bankruptcy plan. She does not regularly read *USA Today*, *The Wall Street Journal*, *The New York Times*, *The Globe and Mail*, *The Philadelphia Inquirer*, *San Francisco Chronicle*, *Arizona Republic*, *Chicago Tribune*, *Los Angeles Times*, *The San Diego Union Tribune*, *Naples Daily News*, *El Diario De El Paso*, or *Journal De Montreal.*

34.     As a direct and proximate result of Hertz's conduct, Larryelle was arrested, jailed for 12 days, was falsely prosecuted for 3 years and endured a bench trial facing 2 to 5 years in prison, had her reputation destroyed, her personal and familial relationships wrecked, lost wages and the ability to earn money, lost the ability to obtain adequate living conditions, became homeless, and has been severely emotionally and mentally harmed.

35.     There was no probable cause for Hertz to report Larryelle for any crime at any point in time.

I declare under the penalty of perjury of the United States of America that the foregoing

is true and correct.

Dated:   December 4, 2021

/s/ _____

Declarant

ATTACHMENT J

## DECLARATION OF CHRISTIAN MANGANO

1.      My name is Christian Mangano. I have personal knowledge of the facts stated in this declaration, and I can testify competently to them if called upon to do so.

2.      In summation: Christian works for NASA's Jet Propulsion Laboratory (JPL) putting rovers on Mars. While on assignment in Florida, JPL rented a Hertz car for Christian from the Orlando Airport location on January 2, 2020. The rental was to last until July 24, 2020. On April 26, 2020, he was arrested at gun point by police in front of his coworkers, handcuffed, and eventually told that he was driving a stolen vehicle. It is hard to convey how shocked and humiliated he was by what was happening. Outrageously, Hertz had reported the vehicle stolen on April 24, 2020. Hertz was expressly aware that it had filed a false report and that he had a claim against the company, but never sent him any notice of the bar date.

3.      Christian works for NASA's Jet Propulsion Laboratory as a Flight Tech. Although he lives in California, he was on assignment in Florida from January to July 2020 for an upcoming launch.

4.      JPL rented a Hertz car for him on January 2, 2020, from the Orlando Airport and the rental was supposed to last until July 24, 2020.

5.      As Christian was parking at his condo at around 9:00 am on April 26, 2020, an officer emerged from an unmarked police SUV that had followed him into the lot. He had his gun drawn and started screaming at him to exit the vehicle with his hands up. Seconds later another officer ran up with his gun out and joined the first. There was a Brevard County Sheriff and a Cocoa Beach police officer. During the arrest, at least six additional law enforcement vehicles arrived to support the felony stop.

6.      Christian was terrified and had no idea what was happening. His arrest was caught

1

on surveillance video.

7.      They instructed him to put his hands up and walk forward, then stop; they then instructed him to orient his back towards the two officers and pull his shirt up above his waist while spinning around until he was facing them again.

8.      They then had him turn around again and interlock his fingers and drop to his knees, and cross his legs; the officer then proceeded to push him to the ground and cuffed him. The entire time he was completely confused and felt like he was in a surrealistic nightmare.

9.      He was then placed into the back of the cop car with no understanding of the reason he was being handcuffed at gun point.

10.     To make matters worse, this arrest occurred in full view of his coworkers who saw him being arrested.

11.     He was finally told by police that the car had been reported stolen on April 24, 2020. He could scarcely believe his ears.

12.     The police called Hertz and spoke with employee Marisha, ID#3169. She confirmed to the police that the car's reservation was J22019286F3 and that it was valid through July 24, 2020. See Attached Police Report.

13.     Christian spent more than two hours arrested, placed in the back of the cop car, and terrified for his life, as he thought he was going to jail.

14.     The police at that point realized that the theft report was false. He was then released and allowed to stay in possession of the vehicle.

15.     The police and law enforcement apologized profusely for what Christian just went through and they made it clear that they are "sorry" and that "they wanted to be the first to apologize to him for what had occurred" because the false report Hertz filed.

16.    Interestingly enough, days later, that very same police officer who was active in the arrest of Christian ran into his friend/co-worker who was also at the scene and had witnessed what had occurred. The officer said that he was "sorry for what happened to your friend, and that this wasn't the first time that he or his department was called because of a false report by Hertz."

17.    However, later that day the vehicle was towed without warning with all of Christian's possessions inside it.

18.    Hertz was well aware they had filed a false police report. JPL was furious with Hertz:

> From: Heapy, Sally E (US 1434) <sally.e.heapy@jpl.nasa.gov>
> Sent: Sunday, April 26, 2020 6:31 PM
> To: Mangano, Christian M (US 357C) <christian.m.mangano@jpl.nasa.gov>;
> Gruel, David C (US 3130) <david.c.gruel@jpl.nasa.gov>; Farrell, Mary
> <mfarrell@hertz.com>; Campos, Claudia <claudia.campos@hertz.com>; Totin,
> Leanne K. <LTotin@hertz.com>
> Cc: Corcoran, Brian J (US 1400) <brian.j.corcoran@jpl.nasa.gov>; Hail, Annaliza
> L (US 1430) <annaliza.l.hail@jpl.nasa.gov>; sally.e.heapy (jpl.nasa.gov)
> <sally.e.heapy@jpl.nasa.gov>; Mc Namee, John B (US)
> <john.b.mcnamee@jpl.nasa.gov>; Wallace, Matthew T (US)
> <matthew.t.wallace@jpl.nasa.gov>
> Subject: Christian Mangano - Hertz Vehicle was towed this evening
>
> Good Evening Mary,
>
> I just received a call from Christian Mangano that his Hertz vehicle was towed from in front of his property this evening with no warning and no communication.  I spoke to Christian and he said he was never made aware of the fact his vehicle was supposed to be towed or he would have removed his personal items (tripod, phone charger, etc.).  Please coordinate with Christian and make sure Hertz delivers his personal items to him and replaces the vehicle with a new rental that is set up correctly with direct billing for the remainder of his time in Florida.
>
> ***Please also make sure that anything to do with that cursed vehicle that was towed this evening is removed from his name***.  And, if the original vehicle that was supposed to be associated with his original contract back on January 2nd, has not been made null and void it should be as JPL is not liable for any charges associated with that vehicle.
>
> Please communicate exactly when and where this will take place and what Christian

3

should expect so that he can make sure his schedule aligns. Christian will be circling back with me tomorrow to make sure this takes place.

Thanks,

Sally

Sally Heapy
Group Supervisor
Travel Reservations (1434)

See Attached Email Chain (emphasis added).

19.     Christian's belongings were not recovered. He lost a tripod, charger, and an Apple Watch.

20.     Hertz was well aware there was a claim against them because they offered Christian $500. Christian thought this was absurd and flatly rejected it:

> From: Mangano, Christian M (US 357C)
> <christian.m.mangano@jpl.nasa.gov<mailto:christian.m.mangano@jpl.nasa.gov>>
> Sent: Wednesday, April 29, 2020 6:37 AM
> To: Kordsmeier, Krystle
> <krystle.kordsmeier@hertz.com<mailto:krystle.kordsmeier@hertz.com>>
> Subject: Re: [EXTERNAL] Follow up
>
> Krystal,
> As I think more about the situation that I was in because of the Hertz Company's error,  I realize how dangerous it was and it's potential to be even worse. I believe that the $500 dollar check that has been offered doesn't even come close to being sufficient compensation for the trauma I was caused, the position I was put in, and the humiliation I sustained. The Hertz company has severely undervalued the trauma of being stopped by multiple police vehicles, ordered to step out of my vehicle at gunpoint with hands up and shirt pulled up, ordered to my knees while the officers forced me to my stomach to place handcuffs tightly around my wrists and ushered to the back of the police cruiser for over an hour while the matter was investigated.  I have also spent that last few days preoccupied with the fall-out caused by this event. On top of this, it looks as if this glitch in the Hertz computer system isn't the first time it has happened to a customer. Hopefully I'll be the last. It is my intention that other innocent people will not have to face the same situation I had to go through. Along with the replacement of my lost/damaged property I feel that $30,000 dollars would ease this horrible experience caused by the Hertz rental company.

4

Christian Mangano
Flight Tech
Bld 18

See Attached Emails. Christian thought his demand was frankly low for being held at gun point and arrested for no reason, but wanted to give Hertz the chance to do the right thing. He demanded that all further communications take place by email.

21.     Hertz did not respond until May 15, when Laura C. Smith, a Senior Vice President of Customer Experience & Global Customer Care, emailed him. She did not accept Christian's demand and instead wanted to talk more. Later Hertz said they would replace the items lost and destroyed including his Apple watch which was damaged while being handcuffed and arrested. They also said they would agree to pay $2,000 for their blunder; which Christian rejected.

22.     No one at Hertz ever told Christian that the company had a false police reporting problem and that he was one of many victims.

23.     Despite being unambiguously aware that there was a false police report, a false arrest, and a claim against the company, the company never provided Christian with notice about any bar date in the bankruptcy nor of any bankruptcy plan.

24.      It should also be noted that when Hertz gave Christian a replacement vehicle on April 26, it literally started to fall apart days after he got it. On May 2, one of the tires deflated. After he nursed the vehicle into Kennedy Space Flight Center, and got out to see what was wrong, he saw that two other tires were completely bald and the internal structure of the tires were visible – down to the radial belts. See Attached Picture.

