**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re | Chapter 11 |
| Rental Car Intermediate Holdings, LLC,[1] | Case No. 20-11247 (MFW) |
| Reorganized Debtor. | **Re: D.I. 193** |

**REORGANIZED DEBTOR'S PRELIMINARY OBJECTION TO THE GROUP 4
FALSE POLICE REPORT CLAIMANTS' MOTION FOR RELIEF FROM THE
CONFIRMATION ORDER TO PURSUE CLAIMS OUTSIDE OF BANKRUPTCY OR,
IN THE ALTERNATIVE, FOR EXTENSION OF GENERAL AND ADMINISTRATIVE
BAR DATES UNDER RULES 3003(c) AND 9006(b) AND RELATED RELIEF**

The above-captioned debtor (the "**Reorganized Debtor**") hereby files this preliminary objection (the "**Preliminary Objection**") to the *Group 4 False Police Report Claimants' Motion for Relief from the Confirmation Order to Pursue Claims Outside of Bankruptcy or, in the Alternative, for Extension of General and Administrative Bar Dates Under Rules 3003(c) and 9006(b) and Related Relief* [D.I. 193][2] (the "**Group 4 Lift Stay Motion**") filed by certain new "Group 4" claimants (the "**Group 4 Claimants**"), and states as follows:

**PRELIMINARY STATEMENT**

The Reorganized Debtor files this Preliminary Objection reluctantly, believing that it is not required by the Court's directions at the January 4 conference and will needlessly burden the Court

---

[1] The last four digits of the tax identification number of Reorganized Debtor Rental Car Intermediate Holdings, LLC ("**RCIH**") are 2459. The location of the Reorganized Debtor's service address is 8501 Williams Road, Estero, FL 33928. On September 28, 2021, the Court entered a final decree closing each of the chapter 11 cases for The Hertz Corporation and its reorganized debtor affiliates (the "**Reorganized Debtors**") other than RCIH's chapter 11 case. Commencing on September 28, 2021, all motions, notices, and other pleadings relating to any of the Reorganized Debtors shall be filed in RCIH's chapter 11 case, Case No. 20-11247 (MFW).

[2] As used herein, "Main D.I." references are to the docket in Case No. 20-11218, and "D.I." references are to the docket in Case No. 20-11247.

with two objections (this Preliminary Objection and the brief to be submitted on February 14) where one would have sufficed.  However, counsel for the Group 4 Claimants have insisted that the Reorganized Debtor file an objection in advance of February 14, and have agreed to extend the purported deadline only to today.  Accordingly, the Reorganized Debtor submits that the Group 4 Lift Stay Motion should be denied for at least three reasons, which the Reorganized Debtor reserves the right to modify or supplement once it has received all the Group 4 proofs of claim and pending discovery.[3]

*First*, the False Police Report Claimants have already brought, and lost, three other lift stay motions.  *Second*, the Motion is procedurally improper and contradicts the positions that counsel for the Group 4 Claimants has previously taken before this Court.  *Third*, Claimants have failed to identify any basis for their neglecting to participate in the Debtors' bankruptcy, and argue only that they were supposedly "known" creditors.  *Fourth*, Claimants are incorrect that, to the extent they were "known" creditors, they were excused from taking *any* action in response to the Debtors' bankruptcy.

## RELEVANT BACKGROUND

1.      On December 6, the Group 4 Claimants filed the Motion.  They did not file proofs of claim, nor did they calendar the motion.  The Court held a status conference (the "**January 4 Status Conference**") on the issues related to, among other things, the Group 4 Lift Stay Motion, and directed that the Group 4 Claimants file individualized proofs of claim with accompanying declarations by January 31, 2022.  *See* January 4, 2022 Hr'g Tr. at 27:22-25; *id.* at 28:1-3.

---

[3] Claimants continue to file Group 4 proofs of claim, with 17 new proofs of claim filed today.  The Debtors have begun rolling document productions to the False Police Report Claimants, and have served targeted interrogatories on the Group 3 Claimants and certain Group 4 Claimants.

