**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re<br><br>Rental Car Intermediate Holdings, LLC,[1]<br><br>Reorganized Debtor. | Chapter 11<br><br>Case No. 20-11247 (MFW)<br><br>Re: D.I. 219, 257, 259 & 279 |

**REORGANIZED DEBTOR'S OMNIBUS REPLY IN SUPPORT OF
REORGANIZED DEBTOR'S MOTION FOR ENTRY OF AN ORDER
AUTHORIZING REORGANIZED DEBTOR TO FILE UNDER SEAL
CERTAIN CONFIDENTIAL INFORMATION IN THE REORGANIZED
DEBTOR'S (A) OBJECTION TO CLAIMANTS' MOTION TO DEEM CLAIMS
TIMELY OR FOR EXTENSION OF GENERAL BAR DATE UNDER RULES 3003(c)
AND 9006, AND (B) OBJECTION TO THE FALSE ARREST CLAIMANTS' MOTION
PURSUANT TO BANKRUPTCY RULE 9014 (I) TO APPLY BANKRUPTCY RULE 7023
AND (II) TO SET A DISCOVERY SCHEDULE ON THE PUTATIVE CLASS CLAIMS**

The above-captioned reorganized debtor (the "**Reorganized Debtor**") hereby files this reply (the "**Reply**") and the *Declaration of Michael A. Severance in Support of Reorganized Debtor's Motion to Seal*, attached hereto as **Exhibit 1** (the "**Severance Declaration**") (a) in support of the *Reorganized Debtor's Motion for Entry of an Order Authorizing Reorganized Debtor to File Under Seal Certain Confidential Information in the Reorganized Debtor's (a) Objection to Claimants' Motion to Deem Claims Timely or for Extension of General Bar Date Under Rules 3003(c) and 9006, and (b) Objection to the False Arrest Claimants' Motion Pursuant to Bankruptcy Rule 9014 (i) to Apply Bankruptcy Rule 7023 and (ii) to Set a Discovery Schedule*

---

[1] The last four digits of the tax identification number of Reorganized Debtor Rental Car Intermediate Holdings, LLC ("**RCIH**") are 2459.  The location of the Reorganized Debtor's service address is 8501 Williams Road, Estero, FL 33928.  On September 28, 2021, the Court entered a final decree closing each of the chapter 11 cases for The Hertz Corporation and its reorganized debtor affiliates (the "**Reorganized Debtors**") other than RCIH's chapter 11 case.  Commencing on September 28, 2021, all motions, notices, and other pleadings relating to any of the Reorganized Debtors shall be filed in RCIH's chapter 11 case, Case No. 20-11247 (MFW).

RLF1 26819099v.1

*on the Putative Class Claims* [D.I. 219] (the "**Motion to Seal**"),[2] and (b) in response to (i) the *False Police Report Claimants' Objection to Reorganized Debtor's Motion to File Under Seal Certain Allegedly Confidential Information* [D.I. 257] (the "**FPRC Objection**") filed by certain of the False Police Report Claimants (as defined in the FPRC Objection) (the "**Claimants**"), (ii) the *Objection of CBS Broadcasting Inc. to Reorganized Debtor's Motion for Entry of an Order Authorizing Reorganized Debtor to File Under Seal Certain Confidential Information* [D.I. 259] (the "**CBS Objection**") filed by CBS Broadcasting Inc. ("**CBS**"), and (iii) the *United States Trustee's Objection to Claimants' Motion for Entry of an Order Authorizing Claimants to File Under Seal Allegedly Confidential Information Contained in (i) Claimants' Reply in Support of Motion to Deem Claims Timely or for Extension of General Bar Date Under Rules 3003(c) and 9006; and (ii) Claimants' Reply in Support of Motion Pursuant to Bankruptcy Rule 9014* [D.I. 279] (the "**U.S. Trustee Objection**," and together with the FPRC Objection and the CBS Objection, the "**Objections**") filed by the United States Trustee for Region 3 (the "**U.S. Trustee**," and together with CBS and the Claimants, the "**Objectors**").  In support of the Reply, the Reorganized Debtor represents as follows:

**PRELIMINARY STATEMENT**

1. At the November 4, 2021 hearing, the Court requested that the Reorganized Debtor provide "an overview . . . to the extent the debtor does have some documents regarding the same numbers that Judge Carey considered, *i.e.* . . . total number of police reports filed by the debtor and the total number of that category that turned out to be" inaccurate.  Nov. 4, 2021 Hr'g Tr. at

---

[2] Capitalized terms used but not otherwise defined herein shall have the meanings given to them in the Motion to Seal.

