**<u>Exhibit 6</u>**

**Second R&R**

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **IN THE MATTER OF** | : | **MISCELLANEOUS** |
| | : | |
| **FRANCIS MALOFIY** | : | **No. 14-mc-139** |
| | : | |
| | : | **FILED UNDER SEAL** |

**FILED**

MAY 2 2 2017

By KATE BARKMAN, Clerk
Dep. Clerk

52

## REPORT AND RECOMMENDATION

**Padova, Sánchez, and O'Neill, JJ.**                                    **May 22, 2017**

Francis Malofiy seeks reinstatement to the bar of this Court after serving a suspension of three months and one day for violating the Pennsylvania Rules of Professional Conduct in his dealings with an unrepresented defendant in a civil action in this Court, conduct for which he was also sanctioned in the underlying civil action. On January 30, 2017, Chief Judge Petrese B. Tucker referred this matter to the undersigned Panel for a recommendation. We held a hearing on Mr. Malofiy's petition for reinstatement on February 23, 2017, at which Mr. Malofiy and numerous character witnesses testified. Because, after hearing from Mr. Malofiy, we are not persuaded he has genuinely accepted responsibility for the misconduct underlying his suspension, and because his continued litigation misconduct during the pendency of his appeal of this Court's suspension order raises serious concerns as to whether he understands where the line is between zealous advocacy and unprofessional and unethical conduct, we are not persuaded Mr. Malofiy has satisfied his burden to prove by clear and convincing evidence that reinstatement is warranted. We therefore recommend his petition for reinstatement be dismissed at this time.

## I.   BACKGROUND

### A.   Practice History

Mr. Malofiy was admitted to the Pennsylvania bar in 2008 and was admitted to the bar of this Court in 2009.  Mr. Malofiy has also been admitted to practice in the U.S. Courts of Appeals for the Third and Ninth Circuits and the U.S. Tax Court.  Throughout his legal career, Mr. Malofiy has maintained his own law practice, taking on what he has previously described as "high risk, high reward" cases for clients who would not otherwise be able to find legal representation.  For several years, Mr. Malofiy had an "of counsel" relationship with the Beasley Firm and worked out of the firm's office in Center City Philadelphia.  After that relationship ended in January 2014, Mr. Malofiy relocated his law practice to Media, Pennsylvania.

### B.   Sanctions Proceeding

In May 2014, the Honorable Paul S. Diamond sanctioned Mr. Malofiy for engaging in misconduct in a copyright infringement action he had filed against the musical artist known as Usher and others concerning the song "Bad Girl," which Mr. Malofiy's client, Daniel Marino, claimed to have co-authored.  *See Marino v. Usher*, No. 11-6811, 2014 WL 2116114 (E.D. Pa. May 21, 2014), *aff'd*, 2016 WL 7156558 (3d Cir. Dec. 8, 2016).  The defendants in the *Marino* action included William Guice, another co-author of the song, who was not represented by counsel in the action.  After a hearing at which Mr. Guice testified but Mr. Malofiy did not, Judge Diamond found Mr. Malofiy had intentionally violated Pennsylvania Rule of Professional Conduct 4.3[1] by obtaining an inculpatory affidavit from Mr. Guice without advising him to get a

---

[1] Rule 4.3, captioned "Dealing with Unrepresented Person," provides:

> (a)  In dealing on behalf of a client with a person who is not represented by counsel, a lawyer shall not state or imply that the lawyer is disinterested.

2

lawyer or explaining that Mr. Marino's interests were adverse to Mr. Guice's interests. Judge Diamond also found Mr. Malofiy had engaged in misconduct by causing Mr. Guice's default to be entered after falsely assuring him he was only a witness in the case. In addition to imposing monetary and other sanctions on Mr. Malofiy, Judge Diamond referred the matter to the Chief Judge of this Court for further disciplinary proceedings, if necessary, pursuant to Rule V of this Court's Rules of Disciplinary Enforcement. *See* Local R. Civ. P. 83.6, Rule V(A). Although not the basis for the imposition of sanctions, Judge Diamond also commented at some length in his sanctions ruling on Mr. Malofiy's highly unprofessional behavior during discovery in the *Marino* action, which included repeatedly making abusive, degrading, and derogatory remarks to opposing counsel during depositions and repeatedly making lengthy speaking objections, even after the court had directed counsel to refrain from the practice. *See Marino*, 2014 WL 2116114, at *1-3.

### C.     Original Disciplinary Proceedings in This Court and Reciprocal Discipline

Upon receipt of Judge Diamond's referral, Chief Judge Tucker appointed the Office of Disciplinary Counsel of the Disciplinary Board of the Supreme Court of Pennsylvania (ODC) to investigate whether there was probable cause to believe Mr. Malofiy had violated the Rules of Professional Conduct in the *Marino* action and, if so, to file a petition for a rule to show cause

---

(b) During the course of a lawyer's representation of a client, a lawyer shall not give advice to a person who is not represented by a lawyer, other than the advice to secure counsel, if the lawyer knows or reasonably should know the interests of such person are or have a reasonable possibility of being in conflict with the interests of the lawyer's client.

(c) When the lawyer knows or reasonably should know that the unrepresented person misunderstands the lawyer's role in the matter, the lawyer should make reasonable efforts to correct the misunderstanding.

