## EXHIBIT I

**Unredacted Reply**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re:<br><br>Rental Car Intermediate Holdings, LLC,[1]<br><br>Reorganized Debtor. | Chapter 11<br><br>Case No. 20-11247 (MFW)<br><br>(Jointly Administered)<br><br>**Ref. D.I. 192 & 215**<br><br>**Status Conf. Date: January 4, 2022, at 2:00 p.m. ET**<br>**Hearing Date: To Be Determined** |

## CLAIMANTS' REPLY IN SUPPORT OF
## MOTION PURSUANT TO BANKRUPTCY RULE 9014

On December 6, 2021, Movants, by and through their applicable undersigned counsel,[2] filed a motion [D.I. 192] (the "Motion")[3] for entry of an order pursuant to Rule 9014 of the Federal Rules of Bankruptcy Procedure, directing that Bankruptcy Rule 7023 shall apply to the False Police Report Claimants' putative class claims and, accordingly, overruling the Reorganized Debtors' 22nd Omnibus Objection as to class issues. If the Court declines to apply Bankruptcy Rule 7023 to the putative class claims, the Motion asked the Court to establish a new deadline by

---

[1]   The last four digits of the tax identification number of Reorganized Debtor Rental Car Intermediate Holdings, LLC ("RCIH") are 2459. The location of the Reorganized Debtors' service address is 8501 Williams Road, Estero, FL 33928. On September 28, 2021, the Court entered a final decree closing each of the chapter 11 cases for The Hertz Corporation and its affiliated reorganized debtors (collectively, the "Reorganized Debtors") other than RCIH's chapter 11 case. Commencing on September 28, 2021, all motions, notices, and other pleadings relating to any of the Reorganized Debtors shall be filed in RCIH's chapter 11 case, Case No. 20-11247 (MFW).

[2]   The Law Firm Francis Alexander represents all of the False Police Report Claimants. Susman Godfrey LLP jointly represents the Claimants listed in Exhibit A2 attached to the Motion as well as Janette Brown and Tyresha Caudle. Faegre Drinker Biddle & Reath LLP are Bankruptcy Counsel representing all False Police Report Claimants. Ciardi Ciardi & Astin are Bankruptcy Counsel representing all False Police Report Claimants. Farnan LLP is local Delaware counsel in the Delaware Superior Court action.

[3]   Except where otherwise indicated, all capitalized terms used in this Reply shall have the meanings ascribed to them in the Motion.

which putative class members can submit individual proofs of claim. The Motion also proposed that the Court establish a discovery schedule for all false police report-related claims as well as the class issues. RCIH (collectively with the Debtors, "Hertz") objected to the Motion on December 20, 2021. [*See* D.I. 215] (the "Objection"). In further support of the Motion and in response to the Objection, the Movants respectfully file this reply (the "Reply") and represent as follows:

## PRELIMINARY STATEMENT

1.      In their Motion, the Movants showed that the *MusicLand* factors easily support application of Bankruptcy Rule 7023 ("Rule 7023") to the putative class claims. Recognizing that those factors (as well as the continuing misconduct plus factor from *In re Chapparal*) militate in favor of application, Hertz attempts end runs around the law and the facts by arguing that the Movants did not comply with the Court's directive by failing to move for class certification. In making this argument, Hertz all but ignores the Court's *Scheduling Order Regarding Certain False Police Report Proofs of Claim* entered on December 6, 2021 [D.I. 187] (the "Second Scheduling Order"), which exclusively references Rule 7023 and does not mandate filing any class certification motion.

2.      As to Rule 7023, Hertz cannot refute the fact that the *MusicLand* factors compel its application. Instead, Hertz manufactures new standards, twisting the law to fit that end. Hertz argues that the absence of pre-petition certification is dispositive, when numerous courts have held otherwise and have also certified classes well after confirmation. Hertz then tries to transform the second *MusicLand* factor—whether class members received actual notice—into an argument about "known" versus "unknown" creditors and a referendum on its efforts at notice by publication. But that is not the test, and none of the class members received actual notice. Meanwhile, Hertz fails to articulate any legitimate adverse impact on administration of the

bankruptcy estate. And given the lengthy history of the issues and Hertz's long-held notice thereof, any claims of prejudice ring hollow.

3.      Hertz attempts to rebut allegations of systemic problems within its theft reporting and inventory control divisions by putting forth various numbers and percentages, as if arguing that a few thousand police reports compared to hundreds of thousands of rentals do not make it a systemic problem. Although one false police report is too many, the issue is a systemic one. Further, the number of known victims continues to grow as knowledge of this problem spreads. Given the systemic failures that affect every theft report, Hertz continues to file unverified and false reports while hiding these issues from authorities and renters.

4.      While determining whether the class can meet the requirements of Rule 23 is premature, there is strong evidence that it can meet all four prongs of Rule 23(a) and that the common issues predominate. And even if the Court finds that the class does not satisfy Rule 23 or that Rule 7023 should not apply, Hertz does not dispute that this Court should nonetheless provide a reasonable period of time within which the putative class members would be allowed to file individual proofs of claim.

5.      Finally, Hertz, as it has throughout the chapter 11 cases, opposes discovery. But Hertz cannot reasonably dispute that discovery will confirm whether proceeding as a class is, in fact, the most efficient course. Further, discovery should not be limited to class issues. From the underlying issues regarding Hertz's flawed theft-reporting practices, to known/unknown creditor issues, to Hertz's awareness of these issues and of the claimants, to the various funds Hertz has created to address these claims—these cases cry out for discovery. Hertz argues that discovery is just a means for the Claimants' counsel to locate more claimants. That is incorrect. The requested discovery goes straight to the heart of the issues presented in Class Motion, the Group 3 Motion,

the Group 4 Motion, and the "Group 1" and "Group 2" proofs of claim that all already agree are timely. In all events, more and more victims of Hertz's practices surface on an almost daily basis, and ultimately those individuals deserve to have their injuries and due process violations redressed as well.

## ARGUMENT

### I.    The Claimants Followed the Court's Second Scheduling Order

6.      Hertz is simply incorrect when it argues that the Movants did not obey this Court's Second Scheduling Order. The Second Scheduling Order specifically states that "[a]ny proponent(s) asserting class claims related to false theft reports for vehicles rented from one of the Debtors must file a motion (a "**Class Claim Motion**") *requesting the Court apply Bankruptcy Rule 7023 to such class claim by no later than December 6, 2021.*" Second Sched. Ord. at 1 (italics added, bold in original)]. The Second Scheduling Order's language does not address seeking ultimate class certification. And it is worth noting that Hertz's counsel drafted this language verbatim and proposed it to the undersigned counsel on November 12, 2021. Movants would have requested much more than a month to file a full-blown class certification motion and likewise would have requested discovery before filing such a motion. In other words, Hertz's position does not make sense from a practical perspective. As the Objection demonstrates, Rule 23 requires analysis of fact-intensive issues dealing with materials that are typically in a defendant's possession. It is profoundly sensible to address the preliminary *Musicland* question under Rule 9014(c) as step one, and then subsequently obtain further discovery and address the later class certification questions as step two.

7.      Accordingly, Movants focused the Motion on the Court-ordered question as framed by Hertz's lawyers, i.e., whether the Court should apply Rule 7023 to this proceeding. Mot. at 10-

16. Movants showed that the factors articulated in *In re Musicland Holding Corp.*, 362 B.R. 644, 651 (Bankr. S.D.N.Y. 2007) and *In re Chaparral Energy, Inc.*, 571 B.R. 642, 649–50 (Bankr. D. Del. 2017) militate in favor of applying Rule 7023.

8.      In the Objection, Hertz argues that the Motion "does not even try to explain why the Court should apply Rule 7023." Obj. at 2. In making this argument, Hertz conflates the two independent steps of class certification in bankruptcy proceedings and ignores the plain language of the Second Scheduling Order. According to Hertz, Movants should have filed a motion that seeks application of Rule 7023 as well as certification of a class. *Id*. at 12-14. But that is not what the Court ordered. The Second Scheduling Order is expressly limited to a motion "requesting the Court apply Bankruptcy Rule 7023 to [the] class claim." It says nothing about certifying a class, let alone requiring that the Motion include argument regarding the later issue of class certification. This makes further sense because, as discussed in the Motion, discovery informs the certification inquiry.

9.      Hertz opens by arguing that it is "undisputed that a motion for class certification in the bankruptcy context must include ***both*** an argument as to why the court should exercise its discretion (the so-called "*MusicLand* factors") as well as a description of how the purported class satisfies the requirements of Rule 23." Obj. at 12. This argument fails for a few reasons. First, Hertz cites no support for its position that the Motion should have necessarily showed how the class satisfies the requirements of Rule 23. Rather, it relies on authority merely noting that whether a class may go forward in bankruptcy proceedings is a two-part inquiry. *Id*. However, the case law does not mandate that a party prove it can meet the Rule 23 requirements as part of showing that application of Rule 7023 is appropriate under *MusicLand*.

10.    In *Chaparral Energy*, 571 B.R. at 650, Hertz's lead case, the court only found that "the *MusicLand* factors weigh in favor of applying Rule 7023 in this case." The court did not address, let alone reach, the issue of whether any putative class could satisfy the requirements of Rule 23.

11.    Indeed, in affirming the bankruptcy court's ruling, the district court noted that "Civil Rule 23 factors ***do not become an issue until the bankruptcy court determines that Rule 7023 applies*** by granting a Rule 9014 motion." *In re Chaparral Energy, Inc.*, No. C.A. No. 17-701, 2019 WL 4643849, *2 n.5 (D. Del. Sept. 24, 2019) (emphasis added, quoting *Gentry v. Siegel*, 668 F.3d 83, 93 (4th Cir. 2012)). Similarly, in *In re MF Global*, 512 B.R. 757 (Bankr. S.D.N.Y. 2014), the court determined that Rule 7023 should apply without having benefit of a class certification motion. In fact, the court ordered the claimants to file a class certification motion "as soon as practicable." *Id*. at 768; *see also In re Sequoia Senior Sols., Inc.*, No. 16-11036, 2017 WL 2533345, at *2 (Bankr. N.D. Cal. June 9, 2017) (granting Rule 7023 motion but "at this time makes no ruling regarding certification of the class"). In short, Hertz's own authority belies its argument. Consistent with this guidance and the Court's Second Scheduling Order, the Movants filed exactly what was required of them—a motion to determine that Rule 7023 applies.

12.    Second, even if Hertz were correct that the two parts of the inquiry are addressed simultaneously, the Court's Second Scheduling Order is specifically limited to the first part of the inquiry, i.e., whether this Court should apply Rule 7023 to the claims. Having proposed the language of the Scheduling Order and having had every opportunity to edit and amend the language through several exchanges of redlines, Hertz did not change the text of the Order at issue to require that a class certification motion be filed by December 6th. Indeed, it is deeply inequitable for Hertz to propose language in the Second Order clearly describing one legal test, but then *after*

the requisite filing based on that Order has been filed with the Court, argue that Movants failed to advance arguments based on a different legal test. The Court should not countenance this bait-and-switch.

13.    Third, Hertz's argument is primarily directed towards the class certification prong, not on the inquiry in the Order regarding whether this Court should apply Rule 7023. Because the Court did not require Movants to file a class certification motion or otherwise prove that they can satisfy Rule 23 at this point, the Movants have not yet sought class certification. But Hertz's cited authority is nearly exclusively (with the exception of *Chaparral* and *MF Global* discussed above) based on a court's review of a class certification motion. Indeed, at page 13 of its Objection, Hertz argues that "a movant seeking to certify a class must demonstrate that the class meets the basic requirements of Federal Rule of Civil Procedure 23." While that is a correct statement of law, it is a statement of law that simply does not yet apply at this time.

14.    Hertz adds that deferring the class certification question is contrary to the Court's direction at the hearing. Obj. at 14. But Hertz's citations to the transcript for this alleged "direction" are inapposite—page 57 does not discuss the class certification motion and page 63 only states that the "motions[,]" without any additional color, should be filed by December 6th.[4] Neither citation states that Movants must file a class certification motion by any deadline. And to the extent there is any ambiguity in the transcript—there is not—it was resolved by the Second Scheduling Order, which Hertz's lawyers drafted to cover only requests that "the Court apply Bankruptcy Rule 7023 to such class claim." The Second Scheduling Order plainly required exactly what Movants submitted. *See Gentry v. Siegel*, 668 F.3d 83, 93 (4th Cir. 2012) ("Civil Rule 23 factors do not

---

[4]    The transcript is filed as Exhibit B to the Claimants' Rule 9006 Reply (defined below) [D.I. 228].

become an issue until the bankruptcy court determines that Rule 7023 applies by granting a Rule 9014 motion.").

II.   **The *MusicLand* Factors Counsel in Favor of Applying Rule 7023**

15.     The Court should exercise its discretion to apply Rule 7023 in this case. *See* Mot. at 10–16. Hertz argues that there is a preference for adherence to the claims allowance process and that the default is not to allow class claims. Obj. at 15. Hertz cites a transcript ruling in *In re Fresh & Easy, LLC* for the notion that "class claims should be sparingly used in bankruptcy," and goes so far as to contend that claimants "don't have to hire a lawyer and can participate in the distribution for the price of the stamp." *Id*. (quoting *MusicLand*, 362 B.R. at 650 n. 8).  That is clearly not the case here. Hertz's history of denial, delay, and denigration of the False Police Report Claimants at every turn in these cases belies any suggestion that any such claimants could get a fair shake absent representation by counsel, and Hertz's failure to provide direct notice to potential claimants despite the well-documented, systemic deficiencies in Hertz's theft-reporting practices underscores the potential importance and utility of class certification, if it is indeed borne out by the discovery. In short, any alleged "preference" for avoiding class certification does not apply in this complex and contentious dispute.

A.     *MusicLand* Factor One

16.     There was no class certified pre-petition. That is not dispositive at all. *See* Mot. at 10–11. Hertz cites the Court's statement that it may take this circumstance into consideration in determining whether to allow the class claim and suggests that as a class claim now would interfere with the administration of the estate. Obj. at 16. Hertz cites *In re Woodward and Lathrop Holdings*, 205 B.R. 365, 370 (Bankr. S.D.N.Y 1997) for support, but in that case the creditor raised the issue of a class claim for the first time "only indirectly and defensively in response to the debtor's post-

confirmation objection to his claim." Hertz has known about the existence of a potential class claim since the General Bar Date.

17.    Hertz complains that Movants "offer no excuse for their delay in seeking to certify the class." Yet as this Court is well aware, False Police Report Claimants have tried to place these issues before the Court repeatedly, and Hertz has given assurances that they would be dealt with after confirmation. Hertz objected to any procedure or proceeding that would even begin to adjudicate allegations related to Hertz's flawed theft reporting practices. Hertz argues that the absence of a pending certification motion compels dismissing the claim. But courts in the Third Circuit "typically conclude that motions to strike class action allegations filed before plaintiffs move for class certification are premature." *Bombin v. Sw. Airlines Co.*, 529 F. Supp. 3d 411, 422-423 (E.D. Pa. 2021) (quoting *Goode v. LexisNexis Risk & Info. Analytics Grp., Inc.*, 284 F.R.D. 238, 244 (E.D. Pa. 2012)). Striking class allegations before class certification is appropriate "only where no amount of additional class discovery will alter the conclusion that the class is not maintainable." *P.V. ex rel. Valentin v. Sch. Dist. of Phila.*, No. 2:11-cv-04027, 2011 WL 5127850, at *3–4 (E.D. Pa. Oct. 31, 2011) (internal quotations omitted). That is far from the case here, as discovery is directed at the very systemic issues at the heart of this case, as discussed at length in the contemporaneously filed *Claimants' Reply in Support of Motion to Deem Claims Timely or for Extension of General Bar Date under Rules 3003(c) and 9006* (hereinafter, the "Claimants' Rule 9006 Reply").

18.    Hertz cites *In re Tarragon Corp.*, No. 09-10555 DHS, 2010 WL 3842409, *4-5 (Bankr. D.N.J. Sept. 24, 2010), for a different rule in the bankruptcy context, Obj. at 16, but in that case, the plaintiffs, named or unnamed, "received actual notice of the claim bar date" and "had an opportunity to investigate and pursue potential individual claims and did not do so." *Id*. In this

case, it is undisputed that none of the putative class members received actual notice, and it is incorrect to say that every putative class member had an opportunity to investigate.

