# EXHIBIT 1

## Objection

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re | Chapter 11 |
| Rental Car Intermediate Holdings, LLC,[1] | Case No. 20-11247 (MFW) |
| Reorganized Debtor. | **Re: D.I. 192[2]** |

## REORGANIZED DEBTOR'S OBJECTION TO THE FALSE ARREST CLAIMANTS' MOTION PURSUANT TO BANKRUPTCY RULE 9014 (I) TO APPLY BANKRUPTCY RULE 7023 AND (II) TO SET A DISCOVERY SCHEDULE ON THE PUTATIVE CLASS CLAIMS

The reorganized debtor (the "**Reorganized Debtor**," and when referenced prior to the Effective Date,[3] the "**Debtors**"), including The Hertz Corporation ("**Hertz**"), in the above-captioned cases, hereby files this objection (the "**Objection**") to *Claimants' Motion Pursuant to Bankruptcy Rule 9014 (I) To Apply Bankruptcy Rule 7023 and (II) To Set a Discovery Schedule On The Putative Class Claims* [D.I. 192] (the "**Class Claim Motion**" or "**Motion**") filed on behalf of a putative class of False Police Report Claimants (the "**Claimants**" or "**Movants**").  In support of this Objection, the Reorganized Debtor respectfully represents as follows:[4]

---

[1] The last four digits of the tax identification number of Reorganized Debtor Rental Car Intermediate Holdings, LLC ("**RCIH**") are 2459.  The location of the Reorganized Debtors' service address is 8501 Williams Road, Estero, FL 33928.  On September 28, 2021, the Court entered a final decree closing each of the chapter 11 cases for the Reorganized Debtors (as defined below) other than RCIH's chapter 11 case. Commencing on September 28, 2021, all motions, notices, and other pleadings relating to any of the Reorganized Debtors shall be filed in RCIH's chapter 11 case, Case No. 20-11247 (MFW).

[2] As used herein, "Main D.I." references are to the docket in Case No. 20-11218, and "D.I." references are to the docket in Case No. 20-11247.

[3] On June 30, 2021 (the "**Effective Date**"), the *Second Modified Third Amended Joint Chapter 11 Plan of Reorganization of The Hertz Corporation and its Debtor Affiliates* [Main D.I. 5261] (the "**Plan**") became effective in accordance with its terms.  [*See* Main D.I. 5477].

[4] The Reorganized Debtor will demonstrate the facts stated herein at any evidentiary hearing regarding the Class Claim Motion, this Objection, or the Non-Substantive Objection (as defined herein).  Additionally, the Reorganized Debtor reserves the right to object to and defend against the Class Claims on any ground.

## PRELIMINARY STATEMENT

At the November 4 hearing, the Reorganized Debtor explained that knowing the contours of the proposed class would be essential to determining the appropriate scope of discovery, if any. *See* Nov. 4, 2021 Hr'g Tr. at 55:4–10 ("MR. SHORE: I think, Your Honor, that – let's just get them to get their 9006 motions on file that lay out what they want to lay out, we'll assess it and we'll look . . . I can't -- until I see how many claims we're talking about, the size of the claims we're talking about, and anything else like that, it's kind of hard to make these determinations."). Following this colloquy, the Court directed Movants to file a motion to certify their class *before* the Court considered any additional discovery requests. *See* Nov. 4, 2021 Hr'g Tr. at 67:5–10 ("[W]hether or not there is going to be a certification of a class could be relevant to the debtor before doing any discovery on these claims. So I would like to see [a Rule 7023 motion] filed sooner rather than later."); *see also id.* at 56:12-17 ("I think the 9006 motion should be filed so we know who's in which category . . . then we can address what discovery should proceed."); *id.* at 57:11–16 ("Well, I would like to address the 9006 motion promptly [on] December 4 . . . And then I would like to have a . . . hearing on the discovery requests to see if those or any discovery should proceed[.]"). In keeping with this instruction, the Court's scheduling order [D.I. 187] regarding the purported class proofs of claim directed Movants to file a "Class Claim Motion . . . requesting the Court apply Bankruptcy Rule 7023 to such class claim by no later than December 6, 2021" or otherwise have such purported class proofs of claim "disallowed by separate order of the Court sustaining the applicable Claim Objection." Scheduling Order 1–2.

Movants have failed to follow these instructions. The "class motion" that Movants filed does not even try to explain why the Court should apply Rule 7023. Indeed, Movants admit that they cannot make this showing. Instead, Movants ask the Court to order discovery—including discovery that Movants sought, and the Court denied, in July 2020—so that Movants can "better

understand" whether proceeding with class certification claim makes sense.  *See* Mot. ¶¶ 38-39

(claiming "Movants are entitled to," among other things, "the July 2020 Discovery", the October

2021 discovery and "additional discovery," at least some of which Movants served just hours

before this Objection was filed).[5]  This is the opposite of what the Court directed.

It is not clear why Movants are not prepared, over one year after filing the purported class

proofs of claim and more than five months after the Effective Date, to file a motion seeking to

certify the class under Rule 7023.  It is also unclear why Movants need additional discovery before

they can determine whether to certify the class.  Movants purport to represent nearly 200 claimants,

which should be a sufficient number for Movants to determine whether the class can meet the

requisite standards of numerosity, commonality, typicality and adequacy.  Indeed, the purpose of

the requested discovery seems to be to allow Movants to identify other potential claimants whose

late claims they can assert on an individual basis, like the 200 existing claimants.  An entire section

of the Motion sits under the heading "In the Absence of Rule 7023, Class Members"—*i.e.*, the

additional claimants to be identified through discovery—"Should Be Permitted To File Individual

Proofs of Claim."

In any case, the burden is on the class proponent to establish the appropriateness of class

certification, and Movants concede that they cannot meet it.  *See* June 29, 2021 Hr'g Tr. at 20:10–

12, *In re Mallinckrodt plc*, Case No. 20-12522 (JTD) (Bankr. D. Del. June 30, 2021) [D.I. 3074]

[hereinafter the "**Mallinckrodt Class Claim Decision**"] ("As many courts have concluded, the

burden of establishing class certification is on the party seeking to assert class claims."); *see also*

---

[5] On December 20, 2021 at 4:20 p.m. ET, the False Police Report Claimants served on the Debtors an additional 44 Requests for Production and 23 Interrogatories.  That is on top of the 32 Requests for Production, 33 Interrogatories, four Requests for Admission and 13 deposition topics that Claimants previously served and apparently continue to press.  The Debtors are continuing to review the new discovery requests and reserve all rights and objections.

*In re Computer Learning Centers, Inc.*, 344 B.R. 79, 85 (Bankr. E.D. Va. 2006) ("The burden is on the claimant to obtain application of Rule 7023 and also to satisfy the requirements of Rule 23 itself."). Movants do not even state clear, affirmative support for class certification. *See, e.g.*, Mot. ¶ 25 ("a class action may well be more efficient"); *id.* ("a class action may be the most efficient way of resolving this dispute"). The appropriate result is to deny the Motion, not to shift the burden to the Debtors to provide discovery in connection with a hypothetical class that Movants still have not sought to certify.

Because Movants cannot meet their burden, the Motion does not include the typical two-step analysis that is required when asking a court to apply Rule 7023 and certify a purported class proof of claim—that is, allowing a court first to decide "whether it is beneficial to apply Bankruptcy Rule 7023 . . . to the claims administration process, [and] [s]econd, [to] determine whether the requirements of Federal Rule of Civil Procedure 23 have been satisfied, such that a class proof of claim may be properly be filed." *In re Pac Sunwear of Cal., Inc.*, No. 16-10882, 2016 Bankr. Lexis 2579, at *14 (Bankr. D. Del. June 22, 2016). The Motion does not state a reason why the Court should exercise its discretion to apply Rule 7023 in satisfaction of each of the *Musicland* factors. More critically, the Motion fails to define the "putative class," identify a named plaintiff, or meet claimants' burden to establish each element of Rule 23.

For these reasons, the Court should decline to exercise its discretionary authority to extend Bankruptcy Rule 7023 to Movants' purported class claims, and deny the Motion.

