**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| Rental Car Intermediate Holdings, LLC,[1] | Case No. 20-11247 (MFW) |
| Reorganized Debtor. | **Ref. D.I. 308, 309 & 329** |

**FALSE POLICE REPORT CLAIMANTS' REPLY IN SUPPORT
OF THE MOTIONS FOR ADMISSION OF FRANCIS MALOFIY
AND ALFRED J. FLUEHR *PRO HAC VICE***

The False Police Report Claimants hereby reply to the February 7, 2022, objection [D.I. 329] (the "Objection") of the Reorganized Debtors (collectively, "Hertz") to the February 2, 2022, motions filed by the undersigned counsel seeking admission *pro hac vice* of Francis Malofiy and Alfred J. Fluehr in these proceedings [D.I. 308 & 309] (collectively, the "Motions"). In further support of the Motions, the False Police Report Claimants respectfully represent as follows:

**PRELIMINARY STATEMENT**

Though framed as a genteel—perhaps even *reluctant*—filing based upon "concerns" presented by the Motions, the Objection is little more than a repackaging of the prior, unsuccessful attacks Messrs. Malofiy and Fluehr have been dealing with from Hertz since 2016.

---

[1]    The last four digits of the tax identification number of Reorganized Debtor Rental Car Intermediate Holdings, LLC ("RCIH") are 2459. The location of the Reorganized Debtors' service address is 8501 Williams Road, Estero, FL 33928. On September 28, 2021, the Court entered a final decree closing each of the chapter 11 cases for The Hertz Corporation and its affiliated reorganized debtors (collectively, the "Reorganized Debtors") other than RCIH's chapter 11 case. Commencing on September 28, 2021, all motions, notices, and other pleadings relating to any of the Reorganized Debtors shall be filed in RCIH's chapter 11 case, Case No. 20-11247 (MFW).

Hertz has an extraordinarily large problem on its hands of filing false police reports against its customers and sending many of the victims to jail—which, despite Hertz's assertions to the contrary, continues to this very day.[2] Messrs. Malofiy and Fluehr brought this problem to light beginning with a 2016 lawsuit in Philadelphia. Since then, they have amassed tremendous knowledge and information pertaining to Hertz's illegal practices and are the biggest advocates for the now 230 (and counting) victims. Rather than deal with the problem, Hertz's strategy has been—and remains—to deny and deflect, shifting the focus away from its conduct and onto the False Police Report Claimants and their counsel.

Hertz tried this same tactic before the Philadelphia Court of Common Pleas in the *Grady* case, and it failed.[3] Indeed, Hertz went so far as to hire a private investigator to follow and investigate Mr. Malofiy and his family, presumably hoping it could unearth damaging or embarrassing information so that Hertz could remove him from the case. Hertz and its investigator found nothing.

Nonetheless, knowing that it had no defense to what it had done to Ms. Grady, Hertz continued gross personal attacks against Messrs. Malofiy and Fluehr, which are discussed further below. The *Grady* court rejected all of these attacks. Messrs. Malofiy and Fluehr litigated that case in a professional manner without incident, as should be expected. The same cannot be said for Hertz, however.

---

[2]    Just in the past few days, for example, a Francis Alexander LLC client and Hertz Gold customer named Charles Doucette informed counsel that he was just arrested in Florida based on a false police report filed by Hertz. As of the filing of this Reply, Mr. Doucette is in jail awaiting extradition to Arizona. Mr. Malofiy has reached out to Hertz's counsel requesting immediate intervention so that Mr. Doucette can be released from jail—Hertz has offered to discuss Mr. Doucette tomorrow.

[3]    Ms. Grady spent 12 days in jail for a rental she had extended and paid for. Messrs. Malofiy and Fluehr went into that case with no agenda, believing it was a one-off instance, helping a friend of a friend. However, discovery began to reveal huge, systemic issues and serious misconduct.

In *Grady*, Hertz denied the existence, and hid the name, of the Hertz employee that would exonerate Ms. Grady while knowing the person's identity and even sending an investigator to intimidate the witness. It also destroyed all communications and records pertaining to Ms. Grady hoping that would make it impossible for Ms. Grady to prove her claim. In the end, Hertz—not Ms. Grady, Mr. Malofiy, or Mr. Fluehr—was sanctioned by the Court for misconduct, and the jury found in favor of Ms. Grady.

As discussed below, Messrs. Malofiy and Fluehr are both unquestionably "qualified" for admission *pro hac vice*. And in considering whether to exercise its discretion to admit them, the Court should view Hertz's Objection—which is, in essence, a premature disqualification request—with the skepticism it deserves, given that disqualification of opposing counsel is often sought for strategic purposes, and, if granted, has the inevitable effect of denying a party the assistance of counsel of their choosing.[4] Against this backdrop, Mr. Malofiy's disciplinary history relating to conduct ten years ago, when he was three years out of law school—which conduct he fully acknowledges and makes no excuses for—should not result in denial of his or Mr. Fluehr's *pro hac vice* admission (Mr. Fluehr not even arguably being guilty of anything other than his association with Mr. Malofiy).

