## EXHIBIT A

**Malofiy Declaration**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| Rental Car Intermediate Holdings, LLC,[1] | Case No. 20-11247 (MFW) |
| Reorganized Debtor. | |

## DECLARATION OF FRANCIS MALOFIY IN SUPPORT OF
## FALSE POLICE REPORT CLAIMANTS' REPLY TO REORGANIZED DEBTOR'S
## OBJECTION TO PRO HAC VICE APPLICATIONS OF ATTORNEYS MALOFIY AND
## FLUEHR

I, Francis Malofiy, hereby declare under penalty of perjury as follows:

1.        I am an attorney with the law firm, Francis Alexander, LLC.

2.        I submit this declaration (this "Declaration") in support of the *False Police Report Claimants' Reply to Reorganized Debtor's Objection to Pro Hac Vice Applications Of Attorneys Malofiy and Fluehr* (the "Reply").

3.        Unless otherwise stated, all statements in this Declaration are based upon my personal knowledge.  If called to testify, I could and would competently testify to the facts set forth herein.

---

[1]        The last four digits of the tax identification number of Reorganized Debtor Rental Car Intermediate Holdings, LLC ("RCIH") are 2459.  The location of the Reorganized Debtors' service address is 8501 Williams Road, Estero, FL 33928.  On September 28, 2021, the Court entered a final decree closing each of the chapter 11 cases for The Hertz Corporation and its affiliated reorganized debtors (the "Reorganized Debtors" and prior to the effective date, the "Debtors") other than RCIH's chapter 11 case.  Commencing on September 28, 2021, all motions, notices, and other pleadings relating to any of the Reorganized Debtors shall be filed in RCIH's chapter 11 case, Case No. 20-11247 (MFW).

4.      Attached as **Exhibit 1** hereto is a true and correct copy of a letter written by Mr. Fluehr of Francis Alexander LLC on February 17, 2017, and sent to the Philadelphia Court of Common Pleas on that day, regarding personal attacks made on myself and Mr. Fluehr by Hertz's counsel in the *Grady* case.

5.      Attached as **Exhibit 2** hereto is a true and correct copy of a letter written by myself and sent to The Honorable Paula Patrick of the Philadelphia Court of Common Pleas on September 7, 2017, in the *Grady* trial regarding personal attacks made on myself by Hertz's counsel.

6.      Attached as **Exhibit 3** hereto is a true and correct copy of a September 11, 2017, motion for reconsideration and sanctions filed by my law firm in the *Grady* trial against Hertz for concealing the identity and existence of a former employee and witness named John.

7.      Attached as **Exhibit 4** hereto is a true and correct copy of a September 11, 2017 Order granting the motion for reconsideration and sanctions filed on September 11, 2017, in the *Grady* trial and imposing a spoliation sanction on Hertz.

8.      Attached as **Exhibit 5** hereto is a true and correct copy of a September 8, 2017 Order imposing several spoliation sanctions on Hertz.

9.      I did not "leak" any settlement to 6 ABC News in May 2018, and in fact refuse to provide comment on confidential settlements unless Hertz has publicly revealed the settlement. For instance, in July 2020, Hertz publicly revealed in bankruptcy filings the fact that the *Grady* case settled.

10.     I subpoenaed Hertz's private investigator in the *Grady* case, Matthew Orr of Pinnacle Investigation. The produced investigative file revealed that Hertz and its counsel had my law office surveilled and my house staked out, myself and my fiancé followed, and my family

followed.  This was done to intimidate me and to attempt to blacken my character.

11.     Attached as **Exhibit 6** hereto is a true and correct copy of screenshots from a surveillance video taken of the Francis Alexander LLC office in Media, PA in 2017 by Pinnacle Investigation. This video was received in response to the subpoena to Mr. Orr.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Dated:  February 14, 2022

_____

Francis Malofiy

**EXHIBIT 1**



## FRANCIS ALEXANDER LLC

FEBRUARY 17, 2017

THE HONORABLE DENIS P. COHEN
City Hall | Room 538
Philadelphia, PA, 19107
T: 215 686-7340
F: 215 686-7048

*Via Hand Delivery*

Re:    **GRADY v. THE HERTZ CORPORATION | CIV. NO. 151103380**
Response to Edelstein Letter and Request for a Show Cause Order

Dear Judge Cohen,

I recently received a highly improper letter from Jay Edelstein dated February 14, 2017, addressed to yourself (attached). As you know, I am counsel for Kelly Grady on the Grady v. The Hertz Corporation matter currently in the February trial pool. I have no desire occupy the Court's busy schedule with this matter, but given the explosive way in which completely irrelevant issues have been raised, I am left with no choice but to firmly object to Mr. Edelstein's impermissible, bad-faith litigation tactics in the hope that future conduct can be avoided, especially at trial.

Regrettably, as this letter will detail, such conduct is par for the course given how Mr. Edelstein has conducted himself during this litigation. The Court must be made aware that Mr. Edelstein's behavior has obsessively focused on attacking opposing counsel, instead of the merits of the case. Not only has Mr. Edelstein repeatedly and improperly raised Mr. Malofiy's disciplinary issue, but he has repeatedly threatened to (baselessly) report me to the Disciplinary Board to gain a tactical advantage in this litigation, even telling me to retain counsel on several occasions. This is a highly improper intimidation tactic that the Superior Court has observed is forbidden.

It also cannot be overlooked that the letter form of Mr. Edelstein's substantive request is improper; it should have been filed as a motion on the docket. It is self-evident from the fact that Mr. Edelstein sent you a letter, instead of complying with court procedures, that his ***sole*** purpose is to raise the extraneous issues to prejudice the court against Plaintiff. By noting this I in no way suggest that the Court will be so prejudiced, but the bad-faith nature of Mr. Edelstein's letter cannot be ignored.

This case is a malicious prosecution, false imprisonment, and intentional infliction of emotional distress action. The judge pro temp evaluated the case at 100% in favor of Plaintiff for liability and placed the value at $500,000 before summary judgment. Essentially, Ms. Grady rented and renewed a car for three months. She stayed in close touch with Hertz and had fully paid for the car. However, after full payment for the car had been made, Hertz falsely reported the car stolen and told the Philadelphia Police that Grady had not contacted Hertz since the initial rental. This was not true. After Ms. Grady was pulled over by the Penn. State Police, the State Police contacted

Hertz whose employee admitted Grady had not stolen the car and that Hertz had messed up. Grady was let go and told she had done nothing criminal. However, Hertz then went to the Philadelphia Police the following day and again falsely reported Grady for stealing the car. This happened because Hertz deliberately and recklessly chooses, as a matter of company policy, not to follow procedures designed to safeguard its customers' safety. As a result of Hertz's conduct, Ms. Grady was imprisoned for 12 days, prosecuted for 11 months, and suffered grievous injuries, both psychological and physical. Hertz has turned over little to no evidence in this case because, without any explanation, it destroyed and purged all of Grady's payment and contract information.

It is vital to observe that despite Mr. Edelstein lobbing attack after attack on myself and Mr. Malofiy, Edelstein's letter is devoid *any allegation of any sort of misconduct* on the part of Plaintiff's counsel *in this litigation.* Moreover, Mr. Edelstein's letter outrageously impugns and attacks my personal reputation with nothing more than guilt by association concerning a six year-old issue *I had nothing to do with*.

These personal attacks on myself and Mr. Malofiy, which have taken place for the duration of the litigation, are Mr. Edelstein's sole contribution to this case; despite being the only defense counsel ever entered on the case he has not shown up for a single deposition, hearing, or conference. It is necessary to document these personal attacks to explain why and how Mr. Edelstein's bad faith, and for lack of a better word "nasty," communications in this case have prejudiced Plaintiff.

Mr. Edelstein's first communication on this case set the tone for how he would conduct himself throughout the litigation. His first letter to my firm stated in March 2016:

> *I have had the pleasure to read the reported sanctions levied against you* [Mr. Malofiy] in what can only be described as not surprising based on your recent contact with this office. It is good to know that the judiciary continues to enforce the rules of ethical conduct and procedure and I am certain that *at some point they will be needed in this case also*.

Exhibit B (emphases added). This came out of the blue. As can be seen, from the beginning of the case Mr. Edelstein is obsessively focused on Mr. Malofiy and he makes it clear that his angle will be to raise these irrelevant issues whenever possible (as his recent letter to Your Honor proves).[1]

At another point in July 2016, Mr. Edelstein stopped sending case emails to Mr. Malofiy, who was lead counsel at the time, claiming at length that the disciplinary rules did not permit it. This was not remotely true and had no basis—as Mr. Edelstein well knew. See Exhibit B.

At another point in September 2016, I personally sent Mr. Edelstein two routine deposition subpoenas for Hertz employees. In return, Mr. Edelstein bizarrely accused me of unspecified disciplinary violations:

---

[1] His reference to my firm's "recent contact with [Edelstein's] office" being improper is baseless and fabricated, as Mr. Malofiy and I had only one thoroughly unremarkable two-minute phone call with one of his associates about potentially extending the preliminary objection deadline. This is noted in Mr. Malofiy's short response email. Id.

> "You continue to violate the Rules of Ethics. Amazing but true."

Exhibit C. When I asked him what he was talking about, Mr. Edelstein never responded or corrected his accusation. Id. To this day, I have no idea what he was talking about and I have no idea what he means when he stated that I "continue" to violate the Rules of Ethics, as if I had previously violated a disciplinary rule. This is not merely uncivil conduct, it is sanctionable. It is improper to threaten to report an attorney for a disciplinary violation to gain a tactical advantage in litigation. Ali v. Williams, No. 2577 EDA 2014, 2015 WL 6696798, at *8-9, n.18 (Pa. Super. Ct. Aug. 17, 2015) (stating that it is sanctionable for an attorney to threaten to report disciplinary violations to gain a tactical advantage in a case).

On September 21, 2016, Plaintiff sent Mr. Edelstein a letter noting that Hertz had falsely answered a discovery request and that it had to be corrected immediately. See Exhibit D. Plaintiff alleges that she consulted with a Hertz employee named John during her rental in 2013 who knew she did not steal the car; Plaintiff asked Hertz to identify the employee named "John." Hertz's interrogatory answer on the subject falsely stated that _**no one named John was employed by Hertz in 2013 who worked with customers**_ (a Hertz manager later admitted the interrogatory answer was false and that Hertz had always known exactly who "John" was).

Plaintiff subsequently learned that while Hertz had led Plaintiff to believe this false answer was correct, it then _**secretly sent a private investigator to John's house**_, who made untrue statements to John's family to the effect that Plaintiff was coming after John. As a result, John went into hiding and was not able to be deposed. After Plaintiff independently figured out that John did exist, Plaintiff's counsel sent a letter to Mr. Edelstein, asking him to come clean about his conduct, to which the following unrepentant email was received:

> A guy with your track record and reputation should be very careful about making these allegations.. Suspension form Pennsylvania practice generally follows suspension from USDC. .Be very very careful because your way doesn't work.... File a motion, make a formal charge and allow me to bury you...Absurd..

Exhibit D. Mr. Edelstein refused to correct the clearly erroneous answer. As he has repeatedly done during this case, he instead raised irrelevant matters to distract from his misconduct.

Plaintiff was indeed forced to file a motion to compel/preclude/sanction regarding these false answers and unproduced evidence; Plaintiff properly subpoenaed the attendance of several individuals for the hearing.[2] In response to a letter sent regarding subpoenas for the hearing (including Mr. Edelstein, who had knowledge concerning the private investigator), Mr. Edelstein wrote to his associate and copied Mr. Malofiy:

Stuart,

---

[2] The motion to compel was granted, the request for the sanction of preclusion was deferred until trial (and motions in limine are pending), and the request for sanctions was denied.

> I believe based on what we now know and the actions recently taken, *__a report to The Pa Disciplinary Board is appropriate__*. I will discuss after I return from Connecticut post hearing. Thank you.

Exhibit E (emphasis added). Again, threatening to report an attorney to the disciplinary board to gain a tactical advantage in litigation is sanctionable conduct. <u>Ali</u>, No. 2577 EDA 2014 at *8-9, n.18. Mr. Malofiy noted in response that he had done nothing improper and that the motion filed was grounded in fact. Mr. Edelstein responded with unbridled venom:

> You missed the point. The ethics violation has nothing to do with your spurious motion. That's the beauty. Imagine what this will do for reinstatement to USDC. We've got you and you don't even know it. *__Sometimes I love this job__*..

<u>Id.</u> (emphasis added). The bad faith and personal venom held by Mr. Edelstein toward Plaintiff and Plaintiff's counsel is illustrated by his gleeful statement "Sometimes I love this job." Mr. Edelstein's sole focus during much of the case has been to attack opposing counsel, not focus on the merits of the case. To this day, Mr. Edelstein has never revealed what he was talking about in this email, same as when he said that I personally "continue to violate the Rules of Ethics" back in July 2016. Again, my firm has done nothing improper despite Mr. Edelstein's repeated accusations. Moreover, it is impermissible to threaten another attorney to gain a tactical advantage in a lawsuit.

Mr. Edelstein continued to display unprovoked venom. After several vanilla emails to court employee Mr. Peter Divone by Plaintiff's counsel and Mr. Edelstein's associate, regarding scheduling the hearing for the motions, Mr. Edelstein interjected himself:

> Pete,
>
> I have no intention of participating in this sham. I stake my reputation against a suspended lawyer with this reputation anyway. If his Honor wants me there I will certainly out of respect for the court be there however I will not be drawn into Mr. Maolfiy's fantasy world. The record clearly shows the absurdity of this Motion.

Exhibit F. As can be seen, at every juncture Mr. Edelstein's only recourse is to obsessively refer to Mr. Malofiy's disciplinary issue, in an attempt to improperly bias officers of the court against Plaintiff.

At the discovery hearing in mid-October 2016 in front of Judge New, Mr. Edelstein's associate attempted to raise Mr. Malofiy's disciplinary issue. *__Judge New directed him to stop immediately and to focus on the issues__*. However, following the hearing, at the direction of Mr. Edelstein, Mr. Edelstein's associate yet again raised Mr. Malofiy's disciplinary issue with the Court

by way of a letter and yet again erroneously accused Mr. Malofiy of a disciplinary violation in this case, which had no basis in the truth.[3] See Exhibit G.

On November 25, 2016, this venomous conduct on the part of Mr. Edelstein continued. I sent Mr. Edelstein a standard Pa. RCP 1023.2(b) notice explaining that a motion Mr. Edelstein intended to file was meritless and that Plaintiff would move for sanctions pursuant to Pa. RCP 1023.2 if it was filed. Mr. Edelstein responded:

> Oh, by the way that letter you wrote for your boss, *I'd get counsel if I were you*. Have a great weekend and don't ever threaten me again.

Exhibit H (emphasis added). The letter I sent to Mr. Edelstein cited chapter and verse why his contemplated motion was baseless and should not be filed—my letter was indisputably correct. Indeed, Mr. Edelstein never filed the motion. But to be told that Mr. Edelstein was going to report me to the disciplinary board for writing an accurate letter, and that I should "get counsel," is absolutely astonishing. For the record, I responded:

> Mr. Edelstein,
>
> I have not remotely threatened you. Under Rule of Civil Procedure 1023.2(b), it is required that a party notify opposing counsel before moving for sanctions and to specify the bases for that motion.
>
> Plaintiff is satisfying the Pa. RCP 1023.2(b) requirement because the motion which you have proposed filing clearly has no legal or factual basis under Pa. RCP 1023.1(c)(1-3). I have even specified the exact Rules of Civil Procedure and cases I am relying on for your benefit.
>
> By doing so, I hope to avoid unnecessary motion practice.
>
> May I also inquire when Plaintiff can expect Defendant's settlement memorandum which is now overdue?
>
> Good evening

Id.

This conduct has continued unabated in the last several weeks. On December 26, 2016, Mr. Edelstein sent me an email which stated:

---

[3] Hertz attempted to claim that Plaintiff and Plaintiff's contacted an employee of Hertz, John Lawrence. In fact, Plaintiff and Plaintiff's counsel knew for a fact that the individual was not employed by Hertz in 2016. Furthermore, Hertz had denied in verified discovery answers that the individual had ever worked for the company.

> I also remind you that your letter authored to address the redaction and its harm is completely false and actionable *hence my suggestion you retain counsel*.

Exhibit I (emphases added). During discovery in September 2016, Plaintiff provided certain records to defendant, such as phone records, which were partly redacted. The redacted portions concern Ms. Grady's private phone calls that have nothing to do with the case, as Plaintiff told defense counsel. At no point did defendant Hertz ever file a motion regarding these redactions before or after discovery (actually, Defendant never requested the documents in discovery in the first place and has no grounds to make such a request). Yet, Mr. Edelstein gratuitously threatens me, again tells me to retain counsel, and claims I have committed some sort of disciplinary violation. This is not acceptable behavior.

Mr. Edelstein wrote to me on January 27, 2017, of Mr. Malofiy:

> I'd distance myself from him if I were you but that's difficult working in the same office all day.  We both have responsibilities to the Disciplinary Board. Be careful.

Exhibit J. Again, without any provocation, Mr. Edelstein threatened my legal career to gain a tactical advantage in this litigation. This is serial misconduct. I ignored this attack, as I did his previous provocations, and responded only to case-relevant subject matter in his communication. Again, unbidden, Mr. Edelstein responded and threatened my legal career:

> Again read DR 217 and watch yourself. Just some friendly advice .

<u>Id.</u>

I have ignored this conduct, up until this point, although it clearly crosses the line and is remarkably uncivil. <u>Ali</u>, No. 2577 EDA 2014, at *8-9, n.18 (stating that it is sanctionable for an attorney to threaten to report disciplinary violations to gain a tactical advantage in litigation). My only goal is to resolve this case in favor of my client. However, now that Mr. Edelstein has made so direct an attack on myself to the Court, which has the possibility of prejudicing Ms. Grady's case, I am bound to raise Mr. Edelstein's improper course of conduct. I am positive that if no action is taken by the Court, Mr. Edelstein will make similar accusations to the trial judge and jury.

I also firmly believe that Mr. Edelstein's uncivil attacks have affected the merits of this case. There is no excuse for concealing the existence of a witness, and then secretly sending a private investigator to the witness's house to misrepresent Plaintiff's position. Plaintiff had to file several motions during discovery addressing Edelstein Law's conduct. When The Honorable Arnold New ordered that Edelstein Law produce discovery in response to Plaintiff's motions, he also *sua sponte* ordered Edelstein Law and Hertz to submit an affidavit detailing the steps they took to obtain the information in question so that their compliance with the Court's order could be verified. Note that Defendant Hertz has admitted, without explanation, to destroying all of Grady's contract and payment information in this case, further evidence that the defense team has not litigated this matter in good faith.

As the Court may remember, within the last week or two, Edelstein Law filed a motion in limine concerning pictures of Plaintiff's injuries to her vagina. Defense counsel knew that these pictures were extremely graphic (that was part of the basis for the motion in limine) and knew that there was a prior agreement not to post the pictures publicly. Yet, Mr. Edelstein ***filed the pictures without warning on the public docket***. Plaintiff moved to seal the pictures but also asked for a rule to show cause why sanctions should not be imposed. Plaintiff asked for the rule to show cause precisely because Mr. Edelstein's conduct throughout this case illustrates that he is acting in bad faith.

The Court denied Plaintiff's request for a rule to show cause. Plaintiff now renews the request that a rule to show cause concerning why sanctions should not be imposed for Mr. Edelstein's improper litigation conduct. Mr. Edelstein has not comported himself in accordance with the standards expected of an attorney practicing before the Philadelphia Court of Common Pleas and he should be required to explain his behavior, starting in March 2016. I have had to spend an extraordinary amount of time responding to, and dealing with, the bad-faith actions and conduct of Edelstein Law throughout this litigation.

Moreover, if such a rule to show cause issues, Plaintiff anticipates being able to present additional evidence of bad faith. At this point, it appears that Mr. Edelstein hired a private investigator to harass and defame Ms. Grady. The private investigator has not been contacting relevant witnesses to this case, but has instead been canvassing Ms. Grady's friends, friends of friends, relatives, and others for the purpose of telling them that Ms. Grady is a car thief and altogether bad person. These defamatory actions have taken a tremendous toll on her personal relationships. There is no purpose for this conduct other than to retaliate against Ms. Grady.

As a result of this harassment Ms. Grady has suffered greatly, something that was only enhanced by Edelstein Law's intentional filing of pictures of her vaginal injuries on the docket. It is hard to stress how dismayed Ms. Grady has been as a result of the clearly retaliatory conduct on the part of the defense team.

I was barred in late 2013, and have been fortunate enough to participate as counsel in many cases in the Philadelphia Court of Common Pleas in the last several years. However, despite having litigated cases opposite many devoted advocates, I have never been treated so discourteously or ungraciously as I have by Mr. Edelstein—especially when Plaintiff's counsel's communications has been firm, but always civil.

Again, I request a rule to show cause why sanctions should not be imposed on Jay Edelstein. Moreover, I have copied Mr. Malofiy's attorney Samuel Stretton, Esquire on this letter. I have routinely reviewed these issues with Mr. Stretton several times over the last year, and he agrees that the conduct of Mr. Edelstein is not acceptable, should not occur, and is very disappointing.

In the event that the Court declines to entertain a rule to show cause, Plaintiff respectfully requests this Honorable Court allow Plaintiff, Plaintiff's counsel AJ Fluehr, and Mr. Malofiy the opportunity to try this case in the April pool, to show by example that this case will be tried on the merits—and to demonstrate to this Court and Mr. Edelstein that his protestations and accusations are completely unfounded.

PAGE 8

Respectfully,

Alfred Joseph Fluehr, Esquire

Cc: Jay Edelstein, Esquire
    Samuel Stretton, Esquire

# ⚖ EDELSTEIN LAW, LLP

### ATTORNEYS AND COUNSELORS AT LAW

| | | |
|---|---|---|
| **JAY L. EDELSTEIN\*** | **230 S. BROAD STREET** | **CHRISTOPHER A. VEARA\*\*** |
| JEdelstein@Edelsteinlaw.com | SUITE 900 | CVeara@Edelsteinlaw.com |
| | PHILADELPHIA, PA 19102 | |
| **KELLY L. CZAJKA\*** | (215) 893-9311 | **CHRISTOPHER N. LEEDS\*** |
| KCzajka@Edelsteinlaw.com | FAX (215) 893-9310 | CLeeds@Edelsteinlaw.com |
| | NEW JERSEY 856-809-3150 | |
| **ADRIAN R. REID\*** | WWW.EDELSTEINLAW.COM | |
| AReid@Edelsteinlaw.com | | *   MEMBER OF PA & NJ BAR |
| | | *   MEMBER OF PA NJ & MA BAR |

**Super Lawyers** 2014

**Super Lawyers** 2015

February 14, 2017       Our File No.: 810.911

**<u>VIA FIRST CLASS MAIL ONLY</u>**
Attention: The Honorable Denis P. Cohen
City Hall-Room 538
Philadelphia, PA 19107

    **RE:**    **Grady, Kelly v. The Hertz Corporation, et al.**
          **Philadelphia CCP, Case No.: 151103380**

Dear Judge Cohen:

    This office represents Defendant, The Hertz Corporation, in the above-referenced matter. This matter is currently in the February 2017 trial pool, and the undersigned wishes to request the following of the Court: Defendant wants to have present at jury selection, a court reporter whose services Defendant will pay for.

    Defendant's basis for this request is that Plaintiff's counsel's has a long-standing history of engaging in dilatory and meddling conduct throughout various trials-including, most recently, in the case of <u>Marino v. Usher</u>, et al., D.C. Civil Action No.: 2-14-mc-00139. The Honorable Paul S. Diamond, who presided over the <u>Marino</u> trial, found Attorney Malofiy's conduct (which included coercing an unrepresented, indigent defendant into testifying against himself) so egregious that he sanctioned Attorney Malofiy personally. A copy of Judge Diamond's opinion is attached hereto as Exhibit 'A.' Attorney Malofiy attempted unsuccessfully to appeal Judge Diamond's Order. A copy of the relevant appellate opinion, <u>In re: Francis Malofiy</u> and docketed at Case No.: 15-2472, is attached hereto as Exhibit 'B.'

    As both opinions reflect, Plaintiff's counsel's firm is prone to engaging at trial in belligerent, unprofessional and inappropriate conduct. Defendant believes that this behavior is

liable to continue during jury selection in <u>Grady</u>, where Plaintiff's counsel will attempt to contaminate the jury pool by feeding them incendiary falsehoods about Defendant Hertz. Such falsehoods, if presented, will preclude the selection of a fair, biased and neutral jury. It is for these reasons that Defendant requests a court reporter be present during jury selection.

      Please do not hesitate to contact the undersigned with any questions or concerns.

      We thank Your Honor for his consideration of Defendant's foregoing request.

                        Respectfully submitted,

                        JAY L. EDELSTEIN, ESQUIRE

JLE (w/encl.)

cc: A.J. Fluehr, Esquire (via facsimile only: 215-500-1005) (w/encl.)

Exhibit A - March 15, 2016 Letter from Jay Edelstein

Exhibit B - July 2016 Email Chain

Exhibit C - September 16, 2016 Email from Jay Edelstein

Exhibit D - September 21, 2016 Letter on John and Response

Exhibit E - October 19, 2016 Email Chain

Exhibit F - October 20 2016 Email from Jay Edelstein to Court

Exhibit G - October 24, 2016 Letter from Stuart Wolf

Exhibit H - November 25, 2016 Email from Jay Edelstein

Exhibit I - December 29, 2016 Email from Jay Edelstein

Exhibit J - January 27, 2017 Email from Jay Edelstein

Exhibit A



# EDELSTEIN LAW, LLP

ATTORNEYS AND COUNSELORS AT LAW

| | | |
|---|---|---|
| **JAY L. EDELSTEIN**\* | 230 S. BROAD STREET | **STUART J. WOLF**\* |
| JEdelstein@Edelsteinlaw.com | SUITE 900 | SWolf@Edelsteinlaw.com |
| | PHILADELPHIA, PA 19102 | |
| **KELLY L. CZAJKA**\* | (215) 893-9311 | **KATHERINE MUTSCHLER**\* |
| KCzajka@Edelsteinlaw.com | FAX (215) 893-9310 | KMutschler@Edelsteinlaw.com |
| | NEW JERSEY 856-809-3150 | |
| | **WWW.EDELSTEINLAW.COM** | \*  MEMBER OF PA & NJ BAR |
| | | \*\* MEMBER OF NJ BAR |

RECEIVED MAR 28 2016 By___



March 15, 2016

Our file no.: 810.911

Francis Malofiy, Esquire
Francis Alexander, LLC
280 N. Providence Road, Suite 105
Media, PA 19063

     **RE:   KELLY A. GRADY V. THE HERTZ CORPORATION, ET AL.
          CCP PHILADELPHIA, NO.: 151103380**

Dear Mr. Malofiy:

     I am in the process of returning the courtesy that you extended to me on February 10, 2016. The appropriate preliminary objections are being filed of record for failure to state a cause of action and for an improper pleading. Those preliminary objections have been filed of record. Once they are granted, I assume that the plaintiff will file a more legible and easily comprehensible complaint in which a cause of action is actually stated.

     I have had the pleasure to read the reported sanctions levied against you in what can only be described as not surprising based on your recent contact with this office. It is good to know that the judiciary continues to enforce the rules of ethical conduct and procedure and I am certain that at some point they will be needed in this case also.

     Please be advised that a responsive pleading will be filed upon a ruling pertaining to the preliminary objections. I do note that interrogatories and request for production of documents were sent to your attention on February 2, 2016. To date, there have not been any responses to those discovery requests. Would you please provide response to our discovery requests at your earliest opportunity.

Francis Malofiy, Esquire                                      File No. 810.911
Francis Alexander, LLC
March 15, 2016
Page -2-

_____

If you have any questions or comments, you know the address.

Thank you for your courtesy and cooperation.

Very truly yours,

JAY L. EDELSTEIN

JLE/eml

| | |
|---|---|
| **From:** | Francis Alexander Malofiy |
| **To:** | jedelstein@edelsteinlaw.com |
| **Cc:** | AJ Fluehr; Francis Alexander Malofiy |
| **Subject:** | Grady v. Hertz - No. 151103380 |
| **Date:** | Tuesday, March 22, 2016 9:05:58 PM |

Dear Mr. Edelstein,

I am in receipt of your letters dated March 15, 2016.

I am reviewing your preliminary objections and will respond accordingly, although I obviously disagree with the characterizations in your letter and believe that the serious issues in the Complaint are well pled.

