**<u>EXHIBIT I</u>**

**Unsealed Cross-Motion**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| Rental Car Intermediate Holdings, LLC,[1] | Case No. 20-11247 (MFW) |
| Reorganized Debtor. | <u>Cross-Motion</u><br>**Objection Deadline: Feb. 21, 2022, at 4:00 p m. (ET)**<br>**Hearing Date: March 2, 2022, at 10:30 a m. (ET)** |

**NOTICE OF FALSE POLICE REPORT CLAIMANTS' (I) OBJECTION TO
REORGANIZED DEBTOR'S SUPPLEMENTAL MOTION FOR ENTRY OF A
PROTECTIVE ORDER LIMITING WRITTEN DISCOVERY AND
(II) CROSS- MOTION TO COMPEL INTERROGATORY
RESPONSES AND PRODUCTION OF DOCUMENTS**

TO:    (I) COUNSEL TO THE REORGANIZED DEBTOR; (II) THE OFFICE OF THE
UNITED STATES TRUSTEE FOR THE DISTRICT OF DELAWARE; AND (III) ANY
SUCH OTHER PARTY ENTITLED TO RECEIVE NOTICE PURSUANT TO
BANKRUPTCY RULE 2002

**PLEASE TAKE NOTICE** that the False Police Report Claimants (the "<u>Claimants</u>") have
filed the attached *False Police Report Claimants (I) Objection to Reorganized Debtor's
Supplemental Motion for Entry of a Protective Order Limiting Written Discovery and
(II) Cross- Motion to Compel Interrogatory Responses and Production of Documents* (the "<u>Cross-Motion</u>").[2]

**PLEASE TAKE FURTHER NOTICE** that any responses or objections to the relief
requested in the Cross-Motion must be filed and served so as to be received on or before
**4:00 p.m. (ET) on February 21, 2022**, (the "<u>Objection Deadline</u>") with the United States
Bankruptcy Court for the District of Delaware, 824 Market Street, 3rd Floor, Wilmington,
Delaware 19801 (the "<u>Court</u>"), with a copy to the undersigned counsel.

---

[1]    The last four digits of the tax identification number of Reorganized Debtor Rental Car
Intermediate Holdings, LLC ("<u>RCIH</u>") are 2459. The location of the Reorganized Debtors' service
address is 8501 Williams Road, Estero, FL 33928. On September 28, 2021, the Court entered a
final decree closing each of the chapter 11 cases for The Hertz Corporation and its affiliated
reorganized debtors (collectively, the "<u>Reorganized Debtors</u>") other than RCIH's chapter 11 case.
Commencing on September 28, 2021, all motions, notices, and other pleadings relating to any of
the Reorganized Debtors shall be filed in RCIH's chapter 11 case, Case No. 20-11247 (MFW).

[2]    Capitalized terms used but not otherwise defined herein shall have the meanings ascribed
to them in the Cross-Motion.

**PLEASE TAKE FURTHER NOTICE** that a hearing with respect to the Cross-Motion (the "Hearing") will be held on **March 2, 2022, at 10:30 a.m. (ET)** before the Honorable Mary F. Walrath, United States Bankruptcy Judge, at the United States Bankruptcy Court for the District of Delaware, 824 N. Market Street, 5th Floor, Courtroom No. 4, Wilmington, Delaware 19801. The Hearing may be held via Zoom and the information for appearing via Zoom will be provided in an agenda to be filed in advance of the Hearing.

**PLEASE TAKE FURTHER NOTICE THAT IF YOU FAIL TO RESPOND TO THE MOTION IN ACCORDANCE WITH THIS NOTICE, THE COURT MAY GRANT THE RELIEF REQUESTED IN THE MOTION WITHOUT FURTHER NOTICE OR A HEARING.**

Dated: February 14, 2022

**FRANCIS ALEXANDER, LLC**
Francis Malofiy
280 N. Providence Road, Suite 1
Media, PA 19063
Telephone: (215) 500-1000
Facsimile: (215) 500-1005
Email: francis@francisalexander.com

**SUSMAN GODFREY LLP**
Justin A. Nelson (*pro hac vice*)
John P. Lahad (*pro hac vice*)
Taylor C. Hoogendoorn (*pro hac vice*)
1000 Louisiana, Suite 5100
Houston, TX 77002-5096
Telephone: (713) 651-9366
Facsimile: (713)654-6666
Emails: jnelson@susmangodfrey.com
        jlahad@susmangodfrey.com
        thoogendoorn@susmangodfrey.com

**FAEGRE DRINKER BIDDLE & REATH LLP**

*/s/ Jaclyn C. Marasco*
Patrick A. Jackson (Bar No. 4976)
Ian J. Bambrick (Bar No. 5455)
Jaclyn C. Marasco (Bar No. 6477)
222 Delaware Avenue, Suite 1410
Wilmington, DE 19801
Telephone: (302) 467-4200
Facsimile: (302) 467-4201
Emails: patrick.jackson@faegredrinker.com
        ian.bambrick@faegredrinker.com
        jaclyn.marasco@faegredinker.com

*Co-Counsel for the False Police Report Claimants*

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| Rental Car Intermediate Holdings, LLC,[1] | Case No. 20-11247 (MFW) |
| Reorganized Debtor. | **Ref. D.I. 61, 86 & 305** |

**Supplemental Motion**
**Objection Deadline: Feb. 14, 2022 (ET)[2]**
**Hearing Date: March 2, 2022, at 10:30 a.m. (ET)**

**Cross-Motion**
**Objection Deadline: Feb. 21, 2022, at 4:00 p.m. (ET)**
**Hearing Date: March 2, 2022, at 10:30 a.m. (ET)**

### FALSE POLICE REPORT CLAIMANTS' (I) OBJECTION TO REORGANIZED DEBTOR'S SUPPLEMENTAL MOTION FOR ENTRY OF A PROTECTIVE ORDER LIMITING WRITTEN DISCOVERY AND (II) CROSS-MOTION TO COMPEL INTERROGATORY RESPONSES AND PRODUCTION OF DOCUMENTS

The False Police Report Claimants,[3] by and through their undersigned counsel, hereby

(i) object (this "Objection") to the *Reorganized Debtor's Supplemental Motion for Entry of a*

*Protective Order Limiting Written Discovery* [D.I. 305] (the "Supplemental Motion") and

respectfully (ii) move (this "Cross-Motion") for entry of an order, substantially in the form

---

[1]    The last four digits of the tax identification number of Reorganized Debtor Rental Car Intermediate Holdings, LLC ("RCIH") are 2459. The location of the Reorganized Debtors' service address is 8501 Williams Road, Estero, FL 33928. On September 28, 2021, the Court entered a final decree closing each of the chapter 11 cases for The Hertz Corporation and its affiliated reorganized debtors (the "Reorganized Debtors" and prior to the effective date, the "Debtors," and collectively at all points in time, "Hertz") other than RCIH's chapter 11 case. Commencing on September 28, 2021, all motions, notices, and other pleadings relating to any of the Reorganized Debtors shall be filed in RCIH's chapter 11 case, Case No. 20-11247 (MFW).

[2]    The Supplemental Motion listed an objection deadline of 4:00 p.m. (ET), but that deadline was extended to midnight by agreement of the Reorganized Debtor.

[3]    As used herein, the "False Police Report Claimants" are those individuals who have been unjustifiably implicated, arrested, imprisoned and/or prosecuted on account of the false police reports or accusations filed by or on behalf of the Debtors, and who have filed claims in these proceedings or otherwise sought relief from this Court.

attached hereto as **Exhibit A** (the "Proposed Order"), compelling certain interrogatory responses and the production of documents responsive to the Claimants' December 20, 2021, discovery requests, and specifically, productions of documents in the Claimants' targeted Information Categories (as defined below). In support of this Objection and Cross-Motion, the Claimants incorporate by reference their objection [D.I. 86] (the "MTQ Objection") to *Reorganized Debtor's Motion (I) to Quash the False Police Report Claimants' Notice of Rule 30(b)(6) Deposition and (II) for Entry of a Protective Order Limiting Written Discovery* [D.I. 61] (the "Motion to Quash") as if fully set forth herein, and additionally represent as follows:

## PRELIMINARY STATEMENT[4]

1.      In accordance with the Court's direction, the False Police Report Claimants have filed 230 individualized proofs of claim supported by sworn declarations or prepetition complaints tracing to Hertz's false theft-reporting practices. Hertz has objected to those claims, arguing, as relevant here, that 123 of them were untimely filed.[5] That argument was first teed up in Hertz's 21st Omnibus Objection. Shortly after that objection, on September 28, 2021, 20 Group 3 Claimants who filed claims with declarations served requests for production, interrogatories, and requests for admission directly relevant to whether the Claimants received adequate notice of the bankruptcy, and consequently whether their claims can be barred by the General Bar Date. Hertz has refused to provide formal responses and objections to that discovery. Instead, Hertz proposed an order that it be required to produce "all non-privileged documents in the Reorganized Debtor's possession, custody, or control related to the 29

---

[4]    Capitalized terms used but not otherwise defined in this preliminary statement shall have the meanings ascribed to them in the body of this Objection and Cross-Motion.

[5]    Hertz does not appear to have made any formal objection to motions made by Claimants Breanna Oneal and Israel Sundseth, so the true number of opposed claims may be 121.

individuals identified in the 'late claims' that are subject to the [21st Omnibus] Objection" within 14 days of the November 4 hearing. Mot. to Quash at Ex. A ¶ 3. Despite agreeing that such documents would be relevant and could be produced in 14 days, Hertz did not produce a single document for more than two months.

2.      On December 6, 2021, the 20 Group 3 Claimants described above and an additional 26 Group 4a Claimants filed motions seeking relief based on a lack of notice of certain bankruptcy proceedings. [D.I. 191 & 193.]  Shortly after filing those motions, the Group 3 and Group 4a Claimants served additional requests for production and interrogatories on the Reorganized Debtor on December 20, 2021. Once again, these discovery requests sought information directly relevant to the notice issues underlying the Group 3 Motion, the Group 4a Motion and the earlier 21st Omnibus Objection. To date, the Reorganized Debtor has refused to provide responses and objections to these discovery requests.

