**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re | Chapter 11 |
| Rental Car Intermediate Holdings, LLC,[1] | Case No. 20-11247 (MFW) |
| Reorganized Debtor. | Re: D.I. 332[2] |

**REORGANIZED DEBTOR'S PRELIMINARY OBJECTION TO GROUP 4b FALSE POLICE REPORT CLAIMANTS' MOTION FOR RELIEF FROM THE CONFIRMATION ORDER TO PURSUE CLAIMS OUTSIDE OF BANKRUPTCY OR, IN THE ALTERNATIVE, TO DEEM CLAIMS TIMELY OR FOR EXTENSION OF GENERAL AND ADMINISTRATIVE BAR DATES UNDER RULES 3003(c) AND 9006(b) AND RELATED RELIEF**

The above-captioned debtor (the "**Reorganized Debtor**") hereby files this objection (the "**Objection**") to the *Group 4b False Police Report Claimants' Motion for Relief from the Confirmation Order to Pursue Claims Outside of Bankruptcy or, in the Alternative, to Deem Claims Timely or for Extension of General and Administrative Bar Dates Under Rules 3003(c) and 9006(b) and Related Relief* [D.I. 332] (the "**Group 4b Lift Stay Motion**"), and respectfully states as follows:

---

[1] The last four digits of the tax identification number of Reorganized Debtor Rental Car Intermediate Holdings, LLC ("**RCIH**") are 2459. The location of RCIH's service address is 8501 Williams Road, Estero, FL 33928. On September 28, 2021, the Court entered a final decree closing each of the chapter 11 cases for The Hertz Corporation and its reorganized debtor affiliates (the "**Reorganized Debtors**," and prior to the Effective Date (as defined below), the "**Debtors**") other than RCIH's chapter 11 case. Commencing on September 28, 2021, all motions, notices, and other pleadings relating to any of the Reorganized Debtors shall be filed in RCIH's chapter 11 case, Case No. 20-11247 (MFW).

[2] As used herein, "Main D.I." references are to the docket in Case No. 20-11218, and "D.I." references are to the docket in Case No. 20-11247.

RLF1 26888558v.1

## PRELIMINARY STATEMENT[3]

1. Six months ago, the Court denied the Group 3 Lift Stay Motion [Main D.I. 5656], holding, "I will, at this point, deny the request for relief from the plan injunction and encourage the parties to work out the process by which some of the preliminary issues can be addressed quickly." *See* Aug. 18, 2021 Hr'g Tr. at 25:11-14. As part of that ruling, the Court instructed the parties to litigate Claimants' claims in "tiers," so that the "many preliminary issues relevant to allowance of th[e] claims . . . [can] be addressed." *Id.* at 24:7-9. The Court specifically stated that "at a later stage, I can determine . . . after ruling on these preliminary issues, whether or not I have jurisdiction, or whether it is appropriate to hold that the District Court has jurisdiction over this." *Id.* at 24:19-21.

2. Despite the Court's August 18 ruling, Claimants filed another lift stay motion on December 6, 2021 [D.I. 193], which the Reorganized Debtor challenged as improper [D.I. 296]. Rather than wait for the Court's guidance on the propriety of that motion, Claimants now file yet another lift stay motion. Most of the Claimants who are the subject of the motions assert prepetition claims, like the vast majority of the Claimants in Groups 1, 2 and 3. While certain of the Claimants assert postpetition (but pre-Effective Date) claims, that was also true of certain of the Group 3 Claimants, whose lift stay motion the Court denied on August 18, 2021. There is nothing unique about these Claimants that justifies these motions, which were inconsistent with the Court's clear guidance.

