# EXHIBIT I

**Unsealed Exhibits B & C to Objection/Cross-Motion**

**EXHIBIT B**

Marasco Declaration

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

In re:

Rental Car Intermediate Holdings, LLC,[1]

Reorganized Debtor.

Chapter 11

Case No. 20-11247 (MFW)

**DECLARATION OF JACLYN C. MARASCO IN SUPPORT OF**
**FALSE POLICE REPORT CLAIMANTS' (I) OBJECTION TO REORGANIZED**
**DEBTOR'S SUPPLEMENTAL MOTION FOR ENTRY OF A PROTECTIVE ORDER**
**LIMITING WRITTEN DISCOVERY AND (II) CROSS-MOTION TO COMPEL**
**INTERROGATORY RESPONSES AND PRODUCTION OF DOCUMENTS**

I, Jaclyn C. Marasco, hereby declare under penalty of perjury as follows:

1.      I am an attorney with the law firm, Faegre Drinker Biddle & Reath LLP.

2.      I submit this declaration (this "Declaration") in support of the *False Police Report*

*Claimants' (I) Objection to Reorganized Debtor's Supplemental Motion for Entry of a Protective*

*Order Limiting Written Discovery and (II) Cross-Motion to Compel Interrogatory Reponses and*

*Production of Documents* (the "Objection and Cross-Motion").[2]

---

[1]      The last four digits of the tax identification number of Reorganized Debtor Rental Car Intermediate Holdings, LLC ("RCIH") are 2459. The location of the Reorganized Debtors' service address is 8501 Williams Road, Estero, FL 33928. On September 28, 2021, the Court entered a final decree closing each of the chapter 11 cases for The Hertz Corporation and its affiliated reorganized debtors (the "Reorganized Debtors" and prior to the effective date, the "Debtors") other than RCIH's chapter 11 case. Commencing on September 28, 2021, all motions, notices, and other pleadings relating to any of the Reorganized Debtors shall be filed in RCIH's chapter 11 case, Case No. 20-11247 (MFW).

[2]      Capitalized terms used but not otherwise defined in this Declaration shall have the meanings ascribed to them in the Objection and Cross-Motion.

3.      Unless otherwise stated, all statements in this Declaration are based upon my personal knowledge. If called to testify, I could and would competently testify to the facts set forth herein.

4.      Attached as **Exhibit 1** hereto is a true and correct copy of certain Claimants' first set of requests for production served on counsel for the Reorganized Debtors by email on September 28, 2021.

5.      Attached as **Exhibit 2** hereto is a true and correct copy of certain Claimants' first set of interrogatories served on counsel for the Reorganized Debtors by email on September 28, 2021.

6.      Attached as **Exhibit 3** hereto is a true and correct copy of certain Claimants' first set of requests for admissions served on the Reorganized Debtors by email on September 28, 2021.

7.      Attached as **Exhibit 4** hereto is a true and correct copy of certain Claimants' second set of requests for production served on counsel for the Reorganized Debtor by email on December 20, 2021.

8.      Attached as **Exhibit 5** hereto is a true and correct copy of certain Claimants' second set of interrogatories served on counsel for the Reorganized Debtor by email by on December 20, 2021.

9.      Attached as **Exhibit 6** hereto is a true and correct copy of the January 16, 2022, production email from Mr. Hershey, on which I was copied.

10.     Attached as **Exhibit 7** hereto is a true and correct copy of the January 31, 2022, production email from Mr. Hershey, on which I was copied.

11.     Attached as **Exhibit 8** hereto is a true and correct copy of the February 3, 2022, production email from Mr. Hershey, on which I was copied.

12.     Attached as **Exhibit 9** hereto is a true and correct copy of the February 5, 2022, production email from Mr. Hershey, on which I was copied.

13.     Attached as **Exhibit 10** hereto is a true and correct copy of the January 20, 2022, email correspondence from Taylor C. Hoogendoorn, on which I was copied.

14.     Attached as **Exhibit 11** hereto is a true and correct copy of the January 27, 2022, email correspondence from Mr. Hoogendoorn, on which I was copied.

15.     Attached as **Exhibit 12** hereto is a true and correct copy of Mr. Hershey's response to Mr. Hoogendoorn's January 27 email correspondence, on which I was copied.

16.     Attached as **Exhibit 13** hereto is a true and correct copy of the February 4, 2022, email correspondence from Mr. Hoogendoorn, on which I was copied.

17.     Attached as **Exhibit 14** hereto is a true and correct copy of the February 6, 2022, email correspondence from Mr. Hershey, on which I was copied.

18.     Attached as **Exhibit 15** hereto is a true and correct copy of the February 7, 2022, email correspondence from Mr. Hershey, on which I was copied.

19.     Attached as **Exhibit 16** hereto is a true and correct copy of the February 8, 2022, email correspondence from Mr. Hoogendoorn, on which I was copied.

20.     Attached as **Exhibit 17** hereto is a true and correct copy of the February 14, 2022, email correspondence from Mr. Hershey, on which I was copied.

21.     Attached as **Exhibit 18** hereto is a true and correct copy of the January 14, 2022, email correspondence from Mr. Hershey, on which I was copied.

22.     Attached as **Exhibit 19** hereto is a true and correct copy of a document produced in native format by the Reorganized Debtor in this case as HERTZ_FPRP_0002004. The document has been converted to a PDF and Bates-stamped for the Court's convenience.

23.     Attached as **Exhibit 20** hereto is a true and correct copy of a page from a document produced by the Reorganized Debtor in this case and Bates-stamped HERTZ_FPRP_0000164.

24.     Attached as **Exhibit 21** hereto is a true and correct copy of a document produced by the Reorganized Debtor in this case and Bates-stamped HERTZ_FPRP_0000182.

25.     Attached as **Exhibit 22** hereto is a true and correct copy of a document produced by the Reorganized Debtor in this case and Bates-stamped HERTZ_FPRP_0000261.

26.     Attached as **Exhibit 23** hereto is a true and correct copy of a document produced by the Reorganized Debtor in this case and Bates-stamped HERTZ_FPRP_0000185–189.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Dated: February 14, 2022

/s/ Jaclyn C. Marasco
Jaclyn C. Marasco

**EXHIBIT 1**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| In re: | : | Chapter 11 |
|  | : |  |
| THE HERTZ CORPORATION, *et al.,* [1] | : | Case No. 20-11218 (MFW) |
|  | : |  |
|  | : | (Jointly Administered) |
| Debtors. | : |  |
|  | : |  |
|  | : |  |
|  | : |  |

## FALSE POLICE REPORT CLAIMANTS' REQUEST FOR PRODUCTON OF DOCUMENTS DIRECTED TO DEBTORS

Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure, made applicable by Rules 7026, 7034, and 9014 of the Federal Rules of Bankruptcy Procedure, the False Police Report Claimants[2], hereby request that the above-captioned Debtors (collectively, the "Debtors") produce the following documents at the offices of Ciardi Ciardi & Astin, Attn: Daniel K. Astin, Esquire, 1204 N. King Street, Wilmington, DE 19801 on or before October 19, 2021.

---

[1] The last four digits of The Hertz Corporation's tax identification number are 8568. The location of the debtors' service address is 8501 Williams Road, Estero, FL 33928. Due to the large number of debtors in these chapter 11 cases, for which joint administration for procedural purposes has been requested, a complete list of the debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the debtors' proposed claims and noticing agent at https://restructuring.primeclerk.com/hertz.

[2] The "False Police Report Claimants" are those (i) individuals with cases pending that are detailed in the False Police Report Plaintiffs' Motion for Relief from Stay filed on June 25, 2020 [D.I.589] (the "False Police Report Plaintiffs--Claimants 1"); (ii) the 115 additional individuals with claims and/or claims and cases pending that are detailed in the Motion of the False Police Report Claimants No. 2 filed on February 2, 2021 [D.I. 2593] (the "False Police Report Plaintiffs--Claimants 2"); and (iii) the 29 individuals listed in the Motion of the False Police Report Claimants No. 3 for Relief from Stay and Any Plan Injunction filed on August 4, 2021 [D.I. 5656] (the "False Police Report Plaintiffs--Claimants 3").

1

### INSTRUCTIONS AND DEFINITIONS

1.      These Requests are continuing in character, so as to require the answering Debtors to file supplemental responses if Debtors obtains or discovers further, contradictory or different documents prior to trial.  Such supplemental responses, if any, shall be filed from time to time promptly upon the discovery by you of such supplemental documents.  Each Request is to be responded to separately and as completely as possible.  The fact that an investigation is continuing and discovery is not complete shall not be used as a reason for failure to respond to any such Request as fully as possible.  The omission of any document or other item of information from the response shall be deemed a representation that such document or item is not known to Debtors, its counsel, or other representatives or agents of Debtors.

2.      As used herein, the following terms shall have the following meanings:

a.      As used in these Requests, "document," "documents," "documentation," or "writing" shall mean and include the original, regardless of the location of the original, or any recorded, written, printed, typed, or other graphic material of every kind, variety, type or character, including by way of example (but not limited to) the following:   books, records, contracts, agreements, insurance polices, invoices, purchase orders, statements of account, credit and debit memoranda, orders, , bills, installment contracts, rental agreements, certificates of title, financing statements, instruments, expense accounts, cancelled checks, bank statements, bank books, receipt and disbursement journals, tax returns, financial statements, check stubs, drafts, certificates, tabulations, questionnaires, tables, sketches, tax reports, working papers, computer data (including information or programs stored in a computer, whether or not ever printed out or displayed),

2

resumes, medical records, address books, appointment books or telephone logs, notes, speeches, schedules, worksheets, pictures, income statements, profit and loss statements, deposit slips, credit card receipts, records and notations of telephone or personal conversations, conferences, inter-office communications, letters, telexes, partnership agreements, articles of incorporation, catalogue price lists, sound, tape and video recordings, memoranda (including written memoranda of telephone activities), minutes, manuals, diaries, calendars or desk pads, calendar or diary entries, scrapbooks, notebooks, correspondence, bulletins, circulars, policies, forms, pamphlets, notices, statements, journals, postcards, letters, telegrams, reports, magazines, booklets, brochures, instructions, interoffice communications, Photostats, microfilm, microfiche, maps, deposition transcripts, pleadings, orders, releases, appraisals, estimates, valuations, opinions, studies, analyses, summaries, drawings, blueprints, photographs, negatives, graphs, charts, and other data, information or statistics contained within any data storage modules, tapes, discs or any other memory devices (including IBM or similar cards for information, data and programs) or any other information retrievable on storage systems (including computer generated reports and printouts).

    b.  If any requested document was, but is no longer in your possession or subject to your control, state what disposition was made of the document and, if the document is still in existence, identify the person who has possession or control of the documents,

    c.  As used in these Requests, the phrase "a document or documents that evidences, refer(s) or relate(s) to" any given subject matter shall mean any document that constitutes, contains, embodies, identifies, states, refers to, deals with, pertains or in any way directly or indirectly bears upon or deals with the subject matter, including (without limitation) documents concerning the preparation of documents.

    "Electronic data" shall mean any document created by any electronic device, including but

not limited to, a computer (including personal computers, networks, and mainframes), personal digital assistant, mobile device, including instant messages or text messages sent from a computer, personal digital assistant, mobile device, or any electronic device, or digital or electronic recordings, voicemail saved in digital format.

"Communication" means every manner or means of disclosure, transfer, or exchange, including every disclosure, transfer or exchange or information whether transmitted orally, face-to-face, by document, electronically, telephone, mail, email, text message, video conference, personal delivery, meeting, or otherwise.

"Reflecting," "relating," or "referring" to a given subject means any document, information, or communication that constitutes, contains, embodies, comprises, reflects, identifies, states, refers to, deals with, comments on, responds to, describes, analyses or is in any way pertinent to that subject.

Singular references include the plural and plural references include the singular.

As used herein, the words "and" and "or" shall be construed either conjunctively or disjunctively as required by the context to bring within the scope of this interrogatory any document that might be deemed outside its scope by another construction.

"Person" shall mean any individual, partnership, association, corporation, joint venture, firm, proprietorship, agency, board, authority, commission, or other legal or business entity.

"Debtors" or "Debtor Entities" shall mean each of the debtors in the above-captioned cases being jointly administered as *In re Hertz Corporation, et al.,* Case No. 20-11218 (including as reorganized), or any representative, agent, or employee, thereof.

"Debtors' Affiliate" or "Debtors' Affiliates" shall mean an affiliate of the Debtor Entities as defined by 11 U.S.C. §101(2).

4

"Bankruptcy Cases" shall mean the above styled and numbered cases currently pending in the U.S. Bankruptcy Court for the District of Delaware.

If a document called for in this request is withheld under a claim of privilege, furnish a list reflecting each document for which the privilege is claimed and, with respect to each such document, provide the following information:

        (a)   Names, addresses, and title of each author or addressee;
        (b)   Names, addresses, and title of each addressor;
        (c)   Each person to whom copies were sent or distributed and any other person to whom such document or its contents were disclosed;
        (d)   Date, page length and subject matter of the document;
        (e)   A description of the document; and
        (f)   Statement of the basis on which the document is being withheld.

The terms "and," "or," and "and/or" are used in the inclusive sense and require all documents that meet the description of one or more of the disjunctive words or phrases.

Responsive documents shall be produced as they have been kept in the usual course of business or shall be organized and labelled to correspond with the categories in this request.

If any data or information responsive to the document requests exists in electronic format or as Electronic Data, you are instructed to produce such electronic data in its native format or, if unavailable as a .tiff file with an associated OCR.txt file capable of being searched; if neither is available, production shall be as a PDF format.

If any documents herein requested have been lost, discarded, or destroyed, they shall be identified as completely as possible, including, without limitation, the following information: subject matter, the document's title, previous location, date of disposal, manner of disposal, reason for disposal, person authorizing disposal, and person disposing of the document.

## REQUESTS FOR PRODUCTION OF DOCUMENTS

**REQUEST FOR PRODUCTION NO. 1:** All public records searches, including skiptraces and TLOs, for all 165 claimants.

**REQUEST FOR PRODUCTION NO. 2:**  The spreadsheet identified in the affidavit docketed at Doc. No. 1071, p.7-11, and produced in case no. 3:19-cv-00775-MGL (*Lee v. The Hertz Corporation*).

**REQUEST FOR PRODUCTION NO. 3:**  An updated version of the information contained in the spreadsheet identified in the affidavit docketed at Doc. No. 1071, p.7-11, and produced in case no. 3:19-cv-00775-MGL (*Lee v. The Hertz Corporation*).

**REQUEST FOR PRODUCTION NO. 4:**  All documents relating to any claims of wrongful detention, false arrest, malicious prosecution, or other claims or suits related to any allegations that any of the Debtor Entities or their affiliates filed false police reports, from May 22, 2016 to present.

**REQUEST FOR PRODUCTION NO. 5:**  All notices of the bankruptcy the Debtor Entities provided to the individuals identified as the False Police Report Plaintiffs – Claimants 3.

**REQUEST FOR PRODUCTION NO. 6:**  All notices of the bankruptcy the Debtor Entities provided to the individuals identified as the False Police Report Plaintiffs – Claimants 2.

**REQUEST FOR PRODUCTION NO. 7:**  All notices of the bankruptcy the Debtor Entities provided to the individuals reported, arrested, detained, or prosecuted for theft from May 22, 2016 to the present.

**REQUEST FOR PRODUCTION NO. 8:**  All communications, prior to September 9, 2020, with any third party (including but not limited to any communications with any complainant or their representatives or with law enforcement, prosecutors, or security officials) regarding any systemic, common, global, and/or reoccurring issues in the Debtor Entities' filing of police reports against customers of the Debtor Entities or the Debtors' Affiliates.

**REQUEST FOR PRODUCTION NO. 9:**  All communications, prior to September 9, 2020, within Debtor Entities or their affiliates regarding claims of any systemic, common, global, and/or reoccurring issues in the Debtor Entities' filing of police reports against customers of the Debtor Entities or the Debtors' Affiliates.

**REQUEST FOR PRODUCTION NO. 10:**  Produce all communications and documents relating to efforts to ascertain the identities of potential claimants with claims relating to allegations of wrongful detention, false arrest, or wrongful prosecution.

Wilmington, Delaware
Dated: September 28, 2021

CIARDI CIARDI & ASTIN

*/s/ Daniel K. Astin*
Daniel K. Astin (No. 4068)
1204 North King Street
Wilmington, DE  19801

Telephone: (302) 658-1100
Facsimile: (302) 658-1300
dastin@ciardilaw.com

-and-

Albert A. Ciardi, III, Esquire
Walter W. Gouldsbury III, Esquire
CIARDI CIARDI & ASTIN
1905 Spruce Street
Philadelphia, PA 19103
Telephone:  (215) 557-3550
Facsimile:  (215) 557-3551
aciardi@ciardilaw.com
wgouldsbury@ciardilaw.com

-and-

Francis Malofiy, Esquire
FRANCIS ALEXANDER, LLC
280 N. Providence Road, Suite 1
Media, PA 19063
Telephone: (215) 500-1000
Facsimile: (215) 500-1005
francis@francisalexander.com


*Attorneys for the False Police Report
Claimants*

**EXHIBIT 2**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | : Chapter 11 |
| | : |
| THE HERTZ CORPORATION, *et al.*, [1] | : Case No. 20-11218 (MFW) |
| | : |
| | : (Jointly Administered) |
| Debtors. | : |
| | : |
| | : |

## FALSE POLICE REPORT CLAIMANTS' FIRST SET OF INTERROGATORIES
## DIRECTED TO DEBTORS

Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure, made applicable by Rules 7026, 7033, and 9014 of the Federal Rules of Bankruptcy Procedure, False Police Report Claimants[2] hereby request Debtors to respond under oath and in writing to the following interrogatories on or before October 12, 2021:

## INSTRUCTIONS AND DEFINITIONS

A.      These Interrogatories are continuing in character, so as to require the Debtors to file supplemental answers if the Debtors obtains further, contradictory or different information. Such supplemental answers, if any, shall be filed from time to time promptly upon the discovery by you

---

[1] The last four digits of The Hertz Corporation's tax identification number are 8568. The location of the debtors' service address is 8501 Williams Road, Estero, FL 33928. Due to the large number of debtors in these chapter 11 cases, for which joint administration for procedural purposes has been requested, a complete list of the debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the debtors' proposed claims and noticing agent at https://restructuring.primeclerk.com/hertz.

[2] The "False Police Report Claimants" are those (i) individuals with cases pending that are detailed in the False Police Report Plaintiffs' Motion for Relief from Stay filed on June 25, 2020 [D.I.589]; (ii) the 115 additional individuals with claims and/or claims and cases pending that are detailed in the Motion of the False Police Report Claimants No. 2 filed on February 2, 2021 [D.I. 2593]; and (iii) the 29 individuals listed in the Motion of the False Police Report Claimants No. 3 for Relief from Stay and Any Plan Injunction filed on August 4, 2021 [D.I. 5656].

of such supplemental information.   Each Interrogatory is to be answered separately and as completely as possible.  The fact that an investigation is continuing, and discovery is not complete shall not be used as a reason for failure to answer any such Interrogatory as fully as possible.  The omission of any name, fact or other item of information from the answer shall be deemed a representation that such name, fact or item is not known to the Debtors, their counsel or other representatives or agents of the Debtors.

B.       Answers shall be based upon information known to the Debtors, their agents, attorneys, partners, associates, employees, servants, partners, associates, representatives, investigators or any other party or entity acting or who has acted by or on behalf of the Debtors.  To the extent that the answer to any Interrogatory is not based upon information known to the Debtors, the Debtors shall specify that fact and the person or entity possessing such information.

C.       If the answer to all or any part of an Interrogatory is not presently known or available, include a statement to that effect, specifying the portion of the Interrogatory that cannot be completely answered.  However, once information is available, the Debtors are required to furnish all information available in response to the entire Interrogatory by supplemental answer as required above.

D.       If the Debtors refuse to answer any Interrogatory or any part thereof on the grounds of privilege, the Debtors must identify the basis for the privilege claimed, the nature of any information that it refuses to disclose, referring specifically to the Interrogatory or any part thereof to which the Interrogatory applies and by identifying the form in which said information exists, the date of the document or oral communication and the general subject matter of the document or oral communication.

E.       As used in these Interrogatories, the following terms shall have the following

2

meanings:

1.    The terms "You" or "Your" shall mean the answering Debtors, and/or any of their agents, attorneys, partners, associates, employees, servants, representatives, investigators and any person or entity acting or who has acted by or on behalf of the Debtors.

2.    "Person" shall mean any natural person or any corporation, limited liability company, partnership, association, joint venture, firm or other business enterprise or legal entity and means both the singular and plural.

3.    "Document" and "writing" are used interchangeably and shall mean any written or graphic matter of any kind whatsoever, however produced or reproduced, any electronically or magnetically recorded matter of any kind or character, however produced or reproduced, and any other matter constituting the recording of data or information upon any tangible thing by any means, including but not limited to, the original and any non-identical copy of any of the following: books, records, contracts, agreements, promissory notes, invoices, purchase orders, statements of account, credit and debit memoranda, orders, loan agreements, bills, installment contracts, mortgages, deeds of trust, security agreements, certificates of title, financing statements, instruments, expense accounts, canceled checks, bank statements, bank books, receipt and disbursement journals, tax returns, financial statements, check stubs, drafts, certificates, tabulations, questionnaires, tables, sketches, tax reports, working papers, computer data (including information or programs stored in a computer, whether or not ever printed out or displayed), resumes, medical records, address books, appointment books or telephone logs, notes, speeches, schedules, worksheets, pictures, income statements, profit and loss statements, deposit slips, credit card receipts, records and notations of telephone or personal conversations, conferences, inter-office communications, letters, telexes, partnership agreements, articles of incorporation, catalogue price

3

lists, sound, tape and video recordings, memoranda (including written memoranda of telephone activities), minutes, manuals, diaries, calendars or desk pads, calendar or diary entries, scrapbooks, notebooks, correspondence, bulletins, circulars, policies, forms, pamphlets, notices, statements, journals, postcards, letters, telegrams, reports, magazines, booklets, brochures, instructions, interoffice communications, photostats, microfilm, microfiche, maps, deposition transcripts, pleadings, orders, releases, appraisals, estimates, valuations, opinions, studies, analyses, summaries, drawings, blueprints, photographs, negatives, graphs, charts, and other data, information or statistics contained within any data storage modules, tapes, discs or any other memory devices (including IBM or similar cards for information, data and programs) or any other information retrievable on storage systems (including computer generated reports and printouts).

4.     "Communication" or "communication" shall mean any spoken communication, contact, oral or written, formal or informal at any time or place or under any circumstances whatsoever, whereby information of any nature was transmitted, recorded, or transferred (whether telephonic, written, in person or otherwise). Where you are requested to identify or list any communications, your identification or list of such communications shall require you separately as to each communication, to identify the mode of such communication, to identify the persons who participated in such communication, to identify the persons who overheard or had access to such communication, and to state the date of such communication, the time and/or place of such communication, and the subject matter of such communication.

5.     "Identify" or "state the identity of" shall have the following meaning when used in the following contexts:

a.     When used in connection with a natural person, you are required to state his or her: (a) full name; (b) present or last known home address (including street name and

4

number, city and state); (c) present or last known business address; (d) present position, business affiliation and job description and, if unknown, so state and set forth the corresponding last known instance of such information; (e) position, business affiliation and job description at the time in question, with respect to the Interrogatory or other request involved.

b.  When used in connection with a corporation, limited liability company, partnership, association, joint venture, firm or other business enterprise or legal entity, you are required to state in the answer in each instance: (a) the full name and address; (b) a brief description of the primary business in which such entity is engaged; and (c) the identity of all persons who acted or were authorized to act on its behalf in connection with the matter referred to.

c.  When used in connection with a document or writing, you are required to state in the answer in each instance: (a) whether or not such document is known to be in existence at the time of the answer; (b) the date of the document; (c) type of document (*e.g.* letter, memorandum, computer printout, estimate, etc.); (d) identity of the author(s), addressee(s) and any other person to whom the document was shown or distributed; (e) any filing or identifying number; and (f) the present or last known location and/or custodian thereof.  If any such document was, but is no longer in the possession of or subject to control of Debtors or any affiliated business entity, state what and when disposition was made of it.

d.  When used in connection with an oral communication, you are required to state in the answer in each instance: (a) the identity of each person communicating; (b) the identity of the recipient(s) and intended recipient(s) of the communication; (c) the identity of each person present or otherwise aware of the substance of the communication; (d) the date and the place where it was made; (e) the identity of any document or writing that embodies, includes, reflects, concerns, relates, refers to or is based upon such oral communication; and (f) a detailed

description of the substance of the communication.

        e.     When used in connection with a transaction, you are required to state in the answer in each instance: (a) a description of the property or thing that is the subject of the transaction; (b) the identity of the parties to the transaction; (c) the date of the transaction; (d) the place or site where the transaction took place; (e) the location of the property or thing that was the subject to the transaction at the time the transaction took place; (f) the identity of all persons who have knowledge of the transaction; and (g) identify all documents that refer or relate to the transaction.

        f.     When used in connection with products or merchandise, you are required to state in the answer in each instance: (a) the full name of the product; (b) the use or purpose of the product; (c) the manufacturer of the product; (c) all persons who have personal knowledge of the sale or use of the product; (d) the volume of the product sold; (e) the gross receipts received from the sale of the product for each year that the product was sold; and (f) the identity of any documents that relate to the ownership of the product or the right to proceeds from the sale or use of the product.

     "Electronic data" shall mean any document created by any electronic device, including but not limited to, a computer (including personal computers, networks, and mainframes), personal digital assistant, mobile device, including instant messages or text messages sent from a computer, personal digital assistant, mobile device, or any electronic device, or digital or electronic recordings, voicemail saved in digital format.

     "Reflecting," "relating," or "referring" to a given subject means any document, information, or communication that constitutes, contains, embodies, comprises, reflects, identifies, states, refers to, deals with, comments on, responds to, describes, analyses or is in any way

6

pertinent to that subject.

Singular references include the plural and plural references include the singular.

As used herein, the words "and" and "or" shall be construed either conjunctively or disjunctively as required by the context to bring within the scope of this interrogatory any document that might be deemed outside its scope by another construction.

"Person" shall mean any individual, partnership, association, corporation, joint venture, firm, proprietorship, agency, board, authority, commission, or other legal or business entity.

"Debtors" or "Debtor Entities" shall mean each of the debtors in the above-captioned cases being jointly administered as *In re Hertz Corporation, et al.,* Case No. 20-11218 (including as reorganized), or any representative, agent, or employee, thereof.

"Debtors' Affiliate" or "Debtors' Affiliates" shall mean an affiliate of the Debtors as defined by 11 U.S.C. §101(2).

"Bankruptcy Cases" shall mean the above styled and numbered cases currently pending in the U.S. Bankruptcy Court for the District of Delaware.

## INTERROGATORIES

**INTERROGATORY NO. 1:**  Identify all specific efforts made to notify of these bankruptcy proceedings (1) persons against whom the Debtor Entities filed a police theft report for "Theft by Conversion" as defined in W7-02(a)(3) relating to Overdue Rentals since May 22, 2016; and (2) persons who were arrested or prosecuted since May 22, 2016, as a result of a lost inventory theft report filed by the Debtor Entities.

**INTERROGATORY NO. 2:**  Identify all formal and informal complaints (including any lawsuits) made by anyone renting a car from the Debtor Entities or its franchisees of wrongful detention, false arrest, or wrongful prosecution by the Debtor Entities or any third party administrator used by the Debtor Entities—including Chubb and ESIS—received from May 22, 2016 to the present.

**INTERROGATORY NO. 3:**  Identify all communications, prior to September 9, 2020, with any third party (including but not limited to any communications with any complainant or their representatives or with law enforcement, prosecutors, or security officials) regarding any systemic, global, and/or reoccurring issues in the Debtor Entities' filing of police reports against customers of the Debtor Entities or their affiliates.

7

**INTERROGATORY NO. 4:** To the extent you deny, in whole or part, Request for Admission No. 1, please describe:
-       To whom, when, where, and how the notice was sent, and whether receipt was acknowledged.

**INTERROGATORY NO. 5:** To the extent you deny, in whole or part, Request for Admission No. 2, please describe:
-       To whom, when, where, and how the notice was sent, and whether receipt was acknowledged.

**INTERROGATORY NO. 6:** To the extent you deny, in whole or part, Request for Admission No. 3, please describe:
-       To whom, when, where, and how the notice was sent, and whether receipt was acknowledged.

**INTERROGATORY NO. 7:** To the extent you deny, in whole or part, Request for Admission No. 4, please explain with particularity why you deny.

**INTERROGATORY NO. 8:** Identify all steps taken by the Debtor Entities or their affiliates to ascertain the identities of potential claimants with claims relating to allegations of wrongful detention, false arrest, or wrongful prosecution.


