**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re | Chapter 11 |
| Rental Car Intermediate Holdings, LLC,[1] | Case No. 20-11247 (MFW) |
| Reorganized Debtor. | **Re: Main D.I. 5898 & D.I. 190**[2] |

**REORGANIZED DEBTOR'S FURTHER SUPPLEMENT TO OBJECTION TO CLAIMANTS' MOTION TO DEEM CLAIMS TIMELY OR FOR EXTENSION OF GENERAL BAR DATE UNDER RULES 3003(C) AND 9006**

In accordance with the April 6, 2022 Order Approving Joint Scheduling Stipulation [D.I. 439] (the "**April 6 Scheduling Order**"), the above-captioned debtor (the "**Reorganized Debtor**") hereby files this further supplement to its objection (the "**Objection**") to the *Claimants' Motion to Deem Claims Timely or for Extension of General Bar Date Under Rules 3003(c) and 9006* [D.I. 190], and respectfully states as follows:

## PRELIMINARY STATEMENT[3]

1. On May 17, 2022—three days before this brief was due under the April 6 Scheduling Order—Claimants informed the Reorganized Debtor that they would not dispute almost all of the Group 4b Claimants that the Reorganized Debtor had identified as "unknown"

---

[1] The last four digits of the tax identification number of Reorganized Debtor Rental Car Intermediate Holdings, LLC ("**RCIH**") are 2459. The location of RCIH's service address is 8501 Williams Road, Estero, FL 33928. On September 28, 2021, the Court entered a final decree closing each of the chapter 11 cases for The Hertz Corporation and its reorganized debtor affiliates (the "**Reorganized Debtors**," and prior to the Effective Date (as defined below), the "**Debtors**") other than RCIH's chapter 11 case. Commencing on September 28, 2021, all motions, notices, and other pleadings relating to any of the Reorganized Debtors shall be filed in RCIH's chapter 11 case, Case No. 20-11247 (MFW).

[2] As used herein, "Main D.I." references are to the docket in Case No. 20-11218, and "D.I." references are to the docket in Case No. 20-11247.

[3] Capitalized terms used but not otherwise defined in this Preliminary Statement are defined later herein.

creditors based on the Court's March 2, 2022 rulings (the "**March 2 Rulings**").[4] At the same time, Claimants also purported to amend the proofs of claim of four Group 4b Claimants. Among other things, Claimants amended the declaration for claimant William West to add allegations that "a Hertz employee," whom Mr. West does not name or identify beyond calling him a "middle-aged, white, male, approximately 5'10" and of medium build," was allegedly present when charges against Mr. West were dismissed. Similarly, Claimants amended the declaration for claimant Daydan Carter to add allegations that Mr. Carter "called the Hertz location" and "spoke with an employee," and then called Vehicle Control and left two messages "describ[ing] that [he] had been wrongly arrested." Claimants did not explain why these purported facts were not included when the proofs of claim were filed almost four months ago, nor did they identify any "good cause" for these late amendments, as the law requires. Indeed, the only thing that has changed between now and when Claimants filed the proofs of claim is that the Court ruled that certain factual allegations of contacts can make a claimant a "known creditor," and the amendments are plainly purposed at slipping claimants into the "known" bucket of creditors.

2. The Reorganized Debtor respectfully submits that these strategic amendments demonstrate two conceptual problems with the Court's March 2 Rulings about what can transform an "unknown" creditor into a "known" one. ***First***, the March 2 Rulings established a wide-open threshold for the Group 3 and 4 Claimants—none of whom noticed a prepetition litigation claim against Hertz—to argue that they were "known" creditors, including by making unsupported assertions that they called "Hertz" and complained, or that an unidentified Hertz employee

[4] Claimants did not explain why they waited nearly seven weeks after the Reorganized Debtor had identified these claimants and provided discovery about them to inform the Reorganized Debtor of their decision, by which time the Reorganized Debtor had already expended substantial time and resources analyzing and briefing facts that were not actually in dispute.