25.     JPL again emailed Hertz furious and stated that Hertz had a lot of questions to answer:

....
After all of these encounters and mishaps, Christian has decided to

5

terminate any further endeavors with Hertz for future rentals and will be working to close out both the towed vehicle agreement and the Toyota Camry agreement.

As you can imagine, this incident further tarnishes an already strained relationship and the questions that arise from it. Why would an unsafe vehicle be included in a fleet for rental? We continue to scratch our collective heads here at JPL as to why there appear to be so many of these operational problems arising with these Florida rentals in Orlando, all of which are dangerous. Please add this to the open list of action items already provided to you for your Senior Executive Management to address before we can reinforce any faith in our future relationship with Hertz. And the additional question for that list is, "What methodology is in place with respect to quality control to assure all aspects of a vehicle have been thoroughly inspected from a safety perspective before a vehicle is released for rental?"

Regards,

Sally

Sally Heapy
Group Supervisor
Travel Reservations (1434)
14x  |  Controller & Financial Planning Office http://fmd.jpl.nasa.gov/

See Attached Emails.

26. Based on the fact that Hertz has repeatedly been called and emailed by Christian and JPL asking them why a false theft was filed, and Hertz and Christian tried to resolve this matter in April-May 2020, Hertz has records of Christian's case and knows that the police report the company filed against him was false.

27. Christian did not know about any bar date and did not see it in any publication. He does not regularly read *USA Today*, *The Wall Street Journal*, *The New York Times*, *The Globe and Mail*, *The Philadelphia Inquirer*, *San Francisco Chronicle*, *Arizona Republic*, *Chicago Tribune*, *Los Angeles Times*, *The San Diego Union Tribune*, *Naples Daily News*, *El Diario De El Paso*, or *Journal De Montreal*.

6

28.     As a direct and proximate result of Hertz's conduct, Christian was falsely arrested at gun point, was humiliated, lost personal items as described in this declaration, and has been severely emotionally and mentally harmed.

29.     There was no probable cause for Hertz to report Christian for any crime at any point in time or to report his rental car stolen.

I declare under the penalty of perjury of the United States of America that the foregoing is true and correct.

Dated:   November _____, 2021          _/s/_____
                                            Declarant

As you can imagine, this incident further tarnishes an already strained relationship and the questions that arise from it. Why would an unsafe vehicle be included in a fleet for rental? We continue to scratch our collective heads here at JPL as to why there appear to be so many of these operational problems arising with these Florida rentals in Orlando, all of which are dangerous. Please add this to the open list of action items already provided to you for your Senior Executive Management to address before we can reinforce any faith in our future relationship with Hertz. And the additional question for that list is, "What methodology is in place with respect to quality control to assure all aspects of a vehicle have been thoroughly inspected from a safety perspective before a vehicle is released for rental?"

Regards,

Sally

Sally Heapy
Group Supervisor
Travel Reservations (1434)
14x    |    Controller & Financial Planning
Office[____ ____ ____ ____ ____]

See Attached Emails.

26. Based on the fact that Hertz has repeatedly been called and emailed by Christian and JPL asking them why a false theft was filed, and Hertz and Christian tried to resolve this matter in April-May 2020, Hertz has records of Christian's case and knows that the police report the company filed against him was false.

27. Christian did not know about any bar date and did not see it in any publication. He does not regularly read *USA Today, The Wall Street Journal, The New York Times, The Globe and Mail, The Philadelphia Inquirer, San Francisco Chronicle, Arizona Republic, Chicago Tribune, Los Angeles Times, The San Diego Union Tribune, Naples Daily News, El Diario De El Paso*, or *Journal De Montreal*.

28. As a direct and proximate result of Hertz's conduct, Christian was falsely arrested at gun point, was humiliated, lost personal items as described in this declaration, and has been severely emotionally and mentally harmed.

29. There was no probable cause for Hertz to report Christian for any crime at any point in time or to report his rental car stolen.

I declare under the penalty of perjury of the United States of America that the foregoing is true and correct.

Dated: November ___ 29 ___, 2021    /s/

_____  Declarant

2

# ATTACHMENT K

## DECLARATION OF KELLAN MCCLELLAN

1.      My name is Kellan McClellan.  I have personal knowledge of the facts stated in this declaration, and I can testify competently to them if called upon to do so.

2.      In summation: On October 7, 2019, Kellan rented a car from the Hertz office located at 7030 South Cicero in Chicago, IL.  He signed up for a 7-day rental to drive for Uber. Around 5 days later on October 12th was driving near 91st and Ashland when he was pulled over by multiple police vehicles.  He was arrested at gunpoint and taken to jail.  He was jailed overnight and released the next day. At his court case on November 19, 2019, the charge of criminal trespassing to vehicles was dropped, because the prosecution was unable to show any evidence of a valid stolen vehicle report.

3.      Using the Uber app, Kellan scheduled an appointment to rent a Hertz vehicle from the location at 7030 South Cicero in Chicago, IL. He intended to use the car as an Uber driver.

4.      He agreed to a 7-day contract that was supposed to last from October 7, 2019 to October 14, 2019. The contract number was 142227934. He paid for the rental using a debit card from Chase. The rental contract showed his return date as October 14, 2019:

| | | | | | |
|---|---|---|---|---|---|
| Credit Card Authorization Amount $ | | | 452 | .00 | |
| Rented by The Hertz Corporation | | | | | |
| Vehicle: 02293 | / 5662978 | LocNum: | ILBLF20 | / 0444320 | |
| Miles Out: | 63756 | Plan: | CRL | Class: | M6 |
| Rental Location: | BEDFORD PARK PEP BOYS | | | | |
| Rental Time: | 10 /07 /19 at | 10 33 AM | | | |
| Return Location: | BEDFORD PARK PEP BOYS | | | | |
| Return Time: | 10 /14 /19 at | 937 AM | | | |

5.      He observed a one-time payment of $250 being charged to his bank account.

6.      At no point did Hertz reach out to him by phone or email to inform him that there may have been an issue with his rental agreement.

7.      On October 12, 2019, just days into the rental, Kellan was driving near 91st and Ashland when several police vehicles boxed in his rental car and forced him off the road.

8.      With guns aimed at him as if he was a felon, the police officers removed Kellan from his vehicle and told him that his car had been reported stolen.

9.      Kellan, who had an injury to his hand, requested that the police officers place his hands in front when was handcuffed to reduce strain on his injury, but they refused. This caused him a great deal of pain.

10.     He was taken to the Morgan Park Police Precinct, and forced to spend a night in jail.  He was able to bond out the next day.

11.     He called Hertz at the 1800 number when he got out and demanded an explanation. The employee on the phone was confused and said that it showed in Hertz's system that his rental was not due for several more days. Kellan could not understand how this happened.

12.     He was assigned a court date on November 19, 2019, on charges of Criminal Trespass. When he showed up to Court, and his case was called, he was told that it was dismissed. Hertz did not appear. He was given the following case identification numbers: CB# 19882886, RD# JC469519, and Event # 1928500395.

13.     It appears that Hertz had either reported the vehicle stolen before renting it to Kellan, or had reported the vehicle stolen during his rental even though he was renting it until October 14, 2019. In any case, it is entirely inexcusable conduct. Hertz plainly did no real investigation to determine where the car was and whether it had been rented out before or after reporting it stolen.

14.     He first sent a Notice of Loss on January 2, 2020, describing in detail the false theft report, along with a packet of documents. He was given case no. 18330228. He threatened

litigation and made it clear that he expected this serious problem to be addressed and explained.

15.   After January 2, he spoke with Hertz customer service on the 1800 numbers, 2 corporate security managers, and a Hertz senior examiner named Alex Wood, but could not get any explanation about why he had been arrested.

16.   Then Alex Wood told him on January 8, 2020, that Wood could not find the documents Kellan sent. Kellan then sent a second notice of loss on January 9 to Wood, again explicitly describing what had happened, again with a packet of papers, and again made it clear that Hertz needed to resolve this or face litigation.

17.   Kellan was then directed to claim's agent for Hertz at Chubb/ESIS, a woman named Felicia Aldridge. He went back and forth with her but got no resolution or explanation for what had happened.

18.   Fed up with Hertz's poor response, he wrote a long demand letter threatening litigation on February 3, 2020, to Hertz general counsel David Galainena:

> Kellan McClellan
> 301 West 103rd Place
> Chicago, IL, 60628
>
> February 3, 2020
>
> M. David Galainena
> General Counsel
> The Hertz Corporation
>
> RE: Final Notice Of Loss
>
> "FOR SETTLEMENT PURPOSES ONLY"
>
> I, Kellan McClellan, citizen of The United States of America, of legal age, and resident of Chicago, IL, after having been duly sworn in accordance with the law, hereby depose and say:
>
> On October 7, 2019, I started a new rental contract with Hertz at the location

on 7030 South Cicero, Chicago, IL. On October 12, 2019, at 12:32 AM, I was arrested by the Chicago Police Department (CPD) and charged with Criminal Trespassing to Vehicles. According to The CPD, the red 2018 Chevrolet Cruze [License plate # BK59610], that I was driving was reported stolen and listed Hertz as the victim. On November 19th, 2019, this case was dismissed in court. According to Hertz customer service representatives and Hertz rental record #142227934, I was under contract for the vehicle in question until October 14, 2019 and Hertz Management had no knowledge of a stolen vehicle report.