2.     The Court asked counsel to the Reorganized Debtor how long it would need to review those proofs of claim, *id*. at 28:6-7, to which counsel to the Reorganized Debtor requested two weeks (*i.e.*, February 14, 2022).  *Id.* at 28:11-14.  Counsel to the Reorganized Debtor also requested that its opposition to the Group 4 Lift Stay Motion, which would be informed by the individual proofs of claim, be due on the same date.  *See id*. 33:19-21; 34:2-3 ("And I think what we need is a date for—which I would put at the same time, a date for our opposition to the Group 4 Motion.").  The Group 4 Claimants did not object to this request.  Rather, counsel to the Group 4 Claimants stated that proofs of claim in respect of additional members of Group 4 might be filed by the January 31 deadline (as has indeed come to pass), further highlighting the need for the Reorganized Debtor to be able to review the proofs of claim before responding.  *See id*. 29:20-24 ("[W]hat's coming in next that will be additional is only what we're calling 'Group 4,' which are additional claims—which I do think will be significant—additional claims that so far have not appeared.").  Following this discussion, the Court set February 14, 2022 as the deadline for additional briefing regarding the discovery to be produced by the parties and the proofs of claim to be filed by the Group 4 Claimants.  *See id.* 39:10-20 ("Well, you all respond with respect to the claims that we all acknowledge, the proofs of claim are now on file with the appropriate declarations, and you'll start rolling those out . . . And the parties will be filing, on February 14th, brief supplemental briefing on how that information impacts on the issue of known creditor with respect to those claimants.").

3.     On January 6, counsel to the Reorganized Debtor called counsel to the Group 4 Claimants seeking to confirm that, per the Court's instruction, February 14 would be the deadline for supplemental briefing regarding whether the Group 3 Claimants and Group 4 Claimants were "known" creditors, as well as the Reorganized Debtor's opposition to the Group 4 Lift Stay

Motion, which primarily turns on that issue.  On January 7, counsel to the False Police Report Claimants rejected the Reorganized Debtor's request, and instead insisted that the Reorganized Debtor file its objection to the Group 4 Lift Stay Motion in advance of February 14.

4.      Since then, counsel to the Group 4 Claimants have filed proofs of claim on behalf of the Claimants identified in the Group 4 Lift Stay Motion, as well as additional claimants not identified in that motion.  Counsel has not stated whether proofs of claim will continue to be filed on behalf of new claimants as to whom the Reorganized Debtor has no notice.

5.      In sum, it is only because counsel for the Group 4 Claimants has refused to adjourn the Reorganized Debtor's response date to February 14, on a motion that still is not calendared and will not be heard for months, that the Reorganized Debtor is filing this Preliminary Objection.  At the same time, the Reorganized Debtor has served the Group 3 and Group 4 Claimants with targeted discovery to determine the extent of their knowledge regarding the Debtors' bankruptcy and related deadlines, which is necessary for the full response to be served on February 14.[4]

### PRELIMINARY OBJECTION

6.      The Reorganized Debtor submits, while reserving its right to supplement this objection, that the Court should deny the Group 4 Lift Stay Motion for at least three reasons.

7.      ***First***, counsel for the Group 4 Claimants has already filed on behalf of other Claimants three separate motions to lift the stay and the plan injunction, and has been denied each time.  *See Motion of False Police Report Plaintiffs for Relief from Automatic Stay* [Main D.I. 589]; *Motion of False Police Report Claimants No. 2 for Relief from Automatic Stay* [Main D.I. 2593];

---

[4] On January 14, Claimants filed the *Claimants' Motion for Entry of Protective Order and Granting Related Relief* [D.I. 278], which seeks an order extending the time to respond to the Debtors' discovery requests. Claimants did not ask the Reorganized Debtor for an extension of their response deadline before filing this motion.  The Reorganized Debtor will meet and confer with Claimants to determine how best to proceed with discovery in light of Claimants' motion and the impending February 14 deadline for briefing, and reserves all rights.

RLF1 26733078v.1

*Motion of False Police Report Claimants No. 3 for Relief from Any Stay and Plan Injunction* [Main D.I. 5656]. Indeed, as recently as August 18, 2021—fewer than four months before Claimants filed the Group 4 Lift Stay Motion—the Court ruled that it "will not grant relief from the plan injunction," and the only question to be determined is "whether or not . . . [the Court has] jurisdiction or whether it is appropriate to hold that the District Court has jurisdiction over this." Aug. 18, 2021 Hr'g Tr. at 24:15-16. This was the second time the Court had made this ruling. *See* April 22, 2021 Hr'g Tr. at 32:22-33:2 ("If, in fact, I determine that I do not have jurisdiction of these claims the proper court with jurisdiction would be the Delaware District Court because of the fact that the plaintiffs have filed proofs of claim."). In their current motion, counsel for the Group 4 Claimants has stated no basis for continuing to seek relief that the Court has repeatedly denied. Indeed, the burden and expense to the Reorganized Debtor from having to re-litigate, for the fourth time, a dispute that Claimants have already lost is, at this point, impossible to justify.[5]