54:10-16.  The Court requested this information to "allow the Court to, at least in a preliminary stage, determine whether or not additional discovery on that is warranted[.]" *Id.* at 54:17-19.[3]

2. In light of the Court's direction, the Reorganized Debtor submitted with its Motion for Leave Objection [D.I. 214] and Class Claim Motion Objection [D.I. 215] the Confidential Information, including Hertz's total number of annual car rentals, total number of annual calls to customer service, and total number of annual police reports and categories of those reports. The Reorganized Debtor also filed the Motion to Seal, pursuant to section 107(b) of the Bankruptcy Code ("**Section 107(b)**") and Bankruptcy Rule 9018, because the Confidential Information in the objections is highly sensitive, confidential, commercial information related to core aspects of the Reorganized Debtors' business that should remain protected from public disclosure.[4]

3. The Objectors state no basis for unsealing this information that overcomes Hertz's legitimate interest in protecting itself from competitive harm.  The Objectors speculate that Hertz seeks merely to avoid the purported embarrassment that disclosure would bring, but as explained in the Severance Declaration, that is inaccurate.  Indeed, it is the Objectors who appear eager to use this information to advance their own interests.  In particular, Claimants already have access to this information for the purpose of making their litigation case—the only legitimate purpose for which they need it.  They are instead seeking to use the unsealing of this historical information as leverage to pressure post-emergence Hertz into a settlement of Claimants' pre-emergence claims—

---

[3] *See also* FPRC Objection ¶¶ 1-2 ("[I]t was the Court that directed the Reorganized Debtor to provide statistics, as it was able, on the number of police reports filed by the Debtors, and the number of such reports found to contain inaccurate information . . . [and] [t]he Reorganized Debtor complied with the Court's directive by including this critical information in the Objections[.]") (internal quotation marks omitted).

[4] The fact that this information is historical does not mean it is not of use or interest to Hertz's competitors. *See In re Am. Bus. Fin. Servives, Inc.*, No. 05-10203 MFW, 2008 WL 3906894, at *4 (Bankr. D. Del. Aug. 20, 2008) (Walrath, J.) ("[T]he fact that the information is several years old is not relevant as the documents deal with general business practices of Greenwich that its competitors could still find useful.").

a plain attack on Hertz's ability to reorganize. Regardless, the only issue for the Court's determination is whether disclosure of the Confidential Information reasonably can be expected to cause the Reorganized Debtors commercial harm. Because the answer to this question is yes, the Motion to Seal should be granted.

## ARGUMENT

A. **The Confidential Information Must Be Protected Under Section 107(b) Because It Is Confidential Commercial Information, Disclosure of Which Would Harm the Reorganized Debtors**

4. Section 107(b) requires that, on a party in interest's request, bankruptcy courts **shall** protect confidential commercial information from public disclosure. A showing of good cause is not required. *See In re Transbrasil S.A. Linhas Aereas*, 644 Fed. Appx. 959, 962 (11th Cir. 2016) ("Section 107(b) [. . .] does not require the bankruptcy court to find a compelling interest or even good cause [but] [r]ather, upon determining that a movant has identified information that qualifies for protection under § 107(b), the bankruptcy court shall protect the information.") (citing *In re Orion Pictures Corp.*, 21 F.3d 24, 28 (2d Cir. 1994)). If the material sought to be protected falls within any of the categories identified in Section 107(b), "the court is *required* to protect a requesting party and has no discretion to deny the application." *In re Orion Pictures*, 21 F.3d at 27 (emphasis original) (citation omitted); *see also In re Altegrity, Inc.*, 2015 WL 10963572, at *3 (Bankr. D. Del. July 6, 2015) ("[I]f it is established that the documents sought to be sealed fall within the enumerated statutory exception, the court must grant the requested relief (or such other relief that protects the moving party).") (citing *In re Anthracite Capital, Inc.*, 492 B.R. 162, 177 (Bankr. S.D.N.Y. 2013)).

5. "Commercial information . . . need not rise to the level of a 'trade secret'" to be entitled to protection under Section 107(b). *In re Altegrity*, 2015 WL 10963572, at *3; *see also In re Orion Pictures*, 21 F.3d at 28 (the "clear and unambiguous usage of 'or' neither equates

4

'trade secret' with 'commercial information' nor requires the latter to reflect the same level of confidentiality as the former"). "Commercial information is information which would result in 'an unfair advantage to competitors by providing them information as to the commercial operations of the debtor.'" *In re Alterra Healthcare Corp.*, 353 B.R. 66, 75-76 (Bankr. D. Del. 2006) (quoting *In re Orion Pictures*, 21 F.3d at 27-28).