Pa. R. Prof'l Conduct 4.3.

why discipline should not be imposed. In October 2014, ODC filed a petition for rule to show cause, indicating there was probable cause to believe Mr. Malofiy had violated Rules 4.1(a), 4.3, 8.4(c), and 8.4(d) in his dealings with Mr. Guice. The Chief Judge thereafter issued an Order and Rule to Show Cause and referred the matter to a Panel of this Court for a recommendation as to whether discipline should be imposed on Mr. Malofiy.[2] Although ODC urged the Panel to find Mr. Malofiy had violated the Rules in question based solely on Judge Diamond's findings in his sanctions ruling under the doctrine of offensive collateral estoppel, the Panel elected to hold a full de novo evidentiary hearing at which Mr. Malofiy, who had indicated his desire to testify in the disciplinary proceeding, could provide his account of the events in question. The Panel held an evidentiary hearing on February 24, 2015, at which Mr. Malofiy, two fact witnesses, and sixteen character witnesses testified.

Following the hearing, on May 20, 2015, the Panel issued a detailed Report and Recommendation, concluding that Mr. Malofiy had engaged in the ethics violations charged. *See* R. & R., ECF No. 24. Based on the record developed in the disciplinary proceeding, the Panel found Mr. Malofiy had violated Rule 4.3 by (1) obtaining an inculpatory affidavit from Mr. Guice without adequately explaining the adversity of interests between his client and Mr. Guice; (2) misleading Mr. Guice about his status in the *Marino* action; and (3) causing Mr. Guice's default to be entered without correcting Mr. Guice's obvious misunderstanding regarding his status in the case. The Panel also found Mr. Malofiy violated Rules 4.1(a), 8.4(c), and 8.4(d)[3] by knowingly misrepresenting to Mr. Guice that he was going to "hold tight" with

---

[2] The Panel that considered the disciplinary charges against Mr. Malofiy was composed of current Panel members Judge Padova and Judge Sánchez, and Judge Legrome D. Davis.

[3] Rule 4.1(a) prohibits a lawyer from knowingly making "a false statement of material fact or law to a third person" in the course of representing a client. Rule 8.4 provides in relevant part

Mr. Guice and was "not going to do anything" with him in the case, when, in fact, Mr. Malofiy

intended to wait and see what the records showed before deciding how to proceed with respect to

Mr. Guice. *See* R. & R. 37-38, ECF No. 24. Although ODC recommended that Mr. Malofiy be

reprimanded for his misconduct, the Panel—after consulting the American Bar Association's

*Standards for Imposing Lawyer Sanctions* and considering all of the aggravating and mitigating

factors present in the case, including Mr. Malofiy's egregious discovery misconduct in the

*Marino* case and his refusal to acknowledge that his conduct toward Mr. Guice was in any way

inappropriate—recommended that Mr. Malofiy be suspended from practice before this Court for

three months and one day. The Board of Judges adopted the Report and Recommendation over

Mr. Malofiy's objection, and on June 9, 2015, the Chief Judge signed an Order suspending Mr.

Malofiy from the practice of law in this Court for a period of three months and one day, effective

30 days from the date of the Order.

Mr. Malofiy thereafter appealed his suspension to the Third Circuit Court of Appeals,

challenging this Court's conclusion that he had violated the Rules of Professional Conduct and

arguing the sanction imposed was overly severe.[4] At Mr. Malofiy's request, this Court stayed his

suspension pending disposition of his appeal.

On June 30, 2016, a panel of the Third Circuit affirmed Mr. Malofiy's suspension. *In re*

*Malofiy*, 653 F. App'x 148, 155 (3d Cir. 2016) (affirming "both the conclusion that Malofiy

---

that it is professional misconduct for a lawyer to engage in conduct that "involv[es] dishonesty, fraud, deceit or misrepresentation," Pa. R. Prof'l Conduct 8.4(c), or "is prejudicial to the administration of justice," Pa. R. Prof'l Conduct 8.4(d).

[4] Because the three-month-and-one-day sanction imposed was more severe than the sanction ODC had recommended, ODC did not participate in the appeal, and this Court sought and was granted leave to intervene as a party in interest. *See In re Malofiy*, No. 15-2472, Order (3d Cir. Jan. 15, 2016).

violated the Pennsylvania Rules of Professional Conduct and the imposition of a suspension of three months and one day"). Mr. Malofiy thereafter sought en banc rehearing, again arguing, inter alia, that the evidence did not support a finding that he had committed any of the disciplinary violations charged and that the sanction imposed was excessive. The Third Circuit denied the petition for rehearing en banc on July 26, 2016, and issued its mandate on August 5, 2016. Upon receipt of the mandate on August 10, 2016, Chief Judge Tucker issued an Order directing that the stay be dissolved and that the June 9, 2015, Order of Suspension be complied with in all respects.[5]

As a result of the suspension imposed by this Court, Mr. Malofiy received identical reciprocal suspensions of three months and one day from the Third Circuit Court of Appeals on October 25, 2016, and from the Pennsylvania Supreme Court on November 22, 2016. At the time of the reinstatement hearing before us, reciprocal disciplinary proceedings were pending in the U.S. Court of Appeals for the Ninth Circuit and the U.S. Tax Court. *See* Pet. for Reinstatement ¶ 7, ECF No. 36.