19.     Movants cited several cases permitting application of Rule 7023 despite the fact that a class had not been certified pre-petition. Hertz attempts to distinguish these by creating a new legal standard out of whole cloth. Hertz contends that Movants' cases are distinguishable because in each case "there was either (a) an underlying class action pending prepetition or (b) the class claim was premised on the same factors underpinning the bankruptcy filing or the bankruptcy itself." Obj. at 16. Hertz's attempt to create law fails. First, whether or not there is an underlying class action pending is not a factor under *MusicLand* and would expand the permissible factual predicate for exercising the Court's discretion—the number of class actions filed undoubtedly exceeds the number of classes certified.

20.     Second, there is no support for the notion that a class must be premised on the facts underlying the bankruptcy. Such a rule would unduly and needlessly narrow the types of classes that could be brought in the context of bankruptcy proceedings and would render the entire Rule 7023 and Rule 23 analysis superfluous. It also makes application of Rule 7023 subject to events having nothing to do with the facts of the case. Hertz's proposed application would render Rule 7023 moot in the vast run of bankruptcy cases, since very few bankruptcies are solely due to a mass tort. *See, e.g., In re Comput. Learning Ctrs., Inc*., 344 B.R. 79 (Bankr. E.D. Va. 2006) (applying Rule 7023 to a class alleging breach of contract and consumer fraud); *In re Craft*, 321 B.R. 189 (Bankr. N.D. Tex. 2005) (applying Rule 7023 to case involving power sales); *In re Biery*, No. 10-23338, 2014 WL 1431947 (Bankr. E.D. Ky. Apr. 14, 2014) (applying Rule 7023 to case involving discharge orders).

21.     Hertz also pushes back on Movants' argument that Debtors' notice of the potential

class claim is a plus factor that supports application of Rule 7023. In particular, Hertz complains

that the class claims were filed on behalf of an unknown class and "contain no information about

the number of class members, the class causes of action asserted or the amount of the class claim."

But as explained in the Response to Debtors' 22nd Omnibus Objections [D.I. 51], Hertz no doubt

understood the nature and factual bases for all of the Claimants' proofs of claim as well as the

class proofs of claim.

22.     Further, courts have certified a class proof of claim post-confirmation where, as

here, the class proof of claim was filed before the applicable bar date. *In re F-Squared Inv. Mgmt.,*

*LLC*, 546 B.R. at 547 & n.54 (collecting examples); *see also Gentry*, 668 F.3d at 91 (4th Cir. 2012)

("[I]nsofar as the bankruptcy court ruled that claimants could not file class proofs of claim without

first obtaining an order under Rule 9014, we reverse the ruling."). Most significantly, this Court

permitted that approach in *In re Kaiser Group International, Inc*., in which it granted a motion for

class certification filed 13 months after filing of the class proof of claim, 9 months after plan

confirmation, and 2.5 months after objection to the class proof of claim, 278 B.R. 58, 61-62 (Bankr.

D. Del. 2002) (Walrath, J.).

**B.     *MusicLand* Factor Two**

23.     The second factor—whether the class members received actual notice of the bar

date—weighs in favor of applying Rule 7023. Mot. at 11-12. Hertz does not contend that the

putative class members received actual notice (or dispute that they did not). Rather, Hertz tries to

commandeer and reframe the factor to make it one about "known" and "unknown claims." The

parties dispute whether the claimants are "known" or "unknown" as discussed in the Claimants'

11

Rule 9006 Reply. But the question is whether the class members received actual notice. Obj. at 19-20. They did not.

24.     Notably, Hertz does not address *In re Sacred Heart Hosp. of Norristown*, 177 B.R. 16, 22 (Bankr. E.D. Pa. 1995), cited by *MusicLand*, in which the court stated that the class device may be the "only form of notice" when "the unnamed class members are largely a group which the debtor has refused to notify individually … or if they are in large part what this court referred to as 'unknown creditors' in *In re West Coast Video Enterprises, Inc.,* 174 B.R. 906, 909–10 (Bankr. E. D. Pa. 1994)." The *West Coast Video* decision defined "unknown creditors" similarly to Hertz, i.e., those whose identities or claims are not "reasonably ascertainable" and "those who have merely conceivable, conjectural, or speculative claims." *Id*.; *In re Verity Health Sys. of Cal., Inc.*, No. 2:18-BK-20151-ER, 2019 WL 2461688, at *8 (Bankr. C.D. Cal. June 11, 2019) ("Because not all members of the putative class received actual notice of the claims bar date, the second factor weighs in favor of applying Civil Rule 23 to the claims administration process."). Here, too, the fact that putative class members received, at best, only the sort of publication notice given to unknown creditors—and defective publication notice, at that—makes this factor weigh in favor of applying Rule 7023.

###    C.    *MusicLand* Factor Three

25.     Permitting application of Rule 7023 would not interfere with the Debtors' ability to make distributions under the Plan in this case. The Debtors have known of the existence of the false-police-report issues since before the petition, and the class proofs of claim were filed by the General Bar Date. Even though the class proofs of claims were timely filed, the Debtors ignored them, and instead crafted and adopted the Plan, which was confirmed on June 10, 2021. As

explained in the Motion, the existence of the class claims at the time of Plan confirmation moots Hertz's current arguments. *See* Mot. at 12-13 (citing cases).

26. Hertz argues that permitting application of Rule 7023 would adversely affect the administration of the estate by increasing the size of the unsecured creditor pool. Obj. at 23. Hertz argues (without any irony) that such a process would be "unfair" and "possibly violate the due process rights of others." *Id*. This argument is wrong on the facts and the law. And those who have suffered here are exactly those who have been deprived of liberty and due process by Hertz. Moreover, Hertz recently announced a $2 billion stock buy-back program, presumably knowing full well about the scope of these claims, given its recent revelation of detailed information about the number of possible class members as part of its response, *see* Obj. at 30.

27. In *In re Think Finance, LLC*, No. 17-33964 (HDH), 2018 WL 9801454, at *6 (N.D. Tex. Aug. 30, 2018), the court rejected an argument similar to the one Hertz makes here, finding that while granting the Rule 7023 motion may dilute distributions to unsecured claimants, "they are hardly entitled to the windfall that would result from denying class representation to over 99% of the consumer borrowers."[5]

28. Hertz argues that certifying a class of unknown size and scope "risks disrupting the process to the detriment of all stakeholders" Obj. at 23. But again, Hertz appears to have some idea of the size of the putative class given the statistics cited in its response, *id*. at 30. And in *In re MF Global*, the court disagreed with the argument class certification would adversely affect the administration of the estate by "(1) wasting estate assets through adding layers of procedural and factual complexity and (2) threatening to halt or delay the Trustee's substantial progress in

---

[5]    The *Think Finance* Court also found it relevant that neither the Official Committee of Unsecured Creditors nor any individual creditor opposed application of Rule 7023. 2018 WL 9801454, at *6. In this case, only Hertz opposes application of Rule 7023.

resolving general estate claims." 512 B.R. at 765. The court there found that the claimants had put the trustee on notice of their claims through at timely filed claim and that the only remaining issue was the determination of damages. *Id*. The court also noted that even if it were to deny certification, it would still extend the bar date so that the putative class members could file individual claims, "which would result in greater delay in administration of the case." *Id*. Indeed, "disrupting the process" cannot be the appropriate standard because adding more creditors always increases complexity—the advantage of the class approach is that multiple creditors can be treated simultaneously.[6]

29.     Hertz disagrees that there is no adverse effect on the administration of the estate because it makes distributions under a full-pay unimpaired Plan. It argues that Debtors were able to offer a full-pay Plan "only because they could avail themselves of the claims process to estimate the unsecured claims pool and determine the amount they could afford to pay unsecured creditors." Obj. at 24. This argument makes little sense unless the Court believes that the Debtors thought so little of the putative class members' claims, as well as those of the "Group 1" and "Group 2" False Police Report Claimants, that the Debtors did not even think to include those claims in the unsecured claims pool in its Plan feasibility analysis. These claims did not arise because of the pandemic or because of shift in the market. These claims trace their history to (at least) 2016 and 2017 when juries in Texas and Philadelphia found Hertz liable of wrongdoing. Indeed, there is evidence that Hertz maintain an internal spreadsheet detailing claims against the company for false

---

[6]     Hertz cites *In re Penn. Truck Lines, Inc*., 189 B.R. 331, 336 (Bankr. E.D. Pa. 1995), but in that case the "detriment" to the stakeholders was tied to depleting profits such that the debtor might be precluded from remaining in operation. Hertz makes no similar claim here. And it cannot, given that it refused to engage with any of the False Police Report Claimants during its bankruptcy. If such claims, class or otherwise, threatened Hertz as a going concern, it should have addressed these claims before emerging from bankruptcy. (And it certainly should not now be divesting itself of $2 billion of cash for stock buy-backs.)

arrest/theft reports, [Case No. 20-11218, D.I. 1071, Ex. A, Declaration of Frederick Jekel at 4]. There is likewise evidence that the company had established "a special fund to compensate the victims," [Case No. 2011218, D.I. 1081, Ex. A., Declaration of Earl Holland]. This is just the tip of the iceberg. Given this long and fulsome history, whether Hertz has adequate reserves in addition to the over $500 million already reserved and in addition to the $2 billion stock buyback recently announced should not redound against the proposed class.

30.     Further, in the context of responding to the argument that application of Rule 7023 serves as a deterrent under *In re Chaparral*, 571 B.R. at 650, Hertz asserts that the claims of systemic failures are false. Obj. at 29. Hertz does not rely on expert testimony, depositions of its employees, interviews, notes, recordings, or any documents. It does not directly dispute many offers of proof made by the Claimants. Instead, Hertz attacks a single type of proof—prepetition cases against it—by asserting unsupported numbers, manipulated to appear smaller than they are. But this backfires. Rather than disprove a systemic issue, it confirms that one exists. As detailed in the Claimants' Rule 9006 Reply, Hertz massages both the numerator and denominator in calculating "ratio" of theft reports to rentals. Yet that ratio still significantly exceeds the comparable ratios in the relevant precedents. *See* Group 3 Reply ¶¶27–33.

### III.    The Proposed Class Can Satisfy Rule 23

31.     Movants were not required under the Second Scheduling Order to show that the putative class could meet the requirements of Rule 23. Even with the information in the Movants' possession, however, Movants can satisfy Rule 23. At the very least, there is a more-than-good-faith basis to consider a class as one approach to efficiently address false-theft-report claims.

32.     ***First***, as to numerosity, according to its own numbers, Hertz filed about 3,365 theft reports per year "in connection with rental vehicles that were kept past the contracted return date"

between 2016 and the petition date. Obj. at 29-30. This already results in over 15,000 theft reports, which means over 15,000 potential class members. Moreover, there are many examples already identified of people being arrested because Hertz rented them a vehicle that Hertz had previously reported stolen. These victims, like all victims of the theft-reporting practices, will only make the class more numerous.

33.     ***Second***, there are "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). As detailed in Claimants' Rule 9006 Motion and Reply, at the root of every class member's claim lies Hertz's systemic failures and corporate deficiencies that have resulted in false theft reports and wrongful imprisonment of the class members. *See* Group 3 Motion ¶¶6–13, 17–34, 62–68; Group 3 Reply ¶¶15–25. Hertz's deficient practices routinely result in accusing customers of theft when there is no probable cause, and those systemic failures affect ***every*** theft report Hertz files. There are thus clearly common factual and legal questions that predominate the claims.

34.     ***Third***, with respect to the requirements that "the claims or defenses of the representative parties are typical of the claims or defenses of the class" and the class representative "fairly and adequately protect the interests of the class[,]" Fed. R. Civ. P 23(a)(3)-(4), those factors are easily met as well. As described in Rule 9006 Motion and Reply, these issues are typical of the class members' claims because Hertz's indifference to the facts and due process infects every theft report it files. Any of the class members who were falsely accused of theft by Hertz have claims typical of the entire class and will adequately represent and protect the interests of the class. Hertz feebly states that "no plaintiff could adequately represent all of the myriad experiences and legal issues identified above." Obj. at 29. As demonstrated above and in the Claimants' Rule 9006 Reply, that is incorrect given the common factual and legal questions.

## IV.    Hertz Does Not Dispute that All Class Members Should Be Permitted to File Individual Proofs of Claim if the Class Action Is Denied

35.    The Motion argues that "should this Court find that the *MusicLand* factors do not favor application of Rule 7023, this Court should nonetheless provide a reasonable period of time within which the putative class members are allowed to file individual proofs of claim." Mot. at 16–17 (citing *Gentry*, 668 F.3d at 91). The Fourth Circuit made that point very clear in *Gentry v. Siegel*: "Of course, if the bankruptcy court denies the motion [to apply Rule 7023], it should then establish a reasonable time within which the individual putative class members are allowed to file individual proofs of claim." 668 F.3d at 91. While Hertz argues against the application of Rule 7023 under *MusicLand*, it does not challenge or otherwise dispute that under *Gentry* and related case law, a new deadline should be established by which the putative class members should be permitted to file proofs of claim absent the availability of a class action.[7]

36.    The path required in *Gentry* is a widely recognized and practiced approach to the relationship between class proofs of claim and bankruptcy proceedings. *See In re TWL Corp.*, 712 F.3d 886, 899 (5th Cir. 2013) (noting that putative class members' rights would be protected by application of the *Gentry* reasoning if proceeding as a class is denied; citing *In re Am. Rsrv. Corp.*, 840 F.2d 487, 493 (7th Cir. 1988) for the same point); *In re Wildwood Vills., LLC*, No. 3:20-bk-2569-RCT, 2021 WL 1784408, at *8 (Bankr. M.D. Fla. May 4, 2021) (refusing to apply Rule 7023 but ordering a new deadline by every putative class member to file a proof of claim); *In re PG&E*

---

[7]    Hertz references this section of the Motion solely to cast aspersions on Movant's request for discovery and disparage the motivation behind those requests. Hertz's argument is baseless speculation, but even worse, Hertz's desire to keep hidden the identity of potential false theft report claimants speaks volumes. Individuals against whom Hertz has filed a false theft report have the same rights as those already before the Court. If additional false police report claimants can be identified during discovery, those individuals should be given notice and be permitted to file claims.

*Corp.*, No. 19-30088-DM, 2020 WL 5626038, at *2 (Bankr. N.D. Cal. Feb. 24, 2020) ("If the representative files a timely adversary proceeding or class proof of claim, and the Court denies a motion to certify the class, it should set a reasonable bar date to allow the members of the putative class to file individual claims." (quotation marks omitted)); *Morgan v. Affiliated Foods Sw., Inc.*, No. 4:15CV00296, 2016 WL 1676898, at *7 (E.D. Ark. Apr. 26, 2016) (same); *In re MF Glob.*, 512 B.R. at 765 ("And even if the Court were to deny class certification, the Court would extend the bar date to allow each of the MFGI Class Claimants to file individual claims, which would result in a greater delay in administration of the case."); *In re Connaught Grp., Ltd.*, 491 B.R. 88, 99 (Bankr. S.D.N.Y 2013) ("If the representative files a timely adversary proceeding or class proof of claim, and the Court denies a motion to certify the class, it should set a reasonable bar date to allow the members of the putative class to file individual claims. … Thus, even if I deny the class certification motion, I would fix a new bar date for individual … claims").

37.     To be clear, application of Rule 7023 is appropriate for the reasons explained in the Motion and in this Reply. But in the event this Court disagrees, Movants asked that the Court set a reasonable deadline by which the putative class members may file an individual proof of claim. Hertz did not oppose this request in its Objection, nor did any other party to the bankruptcy proceedings. And this approach offers substantial promise. It is clear from the data provided in Hertz's Objection to the Group 3 Motion that that there are far more than ten thousand putative class members that received no actual notice of the bankruptcy proceedings. And it is further clear from the Group 3 Motion and Group 4 Motion, as well as claims from other False Police Report Claimants, that putative class members almost certainly did not see the notice published in several newspapers (setting aside the defects in that notice), but that a substantial number of them may wish to pursue their claims individually outside of the class proof of claim.

38.     Establishing a reasonable deadline for putative class members to file claims will allow for targeted notice to be provided to putative class members—notice that can be readily designed to avoid the problems identified in the Group 3 Motion and Group 4 Motion and cure future due-process concerns. It would moot the Group 3 Motion and Group 4 Motion—brought by putative class members who could file (or have filed) such claims before the new deadline—without the need for substantial litigation. And it would give all putative class member a full and fair opportunity to press their claims now that the class proof of claim advancing their claims would have been denied.