## BACKGROUND

### A.    General Background

1.     On May 22, 2020, each of the Debtors commenced a voluntary case under chapter 11 of the Bankruptcy Code with this Court, which were jointly administered for procedural purposes (collectively, the "**Chapter 11 Cases**"). On September 9, 2020, the Court entered the

*Order Establishing Bar Dates and Related Procedures for Filing Proofs of Claim, Including Claims Arising Under Section 503(b)(9) of the Bankruptcy Code, and Approving the Form and Manner of Notice Thereof* [Main D.I. 1240] (the "**Bar Date Order**").  That same day, the Debtors filed the *Notice of Deadlines for Filing Proofs of Claim, Including Claims Arising Under Section 503(b)(9) of the Bankruptcy Code Against Debtors* [Main D.I. 1243] (the "**Bar Date Notice**").  No parties in interest objected to the Bar Date Order, including counsel to Movants.[6]

2.        The Bar Date Order and Bar Date Notice established, among other things, October 21, 2020 at 5:00 p.m. (prevailing Eastern Time) as the deadline to file proofs of claim in the Chapter 11 Cases for persons and certain entities (the "**General Bar Date**").  Pursuant to the Bar Date Order, each person that held or sought to assert a claim against the Debtors, "whether or not such person is or may be included in or represented by a purported class, collective, or similar representative action," was required to properly file a proof of clam on or before the established Bar Date.  *See id.*

3.        More specifically, paragraph 7 of the Bar Date Order stated:

> Any person or entity . . . whether or not such person or entity is or may be included in or represented by a purported class action, class suit, or similar representative action filed, or that may be filed, against the Debtors (collectively, "**Representative Actions**") that holds or seeks to assert a claim against the Debtors that arose, or is deemed to have arisen prior to the Petition Date, no matter how remote, contingent or unliquidated . . . must properly file a Proof of Claim on or before the applicable Bar Date. The Debtors . . . reserve all rights with respect to any Representative Action, including without limitation with respect to (a) whether any Proof of Claim in respect of a Representative Action (a "**Representative Claim**") has been properly and timely filed by the applicable Bar Date, (b) any objection or other right with respect to any Representative Action or

---

[6] *Certification of Counsel Regarding Debtors' Motion for Entry of an Order Establishing Bar Dates and Related Procedures for Filing Proofs of Claim, Including Claims Arising under Section 503(b)(9) of the Bankruptcy Code, and Approving the Form and Manner of Notice Thereof* ¶ 3, Main D.I. 1230.  The Debtors received one formal reservation of rights, as well as some informal comments; no objections or pleadings were entered.

Representative Claim, (c) the composition or membership of any class or group with respect to such Representative Action or Claim, and (d) whether the proper and timely filing of a Representative Claim, if any, shall be deemed a proper and timely Proof of Claim made by each member of the related class or group of creditors.

4.      The Bar Date Notice similarly apprised parties in interest of the requirement for "[a]ny person or entity that has or seeks to assert a claim against the Debtors" to file a proof of claim by the applicable bar date, "regardless of whether such person or entity is, or may be included in, or represented by, a purported class action, class suit, or similar representative action filed, or that may be filed, against the Debtors."  Bar Date Notice at 4 [Main D.I. 1243].

5.      In accordance with the Bar Date Order, on September 16, 2020, the Debtors' claims administrator, Prime Clerk, mailed the Bar Date Notice and proof of claim forms to, among others, all known holders of potential claims and their counsel (if known), including counsel to the "False Police Report Claimants No. 1."  [*See* Main D.I. 1376 (affidavit of service)].

6.      The Debtors also implemented an expansive publication notice program in order to provide constructive notice to all potential claimants.  The Debtors caused the Publication Notice (as defined in the Bar Date Order) to be published (a) on September 17, 2020 in *USA Today*, *The Wall Street Journal*, *The New York Times*, and *The Globe and Mail* (*see* Main D.I. 1396), (b) on September 30, 2020 in *The Philadelphia Inquirer*, *San Francisco Chronicle*, *Arizona Republic*, *Chicago Tribune*, *Los Angeles Times*, *The San Diego Union Tribune* (*see* Main D.I. 1572), and (c) on October 2, 2020 in *Naples Daily News*, *El Diario de El Paso* (translated into Spanish), and *Journal de Montréal* (translated into French) [*see* Main D.I. 1572] (the foregoing thirteen publications, collectively, the "**Newspapers**").  *The Globe and Mail* and the national editions of *USA Today*, *The Wall Street Journal*, and *The New York Times* have a combined circulation of approximately 2.2 million and a readership of approximately 20 million.

7.      Prime Clerk also caused the Bar Date Notice to be featured prominently on its website for the Chapter 11 Cases.  The Bar Date Notice was available, starting on September 9, 2020, under multiple links, including the main page and a dedicated "Bar Date Notice" link under the "Quick Links" menu.  The General Bar Date was also highlighted under the "Submit a Claim" link.  Since going live on or about the Petition Date, the Case Management Website has at all times been free for public access.

8.      Prior to the General Bar Date, 12,992 proofs of claim were filed in the Chapter 11 Cases.  Of these, approximately 9,000 were filed by claimants who did not receive individualized service by mail of the Bar Date Notice.

9.      On June 10, 2021 (the "**Confirmation Date**"), the Court entered the *Order (i) Confirming Second Modified Third Amended Joint Chapter 11 Plan of Reorganization of The Hertz Corporation and its Debtor Affiliates and (ii) Granting Related Relief* [Main D.I. 5261] (such chapter 11 plan, together with the Plan Supplements (as defined therein), all schedules, and exhibits thereto, the "Plan").  On June 30, 2021 (the "**Effective Date**"), the Plan became effective in accordance with its terms and the Debtors became the Reorganized Debtors.  [Main D.I. 5477].

B.      **The Mediation Process For Class And Representative Actions**

10.     The Debtors' decision to adopt such a robust (and expensive) notice program was informed in part by the fact that, prior to the Petition Date, the Debtors were defendants in a variety of purported representative actions in various jurisdictions throughout the United States.

11.     Nearly one month after the General Bar Date had passed, counsel for a lead claimant in a (now settled) consumer privacy action in California filed a motion with this Court seeking certification of the underlying class under Bankruptcy Rule 7023.  *Consumer Privacy Litigation Plaintiff's Motion for Entry of an Order (I) Applying Bankruptcy Rule 7023 to Class*

*Proof of Claim, and (II) Certifying the Class for Purposes of the Class Proof of Claim* (Nov. 13, 2020) [Main D.I. 1748].

12.    Although the Debtors disputed the allowability of any of the class proofs of claim, on December 16, 2020, the Debtors, together with the Official Committee and representatives of 18 purported representative actions, agreed to a mediation process.  This Court approved the mediation and related procedures on January 14, 2021.  *See Order (I) Approving the Mediation Stipulation Regarding Claims Arising from Prepetition Representative Actions: (A) Appointing a Mediator, (B) Referring Certain Matters to Mediation and (C) Approving the Mediation Procedures, and (II) Granting Related Relief* [Main D.I. 2450].

13.    As a precondition to participation in the mediation process, each of the 18 purported representative cases had to file a motion to apply Rule 7023 to their class proofs of claim.  Each of those Rules 7023 Motions included analysis of both the *Musicland* factors and how the purported class satisfied the requirements of Rule 23.[7]

14.    Of the 18 purported representative cases that entered the mediation process, all were successfully resolved and have received Court approval.  Though Movants were invited to participate in the class mediation procedures, they declined to participate.

## C.    Movants And The Class Proofs Of Claim

15.    The "**False Police Report Claimants**" consist of approximately 185 individuals who are identified in various proofs of claim and motions filed against the Debtors.

---

[7] *See* Main D.I. 1748, 1945, 2164, 2165, 2169, 2180-1, 2198, 2205, 2206, 2214, 2218, 2219, 2223, 2224, 2226, 2235.  Two of these prepetition actions had classes certified for settlement purposes prior to the commencement of the Chapter 11 Cases.  As such, these two actions participated in the Mediation Process but did not file Rule 7023 motions.