For the reasons discussed below, the False Police Report Claimants respectfully submit that the Objection should be overruled and the Motions should be granted.

---

[4]    While the False Police Report Claimants' legal team consists of several firms in addition to Francis Alexander LLC—i.e., Susman Godfrey LLP, Farnan LLP, and Faegre Drinker Biddle & Reath LLP—Francis Alexander's extensive experience litigating false-police-report claims against Hertz since 2016, and its familiarity with Hertz's policies and practices gained over that time are of tremendous value to co-counsel, and ultimately, to the clients themselves. Denying Francis Alexander's full participation in these proceedings (particularly as regards the review and analysis of information and documents self-designated "confidential" by Hertz) would undoubtedly prejudice the False Police Report Claimants, despite Hertz's assertion to the contrary.

## ARGUMENT

**I.     Messrs. Malofiy and Fluehr are Both Qualified for Admission *Pro Hac Vice*.**

As a threshold matter, Hertz's assertion that Mr. Malofiy "does not qualify for *pro hac vice* admission to this Court" (Obj. at 1) is false. Admission *pro hac vice* to the bar of this Court is governed by Local Rule 9010-1, which provides, in pertinent part, as follows:

> Attorneys admitted, practicing, and in good standing in another jurisdiction, who are not admitted to practice by the Supreme Court of the State of Delaware and the District Court, may be admitted pro hac vice in the discretion of the Court, such admission to be at the pleasure of the Court. Unless otherwise ordered by the Court, or authorized by the Constitution of the United States or acts of Congress, an applicant is not eligible for permission to practice pro hac vice if the applicant:
>
> (i)     Resides in Delaware; or
>
> (ii)    Is regularly employed in Delaware; or
>
> (iii)   Is regularly engaged in business, professional, or other similar activities in Delaware.

Del. Bankr. L.R. 9010-1(b). Counsel to be admitted *pro hac vice* must be associated with Delaware counsel. Del. Bankr. L.R. 9010-1(c). Local Form 105 is the "form for admission pro hac vice" under the Local Rules. Del. Bankr. L.R. 9010-1(b). That form, which is signed and filed by Delaware counsel, requires the counsel to be admitted to sign and make the following certification:

> Pursuant to Local Rule 9010-1, I certify that I am eligible for admission to this Court, am admitted, practicing and in good standing as a member of the Bar of _____ and submit to the disciplinary jurisdiction of this Court for any alleged misconduct which occurs in the preparation or course of this action. I also certify that I am generally familiar with this Court's Local Rules and with Standing Order for District Court Fund revised 8/31/16. I further certify that the annual fee of $25.00 has been paid to the Clerk of Court for District Court.

Del. Bankr. Local Form 105.

Messrs. Malofiy and Fluehr are both admitted, practicing, and in good standing in the Bar of the Commonwealth of Pennsylvania.[5] They are not admitted to practice by the Supreme Court of the State of Delaware or the United States District Court for the District of Delaware. They do not reside in Delaware, are not regularly employed in Delaware, and are not regularly engaged in business, professional, or other similar activities in Delaware. (They practice out of Francis Alexander LLC's office in Media, Pennsylvania.) They have been provided copies of, and are generally familiar with, the Court's Local Rules and the Standing Order for the District Court Fund dated August 31, 2016. And the $25.00 annual fee has been paid to the District Court for each of them. And they have certified as much, and subjected themselves to the disciplinary authority of this Court, in Motions signed and filed by the undersigned Delaware counsel, which Motions conformed to Official Form 105.

Hertz does not dispute any of the foregoing in its Objection. Accordingly, there is no question of Messrs. Malofiy and Fluehr's *qualifications* for admission to practice in this Court. The issue is whether the Court should exercise its discretion to admit them. For the reasons set forth below, it should.

## II.    The Court Should Exercise its Discretion to Admit Messrs. Malofiy and Fluehr *Pro Hac Vice*.

Hertz advances two arguments in opposition to Mr. Malofiy's admission *pro hac vice*: the first, based on disciplinary proceedings in the United States District Court for the Eastern District of Pennsylvania stemming from a civil litigation in 2011; the second, based on alleged breaches of Mr. Malofiy's confidentiality obligations to Hertz. These are addressed below.

---

[5]    Mr. Malofiy is also admitted in good standing in the Third and Ninth Circuit Courts of Appeals; Mr. Fluehr is also admitted in good standing in the State of New Jersey, the United States Supreme Court, the Third and Ninth Circuit Courts of Appeal, and the United States District Court for the Eastern District of Pennsylvania.