With respect to the discovery requests and interrogatories, I am in California until next week on a case. I will have verified answers for you next week signed by Ms. Grady. I will also consider the settlement program in your letter and get back to you then.

Lastly, contrary to your letter, any and all contacts I have had with your office have been cordial and otherwise proper.

If you need to get in touch you can reach me at my direct line (215) 500-1000.


*****
With every good wish, I am,

Francis Malofiy, Esquire
Francis Alexander, LLC
280 N. Providence Road | Suite 105
Media, PA 19063
T: (215) 500-1000
F: (215) 500-1005
E: francis@francisalexander.com

Exhibit B

| | |
|---|---|
| **From:** | Jay Edelstein |
| **To:** | AJ Fluehr |
| **Cc:** | Stuart Wolf |
| **Subject:** | Re: Lawyer Who Sued Led Zeppelin Suspended From Practicing Law - Hollywood Reporter |
| **Date:** | Tuesday, July 19, 2016 10:42:51 PM |

I think you're wrong. ==I'll call the board tomorrow. If yo==u're correct no problem.

Sent from my iPhone

On Jul 19, 2016, at 10:41 PM, AJ Fluehr <aj@francisalexander.com> wrote:

> Mr. Edelstein,
>
> As I said, Mr. Malofiy's license is valid in the state of Pennsylvania. Your
> ignorance of the rules does not change that. Please copy him on case
> correspondence--as you are required by the rules to do.
>
> AJ
>
>
> Sent from my Verizon Wireless 4G LTE smartphone
>
>
> -------- Original message --------
> From: Jay Edelstein <JEdelstein@edelsteinlaw.com>
> Date: 07/19/2016 10:29 PM (GMT-05:00)
> To: AJ Fluehr <aj@francisalexander.com>, Stuart Wolf
> <SWolf@edelsteinlaw.com>
> Subject: Lawyer Who Sued Led Zeppelin Suspended From Practicing Law -
> Hollywood Reporter
>
>
> http://www.hollywoodreporter.com/thr-esq/lawyer-who-sued-led-zeppelin-907780
>
>
> Sent from my iPhone

| | |
|---|---|
| **From:** | Jay Edelstein |
| **To:** | AJ Fluehr |
| **Cc:** | Stuart Wolf |
| **Subject:** | Re: Grady v. Hertz - Defendants" Discovery Answers |
| **Date:** | Tuesday, July 19, 2016 10:28:05 PM |

I think you're wrong. I will get you answers. If that's not sufficient then file a motion.

Sent from my iPhone

On Jul 19, 2016, at 10:26 PM, AJ Fluehr <aj@francisalexander.com> wrote:

> Mr. Edelstein,
>
> Where are the records? Who was the manager of your Philadelphia location?
>
> ==Whatever understanding you have of the rules is incorrect. He is lead counsel, entered on the case, and fully licensed to practice law in the state of Pennsylvania.==
>
> Please copy him on future emails.
>
> AJ

Sent from my Verizon Wireless 4G LTE smartphone


-------- Original message --------
From: Jay Edelstein <JEdelstein@edelsteinlaw.com>
Date: 07/19/2016 9:21 PM (GMT-05:00)
To: AJ Fluehr <aj@francisalexander.com>
Cc: Stuart Wolf <SWolf@edelsteinlaw.com>
Subject: Re: Grady v. Hertz - Defendants' Discovery Answers

==The DR's do not allow him to be copied as I understand it.== If I'm wrong tell me.
My associate is working on discovery. I'm in depositions all week in NJ. Regards.

Sent from my iPhone

On Jul 19, 2016, at 6:48 PM, AJ Fluehr <aj@francisalexander.com> wrote:

Jay,

What is the status of the discovery production and discovery answers? If I do not have them in a day or two, I will have to file a motion.

Ms. Grady's deposition will be going forward, but we need your documents first.

In addition, please make sure that Mr. Malofiy is copied on all emails.

Thank you,

AJ Fluehr, Esquire
FRANCIS ALEXANDER, LLC
280 N. Providence Road | Suite 1
Media, PA 19063
T:  (215) 341-1063
F:  (215) 500-1005
aj@francisalexander.com

Exhibit C

| | |
|---|---|
| **From:** | AJ Fluehr |
| **To:** | "Jay Edelstein" |
| **Cc:** | Stuart Wolf; Francis Alexander Malofiy; Staff |
| **Subject:** | RE: Grady v. Hertz - Deposition Subpoenas |
| **Date:** | Wednesday, September 14, 2016 12:21:00 PM |

Mr. Edelstein,

What are you talking about?

AJ Fluehr, Esquire
FRANCIS ALEXANDER, LLC
280 N. Providence Road | Suite 1
Media, PA 19063
T:  (215) 341-1063
F:  (215) 500-1005
aj@francisalexander.com

---

**From:** Jay Edelstein [mailto:JEdelstein@edelsteinlaw.com]
**Sent:** Tuesday, September 13, 2016 8:37 PM
**To:** AJ Fluehr <aj@francisalexander.com>
**Subject:** Re: Grady v. Hertz - Deposition Subpoenas

You continue to violate the Rules of Ethics. Amazing but true.

Sent from my iPhone

On Sep 13, 2016, at 8:29 PM, AJ Fluehr <aj@francisalexander.com> wrote:

> Dear Counsel:
>
> See attached.
>
> AJ Fluehr, Esquire
> FRANCIS ALEXANDER, LLC
> 280 N. Providence Road | Suite 1
> Media, PA 19063
> T:  (215) 341-1063
> F:  (215) 500-1005
> aj@francisalexander.com

Exhibit D

**From:** Jay Edelstein
**To:** Francis Alexander Malofiy; Stuart Wolf
**Cc:** AJ Fluehr; Staff
**Subject:** RE: 2016.09.21 - HERTZ - HERTZ"S KNOWINGLY FALSE INTERROGATORY ANSWERS RE JOHN (SERVED)
**Date:** Wednesday, September 21, 2016 7:06:28 AM

A guy with your track record and reputation should be very careful about making these allegations. .Suspension form Pennsylvania practice generally follows suspension from USDC. .Be very very careful because your way doesn't work….File a motion, make a formal charge and allow me to bury you…Absurd..

**From:** Francis Alexander Malofiy [mailto:francis@francisalexander.com]
**Sent:** Wednesday, September 21, 2016 12:58 AM
**To:** Jay Edelstein; Stuart Wolf
**Cc:** Francis Alexander Malofiy; AJ Fluehr; Staff
**Subject:** 2016.09.21 - HERTZ - HERTZ'S KNOWINGLY FALSE INTERROGATORY ANSWERS RE JOHN (SERVED)

Dear Mr. Edelstein and Mr. Wolf,

Please see attached correspondence in regards to Hertz's failure to disclose a critical fact witness known as and called John, purposefully concealing his identity, and failing to provide his last known address and whereabouts--even though he was at all relevant times employed by defendant The Hertz Corporation

*****
With every good wish, I am,

Francis Malofiy, Esquire
Francis Alexander, LLC
280 N. Providence Road | Suite 1
Media, PA 19063
T: (215) 500-1000
F: (215) 500-1005
E: francis@francisalexander.com



## FRANCIS ALEXANDER LLC

September 21, 2016

Jay L. Edelstein, Esquire
Stuart Wolf, Esquire
Edelstein Law, LLP
230 South Broad Street | Suite 900
Philadelphia, PA 19102
T: (215) 893-9311
F: (215) 893-9310
E: JEdelstein@Edelsteinlaw.com

**Re:** **Hertz's Knowingly False Interrogatory Answers**

Dear Mr. Edelstein and Mr. Wolf,

In interrogatories I asked Hertz to provide an employee list for the Hertz location and also to identify the man Kelly Grady knew as "John," the Hertz employee who worked on her rental. Hertz's verified answer stated that only one person at the Philadelphia Airport Hertz location helped rent a car to Ms. Grady, a Shirrell Warrick, and that there was no "John" at the Hertz location in 2013 who interacted with customers.

It has been discovered that several of Hertz's verified interrogatory answers are demonstrably false, especially in regards to the employee of Hertz called and known as John. It is more than a little disturbing that Hertz and your office have failed to disclose a critical fact witness, purposefully concealed his identity, and failed to provide his last known address and whereabouts--even though he was at all relevant times employed by defendant The Hertz Corporation.

I prefer to resolve this serious issue without involving the court. You need to email me with John's full name, address, and phone number, and whatever other contact information of his you have by September 21, 2016, at 5:00 pm. Additionally, by Friday, September 23, 2016, you need to provide verified supplemental interrogatory answers for numbers 1-3, and 6, 7. This includes Hertz's employee list for the Philadelphia Airport location from 1/1/2013 to 12/31/2013, an organizational chart for that period, along with the employment file, records, pay stubs, checks, W2s and 1099s for the employee called and known as John. Please also identify the company or accountant who handled and/or administered payroll for the Hertz at the Philadelphia Airport Location for the year 2013. If I do not receive these, I will have to raise this serious issue with the Court.

I expect your prompt response.

With every good wish, I am,

Francis Malofiy, Esquire

Exhibit E

**From:** Francis Alexander Malofiy
**To:** AJ Fluehr
**Subject:** FW: 2016.10.19 - HERTZ - Sanctions Hearing
**Date:** Wednesday, October 19, 2016 6:45:26 PM

**From:** Jay Edelstein [mailto:JEdelstein@edelsteinlaw.com]
**Sent:** Wednesday, October 19, 2016 6:44 PM
**To:** Francis Alexander Malofiy <francis@francisalexander.com>
**Cc:** Stuart Wolf <SWolf@edelsteinlaw.com>
**Subject:** Re: 2016.10.19 - HERTZ - Sanctions Hearing

You missed the point. The ethics violation has nothing to do with your spurious motion. That's the beauty. Imagine what this will do for reinstatement to USDC. We've got you and you don't even know it. Sometimes I love this job..

Sent from my iPhone

On Oct 19, 2016, at 6:23 PM, Francis Alexander Malofiy <francis@francisalexander.com> wrote:

> Counsel,
>
> There are pending motions for sanctions concerning the conduct of defense counsel and defendant The Hertz Corporation regarding the concealment of John Lawrence's identity—even while defense counsel was communicating with his family—and other serious issues such as Mr. Livingston's admission that he has no knowledge of the interrogatory answers he purported to verify.
>
> Plaintiff believes that Mr. Jaussi, Ms. Hook, Mr. Wolf, and Mr. Edelstein's testimony may be necessary to the resolution of the sanctions motions and has thus subpoenaed their presence. The Supreme Court of Pennsylvania notes that the "essence of a subpoena's function is to aid the court in the resolution of litigation." Commonwealth v. Polak, 438 Pa. 67, 69, 263 A.2d 354, 356 (1970). Furthermore, the Rules of Civil Procedure explicitly authorize the use of subpoenas to command attendance at a hearing:
>
> **Rule 234.1. Subpoena to Attend and Testify.**
>  (a)  A subpoena is an order of the court commanding a person to attend and testify at a particular time and place. . . .
>
>  (b)  A subpoena may be used to command a person to attend and to produce documents or things only at
>
>   (1)  a trial *or hearing in an action or proceeding pending in the court*,
>
> See Rule of Civil Procedure 234.1(b)(1) (emphasis added).

I have no idea where you got the idea that a subpoena to attend and testify at a hearing pursuant to Rule 234.1(b)(1) must be served before the discovery deadline. This assertion appears to be made up out of whole cloth and is not contained in the Rules. Note that these were not deposition subpoenas pursuant to Rule 234.1(b)(2). Your argument that the subpoenas are invalid has no support in the Rules and your lack of citations is glaring.

The subpoenas are in all ways proper and I would advise the subpoenaed individuals to attend the hearing. You disregard them at your own peril. Moreover, instructing or encouraging a witness to not comply with the attendance and appearance requirement of a subpoena is sanctionable conduct. It is particularly concerning and nonsensical that Mr. Edelstein would threaten to report me to the Disciplinary Board merely for serving subpoenas. I note that it is not the first time your firm has made such baseless threats, which is in and of itself improper and illustrates the bad faith in which your firm has defended this case.

Please also see the attached Praecipe to Supplement Plaintiff's Motion for Sanctions which was filed with the Court today, which addresses the revelations in Mr. Livingston, Mr. Graeber, and Mr. Jaussis's depositions. In addition, I also attach the subpoena that was served upon Janet Lawrence to attend and testify at the hearing on Monday, October 24, 2016.


*****
With every good wish, I am,

Francis Malofiy, Esquire
Francis Alexander, LLC
280 N. Providence Road | Suite 1
Media, PA 19063
T: (215) 500-1000
F: (215) 500-1005
E: francis@francisalexander.com

**From:** Jay Edelstein [mailto:JEdelstein@edelsteinlaw.com]
**Sent:** Wednesday, October 19, 2016 4:02 PM
**To:** Stuart Wolf <SWolf@edelsteinlaw.com>
**Cc:** Francis Alexander Malofiy <francis@francisalexander.com>
**Subject:** Re: 2016.10.19 - HERTZ - Wolf on Jaussi Subpoena

Stuart,

   I believe based on what we now know and the actions recently taken, a report to The Pa Disciplinary Board is appropriate. I will discuss after I return from Connecticut post hearing. Thank you.

Sent from my iPhone

On Oct 19, 2016, at 3:59 PM, Stuart Wolf <SWolf@edelsteinlaw.com> wrote:

> Mr. Malofiy,
>
> As you no doubt remember, discovery ended on October 3, 2016. The subpoenas you issued yesterday to myself, Mr. Edelstein and Mr. Jaussi are invalid, issued in bad faith, and as a result, will not be honored. I look forward to the motion hearing on Monday.
>
> Stuart
>
> ---
>
> **From:** Francis Alexander Malofiy [mailto:francis@francisalexander.com]
> **Sent:** Wednesday, October 19, 2016 2:33 PM
> **To:** Stuart Wolf
> **Cc:** Francis Alexander Malofiy
> **Subject:** 2016.10.19 - HERTZ - Wolf on Jaussi Subpoena
>
> Dear Mr. Wolf,
>
> I attempted to serve a subpoena for Mr. Jaussi's attendance at the hearing on Monday, October 24, 2016, at your office. However, the process server tells me that an attorney (Kelly) at your office refused to accept service for Mr. Jaussi.
>
> This troubles me because, as you no doubt remember, you agreed to accept service for Mr. Jaussi on page 89 of his deposition.
>
> Attached please find a subpoena for Mr. Jaussi's attendance on Monday.

*****

With every good wish, I am,

Francis Malofiy, Esquire
Francis Alexander, LLC
280 N. Providence Road | Suite 1
Media, PA 19063
T: (215) 500-1000
F: (215) 500-1005
E: francis@francisalexander.com

Exhibit F

| | |
|---|---|
| **From:** | Divon, Peter |
| **To:** | Jay Edelstein; Francis Alexander Malofiy |
| **Cc:** | AJ Fluehr; Stuart Wolf |
| **Subject:** | RE: Grady v. Hertz, EL 810.911 |
| **Date:** | Thursday, October 20, 2016 1:22:29 PM |

All counsel,

STOP CC ME ON YOUR EMAILS.

All I know is that this case has a hearing on Monday, October 24,2016 at 9am in room 602 City Hall.

See all on Monday

Pete

---

**From:** Jay Edelstein [mailto:JEdelstein@edelsteinlaw.com]
**Sent:** Thursday, October 20, 2016 1:16 PM
**To:** Francis Alexander Malofiy <francis@francisalexander.com>
**Cc:** Divon, Peter <peter.divon@courts.phila.gov>; AJ Fluehr <aj@francisalexander.com>; Stuart Wolf <SWolf@edelsteinlaw.com>
**Subject:** Re: Grady v. Hertz, EL 810.911

Pete,

I have no intention of participating in this sham. I stake my reputation against a suspended lawyer with this reputation anyway. If his Honor wants me there I will certainly out of respect for the court be there however I will not be drawn into Mr. Maolfiy's fantasy world. The record clearly shows the absurdity of this Motion.

Sent from my iPhone

On Oct 20, 2016, at 12:58 PM, Francis Alexander Malofiy <francis@francisalexander.com> wrote:

Dear Mr. Divon,

Due to the seriousness of the issues involved, Plaintiff does not object to a separate hearing. However, it is obviously up to the Court's convenience and judgment.

Plaintiff must correct two misleading statements by defense counsel for the sake of the record.

**First**, the supplement submitted to the Court yesterday afternoon was actually only 19 pages (only ten of which were substantive). Defense counsel counted the exhibit pages to inflate the page count. In addition, Defendants are quite familiar with the material that was added and discovery motions do not even require a response.

**Second**, two of the individuals "subpoenaed" were defense counsel who conduct is at issue, simply to make sure that they actually appear at the hearing. Two other individuals are Defendants' representatives. Thus, there is only one third party witness.

*****

With every good wish, I am,

Francis Malofiy, Esquire
Francis Alexander, LLC
280 N. Providence Road | Suite 1
Media, PA 19063
T: (215) 500-1000
F: (215) 500-1005
E: francis@francisalexander.com

---

**From:** Stuart Wolf [mailto:SWolf@edelsteinlaw.com]
**Sent:** Thursday, October 20, 2016 10:40 AM
**To:** Divon, Peter <peter.divon@courts.phila.gov>; Francis Alexander Malofiy
<francis@francisalexander.com>
**Cc:** AJ Fluehr <aj@francisalexander.com>; Jay Edelstein
<JEdelstein@edelsteinlaw.com>
**Subject:** RE: Grady v. Hertz, EL 810.911

Mr. Divon,

Defendants would respectfully request the below motions, scheduled for Monday,
October 24 before Judge New, be scheduled outside of discovery court at a
specific date and time. Plaintiff filed a 60 page supplemental brief last night and
has subpoenaed 5 people to appear and testify, justifying this hearing being heard
outside of discovery court. Please advise at your convenience.

Thanks,

Stuart

Sent from my Verizon, Samsung Galaxy smartphone

-------- Original message --------
From: "Divon, Peter" <peter.divon@courts.phila.gov>
Date: 10/13/16 1:38 PM (GMT-05:00)
To: Francis Alexander Malofiy <francis@francisalexander.com>
Cc: AJ Fluehr <aj@francisalexander.com>, Stuart Wolf
<SWolf@edelsteinlaw.com>, Jay Edelstein <JEdelstein@edelsteinlaw.com>
Subject: RE: Grady v. Hertz, EL 810.911

Ok, all motions will be hear on

October 24,2016 at 9am in room 602 City Hall.
See docket, you will NOT get a new notice.

Pete

---

**From:** Francis Alexander Malofiy [mailto:francis@francisalexander.com]
**Sent:** Thursday, October 13, 2016 1:32 PM
**To:** Divon, Peter <peter.divon@courts.phila.gov>
**Cc:** Francis Alexander Malofiy <francis@francisalexander.com>; AJ Fluehr
<aj@francisalexander.com>; Stuart Wolf <SWolf@edelsteinlaw.com>; Jay Edelstein
<JEdelstein@edelsteinlaw.com>
**Subject:** RE: Grady v. Hertz, EL 810.911

Dear Mr. Divon,

What is the status of plaintiff's pending discovery motions on the Grady v. The Hertz
Corporation given that Judge Younge recused him and transferred the case to Judge
New.

The motions are:

9/13/2016 – Motion to Compel

10/3/2016 – Motion to Compel

10/3/2016 – Motion for Sanctions

10/3/2016 – Motion for Sanctions

Please advise when these will be heard so that all counsel can calendar accordingly.


*****
With every good wish, I am,

Francis Malofiy, Esquire
Francis Alexander, LLC
280 N. Providence Road | Suite 1
Media, PA 19063
T: (215) 500-1000
F: (215) 500-1005
E: francis@francisalexander.com

Exhibit G

# EDELSTEIN LAW, LLP

ATTORNEYS AND COUNSELORS AT LAW

JAY L. EDELSTEIN*
JEdelstein@Edelsteinlaw.com

KELLY L. CZAJKA*
KCzajka@Edelsteinlaw.com

230 S. BROAD STREET
SUITE 900
PHILADELPHIA, PA 19102
(215) 893-9311
FAX (215) 893-9310
NEW JERSEY 856-809-3150
WWW.EDELSTEINLAW.COM

STUART J. WOLF*
SWolf@Edelsteinlaw.com

CHRISTOPHER N. LEEDS*
CLeeds@Edelsteinlaw.com

\*    MEMBER OF PA & NJ BAR
\*\*   MEMBER OF NJ BAR

Super Lawyers
2014

Super Lawyers
2013

October 24, 2016

Our file no.: 810.911

**Via Facsimile: (215) 686-3726**

The Honorable Arnold L. New
City Hall, Room 606
Philadelphia, PA 19101

  RE: **KELLY A. GRADY V. THE HERTZ CORPORATION, ET AL.**
    **CCP PHILADELPHIA, NO.: 151103380**

Dear Judge New:

  Please allow me to briefly respond to Attorney Malofiy's correspondence advising Your Honor that I made two egregiously false statements and misrepresentations to the Court at today's hearing, both assertions which are unfounded, false and further example of the lengths Mr. Malofiy will go to misrepresent the facts of this case. Your Honor gave Mr. Malofiy more than enough time to make his argument, respond to mine, and any issues should have been addressed at the hearing.

  As to Mr. Malofiy's allegations, first, what I said repeatedly, and which is still true, is that Defendant Hertz Corporation **has not** violated a Court Order as Plaintiff asserts. Defendant submitted discovery responses and production of documents in compliance with the Court Order of August 18, 2016.   If Plaintiff was not satisfied, there was ample recourse to file a Motion for More Specific Answers. This was not done and Plaintiff attempts to sidestep the rules of discovery and go straight to sanctions without Defendant having violated or disregarded a Court Order, which we would never do.

  Second, what Mr. Malofiy did **was** unethical in trying to contact, speak with, and gain the cooperation of a former Hertz employee. By his own admission, he is relying on his client to tell him that Mr. Lawrence was fired or resigned in 2013, which is false. Mr. Lawrence was terminated in 2014 so Mr. Malofiy could not have known this was a former employee when he had his client call, text, and visit his home. I have attached both Opinions from the United States District Court, as Your Honor should be aware that this conduct is familiar, is a pattern, and

apparently no lessons were learned as the behavior continues.

I thank Your Honor for your continued attention to this matter and if anything further is required, please let me know.

Respectfully submitted,

STUART J. WOLF

SJW
cc: Francis Malofiy, Esquire

Exhibit H

| | |
|---|---|
| **From:** | Jay Edelstein |
| **To:** | AJ Fluehr |
| **Subject:** | Re: Response to Defense Letter on Plaintiff"s Reply to New Matter |
| **Date:** | Friday, November 25, 2016 8:51:54 PM |

I was under the impression it was filed. I was not in the office most of last week my wife had surgery. If it wasn't it will be Monday. You've seen our MSJ. Please don't hold your breath that this case has any chance to resolve. You of course knew that.

Sent from my iPhone

On Nov 25, 2016, at 8:38 PM, AJ Fluehr <aj@francisalexander.com> wrote:


Mr. Edelstein,

I have not remotely threatened you. Under Rule of Civil Procedure 1023.2(b), it is required that a party notify opposing counsel before moving for sanctions *and* to specify the bases for that motion.

Plaintiff is satisfying the Pa. RCP 1023.2(b) requirement because the motion which you have proposed filing clearly has no legal or factual basis under Pa. RCP 1023.1(c)(1-3). I have even specified the exact Rules of Civil Procedure and cases I am relying on for your benefit.

By doing so, I hope to avoid unnecessary motion practice.

May I also inquire when Plaintiff can expect Defendant's settlement memorandum which is now overdue?

Good evening,

AJ Fluehr, Esquire
FRANCIS ALEXANDER, LLC
280 N. Providence Road | Suite 1
Media, PA 19063
T:  (215) 341-1063
F:  (215) 500-1005
aj@francisalexander.com


**From:** Jay Edelstein [mailto:JEdelstein@edelsteinlaw.com]
**Sent:** Friday, November 25, 2016 8:17 PM
**To:** AJ Fluehr <aj@francisalexander.com>
**Subject:** Re: Response to Defense Letter on Plaintiff's Reply to New Matter

Please tell it to the Judge. No need to copy Stuart any longer, I'll take it from here. Oh,

==by the way that letter you wrote for your boss, I'd get counsel if I were you. Have a great weekend and don't ever threaten me again.==

Sent from my iPhone

On Nov 25, 2016, at 8:13 PM, AJ Fluehr <aj@francisalexander.com> wrote:

> Mr. Edelstein,
>
> I am in receipt of your letter dated September 28, 2016 (which is obviously a typo given that the letter was mailed on November 22, 2016).
>
> Is my understanding correct that you still want Mr. Wolf copied on all correspondence directed to you?
>
> In addition, I would advise you not to waste the Court's time with a frivolous motion designed to circumvent an adjudication on the merits. You can consider this your Pa. RCP 1023.2(b) notice that if you file such a motion Plaintiff will immediately move for sanctions.
>
> It is black-letter law under Pa. RCP 1029 that averments in new matter not containing facts are considered automatically denied as a matter of law. See Pa. RCP 1029(a, d); Gotwalt v. Dellinger, 577 A.2d 623 (Pa. Super. 1988) (stating if "a party's new matter does not contain facts supporting an affirmative defense, but rather contains merely conclusions of law, no denial is required because such averments are deemed to be denied"). Hertz's new matter does not contain any facts and thus its averments are deemed automatically denied. Although not required to do so, Plaintiff filed a reply to Defendant's new matter to make Plaintiff's contest of Hertz's affirmative defenses explicit at the summary judgment stage.
>
> Moreover, it is also black-letter law that a party is not required to verify a pleading which does not contain an averment of fact. See Pa RCP 1024 (stating that verification only required for "pleading containing an averment of fact"). Plaintiff's reply to Hertz's new matter contains no facts and thus a verification is unnecessary.
>
> Again, you have no basis for filing such a motion. If you do file the motion, Plaintiff will move for sanctions and attorney's fees pursuant to the Court's inherent powers, Pa. RCP 2503(7, 9), and Pa. RCP 1023.2.
>
> Happy Thanksgiving and enjoy the holiday weekend,
>
> AJ Fluehr, Esquire
> FRANCIS ALEXANDER, LLC
> 280 N. Providence Road | Suite 1

Media, PA 19063
T:  (215) 341-1063
F:  (215) 500-1005
aj@francisalexander.com

Exhibit I

**From:**      Jay Edelstein
**To:**        AJ Fluehr
**Subject:**   Dated pictures
**Date:**      Monday, December 26, 2016 9:41:20 PM

Your boss never sent me dates, times and or who took vaginal pics so moving to preclude. We now have documentation that your client knew of all charges and who was making them well before preliminary hearing. Someone in your office has verified a false pleading. I also remind you that your letter authored to address the redaction and its harm is completely false and actionable hence my suggestion you retain counsel. Regards

Sent from my iPhone

Exhibit J

| | |
|---|---|
| **From:** | AJ Fluehr |
| **To:** | Jay Edelstein |
| **Subject:** | RE: Status...Grady |
| **Date:** | Friday, January 27, 2017 9:49:48 PM |

---

Jay,

The conflict letter deadline is January 30th. Do what you feel you have to do with the pictures.

Have a nice weekend,

AJ

Sent from my Verizon Wireless 4G LTE smartphone

-------- Original message --------
From: Jay Edelstein <JEdelstein@edelsteinlaw.com>
Date: 01/27/2017 8:43 PM (GMT-05:00)
To: AJ Fluehr <aj@francisalexander.com>
Subject: Status...Grady

I never received the information on the photos so I have prepared a MIL. They are simply not relevant. I never got your conflict letter so I'm assuming February is Acceptable to you. It's unfortunate that your boss continues to violate his suspension order and feels compelled to practice law. I'd distance myself from him if I were you but that's difficult working in the same office all day.  We both have responsibilities to the Disciplinary Board. Be careful.

Sent from my iPhone

Exhibit K

**From:**      Jay Edelstein
**To:**        AJ Fluehr
**Subject:**   Re: Status...Grady
**Date:**      Friday, January 27, 2017 9:56:40 PM

He's not granting them. I did file the MIL but you had promised in writing authentication. I assume that promise is withdrawn. ==Again read DR 217 and watch yourself. Just some friendly advice .== By the way I re-read your bosses guarantee that his MSJ would be granted and mine denied. Wrong all the way around. Punitive damages gone, intentional infliction almost gone and false imprisonment laughable. This case is textbook frivolous litigation.