3.      At the January 4, 2022 hearing, the Court made very clear that it expected Hertz to produce its records pertaining to the Claimant-specific notice and individual contacts issues. *See, e.g.,* Jan, 4, 2022, Hr'g Tr. at 39:10-13. When that issue arose months earlier, Hertz admitted that it should produce "all non-privileged documents in the Reorganized Debtor's possession, custody, or control related to the . . .  individuals [with] 'late claims.'" Mot. to Quash at Ex. A ¶ 3. But Hertz has still refused to do that. Despite numerous meet and confers and targeted requests, Hertz has refused to search for or produce documents central to the known-creditor issue the Court wishes to address. For example, Hertz has refused to directly search its servers or repositories for emails or other communications to, from, or otherwise related to a Claimant. It likewise has refused to produce files tracking persons who have been reported for theft, recording communications, and storing that information. And it has refused to produce

internal spreadsheets, datasets, or similar compilations of data *that it has admitted exist and include details of the Claimants.* (Today, however—in direct conflict with Hertz's February 5 representation that certain Group 3 and Group 4a Claimants *do* appear on internal spreadsheets— the Reorganized Debtor's counsel represented that "none of the claimants who we are objecting to as 'unknown' creditors are on any lists we are aware of.").

4.    Discovery will reveal which assertion is true. These documents—which, again, Hertz previously conceded were relevant and drafted a proposed order that would require it to produce them—go directly to the communications-based known-creditor issue that the Court directed the parties to address in upcoming papers and hearings. The Court should deny both the Motion to Quash and the Supplemental Motion and compel production of the documents directly relevant to whether the 123 Claimants against whom Hertz has raised timeliness objections were known creditors.

## JURISDICTION AND VENUE

5.    This Court has jurisdiction to consider this Objection and Cross-Motion under 28 U.S.C. §§ 1334 and 157 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012. This is a core proceeding under 28 U.S.C. § 157(b), and the Court may enter a final order consistent with Article III of the United States Constitution.[6] Venue of this proceeding and the Motion is proper in this District under 28 U.S.C. §§ 1408 and 1409.

---

[6]    If it is determined that the Court, absent consent of the parties, cannot enter a final order on this Motion consistent with Article III of the United States Constitution, the Claimants consent to the Court's entry of such an order. For the avoidance of doubt, the Claimants reserve all other rights with respect to their claims, including the right to contest the Court's authority to determine any other issue relating to such claims and to demand a trial by jury.

6.      The legal predicates for the relief requested in the Cross-Motion are Rules 26, 33, 34 and 37 of the Federal Rules of Civil Procedure (the "Federal Rules"), as incorporated by Rules 7026, 7033, 7034 and 7037 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule 7026-1(a) of the Local Rules of Practice and Procedure for the United States Bankruptcy Court for the District of Delaware (the "Local Rules").

## PERTINENT BACKGROUND[7]

7.      On September 20, 2021, the Reorganized Debtors filed their *Twenty-First Omnibus (Non-Substantive) Objection to False Police Report Claimants' (I) Amended and Superseded Claims, (II) Duplicative Claims, and (III) Late Claims* [Case No. 20-11218, D.I. 5898] (the "21st Omnibus Objection") and (b) *Twenty-Second Omnibus (Substantive) Objection to False Police Report Claimants' Non-Compliant, Unsubstantiated, and Class Claims, and Request for a Limited Waiver of Local Rule 3007-1(f)(iii), to the Extent Such Rule May Apply* [Case No. 20-11218, D.I. 5899] (the "22nd Omnibus Objection," and together with the 21st Objection, the "Objections"), seeking to disallow and expunge certain False Police Report Claimants' proofs of claim. As set forth above, the Reorganized Debtors objected to certain claims as untimely filed after the October 21, 2020, general bar date (the "General Bar Date").

8.      Following service of the Objections, on September 28, 2021, the False Police Report Claimants propounded discovery requests on the Reorganized Debtors [Case No. 20-11218, D.I. 5946],[8] requesting responses to interrogatories and requests for admission on or

---

[7]     For purposes of this Objection and Cross-Motion, the Claimants assume the Court's familiarity with the nature of their dispute with the Reorganized Debtors and request that the Court take judicial notice of the adjudicative facts set forth in their previously filed pleadings in accordance with Rule 201 of the Federal Rules of Evidence.

[8]     The September 2021 discovery was served on behalf of the False Police Report Claimants who were before the Court at that time. On September 30, 2021, those False Police Report Claimants also served a notice of deposition pursuant to Federal Rule 30(b)(6).

before October 12, 2021 and requests for production on or before October 19, 2021. *See Declaration of Jaclyn C. Marasco in Support of False Police Report Claimants' (I) Objection to Reorganized Debtor's Supplemental Motion for Entry of a Protective Order Limiting Written Discovery and (II) Cross-Motion to Compel Interrogatory Reponses and Production of Documents* ("Marasco Declaration"), attached hereto as **Exhibit B**, at Exs. 1–3. The Reorganized Debtors did not respond to the Claimants' discovery requests by either date on the stated ground that the response deadlines were inconsistent with the Federal Rules. On October 20, 2021, the False Police Report Claimants filed their responses to the Objections without the benefit of their requested discovery [D.I. 50 & 51, respectively].

9.      On October 21, 2021, the Reorganized Debtor filed the Motion to Quash, seeking to limit its obligation to respond to the Claimants' September 28, 2021, discovery requests and to "preclude[ Claimants] from serving discovery requests on the Reorganized Debtor solely in connection with the [] Objections." Mot. to Quash at Ex. A ¶ 4. The Reorganized Debtor argued that "the only arguments in the [] Objections that potentially raise a factual issue are those regarding notice to the 29 individuals identified in the 'late claims'. . . . The few facts underlying the legal arguments are (i) what notice was provided to those 29 individuals and (ii) what, if any, *records the Debtors had of those individuals and their claims*." *Id.* ¶ 5 (emphasis added). The Reorganized Debtor's proposed order on the Motion to Quash proposed to produce "all non-privileged documents in the Reorganized Debtor's possession, custody, or control related to the 29 individuals identified in the 'late claims' that are subject to the [21st Omnibus] Objection" by November 18, 2021. *Id.* at Ex. A ¶ 3.

10.     The False Police Report Claimants filed the MTQ Objection on October 28, 2021, citing, among other things, the Reorganized Debtor's concession "that topics covering most of

the pending discovery are relevant to the 21st Omnibus Objection" and the Reorganized Debtor's failure to "contest that information relating to the debtors' ability to ascertain or provide notice to claimants is relevant." MTQ Obj. ¶¶ 10 & 12. Thus, the Claimants argued (and still contend), the Reorganized Debtor was simply "attempt[ing] to dictate what evidence the Claimants can use to prove their case in opposition to the [Objections]." *Id.* ¶ 12. The Motion to Quash was fully briefed as of November 1, 2021. [*See* D.I. 92.]

11.    On November 4, 2021, the Court held a hearing regarding the Objections and the Motion to Quash. At the hearing and in a subsequent order [D.I. 187] (the "Second Scheduling Order"), the Court ordered further proceedings and deadlines regarding the Claims filed, or to be filed, by the False Police Report Claimants. In connection therewith, the Court continued the Motion to Quash to assess the relevance of the Claimants' requested discovery after the filing of certain pleadings pursuant to the Second Scheduling Order. *See* Nov. 4, 2022, Hr'g Tr. at 63-64:17-13 (THE COURT: "I'll say it's a continuance of the motion to quash because I think the discovery -- much of the discovery or some of the discovery that the creditors sought were related to that [known creditor] issue. Am I wrong on that? MR. JACKSON: No, that was my point I think earlier is that we have -- we have a contested matter now, we're here today on it, and there was discovery that's relevant to defenses that we've raised in the contested matter, that discovery is still pending. So that was my point about not kind of kicking out discovery of these facts which are relevant today, you know, to some further date. . . . THE COURT: Well, I'd like to -- I will address the discovery and what will proceed at that January conference once we have seen what the motions say and what creditors fall in that category, what number of creditors fall in that category."); *see also* Jan. 4, 2022, Hr'g Tr. at 7:5-9 (MR. SHORE: "At the [November 4] hearing, the Court, as I said, gave out some homework, but also adjourned our motion for a

protective order on certain of the discovery on the expectation that certain things were going to happen in the interim that would inform the Court of handling of that motion.").

12.     On December 6, 2021, in accordance with the Second Scheduling Order, certain of the False Police Report Claimants filed motions (i) for entry of an order deeming certain proofs of claim timely filed and accordingly, overruling the 21st Omnibus Objection as to those proofs of claim [D.I. 190] (the "Group 3 Motion"); and (ii) for entry of an order pursuant to Bankruptcy Rule 9014, directing that Bankruptcy Rule 7023 shall apply to the False Police Report Claimants' putative class claims and, accordingly, overruling the 22nd Omnibus Objection as to class issues [D.I. 192] (the "Class Motion").[9] On the same date, certain other False Police Report Claimants filed a motion for entry of an order granting relief from the order confirming the plan of reorganization in these cases so as to permit the movants to assert claims against the Reorganized Debtors [D.I. 193] (the "Group 4a Motion"),[10] along with declarations (with supporting exhibits) supporting the claims raised by twenty-six individual "Group 4a" Claimants.

13.     On December 20, 2021, the False Police Report Claimants served on the Reorganized Debtor additional requests for production and interrogatories tailored to the

---

[9]     On December 20, 2021, the Reorganized Debtor filed, under seal, its objections to the Group 3 Motion and the Class Motion [D.I. 214 & 215, respectively] and served, under the auspices of Local Rule 9018-1, only those counsel to the Claimants admitted to practice before the Court. [D.I. 219, Ex. A, ¶ 3] ("The Confidential Information shall remain under seal, and shall not be made available to anyone, except . . . any counsel to the Movants that has been admitted in this chapter 11 case and subject to this Court's jurisdiction pursuant to Local Rule 9019-1(a) or (b)[.]"). The False Police Report Claimants replied on December 29, 2021 [D.I. 228 & 230, respectively]. The Reorganized Debtor's corresponding motion to seal [D.I. 219] was denied in part by the Court at the hearing held on February 9, 2022.