3. Moreover, 74 of the 77 Group 4b Claimants did not file their proofs of claim until the week before January 31. As a result, the Reorganized Debtor continues to review its books and records and was able to address those Claimants based only on the declarations attached to

---

[3] Capitalized terms used but not otherwise defined in this Preliminary Statement are defined later herein.

their proofs of claim. Indeed, whereas the Reorganized Debtor had months to review the Group 3 and Group 4a declarations and its books and records before briefing the "known" creditor issue as to those Claimants, the Reorganized Debtor has had only about three weeks to review the declarations filed by Group 4b and its records.[4] Accordingly, the filing of the Group 4b Lift Stay Motion was premature at best. Additionally, the Group 4a Lift Stay Motion and Group 4b Lift Stay Motion together span 195 pages *without the exhibits*. With exhibits, they span nearly two thousand pages. There is simply no justification for burdening the Reorganized Debtor and the Court with this volume of material on an issue that is premature and may be obviated all together.

4. Ostensibly recognizing that the Group 4b Lift Stay Motion contradicts the Court's prior guidance and rulings, Claimants state in the caption of the motion that the hearing date will be split between a "preliminary hearing date" on March 2 pertaining to the "issues in Feb. 14 briefing," with a subsequent hearing date to be determined. Yet despite splitting the hearing, there is only one objection deadline, suggesting that the Reorganized Debtor purportedly must respond to all issues now, regardless of when (or if) they will be heard. Moreover, it is not clear what Claimants mean by the reference to "issues in Feb. 14 briefing" in the caption. Particularly, it is not clear whether Claimants are implying that they have split their briefing on the "issues in Feb. 14 briefing" between the supplemental brief that they submitted on February 14 [D.I. 351] and the Group 4b Lift Stay Motion, or whether the briefing in the Group 4b Lift Stay Motion is duplicative of the issues raised in Claimants' February 14 briefing. This approach inappropriately requires the Reorganized Debtor to choose between responding to issues that the Court has ruled are not currently relevant (and may never become relevant), responding to the same issues twice, or

---

[4] Based on its initial review, the Reorganized Debtor disputes that the Group 4b Claimants were "known" creditors, but reserves the right to continue and supplement its review.

parsing the Group 4b Lift Stay Motion to determine what issues are relevant and non-duplicative and must be addressed, with the risk of Claimants alleging default. Even then, the Reorganized Debtor can give only preliminary responses, as it has had insufficient time to thoroughly and meaningfully review the Debtors' books and records with respect to each Group 4b Claimant for the reasons stated above.[5]

5.      Accordingly, as with the response to the Group 4a Lift Stay Motion, the Reorganized Debtor files this objection on a preliminary basis, reserving all rights to supplement its responses as appropriate if and when the Court rules that other issues will move forward. The Claimants will not be prejudiced by the Reorganized Debtor's reservation of its rights to supplement its responses and objections to the Group 4b Lift Stay Motion, particularly because substantive issues regarding these Claimants will not go forward at the March 2 hearing. Rather, the Court and the Reorganized Debtor will be prejudiced if the Reorganized Debtor is not permitted to complete its investigation into the Group 4b Claimants and, thereafter, supplement this Objection, because an incomplete record of the Debtors' due diligence with respect to these Claimants will provide little to no benefit to the Court with respect to the "known" creditor issue.[6]

---

[5] The Reorganized Debtor also objects to the extent Claimants are using these motions to add "known creditor" arguments that should have been asserted in their motion for leave to file late claims filed on December 6, 2021 [D.I. 190]. *See, e.g.*, Group 4b Lift Stay Motion at 66, n.32 (expanding on discussion of *Grossman's* from late claims briefing). The Reorganized Debtor reserves the right to argue that any such argument should have been brought in the December 6, 2021 briefing and is untimely.

[6] In particular, the Group 4b Lift Stay Motion discusses the claims of several Group 4b Claimants to demonstrate that they were "known" creditors. The Court instructed the parties to give their "preliminary" views regarding the "known" creditor issue in separate briefing, which the Reorganized Debtor filed as instructed on February 14. As the Reorganized Debtor noted in that briefing, it has been unable to review its books and records for the Group 4b Claimants, given that all but three of them filed proofs of claim the week before January 31. The Reorganized Debtor therefore reserves the right to address any facts regarding the Group 4b Claimants pursuant to any deadlines to be set by the Court. Future briefing will also address the issue of whether the Debtors were aware of the alleged "injury" that Claimants claim, especially given that, as shown in the Debtors' February 14 brief, the Debtors' records undercut Claimants' narrative, providing a further reason why they were not "known" creditors.