Wilmington, Delaware
Dated: September 28, 2021

CIARDI CIARDI & ASTIN

*/s/ Daniel K. Astin*
Daniel K. Astin (No. 4068)
1204 North King Street
Wilmington, DE  19801
Telephone: (302) 658-1100
Facsimile: (302) 658-1300
dastin@ciardilaw.com
jmcmahon@ciardilaw.com

-and-

Albert A. Ciardi, III, Esquire
Walter W. Gouldsbury III, Esquire
CIARDI CIARDI & ASTIN
1905 Spruce Street
Philadelphia, PA 19103
Telephone:  (215) 557-3550
Facsimile:  (215) 557-3551

aciardi@ciardilaw.com
wgouldsbury@ciardilaw.com

-and-

Francis Malofiy, Esquire
FRANCIS ALEXANDER, LLC
280 N. Providence Road, Suite 1
Media, PA 19063
Telephone: (215) 500-1000
Facsimile: (215) 500-1005
francis@francisalexander.com

-and-

*Attorneys for the False Police Report
Claimants*

**EXHIBIT 3**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | : Chapter 11 |
| | : |
| THE HERTZ CORPORATION, *et al.,* [1] | : Case No. 20-11218 (MFW) |
| | : |
| | : (Jointly Administered) |
| Debtors. | : |
| | : |
| | : |

**FALSE POLICE REPORT CLAIMANTS' FIRST SET OF REQUESTS FOR**
**ADMISSIONS DIRECTED TO DEBTORS**

Pursuant to Rule 36 of the Federal Rules of Civil Procedure, made applicable by Rules 7036

9014 of the Federal Rules of Bankruptcy Procedure, False Police Report Claimants[2] hereby request

Debtors to admit or answer the following requests for admission and serve their responses on or the

undersigned counsel on or before October 12, 2021:[3]

---

[1] The last four digits of The Hertz Corporation's tax identification number are 8568. The location of the debtors' service address is 8501 Williams Road, Estero, FL 33928. Due to the large number of debtors in these chapter 11 cases, for which joint administration for procedural purposes has been requested, a complete list of the debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the debtors' proposed claims and noticing agent at https://restructuring.primeclerk.com/hertz.

[2] The "False Police Report Claimants" are those (i) individuals with cases pending that are detailed in the False Police Report Plaintiffs' Motion for Relief from Stay filed on June 25, 2020 [D.I.589] (the "False Police Report Plaintiffs--Claimants 1"); (ii) the 115 additional individuals with claims and/or claims and cases pending that are detailed in the Motion of the False Police Report Claimants No. 2 filed on February 2, 2021 [D.I. 2593] (the "False Police Report Plaintiffs--Claimants 2"); and (iii) the 29 individuals listed in the Motion of the False Police Report Claimants No. 3 for Relief from Stay and Any Plan Injunction filed on August 4, 2021 [D.I. 5656] (the "False Police Report Plaintiffs--Claimants 3").

[3] Any capitalized term not otherwise defined herein shall have the meanings ascribed to them in the False Police Report Claimants First Set of Requests for Production of Documents served concurrently herewith.

## REQUESTS FOR ADMISSIONS

**REQUEST FOR ADMISSION NO. 1:**  Excluding notice by publication, admit that the Debtor Entities did not provide individual notices of the bankruptcy to those individuals identified as the False Police Report Plaintiffs – Claimants 3.

**REQUEST FOR ADMISSION NO. 2:**  Excluding notice by publication, admit that the Debtor Entities did not provide individual notice of the bankruptcy to those individuals identified as the False Police Report Plaintiffs – Claimants 2.

**REQUEST FOR ADMISSION NO. 3:**  Excluding notice by publication, admit that Debtor Entities did not provide notice of the bankruptcy to individuals reported, arrested, detained, or prosecuted for theft from May 22, 2016 to the present.

**REQUEST FOR ADMISSION NO. 4:**  Admit that, prior to September 9, 2020, one or more of the Debtor Entities knew about claims of systemic, common, global, and/or reoccurring issues in the Debtor Entities' filing of police reports against customers of the Debtor Entities or Debtors' Affiliates.

Wilmington, Delaware
Dated:  September 28, 2021

CIARDI CIARDI & ASTIN

*/s/ Daniel K. Astin*
Daniel K. Astin (No. 4068)
1204 North King Street
Wilmington, DE  19801
Telephone: (302) 658-1100
Facsimile: (302) 658-1300
dastin@ciardilaw.com
jmcmahon@ciardilaw.com

-and-

Albert A. Ciardi, III, Esquire
Walter W. Gouldsbury III, Esquire
CIARDI CIARDI & ASTIN
1905 Spruce Street
Philadelphia, PA 19103
Telephone:  (215) 557-3550
Facsimile:  (215) 557-3551
aciardi@ciardilaw.com
wgouldsbury@ciardilaw.com

-and-

2

Francis Malofiy, Esquire
FRANCIS ALEXANDER, LLC
280 N. Providence Road, Suite 1
Media, PA 19063
Telephone: (215) 500-1000
Facsimile: (215) 500-1005
francis@francisalexander.com

*Attorneys for the False Police Report Claimants*

**EXHIBIT 4**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|   |   |
|---|---|
| In re:<br><br>Rental Car Intermediate Holdings, LLC,[1]<br><br>Reorganized Debtor. | Chapter 11<br><br>Case No. 20-11247 (MFW)<br><br>(Jointly Administered) |

### FALSE POLICE REPORT CLAIMANTS' REQUESTS FOR PRODUCTION

Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure, made applicable by Rules 7026, 7034, and 9014 of the Federal Rules of Bankruptcy Procedure, the False Police Report Claimants hereby request (these "Requests") that the Debtors produce the following documents at the offices of Faegre Drinker Biddle & Reath LLP, Attn: Patrick A. Jackson, 222 Delaware Ave., Suite 1410, Wilmington, Delaware 19801, on or before January 19, 2022.

### INSTRUCTIONS AND DEFINITIONS

1.      These Requests are continuing in character, so as to require the answering Debtors to file supplemental responses if the Debtors obtain or discover further, contradictory or different documents prior to trial. Such supplemental responses, if any, shall be filed from time to time promptly upon the discovery by you of such supplemental documents. Each Request is to be responded to separately and as completely as possible. The fact that an investigation is continuing and discovery is not complete shall not be used as a reason for failure to respond to

---

[1]     The last four digits of the tax identification number of Reorganized Debtor Rental Car Intermediate Holdings, LLC ("RCIH") are 2459. The location of the Reorganized Debtors' service address is 8501 Williams Road, Estero, FL 33928. On September 28, 2021, the Court entered a final decree closing each of the chapter 11 cases for The Hertz Corporation and its affiliated reorganized debtors (the "Reorganized Debtors") other than RCIH's chapter 11 case. Commencing on September 28, 2021, all motions, notices, and other pleadings relating to any of the Reorganized Debtors shall be filed in RCIH's chapter 11 case, Case No. 20-11247 (MFW).

1

any such Request as fully as possible. The omission of any document or other item of information from the response shall be deemed a representation that such document or item is not known to the Debtors, their counsel, or other representatives or agents of the Debtors.

    2.      As used herein:

        a.      The terms "document," "documents," "documentation," or "writing" shall mean and include the original, regardless of the location of the original, or any recorded, written, printed, typed, or other graphic material of every kind, variety, type or character, including by way of example (but not limited to) the following: books, records, contracts, agreements, insurance policies, invoices, purchase orders, statements of account, credit and debit memoranda, orders, , bills, installment contracts, rental agreements, certificates of title, financing statements, instruments, expense accounts, cancelled checks, bank statements, bank books, receipt and disbursement journals, tax returns, financial statements, check stubs, drafts, certificates, tabulations, questionnaires, tables, sketches, tax reports, working papers, computer data (including information or programs stored in a computer, whether or not ever printed out or displayed), resumes, medical records, address books, appointment books or telephone logs, notes, speeches, schedules, worksheets, pictures, income statements, profit and loss statements, deposit slips, credit card receipts, records and notations of telephone or personal conversations, conferences, inter-office communications, letters, telexes, partnership agreements, articles of incorporation, catalogue price lists, sound, tape and video recordings, memoranda (including written memoranda of telephone activities), minutes, manuals, diaries, calendars or desk pads, calendar or diary entries, scrapbooks, notebooks, correspondence, bulletins, circulars, policies, forms, pamphlets, notices, statements, journals, postcards, letters, telegrams, reports, magazines, booklets, brochures, instructions, interoffice communications, Photostats, microfilm,

2

microfiche, maps, deposition transcripts, pleadings, orders, releases, appraisals, estimates, valuations, opinions, studies, analyses, summaries, drawings, blueprints, photographs, negatives, graphs, charts, and other data, information or statistics contained within any data storage modules, tapes, discs or any other memory devices (including IBM or similar cards for information, data and programs) or any other information retrievable on storage systems (including computer generated reports and printouts).

b.      The phrase "a document or documents that evidences, refer(s) or relate(s) to" any given subject matter shall mean any document that constitutes, contains, embodies, identifies, states, refers to, deals with, pertains or in any way directly or indirectly bears upon or deals with the subject matter, including (without limitation) documents concerning the preparation of documents.

c.      The term "electronic data" shall mean any document created by any electronic device, including but not limited to, a computer (including personal computers, networks, and mainframes), personal digital assistant, mobile device, including instant messages or text messages sent from a computer, personal digital assistant, mobile device, or any electronic device, or digital or electronic recordings, voicemail saved in digital format.

d.      The term "communication" means every manner or means of disclosure, transfer, or exchange, including every disclosure, transfer or exchange or information whether transmitted orally, face- to-face, by document, electronically, telephone, mail, email, text message, video conference, personal delivery, meeting, or otherwise.

e.      "Reflecting," "relating," or "referring" to a given subject means any document, information, or communication that constitutes, contains, embodies, comprises,

3

reflects, identifies, states, refers to, deals with, comments on, responds to, describes, analyses or is in any way pertinent to that subject.

   f.  Singular references include the plural and plural references include the singular.

   g.  The words "and" and "or" shall be construed either conjunctively or disjunctively as required by the context to bring within the scope of this interrogatory any document that might be deemed outside its scope by another construction.

   h.  "Person" shall mean any individual, partnership, association, corporation, joint venture, firm, proprietorship, agency, board, authority, commission, or other legal or business entity.

   i.  "Hertz," "Debtors" or "Debtor Entities" shall mean each of the debtors in the above-captioned cases being jointly administered as *In re Hertz Corporation, et al.,* Case No. 20-11218 (including as reorganized), or any, representative, agent, or employee, thereof, or any affiliate such as Hertz Vehicles LLC.

   j.  "Bankruptcy Cases" shall mean the above styled and numbered cases in the U.S. Bankruptcy Court for the District of Delaware.

   k.  The words "and," "or," and "and/or" are used in the inclusive sense and require all documents that meet the description of one or more of the disjunctive words or phrases.

   l.  The terms "False Police Report Claimants" or "FPR Claimants" shall include, collectively, (i) the persons in the groups "False Police Report Claimants No. 1" and "False Police Report Claimants No. 2" whose claims are the subject of the Reorganized Debtors'

21st and 22nd omnibus objections to claims [Case No. 20-11218, D.I. 5898 & 5899], (ii) the movants (the "Group 3 FPR Claimants") in the *Claimants' Motion to Deem Claims Timely or for Extension of General Bar Date Under Rules 3003(c) and 9006* filed December 6, 2021 [D.I. 190] (the "Group 3 Motion"), and (iii) the movants (the "Group 4 FPR Claimants") in the *Group 4 False Police Report Claimants' Motion for Relief from the Confirmation Order to Pursue Claims Outside of Bankruptcy or, in the Alternative, for Extension of General and Administrative Bar Dates under Rules 3003(c) and 9006(b) and Related Relief* filed December 6, 2021 [D.I. 193] (the "Group 4 Motion").

      m.    The terms "Theft Package" or "Theft Packet" shall refer to the collection of documents and information given by Debtors to law enforcement authorities to report a car stolen.

      n.    The term "force charge" refers to the practice of charging to a renter's financial institution upon the closure of a rental contract the amount of authorization holds for that renter..

3.    If a document called for in this request is withheld under a claim of privilege, furnish a list reflecting each document for which the privilege is claimed and, with respect to each such document, provide the following information:

      a.    Names, addresses, and title of each author or addressee;

      b.    Names, addresses, and title of each addressor;

      c.    Each person to whom copies were sent or distributed and any other person to whom such document or its contents were disclosed;

      d.    Date, page length and subject matter of the document;

<div align="center">5</div>

e.     A description of the document; and

f.     Statement of the basis on which the document is being withheld.

4.     Responsive documents shall be produced as they have been kept in the usual course of business or shall be organized and labelled to correspond with the categories in this request.

5.     If any data or information responsive to the document requests exists in electronic format or as Electronic Data, you are instructed to produce such electronic data in its native format or, if unavailable as a .tiff file with an associated OCR.txt file capable of being searched; if neither is available, production shall be as a PDF format.

6.     If any documents herein requested have been lost, discarded, or destroyed, they shall be identified as completely as possible, including, without limitation, the following information: subject matter, the document's title, previous location, date of disposal, manner of disposal, reason for disposal, person authorizing disposal, and person disposing of the document.

7.     If any requested document was, but is no longer in your possession or subject to your control, state what disposition was made of the document and, if the document is still in existence, identify the person who has possession or control of the documents.

## REQUESTS FOR PRODUCTION OF DOCUMENTS

**REQUEST FOR PRODUCTION NO. 1:**

All documents and communications related to any separate funds or accounts set aside to service false theft report claims, including documents sufficient to show those funds/accounts were established.

6

**REQUEST FOR PRODUCTION NO. 2:**

All documents and communications related to any analyses of the amounts that should be allocated to any separate funds or accounts set aside to service false theft report claims.

**REQUEST FOR PRODUCTION NO. 3:**

Documents sufficient to show the source of the money deposited into any separate funds or accounts set aside to service false theft report claims.

**REQUEST FOR PRODUCTION NO. 4:**

Any settlements or other agreements with any individual or entity that release Hertz from liability related to the filing of a vehicle theft report.

**REQUEST FOR PRODUCTION NO. 5:**

All documents and communications related to Hertz's efforts to track false police report complaints and related stories posted on social media or the internet.

**REQUEST FOR PRODUCTION NO. 6:**

The minutes of any meetings of the board of directors, or corporate officer meetings or similar high-level management meetings, discussing Hertz's inventory control systems.

**REQUEST FOR PRODUCTION NO. 7:**

The minutes of any meetings of the board of directors, or corporate officer meetings or similar high-level management meetings, discussing FPR Claimants' cases or any other case in which Hertz has been sued (or threatened with suit) because of a false theft report.

**REQUEST FOR PRODUCTION NO. 8:**

All documents and communications related to Hertz's policies and procedures related to force charging renters' credit or debit cards as well as Hertz's policies and procedures for when such charges are disputed.

7

**REQUEST FOR PRODUCTION NO. 9:**

All documents and communications related to Hertz's investigation into the false theft report allegations, including but not limited to any allegations made by Francis Alexander LLC and its clients starting in November 2015 to present, specifically including but not limited to the February 13, 2020 letter sent to CEO Kathryn Marinello and Executive Vice President, General Counsel David Galainena.

**REQUEST FOR PRODUCTION NO. 10:**

All documents, communications, records, and recordings related to each vehicle each FPR Claimant is alleged to have stolen (or that was reported stolen before being rented to an FPR Claimant), including whether and when such vehicles were next rented or if not rented, the disposition of said vehicle.

**REQUEST FOR PRODUCTION NO. 11:**

All documents and communications related to any insurance claim filed by Hertz (or any other Debtor) for the loss of use (such as loss of business use), or any other grounds, of the vehicle allegedly stolen by any one of the FPR Claimants, including documents sufficient to show the amount of any claim paid and if not paid, the grounds for non-payment of the claim.

**REQUEST FOR PRODUCTION NO. 12:**

Any and all documents and communications related to any of the FPR Claimants.

**REQUEST FOR PRODUCTION NO. 13:**

All documents and communications related to any individual against whom Hertz has filed an auto theft report based on conversion.

**REQUEST FOR PRODUCTION NO. 14:**

Any and all documents and communications related to deciding whether to serve notice on a person or persons arrested or implicated in an automobile theft report filed by the Debtors.

8

**REQUEST FOR PRODUCTION NO. 15:**

Any and all documents and communications related to deciding how to provide effective publication notice of these bankruptcy cases and the relevant events during those proceedings, including the General Bar Date.

**REQUEST FOR PRODUCTION NO. 16:**

Any and all documents and communications related to theft investigations undertaken in connection with (1) an FPR Claimant or (2) a vehicle rented by an FPR Claimant.

**REQUEST FOR PRODUCTION NO. 17:**

Any and all documents and communications related to the recovery of any vehicle involved in a theft report filed against an FPR claimant or a vehicle rented by an FPR Claimant.

**REQUEST FOR PRODUCTION NO. 18:**

Any and all documents reflecting conversations with law enforcement involving theft reports filed by the Debtors.

**REQUEST FOR PRODUCTION NO. 19:**

Any and all documents and communications related to policies and procedures related to theft reports.

**REQUEST FOR PRODUCTION NO. 20:**

Documents or records sufficient to ascertain the employees involved in investigating and filing theft reports from January 1, 2015 to the present.

**REQUEST FOR PRODUCTION NO. 21:**

Documents or communications relating to withdrawing or amending a theft report filed by the Debtors.

**REQUEST FOR PRODUCTION NO. 22:**

9

All documents and communications identified or relied on in response to any Interrogatories served to date by the FPR Claimants (or any of them).

**REQUEST FOR PRODUCTION NO. 23:**

All documents compiling, listing, or otherwise showing those against whom the Debtors have filed theft reports.

**REQUEST FOR PRODUCTION NO. 24:**

The document described by Richard Livingston to Claimant Paula Murray as "an internal list of customers who were reported for theft," and any updated versions thereof.

**REQUEST FOR PRODUCTION NO. 25:**

All documents and communications compiling, listing, or otherwise showing vehicles that Hertz has reported stolen.

**REQUEST FOR PRODUCTION NO. 26:**

All communications or documents, whether internal or with third parties, estimating potential liability based on claims relating to false police reports.

**REQUEST FOR PRODUCTION NO. 27:**

The theft reports and related communications with law enforcement or third parties related to any FPR Claimant or any vehicle rented to an FPR Claimant.

**REQUEST FOR PRODUCTION NO. 28:**

All phone (or chat) records related to the FPR Claimants.

**REQUEST FOR PRODUCTION NO. 29:**

All financial and banking records related to the FPR Claimants.

**REQUEST FOR PRODUCTION NO. 30:**

All documents and communications related to arrest or prosecution of an FPR Claimant.

**REQUEST FOR PRODUCTION NO. 31:**

10

All documents and communications related to any attempts by Hertz (or any other Debtor) to dismiss other lawsuits filed by persons alleging to have been wrongly accused of car theft by Hertz and seeking relief for same, including any correspondence from Hertz's (or any other Debtor's) counsel to these persons.

**REQUEST FOR PRODUCTION NO. 32:**

The spreadsheet identified in the affidavit docketed at Doc. No. 1071, p.7-11, and produced in case no. 3:19-cv-00775-MGL (Lee v. The Hertz Corporation) and any updated or amended version of the document.

**REQUEST FOR PRODUCTION NO. 33:**

Any and all claims related to theft reporting that were or are handled, reported, or administrated in whole or in part by third party administrators including but not limited to ESIS, Lambda, Lambda GCL, and other third party administrators.

**REQUEST FOR PRODUCTION NO. 34:**

Any and all documents and communications provided to third parties, third party administrators, or insurance companies when closing out a vehicle of any one of the FPR Claimants., including but not limited to any police reports, accompanying or associated documents, or notification of the closing out of the vehicle or claim.

**REQUEST FOR PRODUCTION NO. 35:**

Any Theft Package relating to any FPR Claimant and/or any vehicle rented to a FPR Claimant, any resulting police report, and all related communications with law enforcement and/or third parties, including but not limited to any supplements and/or amendments to the Theft Package or its constituent subparts such as the "overdue rental notes."

**REQUEST FOR PRODUCTION NO. 36:**

ACTIVE.134995529.02

Any Theft Package relating to any person against whom the Debtor Entities filed a police report from May 22, 2016 to the present, any resulting police report, and all related communications with law enforcement and/or third parties, including but not limited to any supplements and/or amendments to the Theft Package and/or or its constituent subparts such as the "overdue rental notes."

**REQUEST FOR PRODUCTION NO. 37:**

All documents and/or communications relating to the deletion and/or erasure of rental extensions, and the changing of rental due dates, after a denied authorization hold or payment, including but not limited to policies, procedures, internal communications, and/or the computer code that results in the deletion.

**REQUEST FOR PRODUCTION NO. 38:**

The minutes of any meetings of the board of directors, or corporate officer meetings or similar high-level management meetings, discussing Debtors' theft reporting policies and procedures.

**REQUEST FOR PRODUCTION NO. 39:**

All documents and communications related to Debtors' theft reporting policies and procedures.

**REQUEST FOR PRODUCTION NO. 40:**

All documents and communications related to Debtors' knowledge of whether Debtors and their employees were complying with Hertz's theft reporting policies and procedures.

**REQUEST FOR PRODUCTION NO. 41:**

All documents and communications related to Debtors' knowledge of the effect of Hertz's theft reporting policies and procedures on Hertz customers.

ACTIVE.134995529.02

**REQUEST FOR PRODUCTION NO. 42:**

All documents and communications related to any disclosure to Hertz officers, directors, or employees that Hertz customers were at risk of false arrest and/or imprisonment.

**REQUEST FOR PRODUCTION NO. 43:**

All documents and communications responsive to any prior request for production served by the FPR Claimants (or any of them).

**REQUEST FOR PRODUCTION NO. 44:**

All documents and communications that would have been responsive to any prior request for production served by the FPR Claimants (or any of them) if, at the time of such request, the request had been on behalf of all current FPR Claimants.

Dated: December 20, 2021

**FRANCIS ALEXANDER, LLC**
Francis Malofiy
280 N. Providence Road, Suite 1
Media, PA 19063
Telephone: (215) 500-1000
Facsimile: (215) 500-1005
Email:  francis@francisalexander.com

**FAEGRE DRINKER
BIDDLE & REATH LLP**

*/s/ Patrick A. Jackson*
Patrick A. Jackson (Bar No. 4976)
Ian J. Bambrick (Bar No. 5455)
Jaclyn C. Marasco (Bar No. 6477)
222 Delaware Avenue, Suite 1410
Wilmington, DE 19801
Telephone:  (302) 467-4200
Facsimile: (302) 467-4201
Emails:  patrick.jackson@faegredrinker.com
        ian.bambrick@faegredrinker.com
        jaclyn.marasco@faegredrinker.com

**EXHIBIT 5**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

In re:

Rental Car Intermediate Holdings, LLC,[1]

Reorganized Debtor.

Chapter 11

Case No. 20-11247 (MFW)

(Jointly Administered)

## FALSE POLICE REPORT CLAIMANTS' SECOND SET OF INTERROGATORIES

Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure, made applicable by Rules 7026, 7033, and 9014 of the Federal Rules of Bankruptcy Procedure, the False Police Report Claimants[2] hereby request the Debtors to respond under oath and in writing to the following interrogatories (these "Interrogatories") on or before January 19, 2022:

### INSTRUCTIONS AND DEFINITIONS

1.    These Interrogatories are continuing in character, so as to require the Debtors to file supplemental answers if the Debtors obtains further, contradictory or different information. Such supplemental answers, if any, shall be filed from time to time promptly upon the discovery by you

---

[1]    The last four digits of the tax identification number of Reorganized Debtor Rental Car Intermediate Holdings, LLC ("RCIH") are 2459. The location of the Reorganized Debtors' service address is 8501 Williams Road, Estero, FL 33928. On September 28, 2021, the Court entered a final decree closing each of the chapter 11 cases for The Hertz Corporation and its affiliated reorganized debtors (the "Reorganized Debtors") other than RCIH's chapter 11 case. Commencing on September 28, 2021, all motions, notices, and other pleadings relating to any of the Reorganized Debtors shall be filed in RCIH's chapter 11 case, Case No. 20-11247 (MFW).

[2]    For the avoidance of doubt, each objection to a False Police Report Claimant's claim or motion by a False Police Report Claimant, as applicable, is a separate contested matter with respect to each such False Police Report Claimant, and all individual rights to discovery on account of such contested matters are expressly reserved. These Interrogatories are asserted jointly and numbered consecutively with interrogatories that were previously served by certain of the False Police Report Claimants solely for ease of administration and to avoid confusion, and without waiver of any individual rights to discovery.

1

of such supplemental information. Each Interrogatory is to be answered separately and as completely as possible. The fact that an investigation is continuing, and discovery is not complete shall not be used as a reason for failure to answer any such Interrogatory as fully as possible. The omission of any name, fact or other item of information from the answer shall be deemed a representation that such name, fact or item is not known to the Debtors, their counsel or other representatives or agents of the Debtors.

2.        Answers shall be based upon information known to the Debtors, their agents, attorneys, partners, associates, employees, servants, partners, associates, representatives, investigators or any other party or entity acting or who has acted by or on behalf of the Debtors. To the extent that the answer to any Interrogatory is not based upon information known to the Debtors, the Debtors shall specify that fact and the person or entity possessing such information.

3.        If the answer to all or any part of an Interrogatory is not presently known or available, include a statement to that effect, specifying the portion of the Interrogatory that cannot be completely answered. However, once information is available, the Debtors are required to furnish all information available in response to the entire Interrogatory by supplemental answer as required above.

4.        If the Debtors refuse to answer any Interrogatory or any part thereof on the grounds of privilege, the Debtors must identify the basis for the privilege claimed, the nature of any information that it refuses to disclose, referring specifically to the Interrogatory or any part thereof to which the Interrogatory applies and by identifying the form in which said information exists, the date of the document or oral communication and the general subject matter of the document or oral communication.

2

5.     As used in these Interrogatories:

a.     The terms "You" or "Your" shall mean the answering Debtors, and/or any of their agents, attorneys, partners, associates, employees, servants, representatives, investigators and any person or entity acting or who has acted by or on behalf of the Debtors.

b.     "Person" shall mean any natural person or any corporation, limited liability company, partnership, association, joint venture, firm or other business enterprise or legal entity and means both the singular and plural.

c.     "Document" and "writing" are used interchangeably and shall mean any written or graphic matter of any kind whatsoever, however produced or reproduced, any electronically or magnetically recorded matter of any kind or character, however produced or reproduced, and any other matter constituting the recording of data or information upon any tangible thing by any means, including but not limited to, the original and any non-identical copy of any of the following: books, records, contracts, agreements, promissory notes, invoices, purchase orders, statements of account, credit and debit memoranda, orders, loan agreements, bills, installment contracts, mortgages, deeds of trust, security agreements, certificates of title, financing statements, instruments, expense accounts, canceled checks, bank statements, bank books, receipt and disbursement journals, tax returns, financial statements, check stubs, drafts, certificates, tabulations, questionnaires, tables, sketches, tax reports, working papers, computer data (including information or programs stored in a computer, whether or not ever printed out or displayed), resumes, medical records, address books, appointment books or telephone logs, notes, speeches, schedules, worksheets, pictures, income statements, profit and loss statements, deposit slips, credit card receipts, records and notations of telephone or personal conversations, conferences, inter-office communications, letters, telexes, partnership agreements, articles of

3

incorporation, catalogue price lists, sound, tape and video recordings, memoranda (including written memoranda of telephone activities), minutes, manuals, diaries, calendars or desk pads, calendar or diary entries, scrapbooks, notebooks, correspondence, bulletins, circulars, policies, forms, pamphlets, notices, statements, journals, postcards, letters, telegrams, reports, magazines, booklets, brochures, instructions, interoffice communications, photostats, microfilm, microfiche, maps, deposition transcripts, pleadings, orders, releases, appraisals, estimates, valuations, opinions, studies, analyses, summaries, drawings, blueprints, photographs, negatives, graphs, charts, and other data, information or statistics contained within any data storage modules, tapes, discs or any other memory devices (including IBM or similar cards for information, data and programs) or any other information retrievable on storage systems (including computer generated reports and printouts).

        d.      "Communication" or "communication" shall mean any spoken communication, contact, oral or written, formal or informal at any time or place or under any circumstances whatsoever, whereby information of any nature was transmitted, recorded, or transferred (whether telephonic, written, in person or otherwise). Where you are requested to identify or list any communications, your identification or list of such communications shall require you separately as to each communication, to identify the mode of such communication, to identify the persons who participated in such communication, to identify the persons who overheard or had access to such communication, and to state the date of such communication, the time and/or place of such communication, and the subject matter of such communication.

        e.      "Identify" or "state the identity of" shall have the following meaning when used in the following contexts:

4

i.          When used in connection with a natural person, you are required to state his or her: (a) full name; (b) present or last known home address (including street name and number, city and state); (c) present or last known business address; (d) present position, business affiliation and job description and, if unknown, so state and set forth the corresponding last known instance of such information; (e) position, business affiliation and job description at the time in question, with respect to the Interrogatory or other request involved.

ii.         When used in connection with a corporation, limited liability company, partnership, association, joint venture, firm or other business enterprise or legal entity, you are required to state in the answer in each instance: (a) the full name and address; (b) a brief description of the primary business in which such entity is engaged; and (c) the identity of all persons who acted or were authorized to act on its behalf in connection with the matter referred to.

iii.        When used in connection with a document or writing, you are required to state in the answer in each instance: (a) whether or not such document is known to be in existence at the time of the answer; (b) the date of the document; (c) type of document (*e.g.* letter, memorandum, computer printout, estimate, etc.); (d) identity of the author(s), addressee(s) and any other person to whom the document was shown or distributed; (e) any filing or identifying number; and (f) the present or last known location and/or custodian thereof. If any such document was, but is no longer in the possession of or subject to control of Debtors or any affiliated business entity, state what and when disposition was made of it.

iv.        When used in connection with an oral communication, you are required to state in the answer in each instance: (a) the identity of each person communicating; (b) the identity of the recipient(s) and intended recipient(s) of the communication; (c) the identity

5

of each person present or otherwise aware of the substance of the communication; (d) the date and the place where it was made; (e) the identity of any document or writing that embodies, includes, reflects, concerns, relates, refers to or is based upon such oral communication; and (f) a detailed description of the substance of the communication.

        v.        When used in connection with a transaction, you are required to state in the answer in each instance: (a) a description of the property or thing that is the subject of the transaction; (b) the identity of the parties to the transaction; (c) the date of the transaction; (d) the place or site where the transaction took place; (e) the location of the property or thing that was the subject to the transaction at the time the transaction took place; (f) the identity of all persons who have knowledge of the transaction; and (g) identify all documents that refer or relate to the transaction.

        vi.        When used in connection with products or merchandise, you are required to state in the answer in each instance: (a) the full name of the product; (b) the use or purpose of the product; (c) the manufacturer of the product; (c) all persons who have personal knowledge of the sale or use of the product; (d) the volume of the product sold; (e) the gross receipts received from the sale of the product for each year that the product was sold; and (f) the identity of any documents that relate to the ownership of the product or the right to proceeds from the sale or use of the product.

        f.        "Electronic data" shall mean any document created by any electronic device, including but not limited to, a computer (including personal computers, networks, and mainframes), personal digital assistant, mobile device, including instant messages or text messages sent from a computer, personal digital assistant, mobile device, or any electronic device, or digital or electronic recordings, voicemail saved in digital format.