attended or was made aware of their criminal hearing, without any proof that Hertz was ever put on actual notice of a litigation claim. This rule threatens the ability to reorganize of every consumer-facing business like Hertz, which fields millions of customer calls each year. Indeed, Claimants' position is that Hertz can take no comfort from its Bar Date Order and, worse, its Plan, because customers who never provided notice of their claims prepetition or filed timely claims will not have their claims discharged and expunged, but rather can escape the claims process entirely by alleging that they called an anonymous employee and registered a complaint. ***Second***, the March 2 Rulings are now being used by Claimants to shift the burden from the creditors to affirmatively assert their claims, to the Debtors to infer from nebulous circumstances that those claims might exist.

3. To make matters worse, Claimants now seek to use the March 2 Rulings not simply to argue that they are not bound by the Bar Date and should be allowed to file late proofs of claim (the context in which the Court's rulings were made), but to argue that, as a result of being found to be "known" creditors, they are not bound by the bankruptcy claims process ***at all***. Ironically, Claimants are, under the guise of allowing them to file late claims, asking this Court to find that this Court has no power to Allow or Disallow their substantive claims. Under Claimants' theory, the only way a consumer-facing business like Hertz could ensure the effectiveness of its bankruptcy process would be to provide individual, direct notice to every one of its customers. That result is contrary to established law and plainly untenable, and the Court should not let Claimants revolutionize consumer bankruptcies under the aegis of allowing for late claims.

4. Given the March 2 Rulings, the Reorganized Debtor divides this brief into three parts. ***First***, the Reorganized Debtor notes the 21 Group 4b Claimants that Claimants have

acknowledged were not "known" creditors. No argument is necessary with respect to these claimants.

5. ***Second***, the Reorganized Debtor addresses four claimants that the Reorganized Debtor contends were "unknown" creditors consistent with the March 2 Rulings, despite purported late and improper amendments to their proofs of claim.

6. ***Third***, the Reorganized Debtor notes 45 additional Claimants that the Reorganized Debtor objects to as "unknown" creditors but, in light of the March 2 Rulings, will not press those objections at this time, provided that the Court limits the relief available to "known" creditors to the ability to file a late claim, not exemption from the Plan and claims process entirely. The Reorganized Debtor reserves the right to further develop its objections to these Claimants as "unknown" creditors if and when appropriate.[5]

## BACKGROUND

7. On May 22, 2020 (the "**Petition Date**"), each of the Debtors commenced with this Court a voluntary case under chapter 11 of the Bankruptcy Code (collectively, the "**Chapter 11 Cases**"), which were jointly administered for procedural purposes.

8. On August 26, 2020, the Debtors filed a motion [Main D.I. 1140] (the "**Bar Date Motion**") seeking entry of an order (i) establishing deadlines by which creditors must file proofs of claim in the Chapter 11 Cases and (ii) approving the form and manner of noticing such deadlines. The Debtors extended the Bar Date Motion's objection deadline for certain parties. Main D.I. 1230. Ultimately, the Debtors received, and resolved, one formal reservation of rights [Main D.I. 1189] from the Ad Hoc Group of Litigation Creditors as well as informal comments

[5] At the March 2, 2022 hearing, the Court also left open the claims of certain Group 4a claimants as to whom certain factual issues remained to be determined. The Reorganized Debtor reserves the right to submit further briefing on those claimants when appropriate.

from 10 additional parties, including the Official Committee of Unsecured Creditors and other creditor constituencies. *See* Main D.I. 1230. Claimants are all represented by counsel who received notice of the Bar Date Motion and did not object.

9. On September 9, 2020 the Court entered the *Order Establishing Bar Dates and Related Procedures for Filing Proofs of Claim, Including Claims Arising Under Section 503(b)(9) of the Bankruptcy Code, and Approving the Form and Manner of Notice Thereof* [Main D.I. 1240] (the "**Bar Date Order**"). That same day, the Debtors filed the *Notice of Deadlines for Filing Proofs of Claim, Including Claims Arising Under Section 503(b)(9) of the Bankruptcy Code Against Debtors* [Main D.I. 1243] (the "**Bar Date Notice**").