After speaking with a licensed psychotherapist about how this humiliating incident is mentally affecting me, she concluded that I am still in shock from the incident; I'm also suffering from Post Traumatic Stress Disorder, anxiety, depression, and it has severely affected my ability to drive. As a result of this incident, I have become so psychologically impaired that I am virtually a safety hazard to myself, other drivers, and Uber/rideshare customers alike. These circumstances are preventing me from driving and thus damaging my self employed ride share business.

Since this incident happened as a result of the presumed negligence of Hertz Management, I am seeking financial compensation from The Hertz Corporation for the damages Hertz Management negligently or intentionally bestowed upon me; damages including but not limited to Personal Injury, future medical expenses, breach of contract, pain and sufferring (past and present), lost of ability to enjoy life (past and present), permenant impairment, lost of income(past and present), loss of earning capacity as a self employed ride share driver as a result of permanent injury, and loss of earning capacity due to defamation of character.

At the time of the incident, I was a self employed ride share driver with intentions of driving for Uber until retirement age of at least 65, as this was my only source of income. According to my Uber earnings, I have proven that I was fully capable of grossing $4000 in a month and have been out of work since October because of this incident. If you multiply $4000 times 12 (mos.) times 34 (yrs), you will have an idea of what my potential earning capacity was before the incident. Now that I have a criminal record, my employability as a job seeker is significantly challenged as well.

Although I am open to settling my claim outside of court, I think it would be best for the public if having my case tried in a court of law would serve as a better warning to other hard working Americans that renting a car from Hertz is not always the safest decision when trying to earn an honest living

because they can be forcibly removed from their rented vehicle, forced into a cage, accused of things they didn't do, humiliated, and injured for simply renting a car to earn an honest living driving for Uber (Uber, the company Hertz partnered with to market opportunities to earn income as a rideshare driver); this would be a warning that customers are definitely deserving of; the same warning that Hertz failed to give me.

According to the Illinois General Assembly's Code of Civil Procedure (735 ILCS 5/13-213), it would be appropriate to take Product Liability Action on Hertz for my injuries based on the theory of false advertisment and market defects. According to the court doctrine Res Ipsa Loquitur, I would only have the burden of proving that 1) I was injured, 2) my injury was received from the car I was driving under contract with Hertz management, 3) in the normal course of events, my injury would not have occurred if Hertz management had used ordinary care while the car I was driving under contract was under Hertz management (hence the market defect).

According to the Illinois General Assembly's Code of Civil Procedure (735 ILCS 5/2-1116), the plaintiff shall not be barred from recovering damages if the trier of fact finds that the contributory fault on the part of the plaintiff is not more than 50% of the proximate cause of the injury or damage for which recovery is sought, but any economic or non-economic damages allowed shall be diminished in the proportion to the amount of fault attributable to the plaintiff.

Despite the oddness of this incident, I'm sure all parties involved in the incident that occurred on October 12, 2019 can agree that 1)I was indeed injured because of the vehicle I was driving under Hertz management 2)this type of occurrence does NOT ordinarily happen to Hertz customers, 3)this incident was NOT my fault in ANY capacity. If Hertz Management can not agree to these facts and grant my settlement demand, then I think it would be in my best interest to seek Product Liability Action and have a jury try these facts in a court of law with the help of a lawyer and a few expert witnesses.

As a customer of Hertz, I feel as if Hertz Management's treatment of me is a complete contradiction of the customer relation guidelines set forth in Hertz Standards of Business Conduct. After countless communications with Hertz via customer service representatives, corporate security managers, and most recently, FNOL Senior Examiner, Alex Woods; Hertz has failed to rebut its presumed negligence and provide adequate reasoning for when, where, how, and why the vehicle Kellan was driving was reported stolen.

Since October 12, 2019, I have reached out to Hertz regarding this incident so many times that have I become completely exhausted and feel as if I'm talking to a stone wall.

I sent my first notice of loss on January 2, 2020 with an expected settlement date of January 22, 2020. I appreciate Alex Woods for passing my claim along in a timely fashion but it landed on the desk of a Third Party Adjuster, Felicia Aldridge, whom it is safe to assume does not have authority to grant the amount I am rightfully demanding in my settlement, which is only prolonging this process.

Due to the severity of these damages, it is crucial that I be compensated as soon as possible. If a settlement for $1,440,000 isn't reached within 10 business days from the date this letter was recieved by The Hertz Corporation's registered agent for service in Illinois (C T Corporation), then a complaint to recover economic and non-economic damages in the amount of at least $2,313,815.70 shall be filed with The Law Division of The Cook County Circuit Court. An official settlement offer can be sent via email to {kbmcclellan88@gmail.com}. I appreciate your fairness and timeliness regarding this matter as it would save me from further humiliation. Sincerely,

Kellan McClellan

19.    In the following months, Kellan got nowhere and received no explanation for what had happened. He got the distinct impression that Hertz knew what had happened but was trying to hide exactly why he was arrested.

20.    Then, on July 2, 2020, he received a letter from a Hertz attorney named Creed Tucker. The letter said that Hertz was in bankruptcy.

21.    The letter from attorney Tucker told Kellan that in the future "Hertz's claims agent, who will be managing the claims process, will be mailing full information about submitting a proof of claim and the applicable deadlines."

22.    Kellan, however, never received anything from Hertz or a claims adjuster, even though he told them he was bringing a claim and was well known to the claims adjuster, Hertz itself, Hertz's internal attorneys and general counsel, and Hertz's outside attorneys.

23.      Kellan did not know about any bar date and did not know about any bankruptcy plan. He does not regularly *read USA Today, The Wall Street Journal, The New York Times, The Globe and Mail, The Philadelphia Inquirer, San Francisco Chronicle, Arizona Republic, Chicago Tribune, Los Angeles Times, The San Diego Union Tribune, Naples Daily News, El Diario De El Paso, or Journal De Montreal.*

24.      As a direct and proximate result of Hertz's conduct, Kellan was arrested, handcuffed at gunpoint, jailed for two days, and falsely prosecuted. He has been severely emotionally and mentally harmed and suffers from shock, PTSD, anxiety and depression.  He is unable to continue in his career as an Uber driver.

25.      There was no probable cause for Hertz to report Kellan for any crime at any point in time, nor to have him arrested.


I declare under the penalty of perjury of the United States of America that the foregoing is true and correct.

Dated:  December 3, 2021

/s/ _____

Declarant

**FINAL APPROVAL**

CB #: 19882886
IR #:
YD #:
RD #: JC469519
EVENT #: 1928500395

**CHICAGO POLICE DEPARTMENT**
# ARREST REPORT
3510 S. Michigan Avenue, Chicago, Illinois 60653
(For use by Chicago Police Department Personnel Only)
CPD-11. 420C(REV. 6/30)

## ARREST REPORTING

### OFFENDER

**Name: MCCLELLAN, Kellan B**

**Res:** 301 W 103rd Pl            **Beat:** 512
Chicago, IL 60628
None

**DOB** 1988
**AGE:** 31 years
**POB:** Illinois
**DLN:** -IL
**ARMED WITH** Unarmed

Male
Black
5' 11"
150 lbs
Brown Eyes
Black Hair
Dreadlocks Hair
Style
Medium Brown
Complexion



### INCIDENT

**Arrest Date:** 12 October  2019 00:32      **TRR Completed?** No
**Location:** 9010 S Ashland Ave              **Beat:** 2221
Chicago, IL 60620
304 - Street
**Holding Facility:** District 022 Lockup
**Resisted Arrest?**   No

**Total No Arrested:** 1      **Co-Arrests**        **Assoc Cases**
                              DCFS Ward ?  No
**Dependent Children?** No

### CHARGES

1        Offense As Cited  **720 ILCS 5.0/21-2-A**
                           CRIMINAL TRESPASS TO VEHICLES
                           Class  A - Type  M

**Victim**
Hertz

### RECOVERED NARCOTICS

**NO NARCOTICS RECOVERED**

IR #

### WARRANT

**NO WARRANT IDENTIFIED**

CB #:19882886

**Print Generated By:**              Page 1 of 3              21 NOV 2019 03:18


CB #: 19882886

**Chicago Police Department - ARREST Report**

MCCLELLAN, Kellan

## ARREST REPORTING

### VICTIM AND COMPLAINANT

**NON-OFFENDER(S)**

Name: HERTZ

Injured? No     Deceased? No

DOB:                                   Hospitalized? No

Age:

Comments:                          Treated and Released? No

### ARRESTEE VEHICLE

| Vehicle: | **VEHICLE IMPOUNDED:** | | |
|---|---|---|---|
| 2018  Automobile - Chevrolet - Cruze - Hardtop, 4-Door | VIN#: 1G1BE5SM4J7105665 | Lic#: BK59610   IL | |
| Color: Red (Top) / Red (Bottom) | | Inv#: | |
| Pound#: | | | |
| Disposition: Towed | | | |

### PROPERTIES

**Confiscated Properties :**

All confiscated properties are recorded in the e-Track System. This system can be queried by the inventory number to retrieve all official court documents related to evidence and/or recovered properties.