8.      ***Second***, the Motion is procedurally improper and contradicts the position that counsel to the Claimants has taken before this Court. The main argument advanced by the Motion is that, because the Group 4 Claimants were supposedly known creditors who did not receive actual notice from the Debtors of the bar date or the confirmation proceedings, they are not bound by the Plan or General Bar Date. This argument contradicts the arguments advanced by Claimants' counsel on behalf of the Group 3 Claimants, all of whom claim to be "known" creditors who did not receive actual notice from the Debtors yet acknowledged that they are bound by the General

---

[5] To the extent necessary, and so as not to burden the Court with repetition, the Reorganized Debtor incorporates by reference the arguments against lifting the stay and the Plan injunction in the objections to the False Police Report Claimants' several previous lift stay motions. *See* Main D.I. 762, 2848 and 5703. Additionally, many of the arguments raised in the Motion are identical to those raised in Claimants' other recent filings, and, to the extent necessary, the Reorganized Debtor incorporates its responses to those arguments. *See* D.I. 214 and 215.

Bar Date by filing a proof of claim in June 2021.  Indeed, the Group 3 Claimants have gone to great lengths to argue that their proofs of claim should be deemed timely filed, including by originally asserting that they were "amendments" to certain of the purported class proofs of claim filed by the General Bar Date.  Moreover, the only way for the Court to consider this relief is when it addresses the "known" creditor issue at the hearing on March 2.  In other words, counsel for the Group 4 Claimants is insisting that the Reorganized Debtor respond to the Group 4 Lift Stay Motion nearly six weeks before the Court could possibly rule on the key issues, before all proofs of claim have been filed and while discovery remains pending.[6]

9.    *Third*, none of the Group 4 Claimants has established that their failure to file claims resulted from excusable neglect.  Rather, the Group 4 Lift Stay Motion simply asserts, in conclusory fashion, that the Group 4 Claimants "[were] not aware of the General and Administrative Bar Dates, or the need to file claims in these cases, until the bar dates had elapsed." Group 4 Lift Stay Motion ¶ 109.  That establishes only that there was neglect, not that there was a valid excuse for it.  Indeed, this argument is merely a repetition of the Group 4 Claimants' argument that they were "known" creditors entitled to actual notice.[7]

10.    *Fourth*, even if the Group 4 Claimants establish that they were "known" creditors (and they cannot), the Reorganized Debtor rejects the argument that they were therefore excused in all cases from complying with all deadlines in the Debtors' bankruptcy proceedings, including the bar date and the objection deadline for the confirmation proceedings.  Courts in this Circuit

---

[6] The Court has ruled that the False Police Report Claimants' argument regarding alleged "systemic" issues with the Debtors' theft reporting practices will not be addressed at the March 2 hearing.  *See* Jan. 4, 2022 Hr'g Tr. at 39:20-22 ("And I will reserve the whole systemic issue until I've addressed those and can address whether I need to go any further.").  Accordingly, the Debtors do not address that argument here, and reserve the right to address it if and when appropriate.

[7] Additionally, the Group 4 Claimants ask the Court to "deem them to have opted out of the Plan's third-party release provisions," Mot. ¶ 112, but state no basis for this relief.