6. Commercial injury caused by such disclosure need not be guaranteed or certain. Rather, "[t]he whole point of [Bankruptcy Rule 9018] is to protect business entities from disclosure of information that could *reasonably* be expected to cause the entity commercial injury." *In re Glob. Crossing Ltd.*, 295 B.R. 720, 725 (Bankr. S.D.N.Y. 2003) (emphasis added); *see also In re Alterra Healthcare*, 353 B.R. at 75 ("'[D]isclosure of [the] information [must] reasonably be expected to cause the entity commercial injury.'") (quoting *In re Northstar Energy, Inc.*, 315 B.R. 425, 429 (Bankr. E.D. Tex. 2004)). As made clear by the plain language of the Bankruptcy Code, a movant need only demonstrate that the "information" in question is both "confidential" and "commercial" in nature. *See* 11 U.S.C. § 107(b)(1).

7. The Confidential Information contained in the Reorganized Debtor's Motion for Leave Objection and Class Claim Motion Objection satisfies Section 107(b) because it is sensitive and confidential commercial information, disclosure of which could reasonably be expected to cause the Reorganized Debtors commercial injury. As set forth in the Motion to Seal and the Severance Declaration, the Confidential Information includes, among other things, Hertz's annual car rental transactions, the number of phone calls that Hertz's customer service centers receive per year, and the number and categories of police reports that Hertz issues on an annual basis.[5]

---

[5] In its objection, CBS seems to focus on one piece of information in particular—the number of police reports proven to be inaccurate. *See* CBS Objection ¶ 31. The Reorganized Debtor publicly disclosed this information in the Motion for Leave Objection: "there have been only two lawsuits that have resulted in

5

Severance Declaration ¶¶ 3-7.  Contrary to the Objectors' conjecture, the Reorganized Debtors are not concerned with the purported "embarrassment" that disclosure of the Confidential Information supposedly could cause.  Severance Declaration ¶ 8.  Rather, the risk of putting the Reorganized Debtors at an unfair and substantial competitive disadvantage is far too great to justify publicly disclosing the Confidential Information.  Severance Declaration ¶¶ 3-7.

8. It cannot reasonably be disputed that the Confidential Information is central to, and at the core of, Hertz's commercial business operations.  *See* Severance Declaration ¶ 6.  If the information is disclosed, the Reorganized Debtors reasonably believe that their competitors in the highly competitive rental car industry would use this confidential and commercial information to extrapolate conclusions about Hertz's risk tolerance, risk management, loss prevention protocols, and other proprietary information regarding how Hertz manages its fleet.  Severance Declaration ¶ 5.  These competitors would likely use this information to improve their own operations, and to attempt to both tarnish and out-compete Hertz because Hertz lacks similar information as to them.  Severance Declaration ¶¶ 6-7.  Without similar insight into their competitors' operations, the Reorganized Debtors would be placed at a real and significant competitive disadvantage.  Severance Declaration ¶¶ 7-8.  Accordingly, such Confidential Information qualifies as commercial information under Section 107(b), and disclosure could reasonably be expected to cause commercial injury to the Reorganized Debtors.

9. Certain of the False Police Report Claimants argue that the total number of police reports filed by the Debtors each year cannot be confidential because each underlying police report is a matter of public record.  FPRC Objection ¶ 20.  While it may be true that a police report is a

---

Hertz being found to have issued a police report containing inaccurate information."  Motion for Leave Objection ¶ 59.

matter of public record (which of course the Objectors are free to obtain on their own), it does not follow that the Reorganized Debtors' internal aggregations, compilations, and statistical representations related to filed police reports are not confidential and, therefore, should be public. Rather, this non-public Confidential Information relates to Hertz's core business operations and functions, including its fleet management, vehicle control, and loss prevention. Severance Declaration ¶¶ 5-6. These claimants further argue that the Confidential Information is not protected by Section 107(b) because Hertz is required to disclose other similar, but not identical, information in its SEC filings. *See* FPRC Objection ¶ 21. But it is undisputed that the Confidential Information is not disclosed in the SEC reports. And, as noted above, disclosure of Confidential Information is reasonably likely to result in commercial injury to the Reorganized Debtors.