Mr. Malofiy has since been reinstated in both the Third Circuit and Pennsylvania, as both jurisdictions provide for automatic reinstatement upon submission of an appropriate certificate of compliance following a suspension of the duration involved here. *See* 3d Cir. R.A.D.E. 13.1 ("An attorney suspended for six (6) months or less is automatically reinstated at the end of the

---

[5] Mr. Malofiy sought further review of his suspension after it took effect, filing a petition for writ of certiorari in the U.S. Supreme Court. In his certiorari petition, Mr. Malofiy argued his due process rights were violated because he was deprived of a neutral and detached arbiter during the disciplinary process, as evidenced by this Court's alleged assumption of a prosecutorial role by intervening in his disciplinary appeal to the Third Circuit. Although not the basis on which he sought certiorari, Mr. Malofiy also continued to maintain the evidence presented was "insufficient to impose discipline." Br. for Pet'r, *In re Malofiy*, No. 16-594, 2016 WL 6520050, at *4 (S. Ct. Oct. 24, 2016). The Supreme Court denied certiorari on January 9, 2017.

period of suspension upon the filing of an affidavit of compliance with the provisions of the order."); Pa. R.D.E. 218(g)(1) (providing for automatic reinstatement "[u]pon the expiration of any term of suspension not exceeding one year and upon the filing thereafter by the formerly admitted attorney ... of a verified statement showing compliance with all the terms and conditions of the order of suspension and of Enforcement Rule 217").

### D.    The *Led Zeppelin* Attorney's Fees Ruling

After obtaining a stay of his suspension, Mr. Malofiy continued practicing law in this District and elsewhere while his appeal was pending, including serving as lead counsel in a copyright infringement action he had filed against the members of the band Led Zeppelin concerning whether the Led Zeppelin song "Stairway to Heaven" infringed the song "Taurus" by the band Spirit. Mr. Malofiy brought the suit on behalf of Michael Skidmore, as Trustee for the Randy Craig Wolfe Trust, which owned the copyright to the allegedly infringed song "Taurus." The case was tried in the Central District of California in June 2016, during the pendency of Mr. Malofiy's disciplinary appeal in the Third Circuit, and resulted in a defense verdict.

Prior to Mr. Malofiy's reinstatement hearing, we became aware of an attorney's fees ruling in the *Led Zeppelin* case in which the judge faulted plaintiff's counsel for engaging in litigation misconduct in the course of prosecuting the case. *See Skidmore v. Led Zeppelin*, No. 15-3462, 2016 WL 6674985, at *4 (C.D. Cal. Aug. 8, 2016). The defendants urged the court to award attorney's fees under the Copyright Act, citing plaintiff's litigation misconduct as a factor supporting a fee award. Although the court declined to award attorney's fees, it found the litigation misconduct factor "sw[u]ng solidly in Defendant[s'] direction," noting that throughout the case, "Plaintiff's counsel demonstrated a tenuous grasp of legal ethics and a rudimentary understanding of courtroom decorum." *Id.* As an example of counsel's misconduct, the court

7

cited counsel's "antics" during his direct examination of the plaintiff, noting that after mentioning that defendants had raised the defense of unclean hands, counsel "waved his hands in the air and implored Skidmore, 'Please show the jury your hands,'" prompting an audible response from the jurors and gallery and a reprimand from the court. *Id.* The court also cited counsel's disregard of the court's in limine ruling excluding evidence about the charitable nature of the Randy Craig Wolfe Trust, noting that minutes after the pretrial conference in which the court issued the in limine ruling, "Plaintiff's counsel brazenly appeared before television cameras and declared, 'If money is won in this case, it's to be used to buy musical instruments for children who are in need in Ventura County,'" and at trial, counsel elicited testimony from one of the plaintiff's witnesses about the charitable purpose of the Trust. *Id.*

Given the apparent relevance of the California district court's findings to the issue of Mr. Malofiy's present fitness to practice law in this Court, we questioned Mr. Malofiy and other witnesses about the findings during the reinstatement hearing.

### E. Reinstatement Proceedings

After serving his suspension, Mr. Malofiy filed the instant Petition for Reinstatement on January 24, 2017, and Chief Judge Tucker thereafter referred the matter to the undersigned Panel. We held a hearing on the Petition on February 23, 2017, at which Mr. Malofiy and numerous character witnesses testified.

In his hearing testimony, Mr. Malofiy explained the steps he took to comply with the terms of his suspension, stating he withdrew from all of his cases in this Court on August 8, 2016, and has not held himself out as a practicing lawyer in this District since that time, even deactivating his website and removing the "Esquire" designation from his email signature. Upon Mr. Malofiy's withdrawal from his cases in this District, his associate, Arnold Joseph (AJ)

8

Fluehr, took over as lead counsel and has been handling all matters relating to those cases. Mr. Malofiy has had no involvement with his former clients and has made clear that he cannot talk to them and that all communications must go through Mr. Fluehr. Although Mr. Malofiy continues to use his former law office in Media, his work is limited to matters in jurisdictions in which he is barred, which, at the time of the hearing, consisted of the Ninth Circuit Court of Appeals and the U.S. Tax Court. Mr. Malofiy also stated he has paid the monetary sanction imposed in the *Marino* case—some $28,000—in full.