## V.     <u>The Next Step Is Discovery</u>

39.     The Motion set out the case for commencing all discovery as to Groups 1, 2, 3, and 4 as well as the class-related issues. Mot. at 17-21. The Motion also proposes a discovery schedule—one that Hertz did not counter—that contemplates a response to the existing written discovery[8] by January 25, 2022 with depositions of Hertz employees to follow.

40.     Hertz argues that "it is not clear how the requested discovery relates to the class question." Obj. at 31. To be clear, however, discovery should <u>not</u> be limited to class issues. That would be inefficient. Sufficiently broad discovery must be next because it will provide the best guidance for the parties and the Court on how best to proceed. Discovery may reveal that a class action is the most efficient mechanism. Alternatively, it may show the opposite and that proceeding

---

[8]     Claimants have filed three different sets of discovery (requests for production, interrogatories, and/or requests for admission), including as recently as on December 20, 2021. *See* Exhibits 1 (July 2020 Discovery), 2 (September 2021 Discovery), and 3 (December 2021 Discovery). Hertz argues that the Court "denied a vast majority of the July 2020 discovery requests more than a year ago." Obj. at 31. But that was in August 2020, and the Court determined that merits discovery was premature (and in any event, the Court at that time was dealing solely with discovery relevant to motion to lift the stay and the preliminary injunction motion). Hr'g Tr. Aug. 19, 2020 at 94:10-19. Merits discovery is now relevant.

as-is is more efficient. It will also undoubtedly help resolve the pending Group 3 and Group 4 motions, as well as advance the timely claims brought by Groups 1 and 2. Hertz claims that the discovery is unnecessary. Obj. at 31. But Hertz itself opened the door to much of this discovery by arguing in its Objection that "the facts demonstrate that Claimants' claims of systemic failures are false." *Id*. at 29. And given the significant numbers of theft reports highlighted in Hertz's own Objection and the fact that additional victims are coming forward nearly daily, it is critical that discovery proceed quickly and that an evidentiary hearing is held soon, as set forth in the schedule proposed in the Motion.[9]

## **RESERVATION OF RIGHTS**

41.     Movants reserve the right to amend, supplement, or otherwise modify this Motion and to file and present evidence further supporting it upon discovery and/or responsive to further argument from the Reorganized Debtors.

*[Remainder of page intentionally left blank.]*

---

[9] Hertz contends that the motivation behind the discovery is to identify potential claimants. Not so. Claimants have come forward on their own, as reflected in the Group 4 Rule 9006 Motion, D.I. 193.

## CONCLUSION

WHEREFORE Movants respectfully request that the Court overrule the Objection, enter

the Proposed Order attached to the Motion, and grant any such other and further relief as the Court

deems just and proper.

Dated: December 29, 2021

**FRANCIS ALEXANDER, LLC**
Francis Malofiy
280 N. Providence Road, Suite 1
Media, PA 19063
Telephone: (215) 500-1000
Facsimile: (215) 500-1005
Email: francis@francisalexander.com

**SUSMAN GODFREY LLP**
Justin A. Nelson (*pro hac vice*)
John P. Lahad (*pro hac vice*)
Taylor C. Hoogendoorn (*pro hac vice*)
1000 Louisiana, Suite 5100
Houston, TX 77002-5096
Telephone: (713) 651-9366
Facsimile: (713)654-6666
Emails: jnelson@susmangodfrey.com
　　　　jlahad@susmangodfrey.com
　　　　thoogendoorn@susmangodfrey.com

**FARNAN LLP**
Brian E. Farnan
919 N Market Street
Wilmington, DE 19801
Telephone: (302) 777-0300
Facsimile: (302) 777-0301
Email: bfarnan@farnanlaw.com

**FAEGRE DRINKER
BIDDLE & REATH LLP**

*/s/ Ian J. Bambrick*
Patrick A. Jackson (Bar No. 4976)
Ian J. Bambrick (Bar No. 5455)
Jaclyn C. Marasco (Bar No. 6477)
222 Delaware Avenue, Suite 1410
Wilmington, DE 19801
Telephone: (302) 467-4200
Facsimile: (302) 467-4201
Emails: patrick.jackson@faegredrinker.com
　　　　ian.bambrick@faegredrinker.com
　　　　jaclyn.marasco@faegredrinker.com

**CIARDI CIARDI & ASTIN**
Albert A. Ciardi, III, Esquire
Walter W. Gouldsbury III, Esquire
1905 Spruce Street
Philadelphia, PA 19103
Telephone: (215) 557-3550
Facsimile: (215) 557-3551
Emails: aciardi@ciardilaw.com
　　　　wgouldsbury@ciardilaw.com

*Co-Counsel for the False Police Report Claimants*

## **Exhibit 1**

**July 2020 Discovery**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | : Chapter 11 |
| | : |
| THE HERTZ CORPORATION, *et al.*,[1] | : Case No. 20-11218 (MFW) |
| | : |
| | : (Jointly Administered) |
| Debtors. | : |
| | : |
| | : |

**FALSE POLICE REPORT PLAINTIFFS' REQUEST FOR PRODUCTON OF
DOCUMENTS DIRECTED TO DEBTORS**

Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure, made applicable by Rules 7026, 7034, and 9014 of the Federal Rules of Bankruptcy Procedure, the False Police Report Plaintiffs[2] hereby requests that the above-captioned Debtors (collectively, the "Debtors") respond and produce the following documents at the offices of Ciardi Ciardi & Astin, Attn: Daniel K. Astin, Esquire, 1204 N. King Street, Wilmington, DE 19801 on or before August 4, 2020.

---

[1] The last four digits of The Hertz Corporation's tax identification number are 8568. The location of the debtors' service address is 8501 Williams Road, Estero, FL 33928. Due to the large number of debtors in these chapter 11 cases, for which joint administration for procedural purposes has been requested, a complete list of the debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the debtors' proposed claims and noticing agent at https://restructuring.primeclerk.com/hertz.

[2] The "False Police Report Plaintiffs" are: (i) Hannah Ayoub and the other plaintiffs in the civil action titled *Hannah Ayoub*, et al. *v. Hertz Global Holdings, Inc., et al.*, No. N20C-05-189 VLM, currently pending in the Superior Court, State of Delaware; (ii) Roula Vangelis (on behalf of her minor children) in the civil action titled *Vangelis*, et al. *v. Hertz Global Holdings, Inc.*, et al., No. 200501362, currently pending in the Philadelphia Court of Common Pleas, Commonwealth of Pennsylvania; (iii) Brent Williams in the civil action titled *Williams v. The Hertz Corporation*, No. 19-CA-012657 (Tampa), currently pending in the Circuit Court of the 13th Judicial Circuit, Hillsborough County, State of Florida; (iv) Nancy Cullen-Smits and Ryan Smits, in the civil actions titled *Nancy Cullen-Smits v. The Hertz Corporation*, (CL19000548-00) and *Ryan Smits v. The Hertz Corporation* (CL19000547-00), currently pending in Fauquier County Circuit Court, Commonwealth of Virginia; and (v) Henry B. Essick III in the civil action titled *Essick v. The Hertz Corporation,* et al., No. 2019-cv-03424, currently pending in the Montgomery County Court of Common Pleas, State of Ohio.

1

## INSTRUCTIONS AND DEFINITIONS

1.      These Requests are continuing in character, so as to require the answering Debtors to file supplemental responses if Debtors obtain or discover further, contradictory or different documents prior to trial.  Such supplemental responses, if any, shall be filed from time to time promptly upon the discovery by you of such supplemental documents.  Each Request is to be responded to separately and as completely as possible.  The fact that an investigation is continuing and discovery is not complete shall not be used as a reason for failure to respond to any such Request as fully as possible.  The omission of any document or other item of information from the response shall be deemed a representation that such document or item is not known to Debtors, their counsel, or other representatives or agents of Debtors.

2.      As used herein, the following terms shall have the following meanings:

a.      As used in these Requests, "document," "documents," "documentation," or "writing" shall mean and include the original, regardless of the location of the original, or any recorded, written, printed, typed, or other graphic material of every kind, variety, type or character, including by way of example (but not limited to) the following:  books, records, contracts, agreements, insurance policies, invoices, purchase orders, statements of account, credit and debit memoranda, orders, bills, installment contracts, rental agreements, certificates of title, financing statements, instruments, expense accounts, cancelled checks, bank statements, bank books, receipt and disbursement journals, tax returns, financial statements, check stubs, drafts, certificates, tabulations, questionnaires, tables, sketches, tax reports, working papers, computer data (including information or programs stored in a computer, whether or not ever printed out or displayed), resumes, medical records, address books, appointment books or telephone logs, notes, speeches, schedules, worksheets, pictures, income statements, profit and loss statements, deposit slips, credit card receipts,

2

records and notations of telephone or personal conversations, conferences, inter-office communications, letters, telexes, partnership agreements, articles of incorporation, catalogue price lists, sound, tape and video recordings, memoranda (including written memoranda of telephone activities), minutes, manuals, diaries, calendars or desk pads, calendar or diary entries, scrapbooks, notebooks, correspondence, bulletins, circulars, policies, forms, pamphlets, notices, statements, journals, postcards, letters, telegrams, reports, magazines, booklets, brochures, instructions, interoffice communications, Photostats, microfilm, microfiche, maps, deposition transcripts, pleadings, orders, releases, appraisals, estimates, valuations, opinions, studies, analyses, summaries, drawings, blueprints, photographs, negatives, graphs, charts, and other data, information or statistics contained within any data storage modules, tapes, discs or any other memory devices (including IBM or similar cards for information, data and programs) or any other information retrievable on storage systems (including computer generated reports and printouts).

b.    If any requested document was, but is no longer in your possession or subject to your control, state what disposition was made of the document and, if the document is still in existence, identify the person who has possession or control of the document.

c.    As used in these Requests, the phrase "a document or documents that evidences, refer(s) or relate(s) to" any given subject matter shall mean any document that constitutes, contains, embodies, identifies, states, refers to, deals with, pertains or in any way directly or indirectly bears upon the subject matter, including (without limitation) documents concerning the preparation of documents.

"Electronic data" shall mean any document created by any electronic device, including but not limited to, a computer (including personal computers, networks, and mainframes), personal digital assistant, mobile device (including instant messages or text messages sent from a computer,

personal digital assistant, mobile device, or any electronic device), digital or electronic recordings, and voicemail saved in digital format.

"Communication" means every manner or means of disclosure, transfer, or exchange, including every disclosure, transfer or exchange of information, whether transmitted orally, face-to-face, by document, electronically, telephone, mail, email, text message, video conference, personal delivery, meeting, or otherwise.

"Reflecting," "relating," or "referring" to a given subject means any document, information, or communication that constitutes, contains, embodies, comprises, reflects, identifies, states, refers to, deals with, comments on, responds to, describes, analyses or is in any way pertinent to that subject.

Singular references include the plural and plural references include the singular.

As used herein, the words "and" and "or" shall be construed either conjunctively or disjunctively as required by the context to bring within the scope of this interrogatory any document that might be deemed outside its scope by another construction.

"Person" shall mean any individual, partnership, association, corporation, joint venture, firm, proprietorship, agency, board, authority, commission, or other legal or business entity.

"Debtors" shall mean each of the debtors in the above-captioned cases being jointly administered as *In re Hertz Corporation, et al.,* Case No. 20-11218, or any representative, agent, or employee thereof.

"Debtors' Affiliate" or "Debtors' Affiliates" shall mean an affiliate of the Debtors as defined by 11 U.S.C. §101(2).

"Bankruptcy Cases" shall mean the above styled and numbered cases currently pending in the U.S. Bankruptcy Court for the District of Delaware.

4

"Petition Date" shall mean May 22, 2020.

If a document called for in this request is withheld under a claim of privilege, furnish a list reflecting each document for which the privilege is claimed and, with respect to each such document, provide the following information:

(a)    Names, addresses, and title of each author or addressee;

(b)    Names, addresses, and title of each addressor;

(c)    Each person to whom copies were sent or distributed and any other person to whom such document or its contents were disclosed;

(d)    Date, page length and subject matter of the document;

(e)    A description of the document; and

(f)    Statement of the basis on which the document is being withheld.

The terms "and," "or," and "and/or" are used in the inclusive sense and require all documents that meet the description of one or more of the disjunctive words or phrases.

Responsive documents shall be produced as they have been kept in the usual course of business or shall be organized and labelled to correspond with the categories in this request.

If any data or information responsive to the document requests exists in electronic format or as Electronic Data, you are instructed to produce such electronic data in its native format or, if unavailable as a .tiff file with an associated OCR.txt file capable of being searched; if neither is available, production shall be in PDF format.

If any documents herein requested have been lost, discarded, or destroyed, they shall be identified as completely as possible, including, without limitation, by the following information: subject matter; the document's title; previous location; date of disposal; manner of disposal; reason for disposal; person authorizing disposal; and person disposing of the document.

## REQUESTS FOR PRODUCTION OF DOCUMENTS

1.  Any and all liability insurance policies maintained by the Debtors for the twenty-four (24) month period prior to the filing of the Bankruptcy Cases, and any communications or documents relating thereto.

2.  Any and all documents concerning any self-insured retention for any liability insurance policies maintained by the Debtors for the twenty-four (24) month period prior to the filing of the Bankruptcy Cases, and any communications related thereto.

3.  Any and all police reports filed by Debtors or on behalf of Debtors categorized by state within the twelve (12) month period prior to the filing of the Bankruptcy Cases and all since the Petition Date.

4.  Any and all documents and communications related to any police reports filed by Debtors or on behalf of Debtors within the twelve (12) month period prior to the filing of the Bankruptcy Cases and all since the Petition Date.

5.  Any and all documents and communications concerning the disposition of any police reports filed by Debtors or on behalf of Debtors within the twelve (12) month period prior to the filing of the Bankruptcy Cases and all since the Petition Date.

6.  Any and all documents and communications concerning Debtors' claims procedures for vehicle rental incidents.

7.  Any and all sureties, guaranties, indemnities, or bonds posted to secure any self-insured retention.

8.  Any and all documents which relate to, or are referenced by, any answer by Debtors to the Interrogatories served concurrently herewith.

9.  Any and all risk management/risk retention policies maintained by the Debtors for the twenty-four (24) month period prior to the Petition Date and any communications related thereto.

10. Any and all communications from municipalities or police agencies regarding any police reports filed by Debtors or on behalf of the Debtors within the twelve (12) month period prior to the Petition Date and all since the Petition Date.

11. Any and all transcripts of any calls between any employee of Debtors and any person against whom Debtors filed or caused to be filed a police report within the twelve (12) month period prior to the Petition Date and all since the Petition Date.

12. Any and all transcripts of any calls between Debtors and any police agency within the twelve (12) month period prior to the Petition Date and all since the Petition Date.

6

13.     Any and all policies and procedures of Debtors for theft reporting categorized by state.

14.     Any and all policies,[3] procedures, manuals, checklists, charts, and practices of Debtors (including all historical versions) that relate to theft reporting, active from 2007 to present—including all appendices, attachments and exhibits to those documents—including but not limited to:

- W1-06 – Record Retention & Management Program, including "Exhibit 6: LEGL-3.1_EX6 Hertz US only Retention Schedule'
- W1-12 RAC – Control of Overdue Rentals
- W1-75   Protection of Assets and Confidential Materials
- W4-19 RAC – Multi-Month Rentals
- W7-02 RAC: Reporting Vehicle Thefts and Conversions (2009, 2015, 2020)
- W7-03 RAC – Recovery of Converted or Stolen Vehicles
- W9-18 - Prior to Reporting Thefts to Police
- W6-18 - Fleet Suspension Deletions
- W7-42 - Do Not Rent
- W1-13 - Ordering and Controlling Rental Agreements
- W1-18 - Control of Vehicle Titles
- W1-70 - Security Operations
- W1-92 - Control and Approval of Contracts
- W7-13 - Control of Non-Revenue Vehicle Movements
- W7-22 - Asset Identification
- Dash VCR 3 Tier Workload Process
- Dash Vehicle Control Representative Desktop Procedure
- Procedure 1-12
- Stolen Vehicle Recovery Checklists
- Standard of Business Conduct (referenced on Debtors' 2019 10K, p.15).

15.     Any and all claims disclosed to insurers or self-insurance guarantees, sureties, and bonds related to theft reporting.