16.     On October 20 and 21, 2020, the False Police Report Claimants filed a total of 91 proofs of claim against the Debtors.[8]   The False Police Report Claimants filed those proofs of claim on behalf of three groups:  (i) the False Police Report Claimants No. 1; (ii) a group of 115 additional claimants called the "False Police Report Claimants No. 2"; and (iii) a purported unknown class of False Police Report Claimants.

17.     The "**Class Proofs of Claim**" are the 16 putative class proofs of claim that have not been withdrawn or amended which were purportedly filed "on behalf of a class of unknown individuals." *See, e.g.*, Claim #11023.   The Class Proofs of Claim do not include any named plaintiff.  *See, e.g.*, *id*.

18.     The Class Proofs of Claim assert that the unknown individuals in the class "have been damaged by the Debtors' actions in, among other things, falsely reporting said individual customers for car theft, prosecuting them, and many of which have been sentenced to jail on felony charges, causing them to lose their jobs, giving them criminal records, causing them to lose their homes, and separating them from their family and loved ones."  *See, e.g.*, *id*.   Additionally, Movants assert a non-exhaustive list of 18 causes of action, ranging from breach of contract to spoliation to civil RICO.  *See, e.g.*, *id*. at 2 ("The claims . . . include, but are not limited to, causes of action for: malicious prosecution, abuse of process, false arrest, false imprisonment, fraud, fraud in the inducement, intentional infliction of emotional distress, negligent infliction of emotional distress, negligence, negligent misrepresentation, defamation, invasion of privacy false light, breach of contract, breach of implied contractual warranties, false advertising, spoliation, civil conspiracy, and civil RICO.").

---

[8] On April 29, 2021, the Court entered an order approving a stipulation between the Debtors and the False Police Report Claimants to withdraw certain of the False Police Report Claimants' claims against the Debtors.  *See* Main D.I. 4322.

19.     On the Confirmation Date, the False Police Report Claimants filed 28 additional proofs of claim against the Debtors, all of which were styled as amendments to prior proofs of claim.  Among other things, some of the proofs of claim filed that day (the "**Late Claims**")[9] professed to change the purported class proofs of claims to be on behalf of a group of 29 individual claimants called the "False Police Report Claimants No. 3."  These 29 claimants were not identified anywhere in the Class Proofs of Claims or any other proof of claim filed by the General Bar Date.

**D.     The Debtors' Preliminary Objections and The Motion**

20.     On August 4, 2021, Movants filed the *Motion of False Police Report Claimants No. 3 for Relief from Any Stay and Plan Injunction* [Main D.I. 5656] on behalf of the "No. 3" group of claimants (the "**Plan Injunction Motion**"), in which other members of Movants' groups joined [Main D.I. 5687], which sought relief from any stay or injunction under the Plan so as to: (a) pursue and liquidate their asserted claims in the forum of their choice outside of this Court; (b) recover against applicable insurance policies; (c) pursue alleged non-Debtor co-defendants; and (d) seek other equitable relief.  Plan Injunction Mot. ¶ 38.  The Reorganized Debtors objected [*see* Main D.I. 5703], and the Court entered an order denying the Plan Injunction Motion.  [*See* Main D.I. 5875] (the "**Initial Scheduling Order**").  Among other things, the Initial Scheduling Order also established deadlines related to the Reorganized Debtors' preliminary objections to the False Police Report Claimants' proofs of claim.  *Id.* ¶ 2.

21.     On September 20, 2021, in accordance with the Initial Scheduling Order, the Reorganized Debtors filed two preliminary omnibus objections to the proofs of claim filed by Movants: (i) the *Reorganized Debtors' Twenty-First Omnibus (Non-Substantive) Objection to*

---

[9] Specifically, Claim Nos. 15282, 15257, 15245, 15261, 15277, 15268, 15256, 15278 & 15276.

*False Police Report Claimants' (I) Amended and Superseded Claims, (II) Duplicative Claims, and (III) Late Claims* [Main D.I. 5898] (the "**Non-Substantive Objection**") and (ii) the *Reorganized Debtors' Twenty-Second Omnibus (Substantive) Objection to False Police Report Claimants' Non-Compliant, Unsubstantiated, and Class Claims, and Request for a Limited Waiver of Local Rule 3007-1(f)(iii), to the Extent Such Rule May Apply* [Main D.I. 5899] (the "**Substantive Objection**" and, together, the "**Claim Objections**").  The Claim Objections set forth objections to certain of the False Police Report Claimants' proofs of claim on various grounds, including, among other things, that the Class Proofs of Claim should be disallowed for the False Police Report Claimants failure to seek leave from the Court to file the Class Proofs of Claim.

22.     On November 4, 2021, the Court held a hearing (the "**November 4 Hearing**") to consider, among other things, the Claim Objections.  At the hearing, the Court ordered further proceedings and deadlines regarding the claims filed, or to be filed, by Movants, including directing that Movants (i) file by December 6, 2021 a motion requesting the Court apply Bankruptcy Rule 7023 to the Class Proofs of Claim, and (ii) amend the proofs of claim to include separate declarations by each individual claimant regarding the facts underlying their claim. *See* Hr'g Tr. 63:6–9.  The parties conferred and agreed on a scheduling order for the further deadlines and proceedings.

23.     On December 6, 2021, the Court entered the *Scheduling Order Regarding Certain False Police Report Proofs of Claim* [D.I. 187] (the "**Second Scheduling Order**"), which, among other things, ordered that Movants file "a Class Claim Motion[] requesting the Court apply Bankruptcy Rule 7023 to such class claim by no later than December 6, 2021." *Id.*

24.     On December 6, 2021, Claimants filed their Class Claim Motion, seeking permission to proceed as a class because, Claimants argue, the *Musicland* factors support such

relief.  Mot. ¶ 21.  The Motion does not include any facts or arguments as to how the putative class

satisfies the requirements for class certification under Rule 23.  Instead, Claimants request that the

Court order discovery so that they can "better understand" whether proceeding as a class makes

sense.  *Id.* ¶ 42.

25.    On the same day, Claimants filed a motion on behalf of a new group of 26

Claimants, known as False Police Report Claimants No. 4.  With that new group, Claimants now

constitute almost 200 purported claimants.[10]

## ARGUMENT

### I.    The Court Should Decline To Certify The Class Under Rule 7023

#### A.    Movants Fail To Plead The Bare Minimum Of What Is Required For The Court To Grant The Relief Sought

26.    It is undisputed that a motion for class certification in the bankruptcy context must

include ***both*** an argument as to why the court should exercise its discretion (the so-called

"*Musicland* factors") as well as a description of how the purported class satisfies the requirements

of Rule 23.  *See In re Chaparral Energy, Inc.*, 571 B.R. 642, 646 (Bankr. D. Del. 2017) [hereinafter

"**Chaparral I**"] ("First, the court must decide whether it is beneficial to apply Bankruptcy Rule

7023 . . . Second, the court must determine whether the requirements of Federal Rule 23 have been

satisfied."); *In re Pac. Sunwear of California, Inc.*, 2016 WL 3564484, at *5 (Bankr. D. Del. June

22, 2016) (acknowledging the two-step process of considering whether Rule 7023 applies,

followed by an analyses of Rule 23); *see also In re MF Global, Inc.*, 512 B.R. 757, 763 (Bankr.

S.D.N.Y. 2014) ("The exercise . . . is really a two-step process: First, the Court must exercise its

discretion whether to apply Rule 23 to the proposed class claim.  Second, the Court must determine

---

[10] The Reorganized Debtor reserves the right to object to the claims asserted by the Group 4 Claimants on any grounds.

whether the proposed class claim satisfies the requirements of Rule 23 for class certification."); *In re Motors Liquidation Co.*, 447 B.R. 150, 157 (Bankr. S.D.N.Y. 2011) ("[T]he proponent of a class claim must (1) make a motion to extend the application of Rule 23 to some contested matter; (2) satisfy the requirements of Rule 23; and (3) show that the benefits derived from the use of the class claim device are consistent with the goals of bankruptcy.").  This analysis is critical because it allows the court to consider "whether the putative representatives are appropriate to act as fiduciaries for their class."  *In re Craft*, 321 B.R. 189, 198 (Bankr. N.D. Tex. 2005).  The Court's scrutiny of these factors is heightened when there is no prepetition class action, as is the case here. *In re Sacred Heart Hosp.*, 177 B.R. 16, 23 (Bankr. E.D. Pa. 1995) ("The presence of such a 'virgin class' necessitates heightened analysis of whether [the Rule 23] requirements are satisfied.").