Critically, Hertz's only argument in opposition to Mr. Fluehr's admission *pro hac vice* is a "concern" that he would violate his confidentiality obligations if he were admitted and provided access to allegedly confidential information Hertz has produced (and continues to produce) under the auspices of Local Rule 9018-3.[6] This should end the inquiry for Mr. Fluehr, as Hertz cites no authority for the proposition that vague confidentiality concerns can justify denial of *pro hac vice* admission to an attorney against whom there are no allegations of misconduct. And because the alleged confidentiality breaches by Mr. Malofiy giving rise to Hertz's "concerns" about Mr. Fluehr were manufactured (as discussed below), the False Police Report Claimants submit that it would be an abuse of discretion to deny Mr. Fluehr's admission *pro hac vice* on the basis of such concerns.[7]

> **A.      The Court Must Consider the Debtors' Strategic Objectives in Opposing the Motions, and the False Police Report Claimants' Right to the Counsel of Their Choice.**

As Hertz acknowledges, challenges to *pro hac vice* motions are rare (Obj. at 1)—so much so, that there is very little precedent to guide the Court's inquiry in the exercise of its discretion in considering the Motions and the Objection. There is, however, substantial jurisprudence dealing with the analogous situation of requests for disqualification of counsel based on alleged ethical violations. And that jurisprudence is clear that disqualification motions are viewed with disfavor and approached with caution by the courts. *See, e.g.*, *Bd. of Ed. of City of New York v. Nyquist*, 590 F.2d 1241, 1246 (2d Cir. 1979) ("[W]e have shown considerable reluctance to

---

[6]      Hertz has improperly designated not only its discovery materials, but also the relevant correspondence and meet-and-confers concerning such materials, as "highly confidential" and subject to Local Rule 9018-3, functionally excluding Messrs. Malofiy and Fluehr from participating in discovery matters based upon this Court's prior ruling concerning the application of that rule.

[7]      Notably, Mr. Fluehr was admitted *pro hac vice* in a Hertz case in Ohio in 2019, without objection from Hertz, suggesting that its newfound "concerns" are pretextual.

disqualify attorneys despite misgivings about the attorney's conduct. This reluctance probably derives from the fact that disqualification has an immediate adverse effect on the client by separating him from counsel of his choice and that disqualification motions are often interposed for tactical reasons." (citations omitted)); *Satellite Fin. Plan. Corp. v. First Nat. Bank of Wilmington*, 652 F. Supp. 1281, 1283 (D. Del. 1987) ("[B]ecause disqualification motions have increasingly been used as one weapon in the litigation arsenal, courts now approach such motions with 'cautious scrutiny.'" (quoting *Laker Airways Ltd. v. Pan Am. World Airways*, 103 F.R.D. 22, 27 (D.D.C. 1984)).

In *Laker Airways*, the court rejected a motion by various defendants' counsel to disqualify plaintiff's counsel, who was a specialist in the areas of law involved in the lawsuit. First among the policy considerations the court considered in its opinion was the plaintiff's right to counsel of its choosing:

> A litigant has a right to freely chosen, competent counsel. The protection of that right is particularly important in this case, where the attorneys sought to be disqualified have a unique and probably irreplaceable value to their client. Robert Beckman, one of the attorneys whose disqualification defendants seek . . . has served as Laker's counsel on all aviation maters in this country and most aviation matters worldwide for over ten years. Moreover, the subject matter of this lawsuit is quite specialized, and without Farmer and Beckman plaintiff would be dealt a significant, perhaps irreplaceable setback.

*Laker Airways*, 103 F.R.D. at 27. The court concluded its analysis by discussing the context in which the disqualification motion arose:

> [C]ourts have become increasingly aware that some motions for disqualification are motivated not by a fine sense of ethics and a well-developed desire to remove from litigation practitioners whose ethics are less acute, but, bluntly, by a desire to achieve a tactical advantage. Some of the defendants in this suit have engaged in other maneuvers to avoid or delay a decision on the merits, ranging all the way from their litigation in Great Britain, to their determined resistance to legitimate discovery.

In connection with this motion, defendants have evidently scoured the government files for references to Farmer's name and for activities for which he may have ever had some responsibility. On the basis of these efforts, they then provided the Court with a roll of activities which allegedly bar him, and all associated counsel, from representing plaintiff in this case. This broad, wide-ranging and scattershot effort is undoubtedly designed to persuade the Court that where there is this much smoke there must be some fire. Yet, when the various claims are analyzed in detail, it becomes clear that there is no fire—there is only smoke.

Defendants frequently mischaracterize and misrepresent the nature and essence of Farmer's activities in both government and private practice; they often rely upon sheer supposition concerning the extent of Farmer's participation in government activities; and they ignore or distort the nature of this suit—all to achieve the goal of eliminating Laker's counsel from this action. . . . In addition, there is every reason to believe that similar efforts would be directed against any new counsel Laker might retain, should it be able to find attorneys with the necessary experience and expertise who are not already retained by the twelve powerful and wealthy corporations which are defendants here. This case, in brief, is a textbook example of the kind of misuse of the disqualification standards for tactical litigation advantage of which courts have become increasingly aware and wary.

None of this should be taken to mean that if Farmer's participation in this litigation did, indeed, violate the canons of professional ethics, the Court would allow him to remain. But for the reasons stated, that participation presents no such violations.