Sent from my iPhone

On Jan 27, 2017, at 9:50 PM, AJ Fluehr <aj@francisalexander.com> wrote:

> Jay,
>
> The conflict letter deadline is January 30th. Do what you feel you have to do with the pictures.
>
> Have a nice weekend,
>
> AJ
>
>
> Sent from my Verizon Wireless 4G LTE smartphone
>
>
> -------- Original message --------
> From: Jay Edelstein <JEdelstein@edelsteinlaw.com>
> Date: 01/27/2017 8:43 PM (GMT-05:00)
> To: AJ Fluehr <aj@francisalexander.com>
> Subject: Status...Grady
>
> I never received the information on the photos so I have prepared a MIL. They are simply not relevant. I never got your conflict letter so I'm assuming February is Acceptable to you. It's unfortunate that your boss continues to violate his suspension order and feels compelled to practice law. ==I'd distance myself from him if I were you but that's difficult working in the same office all day. We both have responsibilities to the Disciplinary Board. Be careful.==
>
> Sent from my iPhone

**EXHIBIT 2**



### FRANCIS ALEXANDER LLC

SEPTEMBER 7, 2017

THE HONORABLE PAULA PATRICK
City Hall | Room 481 | Courtroom 475
Philadelphia, PA, 19107
T: 215 686-7340
*F: 215 686-7048*

Re:  **GRADY v. THE HERTZ CORPORATION | CIV. NO. 151103380**
Response to Improper Edelstein Letter (9.5.2017) in Violation of Court Order

Dear Judge Patrick,

I represent plaintiff Ms. Kelly Grady. Mr. Edelstein recently wrote a highly improper letter to Your Honor making personal attacks upon me and my firm. He did this with the intent and purpose to pre-condition the Court and taint how Your Honor might view the respective parties and the attorneys. I know this because he has done this repeatedly throughout this litigation. It needs to stop; I implore Your Honor's intervention.

Your Honor, allow me to share with you who I am. I am a first generation American whose parents both came to this country on a boat. I was born in North Philadelphia where we lived near the corner of 13th & Allegheny. My family worked hard so that we could go to a better school district. I went to public school. To keep me from trouble I did art, music, and I played most sports growing up; I boxed in college. I did a dual major in engineering and business; worked at the robotics laboratory at UPenn while going to school there; graduated with a bachelor of science in finance from PennState (I couldn't afford UPenn); worked in NYC at an investment bank and on the trading floor but realized I wanted something more. I went to law school. I was president of my class, then vice-president of the school. I graduated from Temple Law. I'm a first generation lawyer; I'm proud of that. When I graduated law school, no one gave me a job. I wanted to be a trial lawyer; and I became a trial lawyer—on my own and by myself. No one helped me. No one told me how to do it. I just did it. I picked the ball up and I ran that ball from one end to the other. I got hit, I got tackled, I was over, I was under, and I made some mistakes as a young lawyer and I paid for them dearly. But that was a long time ago Judge Patrick.

Today, I have had the benefit of the finest lawyers recognize my abilities in the courtroom and my successes at trial and have worked with me to soften my edges. Sam Stretton was the first one to take me under his wing, believe in me, and has since become my close friend and mentor. Jim Beasley and Slade McLaughlin are two other highly respected and accomplished lawyers, who like Sam, have taken the stand in my defense and testified that I am honest, truthful, and hardworking.

Judge, I take cases I believe in, where the individual has been hurt or harmed and trampled upon by big corporations, heartless insurance companies, or people in positions power who have used their power to take advantage of the defenseless, the injured, or the damned. I've had the good

PAGE 2

fortune of consistently winning multi-million dollar verdicts and settlements for my clients. I have been successful in law in many fields: medical devices, products liability, medical malpractice, legal malpractice, contracts, copyrights, and music and entertainment to name a few. I have litigated cases throughout the country and tried cases to jury verdict from coast-to-coast. I have taken cases all the way to the Supreme Court of the United States and the Supreme Court of Pennsylvania and have won at the highest levels, including a landmark published opinion by the Superior Court in the field of products liability and crashworthiness. In one year I do more pro-bono work than most lawyers do in a lifetime. I regularly help those in need in their pursuit for justice—even when there is no money--but where I have conviction in the cause and I treat my clients cause as my own. I am a Christian.

I am not in the past anymore. I learned from my mistakes; accept who I am today. I know that Your Honor will not prejudice Plaintiff's case with Mr. Edelstein's personal attacks on me and my firm; however, given the explosive way in which completely irrelevant issues have been raised before the Court, right before trial, to a trial judge who I have never stood before—I am left with no choice but to firmly object to Mr. Edelstein's bad-faith litigation tactics. Please see the motion for sanctions against Mr. Edelstein for background on this issue. I attach Mr. Stretton's previous letter in support of me, my associate Mr. Fluehr, and my firm.

I implore this Court to admonish Mr. Edelstein and instruct him to address the merits of this case. That is what I have done throughout this litigation, and that is what I will do at trial.

Should this Court require anything of Plaintiff, I stand ready to comply

Respectfully,

Francis Malofiy, Esquire

Cc: Jay Edelstein, Esquire
    Samuel Stretton, Esquire

**EXHIBIT 3**

FILED
**18 SEP 2017 04:23 pm**
**Civil Administration**
**C. FORTE**

The Court of Common Pleas
Philadelphia County, Pennsylvania

| | |
|---|---|
| Kelly A. Grady<br>*Plaintiff*<br>vs.<br>The Hertz Corporation;<br>Hertz Rent-A-Car Philadelphia Intl. Airport;<br>*Defendants* | Action Commenced By:<br>Writ of Summons On:<br>November 23, 2015<br><br>November Term, 2015<br><br>Civil Action No.:<br>151103380<br><br>Complaint filed:<br>February 22, 2016<br><br>Causes of Action:<br> Malicious Prosecution<br><br>*Jury Trial Demanded* |

# Order

And Now, on this _____ day of September, 2017, upon consideration of Plaintiff's Motion for Reconsideration and Sanctions against Defendant for Concealing the Name and Identity of a Critical Fact Witness Employed by Defendant Hertz, any response thereto, and the record as a whole, it is hereby **Ordered** and **Decreed** that Plaintiff's Motion for Reconsideration and Sanctions is **Granted**.

- The Hertz Corporation and defense counsel are precluded from contesting and/or arguing in any way, shape, or form—including at cross examination—Kelly Grady's alleged contacts with Jonathan Lawrence.

- The Hertz Corporation, Edelstein Law LLC, Jay Edelstein, and Stuart Wolf shall pay Plaintiff's counsel's costs and fees for the time and money expended addressing the Jonathan Lawrence issue.

- Within 30 days of the date of this order, Plaintiff will submit a brief showing the time and money spent on the Jonathan Lawrence issue.

By the Court:

_____

J.

Francis Alexander, LLC
Francis Malofiy, Esquire
Attorney ID No.: 208494
280 N. Providence Road | Suite 1
Media, PA 19063
T: (215) 500-1000
F: (215) 500-1005
*Law Firm / Lawyer for Plaintiff*

The Court of Common Pleas
Philadelphia County, Pennsylvania

| | |
|---|---|
| Kelly A. Grady<br><br>*Plaintiff*<br><br>vs.<br><br>The Hertz Corporation;<br>Hertz Rent-A-Car Philadelphia Intl. Airport;<br>John Doe(s)[1]<br><br>*Defendants* | Action Commenced By:<br>Writ of Summons On:<br>November 23, 2015<br><br>November Term, 2015<br><br>Civil Action No.:<br>151103380<br><br>Complaint filed:<br>February 22, 2016<br><br>Causes of Action:<br>  Malicious Prosecution<br><br>*Jury Trial Demanded* |

## Plaintiff's Motion for Reconsideration and Sanctions Due to the Discovery of New Evidence that Defendant Concealed the Name and Identity of Hertz Employee John Lawrence, Biased Him Against Plaintiff, and Even Attempted to Bribe Him

In this malicious prosecution and false imprisonment case, Plaintiff Kelly Grady has always maintained that a Hertz employee named "John" was a critical fact witness who knew that she had validly rented the vehicle and with whom she had communicated with on numerous occasions. Plaintiff now has acquired definitive proof that Hertz and defense counsel lied to the Court; under Pa. RCP 4019(c)(2) Hertz should be precluded from contesting Grady's contacts with Jonathan Lawrence.

---

[1] Manager(s) at Hertz Rent-A-Car Philadelphia Intl. Airport from March 2013 to June 2014.

Hertz stated in verified interrogatory answers on August 30, 2016, that "John" did not exist. Later it was uncovered that his name was Jonathan Lawrence and that Hertz had known about John at all pertinent times. Plaintiff filed a motion for sanctions, alleging that Hertz had deliberately concealed John Lawrence's identity to secure his unavailability at trial. Defense counsel repeatedly denied that they had known about Jonathan Lawrence until he was identified by Plaintiff. The sanctions motion was denied by Judge Arnold New on that basis.

At motions in limine, Plaintiff filed a motion to preclude Hertz from disputing Plaintiff's contacts with Jonathan Lawrence because Hertz had concealed him from Plaintiff and biased him against Plaintiff. At that hearing, The Honorable Paula Patrick stated that she had not seen unequivocal proof of concealment and asked defense counsel point blank whether he had sent a private investigator to Jonathan Lawrence's address while concealing it from Plaintiff. Defense counsel lied to the Court:

> MR. MALOFIY: Our position is that they should be precluded. They're trying to say that Ms. Grady had no contacts with an employee named John. They basically hid it and concealed his identity of this individual and --
>
> THE COURT: Here's the problem. I mean, you're saying they concealed it. Maybe they did. But I don't have any evidence of that because I don't have this lady, Ms. Lawrence, whoever, to testify that, in fact, that, you know, they came to her door, whoever Hertz, whatever, I don't have any of that. The jury would not have that. That's the problem. It's just counsel saying we went out there and did this, that's fine, but I don't have an affidavit. I don't have anything.
>
> MR. MALOFIY: We can ask counsel right here whether or not they sent an investigator, Matthew Orr, or similar investigator to the door of Ms. Lawrence. Days before, I discovered them by pounding on doors.
>
> THE COURT: Did this Matthew go out?
>
> MR. EDELSTEIN: Absolutely not. An investigator, I believe, **was sent after we were notified that Mr. Malofiy and his client went to see her**.
>
> THE COURT: Who was the investigator?
>
> MR. EDELSTEIN: It would have been Matt Orr. **We were just trying to find them the same way they were trying to**.
>
> MR. MALOFIY: They knew about his name, that he was an employee and we didn't. That's the difference.

. . . .

MR. EDELSTEIN: I've been doing this 38 years. For 100 years, Edelstein was practicing law in Philadelphia. I have never been accused in court, once, let alone ten times, so far, of hiding information from the other side. Never.

MR. MALOFIY: Well --

THE COURT: I'm going to deny the motion at this time, and I will give you leeway to address it. Show me the evidence that you would have, just to counter that to present to the jury. I will let you do that. However you want to figure it out.

See Exhibit 1 (emphases added). Grady had disclosed to Hertz on September 27, 2016 at her deposition that she had independently discovered Jonathan Lawrence's identity.

Plaintiff can now show that Mr. Edelstein and his firm lied to both Judge Arnold New and Judge Patrick. Plaintiff asks for reconsideration of the motion in limine order and motion for sanctions orders. Plaintiff has obtained a 5,000 page file from Hertz's investigator (the existence of which was never disclosed by Hertz despite being requested repeatedly), which shows that after falsely answering the discovery request by denying John's existence on August 30, 2016, Edelstein Law contacted John multiple times while concealing his identity from Plaintiff:

- **September 8, 2016** - Edelstein Law sends Jonathan Lawrence's last known address from a Hertz employee list to private investigator Matthew Orr.

  o This is roughly 20 days before Plaintiff indicated at her deposition she had discovered John's name.

- **September 17, 2016** - Orr spoke to Janet Lawrence, John's mother, and falsely tells her that Plaintiff was alleging misconduct by Jonathan Lawrence. Orr learns that John is now living in the mid-West.

  o Hertz outrageously led Janet Lawrence to believe that Plaintiff had claims against her son, or that her son had some sort of liability.

  o Hertz never disclosed that it knew Jonathan Lawrence's was living in the mid-West.

- **September 20-22, 2016** - Orr repeatedly tells Janet Lawrence that Hertz will defend Jonathan Lawrence "***on Hertz's dime***," that he needs to participate in a joint defense, and that Hertz will help him tailor his testimony and affidavits.

○ Hertz not only concealed this employee's existence, but while concealing his existence from Plaintiff Hertz attempted to convince him to hire Edelstein Law as his attorney using Hertz's money.

○ This is a clear attempt to influence and bribe a critical fact witness with free legal services, while falsely insinuating he might have exposure to civil or criminal liability and that it would be to his benefit to work with the defense.

As the Court can see, Edelstein Law has lied to both Judge New and Judge Patrick—as well as Plaintiff—for the purpose of secretly contacting Jonathan Lawrence while concealing him from Plaintiff to bias him against Plaintiff; Hertz and Edelstein Law then lied several more times to cover up their malfeasance and outrageous conduct.

Plaintiff urges that the Court condemn this highly prejudicial conduct in the strongest terms. Hertz not only destroyed the most important documents in the case, Grady's rental and payment records, but they secretly attempted to bribe the central fact witness while falsely insinuating that he had exposure to civil and criminal liability. Defendants should be precluded under Pa. RCP 409 from putting on a defense with respect to John Lawrence, and sanctioned for manifest and overt bad faith lies designed to mislead the tribunal.

*****

Plaintiff Kelly A. Grady, by and through her counsel, Francis Alexander LLC, hereby aver in support of her motion for reconsideration and sanctions:

1.    In this malicious prosecution and false imprisonment case, Plaintiff Kelly Grady has always maintained that a Hertz employee named "John" was a critical fact witness who knew that she had validly rented the vehicle and with whom she had communicated with on numerous occasions.

2.    Hertz responded in verified interrogatories on August 30, 2016, that "John" did not exist:

> 6.    Identify the employee of Hertz, identified in ¶8 of the Complaint as "John," who communicated with Grady in 2013 concerning her car rental, and provide his full name, address, telephone number, current employment, and if he was dismissed or resigned describe in detail why.

> 6.    Objection. This interrogatory assumes there is an employee at the Hertz airport location by the name of "John" as described in the Complaint. The only individual at the airport location in 2013 by the name of John is John Kleinz, a part-time vehicle service attendant who has no interaction with customers.

Exhibit 3 - Hertz's Discovery Response.

3.    Later it was uncovered that his name was Jonathan Lawrence and that Hertz had known about him at all pertinent times.

4.    Plaintiff filed a motion for sanctions on October 3, 2016, alleging that Hertz had deliberately concealed John Lawrence's identity while secretly contacting him to secure his unavailability at trial.

5.    Defense counsel repeatedly denied that they had known about Jonathan Lawrence until he was identified by Plaintiff. The sanctions motion was denied by Judge Arnold New because of Hertz's denials.

6.    At motions in limine, Plaintiff filed a motion to preclude Hertz from disputing Plaintiff's contacts with Jonathan Lawrence, because Hertz had concealed him from Plaintiff (Con. No. 17012837).

7.    At that hearing on the motions, The Honorable Paula Patrick stated that she had not seen unequivocal proof of concealment. See Exhibit 2.

8.    She asked defense counsel point blank whether he had sent a private investigator to Jonathan Lawrence's address while concealing it from Plaintiff.

9.    Defense counsel then outrageously lied to the Court:

> MR. MALOFIY: Our position is that they should be precluded. They're trying to say that Ms. Grady had no contacts with an employee named John. They basically hid it and concealed his identity of this individual and --
>
> THE COURT: Here's the problem. I mean, you're saying they concealed it. Maybe they did. But I don't have any evidence of that because I don't have this lady, Ms. Lawrence, whoever, to testify that, in fact, that, you know, they came to her door, whoever Hertz, whatever, I don't have any of that. The jury would not have that. That's the problem. It's just counsel saying we went out there and did this, that's fine, but I don't have an affidavit. I don't have anything.
>
> MR. MALOFIY: We can ask counsel right here whether or not they sent an investigator, Matthew Orr, or similar investigator to the door of Ms. Lawrence. Days before, I discovered them by pounding on doors.

THE COURT: Did this Matthew go out?

MR. EDELSTEIN: Absolutely not. An investigator, I believe, **was sent after we were notified that Mr. Malofiy and his client went to see her**.[2]

THE COURT: Who was the investigator?

MR. EDELSTEIN: It would have been Matt Orr. **We were just trying to find them the same way they were trying to**.

MR. MALOFIY: They knew about his name, that he was an employee and we didn't. That's the difference.

. . . .

MR. EDELSTEIN: I've been doing this 38 years. For 100 years, Edelstein was practicing law in Philadelphia. I have never been accused in court, once, let alone ten times, so far, of hiding information from the other side. Never.

MR. MALOFIY: Well --

THE COURT: I'm going to deny the motion at this time, and **I will give you leeway to address it. Show me the evidence that you would have**, just to counter that to present to the jury. I will let you do that. However you want to figure it out.

See Exhibit 1, at p.56-59 (emphases added).

    10.    Plaintiff can now show that Mr. Edelstein and his firm lied to both Judge Arnold New and Judge Patrick.

    11.    Plaintiff has obtained a 5,000 page file from Hertz's investigator (the existence of which was never disclosed by Hertz despite being requested repeatedly), which shows that after falsely answering the discovery request by denying John's existence on August 30, 2016, Edelstein Law secretly contacted John multiple times, stating he was being accused of misconduct and that Hertz would provide him a free defense and tailor his testimony if he would just cooperate.

    12.    Hertz sent the private investigator to Lawrence's house on September 8, 2016, nearly 20 days ***before*** September 27, 2016, the date after which Mr. Edelstein told Judge Patrick he sent an investigator to Lawrence's house.

---

[2] Grady had disclosed to Hertz on September 27, 2016 at her deposition that she had independently discovered Jonathan Lawrence's identity.

13.    Starting on at least September 8, 2016, Hertz and its attorneys told Janet Lawrence, John's mother, that (1) Plaintiff was accusing Jonathan Lawrence of misconduct, (2) repeatedly offered to act as Jonathan Lawrence's attorney on "Hertz's dime," (3) offered to help tailor Jonathan's testimony, and (4) told Janet that they would smooth the litigation process for him.

14.    They also learned that Jonathan Lawrence had moved to the mid-West, but never provided that information to Plaintiff.

15.    A full time line of Hertz's concealment and secret contacts with John, in addition to their false denials of their misconduct (plaintiff's actions in italics) is included below:

    a.    August 30, 2016 - Hertz submits knowingly false verified interrogatories stating that there was no employee named John who interacted with customers in 2013. See Exhibit 3.

    b.    *September 2, 2016 - Plaintiff submits a letter asking that Hertz to produce a full employee list, because Hertz's discovery answers do not identify key individuals Ms. Grady claims she interacted with, such as "John."* See Exhibit 4.

    c.    September 6, 2016 - Jay Edelstein falsely responds "I've spoken to all involved and there's nothing here." Id.

    d.    September 8, 2016 - Edelstein Law sends Jonathan Lawrence's name and address to investigator Matthew Orr, taken from a Hertz employee list with John's "last known address." See Exhibit 2.

    e.    September 9, 2016 - Edelstein Law sends email to Orr describing Plaintiff's claims in the complaint about Jonathan Lawrence. See Exhibit 5.

    f.    September 14, 2016 - Edelstein Law asks for update from Orr on contacting Jonathan Lawrence. Id.

    g.    September 17, 2016 - Matthew Orr makes an in person visit to Jonathan Lawrence's mother, Janet Lawrence, while falsely telling her that Plaintiff is alleging that Jonathan committed misconduct and that Jonathan is involved in the defense of the case. Orr falsely tells Janet that Plaintiff is alleging that Jonathan Lawrence made an unauthorized rental extension. Janet states John is living in the mid-West. See Exhibit 6. This fact was never disclosed to Plaintiff at any point.

    h.    *September 18, 2016 - Plaintiff knocks on doors to see if she can determine who John is, talks to Janet Lawrence but is unsure if she is related to John due to hostile nature of Janet Lawrence.*

Case ID: 161803380
Control No.: 17092259

i.   September 19, 2016 - 10:06 AM - Orr sends update to Edelstein Law stating he spoke with Janet Lawrence and that she said Jonathan Lawrence is in the mid-West. Id.

Orr told Janet that it would be in John's "best interest to work with [Hertz] ***in defense of the claim*** . . . . I believe I peaked [sic] her interest & there was some shifting in the direction of understanding on her part how working with your office would be in Jonathan's best interest." (emphasis added). John's mother indicated that she would contact John on behalf of Hertz. Id.

These false statements made it seem as if Jonathan needed a defense, when nothing could be further from the truth because he was not a defendant, not a target, and only a witness with no claims against him, formally or informally.

j.   September 19, 2016 4:23 PM - Edelstein Law sends an email to Orr stating:

> "Please make her aware that her son is the only potential person they [Plaintiff] could be referencing and we really need his cooperation to rebut the allegations."

Id.

k.   September 20, 2016 11:35 AM - Orr sends email to Janet Lawrence with the Complaint, again falsely stating that Plaintiff is claiming that Jonathan committed misconduct. See Exhibit 7. Orr tells Janet that Jonathan is the only possible employee who Ms. Grady could be referencing. Orr stresses that Edelstein Law needs Jonathan's assistance. Orr offers to have Edelstein Law represent Jonathan to tailor his testimony and affidavits and provides Edelstein Law's phone numbers so that the firm "can be prepared to help [Jonathan] to the utmost degree possible." Id.

l.   *September 20, 2016 - Plaintiff's counsel calls Janet Lawrence's number and confirms her identity and that her son worked at Hertz. She is inexplicably very hostile.*

m.  *September 21, 2016 12:58 AM - Plaintiff sends a letter asking defense counsel to come clean about "knowingly false interrogatory answers" on Lawrence:*

> *"Please see attached correspondence in regards to Hertz's failure to disclose a critical fact witness known as and called John, purposefully concealing his identity, and failing to provide his last known address and whereabouts-- even though he was at all relevant times employed by defendant The Hertz Corporation."*

See Exhibit 8.

n.   September 21, 2016 7:06 AM - Defense counsel Jay Edelstein responds that:

Case ID: 1803380
Control No.: 17092259

"A guy with your track record and reputation should be very careful about making these allegations. .Suspension form Pennsylvania practice generally follows suspension from USDC. .Be very very careful because your way doesn't work....**File a motion, make a formal charge and allow me to bury you...Absurd..**"

Id. (emphasis added). As the documents make clear, Edelstein was lying.

o. September 21, 2016 4:42 pm - Edelstein Law sends email to Orr stating: "Any update on Lawrence?" Note that this email was sent later *in the same day* where Edelstein claimed that the charge was "absurd" and false. See Exhibit 6.

p. September 22, 2016 - 10:18 AM - Orr emails Edelstein Law an update on Janet Lawrence, stating that he made best arguments he could to convince her to be on Hertz's side. Orr and Stuart Wolf of Edelstein law talk by phone about Jonathan Lawrence. See Exhibit 9.

q. September 22, 2016 1:50 PM - Janet Lawrence sends a long email responding to Orr stating she had to tell her neighbors, because Plaintiff was attempting to find John in the neighborhood, "that the cute little boy they used to know is not now a criminal." See Exhibit 7. This makes it clear that Janet was led to believe by Hertz that Plaintiff was coming after her son for civil and criminal misconduct, which is totally untrue in every way. Janet states that Plaintiff wants to use Jonathan "as a pawn in their legal game." Id. Janet says that because Hertz fired John, her son will not contact either side.

r. September 22, 2016 2:56 PM - Orr sends an email to Janet, with Edelstein Law cc'ed, stating that Edelstein Law "stands ready (on Hertz's dime, by the way) to do what he can to smooth the way for Jonathan." See Exhibit 7. This is an attempt to bribe Lawrence, by offering him free legal services, while concealing him from Plaintiff.

s. *September 27, 2016 - Kelly Grady discloses that she discovered John Lawrence's identity in her deposition.*

t. *October 3, 2016 - Plaintiff files a detailed motion for sanctions over the concealment of Jonathan Lawrence, which Plaintiff incorporates by reference here.*

u. October 16, 2016 - Counsel for Edelstein Law states in the deposition of Joseph Jaussi that "I don't know" the last known address of Jonathan Lawrence. Exhibit 11 - Jaussi Depo, at p.179-80.  This was a lie. Wolf and Edelstein Law did know the last known address of Jonathan Lawrence, and that it was in the mid-West.

v. October 19, 2016 - Plaintiff files a supplement to the motion for sanctions, detailing that Jaussi admitted that Hertz had always known about John Lawrence, which is incorporated here by reference.

w.  October 20, 2016 - Jay Edelstein writes an email to court officer Peter Divon stating that the motion for sanctions is a "sham," that the motion is a part of "Mr. Maolfiy's [sic] fantasy world. The record clearly shows the absurdity of this Motion." These were all lies; Jay Edelstein knew the content of the motion was truthful and correct. <u>See</u> Exhibit 12.

x.  October 24, 2016 - In discovery hearing on motion for sanctions about Jonathan Lawrence, Stuart Wolf of Edelstein Law falsely denies any misconduct or concealing John's identity. Edelstein Law claims that it did not know about John Lawrence until later. The Court denies the motion for sanctions based on Edelstein Law's denials. <u>See</u> Exhibit 13.

y.  January 23, 2017 - Plaintiff files a motion in limine alleging that Hertz concealed the identity of Jonathan Lawrence and secretly sent private investigators to his house, which is incorporated by reference.

z.  February 3, 2017 - Hertz denies in motion response that it secretly sent investigators to John's house while concealing his identity from Plaintiff, by claiming there is no objective evidence to prove this fact. Hertz, of course, was concealing the objective evidence.

aa. September 7, 2017 - At a motion in limine hearing on the motion to preclude Hertz from disputing Grady's contacts with Jonathan Lawrence, Hertz's counsel, Jay Edelstein, lied to the Court and told Judge Patrick that he only sent a private investigator to find Jonathan Lawrence after his identify was disclosed by Plaintiff on September 27, 2017, at her deposition. <u>See</u> Exhibit 1.

16.     Plainly Hertz not only concealed and secretly contacted Jonathan Lawrence—and attempted to bribe and mislead him and prejudice him against Plaintiff—but Hertz and its counsel lied repeatedly to Plaintiff and the Court to cover up this conduct.

17.     Plaintiff had requested any and all files related to this case, but Hertz never produced these 5,000 pages of investigative files and never alluded to its existence. <u>See</u> Exhibit 14 - Plaintiff Documents Requests, at ¶1, 6, 26 (stating "please provide any and all documents . . . that you may use or intend to use in your defense of this case and/or at trial"); Exhibit 3 - Interrogatory Requests, 50-51 (stating "Disclose and describe in detail all facts and witnesses you may use or intend to use to defend this case and/or trial" and "Identify all exhibits you may use, or intend to use, during this case and/or trial").

18.     Mr. Edelstein's representation to the Court that the investigator "was sent after we were notified that Mr. Malofiy and his client went to see her" and that "We were just trying to find them the same way they were trying to" are revealed as a shamelessly dishonest attempts to

mislead the Court. Edelstein Law and Hertz **always** knew that "John" could only have been Jonathan Lawrence, as their internal emails document. <u>See</u> Exhibit 1; Exhibits 2-10.

19.    The question now is what prejudice did Plaintiff suffer and what is the appropriate remedy.

20.    Make no mistake, the prejudice is immense. Not only did Hertz destroy Grady's rental records and payment information, the most critical documentary evidence, Hertz concealed and biased the most critical fact witness against Plaintiff, making him unreachable. They also concealed his whereabouts.

## Legal Standard

21.    The Court has the ability to sanction parties and counsel under its inherent powers, <u>see</u> Behr v. Behr, 548 Pa. 144, 148 (Pa. 1997) and 42 Pa. CS § 2503(7, 9) (permitting an award of counsel fees for obdurate and vexatious conduct).

22.    Remedies such as precluding entire defenses at trial for failure to comply with the discovery rules are accepted discovery sanctions under Rule 4019 of the Rules of Civil Procedure. <u>See</u> <u>Steinfurth v. LaManna</u>, 404 Pa.Super. 384, 590 A.2d 1286, 1289 (1991).

23.    Rule 4019(c)(2) provides that for discovery misconduct "the court . . . may make . . . an order refusing to allow the disobedient party to support or oppose designated claims or defenses."

24.    Four factors should be considered when determining whether to impose discovery sanctions:

> We first examine the party's failure in light of the prejudice caused to the opposing party and whether the prejudice can be cured. A second factor to be examined in reviewing a sanction is the defaulting party's willfulness or bad faith in failing to comply with the discovery order, i.e., the merits of their excuse. Third, we consider the number of discovery violations. Repeated discovery abuses are disapproved. Finally, as noted above, the importance of the precluded evidence in light of the failure must be considered.