[10]     On January 24, 2022, the Reorganized Debtor filed its *Preliminary Objection to the Group 4 False Police Report Claimants' Motion for Relief from the Confirmation Order to Pursue Claims Outside of Bankruptcy or, in the Alternative, for Extension of the General and Administrative Bar Dates under Rules 3003(c) and 9006(b) and Related Relief* [D.I. 296].

questions raised in the Group 3 Motion and Group 4a Motion. *See* Marasco Decl. Exs. 4–5. The requests for production and interrogatories included a January 19, 2022, deadline for responses and objections in accordance with Federal Rules 33(b)(2) and 34(b)(2)(A). *Id.; see* Fed. R. Civ. P. 33(b)(2) ("The responding party must serve its answers and any objections within 30 days after being served with the interrogatories."); Fed. R. Civ. P. 34(b)(2)(A) ("The party to whom the request is directed must respond in writing within 30 days after being served[.]").

14.    On January 4, 2022, the Court held "a status conference regarding discovery in respect of the [Group 3 Motion and Class Motion] and the Objections and regarding scheduling and discovery on the timely, amended proofs of claim" [D.I. 187 ¶ 8]. At the status conference, the Court determined that discovery would go forward on the known-creditor issue in connection with the Group 3 Motion and the Group 4a Motion. Counsel to the Reorganized Debtor nonetheless misrepresented to the Court that it had already provided the False Police Report Claimants with formal responses and objections to the Claimants' discovery requests. Jan. 4, 2022, Hr'g Tr. at 37-38:19-6 (THE COURT: "The debtor says that you guys are going ahead with discovery. MR. NELSON: That's fine, except we haven't received anything. THE COURT: All right. Do you want me to schedule—have you—you served discovery. And Mr. Shore, when can you respond? MR. SHORE: We've given them the formal responses and objections. . . . Right? And we have a motion to quash[11] with respect to the things that we're in dispute about. Mr. Hershey may be on here. We'll start rolling it out the door."). For the avoidance of doubt, the Reorganized Debtor has yet to provide any responses and objections to the Claimants' September 2021 and December 2021 discovery requests.

---

[11]    It is not clear why the Reorganized Debtor believed that the Motion to Quash, filed on October 21, 2021, could relate to the Claimants' December 20, 2021, discovery requests.

15.     At the status conference, the Court also requested supplemental briefing on certain questions relating to the known-creditor issue described in the Group 3 Motion and the Group 4a Motion on or before February 14, 2022 (the "February 14 Briefing"), in connection with the hearing set for March 2, 2022 (the "March 2 Hearing"). In particular, the Court wished to explore "contacts with Hertz" with respect to particular Claimants. *See* Jan. 4, 2022, Hr'g Tr. at 30-31:25-13 (MR. JACKSON: "Necessarily, you're going to have what can be determined on the 'did this creditor' -- were they a known creditor based up [sic] their contacts with Hertz. … So I just wanted to clarify that I don't think -- as it's described, I don't think it's possible that you're really teeing up the known/unknown issue in its entirety.").

16.     On January 16, January 31, February 3, and February 5, 2022, the Reorganized Debtor produced a paucity of documents,[12] which the Reorganized Debtor designated as "Highly Confidential" (without justification and where no confidentiality concerns reasonably arise), subject to the alleged restrictions of Local Rules 9010-1 and 9018-1. *See* Marasco Decl. at Exs. 6–9; *see also id.* at Exs. 6–7 ("These documents have been designated "Highly Confidential" and are being produced to you pursuant to Local Rule 9018-1(f) and should only be shared among those counsel to the "False Police Report Claimants" admitted in the chapter 11 cases pursuant to Local Rule 9010-1(a) or (b)."). As a result of the Reorganized Debtor's self-imposed procedural constructs, none of the (few) produced documents may be shared with the Claimants themselves or the Claimants' primary contact counsel. [*See* D.I. 329.]

17.     On January 20, 2022, following various meet-and-confers with the Reorganized Debtor, the Claimants emailed the Reorganized Debtor to request, among other things, a

---

[12] While counsel to the False Police Report Claimants have met and conferred with counsel to the Reorganized Debtor regarding the various deficiencies of each limited production, the parties have reached an impasse. *See* Certification of Compliance.

description of the searches that were conducted and the criteria used in selecting documents for production, along with a description of Hertz's record retention/deletion policy. *See* Marasco Decl. at Ex. 10. The Claimants also requested that the Reorganized Debtor supplement its initial production by January 28, 2022, to include at least: (i) phone (or chat) records relating to the Claimant, including call logs related to the Claimant; (ii) financial/accounting/banking records relating to the Claimant; (iii) records of communications between the Claimant and various departments of the Debtors (e.g., customer service/roadside assistance/etc.); (iv) internal notes associated with each Claimant's rental; (v) communications involving the local branch that rented the vehicle to the Claimant or reported the theft; (vi) records from the local branch that rented the vehicle; (vii) records of communications with third-parties involving the Claimant or vehicle at issue; (viii) documents showing when the vehicle at issue was next rented (or disposed of if not rented again); (ix) records of communications or any interactions with law enforcement or prosecutors, including those involving employee discussion/participation in ongoing prosecutions; (x) records of client profiles, rental history, and priority status, etc.; (xi) any internal tracking (including spreadsheets or databases such as the database of those against whom police reports were filed and including any tracking through third-party agents such as ESIS) related to the claimant, including any possible claim related to the filing of false police reports or the allegations in the proofs of claim or the false police reports generally; and (xii) any internal documents related to any discussion about the Claimant related to any possible claim or dispute related to the allegations in the proof of claim or with respect to their allegation that they had been falsely arrested (collectively, the "Information Categories"). *Id.* For most, if not all, of the Information Categories, the Reorganized Debtor has taken the position that conducting a search for these key, relevant documents would be "unduly burdensome," including because it

believes some of these documents to be in the Claimants' possession, and has limited its production accordingly. As of the date of this filing, only 1100 pages of documents (and many fewer complete documents) have been produced for the 46 Group 3 and Group 4a Claimants, and 0 documents have been produced for the 77 Group 4b Claimants. This meager total includes immaterial productions like, for example, the Claimants' own declarations that were previously filed on the bankruptcy docket.

18.    In that same January 20 correspondence, the Claimants requested responses and objections to the December 20, 2021 interrogatories and document requests, which were due on January 19, 2022. *See* Marasco Decl. at Ex. 10; Suppl. Mot. ¶ 11; *see also* Fed. R. Civ. P. 33(b)(2) & 34(b)(2)(A). According to the Supplemental Motion: "The Reorganized Debtor responded that the Court had clearly set a schedule for limited discovery, consistent with Federal Rules . . . 33(b)(2) and 34(b)(2)(A).[13] The Reorganized Debtor further stated that it did not believe it was necessary or appropriate to expend estate resources responding to discovery requests that could be narrowed or eliminated depending on how the Court ruled on the preliminary matters it had directed to move forward." Suppl. Mot. ¶ 11. For the avoidance of doubt, as of the date of this filing, the Reorganized Debtor has not provided a single interrogatory response—even after counsel offered to extend the response deadline—and instead has sought wholesale relief from the Court.

19.    Between January 10, 2022[14] and February 4, 2022, however, the Reorganized Debtor propounded interrogatories on a total of *123* "Group 3" and "Group 4a" Claimants,

---

[13]    The Reorganized Debtor's reference to Federal Rules 33(b)(2) and 34(b)(2)(A) makes little sense because 30 days from the date of *service* (i.e., December 20, 2021) is January 19, 2022.

[14]    Because the interrogatories served on January 10, 2022, demanded responses on or before January 17, 2022, the False Police Report Claimants filed their *Motion for Entry of a Protective*

posing six requests to each (i.e., *738* interrogatories in total). The Claimants timely served responses and objections (where appropriate) to *252* interrogatories on February 9, 2022. [D.I. 343.] The responses included detailed descriptions regarding rental information that should be in the Debtors' own records, extensively described information that was already available in the filed proofs of claim, and fulsomely responded to intrusive questions about the dates of certain communications with counsel. Although no other interrogatory responses are yet due under the Federal Rules, the Claimants also served early responses to an additional 24 interrogatories posed to any remaining Group 3 and Group 4 Claimants so that they could remain on the same procedural track as other Claimants in that group.  All remaining interrogatories are not yet due for response under the Federal Rules based on their date of service.[15]

      20.    On January 27, 2022, Claimants again contacted the Reorganized Debtor to confirm their understanding that the Reorganized Debtor was refusing to produce the documents for the Information Categories identified in Claimants' January 20 correspondence, or alternatively, to renew Claimants' request for same with respect to Group 3, Group 4a and Group 4b Claimants. *See* Marasco Decl. at Ex. 11 ("In the email exchange below we identified numerous categories that were missing from your productions. . . . We discussed these during the [meet and confer] and understand you are not going to produce those [Information] [C]ategories of discovery. To be clear, we believe that your failure to produce these documents is highly

---

*Order and Granting Related Relief* [D.I. 278] ("Motion for Protective Order") on January 14, 2022, to enforce the requirements of Federal Rule 33 and to excuse, to the extent necessary, the Claimants' non-compliance with the arbitrary response deadline set by the Reorganized Debtor. The Claimants filed the Motion for Protective Order after meeting and conferring with the Reorganized Debtor on January 12, 2022, during which the Claimants asked for, but the Reorganized Debtor could not provide, any independent legal basis for the purported January 17, 2022 response deadline.