4

## BACKGROUND

A.  **General background**

6.  On May 22, 2020 (the "**Petition Date**"), each of the Debtors commenced with this Court a voluntary case under chapter 11 of the Bankruptcy Code (collectively, the "**Chapter 11 Cases**"), which were jointly administered for procedural purposes.

7.  On August 26, 2020, the Debtors filed a motion [Main D.I. 1140] (the "**Bar Date Motion**") seeking entry of an order (i) establishing deadlines by which creditors must file proofs of claim in the Chapter 11 Cases and (ii) approving the form and manner of noticing such deadlines.  The Debtors extended the Bar Date Motion's objection deadline for certain parties.  Main D.I. 1230.  Ultimately, the Debtors received, and resolved, one formal reservation of rights [Main D.I. 1189] from the Ad Hoc Group of Litigation Creditors as well as informal comments from ten additional parties, including the Official Committee of Unsecured Creditors and other creditor constituencies.  *See* Main D.I. 1230.

8.  On September 9, 2020 the Court entered the *Order Establishing Bar Dates and Related Procedures for Filing Proofs of Claim, Including Claims Arising Under Section 503(b)(9) of the Bankruptcy Code, and Approving the Form and Manner of Notice Thereof* [Main D.I. 1240] (the "**Bar Date Order**").  That same day, the Debtors filed the *Notice of Deadlines for Filing Proofs of Claim, Including Claims Arising Under Section 503(b)(9) of the Bankruptcy Code Against Debtors* [Main D.I. 1243] (the "**Bar Date Notice**").

9.  The Bar Date Order and Bar Date Notice established, among other things, October 21, 2020 at 5:00 p.m. (prevailing Eastern Time) as the deadline to file proofs of claim in the Chapter 11 Cases for persons or entities (except governmental units (as that term is defined in section 101(27) of the Bankruptcy Code)) (the "**General Bar Date**").

10. On June 10, 2021 (the "**Confirmation Date**"), the Court entered the *Order (i) Confirming Second Modified Third Amended Joint Chapter 11 Plan of Reorganization of The Hertz Corporation and its Debtor Affiliates and (ii) Granting Related Relief* [Main D.I. 5261] (such underlying chapter 11 plan, together with the Plan Supplements (as defined therein), all schedules, and exhibits thereto, the "**Plan**"). On June 30, 2021 (the "**Effective Date**"), the Plan became effective in accordance with its terms and the Debtors became the Reorganized Debtors. *See* Main D.I. 5477.

### B. Claimants

11. Claimants consist of approximately 230 individuals[7] that are identified in various proofs of claim filed against the Debtors, including both the Group 3 Claimants and Group 4 Claimants.

12. On October 20 and 21, 2020, Claimants filed a total of 91 proofs of claim against the Debtors.[8] Claimants filed those proofs of claim on behalf of three groups: (i) the original 26

---

[7] Claimants had previously filed pooled claims on behalf of three groups: a form asserting a claim on behalf of "False Police Report Claimants No. 1" (a group of 26 individuals); another asserting a claim on behalf of "False Police Report Claimants No. 2" (a group of 115 individuals); and a third asserting a claim on behalf of "False Police Report Claimants No. 3" (a group of 29 individuals). On December 6, 2021, Claimants filed a motion for relief from the Plan injunction on behalf of 26 additional claimants identified as the Group 4 False Police Report Claimants. *See* D.I. 193. Since then, in the group of False Police Report Claimants No. 1, all 26 individuals have filed proofs of claim. In the group of False Police Report Claimants No. 2, only 81 of the 115 claimants have filed proofs of claim. In the group of False Police Report Claimants No. 3, 20 of the 29 claimants have filed proofs of claim. And, in the group of False Police Report Claimants No. 4, all 26 claimants have filed proofs of claim, as well as 77 new individuals who had previously not been identified in the Group 4a Lift Stay Motion.