6

g.    "Reflecting," "relating," or "referring" to a given subject means any document, information, or communication that constitutes, contains, embodies, comprises, reflects, identifies, states, refers to, deals with, comments on, responds to, describes, analyses or is in any way pertinent to that subject.

h.    Singular references include the plural and plural references include the singular.

i.    The words "and" and "or" shall be construed either conjunctively or disjunctively as required by the context to bring within the scope of this interrogatory any document that might be deemed outside its scope by another construction.

j.    "Person" shall mean any individual, partnership, association, corporation, joint venture, firm, proprietorship, agency, board, authority, commission, or other legal or business entity.

k.    "Hertz," "Debtors" or "Debtor Entities" shall mean each of the debtors in the above-captioned cases being jointly administered as *In re Hertz Corporation, et al.,* Case No. 20-11218 (including as reorganized), or any representative, agent, or employee, thereof, or any affiliate such as Hertz Vehicles LLC.

l.    "You" and "Your" shall mean Hertz, Debtors, or Debtor Entities as defined above.

m.    "Bankruptcy Cases" shall mean the above styled and numbered cases in the U.S. Bankruptcy Court for the District of Delaware.

n.    The terms "False Police Report Claimants" or "FPR Claimants" shall include, collectively, (i) the persons in the groups "False Police Report Claimants No. 1" and "False Police Report Claimants No. 2" whose claims are the subject of the Reorganized Debtors'

7

21st and 22nd omnibus objections to claims [Case No. 20-11218, D.I. 5898 & 5899], (ii) the movants (the "Group 3 FPR Claimants") in the *Claimants' Motion to Deem Claims Timely or for Extension of General Bar Date Under Rules 3003(c) and 9006* filed December 6, 2021 [D.I. 190] (the "Group 3 Motion"), and (iii) the movants (the "Group 4 FPR Claimants") in the *Group 4 False Police Report Claimants' Motion for Relief from the Confirmation Order to Pursue Claims Outside of Bankruptcy or, in the Alternative, for Extension of General and Administrative Bar Dates under Rules 3003(c) and 9006(b) and Related Relief* filed December 6, 2021 [D.I. 193] (the "Group 4 Motion").

      o.    The term "Plan" shall mean the *Second Modified Third Amended Joint Chapter 11 Plan of Reorganization of The Hertz Corporation and its Debtor Affiliates* confirmed by order of the United States Bankruptcy Court for the District of Delaware on June 10, 2021 [D.I. 5261].

      p.    The terms "Theft Package" or "Theft Packet" shall refer to the collection of documents and information given by Debtors to law enforcement authorities to report a car stolen.

## INTERROGATORIES

**INTERROGATORY NO. 1**:

Update each of Your responses to prior interrogatories to include and address the Group 4 FPR Claimants (as identified in the Group 4 Motion) as if they had been "FPR Claimants" as originally defined therein.

**INTERROGATORY NO. 2**:

Identify, by FPR Claimant, all persons involved in the submission of any Theft Package to any law enforcement agency related to an FPR Claimant or the vehicle that he or she rented,

including any and all persons who approved the submission of the Theft Package to any law enforcement agency.

**INTERROGATORY NO. 3**:

Identify, by FPR Claimant, all persons involved in investigating any alleged vehicle theft by an FPR Claimant.

**INTERROGATORY NO. 4**:

Identify all insurance companies to whom, and insurance policies under which, You submitted a claim related to the alleged theft of a vehicle by an FPR Claimant, e.g., loss of use claims.

**INTERROGATORY NO. 5**:

Identify the total number and amount of claims paid under the policies identified in the previous interrogatory.

**INTERROGATORY NO. 6**:

Identify by name and account number any accounts established to service the claims made by any one of the FPR Claimants.

**INTERROGATORY NO. 7**:

Identify, by FPR Claimant, by name the vehicle repossession services You claim to have contacted or hired as part of Your efforts, if any, to recover vehicles allegedly stolen by any of the FPR Claimants.

**INTERROGATORY NO. 8**:

Identify all law enforcement agencies that have sent, given, transmitted, or provided You in any manner or medium warnings, admonitions, or complaints related to Your vehicle theft reporting practices.

9

**INTERROGATORY NO. 9**:

Identify all non-legal personnel tasked (whether employed by You or by a third party) with assisting in this lawsuit and provide a brief description of their role.

**INTERROGATORY NO. 10**:

Identify the earliest date at which the Board of Directors was told of the FPR Claimants' allegations about Debtors' systemic deficiencies as to false Theft Packages.

**INTERROGATORY NO. 11**:

Identify all materials given to the Board of Directors or any of Your officers that summarize or describe the FPR Claimants' allegations or similar allegations made by other persons.

**INTERROGATORY NO. 12**:

Identify by name, if any, the internal policies related to Your actions and procedures in response to inquiries from law enforcement agencies, including any inquiries about whether the subject of a Theft Package has a valid rental agreement.

**INTERROGATORY NO. 13**:

Explain how recordings with renters, especially and including the FPR Claimants, are stored and saved for future use. This response requires a description of the digital (or analog) storage media, how such media is organized, who has access to such media, and the circumstances surrounding the deletion or destruction of such media.

**INTERROGATORY NO. 14**:

For each quarter since January 2017, identify per quarter the number of Theft Packages filed against renters in connection with vehicles they had rented from You.

10

**INTERROGATORY NO. 15**:

Identify by name the FPR Claimants, if any, whom you assert were served actual notice of each of the following: (i) commencement of the Debtors' chapter 11 cases, (ii) the general claims bar date in the Debtors' chapter 11 cases, (iii) the hearing on confirmation of the Debtors' chapter 11 plan and the deadline for objections thereto, and (iv) confirmation and effectiveness of the Plan and the deadline for filing administrative expense requests.

**INTERROGATORY NO. 16**:

Identify the earliest date at which the Plan Sponsors or Amarillo (each as defined in the Plan), or any of them, were told of the FPR Claimants' allegations about the Debtors' systemic deficiencies as to false Theft Packages.

**INTERROGATORY NO. 17**:

Identify all persons to whom You or Your counsel have sent correspondence demanding dismissal of lawsuits filed by persons alleging to have been wrongly accused of car theft by Hertz and seeking relief for same.

**INTERROGATORY NO. 18**:

Identify by name and version the software used to track rentals, rental extensions, rental returns, and inventory by Hertz from 2015 to the present.

**INTERROGATORY NO. 19**:

Identify by name and version the software used to create lists, spreadsheets, or rolls of renters against whom Hertz (or any other Debtor) has filed a vehicle Theft Package.

**INTERROGATORY NO. 20**:

Identify, by FPR Claimant, all persons involved in any rental of a vehicle to an FPR Claimant, including those at any local office, those who supervise the local office, and those involved with the rental at a national level.

11

**INTERROGATORY NO. 21**:

Identify all persons against whom You have filed a Theft Package since 2017.

**INTERROGATORY NO. 22**:

Identify all persons that You are aware have been arrested in connection with a Theft Package filed by You—including because You rented the person a vehicle previously reported stolen—since 2017.

**INTERROGATORY NO. 23**:

Identify all persons involved in deciding either (or both) of the following: (i) to whom to give notice of key stages of the bankruptcy proceedings, including those referenced in interrogatory 15 above, and (ii) how to provide publication notice.

Dated: December 20, 2021

**FRANCIS ALEXANDER, LLC**
Francis Malofiy
280 N. Providence Road, Suite 1
Media, PA 19063
Telephone: (215) 500-1000
Facsimile: (215) 500-1005
Email: francis@francisalexander.com

**FAEGRE DRINKER
BIDDLE & REATH LLP**

*/s/ Patrick A. Jackson*
Patrick A. Jackson (Bar No. 4976)
Ian J. Bambrick (Bar No. 5455)
Jaclyn C. Marasco (Bar No. 6477)
222 Delaware Avenue, Suite 1410
Wilmington, DE 19801
Telephone: (302) 467-4200
Facsimile: (302) 467-4201
Emails: patrick.jackson@faegredrinker.com
         ian.bambrick@faegredrinker.com
         jaclyn.marasco@faegredrinker.com

*Co-Counsel for the False Police Report Claimants*

12

**EXHIBIT 6**

| | |
|---|---|
| **From:** | Hershey, Samuel <sam.hershey@whitecase.com> |
| **Sent:** | Sunday, January 16, 2022 10:42 PM |
| **To:** | Bambrick, Ian J.; Marasco, Jaclyn C.; Justin A. Nelson; John Lahad; BFARNAN@FARNANLAW.COM; ACIARDI@CIARDILAW.COM; WGOULDSBURY@CIARDILAW.COM; Jackson, Patrick A.; Shore, Christopher; Smith, Erin; Panchyson, Dorian; Kates, Paula; stearn@rlf.com; Knight, John  (External); Haywood, Brett (External); NOBLE@RLF.COM; Grace, Susan; Taylor Hoogendoorn |
| **Subject:** | RE: Discovery re Group 3 & 4 Claimants |

**This Message originated outside your organization.**

---

All:

Below please find an FTP link where you can access the Debtors' document production regarding the Group 1 and Group 3 claimants that filed proofs of claim.  As discussed, the Debtors intend to supplement this production with further materials on a rolling basis as they become available.  A password to this production will follow under separate cover.

These documents have been designated "Highly Confidential" and are being produced to you pursuant to Local Rule 9018-1(f) and should only be shared among those counsel to the "False Police Report Claimants" admitted in the chapter 11 cases pursuant to Local Rule 9010-1(a) or (b).

FTP Link : https://amsfs.whitecase.com/ngdox/workspaces/12105

Best,
Sam

**Samuel P. Hershey** | Partner
**T** +1 (212) 819-2699   **M** +1 (914) 582-1628   **E** sam.hershey@whitecase.com
White & Case LLP  |  1221 Avenue of the Americas  |  New York, NY 10020-1095

**WHITE & CASE**

1

**EXHIBIT 7**

| | |
|---|---|
| **From:** | Hershey, Samuel <sam.hershey@whitecase.com> |
| **Sent:** | Monday, January 31, 2022 10:17 PM |
| **To:** | Bambrick, Ian J.; Marasco, Jaclyn C.; Justin A. Nelson; John Lahad; BFARNAN@FARNANLAW.COM; ACIARDI@CIARDILAW.COM; WGOULDSBURY@CIARDILAW.COM; Jackson, Patrick A.; Shore, Christopher; Smith, Erin; Panchyson, Dorian; Kates, Paula; stearn@rlf.com; Knight, John  (External); Haywood, Brett (External); NOBLE@RLF.COM; Grace, Susan; Taylor Hoogendoorn; Kandestin, Cory D. |
| **Subject:** | RE: Discovery re Group 3 & 4 Claimants |

**This Message originated outside your organization.**

---

All:

Below please find an FTP link where you can access the Debtors' document production regarding the Group 4A claimants.  As discussed, the Debtors intend to supplement this production with further materials on a rolling basis as they become available.  A password to this production will follow under separate cover.

These documents have been designated "Highly Confidential" and are being produced to you pursuant to Local Rule 9018-1(f) and should only be shared among those counsel to the "False Police Report Claimants" admitted in the chapter 11 cases pursuant to Local Rule 9010-1(a) or (b).

https://amsfs.whitecase.com/ngdox/workspaces/12105

Best,
Sam

**Samuel P. Hershey** | Partner
**T** +1 (212) 819-2699    **M** +1 (914) 582-1628    **E** sam.hershey@whitecase.com
White & Case LLP | 1221 Avenue of the Americas | New York, NY 10020-1095
**WHITE & CASE**

==========================================================================

This email communication is confidential and is intended only for the individual(s) or entity named above and others who have been specifically authorized to receive it. If you are not the intended recipient, please do not read, copy, use or disclose the contents of this communication to others. Please notify the sender that you have received this email in error by replying to the email or by telephoning +1 212 819 8200. Please then delete the email and any copies of it. Thank you.

Our external privacy policy is available on https://www.whitecase.com/privacy-policy.

==========================================================================

**EXHIBIT 8**

| From: | Hershey, Samuel <sam.hershey@whitecase.com> |
|---|---|
| Sent: | Thursday, February 3, 2022 11:31 PM |
| To: | Taylor Hoogendoorn |
| Cc: | Bambrick, Ian J.; Marasco, Jaclyn C.; Justin A. Nelson; John Lahad; BFARNAN@FARNANLAW.COM; ACIARDI@CIARDILAW.COM; WGOULDSBURY@CIARDILAW.COM; Jackson, Patrick A.; Shore, Christopher; Smith, Erin; Panchyson, Dorian; Kates, Paula; stearn@rlf.com; Knight, John  (External); Haywood, Brett (External); NOBLE@RLF.COM |
| Subject: | RE: Discovery re Group 3 & 4 Claimants |

**This Message originated outside your organization.**

Hi Taylor,

As an initial matter, below is a link to a supplemental production of documents, including customer service records.  A password will follow in a separate email.

https://amsfs.whitecase.com/ngdox/workspaces/12105

In follow-up to your email, I think a call to discuss the below items makes sense.  It will help clarify our positions, and also give us a chance to explain the process we used for our searches, which he previously offered.  Please let me know your availability this weekend or Monday.

Best,
Sam

**Samuel P. Hershey**  | Partner
**T** +1 (212) 819-2699    **M** +1 (914) 582-1628    **E**  sam.hershey@whitecase.com
White & Case LLP  |  1221 Avenue of the Americas  |  New York, NY 10020-1095
**WHITE & CASE**

**From:** Taylor Hoogendoorn <THoogendoorn@susmangodfrey.com>
**Sent:** Monday, January 31, 2022 11:36 AM
**To:** Hershey, Samuel <sam.hershey@whitecase.com>
**Cc:** Bambrick, Ian J. <ian.bambrick@faegredrinker.com>; Marasco, Jaclyn C. <jaclyn.marasco@faegredrinker.com>; Justin A. Nelson <jnelson@SusmanGodfrey.com>; John Lahad <jlahad@SusmanGodfrey.com>; BFARNAN@FARNANLAW.COM; ACIARDI@CIARDILAW.COM; WGOULDSBURY@CIARDILAW.COM; Jackson, Patrick A. <patrick.jackson@faegredrinker.com>; Shore, Christopher <cshore@whitecase.com>; Smith, Erin <erin.smith@whitecase.com>; Panchyson, Dorian <dorian.panchyson@whitecase.com>; Kates, Paula <paula.kates@whitecase.com>; stearn@rlf.com; Knight, John (External) <knight@rlf.com>; Haywood, Brett (External) <Haywood@rlf.com>; NOBLE@RLF.COM
**Subject:** RE: Discovery re Group 3 & 4 Claimants

Sam,

I hope you had a good weekend and weren't buried too deep in snow. Thanks for the update re Group 4A.

I think we have a fundamental disagreement about the scope and relevance of discovery as we discussed on the meet and confer. We're of course happy to jump on another call, but as you say we see relevancy in much different terms. We

believe that we are entitled to Hertz's documents regarding its knowledge of the individual claimants in the requested categories, and you do not for most of the categories.

Taylor C. Hoogendoorn
Susman Godfrey LLP
thoogendoorn@susmangodfrey.com
(c): (630) 824-8210
Not admitted in Texas. Practicing under the supervision of the partnership of Susman Godfrey LLP.

**EXHIBIT 9**

| From: | Hershey, Samuel <sam.hershey@whitecase.com> |
|---|---|
| Sent: | Saturday, February 5, 2022 9:09 PM |
| To: | Taylor Hoogendoorn |
| Cc: | Bambrick, Ian J.; Marasco, Jaclyn C.; Justin A. Nelson; John Lahad; BFARNAN@FARNANLAW.COM; ACIARDI@CIARDILAW.COM; WGOULDSBURY@CIARDILAW.COM; Jackson, Patrick A.; Shore, Christopher; Smith, Erin; Panchyson, Dorian; Kates, Paula; stearn@rlf.com; Knight, John (External); Haywood, Brett (External); NOBLE@RLF.COM |
| Subject: | RE: Discovery re Group 3 & 4 Claimants |

EXTERNAL Email

Hi Taylor,

As an initial matter, we are producing three further documents.  The link is below, with a password to follow.

https://amsfs.whitecase.com/ngdox/workspaces/12105

I am available to speak at 8am CT / 9am ET on Monday.  I will try to provide information regarding our searches ahead of the call.  I can certainly provide relevant retention policies.  Some matters will be easier to discuss by phone.

Regarding your question about lists, while we are continuing our review, the only lists of which we are presently aware that reflect the names of Group 3 and Group 4 Claimants are privileged, as they were prepared by or at the direction of counsel.

Best,
Sam

**Samuel P. Hershey** | Partner
**T** +1 (212) 819-2699   **M** +1 (914) 582-1628   **E** sam.hershey@whitecase.com
White & Case LLP | 1221 Avenue of the Americas | New York, NY 10020-1095

**WHITE & CASE**

**EXHIBIT 10**

| From: | Taylor Hoogendoorn <THoogendoorn@susmangodfrey.com> |
|-------|------------------------------------------------------|
| Sent: | Thursday, January 20, 2022 1:05 PM |
| To: | Hershey, Samuel |
| Cc: | Bambrick, Ian J.; Marasco, Jaclyn C.; Justin A. Nelson; John Lahad; BFARNAN@FARNANLAW.COM; ACIARDI@CIARDILAW.COM; WGOULDSBURY@CIARDILAW.COM; Jackson, Patrick A.; Shore, Christopher; Smith, Erin; Panchyson, Dorian; Kates, Paula; stearn@rlf.com; Knight, John  (External); Haywood, Brett (External); NOBLE@RLF.COM |
| Subject: | RE: Discovery re Group 3 & 4 Claimants |

**This Message originated outside your organization.**

Sam,

I hope you are well. We obviously have a number of conversations in the hopper, but I wanted to reach out about several of the bigger-picture topics:

(1) We have discussed whether other issues presented in or underlying Group 3, Group 4, and Class motions—other than the issues in the February 14 briefing—will move forward on March 2. On our reading of the transcript, we do not believe the Court expects those other issues to move forward as more than a scheduling hearing. We think this is sufficiently clear from the overall thrust of the transcript, and a couple specific exchanges illustrate the point:

    a. The Court: "I think teeing up the notice issue is the next thing." Jan 4 Tr. 30:3–4.

    b. Mr. Jackson: "I think that you're really kind of teeing up the subset of … did these particular people show that they had enough contacts that … they were a creditor. And I just want to make clear, if that's what you want to try to winnow down at the next hearing, I think you could probably do that." The Court: "I understand that. I'm only trying to winnow down – if you're correct that these people told the debtor, you know, I was arrest – had numerous contacts the debtors to prove that they, you know, extended their lease … If everybody in your group is a known creditor, why do I even have to talk about anything else?" Jan. 4 Tr. 31:13–32:4.

To the extent you read the transcript differently, we are happy to discuss. On a pragmatic note, I think the Court's point is that resolving the issues in the February 14 briefing will likely inform the most efficient path forward on other issues. And those other issues, in many instances, raise factual questions that would entail their own discovery.

(2) Ian Bambrick relayed your conversation about the scope of the February 14 briefing (going forward please include John Lahad or me on any conversations you intend to have with us regarding any meet and confer topic, as it will make the process more efficient). The parties seem to agree that the Court asked that the parties address certain claimant-specific notice issues in that briefing. To be clear, the Claimants expect the February 14 supplemental briefing to address that notice issue for all FPR claimants who were not part of a group proof of claim filed by the General Bar Date but whose individual proofs of claim are filed on or before January 31, including (i) those who file in Group 3, (ii) what we'll call Group 4a (those on the December 6 motion), and (iii) what we'll call Group 4b (those not part of the Dec. 6 motion, but who file by Jan. 31). In our view, the Court was clear that it would like that briefing to offer the parties' "preliminary arguments … to the extent that they think

1

*the evidence presented by the proofs of claim* will cause me to consider the request or the analysis," Jan 4 Tr. 28:15–22. The Court then asked Chris whether "the debtor [would] be prepared to do that within two weeks" for proofs of claim filed by January 31. *Id.* 28:21–22. And Chris said "Yes." *Id.* 28:23; *see also id.* 28:9–12 (Mr. Shore: "Group 3 and Group 4, with a hundred -- I mean, if Mr. Nelson is telling me we're going to get a hundred or so … I'd like two weeks."). To be sure, the parties might also reference discovery materials exchanged prior to that time in addition to the Claimants' "evidence presented by the proofs of claim," but those materials are not necessary to provide the "preliminary" supplemental briefing the Court requested.

(3) On Sunday, you produced some documents relating to certain Group 3 Claimants who have filed proofs of claim. Upon initial review of your productions, we find them to be significantly deficient. There are only a couple of emails in total spread across all of the claimants. And outside of the theft package itself, the Group 3 production includes no (or next to no):

    a. Phone (or chat) records relating to the claimant, including call logs related to the Claimant;
    b. financial/accounting/banking records relating to the claimant;
    c. records of communications between the Claimant and various departments of the Debtors' (e.g., customer service/roadside assistance/etc.);
    d. Internal notes associated with the Claimants' rental;
    e. communications involving the local branch that rented the vehicle to the Claimant or reported the theft;
    f. records from the local branch that rented the vehicle;
    g. records of communications with third-parties involving the Claimant or vehicle at issue;
    h. public records searches for the Claimant;
    i. documents showing when the vehicle at issue was next rented (or disposed of if not rented again);
    j. records of communications or any interactions with law enforcement or prosecutors, including those involving employee discussion/participation in ongoing prosecutions;
    k. records of client profiles, rental history, priority status, etc;
    l. any internal tracking (including spreadsheets or databases such as the database of those against whom police reports were filed and including any tracking through your third-party agents such as ESIS) related to the claimant, including any possible claim related to the filing of false police reports or the allegations in the proofs of claim or the false police reports generally;
    m. any internal documents related to any discussion about the claimant related to any possible claim or dispute related to the allegations in the proof of claim or the false police reports generally.

We expect these documents for the Group 3 and Group 4a claimants no later than January 28. These searches already should have taken place. On the previous M&C we discussed your providing "a description of the search that was conducted and what criteria were used in selecting documents for production." My apologies if I've missed something, but I haven't seen anything like that. Perhaps a fruitful step would be (1) providing "a description of the search that was conducted and what criteria were used in selecting documents for production"; (2) letting us know whether the production includes all or substantially all of the materials that will be produced after that search for Group 3; and (3) describing or producing any record retention/deletion policy. That way we can at least get a sense of whether the above are available but not identified/produced.

(4) As to some of those materials for the internal tracking mentioned above, you below suggest that for documents referencing the claimants as part of a list, database, or collection "(I) MAINTAINED BY THE DEBTORS, (II) OF WHICH THE DEBTORS ARE REASONABLY AWARE AND (III) RELEVANT TO CLAIMANTS' CLAIMS (I.E., NOT SIMPLY A LIST OF "PEOPLE TO WHOM HERTZ HAS RENTED CARS"), WE WILL IDENTIFY THAT CLAIMANT." We would preliminarily object on at least a few grounds: (i) the "relevant" documents identifying a Claimant should be produced, not just characterized by you and identified as referencing the Claimant; (ii) the productions should include any available list, database, or collection whether maintained by the debtor or by a third-party/agent (e.g., ESIS)—to the extent the Debtors are aware of any such list, database, or collection maintained by a third party/agent but do not produce it or cannot search it for the Claimant's info, identify and describe the list, database, or collection and the current owner/manager of such database; (iii) to the extent the Debtor is aware

of a list but believes it is not "relevant to Claimants' claims," please identify the list and briefly describe the listed information in case the parties take different views on relevance (we don't plan, of course, to ask you to produce a listing of every person to whom Hertz has rented cars, but the parties might well share different views of what information is relevant).

(5) As described above, we expect your production to include any documents and/or interrogatory responses related to your document destruction policy to the extent it relates to any of the relevant categories of information above.

(6) The FRCP 30-day response deadline for the RFPs and ROGs served by the Claimants on December 20 was yesterday, January 19. We have not received anything. Many of these requests and interrogatories, along with the prior discovery, relate to the individual considerations of notice that the Court expects you to produce.

Finally, we note that as early as your briefing related to your first Motion to Quash, you stated that you would be providing us with the relevant books and records. This made the paucity of your production even more disappointing. Each Claimant has put (or soon will put) in a declaration the facts supporting what they know about regarding individualized notice. But we cannot know what is in Hertz's possession that would further support any claimant's argument regarding individualized notice. Please produce that information forthwith.

We are of course happy to discuss any of the above points, but let's do so shortly as relevant deadlines are on the horizon.

Best,
Taylor C. Hoogendoorn
Susman Godfrey LLP
thoogendoorn@susmangodfrey.com
(c): (630) 824-8210
Not admitted in Texas. Practicing under the supervision of the partnership of Susman Godfrey LLP.

<THoogendoorn@susmangodfrey.com>
**Sent:** Wednesday, January 12, 2022 9:19 PM

**EXHIBIT 11**

| From: | Taylor Hoogendoorn <THoogendoorn@susmangodfrey.com> |
|---|---|
| Sent: | Thursday, January 27, 2022 1:53 PM |
| To: | Hershey, Samuel |
| Cc: | Bambrick, Ian J.; Marasco, Jaclyn C.; Justin A. Nelson; John Lahad; BFARNAN@FARNANLAW.COM; ACIARDI@CIARDILAW.COM; WGOULDSBURY@CIARDILAW.COM; Jackson, Patrick A.; Shore, Christopher; Smith, Erin; Panchyson, Dorian; Kates, Paula; stearn@rlf.com; Knight, John  (External); Haywood, Brett (External); NOBLE@RLF.COM |
| Subject: | RE: Discovery re Group 3 & 4 Claimants |

**This Message originated outside your organization.**

Dear Sam,

I hope you are well. In the email exchange below we identified numerous categories that were missing from your productions (III.a-m, IV). We discussed these during the M&C and understand you are not going to produce those categories of discovery. To be clear, we believe that your failure to produce these documents is highly prejudicial and that these documents are relevant to further support the Claimants' proofs of claim on issues going forward on March 2. We understand that you will shortly produce documents for Group 4a (and later Group 4b) similar to those produced for Group 3, but what you produced for Group 3 is far from complete, can be misleading, and does not respond to our requests regarding the individualized notice issue teed up for the March 2 hearing or comply with what we believe the Court expects you to produce in advance of the hearing.

Please consider this email a renewal of our request for the Debtors to produce the categories of documents set forth below for Group 3, Group 4a, and Group 4b Claimants.

Best,
Taylor C. Hoogendoorn
Susman Godfrey LLP
thoogendoorn@susmangodfrey.com
(c): (630) 824-8210
Not admitted in Texas. Practicing under the supervision of the partnership of Susman Godfrey LLP.