10. The Bar Date Order and Bar Date Notice established, among other things, October 21, 2020 at 5:00 p.m. (prevailing Eastern Time) as the deadline to file proofs of claim in the Chapter 11 Cases for persons or entities (except governmental units (as that term is defined in section 101(27) of the Bankruptcy Code)) (the "**General Bar Date**"). Claimants' counsel filed proofs of claim on behalf of Groups 1 and 2 before the General Bar Date, as well as multiple proofs of claim on behalf of anticipated future "unknown claimants."

11. On June 10, 2021 (the "**Confirmation Date**"), the Court entered the *Order (i) Confirming Second Modified Third Amended Joint Chapter 11 Plan of Reorganization of The Hertz Corporation and its Debtor Affiliates and (ii) Granting Related Relief* [Main D.I. 5261] (such underlying chapter 11 plan, together with the Plan Supplement (as defined therein), all schedules, and exhibits thereto, the "**Plan**"). On June 30, 2021 (the "**Effective Date**"), the Plan became effective in accordance with its terms and the Debtors became the Reorganized Debtors. *See* Main D.I. 5477.

12. On December 6, 2021, certain Group 3 Claimants filed a motion [D.I. 190], seeking a determination by the Court that 21 proofs of claim filed on behalf of the Group 3 Claimants were timely.[6] Also on December 6, 2021, Claimants filed a similar motion on behalf of the Group 4a Claimants. *See* D.I. 193.

13. At the January 4, 2022 status conference ("**January 4 Status Conference**"), the Court ordered supplemental briefing as to whether the Group 3 Claimants and Group 4a Claimants were "known" creditors. *See* Jan. 4, 2022 Hr'g Tr. at 39:10-20. The Court also directed the Group 4a Claimants to file individualized proofs of claim with accompanying declarations by January 31, 2022. *See id.* at 27:22-28:3.

14. Subsequently, the Group 4a Claimants submitted proofs of claim for all 26 claimants initially disclosed as Group 4 Claimants in December 2021. Between January 14 and the deadline on January 31, Claimants filed an additional 77 proofs of claim on behalf of a new group of Claimants called "Group 4b."

15. In accordance with the Court's instruction from the January 4 Status Conference, on February 14, 2022, the parties submitted their supplemental briefing as to whether the Group 3 and Group 4a claimants were known creditors ("**February 14 Briefing**"). *See* D.I. 351, 352.

16. On March 2, 2022, the Court held a hearing regarding whether 34 claimants in Group 3 and Group 4a were known creditors ("**March 2 Hearing**"). Because the Reorganized Debtor had not yet had sufficient time to review and collect records relating to the 77 claimants in Group 4b, no ruling was made with respect to those claimants.

---

[6] After the Court required claimants to file individualized proofs of claim, nine of the original 29 Group 3 Claimants—nearly one-third—ultimately abandoned their purported claims.

17. Following the March 2 Hearing, the parties conferred and reached an agreed schedule on March 22, 2022 ("**March 22 Scheduling Order**"), whereby the Reorganized Debtor would provide Claimants with a list of Group 4b claimants that it contended were unknown creditors and then produce discovery relating to those claimants. *See* D.I. 433. The parties later revised that schedule. D.I. 439.

18. On May 7 and 8, 2022, Claimants purported to amend the proofs of claim for four Group 4b Claimants: Marc Bednarczyk, Daydan Carter, Evan Tanner and William West (the "**Amending Claimants**"). These purported amendments were made almost four months after the proofs of claim were filed.