PROPERTIES INFORMATION FOR     MCCLELLAN, Kellan,     NOT AVAILABLE IN THE AUTOMATED ARREST SYSTEM.

### INCIDENT NARRATIVE

(The facts for probable cause to arrest AND to substantiate the charges include, but are not limited to, the following)

EVENT#00395 THIS IS A BWC INCIDENT. OFFENDER HAS NO WANTS OR WARRANTS NO GIPP OR TRAPP GANG AFFILIATION DENIED. OFFENDER HAS \$31.00 USC ON HIS PERSON. OFFENDER IS NOT ON PAROLE OR PROBATION.

IN SUMMARY R/OS WHILE ON PATROL RESPONDED TO A CALL OF A STOLEN VEHICLE (VIA SDC ROOM 2202S/POD OBSERVATION) AT 9000 S ASHLAND AT THE MARATHON GAS STATION. R/O'S ARMED WITH PLATE #BK59610 AND DESCRIPTION OF VEH RED CHEVY CRUZ, OBSERVED IT BEING DRIVEN N BOUND AT 9010 S ASHLAND. R/O'S CURBED VEHICLE AND PLACED THE SOLE OCCUPANT DRIVER INTO CUSTODY THEN TRANSPORTED OFFENDER THE 022ND DISTRICT FOR PROCESSING. OFFENDER STATED HE KNOWS HE OWES HERTZ MONEY BUT NOT FOR THE ABOVE LISTED VEH AND THAT HE DID NOT REALIZE VEH WAS STOLEN. R/OS WERE UNABLE TO CONTACT HERTZ AGENCY FOR FURTHER INFORMATION.

PERSONAL PROPERTY INVENTORY#14566380
VEH KEYS INVENTORY#14566395
SS#067763

### COURT INFO

| Desired Court Date: | 19 November 2019 | **Bond Date:** | 12 October 2019 3:30 |
|---|---|---|---|
| Branch: 35-5  727 E 111TH ST - Room | | Type: | Recognizance |
| Court Sgt Handle? No | | Receipt #: | I8774295 |
| Initial Court Date:  19 November 2019 | | Amount: | \$1,500.00 |
| Branch: 35-5  727 E 111TH ST - Room | | | |
| Docket #: | | | |

**BOND INFO**

powered by: CLEAR Technology

CB #: 19882886

**Chicago Police Department - ARREST Report**

MCCLELLAN, Kellan

| ARREST REPORTING |
|---|

**REPORTING PERSONNEL**

**ATTESTING OFFICER:**

I hereby declare and affirm, under penalty of perjury, that the facts stated herein are accurate to the best of my knowledge, information and/or belief.

| Attesting Officer: | #9883 | HUBERTS JR, D L | | 12 OCT 2019 02:06 |
|---|---|---|---|---|

**ARRESTING OFFICER(S):**

| | | | | Beat |
|---|---|---|---|---|
| 1st Arresting Officer: | #9883 | HUBERTS JR, D L | | 2206A |
| 2nd Arresting Officer: | #16812 | SMITH, B C | | 2206A |

**APPROVING SUPERVISOR:**

| Approval of Probable Cause : | #472 | FIDLER, B S | | 12 OCT 2019 02:34 |
|---|---|---|---|---|

# CHICAGO POLICE DEPARTMENT
# ORIGINAL CASE INCIDENT REPORT

3510 S. Michigan Avenue, Chicago, Illinois 60653
(For use by Chicago Police Department Personnel Only)
CPD-11.388(6/03)-C)

**RD #:**  JC469519

**EVENT #:** 1928500395

Case ID:     11858177   CASR229

---

## INCIDENT

### CLEARED CLOSED (ARREST AND PROSECUTION)

**IUCR:**  1360 - Criminal Trespass - To Vehicle

**Occurrence Location:** 9010 S Ashland Ave
Chicago IL
259 - Vehicle Non-Commercial

**Beat:** 2221

**Unit Assigned:** 2206A
**RO Arrival Date:** 12 October 2019 00:32

**# Offenders:** 1

**Occurrence Date:**  12 October 2019 00:32

---

## NON OFFENDER

### TITLE HOLDER/FINANCIAL INST.

**Name:** HERTZ

**Beat:** 3100

, II

### VICTIM - Government

**Name:** CPD/022

1900 W Monterey Ave          **Beat:** 2212

Chicago, Il

**Demographics**

**Age:**     Years

**Contact Person:**  P/O HUBERTS, 9883

### Other Communications and Availability

**Residence Phone:** 312-745-0570
21:00:00 - 09:00:00

**Available Time**

---

## INJURIES

### Injury Info (CPD/022   - Victim )

**Responding Unit:**                    **Contact Person:**  P/O HUBERTS 9883

---

## SUSPECTS

### Suspect # 1                                           In Custody

**Name:**  MCCLELLAN, Kellan

**Res:** 301 W 103rd Pl          **Beat:** 0512
Chicago IL

**Empl:** Uber
Driver - Taxi

**Demographics**

Male
Black
5'11,
150 lbs
Brown Eyes
Black Hair
Dreadlocks Hair Style
Dark Brown Complexion

**DOB:**            1988
**Age:**  31 years
**Birth Place:**  IL
**DLN:**                     - IL

### Other Communications and Availability

### Injury Info
**Responding Unit:**

---

RD #: JC469519

Print Generated By:                          Page  1  of  2                          21-NOV-2019 15:13

CLEAR Technology

**Chicago Police Department - Incident Report**

## DOMESTIC INFO

## VEHICLE

### Vehicle #1

| | | | | | |
|---|---|---|---|---|---|
| **Vehicle:** 2018 Chevrolet - Cruze - Automobile | | **Damaged?** | No | **Owner:** | **Rental Co. Hertz** |
| **Style:** Hardtop, 4-Door | | | | **Possessor/User:** | **MCCLELLAN, KELLAN** |
| **Color-Top/Bottom:** Red/Red | | **Theft From?** | No | **Towed?** | No |
| **VIN#:** 1G1BE5SM4J7105665 | | **Burned?** | No | | |
| **License Plate #:** | Bk59610 - Illinois - Passenger Car | **Destroyed?** | No | | |
| **Expires:** | 01-April-2020 | **Recovered?** | No | | |
| | | **Stolen?** | No | | |

## NARRATIVE

EVENT#00395 THIS IS A BWC INCIDENT. OFFENDER DOES NOT HAVE ANY WANTS WARRANTS NO GIPP NO TRAPP OR GANG AFFILIATION. OFFENDER DOES NOT HAVE ANY USC ON HIS PERSON.R/O'S ON ROUTINE PATROL RESPONED TO A FLASH MESSAGE FROM SDSC ROOM OFFICERS OF A STOLEN CHEVEROLET CRUZE (RED IN COLOR) WITH ILLINOIS PLATE#BK9610 AFFIXED TO THE REAR BEING DRIVEN AWAY FROM THE GAS STATION AT 9000 S. ASHLAND BY A MALE BLACK SUBJECT. ON APPROACH R/O'S OBSERVED THE RED CHEVEROLET CRUZE TRAVELING S/BOUND ON ASHLAND FROM THE MARATHON GAS STATION AND ELECTED TO STOP THE VEHICLE BY ACTIVATING ITS EMERGENCY EQUIPMENT. R/O'S VERIFIED THE PLATE NUMBER WITH FLASH MESSAGE GIVEN AND DETAINED KELLAN MCCLELLAN (LAST PERSON DRIVING VEHICLE). KELLAN MCCLELLAN (LAST PERSON DRIVING VEHICLE) WAS THEN PLACED INTO CUSTODY AFTER VEHICLE WAS VERIFIED STOLEN FROM HERTZ RENTAL CO. PER LEADS. KELLAN MCCLELLAN (LAST PERSON DRIVING VEHICLE) WAS TRANSPORTED INTO THE 022ND DISTRICT FOR PROCESSING. KELLAN MCCLELLAN (LAST PERSON DRIVING VEHICLE) STATED NOT VERBATIM THAT HE PAID HIS BILL WITH HERTZ RENTAL CO. AND SHOULD BE UP TO DATE. R/O'S NOTIFIED LEADS DESK WHO SENT NOTIFICATION TO HERTZ RENTAL CO. WITH NO RESPONSE AS OF YET.  HERTZ RENTAL CAR TOWED TO IMPOUND SS#067763. KELLAN MCCLELLAN(OFFENDER) PERSONAL PROPERTY(CELLPHONE) INV#14566380
- STAR#: 18645 NAME: CLARIVEL RIVERA BEAT: 2223R
- STAR#: 14722 NAME: ROZALIA PAWLIKOWSKI BEAT: 2223R

## PERSONNEL

| | Star No | Emp No | Name | User | Date | Unit | Beat |
|---|---|---|---|---|---|---|---|
| Approving Supervisor | 2016 | | **KILLEN, Kevin, M** | | 12 Oct 2019 02:00 | 022 | |
| Reporting Officer | 16812 | | **SMITH, Brandon, C** | | 12 Oct 2019 01:56 | 022 | 2206A |

CLEAR Technology

Kellan McClellan
301 West 103rd Place
Chicago, IL, 60628

February 3, 2020

M. David Galainena
General Counsel
The Hertz Corporation

RE: Final Notice Of Loss

"FOR SETTLEMENT PURPOSES ONLY"

I, Kellan McClellan, citizen of The United States of America, of legal age, and resident of Chicago, IL, after having been duly sworn in accordance with the law, hereby depose and say:

On October 7, 2019, I started a new rental contract with Hertz at the location on 7030 South Cicero, Chicago, IL. On October 12, 2019, at 12:32 AM, I was arrested by the Chicago Police Department (CPD) and charged with Criminal Trespassing to Vehicles. According to The CPD, the red 2018 Chevrolet Cruze [License plate # BK59610], that I was driving was reported stolen and listed Hertz as the victim. On November 19th, 2019, this case was dismissed in court. According to Hertz customer service representatives and Hertz rental record #142227934, I was under contract for the vehicle in question until October 14, 2019 and Hertz Management had no knowledge of a stolen vehicle report.