6

have held in the analogous circumstance of a deadline to file a dischargeability complaint that "the reasonableness of a particular method of notice depends on the particular circumstances," and creditors with actual notice of the bankruptcy proceeding may have an obligation to participate in order to protect their rights. *Dollinger v. Poskanzer*, 146 B.R. 125 (D.N.J. 1992); *Williams v. Edison Bros. Stores*, No. 95-CV-0912, 1998 U.S. Dist. LEXIS 18110, at *10-11 (E.D. Pa. Nov. 13, 1998) ("the Code's mandate to the creditor to protect his rights weighs against excusing Plaintiff's not making that inquiry after he had notice of the bankruptcy proceedings."); *Bobal v. Troxell (In re Troxell)*, No. 91-01439 JKF, 1992 Bankr. LEXIS 2507, at *6-7 (Bankr. W.D. Pa. Jan. 17, 1992) ("even when no notice of the bar date is issued the creditor with actual knowledge of the bankruptcy has an obligation to ascertain the bar date"); *see also In re Alton*, 837 F.2d 457, 461 (11th Cir. 1988) ("If [the creditor], once warned of the bankruptcy proceeding, had made minimal effort to determine the date of the filing of the petition, he would have realized the outside dates for filing his complaint contesting the dischargeability of his claim or for a motion to extend such time.  Instead, [the creditor] made no such effort and cannot now properly complain of the consequences of his action.").  The 55-year-old case that Claimants primarily rely on, *In re Harbor Tank Storage Co.*, 385 F.2d 111, 112 (3d Cir. 1967), has been distinguished by at least one court in this Circuit.  *See Dollinger v. Poskanzer*, 146 B.R. 125 (D.N.J. 1992) "[t]he rationale upon which *Harbor Storage* rests has been obviated by passage of the Bankruptcy Reform Act of 1978 . . . Under the Code, bar dates are not discretionary . . . Once [the creditor] discovered [the debtor's] bankruptcy petition, he had only to inquire as to when the creditors' meeting would be held.").

11.     In any case, the appropriate notice must be decided on a case-by-case basis, and therefore depends on the results of discovery.  Based on this information, the Court will determine,

on a claimant-by-claimant basis, whether notice was sufficient and whether the claimant's actions—or inaction—were appropriate under the circumstances.

12.    In sum, the issue that is framed by the Group 4 Lift Stay Motion—whether or not the Group 4 Claimants were entitled to direct notice or otherwise obtained actual knowledge of the Debtors' bankruptcy proceedings—is an issue that cannot be addressed until the hearing on March 2, at earliest, when the Court has in front of it a fully developed record consisting of the pending discovery, filed proofs of claim and declarations from all Group 4 Claimants.

## RESERVATION OF RIGHTS

13.    The Reorganized Debtor are currently reviewing the Group 4 Claims and have substantial concerns regarding the merits of these claims, and reserve the right to contest any and all claims procedurally and on the merits.    The Reorganized Debtor also reserves the right to amend, modify or supplement this Preliminary Objection for any reason, including, without limitation, amended or additional proofs of claim and declarations that may be filed by the Group 4 Claimants and discovery to be produced by the parties.

## CONCLUSION

14.    For these reasons, as well as those the Reorganized Debtor may state in its brief due on February 14, the Court should deny the Group 4 Lift Stay Motion.

RLF1 26733078v.1

Dated: January 24, 2022

*/s/ J. Zachary Noble*
**RICHARDS, LAYTON & FINGER, P.A.**

Mark D. Collins (No. 2981)
Robert J. Stearn, Jr. (No. 2915)
John H. Knight (No. 3848)
Brett M. Haywood (No. 6166)
J. Zachary Noble (No. 6689)
One Rodney Square
920 N. King Street
Wilmington, DE 19801
(302) 651-7700
Collins@rlf.com
Stearn@rlf.com
Knight@rlf.com
Haywood@rlf.com
Noble@rlf.com

—and—

**WHITE & CASE LLP**

Thomas E Lauria (admitted *pro hac vice*)
Matthew C. Brown (admitted *pro hac vice*)
200 South Biscayne Boulevard, Suite 4900
Miami, FL 33131
(305) 371-2700
tlauria@whitecase.com
mbrown@whitecase.com

J. Christopher Shore (admitted *pro hac vice*)
David M. Turetsky (admitted *pro hac vice*)
Samuel P. Hershey (admitted *pro hac vice*)
Erin Smith (admitted *pro hac vice*)
1221 Avenue of the Americas
New York, NY 10020
(212) 819-8200
cshore@whitecase.com
david.turetsky@whitecase.com
sam.hershey@whitecase.com
erin.smith@whitecase.com

Jason N. Zakia (admitted *pro hac vice*)
Laura E. Baccash (admitted *pro hac vice*)
111 South Wacker Drive
Chicago, IL 60606
(312) 881-5400
jzakia@whitecase.com
laura.baccash@whitecase.com

Ronald K. Gorsich (admitted *pro hac vice*)
Aaron Colodny (admitted *pro hac vice*)
Doah Kim (admitted *pro hac vice*)
555 South Flower Street, Suite 2700
Los Angeles, CA 90071
(213) 620-7700
rgorsich@whitecase.com
aaron.colodny@whitecase.com
doah.kim@whitecase.com

*Co-Counsel to the Reorganized Debtor*