10. The Debtors have provided the Confidential Information on an unredacted basis to the U.S. Trustee, the Court, and counsel to Claimants that have been admitted *pro hac vice* in this chapter 11 case and are subject to this Court's jurisdiction pursuant to Local Rule 9010-1(a) or (b). Indeed, it is peculiar that the Claimants are objecting to a motion to seal Confidential Information that they already have and are permitted to use in the current litigation with the Reorganized Debtor. The Claimants have identified no need at all for the unsealing of the Confidential Information. Accordingly, none of these parties—particularly the Claimants—is prejudiced by the protection of the Confidential Information.

**B.     The First Amendment Does Not Require the Confidential Information Be Disclosed**

11. CBS argues that the First Amendment guarantees a right of access to bankruptcy proceedings that warrants unsealing the Confidential Information. CBS Objection ¶¶ 29-38. Although the Debtors do not dispute the fact that bankruptcy cases historically have been open to the public and the press, that is not the issue here. Rather, the question is whether the public's right of access must give way to the Reorganized Debtors' need to protect their commercially

7

sensitive information, as section 107 of the Bankruptcy Code expressly provides. *See, e.g.*, *In re Alterra Healthcare*, 353 B.R. at 74 ("Congress has codified the historical practice of open access to bankruptcy. *See* 11 U.S.C. § 107(a) (2006).") Indeed, legislation such as section 107 of the Bankruptcy Code is a reflection of public policy, and the public policy permitting confidentiality in bankruptcy proceedings is well established in Section 107(b). But even ignoring the fact that Section 107(b) governs the outcome of the Motion to Seal, there is no compelling First Amendment principle requiring disclosure here.

12. "A First Amendment right of access applies if (1) 'the place and process have historically been open to the press and general public' and (2) 'public access plays a significant positive role in the functioning of the particular process in question.'" *In re Alterra Healthcare*, 353 B.R. at 73 (quoting *Press–Enter. Co. v. Superior Court,* 478 U.S. 1, 8 (1986)).

13. Instead of specifically engaging the second prong of the First Amendment analysis, CBS merely offers a series of unhelpful citations and statements supporting the qualified presumption of a right to access.[6] However, the Court must consider whether public access to the Confidential Information will play a significant, positive role in these particular claims allowance proceedings. *See In re Alterra Healthcare*, 353 B.R. at 74 (applying First Amendment right of access test and analyzing public role in settlement process and facilities regulation specifically, rather than bankruptcy proceedings generally, and rejecting newspaper's argument). It will not.

---

[6] For example, *In re Traversa* is a bankruptcy case that acknowledges a "qualified First Amendment right" to judicial documents, but which does not engage in the two-prong test used in *Alterra*. 371 B.R. 1, 5-6 (Bankr. D. Conn. 2007) (quotation omitted). And CBS cites to *In re Bell & Beckwith* for the broad proposition that open inspection of documents is the norm in bankruptcy. 44 B.R. 661, 664 (Bankr. N.D. Ohio 1984). The Reorganized Debtor agrees, but "the public's right to access judicial records [under section 107 of the Bankruptcy Code] is not absolute." *In re Kaiser Aluminum Corp.*, 327 B.R. 554, 560 (D. Del. 2005) (citing *In re Orion Pictures*, 21 F.3d at 24).

14. CBS cites to five media pieces to show purported public interest in these proceedings. *See* CBS Objection ¶¶ 33, 34 n.6. This media coverage merely underscores the public's current access to the False Police Report Claimants' allegations regarding the Debtors' theft reporting practices. Moreover, such allegations, as described by the False Police Report Claimants, are included in dozens of documents and hundreds of proofs of claim filed by such claimants. Accordingly, CBS' ability to report on these allegations has not been impeded or restricted in these cases in any respect.

15. Moreover, CBS does not show how public disclosure of the Confidential Information will play "a significant, positive role in the functioning of the particular process in question." *See In re Alterra Healthcare*, 353 B.R. at 73. CBS does not even specifically identify what it believes that "particular process" is. Regardless, CBS is having no difficulty reporting on the False Police Report Claimants' allegations despite the sealing of the Confidential Information, and the False Police Report Claimants' claims will proceed through the bankruptcy claims process without impediment given that counsel to such claimants are in possession of the Confidential Information. *See* ¶¶ 10, 14 *supra*. As noted above, disclosure of the Confidential Information will only serve to damage the Reorganized Debtors, not further these processes.[7] The second prong of the First Amendment analysis is not satisfied here. *See In re Alterra Healthcare*, 353 B.R. at 74 (finding the second prong of the First Amendment analysis not satisfied where "[t]he public already ha[d] access to the allegations of neglect and abuse which are detailed in the complaints").