During his suspension, Mr. Malofiy has maintained his legal knowledge by continuing to practice in those jurisdictions in which he is still barred and by reading court decisions and other law-related materials. He has also kept current on his continuing legal education (CLE).[6]

Mr. Malofiy also discussed what he has learned from his experience in this disciplinary proceeding and what changes he would make if reinstated in this District. Mr. Malofiy stated he has learned that he should have been more clear with Mr. Guice and should have defined his role to Mr. Guice in a better way, noting he agreed with this Court's decision that he "should have been more clear." Reinstatement Hr'g Tr. 65, Feb. 23, 2017. Mr. Malofiy also stated he has made changes to make sure, when dealing with an unrepresented party, "to be abundantly clear of my role, . . . their role, of their potential liability, and . . . also to not be as friendly or to come off as friendly to a potential Defendant who might be adverse as they may misinterpret my role."

---

[6] At our request, following the reinstatement hearing, Mr. Malofiy submitted a copy of his CLE transcript, as well as documentation of additional CLE courses he completed after the hearing, in March 2017, including five ethics-related courses. When Mr. Malofiy initially submitted his CLE transcript on March 13, 2017, he was still serving his reciprocal suspension in Pennsylvania, and the transcript listed his status as "Suspended – DEFERRING CLE." Mr. Malofiy submitted an updated CLE transcript on April 11, 2017, after he was reinstated in Pennsylvania, which confirms that he complied with all CLE requirements for the compliance period ending December 31, 2016. Mr. Malofiy's next compliance date is December 31, 2017.

*Id.* at 66. When asked by his counsel what he has learned about being a professional and dealing with adversaries and "people who can maybe get you mad once in a while," and what he has done to ensure that, if reinstated, he will act differently, Mr. Malofiy noted he had previously admitted, during the original disciplinary hearing, that his deposition conduct was "not good" and represented he had not engaged in similar conduct and had not been sanctioned since the *Marino* case. *Id.* He also stated he recognizes that as a young lawyer, he did "cross the line" sometimes in his deposition conduct and that he now works to make sure he "stay[s] within the bounds" and does not let his "energy or . . . passion or . . . advocacy cross that line." *Id.* at 67.

Addressing the misconduct cited in the attorney's fees ruling in the *Led Zeppelin* case, Mr. Malofiy stressed that the case was "very hard-fought" and explained that only one of the specific examples identified—the so-called "unclean hands moment"—related to him, as it was his California co-counsel who spoke to the press about the charitable purpose for which any proceeds of the suit would be used and who handled the direct examination of the witness who mentioned the Trust's charitable purpose.[7] *Id.* at 68. When asked by the Panel whether he thought the judge "was right about . . . your colleague's conduct, that it was improper for him to have made that public statement," Mr. Malofiy initially responded that he was "not saying that" but was saying the judge was not referring to him. *Id.* Mr. Malofiy's counsel then interjected, advising Mr. Malofiy to "[a]nswer [the] question. This goes to the heart of the matter. Listen to what he said. Did the man act right or wrong? Because we need to know if you know where the line is?" *Id.* In response to this question, Mr. Malofiy stated he agreed his co-counsel's conduct

---

[7] Mr. Malofiy's co-counsel in the *Led Zeppelin* case were Glen L. Kulik, a California lawyer, and Mr. Malofiy's associate, AJ Fluehr.

violated the court's order and was "wrong, absolutely." *Id.*; *see also id.* at 73. He also acknowledged that defying a judge's order excluding evidence is a serious issue. *Id.* at 73.

As to the unclean hands incident, Mr. Malofiy admitted he was the attorney involved, but did not agree his conduct crossed the line, instead characterizing the conduct as "on the line." *Id.* at 69. Mr. Malofiy explained that his request that the witness show the jury his hands was made in the course of what the judge himself recognized was a hard-fought trial, as a final question with respect to an issue that was "highly debated" (i.e., whether the Trustee had improperly taken the Trust), and was intended to show the ridiculousness of the defendants' position. *Id.* at 69-70. He also stressed that the issue was over quickly—"the Judge said that's too much, and that was it." *Id.* at 70. When we asked Mr. Malofiy whether, in his view, the judge was wrong and the hand-waving was "just good advocacy" on his part, his counsel again interjected to stress that we were asking "a real serious question," which counsel then rephrased. *Id.* at 71. In response to his counsel's question, Mr. Malofiy stated that if he could do it again, he would not have done what he did with respect to the unclean hands issue "because it was on the line or over the line." *Id.* at 71-72. When pressed as to whether he viewed his conduct as on the line or over the line, Mr. Malofiy equivocated, stating, "I think it depends on—I think when you're in the heat of a trial and you're trying to advocate for your client and you want to show the ridiculousness in the other side's argument, I used that, it was effective in that the Judge did come back and non-suit the unclean hands." *Id.* at 72. He conceded, however, that if he could go back, he would not have done it.

In light of the trial judge's suggestion that the examples cited in his ruling were "just two of many incidents comprising a litany of tasteless courtroom antics and litigation misconduct," *Led Zeppelin*, 2016 WL 6674985, at *4, we indicated our desire to review the trial transcript in

11

the *Led Zeppelin* case. Mr. Malofiy stated he would be happy to provide the transcript for our review and did not believe we would find any other instances of misconduct, noting he was "very comfortable" with how he tried the case.[8] *See id.* at 73-75.