16.     Any and all claims related to theft reporting that were or are handled, reported, or administrated by ESIS.

17.     Any and all disclosures to insurers, and those who provided self-insurance guarantees, sureties, and bonds, related to theft reporting, failures in theft reporting, inadequacies of theft reporting, and related theft reporting problems.

---

[3] The Debtors have been renaming, revising, and relabeling policies. All applicable policies, whatever the name given, should be produced. Furthermore, all historical versions with the identified time period should be produced. For instance, W7-02 has undergone several revisions, and W1-06 has been completely rewritten as of 2018.

18.     Any and all reservations of rights or similar claimed exclusions made by insurers, and those who provided self-insurance guarantees, sureties, and bonds, related to theft reporting, failures in theft reporting, inadequacies of theft reporting, and related theft reporting problems.

19.     Any and all training materials given to employees, agents, contractors, or others working on behalf of Hertz related to theft reporting.

20.     Any and all policies and practices which govern what happens to a vehicle after it has been reported stolen and reported to fleet accounting, including whether there are any notification to insurances entities or tax write offs.

21.     Any and all pending civil lawsuits filed against Debtors for defects related to Debtors' theft reporting in the five years preceding the Petition Date to present.

22.     Any and all claims or any kind, informal or formal, made against Debtors for defects related to Debtors' theft reporting from 2015 to present.

Date:   July 20, 2020

CIARDI CIARDI & ASTIN

*/s/ Joseph J. McMahon, Jr.*
Daniel K. Astin (No. 4068)
Joseph McMahon, Jr. (No. 4819)
1204 North King Street
Wilmington, DE 19801
Telephone: (302) 658-1100
Facsimile: (302) 658-1300
jmcmahon@ciardilaw.com

-and-

Albert A. Ciardi, III, Esquire
Walter W. Gouldsbury III, Esquire
CIARDI CIARDI & ASTIN
One Commerce Square, Suite 3500
2005 Market Street
Philadelphia, PA 19103
Telephone:  (215) 557-3550
Facsimile:  (215) 557-3551
aciardi@ciardilaw.com
wgouldsbury@ciardilaw.com

-and-

Francis Malofiy, Esquire
FRANCIS ALEXANDER, LLC
280 N. Providence Road, Suite 1
Media, PA 19063
Telephone: (215) 500-1000
Facsimile: (215) 500-1005
francis@francisalexander.com


*Attorneys for the False Police Report*
*Plaintiffs*

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| | : | |
| In re: | : | Chapter 11 |
| | : | |
| THE HERTZ CORPORATION, *et al.*,[1] | : | Case No. 20-11218 (MFW) |
| | : | |
| | : | (Jointly Administered) |
| Debtors. | : | |
| | : | |
| | : | |
| | : | |
| | : | |

**FALSE POLICE REPORT PLAINTIFFS' FIRST SET OF INTERROGATORIES
DIRECTED TO DEBTORS**

Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure, made applicable by Rules 7026, 7033, and 9014 of the Federal Rules of Bankruptcy Procedure, the False Police Report Plaintiffs[2] hereby request Debtors to respond under oath and in writing to the following interrogatories on or before August 4, 2020:

**INSTRUCTIONS AND DEFINITIONS**

A.      These Interrogatories are continuing in character, so as to require the Debtors to file

---

[1] The last four digits of The Hertz Corporation's tax identification number are 8568. The location of the debtors' service address is 8501 Williams Road, Estero, FL 33928. Due to the large number of debtors in these chapter 11 cases, for which joint administration for procedural purposes has been requested, a complete list of the debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the debtors' proposed claims and noticing agent at https://restructuring.primeclerk.com/hertz.

[2] The "False Police Report Plaintiffs" are: (i) Hannah Ayoub and the other plaintiffs in the civil action titled *Hannah Ayoub,* et al. *v. Hertz Global Holdings, Inc., et al.*, No. N20C-05-189 VLM, currently pending in the Superior Court, State of Delaware; (ii) Roula Vangelis (on behalf of her minor children) in the civil action titled *Vangelis,* et al. *v. Hertz Global Holdings, Inc.*, et al., No. 200501362, currently pending in the Philadelphia Court of Common Pleas, Commonwealth of Pennsylvania; (iii) Brent Williams in the civil action titled *Williams v. The Hertz Corporation*, No. 19-CA-012657 (Tampa), currently pending in the Circuit Court of the 13th Judicial Circuit, Hillsborough County, State of Florida; (iv) Nancy Cullen-Smits and Ryan Smits, in the civil actions titled *Nancy Cullen-Smits v. The Hertz Corporation*, (CL19000548-00) and *Ryan Smits v. The Hertz Corporation* (CL19000547-00), currently pending in Fauquier County Circuit Court, Commonwealth of Virginia; and (v) Henry B. Essick III in the civil action titled *Essick v. The Hertz Corporation,* et al., No. 2019-cv-03424, currently pending in the Montgomery County Court of Common Pleas, State of Ohio.

1

supplemental answers if the Debtors obtains further, contradictory or different information. Such supplemental answers, if any, shall be filed from time to time promptly upon the discovery by you of such supplemental information. Each Interrogatory is to be answered separately and as completely as possible. The fact that an investigation is continuing, and discovery is not complete shall not be used as a reason for failure to answer any such Interrogatory as fully as possible. The omission of any name, fact or other item of information from the answer shall be deemed a representation that such name, fact or item is not known to the Debtors, their counsel or other representatives or agents of the Debtors.

B.       Answers shall be based upon information known to the Debtors, their agents, attorneys, partners, associates, employees, servants, partners, associates, representatives, investigators or any other party or entity acting or who has acted by or on behalf of the Debtors. To the extent that the answer to any Interrogatory is not based upon information known to the Debtors, the Debtors shall specify that fact and the person or entity possessing such information.

C.       If the answer to all or any part of an Interrogatory is not presently known or available, include a statement to that effect, specifying the portion of the Interrogatory that cannot be completely answered. However, once information is available, the Debtors are required to furnish all information available in response to the entire Interrogatory by supplemental answer as required above.

D.       If the Debtors refuse to answer any Interrogatory or any part thereof on the grounds of privilege, the Debtors must identify the basis for the privilege claimed, the nature of any information that they refuse to disclose (referring specifically to the Interrogatory or any part thereof to which the Interrogatory applies and by identifying the form in which said information exists), the date of the document or oral communication and the general subject matter of the document or oral communication.

E.     As used in these Interrogatories, the following terms shall have the following meanings:

1.     The terms "You" or "Your" shall mean the answering Debtors, and/or any of their agents, attorneys, partners, associates, employees, servants, representatives, investigators and any person or entity acting or who has acted by or on behalf of the Debtors.

2.     "Person" shall mean any natural person or any corporation, limited liability company, partnership, association, joint venture, firm or other business enterprise or legal entity and means both the singular and plural.

3.     "Document" and "writing" are used interchangeably and shall mean any written or graphic matter of any kind whatsoever, however produced or reproduced, any electronically or magnetically recorded matter of any kind or character, however produced or reproduced, and any other matter constituting the recording of data or information upon any tangible thing by any means, including but not limited to, the original and any non-identical copy of any of the following: books, records, contracts, agreements, promissory notes, invoices, purchase orders, statements of account, credit and debit memoranda, orders, loan agreements, bills, installment contracts, mortgages, deeds of trust, security agreements, certificates of title, financing statements, instruments, expense accounts, canceled checks, bank statements, bank books, receipt and disbursement journals, tax returns, financial statements, check stubs, drafts, certificates, tabulations, questionnaires, tables, sketches, tax reports, working papers, computer data (including information or programs stored in a computer, whether or not ever printed out or displayed), resumes, medical records, address books, appointment books or telephone logs, notes, speeches, schedules, worksheets, pictures, income statements, profit and loss statements, deposit slips, credit card receipts, records and notations of telephone or personal conversations, conferences, inter-office communications, letters, telexes, partnership agreements,

3

articles of incorporation, catalogue price lists, sound, tape and video recordings, memoranda (including written memoranda of telephone activities), minutes, manuals, diaries, calendars or desk pads, calendar or diary entries, scrapbooks, notebooks, correspondence, bulletins, circulars, policies, forms, pamphlets, notices, statements, journals, postcards, letters, telegrams, reports, magazines, booklets, brochures, instructions, interoffice communications, photostats, microfilm, microfiche, maps, deposition transcripts, pleadings, orders, releases, appraisals, estimates, valuations, opinions, studies, analyses, summaries, drawings, blueprints, photographs, negatives, graphs, charts, and other data, information or statistics contained within any data storage modules, tapes, discs or any other memory devices (including IBM or similar cards for information, data and programs) or any other information retrievable on storage systems (including computer generated reports and printouts).

4.    "Communication" or "communication" shall mean any spoken communication, contact, oral or written, formal or informal at any time or place or under any circumstances whatsoever, whereby information of any nature was transmitted, recorded, or transferred (whether telephonic, written, in person or otherwise).  Where you are requested to identify or list any communications, your identification or list of such communications requires that you identify or state, separately as to each communication:  (a) the mode of such communication; (b) the persons who participated in such communication; (c) the persons who overheard or had access to such communication; (d) the date of such communication; (e) the time and/or place of such communication; and (f) the subject matter of such communication.

5.    "Identify" or "state the identity of" shall have the following meaning when used in the following contexts:

a.    When used in connection with a natural person, you are required to state his or her: (a) full name; (b) present or last known home address (including street name and

4

number, city and state); (c) present or last known business address; (d) present position, business affiliation and job description and, if unknown, so state and set forth the corresponding last known instance of such information; (e) position, business affiliation and job description at the time in question, with respect to the Interrogatory or other request involved.

b.      When used in connection with a corporation, limited liability company, partnership, association, joint venture, firm or other business enterprise or legal entity, you are required to state in the answer in each instance: (a) the full name and address; (b) a brief description of the primary business in which such entity is engaged; and (c) the identity of all persons who acted or were authorized to act on its behalf in connection with the matter referred to.

c.      When used in connection with a document or writing, you are required to state in the answer in each instance: (a) whether or not such document is known to be in existence at the time of the answer; (b) the date of the document; (c) type of document (*e.g.* letter, memorandum, computer printout, estimate, etc.); (d) identity of the author(s), addressee(s) and any other person to whom the document was shown or distributed; (e) any filing or identifying number; and (f) the present or last known location and/or custodian thereof.  If any such document was, but is no longer in the possession of or subject to control of Debtors or any affiliated business entity, state what and when disposition was made of it.

d.      When used in connection with an oral communication, you are required to state in the answer in each instance: (a) the identity of each person communicating; (b) the identity of the recipient(s) and intended recipient(s) of the communication; (c) the identity of each person present or otherwise aware of the substance of the communication; (d) the date and the place where it was made; (e) the identity of any document or writing that embodies, includes, reflects, concerns, relates, refers to or is based upon such oral communication; and (f) a detailed description of the

substance of the communication.

e.       When used in connection with a transaction, you are required to state in the answer in each instance: (a) a description of the property or thing that is the subject of the transaction; (b) the identity of the parties to the transaction; (c) the date of the transaction; (d) the place or site where the transaction took place; (e) the location of the property or thing that was the subject to the transaction at the time the transaction took place; (f) the identity of all persons who have knowledge of the transaction; and (g) identify all documents that refer or relate to the transaction.

f.       When used in connection with products or merchandise, you are required to state in the answer in each instance: (a) the full name of the product; (b) the use or purpose of the product; (c) the manufacturer of the product; (c) all persons who have personal knowledge of the sale or use of the product; (d) the volume of the product sold; (e) the gross receipts received from the sale of the product for each year that the product was sold; and (f) the identity of any documents that relate to the ownership of the product or the right to proceeds from the sale or use of the product.

"Electronic data" shall mean any document created by any electronic device, including (but not limited to): a computer (including personal computers, networks, and mainframes); personal digital assistant; mobile device (including instant messages or text messages sent from a computer, personal digital assistant, mobile device, or any electronic device); digital or electronic recordings; and voicemail saved in digital format.

"Reflecting," "relating," or "referring" to a given subject means any document, information, or communication that constitutes, contains, embodies, comprises, reflects, identifies, states, refers to, deals with, comments on, responds to, describes, analyses or is in any way pertinent to, that subject.

Singular references include the plural and plural references include the singular.

As used herein, the words "and" and "or" shall be construed either conjunctively or disjunctively as required by the context to bring within the scope of this interrogatory any document that might be deemed outside its scope by another construction.

"Person" shall mean any individual, partnership, association, corporation, joint venture, firm, proprietorship, agency, board, authority, commission, or other legal or business entity.

"Debtors" shall mean each of the debtors in the above-captioned cases being jointly administered as *In re Hertz Corporation, et al.,* Case No. 20-11218, or any representative, agent, or employee thereof.

"Debtors' Affiliate" or "Debtors' Affiliates" shall mean an affiliate of the Debtors as defined by 11 U.S.C. §101(2).

"Bankruptcy Cases" shall mean the above styled and numbered cases currently pending in the U.S. Bankruptcy Court for the District of Delaware.

"Petition Date" shall mean May 22, 2020.

"Motion" shall mean the Motion of False Police Report Plaintiffs for Relief from the Automatic Stay filed by the False Police Report Plaintiffs on June 25, 2020 or any Motion for Preliminary Injunction to Extend the Stay filed by the Debtors.

"Causes of Action" shall mean those causes of action that are the subject of the suits filed by each of the False Police Report Plaintiffs identified in Footnote No. 2, *supra*.

### INTERROGATORIES

1.    Identity of every person for whom you will seek to extend the protections of the automatic stay, including the following information:

   a.  Name
   b.  Position with Debtors
   c.  Duties
   d.  Time spent performing services for Debtors in the last 90 days
   e.  All time sheets, billing records, travel records or call logs which support

1. d. herein.

2.      Identify whether any person identified in Interrogatory No. 1 has any supplemental or other insurance policy which could cover the damages in the Causes of Action, including the name of insurer and policy information.

3.      Identify all agreements of indemnity or other employment agreement with any person identified in Interrogatory No. 1.

4.      Identify all compensation paid by Debtors to any individual identified in Interrogatory No. 1 for the one year prior to the Petition Date, by month, and any post-Petition Date Compensation paid.

5.      Identify all sureties, guaranties, indemnities, or bonds posted to secure any self-insured retention which could cover liability for false theft reporting.

6.      Identify all insurance policies, sureties, guaranties, indemnities, or bonds related to insurance carried by Debtors, as identified on page 17 of Debtors' 2019 10K.

7.      Identify all claims disclosed to insurers or self-insurance guarantees, sureties, and bonds related to theft reporting.

8.      Identify all claims related to theft reporting that were or are handled, reported, or administrated by ESIS.

9.      Identify all disclosures to insurers, and those who provided self-insurance guarantees, sureties, and bonds, related to theft reporting, failures in theft reporting, inadequacies of theft reporting, and related theft reporting problems.

10.     Identify all reservations of rights or similar claimed exclusions made by insurers and those who provided self-insurance guarantees, sureties, and bonds, related to theft reporting, failures in theft reporting, inadequacies of theft reporting, and related theft reporting problems.

11.     Identify all consultants, advisors, outside agencies, or third parties who reviewed your theft reporting policies and identify and describe and claimed conclusions or opinions.

12.     Identify all training materials given to employees, agents, contractors, or others working on behalf of Hertz related to theft reporting.

13.     Identify all policies and practices which govern what happens to a vehicle after it has been reported stolen and reported to fleet accounting, including whether there are any notification to insurances entities or tax write offs.

14.     Identify each customer of Debtors for whom Debtors have filed a police report for the one-year period prior to the Petition Date and each one since the Petition Date,

and how such report was resolved and whether there is a pending criminal prosecution.

15.     Identify each witness you intend to call at the hearing on the Motion and any opposition filed by the Debtors thereto and in support of any motion or other pleading filed by Debtors seeking to extend the stay.

16.     Identify all exhibits you intend to offer in support of the Debtors' opposition to the Motion or any motion filed by Debtors to extend the automatic stay.

17.     Identify all individuals included in risk retention and risk management decisions for Debtors, including any non-employees of Debtors, and specify:

        a.  Name
        b.  Title
        c.  Duties

18.     Identify any employees and non-employees who have filed any police report on behalf of Debtors in the twenty-four (24) month period preceding the Petition Date and currently.

19.     Identify all pending civil lawsuits filed against Debtors for defects related to Debtors' theft reporting in the five years preceding the Petition Date to present.