27.     Pursuant to this requirement, a movant seeking to certify a class must demonstrate that the class meets the basic requirements of Federal Rule of Civil Procedure 23.  *See, e.g.*, *In re Kaiser*, 278 B.R. 58, 64 (Bankr. D. Del. 2002) (stating in the context of a Rule 7023 motion, "[i]n order to certify a class action, the claimant must satisfy the four elements of Rule 23(a), as well as the requirements of 23(b)"); *City Select Auto Sales, Inc. v. BMW Bank of N. Am., Inc.*, 867 F.3d 434, 438 (3d Cir. 2017) ("Every putative class action must satisfy the four requirements of Federal Rule of Civil Procedure 23(a): numerosity, commonality, typicality, and adequacy.  In addition . . . a class action must be maintainable under Rule 23(b)(1), (2), or (3)." (internal citations omitted)).  The movant bears the burden of proving the requisite elements of Rule 23.  *See Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011) ("A party seeking class certification must affirmatively demonstrate his compliance with [Rule 23] . . . ."); *see also Kaiser* 278 B.R. at 64 ("The burden of proof is on the claimant to establish each element.  While the claimant need not prove the merits of his claim at this stage, he must provide more than bare allegations or conclusory

statements to satisfy the requirements of Rule 23.").  Furthermore, a "wait-and-see approach" to the Rule 23 requirements is not appropriate.  *Hayes v. Wal-Mart Stores, Inc*. 725 F.3d 349, 358 (3d Cir. 2013) ("Certification may not be granted because the plaintiff promises the class will be able to fulfill Rule 23's requirements . . . To certify a class in this manner is effectively to certify the class conditionally, which Rule 23 does not permit.").

28.    Although the Motion includes a threadbare analysis of the *Musicland* factors, it fails to address how the proposed class satisfies the requirements of Rule 23.  Instead, Movants assert that "the ultimate class question should be deferred until discovery has been obtained from the Debtors."  Mot. ¶ 34.  This suggestion, however, is contrary to the Court's direction at the November 4 Hearing.  *See, e.g.*, Nov. 4, 2021 Hr'g Tr. at 57:11–16, 63:6–10.  Additionally, Movants do not cite any authority supporting their request to put the burden on the Debtors to produce discovery.  Rather, Movants state only that they "are optimistic that such discovery will further reveal that a class action ***might be*** the most efficient approach for handling claims."  Mot. ¶ 21 (emphasis added).  Claimants bear the burden here, and they have failed to meet it.

**B.    The Court Should Exercise Its Discretion Under *Musicland* And Decline To Apply Rule 7023**

29.    A bankruptcy court has discretion under Bankruptcy Rule 9014(c) to decide whether to extend the rule to the claims allowance process.  *See* FED R. BANKR. P. 9014(c) (the court "may" direct application to contested matters of Part VII rules not specifically enumerated); *see also In re United Cos. Fin. Corp.*, 277 B.R. 596, 599 (Bankr. D. Del. 2002) ("Whether to certify a class claim is within the discretion of the bankruptcy court.").  When exercising this discretion, a bankruptcy court must "decide whether it is beneficial to apply Bankruptcy Rule 7023, via Bankruptcy Rule 9014(c), to the claims administration process."  *Pac. Sunwear*, 2016 WL 3564484, at *5.

30.     Case law demonstrates a preference for adherence to the well-established claims allowance process, rather than class certification and class claims, by making the default rule *not* to allow class claims. *In re Musicland Holding Corp.*, 362 B.R. 644, 650 n.8 (Bankr. S.D.N.Y. 2007) ("Bankruptcy provides the same procedural advantages as a class action. In fact, it provides more advantages. Creditors, even corporate creditors, don't have to hire a lawyer, and can participate in the distribution for the price of a stamp."); *see also* Hr'g Tr. 7:3–9, Mar. 3, 2016, No. 15-12220, *In re Fresh & Easy, LCC*, ECF Doc. No. 676 (Bankr. D. Del.) ("Case law teaches that class claims should be sparingly used in bankruptcy. And many of the policy considerations that support class actions are absent in bankruptcy proceedings because the costly barriers to traditional civil litigation and prosecution of claims are significantly reduced in bankruptcy by the claims allowance process."); Hr'g Tr. 82:19–85:1, Dec. 16, 2015, *In re Energy Future Holdings Corp.*, ECF Doc. No. 7407 (Bankr. D. Del.).

31.     Courts considering whether to apply Bankruptcy Rule 7023 focus the first step of their analysis on three factors: (i) whether the class was certified prior to the commencement of the bankruptcy case; (ii) whether the members of the putative class received notice of the bar date; and (iii) whether class certification will adversely affect the administration of the estate. *Musicland*, 362 B.R. at 654–55; *see also Pac. Sunwear*, 2016 WL 3564484, at *5. Each of these three factors weighs against the application of Bankruptcy Rule 7023 in this case.

      **1.**    ***Musicland* Factor 1: The Court Should Deny the Motion Because, Although Claimants Filed the Class Claims Over a Year Ago, They Did Not Seek to Certify a Class Before the Petition Date, the General Bar Date, the Effective Date, or the Administrative Expense Bar Date**

32.     The first *Musicland* factor considers whether a class was certified prior to the Petition Date or the General Bar Date. Claimants concede that this factor has not been met. Mot. ¶ 22. As the Court noted at the November 4 Hearing, the Court may consider the timing of the

filing of the Class Claims Motion as a "factor that the court does take into consideration in determining in its discretion whether to allow a class proof of claim." Nov. 4, 2021 Hr'g Tr. at 13:11–25; *see also In re Woodward and Lothrop Holdings*, 205 B.R. 365, 370 (Bankr. S.D.N.Y. 1997) ("As the case moves toward its conclusion, it is more likely that a delay in resolving the certification issue will interfere with the administration of the estate. If the claimant waits until a post confirmation claim objection to first bring the issue to a head, serious prejudice may result to the other creditors and the estate.").

33.     Having filed the purported class claims over a year ago, Movants offer no excuse for their delay in seeking to certify the class. Indeed, Movants still have not sought to certify the class, and instead seek a further delay for discovery to "confirm" whether class certification makes sense. Mot. ¶ 42. Under these circumstances, certification should be denied. *See In re Tarragon Corp.*, No. 09-10555 DHS, 2010 WL 3842409, at *4-5 (Bankr. D.N.J. Sept. 24, 2010) ("[T]he Claimant has not alleged any facts adequate to provide justification for her delay in bringing a motion for class certification . . . more than a year after the class proof of claim was filed, the Claimant has yet to move for the application of Federal Rule of Civil Procedure 23 pursuant to Bankruptcy Rule 7023. A class action under these facts works in opposition to the goals of bankruptcy.").

34.     Movants cite a series of cases purportedly showing that the first *Musicland* factor is not dispositive, and that courts "routinely permit applying Rule 7023" absent prepetition class certification. Mot. ¶ 22. However, in each of the cases cited by Claimants, there was either (a) an underlying class action pending prepetition or (b) the class claim was premised on the same factors underpinning the bankruptcy filing or the bankruptcy itself. *See, e.g.*, *In re Kaiser Group Int'l, Inc.*, 278 B.R. 58, 61 (Bankr. D. Del. 2002) (certifying a class of prepetition shareholders who

filed the class claim after the debtor filed a motion to subordinate the shareholders' claims); *In re MF Global Inc.*, 512 B.R. 757, 763–765 (Bankr. S.D.N.Y. 2014) (certifying a class of WARN Act claimants and noting that "in the context of a class claim . . . asserted by a debtor's former employees whose jobs were lost . . . for the same reasons that precipitated the bankruptcy[,] the issue of prepetition certification loses its relevance, since there will seldom be time to file a class action complaint and certify a class before the petition date"); *In re Connaught Group, Ltd.*, 491 B.R. 88, 98 (Bankr. S.D.N.Y. 2013) (certifying a class of WARN Act claimants who were terminated on the eve of the debtors' bankruptcy filing, with the court acknowledging that "in essence, this is a class created by the bankruptcy"). These cases are plainly inapt, as none of the putative class members' 18 potential causes of actions identified in the Motion relate to or arise from the Debtors' pre-petition financial situation or bankruptcy.