The Court is both justified and required to regard defendants' arguments through a practical lens, and to assess them in light of those practicalities. Its responsibility with respect to the supervision of its bar is not limited to the disqualification of attorneys for violations of the Code of Professional Responsibility; it also includes the rejection of efforts to abuse the Code through motions to disqualify which lack substantive merit and represent means to harass the opposing party.

The motion to disqualify counsel will be denied.

*Id.* at 78-79.

As discussed below, Hertz's motivation here is not "a fine sense of ethics," but rather a desire to handicap the False Police Report Claimants by preventing critical members of their

legal team—particularly, those who have the historical experience of litigating with Hertz and intimate knowledge of its systems and tactics vis-à-vis similarly situated claimants—from accessing documents and information necessary to the prosecution of their claims.[8] This is disappointing, but not surprising given the history between Hertz and Messrs. Malofiy and Fluehr, as discussed below. Construing the Objection in light of this prior history, and upon a proper analysis of the alleged confidentiality breaches forming the basis of Hertz's so-called "concerns" (which are manufactured), the Court should determine that there is only smoke here, no fire. And it should grant the Motions, so as not to functionally deprive the False Police Report Claimants of the full participation of key members of their legal team.

> **B.     Hertz Made Identical Attacks against Messrs. Malofiy and Fluehr in the *Grady* Case, but Hertz Was the One Sanctioned for Litigation Misconduct.**
>
> **1.     Hertz's Irrelevant Personal Attacks on Mr. Malofiy and Mr. Fluehr are a Repeat of their Personal Attacks in the *Grady* Case.**

Hertz is recycling previously unsuccessful attacks against Mr. Malofiy and Mr. Fluehr. In the *Grady* case, Hertz and its counsel had no real defense to what had occurred and thus engaged in vicious, uncivil, and wholly immaterial personal attacks on Mr. Malofiy and Mr. Fluehr. Mr. Fluehr's February 17, 2017 letter to the Philadelphia Court of Common Pleas summarizing these attacks (with exhibits) is attached as Exhibit 1.[9]

---

[8]     Hertz is weaponizing the Court's prior ruling limiting disclosure of information and documents produced pursuant to Local Rule 9018-3 to those counsel who are admitted *pro hac vice*. And by now opposing the *pro hac vice* admission it previously argued was so critical to the protection of its interests (because, so the argument went, such admission would subject the recipients of confidential information and documents to the full disciplinary authority of the Court), Hertz has laid bare what had been its objective all along, which was to *skirt* the intent of Local Rule 9018-3 by preventing its self-designated "confidential" information and documents from being considered by key opposing counsel under any circumstances.

[9]     References to Exhibits herein are to the exhibits attached to the Declaration of Francis Malofiy, which appears as **Exhibit A** to this Reply.

Hertz's attacks were utterly unprovoked and completely gratuitous, as are the attacks in Hertz's instant Objection. The judges in the *Grady* case gave no credence to Hertz's pre-trial attacks. Yet, on September 5, 2017, just days before trial, Hertz wrote another letter attacking Mr. Malofiy. Mr. Malofiy responded on September 7, 2017. *See* Ex. 2. The court rejected Hertz's attacks and the case proceeded to trial. The jury found Hertz liable for malicious prosecution and intentional infliction of emotional distress and the court, thereafter, ordered a trial on punitive damages. Hertz's 1.5 years of attacks on Mr. Malofiy and Mr. Fluehr went nowhere; yet, they now raise them again for the same improper purposes.

2. **Hertz was Sanctioned in the *Grady* Case for Egregious Litigation Misconduct and Destroying Records.**

After spending 12 days in jail, Ms. Grady was adamant that she had extensively communicated with Hertz and had paid her bill. None of this was reflected in Hertz's theft report. In particular, Ms. Grady stated that she had extended her vehicle with an employee at the Philadelphia airport location named John, last name unknown.

In discovery, Hertz adamantly denied in sworn interrogatory answers that anyone named John had ever worked at the Hertz location with customers. When Mr. Malofiy pressed Hertz that this could not be true, Hertz baselessly threatened to try report counsel to the disciplinary board to try to stymie the investigation. *See* Ex. 3.

When the case file was subpoenaed from Hertz's private investigator for trial it included damning evidence showing that while claiming John did not exist, Hertz knew exactly who John was and secretly was using a private investigator to locate him.[10] In an effort to intimidate John to cooperate with Hertz, the private investigator went to John's mother's house and told her that

---

[10]    From the files subpoenaed from the investigator, counsel also discovered that Hertz and its counsel had directed the investigator to surveil Mr. Malofiy, his office, and his family.

Ms. Grady was trying to sue her son and file criminal charges against him. None of this was true, and neither were Hertz's verified interrogatory answers that there was no such employee, and subsequent representations to the Court to that effect. The timeline in the motion for sanctions attached as Exhibit 3 sets forth Hertz's misconduct denying John's existence. The motion was granted. *See* Ex. 4.