<u>Id.</u> (citations omitted).

A<small>PPLICATION</small>

25.     Hertz's conduct satisfies all four factors and requires the imposition of the tailored discovery sanction under Rule 4019(c)(2) of not permitting Hertz to contest Grady's contacts with John Lawrence:

(1)     **Prejudice** - Hertz's fraudulent concealment delayed identification and development of key witness testimony and evidence; Hertz biased that witness against Plaintiff while attempting to bribe him and alter his testimony; Hertz also fraudulently concealed the witness's last known whereabouts from Plaintiff; as a result Plaintiff was never able to secure the testimony of Jonathan Lawrence.

(2)     **Bad Faith** - Hertz's conduct was willful and done in bad faith as evidenced by Hertz's and its counsel's outright lies to the Court and in discovery answers regarding John Lawrence, as definitively proven by Edelstein Law's extensive emails to the private investigator planning how to corrupt Lawrence's testimony.

(3)     **Number of Violations** - Hertz destroyed the most critical documentary evidence in the case, ***and*** concealed the most critical fact witness while biasing him against Plaintiff and attempting to corrupt his testimony with bribes; this is not to mention that Hertz and counsel failed to produce this investigatory file and indisputably lied in discovery about whether there were other lawsuits and issue regarding their false police reports, and

(4)     **Importance** - John Lawrence was the most critical fact witness in this case who could corroborate Plaintiff's allegations, and who also had phone records proving Plaintiff's contacts, and Hertz deliberately enervated any chance Plaintiff had of obtaining his testimony.

26.     The remedy of preclusion is appropriate, correct, and tailored because Hertz has repeatedly lied to the Court and offered plainly false discovery answers, while securing the unavailability of a key witness. See Pa. RCP 4019(c)(2).

27.     When the Defendant has intentionally and in bad faith damaged Plaintiff's ability to prove her case, this discovery misconduct is not necessarily a dispute of fact for the jury. Under Pa. RCP 4019, it is a sanction to be imposed by the Court.

28.     Plaintiff desires to focus on the facts and merits of the case in hand. Plaintiff fears that the jury may be confused and distracted from the issues if Plaintiff is required to prove to the jury that Hertz concealed John.

29.    The Court can plainly see and conclude based on the evidence presented to it that Hertz and its counsel conduct was in bad faith and prejudiced Plaintiff, and that the Pa. RCP 4019 penalty of precluding Hertz from putting on a defense is appropriate.

30.    The remedy is to preclude Hertz from disputing Grady's contacts with Jonathan Lawrence; this remedy is well within the powers of the court. To allow Hertz to argue in any way at trial that Grady did not have contact with Jonathan Lawrence, when they secured his unavailability, would be to reward its bad behavior.

31.    Plaintiff also requests monetary sanctions in an amount to be determined. Plaintiff has argued since October 2016 that Hertz deliberately concealed John's identity while secretly contacting him and biasing him against Plaintiff. In fact, they even attempted to bribe Mr. Lawrence.

32.    Due to Defendant's fervent and entirely false denials, Plaintiff's counsel has had to engage in a truly massive amount of legal work to discover this fraud upon the Court. As we now know, all of this work was completely unnecessary and could have been avoided if Edelstein Law and Hertz had simply told the truth back in September and October 2016.

33.    When a party and counsel engage in intentional litigation misconduct in bad faith, as plainly happened here, they should pay the attorney's fees and costs directly caused by their conduct caused.

34.    Plaintiff estimated that the costs and fees incurred in October 2016 were approximately $5,000 to $10,000. The fees incurred addressing the John Lawrence issue in the following year are huge.

35.    Plaintiff asks that fees and costs be imposed on Hertz, Jay Edelstein, Stuart Wolf, and Edelstein Law, and that Plaintiff be given 30 days from the date of the Court's order to submit proof of fees and costs.

WHEREFORE, Plaintiff respectfully requests that Hertz be precluded from disputing Grady's contacts with Jonathan Lawrence, and that costs and fees be assessed against Hertz, Edelstein Law, Jay Edelstein, and Stuart Wolf for the time and money their dishonesty caused to be expended by Plaintiff and Plaintiff's counsel on the Jonathan Lawrence issue.

*****

*Respectfully submitted,*

Page 14 of 18
Control No.: 17092259

FRANCIS ALEXANDER, LLC
*/s/ Francis Malofiy*
Francis Malofiy, Esquire
Attorney ID No.:  208494
280 N. Providence Road | Suite 1
Media, PA 19063
T:  (215) 500-1000
F:  (215) 500-1005
*Law Firm / Lawyer for Plaintiff*
*/d/   September 11, 2017*

Francis Alexander, LLC
Francis Malofiy, Esquire
Attorney ID No.: 208494
280 N. Providence Road | Suite 1
Media, PA 19063
T: (215) 500-1000
F: (215) 500-1005
*Law Firm / Lawyer for Plaintiff*

The Court of Common Pleas
Philadelphia County, Pennsylvania

| | |
|---|---|
| Kelly A. Grady<br><br>*Plaintiff*<br><br>vs.<br><br>The Hertz Corporation;<br><br>Hertz Rent-A-Car Philadelphia Intl. Airport;<br><br>John Doe(s)[3]<br><br>*Defendants* | Action Commenced By:<br>Writ of Summons On:<br>November 23, 2015<br><br>November Term, 2015<br><br>Civil Action No.:<br>151103380<br><br>Complaint filed:<br>February 22, 2016<br><br>Causes of Action:<br>  Malicious Prosecution<br><br>*Jury Trial Demanded* |

Plaintiff's Memorandum of Law

The above facts and laws included in Plaintiff's motion are hereby incorporated by reference into this memorandum of law.

*****

*Respectfully submitted,*
Francis Alexander, LLC
*/s/ Francis Malofiy*
Francis Malofiy, Esquire
Attorney ID No.: 208494

---

[3] Manager(s) at Hertz Rent-A-Car Philadelphia Intl. Airport from March 2013 to June 2014.

280 N. Providence Road | Suite 1
Media, PA 19063
T:  (215) 500-1000
F:  (215) 500-1005
*Law Firm / Lawyer for Plaintiff*
*/d/ September 11, 2017*

# Certificate of Service

I hereby state that a true and correct copy of the foregoing Plaintiff's Motion for Reconsideration and Sanctions was served on opposing counsel via the electronic filing system:

Jay L. Edelstein, Esquire
Edelstein Law, LLP
230 South Broad Street | Suite 900
Philadelphia, PA 19102
T: (215) 893-9311
F: (215) 893-9310
E: JEdelstein@Edelsteinlaw.com
*Attorneys for The Hertz Corporation*

*****

*Respectfully submitted,*
Francis Alexander, LLC
*/s/ Francis Malofiy*
Francis Malofiy, Esquire
Attorney ID No.: 208494
280 N. Providence Road | Suite 1
Media, PA 19063
T: (215) 500-1000
F: (215) 500-1005
*Law Firm / Lawyer for Plaintiff*
*/d/ September 11, 2017*

# Exhibit List

Exhibit 1 – Transcript from 9/7/2017 Hearing

Exhibit 2 – 9/8/2016 Email from Edelstein Law

Exhibit 3 – Hertz Interrogatory Answers

Exhibit 4 – Plaintiff email and letter on Incomplete Discovery with Response

Exhibit 5 – Edelstein Law ask for Update on Contacting Lawrence

Exhibit 6 – Orr Describes his In Person Conversation with Janet Lawrence

Exhibit 7 – Orr Email to Janet Lawrence and Her Response

Exhibit 8 – Plaintiff Email on Non-Disclosure of John

Exhibit 9 – Orr Update to Edelstein Law on Lawrence

Exhibit 10 – Grady Deposition Excerpt

Exhibit 11 – Jaussi Deposition Excerpts

Exhibit 12 – Edelstein Email to Peter Divon

Exhibit 13 – Order Denying Motion for Sanctions

Exhibit 14 – Plaintiff's Document Requests

Case ID: 151103380
Control No.: 17092259

# EXHIBIT 1

Case ID: 151103380
Control No.: 17092259

**42**

1
2  is trial technology.  I believe it was
3  not objected to by defense counsel.
4      THE COURT:  Which is what?  The
5  courtroom setup?
6      MR. MALOFIY:  We get -- so we know
7  when we're setting it up, when we'll have
8  access.
9      THE COURT:  That's not a motion in
10 limine.
11     MR. MALOFIY:  We've done it because
12 we've had situations in different
13 jurisdictions where there was issues and
14 so just to smooth the dressing of the
15 courtroom, the setting up of technology.
16     THE COURT:  There's no problem?
17     MR. EDELSTEIN:  I just want to, for
18 Your Honor's decorum, I would like to
19 ask, we both have people help us with our
20 trial setup.  That's the -- I think we're
21 going to have to, at some point, rely on
22 it monitors, same monitors.
23     THE COURT:  Most of the time,
24 counsel will share the same monitors, the
25 same -- all of that, the courtroom is not

**43**

1
2  that big.  I will give you time to break
3  down and put the -- it doesn't matter.
4      MR. EDELSTEIN:  I assume Your Honor
5  would like -- you'd like a screen?
6  Plaintiff gets a screen?
7      THE COURT:  However you want to set
8  it up.  That's fine, no problem.  However
9  you guys want to set it up is fine with
10 the Court.  Get it set up.
11     MR. MALOFIY:  When would Your Honor,
12 the Court, be open to set the courtroom?
13     THE COURT:  I guess on Friday
14 because you're going to pick the jury.
15     MR. MALOFIY:  After jury picking?
16     THE COURT:  Yes.  Set up and be
17 ready for Monday morning, fine.  So I
18 will mark that as moot.  That was already
19 resolved.
20     The next motion, motion 12837,
21 motion to preclude Defendant Hertz from
22 disputing Grady's contacts with former
23 Hertz employee, John Lawrence, due to
24 concealing existence and identity.
25     MR. MALOFIY:  This is perhaps one of

**44**

1
2  the most critical motions in our binder.
3  The issue with John, and the reason we
4  have a motion to preclude Hertz from
5  denying Ms. Grady's conduct with John is
6  because we had identified that there was
7  an employee named John or someone named
8  John at the Hertz location who Ms. Grady
9  was in contact with, someone who helped
10 her initially with the rental of the
11 vehicle, someone who helped her with the
12 pricing of the vehicle, someone who was
13 there the first time.
14     There was problems initially with
15 the rental of the vehicle on the pricing
16 and he had help to make sure he secured
17 the proper pricing for that vehicle.
18     When there was issues, he had
19 indicated that if you have further
20 problems, you can reach me on a direct
21 line if there's any problems going
22 forward.
23     We identified John in our complaint
24 by name.  We told Hertz who John was.
25 Throughout the whole discovery, right

**45**

1
2  until the last days before the discovery
3  deadline, they denied the existence of a
4  John.  They denied there was any employee
5  named John.  They said John did not
6  exist.
7      This was Ms. Grady's point of
8  contact.  They're represented in her
9  phone records of who she spoke to at
10 Hertz including 800 numbers and local 215
11 numbers for Hertz.
12     Even when she was arrested
13 wrongfully, the number the police called
14 was John's number, and the police spoke
15 to an individual representative from
16 Hertz.  They vehemently denied there was
17 a John, that he existed.
18     We went through discovery without
19 having information of John, only because
20 we were knocking on doors trying to
21 figure out, does this John live in
22 Pennsylvania?  Does he live in
23 Philadelphia?  Following leads, trying to
24 figure out where this individual lived.
25     We struck upon his doc

Case ID: 151103380
Control No.: 17092259

**46**

1
2 Bala-Cynwyd, or his mother's door, or the
3 last known address, whatever it was, and
4 she indicated there was a private
5 investigator who had been there days
6 before trying to allege that Ms. Grady
7 was the individual who was suing John or
8 trying to get her son in trouble, and
9 that she was told this from Hertz or from
10 counsel.
11    This blew us away, because we didn't
12 even know the location of John, last
13 known address.  They denied his
14 existence.  In her deposition, I think it
15 was a day or shortly thereafter, she
16 revealed that -- she said, yes, I
17 went to, I believe, his mother's door and
18 she indicated she was very upset and
19 indicated there was private investigators
20 previously coming to her door.
21    We didn't send any private
22 investigators to Ms. Lawrence's door or
23 anywhere else.  The only one who did was
24 Hertz.  Because Hertz knew there was an
25 employee named John, their corporate

**47**

1
2 designee -- excuse me, knew there was an
3 employee named John.
4    They did not disclose John in
5 discovery in the normal course, concealed
6 his identity because it's a critical fact
7 witness, and only once when were knocking
8 on doors was it revealed.
9    This is a serious issue, to slam a
10 critical fact witness.  Furthermore, the
11 issue with John is that they had to amend
12 their answers after I made it explicitly
13 clear to Mr. Wolf, the prior counsel,
14 that, hey, this is a serious mistake, you
15 withheld a critical fact witness, you
16 need to supplement and correct those
17 answers.
18    Then days before the discovery, they
19 revealed, oh, yes, there was an employee
20 named John.  When we couldn't do as much
21 discovery as we'd have liked or have
22 investigators or do what we needed to do,
23 what we then -- what we then found out is
24 that Hertz knew about John all along.
25    They knew about John because the

**48**

1
2 corporate designee identified John in his
3 deposition as being an employee they had
4 issues with.  So of verified discovery
5 answers saying there was no one by the
6 name of John that verified answers in the
7 complaint saying there's no individual
8 named John, when John is a critical key
9 fact witness, and he's not disclosed;
10 he's concealed and hidden when they have
11 behind plaintiff's back, behind
12 plaintiff's case having private
13 investigators Matthew Orr, they agreed
14 he's not going to put on the stand, we
15 believe was the individual going to the
16 houses and who knew his last known
17 address, knew this individual named John,
18 but pretended all along he didn't exist.
19    For that reason, we believe this
20 Court should preclude defendants from
21 arguing that Ms. Grady didn't have
22 contacts with John because they're trying
23 to say that she did not have contacts
24 with John, when we had phone records to
25 establish that, Verizon records to

**49**

1
2 establish that.
3    We also have the complaint.  And
4 eventually, discovery was provided late
5 after we had to do a lot of leg work to
6 discover him.  Yes, there was an employee
7 named John.
8    THE COURT:  That's why you should
9 have kept Matthew Orr in.  I'm not trying
10 to tell you how to practice.  It doesn't
11 make much sense.  If that's the case, you
12 should have kept Matthew Orr in and make
13 that argument before the jury.
14    Go ahead.  What's your response?
15    MR. LEEDS:  Simple.  Your Honor,
16 these alleged contacts are in dispute and
17 the records that Mr. Malofiy refers to,
18 the Verizon records and the text
19 messages, first of all, the phone records
20 are redacted and do not, on facial
21 examination, purport to show these
22 alleged communication.
23    Ms. Grady also testified very
24 intently as to her alleged communications
25 with Mr. Lawrence.  Based on the

Case ID: 151103380
Control No.: 17092259

**50**

1
2 alone, the question for the jury to
3 decide is whether or not those
4 communications occurred, because there is
5 evidence on both sides which both sides
6 should be allowed to present on that
7 point.
8     It's as simple as that.  If Hertz --
9 this is what I alluded to earlier, which
10 is that this is just another attempt by
11 plaintiff to cut Hertz's legs off, to rob
12 them of their ability to defend on an
13 essential point in the case.
14     If Hertz is not allowed to dispute
15 that Ms. Grady had these contacts, that's
16 going to be extremely prejudicial to
17 their defense.  This is, as Mr. Malofiy
18 indicated, a critical contested factual
19 issue.
20     THE COURT:  It's a drop where the
21 trier of fact must try the facts.
22     MR. LEEDS:  If the jury is not
23 permitted to consider our side, our
24 evidence, Your Honor, our defense will be
25 severely hamstrung.

**51**

1
2     THE COURT:  All right.
3     MR. MALOFIY:  Our position is that
4 they didn't concealed the identity of
5 John.  We filed a motion to compel.  We
6 were never able to.  They basically
7 secured his unavailability at trial and
8 now no one can find him.
9     We tried to track him down, find
10 him, and we can't.  And that was because
11 he was never identified -- Hertz had the
12 records that John was an employee.  They
13 knew he was an employee.
14     All they had to do was put him in
15 the system and failed to do that, and
16 they provided us false answers.  The
17 answer was, six, identify the employee at
18 Hertz identified in paragraph eight of
19 the complaint as John, who communicated
20 with Grady in 2013 concerning her car
21 rental and provide his full name,
22 address, telephone number current
23 employment, if he was dismissed or
24 resigned as described or resigned.
25 Describe in detail why.

**52**

1
2     Objection.
3     ANSWER:  The interrogatory assumes
4 there's an employee at the Hertz location
5 by the name of John as described in the
6 complaint.
7     The only individual at the airport
8 location in 2013 by the name of John is
9 John Kline a part-time vehicle services
10 manager attendant who has no interaction
11 with customers.
12     THE COURT:  How did you get the name
13 of John Lawrence?
14     MR. MALOFIY:  We didn't.  We were
15 tracking it back from phone numbers and
16 doing public record searches, trying to
17 see what the addresses that were pinged
18 to that number, knocking on doors, Your
19 Honor.  That's how we did it, because it
20 wasn't disclosed by them.
21     Later, after walking down the
22 streets and doors trying to find this
23 witness with my client did we stumble
24 upon Ms. Lawrence who said, yes, Hertz's
25 investigators were at their doors

**53**

1
2 previously and they knew about his
3 identity.  And this is about --
4     THE COURT:  Do you have that -- do
5 you have her deposition saying that?
6     MR. MALOFIY:  We don't.  We called
7 her to court to address this issue.  The
8 judge did not allow her testimony.
9     MR. LEEDS:  Just to clarify one more
10 thing, the plaintiff claims that Mr.
11 Lawrence is the one who facilitated the
12 rental renewal process.
13     THE COURT:  I have one question.
14 Did John Lawrence work at Hertz?
15     MR. EDELSTEIN:  At one point, he
16 did.
17     MR. LEEDS:  He was terminated for
18 unrelated reasons, Your Honor.
19     THE COURT:  I understand that.  But
20 was he there during the time when this
21 rental would have taken place with this
22 young lady?
23     MR. EDELSTEIN:  We found out later,
24 yes, he was.
25     THE COURT:  So at what point did I

Case ID: 151203380
Control No.: 17092259

**54**

1

2 find out?

3    MR. EDELSTEIN:  Well within the

4 discovery period, well within -- I mean,

5 our own people, our own Hertz

6 representatives testified about John

7 Lawrence.

8    Mr. Malofiy asked the Hertz

9 designees about John Lawrence, and they

10 explained who he was and what he did.  On

11 top of that, before those depositions

12 took place, Mr. Malofiy, with his client,

13 visited Mrs. Lawrence -- I'm assuming

14 that's her name -- and asked specific

15 questions about John Lawrence.

16    Nobody was hiding him.  The initial

17 disclosures, we had to go and get

18 photographs of everybody that worked for

19 Hertz at the time to locate him, because

20 nobody knew that John and then as was

21 widdled ^ down and as the Hertz designees

22 testified, Lawrence's name came out.

23    It wasn't being hidden, and Mr.

24 Malofiy and his client went to the house

25 and spoke to Mrs. Lawrence.

**55**

1

2    THE COURT:  I'm not inclined to let

3 it -- keep it out.  I think it should

4 come in, as well as I don't know what

5 evidence you have to bring to the

6 contrary that they, in fact, were

7 concealing this information.

8    MR. MALOFIY:  The reason we know

9 they concealed it is because they had

10 investigators there.  They knew about his

11 identity.

12    THE COURT:  If I allowed it in, I

13 don't know if you have any evidence to

14 put in to show the jury that they, in

15 fact, concealed this person.

16    For example, the testimony of this

17 lady or this whoever Matthew -- I don't

18 know who --

19    MR. MALOFIY:  That's one of the

20 issues.  They're saying they're going to

21 withdraw him as a witness.

22    THE COURT:  It's up to you.  You

23 have to decide what you're going to do.

24    MR. MALOFIY:  Our position is that

25 they should be precluded.  They're trying

**56**

1

2 to say that Ms. Grady had no contacts

3 with an employee named John.  They

4 basically hid it and concealed his

5 identity of this individual and --

6    THE COURT:  Here's the problem.  I

7 mean, you're saying they concealed it.

8 Maybe they did.  But I don't have any

9 evidence of that because I don't have

10 this lady, Ms. Lawrence, whoever, to

11 testify that, in fact, that, you know,

12 they came to her door, whoever Hertz,

13 whatever, I don't have any of that.

14    The jury would not have that.

15 That's the problem.  It's just counsel

16 saying we went out there and did this,

17 that's fine, but I don't have an

18 affidavit.  I don't have anything.

19    MR. MALOFIY:  We can ask counsel

20 right here whether or not they sent an

21 investigator, Matthew Orr, or similar

22 investigator to the door of Ms. Lawrence.

23 Days before, I discovered them by

24 pounding on doors.

25    THE COURT:  Did this Matthew go out?

**57**

1

2    MR. EDELSTEIN:  Absolutely not.  An

3 investigator, I believe, was sent after

4 we were notified that Mr. Malofiy and his

5 client went to see her.

6    THE COURT:  Who was the

7 investigator?

8    MR. EDELSTEIN:  It would have been

9 Matt Orr.  We were just trying to find

10 them the same way they were trying to.

11    MR. MALOFIY:  They knew about his

12 name, that he was an employee and we

13 didn't.  That's the difference.

14    MR. EDELSTEIN:  To our advantage,

15 for them to go to John Lawrence, if they

16 unload on John Lawrence and he's working

17 this deal with her, side deal where he's

18 telling her everything is approved, Hertz

19 can disclaim coverage of that.

20    He's acting well outside the scope

21 of his authority.  He's not acting as an

22 employee at that point.  If they want to

23 go in that direction.

24    MR. MALOFIY:  No insurance is

25 involved.  It's not a claim.  It's

Case ID: 151103380
Control No.: 17092259

**58**

1

2    MR. EDELSTEIN:  He's not an

3  employee.  It's outside the scope.

4    THE COURT:  He was an employee at

5  the time.

6    MR. MALOFIY:  And they had the

7  employee list and they knew his last

8  name, address and last known phone number

9  and failed to provide it, failed to

10  identify him as an employee, and it was

11  critical and they concealed him only from

12  me walking down the streets of

13  Philadelphia with phone numbers did I

14  find -- did we locate him; and

15  thereafter, they identified him when I

16  made it very clear they did a discovery

17  violation.

18    THE COURT:  Okay.

19    MR. EDELSTEIN:  I've been doing this

20  38 years.  For 100 years, Edelstein was

21  practicing law in Philadelphia.  I have

22  never been accused in court, once, let

23  alone ten times, so far, of hiding

24  information from the other side.  Never.

25    MR. MALOFIY:  Well --

**59**

1

2    THE COURT:  I'm going to deny the

3  motion at this time, and I will give you

4  leeway to address it.  Show me the

5  evidence that you would have, just to

6  counter that to present to the jury.  I

7  will let you do that.  However you want

8  to figure it out.

9    MR. MALOFIY:  We have Mr. /SRO*R

10  coming in tomorrow to produce all his

11  documents that he had in regard to the

12  investigation of Ms. Grady, and I believe

13  he said he's not going to be able to come

14  at 9:00.

15    We wanted to get the information he

16  had before next week.

17    THE COURT:  Okay.  I guess the jury

18  should be ready early tomorrow.  When he

19  gets here -- what time is he supposed to

20  come in?

21    MR. MALOFIY:  He indicated to me

22  around 11:00, 12:00, and I'm hoping we

23  can put him on briefly.

24    MR. EDELSTEIN:  Tomorrow is -- put

25  him on where?

**60**

1

2    THE COURT:  Not put him on.  You

3  want the information?

4    MR. MALOFIY:  Right.  But I'd love

5  to ask him a few questions and the Court

6  can ask him a few questions.

7    THE COURT:  I don't need to ask him

8  any questions.  It's not my case.  He's

9  coming with a file?

10    MR. MALOFIY:  Documents, yes.

11    MR. EDELSTEIN:  Two question.  One

12  is -- two statements.  One is I didn't

13  know about any of this.  I didn't know

14  this was happening; and two, he's already

15  been precluded from testifying.

16    THE COURT:  It was by agreement.  I

17  didn't preclude him.

18    MR. MALOFIY:  I didn't say by --

19    THE COURT:  What I understand it was

20  by agreement, Matthew Orr.  It was denied

21  as to the other witnesses.

22    MR. EDELSTEIN:  If that door opens

23  with Matt Orr in evidence, then the door

24  is open; correct?

25    THE COURT:  Absolutely.

**61**

1

2    MR. EDELSTEIN:  I can go anywhere I

3  want to go?

4    THE COURT:  I don't know about that.

5  I'm just saying if -- I'm not going to

6  cut you off by saying that, you know

7  anything about this Johns Lawrence,

8  whatever, and he wants to know anything

9  at all about this John --

10    MR. EDELSTEIN:  Is Matt Orr coming

11  in about John Lawrence?

12    THE COURT:  Apparently, he's wanting

13  more information from him with the file

14  with information, whatever.

15    MR. MALOFIY:  Our position was not

16  that it was agreed to that motion.  It

17  was that we needed specific information

18  from Matthew Orr, and we wanted to

19  address it with the Court.

20    The issue is we know that he was at

21  those doors.  We know he was providing

22  that information, and we know he did an

23  investigation.

24    THE COURT:  If he's coming in, you

25  can, you know, talk to him.

Case ID: 151103380
Control No.: 17092259

62

1
2 the information, see what he has, and
3 maybe you can use him as a witness.
4 Maybe you can't.  I don't know what he
5 has.  He may not have anything.
6     MR. MALOFIY:  Thank you, Your Honor.
7     MR. EDELSTEIN:  Are we privy to that
8 meeting?
9     THE COURT:  Of course.  Counsel will
10 be here to discuss whatever it is.  If
11 you find you can use it for evidence, you
12 use it.  Same with counsel, whatever it
13 is, it is.  Everybody will talk with the
14 witness.  It's not like one person is
15 just talking.
16     MR. MALOFIY:  Thank you, Judge.
17     THE COURT:  So that motion is -- the
18 next motion is a motion ending in 12838,
19 motion to preclude Defendant Hertz from
20 disputing a July 18th, 2013 location
21 visit.
22     MR. MALOFIY:  This relates to
23 incomplete records, to have a tracking
24 like they normally do with every other
25 rental contract, because this was purged.

63

1
2 The investigator indicated the car, when
3 it comes in, goes out, what's going on
4 with the car.
5     They don't have that.  They don't
6 even have when it left.  They should have
7 that and doesn't have it.  Our client has
8 testified -- and it's unrebutted, because
9 the corporate designee said, yes, there's
10 no way we can -- we would be able to
11 dispute that she was there on that day.
12 The issue -- and I will read it:
13     In regards to purged documentation,
14 I ask Mr. Jaussi -- so you're telling me,
15 as you sit here today, speaking, just so
16 you know, as Hertz's voice, you're the
17 corporate designee, the person most
18 knowledgeable from Hertz to testify to
19 certain things.  You've been identified
20 as someone to speak to and you've
21 identified that there was -- excuse me --
22 that there was an e-mail that you, as
23 general manager, sent to Oklahoma City to
24 -- I'm sorry, one second, Your Honor --
25 sent to Oklahoma to determine whether or

64

1
2 not 2500.15 ^  was a final bill, partial,
3 full payment, what it was; correct?
4 Correct.
5     Now, there's another issue here,
6 Your Honor, I want to get to it.  We
7 asked him:  As you sit here today, you're
8 telling me that you personally do not
9 know whether or not that payment was a
10 final payment or that payment was
11 authorized or that payment cleared or
12 that payment was a partial payment or
13 full payment?
14     He responded:  Correct.  All they
15 stated, from my recollection, is that it
16 was purged.  It's been purged.  There's
17 no further information that could be
18 provided because that contract has been
19 purged.
20     Shortly thereafter, in the
21 deposition, I asked him -- and give me a
22 second to locate it, Your Honor -- page
23 203 of his deposition -- that there was
24 no investigation on to Ms. Grady -- and I
25 will read you:

65

1
2     Counsel:  Is there a form or some
3 kind of printout that you have at your
4 disposable where you can identify where
5 that Chevy Yukon entered and exited that
6 Hertz location?
7     Mr. Jaussi, no, I don't.
8     Counsel: You don't do that
9 investigation prior to testimony here
10 today?
11     No, I did not.
12     As Hertz's corporate designee and
13 the person most knowledgeable, you don't
14 have any testimony to -- you don't have
15 any factual testimony to indicate that an
16 investigation was done to determine the
17 truth or falsity of the statement that
18 she entered and exited the Philadelphia
19 Airport location on that date, July 18th,
20 2013; correct?
21     Mr. Jaussi:  Correct.
22     The thing here is that they have
23 nothing in their records or nothing even
24 in their testimony to dispute she was
25 there.