[15]  Claimants reserve all rights under Federal Rule 33(a)(1) with respect to the remaining 462 interrogatories.

prejudicial and that these documents are relevant to further support the Claimants' proofs of claim on issues going forward on March 2. We understand that you will shortly produce documents for Group 4a (and later Group 4b) similar to those produced for Group 3, but what you produced for Group 3 is far from complete, can be misleading, and does not respond to our requests regarding the individualized notice issue teed up for the March 2 hearing or comply with what we believe the Court expects you to produce in advance of the hearing. Please consider this email a renewal of our request for the Debtors to produce the categories of documents set forth below for Group 3, Group 4a, and Group 4b Claimants."). Counsel to the Reorganized Debtor responded "As I stated in my email and reiterated on the meet-and-confer, it is not clear exactly what you want for certain of these items, nor is it clear why they are relevant, particularly if we are limiting discovery at this stage to the "known/unknown" issue that is teed up for March 2. I am happy to discuss further if you believe it would be helpful, but it seems we may have a fundamental disagreement as to the appropriate scope of discovery in light of the topics currently at issue." Marasco Decl. at Ex. 12.

21.    On January 31, 2022, the Reorganized Debtor filed the Supplemental Motion, contending that the Claimants' December 20, 2021, "discovery requests, like the discovery requests that are the subject of the Motion [to Quash], seek a wide-ranging array of information and materials that would be overly broad and unduly burdensome in any context, let alone the context of the limited 'preliminary' matters that the Court has directed to move forward. Indeed, since the Reorganized Debtor has filed the Motion [to Quash], the Court has further clarified the narrow scope of permissible discovery, ruling that discovery regarding the alleged 'systemic' issue is paused, and the only matter presently going forward is the 'known' creditor issue regarding the Group 3 and Group 4 Claimants." Suppl. Mot. ¶ 1.

22.     The Claimants again reached out to the Reorganized Debtor on February 4, 2022, reiterating their request for a description of the searches that the Reorganized Debtor conducted and the criteria used in selecting documents for production, along with a description of Hertz's record retention/deletion policy, in accordance with Local Rule 7026-3. *See* Marasco Decl. at Ex. 13. The Reorganized Debtor responded on February 6, 2022, by providing certain information regarding the searches conducted, but stated that the information was being provided pursuant to Local Rule 9018-1(f), such that the Reorganized Debtor's correspondence itself has *also* been designated "Highly Confidential." *See* Marasco Decl. at Ex. 14; *see also id.* at Ex. 15 ("[F]or the avoidance of doubt, and in case my reference to Local Rule 9018-1(f) did not make it clear, the below information is to be treated as highly confidential.").

23.     After yet another meet and confer explaining precisely what documents were requested and why they were relevant, Claimants expressed on February 8, 2022, their view that the Reorganized Debtor "should directly search the Debtors' servers (especially email servers) for all communications relating to each Claimant. *See* Marasco Decl. at Ex. 16. They should produce any documents connected to what happens after a theft report is sent—*i.e.*, tracking, prosecuting, and responding to anything related to arrests or prosecutions. They should produce remaining records related to the rental, including the contract notebook, authorization hold logs, and information from the local office. And they should produce (even if via a privilege log) any lists that include a Claimant." *Id.* The Claimants specifically stated "We don't think a cursory 'burden' objection relieves the Debtors from producing this indisputably relevant information. Please get back to us on the open items above and please confirm whether you'll be producing the requested documents. If you will produce anything more, please do so ASAP." *Id.*

...

24.    At 3:44 p.m. (ET) on February 14, the day this brief was due and as Claimants were preparing to file this Objection and Cross-Motion, counsel to the Reorganized Debtor emailed Claimants' counsel to represent that "none of the claimants who we are objecting to as 'unknown' creditors are on any lists we are aware of." *See* Marasco Decl. at Ex. 17. This email directly contradicts counsel's prior representation that some of the Claimants *did* appear on such lists but that Hertz was nevertheless refusing to produce them on privilege grounds. *See* Marasco Decl. at Ex. 9 ("[T]he only lists of which we are presently aware that reflect the names of Group 3 and Group 4 Claimants are privileged, as they were prepared by or at the direction of counsel."); *see also id.* at Ex. 13 (Feb. 4, 2022, email from Claimants' counsel) ("Relatedly, we've discussed lists naming the claimants in our earlier emails and discussions. We haven't heard back from you all on that since your January 23 email suggesting you would consider our position (and earlier email that you would, at a minimum, identify all claimants listed on any internal lists). And I haven't seen anything produced. Please advise on the status of those productions."); *id.* at Ex. 18 (Jan. 14, 2022, email from Hertz's counsel) ("To the extent a Group 3 or Group 4 Claimant is identified on an internal list (i) maintained by the Debtors, (ii) of which the Debtors are reasonably aware and (iii) relevant to Claimants' claims (i.e., not simply a list of 'people to whom Hertz has rented cars'), we will identify that Claimant.").

## OBJECTION AND CROSS-MOTION

### I.    Governing Standards

25.    It is "well recognized that the federal rules allow broad and liberal discovery." *Pacitti v. Macy's*, 193 F.3d 766, 777 (3d Cir. 1999). Federal Rule 26(b)(1) allows discovery "regarding any non-privileged matter that is relevant to any party's claim or defense[;] . . . [i]nformation within this scope of discovery need not be admissible in evidence to be

discoverable." Fed. R. Civ. P. 26(b)(1). Discovery requests must also be "proportional to the needs of the case." *Id.*

26.     Any test for relevance starts with Federal Rule of Evidence 401's standard— "Evidence is relevant if: it has any tendency to make a fact [of consequence] more or less probable." Fed. R. Evid. 401. As the Third Circuit has explained, Rule 401's standard for relevance is "very broad" and "does not raise a high standard." *Gibson v. Mayor & Council Wilmington*, 355 F.3d 215, 232 (3d Cir. 2004) (internal quotation marks omitted). And as the Reorganized Debtor's own authorities suggest, "[f]or purposes of discovery, relevancy is broadly construed." *Inventio AG v. ThyssenKrupp Elevator Americas Corp.*, 662 F. Supp. 2d 375, 380 (D. Del. 2009) (cited at Motion to Quash ¶ 26); *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978) (noting that similar language in an earlier iteration of the rule "ha[d] been construed broadly"). In acknowledgment of this broad standard, "discovery is ordinarily allowed under the concept of relevancy unless it is clear that the information sought can have no possible bearing upon the subject matter of the action." *In re NewStarcom Holdings, Inc*., 514 B.R. 394, 399–400 (Bankr. D. Del. 2014) (internal quotation marks and citations omitted); *see also BAE Sys. v. Aircraft Controls, Inc.*, 224 F. R. D. 581, 589 (D. Del. 2004) ("Courts in this jurisdiction have a liberal discovery policy, permitting full disclosure of information except in situations where compelling circumstances warrant protection of the information.").

27.     Proportionality, on the other hand, is determined based on considerations of "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1).

II.    **The Debtors Have Refused to Search for or Produce Critically Relevant Documents.**

28.    After the Claimants propounded their December 20 discovery requests, during the January 4 Status Conference, the Court directed the parties to focus first on individualized communications and records addressing whether a Claimant was a "known" creditor (as opposed to "systemic" issues). Hertz has already conceded that, for that legal question, it should produce "all non-privileged documents in the Reorganized Debtor's possession, custody, or control related to the . . .  individuals identified [with] the 'late claims.'" Mot. to Quash at Ex. A ¶ 3. But, somewhat mystifyingly, Hertz has refused to do that for the Claimants whose claims are now before the Court even though the Claimants have identified discrete subsets of those document requests that are uniquely relevant to the known-creditor issue.

29.    As set forth below, the Claimants' Information Categories seek information regarding the Debtors' knowledge of the specific Claimants whose claims are now before the Court. Several discovery requests also relate to the Debtors' practices for tracking false police report creditors against whom police reports had been filed; to the extent records exist compiling or identifying the Claimants, they are plainly relevant to whether the Debtors gave adequate notice to Group 3, Group 4a, and Group 4b Claimants. The Reorganized Debtor has nonetheless refused conduct a fulsome search for documents responsive to the Claimants' targeted discovery requests, and it should be compelled to produce the highly relevant documents and communications in the Information Categories identified below:

30.    **Records of communications between the Claimant and the Debtors:** Hertz has stated that it has produced certain records connected with customer care, roadside, and vehicle control. That is a farce. Hertz has refused to directly search its servers for emails or similar communications to, from, or regarding a Claimant. Those communications are central to the known-creditor question specific to each Claimant. Instead, Hertz has cherry-picked a handful of

departments and looked at its own selection of filing systems from which it produces its own summaries of those records when they happen to be included in those other systems. For example, Hertz has refused to directly produce the Claimant's communications with "vehicle control" or other departments, and instead relies on the annotations in the "theft package"—the very document that the Claimants maintain is misleading and omits relevant communications. The Claimants have requested a direct search of Hertz's email servers for communications, as opposed to indirect searches in particular recordkeeping systems of the Reorganized Debtor's choosing that may or may not be created after an email is received. And the Reorganized Debtor should moreover search *all* recordkeeping systems, not just those from its own selected departments. Productions to date have omitted other key departments, like those handling extensions, billing, legal claims, and local investigations of potential theft.

31.    In fact, it is apparent that Hertz's productions are missing key communications with the Claimants because the Claimants have submitted communications that the Debtors have not produced from their own records. To give just a few examples:

- On July 1, 2021, Claimant Tonia Rich emailed Hertz Customer Relations, saying: "My name is Tonia Rich I rented a vehicle from Hertz my rental agreement number is 591619000. My boyfriend was pulled over in the vehicle in March and he is being charged with Grand Theft Auto for a vehicle I rented and paid for. I am unsure of what the employee at the location were doing but I was told everything was fine. I spoke with Joshua Boles on June 12 the concerning the matter. He told me he was going to reach out to the legal department and I have yet to hear back. I would like for someone to please call me back it is very urgent I have left him numerous messages. My phone number is [omitted].  Thank you." Claim No. 15749, at ¶ 22 (emphasis added).

- On April 29, 2020, Claimant Christian Mangano rejected an offer from Hertz to settle his claims, saying "the $500 check that has been offered doesn't even come close to being sufficient compensation for the trauma I was caused . . . being stopped by multiple police vehicles, ordered to step out of my vehicle at gunpoint with hands up and shirt pulled up, ordered to my knees while the officers forced me to my stomach to place handcuffs tightly around my wrists and ushered to the back of the police cruiser for over an hour while the matter was investigated." Claim No. 15939 at 26 (email correspondence).