[8] On April 29, 2021 the Court entered an order approving a stipulation between the Debtors and Claimants to withdraw certain of Claimants' claims against the Debtors. *See* Main D.I. 4322.

Claimants; (ii) a group of 115 additional claimants called the "False Police Report Claimants No. 2";[9] and (iii) a purported "unknown class."

13. On the Confirmation Date, Claimants filed 28 additional proofs of claim against the Debtors, all of which were styled as amendments to purported class proofs of claim. Among other things, some of the proofs of claim filed that day (the "**Late Claims**")[10] professed to change the purported class proofs of claims to be on behalf of a group of 29 individual claimants called the "False Police Report Claimants No. 3." These 29 claimants were not identified anywhere in the purported class proofs of claim or any other proof of claim filed by the General Bar Date.

C. **The Debtors' Preliminary Objections and the Motion for Leave**

14. On August 4, 2021, the Group 3 Claimants filed the *Motion of False Police Report Claimants No. 3 for Relief from Any Stay and Plan Injunction* [Main D.I. 5656] (the "**Group 3 Lift Stay Motion**"), in which other Claimants joined [Main D.I. 5687], seeking relief from any stay or injunction under the Plan so as to: (a) pursue and liquidate their asserted claims in the forum of their choice outside of this Court; (b) recover against applicable insurance policies; (c) pursue alleged non-Debtor co-defendants; and (d) seek other equitable relief. Group 3 Lift Stay Motion, ¶ 38. The Reorganized Debtors objected [Main D.I. 5703], and the Court denied the Group 3 Lift Stay Motion. *See* Main D.I. 5875 (the "**Initial Scheduling Order**"). Among other things, the Initial Scheduling Order also established deadlines related to the Reorganized Debtors' preliminary objections to Claimants' proofs of claim. *Id.* ¶ 2.

---

[9] The addenda to the proofs of claim filed on behalf of "False Police Report Claimants No. 2" in June 2021, which were filed as amendments to some but not all of the earlier proofs of claim, identify only 110 individuals.

[10] Specifically, Claim Nos. 15282, 15257, 15245, 15261, 15277, 15268, 15256, 15278 and 15276.

15. On September 20, 2021, in accordance with the Initial Scheduling Order, the Reorganized Debtors filed two preliminary omnibus objections to the proofs of claim filed by Claimants: (i) the *Reorganized Debtors' Twenty-First Omnibus (Non-Substantive) Objection to False Police Report Claimants' (I) Amended and Superseded Claims, (II) Duplicative Claims, and (III) Late Claims* [Main D.I. 5898] (the "**Non-Substantive Objection**") and (ii) the *Reorganized Debtors' Twenty-Second Omnibus (Substantive) Objection to False Police Report Claimants' Non-Compliant, Unsubstantiated, and Class Claims, and Request for a Limited Waiver of Local Rule 3007-1(f)(iii), to the Extent Such Rule May Apply* [Main D.I. 5899] (the "**Substantive Objection**" and together, the "**Claim Objections**"). The Claim Objections objected to certain of the Claimants' proofs of claim on various grounds, including, among others, that the Late Claims filed on behalf of the Group 3 Claimants were filed after the General Bar Date and do not relate to earlier filed claims.

16. On November 4, 2021, the Court held a hearing (the "**November 4 Hearing**") to consider, among other things, the Claim Objections. At the hearing, the Court ordered further proceedings and deadlines regarding the claims filed, or to be filed, by Claimants, including directing that Claimants (i) file by December 6, 2021 a motion pursuant to Bankruptcy Rule 9006 seeking authorization to file claims after the General Bar Date on behalf of the Group 3 Claimants and (ii) amend the proofs of claim to include separate declarations by each claimant regarding the facts underlying their claim. *See* Nov. 4, 2021 Tr. at 61:24-62:2, 63:6-9. The parties conferred and agreed on a scheduling order for the further deadlines and proceedings. *See* D.I. 187.