**From:** Hershey, Samuel <sam.hershey@whitecase.com>
**Sent:** Sunday, January 23, 2022 10:55 PM
**To:** Taylor Hoogendoorn <THoogendoorn@susmangodfrey.com>
**Cc:** Bambrick, Ian J. <ian.bambrick@faegredrinker.com>; Marasco, Jaclyn C. <jaclyn.marasco@faegredrinker.com>; Justin A. Nelson <jnelson@SusmanGodfrey.com>; John Lahad <jlahad@SusmanGodfrey.com>; BFARNAN@FARNANLAW.COM; ACIARDI@CIARDILAW.COM; WGOULDSBURY@CIARDILAW.COM; Jackson, Patrick A. <patrick.jackson@faegredrinker.com>; Shore, Christopher <cshore@whitecase.com>; Smith, Erin <erin.smith@whitecase.com>; Panchyson, Dorian <dorian.panchyson@whitecase.com>; Kates, Paula <paula.kates@whitecase.com>; stearn@rlf.com; Knight, John (External) <knight@rlf.com>; Haywood, Brett (External) <Haywood@rlf.com>; NOBLE@RLF.COM
**Subject:** RE: Discovery re Group 3 & 4 Claimants

<mark>EXTERNAL Email</mark>

1

Hi Taylor,

Thanks for your patience. Responses to your points below. I agree it makes sense to meet and confer. I can be available on Tuesday. Please treat the below information consistent with Local Rule 9018.

**Samuel P. Hershey** | Partner
**T** +1 (212) 819-2699    **M** +1 (914) 582-1628    **E** sam.hershey@whitecase.com
White & Case LLP | 1221 Avenue of the Americas | New York, NY 10020-1095

## WHITE & CASE

**From:** Taylor Hoogendoorn <THoogendoorn@susmangodfrey.com>
**Sent:** Thursday, January 20, 2022 1:05 PM
**To:** Hershey, Samuel <sam.hershey@whitecase.com>
**Cc:** Bambrick, Ian J. <ian.bambrick@faegredrinker.com>; Marasco, Jaclyn C. <jaclyn.marasco@faegredrinker.com>; Justin A. Nelson <jnelson@SusmanGodfrey.com>; John Lahad <jlahad@SusmanGodfrey.com>; BFARNAN@FARNANLAW.COM; ACIARDI@CIARDILAW.COM; WGOULDSBURY@CIARDILAW.COM; Jackson, Patrick A. <patrick.jackson@faegredrinker.com>; Shore, Christopher <cshore@whitecase.com>; Smith, Erin <erin.smith@whitecase.com>; Panchyson, Dorian <dorian.panchyson@whitecase.com>; Kates, Paula <paula.kates@whitecase.com>; stearn@rlf.com; Knight, John (External) <knight@rlf.com>; Haywood, Brett (External) <Haywood@rlf.com>; NOBLE@RLF.COM
**Subject:** RE: Discovery re Group 3 & 4 Claimants

Sam,

I hope you are well. We obviously have a number of conversations in the hopper, but I wanted to reach out about several of the bigger-picture topics:

(1) We have discussed whether other issues presented in or underlying Group 3, Group 4, and Class motions—other than the issues in the February 14 briefing—will move forward on March 2. On our reading of the transcript, we do not believe the Court expects those other issues to move forward as more than a scheduling hearing. We think this is sufficiently clear from the overall thrust of the transcript, and a couple specific exchanges illustrate the point:

   a. The Court: "I think teeing up the notice issue is the next thing." Jan 4 Tr. 30:3–4.
   b. Mr. Jackson: "I think that you're really kind of teeing up the subset of … did these particular people show that they had enough contacts that … they were a creditor. And I just want to make clear, if that's what you want to try to winnow down at the next hearing, I think you could probably do that." The Court: "I understand that. I'm only trying to winnow down – if you're correct that these people told the debtor, you know, I was arrest – had numerous contacts the debtors to prove that they, you know, extended their lease … If everybody in your group is a known creditor, why do I even have to talk about anything else?" Jan. 4 Tr. 31:13–32:4.

To the extent you read the transcript differently, we are happy to discuss. On a pragmatic note, I think the Court's point is that resolving the issues in the February 14 briefing will likely inform the most efficient path forward on other issues. And those other issues, in many instances, raise factual questions that would entail their own discovery.

WE AGREE THAT THE ONLY SUBSTANTIVE MATTER(S) THAT WILL GO FORWARD AT THE MARCH 2 HEARING IS ARGUMENT ON WHETHER THE GROUP 3 AND GROUP 4 CLAIMANTS WERE KNOWN CREDITORS (BUT WITHOUT CONSIDERATION OF THE "SYSTEMIC" ISSUE).

(2) Ian Bambrick relayed your conversation about the scope of the February 14 briefing (going forward please include John Lahad or me on any conversations you intend to have with us regarding any meet and confer topic, as it will make the process more efficient). The parties seem to agree that the Court asked that the parties

2

address certain claimant-specific notice issues in that briefing. To be clear, the Claimants expect the February 14 supplemental briefing to address that notice issue for all FPR claimants who were not part of a group proof of claim filed by the General Bar Date but whose individual proofs of claim are filed on or before January 31, including (i) those who file in Group 3, (ii) what we'll call Group 4a (those on the December 6 motion), and (iii) what we'll call Group 4b (those not part of the Dec. 6 motion, but who file by Jan. 31). In our view, the Court was clear that it would like that briefing to offer the parties' "preliminary arguments … to the extent that they think *the evidence presented by the proofs of claim* will cause me to consider the request or the analysis," Jan 4 Tr. 28:15–22. The Court then asked Chris whether "the debtor [would] be prepared to do that within two weeks" for proofs of claim filed by January 31. *Id.* 28:21–22. And Chris said "Yes." *Id.* 28:23; *see also id.* 28:9–12 (Mr. Shore: "Group 3 and Group 4, with a hundred -- I mean, if Mr. Nelson is telling me we're going to get a hundred or so … I'd like two weeks."). To be sure, the parties might also reference discovery materials exchanged prior to that time in addition to the Claimants' "evidence presented by the proofs of claim," but those materials are not necessary to provide the "preliminary" supplemental briefing the Court requested.

OK

(3) On Sunday, you produced some documents relating to certain Group 3 Claimants who have filed proofs of claim. Upon initial review of your productions, we find them to be significantly deficient. There are only a couple of emails in total spread across all of the claimants. And outside of the theft package itself, the Group 3 production includes no (or next to no):

WE CAN DISCUSS THE BELOW WHEN WE MEET AND CONFER, BUT PRELIMINARY RESPONSES ARE BELOW

     a. Phone (or chat) records relating to the claimant, including call logs related to the Claimant; TO THE EXTENT A THEFT PACKAGE WAS GENERATED BY VEHICLE CONTROL IN CONNECTION WITH A PARTICULAR CLAIMANT, IT WAS PRODUCED TO YOU.  THAT THEFT PACKAGE CONTAINS RECORDS OF ALL COMMUNICATIONS BETWEEN VEHICLE CONTROL AND THE CLAIMANT, INCLUDING BY PHONE, TEXT AND EMAIL.

     b. financial/accounting/banking records relating to the Claimant; WE PROVIDED RELEVANT INVOICES. I AM NOT SURE WHAT ELSE SPECIFICALLY THIS REFERS TO OR WHY IT IS RELEVANT.

     c. records of communications between the Claimant and various departments of the Debtors' (e.g., customer service/roadside assistance/etc.); AS NOTED ABOVE, WE PRODUCED VEHICLE CONTROL RECORDS.  ROADSIDE ASSISTANCE KEEPS RECORDS GOING BACK TWO YEARS.  THOSE RECORDS WERE PRODUCED TO YOU IF THEY WERE STILL AVAILABLE.

     d. Internal notes associated with the Claimants' rental; AS NOTED ABOVE, WE PRODUCED INTERNAL NOTES FROM VEHICLE CONTROL, WHICH GENERATED THE THEFT PACKAGE.

     e. communications involving the local branch that rented the vehicle to the Claimant or reported the theft; IT WOULD BE UNDULY BURDENSOME TO HAVE HUNDREDS OF LOCAL BRANCHES SEARCH THEIR RECORDS FOR INDIVIDUAL RENTERS.  THEFT PACKAGES ARE GENERATED BY VEHICLE CONTROL, WHICH CONDUCTED RELEVANT COMMUNICATIONS WITH THE CLAIMANT REGARDING THE RENTAL AND THEFT REPORT.

     f. records from the local branch that rented the vehicle; WE PRODUCED THE RENTAL AGREEMENT.  WE CAN DISCUSS WHAT ELSE YOU ARE LOOKING FOR.

     g. records of communications with third-parties involving the Claimant or vehicle at issue; THIS IS UNDULY BURDENSOME.  WE CAN DISCUSS.

     h. public records searches for the Claimant; I AM NOT SURE WHAT YOU ARE LOOKING FOR HERE.  WE CAN DISCUSS.

     i. documents showing when the vehicle at issue was next rented (or disposed of if not rented again); THIS WOULD BE INCREDIBLY BURDENSOME TO PRODUCE, AND I AM NOT SURE OF THE RELEVANCE.  WE CAN DISCUSS.

     j. records of communications or any interactions with law enforcement or prosecutors, including those involving employee discussion/participation in ongoing prosecutions; THIS WOULD BE INCREDIBLY BURDENSOME TO PRODUCE, AND I AM NOT SURE OF THE RELEVANCE.  WE CAN DISCUSS.

      k.  records of client profiles, rental history, priority status, etc; DON'T THE CLAIMANTS HAVE THIS? WHY IS IT RELEVANT?

      l.  any internal tracking (including spreadsheets or databases such as the database of those against whom police reports were filed and including any tracking through your third-party agents such as ESIS) related to the claimant, including any possible claim related to the filing of false police reports or the allegations in the proofs of claim or the false police reports generally; THIS IS ADDRESSED BELOW

      m.  any internal documents related to any discussion about the claimant related to any possible claim or dispute related to the allegations in the proof of claim or the false police reports generally. THIS WOULD BE UNDULY BURDENSOME AND THE VAST MAJORITY OF SUCH COMMUNICATIONS WILL BE PRIVILEGED.  WE CAN DISCUSS.

We expect these documents for the Group 3 and Group 4a claimants no later than January 28. These searches already should have taken place. On the previous M&C we discussed your providing "a description of the search that was conducted and what criteria were used in selecting documents for production." My apologies if I've missed something, but I haven't seen anything like that. Perhaps a fruitful step would be (1) providing "a description of the search that was conducted and what criteria were used in selecting documents for production"; (2) letting us know whether the production includes all or substantially all of the materials that will be produced after that search for Group 3; and (3) describing or producing any record retention/deletion policy. That way we can at least get a sense of whether the above are available but not identified/produced.

WE ARE WORKING TO GATHER DOCUMENTS FOR THE GROUP 4A CLAIMANTS.  WE ARE FOLLOWING UP WITH HERTZ REGARDING THE DESCRIPTION OF THE SEARCH (MUCH OF WHICH IS SET FORTH ABOVE) AND WILL REVERT.

    (4)  As to some of those materials for the internal tracking mentioned above, you below suggest that for documents referencing the claimants as part of a list, database, or collection "(I) MAINTAINED BY THE DEBTORS, (II) OF WHICH THE DEBTORS ARE REASONABLY AWARE AND (III) RELEVANT TO CLAIMANTS' CLAIMS (I.E., NOT SIMPLY A LIST OF "PEOPLE TO WHOM HERTZ HAS RENTED CARS"), WE WILL IDENTIFY THAT CLAIMANT." We would preliminarily object on at least a few grounds: (i) the "relevant" documents identifying a Claimant should be produced, not just characterized by you and identified as referencing the Claimant; (ii) the productions should include any available list, database, or collection whether maintained by the debtor or by a third-party/agent (e.g., ESIS)—to the extent the Debtors are aware of any such list, database, or collection maintained by a third party/agent but do not produce it or cannot search it for the Claimant's info, identify and describe the list, database, or collection and the current owner/manager of such database; (iii) to the extent the Debtor is aware of a list but believes it is not "relevant to Claimants' claims," please identify the list and briefly describe the listed information in case the parties take different views on relevance (we don't plan, of course, to ask you to produce a listing of every person to whom Hertz has rented cars, but the parties might well share different views of what information is relevant).

WE ARE CONSIDERING YOUR POSITION

    (5)  As described above, we expect your production to include any documents and/or interrogatory responses related to your document destruction policy to the extent it relates to any of the relevant categories of information above.

WE WILL PROVIDE THIS INFORMATION IN CONNECTION WITH OUR DESCRIPTION OF THE SEARCH

    (6)  The FRCP 30-day response deadline for the RFPs and ROGs served by the Claimants on December 20 was yesterday, January 19. We have not received anything. Many of these requests and interrogatories, along with the prior discovery, relate to the individual considerations of notice that the Court expects you to produce.

THE COURT HAS BEEN CLEAR, AND I DON'T THINK THERE IS ANY DISAGREEMENT, THAT DISCOVERY IS MOVING FORWARD ONLY FOR THE LIMITED PURPOSE OF PRODUCING DOCUMENTS AND INFORMATION REGARDING WHETHER THE CLAIMANTS IN GROUPS 3 AND 4 WERE KNOWN CREDITORS.  *SEE* JAN. 4, 2022

HR'G TR. AT 37:18-20 ("THE COURT: WELL, THERE ISN'T ANY ISSUE, EXCEPT WITH RESPECT TO THE LATE CLAIM ISSUE, IS THERE? THE DEBTOR SAYS THAT YOU GUYS ARE GOING AHEAD WITH DISCOVERY."); *ID.* AT 39:10-13 ("WELL, YOU ALL RESPOND WITH RESPECT TO THE CLAIMS THAT WE ALL ACKNOWLEDGE, THE PROOFS OF CLAIM ARE NOW ON FILE WITH THE APPROPRIATE DECLARATIONS, AND YOU'LL START ROLLING THOSE OUT.").  INDEED, THE ONLY DISCOVERY REQUESTED TO MOVE FORWARD AT THE JANUARY 4 HEARING WAS THE BOOKS AND RECORDS DISCOVERY THAT THE DEBTORS ARE CURRENTLY PRODUCING.  *ID.* AT 40:11-14 ("AND YOUR HONOR, IS IT OKAY TO SET A DATE FOR WHEN MR. SHORE IS GOING TO GET US THESE BOOKS AND RECORDS FOR THE ONES THAT ARE ALREADY ON FILE, AND PERHAPS SOME DATE BY WHICH PERHAPS 30 DAYS AFTER WE FILE THE AMENDED PROOF OF CLAIM?").  THE DEBTORS DO NOT BELIEVE IT IS APPROPRIATE, OR REQUIRED PURSUANT TO THE COURT'S DIRECTIONS, TO EXPEND ESTATE RESOURCES RESPONDING TO DISCOVERY THAT LARGELY PERTAINS TO THE SYSTEMIC ISSUES THAT ARE STAYED, AND THAT RELATES TO MATTERS THAT MAY BE NARROWED SUBSTANTIALLY OR RESOLVED ENTIRELY.  ALSO, TO BE CLEAR, WE ARE NOT WITHHOLDING RESPONSIVE, NON-PRIVILEGED DOCUMENTS CONCERNING THE KNOWN CREDITOR ISSUE BECAUSE THEY DO NOT RELATE TO A SPECIFIC DISCOVERY REQUEST.  ALL THAT SAID, WE CAN DISCUSS THIS MATTER FURTHER ON THE MEET AND CONFER.

Finally, we note that as early as your briefing related to your first Motion to Quash, you stated that you would be providing us with the relevant books and records. This made the paucity of your production even more disappointing. Each Claimant has put (or soon will put) in a declaration the facts supporting what they know about regarding individualized notice. But we cannot know what is in Hertz's possession that would further support any claimant's argument regarding individualized notice. Please produce that information forthwith.

I THINK THIS IS ADDRESSED ABOVE BUT WE CAN DISCUSS

We are of course happy to discuss any of the above points, but let's do so shortly as relevant deadlines are on the horizon.

Best,
Taylor C. Hoogendoorn
Susman Godfrey LLP
thoogendoorn@susmangodfrey.com
(c): (630) 824-8210
Not admitted in Texas. Practicing under the supervision of the partnership of Susman Godfrey LLP.

**EXHIBIT 12**

| | |
|---|---|
| **From:** | Hershey, Samuel <sam.hershey@whitecase.com> |
| **Sent:** | Thursday, January 27, 2022 10:41 PM |
| **To:** | Taylor Hoogendoorn |
| **Cc:** | Bambrick, Ian J.; Marasco, Jaclyn C.; Justin A. Nelson; John Lahad; BFARNAN@FARNANLAW.COM; ACIARDI@CIARDILAW.COM; WGOULDSBURY@CIARDILAW.COM; Jackson, Patrick A.; Shore, Christopher; Smith, Erin; Panchyson, Dorian; Kates, Paula; stearn@rlf.com; Knight, John  (External); Haywood, Brett (External); NOBLE@RLF.COM |
| **Subject:** | RE: Discovery re Group 3 & 4 Claimants |

**This Message originated outside your organization.**

Hi Taylor,

Thanks for your email.  I disagree that we "discussed" these topics at the meet and confer, unless you mean at a very high level.  We did not walk through them individually, leaving the points in my email unresolved.  As I stated in my email and reiterated on the meet-and-confer, it is not clear exactly what you want for certain of these items, nor is it clear why they are relevant, particularly if we are limiting discovery at this stage to the "known/unknown" issue that is teed up for March 2.  I am happy to discuss further if you believe it would be helpful, but it seems we may have a fundamental disagreement as to the appropriate scope of discovery in light of the topics currently at issue.

Best,
Sam

**Samuel P. Hershey** | Partner
**T** +1 (212) 819-2699    **M** +1 (914) 582-1628    **E** sam.hershey@whitecase.com
White & Case LLP  |  1221 Avenue of the Americas  |  New York, NY 10020-1095
**WHITE & CASE**

**From:** Taylor Hoogendoorn <THoogendoorn@susmangodfrey.com>
**Sent:** Thursday, January 27, 2022 1:53 PM
**To:** Hershey, Samuel <sam.hershey@whitecase.com>
**Cc:** Bambrick, Ian J. <ian.bambrick@faegredrinker.com>; Marasco, Jaclyn C. <jaclyn.marasco@faegredrinker.com>; Justin A. Nelson <jnelson@SusmanGodfrey.com>; John Lahad <jlahad@SusmanGodfrey.com>; BFARNAN@FARNANLAW.COM; ACIARDI@CIARDILAW.COM; WGOULDSBURY@CIARDILAW.COM; Jackson, Patrick A. <patrick.jackson@faegredrinker.com>; Shore, Christopher <cshore@whitecase.com>; Smith, Erin <erin.smith@whitecase.com>; Panchyson, Dorian <dorian.panchyson@whitecase.com>; Kates, Paula <paula.kates@whitecase.com>; stearn@rlf.com; Knight, John (External) <knight@rlf.com>; Haywood, Brett (External) <Haywood@rlf.com>; NOBLE@RLF.COM
**Subject:** RE: Discovery re Group 3 & 4 Claimants

Dear Sam,

I hope you are well. In the email exchange below we identified numerous categories that were missing from your productions (III.a-m, IV). We discussed these during the M&C and understand you are not going to produce those categories of discovery. To be clear, we believe that your failure to produce these documents is highly prejudicial and that these documents are relevant to further support the Claimants' proofs of claim on issues going forward on March 2. We understand that you will shortly produce documents for Group 4a (and later Group 4b) similar to those produced for

1

Group 3, but what you produced for Group 3 is far from complete, can be misleading, and does not respond to our requests regarding the individualized notice issue teed up for the March 2 hearing or comply with what we believe the Court expects you to produce in advance of the hearing.

Please consider this email a renewal of our request for the Debtors to produce the categories of documents set forth below for Group 3, Group 4a, and Group 4b Claimants.

Best,
Taylor C. Hoogendoorn
Susman Godfrey LLP
thoogendoorn@susmangodfrey.com
(c): (630) 824-8210
Not admitted in Texas. Practicing under the supervision of the partnership of Susman Godfrey LLP.

**From:** Hershey, Samuel <sam.hershey@whitecase.com>
**Sent:** Sunday, January 23, 2022 10:55 PM
**To:** Taylor Hoogendoorn <THoogendoorn@susmangodfrey.com>
**Cc:** Bambrick, Ian J. <ian.bambrick@faegredrinker.com>; Marasco, Jaclyn C. <jaclyn.marasco@faegredrinker.com>; Justin A. Nelson <jnelson@SusmanGodfrey.com>; John Lahad <jlahad@SusmanGodfrey.com>; BFARNAN@FARNANLAW.COM; ACIARDI@CIARDILAW.COM; WGOULDSBURY@CIARDILAW.COM; Jackson, Patrick A. <patrick.jackson@faegredrinker.com>; Shore, Christopher <cshore@whitecase.com>; Smith, Erin <erin.smith@whitecase.com>; Panchyson, Dorian <dorian.panchyson@whitecase.com>; Kates, Paula <paula.kates@whitecase.com>; stearn@rlf.com; Knight, John (External) <knight@rlf.com>; Haywood, Brett (External) <Haywood@rlf.com>; NOBLE@RLF.COM
**Subject:** RE: Discovery re Group 3 & 4 Claimants

EXTERNAL Email
Hi Taylor,

Thanks for your patience. Responses to your points below. I agree it makes sense to meet and confer. I can be available on Tuesday. Please treat the below information consistent with Local Rule 9018.

**Samuel P. Hershey** | Partner
**T** +1 (212) 819-2699   **M** +1 (914) 582-1628   **E** sam.hershey@whitecase.com
White & Case LLP | 1221 Avenue of the Americas | New York, NY 10020-1095

## WHITE & CASE

**From:** Taylor Hoogendoorn <THoogendoorn@susmangodfrey.com>
**Sent:** Thursday, January 20, 2022 1:05 PM
**To:** Hershey, Samuel <sam.hershey@whitecase.com>
**Cc:** Bambrick, Ian J. <ian.bambrick@faegredrinker.com>; Marasco, Jaclyn C. <jaclyn.marasco@faegredrinker.com>; Justin A. Nelson <jnelson@SusmanGodfrey.com>; John Lahad <jlahad@SusmanGodfrey.com>; BFARNAN@FARNANLAW.COM; ACIARDI@CIARDILAW.COM; WGOULDSBURY@CIARDILAW.COM; Jackson, Patrick A. <patrick.jackson@faegredrinker.com>; Shore, Christopher <cshore@whitecase.com>; Smith, Erin <erin.smith@whitecase.com>; Panchyson, Dorian <dorian.panchyson@whitecase.com>; Kates, Paula <paula.kates@whitecase.com>; stearn@rlf.com; Knight, John (External) <knight@rlf.com>; Haywood, Brett (External) <Haywood@rlf.com>; NOBLE@RLF.COM
**Subject:** RE: Discovery re Group 3 & 4 Claimants

Sam,

I hope you are well. We obviously have a number of conversations in the hopper, but I wanted to reach out about several of the bigger-picture topics:

(1) We have discussed whether other issues presented in or underlying Group 3, Group 4, and Class motions—other than the issues in the February 14 briefing—will move forward on March 2. On our reading of the transcript, we do not believe the Court expects those other issues to move forward as more than a scheduling hearing. We think this is sufficiently clear from the overall thrust of the transcript, and a couple specific exchanges illustrate the point:

   a. The Court: "I think teeing up the notice issue is the next thing." Jan 4 Tr. 30:3–4.
   b. Mr. Jackson: "I think that you're really kind of teeing up the subset of … did these particular people show that they had enough contacts that … they were a creditor. And I just want to make clear, if that's what you want to try to winnow down at the next hearing, I think you could probably do that." The Court: "I understand that. I'm only trying to winnow down – if you're correct that these people told the debtor, you know, I was arrest – had numerous contacts the debtors to prove that they, you know, extended their lease … If everybody in your group is a known creditor, why do I even have to talk about anything else?" Jan. 4 Tr. 31:13–32:4.

To the extent you read the transcript differently, we are happy to discuss. On a pragmatic note, I think the Court's point is that resolving the issues in the February 14 briefing will likely inform the most efficient path forward on other issues. And those other issues, in many instances, raise factual questions that would entail their own discovery.

WE AGREE THAT THE ONLY SUBSTANTIVE MATTER(S) THAT WILL GO FORWARD AT THE MARCH 2 HEARING IS ARGUMENT ON WHETHER THE GROUP 3 AND GROUP 4 CLAIMANTS WERE KNOWN CREDITORS (BUT WITHOUT CONSIDERATION OF THE "SYSTEMIC" ISSUE).

(2) Ian Bambrick relayed your conversation about the scope of the February 14 briefing (going forward please include John Lahad or me on any conversations you intend to have with us regarding any meet and confer topic, as it will make the process more efficient). The parties seem to agree that the Court asked that the parties address certain claimant-specific notice issues in that briefing. To be clear, the Claimants expect the February 14 supplemental briefing to address that notice issue for all FPR claimants who were not part of a group proof of claim filed by the General Bar Date but whose individual proofs of claim are filed on or before January 31, including (i) those who file in Group 3, (ii) what we'll call Group 4a (those on the December 6 motion), and (iii) what we'll call Group 4b (those not part of the Dec. 6 motion, but who file by Jan. 31). In our view, the Court was clear that it would like that briefing to offer the parties' "preliminary arguments … to the extent that they think *the evidence presented by the proofs of claim* will cause me to consider the request or the analysis," Jan 4 Tr. 28:15–22. The Court then asked Chris whether "the debtor [would] be prepared to do that within two weeks" for proofs of claim filed by January 31. *Id.* 28:21–22. And Chris said "Yes." *Id.* 28:23; *see also id.* 28:9–12 (Mr. Shore: "Group 3 and Group 4, with a hundred -- I mean, if Mr. Nelson is telling me we're going to get a hundred or so … I'd like two weeks."). To be sure, the parties might also reference discovery materials exchanged prior to that time in addition to the Claimants' "evidence presented by the proofs of claim," but those materials are not necessary to provide the "preliminary" supplemental briefing the Court requested.

OK

(3) On Sunday, you produced some documents relating to certain Group 3 Claimants who have filed proofs of claim. Upon initial review of your productions, we find them to be significantly deficient. There are only a couple of emails in total spread across all of the claimants. And outside of the theft package itself, the Group 3 production includes no (or next to no):

WE CAN DISCUSS THE BELOW WHEN WE MEET AND CONFER, BUT PRELIMINARY RESPONSES ARE BELOW

   a. Phone (or chat) records relating to the claimant, including call logs related to the Claimant; TO THE EXTENT A THEFT PACKAGE WAS GENERATED BY VEHICLE CONTROL IN CONNECTION WITH A

PARTICULAR CLAIMANT, IT WAS PRODUCED TO YOU.  THAT THEFT PACKAGE CONTAINS RECORDS OF ALL COMMUNICATIONS BETWEEN VEHICLE CONTROL AND THE CLAIMANT, INCLUDING BY PHONE, TEXT AND EMAIL.

b.  financial/accounting/banking records relating to the Claimant; WE PROVIDED RELEVANT INVOICES. I AM NOT SURE WHAT ELSE SPECIFICALLY THIS REFERS TO OR WHY IT IS RELEVANT.

c.  records of communications between the Claimant and various departments of the Debtors' (e.g., customer service/roadside assistance/etc.); AS NOTED ABOVE, WE PRODUCED VEHICLE CONTROL RECORDS.  ROADSIDE ASSISTANCE KEEPS RECORDS GOING BACK TWO YEARS.  THOSE RECORDS WERE PRODUCED TO YOU IF THEY WERE STILL AVAILABLE.

d.  Internal notes associated with the Claimants' rental; AS NOTED ABOVE, WE PRODUCED INTERNAL NOTES FROM VEHICLE CONTROL, WHICH GENERATED THE THEFT PACKAGE.

e.  communications involving the local branch that rented the vehicle to the Claimant or reported the theft; IT WOULD BE UNDULY BURDENSOME TO HAVE HUNDREDS OF LOCAL BRANCHES SEARCH THEIR RECORDS FOR INDIVIDUAL RENTERS.  THEFT PACKAGES ARE GENERATED BY VEHICLE CONTROL, WHICH CONDUCTED RELEVANT COMMUNICATIONS WITH THE CLAIMANT REGARDING THE RENTAL AND THEFT REPORT.

f.  records from the local branch that rented the vehicle; WE PRODUCED THE RENTAL AGREEMENT.  WE CAN DISCUSS WHAT ELSE YOU ARE LOOKING FOR.

g.  records of communications with third-parties involving the Claimant or vehicle at issue; THIS IS UNDULY BURDENSOME.  WE CAN DISCUSS.

h.  public records searches for the Claimant; I AM NOT SURE WHAT YOU ARE LOOKING FOR HERE.  WE CAN DISCUSS.

i.  documents showing when the vehicle at issue was next rented (or disposed of if not rented again); THIS WOULD BE INCREDIBLY BURDENSOME TO PRODUCE, AND I AM NOT SURE OF THE RELEVANCE.  WE CAN DISCUSS.

j.  records of communications or any interactions with law enforcement or prosecutors, including those involving employee discussion/participation in ongoing prosecutions; THIS WOULD BE INCREDIBLY BURDENSOME TO PRODUCE, AND I AM NOT SURE OF THE RELEVANCE.  WE CAN DISCUSS.

k.  records of client profiles, rental history, priority status, etc; DON'T THE CLAIMANTS HAVE THIS?  WHY IS IT RELEVANT?

l.  any internal tracking (including spreadsheets or databases such as the database of those against whom police reports were filed and including any tracking through your third-party agents such as ESIS) related to the claimant, including any possible claim related to the filing of false police reports or the allegations in the proofs of claim or the false police reports generally; THIS IS ADDRESSED BELOW

m.  any internal documents related to any discussion about the claimant related to any possible claim or dispute related to the allegations in the proof of claim or the false police reports generally. THIS WOULD BE UNDULY BURDENSOME AND THE VAST MAJORITY OF SUCH COMMUNICATIONS WILL BE PRIVILEGED.  WE CAN DISCUSS.