## ARGUMENT

### I. Group 4b Claimants That Claimants Concede Were "Unknown"

19. On May 17, 2022, Claimants informed the Reorganized Debtor that they would not dispute that the below 21 Claimants were "unknown" creditors. Accordingly, the Reorganized Debtor submits that no argument with respect to these Claimants is necessary:

    i.    Blagoja Bakrevski

    ii.    Adriane Beamon

    iii.    Benita Bridges

    iv.    Dajanae Bridges (for minor child K.F.)

    v.    Shayla Colbert

    vi.    Tawana Cole

    vii.    Zantavia Franklin

    viii.    Tanya Funderburk

    ix.    Emmah McCoy

    x.    Kimberly McCoy

    xi. Kimberly McCoy (for minor child S.M.)

xii. Savanah McCoy

xiii. Travis McCoy

xiv. Aujaneik Moss

xv. Brandy Porter

xvi. Brandy Porter (for minor child M.P.)

xvii. Darlene Sacca

xviii. Ramie Singer

xix. Zachary Tedder

xx. Elbert Turpen

xxi. Larry Wilcoxson

20. As to each of these Claimants, the Reorganized Debtor reserves all rights and objections to any and all of their claims.

## II. Group 4b Claimants That the Reorganized Debtor Contends Were "Unknown" Based on the Court's Ruling at the March 2 Hearing

21. Based on the Court's rulings at the March 2 Hearing, as well as a review of (i) the proofs of claim submitted by the Amending Claimants and (ii) the Reorganized Debtor's books and records, the Amending Claimants were all "unknown" creditors as of the time they filed proofs of claim.[7]

22. As an initial matter, the Reorganized Debtor objects to the purported amendments to the proofs of claim filed by the Amending Claimants, and respectfully requests that the Court

[7] As with the March 2 Hearing, the Reorganized Debtor treats the allegations in the proofs of claim as true solely for the purpose of the June 2, 2022 hearing regarding whether certain Claimants were "unknown" creditors. The Reorganized Debtor disputes the allegations in the proofs of claim and reserves the right to challenge those allegations on the merits when appropriate.

disregard those amendments as failing to meet the high standard of "good cause" required to amend claims after the effective date. *See In re NextMedia Group Inc.*, 2011 WL 4711997, at *3 (D. Del. Oct. 6, 2011) ("While it is not impossible to amend a claim after a plan of organization has been confirmed and rendered effective, a party must generally show good cause to do so.") (citation omitted). Here, the proofs of claim were already filed after the Effective Date of the Debtors' Plan, and the amendments were made almost four months later, on the eve of the briefing deadline on this issue. Claimants have not stated any reason why they could not have included this information when the proofs of claim were filed. Indeed, these amendments were plainly made to shoehorn the proofs of claim into the Court's March 2 Rulings. This is not a legitimate basis for an amendment, much less "good cause."

i. **Marc Bednarczyk.** According to the declaration attached to his proof of claim (which seeks $620,000), Mr. Bednarczyk rented a vehicle from Hertz in November 2020 and was subsequently arrested and detained as a result of a theft report filed by Hertz months after the rental car was due. Claim No. 15921, PDF ¶¶ 3, 11-13. Mr. Bednarczyk's declaration lacks any allegations that he informed Hertz of his alleged arrest or detainment, or otherwise communicated with Hertz in a way that would have put Hertz on notice of his claim. Mr. Bednarczyk simply assumes that Hertz would have had notice of his claim "[b]ased on the fact that Hertz [was] the alleged victim" in his criminal case and would have been "expected to work with prosecutors," such that the prosecutors would have eventually informed Hertz that there was "no basis to proceed" with the case. *Id.* at ¶ 17. These conclusory and unsupported allegations of notice fall well short per this Court's prior rulings. As this Court has held, generalized assumptions like these about Hertz's knowledge do not put Hertz on actual notice that Mr. Bednarczyk would assert malicious prosecution or false arrest claims, because they do not establish any contact

between Mr. Bednarczyk and Hertz that could alert Hertz to any such claim. *See* Mar. 2, 2022 Hr'g Tr. at 53:18-22 ("[I]n the absence of contacts from a creditor, alerting the debtor to the fact that they had a claim of false and malicious prosecution, false arrest, in the absence of that evidence, I cannot find that they were a known creditor…."). Likewise, the fact that Mr. Bednarczyk's rental vehicle was allegedly towed by a repossession service (Claim No. 15921, PDF ¶ 9) does not mean that Hertz had notice that Mr. Bednarczyk could potentially bring malicious prosecution and false arrest claims against Hertz in connection with his overdue rental.[8]