After speaking with a licensed psychotherapist about how this humiliating incident is mentally affecting me, she concluded that I am still in shock from the incident; I'm also suffering from Post Traumatic Stress Disorder, anxiety, depression, and it has severely affected my ability to drive.   As a result of this incident, I have become so psychologically impaired that I am virtually a safety hazard to myself, other drivers, and Uber/rideshare customers alike. These circumstances are preventing me from driving and thus damaging my self employed ride share business.

Since this incident happened as a result of the presumed negligence of Hertz Management, I am seeking financial compensation from The Hertz Corporation for the damages Hertz Management negligently or intentionally bestowed upon me; damages including but not limited to Personal Injury, future medical expenses, breach of contract, pain and sufferring (past and present), lost of ability to enjoy life (past and present), permenant impairment, lost of income(past and present), loss of earning capacity as a self employed ride share driver as a result of permanent injury, and

loss of earning capacity due to defamation of character.

At the time of the incident, I was a self employed ride share driver with intentions of driving for Uber until retirement age of at least 65, as this was my only source of income.   According to my Uber earnings, I have proven that I was fully capable of grossing $4000 in a month and have been out of work since October because of this incident. If you multiply $4000 times 12 (mos.) times 34 (yrs), you will have an idea of what my potential earning capacity was before the incident.   Now that I have a criminal record, my employability as a job seeker is significantly challenged as well.

Although I am open to settling my claim outside of court, I think it would be best for the public if having my case tried in a court of law would serve as a better warning to other hard working Americans that renting a car from Hertz is not always the safest decision when trying to earn an honest living because they can be forcibly removed from their rented vehicle, forced into a cage, accused of things they didn't do, humiliated, and injured for simply renting a car to earn an honest living driving for Uber (Uber, the company Hertz partnered with to market opportunities to earn income as a rideshare driver); this would be a warning that customers are definitely deserving of; the same warning that Hertz failed to give me.

According to the Illinois General Assembly's Code of Civil Procedure (735 ILCS 5/13-213), it would be appropriate to take Product Liability Action on Hertz for my injuries based on the theory of false advertment and market defects. According to the court doctrine Res Ipsa Loquitur, I would only have the burden of proving that 1) I was injured, 2) my injury was received from the car I was driving under contract with Hertz management, 3) in the normal course of events, my injury would not have occurred if Hertz management had used ordinary care while the car I was driving under contract was under Hertz management (hence the market defect).

According to the Illinois General Assembly's Code of Civil Procedure (735 ILCS 5/2-1116), the plaintiff shall not be barred from recovering damages if the trier of fact finds that the contributory fault on the part of the plaintiff is not more than 50% of the proximate cause of the injury or damage for which recovery is sought, but any economic or non-economic damages allowed shall be diminished in the proportion to the amount of fault attributable to the plaintiff.

Despite the oddness of this incident, I'm sure all parties involved in the incident that occurred on October 12, 2019 can agree that 1)I was indeed injured because of the vehicle I was driving under Hertz management 2)this type of occurrence does NOT ordinarily happen to Hertz customers, 3)this incident was NOT my fault in ANY capacity. If Hertz Management can not agree to these facts and grant my settlement demand, then I think it would be in my best interest to seek Product Liability Action and have a jury try these facts in a court of law with the help of a lawyer and a few expert witnesses.

As a customer of Hertz, I feel as if Hertz Management's treatment of me is a complete

contradiction of the customer relation guidelines set forth in Hertz Standards of Business Conduct. After countless communications with Hertz via customer service representatives, corporate security managers, and most recently, FNOL Senior Examiner, Alex Woods; Hertz has failed to rebut its presumed negligence and provide adequate reasoning for when, where, how, and why the vehicle Kellan was driving was reported stolen. Since October 12, 2019, I have reached out to Hertz regarding this incident so many times that have I become completely exhausted and feel as if I'm talking to a stone wall.

I sent my first notice of loss on January 2, 2020 with an expected settlement date of January 22, 2020. I appreciate Alex Woods for passing my claim along in a timely fashion but it landed on the desk of a Third Party Adjuster, Felicia Aldridge, whom it is safe to assume does not have authority to grant the amount I am rightfully demanding in my settlement, which is only prolonging this process.

Due to the severity of these damages, it is crucial that I be compensated as soon as possible. If a settlement for $1,440,000 isn't reached within 10 business days from the date this letter was recieved by The Hertz Corporation's registered agent for service in Illinois (C T Corporation), then a complaint to recover economic and non-economic damages in the amount of at least $2,313,815.70 shall be filed with The Law Division of The Cook County Circuit Court. An official settlement offer can be sent via email to {kbmcclellan88@gmail.com}. I appreciate your fairness and timeliness regarding this matter as it would save me from further humiliation.


Sincerely,


Kellan McClellan

To: hcmfirstnoticeofloss_bipd@hertz.com

Kellan McClellan
301 West 103rd Place
Chicago, IL, 60628

Jan 2, 2020

Hertz Corporation,

"FOR SETTLEMENT PURPOSES ONLY"

I, Kellan McClellan, citizen of The United States of America, of legal age, and resident of Chicago, IL, after having been duly sworn in accordance with the law, hereby depose and say:

On October 12, 2019, 12:32 AM, Kellan McClellan was arrested by the Chicago Police Department(CPD) and booked for Criminal Trespassing to Vehicles. According to the CPD, the Red Chevrolet Cruze [IL License plate # BK59610], that Kellan was driving was reported stolen and listed Hertz as the victim. On November 19th, 2019, this case was dismissed in court.

According to Hertz customer service representatives and rental record #142227934 with Hertz, Kellan McClellan was under contract for the vehicle in question until October 14, 2019 and they had no knowledge of a stolen vehicle report. After several communications with Hertz customer service representatives and corporate security managers, Hertz has failed to rebut its presumed negligence and provide adequate reasoning for how and when the vehicle Kellan was driving was reported stolen.

After speaking with a licensed psychotherapist about how this incident is mentally affecting him, she concluded that Kellan is still in shock from the incident; he is also suffering from Post Traumatic Stress Disorder, anxiety, depression, and it has severey affected his ability to drive. As a result of this incident, Kellan has become so psychologically impaired that he is virtually a safety hazard to himself, other drivers, and Uber/rideshare customers alike.

At the time of the incident, Kellan was a self employed ride share driver with intentions of driving for Uber until retirement age, as this was his only source of income. According to his Uber earnings, Kellan has proven that he was fully capable of grossing $4000 in a month and has been out of work since October because of this incident. Now that Kellan has a criminal record, his employability as a job seeker is significantly challenged as well.

When you review the body cam of the arrest, you will see that Kellan was wearing a

protective cast on his right hand because he was recovering from the second surgery for a hand injury he sustained from a gunshot wound on May 14, 2019. The camera also shows Kellan not only pleading with the officers to not arrest him, but if they did, to handcuff him in the front to prevent further injury to his hand. Instead, the police chose to handcuff Kellan in the back which in turn aggravated his hand injury on the ride to the police station as the police didn't safely secure Kellan. While in police custody, Kellan also sustained injuries to the neck and back.

Kellan is also on record for paying Hertz for days in which the car was confiscated from him, impounded, and no longer in his possession during his contract period.

Since this incident happened as a result of the presumed negligence of Hertz, Kellan is seeking financial compensation from Hertz for the damages Hertz negligently bestowed upon him; damages including but not limited to Breach of Contract, pain and sufferring (past and present), lost of ability to enjoy life (past and present), permenant impairment, lost of income(past and present), loss of earning capacity as a self employed ride share driver as a result of permanent injury, and loss of earning capacity due to defamation of character .

Due to the severity of these damages, it is crucial that Kellan be compensated as soon as possible. If a settlement for $1,440,000.00 isn't reached within 14 business days from the date of this letter, then a claim to recover these damages in the amount of $2,313,815.70 shall be filed with The Civil Division of The Cook County Circuit Court. We appreciate your timeliness regarding this matter as it would save Kellan from further humiliation.