---

[7] Nor are the kinds of public health factors—information regarding widely used pharmaceuticals—that were relevant in *In re Avandia Marketing, Sales Practices and Products Liability Litigation*, 924 F.3d 662, 677 (3d Cir. 2019) and *In re National Prescription Opiate Litigation*, 927 F.3d 919, 933-34 (6th Cir. 2019) at play here.

16. CBS speculates, without explanation, that disclosure of the Confidential Information "may also assist governmental entities in the performance of their duties vis-a-vis this debtor and its officers." CBS Objection ¶ 34 (quoting *In re Found. for New Era Philanthropy*, 1995 WL 478841, at *5 (Bankr. E.D. Pa. 1995)). It is unclear what CBS is insinuating in this excessively general and vague statement. Regardless, CBS does not represent the interests of any such governmental entities. That said, the case to which CBS cites in support of this proposition, *New Era Philanthropy*, involved administrative and regulatory factors that are not at issue here. In that case, the debtor sought to seal its list of creditors, and in denying this request, the court noted, among other things, the need for the list in application of the bankruptcy statute and its potential use in future regulation of charities like the debtor. *New Era Philanthropy*, 1995 WL 478841, at *5-6.

17. Thus, CBS has not identified a tangible benefit to the bankruptcy claims allowance process that would be produced by compelling disclosure, let alone a benefit that outweighs the harm to the Reorganized Debtors that disclosure would cause.

**C.    Any Common Law Right of Access Has Been Supplanted by the Bankruptcy Code**

18. CBS makes the additional argument that the Confidential Information should be disclosed pursuant to a federal common law right of access. But common law is inapplicable here; Section 107(b) governs. *In re Alterra Healthcare*, 353 B.R. at 74-75 ("Because Congress has provided a specific provision which deals with the right to access public records in bankruptcy proceedings, the Court should not encroach upon the province of Congress. Accordingly, the Court will not analyze the issue under federal common law.").

## CONCLUSION

Wherefore, for the reasons set forth herein, the Reorganized Debtor respectfully requests that the Court overrule the Objections, grant the relief requested in the Motion to Seal, and grant such other and further relief the Court deems just and proper.

[*Remainder of page intentionally left blank*]

Dated: February 4, 2022

 /s/ Robert J. Stearn, Jr.
**RICHARDS, LAYTON & FINGER, P.A.**

Mark D. Collins (No. 2981)
Robert J. Stearn, Jr. (No. 2915)
John H. Knight (No. 3848)
Cory D. Kandestin (No. 5025)
Brett M. Haywood (No. 6166)
J. Zachary Noble (No. 6689)
One Rodney Square
920 N. King Street
Wilmington, DE 19801
(302) 651-7700
Collins@rlf.com
Stearn@rlf.com
Knight@rlf.com
Kandestin@rlf.com
Haywood@rlf.com
Noble@rlf.com
—and—

**WHITE & CASE LLP**

Thomas E Lauria (admitted *pro hac vice*)
Matthew C. Brown (admitted *pro hac vice*)
200 South Biscayne Boulevard, Suite 4900
Miami, FL 33131
(305) 371-2700
tlauria@whitecase.com
mbrown@whitecase.com

J. Christopher Shore (admitted *pro hac vice*)
David M. Turetsky (admitted *pro hac vice*)
Samuel P. Hershey (admitted *pro hac vice*)
Erin Smith (admitted *pro hac vice*)
1221 Avenue of the Americas
New York, NY 10020
(212) 819-8200
cshore@whitecase.com
david.turetsky@whitecase.com
sam.hershey@whitecase.com
erin.smith@whitecase.com

Jason N. Zakia (admitted *pro hac vice*)
Laura E. Baccash (admitted *pro hac vice*)
111 South Wacker Drive
Chicago, IL 60606
(312) 881-5400
jzakia@whitecase.com
laura.baccash@whitecase.com

Ronald K. Gorsich (admitted *pro hac vice*)
Aaron Colodny (admitted *pro hac vice*)
Doah Kim (admitted *pro hac vice*)
555 South Flower Street, Suite 2700
Los Angeles, CA 90071
(213) 620-7700
rgorsich@whitecase.com
aaron.colodny@whitecase.com
doah.kim@whitecase.com

*Co-Counsel to the Reorganized Debtor*