Finally, in response to his counsel's questioning about changes he has made in his life since being suspended, Mr. Malofiy stated he has recently become engaged to be married. Mr. Malofiy agreed with his counsel's suggestion that this development in his personal life has shown him "there's more to life than just being a good trial lawyer" and noted his fiancé helps to "take [his] rough edges off." *Id.* at 78.

In addition to testifying on his own behalf, Mr. Malofiy also presented numerous character witnesses at the hearing. Of the thirty character witnesses present at the hearing, six testified from the witness stand: a former client of Mr. Malofiy, a law school friend, the associate who took over Mr. Malofiy's cases following his suspension, and three experienced attorneys who have served as mentors to Mr. Malofiy.

Each of these witnesses testified regarding his or her observations of Mr. Malofiy as a lawyer, though most admittedly had limited personal experience with Malofiy in litigation matters. Mr. Malofiy's former client stated Mr. Malofiy worked diligently on the case in which he represented her and exhibited no behavioral problems during a deposition she attended. His law school colleague stated Mr. Malofiy had at all times "behaved more than appropriately" on the one appellate matter they worked on together, but conceded he had never been in court with Mr. Malofiy. *See id.* at 10. One of Mr. Malofiy's attorney mentors stated he had watched Mr. Malofiy deliver closing arguments on two occasions and was impressed by Mr. Malofiy's

---

[8] Mr. Malofiy stated that, from his perspective, the only issue we might find was his advocacy for the admission of a sound recording of the allegedly infringed song, which was the key issue in the case. *See* Reinstatement Hr'g Tr. 75.

performance both times. Another attorney mentor, whom Mr. Malofiy calls for advice periodically, commented on Mr. Malofiy's diligence and dedication based on his conversations with Mr. Malofiy. The third attorney mentor, who has worked with Mr. Malofiy on two cases, stated Mr. Malofiy conducted himself as a gentleman during one deposition they took together, explaining his use of the term "gentleman" with reference to a quote from President Theodore Roosevelt—"don't flinch, don't foul; hit the line hard." *Id.* at 49. Finally, Mr. Malofiy's associate stated he had served as co-counsel with Mr. Malofiy in two trials, including the *Led Zeppelin* trial, and described Mr. Malofiy's conduct in both cases as "exemplary" and "by the book." *Id.* at 30.

Several of these witnesses also testified to Mr. Malofiy's acceptance of responsibility for his past misconduct, noting Mr. Malofiy has expressed remorse for his misconduct, *id.* at 25, 41, 48; agrees that his discovery misconduct was "wrong," *id.* at 25, and "out of line," *id.* at 41; and understands the need to be more careful in his dealings with parties and witnesses, *see id.* at 41, 48. Each of these witnesses also testified that he or she has no hesitation in recommending Mr. Malofiy for reinstatement to the bar of this Court, notwithstanding the suspension, and that Mr. Malofiy has a good reputation in the community as both a peaceful and law abiding person and a truthful and honest person.

The remaining twenty-four character witnesses who appeared at the reinstatement hearing testified by way of a stipulation.[9] After being sworn in as a group, these witnesses, several of whom also testified at Mr. Malofiy's original disciplinary hearing, introduced themselves briefly, and Mr. Malofiy's counsel then offered the stipulation that, if called to testify, these witnesses

---

[9] These witnesses included Mr. Malofiy's fiancé, members of his family, former clients and persons associated with former clients, business associates, current and former coworkers, friends, and neighbors.

13

would state that they know people in the community who know Mr. Malofiy and that, among those people, Mr. Malofiy's current reputation as a truthful and honest person, and as a peaceful and law abiding person, is excellent.

Although not present at the hearing, Glen Kulik, Mr. Malofiy's co-counsel in the *Led Zeppelin* case, submitted a letter in support of Mr. Malofiy, which was provided to the Panel at the reinstatement hearing. Pet'r's Ex. 1. In the letter, Mr. Kulik recounts that before agreeing to serve as local counsel in that case, he had an in-person meeting with Mr. Malofiy during which Mr. Malofiy immediately disclosed that disciplinary proceedings were pending against him in this Court. According to Mr. Kulik, Mr. Malofiy "discussed the matter with [him] in great detail and assured [him] that in [Mr. Malofiy's] own mind he had acted properly and that the charges against him were unfair and lacked merit." *Id.* at 2. Having served as Mr. Malofiy's local counsel, Mr. Kulik had the opportunity to observe Mr. Malofiy's work on the case, including at trial, which Mr. Kulik attended in its entirety, "mostly as an observer." *Id.* Mr. Kulik opined that Mr. Malofiy "did a good and diligent job at the trial," noting Mr. Malofiy had a "difficult task trying the case while complying with the court's rulings on the in limine motions and during the trial." *Id.* Mr. Kulik further opined that although Mr. Malofiy was a zealous advocate for his client, he "stayed within the bounds of legal and ethical constraints under very challenging conditions." *Id.*

Following the reinstatement hearing, Mr. Malofiy provided us with a copy of the trial transcript in the *Led Zeppelin* case, which we have reviewed. At our request, he also submitted additional materials, including his CLE transcript, a list of clients from whose matters he withdrew as a result of his suspension, and his certificate of compliance. He has since provided us with copies of the orders reinstating him to the Pennsylvania and Third Circuit bars.