20.     Identify all claims or any kind, informal or formal, made against Debtors for defects related to Debtors' theft reporting from 2015 to present.

21.     Identify when and how Debtors' officers and directors became aware of inadequacies in the theft reporting process, from 2015 to present.

22.     Identify when and how Debtors' officers and directors notified shareholders of inadequacies in the theft reporting process, from 2015 to present.

23.     Identify when and how the Icahn Group[3] became aware of inadequacies in the theft reporting process, from 2015 to present.

24.     Identify the false arrest and false police report legal proceedings which are referenced on the Debtors' 2019 10K on page 27-28 and 34.[4]

---

[3] As defined in Debtors' Form 10K for 2019 (filed with the SEC), page 138.

[4] **ITEM 3.  LEGAL PROCEEDINGS**
For information regarding legal proceedings, see Note 14, "Contingencies and Off-Balance Sheet Commitments," to the Notes to our consolidated financial statements included in this 2019 Annual Report under the caption Item 8, "Financial Statements and Supplemental Data."

25.    Identify all business practices which Debtors altered in response to false arrests and false police reports since 2015, and changes in regulations regarding theft reporting, as referenced on page 18 of Debtors' 2019 10K.


Date:    July 20, 2020

CIARDI CIARDI & ASTIN

*/s/ Joseph J. McMahon, Jr.*
Daniel K. Astin (No. 4068)
Joseph McMahon, Jr. (No. 4819)
1204 North King Street
Wilmington, DE  19801
Telephone: (302) 658-1100
Facsimile: (302) 658-1300
dastin@ciardilaw.com
jmcmahon@ciardilaw.com

-and-

Albert A. Ciardi, III, Esquire
Walter W. Gouldsbury III, Esquire
CIARDI CIARDI & ASTIN
One Commerce Square, Suite 3500
2005 Market Street
Philadelphia, PA 19103
Telephone:  (215) 557-3550
Facsimile:  (215) 557-3551
aciardi@ciardilaw.com
wgouldsbury@ciardilaw.com

-and-

Francis Malofiy, Esquire
FRANCIS ALEXANDER, LLC
280 N. Providence Road, Suite 1
Media, PA 19063
Telephone: (215) 500-1000
Facsimile: (215) 500-1005
francis@francisalexander.com


*Attorneys for the False Police Report Plaintiffs*

## **Exhibit 2**

**September 2021 Discovery**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

|  |  |  |
|---|---|---|
| In re: | : | Chapter 11 |
|  | : |  |
| THE HERTZ CORPORATION, *et al.*,[1] | : | Case No. 20-11218 (MFW) |
|  | : |  |
|  | : | (Jointly Administered) |
| Debtors. | : |  |
|  | : |  |
|  | : |  |
|  | : |  |

## FALSE POLICE REPORT CLAIMANTS' REQUEST FOR PRODUCTON OF DOCUMENTS DIRECTED TO DEBTORS

Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure, made applicable by Rules 7026, 7034, and 9014 of the Federal Rules of Bankruptcy Procedure, the False Police Report Claimants[2], hereby request that the above-captioned Debtors (collectively, the "Debtors") produce the following documents at the offices of Ciardi Ciardi & Astin, Attn: Daniel K. Astin, Esquire, 1204 N. King Street, Wilmington, DE 19801 on or before October 19, 2021.

---

[1] The last four digits of The Hertz Corporation's tax identification number are 8568. The location of the debtors' service address is 8501 Williams Road, Estero, FL 33928. Due to the large number of debtors in these chapter 11 cases, for which joint administration for procedural purposes has been requested, a complete list of the debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the debtors' proposed claims and noticing agent at https://restructuring.primeclerk.com/hertz.

[2] The "False Police Report Claimants" are those (i) individuals with cases pending that are detailed in the False Police Report Plaintiffs' Motion for Relief from Stay filed on June 25, 2020 [D.I.589] (the "False Police Report Plaintiffs--Claimants 1"); (ii) the 115 additional individuals with claims and/or claims and cases pending that are detailed in the Motion of the False Police Report Claimants No. 2 filed on February 2, 2021 [D.I. 2593] (the "False Police Report Plaintiffs--Claimants 2"); and (iii) the 29 individuals listed in the Motion of the False Police Report Claimants No. 3 for Relief from Stay and Any Plan Injunction filed on August 4, 2021 [D.I. 5656] (the "False Police Report Plaintiffs--Claimants 3").

## INSTRUCTIONS AND DEFINITIONS

1.      These Requests are continuing in character, so as to require the answering Debtors to file supplemental responses if Debtors obtains or discovers further, contradictory or different documents prior to trial.  Such supplemental responses, if any, shall be filed from time to time promptly upon the discovery by you of such supplemental documents.  Each Request is to be responded to separately and as completely as possible.  The fact that an investigation is continuing and discovery is not complete shall not be used as a reason for failure to respond to any such Request as fully as possible.  The omission of any document or other item of information from the response shall be deemed a representation that such document or item is not known to Debtors, its counsel, or other representatives or agents of Debtors.

2.      As used herein, the following terms shall have the following meanings:

a.      As used in these Requests, "document," "documents," "documentation," or "writing" shall mean and include the original, regardless of the location of the original, or any recorded, written, printed, typed, or other graphic material of every kind, variety, type or character, including by way of example (but not limited to) the following:  books, records, contracts, agreements, insurance polices, invoices, purchase orders, statements of account, credit and debit memoranda, orders, , bills, installment contracts, rental agreements, certificates of title, financing statements, instruments, expense accounts, cancelled checks, bank statements, bank books, receipt and disbursement journals, tax returns, financial statements, check stubs, drafts, certificates, tabulations, questionnaires, tables, sketches, tax reports, working papers, computer data (including information or programs stored in a computer, whether or not ever printed out or displayed),

2

resumes, medical records, address books, appointment books or telephone logs, notes, speeches, schedules, worksheets, pictures, income statements, profit and loss statements, deposit slips, credit card receipts, records and notations of telephone or personal conversations, conferences, inter-office communications, letters, telexes, partnership agreements, articles of incorporation, catalogue price lists, sound, tape and video recordings, memoranda (including written memoranda of telephone activities), minutes, manuals, diaries, calendars or desk pads, calendar or diary entries, scrapbooks, notebooks, correspondence, bulletins, circulars, policies, forms, pamphlets, notices, statements, journals, postcards, letters, telegrams, reports, magazines, booklets, brochures, instructions, interoffice communications, Photostats, microfilm, microfiche, maps, deposition transcripts, pleadings, orders, releases, appraisals, estimates, valuations, opinions, studies, analyses, summaries, drawings, blueprints, photographs, negatives, graphs, charts, and other data, information or statistics contained within any data storage modules, tapes, discs or any other memory devices (including IBM or similar cards for information, data and programs) or any other information retrievable on storage systems (including computer generated reports and printouts).

      b.    If any requested document was, but is no longer in your possession or subject to your control, state what disposition was made of the document and, if the document is still in existence, identify the person who has possession or control of the documents,

      c.    As used in these Requests, the phrase "a document or documents that evidences, refer(s) or relate(s) to" any given subject matter shall mean any document that constitutes, contains, embodies, identifies, states, refers to, deals with, pertains or in any way directly or indirectly bears upon or deals with the subject matter, including (without limitation) documents concerning the preparation of documents.

      "Electronic data" shall mean any document created by any electronic device, including but

not limited to, a computer (including personal computers, networks, and mainframes), personal digital assistant, mobile device, including instant messages or text messages sent from a computer, personal digital assistant, mobile device, or any electronic device, or digital or electronic recordings, voicemail saved in digital format.

"Communication" means every manner or means of disclosure, transfer, or exchange, including every disclosure, transfer or exchange or information whether transmitted orally, face-to-face, by document, electronically, telephone, mail, email, text message, video conference, personal delivery, meeting, or otherwise.

"Reflecting," "relating," or "referring" to a given subject means any document, information, or communication that constitutes, contains, embodies, comprises, reflects, identifies, states, refers to, deals with, comments on, responds to, describes, analyses or is in any way pertinent to that subject.

Singular references include the plural and plural references include the singular.

As used herein, the words "and" and "or" shall be construed either conjunctively or disjunctively as required by the context to bring within the scope of this interrogatory any document that might be deemed outside its scope by another construction.

"Person" shall mean any individual, partnership, association, corporation, joint venture, firm, proprietorship, agency, board, authority, commission, or other legal or business entity.

"Debtors" or "Debtor Entities" shall mean each of the debtors in the above-captioned cases being jointly administered as *In re Hertz Corporation, et al.,* Case No. 20-11218 (including as reorganized), or any representative, agent, or employee, thereof.

 "Debtors' Affiliate" or "Debtors' Affiliates" shall mean an affiliate of the Debtor Entities as defined by 11 U.S.C. §101(2).

"Bankruptcy Cases" shall mean the above styled and numbered cases currently pending in the U.S. Bankruptcy Court for the District of Delaware.

If a document called for in this request is withheld under a claim of privilege, furnish a list reflecting each document for which the privilege is claimed and, with respect to each such document, provide the following information:

(a)    Names, addresses, and title of each author or addressee;
(b)    Names, addresses, and title of each addressor;
(c)    Each person to whom copies were sent or distributed and any other person to whom such document or its contents were disclosed;
(d)    Date, page length and subject matter of the document;
(e)    A description of the document; and
(f)    Statement of the basis on which the document is being withheld.

The terms "and," "or," and "and/or" are used in the inclusive sense and require all documents that meet the description of one or more of the disjunctive words or phrases.

Responsive documents shall be produced as they have been kept in the usual course of business or shall be organized and labelled to correspond with the categories in this request.

If any data or information responsive to the document requests exists in electronic format or as Electronic Data, you are instructed to produce such electronic data in its native format or, if unavailable as a .tiff file with an associated OCR.txt file capable of being searched; if neither is available, production shall be as a PDF format.

If any documents herein requested have been lost, discarded, or destroyed, they shall be identified as completely as possible, including, without limitation, the following information: subject matter, the document's title, previous location, date of disposal, manner of disposal, reason for disposal, person authorizing disposal, and person disposing of the document.

## REQUESTS FOR PRODUCTION OF DOCUMENTS

**REQUEST FOR PRODUCTION NO. 1:**  All public records searches, including skiptraces and TLOs, for all 165 claimants.

**REQUEST FOR PRODUCTION NO. 2:**  The spreadsheet identified in the affidavit docketed at Doc. No. 1071, p.7-11, and produced in case no. 3:19-cv-00775-MGL (*Lee v. The Hertz Corporation*).

**REQUEST FOR PRODUCTION NO. 3:**  An updated version of the information contained in the spreadsheet identified in the affidavit docketed at Doc. No. 1071, p.7-11, and produced in case no. 3:19-cv-00775-MGL (*Lee v. The Hertz Corporation*).

**REQUEST FOR PRODUCTION NO. 4:**  All documents relating to any claims of wrongful detention, false arrest, malicious prosecution, or other claims or suits related to any allegations that any of the Debtor Entities or their affiliates filed false police reports, from May 22, 2016 to present.

**REQUEST FOR PRODUCTION NO. 5:**  All notices of the bankruptcy the Debtor Entities provided to the individuals identified as the False Police Report Plaintiffs – Claimants 3.

**REQUEST FOR PRODUCTION NO. 6:**  All notices of the bankruptcy the Debtor Entities provided to the individuals identified as the False Police Report Plaintiffs – Claimants 2.

**REQUEST FOR PRODUCTION NO. 7:**  All notices of the bankruptcy the Debtor Entities provided to the individuals reported, arrested, detained, or prosecuted for theft from May 22, 2016 to the present.

**REQUEST FOR PRODUCTION NO. 8:**  All communications, prior to September 9, 2020, with any third party (including but not limited to any communications with any complainant or their representatives or with law enforcement, prosecutors, or security officials) regarding any systemic, common, global, and/or reoccurring issues in the Debtor Entities' filing of police reports against customers of the Debtor Entities or the Debtors' Affiliates.

**REQUEST FOR PRODUCTION NO. 9:**  All communications, prior to September 9, 2020, within Debtor Entities or their affiliates regarding claims of any systemic, common, global, and/or reoccurring issues in the Debtor Entities' filing of police reports against customers of the Debtor Entities or the Debtors' Affiliates.

**REQUEST FOR PRODUCTION NO. 10:**  Produce all communications and documents relating to efforts to ascertain the identities of potential claimants with claims relating to allegations of wrongful detention, false arrest, or wrongful prosecution.

Wilmington, Delaware
Dated: September 28, 2021

                                        CIARDI CIARDI & ASTIN

                                        */s/ Daniel K. Astin*
                                        Daniel K. Astin (No. 4068)
                                        1204 North King Street
                                        Wilmington, DE  19801

Telephone: (302) 658-1100
Facsimile: (302) 658-1300
dastin@ciardilaw.com

-and-

Albert A. Ciardi, III, Esquire
Walter W. Gouldsbury III, Esquire
CIARDI CIARDI & ASTIN
1905 Spruce Street
Philadelphia, PA 19103
Telephone:  (215) 557-3550
Facsimile:  (215) 557-3551
aciardi@ciardilaw.com
wgouldsbury@ciardilaw.com

-and-

Francis Malofiy, Esquire
FRANCIS ALEXANDER, LLC
280 N. Providence Road, Suite 1
Media, PA 19063
Telephone: (215) 500-1000
Facsimile: (215) 500-1005
francis@francisalexander.com


*Attorneys for the False Police Report
Claimants*

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

|  |  |  |
|---|---|---|
| In re: | : | Chapter 11 |
|  | : |  |
| THE HERTZ CORPORATION, *et al.*,[1] | : | Case No. 20-11218 (MFW) |
|  | : |  |
|  | : | (Jointly Administered) |
| Debtors. | : |  |
|  | : |  |
|  | : |  |
|  | : |  |

**FALSE POLICE REPORT CLAIMANTS' FIRST SET OF INTERROGATORIES**
**DIRECTED TO DEBTORS**

Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure, made applicable by Rules 7026, 7033, and 9014 of the Federal Rules of Bankruptcy Procedure, False Police Report Claimants[2] hereby request Debtors to respond under oath and in writing to the following interrogatories on or before October 12, 2021:

**INSTRUCTIONS AND DEFINITIONS**

A.    These Interrogatories are continuing in character, so as to require the Debtors to file supplemental answers if the Debtors obtains further, contradictory or different information. Such supplemental answers, if any, shall be filed from time to time promptly upon the discovery by you

---

[1] The last four digits of The Hertz Corporation's tax identification number are 8568. The location of the debtors' service address is 8501 Williams Road, Estero, FL 33928. Due to the large number of debtors in these chapter 11 cases, for which joint administration for procedural purposes has been requested, a complete list of the debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the debtors' proposed claims and noticing agent at https://restructuring.primeclerk.com/hertz.

[2] The "False Police Report Claimants" are those (i) individuals with cases pending that are detailed in the False Police Report Plaintiffs' Motion for Relief from Stay filed on June 25, 2020 [D.I.589]; (ii) the 115 additional individuals with claims and/or claims and cases pending that are detailed in the Motion of the False Police Report Claimants No. 2 filed on February 2, 2021 [D.I. 2593]; and (iii) the 29 individuals listed in the Motion of the False Police Report Claimants No. 3 for Relief from Stay and Any Plan Injunction filed on  August 4, 2021 [D.I. 5656].

of such supplemental information.    Each Interrogatory is to be answered separately and as completely as possible.  The fact that an investigation is continuing, and discovery is not complete shall not be used as a reason for failure to answer any such Interrogatory as fully as possible.  The omission of any name, fact or other item of information from the answer shall be deemed a representation that such name, fact or item is not known to the Debtors, their counsel or other representatives or agents of the Debtors.

B.      Answers shall be based upon information known to the Debtors, their agents, attorneys, partners, associates, employees, servants, partners, associates, representatives, investigators or any other party or entity acting or who has acted by or on behalf of the Debtors.  To the extent that the answer to any Interrogatory is not based upon information known to the Debtors, the Debtors shall specify that fact and the person or entity possessing such information.

C.      If the answer to all or any part of an Interrogatory is not presently known or available, include a statement to that effect, specifying the portion of the Interrogatory that cannot be completely answered.  However, once information is available, the Debtors are required to furnish all information available in response to the entire Interrogatory by supplemental answer as required above.