35.    Additionally, Movants' reliance on *Chaparral I* for the proposition that their delay will not prejudice the Debtors because the Debtors had notice of the class lacks merit. *See* Motion ¶ 24. In *Chaparral I*, plaintiffs filed a class action in district court "***almost five years prior***" to the debtor's petition date. *Chaparral I*, 571 B.R. at 644 (emphasis added). Moreover, the *Chaparral I* plaintiffs moved to certify the class almost one year prior to the petition date, and the certification motion was "fully briefed and under consideration" when Chaparral filed its bankruptcy petition. *Id.* By contrast, not only did Movants fail to file the class action or certify the class pre-petition, but the purported class claims filed by Movants are on behalf of an "unknown class" and contain no information about the number of class members, the class causes of action asserted or the amount of the class claim. These facts belie any argument that the purported class claims put the Debtors on notice in a manner similar to the debtor in *Chaparral I* such that the Debtors are not prejudiced by Movants' extreme and unjustified delay.

36.     Additionally, Movants never explain why certifying a class would be sufficiently beneficial to the purported class and the Debtors' estates to justify their extreme delay.  Instead, Movants state only that certifying a class "***may well be*** more efficient[.]"  Mot. ¶ 25 (emphasis added).  Movants will not even commit to certifying a class if the arguments they cite in support of the class prove valid (which they are not).  *See id.* ("[I]f there are serious lack of notice problems for the class, as Claimants argue exist, a class action ***may be the most efficient*** way of resolving this dispute[.]") (emphasis added).  Movants bear the burden of proof, and they cannot meet it by refusing to take a position while playing for discovery.

> **2.     *Musicland* Factor 2: The Court Should Deny The Motion Because Members Of The Putative Class (If Any) Have Received Adequate Notice Of The General Bar Date**

37.     The second *Musicland* factor, whether the putative class members received notice of the General Bar Date, also weighs against the application of Rule 7023.

38.     The Bar Date Order was entered on September 9, 2020, sufficiently in advance of the actual General Bar Date.[11]  No party-in-interest objected to the Bar Date Order,[12] including counsel to Claimants, who appeared in the Chapter 11 Cases early on and filed the purported class proofs of claim in advance of the General Bar Date.[13]

39.     Due process requires notice that is "'reasonably calculated to reach all interested parties, reasonably conveys all the required information, and permits a reasonable time for a

---

[11] Order Establishing Bar Dates and Related Procedures for Filing Proofs of Claim, Including Claims Arising Under Section 503(b)(9) of the Bankruptcy Code, and Approving the Form and Matter of Notice Thereof, *In re Hertz Corporation, et al.*, No. 20-11218 (Bankr. D. Del. Sept. 9, 2020) (ECF No. 1240).

[12] Certification of Counsel Regarding Debtors' Motion for Entry of an Order Establishing Bar Dates and Related Procedures for Filing Proofs of Claim, Including Claims Arising under Section 503(b)(9) of the Bankruptcy Code, and Approving the Form and Manner of Notice Thereof ¶ 3, *In re Hertz Corporation, et al.*, No. 20-11218 (Bankr. D. Del. Sept. 8, 2020), ECF Doc. No. 1230.  Debtors received one formal reservation of rights, as well as some informal comments; no objections or pleadings were entered.

[13] *See, e.g.*, Main D.I. 589, 893–95, 1038 & Exs. A & B, 1176.

response.'" *Chemetron Corp. v. Jones*, 72 F.3d 341, 346 (3d Cir. 1995) [hereinafter "**Chemetron I**"] (quoting *In re Eagle Bus Mfg. Inc.*, 62 F.3d 730, 735 (5th Cir. 1995)). A debtor's obligation to provide actual or constructive notice of a claims bar date depends on whether the creditor is "known" or "unknown," respectively. *Chemetron I*, 72 F.3d at 345–46. While a debtor must give known creditors actual notice of a debtor's bankruptcy filing and claims bar date, the due process rights of unknown creditors—like Movants—are satisfied by constructive notice. *Id.* at 345–46, 348.

40.     Known creditors include only claimants actually known to the debtor and those that are "reasonably ascertainable." *See Chemetron I*, 72 F.3d at 346; *see also In re W.R. Grace & Co.*, 316 F. App'x 134, 137 (3d Cir. 2009). For a creditor to be "reasonably ascertainable" means the creditor "can be identified through 'reasonably diligent efforts.'" *Chemetron I*, 72 F.3d at 346 (quoting *Mennonite Bd. of Missions v. Adams*, 462 U.S. 791, 798 n.4 (1983)). It is well-established that "[k]nown creditors must be provided with actual written notice of a debtor's bankruptcy filing and bar claims date." *Chemetron I*, 72 F.3d at 346. Accordingly, the Debtors served the Bar Date Notice on all litigation claimants, including False Police Report Claimants No. 1. [*See* Main D.I. 1140 (the "**Bar Date Motion**")].

41.     In contrast to the False Police Report Claimants No. 1, the rest of the putative class members were unknown creditors. "Unknown" creditors are those whose "interests are either conjectural or future or, although they could have been discovered upon investigation, do not in due course of business come to knowledge [of the debtor]." *Chemetron I*, 72 F.3d at 346 (quoting *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 317 (1950)).

42.     Significantly, the Motion does not expressly argue that all putative class members are known creditors. Instead, Movants argue that they should be permitted to get discovery on this

issue based on certain evidence identifying putative class members that may be in the Debtors'

books and records. Mot. ¶ 41 ("Only discovery into Hertz's theft report records will resolve this

issue. Should the Claimants be found on Hertz's rolls, it is very likely that the Claimants as well

as other potential claimants are "known" creditors deserving of actual notice.")

43.    However, mere identification of an individual in the debtor's books and records is

insufficient to make that party a known *creditor*. *See, e.g.*, *In re Crystal Oil Co.*, 158 F.3d 291,

297 (5th Cir. 1998) (discussing cases, including *Chemetron*, and concluding that "in order for a

claim to be reasonably ascertainable, the debtor must have in [its] possession, at the very least,

some specific information that reasonably suggests both the claim for which the debtor may be

liable and the entity to whom [it] would be liable."); *In re New Century TRS Holdings, Inc.*, 450

B.R. 504, 512–13 (Bankr. D. Del. 2011) ("The availability of the [claimants'] names and address

in the Debtors' loan files may have reflected that the [claimants] were known *customers,* but

without more, it did not make them 'known *creditors.*'" (emphasis in original)). Instead,

"[i]nformation, however specific, that makes a claim only reasonably foreseeable or conjectural is

insufficient." *In re Weiand Auto. Indus.*, 612 B.R. 824, 849 (Bankr. D. Del. 2020) (quoting *In re

Placid Oil Co.*, 753 F.3d 151, 156 (5th Cir. 2014) and collecting cases). Simply because some

purported class members may have at some point existed in the Debtors' databases does not make

them known creditors. *In re BGI, Inc*., 476 B.R. 812, 821 (Bankr. S.D.N.Y. 2012) (finding that

just because certain retail customers had been in the company's databases at one time was not

enough to inform the debtors that they may have been part of a class and that therefore these

customers "could not be considered known creditors"); *In re Chaparral Energy, Inc.*, 2018 WL

818309 at *6 (Bankr. D. Del. Feb. 9, 2018) (noting claimant cited "no authority for the proposition

that a debtor is required to serve a bar date notice on every person whose address appears in its books or records, or that all such person are 'known creditors'").