Hertz' next move in the *Grady* trial was to claim all rental records, phone recordings, and bank records for Ms. Grady had been purged (despite the company's document retention policy requiring them to be retained for 7 years), in an attempt to prevent Grady from proving her case. After Ms. Grady produced her own phone and banking records showing that she was a legitimate paying renter who had called Hertz 13 times (none of which was in the theft report), the court sanctioned Hertz for its destruction of the records pertaining to Ms. Grady:

ORDER

AND Now, on this 8 day of September, 2017, upon consideration of PLAINTIFF'S MOTION IN LIMINE FOR NEGATIVE SPOLIATION INFERENCE BECAUSE HERTZ ADMITTED IT "PURGED" AND DESTROYED PLAINTIFF'S CONTRACT AND PAYMENT INFORMATION IN VIOLATION OF ITS OWN POLICIES, any response thereto, and the record as a whole, it is hereby ORDERED and DECREED that Plaintiff's Motion is GRANTED.

- The jury will be instructed at the beginning and end of trial that: Defendant The Hertz Corporation admits "purging" and destroying Plaintiff's contract and payment information; had such information had not been destroyed the information it contained would have damaged Hertz's defense of this case and shown that Grady did not steal the car and that she had done nothing criminal.

- Hertz is precluded from introducing any evidence, testimony, or argument concerning the lack of electronic or physical contract renewal records.

- Hertz is precluded from offering any evidence, testimony, or argument contesting that Ms. Grady was charged in full for the car rental on July 15, 2013.

Ex. 5.

Hertz was the only one sanctioned in the *Grady* case and is the only party guilty of misconduct during the 6-year history of false police report litigation, during which time Mr. Malofiy and Mr. Fluehr have litigated against Hertz without incident. (As discussed below,

Hertz's allegations regarding Mr. Malofiy's mishandling of confidential information are without merit.)

    **C.**    **Hertz's Allegations that Mr. Malofiy Breached Confidentiality Obligations Are Baseless.**

        **1.**    **Hertz Itself has Publicly Disclosed "Confidential Settlements," and the Related Allegations Against Mr. Malofiy Are Untrue.**

Hertz summarily claims that Mr. Malofiy breached a confidentiality agreement and can therefore not be trusted with discovery, but that is not true. Indeed, Mr. Malofiy has litigated many high-profile cases with very sensitive information, and no court has ever found that he violated confidentiality obligations.

The successful result obtained by Messrs. Malofiy and Fluehr in *Grady* ultimately led to their being hired by more victims whom Hertz had falsely reported to the police. After the September 2017 jury verdict against Hertz in *Grady* for malicious prosecution and intentional infliction of emotional distress, the case settled in December 2017 before the trial on punitive damages; the settlement was confidential until Hertz revealed it in the bankruptcy, as discussed immediately *infra*. Other cases have also settled, and Mr. Malofiy does not talk about those settlements.

Mr. Malofiy was, however, surprised when he read Hertz's July 17, 2020, filing in this Court (in opposition to certain False Police Report Claimants' motion for relief from the automatic stay), which forthrightly disclosed the *Grady* settlement on the public docket: "Based on the particular facts of that case, a jury awarded Ms. Grady $100,000 in compensatory damages. The parties ***confidentially settled*** shortly thereafter, with no admission of wrongdoing by Hertz." [*See* Case No. 20-11247, D.I. 762, at ¶6 (emphasis added).] The False Police Report

Claimants' reply to that filing noted that Hertz's motion had vitiated the confidentiality provisions of that settlement. [Case No. 20-11247, D.I. 893, at pp.3-4, ¶ 6].

That background is important because the Objection claims that Messrs. Malofiy and Fluehr cannot handle any confidential discovery because Hertz speculates—without any factual basis—that Mr. Malofiy "leaked" a settlement in May 2018 to 6 ABC News in Philadelphia. It further alleges that Mr. Malofiy "brazenly" referred to the settlement as a "confidential settlement," allegedly flouting the confidentiality provision. All of this is false.

**First,** Mr. Malofiy did not tell any news organization about a confidential settlement. In November 2017, 6 ABC News in Philadelphia interviewed Ms. Grady and another of Mr. Malofiy's clients. Hertz was told at the time that Mr. Malofiy's clients were doing interviews. The story was supposed to air by Thanksgiving, but it did not. The *Grady* case settled in December 2017, and the other case settled in May 2018. In May 2018, 6 ABC News decided to release the story they had filmed in November 2017. At that time, when asked for the status of the cases, Mr. Malofiy simply said he could not comment. There is a reason the story ***does not quote Mr. Malofiy about any resolution***, and the reporter either inferred that the cases had confidentially settled because Mr. Malofiy did not comment, or Hertz's attorney told the reporter how the case had resolved (given that the "confidential settlement" language is how Hertz itself has referred to the *Grady* case). The bottom line is that Mr. Malofiy never told any news organization how the case resolved. Note that the article in question Hertz cites does not even reference how the *Grady* case resolved, demonstrating that Mr. Malofiy was not leaking this type of information to reporters.