Case ID: 151103380
Control No.: 17092259

# EXHIBIT 2

Case ID: 151103380
Control No.: 17092259

## Matthew Orr

| | |
|---|---|
| **From:** | Stuart Wolf <SWolf@edelsteinlaw.com> |
| **Sent:** | Thursday, September 08, 2016 5:28 PM |
| **To:** | Matthew Orr |
| **Subject:** | Kelly Grady, EL 810.911 |

| | |
|---|---|
| **Follow Up Flag:** | FollowUp |
| **Due By:** | Thursday, September 08, 2016 5:30 PM |
| **Flag Status:** | Completed |

Matt,

Two people I need you to go out and speak with in connection with a lawsuit:
Randy Currie, owner of Currie Hair Skin and Nails
Jonathan Lawrence, 126 Edgehill Rd. Bala Cynwyd, PA 19004 (last known address)

Please give me a call tomorrow when you are available and I will go over the info for each, as they both concern different purposes.

Thanks
Stuart

Very truly yours,
Stuart J. Wolf, Esquire
EDELSTEIN LAW, LLP
230 S. Broad Street
Suite 900
Philadelphia, PA  19102
SWolf@Edelsteinlaw.com
215-893-9311
Fax:  215-893-9310
NJ:  856-809-3150
www.Edelsteinlaw.com

Case ID: 151103380
Control No.: 17092259

# EXHIBIT 3

Case ID: 151103380
Control No.: 17092259

*EL File No. 810.911*

**EDELSTEIN LAW, LLP**
BY: JAY L. EDELSTEIN, ESQUIRE
Identification No.: 30227
230 South Broad Street, Suite 900
Philadelphia, PA  19102
(215) 893-9311

Attorney for Defendant,
The Hertz Corporation
(Incorrectly designated Hertz Rent A
Car Philadelphia Intl. Airport)

| | | |
|---|---|---|
| KELLY A. GRADY | : | COURT OF COMMON PLEAS |
| | : | PHILADELPHIA COUNTY |
| | : | |
| v. | : | NOVEMBER TERM, 2015 |
| THE HERTZ CORPORATION; | : | |
| HERTZ RENT-A-CAR PHILADELPHIA | : | NO.: 3380 |
| INTL. AIRPORT; | : | |
| JOHN DOE(s) | : | |

## <u>DEFENDANT, THE HERTZ CORPORATION, ANSWERS TO PLAINTIFF'S INTERROGATORIES</u>

Defendant, The Hertz Corporation, by and through its attorney, Jay L. Edelstein, Esquire,

hereby submits its answers to Plaintiff's interrogatories pursuant to the Pennsylvania Rules of

Civil Procedure.

## <u>PRELIMINARY STATEMENT</u>

These responses are made solely for the purpose of this action. Each response is made

subject to all objections as to competence, materiality, relevance or other objection as to

admissibility that may apply in the event that such response, or the information contained

therein, is sought to be used in court.  Defendant hereby reserves all such objections.

## <u>GENERAL OBJECTIONS</u>

Defendant objects to all interrogatories to the extent that such interrogatories seek

information that is beyond the scope permitted by the PA Rules of Civil Procedure.  In particular,

Defendant objects to all interrogatories to the extent that such interrogatories are not described

Case ID: 151103380
Control No.: 17092259

with reasonable particularity, are overly broad, unduly burdensome, or are not reasonably

calculated to lead to the discovery of admissible evidence.

Defendant objects to each interrogatory that asks to identify "all" or "each and every"

information, documents or other things of a certain description. Defendant objects to such

interrogatories because seeking "all" or "each and every" information, documents or other things

in the context of this litigation is overbroad and unduly burdensome, and such interrogatories

seek information which is irrelevant and is not reasonably calculated to lead to the discovery of

admissible evidence. To the extent that Defendant indicates that it is identifying information or

other things in response to a particular interrogatory, such a response is meant to indicate that

Defendant has made a good faith effort to identify such information and/or other things by

communicating with those partners from whom she believes, in good faith, that such information

may be obtained.

Defendant also objects to each and every "definition" and "instruction" to the extent that

it imposes any obligation or burden upon Defendant not provided for in the PA Rules of Civil

Procedure. Defendant objects to all interrogatories to the extent that such requests seek

information protected by attorney-client privilege, the work product doctrine or any other

applicable privilege or protection. With respect to such interrogatories, certain information is not

being provided and a claim of privilege and/or non-discoverability is being asserted on the basis

of the above privileges. To the extent that Defendant identifies or produces information that is

protected from disclosure by any of the above privileges, any such disclosure of such privileged

or otherwise non-discoverable information shall not constitute a waiver and shall be deemed

inadvertent.

Case ID: 151103380
Control No.: 17092259

Defendant objects to all interrogatories to the extent that Defendant's investigation and analysis of this matter is ongoing, and reserves the right to supplement these responses with information acquired through additional discovery, analysis, review and/or inspection undertaken or completed subsequent to the service of these responses. Defendant objects to producing any information which is proprietary, commercially sensitive or otherwise confidential or private, except pursuant to an appropriate Stipulation and Order executed to protect the confidentiality of such information. Defendant objects to producing any information that would violate the privacy interests of third parties. Defendant objects to each interrogatory to the extent that it calls for disclosure of information not currently within Defendant's possession, custody or control.

By agreeing to produce documents or information or by producing information in response to the interrogatories, Defendant neither waives nor intend to waive any objections that he or she may have regarding the use of such documents or information by Defendants or Plaintiffs, including, but not limited to, authenticity, competency, privilege, relevance, material and admissibility.

## ANSWERS TO INTERROGATORIES

1. Objection. This request is overbroad, vague, unduly burdensome, not relevant, and would require the making of an unreasonable investigation by the answering party in violation of R. 4011 and is outside the scope of discovery permitted by the PA Rules of Civil Procedure including R. 4003.2.Without waiving said objection, the airport employees who performed any duties related to her car rental were:

> Shirrell Warrick
> Kenneth Graeber

All contact with Ms. Warrick or Mr. Graeber must go through counsel for Defendant.

2. Objection. This request is overbroad, vague, unduly burdensome, not relevant, and would require the making of an unreasonable investigation by the answering party in violation of R. 4011 and is outside the scope of discovery permitted by the PA Rules of Civil Procedure including R. 4003.2. Defendant also objects to this Interrogatory to the extent the term "organizational hierarchy" is not defined, overbroad, and subject to multiple meanings.

Case ID: 151103380
Control No.: 17092259

3.      Kelly Grady, Kenneth Graeber, Officer Brighter, Officer Iannocone, Detective Wojciechowski, Trooper Kemmerling, Trooper Ridgeway, Craig Mitnick, as well as unknown individuals within the Burlington County Prison, East Greenwich Municipal Court, and Philadelphia District Attorney's Office. Investigation is ongoing. Defendant reserves the right to supplement.

4.      Objection. There was no criminal complaint made by Hertz in August 2013 regarding Kelly Grady. In an effort to be responsive, Assistant Corporate Security Manager Kenneth Graeber reported the vehicle to the Philadelphia Police on July 22, 2013 and was interviewed on July 23, 2013. See attached documents.

5.      See attached police reports. Defendant reserves the right to supplement.

6.      Objection. This interrogatory assumes there is an employee at the Hertz airport location by the name of "John" as described in the Complaint. The only individual at the airport location in 2013 by the name of John is John Kleinz, a part-time vehicle service attendant who has no interaction with customers.

7.      The only Hertz employee who spoke to the police authorities on July 22, 2013 was Kenneth Graeber. Mr. Graeber spoke with Officer Brighter. Mr. Graeber works out of the Hertz location at 8201 Bartram Avenue, Philadelphia PA. See attached documents. All contact with Mr. Graeber must go through counsel for Hertz.

8.      Objection. This interrogatory assumes a computer system was consulted with during Mr. Graeber's conversation with Officer Brighter. Mr. Graeber did not utilize any computer system while speaking with Officer Brighter on July 22, 2013.

9.      Objection. This request is overbroad, vague, unduly burdensome, not relevant, and would require the making of an unreasonable investigation by the answering party in violation of R. 4011 and is outside the scope of discovery permitted by the PA Rules of Civil Procedure including R. 4003.2.

10.     No employees were reprimanded or dismissed.

11.     Objection. Defendant cannot speak for Detective Wojciechowski, Trooper Kemmerling or Onstar. Kenneth Graeber reported the information contained in the Investigation Interview Record to Police Officer Iannocone on July 23, 2013. The information was learned by reviewing the rental contract and the investigation performed over the course of two months, contained within the Theft Package. He was not aware as of August 27, 2013 what Officer Iannocone or Trooper Kemmerling did in relation to the information that was reported. See attached documents.

12.     The information in the August 2013 police affidavit was related to Police Officer Iannocone on July 23, 2013 as contained within the Investigation Interview Record. The last two paragraphs of the affidavit, relating to actions that occurred on July 22, 2013, Defendant does not

Case ID: 151103380
Control No.: 17092259

know where that information came from. The information was learned by reviewing the rental contract and the investigation performed over the course of two months to locate and recover the vehicle, contained within the Theft Package. See attached documents.

13.    April 17, 2013 in order to rent a white GMC Yukon at 1:57 p.m.. According to the rental contract, Plaintiff spoke with Shirrell Warrick.

14.    Kenneth Graeber called the Philadelphia Police on July 22, 2013 to report the stolen vehicle and spoke with Officer Brighter. Mr. Graeber was interviewed by Officer Iannocone of the Philadelphia Police on July 23, 2013. Mr. Graeber cannot recall any other conversations with any police authorities regarding Plaintiff.

15.    See attached documents. Defendant cannot recall internal oral communications regarding Plaintiff in 2013 and 2014.

16.    Objection. The police report was not filed by a Hertz manager in August 2013. In an effort to be responsive, Kenneth Graeber spoke with Officer Brighter on July 22, 2013 and was interviewed by Officer Iannocone on July 23, 2013. Those were the only communications Mr. Graeber had with any police authorities. See attached documents.

17.    Objection. The police report was not filed by a Hertz manager in August 2013. See attached documents. Defendant cannot recall internal oral communication regarding Plaintiff in February through September 2013.

18.    Objection. The police report was not filed by a Hertz manager in August 2013. There are no written documents covering that time period. Mr. Graeber cannot recall any conversation he may have had with police authorities during the requested time period.

19.    None to Defendant's knowledge. Hertz employees are not required to appear at preliminary hearing for case to proceed.

20.    One payment, on April 17, 2013 at 01:57 p.m., for $1,805.00 to a Visa card ending in 0583. See attached rental contract.

21.    Objection. The police report was not filed by a Hertz manager in August 2013. Mr. Graeber reviewed the rental contract, investigation performed, and had communications with individuals in Hertz Vehicle Control Department in Oklahoma City, OK. A theft package was put together and reported to the airport police. See attached documents.

22.    Objection. The police report was not filed by a Hertz manager in August 2013. See Answer to Interrogatory 21.

23.    Objection. This request is overbroad, vague, unduly burdensome, not relevant, and would require the making of an unreasonable investigation by the answering party in violation of R. 4011 and is outside the scope of discovery permitted by the PA Rules of Civil Procedure including R. 4003.2. Without waiving said objection, see attached documents.

Case ID: 151103380

Control No.: 17092259

24.    Objection. This request is overbroad, vague, unduly burdensome, not relevant, and would require the making of an unreasonable investigation by the answering party in violation of R. 4011 and is outside the scope of discovery permitted by the PA Rules of Civil Procedure including R. 4003.2.

25.    Objection. This request is overbroad, vague, unduly burdensome, not relevant, and would require the making of an unreasonable investigation by the answering party in violation of R. 4011 and is outside the scope of discovery permitted by the PA Rules of Civil Procedure including R. 4003.2.

26.    None.

27.    Objection. The police report was not made by Hertz in August 2013. In an effort to be responsive, Kenneth Graeber appeared at various criminal hearings throughout 2013 and 2014. In addition, the vehicle was recovered on September 11, 2013 at Smeltz's Towing in Millersburg, PA with front end damage and needed to be towed to a Hertz facility.

28.    See attached procedures for reporting vehicle thefts and conversions.

29.    See attached procedures for reporting vehicle thefts and conversions.

30.    See attached procedures for reporting vehicle thefts and conversions.

31.    See attached procedures for reporting vehicle thefts and conversions.

32.    See attached procedures for reporting vehicle thefts and conversions.

33.    See attached procedures for reporting vehicle thefts and conversions.

34.    See attached procedures for reporting vehicle thefts and conversions.

35.    See attached procedures for reporting vehicle thefts and conversions.

36.    See attached procedures for reporting vehicle thefts and conversions.

37.    Mr. Graeber communicated with individuals in Vehicle Control Department in Oklahoma City, OK to confirm details of the rental and the steps taken to recover the vehicle. See attached documents.

38.    See attached procedures for reporting vehicle thefts and conversions.

39.    Hertz Vehicle Control department contacted Collateral Consultants to contact the renter and attempt to obtain the return of the rental. See attached document.

Case ID: 151103380
Control No.: 17092259

40.     Hertz Vehicle Control department contacted Auto Recovery Repossession to go out to the location on file for the renter and locate and tow the vehicle. This attempt was unsuccessful.

41.     Including, but not limited to, Plaintiff, Philadelphia Police Department, Philadelphia District Attorney's Office, Pennsylvania State Police, New Jersey State Police, Burlington County Prison. Defendant reserves the right to supplement.

42.     Objection. This request is overbroad, vague, unduly burdensome, not relevant, and would require the making of an unreasonable investigation by the answering party in violation of R. 4011 and is outside the scope of discovery permitted by the PA Rules of Civil Procedure including R. 4003.2.

43.     Objection. This request is overbroad, vague, unduly burdensome, not relevant, and would require the making of an unreasonable investigation by the answering party in violation of R. 4011 and is outside the scope of discovery permitted by the PA Rules of Civil Procedure including R. 4003.2.

44.     Objection. This request is overbroad, vague, unduly burdensome, does not identify a time period, not relevant, and would require the making of an unreasonable investigation by the answering party in violation of R. 4011 and is outside the scope of discovery permitted by the PA Rules of Civil Procedure including R. 4003.2. Defendant further objects to the term "accused" as used in the interrogatory is not defined, overbroad, and subject to multiple meanings.

45.     Objection. This request is overbroad, vague, unduly burdensome, does not identify a time period, not relevant, and would require the making of an unreasonable investigation by the answering party in violation of R. 4011 and is outside the scope of discovery permitted by the PA Rules of Civil Procedure including R. 4003.2.

46.     Objection. This request is overbroad, vague, unduly burdensome, does not identify a time period, not relevant, and would require the making of an unreasonable investigation by the answering party in violation of R. 4011 and is outside the scope of discovery permitted by the PA Rules of Civil Procedure including R. 4003.2.

47.     Objection. This interrogatory assumes Hertz did not appear at any preliminary hearings. According to the public criminal docket, there were only two hearings where the complainant failed to appear, and one of those hearings was a joint request for continuance as the Defense Attorney was out of town. Additionally, a Hertz representative is not required to appear at a Preliminary Hearing. The Detective who signs the Affidavit is required to appear as the Complainant. And as described more fully in previous answers, Kenneth Graeber reported the vehicle stolen on July 22, 2013 to Officer Brighter and was interviewed by Officer Iannacone on July 23, 2013. Upon information and belief, there was no other contact with the Philadelphia Police Department. If Mr. Graeber was notified of preliminary hearings by the District Attorney's Office, he would appear for those hearings. At times, subpoenas to appear would be sent to different Hertz locations throughout the country and Mr. Graeber would not receive them

Case ID: 151103380
Control No.: 17092259

in time to appear for hearings. Mr. Graeber cannot recall any communication with the District Attorney's Office regarding Plaintiff.

48. Objection. This request is overbroad, vague, unduly burdensome, not relevant, and would require the making of an unreasonable investigation by the answering party in violation of R. 4011 and is outside the scope of discovery permitted by the PA Rules of Civil Procedure including R. 4003.2.

49. Objection. This request is overbroad, vague, unduly burdensome, not relevant, and would require the making of an unreasonable investigation by the answering party in violation of R. 4011 and is outside the scope of discovery permitted by the PA Rules of Civil Procedure including R. 4003.2.

50. The answering party has not yet determined the identity of those individuals whom he will call to testify as experts or fact witnesses on his behalf as the time of trial or the documents they intend to us. Answering defendant reserves the right to supplement this answer in accordance with the Pennsylvania Rule of Civil Procedure 4003.5 and 4007.4, respectively. May include all parties to this litigation, including representatives and/or corporate designees, as well as any individuals identified in discovery. All pleadings and documents exchanged in discovery may be utilized. Investigation is ongoing. Defendant reserves the right to supplement.

51. The answering party has not yet determined the exhibits they intend to use at time of trial. This may include, but is not limited to, all pleadings and documents exchanged in discovery. Investigation is ongoing. Defendant reserves the right to supplement.

52. Answering defendant has not yet determined who will testify as an expert witness at trial on its behalf. Defendant reserves the right to supplement up to the time of trial.

53. See response to interrogatory 52.

54. See response to interrogatory 52.

                              EDELSTEIN LAW, LLP


                              By: _____
                                  Jay L. Edelstein, Esquire
                                  Attorney for Defendant,
                                  The Hertz Corporation


Dated: 8/30/16

**<u>VERFICATION</u>**

I, *Richard W Livingston*, aver that The Hertz Corporation is a named Defendant in the matter of *Kelly A. Grady v. The Hertz Corporation; Hertz Rent-A-Car Philadelphia Intl. Airport; and John Doe*, Docket No. 151103380, and I aver that the answers contained in the forgoing Interrogatories are true and correct to the best of my knowledge, information and belief, and that the statements there in are made subject to the penalties of 18 Pa C.S.A. §4904, relating to unsworn falsification to authorities.

DATE: *August 30, 2016*

Case ID: 151103380
Control No.: 17092250

Francis Alexander, LLC
Francis Malofiy, Esquire
Attorney ID No.: 208494
280 N. Providence Road | Suite 1
Media, PA 19063
T:  (215) 500-1000
F:  (215) 500-1005
*Law Firm / Lawyer for Plaintiff*

## The Court of Common Pleas
## Philadelphia County, Pennsylvania

| | |
|---|---|
| Kelly A. Grady<br><br>*Plaintiff*<br><br>vs.<br><br>The Hertz Corporation;<br><br>Hertz Rent-A-Car Philadelphia Intl. Airport;<br><br>John Doe(s)[1]<br><br>*Defendants* | Action Commenced By:<br>Writ of Summons On:<br>November 23, 2015<br><br>November Term, 2015<br><br>Civil Action No.:<br>151103380<br><br>Complaint filed:<br>February 22, 2016<br><br>Causes of Action:<br>1. False Imprisonment<br>2. Malicious Prosecution<br>3. Int. Infl. of Emo. Dist.<br><br>*Jury Trial Demanded* |

## Plaintiff's Interrogatories Directed to
## Defendant The Hertz Corporation

TO:    The Hertz Corporation
        Jay L. Edelstein, Esquire
        Edelstein Law, LLP
        230 South Broad Street | Suite 900
        Philadelphia, PA 19102
        T: (215) 893-9311
        F: (215) 893-9310
        E: JEdelstein@Edelsteinlaw.com
        *Attorneys for The Hertz Corporation*

---

[1] Manager(s) at Hertz Rent-A-Car Philadelphia Intl. Airport from March 2013 to June 2014.

Case ID: 151103380
Control No.: 17092259

Plaintiff Kelly Grady hereby demands that Defendant the Hertz Corporation respond to the following interrogatories:

*Please note that when any corporate defendant is referred to, Plaintiff is also referring to any employee, agent, partner, director, or contractor associated with that corporate defendant or authorized to act on its behalf*

1.    Identify all employees of The Hertz Corporation's ("Hertz") Philadelphia International Airport location by name, age, addresses, telephone numbers, position held, length of time employed, and who that person reports to, for the years 2013 and 2014—and also identify if they interacted with Ms. Grady or performed any duties related to her car rental and what those contacts and duties consisted of.

2.    Identify the organizational hierarchy and who reported to who during 2013 to 2014 for Hertz and specifically in the Hertz Philadelphia Airport Location. If there are organizational charts, please produce them.

3.    Identify all individuals with knowledge of the facts and allegations in the Complaint and provide their names, home addresses, telephone numbers, current and past employment since 2010, and facts and knowledge they have.

4.    Identify the manager who made the criminal complaint to Detective Wojciechowski of the Philadelphia Police Department in August 2013 regarding Kelly Grady.

5.    Identify and describe in detail all police reports concerning Kelly Grady, including the control number, incident number, report number, and/or case number.

6.    Identify the employee of Hertz, identified in ¶8 of the Complaint as "John," who communicated with Grady in 2013 concerning her car rental, and provide his full name, address, telephone number, current employment, and if he was dismissed or resigned describe in detail why.

Case ID: 151103380
Control No.: 17092259

7.      Identify the Hertz employees who spoke with police authorities on July 22, 2013, other than "John," who are not believed to be employees of the Philadelphia Airport location. Please not only identify the employees, but who those employees spoke to, the contents of those conversations, and the time. Provide the address, telephone number, and current employment of those Hertz employees. Produce any recordings of that phone call.

8.      Identify the computer systems that the Hertz employees identified in the immediately preceding interrogatory consulted while on the phone with the police on July 22, 2013, and what information was on that system regarding Ms. Grady.

9.      Identify all employees of the Philadelphia International Airport Hertz location who have been dismissed or reprimanded (informally or formally) since 2010, describe in detail why they were dismissed reprimanded and what policies they violated, and provide their dismissal or reprimand dates.

10.     Identify all employees of Hertz who were reprimanded or dismissed regarding the events concerning Ms. Grady, her rental of the Yukon, and/or her subsequent arrest, imprisonment, and prosecution.

11.     Describe in detail how the manager of the Philadelphia International Airport Hertz location learned all details in the August 27, 2013 affidavit filed by Detective Wojciechowski, especially the paragraph that reads: "ON 7/22/13, TROOPER kEMMERLING, PENNSYLVANIA STATE POLICE, TROOP H, RECEIVED A RADIO CALL TO RESPOND TO A STOLEN VEHICLE THAT ONSTAR WAS TRACKING. HE STOPPED THE VEHICLE AND RECOVERED IT. THE VEHICLE WAS BEING OPERATED BY THE DEFENDANT."

Case ID: 151103380
Control No.: 17092259

12.     Describe in detail how all of the information in the August 2013 police affidavit was learned and then related to the police.

13.     Describe in detail all instances in 2013 where Kelly Grady personally visited the Philadelphia International Airport Hertz location, what those visits concerned, who she spoke with, and the dates and times of those visits.

14.     Describe in detail—including the date, time, and participants—all communications (both written or oral) Hertz and its employees had with any police authorities (including the airport police, Pennsylvania State Police, and Philadelphia Police Department and their personnel) in 2013 and 2014 that in any way relate to Kelly Grady.

15.     Describe in detail—including the date, time, and participants—all communications (both written and oral) Hertz and its employees had between themselves or with anyone else regarding Kelly Grady and/or the Chevy Yukon she rented in 2013 and 2014.

16.     Describe in detail—including the date, time, and participants—all communications (both written and oral) the Hertz manager who filed the police report in August 2013 regarding Ms. Grady had between July 20, 2013 to September 1, 2013 regarding Ms. Grady, including with the State Police, Trooper Kemmerling, the airport police, the Philadelphia Police Department, and Detective Wojciechowski.

17.     Describe in detail—including the date, time, and participants—all communications (both written and oral) the Hertz manager who filed the police report in August 2013 regarding Ms. Grady had with Hertz employees regarding Ms. Grady and/or her rental from February 2013 to the present, especially between February 2013 to September 1, 2013.

Case ID: 151103380
Control No.: 17092259

18.     Describe in detail—including the date, time, and participants—all communications (both written and oral) the Hertz manager who filed the police report in August 2013 had with anyone (including the airport police, Pennsylvania State Police, and Philadelphia Police Department and their personnel) from November 4, 2013 to September 1, 2014 regarding Kelly Grady and/or the criminal charges against her.

19.     Describe in detail—including the date, time, and participants—all communications (both written and oral) between Hertz and/or its employees with the Pennsylvania State Police, Philadelphia Police Department, the Philadelphia District Attorney's Office, or the Philadelphia Court system from November 4, 2013 to September 1, 2014 regarding Kelly Grady, especially concerning Hertz and its employees appearing as witnesses.

20.     Describe in detail all payments—including date, time, amount, and payment method—Kelly Grady made for the rental of the Chevy Yukon.

21.     Describe in detail all actions/steps taken (and communications) the Hertz manager (identified in the Complaint as filing the August 2013 police report regarding Kelly Grady) took before reporting the Chevy Yukon stolen on or around July 22, 2013, including identifying all employees he communicated with and the contents of the communication, identifying all non-employees he communicated with and the contents of the communication, identifying all computer systems he consulted and the program names and reason for doing so.

22.     Describe in detail all actions/steps taken (and communications) the Hertz manager (identified in the Complaint as filing the August 2013 police report regarding Kelly Grady) took before making the police report in August 2013, including identifying all employees he communicated with and the contents of the communication, identifying all non-employees he

Case ID: 151103380
Control No.: 17092259

communicated with and the contents of the communication, identifying all computer systems he consulted and the program names and reason for doing so.

23.     Identify all computer programs and systems (electronic or otherwise) used by The Hertz Corporation in 2013-2014, the dates those programs and systems have been used, their purpose, and identify what information regarding Kelly Grady is in those programs and systems. Please also produce that information in electronic or paper form.

24.     Identify any systems (electronic or otherwise) and computer programs that Hertz has discontinued or upgraded from 2010 to the present and the reason for the discontinuance or upgrade

25.     Identify the name, address, and telephone numbers of the provider of your computer programs and systems, the systems and programs they provide, who coded the systems, and also provide the same for any information technology support you receive. If your information technology support is in-house, please provide the names, addresses, and telephone numbers of those individuals and identify their positions in 2013-2014 and now.

26.     Identify any errors, malfunctions, or other anomalies with the computer programs and systems run by The Hertz Corporation, including but not limited to errors, malfunctions, and/or other anomalies concerning the programs and systems that contain information relating to Kelly Grady.

27.     Describe in detail all actions/steps taken by Hertz following the making of the August 2013 police report accusing Kelly Grady of taking/possessing the Yukon without authorization.

Case ID: 151103380
Control No.: 17092259

28.    Describe in detail standard operating procedure for Hertz employees before a rental car is reported as being taken/possessed without authorization by Hertz.

29.    Describe in detail standard operating procedure for Hertz employees before a police report is filed by Hertz in connection with a rental car being taken/possessed without authorization by a customer.

30.    Describe in detail standard operating procedure for Hertz employees when a rental car is reported by Hertz as being taken/possessed without authorization by a customer.

31.    Describe in detail standard operating procedure for Hertz employees when a police report is filed by Hertz in connection with a rental car being taken/possessed without authorization by a customer.

32.    Describe in detail standard operating procedure for Hertz employees after a rental car is reported by Hertz as being taken/possessed without authorization by a customer.

33.    Describe in detail standard operating procedure for Hertz employees after a police report is filed by Hertz in connection with a rental car being taken/possessed without authorization by a customer.

34.    Describe in detail standard operating procedure for Hertz employees during the pendency of a criminal case that resulted from Hertz reporting a rental car taken/possessed without authorization by a customer.

35.    Describe in detail the standard operating procedure, including communications between a branch location and corporate employees, that should take place before a customer is reported to the police.

Case ID: 151103380
Control No.: 17092259

36.     Describe in detail what safeguards and redundancies Hertz employs to make sure that its customers are not wrongfully accused of taking a car and reported to the police.

37.     Describe in detail what communications took place between the Philadelphia International Airport Hertz location, especially the location/branch manager, and Hertz employees outside of that branch (i.e. corporate employees) regarding Kelly Grady.

38.     Describe in detail Hertz policy in 2013 regarding renting cars, length of rentals, renewal of rental contracts, allowing rental cars to leave a Hertz lot, billing, payments, and return of rental cars.