- On September 17, 2019, Claimant Zanders Pace emailed "vehcntl@hertz.com" saying "This e-mail is about a female by the name of Simone who has made a false statement to police to have charges brought against Zanders Pace anyone with a direct contact. Call [number omitted]." Claim No. 15662 at 16 (¶ 31). Mr. Pace's proof of claim also details and attaches many other emails Hertz has not produced.

32.     Hertz's refusal to directly search its servers for communications to, from, and regarding the Claimants intentionally and knowingly omits communications central to the known-creditor issue. Thankfully, Ms. Rich, Mr. Mangano and Mr. Pace have preserved and presented evidence of these particular emails, but Hertz undoubtedly has additional records of communications from other Claimants (and third parties and internal emails) that it is simply refusing to produce. The Court should order direct searches and productions of relevant communications related to each Claimant.

33.     **Records of communications with third parties involving the Claimant or vehicle at issue & records of communications or any interactions with law enforcement or prosecutors, including those involving employee discussion/participation in ongoing prosecutions:** Conversations with third parties, including law enforcement, insurers, or Uber and

Lyft, are directly relevant to the theft reports that have been filed. Indeed, certain Claimants have identified such communications from their own records or that were indirectly recorded in other Hertz systems. Claimant Jessica Andolino—who was arrested, jailed, and prosecuted after Hertz rented her a stolen car—has a record associated with her rental of a call with a police officer. Hertz's employee recorded: "Driver of vehicle arrested[.] Officer wanted to make sure vehicle was not reported stolen. Confirmed contract is current and he gave me the renter name. Confirmed that as well." *See* Marasco Decl. at Ex. 19 (HERTZ_FPRP_0002004). Claimant Bianca DeLoach submitted a *nolle prosequi* motion filed by the State of Georgia saying, "[t]he State communicated with a Hertz representative from New Jersey who was unable to explain how the defendant paid in full in February for the vehicle, yet the vehicle was reported stolen. The New Jersey representative was also unable to identify any number of attempts made by Hertz to contact the defendant and request the vehicle returned." Claim No. 15764, at 27. But Hertz has not produced any of these communications about Ms. DeLoach. Because communications with third parties can plainly reflect Hertz's notice of a claim, Hertz should be required to produce those communications.

34.    The Reorganized Debtor has refused to generally produce such records on the stated ground that this request presents an undue burden. These documents are essential, but in all events collecting them should not present an outsized burden. Hertz's own policies *require* that "[a]ll follow up correspondence pertaining to Theft Vehicle Reports must be sent to the responsible Corporate/Country Security Manager, who will distribute copies to other appropriate individuals, with a copy retained in the Vehicle Theft/Conversion file." Case No. 20-11218, D.I. 5032-2, at 6 (Hertz Policy W7-02, *Reporting Vehicle Thefts and Conversions* § (A)(18)); *id.* § (A)(19) (requiring record retention of "Theft Vehicle Reports and all related documentation").

Hertz has not produced these "Vehicle Theft/Conversion file[s]," or any of the correspondence related to its reports of vehicle theft. What happens *after* Hertz files the theft report is critical because it will often specifically demonstrate why the report was unfounded. Hertz should be compelled to produce all communications with third parties about the Claimant, its theft report of the Claimant, and the Claimants, rental, including and especially the unproduced "Vehicle Theft/Conversion file[s]" and "all related documentation" *that are required to be preserved under its own policies*.

35.    **Internal notes associated with the Claimants' rentals:** The Reorganized Debtor has produced only internal notes from vehicle control, which generated the theft package. The Claimants have asked for any information in the "DASH" and "CARRENT" systems, or any similar inventory/vehicle/rental tracking systems, which are specifically described in recent theft packages (but not older theft packages):

> <u>**IMMEDIATELY BEFORE**</u> reporting this as a theft to law enforcement you <u>**MUST**</u> check for further movement of this vehicle in the following systems:
>
> CARRENT        DASH
> VAW            RENT WORKS
>
> If there is no further movement found, proceed with filing of the theft package to law enforcement.

*See e.g.,* Marasco Decl. at Ex. 20 (HERTZ_FPRP_0000164) The Claimants have also requested the "Contract Notebook" for each Claimant, which records conversations and rental information. This was produced in a pre-bankruptcy production for at least one Claimant at HERTZ_0000128. *See Declaration of Alfred Fleuhr in Support of False Police Report Claimants' (I) Objection to Reorganized Debtor's Supplemental Motion for Entry of a Protective Order Limiting Written Discovery and (II) Cross-Motion to Compel Interrogatory Responses and Production of Documents* ("<u>Fleuhr Declaration</u>"), attached hereto as **<u>Exhibit C</u>**, at Ex. 1.  As shown below,

these records may note, for example, that Hertz "spoke to customer" on a certain date and what was said. *Id.* ("customer … paying out of pocket.").



Hertz should produce these records that may reflect conversations with the Claimants and related notes.

36.    **Communications involving the local branch:** Hertz has refused to search local branches of its company for records relating to the Claimants, including communications between the local Hertz location and the Claimant. The Reorganized Debtor has made clear that it believes searching for records from local branches would be unduly burdensome, and it has refused to search local branches for communications with the Claimants. But the local branch

typically (1) rents the vehicle to the Claimant, interfaces with the Claimants during the rental, (2) handles some extensions, (3) receives customer complaints and assertions that something went wrong, and (4) *reports the Claimant for theft when the corporate office directs it to do so*. The local branch's records, especially of communications with the Claimant and law enforcement, are therefore also highly relevant to the issues before the Court.

37.     **Financial/accounting/banking records relating to the Claimants:** The Reorganized Debtor stated that it has searched for and produced invoices related to each rental. It has not produced actual payment records. The actual payment details are important given that Hertz reports to police that a customer has not paid, and the Claimants have requested that the Reorganized Debtor produce records of payments received from all sources, including information stored in Citrix Receiver (an internal tracking program that shows such payments) and logs of "authorization holds." An authorization hold is a "hold" on funds in a Claimant's account that, the Claimants understand, often occurs when a Claimant calls to extend a rental. These records therefore go directly to communications between Hertz and a Claimant and to their payments for the rental. These records are available because Hertz produced an "authorization hold" log in connection with Group 1 Claimant Magalie Sterlin in Hertz's pre-bankruptcy production. *See* Fluehr Decl. at Ex. 2 (HERTZ_0001746).  Despite producing this information for another Claimant, Hertz has refused to produce that information for the 123 Claimants who submitted claims after the General Bar Date.

38.     **Documents showing when the vehicle at issue was next rented (or disposed of if not rented again):** These documents are relevant because they show when Hertz "recovered" a "stolen" vehicle. Sometimes that will occur long before a Claimant is arrested, charged, or prosecuted (or even reported for theft). The timing circumstances of recovery can demonstrate to

Hertz that a theft report or subsequent prosecution was baseless. The Reorganized Debtor has not produced these documents on the stated ground that this request presents an undue burden. That response is surprising because *theft reports contain a printout of the vehicle rental history. See* Marasco Decl. at Ex. 21.[16] The Claimants seek the same records as to what happened after the theft report, as opposed to right before it. If the Debtors can produce these records in order to accuse the Claimant of theft, the Reorganized Debtor surely can produce the similar records to enable the Claimant to show that the accusation was unfounded.

39.    **Records of client profiles, rental history, priority status, etc**.: This information is purportedly included in the theft package (and, the Claimants allege, is often misrepresented in the theft package), and thus relevant to the known-creditor issue before the Court. Moreover, some of the Claimants exchanged vehicles or engaged in multiple rentals that may have resulted in theft reports because Hertz inaccurately logged the vehicle exchanges, and these documents would shed light on that issue. The Reorganized Debtor has not produced these documents on the stated ground that this information would be in the Claimants' possession, despite acknowledging that such history would be available from an internal system. Indeed, Hertz has already evidently searched "a central repository that can generate reports on an individual's

---

[16]    For example, see the below except from a theft package, HERTZ_FPRP_0000182.



rental history" called "Terradata." Marasco Decl. at Ex. 14. It just hasn't produced the results of that search or any related customer profiles or priority status trackers to the Claimants.

40.     **Any internal tracking (including spreadsheets or databases such as the database of those against whom police reports were filed and including any tracking through your third-party agents such as ESIS) related to the Claimant, including any possible claim related to the filing of false police reports or the allegations in the proofs of claim or the false police reports generally:** Any lists or compilations that record the Claimant's name or information are directly and indisputably relevant to whether that Claimant was a known creditor. Hertz has already produced similar information in another Court, but refused to produce any like that in this Court [*see* Case No. 20-11218, D.I. 1071, Ex. A, Declaration of Frederick Jekel, at 4]. What is more, the Reorganized Debtor previously admitted that such lists exist and reflect the names of Group 3, Group 4a, or Group 4b Claimants. *See* Marasco Decl. at Ex. 9 ("[T]he only lists of which we are presently aware that reflect the names of Group 3 and Group 4 Claimants are privileged, as they were prepared by or at the direction of counsel."). The Reorganized Debtor has not produced these documents, first on the stated ground that all such documents would be withheld as work product, and as of today, on the stated ground that "none of the claimants we are objecting to as 'unknown' creditors are on any lists we are aware of." *Id.* at Exs. 9 & 17.

41.     As to Hertz's counsel's eleventh-hour assertion that "none of the claimants who we are objecting to as 'unknown' creditors are on any lists we are aware of," this assertion is untenable. *See* Marasco Decl. at Ex. 17. This email directly contradicts the Reorganized Debtor's prior representation that some of the Claimants *did* appear on such lists. *See* Marasco Decl. at Ex. 9 ("[T]he only lists of which we are presently aware that reflect the names of Group 3 and

Group 4 Claimants are privileged, as they were prepared by or at the direction of counsel."). To the extent that Hertz no longer is objecting to the claims of some Group 3 or Group 4 Claimants, it has not informed Claimants. And to the extent Hertz is maintaining its objection to all Group 3 and Group 4 Claimants, it is impossible to square counsel's email of February 14 with counsel's prior representation. If Hertz is now withdrawing its objections to certain Group 3 or Group 4 Claimants in an attempt to avoid production of these spreadsheets and lists, such an action is entirely improper and gamesmanship at its worst. A party cannot refuse to produce a relevant document, then attempt to stipulate away its relevancy on a narrow issue in an attempt to avoid the disclosure of the document that is plainly relevant to the case. The document was relevant when its production was required. Hertz should produce it. Hertz also notably has not even revealed which "lists" exist, except to say that the Claimants they are objecting to are not "on any lists we are aware of." Discovery will reveal the accuracy of this blanket assertion. Regardless, Hertz's handling of this issue demonstrates the need to move quickly and expeditiously with substantive discovery from Hertz so that the parties and the Court can understand the scope of Hertz's knowledge—both to these individual Claimants and to its false police reporting generally.