17. On December 6, 2021, Claimants filed the motion for leave to file late claims [D.I. 190], seeking a determination by the Court that the proofs of claim filed on behalf of the Group 3 Claimants were timely because, Claimants argued, (i) the General Bar Date did not apply to some

of the claims because those claims arose after the Petition Date, (ii) Claimants were known creditors and the Debtors failed to provide them actual notice of the General Bar Date, (iii) to the extent Claimants were unknown creditors, the Debtors' constructive notice by publication was not constitutionally adequate, and (d) to the extent any claim was untimely, the delay was due to excusable neglect. *See* Motion for Leave ¶¶ 43, 80. The motion also sought to have the Court overrule the Non-Substantive Objection as to these claims. *See id.* ¶ 43.

18. Also on December 6, 2021, Claimants filed the Group 4a Lift Stay Motion. *See* D.I. 193. The Group 4a Lift Stay Motion was brought on behalf of 26 Group 4a Claimants, but none of the new claimants filed proofs of claim at that time.

19. After the Court required Claimants to file individualized proofs of claim, nine of the 29 Group 3 Claimants—or nearly one-third—abandoned their claims. Specifically, certain claimants (Edward Guy, Lamont Liner, Kate McCarthy and John [Doe]) have decided not to pursue their claims and will withdraw them. *Id.* ¶ 18 n.7. Moreover, Claimants' counsel determined that certain other claimants (Asiah Draine and Lilliam Lesueur) "do not have claims related to false police reporting" and "has been unable to obtain signed declarations or evaluate the claims of Vincent Byrd or Kimberly Killen." *Id.* Additionally, one claimant (Wanda Nelson) did not file a signed declaration supporting her claims as the Court ordered, even after receiving an extension until January 31, 2022.[11] *See* D.I. 284.

---

[11] On December 6, 2021, the *Certain Group 3 False Police Report Claimants' Motion for an Order Extending the Deadline to File Declarations in Support of Proofs of Claim Under 11 U.S.C. § 105(a) and Bankruptcy Rule 9006* [D.I. 191] (the "**Scheduling Order Extension Motion**") was filed in which claimants Janette Brown, Tyresha Caudle, and Wanda Nelson requested an extension through January 19, 2022, without prejudice to seek further extensions, of the Court's December 6, 2021 deadline to submit declarations in support of their amended proofs of claim. These claimants filed amended proofs of claim on December 6, 2021 but did not include executed declarations with such filings. Janette Brown and Tyresha Caudle have since submitted amended proofs of claims with declarations. On February 7, 2022,

20. At the January 4 Status Conference, the Court ordered supplemental briefing as to whether the Group 3 Claimants and Group 4 Claimants were "known" creditors. *See* January 4, 2022 Hr'g Tr. at 39:10-20 ("Well, you all respond with respect to the claims that we all acknowledge, the proofs of claim are now on file with the appropriate declarations, and you'll start rolling those out . . . And the parties will be filing, on February 14th, brief supplemental briefing on how that information impacts on the issue of known creditor with respect to those claimants."). The Court also directed the Group 4 Claimants to file individualized proofs of claim with accompanying declarations by the Proofs of Claim Deadline on January 31, 2022. *See id.* at 27:22-25; *id.* at 28:1-3.

21. Subsequently, the Group 4 Claimants submitted proofs of claim for all 26 claimants initially disclosed as Group 4 Claimants in December 2021.

22. Between January 14 and the deadline on January 31, 77 additional proofs of claim were filed as part of the Group 4 Claimants, bringing the total number of Group 4 Claimants to 103.