We expect these documents for the Group 3 and Group 4a claimants no later than January 28. These searches already should have taken place. On the previous M&C we discussed your providing "a description of the search that was conducted and what criteria were used in selecting documents for production." My apologies if I've missed something, but I haven't seen anything like that. Perhaps a fruitful step would be (1) providing "a description of the search that was conducted and what criteria were used in selecting documents for production"; (2) letting us know whether the production includes all or substantially all of the materials that will be produced after that search for Group 3; and (3) describing or producing any record retention/deletion policy. That way we can at least get a sense of whether the above are available but not identified/produced.

WE ARE WORKING TO GATHER DOCUMENTS FOR THE GROUP 4A CLAIMANTS.  WE ARE FOLLOWING UP WITH HERTZ REGARDING THE DESCRIPTION OF THE SEARCH (MUCH OF WHICH IS SET FORTH ABOVE) AND WILL REVERT.

(4) As to some of those materials for the internal tracking mentioned above, you below suggest that for documents referencing the claimants as part of a list, database, or collection "(I) MAINTAINED BY THE DEBTORS, (II) OF WHICH THE DEBTORS ARE REASONABLY AWARE AND (III) RELEVANT TO CLAIMANTS' CLAIMS (I.E., NOT SIMPLY A LIST OF "PEOPLE TO WHOM HERTZ HAS RENTED CARS"), WE WILL IDENTIFY THAT CLAIMANT." We would preliminarily object on at least a few grounds: (i) the "relevant" documents identifying a Claimant should be produced, not just characterized by you and identified as referencing the Claimant; (ii) the productions should include any available list, database, or collection whether maintained by the debtor or by a third-party/agent (e.g., ESIS)—to the extent the Debtors are aware of any such list, database, or collection maintained by a third party/agent but do not produce it or cannot search it for the Claimant's info, identify and describe the list, database, or collection and the current owner/manager of such database; (iii) to the extent the Debtor is aware of a list but believes it is not "relevant to Claimants' claims," please identify the list and briefly describe the listed information in case the parties take different views on relevance (we don't plan, of course, to ask you to produce a listing of every person to whom Hertz has rented cars, but the parties might well share different views of what information is relevant).

WE ARE CONSIDERING YOUR POSITION

(5) As described above, we expect your production to include any documents and/or interrogatory responses related to your document destruction policy to the extent it relates to any of the relevant categories of information above.

WE WILL PROVIDE THIS INFORMATION IN CONNECTION WITH OUR DESCRIPTION OF THE SEARCH

(6) The FRCP 30-day response deadline for the RFPs and ROGs served by the Claimants on December 20 was yesterday, January 19. We have not received anything. Many of these requests and interrogatories, along with the prior discovery, relate to the individual considerations of notice that the Court expects you to produce.

THE COURT HAS BEEN CLEAR, AND I DON'T THINK THERE IS ANY DISAGREEMENT, THAT DISCOVERY IS MOVING FORWARD ONLY FOR THE LIMITED PURPOSE OF PRODUCING DOCUMENTS AND INFORMATION REGARDING WHETHER THE CLAIMANTS IN GROUPS 3 AND 4 WERE KNOWN CREDITORS. *SEE* JAN. 4, 2022 HR'G TR. AT 37:18-20 ("THE COURT: WELL, THERE ISN'T ANY ISSUE, EXCEPT WITH RESPECT TO THE LATE CLAIM ISSUE, IS THERE? THE DEBTOR SAYS THAT YOU GUYS ARE GOING AHEAD WITH DISCOVERY."); *ID.* AT 39:10-13 ("WELL, YOU ALL RESPOND WITH RESPECT TO THE CLAIMS THAT WE ALL ACKNOWLEDGE, THE PROOFS OF CLAIM ARE NOW ON FILE WITH THE APPROPRIATE DECLARATIONS, AND YOU'LL START ROLLING THOSE OUT."). INDEED, THE ONLY DISCOVERY REQUESTED TO MOVE FORWARD AT THE JANUARY 4 HEARING WAS THE BOOKS AND RECORDS DISCOVERY THAT THE DEBTORS ARE CURRENTLY PRODUCING. *ID.* AT 40:11-14 ("AND YOUR HONOR, IS IT OKAY TO SET A DATE FOR WHEN MR. SHORE IS GOING TO GET US THESE BOOKS AND RECORDS FOR THE ONES THAT ARE ALREADY ON FILE, AND PERHAPS SOME DATE BY WHICH PERHAPS 30 DAYS AFTER WE FILE THE AMENDED PROOF OF CLAIM?"). THE DEBTORS DO NOT BELIEVE IT IS APPROPRIATE, OR REQUIRED PURSUANT TO THE COURT'S DIRECTIONS, TO EXPEND ESTATE RESOURCES RESPONDING TO DISCOVERY THAT LARGELY PERTAINS TO THE SYSTEMIC ISSUES THAT ARE STAYED, AND THAT RELATES TO MATTERS THAT MAY BE NARROWED SUBSTANTIALLY OR RESOLVED ENTIRELY. ALSO, TO BE CLEAR, WE ARE NOT WITHHOLDING RESPONSIVE, NON-PRIVILEGED DOCUMENTS CONCERNING THE KNOWN CREDITOR ISSUE BECAUSE THEY DO NOT RELATE TO A SPECIFIC DISCOVERY REQUEST. ALL THAT SAID, WE CAN DISCUSS THIS MATTER FURTHER ON THE MEET AND CONFER.

Finally, we note that as early as your briefing related to your first Motion to Quash, you stated that you would be providing us with the relevant books and records. This made the paucity of your production even more disappointing. Each Claimant has put (or soon will put) in a declaration the facts supporting what they know about regarding individualized notice. But we cannot know what is in Hertz's possession that would further support any claimant's argument regarding individualized notice. Please produce that information forthwith.

I THINK THIS IS ADDRESSED ABOVE BUT WE CAN DISCUSS

We are of course happy to discuss any of the above points, but let's do so shortly as relevant deadlines are on the horizon.

Best,
Taylor C. Hoogendoorn
Susman Godfrey LLP
thoogendoorn@susmangodfrey.com
(c): (630) 824-8210
Not admitted in Texas. Practicing under the supervision of the partnership of Susman Godfrey LLP.

**EXHIBIT 13**

**From:** Taylor Hoogendoorn <THoogendoorn@susmangodfrey.com>
**Sent:** Friday, February 4, 2022 10:24 AM
**To:** Hershey, Samuel <sam.hershey@whitecase.com>
**Cc:** Bambrick, Ian J. <ian.bambrick@faegredrinker.com>; Marasco, Jaclyn C. <jaclyn.marasco@faegredrinker.com>; Justin A. Nelson <jnelson@SusmanGodfrey.com>; John Lahad <jlahad@SusmanGodfrey.com>; BFARNAN@FARNANLAW.COM; ACIARDI@CIARDILAW.COM; WGOULDSBURY@CIARDILAW.COM; Jackson, Patrick A. <patrick.jackson@faegredrinker.com>; Shore, Christopher <cshore@whitecase.com>; Smith, Erin <erin.smith@whitecase.com>; Panchyson, Dorian <dorian.panchyson@whitecase.com>; Kates, Paula <paula.kates@whitecase.com>; stearn@rlf.com; Knight, John (External) <knight@rlf.com>; Haywood, Brett (External) <Haywood@rlf.com>; NOBLE@RLF.COM
**Subject:** RE: Discovery re Group 3 & 4 Claimants

Sam

Happy to chat. Before the call, however, I'd appreciate if you all could put on paper what you searched (and related document retention policies, etc.). That way I can take a look at the productions with the search in mind, and we should be able to have a more fruitful conversation. I could hop on a call to discuss sometime between 7-9 AM CT on Monday morning.

Relatedly, we've discussed lists naming the claimants in our earlier emails and discussions. We haven't heard anything back from you all on that since your January 23 email suggesting that you would consider our position (and earlier email that you would, at minimum, identify all claimants listed on any internal lists). And I haven't seen anything produced. Please advise on the status of those productions.

Taylor C. Hoogendoorn
Susman Godfrey LLP
thoogendoorn@susmangodfrey.com
(c): (630) 824-8210
Not admitted in Texas. Practicing under the supervision of the partnership of Susman Godfrey LLP.

**EXHIBIT 14**

| | |
|---|---|
| **From:** | Hershey, Samuel <sam.hershey@whitecase.com> |
| **Sent:** | Sunday, February 6, 2022 9:53 PM |
| **To:** | Taylor Hoogendoorn |
| **Cc:** | Bambrick, Ian J.; Marasco, Jaclyn C.; Justin A. Nelson; John Lahad; BFARNAN@FARNANLAW.COM; ACIARDI@CIARDILAW.COM; WGOULDSBURY@CIARDILAW.COM; Jackson, Patrick A.; Shore, Christopher; Smith, Erin; Panchyson, Dorian; Kates, Paula; stearn@rlf.com; Knight, John  (External); Haywood, Brett (External); NOBLE@RLF.COM |
| **Subject:** | RE: Discovery re Group 3 & 4 Claimants |

<mark>EXTERNAL Email</mark>

Taylor,

In advance of the call tomorrow, here is some information about the searches, which is provided pursuant to Local Rule 9018-1(f):

- Hertz used the claimant's name and details from the declarations to search Terradata, a central repository that can generate reports on an individual's rental history.  If Hertz identified a rental based on these criteria, it then searched a different system called File Net to obtain documents about that rental.

- In some cases, a theft package was identified on File Net, which would generally include (1) the rental agreement; (2) the "Overdue Notes," which are kept in a system utilized by Vehicle Control called Global Vehicle Control System ("GVCS"), and reflect communications with the claimant and internal notes by Vehicle Control as it processes the overdue rental; (3) a copy of the certified "demand" letter sent to the claimant; (4) the title of the vehicle; and (5) other relevant information about the rental in generated reports, such as the balance owed on the overdue rental, and whether the claimant's credit or debit card had been declining charges.  Hertz retains theft packages for seven years.  Vehicle Control does not record calls.

- If a theft package was not identified, Hertz worked with Vehicle Control to search GVCS for any relevant overdue notes.

- Hertz also worked with its accounting and finance team to locate invoices in its global accounts receivable system ("GAR").  Invoices are stored in GAR for six months, and are then archived for two years in a separate system managed by IT.

- Hertz also worked with its Emergency Roadside Service (ERS) team to locate any records of communications by claimants with ERS.  ERS retains call recordings and transcripts for three months, and other written records of communications for two years.

- Hertz also worked with Customer Care to identify any records of communications with Claimants.  Customer Care does not record calls but keeps records going back to 2016, which include customer emails and notations and summaries regarding customer phone calls.  Because of the manner in which certain of these records are stored, they could be produced only by screenshot.

I look forward to speaking tomorrow.

Best,
Sam

**Samuel P. Hershey** | Partner
**T** +1 (212) 819-2699    **M** +1 (914) 582-1628    **E** sam.hershey@whitecase.com
White & Case LLP | 1221 Avenue of the Americas | New York, NY 10020-1095

**WHITE & CASE**

**From:** Taylor Hoogendoorn <THoogendoorn@susmangodfrey.com>
**Sent:** Friday, February 4, 2022 10:24 AM
**To:** Hershey, Samuel <sam.hershey@whitecase.com>
**Cc:** Bambrick, Ian J. <ian.bambrick@faegredrinker.com>; Marasco, Jaclyn C. <jaclyn.marasco@faegredrinker.com>; Justin A. Nelson <jnelson@SusmanGodfrey.com>; John Lahad <jlahad@SusmanGodfrey.com>; BFARNAN@FARNANLAW.COM; ACIARDI@CIARDILAW.COM; WGOULDSBURY@CIARDILAW.COM; Jackson, Patrick A. <patrick.jackson@faegredrinker.com>; Shore, Christopher <cshore@whitecase.com>; Smith, Erin <erin.smith@whitecase.com>; Panchyson, Dorian <dorian.panchyson@whitecase.com>; Kates, Paula <paula.kates@whitecase.com>; stearn@rlf.com; Knight, John (External) <knight@rlf.com>; Haywood, Brett (External) <Haywood@rlf.com>; NOBLE@RLF.COM
**Subject:** RE: Discovery re Group 3 & 4 Claimants

Sam

Happy to chat. Before the call, however, I'd appreciate if you all could put on paper what you searched (and related document retention policies, etc.). That way I can take a look at the productions with the search in mind, and we should be able to have a more fruitful conversation. I could hop on a call to discuss sometime between 7-9 AM CT on Monday morning.

Relatedly, we've discussed lists naming the claimants in our earlier emails and discussions. We haven't heard anything back from you all on that since your January 23 email suggesting that you would consider our position (and earlier email that you would, at minimum, identify all claimants listed on any internal lists). And I haven't seen anything produced. Please advise on the status of those productions.

Taylor C. Hoogendoorn
Susman Godfrey LLP
thoogendoorn@susmangodfrey.com
(c): (630) 824-8210
Not admitted in Texas. Practicing under the supervision of the partnership of Susman Godfrey LLP.

**EXHIBIT 15**

| From: | Hershey, Samuel <sam.hershey@whitecase.com> |
|---|---|
| Sent: | Monday, February 7, 2022 8:39 AM |
| To: | Taylor Hoogendoorn |
| Cc: | Bambrick, Ian J.; Marasco, Jaclyn C.; Justin A. Nelson; John Lahad; BFARNAN@FARNANLAW.COM; ACIARDI@CIARDILAW.COM; WGOULDSBURY@CIARDILAW.COM; Jackson, Patrick A.; Shore, Christopher; Smith, Erin; Panchyson, Dorian; Kates, Paula; stearn@rlf.com; Knight, John (External); Haywood, Brett (External); NOBLE@RLF.COM |
| Subject: | RE: Discovery re Group 3 & 4 Claimants |

**This Message originated outside your organization.**

Taylor, for the avoidance of doubt, and in case my reference to Local Rule 9018-1(f) did not make it clear, the below information is to be treated as highly confidential.

Best,
Sam

**Samuel P. Hershey** | Partner
**T** +1 (212) 819-2699   **M** +1 (914) 582-1628   **E** sam.hershey@whitecase.com
White & Case LLP | 1221 Avenue of the Americas | New York, NY 10020-1095
**WHITE & CASE**

**From:** Hershey, Samuel <sam.hershey@whitecase.com>
**Date:** Sunday, Feb 06, 2022, 21:52
**To:** Taylor Hoogendoorn <THoogendoorn@susmangodfrey.com>
**Cc:** Bambrick, Ian J. <ian.bambrick@faegredrinker.com>, Marasco, Jaclyn C. <jaclyn.marasco@faegredrinker.com>, Justin A. Nelson <jnelson@SusmanGodfrey.com>, John Lahad <jlahad@SusmanGodfrey.com>, BFARNAN@FARNANLAW.COM <BFARNAN@FARNANLAW.COM>, ACIARDI@CIARDILAW.COM <ACIARDI@CIARDILAW.COM>, WGOULDSBURY@CIARDILAW.COM <WGOULDSBURY@CIARDILAW.COM>, Jackson, Patrick A. <patrick.jackson@faegredrinker.com>, Shore, Christopher <cshore@whitecase.com>, Smith, Erin <erin.smith@whitecase.com>, Panchyson, Dorian <dorian.panchyson@whitecase.com>, Kates, Paula <paula.kates@whitecase.com>, stearn@rlf.com <stearn@rlf.com>, Knight, John (External) <knight@rlf.com>, Haywood, Brett (External) <Haywood@rlf.com>, NOBLE@RLF.COM <NOBLE@RLF.COM>
**Subject:** RE: Discovery re Group 3 & 4 Claimants

Taylor,

In advance of the call tomorrow, here is some information about the searches, which is provided pursuant to Local Rule 9018-1(f):

- Hertz used the claimant's name and details from the declarations to search Terradata, a central repository that can generate reports on an individual's rental history. If Hertz identified a rental based on these criteria, it then searched a different system called File Net to obtain documents about that rental.

- In some cases, a theft package was identified on File Net, which would generally include (1) the rental agreement; (2) the "Overdue Notes," which are kept in a system utilized by Vehicle Control called Global Vehicle Control

System ("GVCS"), and reflect communications with the claimant and internal notes by Vehicle Control as it processes the overdue rental; (3) a copy of the certified "demand" letter sent to the claimant; (4) the title of the vehicle; and (5) other relevant information about the rental in generated reports, such as the balance owed on the overdue rental, and whether the claimant's credit or debit card had been declining charges. Hertz retains theft packages for seven years. Vehicle Control does not record calls.

- If a theft package was not identified, Hertz worked with Vehicle Control to search GVCS for any relevant overdue notes.

- Hertz also worked with its accounting and finance team to locate invoices in its global accounts receivable system ("GAR"). Invoices are stored in GAR for six months, and are then archived for two years in a separate system managed by IT.

- Hertz also worked with its Emergency Roadside Service (ERS) team to locate any records of communications by claimants with ERS. ERS retains call recordings and transcripts for three months, and other written records of communications for two years.

- Hertz also worked with Customer Care to identify any records of communications with Claimants. Customer Care does not record calls but keeps records going back to 2016, which include customer emails and notations and summaries regarding customer phone calls. Because of the manner in which certain of these records are stored, they could be produced only by screenshot.

I look forward to speaking tomorrow.

Best,
Sam

**Samuel P. Hershey** | Partner
**T** +1 (212) 819-2699    **M** +1 (914) 582-1628    **E** sam.hershey@whitecase.com
White & Case LLP | 1221 Avenue of the Americas | New York, NY 10020-1095
**WHITE & CASE**

**From:** Taylor Hoogendoorn <THoogendoorn@susmangodfrey.com>
**Sent:** Friday, February 4, 2022 10:24 AM
**To:** Hershey, Samuel <sam.hershey@whitecase.com>
**Cc:** Bambrick, Ian J. <ian.bambrick@faegredrinker.com>; Marasco, Jaclyn C. <jaclyn.marasco@faegredrinker.com>; Justin A. Nelson <jnelson@SusmanGodfrey.com>; John Lahad <jlahad@SusmanGodfrey.com>; BFARNAN@FARNANLAW.COM; ACIARDI@CIARDILAW.COM; WGOULDSBURY@CIARDILAW.COM; Jackson, Patrick A. <patrick.jackson@faegredrinker.com>; Shore, Christopher <cshore@whitecase.com>; Smith, Erin <erin.smith@whitecase.com>; Panchyson, Dorian <dorian.panchyson@whitecase.com>; Kates, Paula <paula.kates@whitecase.com>; stearn@rlf.com; Knight, John (External) <knight@rlf.com>; Haywood, Brett (External) <Haywood@rlf.com>; NOBLE@RLF.COM
**Subject:** RE: Discovery re Group 3 & 4 Claimants

Sam

Happy to chat. Before the call, however, I'd appreciate if you all could put on paper what you searched (and related document retention policies, etc.). That way I can take a look at the productions with the search in mind, and we should be able to have a more fruitful conversation. I could hop on a call to discuss sometime between 7-9 AM CT on Monday morning.

Relatedly, we've discussed lists naming the claimants in our earlier emails and discussions. We haven't heard anything back from you all on that since your January 23 email suggesting that you would consider our position (and earlier email that you would, at minimum, identify all claimants listed on any internal lists). And I haven't seen anything produced. Please advise on the status of those productions.

Taylor C. Hoogendoorn

**EXHIBIT 16**

| | |
|---|---|
| **From:** | Taylor Hoogendoorn <THoogendoorn@susmangodfrey.com> |
| **Sent:** | Tuesday, February 8, 2022 3:29 PM |
| **To:** | Hershey, Samuel |
| **Cc:** | Bambrick, Ian J.; Marasco, Jaclyn C.; Justin A. Nelson; John Lahad; BFARNAN@FARNANLAW.COM; ACIARDI@CIARDILAW.COM; WGOULDSBURY@CIARDILAW.COM; Jackson, Patrick A.; Shore, Christopher; Smith, Erin; Panchyson, Dorian; Kates, Paula; stearn@rlf.com; Knight, John  (External); Haywood, Brett (External); NOBLE@RLF.COM |
| **Subject:** | RE: Discovery re Group 3 & 4 Claimants |

**This Message originated outside your organization.**

Dear Sam,

Thanks for taking the time to chat yesterday morning. We worked through each of the categories of discovery that have been in the hopper since my January 20 email.

I've included many details of our conversation below. At a high level, some of the key points, in my view, are that the Debtors should directly search the Debtors' servers (especially email servers) for all communications relating to each Claimant. They should produce any documents connected to what happens after a theft report is sent—i.e. tracking, prosecuting, and responding to anything related to arrests or prosecutions. They should produce remaining records related to the rental, including the contract notebook, authorization hold logs, and information from the local office. And they should produce (even if via a privilege log) any lists that include a Claimant.

On a more granular level we discussed the following (grouped by our previous email headers):

(a) Phone (or chat) records relating to the claimant, including call logs related to the Claimant
   a. You said that the Debtors had produced records from customer care, roadside, and vehicle control departments, to the extent they were accessible through a reasonable search.
   b. I responded that the summaries of communications in the theft package were inadequate and that the Claimants were entitled to the actual communications.
   c. I also requested that you confirm that all backups and archives have been searched.
   d. You objected to producing documents that may already be in a Claimant's possession, explaining that it is burdensome. I responded that it is speculative that a record would be a Claimant's possession, as a major corporation will have much more sophisticated retention policies than most ordinary renters. Further, I suggested that the fact that a record was in the Debtors' possession may be of consequence to the action, so they should be produced.
   e. [Later in the conversation, but relatedly, John requested the authority you're relying upon not to produce documents that you think the Claimants might already have.]
(b) financial/accounting/banking records relating to the Claimant
   a. You explained that you have searched for and produced invoices related to each rental, where available.
   b. I suggested that the actual payment details were important. In particular, I highlighted a few sources of information:
      i. Logs of "authorization holds," as was produced for Magalie Sterlin in your pre-bankruptcy production (HERTZ_0001746)
      ii. Records of payments received from all sources

        iii.  Any information in Citrix Receiver

(c) records of communications between the Claimant and various departments of the Debtors' (e.g., customer service/roadside assistance/etc.)
   - a. You highlighted that you've produced records connected with customer care, roadside, and vehicle control.
   - b. I highlighted additional departments of relevance, to the extent not already searched
        - i. Billing department
        - ii. Extensions department
        - iii. Executive Customer Service (to the extent different from customer care)
        - iv. Hertz Car Sales
        - v. Local Investigators
   - c. More centrally, we'd like a direct search of the email servers for communications, as opposed to indirect record searches in particular recordkeeping systems that may or may not be created after an email is received.

(d) Internal notes associated with the Claimants' rental
   - a. I highlighted that we want the "Contract Notebook" for each Claimant, which records conversations and rental information. This was produced in the pre-bankruptcy production for at least one Claimant at HERTZ_0000128.
   - b. I asked for any information in the "DASH" and "CARRENT" systems, or any similar inventory/vehicle/rental tracking systems. [I did not recall the names on the M&C, but I believe "VAW" and "RENT WORKS" are two other systems I've seen mentioned.]

(e) communications involving the local branch that rented the vehicle to the Claimant or reported the theft & (f) records from the local branch that rented the vehicle
   - a. You suggested that some records from local branches, like the rental contract, have already been produced if they were uploaded to the corporate system. You further suggested that searching for records from local branches would be unduly burdensome, and that the Debtors would not search local branches for communications with the Claimants
   - b. I explained that I understood your objection but that we have a different view. Local branches often handle extensions and interface with the customers, often receive customer complaints if something goes wrong with the rental (e.g., if the customer is arrested), and are tasked by corporate with actually reporting the theft to police. The local branch's records, especially of communications, are central to the issues before the court.

(g) records of communications with third-parties involving the Claimant or vehicle at issue & (j) records of communications or any interactions with law enforcement or prosecutors, including those involving employee discussion/participation in ongoing prosecutions
   - a. I explained that these records have not been produced. Conversations with law enforcement and other third parties involving a theft report filed by the company are central to informing Hertz that their was a problem with the report, who was arrested, whether a case was dismissed, etc.
   - b. I asked what happens after a theft report is filed. In particular, I suggested there surely must be a case file or something similar that is created to track any prosecution or arrests that follow from the report. None of that has been produced.
        - i. You suggested that you would look into what happens, but did not know off hand.

(h) public records searches for the Claimant
   - a. I explained that these have been produced for Group 1, but not other groups. They are relevant to the information that the Debtors had re the Claimant.

(i) Documents showing when the vehicle at issue was next rented (or disposed of if not rented again).
   - a. You explained that these have not been produced because they would be difficult to gather.
   - b. I responded that the theft reports include a printout of the recent rentals of the vehicle alleged to have been stolen, so the information must be accessible. Just looking for the same records as to what happened after the theft report, as opposed to right before it.
   - c. You said that you'd ask the company what would be possible to produce.

(k) Records of client profiles, rental history, priority status, etc.

- a. I suggested that this information is purportedly included in the theft package (and, we allege, often misrepresented in the theft package), so relevant to the matters at hand. It sounded like you had already pulled rental history from "Terradata," didn't seem burdensome to produce that or a search for "gold" membership records
(l) any internal tracking (including spreadsheets or databases such as the database of those against whom police reports were filed and including any tracking through your third-party agents such as ESIS) related to the claimant, including any possible claim related to the filing of false police reports or the allegations in the proofs of claim or the false police reports generally
- a. You suggested that all lists you are aware of to date would be withheld as work product.
- b. We asked for a privilege log to the extend you're withholding; you suggested that you could produce one that would say something like: "on this date, a member of Hertz legal team instructed claims department to assemble a list." Further, you suggested that you could tell us when data was created, who in legal department directed the list to be created, that some of client names are on the list, and that the list is maintained in the ordinary course and maintained since its creation.
- c. You had previously suggested that you would identify Claimants on any internal lists. You suggested that your team has not decided whether it would do so for lists withheld as work product.
- d. I asked whether you have searched for, asked about, or inquired into lists maintained by third parties (e.g., ESIS). You said you'd have to follow up on that point.
(m) any internal documents related to any discussion about the claimant related to any possible claim or dispute related to the allegations in the proof of claim or the false police reports generally
- a. You have objected that such a search would be unduly burdensome, at least in part because many documents would be privileged.
- b. I suggested that internal documents, emails, and discussions regarding a Claimant would go directly to the Debtors' knowledge of a claim. If any communications or documents were claimed to be privileged, I requested that you produce a privilege log.

At the end of the day, we would like the documents described above searched for and produced. We don't think a cursory "burden" objection relieves the Debtors from producing this indisputably relevant information. Please get back to us on the open items above and please confirm whether you'll be producing the requested documents. If you will produce anything more, please do so ASAP.

Taylor C. Hoogendoorn
Susman Godfrey LLP
thoogendoorn@susmangodfrey.com
(c): (630) 824-8210
Not admitted in Texas. Practicing under the supervision of the partnership of Susman Godfrey LLP.

**EXHIBIT 17**

| | |
|---|---|
| **From:** | Hershey, Samuel <sam.hershey@whitecase.com> |
| **Sent:** | Monday, February 14, 2022 3:43 PM |
| **To:** | Taylor Hoogendoorn |
| **Cc:** | Bambrick, Ian J.; Marasco, Jaclyn C.; Justin A. Nelson; John Lahad; BFARNAN@FARNANLAW.COM; ACIARDI@CIARDILAW.COM; WGOULDSBURY@CIARDILAW.COM; Jackson, Patrick A.; Shore, Christopher; Smith, Erin; Panchyson, Dorian; Kates, Paula; stearn@rlf.com; Knight, John  (External); Haywood, Brett (External); NOBLE@RLF.COM |
| **Subject:** | RE: Discovery re Group 3 & 4 Claimants |

**This Message originated outside your organization.**

Hi Taylor,

I hope you are well.  I realize we all have a lot going on with tonight's filings but wanted to follow up on the below.  We are continuing to look into these matters and are happy to continue the discussion.  However, I want to be clear that for purposes of the "known" creditor issue, which is the only matter going forward at the March 2 hearing, we do not believe the below requests are relevant.  It is our position that when the Debtors were mailing out notices of their bankruptcy case, they were not required to draw together a list of people who had ever been the subject of any dispute with the Debtors and then run searches against their servers.  You can make that argument, but we do not believe it goes to the question we are trying to address at this hearing.

With regard to the lists, for purposes of the upcoming hearing, I can represent that none of the claimants who we are objecting to as "unknown" creditors are on any lists we are aware of.