On May 17, 2022, Mr. Bednarczyk purported to amend his proof of claim to add an allegation that he told "Tamara Walker by phone, whom I understood to work for Hertz in claims . . . that I had been falsely arrested over this rental." The Reorganized Debtor objects to these purported amendments, which were made almost four months after Mr. Bednarczyk filed his proof of claim, and which are clearly geared toward adding facts that fit with the Court's March 2 Rulings. Mr. Bednarczyk also seeks to add two emails to his proof of claim: one from February 2021, in which he claims to recount a conversation with a Hertz employee regarding his inability to return his rental car on time, and another from April 2021, in which he received a receipt for his rental from Ms. Walker. These emails do not show Mr. Bednarczyk telling any Hertz employee about his alleged false arrest, and thus do not support his untimely and improper addition to his declaration. To the contrary, in the April 2021 email—which occurred after his arrest—Mr. Bednarczyk tells Ms. Walker, "I really appreciate your excellent customer service going the

[8] The Reorganized Debtor's records reflect that Mr. Bednarczyk extended his rental only once, resulting in a due date of November 20, 2020 for his rental vehicle. HERTZ_FPRP_0003070. After Mr. Bednarczyk failed to return the vehicle by that date, Hertz attempted to communicate with him by phone call, text message, and certified letter to inform him that his rental was overdue and needed to be returned. *Id.* Mr. Bednarczyk failed to respond to any of Hertz's attempted contacts and never returned the vehicle voluntarily. By the time Hertz finally recovered the vehicle, it had been out of Hertz's possession for over 100 days. *Id.* at 3068. The Debtors will provide the discovery cited in this brief to the Court upon request.

extra mile for your customer. Thank you very much, Tamara." Mr. Bednarczyk does not explain what about this communication was supposed to notify Ms. Walker that Mr. Bednarczyk intended to sue Hertz.

ii. **Daydan Carter.** Based on the declaration attached to his proof of claim (which seeks almost $2 million), Mr. Carter rented a vehicle from Hertz in November 2019, but was arrested and detained on February 2, 2020 as a result of a theft report filed by Hertz. Claim No. 15935, PDF ¶¶ 3-4, 9. Mr. Carter's declaration lacks any allegations that he ever informed Hertz of his arrest or detainment, or otherwise communicated with Hertz in a way that would have put Hertz on notice of his claim. He instead concludes that Hertz would have had notice of his claim since "Hertz had reported Dayden for theft but [knew] as the alleged victim that no case was being pursued." *Id.* ¶ 23. These allegations do not allege any contact between Mr. Carter and Hertz putting Hertz on notice of a potential claim, and under the Court's prior ruling do not render Mr. Carter a known creditor. *See* Mar. 2, 2022 Hr'g Tr. at 53:18-22.[9]

On May 18, 2022, Mr. Carter purported to amend his proof of claim to add allegations that he spoke with an unidentified Hertz employee and left two voicemails with Vehicle Control, asking "why the company had done this" and "describ[ing] that I had been wrongly arrested." These allegations, even if true, are insufficient to make Mr. Carter a "known" creditor, as neither Mr. Carter's alleged conversation with the unidentified Hertz employee nor his alleged voicemails with the Vehicle Control department provided notice to Hertz that Mr. Carter intended