Sincerely,

Kellan McClellan

2



**THE HERTZ CORPORATION**
Phone    800 654 4173
Fax
Web    www.hertz.com



REPRINT

| | |
|---|---|
| **Rental Agreement No** | 1  222793 |
| **Invoice Date:** | 10/16/2019 |
| **Document:** | 989004419413 |

| | |
|---|---|
| **Renter** | KELLAN MCCLELLAN |
| **Account No.:** | 9138 VIS |
| **CDP No.:** | 2114408 |
| **CDP Name:** | UBER DRIVER PROGRAM |

**Direct All Inquiries To:**
  THE HERTZ CORPORATION
  PO BOX 26120
  OKLAHOMA CITY  OK 73126 0120

**KELLAN MCCLELLAN**
**UBER DRIVER PROGRAM**
**301  103RD**
**CHICAGO, IL 60628**

**RENTAL REFERENCE**
**Rental Agreement No:** 142227934
**Reservation ID:**    J17635344B3
**Special Bill Info**   XXUBER

**RENTAL DETAILS**
**Rate Plan:**    IN: CRL    OUT: CRL
**Rented On**    10/07/2019 10 33  LOC#    320
                BEDFORD PARK, IL
**Returned On:**    10/14/2019 09:37  LOC# 444320
                BEDFORD PARK, IL
**Car Description**    TNC CRUZE  D FN  BK59610
**Veh. No.:**    5662978
**CAR CLASS Charged:** M6    **MILEAGE**  **In:** 63,757
   **Rented:**  M6    **Out:** 63,756
   **Reserved:** M6    **Driven:**    1
**RENTAL CHARGES**
WEEKS        1 @  214 00    214 00
SUBTOTAL            214 00

VEHICLE LICENSE FEE            10 08
ENERGY SURCHARGE            1 49
TAX            12 00%      26 89

AMOUNT DUE            252 46 USD

**MISCELLANEOUS INFORMATION**
CC AUTH: 033311  DATE: 2019/10/07  AMT:  452 00
CC AUTH   033311  DATE  2019/10/11  AMT   251 00

**THANK YOU FOR RENTING FROM HERTZ**

**ALL CHARGES HAVE BEEN BILLED TO YOUR ACCOUNT.**

**Direct All Inquiries To:**
THE HERTZ CORPORATION
PO BOX 26120
OKLAHOMA CITY  OK 73126 0120
UNITED STATES

**Phone:**      800 654 4173
**Web:**        www hertz com

**AMOUNT BILLED TO ACCOUNT:**        **252.46 USD**



KELLAN MCCLELLAN

Vehicle:    2018    CRUZE

Lot: ***                         License:    IL    BK59610

Rental Rate*                         1@ $    214.00    per wk    T $    214.00
                                        @ $    42.80    ex day    T $

*Includes Unlimited Miles

Additional Products

Loss Dmg Wvr                    Included

Frequent Flyer Surcharge                         T$    .00

Fuel Responsibility                         Starting Level (FULL  /8)   8

You agree to replace fuel used or pay a refuelling charge of

$   9.99    per gallon OR    $   .333    per mile driven.

Service Charges/Taxes

ENERGY SURCHARGE                         T $    1.49

VEHICLE LICENSE COST RECOVERY                         T $    10.08

Tax    12.000    %    On Est. Taxable Ttl $         224.08         $    26.89

ADJUSTMENTS

TOTAL ESTIMATED CHARGE                         $    252.46

Credit Card Authorization Amount $         452    .00

Rented by The Hertz Corporation

Vehicle:    02293    / 5662978    LocNum:    ILBLF20    / 0444320

Miles Out:    63756    Plan:    CRL    Class:    M6

Rental Location:    BEDFORD PARK PEP BOYS

Rental Time:    10 /07 /19    at    10 33  AM

Return Location:    BEDFORD PARK PEP BOYS

Return Time:    10 /14 /19    at    937  AM

Rental Extensions/Changes 1-800-654-4174

Emergency Road Service 1-800-654-5060

For Explanation of Charges: WWW.HERTZ.COM/CHARGEEXPLAINED

This estimate assumes you will rent and return at the locations and times
indicated, and that you will not exceed any mileage limitations.
Rental Rate subject to increase if You return Car more than 24 hours before
or 24 hours after scheduled Return Time.  Late returns may be subject to
extra hour and/or extra day charges.
Charges indicated as **** will be calculated at return.
Taxable charges are preceded by a "T".


Further information relating to Your rental charges, and other terms
to which You agree, appear below.

FUEL & SERVICE CHARGES: IF YOU DO NOT RETURN THE CAR
WITH AS MUCH FUEL AS WHEN THE RENTAL STARTED, BUT
REFUEL DURING THE RENTAL, REFUELING CHARGES APPLY AT
AT $    9.99      PER GALLON OR, IF YOU DO NOT BUY FUEL DURING
THE RENTAL AT $          .333   PER MILE.  BOTH RATES PRODUCE
APPROXIMATELY THE SAME RESULT.
YOU AGREE TO OPTIONAL SERVICES OF:
LIS                      DECLINED - OUR LIABILITY PROTECTION
                                        IS SECONDARY

PAI/PEC            DECLINED
PREM RD SVC        DECLINED
OTHER FEES AND ASSESSMENTS:
VEHICLE LICENSE COST RECOVERY                    T.84      PER DAY
TAX RATE -        12.000    %      APPLIES TO ALL CHARGES MARKED  T
No "Additional Authorized Operators"          Without Our Prior Written Approval.

CDP        2114408   -   You Represent That You Are Specifically Authorized
to Receive The Benefits Extended To Employees/Members Of
UBER DRIVER PROGRAM
Passenger Capacity:          The Passenger Capacity Of This Vehicle Is
Determined By The Number Of Seatbelts And, By Law, Must Not Be
Exceeded.  While In The Vehicle, Please Fasten Your Seatbelt.
It Saves Lives And        It's The Law.        Should You Require A Larger Vehicle,
Please Check At The Counter For Availability.

- You Will Be Charged An Administrative Fee Along With Towing/Impound
  Expenses If The Car Must Be Towed As A Result Of Your Negligence.
- We prohibit smoking in all Vehicles. Cleaning fee will apply for violations.
- Excessive Mileage On A Repeat Basis May Result In Suspension Of
  Future Renting Privileges.
- You Are Required To Contact Us To Extend The Rental If The Car Will
  Not Be Returned By The Due Date On The Rental Record.
- RETURN CHANGE FEE of $10 will be applied if You return the Car to a
  different location from that which was scheduled, or if you return more
  than 12 hours after the date and time previously scheduled, and You
  notify us of an extension of Your rental by the return date and time
  previously scheduled by calling 1-800-654-4174. If you do not notify us
  of such a change, the LATE RETURN FEE of up to $15 per day, up to a
  maximum of five (5) days/$75 will apply.  These fees will be applied in
  addition to any increase in rate that may occur as a result of changing
  the drop off location or the timeframe of Your rental.

RES ID:        J17635344B3          PLAN -   657293        CLASS -     M6
PREPARED BY:     2210      / ILBLF20      PRINTED:      10 /07 /19   10  33



REFUELING OPTIONS
THE FOLLOWING APPLIES TO RENTALS FROM THIS LOCATION
AND AMENDS AND SUPERSEDES SECTION 8. OF THE RENTAL
AGREEMENT, RENTAL JACKET PORTION AND THE APPLICABLE
REFUELING PROVISIONS OF GOLD AND PLATINUM PROGRAM TERMS:
8. REFUELING OPTIONS
Most Hertz rentals come with a full ank of gas, but that is not always
the case. There are three refueling options:
1. IF YOU DO NOT PURCHASE FUEL FROM HERTZ AT THE
BEGINNING OF YOUR RENTAL AND YOU RETURN THE CAR WITH
AT LEAST AS MUCH FUEL AS WAS IN IT WHEN YOU RECEIVED IT,
You will not pay Hertz a charge for fuel.

2. IF YOU DO NOT PURCHASE FUEL FROM HERTZ AT THE
BEGINNING OF YOUR RENTAL AND YOU RETURN THE CAR
WITH LESS FUEL THAN WAS IN IT WHEN YOU RECEIVED IT,
Hertz will charge You a Fuel and Service Charge at the applicable
per-mile or per-gallon rate specified on the Rental Record.
a. The per-mile rate is used if You do not buy fuel during the rental.
To calculate this amount, Hertz multiplies the number of miles driven, as shown
on the car's odometer, times the per-mile rate shown on the Rental Record.
b. The per-gallon rate is used if You buy fuel during the rental but the tank is
not as full when You return the Car as when You received it.  To calculate this
amount, Hertz multiplies the number of gallons needed to refill the fuel tank to
the level it was at when You received the Car, times the per-gallon rate.
ALTHOUGH TWO METHODS ARE USED FOR EASE OF
CALCULATION, THE PER-MILE AND PER-GALLON RATES
PRODUCE APPROXIMATELY THE SAME RESULT.
3. IF YOU CHOOSE TO PURCHASE FUEL FROM HERTZ AT THE
BEGINNING OF YOUR RENTAL BY SELECTING THE FUEL PURCHASE
OPTION, You will be charged as shown on the Rental Record for that
purchase. IF YOU CHOOSE THIS OPTION, YOU WILL NOT INCUR AN
ADDITIONALFUEL AND SERVICE CHARGE, BUT YOU WILL NOT
RECEIVE ANY CREDIT FOR FUEL LEFT IN THE TANK AT THE TIME OF
RETURN, except in the following cases:
a. For rentals in Hawaii, if You return the Car with a full tank of
fuel, You will receive a credit for the amount previously charged
for the purchase of fuel from Hertz.
b. For rentals other than Replacement Rentals, if You drive the Car 75 miles
or less and return it with less than a full tank of fuel, You will receive credit
for the amount previously charged for the purchase of fuel from Hertz and will
be charged for the fuel used at the per-mile rate shown on the Rental Record,
but only if this will reduce the amount You pay for fuel.