14

**DISCUSSION**

Our Rules of Disciplinary Enforcement place the burden on the petitioner to show reinstatement is warranted. An attorney seeking reinstatement to the bar of this Court following a suspension for more than three months must

> demonstrat[e] by clear and convincing evidence that [he] has the moral qualifications, competency and learning in the law required for admission to practice law before this court and that [his] resumption of the practice of law will not be detrimental to the integrity and standing of the bar or to the administration of justice, or subversive of the public interest.

Local R. Civ. P. 83.6, Rule VII(C). Based on the record before us, and mindful that "[d]ue to the vital societal interests at stake, 'any doubt' as to a petitioner's fitness to practice in a federal court should be 'resolved in favor of the public,'" *In re Mitchell*, 901 F.2d 1179, 1189 (3d Cir. 1990) (footnote and citation omitted), we are not persuaded that Mr. Malofiy has satisfied this burden.

As our Court has previously recognized, "[t]he reinstatement process necessarily involves an evaluation of the lawyer's rehabilitation during the period of suspension or disbarment. Although the lawyer's *present* fitness is the focus, such fitness should be determined within the context of the lawyer's past transgressions." *In re Zdrok*, 1995 WL 695096, at *3 (E.D. Pa. 1995). In Mr. Malofiy's case, these past transgressions include not only the misconduct with respect to Mr. Guice for which he was suspended, but also his discovery misconduct in the *Marino* case, which our Court viewed as an aggravating factor that supported imposition of a suspension rather than a lesser form of discipline.

As an initial matter, we do not believe Mr. Malofiy's professed acceptance of responsibility for the misconduct underlying his suspension is genuine. Following the original disciplinary hearing, our Court expressed serious concern about Mr. Malofiy's continued

15

insistence that he had done nothing wrong in his dealings with Mr. Guice, even after he produced a transcript of a phone conversation between himself and Mr. Guice from which we believe his ethical violations were evident.  *See* R. & R. 42-43, ECF No. 24.  At the reinstatement hearing, Mr. Malofiy stated he agreed with this Court's finding that he should have been more clear with Mr. Guice.  Yet, until his petition for certiorari was denied in January 2017, Mr. Malofiy continued to maintain the evidence before this Court was insufficient to impose discipline.  *See* Appellant's Br. 60-79, *In re Malofiy*, No. 15-2472 (3d Cir. Oct. 7, 2015) (arguing the evidence was insufficient to support a finding that Mr. Malofiy violated Rule 4.1(a), 4.3, 8.4(c), or 8.4(d)); Appellant's Pet. for Reargument En Banc 11-15, *In re Malofiy*, No. 15-2472 (3d Cir. July 13, 2016) (same); Pet'r's Br., *In re Malofiy*, No. 16-594, 2016 WL 6520050, at *3-4 (S. Ct. Oct. 24, 2016) (arguing the evidence presented in the disciplinary hearing was "insufficient to impose discipline").  We recognize, of course, that Mr. Malofiy is entitled to pursue his appellate rights. Given his longstanding adherence to the legal position that he had done nothing wrong, however, his statement a mere month after certiorari was denied that he now recognizes he should have been more clear with Mr. Guice is unconvincing.

As to Mr. Malofiy's discovery misconduct in the *Marino* action, in the original disciplinary proceeding, he readily admitted this conduct "was unprofessional, lacked civility, violated the discovery rules, [and] violated the spirit of discovery."  R. & R. 41 (quoting Disciplinary Hr'g Tr. 225, Feb. 24, 2015), ECF No. 24.  At the reinstatement hearing, Mr. Malofiy referenced this earlier testimony, noting he had previously admitted his deposition conduct was "not exemplary" and "not good."  Reinstatement Hr'g Tr. 66.  He also represented that the misconduct had not recurred since the *Marino* case and that he had taken steps to ensure he "stay[s] within the bounds" and does not let his "energy or . . . passion or . . . advocacy cross

that line." *Id.* at 66-67. Two of his character witnesses also testified that Mr. Malofiy had acknowledged his litigation conduct in the *Marino* case was "out of line" and did not comport with "expected standard[s]" and opined that the misconduct would not "repeat itself." *See id.* at 25, 41-42.

Yet, in August 2016, little more than a year after our Court's Order suspending Mr. Malofiy was issued, another federal district judge issued an attorney's fees ruling in which he faulted Mr. Malofiy for engaging in litigation misconduct in the *Led Zeppelin* case.[10] The existence of such an order alone is troubling and reflects adversely on Mr. Malofiy's current fitness to practice, as courts do not lightly make findings of attorney misconduct.

We are also troubled by Mr. Malofiy's response to questioning about the attorney's fees ruling at the reinstatement hearing, during which he demonstrated considerable reluctance to admit his conduct had been improper. While Mr. Malofiy acknowledged his co-counsel's statement to the press about the charitable purpose of the Trust was improper in light of the judge's in limine ruling, he did so only after his counsel alerted him to the significance of our question, stressing to Mr. Malofiy our need to know "if [Mr. Malofiy] know[s] where the line is."[11] Reinstatement Hr'g Tr. 68. Mr. Malofiy also eventually agreed that, if he could go back in

---

[10] The *Led Zeppelin* court's ruling attributes the misconduct generically to "Plaintiff's counsel," and, based on the testimony at the reinstatement hearing and our review of the trial transcript, we understand that only one of the two specific examples of litigation misconduct cited in the ruling—the unclean hands moment—was attributable to Mr. Malofiy. The court indicated, however, that the cited examples were "just two of many incidents comprising a litany of tasteless courtroom antics and litigation misconduct." *Led Zeppelin*, 2016 WL 6674985, at *4. Notably, Mr. Malofiy was lead counsel in the case and the dominant participant for the plaintiff at trial. *See* Pet'r's Ex. 1 (Kulik letter stating his presence at trial was "mostly as an observer").