D.      If the Debtors refuse to answer any Interrogatory or any part thereof on the grounds of privilege, the Debtors must identify the basis for the privilege claimed, the nature of any information that it refuses to disclose, referring specifically to the Interrogatory or any part thereof to which the Interrogatory applies and by identifying the form in which said information exists, the date of the document or oral communication and the general subject matter of the document or oral communication.

E.      As used in these Interrogatories, the following terms shall have the following

2

meanings:

      1.     The terms "You" or "Your" shall mean the answering Debtors, and/or any of their agents, attorneys, partners, associates, employees, servants, representatives, investigators and any person or entity acting or who has acted by or on behalf of the Debtors.

      2.     "Person" shall mean any natural person or any corporation, limited liability company, partnership, association, joint venture, firm or other business enterprise or legal entity and means both the singular and plural.

      3.     "Document" and "writing" are used interchangeably and shall mean any written or graphic matter of any kind whatsoever, however produced or reproduced, any electronically or magnetically recorded matter of any kind or character, however produced or reproduced, and any other matter constituting the recording of data or information upon any tangible thing by any means, including but not limited to, the original and any non-identical copy of any of the following: books, records, contracts, agreements, promissory notes, invoices, purchase orders, statements of account, credit and debit memoranda, orders, loan agreements, bills, installment contracts, mortgages, deeds of trust, security agreements, certificates of title, financing statements, instruments, expense accounts, canceled checks, bank statements, bank books, receipt and disbursement journals, tax returns, financial statements, check stubs, drafts, certificates, tabulations, questionnaires, tables, sketches, tax reports, working papers, computer data (including information or programs stored in a computer, whether or not ever printed out or displayed), resumes, medical records, address books, appointment books or telephone logs, notes, speeches, schedules, worksheets, pictures, income statements, profit and loss statements, deposit slips, credit card receipts, records and notations of telephone or personal conversations, conferences, inter-office communications, letters, telexes, partnership agreements, articles of incorporation, catalogue price

lists, sound, tape and video recordings, memoranda (including written memoranda of telephone activities), minutes, manuals, diaries, calendars or desk pads, calendar or diary entries, scrapbooks, notebooks, correspondence, bulletins, circulars, policies, forms, pamphlets, notices, statements, journals, postcards, letters, telegrams, reports, magazines, booklets, brochures, instructions, interoffice communications, photostats, microfilm, microfiche, maps, deposition transcripts, pleadings, orders, releases, appraisals, estimates, valuations, opinions, studies, analyses, summaries, drawings, blueprints, photographs, negatives, graphs, charts, and other data, information or statistics contained within any data storage modules, tapes, discs or any other memory devices (including IBM or similar cards for information, data and programs) or any other information retrievable on storage systems (including computer generated reports and printouts).

4. "Communication" or "communication" shall mean any spoken communication, contact, oral or written, formal or informal at any time or place or under any circumstances whatsoever, whereby information of any nature was transmitted, recorded, or transferred (whether telephonic, written, in person or otherwise).  Where you are requested to identify or list any communications, your identification or list of such communications shall require you separately as to each communication, to identify the mode of such communication, to identify the persons who participated in such communication, to identify the persons who overheard or had access to such communication, and to state the date of such communication, the time and/or place of such communication, and the subject matter of such communication.

5. "Identify" or "state the identity of" shall have the following meaning when used in the following contexts:

a. When used in connection with a natural person, you are required to state his or her: (a) full name; (b) present or last known home address (including street name and

number, city and state); (c) present or last known business address; (d) present position, business affiliation and job description and, if unknown, so state and set forth the corresponding last known instance of such information; (e) position, business affiliation and job description at the time in question, with respect to the Interrogatory or other request involved.

        b.      When used in connection with a corporation, limited liability company, partnership, association, joint venture, firm or other business enterprise or legal entity, you are required to state in the answer in each instance: (a) the full name and address; (b) a brief description of the primary business in which such entity is engaged; and (c) the identity of all persons who acted or were authorized to act on its behalf in connection with the matter referred to.

        c.      When used in connection with a document or writing, you are required to state in the answer in each instance: (a) whether or not such document is known to be in existence at the time of the answer; (b) the date of the document; (c) type of document (*e.g.* letter, memorandum, computer printout, estimate, etc.); (d) identity of the author(s), addressee(s) and any other person to whom the document was shown or distributed; (e) any filing or identifying number; and (f) the present or last known location and/or custodian thereof.  If any such document was, but is no longer in the possession of or subject to control of Debtors or any affiliated business entity, state what and when disposition was made of it.

        d.      When used in connection with an oral communication, you are required to state in the answer in each instance: (a) the identity of each person communicating; (b) the identity of the recipient(s) and intended recipient(s) of the communication; (c) the identity of each person present or otherwise aware of the substance of the communication; (d) the date and the place where it was made; (e) the identity of any document or writing that embodies, includes, reflects, concerns, relates, refers to or is based upon such oral communication; and (f) a detailed

description of the substance of the communication.

    e.  When used in connection with a transaction, you are required to state in the answer in each instance: (a) a description of the property or thing that is the subject of the transaction; (b) the identity of the parties to the transaction; (c) the date of the transaction; (d) the place or site where the transaction took place; (e) the location of the property or thing that was the subject to the transaction at the time the transaction took place; (f) the identity of all persons who have knowledge of the transaction; and (g) identify all documents that refer or relate to the transaction.

    f.  When used in connection with products or merchandise, you are required to state in the answer in each instance: (a) the full name of the product; (b) the use or purpose of the product; (c) the manufacturer of the product; (c) all persons who have personal knowledge of the sale or use of the product; (d) the volume of the product sold; (e) the gross receipts received from the sale of the product for each year that the product was sold; and (f) the identity of any documents that relate to the ownership of the product or the right to proceeds from the sale or use of the product.

    "Electronic data" shall mean any document created by any electronic device, including but not limited to, a computer (including personal computers, networks, and mainframes), personal digital assistant, mobile device, including instant messages or text messages sent from a computer, personal digital assistant, mobile device, or any electronic device, or digital or electronic recordings, voicemail saved in digital format.

    "Reflecting," "relating," or "referring" to a given subject means any document, information, or communication that constitutes, contains, embodies, comprises, reflects, identifies, states, refers to, deals with, comments on, responds to, describes, analyses or is in any way

6

pertinent to that subject.

Singular references include the plural and plural references include the singular.

As used herein, the words "and" and "or" shall be construed either conjunctively or disjunctively as required by the context to bring within the scope of this interrogatory any document that might be deemed outside its scope by another construction.

"Person" shall mean any individual, partnership, association, corporation, joint venture, firm, proprietorship, agency, board, authority, commission, or other legal or business entity.

"Debtors" or "Debtor Entities" shall mean each of the debtors in the above-captioned cases being jointly administered as *In re Hertz Corporation, et al.,* Case No. 20-11218 (including as reorganized), or any representative, agent, or employee, thereof.

"Debtors' Affiliate" or "Debtors' Affiliates" shall mean an affiliate of the Debtors as defined by 11 U.S.C. §101(2).

"Bankruptcy Cases" shall mean the above styled and numbered cases currently pending in the U.S. Bankruptcy Court for the District of Delaware.

## <u>INTERROGATORIES</u>

**INTERROGATORY NO. 1:**  Identify all specific efforts made to notify of these bankruptcy proceedings (1) persons against whom the Debtor Entities filed a police theft report for "Theft by Conversion" as defined in W7-02(a)(3) relating to Overdue Rentals since May 22, 2016; and (2) persons who were arrested or prosecuted since May 22, 2016, as a result of a lost inventory theft report filed by the Debtor Entities.

**INTERROGATORY NO. 2:**  Identify all formal and informal complaints (including any lawsuits) made by anyone renting a car from the Debtor Entities or its franchisees of wrongful detention, false arrest, or wrongful prosecution by the Debtor Entities or any third party administrator used by the Debtor Entities—including Chubb and ESIS—received from May 22, 2016 to the present.

**INTERROGATORY NO. 3:**  Identify all communications, prior to September 9, 2020, with any third party (including but not limited to any communications with any complainant or their representatives or with law enforcement, prosecutors, or security officials) regarding any systemic, global, and/or reoccurring issues in the Debtor Entities' filing of police reports against customers of the Debtor Entities or their affiliates.

7

**INTERROGATORY NO. 4:**  To the extent you deny, in whole or part, Request for Admission No. 1, please describe:
-        To whom, when, where, and how the notice was sent, and whether receipt was acknowledged.

**INTERROGATORY NO. 5:**  To the extent you deny, in whole or part, Request for Admission No. 2, please describe:
-        To whom, when, where, and how the notice was sent, and whether receipt was acknowledged.

**INTERROGATORY NO. 6:**  To the extent you deny, in whole or part, Request for Admission No. 3, please describe:
-        To whom, when, where, and how the notice was sent, and whether receipt was acknowledged.

**INTERROGATORY NO. 7:**  To the extent you deny, in whole or part, Request for Admission No. 4, please explain with particularity why you deny.

**INTERROGATORY NO. 8:**  Identify all steps taken by the Debtor Entities or their affiliates to ascertain the identities of potential claimants with claims relating to allegations of wrongful detention, false arrest, or wrongful prosecution.

Wilmington, Delaware
Dated:  September 28, 2021

CIARDI CIARDI & ASTIN

*/s/ Daniel K. Astin*
Daniel K. Astin (No. 4068)
1204 North King Street
Wilmington, DE  19801
Telephone: (302) 658-1100
Facsimile: (302) 658-1300
dastin@ciardilaw.com
jmcmahon@ciardilaw.com

-and-

Albert A. Ciardi, III, Esquire
Walter W. Gouldsbury III, Esquire
CIARDI CIARDI & ASTIN
1905 Spruce Street
Philadelphia, PA 19103
Telephone:  (215) 557-3550
Facsimile:  (215) 557-3551

-

aciardi@ciardilaw.com
wgouldsbury@ciardilaw.com

-and-

Francis Malofiy, Esquire
FRANCIS ALEXANDER, LLC
280 N. Providence Road, Suite 1
Media, PA 19063
Telephone: (215) 500-1000
Facsimile: (215) 500-1005
francis@francisalexander.com

-and-

*Attorneys for the False Police Report
Claimants*

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| | : | |
| In re: | : | Chapter 11 |
| | : | |
| THE HERTZ CORPORATION, *et al.*,[1] | : | Case No. 20-11218 (MFW) |
| | : | |
| | : | (Jointly Administered) |
| Debtors. | : | |
| | : | |
| | : | |
| | : | |

## FALSE POLICE REPORT CLAIMANTS' FIRST SET OF REQUESTS FOR ADMISSIONS DIRECTED TO DEBTORS

Pursuant to Rule 36 of the Federal Rules of Civil Procedure, made applicable by Rules 7036

9014 of the Federal Rules of Bankruptcy Procedure, False Police Report Claimants[2] hereby request

Debtors to admit or answer the following requests for admission and serve their responses on or the

undersigned counsel on or before October 12, 2021:[3]

---

[1] The last four digits of The Hertz Corporation's tax identification number are 8568. The location of the debtors' service address is 8501 Williams Road, Estero, FL 33928. Due to the large number of debtors in these chapter 11 cases, for which joint administration for procedural purposes has been requested, a complete list of the debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the debtors' proposed claims and noticing agent at https://restructuring.primeclerk.com/hertz.

[2] The "False Police Report Claimants" are those (i) individuals with cases pending that are detailed in the False Police Report Plaintiffs' Motion for Relief from Stay filed on June 25, 2020 [D.I.589] (the "False Police Report Plaintiffs--Claimants 1"); (ii) the 115 additional individuals with claims and/or claims and cases pending that are detailed in the Motion of the False Police Report Claimants No. 2 filed on February 2, 2021 [D.I. 2593] (the "False Police Report Plaintiffs--Claimants 2"); and (iii) the 29 individuals listed in the Motion of the False Police Report Claimants No. 3 for Relief from Stay and Any Plan Injunction filed on August 4, 2021 [D.I. 5656] (the "False Police Report Plaintiffs--Claimants 3").

[3] Any capitalized term not otherwise defined herein shall have the meanings ascribed to them in the False Police Report Claimants First Set of Requests for Production of Documents served concurrently herewith.

## REQUESTS FOR ADMISSIONS

**REQUEST FOR ADMISSION NO. 1:** Excluding notice by publication, admit that the Debtor Entities did not provide individual notices of the bankruptcy to those individuals identified as the False Police Report Plaintiffs – Claimants 3.

**REQUEST FOR ADMISSION NO. 2:** Excluding notice by publication, admit that the Debtor Entities did not provide individual notice of the bankruptcy to those individuals identified as the False Police Report Plaintiffs – Claimants 2.

**REQUEST FOR ADMISSION NO. 3:** Excluding notice by publication, admit that Debtor Entities did not provide notice of the bankruptcy to individuals reported, arrested, detained, or prosecuted for theft from May 22, 2016 to the present.

**REQUEST FOR ADMISSION NO. 4:** Admit that, prior to September 9, 2020, one or more of the Debtor Entities knew about claims of systemic, common, global, and/or reoccurring issues in the Debtor Entities' filing of police reports against customers of the Debtor Entities or Debtors' Affiliates.

Wilmington, Delaware
Dated:  September 28, 2021

CIARDI CIARDI & ASTIN

*/s/ Daniel K. Astin*
Daniel K. Astin (No. 4068)
1204 North King Street
Wilmington, DE  19801
Telephone: (302) 658-1100
Facsimile: (302) 658-1300
dastin@ciardilaw.com
jmcmahon@ciardilaw.com

-and-

Albert A. Ciardi, III, Esquire
Walter W. Gouldsbury III, Esquire
CIARDI CIARDI & ASTIN
1905 Spruce Street
Philadelphia, PA 19103
Telephone:  (215) 557-3550
Facsimile:  (215) 557-3551
aciardi@ciardilaw.com
wgouldsbury@ciardilaw.com

-and-

Francis Malofiy, Esquire
FRANCIS ALEXANDER, LLC
280 N. Providence Road, Suite 1
Media, PA 19063
Telephone: (215) 500-1000
Facsimile: (215) 500-1005
francis@francisalexander.com

*Attorneys for the False Police Report
Claimants*

## **Exhibit 3**

**December 2021 Discovery**

ACTIVE.135116865.08

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

In re:

Rental Car Intermediate Holdings, LLC,[1]

Reorganized Debtor.

Chapter 11

Case No. 20-11247 (MFW)

(Jointly Administered)

### FALSE POLICE REPORT CLAIMANTS' REQUESTS FOR PRODUCTION

Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure, made applicable by Rules 7026, 7034, and 9014 of the Federal Rules of Bankruptcy Procedure, the False Police Report Claimants hereby request (these "Requests") that the Debtors produce the following documents at the offices of Faegre Drinker Biddle & Reath LLP, Attn: Patrick A. Jackson, 222 Delaware Ave., Suite 1410, Wilmington, Delaware 19801, on or before January 19, 2022.

### INSTRUCTIONS AND DEFINITIONS

1. These Requests are continuing in character, so as to require the answering Debtors to file supplemental responses if the Debtors obtain or discover further, contradictory or different documents prior to trial. Such supplemental responses, if any, shall be filed from time to time promptly upon the discovery by you of such supplemental documents. Each Request is to be responded to separately and as completely as possible. The fact that an investigation is continuing and discovery is not complete shall not be used as a reason for failure to respond to

---

[1]    The last four digits of the tax identification number of Reorganized Debtor Rental Car Intermediate Holdings, LLC ("RCIH") are 2459. The location of the Reorganized Debtors' service address is 8501 Williams Road, Estero, FL 33928. On September 28, 2021, the Court entered a final decree closing each of the chapter 11 cases for The Hertz Corporation and its affiliated reorganized debtors (the "Reorganized Debtors") other than RCIH's chapter 11 case. Commencing on September 28, 2021, all motions, notices, and other pleadings relating to any of the Reorganized Debtors shall be filed in RCIH's chapter 11 case, Case No. 20-11247 (MFW).

1

any such Request as fully as possible. The omission of any document or other item of information from the response shall be deemed a representation that such document or item is not known to the Debtors, their counsel, or other representatives or agents of the Debtors.