44.     Nor does the fact that the False Police Report Claimants No. 1 had filed prepetition litigation mean that the Debtors were on notice that other customers implicated by police reports for vehicle theft might bring similar claims make those purported class members "known creditors." *See In re New Century TRS Holdings, Inc.*, No. 07-10416, 2014 Bankr. Lexis 827, at *15–16 (Bankr. D. Del. Mar. 4, 2014) (rejecting a claimant's argument that the debtors should have known about her claims because of other prepetition lawsuits and noting that "[l]itigation brought by unrelated third parties, however, does not constitute notice to the Debtors of [the claimant's] particular claims.")

45.     Because Movants were unknown creditors, they were entitled to notice only by publication. *Chemetron I*, 72 F.3d at 345–46.  Publishing in national newspapers is the benchmark for publication notice in countless bankruptcy cases. *See id.* at 348–349 ("We have little difficulty holding that the notice which Chemetron published in the *New York Times* and the *Wall Street Journal* was sufficient"); *see also Weiand Auto. Indus.*, 612 B.R. at 850 ("The Third Circuit has held . . . that . . . publication in national newspapers is sufficient notice to unknown creditors . . . 'especially where supplemented . . . with notice in papers of general circulation in locations where the debtor is conducting business.'" (notes omitted)).  Indeed, publication in national newspapers alone may suffice. *See id.* (the fact that supplemental local newspaper publication bolsters the adequacy of national publication "does not indicate that without this supplemental notice, publication in national newspaper is constitutionally inadequate" (citations omitted)); *see also Brown v. Seaman Furniture Co.*, 171 B.R. 26, 27 (E.D. Pa. 1994) (finding publication in national edition of *The New York Times* adequate).  "The proper inquiry in evaluating notice is whether a

party acted reasonably in selecting means likely to inform persons affected, not whether each person actually received notice." *Id.* (quoting *New Century*, 465 B.R. at 49) (citations omitted).

46.     The Debtors provided robust publication notice sufficient to satisfy due process. The Bar Date Order required that the Debtors publish notice in "*USA Today, The Wall Street Journal, The New York Times*, and *The Globe and Mail* and (ii) local newspapers, trade journals or similar publications, if any, as the Debtors deem appropriate." Bar Date Order ¶ 22. The Debtors went beyond the minimum requirements of the Bar Date Order and caused the Publication Notice to be published in the national editions of *USA Today*, *The Wall Street Journal*, *The New York Times*, and *The Globe and Mail*, as well as regional publications across North America and providing publication notice where appropriate in French and Spanish. *See* Main D.I. 1396, 1572. This "above and beyond" publication notice satisfies constitutional due process requirements. *See Chemetron I*, 72 F.3d at 345, 348–349 (noting that the debtors had "voluntarily published notice in seven other newspapers in areas where they were doing business at the time of the [bankruptcy] filing," and rejecting argument that the debtor should have *also* published notice in a Cleveland-area newspaper, despite the potential for claims arising from activities related to the debtor at Cleveland sites); *Weiand Auto. Indus.*, 612 B.R. at 850; *In re Wash. Mut., Inc.*, 2018 WL 3736515, at *4 (D. Del. Aug. 6, 2018) (affirming bankruptcy court's determination that the debtors provided claimant notice by publishing notice in four newspapers).

47.     Movants state that it is a "notable omission" that the Bar Date Notice did not say that individuals who could be included in or represented by a "class proof of clam" "must properly and timely file a Proof of Claim." Mot. ¶ 32. However, no police report-related class action was pending as of the Petition Date, and Movants did not file the class claims until the day of the General Bar Date. To the extent any purported class members exist who have not been identified

in one of the Claimant "Groups," such individuals did not have notice of a class proof of claim, and therefore could not have relied on such possible class proof of claim to protect their interests.

### 3. *Musicland* Factor 3: The Court Should Deny The Motion Because Class Certification Will Adversely Affect The Administration Of The Estate

48.     The final *Musicland* factor considers whether class certification will adversely affect the administration of the estate. *Musicland*, 362 B.R. at 654. Were the Court to certify the class at this late date, it would serve only to enlarge the pool of unsecured claims in a manner that would be "unwarranted, unfair, and possibly violate the due process rights of other creditors." *In re Sacred Heart*, 177 B.R. at 24; *see also In re Bally Total Fitness of Greater N.Y., Inc.*, 402 B.R. 616, 623 (Bankr. S.D.N.Y.) (finding that "preserving the claims of class members who failed to timely file their claims . . . effectively dilutes the value of claims asserted by timely filers and implicates due process concerns, which also prejudices the interests of other creditors) (citing *In re Jamesway Corp.*, No. 95 B 44821, 1997 Bankr. Lexis 825, at *5 (Bankr. S.D.N.Y. June 12, 1997) ("[A]n action which expands the bar date for notified creditors may itself violate due process.")).

49.     Certifying a class of unknown size and scope after the Effective Date—*i.e.*, after the Debtors have already made distributions to certain stakeholders and are in the process of reorganizing their business pursuant to the Plan—risks disrupting this process, to the detriment of all stakeholders. *See In re Penn. Truck Lines, Inc.*, 189 B.R. 331, 336 (Bankr. E.D. Pa. 1995) ("Should profits be thereby so depleted as to preclude the Debtor from remaining in operation and the Plan from being carried out, all of the unsecured creditors which timely filed claims in this bankruptcy case would be directly and significantly adversely affected.").

50.     The Debtors estimated Class 7 (General Unsecured Creditors) to contain Allowed claims in the approximate amount of $547 million. *See* Main D.I. 4759 at 11. As set forth in the

False Police Report Claimants' damages matrix, the claims of False Police Report Claimants No. 3 alone would add over 10% to the size of the estimated Allowed general unsecured claims pool—and that is before taking account of Group 4 and the other purported "unknown" class members that Claimants seek to add.  *See In re Drexel Burnham Lambert Grp., Inc.* 148 B.R. 1002, 1007–08 (S.D.N.Y. 1993) (finding prejudice to debtors where claim would "be about 20% of all remaining claims for which liquidations and payments remain to be processed").]  It is unduly prejudicial to existing prepetition creditors who timely filed proofs of claim to have a new class of claimants added after the Effective Date who will potentially impair the Debtors' ability to provide the treatment to unsecured creditors afforded under the Plan.  Additionally, certifying a post-Effective Date unknown class would add substantial complexity, delay, and costs in the claims reconciliation process under the Plan.

51.    Movants do not offer any benefits to certifying an unknown class that would counteract these harms.  Instead, Movants incorrectly claim that a class action will not adversely affect the administration of the bankruptcy case because permitting application of Rule 7023 would not interfere with Debtors' ability to make distributions under the full-pay, unimpaired Plan.  Mot. ¶ 24.  Movants ignore that the Debtors were able to offer a full-pay Plan only because they could avail themselves of the claims process to estimate the unsecured claims pool and determine the amount they could afford to pay unsecured creditors.  *See In re Energy Future Holdings Corp.*, 522 B.R. 520, 527 (Bankr. D. Del. 2015) (noting that "the setting of a bar date" assists in "achieving" "[t]he objectives of finality and fixing the universe of claims") (quotation omitted); *see also Am. Classic Voyages*, 405 F.3d at 133 ("A policy that would allow proofs of claim . . . two

days *after* Debtors filed their [plan] . . . would have disrupted Debtors' reorganization." (emphasis in original)).  Movants thus seek to abrogate one of the Bankruptcy Code's key benefits.

52.    *Musicland* is particularly instructive here, as it concerned a similarly late class certification motion.  In *Musicland*, the class certification motion was filed approximately 10 days after the confirmation hearing.  *Musicland*, 362 B.R. at 649.  There, the Court noted that "[b]y the time [Movants] made their certification motion, Musicland had negotiated and filed a Plan, the Court had approved the Disclosure Statement, the creditors had voted on the Plan and the Court had begun the confirmation hearing."  *Id*. at 655.  The Court found that allowing the class claim to move forward would risk "extend[ing] [the] proceedings indefinitely" and declined to certify the class.  *Id*.  Here, the case is even further along than in *Musicland*, and the same considerations counsel against granting the Motion.