**Second**, the entirety of the allegation is that Mr. Malofiy allegedly told a news organization in May 2018 that a case had "confidentially settled." That is it. There is nothing else

alleged. The amount is not disclosed, nor are any other details revealed. Even if Mr. Malofiy had done this—and he did not—treating this sole statement as in any way significant given the massive amount of formal and informal litigation that has taken place against Hertz is pretextual and baseless.

**Third**, Hertz itself publicly referred to its settlements with false police report claimants as "confidential settlements." This dramatically undercuts Hertz's rather hysterical assertion in the objection that this language is a "brazen" attempt to violate or breach any agreement. This is the very language Hertz uses to describe how cases resolved.

The bottom line is that Hertz's accusation is factually baseless. Hertz is contriving reasons to keep two effective attorneys who had doggedly exposed its broken corporate culture and policies from viewing discovery and pushing the cases forward. This is not a legitimate reason to oppose a *pro hac vice* application.

2.    **Hertz Trusted Mr. Malofiy in 2020 with the Very Discovery Information it Now Claims is "Highly Confidential" and that He Cannot be Trusted With.**

Hertz's claims that Mr. Malofiy cannot be trusted with discovery is belied by its own actions. Indeed, from February to May 2020, the parties engaged in extensive informal litigation. This included briefing and Hertz disclosing and providing approximately 2,000 pages of customer records, internal records, policies, and manuals to Messrs. Malofiy and Fluehr.

In other words, despite Hertz now claiming that a 2018 news article shows that Mr. Malofiy cannot be trusted, Hertz itself had no problem providing allegedly "highly confidential" information to Mr. Malofiy in 2020. There is no way to square Hertz's actions in 2020 with Hertz's allegations in 2022, other than to note that Hertz is insincere and is simply trying to

prejudice the False Police Report Claimants' cases. Hertz's Objection is one made of convenience, not conviction, and its actions belie the arguments made in its Objection.

### 3. Mr. Malofiy Did Not Violate Rule 408, Nor Could that be a Basis to Deny a *Pro Hac Vice* Application.

The Objection asserts that Mr. Malofiy "violated" Rule 408 (governing admissibility into evidence of statements made during compromise negotiations for specified purposes), that Mr. Malofiy therefore cannot handle confidential material, and that the Motions should be denied for that reason. This argument is meritless.

As the Court is aware, throughout these proceedings Hertz has argued that it did not have notice of any systemic issues relating to false-police-reporting problems and therefore did not have to provide notice to those individuals it reported for theft. However, in apparent recognition of the scope of the false-police-reporting problem, Hertz attorneys on two occasions in early 2020 told Mr. Malofiy that they would use any and all means to defend against these claims, including filing for bankruptcy. Mr. Malofiy therefore noted, in rebuttal to Hertz's position before this Court that it did not have notice about systemic theft reporting issues, that Hertz's attorneys told him that the issue was big enough to warrant filing bankruptcy.[11] [*Id.* at ¶¶ 21-22.]

In its Objection, Hertz asserts that Mr. Malofiy's account of these conversations with Hertz's counsel were false, but that even if it were true, disclosure of the conversations "violated" Federal Rule of Evidence 408. Hertz suggests that it could have filed a motion to strike Mr. Malofiy's declaration, but says it chose not to "[i]n the interest of not burdening the Court with further disputes, and because the statements had already been publicly filed and the

---

[11]    To be clear, there is much more that could have been included to establish notice, but Mr. Malofiy exercised restraint and discretion in making his point. Great care was taken to redact documents, *id.* at 9, and to also not include others out of an abundance of caution (the False Police Report Claimants reserve the right to introduce these documents if the Court requires more evidence of notice on the systemic issues).

damage done" (Obj. at 17). This convenient (and implausible) explanation overlooks the obvious point that, if Hertz had moved forward with a motion to strike it would have had to either (i) prove with competent evidence that Mr. Malofiy's account of the conversations was false, or (ii) admit the truth of Mr. Malofiy's account, but then somehow establish the account should be stricken from the public docket under 11 U.S.C. § 107(b)(1) or (2). It is simply not logically possible for Hertz to deny that the conversation took place while at the same time establishing the predicates for application of Federal Rule of Evidence 408 as to the non-existent conversation.

Assuming, as the Court must on this record, that the conversations did occur as described by Mr. Malofiy,[12] disclosure of the conversations in Mr. Malofiy's declarations did not "violate" Rule 408. And even if it did, the proper remedy would be to deny admission of Mr. Malofiy's account of the conversations into evidence at the applicable evidentiary hearing(s)—Hertz cites no authority for the proposition that a Rule 408 "violation" merits denial of a *pro hac vice* application.

Rule 408 prohibits the admission of "conduct or a statement made during compromise negotiations about [a] claim" on behalf of any party either "to prove or disprove the validity or amount of a disputed claim" or "to impeach by a prior inconsistent statement or a contradiction." Fed. R. Evid. 408(a)(2). Rule 408 speaks to prohibiting the *admission* of evidence, not its *introduction*. Subsection (a) says nothing about the admission of such evidence for other purposes; and subsection (b) explicitly provides that compromise-offer and negotiation evidence may be admitted "for another purpose." Fed. R. Evid. 408(b).