39.     Describe in detail—including the date, time, and participants—all communications (both written and oral) Hertz had with Collateral Consultants in 2013 regarding Kelly Grady and/or the Chevy Yukon she rented, including any initial communication and subsequent communications—as well as payments made to Collateral Consultants.

40.     Describe in detail—including the date, time, and participants—all communications (both written and oral) Hertz had with Auto Recovery Repossession in 2013 regarding Kelly Grady and/or the Chevy Yukon she rented, including any initial communication and subsequent communications—as well as payments made to Auto Recovery Repossession.

41.     Identify any other person or entity you believe to be responsible, liable, liable over, or partly liable, for the allegations in the Complaint.

42.     Identify and describe in detail any and all times the Hertz Philadelphia International Airport location has reported a car a being taken/possessed without authorization from 2010 to present.

Case ID: 151103380
Control No.: 17092259

43.    Identify and describe in detail any and all times the Hertz manager of the Philadelphia Airport location (who made the August 2013 police report concerning Kelly Grady) has reported a car a being taken/possessed without authorization.

44.    Identify and describe in detail any and all times Hertz, especially concerning the Philadelphia Airport location, has been accused of malicious prosecution, false imprisonment, malicious abuse of process, or other causes of action resulting from Hertz reporting a rental car taken/possessed without authorization.

45.    Identify and describe in detail any and all times after Hertz, especially the Philadelphia Airport location, reported a rental car taken/possessed without authorization by a customer that the report was disputed by the customer.

46.    Identify and describe in detail any and all times after Hertz, especially the Philadelphia Airport location, reported a rental car taken/possessed without authorization that Hertz subsequently determined the report was incorrect.

47.    Describe in detail Hertz's involvement in the criminal prosecution of Kelly Grady, including its contacts with the police and the District Attorney's Office, any and all information and documents provided to the police and the District Attorney's Office, and why Hertz did not appear for any of the nine preliminary hearings in 2013 and 2014 as part of Kelly Grady's prosecution in Philadelphia.

48.    Describe in detail the gross profits for the last five years, net worth, and overall financial situation of The Hertz Corporation, including summaries of the relevant financial documents such as profit and loss statements.

Case ID: 151103380
Control No.: 17092259

49.     Identify Hertz's parent companies and subsidiaries, including the ownership percentages, role, and purpose of those entities—also identify the place of incorporation and their net worth.

50.     Disclose and describe in detail all facts and witnesses you may use or intend to use to defend this case and/or at trial.

51.     Identify all exhibits you may use, or intend to use, during this case and/or at trial.

52.     State the name and address of each person whom you expect to call as an expert witness at trial and state the subject matter on which the expert is expected to testify.

   i.    State the facts and opinion on which the expert is expected to testify and summarize the grounds for each opinion

   ii.   State the qualifications of each expert, listing schools attended, years of attendance, degrees received, and experience in any particular field of specialization or expertise. Produce a CV.

   iii.  State the expert's age, residence, business address, and/or the name, number, and address of his management company, if any.

   iv.   State the name and address of his present employer, or if self-employed, the name and address of the business and his occupation.

   v.    State the name and address of every person or entity that employed the expert, or if self-employed, describe in detail his duties and responsibilities.

53.     For all expert witnesses identified, state the following:

   i.    Whether the facts and opinions to which he is expected to testify are contained in a written report, memorandum or other transcript and if they

Case ID: 151103380
Control No.: 17092259

are, give the name and address of the present custodian of same and state whether you will produce same without the necessity of a motion. Produce the report.

ii.      If the opinion of any expert listed above is based in whole or in part on any scientific rule or principle, set forth the said rule or principle.

iii.     If the opinion of any expert listed above is based in whole or in part upon any code, regulation or standard, governmental or otherwise, identify the said code, regulation, standard and specifically set forth the section relied upon.

iv.      If the opinion of any expert listed above is based in whole or in part upon any scientific or engineering textbook or other publication, identify said text or publication.

v.       If the expert has testified in Court or by way of oral deposition within the past ten years, describe the Court involved, date of testimony and identity of attorney calling expert as a witness.

vi.      Identify the compensation of your experts.

vii.     Produce all exhibits your experts may rely on during this case and/or at trial.

54.      Do you or your expert intend to use any book, magazine or other writing at the trial of this case? If so, describe the writing in detail as to author, publisher, copyright date, and give the name and address of any known present custodian of said writing.

\*\*\*\*\*

Case ID: 151103380
Control No.: 17092259

*Respectfully submitted,*

Francis Alexander, LLC

*/s/ Francis Malofiy*

Francis Malofiy, Esquire
Attorney ID No.: 208494
280 N. Providence Road | Suite 105
Media, PA 19063
T: (215) 500-1000
F: (215) 500-1005
*Law Firm / Lawyer for Plaintiff*
/d/   May 17, 2016

Case ID: 151103380
Control No.: 17092259

# Certificate of Service

I hereby state that a true and correct copy of the foregoing Plaintiff's Interrogatories Directed to Defendant The Hertz Corporation was served on opposing counsel via the electronic filing system:

> Jay L. Edelstein, Esquire
> Edelstein Law, LLP
> 230 South Broad Street | Suite 900
> Philadelphia, PA 19102
> T: (215) 893-9311
> F: (215) 893-9310
> E: JEdelstein@Edelsteinlaw.com
> *Attorneys for The Hertz Corporation*

*****

*Respectfully submitted,*

Francis Alexander, LLC

*/s/ Francis Malofiy*

Francis Malofiy, Esquire
Attorney ID No.: 208494
280 N. Providence Road | Suite 105
Media, PA 19063
T: (215) 500-1000
F: (215) 500-1005
*Law Firm / Lawyer for Plaintiff*
*/d/ May 17, 2016*

Case ID: 151103380
Control No.: 17092259

# EXHIBIT 4

Case ID: 151103380
Control No.: 17092259



### FRANCIS ALEXANDER LLC

September 2, 2016

Jay L. Edelstein, Esquire
EDELSTEIN LAW, LLP
230 South Broad Street | Suite 900
Philadelphia, PA 19102
T: (215) 893-9311
F: (215) 893-9310
E: JEdelstein@Edelsteinlaw.com

**Re:    PLAINTIFF'S OBJECTION TO INCOMPLETE DISCO. PRODUCTION**

Dear Mr. Edelstein,

I have reviewed your production of documents and discovery answers and have concluded that they are woefully incomplete.

**First**, it is imperative that you produce a full list of employees at Hertz in 2013, along with an organizational chart. In addition, their W-2s and 1099s should be included. Ms. Grady interacted with several individuals at the Philadelphia Airport location, who you deny she interacted with. We are entitled to know who was employed by Hertz, and in what positions, so we can discover the identities of these individuals. There is no valid basis for withholding this critical information.

**Second**, Ms. Grady had extensive contact with Hertz following April 17, 2013, which I suspect a cursory review of Hertz's records will show. This includes making debit card payments, renewing her rental contract, and physically visiting the Hertz location with the GMC Yukon in question. We know that this information is in your client's system. You have produced none of these documents, only providing your theft file which, as we know, does not tell the whole story. Please find enclosed a notice of deposition for the person most knowledgeable at Hertz regarding what searches for physical, hard copy, and electronic information were performed in response to our discovery requests. In addition, I will be filing a motion to compel unproduced discovery if you do not provide a complete production and accurate discovery answers on Wednesday, September 7, 2016.

Please call me if you have any questions at (215) 500-1000.

With every good wish, I am,

Francis Malofiy, Esquire

Case ID: 151103380
Control No.: 17092259

| | |
|---|---|
| **From:** | Jay Edelstein |
| **To:** | AJ Fluehr |
| **Cc:** | Stuart Wolf |
| **Subject:** | Re: Grady v. Hertz - Correspondence and Notice of Deposition |
| **Date:** | Tuesday, September 06, 2016 8:37:26 PM |

You've turned over no Medicals and virtually no documents. I've spoken to all involved and there's nothing here. If there's vaginal damage as alleged in the novel called your complaint we are entitled to the exam so I'll file a Motion. There is no confusion on my end.

Sent from my iPhone

On Sep 6, 2016, at 8:29 PM, AJ Fluehr <aj@francisalexander.com> wrote:

> Mr. Edelstein,
>
> I think there may be some confusion. You appear to be referring to your initial production, which was sent to us by Mr. Wolf on Thursday, September 1, 2016.
>
> We reviewed that production and, as Mr. Malofiy's letter (sent on Friday, September 2, 2016) pointed out, it appears to be incomplete. We ask that you supplement your prodution fully by Wednesday, September 7, 2016, or we will have to file a motion.
>
> In addition, as the second letter indicated, please give Mr. Malofiy a call so that we can discuss Ms. Grady's medical exam. As of right now we are objecting to it, because there is no protocol established.
>
> Thank you,
>
> AJ
>
> ---
>
> **From:** Jay Edelstein [mailto:JEdelstein@edelsteinlaw.com]
> **Sent:** Friday, September 02, 2016 5:48 PM
> **To:** AJ Fluehr <aj@francisalexander.com>
> **Cc:** Francis Alexander Malofiy <francis@francisalexander.com>; Stuart Wolf <SWolf@edelsteinlaw.com>; Staff <staff@francisalexander.com>
> **Subject:** Re: Grady v. Hertz - Correspondence and Notice of Deposition
>
> Thank you. Done and being verified.
>
> Sent from my iPhone
>
> On Sep 2, 2016, at 5:45 PM, AJ Fluehr <aj@francisalexander.com> wrote:
>
>> Dear Counsel:

Case ID: 151103380
Control No.: 17092259

See attached.

AJ Fluehr, Esquire
FRANCIS ALEXANDER, LLC
280 N. Providence Road | Suite 1
Media, PA 19063
T:  (215) 341-1063
F:  (215) 500-1005
aj@francisalexander.com

---

**From:** Francis Alexander Malofiy
**Sent:** Thursday, September 01, 2016 1:18 PM
**To:** Stuart Wolf <SWolf@edelsteinlaw.com>
**Cc:** Francis Alexander Malofiy <francis@francisalexander.com>; AJ Fluehr <aj@francisalexander.com>; Staff <staff@francisalexander.com>
**Subject:** RE: Grady v. Hertz - Defendants' Discovery Answers

Dear Stuart,

You are in violation of the Court Order which required that you produce the discovery on Monday, August 29, 2016.

I communicated with you by phone and email and shared with you that it was imperative that we received the discovery immediately; however, it is now Thursday afternoon and we still have nothing.

To avoid a sanctions motion, please provide me the outstanding discovery immediately – electronically via email.


\*\*\*\*\*

# <u>NOTE</u>: ADDRESS CHANGED TO "SUITE 1"

\*\*\*\*\*
With every good wish, I am,

Francis Malofiy, Esquire
Francis Alexander, LLC
280 N. Providence Road | Suite 1
Media, PA 19063
T: (215) 500-1000
F: (215) 500-1005
E: francis@francisalexander.com

Case ID: 151103380
Control No.: 17092259

# EXHIBIT 5

Case ID: 151103380
Control No.: 17092259

**Matthew Orr**

| | |
|---|---|
| **From:** | Matthew Orr |
| **Sent:** | Wednesday, September 14, 2016 8:38 AM |
| **To:** | 'Stuart Wolf' |
| **Subject:** | RE: Kelly Grady, EL 810.911 |

I have not been in touch with him yet, but I will do my best to get to him over the next few days & will keep you posted.

Matt

**From:** Stuart Wolf [mailto:SWolf@edelsteinlaw.com]
**Sent:** Wednesday, September 14, 2016 8:36 AM
**To:** Matthew Orr <mbo@pinnacle-pi.com>
**Subject:** RE: Kelly Grady, EL 810.911

Matt,

Have you been able to make contact with this guy, Jonathan Lawrence? Plaintiff has just noticed his deposition and I need his cooperation to produce him, otherwise he will be subpoenaed. This guy is the priority, the other 2 can wait a week or two.

Thanks,
Stuart

**From:** Stuart Wolf
**Sent:** Friday, September 09, 2016 1:03 PM
**To:** 'Matthew Orr'
**Subject:** Kelly Grady, EL 810.911

They claim Grady was in constant communication with an employee named John, who confirmed there were no issues with the rental. Would this guy have spoken to her about her existing rental?  She claims to have had a specific number for this guy.

"An employee named John was her contact and rented her the car." (We know from the RR this is not correct, it was Shirrell Warrick). "She was in regular contact with John, who renewed her rental when needed. John also told her that she would need to return to the Hertz location to renew the contract in person after three months. Ms. Grady took the Yukon back to the Hertz location at John's direction on or around Thursday, July 18, 2013. Ms. Grady recalls calling the Philadelphia Airport Hertz location several times prior to returning to the location. She wanted to return the car, or get a new contract. When she went there was a recent hire (19-20 years old, male, thin, short, white), who was not familiar with the process. John was not there at that time. She contacted John from the Hertz location and John told her to speak with the shift manager, a short, heavy-set black man with pockmarks and pimples on his face, and short curly hair. This was in the evening. When she spoke with the shift manager, he stated that he understood the situation, put in Hertz's computer system all of her information, put in the system that she could return the car after her vacation to Williamsport, and told her she was fine for the next few days until she returned the car, and that there were no issues with her contract. At the gate, there was a white female 40-year old, with curly blond hair. Ms. Grady complimented her hair. She check Ms. Grady's contract and shift manager authorized her to let Ms. Grady out of the gate with the Yukon. Ms. Grady had specifically went to the Hertz location to make sure there was no billing, rental, contract, or renewal problems before she went on vacation."

Case ID: 151103380
Control No.: 17092259

Very truly yours,
Stuart J. Wolf, Esquire
EDELSTEIN LAW, LLP
230 S. Broad Street
Suite 900
Philadelphia, PA  19102
SWolf@Edelsteinlaw.com
215-893-9311
Fax:  215-893-9310
NJ:  856-809-3150
www.Edelsteinlaw.com

Case ID: 151103380
Control No.: 17092259

# EXHIBIT 6

Case ID: 151103380
Control No.: 17092259

From: Matthew Orr <mbo@pinnacle-pi.com>
Date: 9/21/16 5:07 PM (GMT-05:00)
To: Stuart Wolf <SWolf@edelsteinlaw.com>
Subject: RE: Kelly Grady (810.911)

Hi Stuart,

I'm on the road today. Can I call you tomorrow?

Still no response from Lawrence, by the way.

Matthew B. Orr
Managing Partner
Pinnacle Investigations, Inc.
*PO Box 3095, Easton, PA 18043
PO Box 105, Red Bank, NJ 07701
57 West 57th Street, New York, NY 10019
800-511-8729 (Office)
610-417-2661 (Mobile)
732-601-9210 (Fax)

This electronic message may contain confidential and legally privileged information. The message and all attachments are intended solely for the use of the intended recipient. If you are not the intended recipient, you are hereby notified that you are strictly prohibited from the disclosure, use, copying or distribution of the message or any portions thereof including attachments. If you received this message in error, notify the sender immediately so that steps can be taken to return and/or delete all portions of the message.

-------- Original message --------
From: Stuart Wolf <SWolf@edelsteinlaw.com>
Date: 9/21/16 4:42 PM (GMT-05:00)
To: Matthew Orr <mbo@pinnacle-pi.com>
Subject: RE: Kelly Grady (810.911)

Matt,

Any update on Lawrence or the other 2, Currie and Scully? If you have a minute, want to go over something with you on Grady.

Thanks,
Stuart

From: Stuart Wolf
Sent: Monday, September 19, 2016 4:23 PM
To: 'Matthew Orr'
Subject: RE: Kelly Grady (810.911)

Matt,

No problem sending the complaint. It is a public filing. Please make her aware that her son is the only potential person they could be referencing and we really need his cooperation to rebut the allegations. Thanks

From: Matthew Orr [mailto:mbo@pinnacle-pi.com]
Sent: Monday, September 19, 2016 10:06 AM

Case ID: 151103380
Control No.: 17092259

**To:** Stuart Wolf
**Subject:** Kelly Grady (810.911)

Stuart,

Quick update on Jonathan Lawrence. I went out Saturday morning & spoke with his mother, Janet Lawrence. She stated that Jonathan has taken a job which has him traveling & living in the Midwest (no specific state specified).

I explained the situation to her, lent her a sympathetic ear about how Jonathan had been sorely mistreated by Hertz at the time of the termination of his firing but tried to keep her on point in that it would be in Jonathan's best interest to work with you in defense of the claim despite his hard feelings toward Hertz.

I believe I peaked her interest & there was some shifting in the direction of understanding on her part how working with your office would be in Jonathan's best interest, but she still would not release his current phone number, address, employer or any other info from which I could track him down.

As an aside, our database research indicates he still uses him mom's address in Bala Cynwyd to receive all mail, etc. And, public records research did not turn up anything current/recent for him we could use. As such, it seems the trail ends with Janet (his mom).

She was doubtful he'll call us due to "Hertz treatment of him", but I left it with, "Well, if he would at least give us a call, take a look at her picture and understand the circumstances of Ms. Grady's claims then he could at least let us know if he ever had any interaction with her at all to the best of his knowledge…" She said that if I emailed her the Complaint filed by Ms. Grady perhaps she could at least convince him to take a look at it and pass along if he ever had any interaction with her at all.

However, I wanted to check with you to make sure it was okay for me to send/email her the Complaint before doing so.

What do you think?

Matt
*Matthew B. Orr*
Managing Partner
Pinnacle Investigations, Inc.
*PO Box 3095, Easton, PA 18043
PO Box 105, Red Bank, NJ 07701
57 West 57th Street, 4th Floor, New York, NY 10019
800-511-8725 (Phone)
610-417-2661 (Mobile)
732-601-9210 (Fax)

This electronic message may contain confidential and legally privileged information. The message and all attachments are intended solely for the individual(s) or entity named herein. If you are not the intended recipient, you are hereby notified that you are strictly prohibited from the disclosure, copying or distribution of this message or any portion thereof, including any attachments. If you received this message in error, you should notify the sender immediately so that steps can be taken to return and/or delete all portions of the message.

Case ID: 151103380
Control No.: 17092259

# EXHIBIT 7

Case ID: 151103380
Control No.: 17092259

## Matthew Orr

| | |
|---|---|
| **From:** | Matthew Orr |
| **Sent:** | Thursday, September 22, 2016 6:02 PM |
| **To:** | 'Stuart Wolf' |
| **Subject:** | FW: Complaint for Your & Jonathan's Review |

FYI...

**From:** Janet Lawrence [mailto:jal818@comcast.net]
**Sent:** Thursday, September 22, 2016 6:02 PM
**To:** Matthew Orr <mbo@pinnacle-pi.com>
**Subject:** Re: Complaint for Your & Jonathan's Review

Understood and thanks.

Janet G Lawrence
126 Edgehill Road
Bala Cynwyd PA 19004
610 664 6042
Sent from my iPad

On Sep 22, 2016, at 2:56 PM, Matthew Orr <mbo@pinnacle-pi.com> wrote:

> Thank you for your reply, Janet. It is greatly appreciated. I certainly understand your perspective.
>
> I have taken the liberty of cc'ing Attorney Stuart Wolf at Edelstein Law so he can see your response.
>
> I would simply note that should Ms. Grady's attorney be successful in locating and compelling your son's testimony that Mr. Wolf stands ready (on Hertz's dime, by the way) to do what he can to smooth the way for Jonathan should he choose not to go to the expense of getting his own attorney. Of course, Mr. Wolf can only do this if Jonathan were to reach out to him.
>
> Have a great week,
>
> Matt
> *Matthew B. Orr*
> Managing Partner
> Pinnacle Investigations, Inc.
> *PO Box 3095, Easton, PA 18043
> PO Box 105, Red Bank, NJ 07701
> 57 West 57th Street, 4th Floor, New York, NY 10019
> 800-511-8725 (Phone)
> 610-417-2661 (Mobile)
> 732-601-9210 (Fax)

This electronic message may contain confidential and legally privileged information. The message and all attachments are intended solely for the individual(s) or entity named herein. If you are not the intended recipient, you are hereby notified that you are strictly prohibited from the disclosure, copying or distribution of this message or any portion thereof, including any attachments. If you received this message in error, you should notify the sender immediately so that steps can be taken to return and/or delete all portions of the message.

Case ID: 151103380
Control No.: 17092259

**From:** Janet Lawrence [mailto:jal818@comcast.net]
**Sent:** Thursday, September 22, 2016 1:50 PM
**To:** Matthew Orr <mbo@pinnacle-pi.com>
**Subject:** Re: Complaint for Your & Jonathan's Review

Thank you for sending me Ms. Grady's complaint. I have read it with great interest. I assume there are other court documents to which I am not privy since the one you sent me seems to have little or nothing to do with Jonathan.

As I said to you, Jonathan was merely a clerk, never a manager, and you have noted that he did not even write the rental agreement in question. Hertz' Philadelphia Airport location was an extremely busy and, at least for Jonathan, stressful place to work. He saw and spoke to hundreds of customers daily. He could not possibly be expected to remember one customer from over three years ago. I could not even say for certain that he was working there during the time frame specified in the complaint. I do know he has been working elsewhere for approximately three years.

Ms. Grady's attorney, with his subpoena and accompanied by a woman I believe to be Ms. Grady based on the photo you showed me, came to my home the day after you were here. They were told the same thing I told you, that Jonathan does not live here. I would add, for you, that he has not lived in his childhood home for several years. They then proceeded, in stalker-like fashion, to knock on my neighbors' doors and stop people walking dogs presumably asking questions about Jonathan and our family. Embarrassed, I subsequently had to speak to some of those neighbors to assure them that the cute little boy they used to know is not now a criminal.

I assume that that attorney(?) was not successful in finding Jonathan on Sunday because he called my home on Monday, claiming he meant Jonathan no harm but only wanted him to "confirm" that "he and Kelly are good friends and talk all the time". That surely will not happen as it is not true.

It seems obvious to me that this is a fairly simple matter of Ms. Grady wanting money from Hertz and Hertz not wanting to give it to her. Both sides want to use Jonathan as a pawn in their legal game. The idea of Hertz wanting to help and protect Jonathan is ridiculous in light of the way they treated him when he was an employee; he doesn't trust them at all. Jonathan has told me he doesn't remember customers or circumstances of their rentals as "it was a long time ago". He does not want to be involved with either side, and if he is located and ordered by the court to testify, he will do so with his own lawyer. Meanwhile he will continue to live his honest and uneventful life, hopefully unburdened by others' drama.

Janet G Lawrence
126 Edgehill Road
Bala Cynwyd PA 19004
610 664 6042
Sent from my iPad

On Sep 20, 2016, at 11:35 AM, Matthew Orr <mbo@pinnacle-pi.com> wrote:

> Janet,
>
> Thank you so much for speaking with me this past Saturday morning.
>
> As we discussed, I am an investigator working for attorneys at Edelstein Law, LLP who are handling a case involving Hertz which includes statements by the Plaintiff in the case

Case ID: 151103380
Control No.: 17092259

(the woman whose photo I showed you) who is claiming that Jonathan rented her a vehicle and authorized her to keep it beyond the terms of her rental agreement.

This woman, Kelly Grady, claims she was in contact with Jonathan on numerous occasions about the Yukon she had rented and had been following his directions as to what she needed & did not need to do to keep the vehicle.

I have included the Complaint initially filed by Ms. Grady in the case so that you and Jonathan can see what she is claimant. Note that several of the specific claims have already been ruled out and are no longer relevant, but the primary complaints remain.

Our client has had Hertz go through their records to see if Ms. Grady could have potentially meant someone other than Jonathan when she referred to dealing with "John at Hertz", but records show that the only other John or Jonathan working at the airport location at the time was a lot attendant. He was never in the office and never dealt with customers in connection with their rental agreements in any way.

Note that the Rental Agreement itself disproves Ms. Grady's statement that John "rented her the car (Yukon)" since the name of Hertz Employee Shirrell Warrick clearly shows on the initial agreement. However, Ms. Grady continues to assert that she was dealing with Jonathan.

As a result, it is imperative that Attorney Stuart Wolf of the Edelstein Law firm has Jonathan's assistance so that he can understand if he has any recollection of anyone looking like or named Kelly Grady who rented a Yukon or if there is any truth to any of her allegations about Jonathan's involvement in extending her rental.

Note that Kelly Grady's attorney has already given notice in the case that he will subpoena Jonathan to come testify about the situation if Mr. Wolf is unable to voluntarily have him provide testimony. As such, I would urge Jonathan to take advantage of having an attorney at his side to make sure any testimony or affidavits that may need to be given are done according to how they would be most beneficial to Jonathan (rather than having the court order his testimony without taking Jonathan's preferences and life events into account at all).

Please ask Jonathan to contact either myself at the numbers listed in my signature line below or Attorney Wolf directly at 215-893-9311 so that Mr. Wolf can be prepared to help him to the utmost degree possible.

Thank you!

Matt

*Matthew B. Orr*
Managing Partner
Pinnacle Investigations, Inc.
*PO Box 3095, Easton, PA 18043
PO Box 105, Red Bank, NJ 07701
57 West 57th Street, 4th Floor, New York, NY 10019
**800-511-8725** (Office Phone)
610-417-2661 (Mobile)
732-601-9210 (Fax)

This electronic message may contain confidential and legally privileged information. The message and all attachments are intended solely for the individual(s) or entity named herein. If you are not the intended recipient, you are hereby notified that you are strictly prohibited from the

Case ID: 151103380
Control No.: 17092259

disclosure, copying or distribution of this message or any portion thereof, including any attachments. If you received this message in error, you should notify the sender immediately so that steps can be taken to return and/or delete all portions of the message.

<COMPLAINT.pdf>

Case ID: 151103380
Control No.: 17092259

# EXHIBIT 8

Case ID: 151103380
Control No.: 17092259



### FRANCIS ALEXANDER LLC

SEPTEMBER 21, 2016

Jay L. Edelstein, Esquire
Stuart Wolf, Esquire
EDELSTEIN LAW, LLP
230 South Broad Street | Suite 900
Philadelphia, PA 19102
T: (215) 893-9311
F: (215) 893-9310
E: JEdelstein@Edelsteinlaw.com

**Re:    HERTZ'S KNOWINGLY FALSE INTERROGATORY ANSWERS**

Dear Mr. Edelstein and Mr. Wolf,

In interrogatories I asked Hertz to provide an employee list for the Hertz location and also to identify the man Kelly Grady knew as "John," the Hertz employee who worked on her rental. Hertz's verified answer stated that only one person at the Philadelphia Airport Hertz location helped rent a car to Ms. Grady, a Shirrell Warrick, and that there was no "John" at the Hertz location in 2013 who interacted with customers.

It has been discovered that several of Hertz's verified interrogatory answers are demonstrably false, especially in regards to the employee of Hertz called and known as John. It is more than a little disturbing that Hertz and your office have failed to disclose a critical fact witness, purposefully concealed his identity, and failed to provide his last known address and whereabouts--even though he was at all relevant times employed by defendant The Hertz Corporation.

I prefer to resolve this serious issue without involving the court. You need to email me with John's full name, address, and phone number, and whatever other contact information of his you have by September 21, 2016, at 5:00 pm. Additionally, by Friday, September 23, 2016, you need to provide verified supplemental interrogatory answers for numbers 1-3, and 6, 7. This includes Hertz's employee list for the Philadelphia Airport location from 1/1/2013 to 12/31/2013, an organizational chart for that period, along with the employment file, records, pay stubs, checks, W2s and 1099s for the employee called and known as John. Please also identify the company or accountant who handled and/or administered payroll for the Hertz at the Philadelphia Airport Location for the year 2013. If I do not receive these, I will have to raise this serious issue with the Court.

I expect your prompt response.

With every good wish, I am,

Francis Malofiy, Esquire

Case ID: 151103380
Control No.: 17092259

| | |
|---|---|
| **From:** | Jay Edelstein |
| **To:** | Francis Alexander Malofiy; Stuart Wolf |
| **Cc:** | AJ Fluehr; Staff |
| **Subject:** | RE: 2016.09.21 - HERTZ - HERTZ"S KNOWINGLY FALSE INTERROGATORY ANSWERS RE JOHN (SERVED) |
| **Date:** | Wednesday, September 21, 2016 7:06:28 AM |

A guy with your track record and reputation should be very careful about making these allegations. .Suspension form Pennsylvania practice generally follows suspension from USDC. .Be very very careful because your way doesn't work....File a motion, make a formal charge and allow me to bury you...Absurd..