42.    Indeed, based on information available to the Claimants, Hertz's assertions appear misleading at best. For instance, Hertz maintains a Do-Not-Rent List, which according to Hertz's policies is "a **list** of individuals to whom Hertz has decided it no longer wishes to rent vehicles." Fluehr Decl. at Ex. 3 (HERTZ001611–1633: Hertz Policy RAC-51.1, *Do Not Rent* § (A)(1)) (emphasis added). Hertz's internal policies specifically call for adding a customer to the Do-Not-Rent List when they meet the following criteria: "[w]here the customer has failed to respond to a vehicle overdue notice(s), or has been unable to provide an excusable reason for not returning a

Hertz vehicle after such notice is communicated (verbally or written), resulting in OKC Vehicle Control . . . *filing a conversion or theft report with the police*." *Id.* § (C)(14)(a) (emphasis added). "The DNR status for this criteria is *permanent*." *Id.* (emphasis added). It is virtually impossible to believe that the Do-Not-Rent List does not include the Claimants, almost all of whom meet that criterion.

43.    In fact, in the hours since Hertz's eleventh-hour email, counsel have identified **14** Claimants in Group 3 and 4a where Hertz's internal records specifically note that they were added to the Do-Not-Rent List. While the total number upon careful review will certainly be much, much higher, those **14** listed Claimants are:

| Document Bates Number[17] | Claimant | Annotation |
|---|---|---|
| HERTZ_FPRP_0000057 | Charles Bort | "DNR Submitted: 14C" |
| HERTZ_FPRP_0000081 | Janette Brown | "DNR Submitted: 7" |
| HERTZ_FPRP_0000089 | Tyresha Caudle | "DNR Submitted: 14C" |
| HERTZ_FPRP_0000165 | Sean Hurt | "DNR Submitted: 14C" |
| HERTZ_FPRP_0000190 | Heather Kasdan | "DNR Submitted: 14C" |
| HERTZ_FPRP_0000261 | Paula Murray | "DNR Submitted: 14C" |
| HERTZ_FPRP_0000391 | Marissa White | "DNR Submitted: 14C" |
| HERTZ_FPRP_0002013 | Carmen Bosko | "DNR Submitted: 14C" |
| HERTZ_FPRP_0002127 | Rejeana Meado | "DNR Submitted: 14C" |
| HERTZ_FPRP_0002182 | Jenelle Reece-Williams | "DNR Submitted: 14C" |
| HERTZ_FPRP_0002232 | Andrew Seaser | "DNR Submitted: 13" |
| HERTZ_FPRP_0002335 | Melinda Smith | "DNR Submitted: 14C" |
| HERTZ_FPRP_0002540 | Tedheri Usude | "Renter will be Added to DNR" |
| HERTZ_FPRP_0002664 | Reginald Brown | "DNR Submitted: 14C" |

44.    The majority of those persons are specifically noted as "14C" additions to the Do-Not-Rent List, which corresponds to policy (C)(14) quoted above. And that information comes directly from the *front page of the theft reports* at issue, as shown by example below:

---

[17]    These documents are attached as part of Exhibit 4 to the Marasco Declaration that was submitted as Exhibit B to the Claimants' February 14 Briefing.

Report Type:  C    *IMMEDIATE ATTENTION REQUIRED*    ***Confidential***

HERTZ

Initial Report of Vehicle

**REPORT THIS VEHICLE STOLEN TO YOUR LOCAL POLICE DEPARTMENT WITHIN 4 DAYS AND RETURN THIS SHEET TO OKC VEHICLE CONTROL WITH REQUIRED THEFT INFORMATION HIGHLIGHTED ON THIS SHEET TO:**

Okctheftandrecovery@hertz.com or 405-775-3078

VCWX0390    **Confidential**

Report Type:  C

TR=Theft Renter

TF=TheftFraud

C=Conversion

HERTZ

OKC Vehicle Control

Initial Report of Vehicle

Theft ID:   92412

| Unit No | Year | Make | Model | | Type | Color | Serial No. | |
|---|---|---|---|---|---|---|---|---|
| 0007107188 | 2015 | NISSAN | ALTIMA | | 4DR | SIL | 1N4AL3AP0FN375462 | |
| Lic Plate YR | Lic ST | Lic NO. | Odometer Out | | Odometer In | Owning Area | Rental No. | |
| 2017 | NY | GSD4776 | 39992 | | | 01998 | 195855656 | |
| Date & Time Rented | Rented From | Due Date | | Location Due | Home Phone | Business Phone | Local Phone |
| 09/30/2016 10.00.00 | 05864-12 | 11/04/2016 09.55.00 | | 05864-12 | 8437095364 | | |

| Renter's Name | Residence Address (City, State, & Zip Code) |
|---|---|
| PAULA MURRAY | 42 HOBSON STREET PORTSMOUTH    VA23704 |
| Employer's Name | Secondary Address (City, State, & Zip Code) |
| | 42 HOBSON STREET, PORTSMOUTH, VA 23704 |

| Identification Used | Driver's License No. | ST. | DT of Birth | Person Renting Veh Provided False Info.(Yes/No) |
|---|---|---|---|---|
| XXXXXXXXXXXX0870 | 004248120 | SC | 1973 | No |

| Dept. Reported to | Reported to | Reported By | Reported On | Alarm Number |
|---|---|---|---|---|
| | | | | |

| Keys Returned? | Veh Locked? | LDW | Book Value | Date & Time Stolen | Location of Vehicle at Time of Theft |
|---|---|---|---|---|---|
| No | No | N | 10789.77 | 11/04/2016 09:55 | IN RENTERS POSSESSION, VA |
| | | | | See Attached Pages for the overdue notes for the Worksheet ID:    16100902308 |

THE VEHICLE APPEARED ON THE OVERDUE REPORT. THE PHONE NUMBER ON THE RENTAL WAS CALLED. ALL AVAILABLE SYSTEMS HAVE BEEN CHECKED. NO ADDITIONAL INFORMATION HAS BEEN FOUND.

Date certified Demand Letter Was Sent:    11/01/2016    Return Mail:

Force Return Hired:    11/01/2016    Repossession Service Hired:

Rental Rep:    1484    DNR Submitted:    14C

Prepared By:    H. Bates    Prepared Date:    11/15/2016 10:29

VC Supervisor Signature    Printed Date:    11/15/2016 10:31:21 AM

*See* Marasco Decl. at Ex. 22 (HERTZ_FPRP_0000261). The record directly contradicts the Reorganized Debtor's assertion "that none of the claimants who we are objecting to as 'unknown' creditors are on any lists we are aware of." *Id.* at Ex. 17 (Feb, 14 email from Hertz's counsel).

45.    Even more remarkably, the Do-Not-Rent List policy provides on its face that Hertz files some false police reports. As discussed above, Policy "(C)(14)" or "14C" requires those customers Hertz reports for theft by conversion to be added permanently to the Do-Not-Rent List. Policy. (C)(14), however, provides one notable exception: "[i]f it is later determined

29

that the vehicle was previously returned, or a valid rental extension had been granted, the individual must be promptly removed from DNR."  Fluehr Decl. at Ex. 4 (Hertz Policy RAC-51.1, *Do Not Rent* § (C)(14)(a)). In other words, Hertz's own policies specifically note that customers are sometimes falsely reported for theft and require that specific steps be taken in response to a false report. There is no excuse for Hertz's failure to produce the Do-Not-Rent List and any other list that names the Claimants.

46.    As to withholding for privilege,[18] the Claimants have requested a privilege log identifying any documents withheld and the basis for the withholding, but the request has gone unacknowledged. The privilege log is critical because a "document satisfies Rule 26(b)(3) where in light of the nature of the document and the factual situation in the particular case, the document can fairly be said to have been prepared or obtained because of the prospect of litigation." *Martin v. Bally's Park Place Hotel & Casino*, 983 F.2d 1252, 1258 (3d Cir. 1993) (internal quotation marks and citation omitted). Hertz should immediately produce those records (even if via privilege logs) so that the Claimants can analyze and (if necessary) contest assertions of privilege. In fact, on January 14, 2022, counsel for the Reorganized Debtor represented that "TO THE EXTENT A GROUP 3 OR GROUP 4 CLAIMANT IS IDENTIFIED ON AN INTERNAL LIST (I) MAINTAINED BY THE DEBTORS, (II) OF WHICH THE DEBTORS ARE REASONABLY AWARE AND (III) RELEVANT TO CLAIMANTS' CLAIMS (I.E., NOT SIMPLY A LIST OF "PEOPLE TO WHOM HERTZ HAS RENTED CARS"), WE WILL IDENTIFY THAT CLAIMANT." Marasco Decl. at Ex. 18. One full month later, Hertz still has not done that.

---

[18]    To the extent Hertz can make a valid privilege assertion, Claimants submit that it may still be subject to a crime-fraud exception.

47.     Moreover, there is evidence that Hertz works with third-party claims administrators to track claims against the company, including ESIS. Hertz should produce or identify any responsive documents or lists in possession of third parties and maintained for Hertz. This approach is consistent with the Third Circuit's charge that "documents are in the 'control' of the responding party if the party has 'the legal right or ability to obtain the documents from another source upon demand.'" *In re Glob. Power Equip. Grp. Inc.,* 418 B.R. 833, 841 (Bankr. D. Del. 2009) (quoting *Mercy Cath. Med. Ctr. v. Thompson,* 380 F.3d 142, 160 (3d Cir. 2004)).