## ARGUMENT

23. The Court should deny the Group 4b Lift Stay Motion for at least four reasons.

24. ***First***, counsel for the Group 4b Claimants has already filed on behalf of other Claimants three motions to lift the stay and plan injunction, each of which has been denied. *See Motion of False Police Report Plaintiffs for Relief from Automatic Stay* [Main D.I. 589]; *Motion of False Police Report Claimants No. 2 for Relief from Automatic Stay* [Main D.I. 2593]; *Motion of False Police Report Claimants No. 3 for Relief from Any Stay and Plan Injunction*

---

the Court entered an order [D.I. 331] further extending to January 31, 2022 Ms. Nelson's time to file a proof of claim with an executed declaration. She did not file a declaration.

[Main D.I. 5656]. Indeed, as recently as August 18, 2021—six months before Claimants filed the Group 4b Lift Stay Motion—the Court ruled that it "will not grant relief from the plan injunction," and the only question to be determined is "whether or not . . . [the Court has] jurisdiction or whether it is appropriate to hold that the District Court has jurisdiction over this." Aug. 18, 2021 Hr'g Tr. at 24:15-16. This was the second time the Court had made this ruling. *See* April 22, 2021 Hr'g Tr. at 32:22-33:2 ("If, in fact, I determine that I do not have jurisdiction of these claims the proper court with jurisdiction would be the Delaware District Court because of the fact that the plaintiffs have filed proofs of claim."). In their current motion, counsel for the Group 4b Claimants has stated no basis for once again seeking relief that the Court has repeatedly denied. That is especially true given that there is already a pending lift stay motion that the Reorganized Debtor has objected to as improper. Rather than wait for the Court's ruling on that pending motion, Claimants chose to file yet another lift-stay motion. The burden and expense to the Reorganized Debtor from having to re-litigate, for the fifth time, a dispute that Claimants have already lost is difficult to justify.[12]

25.     ***Second***, the Group 4b Lift Stay Motion is procedurally improper and contradicts the position that counsel to the Claimants has taken before this Court. The main argument advanced by the motion is that, because the Group 4b Claimants were supposedly known creditors who did not receive actual notice from the Debtors of the bar date or the confirmation proceedings, they are not bound by the Plan or General Bar Date. This argument contradicts the arguments

---

[12] To the extent necessary, and so as not to burden the Court with repetition, the Reorganized Debtor incorporates by reference the arguments against lifting the stay and the Plan injunction in the objections to the Claimants' several previous lift stay motions. *See* Main D.I. 762, 2848 and 5703. Additionally, many of the arguments raised in the Motion are identical to those raised in Claimants' other recent filings, and, to the extent necessary, the Reorganized Debtor incorporates its responses to those arguments. *See* D.I. 214 and 215.

advanced by Claimants' counsel on behalf of the Group 3 Claimants, all of whom claim to be "known" creditors who did not receive actual notice from the Debtors yet acknowledged that they are bound by the General Bar Date by filing a proof of claim in June 2021.

26.     Indeed, the Group 3 Claimants have gone to great lengths to argue that their proofs of claim should be deemed timely filed, including by originally asserting that they were "amendments" to certain of the purported class proofs of claim filed by the General Bar Date. Although this argument was omitted from the Group 4a Lift Stay Motion, the Group 4b Claimants appear to revive it, arguing that the Court should deem the claims timely because the Group 4b Claimants are all members of the putative class.  Aside from continuing to flip-flop regarding whether the claims are subject to bar dates, this argument lacks merit.  Although Claimants incorrectly assert that the Reorganized Debtor did not object to this relief, the Reorganized Debtor specifically objected to the notion that a class proof of claim could be amended to serve as a proof of claim for an individual member of the purported class.  *See* D.I. 214, ¶ 86 ("[T]he Late Claims do not relate back to the purported class proofs of claim because the Late Claims identified new claimants not originally included in the purported class proofs of claim.  *See Nortel Networks,* 573 B.R. at 528 (denying motion to amend claim to add additional claimant and stating 'Rule 15 does not apply to adding a party') . . . *Exide Techs.,* 601 B.R. at 293 ('A creditor may not use the claims amendment process to circumvent the claims bar date.')."). Moreover, Claimants have not even argued that a class exists, but have instead argued only that a class *may* exist.  *See False Police Report Claimants' Motion Pursuant to Bankruptcy Rule 9014 (I) to Apply Bankruptcy Rule 7023 and (II) to Set a Discovery Schedule on the Putative Class Claims* [D.I. 192] ¶ 25 ("[A] class action *may* be the most efficient way of resolving this dispute . . . .") (emphasis supplied).  Given that