Best,
Sam

**Samuel P. Hershey** | Partner
**T** +1 (212) 819-2699   **M** +1 (914) 582-1628   **E** sam.hershey@whitecase.com
White & Case LLP | 1221 Avenue of the Americas | New York, NY 10020-1095
**WHITE & CASE**

**From:** Taylor Hoogendoorn <THoogendoorn@susmangodfrey.com>
**Sent:** Tuesday, February 8, 2022 3:29 PM
**To:** Hershey, Samuel <sam.hershey@whitecase.com>
**Cc:** Bambrick, Ian J. <ian.bambrick@faegredrinker.com>; Marasco, Jaclyn C. <jaclyn.marasco@faegredrinker.com>; Justin A. Nelson <jnelson@SusmanGodfrey.com>; John Lahad <jlahad@SusmanGodfrey.com>; BFARNAN@FARNANLAW.COM; ACIARDI@CIARDILAW.COM; WGOULDSBURY@CIARDILAW.COM; Jackson, Patrick A. <patrick.jackson@faegredrinker.com>; Shore, Christopher <cshore@whitecase.com>; Smith, Erin <erin.smith@whitecase.com>; Panchyson, Dorian <dorian.panchyson@whitecase.com>; Kates, Paula <paula.kates@whitecase.com>; stearn@rlf.com; Knight, John (External) <knight@rlf.com>; Haywood, Brett (External) <Haywood@rlf.com>; NOBLE@RLF.COM
**Subject:** RE: Discovery re Group 3 & 4 Claimants

Dear Sam,

Thanks for taking the time to chat yesterday morning. We worked through each of the categories of discovery that have been in the hopper since my January 20 email.

I've included many details of our conversation below. At a high level, some of the key points, in my view, are that the Debtors should directly search the Debtors' servers (especially email servers) for all communications relating to each Claimant. They should produce any documents connected to what happens after a theft report is sent—i.e. tracking, prosecuting, and responding to anything related to arrests or prosecutions. They should produce remaining records related to the rental, including the contract notebook, authorization hold logs, and information from the local office. And they should produce (even if via a privilege log) any lists that include a Claimant.

On a more granular level we discussed the following (grouped by our previous email headers):

(a) Phone (or chat) records relating to the claimant, including call logs related to the Claimant
   a. You said that the Debtors had produced records from customer care, roadside, and vehicle control departments, to the extent they were accessible through a reasonable search.
   b. I responded that the summaries of communications in the theft package were inadequate and that the Claimants were entitled to the actual communications.
   c. I also requested that you confirm that all backups and archives have been searched.
   d. You objected to producing documents that may already be in a Claimant's possession, explaining that it is burdensome. I responded that it is speculative that a record would be a Claimant's possession, as a major corporation will have much more sophisticated retention policies than most ordinary renters. Further, I suggested that the fact that a record was in the Debtors' possession may be of consequence to the action, so they should be produced.
   e. [Later in the conversation, but relatedly, John requested the authority you're relying upon not to produce documents that you think the Claimants might already have.]

(b) financial/accounting/banking records relating to the Claimant
   a. You explained that you have searched for and produced invoices related to each rental, where available.
   b. I suggested that the actual payment details were important. In particular, I highlighted a few sources of information:
      i. Logs of "authorization holds," as was produced for Magalie Sterlin in your pre-bankruptcy production (HERTZ_0001746)
      ii. Records of payments received from all sources
      iii. Any information in Citrix Receiver

(c) records of communications between the Claimant and various departments of the Debtors' (e.g., customer service/roadside assistance/etc.)
   a. You highlighted that you've produced records connected with customer care, roadside, and vehicle control.
   b. I highlighted additional departments of relevance, to the extent not already searched
      i. Billing department
      ii. Extensions department
      iii. Executive Customer Service (to the extent different from customer care)
      iv. Hertz Car Sales
      v. Local Investigators
   c. More centrally, we'd like a direct search of the email servers for communications, as opposed to indirect record searches in particular recordkeeping systems that may or may not be created after an email is received.

(d) Internal notes associated with the Claimants' rental
   a. I highlighted that we want the "Contract Notebook" for each Claimant, which records conversations and rental information. This was produced in the pre-bankruptcy production for at least one Claimant at HERTZ_0000128.
   b. I asked for any information in the "DASH" and "CARRENT" systems, or any similar inventory/vehicle/rental tracking systems. [I did not recall the names on the M&C, but I believe "VAW" and "RENT WORKS" are two other systems I've seen mentioned.]

2

(e) communications involving the local branch that rented the vehicle to the Claimant or reported the theft & (f) records from the local branch that rented the vehicle

    a. You suggested that some records from local branches, like the rental contract, have already been produced if they were uploaded to the corporate system. You further suggested that searching for records from local branches would be unduly burdensome, and that the Debtors would not search local branches for communications with the Claimants

    b. I explained that I understood your objection but that we have a different view. Local branches often handle extensions and interface with the customers, often receive customer complaints if something goes wrong with the rental (e.g., if the customer is arrested), and are tasked by corporate with actually reporting the theft to police. The local branch's records, especially of communications, are central to the issues before the court.

(g) records of communications with third-parties involving the Claimant or vehicle at issue & (j) records of communications or any interactions with law enforcement or prosecutors, including those involving employee discussion/participation in ongoing prosecutions

    a. I explained that these records have not been produced. Conversations with law enforcement and other third parties involving a theft report filed by the company are central to informing Hertz that their was a problem with the report, who was arrested, whether a case was dismissed, etc.

    b. I asked what happens after a theft report is filed. In particular, I suggested there surely must be a case file or something similar that is created to track any prosecution or arrests that follow from the report. None of that has been produced.

        i. You suggested that you would look into what happens, but did not know off hand.

(h) public records searches for the Claimant

    a. I explained that these have been produced for Group 1, but not other groups. They are relevant to the information that the Debtors had re the Claimant.

(i) Documents showing when the vehicle at issue was next rented (or disposed of if not rented again).

    a. You explained that these have not been produced because they would be difficult to gather.

    b. I responded that the theft reports include a printout of the recent rentals of the vehicle alleged to have been stolen, so the information must be accessible. Just looking for the same records as to what happened after the theft report, as opposed to right before it.

    c. You said that you'd ask the company what would be possible to produce.

(k) Records of client profiles, rental history, priority status, etc.

    a. I suggested that this information is purportedly included in the theft package (and, we allege, often misrepresented in the theft package), so relevant to the matters at hand. It sounded like you had already pulled rental history from "Terradata," didn't seem burdensome to produce that or a search for "gold" membership records

(l) any internal tracking (including spreadsheets or databases such as the database of those against whom police reports were filed and including any tracking through your third-party agents such as ESIS) related to the claimant, including any possible claim related to the filing of false police reports or the allegations in the proofs of claim or the false police reports generally

    a. You suggested that all lists you are aware of to date would be withheld as work product.

    b. We asked for a privilege log to the extend you're withholding; you suggested that you could produce one that would say something like: "on this date, a member of Hertz legal team instructed claims department to assemble a list." Further, you suggested that you could tell us when data was created, who in legal department directed the list to be created, that some of client names are on the list, and that the list is maintained in the ordinary course and maintained since its creation.

    c. You had previously suggested that you would identify Claimants on any internal lists. You suggested that your team has not decided whether it would do so for lists withheld as work product.

    d. I asked whether you have searched for, asked about, or inquired into lists maintained by third parties (e.g., ESIS). You said you'd have to follow up on that point.

(m) any internal documents related to any discussion about the claimant related to any possible claim or dispute related to the allegations in the proof of claim or the false police reports generally

a. You have objected that such a search would be unduly burdensome, at least in part because many documents would be privileged.

b. I suggested that internal documents, emails, and discussions regarding a Claimant would go directly to the Debtors' knowledge of a claim. If any communications or documents were claimed to be privileged, I requested that you produce a privilege log.

At the end of the day, we would like the documents described above searched for and produced. We don't think a cursory "burden" objection relieves the Debtors from producing this indisputably relevant information. Please get back to us on the open items above and please confirm whether you'll be producing the requested documents. If you will produce anything more, please do so ASAP.

Taylor C. Hoogendoorn
Susman Godfrey LLP
thoogendoorn@susmangodfrey.com
(c): (630) 824-8210
Not admitted in Texas. Practicing under the supervision of the partnership of Susman Godfrey LLP.

**EXHIBIT 18**

| From: | Hershey, Samuel <sam.hershey@whitecase.com> |
|---|---|
| Sent: | Friday, January 14, 2022 9:32 PM |
| To: | Taylor Hoogendoorn |
| Cc: | Bambrick, Ian J.; Marasco, Jaclyn C.; Justin A. Nelson; John Lahad; BFARNAN@FARNANLAW.COM; ACIARDI@CIARDILAW.COM; WGOULDSBURY@CIARDILAW.COM; Jackson, Patrick A.; Shore, Christopher; Smith, Erin; Panchyson, Dorian; Kates, Paula; stearn@rlf.com; Knight, John  (External); Haywood, Brett (External); NOBLE@RLF.COM |
| Subject: | RE: Discovery re Group 3 & 4 Claimants |

==EXTERNAL Email==
Hi Taylor,

Thanks for your email.  Please see my comments in-line below.  Let me know if you want to discuss.

**Samuel P. Hershey**  |  Partner
**T**  +1 (212) 819-2699    **M**  +1 (914) 582-1628    **E**  sam.hershey@whitecase.com
White & Case LLP  |  1221 Avenue of the Americas  |  New York, NY 10020-1095
**WHITE & CASE**

**From:** Taylor Hoogendoorn <THoogendoorn@susmangodfrey.com>
**Sent:** Wednesday, January 12, 2022 9:19 PM
**To:** Hershey, Samuel <sam.hershey@whitecase.com>
**Cc:** Bambrick, Ian J. <ian.bambrick@faegredrinker.com>; Marasco, Jaclyn C. <jaclyn.marasco@faegredrinker.com>; Justin A. Nelson <jnelson@SusmanGodfrey.com>; John Lahad <jlahad@SusmanGodfrey.com>; BFARNAN@FARNANLAW.COM; ACIARDI@CIARDILAW.COM; WGOULDSBURY@CIARDILAW.COM; Jackson, Patrick A. <patrick.jackson@faegredrinker.com>; Shore, Christopher <cshore@whitecase.com>; Smith, Erin <erin.smith@whitecase.com>; Panchyson, Dorian <dorian.panchyson@whitecase.com>; Kates, Paula <paula.kates@whitecase.com>; stearn@rlf.com; Knight, John (External) <knight@rlf.com>; Haywood, Brett (External) <Haywood@rlf.com>; NOBLE@RLF.COM
**Subject:** RE: Discovery re Group 3 & 4 Claimants

Sam,

Thanks to you and your colleagues for taking the time to meet this afternoon. We covered a lot of ground, and seem to share a similar view on at least a good portion of what we discussed. Here are my notes on the meeting, generally grouped by topic. Please feel free to let us know if you all have anything to add.

**March 2 Hearing**

- The parties agree that the claimant-specific questions with respect to known creditor status will move forward on March 2, including relevant contacts between a claimant and the debtors, but other issues relating to Group 3 and Group 4 claimants' pending motions (alleged systemic issues, adequacy of publication notice, excusable neglect, *etc.*) will not move forward on that date.
I AGREE THAT THE ALLEGATIONS REGARDING SYSTEMIC ISSUES WILL NOT MOVE FORWARD.  I DO NOT THINK THE COURT SAID THAT THE OTHER ISSUES YOU MENTION (ADEQUACY OF PUBLICATION NOTICE AND EXCUSABLE NEGLECT) WILL NOT MOVE FORWARD.  IF THERE IS A SECTION OF THE TRANSCRIPT THAT YOU THINK SHOWS THE COURT'S INTENTIONS HERE, PLEASE LET ME KNOW.  IF YOU WOULD LIKE TO SEPARATELY AGREE REGARDING HOW THESE ISSUES SHOULD PROCEED, WE WILL CONSIDER YOUR PROPOSAL.

- Claimants anticipated that the March 2 hearing would involve oral argument on the February 14 briefing (which tied in the Group 3 and Group 4 motions on the individual notice point), along with the debtor's motion to quash, and that all other matters would proceed as a status conference. Counsel for debtors indicated that they appreciated coordinating on this point and would circle back after conferring offline. This information will allow the parties to determine how much time will be needed for the hearing and advise the Court accordingly.

I APPRECIATE THAT THE PARTIES NEED TO REACH AN UNDERSTANDING ON THIS POINT IN ADVANCE OF THE HEARING BUT OUR SIDE NEEDS TO CONFER FURTHER ON THIS QUESTION.  WE WILL FOLLOW UP IN DUE COURSE.

- The parties do not expect the March 2 hearing to be an evidentiary hearing. To the extent witness testimony would assist the Court in resolving the issues on March 2, the parties agree that such testimony should be presented at a later date.

TO BE CLEAR, IT IS OUR VIEW THAT THE COURT EXPECTS THAT THE WRITTEN EVIDENCE THAT WILL BE PART OF OUR FEBRUARY 14 BRIEFING (INCLUDING OUR DOCUMENT PRODUCTIONS AND YOUR INTERROGATORY RESPONSES (TO THE EXTENT PRODUCED)) WILL BE PRESENTED AT THE MARCH 2 HEARING.  WE DO NOT THINK THAT THE COURT EXPECTS LIVE TESTIMONY.  IT SEEMS WE ARE IN AGREEMENT ON THIS POINT BUT IF NOT PLEASE LET ME KNOW.

**Discovery**

- The debtors anticipate producing discovery responsive to pending requests from September 28 and December 20 starting this weekend and continuing on a rolling basis. The productions will include materials relating to the Group 3 and Group 4 claimants' individual cases, but will not include materials relevant only to issues not moving forward on March 2 (including allegations of systemic issues).  The debtors plan to include with these productions a description of the search that was conducted and what criteria were used in selecting documents for production.

WE WILL NOT PRODUCE DOCUMENTS REGARDING ALLEGED SYSTEMIC ISSUES.  WE WILL PRODUCE RECORDS OF THE GROUP 3 AND GROUP 4 CLAIMANTS THAT ARE AVAILABLE TO THE DEBTORS THROUGH A REASONABLE SEARCH.

- The claimants requested that forthcoming productions include any internal documents/lists/spreadsheets/etc. that name or describe individual Group 3 or Group 4 claimants, suggesting that these records are relevant to claimant-specific questions even if they are also relevant to other arguments described in the papers. Without conceding that such documents exist, debtors agreed to confer with co-counsel with respect to any such document and let claimants know whether the debtors plan to produce any such records that exist.

TO THE EXTENT A GROUP 3 OR GROUP 4 CLAIMANT IS IDENTIFIED ON AN INTERNAL LIST (I) MAINTAINED BY THE DEBTORS, (II) OF WHICH THE DEBTORS ARE REASONABLY AWARE AND (III) RELEVANT TO CLAIMANTS' CLAIMS (I.E., NOT SIMPLY A LIST OF "PEOPLE TO WHOM HERTZ HAS RENTED CARS"), WE WILL IDENTIFY THAT CLAIMANT.

- Counsel for the claimants confirmed that they have received the interrogatories served on January 10, but have not yet finished reviewing the interrogatories or deciding how to respond. Claimants asked whether the debtors had a specific basis for including a deadline shorter than that provided by the Federal Rules; debtors responded that they understood the January 4 hearing transcript to call for responsive discovery on a quicker timeline. Debtors requested that the claimants let them know if they do not intend to comply with the debtors' proposed 7/21-day deadlines.

I HAVE NOT REVIEWED THE MOTION TO QUASH THAT WAS JUST FILED BUT IMAGINE IT BEARS ON THIS ISSUE.  WE WILL REVIEW AND FOLLOW UP.

**Filing Logistics**

- The parties agree that the Court wants the simultaneous briefing due on February 14 to address the claimant-specific known creditor issues going forward on March 2.

AGREED

- The debtors' objection deadline for the Group 4 motion has been further extended by the claimants on a consensual basis to January 17, 2022. The parties do not agree whether an additional extension is appropriate (whether based on the Court's direction at the January 4 hearing or otherwise). The debtors propose filing an

objection on February 14. The claimants propose that the January 17 deadline remain in place. Both parties will confer with their co-counsel to see if there might be a consensual path forward.

YOU HAVE SINCE AGREED THAT OUR DEADLINE TO FILE WILL BE NO EARLIER THAN JANUARY 24. WE APPRECIATE YOUR WORKING WITH US ON THIS ISSUE AND WILL CONFER INTERNALLY TO DETERMINE WHETHER THIS MATTER REQUIRES ANY FURTHER FOLLOW-UP.

Best,

Taylor C. Hoogendoorn
Susman Godfrey LLP
thoogendoorn@susmangodfrey.com
(c): (630) 824-8210
Not admitted in Texas. Practicing under the supervision of the partnership of Susman Godfrey LLP.

**From:** Hershey, Samuel <sam.hershey@whitecase.com>
**Sent:** Tuesday, January 11, 2022 5:43 PM
**To:** Taylor Hoogendoorn <THoogendoorn@susmangodfrey.com>
**Cc:** Bambrick, Ian J. <ian.bambrick@faegredrinker.com>; Marasco, Jaclyn C. <jaclyn.marasco@faegredrinker.com>; Justin A. Nelson <jnelson@SusmanGodfrey.com>; John Lahad <jlahad@SusmanGodfrey.com>; BFARNAN@FARNANLAW.COM; ACIARDI@CIARDILAW.COM; WGOULDSBURY@CIARDILAW.COM; Jackson, Patrick A. <patrick.jackson@faegredrinker.com>; Shore, Christopher <cshore@whitecase.com>; Smith, Erin <erin.smith@whitecase.com>; Panchyson, Dorian <dorian.panchyson@whitecase.com>; Kates, Paula <paula.kates@whitecase.com>; stearn@rlf.com; Knight, John (External) <knight@rlf.com>; Haywood, Brett (External) <Haywood@rlf.com>; NOBLE@RLF.COM
**Subject:** RE: Discovery re Group 3 & 4 Claimants

EXTERNAL Email
Thanks, Taylor.

**Samuel P. Hershey** | Partner
**T** +1 (212) 819-2699   **M** +1 (914) 582-1628   **E** sam.hershey@whitecase.com
White & Case LLP | 1221 Avenue of the Americas | New York, NY 10020-1095
**WHITE & CASE**

**From:** Taylor Hoogendoorn <THoogendoorn@susmangodfrey.com>
**Date:** Tuesday, Jan 11, 2022, 18:39
**To:** Hershey, Samuel <sam.hershey@whitecase.com>
**Cc:** Bambrick, Ian J. <ian.bambrick@faegredrinker.com>, Marasco, Jaclyn C. <jaclyn.marasco@faegredrinker.com>, Justin A. Nelson <jnelson@SusmanGodfrey.com>, John Lahad <jlahad@SusmanGodfrey.com>, BFARNAN@FARNANLAW.COM <BFARNAN@FARNANLAW.COM>, ACIARDI@CIARDILAW.COM <ACIARDI@CIARDILAW.COM>, WGOULDSBURY@CIARDILAW.COM <WGOULDSBURY@CIARDILAW.COM>, Jackson, Patrick A. <patrick.jackson@faegredrinker.com>, Shore, Christopher <cshore@whitecase.com>, Smith, Erin <erin.smith@whitecase.com>, Panchyson, Dorian <dorian.panchyson@whitecase.com>, Kates, Paula <paula.kates@whitecase.com>, stearn@rlf.com <stearn@rlf.com>, Knight, John (External) <knight@rlf.com>, Haywood, Brett (External) <Haywood@rlf.com>, NOBLE@RLF.COM <NOBLE@RLF.COM>
**Subject:** RE: Discovery re Group 3 & 4 Claimants

Sam,

Thanks. We can make 2pm ET tomorrow work. I'll circulate a zoom link in the morning to your colleagues on this email unless you let me know a different group to invite.

**EXHIBIT 19**



HERTZ_FPRP_0002004

Highly confidential - Subject to Delaware Local Bankruptcy Rule 9018

**Rental Data** | Location Data | Hertz Contacts | Vendor/PO Data | ProbRes | Flags | Callback | AAA | Accident

Date 2021-03-24
Related Case #2
Last Name ANDOLINO
Drivers License # X000000000471
Company Name EXPEDIA MEMBER SERVICES
Primary Phone
Created by Agent 9452

Rental City/Location CALAXIS
Return City/Location CALAXIS
Owning City 014489
Model Code NETL    List
Ignition Code 10610
Vin 3FADP4BJ7KM133113

Problem Code INHOL    List

Time 0802
Related Case #3
First Name JESSICA
Drivers License State FL    SVC
CDP # 0002185999
Secondary Phone

Most Recent Update 9452

Rental Date 2021-03-21
Return Date 2021-03-26
Unit # 0001324136
Model Year 19
Trunk Code 10610
Recall

Problem and Resolution
Resolution Code ALTRN    List

Disabled Vehicle Location

Address
Apt/Unit #
City LOS ANGELES    ST/Prov CA    Zip Code
Location
Name    Location Description
Cross Street
Landmark
Exit #    List    Unattended
Dir. of Travel

Date of Birth 1997

Agents Updating

Rental Data
RSP 884796712    Retrieve RR
Miles Out 000037229
Lic. Plate# N352873
Model Desc/Mfg FORDDSR FIESTA 4D
Entry Code
GPS

Case No. 021004D787
Status CLOSED
Print
Call Primary    Make Call

Rental Brand SE
Rate Class B
License State LA
Color BLA
LDW N
PERS N

Resolution Code 2

OFFICER TAMATE
BADGE#35410
LA PD
818-754-8800
*DRIVER OF VEHICLE ARRESTED OFFICER WANTED TO MAKE SURE VEHICLE WAS NOT REPORTED STOLEN. CONFIRMED CONTRACT IS CURRENT AND HE GAVE ME RENTER NAME. CONFIRMED THAT AS WELL

**EXHIBIT 20**

# ****ATTENTION ****

## DO NOT REPORT UNTIL YOU COMPLETE BELOW

**IMMEDIATELY BEFORE** reporting this as a theft to law enforcement you **MUST** check for movement of this vehicle in the following systems:

| | |
|---|---|
| CARRENT | DASH |
| VAW | RENT WORKS |

If there is no further movement found, proceed with filing of the theft package to law enforcement.

*************************************************************

# Y HOLD REMOVAL

If vehicle is recovered or returned, the theft package **MUST BE DESTROYED**.

Vehicle needs to be idle sighted with an "I", to show the location has possession.

Email OKCTHEFTANDRECOVERY@HERTZ.COM with signature and date below in order to have hold removed.

**If the theft package received is for a theft from lot then the Theft From Lot Recovery form will also need to be completed.

By signing below, I have verified the theft package has been destroyed and will not be reported to law enforcement.

Print Name:                          RR #:

Signature:                           Area/Unit #:

Date:

Phone Number of Location:

Highly Confidential – Subject to Delaware Local Bankruptcy Rule 9018

**EXHIBIT 21**

```
FSCR6260                CURRENT - UNIT HISTORY DETAIL                    FSCR8260
A/U # : 01698    9273509  OLD A/U #:                CC ADD   : 2018/10/22
SER # : 1C6RR7LT7KS550399 OP STAT   : 2019/10/05 RT DELIVERY : 2018/10/16
LIC   : LHR4411    ST: TX CC REQ    : Y   1         IN SERV  : 2018/10/21
MODEL : NNSR    YR: 19    RECALL    :                SALE/TRAN:
COLOR : WHI     VC: S     CAP DATE  :                VIS KEY  :
TNBK OVERRIDE:            P/M MLG   :   28059 SPI 9CON0 TIER    CLS F TYPE O
ELIG TNBK:   NO RT/TB: S  MAX MLG   :        915             DEPR C  COA
*******************************************************************************
RENT/OUT  OUT/OLD      OUT  DUE/IN  DUE/IN      IN  DOCUMENT    DOC  OP M C M
EFF DTE   AREA/LOC    MILES  DATE  AREA/LOC   MILES  NUMBER   TYP/ST ST M I U
200302  REQUEST FOR HOLD CHANGED FROM 1    TO Y1
200119  REQUEST FOR HOLD CHANGED FROM BLANK TO 1
200112  0054023     32733 200119 0054023          373367326 R  O  RT    Y
200111  0160020     32729 200111 0160020    32729 7753427782 P  C  RT
200109  0074024      3252 200111 0074024     3728 372130566 R  C  RT
200109  0160020     32481 200109 0160020    32481 7599080090 P  C  RT
200105  0160020     31630 200109 0160020    32480 199356555 R  C  RT
200104  0160020     31659 200104 0160020    31659 7144777024 P  C  RT
200103  0160020     31552 200104 0160020    31628 198459870 R  C  RT
SEL:        AU: 01698 /        LIC/ST:           /   SER/CC:          / US
PA1 - MASTER MENU           PF5 - WWD/AREA NBR      PF7 - PAGE BACK
PA2 - INQUIRY/UPDATE MENU   ENTER - ACCEPT FIELDS   PF8 - PAGE FORWARD
DISPLAY COMPLETE.
```

Highly Confidential – Subject to Delaware Local Bankruptcy Rule 9018

**EXHIBIT 22**

Report Type: C   *IMMEDIATE ATTENTION REQUIRED*   ***Confidential***

HERTZ

Initial Report of Vehicle

**REPORT THIS VEHICLE STOLEN TO YOUR LOCAL POLICE DEPARTMENT WITHIN 4 DAYS AND RETURN THIS SHEET TO OKC VEHICLE CONTROL WITH REQUIRED THEFT INFORMATION HIGHLIGHTED ON THIS SHEET TO:**

Okctheftandrecovery@hertz.com or 405-775-3078

---

VCWX0390                                                                    **Confidential**

Report Type: C

TR=Theft Renter               HERTZ

TF=TheftFraud                 OKC Vehicle Control

C=Conversion                  Initial Report of Vehicle

Theft ID:   92412

| Unit No | Year | Make | Model | | Type | Color | Serial No. |
|---|---|---|---|---|---|---|---|
| 0007107188 | 2015 | NISSAN | ALTIMA | | 4DR | SIL | 1N4AL3AP0FN375462 |

| Lic Plate YR | Lic ST | Lic NO. | Odometer Out | Odometer In | Owning Area | | Rental No. |
|---|---|---|---|---|---|---|---|
| 2017 | NY | GSD4776 | 39992 | | 01998 | | 195855656 |

| Date & Time Rented | Rented From | Due Date | Location Due | Home Phone | Business Phone | Local Phone |
|---|---|---|---|---|---|---|
| 09/30/2016 10.00.00 | 05864-12 | 11/04/2016 09.55.00 | 05864-12 | 8437095364 | | |

| Renter's Name | Residence Address (City, State, & Zip Code) |
|---|---|
| PAULA MURRAY | 42 HOBSON STREET PORTSMOUTH   VA23704 |

| Employer's Name | Secondary Address (City, State, & Zip Code) |
|---|---|
| | 42 HOBSON STREET, PORTSMOUTH, VA 23704 |

| Identification Used | Driver's License No. | ST. | DT of Birth | Person Renting Veh Provided False Info.(Yes/No) |
|---|---|---|---|---|
| XXXXXXXXXXXX0870 | 004248120 | SC | 06/14/1973 | No: |

| Dept. Reported to | Reported to | Reported By | Reported On | Alarm Number |
|---|---|---|---|---|
| | | | | |

| Keys Returned? | Veh Locked? | LDW | Book Value | Date & Time Stolen | Location of Vehicle at Time of Theft |
|---|---|---|---|---|---|
| No | No | N | 10789.77 | 11/04/2016 09:55 | IN RENTERS POSSESSION, VA |

See Attached Pages for the overdue notes for the Worksheet ID:   16100902308

---

THE VEHICLE APPEARED ON THE OVERDUE REPORT. THE PHONE NUMBER ON THE RENTAL WAS CALLED. ALL AVAILABLE SYSTEMS HAVE BEEN CHECKED. NO ADDITIONAL INFORMATION HAS BEEN FOUND.

Date certified Demand Letter Was Sent:   11/01/2016      Return Mail: _____

Force Return Hired:   11/01/2016      Repossession Service Hired: _____

Rental Rep:   1484      DNR Submitted:   14C

Prepared By:   H. Bates      Prepared Date:   11/15/2016 10:29

VC Supervisor Signature _____      Printed Date:   11/15/2016 10:31:21 AM

Highly Confidential – Subject to Delaware Local Bankruptcy Rule 9018

**EXHIBIT 23**

## DECLARATION OF HEATHER KASDAN

1.      My name is Heather Kasdan. I have personal knowledge of the facts stated in this declaration, and I can testify competently to them if called upon to do so.

2.      In sum: Heather rented a car for 1 day in July 2019 and was rear ended that same day. Hertz was immediately notified and the car was supposed to be towed. Hertz then failed to recover the car, improperly charged her nearly $4,000, and falsely told the police she never returned the car and was guilty of car theft (she only found out about the theft report much later).

3.      Heather rented a car from Buffalo, NY airport on July 7, 2019, and paid for insurance. It was a 1-day rental.

4.      That same day, Heather was rear ended by another driver in Stroudsburg, PA, *en route* to her destination. The police were called, and Hertz was notified. Hertz Roadside said that they would tow the car.

5.      An incident report was submitted to Hertz on July 8, 2019, and labeled as Hertz Incident Report #0190203582.

6.      Heather never saw the car again.

7.      Then on August 29, 2019 she received a threatening, poorly written text message stating: "Auto theft task force investigator green at 972-532-6307 Warrant may be issued for Heather Kasdan for felony theft. Call me to resolve and return the rental vehicle."

8.      The same day she received a letter from Hertz also telling her that Hertz was going to report her for car theft unless she returned the vehicle.

9.      Upset and very confused, she immediately called Hertz on August 29, 2020, and spoke with a Josh, then a Sophia. Sophia told Heather, incredibly, that the rental was still open. Heather informed her what happened, and asked how that could be possible. Sophia had no

1

answers.