[9] The Reorganized Debtor's records reflect that Mr. Carter extended his rental only once, on November 11, 2018, and that his rental was due back to Hertz on November 16, 2018. HERTZ_FPRP_0002870-72. When Mr. Carter did not return the vehicle by that date, Hertz made multiple attempts to inform Mr. Carter his rental was overdue, including 12 calls, 5 text messages, 5 emails, and a certified letter. *Id.* at 2872-73, 84. Mr. Carter even acknowledges in his declaration that he received voicemails from Hertz stating that the car was overdue. Claim No. 15935, PDF ¶ 6. Yet, Mr. Carter did not respond to those attempts or return the overdue vehicle. HERTZ_FPRP_0002872=73. Accordingly, Hertz reported the vehicle as stolen on January 18, 2019—when it was 63 days overdue. HERTZ_FPRP_0002870.

to assert a litigation claim against Hertz. Indeed, nowhere in these new allegations does Mr. Carter mention the words "claim," "litigation," or "lawsuit."

iii. **Evan Tanner.** As alleged in the declaration attached to his proof of claim (which seeks more than $1.6 million), Mr. Tanner rented a vehicle from Hertz in November 2020. Per that declaration, Mr. Tanner's only contacts with Hertz related to the payments he owed Hertz for the rental. *See* Claim No. 15936, PDF ¶ 10 ("Then, in late February 2021, his card was charged around $2,700. He called Hertz many, many times."). These communications, which concerned Mr. Tanner's billing dispute with Hertz, did not put Hertz on notice for his arrest or prosecution. *See* Mar. 2, 2022 Hr'g Tr. at 72:1-4 ("[C]ommunications with respect to having paid the rental, etc., and the dispute about whether or not amounts were due is not sufficient to put the debtor on notice [of] a claim for malicious prosecution, etc."). Outside of these insufficient communications pertaining to his supposed overcharge for the rental vehicle, Mr. Tanner's declaration does not allege any other way for Hertz to be on notice of his claim, and therefore, Mr. Tanner was not a known creditor.[10]

On May 17, 2022, Mr. Tanner purported to amend his proof of claim to add a declaration from his criminal defense attorney recounting a purported conversation between a corrections officer and Hertz. The non-party declaration that Mr. Tanner purports to submit is inadmissible hearsay within hearsay, as it purports to report a summary of a conversation in which the non-party declarant did not participate. *See Carden v. Westinghouse Elec. Corp.*, 850 F.2d

[10] The Reorganized Debtor's records reflect that Mr. Tanner's rental was due back to Hertz on October 9, 2020. HERTZ_FPRP_0002893. When Mr. Tanner refused to return the vehicle back on time, Hertz called Mr. Tanner 14 times to inform him that his car was overdue, but Mr. Tanner ignored all of Hertz's attempts to reach him. *Id.* at 2895-96. By the time that Hertz reported the vehicle as stolen to law enforcement, it was 119 days overdue. *Id.* at 2893. Mr. Tanner continued to use the vehicle for another month after Hertz reported it as stolen.

996, 1002-03 (3d Cir. 1988) (excluding plaintiff's testimony relaying conversation between third party and unidentified interlocutor as inadmissible double hearsay). Accordingly, this double-hearsay, non-party declaration is not evidence, and the Court should disregard it.

iv. **William West.** According to the declaration attached to his proof of claim (which seeks over $4.2 million), Mr. West rented a vehicle from Hertz in "late July 2016" in Philadelphia, and was later arrested in his Hertz rental in November 2016. Claim No. 15847, PDF ¶¶ 3, 6-11. Yet, Mr. West does not state that he contacted Hertz after his arrest about any claim. Moreover, he does not allege that Hertz was on notice of any claim. Instead, Mr. West claims that "Hertz knew during the over two years of prosecution that maintaining the charges against William was baseless." *Id.* at ¶ 16. But this conclusory assertion about what Hertz "knew"—which is not based on a single contact by Mr. West—does not make Mr. West a known creditor pursuant to this Court's rulings because it "has to be based on communications that the creditor had with the debtor sufficient to show they were asserting a claim." Mar. 2, 2022 Hr'g Tr. at 47:22-24. Additionally, the Reorganized Debtors have located no documents relating to a rental by Mr. West in Philadelphia in 2016.