EXCEPT FOR RENTALS AS TO WHICH  CLAUSE (a) OR (b) OF
SUBPARAGRAPH (3) BECOMES APPLICABLE, THE PER GALLON
COST OF THE FUEL PURCHASE OPTION WILL ALWAYS BE LOWER
THAN THE FUEL AND SERVICE CHARGE. BUT IF YOU ELECT THE
FUEL PURCHASE OPTION YOU WILL NOT RECEIVE CREDIT FOR
FUEL LEFT IN THE TANK AT THE TIME OF RETURN. THE COST OF
REFUELING THE CAR YOURSELF AT A LOCAL SERVICE STATION
WILL GENERALLY BE LOWER THAN THE FUEL AND SERVICE
CHARGE OR THE FUEL PURCHASE OPTION. HOWEVER, THE FUEL
AND SERVICE CHARGE AND THE FUEL PURCHASE OPTION ALLOW
FOR THE CONVENIENCE OF NOT HAVING TO STOP AND REFUEL
THE CAR PRIOR TO RETURN.

**HERTZ®**

## IMPORTANT INFORMATION REGARDING TOLLS

You are responsible to pay all tolls. For your convenience, we offer
PlatePass, an electronic toll payment system operated by PlatePass,
L.L.C., for use on toll roads in the areas specified below.
*************

In the following areas all our vehicles (even without a windshield toll
transponder) may use any cashless electronic toll lane: The entire States
of FLORIDA, GEORGIA, COLORADO, NORTH CAROLINA AND TEXAS,
in Seattle, the TACOMA NARROWS BRIDGE and the SR 520 BRIDGE

TO USE PLATEPASS IN THESE AREAS: pass through the cashless
toll lane. You will be billed automatically as outlined below.

IF YOU DO NOT WISH TO USE PLATEPASS IN THESE AREAS,
use only traditional cash toll lanes (if available) and make payment
directly to the toll authority. In both video and transponder toll areas,
pay all tolls with cash or your own toll transponder (where permitted)
compatible to the toll road, and if your rental vehicle includes a
transponder, make sure it remains fully enclosed within the shield box.
Some toll roads no longer accept cash payments.            If you incur a toll on
these roads, without using your own compatible transponder, and you
do not utilize an alternate means of payment to the toll authority, you
will be will be enrolled in PlatePass.
*************
In DELAWARE, ILLINOIS, INDIANA, MAINE, MARYLAND,
MASSACHUSETTS, NEW HAMPSHIRE, NEW JERSEY, NEW YORK,
OHIO, PENNSYLVANIA, VIRGINIA AND WEST VIRGINIA, the toll
authority may allow for an alternate payment method, such as payment by
mail or online. Please contact the applicable toll authority. In some of
these states that operate gated cashless toll lanes, only vehicles equipped
with a windshield toll transponder may access the cashless toll lanes.

TO USE PLATEPASS IN THESE STATES, slide the drawer holding the
transponder out of the shield box and pass through the cashless toll lane.
You will be billed automatically as outlined below.

IF YOU DO NOT WISH TO USE PLATEPASS IN THESE STATES, use
only traditional cash lanes (if available) to make payment directly to the toll
authority or contact the applicable toll authority for alternate payment options.
*************
CALIFORNIA CUSTOMERS: PlatePass coverage is available on the
Golden Gate Bridge, San Francisco-Oakland Bay Bridge, Richmond-San
Rafael Bridge, Carquinez Bridge, Benicia-Martinez Bridge, Antioch Bridge,
San Mateo Bridge, Dumbarton Bridge, SR 73, SR 133, SR 241 and SR 261
ONLY. Coverage is NOT available on I-10, I-110, SR 91, I-15 Express Lanes
and SR 125. On the Golden Gate Bridge, the toll authority allows for payment
online or in person up to 30 days before crossing or within forty-eight (48)
hours after crossing the cashless toll bridge. Detailed information is available
at www.bayareafastrak.org In Southern California, for toll roads that accept
PlatePass, the toll authority allows for payment by phone/online within
five (5) days of accessing the toll road.  If you travel in the excluded HOV
lanes in Southern California or if you travel on toll roads in Southern
California that do not accept PlatePass, you will be charged an administrative
fee of $30.00 in addition to tolls and penalties.
*************
NOTE: Certain toll roads do not accept cash. If you travel on such
a toll road without a personal transponder that can be used on the
toll road, and you do not utilize an alternate means of payment to
the toll authority, you will be required to use PlatePass and be
billed automatically as outlined below, or incur toll charges or
violations for which you will be responsible.



Where permitted by Toll Authorities, you may opt to use your
personal transponder. Follow the instructions above for NOT
utilizing PlatePass and install a compatible transponder properly.

If PlatePass is used, PlatePass L.L.C. will charge you a convenience fee
of $5.95 for each calendar day of your rental on which tolls are incurred
plus incurred tolls at the Toll Authority?s cash toll rate or highest
undiscounted toll rate.          PlatePass L.L.C. will separately charge your
credit or debit card the applicable charges after the close of your rental.
Charges typically take 1-3 weeks after the rental closes to appear on your
statement, but a longer delay may occur. Cash customers will be invoiced.

PARKING AND MOVING CITATIONS.                    You are responsible for the
paymentof all vehicle parking and moving citations assessed against
You or the Car during the rental period, including all such citations
captured by camera and any related fines, fees or penalties. If a
citation-issuing authority notifies us that we may be liable for any
such citation and any related fines, fees or penalties, You will be
charged an administrative fee of up to $42.00 for each such notification.
You authorize us to release your billing/rental information to PlatePass,
L.L.C. and ATS Processing Services, L.L.C. to process and bill for all
tolls and moving citations and administrative charges and service fees.



ARBITRATION PROVISION:  THIS AGREEMENT REQUIRES
ARBITRATION OR A SMALL CLAIMS COURT CASE ON AN
INDIVIDUAL BASIS, RATHER THAN JURY TRIALS OR CLASS
ACTIONS.  BY ENTERING INTO THIS AGREEMENT, YOU
AGREE TO THIS ARBITRATION PROVISION.

Except for claims for property damage, personal injury or death, ANY
DISPUTES BETWEEN You and us ("us" and "we" for the purposes of
this Arbitration Provision means The Hertz Corporation, ("Hertz") its
parent and affiliate corporations, and their respective officers, directors
and employees and any vendor or third party providing services for this
rental transaction) MUST BE RESOLVED ONLY BY ARBITRATION OR
IN A SMALL CLAIMS COURT ON AN INDIVIDUAL BASIS: CLASS
ARBITRATIONS AND CLASS ACTIONS ARE NOT ALLOWED. YOU
AND WE EACH WAIVE THE RIGHT TO A TRIAL BY JURY OR TO
PARTICIPATE IN A CLASS ACTION, EITHER AS A CLASS
REPRESENTATIVE OR CLASS MEMBER.  You and we remain free
to bring any issues to the attention of government agencies.

This Arbitration Provision's scope is broad and includes, without limitation,
any claims arising from or relating to this Agreement or any aspect of the
relationship or communications between us, whether based in contract,
tort, statute, fraud, misrepresentation, equity, or any other legal theory.
It is governed by the Federal Arbitration Act, 9 U.S.C.     1 et §§.

In any arbitration under this Arbitration Provision, all issues are for the
arbitrator to decide, including his or her own jurisdiction, and any
objections with respect to the existence, scope or validity of this
Arbitration Provision. The arbitration will take place in the county of
Your billing address unless agreed otherwise.

The American Arbitration Association ("AAA") will administer any
arbitration pursuant to its Consumer Arbitration Rules (the "Rules").
You can obtain the Rules at www.adr.org.

You or we may commence an arbitration by providing a written
demand for arbitration to the other (to us: The Hertz Corporation,
8501 Williams Road, Estero, FL 33928 Attn: Arbitration) and two
copies of the demand to the AAA. If You seek $10,000 or less through
arbitration, we will reimburse You for any AAA required filing fee.

The arbitrator may award injunctive relief as well as money, but only in
favor of and as warranted by the claim of the individual party seeking
relief. Judgment on the arbitral award may be entered in any court
having jurisdiction. An arbitration award and any judgment confirming it
apply only to the specific parties in that case and cannot be used in
any other case except to enforce the award itself. The arbitrator may
not consolidate more than one person's claims, and may not otherwise
preside over any form of representative or class action.

IF YOU DO NOT WISH TO AGREE TO THIS ARBITRATION
PROVISION, YOU MUST NOTIFY HERTZ IN WRITING WITHIN 30
DAYS OF YOUR RECEIPT OF THIS AGREEMENT BY EMAIL
AT no.arbitration@hertz.com OR BY MAIL TO The Hertz
Corporation, 8501 Williams Road, Estero, FL 33928, Attn: Arbitration.
Include Your name, address, the number at the top of this Rental
Record, and a clear statement that You do not agree to this Arbitration
Provision. If you have previously notified Hertz of Your decision to opt
out of this Arbitration Provision, You do not need to do so again.
142227934


TO BE CHARGED TO:

VISA      XXXXXXXXXXXX9138         <      AUTH   $452      .00 / 033311

The Vehicle may be equipped with telematics technology that allows us to
track or otherwise locate, disable and repossess the Vehicle and to obtain
data about the Vehicle's use during your rental, including fuel usage and
miles driven. By entering into this Agreement, You consent to our use of
such telematics during your rental as permitted by applicable law.