[11] Mr. Malofiy later appeared to retreat from this testimony, remarking, in response to a further question as to whether he recognized that defying a court's order on a motion in limine is a serious matter, that the trial court's order excluding evidence of the Trust's charitable purpose "was not related to me or talking to the press afterwards." Reinstatement Hr'g Tr. 73-74.

17

time, he would not repeat his "unclean hands" theatrics, *see id.* at 71-72, which the trial judge described as "emblematic of counsel's cavalier attitude" toward courtroom decorum, *Led Zeppelin*, 2016 WL 6674985, at \*4. But this concession came only after Mr. Malofiy repeatedly denied that his conduct "cross[ed] the line"—and only after his counsel again intervened to stress the seriousness of our question as to whether the conduct was improper. *See* Reinstatement Hr'g Tr. 69, 71. In addressing his conduct as to the unclean hands issue, Mr. Malofiy noted the conduct occurred in the "heat of a trial" that was "hard-fought on both sides," concerned an issue that was "highly debated," and ultimately proved "effective in that the Judge did come back and non-suit the unclean hands." *See id.* at 69-72. We fail to see how these considerations justify a departure from proper decorum and ethics. To the contrary, these comments reinforce our concerns about Mr. Malofiy's ability to ensure his conduct stays within the bounds of what we expect from lawyers in this District.

Given the trial judge's suggestion that the examples of litigation misconduct cited in the attorney's fees ruling were "just two" of many such incidents, we reviewed the transcript of the trial in the *Led Zeppelin* case. Despite Mr. Malofiy's assurances that he did not believe we would find any other instances of litigation misconduct, our review confirms the trial court's observation that Mr. Malofiy's conduct was inappropriate in many respects. We note, for example, that while the trial court commented on violations of an in limine ruling by Mr. Malofiy's co-counsel, Mr. Malofiy himself repeatedly attempted to introduce evidence in violation of the court's in limine rulings and failed to heed the court's trial rulings.[12] He also

---

[12] The transcript reflects that Mr. Malofiy attempted to introduce evidence in violation of the trial court's in limine rulings excluding evidence of the charitable goals of the Trust, *see* Trial Tr. 751-54, June 17, 2016; revenue earned outside the limitations period, *see id.* at 544-45, June 16, 2016; the parties' respective levels of wealth, *see id.* at 337, June 15, 2016; and other claims accusing Led Zeppelin of copying, *see id.* at 1119-20, June 22, 2016. Although Mr. Malofiy

18

misrepresented facts at various points during trial.[13]  In addition, we are particularly troubled by Mr. Malofiy's improper reference to excluded evidence during his closing argument, wherein he stated there was evidence the plaintiff wanted the jury to hear that the court ruled was inadmissible and stressed that this evidence—a sound recording of the allegedly infringed song—"was something that we wanted to share with you" but that "the defense did not want to share."[14]  Trial Tr. 1214, June 22, 2016.  These and other aspects of Mr. Malofiy's performance at trial[15] give us further concern about the extent of Mr. Malofiy's rehabilitation.

---

may have believed the defense had opened the door to this evidence, absent a ruling from the court to that effect, he was obligated to follow the in limine order.  Mr. Malofiy's failure to heed the court's evidentiary rulings during trial prompted the court to admonish, at one point, "Maybe you should listen to the Court when it makes its ruling and understand—rather than just asking the same question over and over and over again—when it's been sustained, it's been sustained." *Id.* at 908, June 17, 2016.  The trial court commented on counsel's "revisiting of rulings" and "redundant questions" during an in chambers conference, citing the time spent on these matters as a factor that contributed to the inefficient presentation of the plaintiff's case.  *See id.* at 927, June 17, 2016.

[13] In one instance, Mr. Malofiy represented that an audio interview played at trial had been recorded in 1972, when in fact the interview was recorded in 1990.  *See* Trial Tr. 943-44, June 17, 2016; *id.* at 24-25, June 21, 2016.  Although Mr. Malofiy maintained the discrepancy was immaterial, *see id.* at 1229, June 22, 2016, it bears mention that Mr. Malofiy sought to use the interview to impeach a witness's testimony about events that occurred in the early 1970s.  In another instance, when the court was trying to determine, in response to a jury note, which recording of the song "Taurus" the jury wanted to hear, Mr. Malofiy misrepresented that the recording advocated by the defendants had not been played during trial, when in fact it had been played at Mr. Malofiy's request.  *See id.* at 1300-06, June 23, 2016; *id.* at 295-96, June 15, 2016.

[14] Not surprisingly, this statement drew an immediate response from the trial court, which instructed the jury that it could not consider whether there was something excluded from evidence that the plaintiff wanted to show.  *See* Trial Tr. 1214, June 22, 2016.