2.      As used herein:

a.      The terms "document," "documents," "documentation," or "writing" shall mean and include the original, regardless of the location of the original, or any recorded, written, printed, typed, or other graphic material of every kind, variety, type or character, including by way of example (but not limited to) the following: books, records, contracts, agreements, insurance policies, invoices, purchase orders, statements of account, credit and debit memoranda, orders, , bills, installment contracts, rental agreements, certificates of title, financing statements, instruments, expense accounts, cancelled checks, bank statements, bank books, receipt and disbursement journals, tax returns, financial statements, check stubs, drafts, certificates, tabulations, questionnaires, tables, sketches, tax reports, working papers, computer data (including information or programs stored in a computer, whether or not ever printed out or displayed), resumes, medical records, address books, appointment books or telephone logs, notes, speeches, schedules, worksheets, pictures, income statements, profit and loss statements, deposit slips, credit card receipts, records and notations of telephone or personal conversations, conferences, inter-office communications, letters, telexes, partnership agreements, articles of incorporation, catalogue price lists, sound, tape and video recordings, memoranda (including written memoranda of telephone activities), minutes, manuals, diaries, calendars or desk pads, calendar or diary entries, scrapbooks, notebooks, correspondence, bulletins, circulars, policies, forms, pamphlets, notices, statements, journals, postcards, letters, telegrams, reports, magazines, booklets, brochures, instructions, interoffice communications, Photostats, microfilm,

2

microfiche, maps, deposition transcripts, pleadings, orders, releases, appraisals, estimates, valuations, opinions, studies, analyses, summaries, drawings, blueprints, photographs, negatives, graphs, charts, and other data, information or statistics contained within any data storage modules, tapes, discs or any other memory devices (including IBM or similar cards for information, data and programs) or any other information retrievable on storage systems (including computer generated reports and printouts).

b.      The phrase "a document or documents that evidences, refer(s) or relate(s) to" any given subject matter shall mean any document that constitutes, contains, embodies, identifies, states, refers to, deals with, pertains or in any way directly or indirectly bears upon or deals with the subject matter, including (without limitation) documents concerning the preparation of documents.

c.      The term "electronic data" shall mean any document created by any electronic device, including but not limited to, a computer (including personal computers, networks, and mainframes), personal digital assistant, mobile device, including instant messages or text messages sent from a computer, personal digital assistant, mobile device, or any electronic device, or digital or electronic recordings, voicemail saved in digital format.

d.      The term "communication" means every manner or means of disclosure, transfer, or exchange, including every disclosure, transfer or exchange or information whether transmitted orally, face- to-face, by document, electronically, telephone, mail, email, text message, video conference, personal delivery, meeting, or otherwise.

e.      "Reflecting," "relating," or "referring" to a given subject means any document, information, or communication that constitutes, contains, embodies, comprises,

ACTIVE.134995529.02

reflects, identifies, states, refers to, deals with, comments on, responds to, describes, analyses or is in any way pertinent to that subject.

       f.      Singular references include the plural and plural references include the singular.

       g.      The words "and" and "or" shall be construed either conjunctively or disjunctively as required by the context to bring within the scope of this interrogatory any document that might be deemed outside its scope by another construction.

       h.      "Person" shall mean any individual, partnership, association, corporation, joint venture, firm, proprietorship, agency, board, authority, commission, or other legal or business entity.

       i.      "Hertz," "Debtors" or "Debtor Entities" shall mean each of the debtors in the above-captioned cases being jointly administered as *In re Hertz Corporation, et al.,* Case No. 20-11218 (including as reorganized), or any, representative, agent, or employee, thereof, or any affiliate such as Hertz Vehicles LLC.

       j.      "Bankruptcy Cases" shall mean the above styled and numbered cases in the U.S. Bankruptcy Court for the District of Delaware.

       k.      The words "and," "or," and "and/or" are used in the inclusive sense and require all documents that meet the description of one or more of the disjunctive words or phrases.

       l.      The terms "False Police Report Claimants" or "FPR Claimants" shall include, collectively, (i) the persons in the groups "False Police Report Claimants No. 1" and "False Police Report Claimants No. 2" whose claims are the subject of the Reorganized Debtors'

4

21st and 22nd omnibus objections to claims [Case No. 20-11218, D.I. 5898 & 5899], (ii) the movants (the "Group 3 FPR Claimants") in the *Claimants' Motion to Deem Claims Timely or for Extension of General Bar Date Under Rules 3003(c) and 9006* filed December 6, 2021 [D.I. 190] (the "Group 3 Motion"), and (iii) the movants (the "Group 4 FPR Claimants") in the *Group 4 False Police Report Claimants' Motion for Relief from the Confirmation Order to Pursue Claims Outside of Bankruptcy or, in the Alternative, for Extension of General and Administrative Bar Dates under Rules 3003(c) and 9006(b) and Related Relief* filed December 6, 2021 [D.I. 193] (the "Group 4 Motion").

       m.    The terms "Theft Package" or "Theft Packet" shall refer to the collection of documents and information given by Debtors to law enforcement authorities to report a car stolen.

       n.    The term "force charge" refers to the practice of charging to a renter's financial institution upon the closure of a rental contract the amount of authorization holds for that renter..

      3.    If a document called for in this request is withheld under a claim of privilege, furnish a list reflecting each document for which the privilege is claimed and, with respect to each such document, provide the following information:

       a.    Names, addresses, and title of each author or addressee;

       b.    Names, addresses, and title of each addressor;

       c.    Each person to whom copies were sent or distributed and any other person to whom such document or its contents were disclosed;

       d.    Date, page length and subject matter of the document;

  e.  A description of the document; and

  f.  Statement of the basis on which the document is being withheld.

4. Responsive documents shall be produced as they have been kept in the usual course of business or shall be organized and labelled to correspond with the categories in this request.

5. If any data or information responsive to the document requests exists in electronic format or as Electronic Data, you are instructed to produce such electronic data in its native format or, if unavailable as a .tiff file with an associated OCR.txt file capable of being searched; if neither is available, production shall be as a PDF format.

6. If any documents herein requested have been lost, discarded, or destroyed, they shall be identified as completely as possible, including, without limitation, the following information: subject matter, the document's title, previous location, date of disposal, manner of disposal, reason for disposal, person authorizing disposal, and person disposing of the document.

7. If any requested document was, but is no longer in your possession or subject to your control, state what disposition was made of the document and, if the document is still in existence, identify the person who has possession or control of the documents.

<u>REQUESTS FOR PRODUCTION OF DOCUMENTS</u>

<u>REQUEST FOR PRODUCTION NO. 1:</u>

All documents and communications related to any separate funds or accounts set aside to service false theft report claims, including documents sufficient to show those funds/accounts were established.

6

**REQUEST FOR PRODUCTION NO. 2:**

All documents and communications related to any analyses of the amounts that should be allocated to any separate funds or accounts set aside to service false theft report claims.

**REQUEST FOR PRODUCTION NO. 3:**

Documents sufficient to show the source of the money deposited into any separate funds or accounts set aside to service false theft report claims.

**REQUEST FOR PRODUCTION NO. 4:**

Any settlements or other agreements with any individual or entity that release Hertz from liability related to the filing of a vehicle theft report.

**REQUEST FOR PRODUCTION NO. 5:**

All documents and communications related to Hertz's efforts to track false police report complaints and related stories posted on social media or the internet.

**REQUEST FOR PRODUCTION NO. 6:**

The minutes of any meetings of the board of directors, or corporate officer meetings or similar high-level management meetings, discussing Hertz's inventory control systems.

**REQUEST FOR PRODUCTION NO. 7:**

The minutes of any meetings of the board of directors, or corporate officer meetings or similar high-level management meetings, discussing FPR Claimants' cases or any other case in which Hertz has been sued (or threatened with suit) because of a false theft report.

**REQUEST FOR PRODUCTION NO. 8:**

All documents and communications related to Hertz's policies and procedures related to force charging renters' credit or debit cards as well as Hertz's policies and procedures for when such charges are disputed.

ACTIVE.134995529.02

**REQUEST FOR PRODUCTION NO. 9:**

All documents and communications related to Hertz's investigation into the false theft report allegations, including but not limited to any allegations made by Francis Alexander LLC and its clients starting in November 2015 to present, specifically including but not limited to the February 13, 2020 letter sent to CEO Kathryn Marinello and Executive Vice President, General Counsel David Galainena.

**REQUEST FOR PRODUCTION NO. 10:**

All documents, communications, records, and recordings related to each vehicle each FPR Claimant is alleged to have stolen (or that was reported stolen before being rented to an FPR Claimant), including whether and when such vehicles were next rented or if not rented, the disposition of said vehicle.

**REQUEST FOR PRODUCTION NO. 11:**

All documents and communications related to any insurance claim filed by Hertz (or any other Debtor) for the loss of use (such as loss of business use), or any other grounds, of the vehicle allegedly stolen by any one of the FPR Claimants, including documents sufficient to show the amount of any claim paid and if not paid, the grounds for non-payment of the claim.

**REQUEST FOR PRODUCTION NO. 12:**

Any and all documents and communications related to any of the FPR Claimants.

**REQUEST FOR PRODUCTION NO. 13:**

All documents and communications related to any individual against whom Hertz has filed an auto theft report based on conversion.

**REQUEST FOR PRODUCTION NO. 14:**

Any and all documents and communications related to deciding whether to serve notice on a person or persons arrested or implicated in an automobile theft report filed by the Debtors.

8

**REQUEST FOR PRODUCTION NO. 15:**

Any and all documents and communications related to deciding how to provide effective publication notice of these bankruptcy cases and the relevant events during those proceedings, including the General Bar Date.

**REQUEST FOR PRODUCTION NO. 16:**

Any and all documents and communications related to theft investigations undertaken in connection with (1) an FPR Claimant or (2) a vehicle rented by an FPR Claimant.

**REQUEST FOR PRODUCTION NO. 17:**

Any and all documents and communications related to the recovery of any vehicle involved in a theft report filed against an FPR claimant or a vehicle rented by an FPR Claimant.

**REQUEST FOR PRODUCTION NO. 18:**

Any and all documents reflecting conversations with law enforcement involving theft reports filed by the Debtors.

**REQUEST FOR PRODUCTION NO. 19:**

Any and all documents and communications related to policies and procedures related to theft reports.

**REQUEST FOR PRODUCTION NO. 20:**

Documents or records sufficient to ascertain the employees involved in investigating and filing theft reports from January 1, 2015 to the present.

**REQUEST FOR PRODUCTION NO. 21:**

Documents or communications relating to withdrawing or amending a theft report filed by the Debtors.

**REQUEST FOR PRODUCTION NO. 22:**

9

All documents and communications identified or relied on in response to any Interrogatories served to date by the FPR Claimants (or any of them).

**REQUEST FOR PRODUCTION NO. 23:**

All documents compiling, listing, or otherwise showing those against whom the Debtors have filed theft reports.

**REQUEST FOR PRODUCTION NO. 24:**

The document described by Richard Livingston to Claimant Paula Murray as "an internal list of customers who were reported for theft," and any updated versions thereof.

**REQUEST FOR PRODUCTION NO. 25:**

All documents and communications compiling, listing, or otherwise showing vehicles that Hertz has reported stolen.

**REQUEST FOR PRODUCTION NO. 26:**

All communications or documents, whether internal or with third parties, estimating potential liability based on claims relating to false police reports.

**REQUEST FOR PRODUCTION NO. 27:**

The theft reports and related communications with law enforcement or third parties related to any FPR Claimant or any vehicle rented to an FPR Claimant.

**REQUEST FOR PRODUCTION NO. 28:**

All phone (or chat) records related to the FPR Claimants.

**REQUEST FOR PRODUCTION NO. 29:**

All financial and banking records related to the FPR Claimants.

**REQUEST FOR PRODUCTION NO. 30:**

All documents and communications related to arrest or prosecution of an FPR Claimant.

**REQUEST FOR PRODUCTION NO. 31:**

ACTIVE.134995529.02

All documents and communications related to any attempts by Hertz (or any other Debtor) to dismiss other lawsuits filed by persons alleging to have been wrongly accused of car theft by Hertz and seeking relief for same, including any correspondence from Hertz's (or any other Debtor's) counsel to these persons.

**REQUEST FOR PRODUCTION NO. 32:**

The spreadsheet identified in the affidavit docketed at Doc. No. 1071, p.7-11, and produced in case no. 3:19-cv-00775-MGL (Lee v. The Hertz Corporation) and any updated or amended version of the document.

**REQUEST FOR PRODUCTION NO. 33:**

Any and all claims related to theft reporting that were or are handled, reported, or administrated in whole or in part by third party administrators including but not limited to ESIS, Lambda, Lambda GCL, and other third party administrators.

**REQUEST FOR PRODUCTION NO. 34:**

Any and all documents and communications provided to third parties, third party administrators, or insurance companies when closing out a vehicle of any one of the FPR Claimants., including but not limited to any police reports, accompanying or associated documents, or notification of the closing out of the vehicle or claim.

**REQUEST FOR PRODUCTION NO. 35:**

Any Theft Package relating to any FPR Claimant and/or any vehicle rented to a FPR Claimant, any resulting police report, and all related communications with law enforcement and/or third parties, including but not limited to any supplements and/or amendments to the Theft Package or its constituent subparts such as the "overdue rental notes."

**REQUEST FOR PRODUCTION NO. 36:**

Any Theft Package relating to any person against whom the Debtor Entities filed a police report from May 22, 2016 to the present, any resulting police report, and all related communications with law enforcement and/or third parties, including but not limited to any supplements and/or amendments to the Theft Package and/or or its constituent subparts such as the "overdue rental notes."

**REQUEST FOR PRODUCTION NO. 37:**

All documents and/or communications relating to the deletion and/or erasure of rental extensions, and the changing of rental due dates, after a denied authorization hold or payment, including but not limited to policies, procedures, internal communications, and/or the computer code that results in the deletion.

**REQUEST FOR PRODUCTION NO. 38:**

The minutes of any meetings of the board of directors, or corporate officer meetings or similar high-level management meetings, discussing Debtors' theft reporting policies and procedures.

**REQUEST FOR PRODUCTION NO. 39:**

All documents and communications related to Debtors' theft reporting policies and procedures.

**REQUEST FOR PRODUCTION NO. 40:**

All documents and communications related to Debtors' knowledge of whether Debtors and their employees were complying with Hertz's theft reporting policies and procedures.

**REQUEST FOR PRODUCTION NO. 41:**

All documents and communications related to Debtors' knowledge of the effect of Hertz's theft reporting policies and procedures on Hertz customers.

ACTIVE.134995529.02

**REQUEST FOR PRODUCTION NO. 42:**

All documents and communications related to any disclosure to Hertz officers, directors,

or employees that Hertz customers were at risk of false arrest and/or imprisonment.

**REQUEST FOR PRODUCTION NO. 43:**

All documents and communications responsive to any prior request for production served

by the FPR Claimants (or any of them).

**REQUEST FOR PRODUCTION NO. 44:**

All documents and communications that would have been responsive to any prior request

for production served by the FPR Claimants (or any of them) if, at the time of such request, the

request had been on behalf of all current FPR Claimants.

Dated: December 20, 2021

**FRANCIS ALEXANDER, LLC**
Francis Malofiy
280 N. Providence Road, Suite 1
Media, PA 19063
Telephone: (215) 500-1000
Facsimile: (215) 500-1005
Email:  francis@francisalexander.com

**FAEGRE DRINKER
BIDDLE & REATH LLP**

*/s/ Patrick A. Jackson*
Patrick A. Jackson (Bar No. 4976)
Ian J. Bambrick (Bar No. 5455)
Jaclyn C. Marasco (Bar No. 6477)
222 Delaware Avenue, Suite 1410
Wilmington, DE 19801
Telephone:  (302) 467-4200
Facsimile: (302) 467-4201
Emails:  patrick.jackson@faegredrinker.com
         ian.bambrick@faegredrinker.com
         jaclyn.marasco@faegredrinker.com

ACTIVE.134995529.02

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| Rental Car Intermediate Holdings, LLC,[1] | Case No. 20-11247 (MFW) |
| Reorganized Debtor. | (Jointly Administered) |

**FALSE POLICE REPORT CLAIMANTS' SECOND SET OF INTERROGATORIES**

Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure, made applicable by Rules 7026, 7033, and 9014 of the Federal Rules of Bankruptcy Procedure, the False Police Report Claimants[2] hereby request the Debtors to respond under oath and in writing to the following interrogatories (these "Interrogatories") on or before January 19, 2022:

**INSTRUCTIONS AND DEFINITIONS**

1.      These Interrogatories are continuing in character, so as to require the Debtors to file supplemental answers if the Debtors obtains further, contradictory or different information. Such supplemental answers, if any, shall be filed from time to time promptly upon the discovery by you

---

[1]      The last four digits of the tax identification number of Reorganized Debtor Rental Car Intermediate Holdings, LLC ("RCIH") are 2459. The location of the Reorganized Debtors' service address is 8501 Williams Road, Estero, FL 33928. On September 28, 2021, the Court entered a final decree closing each of the chapter 11 cases for The Hertz Corporation and its affiliated reorganized debtors (the "Reorganized Debtors") other than RCIH's chapter 11 case. Commencing on September 28, 2021, all motions, notices, and other pleadings relating to any of the Reorganized Debtors shall be filed in RCIH's chapter 11 case, Case No. 20-11247 (MFW).