**C.    The Proposed Class Cannot Satisfy The Requirements For Certification Under Rule 23**

53.    As noted above, Movants bear the burden of proving that the proposed class satisfies Rule 23.  But because Movants failed to address Rule 23 in the Motion, any argument that the proposed class satisfies the Rule 23 requirements is waived.  *See Danvers Motor Co. v. Ford Motor Co.*, 543 F.3d 141, 147 (3d Cir. 2008) (denying a motion for class certification where commonality and predominance were lacking, because "[a] class may be certified only if the prerequisites of Rule 23(a) have been satisfied and the parties seeking class action have shown that the action is maintainable under Rule 23(b)."); *see also Computer Learning Ctrs.*, 344 B.R. at 85 (denying a Rule 7023 motion and stating "[t]he burden is on the claimant to obtain application of Rule 7023 and also to satisfy the requirements of Rule 23 itself"); *Hayes*, 725 F.3d at 358 (remanded for reconsideration of the plaintiff's claims, on the grounds that "[c]ertification may not be granted because the plaintiff promises the class will be able to fulfill Rule 23's requirements

. . . To certify a class in this manner is effectively to certify the class conditionally, which Rule 23 does not permit.").  While the Reorganized Debtor reserves all rights to respond to any untimely arguments Movants may make, the proofs of claim and declarations submitted by Movants demonstrate that they will not be able to satisfy the Rule 23 requirements.[14]

54.    **Numerosity.** FRCP 23(a)(1) requires that the class be "so numerous that joinder of all members is impracticable…" FED. R. CIV. P. 23(a)(1).  While there is no specific minimum number that satisfies the numerosity requirement, a putative class does have to show, beyond mere speculation, that some number of individuals affirmatively meet the class definition.  *See Hayes*, 725 F.3d at 357.  Here, the lack of class definition makes it impossible to determine whether Movants have met their burden of demonstrating numerosity by a preponderance of the evidence. Additionally, the number of Claimants is constantly shifting.  On June 10, 2021, Claimants filed amended proofs of claim omitting five previous members of False Police Report Claimants No. 2. Additionally, on December 6, Claimants informed the Court that at least eight of the 29 members of False Police Report Claimants No. 3 would be dropping their claims.  It is likely that, when Claimants file amended claims on behalf of the 115 members of False Police Report Claimants No. 2, even more claimants will have dropped out.

55.    **Commonality.**   FRCP 23(a) requires that there be "questions of law or fact common to the class[.]" FED. R. CIV. P. 23(a)(2); *see also Dukes*, 564 U.S. at 350 ("That common contention . . . must be of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each

---

[14] *See* FED. R. CIV. P. 23(a) ("One or more members of a class may sue or be sued as representative parties on behalf of all members only if: (1) the class is so numbers that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.")

one of the claims in one stroke."). Generally, a showing of commonality requires the identification

of specific questions of law or fact shared by all putative class members. *See, e.g.*, *Kaiser*, 278

B.R. at 65 (listing out eight common questions of law and fact that had been identified by the

claimants). Movants cannot meet this requirement.

56.     The questions of law and fact that may apply to each purported class member varies

wildly based on the individual circumstances. For example, the breadth of factual scenarios that

Claimants have alleged includes:

- Claimants who have been arrested. [D.I. 190 ¶ 17].

- Claimants who have not even been arrested. [*Id.* ¶ 20].

- Claimants who have served time in prison. [*Id.* ¶ 21].

- Claimants who have not served time in prison. [*Id.* ¶ 23].

- Claimants arrested in connection with a car they rented from Hertz. [*Id.* ¶ 26].

- Claimants arrested as passengers in a car rented by someone else. [*Id.* ¶ 19].

- Claimants arrested in connection with a car rented through Uber or State Farm, not from Hertz. [*Id.* ¶¶ 18, 20].

- Claimants arrested in connection with a car purchased from Hertz's car sales program. [*Id.* ¶ 17].

- Claimants arrested in connection with a car stolen from the claimants during the rental period. [*Id.* ¶ 22].

57.     Additionally, the class proofs of claim include a non-exhaustive list of 18 potential

claims that may be asserted by individual class members, including, among other things:

- malicious prosecution;

- false arrest/imprisonment;

- fraud/fraud in the inducement;

- intentional/negligent infliction of emotional distress;

- breach of contract;

- false advertising;

- civil conspiracy; and

- civil RICO.

58.     Each of the above examples demonstrates the wide range of issues requiring a separate legal and factual analysis.  This wide disparity undermines any commonality between the putative class members.

59.     **Typicality & Adequacy of Representation**.  FRCP 23(a)(3) requires that the "claims or defenses of the representative parties are typical of the claims or defenses of the class[.]" FED. R. CIV. P. 23(a)(3).  In evaluating typicality, courts look to "whether the named plaintiffs' claims are typical, in common-sense terms, of the class, thus suggesting that the incentives of the plaintiffs are aligned with those of the class." *Beck v. Maximus, Inc.*, 457 F.3d 291, 295–96 (3d Cir. 2006) (citation omitted).  A court must determine whether the named plaintiffs' personal circumstances are notably different, or if the legal theory underlying the named plaintiffs' claims is different, from those of the class members.

60.     FRCP 23(a)(4) requires that the class representative "fairly and adequately protect the interests of the class." FED. R. CIV. P. 23(a)(4).  The adequacy inquiry "assures that the named plaintiff's claims are not antagonistic to the class and that the attorneys for the class representatives are experienced and qualified to prosecute claims on behalf of the entire class." *Beck*, 457 F.3d at 296.  The court must determine "whether the representatives' interests conflict with those of the class and whether the class attorney is capable of representing the class." *Johnston v. HBO Film Mgmt., Inc.*, 265 F.3d 178, 185 (3d. Cir. 2001).  "[T]hough separate requirements," typicality and adequacy of representation "are closely related and are often analyzed together." *In re Domestic Drywall Antitrust Litig.*, 322 F.R.D. 188, 198–99 (E.D. Pa. 2017) (citation omitted).  Both

"evaluate[] the sufficiency of the named plaintiff" and "look for potential for conflicts in the class." *Georgine v. Amchem Prods.*, 83 F.3d 610, 632 (3d Cir. 1996).

61.     Movants fails to identify a named plaintiff, making it impossible for the Debtors to assess whether Movants have met this burden.  In any event, no plaintiff could adequately represent all of the myriad experiences and legal issues identified above.[15]

**D.     The Fourth *Chaparral* Factor Is Inapplicable**

62.     The False Police Report Claimants note the existence of a fourth factor, identified in *Chaparral I*, namely, whether the application of Rule 7023 will deter the Debtors from engaging in allegedly bad behavior in the future.  Mot. ¶ 26 (citing *Chaparral I*, 571 B.R. at 650).  This analysis is academic, as the facts demonstrate that Claimants' claims of systemic failures are false.

63.     From 2016 through the Petition Date,[16] the Debtors had, on average, more than *25 million* rental transactions in the United States per year.  During the same period, the Debtors filed approximately ███████████████████████████████████████████████████████

---

[15] Additionally, Movants have not identified which type of class action they seek to certify.  Assuming Movants seek to certify a Rule 23(b)(3) class action, Movants must also demonstrate that common questions predominate rather than questions affecting only individual class members, and that a class action is a superior method of adjudication under the circumstances.  *See* FED. R. CIV. P. 23(b)(3).  Given the broad range of factual circumstances and legal issues outlined above Movants cannot demonstrate that common issues predominate over individual ones.  Additionally, Movants bear a heavy burden in showing superiority, because courts have found that there is no "superiority of the class action when the 'other available method' is bankruptcy, which consolidates all claims in one forum and allows claimants to file proofs of claim without counsel and at virtually no cost."  *In re Ephedra Prods. Liab. Litig.*, 329 B.R. 1, 9 (S.D.N.Y. 2005); *see also In re Motors Liquidation Co.*, 447 B.R. 150, 163 (Bankr. S.D.N.Y. 2011) ("[T]he inherent simplicity of the bankruptcy process tends to make class action treatment *not* superior, as a general matter and in this case, because an individual claimant would need only to fill out and return a proof of claim form.").  In light of Movants' uncertainty regarding whether a class action is the appropriate vehicle for Claimants' claims, it is unclear how they will be able to establish the clear superiority of a class action.  Moreover, a class action would require an entirely separate, expensive, and lengthy notice program for all potential class members.  The Court should not authorize such waste.  *In re Arthur Treacher's Franchise Litig.*, 93 F.R.D. 590, 595 (E.D. Pa. 1982) (finding that initiating a separate notice process for the putative Rule 23(b)(3) class "would amount to a grossly futile exercise of a tremendous amount of time and expense").