---

[12]   Mr. Malofiy stands by his declaration. And it is very telling that even now, as it cites this declaration as evidence of misconduct on Mr. Malofiy's part, Hertz has not provided the Court any evidentiary record upon which it could base such a finding. A finding of attorney misconduct should not (and legally, cannot) be premised upon mere *ipse dixit* from opposing counsel.

It is well-settled that one such "other purpose" is to establish notice of a claim or the facts underlying a claim. *See* Fed. R. Evid. 408, 2006 Advisory Committee Notes ("The amendment does not affect the case law providing that Rule 408 is inapplicable when evidence of the compromise is offered to prove notice. *See, e.g., United States v. Austin*, 54 F.3d 394 (7th Cir. 1995) (no error to admit evidence of the defendant's settlement with the FTC, because it was offered to prove that the defendant was on notice that subsequent similar conduct was wrongful); *Spell v. McDaniel*, 824 F.2d 1380 (4th Cir. 1987) (in a civil rights action alleging that an officer used excessive force, a prior settlement by the City of another brutality claim was properly admitted to prove that the City was on notice of aggressive behavior by police officers).").

On October 23, 2021, Hertz attorney Bill O'Neill wrote to the False Police Report Claimants' counsel complaining that paragraph 21 and 22 of Mr. Malofiy's declaration [D.I. 52-1] violated Rule 408. Counsel John Lahad responded on November 3, 2021:

> the paragraphs [from the Malofiy declaration] do not violate Rule 408, which only bars admission of evidence for specified purposes, *i.e.*, to prove or disprove the validity or amount of a disputed claim or to impeach by a prior inconsistent statement. The statements you reference are not used for those purposes, but instead are evidence—consistent with the context in which the declaration was submitted—that Hertz had notice and understanding of the claimants allegations. As Rule 408(b) makes clear, the Court "may admit this evidence for another purpose."

Hertz did not respond and never raised any Rule 408 issue with the Court, because the False Police Report Claimants' position is obviously correct. And for the last three months, Mr. Malofiy's statements have sat on the public docket without any action from Hertz.

### D.    Mr. Malofiy Acknowledges His Prior Disciplinary History, Though it Was in Part Misstated by Hertz.

As noted above, Mr. Malofiy is a member in good standing of the Bar of the Commonwealth of Pennsylvania and Third and Ninth Circuit Courts of Appeals. He served a suspension from practice in the Eastern District of Pennsylvania for three months and a day in

2016-2017, stemming from conduct in a case in 2011. Since that time, Mr. Malofiy has not been subject to any disciplinary proceedings. He practices law every day just over the Delaware border in Media, Pennsylvania. His law firm is one of general practice. He handles entertainment, malicious prosecution, breach of contract, negligence, legal malpractice, and catastrophic personal injury cases.

Mr. Malofiy accepts the discipline imposed for the 2011 incident by the Eastern District of Pennsylvania. He also acknowledges that the Eastern District of Pennsylvania denied his 2017 reinstatement request. He has paid dearly for a mistake over a decade ago, when he was three years out of law school. Denial of his *pro hac vice* admission here would continue to have negative ramifications on Mr. Malofiy's career, and would effectively disqualify him based upon a suspension of three months and one day that he served more than five years ago.

With respect to the "Stairway to Heaven" case, Hertz largely accuses Mr. Malofiy of conduct attributable to other attorneys. The decision denying the request for attorneys' fees referred to unspecified counsel (i) improperly speaking to the press in violation of a court order, (ii) improperly eliciting testimony from a witness in violation of a court order, (iii) altering a picture, and (iv) engaged in alleged courtroom antics, including an attempt at levity during the trial that the Court disapproved of. Hertz wrongly assumes that the California trial court was talking about Mr. Malofiy; however, it was other attorneys who spoke to the press, elicited the testimony, and accidentally cropped a picture (the defense had been given the entire picture and the innocent error was quickly caught). The only finding pertaining to Mr. Malofiy related to his trial presentation. Indeed, while the court criticized portions of Mr. Malofiy's trial presentation— in large part, what the court was referring to were attempts to preserve the record for appeal—the presentation was in the context of a hard-fought trial and the court decided that none of the

presentation warranted sanctions or any other remedial action (therefore denying opposing counsel's request for attorneys' fees and not imposing any sanction or discipline on Mr. Malofiy).[13]

Since serving his suspension in the Eastern District of Pennsylvania, Mr. Malofiy has been admitted *pro hac vice* in the following jurisdictions: United States District Court for the Southern District of New York (2019-2020, *Furry Puppet LLC v. Fall Out Boy*, 1:19-cv-02345-AT; 2019-2022, *Elliott v. Cartagena (p/k/a Fat Joe),* et al., 1:19-cv-01998-NRB), and Montgomery County, Maryland (2017-2019, *Pires v. Brewer* et al.). His request for *pro hac vice* admission has been denied in one case: *Smith v. The Weeknd* in 2019, as noted in the Objection. Mr. Malofiy disclosed his prior suspension when applying for *pro hac vice* admissions in other jurisdictions where required, and he would have disclosed it in this Court if such information had been required by Local Rule 9010-1 or Local Form 105.