**From:** Francis Alexander Malofiy [mailto:francis@francisalexander.com]
**Sent:** Wednesday, September 21, 2016 12:58 AM
**To:** Jay Edelstein; Stuart Wolf
**Cc:** Francis Alexander Malofiy; AJ Fluehr; Staff
**Subject:** 2016.09.21 - HERTZ - HERTZ'S KNOWINGLY FALSE INTERROGATORY ANSWERS RE JOHN (SERVED)

Dear Mr. Edelstein and Mr. Wolf,

Please see attached correspondence in regards to Hertz's failure to disclose a critical fact witness known as and called John, purposefully concealing his identity, and failing to provide his last known address and whereabouts--even though he was at all relevant times employed by defendant The Hertz Corporation

*****

With every good wish, I am,

Francis Malofiy, Esquire
Francis Alexander, LLC
280 N. Providence Road | Suite 1
Media, PA 19063
T: (215) 500-1000
F: (215) 500-1005
E: francis@francisalexander.com

**From:** Jay Edelstein [mailto:JEdelstein@edelsteinlaw.com]
**Sent:** Tuesday, September 20, 2016 7:18 AM
**To:** Francis Alexander Malofiy <francis@francisalexander.com>
**Cc:** Stuart Wolf <SWolf@edelsteinlaw.com>; AJ Fluehr <aj@francisalexander.com>; Staff <staff@francisalexander.com>
**Subject:** Re: Grady v. Hertz - Deposition Subpoenas

No objection to the Motion.

Case ID: 151103380
Control No.: 17092259

Sent from my iPhone

On Sep 19, 2016, at 11:58 PM, Francis Alexander Malofiy <francis@francisalexander.com> wrote:

> Dear Counsel:
>
> Attached please find Plaintiff's Motion for Extraordinary Relief which was filed with the Court today.
>
> Please share with me whether you or not you are opposed to the motion. I would like to inform the court if the motion is unopposed.
>
> I did have discussions with Mr. Wolf where he indicated that a motion for extraordinary relief was something that defendants were interested in pursuing.
>
> Please also indicate when you will be producing the witnesses which you cancelled last Friday as well as the witnesses that you still have to identify and produce, including Mr. Ken Graeber as well as others.
>
> Good luck to both of you with your case.
>
>
> *****
>
> NOTE: ADDRESS CHANGED TO "SUITE 1"
>
> *****
>
> With every good wish, I am,
>
> Francis Malofiy, Esquire
> Francis Alexander, LLC
> 280 N. Providence Road | Suite 1
> Media, PA 19063
> T: (215) 500-1000
> F: (215) 500-1005
> E: francis@francisalexander.com
>
>
>
> <2016.09.19 - HERTZ - Plt Motion for Extraordinary Relief (SERVED).pdf>
> <2016.09.19 - HERTZ - Proposed Order Motion for Extraordinary Relief (SERVED).pdf>

Case ID: 151103380
Control No.: 17092259

# EXHIBIT 9

Case ID: 151103380
Control No.: 17092259

## Matthew Orr

| | |
|---|---|
| **From:** | Stuart Wolf <SWolf@edelsteinlaw.com> |
| **Sent:** | Thursday, September 22, 2016 10:28 AM |
| **To:** | Matthew Orr |
| **Subject:** | RE: Kelly Grady |

Matt, give me a call when you get a chance. Got disconnected.  I'm in depositions starting at 11 though. 2153786722

Sent from my Verizon, Samsung Galaxy smartphone

-------- Original message --------
From: Matthew Orr <mbo@pinnacle-pi.com>
Date: 9/22/16 10:18 AM (GMT-05:00)
To: Stuart Wolf <SWolf@edelsteinlaw.com>
Subject: Kelly Grady

Stuart,

I tried calling you at the office a few minutes ago but they said you are out at a hearing already.

Here's the summary. I have made the best arguments I can to Jonathan Lawrence's mother, emailed her the complaint & asked her to please have him get back to me or your ASAP so you can offer him assistance. This was necessary because she claims he does not live with her at this address, but rather has a job for which he is living and traveling around the Midwest. She would not provide me with his phone number, address or actual state of residence. I let her know the seriousness of the matter & that it is likely imminent that Jonathan will be compelled to testify by Ms. Kelly's attorneys & that it was therefore in his best interest to work with you so any such testimony could be offered with potential accommodations being made for his schedule, etc.

I've also called Currie Hair Salons & keep just getting routed to the voicemail of the same Beverly (Neworth [phonetic spelling]) in their HR/Personnel Office who you already spoke with. I have not had a chance to actually talk with her yet, but it may be best to subpoena Ms. Grady's employment records & compel the testimony of her last manager (as revealed in her personnel file).

I don't have any info on Vince Scully to know which of the several who live in the greater Philly area are the person we want. I don't even know how he's involved yet. As such, I have not tried reaching out to him.

Matt

*Matthew B. Orr*
Managing Partner
Pinnacle Investigations, Inc.
*PO Box 3095, Easton, PA 18043
PO Box 105, Red Bank, NJ 07701
57 West 57th Street, 4th Floor, New York, NY 10019
800-511-8725 (Phone)
610-417-2661 (Mobile)
732-601-9210 (Fax)

Case ID: 151103380
Control No.: 17092259

This electronic message may contain confidential and legally privileged information. The message and all attachments are intended solely for the individual(s) or entity named herein. If you are not the intended recipient, you are hereby notified that you are strictly prohibited from the disclosure, copying or distribution of this message or any portion thereof, including any attachments. If you received this message in error, you should notify the sender immediately so that steps can be taken to return and/or delete all portions of the message.

Case ID: 151103380
Control No.: 17092259

# EXHIBIT 10

Case ID: 151103380
Control No.: 17092259

Page 1

```
 1              IN THE COURT OF COMMON PLEAS
             PHILADELPHIA COUNTY, PENNSYLVANIA
 2
 3                    - - -
   KELLY A. GRADY,            :NOVEMBER TERM, 2015
 4                            :
              Plaintiff,   :
 5                            :
        vs.                :
 6                            :
   THE HERTZ CORPORATION;   :
 7   HERTZ RENT-A-CAR        :
   PHILADELPHIA INTERNATIONAL  :
 8   AIRPORT; JOHN DOE(S),    :
                             :
 9             Defendants.   :NO. 151103380
                      - - -
10
11                    - - -
             TUESDAY, SEPTEMBER 27, 2016
12                    - - -
13
14              Oral deposition of KELLY A. GRADY,
15   taken at the offices of Edelstein Law, 230 South
16   Broad Street, Suite 900, Philadelphia, Pennsylvania,
17   beginning at 12:00 p.m., before Kimberly A. Hussey,
18   Certified Court Reporter, Certificate of Merit and
19   Notary Public.
20                    - - -
21
22
23
24
25     Job No. CS2451650
```

Case ID: 151103380
Control No.: 17092259

Page 2

1 A P P E A R A N C E S :
2
3         FRANCIS ALEXANDER, LLC
          BY:  FRANCIS ALEXANDER MALOFIY, ESQUIRE
4         280 North Providence Road, #105
          Media, Pennsylvania  19063
5         (215) 500-1000
          francis@francisalexander.com
6         Representing the Plaintiff
7
8         EDELSTEIN LAW
          BY:  STUART J. WOLF, ESQUIRE
9         230 South Broad Street
          Suite 900
10        Philadelphia, Pennsylvania  19102
          (215) 893-9311
11        swolf@edelstein.com
          Representing the Defendants
12
13
14
15
16
17
18
19
20
21
22
23
24
25

Page 3

1              I N D E X
2              - - -
3
   TESTIMONY OF:  KELLY A. GRADY
4
   By Mr. Wolf.........5, 181
5
   By Mr. Malofiy.........168
6
7
8          E X H I B I T S
9              - - -
10
   EXHIBIT NO.  DESCRIPTION          PAGE MARKED
11
   Exhibit-17  Verizon Wireless Phone Bill    152
12
   Exhibit-18  TD Bank Records          152
13
   Exhibit-19  Photographs          184
14
   Exhibit-20  Certification of Bail and
15        Discharge          184
16
        * Exhibit-19 retained by Mr. Wolf *
17
18
19 PREVIOUSLY MARKED EXHIBITS REFERENCED
20 --None--
21
22
23
24
25

Page 4

1              DEPOSITION SUPPORT INDEX
2
3
   DIRECTION TO WITNESS NOT TO ANSWER
4
   Page   Line
5
     36    14
6
     45    10
7
8 REQUEST FOR PRODUCTION OF DOCUMENTS
9 Page   Line        Description
10 40    17        Cell phone number in Miss Grady's
                     phone for John Lawrence
11
12
13 STIPULATIONS
14 Page   Line
15 5    2-7
16
17
18 QUESTIONS MARKED
19 Page   Line
20 --None--
21
22
23
24
25

Page 5

1              - - -
2         (It is hereby stipulated and
3      agreed by and between counsel that
4      sealing, certification and filing
5      are waived; that all objections,
6      except as to the form of the question,
7      are reserved until the time of trial.)
8              - - -
9         KELLY A. GRADY, after
10      having been first duly sworn, was
11      examined and testified as follows:
12              - - -
13         THE COURT REPORTER:  Counsel,
14 stipulations?
15         MR. MALOFIY:  That's fine.
16         THE COURT REPORTER:  Usual?
17         MR. MALOFIY:  Yes.
18         I wanted to do one -- before you get
19 started, I have some documents here for you.
20         (Discussion off the record.)
21 BY MR. WOLF:
22 Q      Good afternoon.  My name's Stuart Wolf.  I
23 represent the Hertz Corporation in a lawsuit that
24 you've filed as a result of an incident that
25 occurred back in 2013, 2014.

2 (Pages 2 - 5)

Case ID: 151103380

Control No.: 19092259

KELLY A. GRADY

1  A     I had no interactions with any females with
2  Hertz.
3  BY MR. WOLF:
4  Q     And the number -- you indicated you had a
5  phone number for John. Did he give you that phone
6  number that day?
7  A     Yes.
8  Q     And was that a Hertz business number or a
9  personal number?
10 A     He gave us the office number as well as his
11 personal cell phone number.
12        MR. MALOFIY: I just want to put on
13 the record we've repeatedly asked for the
14 identification of this John individual that worked
15 at Hertz and we've filed motions on it. And to
16 date, defense counsel has not revealed John's
17 identity and name or that there was such an employee
18 at Hertz who assisted in helping Miss Grady. That's
19 of deep concern to us because it's one of the most
20 critical witnesses in this case.
21        Additionally, we believe the fact that
22 he was an employee of Hertz, and the fact that he is
23 an employee or an independent contractor or an agent
24 at all relevant times, the fact that it's not being
25 revealed -- and we believe it is being concealed --

1  is a concern to plaintiff and there's a pending
2  motion in that regard. And we have addressed it
3  with both Mr. Wolf and Mr. Edelstein without
4  appropriate supplemental answer or identification.
5  BY MR. WOLF:
6  Q     Did you ever learn the last name of John?
7  A     Just recently.
8  Q     And what is his last name?
9  A     I believe it was Lauren, Lawrence.
10 Q     Lawrence?
11 A     Lauren or Lawrence.
12 Q     And how did you come to obtain his name?
13        MR. MALOFIY: You don't have to reveal
14 anything in regards --
15 BY MR. WOLF:
16 Q     I don't want to know anything you spoke with
17 your attorney about.
18 A     I just heard it, actually, through
19 conversation.
20 Q     And was that conversation with your
21 attorney?
22        MR. MALOFIY: You don't have to reveal
23 --
24        MR. WOLF: I'm not asking the
25 contents, but if it --

1        MR. MALOFIY: Yes, you don't have to
2  reveal that at all. Next question.
3  BY MR. WOLF:
4  Q     Was the information obtained -- I'm not
5  asking what you obtained, but was the information
6  obtained through your attorney?
7        MR. MALOFIY: You can't do that.
8        MR. MALOFIY: Yes, I can, because if the
9  answer's no, then I can ask her.
10        MR. MALOFIY: Attorney-client
11 privilege.
12        MR. WOLF: I'm not asking the
13 contents.
14        MR. MALOFIY: I'm going to instruct
15 her not to answer. Next question.
16 BY MR. WOLF:
17 Q     Was the information obtained through
18 somebody other than your attorney?
19        MR. MALOFIY: I'm going to say
20 objection, next question.
21        MR. WOLF: I'm going to keep asking
22 it. It's not a proper -- I'm asking if she obtained
23 it from somebody else, not you.
24        MR. MALOFIY: Well, I'm going to put
25 an attorney-client privilege down and you can go to

1  the next question.
2        MR. WOLF: She hasn't even indicated
3  that it is privileged because --
4        MR. MALOFIY: I just put an
5  attorney-client privilege down. Next question.
6  BY MR. WOLF:
7  Q     What information about Mr. Lawrence did you
8  learn?
9        MR. MALOFIY: Again, if it relates to
10 any communications you had with me, you don't have
11 to answer.
12 BY MR. WOLF:
13 Q     Which I'm not -- that's not my question.
14 And if it is, I don't want to know any conversation
15 you had with your attorney.
16        MR. MALOFIY: So if that is, it's
17 attorney-client privilege.
18        MR. MALOFIY: Yes, but she can answer
19 that. It's information --
20        MR. MALOFIY: I can put that down and
21 I can invoke the attorney-client privilege anytime I
22 want if it's relevant.
23        MR. WOLF: Well, it's not relevant to
24 the question because it's not responsive to the
25 question. And, look, if we have to file a motion

10 (Pages 34 - 37)

Case ID: 151103380
Control No.: 19092259

KELLY A. GRADY

Page 182

BY MR. WOLF:

1 BY MR. WOLF:

2 Q     And you believe that for two months you were

3 able to -- you were authorized to use the vehicle

4 without making any payment?

5          MR. MALOFIY:  Objection, asked and

6 answered.

7 A     But there was a payment made and I was

8 renewing it.  I don't know when Hertz was charging

9 it until that point.  And I was told that that was

10 for the two months.

11 BY MR. WOLF:

12 Q     But you knew that the card had not been

13 charged since April 17th, correct?

14          MR. MALOFIY:  Objection, it misstates

15 her prior testimony.  She said she doesn't know when

16 Hertz charges or charged the card.

17 A     They had authorization for the whole three

18 months to charge it whenever need be.  And every

19 time I called to renew it, they had the card on

20 file.

21 BY MR. WOLF:

22 Q     Were there any overdraft or insufficient

23 notices received from TD Bank for this car?

24 A     No.

25          MR. MALOFIY:  Objection, asked and

Page 183

1 answered.  She said no.

2 BY MR. WOLF:

3 Q     Has any doctor told you that you can't work?

4 A     No.  I'm not aware ...

5          MR. MALOFIY:  Objection, it calls for

6 a medical opinion and also she doesn't have

7 insurance.  But to the extent she was able to see

8 doctors, which she wasn't, who knows what they would

9 have said.

10          MR. WOLF:  You allowed her to testify

11 what he said.

12 BY MR. WOLF:

13 Q     All right.  In May --

14          MR. MALOFIY:  That was a delayed

15 objection on that question.  It calls for a medical

16 conclusion of which she's not a doctor.

17 BY MR. WOLF:

18 Q     In May of 2013, you were not evicted from

19 the apartment in Secane?

20 A     No.

21          MR. WOLF:  Thank you.

22          MR. MALOFIY:  I just want to do one

23 thing.  I want to reserve our right to read and

24 sign.  That's all.

25          - - -

Page 184

1          - - -

2          (Exhibit-19 and Exhibit-20 marked for

3 identification.)

4          - - -

5          (Witness excused.)

6          - - -

7          (Deposition concluded at 3:50 p.m.)

8          - - -

Page 185

1

2          C E R T I F I C A T E

3

4     I do hereby certify that I am a Notary

5 Public in good standing, that the aforesaid testimony

  was taken before me, pursuant to notice, at the time

6 and place indicated; that said deponent was by me

  duly sworn to tell the truth, the whole truth, and

7 nothing but the truth; that the testimony of said

  deponent was correctly recorded in machine shorthand

8 by me and thereafter transcribed under my supervision

  with computer-aided transcription; that the

9 deposition is a true and correct record of the

  testimony given by the witness; and that I am neither

10 of counsel nor kin to any party in said action, nor

   interested in the outcome thereof.

11

12     WITNESS my hand and official seal this

   29th day of September 2016.

13

14

15

16

17     Kimberly A. Hussey, CCR, CM

       Certified Court Reporter

18     Certificate of Merit

       Notary Public

19

20

21

22

23

24

25

47 (Pages 182 - 185)

Case ID: 151103380

Control No.: 119092259

# EXHIBIT 11

Case ID: 151103380
Control No.: 17092259

JOSEPH MICHAEL JAUSSI

## Page 1

IN THE COURT OF COMMON PLEAS OF PHILADELPHIA COUNTY
FIRST JUDICIAL DISTRICT OF PENNSYLVANIA

- - -

KELLY A. GRADY,            :
                           : CIVIL ACTION
                           : NOVEMBER TERM,
2015
        Plaintiff,    :
                      : NO. 151103380
    vs.                :
                       :
THE HERTZ CORPORATION; HERTZ :
RENT-A-CAR PHILADELPHIA INTL.:
AIRPORT; JOHN DOE(s),     :
                          :
        Defendants.    :

- - -

October 16, 2016

- - -

Oral deposition of JOSEPH MICHAEL JAUSSI, taken pursuant to notice, held at 1845 Walnut Street, Suite 938, Philadelphia, Pennsylvania, commencing at 11:56 a.m., on the above date, before Jennifer P. Miller, RPR, CCR, CRR, and Notary Public for the Commonwealth of Pennsylvania, State of Delaware and the State of New Jersey.

## Page 2

1  A P P E A R A N C E S:
2
3    FRANCIS ALEXANDER, LLC
4    BY:  FRANCIS MALOFIY, ESQUIRE
5    280 North Providence Road
6    Suite 105
7    Media, Pennsylvania 19063
8    215.583.1099
9    COUNSEL FOR PLAINTIFF
10
11   EDELSTEIN LAW, LLP
12   BY:  STUART J. WOLF, ESQUIRE
13   230 South Broad Street
14   Suite 900
15   Philadelphia, Pennsylvania 19102
16   215.893.9311
17   COUNSEL FOR DEFENDANT
18
19
20
21
22
23
24

## Page 3

1           I N D E X
2  WITNESS:
3  JOSEPH MICHAEL JAUSSI
4      E X A M I N A T I O N
5       DIRECT CROSS REDIRECT RECROSS
6  BY MR. MALOFIY  4      221, 223
7  BY MR. WOLF      220      222
8           - - -
9        E X H I B I T S
10 NUMBER        DESCRIPTION        PAGE
11 Exhibit 46    Ownership Nonpermission
12              Interview Sheet     182
13
14
15 Direction to Witness not to Answer
       Page Line      Page Line
16 21  8         31  10
   117 2
17
18 Request for Production of Documents
       Page Line      Page Line
19 65  14        77  11
   85  22        121 18
20 125 23
21
22 Questions and Text Marked
       Page Line      Page Line
23 64  12        86  6
   87  1         93  23
24 97  14        180 3

## Page 4

1           - - -
2      P R O C E E D I N G S
3           - - -
4        (It is hereby stipulated
5  and agreed by and between counsel that
6  reading, signing, sealing, filing and
7  certification are not waived; and that
8  all objections, except as to the form
9  of the questions, be reserved until the
10 time of trial.)
11           - - -
12       JOSEPH MICHAEL JAUSSI,
13 after having been first duly sworn, was
14 examined and testified as follows:
15           - - -
16      EXAMINATION
17 BY MR. MALIFOY:
18     Q.  Your name is Joseph Jaussi, correct?
19     A.  Joseph Michael Jaussi, correct.
20     Q.  Joseph Michael Jaussi.  And is it
21 J-A-U-S-S-I?
22     A.  Correct, yes.
23     Q.  Now, the Court Reporter just gave you
24 an oath.  You swore to take the oath; to tell

ZANARAS REPORTING & VIDEO
1.877.GO.DEPOS

Case ID: 151103380
Control No.: 17092259

JOSEPH MICHAEL JAUSSI

Page 57

1    present case, been at Hertz 12 years,
2    never heard of it.
3    BY MR. MALIFOY:
4        Q.  Okay.  Fifteen:  Any information
5    regarding Hertz having been accused of
6    improperly reporting rental car as having been
7    taken or possessed without authorization by
8    customer?
9        A.  Not that I'm aware of, outside of
10   this case.
11       Q.  Sixteen:  Any information concerning
12   where the --
13           Seventeen:  Any information
14   regarding disciplinary or citation
15   documentation for all employees at the
16   Philadelphia International Airport location
17   especially location branch manager or corporate
18   security managers?
19       A.  That would not -- HR would have any
20   and all discipline for Hertz employees at the
21   time.
22       Q.  Who is HR that handles Philadelphia
23   Airport location?
24       A.  Kristen Hook.

Page 58

1        Q.  How do you spell it?
2        A.  K-R-I-S-T-E-N, I believe, Hook,
3    H-O-O-K.
4        Q.  Where is she, what's her location?
5        A.  She's based out of my facilities.
6        Q.  Where is that?
7        A.  One Car Return Road [sic],
8    Philadelphia Airport International.
9        Q.  One Car Return Road?
10       A.  One Car Return Road, Philadelphia,
11   International Airport, Philadelphia, PA 19153.
12       Q.  Any information you have between any
13   of the managers or employees of Hertz regarding
14   Ms. Grady or the Yukon?
15       A.  Only information I've seen throughout
16   the matter is alleged communication with a
17   Mr. John Lawrence and what was described as
18   someone at the exit gate that I couldn't fit a
19   description to and a manager that I couldn't
20   fit a description to, are the only three names
21   I've seen associated with this case or
22   descriptions, I should say.
23       Q.  So John Lawrence, a manager you
24   couldn't fit a description to, and then who

Page 59

1    else, someone at the toll gate?
2        A.  Someone at the exit gate, yes.
3        Q.  Do you recall trying to fit a
4    description to anyone else?
5        A.  I recall trying to fit the two
6    descriptions for the exit gate attendant and
7    the manager alleged to have been engaged.
8        Q.  You mentioned Mr. Jonathan Lawrence?
9        A.  Correct, I did.
10       Q.  Who is he?
11       A.  Former customer service
12   representative.
13       Q.  A former?
14       A.  Customer service.
15       Q.  Customer service?
16       A.  Representative.  CSR for short, if
17   it's easier down the road.
18       Q.  Okay.  How long was he employed by
19   Hertz?
20       A.  If I recall less than a year.
21       Q.  Why did he only last a year?
22       A.  He was terminated for something along
23   the matters of fraudulent activities.
24       Q.  Did it have anything to do with this

Page 60

1    matter?
2        A.  Not that I recall.
3        Q.  What fraudulent activities was he
4    involved with?
5        A.  For what's left in the memory bank
6    according to Jonathan Lawrence, I believe it
7    was tied to manipulating the system to gain
8    personal financial incentive, i.e., upgrading
9    cars and customers outside of the normal
10   circumstances.
11       Q.  I see.  You said upgrading cars --
12       A.  If my vague memory services me
13   correctly, something along those lines.
14       Q.  And customers outside of the normal
15   circumstances, would that be changing due
16   dates?
17       A.  No.  It would changing reserved car
18   classes and charging them an upgrade instead of
19   charging them what they booked for.
20       Q.  Did you have to terminate them?
21       A.  Personally, I don't recall if it was
22   me or not.  If I was in the room when we issued
23   the discipline.
24       Q.  What role did you play, if any?

15  (Pages 57 to 60)

Case ID: 151103380
Control No.: 17092259

JOSEPH MICHAEL JAUSSI

Page 61

```
 1        A.  Facilitator, maybe, back then,
 2   meaning, between HR and the location manager
 3   that may have handled it.
 4        Q.  Okay.  Who was involved with the
 5   termination of John Lawrence?
 6        A.  I don't recall.
 7        Q.  You were involved in some way?
 8        A.  Potentially.
 9        Q.  Who in HR, would Kristen Hook have
10   been?
11        A.  I think Kristen Hook was there in
12   2013.
13        Q.  Who else?
14        A.  I don't recall who else would have
15   been dealing with it.
16        Q.  Was he just fired on the spot?  Did
17   he have a hearing?  Was there some sort of
18   discipline provided or did you say you screwed
19   up here?
20        A.  Typically, Hertz does an
21   investigation, HR typically coordinates that
22   and facilitates that.  They run the findings by
23   myself or senior manager.  We recommend
24   progressive discipline and up to or including
```

Page 62

```
 1   termination.  My understanding is she then puts
 2   it up the HR food chain to her boss and through
 3   the legal team and they bless the progressional
 4   discipline up and to including termination.
 5        Q.  What was the advised discipline?
 6        A.  Well, we terminated so I'm assuming
 7   they approved termination.
 8        Q.  So there was no progressive
 9   discipline in the sense of let's give him a
10   demerit or reprimand and see how it works out,
11   it was harsh enough to cause him to be fired?
12            MR. WOLF:  Objection to form.
13            You can answer.
14            THE WITNESS:  It was harsh
15        enough for him to be fired, correct.
16        Hertz has levels of deviations that fall
17        within the progressionary levels of
18        discipline.  And then they have terminable
19        offenses as part of their policies.  Fraud
20        is one of those things that fall into
21        that.
22   BY MR. MALIFOY:
23        Q.  Was Mr. Jonathan Lawrence and his
24   termination or his conduct related to
```

Page 63

```
 1   Mrs. Hertz -- strike that.
 2            Was Mr. Lawrence's conduct
 3   implicated in any way in the rental by
 4   Ms. Grady?
 5        A.  Can you say it one more time?
 6        Q.  Mr. Lawrence was disciplined and then
 7   the progressive discipline was, in fact, being
 8   fired or terminated from Hertz, correct?
 9        A.  Yeah.  But to my knowledge, nothing
10   to do with Mrs. Grady.
11        Q.  I'm just stepping through it to make
12   it easier.
13        A.  Okay.
14        Q.  So at some point Mr. Lawrence was
15   terminated from Hertz, correct?
16        A.  Correct.
17        Q.  For engaging in fraudulent
18   activities?
19        A.  Correct.
20        Q.  Did his fraudulent activities have
21   anything to do whatsoever with Ms. Kelly
22   Grady's car rental?
23        A.  No.  Not that I'm aware of.
24        Q.  Is there a chart file for
```

Page 64

```
 1   Mr. Jonathan Lawrence?
 2        A.  I would assume so.
 3        Q.  Why hasn't that been produced?
 4        A.  Because I was not advised to produce
 5   it.
 6        Q.  Is that something you have access to?
 7        A.  I personally do not.  I would have to
 8   go through the HR function.
 9        Q.  Is that something you could get or
10   you could request?
11        A.  I could.
12            MR. MALIFOY:  Can you mark that.
13   BY MR. MALIFOY:
14        Q.  The investigation file, do you retain
15   that or does someone else?
16        A.  The investigation file, pertaining to
17   what?
18        Q.  Pertaining to Mr. Jonathan Lawrence?
19        A.  That would be HR.
20        Q.  Is that something you could request?
21            MR. WOLF:  I think it's the same
22        thing you just asked for.
23            THE WITNESS:  Correct.  I could
24        request it.
```

16 (Pages 61 to 64)

Case ID: 151103380
Control No.: 17092259

JOSEPH MICHAEL JAUSSI

Page 177

1 the investigation file as well?
2     A.  Correct.
3     Q.  I want to go back to the document we
4 used.  I think it's policy and procedures, do
5 you see that?
6     A.  Thirty-six?
7     Q.  Yes.  If we look here, on page 2 it
8 says, "theft by conversion referred" -- it's
9 Number 3, there are four vehicle theft
10 categories, theft by conversion, refer to
11 procedure W1-12RAC.
12     A.  Yes.
13     Q.  You would agree with me that W1-12RAC
14 is not contained in this document anywhere,
15 correct?
16         MR. WOLF:  Just read through the
17 document.
18         THE WITNESS:  I'm sorry, what
19 was the question again, it's not within
20 this document?
21 BY MR. MALIFOY:
22     Q.  Right.
23     A.  At a quick glance, I do not see it.
24     Q.  I'll represent Mr. Livingston also

Page 178

1 testified it was not contained within that
2 document.  If you go to what was marked as
3 Exhibit 41, this is the -- the sheet -- it
4 looks like a list of employees.
5         Is this the sheet that you
6 recall seeing from Ms. Hook in regards to
7 employees that worked at Hertz during the time
8 in question?
9     A.  Yes.
10     Q.  Second page, says Jonathan A.
11 Lawrence near the top there, I think it's fifth
12 one down?
13     A.  Yes.
14     Q.  You see that?
15     A.  Yes.
16     Q.  It gives a date first hired, was
17 there other information on this, or this is all
18 you saw?
19     A.  This is all I saw.
20     Q.  So you don't know when he was
21 terminated, correct?
22     A.  Not the exact date.  My understanding
23 it was less than a year tenure.
24     Q.  We don't have his employee ID here

Page 179

1 either, correct?
2     A.  Not that I see.
3     Q.  In his employment file would you have
4 his address that he provided to you?
5     A.  Kristen Hook would, I assume.
6     Q.  Did you ever have to look for any
7 employees' address?
8     A.  No.
9     Q.  Any contact information?
10     A.  Contact information?
11     Q.  Yeah.
12     A.  Phone numbers is as low as we go.
13     Q.  Did you check to see if there was any
14 phone number for Mr. Jonathan Lawrence?
15     A.  I personally did not.
16     Q.  Do you know if Ms. Hook did?
17     A.  I did not recall or know.
18     Q.  Do you know if last known address was
19 ever asked for Jonathan A. Lawrence or did you
20 ever ask to find that information?
21     A.  I think that was in the
22 communication, yes.
23     Q.  Was it provided?
24     A.  I believe so.