48.     **Any internal documents related to any discussion about the specific Claimant relating to the theft report, possible legal claims, or any dispute over the content or validity of any accusation, report or arrest**: To the extent that responsive documents exist, they would be nearly dispositive of the fact that Hertz was aware of a Claimant's claim. The Reorganized Debtor has stated that such a search would be unduly burdensome, at least in part because many documents would be privileged. If any communications or documents were claimed to be privileged, the Claimants requested a privilege log. Claimants do not believe that such documents would be privileged. And responsive documents claimed to be privileged would be uniquely relevant if they are privileged because of pre-litigation activity, which would be dispositive of the fact that the Debtors were aware of a claim. Facts, of course, are not privileged. Regardless, Hertz has done nothing. Hertz should be ordered to produce all such documents or a related privilege log if responsive documents are withheld.

49.     **Interrogatories**: The Claimants have also served a number of interrogatories, including those served on December 20, 2021. While some of the interrogatories seek information related to the systemic issues, others unquestionably seek to establish background

and facilitate discovery relevant to individual Claimants and their contacts with Hertz. In particular, the Reorganized Debtor should be compelled to respond immediately to Interrogatory Nos. 2, 3, 7 and 20 in the December 20, 2021, interrogatories. These interrogatories seek to facilitate individualized discovery—not systemic discovery—by identifying persons and organizations with information relevant to particular cases; they should be answered within 14 days of the March 2 Hearing.

- **Interrogatory No. 2:** "Identify, by FPR Claimant, all persons involved in the submission of any Theft Package to any law enforcement agency related to an FPR Claimant or the vehicle that he or she rented including any and all persons who approved the submission of the Theft Package to any law enforcement agency."

- **Interrogatory No. 3**: "Identify, by FPR Claimant, all persons involved in investigating any alleged vehicle theft by an FPR Claimant."

- **Interrogatory No. 7:** "Identify, by FPR Claimant, by name the vehicle repossession services You claim to have contacted or hired as part of Your efforts, if any, to recover vehicles allegedly stolen by any of the FPR Claimants."

- **Interrogatory No. 20**: Identify, by FPR Claimant, all persons involved in any rental of a vehicle to an FPR Claimant, including those at any local office, those who supervise the local office, and those involved with the rental at a national level."

50.     Similarly, Interrogatory Nos. 12, 13, 18 and 19 relate to relevant theft policies, record storage practices, and record retention policies. Each of these interrogatories is directly relevant to each Claimant's ability to seek informed discovery on an ongoing basis. Providing

these responses will facilitate further discovery on the individualized issues relevant to each Claimant:

- **Interrogatory No. 12**: "Identify by name, if any, the internal policies related to Your actions and procedures in response to inquiries from law enforcement agencies, including any inquiries about whether the subject of a Theft Package has a valid rental agreement."

- **Interrogatory No. 13**: "Explain how recordings with renters, especially and including the FPR Claimants, are stored and saved for future use. This response requires a description of the digital (or analog) storage media, how such media is organized, who has access to such media, and the circumstances surrounding the destruction of such media."

- **Interrogatory No. 18**: "Identify by name and version the software used to track rentals, rental extensions, rental returns and inventory by Hertz from 2015 to the present."

- **Interrogatory No. 19**: "Identify by name and version the software used to create lists, spreadsheets, or rolls of renters against whom Hertz (or any other Debtor) has filed a vehicle Theft Package."

51.    In sum, the 8 interrogatories listed above seek information that indisputably will facilitate discovery on the individualized issues the Court is currently considering. While they were served almost two months ago, the Claimants have not received any response. The Reorganized Debtor should be compelled to respond within 14 days of entry of the Proposed Order so as not to further delay discovery.

52.     The Claimants recognized that other interrogatories—and some requests for production broader than the Information Categories described above—seek information that may be most relevant to the systemic issues. These discovery requests were served before the January 4 hearing. Because the Court has paused discovery on the systemic issues, the Claimants do not seek to compel full responses to those interrogatories in this Cross-Motion (reserving, of course, all rights to do so in the future). With that said, as explained in the supplemental individual-contacts brief also filed today, the Court should open discovery into the systemic issues and set a rapid timeline for that discovery. If so, and as discussed in the February 14 Briefing, the Reorganized Debtor should provide its responses and objections to all outstanding discovery within 14 days of the March 2 Hearing so that the parties can complete discovery on that issue in a timely manner.

## III.    The Discovery Requests Are Relevant and Proportional

53.     There really should be no legitimate debate that Hertz should produce the documents and records described above. Each of the above categories fits within a reasonable understanding of the Reorganized Debtor's own proposed order on the Motion to Quash when responding to earlier discovery on the same issue. Specifically, Hertz proposed that the Court order it to produce "all non-privileged documents in the Reorganized Debtor's possession, custody, or control related to the 29 individuals identified in the 'late claims' that are subject to the [21st Omnibus] Objection" within 14 days. Mot. to Quash at Ex. A ¶ 3. The Court can and should compel Hertz to do what Hertz itself agreed to do earlier in this litigation, while also specifying that documents and communications responsive to each of the above Information Categories must specifically be produced and that any documents or other records of any form

withheld on a claim of privilege must be described in a privilege log.[19] There is no basis whatsoever for Hertz to refuse to produce what is previously agreed to produce.

54.     To start, the Information Categories described above are directly relevant to the claimant-specific known-creditor issue the Court has directed the parties to address. Those efforts are directly material under the *Chemetron* decision, which requires that creditors are "reasonably ascertainable" and calls for "[r]easonable diligence" from the debtor. *Chemetron Corp. v. Jones*, 72 F.3d 341, 346 (3d Cir. 1995) (internal quotation marks omitted). As characterized by the Supreme Court, a "known" creditor is one whose identity is either known or "reasonably ascertainable **by the debtor**." *Tulsa Pro. Collection Serv., Inc. v. Pope,* 485 U.S. 478, 490 (1988) (emphasis added); *see In re J.A. Jones, Inc.*, 492 F.3d 242, 250 (4th Cir. 2007) ("[A] creditor is 'reasonably ascertainable' if **the debtor can uncover** the identity of that creditor through 'reasonably diligent efforts.'") (emphasis added) (quoting *Mennonite Bd. of Missions v. Adams*, 462 U.S. 791, 798 n. 4 (1983)). Each of the Information Categories seeks information directly in Hertz's possession that will inform the Court's assessment of the known-creditor inquiry.

55.     It is absurd to suggest, as the Reorganized Debtor has repeatedly asserted, that the burden is somehow on the Claimants to produce all information about known-creditor status without the ability to obtain the information in the debtor's possession. *See* Jan. 4, 2022, Hr'g Tr. at 16:6-13 (MR. SHORE: "The issue we have with respect to discovery is whether or not these 20 claimants, out of the tens of millions of rentals that are had a year, are entitled to wide-

---

[19]    The Claimants have operated under the understanding that Hertz would produce, in good faith, records for the Group 4b Claimants tracking those produced and requested to date by the Group 3 and Group 4a Claimants, each of whom has served formal discovery requests. The Claimants trust that Hertz will produce for Group 4b documents consistent with the Court's order on this Cross-Motion.

ranging discovery; not off-the-shelf stuff, but forcing us to go back to whatever and try to reconstruct history to find out whether they were known creditors, **when, in fact, that information should be in their possession**.") (emphasis added). The known-creditor question focuses, in part, on the information possessed by the Reorganized Debtor. It is long past time for Hertz to produce that information in discovery.

56.     Simply ignoring the broad standard of Federal Rule 26, the Reorganized Debtor seeks to limit the discovery available to the Claimants on the stated ground that "only questions concerning 'preliminary issues,' specifically the 'known' creditor issue, are moving forward at this time." Suppl. Mot. ¶ 13. In so doing, the Reorganized Debtor—as the party expressly tasked with identifying and providing notice to creditors in order to obtain a wholesale discharge of its pre-petition and pre-effective-date liability—has attempted to evade all production obligations by reference to an overarching "undue burden," citing no authority for such proposition and offering no evidence or details as to the particular burden of any given discovery request.

57.     That blanket plea of undue burden should be denied. In an effort to evade the Claimants' discovery on "systemic" issues, Hertz previously submitted to the Court that it would produce "all non-privileged documents in the Reorganized Debtor's possession, custody, or control related to" Claimant's with purportedly late-filed claims. Mot. to Quash at Ex. A ¶ 3. It cannot now credibly assert that the very productions it proposed to make pose an undue burden.

58.     Furthermore, this discovery is uniquely appropriate because Hertz already should have searched—but as the other briefing submitted today shows, either did not search or chose to ignore—its records for known creditors *before* it was required to give notice of bankruptcy proceedings. In bankruptcy, "*a debtor must make reasonably diligent efforts* to uncover the identities of those who have claims against it . . . ." *In re Thomson McKinnon Secs., Inc.*, 130

B.R. 717, 720 (Bankr. S.D.N.Y. 1991) (emphasis added) (citing *Charter Crude Oil Co. v. Petroleos Mexicanos (In re Charter Co.)*, 125 B.R. 650, 655 (M.D. Fla. 1991)); *accord Trans World Airlines*, 96 F.3d at 690 ("***[T]he debtor must undertake*** a careful examination and diligent search of its own books and records." (emphasis added) (citing *Chemetron*, 72 F.3d at 346-47)). Moreover, "[s]ituations may arise when creditors are 'reasonably ascertainable,' although not identifiable through the debtor's books and records." *Chemetron*, 72 F.3d, at 347 n.2 (emphasis added). And "[i]f the ***debtor knows, or should know***, of its potential liability to a specific creditor, that creditor is a known creditor entitled to actual notice." *Thomson McKinnon Secs.*, 130 B.R. at 720 (emphasis added) (citing *Atlantic Richfield Co. v. Sharon Steel Corp. (In re Sharon Steel Corp.)*, 110 B.R. 205, 206 (Bankr. W.D. Pa. 1990)); *see also In re Trans World Airlines, Inc.*, 96 F.3d 687, 690 (3d Cir. 1996) ("a diligent ***search of*** TWA's ***records by its bankruptcy counsel*** would, or at least should, have revealed the Berger claims." (emphasis added)). Hertz should not be heard to complain about the burden of doing what it previously failed to do.