RLF1 26888558v.1

Claimants have not sought to certify a class, the Reorganized Debtor is not required to object to relief that is, at best, hypothetical and advisory.

27. **Third**, none of the Group 4b Claimants has established that their failure to file claims resulted from excusable neglect. Rather, the Group 4b Lift Stay Motion simply asserts, in conclusory fashion, that the Group 4b Claimants "[were] not aware of the relevant bankruptcy deadlines." Group 4b Lift Stay Motion ¶ 86. Assuming *arguendo* that the Group 4b Claimants are able to demonstrate that fact, it would establish only that there was neglect, not that there was a valid excuse for it. Indeed, this argument is merely a repetition of the Group 4b Claimants' argument that they were "known" creditors entitled to actual notice.[13]

28. **Fourth**, even if the Group 4b Claimants establish that they were "known" creditors (and they cannot), it does not follow that they were therefore excused in all cases from complying with all deadlines in the Debtors' bankruptcy proceedings, including the bar date and the objection deadline for the confirmation proceedings. Courts in this Circuit have held in the analogous circumstance of a deadline to file a dischargeability complaint that "the reasonableness of a particular method of notice depends on the particular circumstances," and creditors with actual notice of the bankruptcy proceeding may have an obligation to participate in order to protect their rights. *Dollinger v. Poskanzer*, 146 B.R. 125 (D.N.J. 1992); *Williams v. Edison Bros. Stores*, No. 95-CV-0912, 1998 U.S. Dist. LEXIS 18110, at *10-11 (E.D. Pa. Nov. 13, 1998) ("the Code's mandate to the creditor to protect his rights weighs against excusing Plaintiff's not making that inquiry after he had notice of the bankruptcy proceedings."); *Bobal v. Troxell (In re Troxell)*, No. 91-01439 JKF, 1992 Bankr. LEXIS 2507, at *6-7 (Bankr. W.D. Pa. Jan. 17, 1992) ("even when

---

[13] Additionally, the Group 4b Claimants ask the Court to "deem them to have opted out of the Plan's third-party release provisions," Mot. ¶ 87, but state no independent basis for this relief.

no notice of the bar date is issued the creditor with actual knowledge of the bankruptcy has an obligation to ascertain the bar date"); *see also In re Alton*, 837 F.2d 457, 461 (11th Cir. 1988) ("If [the creditor], once warned of the bankruptcy proceeding, had made minimal effort to determine the date of the filing of the petition, he would have realized the outside dates for filing his complaint contesting the dischargeability of his claim or for a motion to extend such time. Instead, [the creditor] made no such effort and cannot now properly complain of the consequences of his action."). The 55-year-old case that Claimants primarily rely on, *In re Harbor Tank Storage Co.*, 385 F.2d 111, 112 (3d Cir. 1967), has been distinguished by at least one court in this Circuit as being rendered obsolete by the repeal of the Bankruptcy Act and passage of the new Code. *See Dollinger v. Poskanzer*, 146 B.R. 125 (D.N.J. 1992) "[t]he rationale upon which *Harbor Storage* rests has been obviated by passage of the Bankruptcy Reform Act of 1978 . . . Under the Code, bar dates are not discretionary . . . Once [the creditor] discovered [the debtor's] bankruptcy petition, he had only to inquire as to when the creditors' meeting would be held.").