10.     When Sophia was quizzed about the threatening text message, she told Heather that this was not her normal department and that Hertz does not have an "auto theft task force."

11.     Sophia then transferred her to Wanda in vehicle control. The situation was explained to Wanda, and Wanda abruptly hung up on Heather stating: this "has gone way beyond me."

12.     Following Wanda's refusal to address Hertz's conduct, Heather called 1-800-582-7499 and spoke with Sheryl in the insurance replacement department. Sheryl told her she needed the claims management department. However, Sheryl sent her to Notice of Loss Department. The rep there, Casper, says she has the wrong department. Heather was getting the runaround.

13.     Heather was then transferred to Victoria Rodgers, who was handling her case in the claims department. A woman named Brittany was also on the call. Heather again explained that she did not have the car and that Hertz Roadside said they were towing it on July 7, 2019.

14.     At this point, Victoria and Brittany admitted that Hertz was unable to find the car.

15.     Heather then emailed customersrelations@hertz.com for answers: "Your company, Hertz, are the ones who set up and towed the vehicle. Why are you contacting me in regard to where it is?" She was never contacted back. She also tried to reach vehicle control again, but was unsuccessful. This email is attached to this declaration.

16.     On September 12, 2019, she saw that Hertz had egregiously overcharged her Amex card $3,932.03, whereas her actual bill should have been $188.67.

17.     She disputed this charge with Amex, then called Hertz again and spoke with Emily in Vehicle Control. Emily stated that Hertz had no roadside assistance call on file, despite the fact that Heather had spent an hour and half on the phone with Hertz Roadside.

2

Highly Confidential – Subject to Delaware Local Bankruptcy Rule 9018

18.     Emily then said that she could see in Hertz's system that the car was supposed to be towed by AAA, but that Hertz stopped that towing. Heather asked Emily how Hertz knew they had to tow the car if, as Emily said, no one had called Hertz (although Heather had actually spent over 1 hour on the phone with Hertz the day of the accident). Emily did not have a response. Emily then confusingly said that another towing service had been contacted to replace AAA, but when called, the service claimed to have never been contacted about the car. Essentially, Hertz's records were a mess, but at a minimum showed that Hertz knew about the accident and also knew that Heather did not have the car.

19.     Emily did confirm that the threatening text messages were from Hertz, and assured Heather that she would put a stop to them and that she would put everything into a file about what had happened so there was no further confusion.

20.     *Unknown to Heather, Hertz filed a false police report on October 7, 2019, accusing her of car theft.* Hertz ridiculously claimed that she had rented the car on July 7, 2019 and never returned it. The theft report also falsely omitted t*hat Heather had been charged $3,932.03 one month earlier.*

21.     Hertz's records submitted with the theft report contained none of Heather's extensive contacts with Hertz, including with Hertz Roadside, customer service, claims, vehicle control, nor any other department. Instead, the records falsely speculated that after the accident and the vehicle being impounded, that the vehicle had been released back to Heather. This was nonsensical, false, and directly contradicted by Heather multiple times in August and September 2019. None of Heather's multiple phone calls and emails were included.

22.     Again, Heather had no idea this outrageous report was filed at this time; in fact, she had been told by Emily that everything had been taken care of regarding the threatening messages

3

Highly Confidential – Subject to Delaware Local Bankruptcy Rule 9018                          HERTZ_FPRP_0000187

Heather had received and that she was not being accused of car theft.

23.    In November 2019, Amex then closed the dispute in Hertz's favor. Upon asking Amex why, Amex said Hertz had provided a bill—a bill which falsely charged her for having the car for 20 days!

24.    On November 19, 2019, she then spoke with Hertz again, both billing and roadside service (Henry and Nicholas in billing, Wami in Roadside Service). They knew nothing. She was then transferred to a supervisor named Tevon. Tevon assured her she was getting her money back in 5 to 7 days. No one told her a police report had been filed. On December 11, 2020, she called asking for a status update as Hertz had never refunded her. She was told by a female rep named Alex that she would not be provided a status update on the refund and that all Heather could do was send an email.

25.    On February 25, 2020, she spoke with Gerson in billing regarding her dispute. He said that his notes state she is not due an adjustment because the car was not returned until July 27, 2019. When she informed him that Hertz was supposed to tow on July 7, 2019, and that she had purchased insurance, he nonsensically stated: "the customer is responsible for all charges."

26.    Unable to tell her anything, Gerson then transferred her to Hya in the claims department. Heather demanded: *"I want for you to email me where in the terms and conditions that says that I am responsible for $4000 bill when I rented a car for one day with your loss and damage insurance."*

27.    Instead of answering, Hya tried to transfer her to billing, which Heather said was unacceptable and that she had just spoke with billing. Hya then put her on hold while Hya said she was speaking with customer service. However, instead of doing this, Hya transferred Heather back to billing without notice or permission.

4

Highly Confidential – Subject to Delaware Local Bankruptcy Rule 9018

28.    Heather never received any notice from Hertz about the bankruptcy. It was not until late November 2020 that she ever even learned Hertz had filed a police report against her.

29.    She is terrified that that she will be arrested and prosecuted based because of Hertz's outrageous conduct.

30.    Heather, tried to dispute the bill with Amex multiple times, but was unsuccessful.

31.    As a direct and proximate result of Hertz's conduct, Heather has had a false police report filed against her, she has been placed in fear of arrest and prosecution, she has been mentally and emotionally harmed, and she has been overcharged nearly $4,000.

32.    There was no probable cause for Hertz to report Heather for theft.

I declare under the penalty of perjury of the United States of America that the foregoing is true and correct.

Dated: May 20, 2021

_/s/ Heather Kosla_
Declarant

5

Highly Confidential – Subject to Delaware Local Bankruptcy Rule 9018

HERTZ_FPRP_0000189

# EXHIBIT C

## Fluehr Declaration

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| Rental Car Intermediate Holdings, LLC,[1] | Case No. 20-11247 (MFW) |
| Reorganized Debtor. | |

## DECLARATION OF ALFRED J. FLUEHR IN SUPPORT OF
## FALSE POLICE REPORT CLAIMANTS' (I) OBJECTION TO REORGANIZED
## DEBTOR'S SUPPLEMENTAL MOTION FOR ENTRY OF A PROTECTIVE ORDER
## LIMITING WRITTEN DISCOVERY AND (II) CROSS-MOTION TO COMPEL
## INTERROGATORY RESPONSES AND PRODUCTION OF DOCUMENTS

I, Alfred J. Fluehr, hereby declare under penalty of perjury as follows:

1.     I am an attorney with the law firm, Francis Alexander, LLC.

2.     I submit this declaration (this "Declaration") in support of the *False Police Report Claimants' (I) Objection to Reorganized Debtor's Supplemental Motion for Entry of a Protective Order Limiting Written Discovery and (II) Cross-Motion to Compel Interrogatory Reponses and Production of Documents* (the "Objection and Cross-Motion").[2]

---

[1]     The last four digits of the tax identification number of Reorganized Debtor Rental Car Intermediate Holdings, LLC ("RCIH") are 2459.  The location of the Reorganized Debtors' service address is 8501 Williams Road, Estero, FL 33928.  On September 28, 2021, the Court entered a final decree closing each of the chapter 11 cases for The Hertz Corporation and its affiliated reorganized debtors (the "Reorganized Debtors" and prior to the effective date, the "Debtors") other than RCIH's chapter 11 case.  Commencing on September 28, 2021, all motions, notices, and other pleadings relating to any of the Reorganized Debtors shall be filed in RCIH's chapter 11 case, Case No. 20-11247 (MFW).

[2]     Capitalized terms used but not otherwise defined in this Declaration shall have the meanings ascribed to them in the Objection and Cross-Motion.

3.      Unless otherwise stated, all statements in this Declaration are based upon my personal knowledge.  If called to testify, I could and would competently testify to the facts set forth herein.

4.      Attached as **Exhibit 1** hereto is a true and correct copy of a document produced by the Debtors and Bates-stamped as HERTZ000128.

5.      Attached as **Exhibit 2** hereto is a true and correct copy of a document produced by the Debtors and Bates-stamped HERTZ001746.

6.      Attached as **Exhibit 3** hereto is a true and correct copy of a document produced by the Debtors and Bates-stamped HERTZ001611–1633.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Dated:  February 14, 2022

Alfred J. Fluehr

ACTIVE.135547639.01

**EXHIBIT 1**



For Settlement Purposes Only;
Subject to FRE 408

Hertz000128

**EXHIBIT 2**

Hertz001746

HERTZ CREDIT AUTHORIZATION DETAIL
REPORT CONTAINS CONFIDENTIAL INFORMATION
RA 164586041

| DATE | LCTN-TIME | APPROVAL | ACCOUNT NUMBER | AMOUNT | EXPIRE | MAG | AUTH | RESPONSE | | CCN # |
|---|---|---|---|---|---|---|---|---|---|---|
| 04/17/17 | 154228 | 84216 | 4833120099771090 | $467.00 | 2002 | M | FDMS | APPROVED | 0 | 2020 |
| 04/25/17 | 4342 | | 4833120099771090 | $467.00 | 2002 | K | FDMS | DECLINED | 0 | 0 |
| 04/25/17 | 144446 | | 4833120099771090 | $467.00 | 2002 | K | FDMS | DECLINED | 0 | 2020 |
| 04/26/17 | 4855 | | 4833120099771090 | $467.00 | 2002 | K | FDMS | DECLINED | 0 | 0 |
| 04/26/17 | 170622 | | 4833120099771090 | $467.00 | 2002 | K | FDMS | DECLINED | 0 | 2020 |
| 04/27/17 | 4713 | | 4833120099771090 | $467.00 | 2002 | K | FDMS | DECLINED | 0 | 0 |
| 04/27/17 | 80017 | | 4833120099771090 | $467.00 | 2002 | K | FDMS | CAF NOT FOUND | 0 | 2020 |
| 04/27/17 | 102011 | 12010 | 4833120099771090 | $188.00 | 2002 | K | FDMS | INCREMENTAL | 0 | 2020 |
| 04/29/17 | 4648 | 84601 | 4833120099771090 | $59.00 | 2002 | K | FDMS | INCREMENTAL | 0 | 0 |
| 04/30/17 | 4055 | 54001 | 4833120099771090 | $60.00 | 2002 | K | FDMS | INCREMENTAL | 0 | 0 |
| 05/01/17 | 10434 | | 4833120099771090 | $774.00 | 2002 | K | FDMS | DECLINED | 0 | 0 |
| 05/04/17 | 4606 | | 4833120099771090 | $774.00 | 2002 | K | FDMS | DECLINED | 0 | 0 |
| 05/04/17 | 80628 | | 4833120099771090 | $774.00 | 2002 | K | FDMS | DECLINED | 0 | 2020 |
| 05/04/17 | 111622 | | 4833120099771090 | $774.00 | 2002 | K | FDMS | DECLINED | 0 | 2020 |
| 05/05/17 | 4834 | | 4833120099771090 | $774.00 | 2002 | K | FDMS | DECLINED | 0 | 0 |
| 05/05/17 | 80231 | | 4833120099771090 | $774.00 | 2002 | K | FDMS | DECLINED | 0 | 2020 |
| 05/05/17 | 100545 | | 4833120099771090 | $774.00 | 2002 | K | FDMS | DECLINED | 0 | 2020 |
| 05/06/17 | 4918 | | 4833120099771090 | $774.00 | 2002 | K | FDMS | DECLINED | 0 | 0 |
| 05/07/17 | 4342 | | 4833120099771090 | $774.00 | 2002 | K | FDMS | DECLINED | 0 | 0 |
| 05/07/17 | 110204 | | 4833120099771090 | $774.00 | 2002 | K | FDMS | DECLINED | 0 | 2020 |
| 05/08/17 | 4142 | | 4833120099771090 | $774.00 | 2002 | K | FDMS | DECLINED | 0 | 0 |
| 05/08/17 | 120620 | | 4833120099771090 | $774.00 | 2002 | K | FDMS | DECLINED | 0 | 2020 |
| 05/09/17 | 15751 | | 4833120099771090 | 774 | 2002 | K | FDMS | DECLINED | 0 | 0 |
| 05/09/17 | 103911 | | 4833120099771090 | 774 | 2002 | K | FDMS | DECLINED | 0 | 2020 |
| 05/10/17 | 4329 | | 4833120099771090 | 774 | 2002 | K | FDMS | DECLINED | 0 | 0 |
| 05/11/17 | 4510 | | 4833120099771090 | 774 | 2002 | K | FDMS | DECLINED | 0 | 0 |
| 05/11/17 | 82849 | | 4833120099771090 | 774 | 2002 | K | FDMS | DECLINED | 0 | 2020 |
| 05/11/17 | 111114 | | 4833120099771090 | 774 | 2002 | K | FDMS | DECLINED | 0 | 2020 |
| 05/12/17 | 4953 | | 4833120099771090 | 774 | 2002 | K | FDMS | DECLINED | 0 | 0 |
| 05/13/17 | 4905 | | 4833120099771090 | 774 | 2002 | K | FDMS | DECLINED | 0 | 0 |
| 05/14/17 | 5704 | | 4833120099771090 | 774 | 2002 | K | FDMS | DECLINED | 0 | 0 |
| 05/15/17 | 4801 | | 4833120099771090 | 774 | 2002 | K | FDMS | CAF NOT FOUND | 0 | 0 |
| 05/15/17 | 85740 | | 4833120099771090 | 774 | 2002 | K | FDMS | CAF NOT FOUND | 0 | 2020 |
| 05/16/17 | 4341 | | 4833120099771090 | 774 | 2002 | K | FDMS | CAF NOT FOUND | 0 | 0 |
| 05/17/17 | 12629 | | 4833120099771090 | 774 | 2002 | K | FDMS | CAF NOT FOUND | 0 | 0 |
| 05/17/17 | 90309 | | 4833120099771090 | 774 | 2002 | K | FDMS | CAF NOT FOUND | 0 | 2020 |
| 05/18/17 | 4547 | | 4833120099771090 | 774 | 2002 | K | FDMS | DECLINED | 0 | 0 |
| 05/19/17 | 4820 | | 4833120099771090 | 774 | 2002 | K | FDMS | DECLINED | 0 | 0 |
| 05/21/17 | 4835 | | 4833120099771090 | 774 | 2002 | K | FDMS | CAF NOT FOUND | 0 | 0 |
| 05/21/17 | 3551 | | 4833120099771090 | 774 | 2002 | K | FDMS | CAF NOT FOUND | 0 | 0 |
| 05/22/17 | 4336 | | 4833120099771090 | 774 | 2002 | K | FDMS | CAF NOT FOUND | 0 | 0 |
| 05/23/17 | 4223 | | 4833120099771090 | 774 | 2002 | K | FDMS | CAF NOT FOUND | 0 | 0 |
| 05/24/17 | 004656 | | 4833120099771090 | 774 | 2002 | K | FDMS | CAF NOT FOUND | 0 | 0 |

**EXHIBIT 3**

ACTIVE.135547639.01



# RAC-51.1 Do Not Rent

| | |
|---|---|
| **Policy Owner: Sr Dir FraudVehCon&Gbl Sec Ops** | **Division: Hertz** |
| **Policy Approver: VP Fraud Prev Sec & Safety** | **Function: Global, RAC Operations** |
| **SMG Policy Owner: Exec VP CROO NA** | **Policy #/Legacy #: RAC-51.1 / W7-42** |
| **Last Reviewed/Updated: 10/15/2013** | |

<div style="border:1px solid red; display:inline-block">

**Executive Summary**

</div>

- This procedure explains the purpose, use and criteria for the Do Not Rent List.

- Anyone may initiate a request to place an individual on the DNR List provided the reason properly meets criteria listed in this Procedure and requests are properly approved (Section B.1, 4 and 5).

- Hertz Platinum Members may not be placed on the DNR List without the approval, at a minimum, of the Executive Vice President and President, Car Rental and Leasing, The Americas (for North America) or the Vice President, Hertz Europe Service Center, HESC, (for European issued Platinum Cards). Gold President Circle Members (North America) may not be placed on the DNR List without the approval, at a minimum, of the Administration and Executive Customer Relations Senior Director (Park Ridge), with the exception for those members that owe money to Hertz for an unpaid accident claim - they may be added to DNR without any additional approval (Section B.2).

- Section C outlines the only reasons for placing an individual on the DNR List.

- Individuals on the DNR List will be automatically removed from the DNR List by OKC Back Office Operations/European Business Support, HESC after expiration of the appropriate period. Cancellations from the DNR List must be effected by the person who approved the DNR List Addition Request Form (Section G).

For Settlement Purposes Only;
Subject to FRE 408

**Key Revisions**

This procedure has been updated to clarify that for Europe, it is mandatory that the completed DNR Addition Request Form detail the reason for the DNR. European Business Support are obliged to notify the customer of the DNR addition in writing. The reason provided on the Addition Request Form will be used in the notification letter, therefore a reason code or brief statement will not suffice. The reason code is also mandatory for reporting and purging purposes (Section B.3.b).

For Settlement Purposes Only;
Subject to FRE 408

Hertz001612

**Scope:** This Worldwide procedure applies to the Rent-A-Car Division of The Hertz Corporation.

**Purpose:** To explain the purpose, use and criteria for the Do Not Rent List.

**Index:**
A. General
B. Adding and Approving DNR Requests
C. Criteria for the Do Not Rent List
D. Processing the DNR List Addition Request e-Form North America
E. Processing the DNR Addition/Cancellation Request Europe
F. Customer Notice
G. Deleting and Individual from the DNR List
H. Inquiries From Do Not Rent Individuals
I. Do Not Rent Processing in Canada
Exhibit 1 - DNR Addition/Cancellation Request (Europe)
Exhibit 2 - DNR Addition/Cancellation Request - Required Approvals Table (Europe)

**Procedure:**

**A. General**

1. The DNR List is a list of individuals to whom Hertz has decided it no longer wishes to rent vehicles. This can be for financial, insurance, fraud, or operational reasons.

   a. Only individuals (i.e. not Companies or other corporate organizations) can be placed on the DNR List.

   b. When an individual is placed on DNR, they will not be allowed to rent at any ASAP/TAS/CARS+/HLES automated RAC location worldwide.

2. The master Do Not Rent List is maintained on the Hertz Tandem Authorization System and is applied on a global basis.

   a. For North America, the OKC Charge Card Department and the OKC Do Not Rent Department maintain the List.

   b. For Europe, the OKC Charge Card Department and Hertz Europe Service Center (HESC) maintain the list.

   c. This list is a compilation of all approved requests from the following

For Settlement Purposes Only;
Subject to FRE 408

Hertz001613

sources:

- OKC Vehicle Control
- OKC, HESC or Country Customer Accounting/Receivable Department (e.g. input following Rental Agreement (RA) bad debt write offs).

  Region/Country/Headquarters/Field locations Management Hertz
-
  Claim Management (North America only)
-

3. For North America, if a name check on the Hertz Authorization System displays a "Field DNR" message, the Counter Sales Representative (CSR) must inform the individual, "Hertz has determined that for good causes, we are no longer able to rent to you. If you wish further information, please call (405) 775-3091." (In Canada, when a CSR attempts to rent to a customer who has been placed on the CARS+ DNR List, a similar message will appear). No other comments may be made. The OKC Charge Card Department will respond to inquiries from DNR individuals related to receivable items only, and OKC Vehicle Control will respond to inquiries related to Field DNR messages. A "Field DNR" message may never be overruled by a local manager (except in accordance with the Note in Section B.13). Only under extenuating circumstances may a "Field DNR" message be overruled with the approval of the Region Vice President/General Manager or Region/Country Controller.

4. As part of the new Gold enrollment process, a DNR check is performed within CARISMA.

5. If an individual has previously appeared on a local or manual DNR listing, the requirements of this procedure to place the individual on the companies DNR system must be followed.

6. The OKC Charge Card Department/European Business Support, HESC, may directly approve the addition of any renter to the DNR List whose Hertz Charge Card (HCC) account is being written-off for non-payment of rental charges.

7. Questions regarding the application of this procedure must be directed to the Park Ridge or HEL Law Department, who will aid in helping respond to inquiries and provide legal advice, where necessary.

## B. Adding and Approving DNR Requests

1. Anyone may initiate a request to place an individual on the DNR List provided the reason properly meets criteria listed in this Procedure and requests are properly approved as outlined in this Section. Those involved with determining whether an individual should be placed on the DNR List must exercise discretion, maintain objectivity and properly document the reasons for the determination in order to avoid any actual or perceived impropriety or discriminatory impact and should also take into account any extenuating or mitigating circumstances. Reasons for placing an individual on DNR must

For Settlement Purposes Only;
Subject to FRE 408

Hertz001614

conform with criteria outlined within this procedure (refer to Section C).

    a.    For Europe, the Country General Manager must nominate an in-country DNR coordinator who will ensure that all aspects of the program are maintained on an on-going basis.

2.    Hertz Platinum Members may not be placed on the DNR List without the approval, at a minimum, of the Executive Vice President and President, Car Rental and Leasing, The Americas (for North America) or the Vice President, Hertz Europe Service Center, HESC, (for European issued Platinum Cards).

    a.    Gold President Circle Members (North America) may not be placed on the DNR List without the approval, at a minimum, of the Senior Director Administration and Executive Customer Relations (Park Ridge). The only exception is for those Gold President Circle Members that owe money to Hertz for an unpaid accident claim; they may be added to DNR without any additional approval.

3.    A DNR List Addition Request e-Form (Form 742001) (for North America)/DNR Addition/Cancellation Request (for Europe RAC-51.1_EX1 - DNR Addition-Cancellation Request) must be completed for each individual before he/she can be placed on the DNR List (except for requests originated by the OKC Receivables Department due to bad debt write-offs or OKC Back Office Operations due to parking tickets).

    a.    For North America, to aid OKC Back Office Operations in handling inquiries from DNR individuals, the applicable Criterion Number (refer to Section C) must be referenced when completing the DNR List Addition Request e-Form. Properly completed and approved e-Forms and substantiating back-up materials (i.e., copy of accident report, copy of RA, VDA, etc., which must be attached in the e-Form) are automatically routed to the OKC Vehicle Control Department/DNR Department for processing. Incomplete e-Forms will be denied. A drivers license number and/or credit card number is required to prevent the customer from renting. therefore every attempt must be made to include this information on the e-Form. If neither of these are available, OKC Vehicle Control will accept the form and send the customer a letter advising of their DNR status, although in reality the counter systems would not prevent a future rental.

    b.    For Europe, the DNR Addition/Cancellation Request (RAC-51.1_EX1 - DNR Addition-Cancellation Request) must be attached to the E-form 'Request for Approval Form', with the required approvers (refer to RAC-51.1_EX2 DNR Addition Cancellation Request - Required Approvals Table (Europe)) - no signatures are required.

It is mandatory that the Addition Request Form details the reason for the DNR. European Business Support are obliged to notify the customer of the DNR addition in writing. The reason provided on the Addition Request Form will be used in the notification letter, therefore a reason code or brief statement will not suffice. The reason code is also mandatory for reporting and purging purposes. The form must be submitted no later than three (3) months after the rental is closed, except when the vehicle is stolen or converted, requests must be sent no later than 12 months after the rental closed. The DNR requester is

For Settlement Purposes Only;
Subject to FRE 408

responsible for obtaining the required approvals. Where no E-form access is available then fax the fully approved form to 00353-1813-1488; alternatively, attach RAC-51.1  EX1 - DNR Addition-Cancellation Request to an email and forward sequentially to all required approvers before submitting to  dnreurope@hertz.com. The e-Form is routed to the European Business Support, HESC for processing.

4.  For North America:

a. The responsible Region Vice President (or management designee) must review all criteria (Section C) requests from field locations to add individuals to the DNR List. Only in an emergency and in the absence of all of the above may an appointed designee authorize additions to the DNR List. After comparing the facts of the matter with the approved criteria in Section C, he/she will determine if an individual should be added to the DNR List and either approve or reject the request.

b.  Corporate/Country Security Managers may only approve additions to the DNR List in cases that they determine to be emergency in nature or pose a security risk (e.g., fraud situations on a current or immediately expected rental, etc.). In these instances, the individual(s) may be added immediately by completing a DNR List Addition Request e-Form and checking yes in the "Emergency DNR" box at the top of the form. The e-Form will go directly to the DNR department for keying onto DNR then will be forwarded on to the additional approvers (Division Vice President).

c. DNR requests initiated by OKC Vehicle Control or Law Department under criteria related to their functions may be added directly to the DNR List provided the e-Form is completed by the individual making the recommendation for the request, and approved by the Vehicle Control Supervisor, OKC (or authorized designee only in the Supervisor's absence). DNR requests for high volume customers (i.e., Five Star, President's Circle and Platinum) must be approved by the Manager, Back Office Operations, OKC (or authorized designee only in the Manager's absence). DNR requests initiated by Parking Violations are automated and are directly added to DNR without further approval.

Note:  Platinum and President Circle DNR requests require additional approval as outlined in B.2 above.

d.  DNR requests initiated by Hertz Claim Management under criteria related to their functions must be approved by an OKC Central Recovery Unit Supervisor, Manager, or higher level. Every effort must be made to make a determination and submit a DNR List Addition Request e-Form as soon as possible after the accident since the suspension period begins on the date the individual is added to the DNR List.

e. The OKC Receivables Department may directly approve for addition to the DNR List any customer whose account is being written-off for non-payment of rental charges.

f.  All field originated DNR List Addition Request e-Forms and related

For Settlement Purposes Only;
Subject to FRE 408

Hertz001616

back up documentation must be routed to OKC Back Office Operations for retention for the current year plus four (4) years after removal from the DNR List.

g.   Any Licensee Location Manager wishing to add an individual to the DNR List must ensure that the individual meets the criteria outlined in Section C, complete the DNR List Addition Request e-Form, and route the completed form and substantiating back-up materials (attached in the e-Form) to the Manager, Back Office Operations, OKC for approval. If the Licensee Location manager does not have access to e-Forms, the manual DNR List Addition Request form may be utilized.

5.   For Europe:

a.   The European Business Support, HESC is responsible for adding to and deleting from the DNR List all approved European DNR Addition/Cancellation Requests within the same working day. They must confirm in writing to the following, by the next working day, that the DNR Addition/Cancellation request has been actioned:

1.   The Requestor.

2.   For European Residents, the requesting Country General Manager or Country Finance Business Partner (if not the original requestor as above).

3.   For U.S. Residents, the Manager, Back Office Operations, OKC.

b.   If applicable, the cancelling of an individual's Hertz Charge Card,
#1 Club Number, or Gold Card Account within CARISMA is the responsibility of:

1. The European Business Support, HESC or where applicable, the resident country European Business Support.

2. The Customer Accounting Department, HESC, for Franchisee Countries.

c.   The European Business Support, HESC is responsible for maintaining records of all European input onto the DNR List on a source country basis.

1.   The Manager, European Business Support, HESC must provide monthly statistics of DNR entries for each originating country. This report must be provided to the Head of Financial Operations, HESC on a monthly basis and must include (a) records per originating country added during the month (b) total records for each originating country.

d.   For an emergency (temporary) entry to the DNR List, the DNR Addition/Cancellation Request Form must be signed by either the Country Operations Manager or Country Security Manager and faxed to the Manager, European Business Support, HESC (or delegate) at fax 00353-1813-1488 requesting the immediate addition

For Settlement Purposes Only;
Subject to FRE 408

of the individual to the DNR List; alternatively, send an email with attached Word file to dnreurope@hertz.com.

e.   The submitting Country General Manager or Responsible Finance Business Partner must:

1.   Review and confirm that all input conforms to the requirements of this procedure on an operating basis. Note that for criteria 3. (One (1) serious at-fault accident in a Hertz vehicle), the Country General Manager or Responsible Finance Business Partner (or as delegated) must review the overall driving/rental history and the risk to Hertz presented by the driver, which must be considered as justification for non DNR entry.

2.   Review on a financial basis and discuss with any other department concerned.

   a.   This particularly applies to Sales and Marketing, with reference to Platinum, Five Star, Gold, Corporate Account employees, or other sensitive customer categories.

   b.   Any adverse effect on the country.

   Note: For all country generated requests there must be a segregation between the recommendation and approval functions.

3.   It is recommended that requests by a corporate country to DNR the resident of a franchise country are discussed with the franchise management of the resident country to determine the status of the renter.

4.   Approve and forward to the additional approvers as required by this procedure, for subsequent forwarding to the Manager, European Business Support, HESC, for processing. (Email address: dnreurope@hertz.com)

f.   Any Franchise Location Manager wishing to add an individual to the DNR List must ensure that the individual meets the criteria outlined in Section C, and for non residents the request must be approved by management of the resident country to determine the status of the renter. The completed DNR Addition/Cancellation Request must be submitted for approval via the Franchisee General Manager/Managing Director as follows:

1.   In a Corporate Country, to the General Manager/ Responsible Finance Business Partner.

2.   In a Franchisee Country, to the Director, Franchise Operations, HEL.

g.   DNR Addition/Cancellation Requests raised within Hertz Europe Ltd must be approved by the Department Manager and forwarded to the appropriate Director/Vice President, HEL, who must review, approve and forward to the additional approvers as required by this

For Settlement Purposes Only;
Subject to FRE 408

Hertz001618

procedure for subsequent   forwarding to the Manager, European Business Support, HESC, for processing.

h.      Specified permanent requests (criteria 6, 8, 11, 12, 18, 19) are subject to approval by The Vice President, Legal and Corporate Affairs, HEL. Reason Codes requiring a permanent status are detailed in Section C; some requests that are initially Temporary may require updating following review to Permanent status (following additional approval).

i.      Rejections of DNR Addition/Cancellation Requests:

1. A copy of all rejected requests must be provided to all approvers with a full explanation of why the request has been rejected. The original must be returned to the requester.