On May 17, 2022, Mr. West purported to amend the declaration submitted with his proof of claim to change the alleged date of his rental and add allegations that "a Hertz employee," whom Mr. West does not name or identify beyond calling him "a middle-aged, white, male, approximately 5'10" and of medium build," was allegedly present when charges against Mr. West were dismissed. This allegation, even if true, is insufficient to make Mr. West a "known" creditor, as a low-level employee's attendance at a hearing does not constitute Hertz receiving notice of Mr. West's intention to assert a litigation claim, nor does it relieve Mr. West of his affirmative obligation to provide such notice to Hertz rather than expecting Hertz to infer it from

circumstances. Additionally, Hertz has searched its books and records regarding Mr. West and has not identified a record of a Hertz employee attending a hearing in connection with his criminal case.

**III. Group 4b Claimants That the Reorganized Debtor Respectfully Contends Were "Unknown" Despite the Court's March 2 Rulings**

23. For the reasons identified below, the Reorganized Debtor respectfully submits that each of these Claimants was an "unknown" creditor, and objects to these Claimants' claims as time-barred:

| POC No. | Claimant | Reason for "Unknown" Status[11] |
|---|---|---|
| 15837 | Patrick Andrews | Insufficient Contacts |
| 15888 | Cody Breedlove | Insufficient Contacts |
| 15909<br>15917 | Lisa Brower and Amir Thomas | Passenger (Thomas)<br>Pled guilty (both)<br>Insufficient Contacts |
| 15940 | Abraham Carmichael | Insufficient contacts |
| 15801 | Faristina Collins | Likely time-barred (2014 theft) |
| 15931 | Adam Cuevas | Insufficient Contacts |
| 15853<br>15857<br>15863 | Angela Delafontaine, Jose Montiero, and minor G.M. | Passenger (Montereio and G.M.)<br>Insufficient contacts |
| 15764<br>15765<br>15766 | Bianca Deloach and minors A.P and C.P. | Insufficient contacts<br>Passengers (for minors) |
| 15933 | Lakeshia Dowlen | Insufficient Contacts |
| 15802 | Iasia Eaves | Insufficient contacts |
| 15941 | Howard English | Insufficient Contacts |
| 15926<br>15929<br>15930 | Melanie Evans and minors N.E. and N.E. | Likely time-barred (2013 theft) |
| 15923 | Antwanette Hill | Insufficient Contacts |
| 15922 | Raynard Hill | Insufficient Contacts |
| 15918<br>15919 | Celita James and Franklin Richards | Passenger (James)<br>Insufficient Contacts |
| 15914 | Casey Krupjuweit | Insufficient Contacts |
| 15873 | Saleema Lovelace | Insufficient Contacts |

[11] Each of these reasons for "unknown" status and the supporting law is explained in more detail in the Debtors' brief regarding "unknown" Group 4a Claimants. *See* D.I. ¶ 364.

| POC No. | Claimant | Reason for "Unknown" Status[11] |
|---|---|---|
| 15828<br>15862<br>15867 | Anne Maha and minors A.J. and A.J. | Passengers (for the three minors)<br>Pled Guilty (Maha)<br>Insufficient Contacts |
| 15798 | Charles Malone | Insufficient contacts |
| 15875 | Sophia Ortiz | Pled Guilty<br>Insufficient Contacts |
| 15835<br>15839 | Amber Rather and Samantha Simpson | Passenger (Rather)<br>Pled Guilty (Simpson)<br>Insufficient Contacts |
| 15882 | Jason Reeder | Insufficient Contacts |
| 15794 | Ammerah Singleton | Likely time-barred (2014 theft) |
| 15874 | Latricia Taylor | Insufficient Contacts |
| 15891 | Jamol Toney | Insufficient contacts |
| 15893 | Connie Totman | Insufficient Contacts |
| 15808 | Jennifer Weems | Insufficient contacts |
| 15905 | Tiffiany West | Insufficient Contacts |
| 15795 | Anson Westerfield | Insufficient contacts |
| 15898 | Monique Wheeler | Insufficient Contacts |
| 15903 | Jeric Wilson | Insufficient Contacts |
| 15799 | Duni Zenaye | Insufficient contacts |