Liability Protection: If You DO NOT elect Liability Insurance Supplement (LIS)
and/or You violate the Terms and Conditions of the Rental Agreement, where
permitted by law, if Hertz makes any payment as a result of an accident You
are responsible to indemnify Hertz for all payments made including attorney
fees and costs. If You elect LIS, LIS provides protection from liability for third
party automobile claims for the difference between the liability limits in
Paragraph 10 of the Rental Agreement and the maximum combined single
limit of $1,000,000 for bodily injury, including death and property damage
LIS also includes uninsured/underinsured motorist coverage (while
occupying the Car) for bodily injury and property damage, if applicable, for
the difference between the statutory minimum underlying limits and
$1,000,000 for each accident.

NOTICE:  This contract offers, for an additional charge,
a loss damage waiver to cover your financial
responsibility for damage to the rental vehicle.  The
purchase of a loss damage waiver is optional and may
be declined.  You are advised to carefully consider
whether to sign this waiver if you have rental vehicle
collision coverage provided by your credit card or
collision insurance on your own vehicle.  Before
deciding whether to purchase the loss damage waiver,
you may wish to determine whether your own vehicle
insurance affords you coverage for damage to the
rental vehicle and the amount of deductible under
your own insurance coverage.  If You do not accept the
loss damage waiver and the Car is used as permitted
by the terms and conditions of this agreement, Your
responsibility for loss or damage to the Car will not
exceed $17,000 for causes other than theft, and $2,000
for theft for a vehicle with an MSRP of $50,000 or less
and not exceed $40,000 for causes other than theft, and
for theft, for a vehicle with an MSRP of more than
$50,000.  The preceding sentence supercedes clause
4(b) of the Rental Agreement Terms And Conditions.
By signing below, You acknowledge that You have read,
understand, accept and agree to the above and the Rental
Agreement Terms And Conditions, which appear on the
folder (GN1900005) delivered to You with this Rental
Record, and You accept or decline the Optional Services
as shown on Card 1 and Card 2.

X _____

142227934

Our Privacy Policy governs the use of data about you.  A copy of the
policy is available at the rental counter and online at hertz.com

ATTN: Hertz Claim Management - Liability Department
Subject: Second Notice Of Loss

Kellan McClellan
301 West 103rd Place
Chicago, IL, 60628

Jan 9, 2020

"FOR SETTLEMENT PURPOSES ONLY"

I, Kellan McClellan, citizen of The United States of America, of legal age, and resident of
Chicago, IL, after having been duly sworn in accordance with the law, hereby depose and say:

On October 12, 2019, 12:32 AM, Kellan McClellan was arrested by the Chicago Police
Department(CPD) and booked for Criminal Trespassing to Vehicles. According to the CPD, the
Red Chevrolet Cruze [License plate # BK59610], that Kellan was driving was reported stolen
and listed Hertz as the victim. On November 19th, 2019, this case was dismissed in court.

According to Hertz customer service representatives and rental record #142227934 with Hertz,
Kellan McClellan was under contract for the vehicle in question until October 14, 2019 and they
had no knowledge of a stolen vehicle report. After several communications with Hertz via
customer service representatives, corporate security managers, and most recently, FNOL Senior
Examiner, Alex Woods; Hertz has failed to rebut its presumed negligence and provide adequate
reasoning for when, where, how, and why the vehicle Kellan was driving was reported stolen.

After speaking with a licensed psychotherapist about how this incident is mentally affecting him,
she concluded that Kellan is still in shock from the incident; he is also suffering from Post
Traumatic Stress Disorder, anxiety, depression, and it has severely affected his ability to drive.
As a result of this incident, Kellan has become so psychologically impaired that he is virtually a
safety hazard to himself, other drivers, and Uber/rideshare customers alike.

At the time of the incident, Kellan was a self employed ride share driver with intentions of
driving for Uber until retirement age, as this was his only source of income. According to his
Uber earnings, Kellan has proven that he was fully capable of grossing $4000 in a month and has
been out of work since October because of this incident. Now that Kellan has a criminal record,
his employability as a job seeker is significantly challenged as well.

When you review the body cam of the arrest, you will see that Kellan was wearing a protective
cast on his right hand because he was recovering from the second surgery for a hand injury he
sustained from a gunshot wound on May 14, 2019. The camera also shows Kellan not only
pleading with the officers to not arrest him, but if they did, to handcuff him in the front to
prevent further injury to his hand. Instead, the police chose to handcuff Kellan in the back which
in turn reaggrevated his hand injury on the ride to the police station as the police didn't safely

1

secure Kellan. While in police custody, Kellan also sustained injuries to the neck and back.

Kellan is also on record for paying Hertz for days in which the car was confiscated from him, impounded, and no longer in his possession during his contract period.

Since this incident happened as a result of the presumed negligence of Hertz, Kellan is seeking financial compensation from Hertz for the damages Hertz negligently or intentionally bestowed upon him; damages including but not limited to Personal Injury, Breach of Contract, pain and sufferring (past and present), lost of ability to enjoy life (past and present), permenant impairment, lost of income(past and present), loss of earning capacity as a self employed ride share driver as a result of permanent injury, and loss of earning capacity due to defamation of character .

Due to the severity of these damages, it is crucial that Kellan be compensated as soon as possible. If a settlement for $1,440,000 isn't reached within 10 business days from the date of this letter, then a claim to recover these damages in the amount of $2,313,815.70 shall be filed with The Law Division of The Cook County Circuit Court. An official settlement offer can be sent via email to {kbmcclellan88@gmail.com}. We appreciate your timeliness regarding this matter as it would save Kellan from further humiliation.


Sincerely,

Kellan McClellan

2

Please print, scan, and email the signed form to: hcm-filesubmission@hertz.com. Page 172 have the following information in order to submit the form online: date and time of the accident as well as either the rental agreement number or the license plate number and state of the Hertz, Dollar or Thrifty vehicle.

**RESET**

Today's Date: 0 1 0 2 2 0 2 0 (mm dd yyyy)

☒ **Hertz**  ☐ **dollar.** CAR RENTAL  ☐ **Thrifty** CAR RENTAL

Was there an Injury or Fatality? Y

# Vehicle Incident Report

Required: Please provide one or both of the following:

INDICATE DAMAGED AREA OF RENTAL VEHICLE "X"
PASSENGER SIDE / FRONT / REAR / DRIVER SIDE

Must provide Rental Agreement No. or License Plate/State.

Rental Agreement No.: 1 4 2 2 2 7 9 3 4

License Plate: BK59610  State: IL

**RENTER/DRIVER/SUBMITTER STATEMENT: EXPLAIN THE CAUSE OF DAMAGE:**
See Attachment

Renter/Driver acknowledges that damage to the rental vehicle as indicated occurred during their rental of the vehicle. Renter/Driver/Submitter further agrees to cooperate with HCM investigation of the incident.

RENTER/DRIVER/SUBMITTER SIGNATURE: *Kellan McClellan*

Name (Last, First): McClellan, Kellan
Email: kbmcclellan88@gmail.com

Street Address: 301 West 103rd Place
City, State / Province, Zip Code / Postal Code: Chicago, IL, 60628

Telephone No.: Work: | Home: | Cell: 7732084875

Name of Insurance Co. & Agent: | Phone No.: | Policy No.:

Name of Credit Card Issuer: | Card Type: | Phone No.: | Claim No.:

Name of Employer & Address: Kellan McClellan

TYPE OF RENTAL: Business ☒ | Pleasure ☐ | Insurance Replacement ☐

Date & Time of Incident: 10/12/2019 00:32
Location of the Incident (City, State / Province): Chicago, IL

POLICE INFORMATION (Department, Name of Officer, Badge No., Phone No.): See Attachment
Police Report No.:

| (Only if different from renter) | Driver's Name | | Driver's Age | Relation to Renter | No. of Occupants in Rental Vehicle |
| | Street Address | City, State / Province, Zip Code / Postal Code | | | Phone No. |
| | Driver's License No. & Issue State / Province | Name of Insurance Company & Agent | | Phone No. | Policy No. |

| Driver or Owner of Other Vehicle or Property (Vehicle no. 2 / or Owner of Property) | Driver's Name | Phone No | | Email | |
| | Owner's Name (if different from driver) | Phone No | | Email | |
| | Street Address | City, State / Province, Zip Code / Postal Code | Street Address | City, State / Province, Zip Code / Postal Code | |
| | Name of Insurance Co. & Agent | Phone No. | | Policy No. | |
| | Vehicle Make/Model & Year | License Plate No. & State / Province | | No. of Occupants in Vehicle | |
| | Describe Damage to Vehicle / Property | | | | |

| Persons Injured | Name and Street Address, City, State / Province, Zip Code / Postal Code: KELLAN MCCLELLAN 301 W 103RD PL. CHICAGO, IL 60628 | Phone No. 773 208 4875 | Age 31 | Sex M |
| | Occupant Veh. No. | Pedestrian | Describe Injuries: SEE ATTACHMENT | |

701012-Fillable
Rev 8/16