[15] Among the other issues that give us pause is Mr. Malofiy's attempt to introduce a "cropped" version of a photograph into evidence at trial.  The photograph in question depicted a group of musicians socializing—including Robert Plant, one of the members of Led Zeppelin, and Mark Andes, a former bandmate of Randy Wolfe, the author of the allegedly infringed song.  Mr. Malofiy sought to use the photograph to show Mr. Plant and Mr. Andes knew each other and to show their relationship over the years.  *See* Trial Tr. 298, June 15, 2016.  While the original photograph depicted a group of six people and showed Mr. Plant looking in the direction of Mr.

We recognize that several of Mr. Malofiy's character witnesses testified to his competence and diligence as a trial lawyer, his expressions of remorse for his misconduct, and their observations of his conduct in depositions and court proceedings. Although we credit these witnesses' testimony regarding Mr. Malofiy's abilities and work ethic, we give little weight to their opinions regarding Mr. Malofiy's acceptance of responsibility and professionalism, as these opinions are undercut by Mr. Malofiy's own testimony before us and recent litigation misconduct.

Under the Rules of Professional Conduct, a lawyer has an ethical obligation to represent his clients diligently, which includes the duty to "act with commitment and dedication to the interest of the client and with zeal in advocacy upon the client's behalf." Pa. R. Prof'l Conduct 1.3 & cmt. ¶ 1. In exercising this obligation, however, a lawyer must act "within the bounds of the law, [and] while maintaining a professional, courteous and civil attitude toward all persons involved in the legal system." Pa. R. Prof'l Conduct, Preamble ¶ 9; *see* Pa. R. Prof'l Conduct 1.3 cmt. ¶ 1 ("The lawyer's duty to act with reasonable diligence does not require the use of offensive tactics or preclude the treating of all persons involved in the legal process with

---

Andes and two other men standing alongside him, the version Mr. Malofiy sought to introduce was cropped so that the two men standing next to Mr. Andes were cut out, prompting the defense to object that by omitting two of the people in the picture, Mr. Malofiy had "created the false impression that . . . Mr. Plant was talking to Mr. Andes." *Id.* at 722, June 16, 2016; *see also id.* at 299, June 15, 2016. The defendants cited the cropped photograph as an instance of litigation misconduct in their motion for attorney's fees; in response, the plaintiff maintained the cropping occurred in the course of pulling a screenshot of the photograph off of a website and was done by the website's software, a contention the defendants disputed. Although the trial court did not resolve whether the cropping was intentional or inadvertent, the defendants' accusation is nevertheless troubling in light of similar allegations that have been made against Mr. Malofiy in this District. *See* Defs.' Mot. for Sanctions, *Webb v. Volvo Cars of N.A., LLC*, No. 13-2394 (E.D. Pa. Oct. 30, 2013), ECF No. 32 (seeking sanctions against Mr. Malofiy for deliberately altering the text of a document incorporated into his amended complaint to provide factual support for his claims).

20

courtesy and respect."); *see also Att'y Grievance Comm'n of Md. v. Culver*, 849 A.2d 423, 447 (Md. Ct. App. 2004) (noting that while "'the American lawyer's professional model is that of zeal[,]' . . . zeal is not boundless and some limits are acknowledged by all, although the limits are not always clear" (citation omitted)); *Commonwealth v. Garcia*, 661 A.2d 1388, 1397 (Pa. Super. Ct. 1995) ("[Z]ealous advocacy has its limits, as lawyers are required to act in a respectful, professional and courteous manner towards the court, opposing counsel and the witnesses."). Given Mr. Malofiy's history of overly aggressive litigation conduct, a key consideration in evaluating his present fitness to practice is, as his counsel put it, whether Mr. Malofiy "know[s] where the line is." Reinstatement Hr'g Tr. 68. Because Mr. Malofiy's testimony before us and recent litigation conduct give us reason to doubt that his conduct will stay within appropriate bounds, we are not persuaded his resumption of the practice of law in this District "will not be detrimental to the integrity of the bar or to the administration of justice, or subversive of the public interest." Accordingly, we recommend that Mr. Malofiy's Petition for Reinstatement be dismissed.

## RECOMMENDATION

We recommend that Francis Malofiy's Petition for Reinstatement be dismissed.

_____
John R. Padova, J.

_____
Juan R. Sánchez, J.

_____
Thomas N. O'Neill, Jr., S.J.

Copies mailed to:
F. Malofiy
S. Stretton
H. Ciampoli
5.22.2017

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

CHAMBERS OF
JOHN R. PADOVA
JUDGE

17613 UNITED STATES COURTHOUSE
601 MARKET STREET
PHILADELPHIA, PENNSYLVANIA 19106
(215) 597-1178

May 22, 2017

Samuel C. Stretton, Esquire
301 S. High Street
P.O. Box 3231
West Chester, PA 19381-3231

      In the Matter of: Francis Malofiy
      <u>Misc. No. 14-139</u>

Dear Mr. Stretton:

      Please find enclosed a copy of the Report and
Recommendation of the three-judge panel in the above matter. It is
being filed under seal in accordance with our Local Rule.

      If you have any objections, they must be filed under seal
within fourteen (14) days.  If you do not intend to file objections,
please advise.

                 Very truly yours,

                 John R. Padova

jrp/cl

cc:  Judge Thomas N. O'Neill, Jr.
     Judge Juan R. Sánchez
     Francis Malofiy