[2]      For the avoidance of doubt, each objection to a False Police Report Claimant's claim or motion by a False Police Report Claimant, as applicable, is a separate contested matter with respect to each such False Police Report Claimant, and all individual rights to discovery on account of such contested matters are expressly reserved.  These Interrogatories are asserted jointly and numbered consecutively with interrogatories that were previously served by certain of the False Police Report Claimants solely for ease of administration and to avoid confusion, and without waiver of any individual rights to discovery.

1

of such supplemental information. Each Interrogatory is to be answered separately and as completely as possible. The fact that an investigation is continuing, and discovery is not complete shall not be used as a reason for failure to answer any such Interrogatory as fully as possible. The omission of any name, fact or other item of information from the answer shall be deemed a representation that such name, fact or item is not known to the Debtors, their counsel or other representatives or agents of the Debtors.

2.　　　Answers shall be based upon information known to the Debtors, their agents, attorneys, partners, associates, employees, servants, partners, associates, representatives, investigators or any other party or entity acting or who has acted by or on behalf of the Debtors. To the extent that the answer to any Interrogatory is not based upon information known to the Debtors, the Debtors shall specify that fact and the person or entity possessing such information.

3.　　　If the answer to all or any part of an Interrogatory is not presently known or available, include a statement to that effect, specifying the portion of the Interrogatory that cannot be completely answered. However, once information is available, the Debtors are required to furnish all information available in response to the entire Interrogatory by supplemental answer as required above.

4.　　　If the Debtors refuse to answer any Interrogatory or any part thereof on the grounds of privilege, the Debtors must identify the basis for the privilege claimed, the nature of any information that it refuses to disclose, referring specifically to the Interrogatory or any part thereof to which the Interrogatory applies and by identifying the form in which said information exists, the date of the document or oral communication and the general subject matter of the document or oral communication.

ACTIVE.134995830.02

5.      As used in these Interrogatories:

a.      The terms "You" or "Your" shall mean the answering Debtors, and/or any of their agents, attorneys, partners, associates, employees, servants, representatives, investigators and any person or entity acting or who has acted by or on behalf of the Debtors.

b.      "Person" shall mean any natural person or any corporation, limited liability company, partnership, association, joint venture, firm or other business enterprise or legal entity and means both the singular and plural.

c.      "Document" and "writing" are used interchangeably and shall mean any written or graphic matter of any kind whatsoever, however produced or reproduced, any electronically or magnetically recorded matter of any kind or character, however produced or reproduced, and any other matter constituting the recording of data or information upon any tangible thing by any means, including but not limited to, the original and any non-identical copy of any of the following: books, records, contracts, agreements, promissory notes, invoices, purchase orders, statements of account, credit and debit memoranda, orders, loan agreements, bills, installment contracts, mortgages, deeds of trust, security agreements, certificates of title, financing statements, instruments, expense accounts, canceled checks, bank statements, bank books, receipt and disbursement journals, tax returns, financial statements, check stubs, drafts, certificates, tabulations, questionnaires, tables, sketches, tax reports, working papers, computer data (including information or programs stored in a computer, whether or not ever printed out or displayed), resumes, medical records, address books, appointment books or telephone logs, notes, speeches, schedules, worksheets, pictures, income statements, profit and loss statements, deposit slips, credit card receipts, records and notations of telephone or personal conversations, conferences, inter-office communications, letters, telexes, partnership agreements, articles of

3

incorporation, catalogue price lists, sound, tape and video recordings, memoranda (including written memoranda of telephone activities), minutes, manuals, diaries, calendars or desk pads, calendar or diary entries, scrapbooks, notebooks, correspondence, bulletins, circulars, policies, forms, pamphlets, notices, statements, journals, postcards, letters, telegrams, reports, magazines, booklets, brochures, instructions, interoffice communications, photostats, microfilm, microfiche, maps, deposition transcripts, pleadings, orders, releases, appraisals, estimates, valuations, opinions, studies, analyses, summaries, drawings, blueprints, photographs, negatives, graphs, charts, and other data, information or statistics contained within any data storage modules, tapes, discs or any other memory devices (including IBM or similar cards for information, data and programs) or any other information retrievable on storage systems (including computer generated reports and printouts).

d.      "Communication" or "communication" shall mean any spoken communication, contact, oral or written, formal or informal at any time or place or under any circumstances whatsoever, whereby information of any nature was transmitted, recorded, or transferred (whether telephonic, written, in person or otherwise). Where you are requested to identify or list any communications, your identification or list of such communications shall require you separately as to each communication, to identify the mode of such communication, to identify the persons who participated in such communication, to identify the persons who overheard or had access to such communication, and to state the date of such communication, the time and/or place of such communication, and the subject matter of such communication.

e.      "Identify" or "state the identity of" shall have the following meaning when used in the following contexts:

ACTIVE.134995830.02

i.        When used in connection with a natural person, you are required to state his or her: (a) full name; (b) present or last known home address (including street name and number, city and state); (c) present or last known business address; (d) present position, business affiliation and job description and, if unknown, so state and set forth the corresponding last known instance of such information; (e) position, business affiliation and job description at the time in question, with respect to the Interrogatory or other request involved.

ii.        When used in connection with a corporation, limited liability company, partnership, association, joint venture, firm or other business enterprise or legal entity, you are required to state in the answer in each instance: (a) the full name and address; (b) a brief description of the primary business in which such entity is engaged; and (c) the identity of all persons who acted or were authorized to act on its behalf in connection with the matter referred to.

iii.        When used in connection with a document or writing, you are required to state in the answer in each instance: (a) whether or not such document is known to be in existence at the time of the answer; (b) the date of the document; (c) type of document (*e.g.* letter, memorandum, computer printout, estimate, etc.); (d) identity of the author(s), addressee(s) and any other person to whom the document was shown or distributed; (e) any filing or identifying number; and (f) the present or last known location and/or custodian thereof. If any such document was, but is no longer in the possession of or subject to control of Debtors or any affiliated business entity, state what and when disposition was made of it.

iv.        When used in connection with an oral communication, you are required to state in the answer in each instance: (a) the identity of each person communicating; (b) the identity of the recipient(s) and intended recipient(s) of the communication; (c) the identity

5

of each person present or otherwise aware of the substance of the communication; (d) the date and the place where it was made; (e) the identity of any document or writing that embodies, includes, reflects, concerns, relates, refers to or is based upon such oral communication; and (f) a detailed description of the substance of the communication.

v.      When used in connection with a transaction, you are required to state in the answer in each instance: (a) a description of the property or thing that is the subject of the transaction; (b) the identity of the parties to the transaction; (c) the date of the transaction; (d) the place or site where the transaction took place; (e) the location of the property or thing that was the subject to the transaction at the time the transaction took place; (f) the identity of all persons who have knowledge of the transaction; and (g) identify all documents that refer or relate to the transaction.

vi.      When used in connection with products or merchandise, you are required to state in the answer in each instance: (a) the full name of the product; (b) the use or purpose of the product; (c) the manufacturer of the product; (c) all persons who have personal knowledge of the sale or use of the product; (d) the volume of the product sold; (e) the gross receipts received from the sale of the product for each year that the product was sold; and (f) the identity of any documents that relate to the ownership of the product or the right to proceeds from the sale or use of the product.

f.      "Electronic data" shall mean any document created by any electronic device, including but not limited to, a computer (including personal computers, networks, and mainframes), personal digital assistant, mobile device, including instant messages or text messages sent from a computer, personal digital assistant, mobile device, or any electronic device, or digital or electronic recordings, voicemail saved in digital format.

6

g. "Reflecting," "relating," or "referring" to a given subject means any document, information, or communication that constitutes, contains, embodies, comprises, reflects, identifies, states, refers to, deals with, comments on, responds to, describes, analyses or is in any way pertinent to that subject.

h. Singular references include the plural and plural references include the singular.

i. The words "and" and "or" shall be construed either conjunctively or disjunctively as required by the context to bring within the scope of this interrogatory any document that might be deemed outside its scope by another construction.

j. "Person" shall mean any individual, partnership, association, corporation, joint venture, firm, proprietorship, agency, board, authority, commission, or other legal or business entity.

k. "Hertz," "Debtors" or "Debtor Entities" shall mean each of the debtors in the above-captioned cases being jointly administered as *In re Hertz Corporation, et al.,* Case No. 20-11218 (including as reorganized), or any representative, agent, or employee, thereof, or any affiliate such as Hertz Vehicles LLC.

l. "You" and "Your" shall mean Hertz, Debtors, or Debtor Entities as defined above.

m. "Bankruptcy Cases" shall mean the above styled and numbered cases in the U.S. Bankruptcy Court for the District of Delaware.

n. The terms "False Police Report Claimants" or "FPR Claimants" shall include, collectively, (i) the persons in the groups "False Police Report Claimants No. 1" and "False Police Report Claimants No. 2" whose claims are the subject of the Reorganized Debtors'

7

21st and 22nd omnibus objections to claims [Case No. 20-11218, D.I. 5898 & 5899], (ii) the

movants (the "Group 3 FPR Claimants") in the *Claimants' Motion to Deem Claims Timely or for*

*Extension of General Bar Date Under Rules 3003(c) and 9006* filed December 6, 2021 [D.I. 190]

(the "Group 3 Motion"), and (iii) the movants (the "Group 4 FPR Claimants") in the *Group 4*

*False Police Report Claimants' Motion for Relief from the Confirmation Order to Pursue Claims*

*Outside of Bankruptcy or, in the Alternative, for Extension of General and Administrative Bar*

*Dates under Rules 3003(c) and 9006(b) and Related Relief* filed December 6, 2021 [D.I. 193]

(the "Group 4 Motion").

   o.  The term "Plan" shall mean the *Second Modified Third Amended Joint*

*Chapter 11 Plan of Reorganization of The Hertz Corporation and its Debtor Affiliates* confirmed

by order of the United States Bankruptcy Court for the District of Delaware on June 10, 2021

[D.I. 5261].

   p.  The terms "Theft Package" or "Theft Packet" shall refer to the collection

of documents and information given by Debtors to law enforcement authorities to report a car

stolen.

## INTERROGATORIES

### INTERROGATORY NO. 1:

   Update each of Your responses to prior interrogatories to include and address the Group 4

FPR Claimants (as identified in the Group 4 Motion) as if they had been "FPR Claimants" as

originally defined therein.

### INTERROGATORY NO. 2:

   Identify, by FPR Claimant, all persons involved in the submission of any Theft Package

to any law enforcement agency related to an FPR Claimant or the vehicle that he or she rented,

including any and all persons who approved the submission of the Theft Package to any law enforcement agency.

**INTERROGATORY NO. 3**:

Identify, by FPR Claimant, all persons involved in investigating any alleged vehicle theft by an FPR Claimant.

**INTERROGATORY NO. 4**:

Identify all insurance companies to whom, and insurance policies under which, You submitted a claim related to the alleged theft of a vehicle by an FPR Claimant, e.g., loss of use claims.

**INTERROGATORY NO. 5**:

Identify the total number and amount of claims paid under the policies identified in the previous interrogatory.

**INTERROGATORY NO. 6**:

Identify by name and account number any accounts established to service the claims made by any one of the FPR Claimants.

**INTERROGATORY NO. 7**:

Identify, by FPR Claimant, by name the vehicle repossession services You claim to have contacted or hired as part of Your efforts, if any, to recover vehicles allegedly stolen by any of the FPR Claimants.

**INTERROGATORY NO. 8**:

Identify all law enforcement agencies that have sent, given, transmitted, or provided You in any manner or medium warnings, admonitions, or complaints related to Your vehicle theft reporting practices.

ACTIVE.134995830.02

**INTERROGATORY NO. 9**:

Identify all non-legal personnel tasked (whether employed by You or by a third party) with assisting in this lawsuit and provide a brief description of their role.

**INTERROGATORY NO. 10**:

Identify the earliest date at which the Board of Directors was told of the FPR Claimants' allegations about Debtors' systemic deficiencies as to false Theft Packages.

**INTERROGATORY NO. 11**:

Identify all materials given to the Board of Directors or any of Your officers that summarize or describe the FPR Claimants' allegations or similar allegations made by other persons.

**INTERROGATORY NO. 12**:

Identify by name, if any, the internal policies related to Your actions and procedures in response to inquiries from law enforcement agencies, including any inquiries about whether the subject of a Theft Package has a valid rental agreement.

**INTERROGATORY NO. 13**:

Explain how recordings with renters, especially and including the FPR Claimants, are stored and saved for future use. This response requires a description of the digital (or analog) storage media, how such media is organized, who has access to such media, and the circumstances surrounding the deletion or destruction of such media.

**INTERROGATORY NO. 14**:

For each quarter since January 2017, identify per quarter the number of Theft Packages filed against renters in connection with vehicles they had rented from You.

**INTERROGATORY NO. 15**:

Identify by name the FPR Claimants, if any, whom you assert were served actual notice of each of the following: (i) commencement of the Debtors' chapter 11 cases, (ii) the general claims bar date in the Debtors' chapter 11 cases, (iii) the hearing on confirmation of the Debtors' chapter 11 plan and the deadline for objections thereto, and (iv) confirmation and effectiveness of the Plan and the deadline for filing administrative expense requests.

**INTERROGATORY NO. 16**:

Identify the earliest date at which the Plan Sponsors or Amarillo (each as defined in the Plan), or any of them, were told of the FPR Claimants' allegations about the Debtors' systemic deficiencies as to false Theft Packages.

**INTERROGATORY NO. 17**:

Identify all persons to whom You or Your counsel have sent correspondence demanding dismissal of lawsuits filed by persons alleging to have been wrongly accused of car theft by Hertz and seeking relief for same.

**INTERROGATORY NO. 18**:

Identify by name and version the software used to track rentals, rental extensions, rental returns, and inventory by Hertz from 2015 to the present.

**INTERROGATORY NO. 19**:

Identify by name and version the software used to create lists, spreadsheets, or rolls of renters against whom Hertz (or any other Debtor) has filed a vehicle Theft Package.

**INTERROGATORY NO. 20**:

Identify, by FPR Claimant, all persons involved in any rental of a vehicle to an FPR Claimant, including those at any local office, those who supervise the local office, and those involved with the rental at a national level.

ACTIVE.134995830.02

**INTERROGATORY NO. 21**:

Identify all persons against whom You have filed a Theft Package since 2017.

**INTERROGATORY NO. 22**:

Identify all persons that You are aware have been arrested in connection with a Theft

Package filed by You—including because You rented the person a vehicle previously reported

stolen—since 2017.

**INTERROGATORY NO. 23**:

Identify all persons involved in deciding either (or both) of the following: (i) to whom to

give notice of key stages of the bankruptcy proceedings, including those referenced in

interrogatory 15 above, and (ii) how to provide publication notice.

Dated: December 20, 2021

**FRANCIS ALEXANDER, LLC**
Francis Malofiy
280 N. Providence Road, Suite 1
Media, PA 19063
Telephone: (215) 500-1000
Facsimile: (215) 500-1005
Email:  francis@francisalexander.com

**FAEGRE DRINKER**
**BIDDLE & REATH LLP**

*/s/ Patrick A. Jackson*
Patrick A. Jackson (Bar No. 4976)
Ian J. Bambrick (Bar No. 5455)
Jaclyn C. Marasco (Bar No. 6477)
222 Delaware Avenue, Suite 1410
Wilmington, DE 19801
Telephone:  (302) 467-4200
Facsimile: (302) 467-4201
Emails:  patrick.jackson@faegredrinker.com
        ian.bambrick@faegredrinker.com
        jaclyn.marasco@faegredrinker.com

*Co-Counsel for the False Police Report Claimants*

12