[16] The Debtors use this date range because (i) Covid-19 altered these numbers, which were generally consistent each year pre-petition and (ii) claims arising prior to 2016, if any, are likely time-barred.

███████████████████████████████████

███████████████████████████████████

████████████ 3,365 theft reports per year in connection with rental vehicles that were kept long past the contracted return date, after exhausting all efforts to retrieve the vehicle and contact the customer who had not returned it. This last category of theft reports occurs in the context of an average of over 1,000,000 rentals per year that were returned at least three days after the contractual return date.

64.    Additionally, from 2016 through the Petition Date, only 32 lawsuits, on behalf of 56 plaintiffs, were filed on account of the Debtors' theft reports.[17]  Thus, a ratio of only 0.00175 of all theft reports from 2016 through the Petition Date, and less than 0.0000002 of rentals overall, has resulted in a lawsuit on account of the Debtors' issuing an alleged inaccurate police report. Even if these numbers were many multiples larger, they still would not signal a systemic issue. Moreover, these data points ignore that Hertz contests the facts alleged in many of these lawsuits and assumes, for the sake of argument, that all 56 plaintiffs' claims were well-founded or otherwise likely to succeed on the merits.[18]

## II.    Movants' Request For Discovery Should Be Denied

65.    Despite the Court's clear direction that Movants state the basis for certifying a class *before* the Court considered class-related discovery, Movants focus the Motion on requests for expansive discovery that will "[i]nform the class question." Mot. at 17. Indeed, the Motion contains two paragraphs regarding the *Musicland* factors and zero paragraphs regarding Rule 23.

---

[17] Over one-third of these plaintiffs are represented by Mr. Malofiy and filed suit the day before the Petition Date.

[18] Indeed, even if all of the approximately 185 False Police Report Claimants had meritorious claims— which they plainly do not, given that certain Movants have abandoned their claims—the number of inaccurate police reports to total police reports issued would still be significantly less than 1%.

*See id.* ¶¶ 23–24.  By contrast, the Motion contains at least 13 paragraphs regarding Movants' request that the Court order the Debtors to produce discovery, including the July 2020 discovery, the October 2021 discovery, plus any additional discovery Movants may seek.  [*See* D.I. 61-2– 5].[19]

66.    Even if class-related discovery were appropriate (and it is not), it is not clear how the requested discovery relates to the class question.  Indeed, Movants proffer new discovery requests in the Motion, now asking for discovery which is irrelevant to any class certification issues, for example, whether Hertz set aside funds "to service false theft report claims," entered certain settlement agreements, tracked social media, discussed certain policies at board meetings, or attempted to recover non-returned vehicles, among other things.  Mot. ¶ 39.   Nor is it apparent why Movants need discovery to "better understand" whether to certify a class, *id.* ¶ 42, given that they already constitute almost 200 purported claimants.  Movants' aim in requesting this sweeping discovery appears to be to identify additional claimants who, like the existing False Police Report Claimants, can pursue claims in their individual capacity.  To the extent Movants seek discovery to identify additional potential individual claimants, Movants fail to cite any authority that would support such discovery.  Indeed, the one case Movants cite for this argument, *Gentry v. Siegel*, 668 F.3d 83 (4th Cir. 2012), allowed class members to file individual claims if class certification was denied.  It did not allow discovery to identify additional claimants who may or may not participate in the class.

67.    Additionally, Movants fail to explain why any of the discovery they seek should be permitted.  This Court denied the vast majority of the July 2020 discovery requests more than a

---

[19] The Debtors reserve the right to oppose this discovery (to the extent not already denied), as well as any additional discovery Movants may serve.

year ago, and ordered the Debtors to produce limited information concerning their insurance and

employees, which the Debtors produced.  *See Order Granting In Part and Denying in Part False*

*Police Report Plaintiffs' Motion to Compel Directed at Debtors* [Main D.I. 1266], dated

September 11, 2020.  Moreover, the Outstanding Discovery, attached as Exhibits B–E in the

Debtors' Motion to Quash [D.I. 61], was issued on behalf of individual claimants, not on behalf

of a purported class.[20]  Indeed, the Motion states that these discovery requests relate directly to the

subject matter of the motions filed or to be filed by certain Group 3 and Group 4 claimants, rather

than the claims of any purported class.  Mot. ¶¶ 35, 40.

## <u>CONCLUSION</u>

For the foregoing reasons, the Reorganized Debtors respectfully request that the Court deny

the Motion for Class Certification and further class-based discovery, disallow the Class Proofs of

Claim, and grant such other and further relief as it deems just and proper.

---

[20] *See, e.g.*, D.I. 61-2 at 1, n.2 (The "False Police Report Claimants" are those (i) individuals with cases pending that are detailed in the False Police Report Plaintiffs' Motion for Relief from Stay filed on June 25, 2020 [*See* Main D.I. 589] (the "False Police Report Plaintiffs—Claimants 1"); (ii) the 115 additional individuals with claims and/or claims and cases pending that are detailed in the Motion of the False Police Report Claimants No. 2 filed on February 2, 2021 [*See* Main D.I. 2593] (the "False Police Report Plaintiffs—Claimants 2"); and (iii) the 29 individuals listed in the Motion of the False Police Report Claimants No. 3 for Relief from Stay and Any Plan Injunction filed on August 4, 2021 [*See* Main D.I. 5656] (the "False Police Report Plaintiffs—Claimants 3").

Dated: December 20, 2021

 /s/ John H. Knight
**RICHARDS, LAYTON & FINGER, P.A.**

Mark D. Collins (No. 2981)
John H. Knight (No. 3848)
Brett M. Haywood (No. 6166)
Christopher M. De Lillo (No. 6355)
J. Zachary Noble (No. 6689)
One Rodney Square
920 N. King Street
Wilmington, DE 19801
(302) 651-7700
Collins@rlf.com
Knight@rlf.com
Haywood@rlf.com
DeLillo@rlf.com
Noble@rlf.com

—and—

**WHITE & CASE LLP**

Thomas E Lauria (admitted *pro hac vice*)
Matthew C. Brown (admitted *pro hac vice*)
200 South Biscayne Boulevard, Suite 4900
Miami, FL 33131
(305) 371-2700
tlauria@whitecase.com
mbrown@whitecase.com

J. Christopher Shore (admitted *pro hac vice*)
David M. Turetsky (admitted *pro hac vice*)
Samuel P. Hershey (admitted *pro hac vice*)
Erin Smith (admitted *pro hac vice*)
1221 Avenue of the Americas
New York, NY 10020
(212) 819-8200
cshore@whitecase.com
david.turetsky@whitecase.com
sam.hershey@whitecase.com
erin.smith@whitecase.com

Jason N. Zakia (admitted *pro hac vice*)
Laura E. Baccash (admitted *pro hac vice*)
111 South Wacker Drive
Chicago, IL 60606
(312) 881-5400
jzakia@whitecase.com
laura.baccash@whitecase.com

Ronald K. Gorsich (admitted *pro hac vice*)
Aaron Colodny (admitted *pro hac vice*)
Doah Kim (admitted *pro hac vice*)
555 South Flower Street, Suite 2700
Los Angeles, CA 90071
(213) 620-7700
rgorsich@whitecase.com
aaron.colodny@whitecase.com
doah.kim@whitecase.com

*Co-Counsel to the Reorganized Debtor*