**E.      There is No Reason to Deny Mr. Fluehr's Motion.**

Hertz gives no legitimate reason to deny Mr. Fluehr's Motion. The opposition to Mr. Fluehr's *pro hac vice* application illustrates it is a litigation tactic to bar an effective attorney, who has pursued Hertz over its unconscionable conduct, from access to discovery.

Mr. Fluehr has been barred in Pennsylvania and New Jersey since 2013. He has sat co-counsel on many trials, is admitted to the United States Supreme Court, the Ninth Circuit and Third Circuit Courts of Appeal, and the Eastern District of Pennsylvania, and he has litigated

---

[13]   On appeal, the Ninth Circuit noted "[g]iven the complex nature of this case, we are troubled by the strict imposition of time limits and the relative inflexibility of the district court once Skidmore ran out of time." *Skidmore v. Zeppelin*, 905 F. 3d 1116, 1137 (9th Cir. 2018) (reversed *en banc*). In a later decision after rehearing *en banc*, the dissent noted the district court had "brusquely" rejected Mr. Malofiy's legitimate attempts to preserve the record, and that "[g]iven the imbalance of power that exists between a judge and a litigant, we should be careful not to require a litigant to defy explicit warnings from the court." *Skidmore v. Zeppelin*, 952 F. 3d 1051, 1087 (9th Cir. 2020).

innumerable cases *pro hac vice* all around the country. He has appeared in a Hertz case in Ohio *pro hac vice* in 2019, without objection from Hertz, demonstrating that the current opposition is pretextual. He has no disciplinary record or a hint of impropriety in his history.

Most notable for the Objection, he was co-counsel on the *Grady* trial and was instrumental in securing the punitive damages trial against Hertz following the jury verdict. Since 2017, he had personally spoken with nearly every Hertz claimant and played an integral role in every aspect of holding Hertz accountable for its conduct. He has personally gotten many Hertz victims out of jail, and has successfully had many prosecutions dismissed against innocent Hertz customers, including the significant Hanna Ayoub case. In these bankruptcy proceedings, he has signed all currently submitted proofs of claim and has been an active (and essential) member of the False Police Report Claimants' legal team, particularly as regards matters requiring knowledge and understanding of Hertz's policies and practices around theft reporting.

Hertz, of course, knows all of the above as Mr. Fluehr is a longtime and familiar foe. Despite this, Hertz takes great pains in the Objection to insult Mr. Fluehr's competence and experience, claiming he is just an "assistant" to Mr. Malofiy in "what is effectively a solo practice." Mr. Fluehr is not a puppet. He is a lawyer with the same obligations as all lawyers that appear before this Court. He has a spotless record, and there is no reason to tarnish his reputation by denying his *pro hac vice* application, which would have negative reputation and career consequences, as many jurisdictions require that *pro hac vice* application denials be disclosed. This would be professionally damaging to any attorney as a rule, but is especially so to Mr. Fluehr because a large part of his work takes place across the nation outside Pennsylvania and New Jersey.

### G.    Delaware Counsel Reaffirms Support of the Motions.

Finally, the undersigned counsel fully understands his, and his firm's, role in this matter. Having previously considered all of the issues raised by Hertz in its Objection, and vetted Messrs. Malofiy and Fluehr—and perhaps more importantly, having worked with both of them extensively since October 2021—the undersigned reaffirms sponsorship of their admission *pro hac vice*. It is counsel's view that Messrs. Malofiy and Fluehr are critical to the prosecution of the False Police Report Claimants' Claims, particularly given that they are the client contacts and the most knowledge about the underlying claims. Counsel also believes that Messrs. Malofiy and Fluehr understand the requirements for lawyers practicing before this Court.

Additionally, as required, Messrs. Malofiy and Fluehr submit themselves to this Court's disciplinary jurisdiction. Thus, like any attorney that appears before this Court, they will have to conduct themselves in accordance with this Court's expectations and rules and are subject to this Court's powers.

[Remainder of page intentionally left blank]

## **CONCLUSION**

WHEREFORE, for the reasons set forth in the Motions and this Reply, the False Police Report Claimants respectfully request that the Court overrule the Objection, grant Motions, and grant any such other and further relief as the Court deems just and proper.

Dated: February 14, 2022

**FAEGRE DRINKER BIDDLE & REATH LLP**

*/s/ Patrick A. Jackson*
Patrick A. Jackson (Bar No. 4976)
Ian J. Bambrick (Bar No. 5455)
Jaclyn C. Marasco (Bar No. 6477)
222 Delaware Avenue, Suite 1410
Wilmington, DE 19801
Telephone: (302) 467-4200
Facsimile: (302) 467-4201
Emails: patrick.jackson@faegredrinker.com
        ian.bambrick@faegredrinker.com
        jaclyn.marasco@faegredrinker.com

*Delaware Bankruptcy Counsel for the False Police Report Claimants*