Page 180

1     Q.  When?
2     A.  Within the last 30 to 60 days.
3         MR. MALIFOY:  Can you please
4 mark that.
5         Counsel, was Mr. Jonathan
6 Lawrence's last known address provided?
7         MR. WOLF:  I don't know, but you
8 were out to the location so you clearly
9 know it.
10         MR. MALIFOY:  I am asking you, I
11 don't know what location it was.  I was
12 knocking on doors because you didn't
13 provide the last known address.
14         MR. WOLF:  You knocked on his
15 door.
16         MR. MALIFOY:  You weren't there
17 so you don't know.  Were you there?
18         MR. WOLF:  No.
19         MR. MALIFOY:  You can't testify
20 what happened.
21         MR. WOLF:  I can testify to what
22 I know and you knocked on the door.
23         MR. MALIFOY:  Thank you for
24 sharing.  It's for the first time that

45 (Pages 177 to 180)

Case ID: 151103380
Control No.: 17092259

JOSEPH MICHAEL JAUSSI

Page 224

1                        CERTIFICATE

2          I HEREBY CERTIFY that the

3    proceedings, evidence and objections are

4    contained fully and accurately in the

5    stenographic notes taken by me upon the

6    deposition of JOSEPH MICHAEL JAUSSI,

7    taken on October 6, 2016 and that this is

8    a true and correct transcript of same.

9

10

11

12                _Jennifer Miller_____

13                Jennifer Miller, RPR and

14                Notary Public

15

16

17          (The foregoing certification of

18    this transcript does not apply to any

19    reproduction of the same by any means

20    unless under the direct control and/or

21    supervision of the certifying reporter.)

22

23

24

Case ID: 151103380
Control No.: 17092259

# EXHIBIT 12

Case ID: 151103380
Control No.: 17092259

| | |
|---|---|
| **From:** | Jay Edelstein |
| **To:** | Francis Alexander Malofiy |
| **Cc:** | Divon, Peter; AJ Fluehr; Stuart Wolf |
| **Subject:** | Re: Grady v. Hertz, EL 810.911 |
| **Date:** | Thursday, October 20, 2016 1:16:27 PM |

Pete,

    I have no intention of participating in this sham. I stake my reputation against a suspended lawyer with this reputation anyway. If his Honor wants me there I will certainly out of respect for the court be there however I will not be drawn into Mr. Maolfiy's fantasy world. The record clearly shows the absurdity of this Motion.

Sent from my iPhone

On Oct 20, 2016, at 12:58 PM, Francis Alexander Malofiy <francis@francisalexander.com> wrote:

> Dear Mr. Divon,
>
> Due to the seriousness of the issues involved, Plaintiff does not object to a separate hearing. However, it is obviously up to the Court's convenience and judgment.
>
> Plaintiff must correct two misleading statements by defense counsel for the sake of the record.
>
> **First**, the supplement submitted to the Court yesterday afternoon was actually only 19 pages (only ten of which were substantive). Defense counsel counted the exhibit pages to inflate the page count. In addition, Defendants are quite familiar with the material that was added and discovery motions do not even require a response.
>
> **Second**, two of the individuals "subpoenaed" were defense counsel who conduct is at issue, simply to make sure that they actually appear at the hearing. Two other individuals are Defendants' representatives. Thus, there is only one third party witness.
>
>
> *****
> With every good wish, I am,
>
> Francis Malofiy, Esquire
> Francis Alexander, LLC
> 280 N. Providence Road | Suite 1
> Media, PA 19063
> T: (215) 500-1000
> F: (215) 500-1005
> E: francis@francisalexander.com

Case ID: 151103380
Control No.: 17092259

# EXHIBIT 13

Case ID: 151103380
Control No.: 17092259

## IN THE COURT OF COMMON PLEAS OF PHILADELPHIA COUNTY
## FIRST JUDICIAL DISTRICT OF PENNSYLVANIA
## CIVIL TRIAL DIVISION

| | | |
|---|---|---|
| **GRADY** | : | **NOVEMBER TERM 2015** |
| | : | |
| **v.** | : | **NO.  3380** |
| | : | |
| **THE HERTZ CORP., et al.** | : | |

### O R D E R

**AND NOW**, this 2 4 day of October, 2016, upon consideration of the Plaintiff's Motion

for Sanctions Against Defendant for Concealing the Name and Identity of a Critical Fact Witness

Employed by Defendant Hertz, any response thereto, and after oral argument it is hereby

**ORDERED** and **DECREED** said Motion is **DENIED**.

BY THE COURT:

_____

**ARNOLD L. NEW, J.**

DOCKETED

OCT 2 5 2016

N. SWEENEY
JUDICIAL RECORDS

Grady Vs The Hertz Corporation Etal-ORDER

15110338000067

COPIES SENT PURSUANT TO Pa.R.C.P. 236(b)  D. STEWART  10/25/2016

Case ID: 151103380
Control No.: 17092259

# EXHIBIT 14

Case ID: 151103380
Control No.: 17092259

Francis Alexander, LLC
Francis Malofiy, Esquire
Attorney ID No.: 208494
280 N. Providence Road | Suite 1
Media, PA 19063
T:  (215) 500-1000
F:  (215) 500-1005
*Law Firm / Lawyer for Plaintiff*

The Court of Common Pleas
Philadelphia County, Pennsylvania

| | |
|---|---|
| Kelly A. Grady<br><br>*Plaintiff*<br><br>vs.<br><br>The Hertz Corporation;<br><br>Hertz Rent-A-Car Philadelphia Intl. Airport;<br><br>John Doe(s)[1]<br><br>*Defendants* | Action Commenced By:<br>Writ of Summons On:<br>November 23, 2015<br><br>November Term, 2015<br><br>Civil Action No.:<br>151103380<br><br>Complaint filed:<br>February 22, 2016<br><br>Causes of Action:<br>1. False Imprisonment<br>2. Malicious Prosecution<br>3. Int. Infl. of Emo. Dist.<br><br>*Jury Trial Demanded* |

Notice of Deposition and Document Requests Directed to
Defendant The Hertz Corporation

TO:    The Hertz Corporation
        Jay L. Edelstein, Esquire
        Edelstein Law, LLP
        230 South Broad Street | Suite 900
        Philadelphia, PA 19102
        T: (215) 893-9311
        F: (215) 893-9310
        E: JEdelstein@Edelsteinlaw.com
        *Attorneys for The Hertz Corporation*

---

[1] Manager(s) at Hertz Rent-A-Car Philadelphia Intl. Airport from March 2013 to June 2014.

Case ID: 151103380
Control No.: 17092259

PLEASE TAKE NOTICE that you, the corporate designee for THE HERTZ CORPORATION, are directed to come to Zanaras Court Reporting at 1845 Walnut St., Suite 938, Philadelphia, PA at a mutually agreeable date and time, to testify in the above case pursuant to Pennsylvania Rule of Civil Procedure 4007.1(d), and to produce documents pursuant to Rules 4007.1(d)(1), 4009.1 et seq., and 4009.12(a) at the deposition or within 30 days of service of this notice, whichever is sooner:

## PLEASE PROVIDE THE FOLLOWING DOCUMENTS AND THINGS IN ACCORDANCE WITH THE RULES OF CIVIL PROCEDURE (THE CONTENT OF WHICH WILL ALSO BE THE TOPICS OF THE DEPOSITION):

*Please note that when any corporate defendant is referred to, Plaintiff is also referring to any employee, agent, partner, director, or contractor associated with that corporate defendant or authorized to act on its behalf*

1.     Please provide any and all documents, communications, or things (electronic, paper, or any other format) in The Hertz Corporation's possession, access, or control—including but not limited to texts, emails, faxes, voicemails, letters, notes, contracts, calendars, phone records, and signed documents—**that are related to in any way Kelly A. Grady, also known as Kelly A. Grady-Scully.**

2.     Produce any and all documents, communications, and things (electronic or otherwise) residing in ("Hertz," "you," "your") computer systems concerning Kelly Grady and/or the Chevy Yukon she rented, including but not limited to her rental contract, payments made on her contract, payments made by her, discussions concerning the repossession of the Yukon, discussions concerning Ms. Grady's arrest, discussions concerning her prosecution, and her presence on any formal or informal "blacklist" that would prevent her from renting cars.

3.     Please provide any and all documents, communications, or things (electronic, paper, or any other format) in your possession, access, or control—including but not limited to

Case ID: 151103380
Control No.: 17092259

texts, emails, faxes, voicemails, letters, notes, contracts, calendars, phone records, and signed documents—**that concern errors, malfunctions, anomalies, or incorrect data input with the computer programs and systems used by The Hertz Corporation, including but not limited to errors, malfunctions, or other anomalies concerning the programs and systems that contain information relating to Kelly Grady**.

4.      Please provide any and all contracts The Hertz Corporation, or any affiliated entity, had with Kelly Grady, especially in 2013.

5.      Please provide documents, communications, or things (electronic, paper, or any other format) in your possession, access, or control—including but not limited to texts, emails, faxes, voicemails, letters, notes, contracts, calendars, phone records, and signed documents—**that relate in any way to transactions and payments regarding Kelly Grady renting a car from The Hertz Corporation, especially in 2013**.

6.      Please provide any surveillance video or phone call recordings that are of Kelly Grady, the Yukon, or relate to Kelly Grady in any way, including on July 22, 2013.

7.      Please provide any and all documents, communications, or things (electronic, paper, or any other format) in your possession, access, or control—including but not limited to texts, emails, faxes, voicemails, letters, notes, contracts, calendars, phone records, and signed documents—including phone recordings, **that relate to contact Hertz had with any police authorities regarding Kelly Grady, including your contacts with Trooper Kemmerling of the Pennsylvania State Police** and any reports from the Pennsylvania State Police (formal or informal).

Case ID: 151103380
Control No.: 17092259

8.      Please provide all documents, communications, or things (electronic, paper, or any other format) in your possession, access, or control—including but not limited to texts, emails, faxes, voicemails, letters, notes, contracts, calendars, phone records, and signed documents—**that relate to the Chevy Yukon rented by Kelly Grady in 2013**.

9.      Please provide all documents, communications, or things (electronic, paper, or any other format) in your possession, access, or control—including but not limited to texts, emails, faxes, voicemails, letters, notes, contracts, calendars, phone records, and signed documents—**that relate to any contacts and relationships between OnStar and Hertz, especially as relates to Ms. Grady and the Yukon rented by Ms. Grady**.

10.     Please provide any contracts between Hertz and OnStar that were or are in effect within the last ten years.

11.     Please provide documents, communications, or things (electronic, paper, or any other format) in your possession, access, or control—including but not limited to texts, emails, faxes, voicemails, letters, notes, contracts, calendars, phone records, and signed documents—**that relate to any contact you had with police authorities from July 20, 2013 to September 1, 2013**.

12.     Please provide all documents, communications, or things (electronic, paper, or any other format) in your possession, access, or control—including but not limited to texts, emails, faxes, voicemails, letters, notes, contracts, calendars, phone records, and signed documents—**that relate to any contact you had with police authorities from August 31, 2013 to December 31, 2013**.

13.     Please provide all documents, communications, or things (electronic, paper, or any other format) in your possession, access, or control—including but not limited to texts, emails,

Case ID: 151103380
Control No.: 17092259

faxes, voicemails, letters, notes, contracts, calendars, phone records, and signed documents—**that relate to the arrest, imprisonment, and prosecution of Kelly Grady by the Philadelphia District Attorney's Office in 2013 and 2014**.

14.    Please provide all documents, communications, or things (electronic, paper, or any other format) in your possession, access, or control—including but not limited to legal briefs, depositions, texts, emails, faxes, voicemails, letters, notes, contracts, calendars, phone records, and signed documents—**concerning Hertz having been sued for false imprisonment, malicious prosecution, intentional infliction of emotional distress or any other cause of action stemming from you reporting a rental car as having been taken/possessed without authorization by a customer**.

15.    Please provide all documents, communications, or things (electronic, paper, or any other format) in your possession, access, or control—including but not limited to legal briefs, depositions, texts, emails, faxes, voicemails, letters, notes, contracts, calendars, phone records, and signed documents—**concerning Hertz having been accused of improperly reporting a rental car as having been taken/possessed without authorization by a customer**.

16.    Please provide all documents, communications, or things (electronic, paper, or any other format) in your possession, access, or control—including but not limited to legal briefs, depositions, texts, emails, faxes, voicemails, letters, notes, contracts, calendars, phone records, and signed documents—**concerning where the manager of Philadelphia International Airport Hertz location reported a rental car as having been taken/possessed without authorization by a customer**.

Case ID: 151103380
Control No.: 17092259

17.     Please provide all disciplinary and/or citation documentation, in any form, for all employees at the Philadelphia International Airport Hertz location, especially the location/branch manager.

18.     Please provide all documents, communications, or things (electronic, paper, or any other format) in your possession, access, or control—including but not limited to legal briefs, depositions, texts, emails, faxes, voicemails, letters, notes, contracts, calendars, phone records, and signed documents—between the manager of the Philadelphia International Airport Hertz location and any other individual or entity regarding Ms. Grady or the Yukon at any point in time.

19.     Please provide any standard operating procedures, manuals, guidelines, or other documents (in any form) that reflect company policy that relate to billing, billing practices, contracts, contract extensions, renting cars, renewing rental contracts, lengths of rental periods, billing disputes, reporting customers to the police, recovering rental cars that were allegedly taken without authorization or payment, working with OnStar, or allowing cars to leave the Hertz lot.

20.     Please provide all employee handbooks, standard operating procedures, and guidelines of any sort used by The Hertz Corporation, especially by the Philadelphia Airport Location.

21.     Please provide any and all documents, communications, or things (electronic, paper, or any other format) in your possession, access, or control—including but not limited to texts, emails, faxes, voicemails, letters, notes, contracts, calendars, phone records, payments, and signed documents—**concerning Hertz's contacts with Collateral Consultants in 2013 regarding Kelly Grady and/or the Chevy Yukon she rented**.

Case ID: 151103380
Control No.: 17092259

22.    Please provide any and all documents, communications, or things (electronic, paper, or any other format) in your possession, access, or control—including but not limited to texts, emails, faxes, voicemails, letters, notes, contracts, calendars, phone records, payments, and signed documents—**concerning Hertz's contacts with Auto Recovery Repossession in 2013 regarding Kelly Grady and/or the Chevy Yukon she rented**.

23.    Please provide any and all documents, communications, or things (electronic, paper, or any other format) in your possession, access, or control—including but not limited to texts, emails, faxes, voicemails, letters, notes, contracts, calendars, phone records, and signed documents—**concerning Hertz's contacts with OnStar in 2013 regarding Kelly Grady and/or the Chevy Yukon she rented.**

24.    Please provide any and all documents, communications, or things (electronic, paper, or any other format) in your possession, access, or control—including but not limited to texts, emails, faxes, voicemails, letters, notes, contracts, calendars, phone records, and signed documents—**Hertz used, relied upon, or was aware of relating to Ms. Grady when making the August 2013 police report.**

25.    Please provide any and all documents, communications, or things (electronic, paper, or any other format) in your possession, access, or control—including but not limited to texts, emails, faxes, voicemails, letters, notes, contracts, calendars, phone records, and signed documents—**on which your answers to the interrogatories relate to or relied upon**.

26.    Please provide any and all documents, communications, or things (electronic, paper, or any other format) in your possession, access, or control—including but not limited to

Case ID: 151103380
Control No.: 17092259

texts, emails, faxes, voicemails, letters, notes, contracts, calendars, phone records, and signed documents—**that you may use or intend to use in your defense of this case and/or at trial**.

27.     Please provide any and all documents, communications, or things (electronic, paper, or any other format) in your possession, access, or control—including but not limited to texts, emails, faxes, voicemails, letters, notes, contracts, calendars, phone records, and signed documents—**that relate to the allegations in the Complaint**.

28.     Please provide any and all documents, communications, or things (electronic, paper, or any other format) in your possession, access, or control—including but not limited to literature, texts, emails, faxes, voicemails, letters, notes, contracts, calendars, phone records, and signed documents—**that your experts may rely on or will rely on during this case and/or at trial.**

29.     Please provide any and all documents, communications, or things (electronic, paper, or any other format) in your possession, access, or control—including but not limited to applications, declarations, attachments, texts, emails, faxes, voicemails, letters, notes, contracts, calendars, phone records, and signed documents—**of applicable insurance contracts.**

30.     Please provide any and all documents, communications, or things (electronic, paper, or any other format) in your possession, access, or control—including but not limited to financial schedules, profit and loss statements, financial statements audited or otherwise, tax forms, texts, emails, faxes, voicemails, letters, notes, contracts, calendars, phone records, and signed documents—**that identify the gross profits of Hertz for the last five years, the net worth, and overall financial situation of the Hertz Corporation.**

Case ID: 151103380
Control No.: 17092259

31.    Balance sheet for this Defendant for each fiscal or calendar year for each year since and including 2009.

32.    Income statement for this Defendant for each fiscal or calendar year for each year since and including 2009.

33.    Any and all financial statements (including balance sheets and income statements) for any entity into which the operations of this Defendant are consolidated for each year since and including 2009.

34.    A copy of this Defendants' Tax Returns (Federal, State, local, and foreign) for each year since and including 2009, inclusive of supporting schedules and documents: income statement, balance sheet, and retained earnings and audit reports.

35.    Identification, Descriptions, Valuations, and Statements of all assets owned by this Defendant, inclusive of but not limited to: cash, checking, savings, money market, equity, bond, foreign assets of any kind, real estate, trusts, insurance, retirement accounts, precious metals, furniture, watches, clothes, art, personal effects, stocks, and any other holding, investment, or trading account wholly or partially owned.

36.    Please identify by carrier and policy number any insurance coverage of any type, including the policy limits, which arguably would provide coverage for any verdict in this case. Include any carrier to whom notice of this lawsuit has been given.

37.    Please produce a complete copy of each such insurance contract, and any modifications, attachments, supplements, addendums, related contracts, and the application.

38.    YOUR tax returns for tax years 2009, 2010, 2011, 2012, 2013, and 2014, or YOUR last tax return if none filed for those years, filed with each separate taxing authority.

Case ID: 151103380
Control No.: 17092259

39.    All Internal Revenue Service forms, inclusive of but not limited to, form 1099s (regardless of letter designation), form K-1s, and form W-2s (regardless of letter designation) received by YOU since and including 2009.

40.    YOUR last financial statement, audited or not.

41.    YOUR checking, savings, and other bank account records since and including 2009 including, but not limited to, canceled checks, statements, deposit tickets, and agreements concerning any safety deposit boxes.

42.    YOUR brokerage and other security or investment records since and including 2009, including, but not limited to, statements and deposit tickets.

43.    YOUR credit card statements since and including 2009, inclusive of the monthly statements and the charges thereto.

44.    All documents concerning any mortgage for any property YOU own in whole or in part, including, but not limited to, any mortgage statements or bills since and including 2009.

45.    YOUR current books of account, ledgers, and other ongoing records of debts and credits.

46.    Provide documentation evidencing your corporate ownership structure, including any parent companies and subsidiaries.

47.    Writings evidencing YOUR claims against, and accounts receivable from, others, including, but not limited to, any contingencies or fees that YOU are owed or to which YOU are entitled for work performed.

Case ID: 151103380
Control No.: 17092259

48.    YOUR leases, certificates of title, deeds, mortgages, stocks, bonds, securities, promissory notes, contracts, agreements, trust documents, insurance policies and contracts, retirement accounts, investment accounts, and trading accounts.

49.    Copies of any legal judgment or lien which YOU hold in whole or in part.

50.    All loan documents including but not limited to loans, notes, and mortgages since and including 2009, and related documentation including credit reports, schedules, financial statements, rent roll, appraisals, settlement sheets, agreement of sale or related transactional documents to the loan, and any other related documentation. Please also provide all loan applications submitted by YOU since and including 2009, and related documentation including credit reports, schedules, financial statements, rent roll, appraisals, settlement sheets, agreement of sale or related transactional documents to the loan, and any other related documentation.

51.    Policies of insurance in which YOU are named as an insured or beneficiary.

52.    Documents reflecting YOUR ownership interest in, and the value of, any automobile, art, music, musical instruments, television, audio visual equipment, cameras, audio equipment, furniture, watches, clothes,  jewelry, precious metals (*i.e.*, gold, silver, or platinum), memorabilia, collectibles (*e.g.*, comic  books, coins, baseball cards) or other personal property.

53.    Photographs of any automobile, art, music, musical instruments, television, audio visual equipment, cameras, audio equipment, furniture, watches, clothes,  jewelry, precious metals (*i.e.*, gold, silver, or platinum), memorabilia, collectibles (*e.g.*, comic  books, coins, baseball cards) or other personal property owned  in whole or in part by YOU.

Case ID: 151103380
Control No.: 17092259

54. Documents evidencing or referring to any intellectual property, including, but not limited to patents, copyrights, or copyrighted materials, trademarks, and licenses owned in whole or in part by YOU.

55. Any documents identified or referred to in YOUR answers to the interrogatories served concurrently with these requests.

56. Documents sufficient to show the details of any transfer of any asset of YOURS, other than ordinary payments for living expenses and necessities, since and including 2009, including, but not limited to, the asset transferred, the transferee name and contact information, the nature of the transfer, all documents effecting the transfer, and the money or other consideration paid and received.

57. Copies of any legal pleadings in which YOU are named a plaintiff or defendant, excluding this action.

58. Copies of any claim letters that YOU have sent to any third party asserting an entitlement to the payment of damages or a sum certain.

59. All documents concerning any will or trust in which are YOU are named as an heir, beneficiary, distribute, or other person entitled to something of value.

60. Any other records of YOUR current assets or liabilities.

*****

*Respectfully submitted,*

FRANCIS ALEXANDER, LLC

*/s/ Francis Malofiy*

Francis Malofiy, Esquire
Attorney ID No.:  208494
280 N. Providence Road | Suite 105

Case ID: 151103380
Control No.: 17092259

Media, PA 19063
T:  (215) 500-1000
F:  (215) 500-1005
*Law Firm / Lawyer for Plaintiff*
*/d/   May 17, 2016*

Case ID: 151103380
Control No.: 17092259

# Certificate of Service

I hereby state that a true and correct copy of the foregoing Plaintiff's Notice of Deposition and Document Requests to Defendant The Hertz Corporation served on opposing counsel via email:

> Jay L. Edelstein, Esquire
> Edelstein Law, LLP
> 230 South Broad Street | Suite 900
> Philadelphia, PA 19102
> T: (215) 893-9311
> F: (215) 893-9310
> E: JEdelstein@Edelsteinlaw.com
> *Attorneys for The Hertz Corporation*

*****

*Respectfully submitted,*
Francis Alexander, LLC
*/s/ Francis Malofiy*
Francis Malofiy, Esquire
Attorney ID No.:  208494
280 N. Providence Road | Suite 1
Media, PA 19063
T:  (215) 500-1000
F:  (215) 500-1005
*Law Firm / Lawyer for Plaintiff*
*/d/ May 17, 2016*

Case ID: 151103380
Control No.: 17092259

**<u>EXHIBIT 4</u>**

DOCKETED
COMPLEX LIT CENTER

SEP 1 9 2017

J. STEWART

The Court of Common Pleas
Philadelphia County, Pennsylvania

Kelly A. Grady

*Plaintiff*

vs.

The Hertz Corporation;

Hertz Rent-A-Car Philadelphia Intl. Airport;

*Defendants*

Action Commenced By:
Writ of Summons On:
November 23, 2015

November Term, 2015

Civil Action No.:
151103380

Complaint Filed:
February 22, 2016

Causes of Action:
  Malicious Prosecution

*Jury Trial Demanded*

Grady Vs The Hertz Corp-ORDER



15110338000330

## ORDER

And Now, on this ____11th____ day of September, 2017, upon consideration of Plaintiff's Motion for Reconsideration and Sanctions against Defendant for Concealing the Name and Identity of a Critical Fact Witness Employed by Defendant Hertz, any response thereto, and the record as a whole, it is hereby **Ordered** and **Decreed** that Plaintiff's Motion for Reconsideration and Sanctions is **Granted**.

- The Hertz Corporation and defense counsel are precluded from contesting and/or arguing in any way, shape, or form—including at cross examination—Kelly Grady's alleged contacts with Jonathan Lawrence.

- The Hertz Corporation, Edelstein Law LLC, Jay Edelstein, and Stuart Wolf shall pay Plaintiff's counsel's costs and fees for the time and money expended addressing the Jonathan Lawrence issue.

- Within 30 days of the date of this order, Plaintiff will submit a brief showing the time and money spent on the Jonathan Lawrence issue.

By the Court:

_____ J.

Page 1 of 18

COPIES SENT PURSUANT TO Pa.R.C.P. 236(b)  J. STEWART  09/20/2017

**EXHIBIT 5**

**FILED**
23 JAN 2017 11:36 pm
Civil Administration
E. MASCUILLI

DOCKETED
COMPLEX LIT CENTER

SEP 1 9 2017

J. STEWART

THE COURT OF COMMON PLEAS
PHILADELPHIA COUNTY, PENNSYLVANIA

KELLY A. GRADY
*Plaintiff*

vs.

THE HERTZ CORPORATION;
HERTZ RENT-A-CAR PHILADELPHIA INTL. AIRPORT;
JOHN DOE(s)[1]
*Defendants*

ACTION COMMENCED BY:
WRIT OF SUMMONS ON:
NOVEMBER 23, 2015

NOVEMBER TERM, 2015

CIVIL ACTION NO.:
151103380

COMPLAINT FILED:
FEBRUARY 22, 2016

CAUSES OF ACTION:
MALICIOUS PROSECUTION
FALSE IMPRISONMENT
INT. INFLICTION OF
EMOTIONAL DISTRESS

*JURY TRIAL DEMANDED*



Grady Vs The Hertz Corp-ORDER

15110338000327

## ORDER

AND NOW, on this _____ 8 _____ day of _____ September _____, 2017, upon consideration of PLAINTIFF'S MOTION IN LIMINE FOR NEGATIVE SPOLIATION INFERENCE BECAUSE HERTZ ADMITTED IT "PURGED" AND DESTROYED PLAINTIFF'S CONTRACT AND PAYMENT INFORMATION IN VIOLATION OF ITS OWN POLICIES, any response thereto, and the record as a whole, it is hereby **ORDERED** and **DECREED** that Plaintiff's Motion is **GRANTED.**

- The jury will be instructed at the beginning and end of trial that: Defendant The Hertz Corporation admits "purging" and destroying Plaintiff's contract and payment information; had such information had not been destroyed the information it contained would have damaged Hertz's defense of this case and shown that Grady did not steal the car and that she had done nothing criminal.

- Hertz is precluded from introducing any evidence, testimony, or argument concerning the lack of electronic or physical contract renewal records.

- Hertz is precluded from offering any evidence, testimony, or argument contesting that Ms. Grady was charged in full for the car rental on July 15, 2013.

---

[1] Manager(s) at Hertz Rent-A-Car Philadelphia Intl. Airport from March 2013 to June 2014.

PAGE 1 OF 13
Case ID: 151103380
Control No.: 17012835

COPIES SENT PURSUANT TO Pa.R.C.P. 236(b)  J. STEWART  09/20/2017

- Hertz is precluded from offering any evidence, testimony, or argument claiming that the July 15, 2013 charge was a "forced charge."

- Hertz is precluded from offering any evidence, testimony, or argument to dispute that Grady made 12 phone calls to Hertz numbers between April 17 to July 22, 2013.

BY THE COURT:

_____ J.

**EXHIBIT 6**



Malofiy Surveillance Video 01-27&30-2017

12:13:10
01/27/2017



Malofiy Surveillance Video 01-27&30-2017

13:18:58
01/30/2017