59.     The Reorganized Debtor has generally suggested that it should not have to search for or produce any communications that *might* be in the Claimants' possession. Because of its inconsistency with the rules governing discovery, Claimants' counsel specifically requested during a meet and confer that the Reorganized Debtor provide a citation or other legal support for that position—none was provided. In all events, there is no rule that a party should not search for responsive documents because they *might* be in possession of another party. And that rule would make particularly little sense here and defeat the purpose of the discovery itself, where the presence of a document in the debtor's possession is itself a persuasive fact in the known-creditor inquiry. Finally, a major corporation will undoubtedly have more sophisticated record

retention policies than ordinary persons who rented cars (and were later reported for theft). It will be significantly less burdensome for a corporation to identify its own business records than for counsel to work with hundreds of individual Claimants not in the rental business to prepare a complete correspondence file, or to otherwise locate, interpret, and summarize the Reorganized Debtor's business records. And productions from Hertz will ensure that the record will be more complete. The Cross-Motion should be granted for the same reasons the Supplemental Motion should be denied.

60.    Finally, the undue burden standard asserted by the Reorganized Debtor is an element of proportionality, which considers "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). These factors were addressed in the earlier MTQ Objection and continue to favor discovery. MTQ Obj. ¶¶ 33–38. If anything, these factors now favor discovery even more strongly. 103 additional creditors have come forward asserting the same issues that were previously presented by a much smaller group. And that number is all but certain to grow considerably. The Reorganized Debtor has now publicly acknowledged that it historically reports no less than 3,365 of its own customers for vehicle theft each year. [D.I. 344 at Ex. 1 ¶ 54.] Since the start of 2016, that suggests that Hertz has filed ***about 20,000 theft reports against its own customers***—of which the False Police Report Claimants represent only a fraction. And its employee has testified that "there have been some inaccuracies in some of the [theft] reporting." Feb. 9, 2022, Hr'g Tr. at 9:14-15 (testimony of Michael A. Severance). The Debtors' obligation to examine and search their own records to identify and provide notice to potential creditors is now known to be

substantially more critical to many more people than the Claimants had identified by October 2021.

### III.    The "Highly Confidential" Designations Are Inappropriate

61.    The Reorganized Debtor, without providing any basis for doing so, has marked as "Highly Confidential" the relatively few documents produced to date, specifically demanding that the productions be shared only with "counsel to the [Claimants] admitted in the chapter 11 cases pursuant to Local Rule 9010-1(a) or (b)." Marasco Decl. at Ex. 6. The Reorganized Debtor has also sought to designate confidential the communications between the parties' counsel. These unreasonable designations and demands prevent sharing pertinent information with certain counsel for Claimants not admitted in bankruptcy court—including the primary contact counsel for each Claimant—and with the Claimants themselves.

62.    It is uniquely and unreasonably burdensome and inequitable to force Claimants to navigate a discovery dispute and a Claimant-specific legal inquiry into known-creditor status based on communications without allowing the Claimants or their points of contact to see the underlying documents and correspondence (or learn of the communications described within those documents).

63.    Most if not all of the documents produced to date have no plausible basis for being deemed "highly confidential." And the Reorganized Debtor has obviously made no efforts to identify genuinely confidential documents. For example, the Reorganized Debtor has marked "highly confidential" the declarations previously submitted by the Claimants. *See* Marasco Decl. at Ex. 23 (HERTZ_FPRP_0000185–189 (May 20, 2021 Declaration of Claimant Heather Kasdan, marked "Highly Confidential – Subject to Delaware Local Bankruptcy Rule 9018")). Moreover, the largest number of produced documents comprise Hertz's "theft packages," *which*

*are publicly filed with police and can sometimes be obtained by public record request.* Most of the remaining productions are highly specific documents related to the Claimants' individual rentals (e.g., contracts, invoices, tow receipts) that have no plausible grounds for being marked highly confidential. This is also true of the correspondence between the parties' counsel. In short, the Reorganized Debtor has abused the Local Rules and confidentiality provisions by vastly over-designating documents as confidential.

## RESERVATION OF RIGHTS

The Claimants reserve all rights to seek further discovery or further order from this Court as needed. Moreover, the Group 4b Claimants, who have not received any discovery to date, expressly reserve all rights pertaining to discovery.

## COMPLIANCE WITH LOCAL RULE 7026-1(d)

The undersigned counsel hereby certifies that the Claimants have conferred in good faith with the Reorganized Debtor in an effort to reach agreement on the matters set forth in this Cross-Motion, as required by Local Rule 7026-1(a), but no agreement has been reached as of the date of filing of this Cross-Motion.

## NOTICE

Notice of this Objection and Cross-Motion has been provided to the following parties: (i) counsel to the Reorganized Debtor; (ii) the Office of the United States Trustee for the District of Delaware (the "U.S. Trustee"); and (iii) any such other party entitled to receive notice pursuant to Bankruptcy Rule 2002. The Claimants submit that no other or further notice is necessary under the circumstances.

*[Remainder of Page Intentionally Left Blank]*

## CONCLUSION

WHEREFORE Claimants respectfully request that the Court sustain this Objection to the

Supplemental Motion, enter the Proposed Order granting the Cross-Motion, and grant any such

other and further relief as the Court deems just and proper.

Dated: February 14, 2022

**FRANCIS ALEXANDER, LLC**
Francis Malofiy
280 N. Providence Road, Suite 1
Media, PA 19063
Telephone: (215) 500-1000
Facsimile: (215) 500-1005
Email: francis@francisalexander.com

**SUSMAN GODFREY LLP**
Justin A. Nelson (TX Bar No. 24034766)
John P. Lahad (TX Bar No. 24068095)
1000 Louisiana, Suite 5100
Houston, TX 77002-5096
Telephone: (713) 651-9366
Facsimile: (713)654-6666
Emails: jnelson@susmangodfrey.com
         jlahad@susmangodfrey.com

**FAEGRE DRINKER**
**BIDDLE & REATH LLP**

*/s/ Jaclyn C. Marasco*
Patrick A. Jackson (Bar No. 4976)
Ian J. Bambrick (Bar No. 5455)
Jaclyn C. Marasco (Bar No. 6477)
222 Delaware Avenue, Suite 1410
Wilmington, DE 19801
Telephone: (302) 467-4200
Facsimile: (302) 467-4201
Emails: patrick.jackson@faegredrinker.com
         ian.bambrick@faegredrinker.com
         jaclyn.marasco@faegredrinker.com

*Co-Counsel for the False Police Report Claimants[20]*

---

[20]    Of the 230 Claimants listed in Exhibit A to the Claimants' February 14 Briefing, Susman Godfrey, LLP, does not represent Claimants Tia Lee and Sharifa Wright. All counsel listed above represent Claimant Larryelle Magee subject to approval of a motion to employ in Claimant Magee's chapter 13 bankruptcy proceeding, *In re Larryelle P. Magee*, Case No. 21-32885 (JPN) (Bankr. S.D. Tex.).

**<u>EXHIBIT A</u>**

**Proposed Order**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

|  |  |
|---|---|
| In re: | Chapter 11 |
| Rental Car Intermediate Holdings, LLC,[1] | Case No. 20-11247 (MFW) |
| Reorganized Debtor. | **Ref. D.I. ___** |

**ORDER COMPELLING PRODUCTION OF DOCUMENTS**

Upon the motion (the "Cross-Motion")[2] of certain False Police Report Claimants for entry of an order compelling the production of documents, as more fully set forth in the Cross-Motion; and the Court having reviewed the Cross-Motion; and the Court having jurisdiction to consider the Motion and the relief requested therein in accordance with 28 U.S.C. §§ 1334 and 157 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012; and the Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2) and that this Court may enter an order consistent with Article III of the United States Constitution; and the Court having found that venue of this proceeding and the Cross-Motion in this District is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and it appearing that proper and adequate notice of the Motion has been given and that no

---

[1]    The last four digits of the tax identification number of Reorganized Debtor Rental Car Intermediate Holdings, LLC ("RCIH") are 2459. The location of the Reorganized Debtors' service address is 8501 Williams Road, Estero, FL 33928. On September 28, 2021, the Court entered a final decree closing each of the chapter 11 cases for The Hertz Corporation and its affiliated reorganized debtors (collectively, the "Reorganized Debtors") other than RCIH's chapter 11 case. Commencing on September 28, 2021, all motions, notices, and other pleadings relating to any of the Reorganized Debtors shall be filed in RCIH's chapter 11 case, Case No. 20-11247 (MFW).

[2]    Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Cross-Motion.

other or further notice is necessary; and upon the record herein; and after due deliberation and sufficient cause appearing therefor, it is hereby

ORDERED that the Reorganized Debtor's Motion for a protective order is denied; and it is further

ORDERED that the Claimant's Cross-Motion is GRANTED; and it is further

ORDERED that the Reorganized Debtor, all related Debtors, Reorganized Debtors, or subsidiaries, as applicable shall produce all non-privileged documents in their possession, custody, and control related to the 123 Claimants that filed claims after the General Bar Date, specifically including any documents responsive to the Information Categories within 14 days of entry of this Order; and it is further

ORDERED that the Reorganized Debtor shall serve responses to Interrogatories 2, 3, 7, 12, 13, 18, 19, and 20 as served by certain Claimants on December 20, 2021 within 14 days of entry of this Order; and it is further

ORDERED that the Reorganized Debtor shall provide formal responses and objections to all other outstanding discovery requests within 14 days of entry of this Order; and it is further

ORDERED that the Reorganized Debtor shall review all discovery produced to date and mark highly confidential only those documents that must be marked confidential out of genuine necessity; further the Reorganized Debtor shall do the same for all subsequent discovery and shall explain to counsel for Claimants, upon request, why a document has been marked highly confidential; and it is further

ORDERED that this order shall not affect any Claimant's right to serve further discovery; and it is further

2

ORDERED that this Court retains jurisdiction with respect to all matters arising from or in relation to the interpretation and implementation of this Order.