29. In any case, the appropriate notice must be decided on a case-by-case basis, and therefore depends on the results of discovery. Based on this information, the Court must determine, on a claimant-by-claimant basis, whether notice was sufficient and whether the claimant's actions—or inaction—were appropriate under the circumstances.

30. In sum, the issue that is framed by the Group 4b Lift Stay Motion—whether or not the Group 4b Claimants were entitled to direct notice or otherwise obtained actual knowledge of the Debtors' bankruptcy proceedings—is an issue that cannot be addressed until the Court has in front of it a fully developed record consisting of the pending discovery, filed proofs of claim and declarations from all Group 4b Claimants.

## RESERVATION OF RIGHTS

31. The Reorganized Debtor is currently reviewing the Group 4b Claims and has substantial concerns regarding the merits of these claims, and reserves the right to contest any and all claims procedurally and on the merits. The Reorganized Debtor also reserves the right to amend, modify or supplement this Preliminary Objection for any reason, including, without limitation, amended or additional proofs of claim and declarations that may be filed by the Group 4b Claimants and discovery to be produced by the parties.

## CONCLUSION

For these reasons, as well as those the Reorganized Debtor stated in its brief filed February 14 [D.I. 352], the Court should deny the Group 4b Lift Stay Motion.

[*Remainder of Page Left Intentionally Blank*]

Dated:  February 22, 2022

 /s/ Robert J. Stearn, Jr.

| | |
|---|---|
| **RICHARDS, LAYTON & FINGER, P.A.** | **WHITE & CASE LLP** |
| Mark D. Collins (No. 2981) | Thomas E Lauria (admitted *pro hac vice*) |
| Robert J. Stearn, Jr. (No. 2915) | Matthew C. Brown (admitted *pro hac vice*) |
| John H. Knight (No. 3848) | Cecilia Walker (admitted *pro hac vice*) |
| Cory D. Kandestin (No. 5025) | 200 South Biscayne Boulevard, Suite 4900 |
| Brett M. Haywood (No. 6166) | Miami, FL 33131 |
| J. Zachary Noble (No. 6689) | Telephone:    (305) 371-2700 |
| One Rodney Square | tlauria@whitecase.com |
| 920 N. King Street | mbrown@whitecase.com |
| Wilmington, DE 19801 | cecilia.walker@whitecase.com |
| Telephone:    (302) 651-7700 | |
| Facsimile:    (302) 651-7701 | J. Christopher Shore (admitted *pro hac vice*) |
| Collins@rlf.com | David M. Turetsky (admitted *pro hac vice*) |
| Stearn@rlf.com | Samuel P. Hershey (admitted *pro hac vice*) |
| Knight@rlf.com | 1221 Avenue of the Americas |
| Kandestin@rlf.com | New York, NY 10020 |
| Haywood@rlf.com | Telephone:    (212) 819-8200 |
| Noble@rlf.com | cshore@whitecase.com |
| | david.turetsky@whitecase.com |
| —and— | sam.hershey@whitecase.com |
| | |
| | Jason N. Zakia (admitted *pro hac vice*) |
| | Laura E. Baccash (admitted *pro hac vice*) |
| | 111 South Wacker Drive |
| | Chicago, IL 60606 |
| | Telephone:    (312) 881-5400 |
| | jzakia@whitecase.com |
| | laura.baccash@whitecase.com |
| | |
| | Ronald K. Gorsich (admitted *pro hac vice*) |
| | Aaron Colodny (admitted *pro hac vice*) |
| | Doah Kim (admitted *pro hac vice*) |
| | 555 South Flower Street, Suite 2700 |
| | Los Angeles, CA 90071 |
| | Telephone:    (213) 620-7700 |
| | rgorsich@whitecase.com |
| | aaron.colodny@whitecase.com |
| | doah.kim@whitecase.com |
| | |
| | *Co-Counsel to the Reorganized Debtor* |