2. Rejected requests may be re-submitted with amended or improved substantiation.

## C. Criteria for the Do Not Rent List

The following are the only reasons for placing an individual on the DNR List. For non-permanent DNR status, length of time that an individual remains on DNR commences from the time initially added to the DNR List.

1.      An individual may be temporarily placed on the DNR List pending the prompt conclusion of an investigation (under any of the criteria listed in this procedure) of his/her actions that may result in DNR status. If the individual does not qualify for DNR status upon the conclusion of such an investigation, he/she must be promptly removed from the DNR List. When placing an individual on the DNR List, regardless of whether the placement is temporary or permanent, the request must be approved in accordance with this procedure. When placing an individual temporarily on DNR, every attempt must be made to reach a final conclusion within three (3) months of placement. DNR customer inquiries related to this criteria will be directed to the individual who initiated the DNR request. For Europe, it is the responsibility of the European Business Support, HESC to maintain a record of all files with this criteria and to follow up with countries/departments on a monthly basis.

Note: If it is decided that the individual will remain on the DNR List, an updated DNR List Addition Request must be submitted with the correct Criteria Number indicated.

2.      Judicial conviction (or its equivalent) of the individual for unauthorized use or larceny of a Hertz vehicle or vehicle parts/accessories (i.e., spare tire, radio, hub caps, etc.). For these purposes only, conviction (or its equivalent) includes a plea bargain to lesser charges, an Adjournment in Contemplation of Dismissal (or equivalent), and/or suspended sentence. The DNR status for this criteria is permanent.

Note: The individual may be placed temporarily on the DNR List based on being arrested for unauthorized use or larceny of the Hertz vehicle or vehicle parts/accessories. The DNR status is temporary pending final

For Settlement Purposes Only;
Subject to FRE 408

Hertz001619

disposition. If the individual is ultimately cleared of all charges, he/she may present documentation supporting that the DNR status should be cleared.

3.    a.    One (1) serious accident while the individual was in possession of a Hertz vehicle, where there is reasonable basis to conclude the individual was substantially at fault. The DNR status for this criteria is 12 months. A 'serious accident' is defined as one (1) or more of the following: 1) bodily injury to a passenger or 3rd party, 2) damage of more than $3,000 to a 3rd party vehicle or property, or 3) damage more than $2,000 to a Hertz vehicle. Every effort must be made to make a determination and submit a DNR List Addition Request e-Form as soon as possible after the accident since the suspension period begins on the date the individual is added to the DNR List. For Europe, Extensive damage to the Hertz vehicle, which is considered as heavy front end, side or other damage with a VDA estimate amount of twenty percent (20%) or more of the Hertz book value at the time of the loss; the cost of replacing or repairing air bags is excluded from this estimate.

> Note:   'At fault' is defined as follows: 1) Where there is a reasonable basis to conclude the Hertz driver was substantially at fault, or
> 2) The Hertz driver was charged by the police traffic authorities, or the police report identifies unsafe or reckless driving as a contributory factor. Note that in situation #2, DNR input should be considered even if the cost of repairs are less than 20% of the Hertz book value at the time of the loss.

   b. One (1) accident while the individual was in possession of a Hertz vehicle where the driver was convicted (as defined in Section B.2) of driving while intoxicated or under the influence of drugs or alcohol (any amount of damage). The DNR status for this criteria is permanent. If no loss or damage has occurred, refer to Criteria No. 19 k.

> Note: The individual may be placed temporarily on the DNR List based on being arrested or cited in the vehicle for any of the above. The DNR status is temporary pending final disposition. If the individual is ultimately cleared of all charges, he/she may present documentation supporting that the DNR status should be cleared.

   c.    For Europe, before any DNR input, the Country General Manager or Finance Business Partner (or as delegated) must review the overall driving/rental history and the risk to Hertz presented by the driver, which must be considered as justification for non DNR entry.

4.    a.    Two (2) or more accidents within a 36 month period where no RA violation was involved (any dollar amount of damage) while the individual was in possession of a Hertz vehicle where there is reason to conclude that the individual/driver was substantially at fault. The DNR status for this criteria is limited to 12 months.

For Settlement Purposes Only;
Subject to FRE 408

Hertz001620

b. One (1) additional accident within 36 months after reinstatement, even though no RA violation was involved, will result in a permanent DNR status.

5. a. Where the individual has been involved in two (2) or more incidents of vandalism or damage while parked, excluding damage incurred while parked at a licensed parking facility or as a result of courtesy valet parking. The application of this criterion requires a reasonable determination that the facts and circumstances surrounding such incidents evidence a pattern of behavior that demonstrates indifference by the individual to the protection of Hertz vehicles from exposure to the likelihood of such damage. The DNR status for this criteria is limited to 12 months.

b. One (1) additional incident within 36 months after reinstatement, even though no RA violation was involved, will result in a permanent DNR status.

6. a. The use of a Hertz vehicle by an unauthorized operator resulting in an accident or in the theft or conversion of the vehicle. Both the customer and the unauthorized operator (if information is available) will be placed on the DNR List. The DNR status for this criteria is permanent and for Europe, requires the additional approval of the Vice President, Legal and Corporate Affairs, HEL.

b. The theft of a Hertz vehicle when customer complicity or negligence (e.g., leaving the car and failing to remove the keys or close and lock all doors and window, or losing possession of the keys) is believed to have led to the theft. The DNR status for this criteria is permanent.

c. The unauthorized operator of a vehicle that was involved in an accident.

7. The refusal to file a theft report with police and with Hertz or the failure to make a good faith attempt to file a theft report within a reasonable time after a claimed theft (i.e., usually not more than seven (7) days). The DNR status for this criteria is permanent.

8. a. The filing of a report of theft under suspicious circumstances that may evidence the individual's involvement in the theft. This includes, but is not limited to, a theft where the customer refused to file a theft report involving a person reasonably believed to be known to the customer (i.e., friend, associate, relative). The DNR status for this criteria is permanent.

b. The filing of a report of theft where it can be established that intentional erroneous information was given on the theft report, or erroneous information given while attempting a vehicle exchange. The DNR status for this criteria is permanent.

9. a. The filing of two (2) reports of theft of a Hertz vehicle from the customer within 36 months where no RA violation was involved. The DNR status for this criteria is 36 months.

For Settlement Purposes Only;
Subject to FRE 408

Hertz001621

Note:    This does not include thefts involving valet parking.

b. One (1) additional filing of a report of theft within 36 months after reinstatement will result in a permanent DNR status.

10.    The failure to promptly and properly file an accident report after having been requested to do so by an authorized employee of Hertz, including incidents when management notices damage to the vehicle that was never reported to Hertz upon checkout, and when it can be established that intentional erroneous information was given on the accident report. In addition, this criteria pertains to incidents where an individual has an accident and it is later determined that the individual had the vehicle repaired without filing an accident report. The DNR status for this criteria is permanent.

11.    Willful failure to cooperate fully with or respond to inquiries from Hertz or Hertz Claim Management in their investigation and/or administration of an accident, theft or other incident. This does not include cases initiated by completion of a Station Accident Report where if customer refuses to reimburse Hertz for the billed loss, he/she will be placed on DNR (refer to Criteria No. 17). The DNR status for this criteria is permanent and for Europe, requires the additional approval of the Vice President, Legal and Corporate Affairs, HEL.

12.    Where the individual or employee has been the subject of a documented Hertz security investigation, resulting in a reasonable determination that the individual may have committed criminal wrongdoing against Hertz. While conviction is irrefutable evidence of such wrongdoing, under certain circumstances something less than conviction may satisfy this criterion, such as where a matter is being actively pursued with the authorities and no final determination of guilt has, as yet, been made. The DNR status for this criteria is permanent and for Europe, requires the additional approval of the Vice President, Legal and Corporate Affairs, HEL.

Note: Where a judicial determination is later made that the individual was not guilty, the individual must be removed from the DNR List, unless the individual's related or unrelated conduct clearly comes within another DNR List criterion. A dismissal of charges as a result of plea bargain, suspended sentence, settlement, Adjournment in Contemplation of Dismissal, exercise judicial or prosecutorial discretion or the like, does not equate to a not guilty finding, unless Hertz's investigation supports such a conclusion.

13.    Proof of previous wrongful use by the customer of a fraudulent or stolen credit card or license to rent a vehicle from Hertz. This does not include credit cards or licenses that have merely expired. The DNR status for this criteria is permanent.

Note: For North America, when individuals report their drivers' licenses stolen, several states issue replacement licenses with a number identical to the one that was stolen. Before rejecting a rental to an individual whose driver's license number displays a Field DNR message, check the issuance date on the license presented. If the date

For Settlement Purposes Only;
Subject to FRE 408

Hertz001622

issued on the license presented is after the date on the field message, the license can be accepted. OKC Back Office Operations will determine if the license is put on DNR depending on whether or not that particular states' practice is to issue licenses with the same number.

14.   a.   Where the customer has failed to respond to vehicle overdue notice(s), or has been unable to provide an excusable reason for not returning a Hertz vehicle after such notice is communicated (verbally or written), resulting in OKC Vehicle Control (or the responsible back office) having to attempt to recover, or recovering (i.e., repossessing) the overdue vehicle, or filing a conversion or theft report with the police. The DNR status for this criteria is permanent. If it is later determined that the vehicle was previously returned, or a valid rental extension had been granted, the individual must be promptly removed from DNR.

b.   Where the customer has failed to return a Hertz vehicle to Hertz premises with no reason or excuse for non-return (e.g., intentional abandonment), regardless of loss/damage. The DNR status for this criteria is 12 months. One (1) additional incident after reinstatement will result in a permanent DNR status.

15.   a.   Where the customer appears on an OKC/Country Parking Violations Report for having incurred one (1) or more parking violations that Hertz has been required to pay, and after proper written demand for reimbursement, including advice that the customer's rental privileges will be revoked, the customer fails to remit full payment. The DNR status for this criteria is permanent. If, thereafter, full payment is made by the customer, the customer must be removed from the DNR List.

b.   If, however, the customer is placed on the DNR List a second time for not paying parking violations that Hertz has been required to pay, the customer will remain on the DNR List even if full restitution is later made. The DNR status for this criteria (second offense) is permanent.

Note:   Returned mail and customer disputes will be taken into consideration.

16.   Where the individual appears on a weekly/monthly listing, generated by Customer Collections and Commercial Billing/Customer Accounting Department, HESC, of accounts scheduled to be converted to bad debt write-offs. For North America, all candidates for bad debt write-offs over $500 are approved by the Manager, OKC Receivables, and under $500 are approved by the Supervisor, OKC Receivables, and their credit card and license information forwarded to the OKC Charge Card Department to be added to the Hertz Authorization System. The DNR status for this criteria is permanent. If it is later determined that the account was paid, upon request from the individual, they may be promptly removed from DNR.

a.   For Europe, non HCC write-offs (e.g. Credit Cards, Purchase Orders, Forced Charges) are submitted for approval as follows. Appearance on a write off list is not sufficient criteria in itself for addition to the DNR List. Details of these write offs are sent as DNR Addition /

For Settlement Purposes Only;
Subject to FRE 408

Hertz001623

Cancellation Requests by the appropriate Senior Team Leader to the European Business Support, HESC, for authorization. These additions are researched, verified and approved as normal and the licence information added to the DNR List of the Hertz Authorization System by the European Business Support, HESC.

17.   If an individual fails or refuses to reimburse Hertz for the billed loss of, or damage to, a Hertz vehicle for which he/she is contractually obligated. The DNR status for this criteria is permanent.

18.   Individuals who have engaged in: a pattern of unfounded complaints against Hertz; persistent harassment of Hertz or its employees; or serious and unwarranted abusive or threatening behavior toward Hertz or its employees. This request is subject to the approval of the Senior Vice President, Quality Assurance and Administration, OKC, or the Senior Director, RAC Administration, Park Ridge. The DNR status for this criteria is permanent and for Europe, requires the additional approval of the Vice President, Legal and Corporate Affairs, HEL..

19.   Participation by the individual in a violation of the rental agreement. The DNR status for this criteria is permanent, except as noted in k, l, m, n and o below and for Europe, requires the additional approval of the Vice President, Legal and Corporate Affairs, HEL. Violations of the rental agreement include the following unless local law provides otherwise. Refer to the applicable rental agreement:

The rental vehicle was:

a.   Lost or damaged by the individual as a result of the individual's willful, wanton or reckless behavior or, lost or damaged by another with the individual's express or implied permission.

b.   Used by the individual or with the individual's permission to tow or push something, unless in an isolated emergency situation.

c.   Used by the individual or with the individual's permission in a race, test or contest.

d.   Used by the individual or with the individual's permission to carry persons outside the passenger compartment or to carry substantially more persons than the passenger rating of the vehicle allows causing bodily injury or the loss of, or damage to, the vehicle.

e.   Loaded by the individual or with the individual's permission beyond its rated capacity causing the loss of, or damage to, the vehicle, or to others as a result of the overloading.

f.   Used by the individual or with the individual's permission to teach driving to an unlicensed operator.

g.   Used by the individual or with the individual's permission off a paved or otherwise maintained road (includes four wheel drive vehicles) causing the loss of, or damage to, the vehicle.

h.   Used by the individual or with the individual's permission to carry

For Settlement Purposes Only;
Subject to FRE 408

Hertz001624

persons or property for hire.

i.    Obtained by the individual from Hertz by fraud or misrepresentation (including, but not limited to: the attempted use of counterfeit or stolen frequent flyer certificates, coupons, false CDPID's, travel agent benefits, or any other fraudulent identification used to obtain a discount).

j.    Used by the individual or with the individual's permission for any illegal purpose (i.e., in the commission of a felony or misdemeanor) such as illegal transportation of persons, drugs or contraband. Conviction (as defined in Section B.2) of the involved person, or satisfactory evidence that permission was given to another involved person by the customer or authorized operator, satisfies this criterion.

k.    Used by the individual or with the individual's permission by anyone under the influence of alcohol or any other intoxicants, such as drugs, where the driver was convicted (as defined in Section B.2) of driving while intoxicated or under the influence of drugs or alcohol. The DNR status for this criteria is 12 months if no loss or damage resulted. If loss or damage has occurred, the DNR status is permanent in accordance with Criteria No. 3 b.

Note: For items j and k above, the individual may be placed temporarily on DNR based on being arrested in the vehicle for any of the above. The DNR status is temporary pending final disposition. If the individual is ultimately cleared of all charges, he/she may present documentation supporting that the DNR status should be cleared.

l.    Operated or allowed to be operated by an unlicensed operator, or an individual with a suspended license. The DNR status for this criteria is
24 months if no loss or damage resulted. If loss or damage has occurred, follow Criteria No. 6.

m.    Used by the individual or with the individual's permission in Mexico (unless otherwise authorized in advance by Hertz). The DNR status for this criteria is 12 months if no loss or damage resulted. If loss or damage has occurred, an additional 12 months must be added to the DNR status in accordance with Criteria No. 3.

n.    Operated or in the possession of an unauthorized operator with the customer's permission. The DNR status for this criteria is 12 months if no loss or damage resulted. If loss or damage occurred, follow Criteria No. 6.

o.    For North America, an HLE vehicle that was taken outside of the state in which is was rented without the prior express written consent of HLE when an accident, loss or damage to the Hertz vehicle has resulted, or regardless of there being an accident, loss or damage, the subject of the DNR has violated the rental agreement in this manner more than once. The DNR status for this criteria is 12 months.

p.    For Europe, to drive into any country forbidden by Hertz procedures

For Settlement Purposes Only;
Subject to FRE 408

Hertz001625

(unless authorized in advance by Hertz). The DNR status for this criteria is twelve (12) months if no loss or damage resulted. If loss or damage has occurred, an additional twelve (12) months must be added to the DNR status, follow Reason Code 3. Refer to <u>RAC-15.1 International Rent-It-Here - Leave-it-There</u>.

Note: For items k, l, m, n and o, if there is a second occurrence, the DNR status is permanent.

20.   Law enforcement agencies, credit card companies and other governmental offices or business entities provide Hertz with fraudulent driver's license numbers, credit card numbers and other fraudulent identification that are input into the DNR system to prevent their use. The DNR status for this criteria is permanent.

21.   An individual may be placed on the permanent DNR list if it is determined by a Senior Executive Officer that it is in the best interests of Hertz. This request is subject to the approval of one (1) of the following: (a) Chairman and Chief Executive Officer, (b) an Executive Vice President, or (c) a Senior Vice President, and the separate approval of the Law Department after a full review of the material facts.

**D. Processing the DNR List Addition Request e-Form North A...**

1.   <u>Originator</u> - Completes the DNR List Addition Request e-Form. Field locations must route the properly completed form and substantiating back-up materials (attached in the e-Form) to the Region Vice President or Management designee for approval. Requests originated by OKC Vehicle Control, or the Law Department may be routed directly to the Manager, Back Office Operations. Requests originated by Hertz Claim Management must be routed with substantiating back-up materials (attached in the e-Form) to the Central Recovery Unit Supervisor, Manager, or higher level (Park Ridge) for approval.

2.   <u>Region VP or Management designee or Manager, Insurance Collections</u> - Matches details on the DNR List Addition Request e-Form with approval criteria to determine if request should be approved. Only in an emergency and in the absence of the Region Vice President (or the Manager, Insurance Collections for Hertz Claim Management) may an appointed designee authorize additions to the DNR List. The approved e-Form, with all back up materials attached, is automatically routed to OKC Vehicle Control Department for processing.

Note: If the Region VP wishes their designee to approve DNR e-Forms, the Region VP must go to the e-Form database themselves and assign a delegate for the DNR e-Form. If this is not done, there is no way of telling if the e-Form has the proper level of approvals and it will be denied.

3.   <u>OKC Vehicle Control/DNR Department</u> -

a.   Reviews the DNR List Addition Request e-Form to ensure that the

For Settlement Purposes Only;
Subject to FRE 408

Hertz001626

criteria is correct and proper approvals have been obtained. If there is a dispute with the DNR List Addition Request e-Form, forwards the Request to the Manager, Back Office Operations for resolution.

Note:  On all field generated requests there <u>must</u> be a segregation of the recommendation and approval functions.

b.    Adds individual's credit card number and/or driver's license number to the DNR files on the Hertz Authorization System. If applicable, cancels the individual's Hertz Charge Card, #1 Club number or Gold Service Account. Multiple driver's license numbers and information can be entered, which allows for the input of additional false or genuine driver's license details that the renter may have presented.

Note: The Charge Card Department will generally reimburse Gold card members for their paid membership fees. However, if they are placed on the DNR List due to an indebtedness to Hertz, they are not entitled to this refund.

## E. Processing the DNR Addition/Cancellation Request Europe

1.    The DNR Addition/Cancellation Request must be completed in capitals and in English. The form included as RAC-51.1 EX1 - DNR Addition-Cancellation Request must be completed and (where available) attached to the e-Form 'Request for Approval Form' for on-line approval(s) and subsequent forwarding to dnreurope@hertz.com

2.    The Request must be completed as fully as possible with the following details:

a.    Requestor Information.

1.    Requester's country code, name, job title, department, and date.

b.    Personal Data Profile of individual recommended for DNR.

1.    Indicate whether individual is renter or driver.

2.    Full name of the individual.  This must be in the following format:

a. Surname/Family/Last Name.

b. Title.

c. First Name and Middle Initial.

3.    Full address of the individual.  This must be as complete as possible, including Country and Post/Zip code.

4.    Telephone Number(s); Both Home and Business where available.

5.    Date, Place (City) and Country of Birth.

For Settlement Purposes Only;
Subject to FRE 408

Hertz001627

6.      Driver's Licence information: number, issue date, expiry date, issuing authority and issuing country.

     Note:   Details of a second Driving Licence can be entered in the field for "Second Drivers Licence #". This will allow for the input of known additional false or genuine Drivers Licence details that the renter may have presented and can be matched against the DNR record.

7      Passport/National ID number, issue date, expiry date, issuing authority and issuing country.

8.      Hertz #1 Club Number, if applicable (including Gold).

9.      RA Number, if applicable.

10.      CDP Number, if applicable.

11.      Unit Number of rented vehicle.

12.      Country Code where the DNR incident originated.

13.      Location Code/WWD code of the Renting Location.

c.      Credit Card Information.

1.      List all Charge/Credit Cards (GCC) with the expiry dates.

d.      Reasons for DNR Request.

1.      Detail the reason for the DNR complete with all other details for determination. Reference any official agency remarks or documents, e.g. Police, Driving Licensing authority, Passport Office/Embassy/Consulate.

2.      Enter DNR Reason Code.

3.      Requestor must sign the request and forward to the General Manager/ Responsible Director or Controller with back up materials to approve.

**F. Customer Notice**

1.      All individuals that are placed on the DNR List will receive written notification of their DNR status (with the exception of Criteria Numbers 12, 13, 16 and 20 for North America) from the OKC Back Office Operations Department (North America) or the European Business Support, HESC

For Settlement Purposes Only;
Subject to FRE 408

Hertz001628

(Europe). The European Business Support must send the letter in the renter's local language.

2. The OKC Back Office Operations Department/European Business Support, HESC will, based upon the DNR List and noted criteria, attempt to inform the individual of the reason for the suspension of rental privileges and the duration of the suspension or of permanent denial of rental privileges where applicable.

   a. For North America, customers are informed that an appeal to their DNR status must be made in writing.

   b. For Europe, customers are given the name, job title, telephone and fax number of the sender, to enable the recipient to discuss the DNR decision.

## G. Deleting an Individual from the DNR List

1. Individuals on the DNR List will be automatically removed from the DNR List by OKC Back Office Operations/European Business Support, HESC after expiration of the appropriate period.

2. Cancellations from the DNR List must be effected by the person who approved the DNR List Addition Request Form. For Europe, a DNR Addition/Cancellation Request must be completed for an individual with a permanent status if he/she is to be removed from the DNR List.

   a. North America - in addition, the Senior Director, RAC Administration, and the Manager, Executive Customer Relations, are authorized to remove individuals from the DNR List. In the event that person is not available, any individual authorized to approve DNR additions may approve the cancellation. However, such deletions must be communicated to the originating source. Removal from the DNR List due to the expiration of the time limit will be effected by the OKC Back Office. For Canada, refer to Section I for cancellations to the CARS+ DNR List.

   b. Europe - The confirmation must be approved by the same management level that originally approved the Addition Request, such confirmation should then be notified to the European Business Support, HESC. (Email address: dnreurope@hertz.com).

      1. The Manager, European Business Support, HESC (or delegate), researches the original DNR Addition/Cancellation Request and advises if the DNR status should be either reconfirmed or recommended for cancellation.

      2. Approval for cancellation must be obtained from:

         a. The requestor or their successor.

         b. The requesting Country General Manager/ Responsible

For Settlement Purposes Only;
Subject to FRE 408

Hertz001629

Director OR Finance Business Partner.

    c.    Any extra approver who was required in the initial addition request to the DNR List (eg, VP, HESC (For European Platinum Members)).

    d.    In an emergency situation approval for cancellation can be given by the Vice President, Field Operations, HEL OR the Division Finance Business Partner, Europe RAC after consultation with the originating country.

    3.    Once approved, the European Business Support, HESC, must write to the individual, in their local language, advising him/her of this decision.

    4.    The letter must state the reason for reinstatement of renting privileges and the name, job title, telephone and fax number of the person who the individual may contact to discuss the DNR decision.

## H. Inquiries From Do Not Rent Individuals

    1.    Inquiries from DNR Individuals must be referred to OKC Vehicle Control/DNR Department or the European Business Support, HESC in conjunction with the Customer Relations Department, HESC.

    a.    For North America, if inquiries are referred back to the Region, a standard single pseudonym may be used by each Region Vice President who handles inquiries from DNR individuals. The Manager, OKC Back Office Operations, and the Manager, Executive Customer Relations, Park Ridge, must be advised of the pseudonyms being used by each Region.

    b.    For Europe, internal email enquiries should be addressed to dnreurope@hertz.com. A standard single pseudonym may be used in handling these enquiries. The Manager, Customer Accounting Department, HESC, must be advised of the pseudonym in use.

    2.    For North America, the OKC Back Office Operations will make every attempt to respond to initial inquiries from DNR individuals by reading the "determination" paragraph of the DNR List Addition Request. If the individual still disagrees with his or her status, he or she will be instructed to write the Manager, Back Office Operations. After receipt of a written request for removal, it will be forwarded to the individual approving the DNR for review.

    3.    For Europe, all responses to DNR contacts, whether in-country, or from HESC, are to be in writing, and only issued after the local internal/external lawyer or the Legal and Corporate Affairs Department, HEL has given signed approval. The European Business Support, HESC, will respond in writing to inquiries from DNR individuals based on information provided on the DNR Addition/Cancellation Request.

For Settlement Purposes Only;
Subject to FRE 408

Hertz001630

4.  Any inquiry from an individual who has been placed on the DNR List as a "problem individual" (i.e., Criteria 18, individuals who have engaged in a pattern of unfounded complaints against Hertz, persistent harassment of Hertz or its employees or serious and unwarranted obsessive or threatening behavior toward Hertz or its employees) must be referred to :

    - North America - the OKC Vehicle Control/DNR Department

    - Europe - the local internal/external lawyer or the Legal and Corporate Affairs Department, HEL

    No one else may respond to "problem individual" inquiries.

5.  From time to time an individual may wish to appeal Hertz' decision to place them on DNR. In these instances, individuals appealing the DNR decision must appeal in writing to OKC Vehicle Control/DNR or the Manager of the European Business Support, HESC.

    a.  North America - The appeal will be forwarded to the DNR approver for review and their decision. If the DNR decision is not reversed and the individual wishes to appeal the matter further, they are instructed to contact the Senior Vice President, Quality Assurance & Administration (OKC), in writing.

    b.  Europe - It is the responsibility of the Manager, European Business Support, HESC, to research the case again and advise if the DNR status should be either reconfirmed or put forward for cancellation approval; the DNR individual must be advised of the decision.

## I. Do Not Rent Processing in Canada

1.  Additions to the CARS+ DNR (BAD) List:

    a.  The originator completes the DNR List Addition Request e-Form, which is routed to the Area Manager.

    b.  The e-Form request and back up information (which must be attached in the e-Form) is then routed to the Northeast Region Vice President, who must review e-Form requests within two (2) business days.

    c.  The approved e-Form request is then routed to OKC Back Office Operations.

    d.  OKC Back Office Operations reviews the e-Form request for accuracy, enters the information in the Hertz Authorization System, and sends written notification to all individuals that are placed on the DNR List. OKC Back Office Operations then sends to the CARS+ Systems Administrator in Canada on a weekly basis a listing of all DNR additions.

    e.  Upon receipt of the DNR additions listing, the CARS+ System Administrators confirm if the customer is on file. If the customer is on file, the file is marked BAD. If the customer is not on file, the System Administrator enters the customer through CUST, and marks the file

For Settlement Purposes Only;
Subject to FRE 408

BAD.

f.  When a customer who is on the CARS+ DNR (BAD) List attempts to rent a vehicle, the screen will display a message indicating the individual is on BAD. CSR's must inform the individual, "Hertz has determined that for good causes, we are no longer able to rent to you. If you wish further information, please call (405) 775-3091." A separate file is maintained in the CARS+ System with pertinent information (address, telephone number) for each individual on the DNR (BAD) List to verify the identity of the individual (in cases of duplicate names). The OKC Charge Card Department will respond to inquiries from DNR individuals related to receivable items only, and OKC Vehicle Control will respond to inquiries related to Field DNR messages. A "BAD" message may never be overruled by a local manager.

2.  Cancellations to the CARS+ DNR (BAD) List

a.  Demand Situation - In a situation where a customer is refused rental at the Counter, and subsequently contacts OKC and works out a resolution whereby his/her DNR status needs to be canceled, OKC Back Office Operations will remove the "DNR" status from the City's CARS+ System(s). A DNR removal authorization is emailed and called into the CARS+ System Administrator in Canada for removal from CARS+.

b.  Non-Demand Situation - On a weekly basis, OKC Back Office Operations will fax a list of deletions to the CARS+ System Administrator in Canada who will update CARS+ .

3.  Maintenance of Canadian DNR (BAD) List

a.  The Country Controller's Department (Field Systems Department) is responsible for maintaining a current DNR list for the country. The System Administrators will be responsible to ensure that the CARS+ DNR (BAD) data is current.

For Settlement Purposes Only;
Subject to FRE 408

Hertz001632

# Exhibits

Exhibit 1: RAC-51.1_EX1 - DNR Addition-Cancellation Request
Exhibit 2:  RAC-51.1_EX2 DNR Addition Cancellation Request - Required Approvals Table (Europe)

**For Settlement Purposes Only;**
**Subject to FRE 408**

**Hertz001633**