24. With respect to each of these Claimants, whether it is necessary for the Reorganized Debtor to press its objection depends on how the Court rules on the substantive relief that each of these Claimants is currently seeking. If the Court were to rule that each of these creditors, to the extent determined or agreed to be "known," was relieved from the Bar Date but nonetheless remains in the claims process, that would be one thing. But, as the Court is aware, Claimants are advancing the argument that all of these Claimants are relieved from any obligation to liquidate their claims in an orderly process under this Court's jurisdiction, in accordance with the Plan and applicable bankruptcy law. Moreover, Claimants advance this argument in spite of the fact that (i) they have all filed proofs of claim and (ii) they have all sought substantive relief from this Court, including, among other things, serving discovery on the Reorganized Debtor regarding their claims

and moving to compel responses to that discovery.[12] Accordingly, while the Reorganized Debtor does not presently press its objections to these Claimants, if the Court determines that the consequence of these Claimants being deemed "known" creditors is that they are completely untethered from the bankruptcy claims process, then the Reorganized Debtor reserves the right to advance and supplement its objections.

## CONCLUSION

WHEREFORE the Reorganized Debtor respectfully requests that the Court rule that the claimants discussed herein are "unknown" creditors and grant such other and further relief as it deems just and proper.

[*Remainder of Page Left Intentionally Blank*]

[12] This is true of all Claimants, including those Claimants whose claims the Reorganized Debtor does not challenge as untimely.

Dated: May 20, 2022

*/s/ Robert J. Stearn, Jr.*

**RICHARDS, LAYTON & FINGER, P.A.**
Mark D. Collins (No. 2981)
Robert J. Stearn, Jr. (No. 2915)
John H. Knight (No. 3848)
Cory D. Kandestin (No. 5025)
J. Zachary Noble (No. 6689)
One Rodney Square
920 N. King Street
Wilmington, DE 19801
Telephone: (302) 651-7700
Facsimile: (302) 651-7701
Collins@rlf.com
Stearn@rlf.com
Knight@rlf.com
Kandestin@rlf.com
Noble@rlf.com

—and—

**WHITE & CASE LLP**
Thomas E Lauria (admitted *pro hac vice*)
Matthew C. Brown (admitted *pro hac vice*)
Cecilia Walker (admitted *pro hac vice*)
200 South Biscayne Boulevard, Suite 4900
Miami, FL 33131
Telephone: (305) 371-2700
tlauria@whitecase.com
mbrown@whitecase.com
cecilia.walker@whitecase.com

J. Christopher Shore (admitted *pro hac vice*)
David M. Turetsky (admitted *pro hac vice*)
Samuel P. Hershey (admitted *pro hac vice*)
1221 Avenue of the Americas
New York, NY 10020
Telephone: (212) 819-8200
cshore@whitecase.com
david.turetsky@whitecase.com
sam.hershey@whitecase.com

Jason N. Zakia (admitted *pro hac vice*)
Laura E. Baccash (admitted *pro hac vice*)
111 South Wacker Drive
Chicago, IL 60606
Telephone: (312) 881-5400
jzakia@whitecase.com
laura.baccash@whitecase.com

Ronald K. Gorsich (admitted *pro hac vice*)
Aaron Colodny (admitted *pro hac vice*)
Doah Kim (admitted *pro hac vice*)
555 South Flower Street, Suite 2700
Los Angeles, CA 90071
Telephone: (213) 620-7700
rgorsich@whitecase.com
aaron.colodny@whitecase.com
doah.kim@whitecase.com

*Co-Counsel to the Reorganized Debtor*