**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| RENTAL CAR INTERMEDIATE | ) | Case No. 20-11247 (MFW) |
| HOLDINGS, LLC, | ) | |
| | ) | |
| Reorganized Debtor. | ) | Rel. Docs. 190, 193, 214, |
| | ) | 228, 296, 332, 351, 352, 378, |
| | ) | 472, 502, 503, 505, 528 |

### MEMORANDUM OPINION IN SUPPORT OF ORAL RULINGS[1]

The Court issues this written opinion in support of oral rulings it made on March 2, June 2, and June 22, 2022, granting in part the motions of the False Police Report Claimants (collectively, the "FPR Claimants") to deem certain claims timely filed,[2] and to allow relief from the confirmation order other FPR Claimants,[3] and denying, in related part, the Reorganized Debtor's Motion for Additional Discovery Regarding Allegedly "Known" Creditors (the "Debtors' Discovery Motion").[4]

## I.   BACKGROUND

The Hertz Corporation and its affiliates were a global rental car enterprise that filed voluntary chapter 11 petitions on May 22, 2020, as a result of the devastating effects the

---

[1]   This Memorandum Opinion constitutes the findings of fact and conclusions of law of the Court pursuant to Rule 7052 of the Federal Rules of Bankruptcy Procedure, which is made applicable to contested matters by Rule 9014(c).

[2]   D.I. 190.  "D.I" refers to the docket index of the above captioned case.  "Main D.I." refers to the docket index of In re The Hertz Corp., Case No. 20-11218 (MFW) (Bankr. D. Del.).

[3]   D.I. 193 & 332.

[4]   D.I. 472.

COVID-19 pandemic had on their business.[5]  On September 9, 2020, the Court entered an Order setting October 21, 2020, as the bar date for the filing of pre-petition claims (the "Bar Date").[6] The Debtors filed a plan of reorganization (the "Plan") which provided for payment in full of all allowed claims.[7]  The Court confirmed the Plan on June 10, 2021.[8]  Upon consummation of the Plan, the Court closed all the Debtors' chapter 11 cases except for the case of Rental Car Intermediate Holdings, LLC (the "Reorganized Debtor"), which was left open to deal with the resolution of disputed claims and other administrative matters.[9]

The FPR Claimants assert that they have claims against the Debtors for damages they suffered when the Debtors filed false police reports accusing them of auto theft despite having paid in full for their rental cars.  The Debtors contest the validity of the FPR Claims.  The FPR Claimants have been categorized according to when they first appeared in the bankruptcy case. Groups 1 and 2 FPR Claimants filed timely claims in the chapter 11 case, which claims are currently being administered in accordance with the claims resolution procedures of the Plan and

---

[5]     Main D.I. 1 & 28.

[6]     Main D.I. 1240 & 1243.  In chapter 7 cases, the bar date for filing claims is 70 days after the petition is filed.  Fed. R. Bankr. P. 3002(c).  In chapter 11 cases, the Court sets an appropriate bar date upon motion of the debtor.  Id. 3003(c)(3).

[7]     Main D.I. 5178.

[8]     Main D.I. 5261.

[9]     D.I. 9.

the Bankruptcy Code and Rules.[10]  Group 3 FPR Claimants filed
claims after the Bar Date, but before confirmation of the Plan,
and seek relief from the Bar Date to pursue allowance of their
claims in the bankruptcy case.[11]  Group 4 FPR Claimants first
appeared in the case after confirmation and seek relief from the
Plan injunction to pursue their claims in non-bankruptcy
forums.[12]

Early in the case, as the FPR Claims began to be filed, many
of the Claimants filed motions for relief from the stay and for
discovery, which motions the Debtors opposed.[13]  At the August
18, 2021, hearing regarding the lift stay motions, the Debtors
suggested that many of the FPR Claims could be resolved
expeditiously on procedural bases pursuant to the bankruptcy
claims process.[14]  The Court agreed that it had jurisdiction to
determine such procedural (non-substantive) issues.[15]

As a result, the Debtors filed their 21st and 22nd Omnibus
Objections asserting, _inter alia_, that many of the FPR Claims
were untimely.[16]  The FPR Claimants asserted that the claims
were, or should be deemed, timely for numerous reasons.  It was
agreed that the FPR Claimants would file Motions articulating

---

[10]    D.I. 50, at ¶¶ 22 & 24.
[11]    _Id._ at ¶ 24.
[12]    D.I. 193, 332, & 545, at *55.
[13]    Main D.I. 589, 762, 893, 894, 1038, 1073, 1257, 1266, 2593,
2848, 4322, 4616, 5656, 5687, 5703, 5744, 5875.
[14]    Main D.I. 5744, at *20:12-21:24.
[15]    _Id._ at *61:9-62:17.
[16]    Main D.I. 5898 & 5899.

those arguments.[17]

The Group 3 FPR Claimants subsequently filed a Motion on December 6, 2021, arguing, <u>inter alia</u>, that holding the Group 3 Claims untimely filed would violate those FPR Claimants' due process rights because they were known creditors who had not received actual notice of the Bar Date or, even if they were unknown creditors, the Debtors' publication notice was insufficient.  Alternatively, the Group 3 FPR Claimants contended that their claims should be deemed timely filed under the excusable neglect standard.[18]  The Debtors responded on December 29, 2021, arguing that the FPR Claimants were not known creditors and had received appropriate notice by publication.[19] Consequently, the Debtors asserted that the claims of the Group 3 FPR Claimants should be disallowed as untimely.

The Group 4 FPR Claimants filed Motions on December 6, 2021, and February 7, 2022, seeking relief from the Confirmation Order and Plan injunction on the same due process grounds and, alternatively, seeking authority to file late claims under the <u>Pioneer</u> standard.[20]  The Debtors opposed the Group 4 Motions on the same bases as it opposed the Group 3 Motions.[21]

---

[17]    D.I. 109, at *61:9-62:17.
[18]    D.I. 190, at ¶ 59.  <u>See</u> <u>Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship</u>, 507 U.S. 380, 395 (1993).
[19]    D.I. 214.
[20]    507 U.S. at 395; D.I. 193, at ¶¶ 57-112 & D.I. 332, at ¶¶ 26-76, 81-87.
[21]    D.I. 296 & 378.

At a status conference held on November 4, 2021, on the issues underlying the Motions and Claims Objections, the Court agreed with the Debtors that the dispute should proceed in stages, with the first issue to be litigated whether specific FPR Claimants could present sufficient evidence of pre-petition contacts they had with the Debtors about their false arrest claims to make them known creditors entitled to actual notice in the bankruptcy case (the "Individual Contacts Issue").[22]  At the January 4, 2022, status conference, the Court confirmed this procedure and directed the parties to file supplemental declarations and briefs on the Individual Contacts Issue, including proofs of claim with declarations explaining the basis of the assertion that they were known creditors.[23]

Accordingly, on February 14, 2022, the parties filed simultaneous supplemental material and briefs on the Individual Contacts Issue.[24]  In their briefs, the Debtors dropped their

---

[22]    D.I. 109, at *18:5-25:17, *30:11-40:21, *42:19-48:17, *50:14-52:18, *58:19-61:8, *61:9-62:17.
    If the Court determined that the FPR Claimants did not submit evidence of contacts sufficient to make the Debtors aware that they had a claim, the Court would consider the FPR Claimants' request for discovery related to their other arguments, including their allegations that there were systemic problems with the Debtors' procedure for reporting thefts of rental cars such that the Debtors should have known that they were falsely reporting car thefts which resulted in numerous renters suffering damages.  D.I. 109, at *58:19-61:8 & D.I. 251, at *30:10-32:4.
[23]    D.I. 251, at *28:1-30:6 & *39:10-22.
[24]    D.I. 351 & 352.

timeliness objection to 12 FPR Claimants.[25]  These FPR Claimants
are listed on Exhibit A attached hereto and on the Appendices to
the Order accompanying this Opinion.

On March 2, 2022, the Court held an evidentiary hearing.  By
stipulation, the underlying proofs of claim, including the
attached declarations and exhibits, as well as the Fluehr,
Marasco, and Hershey Declarations were admitted into evidence,
for the purposes of that hearing only.[26]  Based on that evidence,
and the argument of the parties, the Court ruled that some of the
FPR Claimants had presented sufficient evidence of contacts that
they had with the Debtors pre-petition to make them known
creditors, while others had not.[27]   The Court continued the
hearing for other Group 4 FPR Claimants to permit the Debtors to
review the information recently produced by those Claimants.

In accordance with an approved Joint Scheduling Stipulation,
the parties simultaneously filed supplemental briefing on May 20,
2022, on the Individual Contacts Issue with respect to the
continued Group 4 FPR Claimants and on the effect of any
determination that the FPR Claimants in Groups 3 and 4 were known
creditors.[28]  In their brief, the Debtors did not press their
objection to 52 of the FPR Claimants, whom they determined would

---

[25]    D.I. 352, at ¶ 49.
[26]    D.I. 413, at *16:10-17:25.
[27]    The prevailing FPR Claimants are listed on Appendices A and
B to the Order issued contemporaneously herewith.
[28]    D.I. 439, 502, 503, 505, & 528.

be held to be known creditors under the standard articulated by
the Court in its March 2 Ruling, but the Debtors reserved their
right to appeal the issue of whether the Court used the correct
standard.[29]  Those 52 FPR Claimants are listed on Exhibit B
hereto and on the Appendices to the Order accompanying this
Opinion.

In their supplement, the FPR Claimants conceded that,
applying the Court's standard, 21 FPR Claimants would not be
determined to be known creditors on the evidence presented to
date, but reserved their right to present further evidence (after
full discovery) and to argue their other grounds for relief.[30]

On June 2, 2022, the Court held an evidentiary hearing to
consider the evidence presented by four Group 4 FPR Claimants on
the Individual Contacts Issue and the argument of the parties on
the effect of any finding that FPR Claimants were known
creditors.[31]  The Court ruled that three of the FPR Claimants had
presented sufficient evidence of their pre-petition contacts with
the Debtors to make them known creditors entitled to actual
notice of the bankruptcy case, as discussed more fully below.[32]
The Court also ruled at the June 2 hearing on the legal effect of
finding that an FPR Claimant was a known creditor.  In that

---

[29]    D.I. 502, at ¶¶ 6-7 & D.I. 545, at *59:25-60:19.
[30]    D.I. 502 at ¶ 1.
[31]    D.I. 545, at *68:11-69:22.
[32]    D.I. 545, at *75:2-20, *79:8-17, *89:13-21.  The prevailing
FPR Claimants are listed on Appendices A and B to the Order
issued contemporaneously herewith.

regard, the Court held that known Group 3 FPR Claimants were entitled to the primary relief sought in their Motions, namely, to have their claims considered in the Bankruptcy Court notwithstanding that they were filed after the Bar Date, because by filing those claims they had consented to the jurisdiction of the Bankruptcy Court.[33]  The Court further ruled that known Group 4 FPR Claimants were entitled to the primary relief requested in their Motions, namely, to be relieved of the Plan Injunction, because they had not received actual notice and had not subjected themselves to the Court's jurisdiction for the purposes of determining their claims.[34]

On June 22, the Court held a further hearing to consider the limited legal issue of whether the Debtors' publication notice was facially deficient pursuant to sections 342(c) and (g) of the Bankruptcy Code and Rule 2002 of the Federal Rules of Bankruptcy Procedure.  At the conclusion of the argument, the Court held that the Debtors' publication notice was not deficient under those sections or that Rule.[35]

---

[33]    D.I. 545, at *54:8-58:19.

[34]    Id.  To be clear, to date the Court has determined only procedural issues relating to the FPR Claims and made no decision on the merits of any claim.  Nor did the Court determine that any of the FPR Claimants was an unknown creditor, even if there was insufficient evidence of Individual Contacts.  The Court has not yet considered the FPR Claimants' other due process arguments, including the alleged systemic problems with the Debtors' policies for reporting stolen vehicles, the alleged deficiency of the publication notice (other than under sections 342(c) and (g) and Rule 2002), or the excusable neglect argument.

[35]    D.I. 584, at *30:16-31:19.

After the hearings, the parties filed competing forms of order to reflect the Court's various rulings. Because the Parties dispute what was decided and the likelihood of an appeal on the issues, the Court takes the opportunity to clarify herein the oral rulings it made on March 2, June 2, and June 22, 2022.

## II.   JURISDICTION

The Court has subject matter jurisdiction over the instant proceedings.[36] They are core proceedings because they relate to allowance of claims against the estate or to the effect of the discharge of debt under the Debtors' confirmed Plan.[37] Therefore, the Third Circuit's concerns regarding "related to" jurisdiction after confirmation are not implicated in the instant case.[38]

The Debtors contended that the Court has jurisdiction over their objections to the FPR Claims.[39] Although the FPR Claimants contested the Court's jurisdiction over the merits of their claims, they agreed that the Court has jurisdiction over the Debtors' procedural objections to their claims and over their Motions to file late claims and for relief from the Plan injunction. Thus, the FPR Claimants consented to the Court's

---

[36]   28 U.S.C. §§ 1334 & 157(b)(1).

[37]   Id. § 157(b)(2)(B) & (I).

[38]   See Binder v. Price Waterhouse & Co., LLP (In re Resorts Int'l, Inc.), 372 F.3d 154, 164-65 (3d Cir. 2004).

[39]   Main D.I. 5898, at ¶ 2; D.I. 472, at ¶ 8.

entry of an order on those limited matters.[40]  Therefore, the
Court had jurisdiction to decide the issues it did.[41]


III. DISCUSSION

   A.   Known Creditor Standard

   Due process requires "notice reasonably calculated, under
all the circumstances, to apprise interested parties of the
pendency of the action and afford them an opportunity to present
their objections."[42]  In the bankruptcy context, the Third
Circuit has held that to satisfy due process notice requirements,
"[k]nown creditors must be provided with actual written notice,"
while for "unknown" creditors, "notification by publication will
generally suffice."[43]

   A creditor is a known creditor if it is either "[actually]
known or 'reasonably ascertainable by the debtor.'"[44]  A creditor

---

[40]   D.I. 190, at ¶ 5 n.5, D.I. 193, at ¶ 4 n.5, & D.I. 332, at ¶ 3 n.11.
[41]   Wellness Int'l Network, Ltd. v. Sharif, 575 U.S. 665, 679 (2015).
[42]   Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 314 (1950) (addressing Fourteenth Amendment's due process clause).
[43]   Chemetron Corp. v. Jones, 72 F.3d 341, 346 (3d Cir. 1995).
[44]   Id. (quoting Tulsa Prof'l Collection Serv., Inc. v. Pope, 485 U.S. 478, 490 (1988) (discussing known creditors in the trusts and estates context)).  The Third Circuit in Chemetron addressed whether the owners of property and their guests were known creditors of the debtor whose operations had contaminated the properties.  72 F.3d at 345.  The Third Circuit rejected the lower court's conclusion that because the claims of those parties were reasonably "foreseeable," they were known creditors.  Id. at 347.  Instead, the Third Circuit concluded that the guests were not "reasonably ascertainable by the debtor" and that even the

is reasonably ascertainable by a debtor if it can be identified

by "reasonably diligent efforts" - and not a "vast, open-ended

investigation."[45]  Ordinarily, this requires a "careful

examination" of "the debtor's own books and records."[46]

Nevertheless, the circumstances of a case may warrant that the

inquiry extend beyond the debtors' books and records.[47]  The

---

owners of adjacent property were not "reasonably ascertainable"
creditors (though their identities could be revealed by title
searches) because the debtor could not determine how far from its
operations those searches needed to be done.  Id. at 348.

[45]  Id. at 346.  See also In re J.A. Jones, Inc., 492 F.3d 242,
250 (4th Cir. 2007) (stating that a creditor is known where they
may be uncovered by reasonably diligent efforts, in view of the
totality of the circumstances); Berger v. Trans World Airlines,
Inc. (In re Trans World Airlines, Inc.), 96 F.3d 687, 690 (3d
Cir. 1996) (finding that a diligent search of the debtors'
records would have uncovered the creditor).

[46]  Chemetron, 72 F.3d at 347.  See also In re Arch Wireless,
Inc., 534 F.3d 76, 81 (1st Cir. 2008) (holding a claim is
reasonably ascertainable where a debtor has "some specific
information that reasonably suggests both the claim for which the
debtor may be liable and the entity to whom he would be liable")
(citing In re Crystal Oil Co., 158 F.3d 291, 297 (5th Cir.
1998)); In re Thomson McKinnon Secs., Inc., 130 B.R. 717, 720
(Bankr. S.D.N.Y. 1991) (holding that a creditor was known where
its payment for and lack of receipt of the debtor's goods were
reflected in the debtor's records).

[47]  Chemetron, 72 F.3d at 347 n.2 (rejecting caselaw which
limited a court's consideration to whether the creditor was
listed in the debtor's books and records and acknowledging that
"[s]ituations may arise when creditors are 'reasonably
ascertainable,' although not identifiable through the debtor's
books and records") (internal citations omitted); In re Weiand
Auto. Indus., 612 B.R. 824, 845-51 (Bankr. D. Del. 2020)
(declining to enter summary judgment that creditors were unknown
despite evidence that they were not in debtor's books and records
because there was still a question whether, "[o]utside of the
context of books and records [the debtor] 'ha[d] specific
information related to an actual injury suffered by the
creditors.'") (citing In re Placid Oil Co., 753 F.3d 151, 156
(5th Cir. 2014)).

claim does not have to be admitted by the debtor; it need only be a potential claim because even the holder of a disputed claim is entitled to notice and an opportunity to file and prove its claim in a bankruptcy case.[48]

In contrast, an unknown creditor's interest is "either conjectural or future, or, although [it] could be discovered upon investigation, do[es] not in due course of business come to knowledge of the debtor."[49]

### 1.   Preliminary Issues

Before considering the evidence presented by the FPR Claimants of their Individual Contacts, the Court addressed several arguments of the Debtors, which they contended mandated that certain FPR Claimants be determined to be unknown.

### a.   Contacts Not Reflected in Debtors' Records

The Debtors argued that where a contact with a creditor does not appear in its books and records, it should not be considered.[50]  The Debtors asserted that this conclusion is mandated particularly in cases involving a large, consumer-facing debtor, like them, which would have numerous contacts with consumers regarding minor billing disputes and the like.  They

---

[48]   See 11 U.S.C. § 101(5) & (10).  See also Trans World Airlines, 96 F.3d at 690 (finding that creditors who filed a defamation counterclaim to the debtors' suit against them were known creditors).
[49]   Chemetron, 72 F.3d at 346 (quoting Mullane, 339 U.S. at 317).
[50]   D.I. 545, at *8:5-9:23, *63:8-20, & *73:21-74:9.

argued that requiring such a debtor to review its voluminous
records and give actual notice to creditors who had any such
contacts would be impractical.  The FPR Claimants responded that
this is not the law, and that on the evidence they presented, the
individual FPR Claimants had sufficient contacts with the
Debtors, though they may not be reflected in the Debtors'
records, to put the Debtors on notice of their claims.[51]

While the Court considered the Debtors' concerns in its
rulings, it agreed, broadly, with the FPR Claimants as to the
law.[52]  First, the Third Circuit has noted that a creditor may be
a known creditor even if it is not reflected as such in a
debtor's books and records.[53]  The Court believed that this
standard is appropriate because often debtors in financial
distress, who are facing numerous demands on their limited
resources, do not have the most accurate records.  In addition,
the standard articulated by the Debtors could lead to a denial of
due process to creditors if an unscrupulous debtor simply failed
to record any contacts it had with creditors (or buried those

---

[51]   See, e.g, D.I. 190, at ¶ 59 & D.I. 545, at *69:23-71:17
(arguing that Mr. Bednarcyzk was a known creditor based on
communications he had with an independent claims administrator
for the Debtors).

[52]   See, e.g, D.I. 545, at *75:2-20 (ruling that Mr. Bednarcyzk
was a known creditor based, in pertinent part, on his contacts
with the Debtors' independent claims administrator, though the
contacts did not appear in the Debtors' books and records,
because the claims administrator was operating as an agent of the
Debtors and tasked with dealing with claimants such as Mr.
Bednarcyzk).

[53]   Chemetron, 72 F.3d at 347 n.2.

contacts in voluminous records).  Finally, in this case, the

Debtors themselves presented evidence that the number of renters

who were the subject of a false police report was <u>de minimis</u> in

comparison to the total number of its customers and even in

comparison to the total number of police reports it filed.[54]  As

a result, the Court concluded that, in balancing the

practicalities of the case and the mandates of the Bankruptcy

Code, the correct standard to determine if the FPR Claimants were

known creditors was not limited to whether they were reflected as

such in the Debtors' records, but might be established by other

evidence.[55]

b.   <u>No Police Report Filed</u>

The Debtors also argued that the Debtors could not have

reasonably ascertained that two of the FPR Claimants were known

creditors because they did not find any evidence in their books

and records that they had filed a police report against them.[56]

In response, the FPR Claimants did not present any evidence that

_____

[54]   D.I. 214, at ¶¶ 54-55.

[55]   <u>See</u> <u>Chemetron</u>, 72 F.3d at 347 n.2 (declining to adopt an
approach that did not perform "an analysis of the specific facts
of each case" and acknowledging that the inquiry may extend
beyond the debtor's records).  <u>See also</u> <u>In re New Century TRS</u>
<u>Holdings, Inc.</u>, 465 B.R. 38, 47 n.10 (Bankr. D. Del. 2012)
(adding that a Court should also consider "(2) whether the cost
of giving actual notice would consume a disproportionate share of
the debtor's resources, and (3) the obligation of the court to
existing creditors and the debtor's stockholders in light of the
potential delay and the balance of the debtor's resources").

[56]   The Debtors argued that this applied to FPR Claimants
Kimberli Costabile and Britne McClinton.

14

a police report had actually been filed, but instead argued that one <u>must</u> have been filed based on evidence that the Debtors threatened to do so in telephone conversations with them and had prepared a "theft" package which was a preliminary step to making a police report.[57]

The Court held that, where there was no evidence of a police report being filed, the Court could not conclude that the Debtors could have reasonably ascertained that those FPR Claimants had a claim for damages arising from the Debtors filing a false police report.[58]  Therefore, because those FPR Claimants did not present any other sufficient evidence that they advised the Debtors they had claims for false arrest, the Court concluded that those FPR Claimants had not presented sufficient evidence that they were known creditors.

### c.   <u>Pled Guilty or to Deferred Prosecution</u>

The Debtors additionally argued that for FPR Claimants who had pled guilty or entered into deferred prosecution agreements, the Debtors could not have known that the FPR Claimants had been "falsely" arrested.  The FPR Claimants argued that such pleas often arise because of duress or an effort to avoid the expense and risk of jail time.  They argued that this was often exacerbated by the Debtors' refusal to attend hearings or provide

---

[57]   D.I. 354 Ex. L Declaration of Kimberli Costabile, at ¶ 21 & Ex. M Declaration of Britne McClinton, at ¶ 20.
[58]   D.I. 413, at *19:23–21:17.  Those Claimants are Kimberli Costabile and Britne McClinton.

information, in its possession, exonerating the FPR Claimants.

The Court agreed with the FPR Claimants that a guilty plea or an alternative non-adjudicated plea, such as a deferred prosecution agreement, did not per se evidence that the FPR Claimant did not have a claim for false arrest.[59]  Even a guilty plea, without more, did not mean that the FPR Claimants' assertions that they were falsely arrested were incorrect or that they were unknown to the Debtors.[60]  Thus, the Court held that it would consider the FPR Claimants' other evidence that they had put the Debtors on notice that they had a claim for false arrest, notwithstanding any guilty plea or resolution of the arrest other than an acquittal.

### d.   Time-Barred

The Debtors further argued that several of the FPR Claimants' arrests were so old that the Debtors could not have been on notice that the FPR Claimants were known creditors.[61]

---

[59]   D.I. 413, at *35:18-36:6.

[60]   For example, because Edward Sturkie pled into a deferred prosecution program, the charges against him were dropped without adjudication of guilt.  D.I. 354 Ex. R Declaration of Edward Sturkie, Jr., at ¶¶ 12, 14.  Holly Harris and Jeffrey Smith asserted they only pled guilty under duress.  Id. Ex. P Declaration of Holly Harris, at ¶ 21 & Ex. Q Declaration of Jeffrey Smith, at ¶ 14.  Tyresha Caudle pled guilty after the Bar Date, so her guilty plea was irrelevant to the issue of whether the Debtors knew she had a claim as of the date they sent notice of the Bar Date.  Id. Ex. O Declaration of Tyresha Caudle, at ¶ 18.

[61]   The Debtors argued this applied to FPR Claimants Lateshia Jenkins, John Prawat, and Moneck Wallace.  D.I. 354 Ex. H Declaration of Lateshia Jenkins, at ¶ 2 (2005 rental), Ex. I Declaration of John Prawat, at ¶ 2 (2014 rental), & Ex. K

The FPR Claimants responded that the statute of limitations is an affirmative defense to an action that requires further development of fact and legal briefing.  Specifically, they argued that the statute of limitations runs from the time of the alleged malicious prosecution, not from the time of the false arrest and that it may vary depending on the state law applicable to the FPR Claim.

The Court concluded that, while it could rule that any claim asserted beyond the applicable statute of limitations is not a known claim, to do so it would need evidence of whether that defense applied to each specific FPR Claimant.  None was provided.  Therefore, the Court could not rule that any specific FPR Claim was barred on this basis.[62]

### e.   Passengers and Unauthorized Drivers

The Debtors further argued that because their records would not include passengers or unauthorized drivers' names or addresses, they could not reasonably ascertain that such FPR Claimants had a claim against them or be able to provide them with actual notice.[63]  The FPR Claimants responded that even passengers or unauthorized drivers might be known creditors if they had pre-Bar Date contacts with the Debtors sufficient to let

---

Declaration of Moneck Wallace, at ¶ 2 (2011 rental).

[62]   D.I. 413, at *44:19-45:1.

[63]   The Debtors asserted that this precluded the Court from finding that Jason Cook, Darnay Taper, or Kwai Yee Chan were known creditors.

them know that the FPR Claimants had a claim against them.

The Court concluded that being a passenger or unauthorized driver does not, itself, render a creditor unknown if there is evidence that the Debtors were given notice that the person had a claim against them.[64]  Thus, the Court overruled the Debtors' preliminary objection on this point and allowed the FPR Claimants to present evidence of any such contacts.

f.  Supplemental Declarations

Finally, at the June 2 continued hearing to consider evidence of Individual Contacts for an additional four FPR Claimants, the Debtors objected to the filing of supplemental declarations by those Claimants after the March 2 ruling by the Court.[65]  The Debtors asserted that these declarations added new alleged contacts and supporting documents simply in an attempt to fit within the contours of the types of contacts the Court had found were sufficient to make an FPR Claimant a known creditor. While the Court acknowledged the Debtors' concerns, it admitted the supplemental declarations, subject to scrutiny in light of those concerns.[66]

---

[64]   D.I. 413, at *29:4-15.

[65]   D.I. 505, at ¶¶ 1-2 & D.I. 545.  The Debtors objected specifically to the Supplemental Declarations of Marc Bednarcyzk, Daydan Carter, and William West and the Declaration of Wayne Kim, Esquire (counsel to Evan Tanner).  D.I. 504 Ex. 4 Supplemental Declaration of Marc Bednarcyzk, Ex. 7 Supplemental Declaration of William West, Ex. 9 Declaration of Wayne Kim, Esquire, & Ex. 11 Supplemental Declaration of Daydan Carter.

[66]   D.I. 545, at *75:24-25.

2.   <u>Evidence of Individual Contacts</u>

a.   <u>Contacts Regarding Return of Vehicle or Extension of Rental</u>

The Debtors argued that several of the FPR Claimants only presented evidence of contacts regarding the return of a car or extension of a car rental.  The Debtors asserted that disputes about rental returns (like billing disputes) often arise in their business and would not have put the Debtors on notice that the FPR Claimants had a claim that they were falsely arrested.  The FPR Claimants responded that contacts confirming the return of a car or extension of a rental made it reasonably ascertainable to the Debtors that their police report, stating the car was stolen, was false.  The FPR Claimants argue that the Debtors' books and records should have reflected this.

The Court agreed with the Debtors.  The Court found that, where FPR Claimants presented evidence only of contacts with the Debtors regarding a dispute about the return of a vehicle or extension of a car rental, such evidence was not, alone, sufficient to put the Debtors on notice that they had a claim against the Debtors for a false arrest.[67]  The Court concluded

---

[67]   D.I. 354 Ex. V Declaration of Carmen Bosko, at ¶¶ 4-5, 8 (contacts regarding the return of her vehicle and her failed attempts to contact the Debtors' private investigator), Ex. Z Declaration of Melinda Smith, at ¶¶ 7-9, 11 (contacts with the Debtors' rental location regarding repeated extensions of the rental contract), Ex. AA Declaration of Edward Solis, at ¶¶ 8-9 (repeated contacts with the Debtors regarding Lyft paying for his rental car and suspected contacts between Lyft and the Debtors regarding the same), & Ex. BB Declaration of Dr. Tederhi Teddy

that to put the Debtors on notice that the FPR Claimant had a claim for damages based on a false police report, the FPR Claimant had to present some evidence of a contact alleging that a filed police report was false or an arrest was wrongful.[68] Otherwise, there is only evidence of a simple dispute between a customer and the Debtors which is not unusual in retail consumer cases and may never arise to a formal complaint.[69] Thus, the Court concluded that FPR Claimants who only presented evidence of contacts with the Debtors regarding billing or return of a rental car did not present sufficient evidence to make them a known creditor entitled to actual notice.[70] To hold otherwise might have required the Debtors to give actual notice to all of their customers from many years prior to the bankruptcy filing, which is a burden that must be weighed against the costs to the estate and the likelihood that those customers actually have claims against the estate.[71]

---

Usude, at ¶¶ 6-8 (contacts regarding return of rental vehicle).

[68]   D.I. 413, at *52:20-53:23.

[69]   New Century, 450 B.R. at 512-13("The availability of the Whites' names and address in the Debtors' loan files may have reflected that the Whites were known customers, but without more, it did not make them 'known creditors.'") (internal citations omitted).

[70]   D.I. 413, at *52:20-53:23, *70:19-71:1, *71:23-72:9, & *73:6-9.  Those Claimants were Carmen Bosko, Edward Solis, Melinda Smith, and Dr. Tederhi Usude.

[71]   New Century, 465 B.R. at 47 n.10 (recommending that courts also consider effect on other creditors of the cost and delay of providing actual notice to all customers because they <u>might</u> have a claim).

b.    Contacts Accusing the Debtors of False Police
       Reports

The Debtors argued that contacts short of a threat to sue
are legally insufficient to make a FPR Claimant a known creditor.
The FPR Claimants argued that FPR Claimants who contacted the
Debtors disputing the underlying allegations of the police report
or accusing the Debtors of having them falsely arrested had
presented sufficient evidence that the Debtors were aware that
the FPR Claimants had a potential claim for damages arising from
that false police report.

The Court agreed, generally, with the FPR Claimants.  While
a threat of legal action will make one a known creditor, it is
not the only evidence that could make a creditor known to a
debtor: to be a known creditor, all that is needed is that the
debtor had "some specific information that reasonably suggests
both the claim for which the debtor may be liable and the entity
to whom he would be liable."[72]  On this basis, the Court
concluded that several of the FPR Claimants had presented
sufficient evidence of contacts with the Debtors to apprise the
Debtors of the fact that they had a potential claim as a result
of the Debtors' filing of a false police report alleging the FPR
Claimants had stolen their rental car when in fact they had paid

---

[72]    Arch Wireless, 534 F.3d at 81.  See also Chemetron, 72 F.3d
at 346; Weiand, 612 B.R. at 845-51.

21

in full.[73]  These FPR Claimants are listed on Exhibit C attached

---

[73]    The Court's ruling and the evidence presented as to each those FPR Claimants is as follows:

Siobhan Abrams.  D.I. 413, at *76:25-77:2, D.I. 354 Ex. E Declaration of Siobhan Abrams, at ¶¶ 9-14 (attaching an email from her to the Debtors contending that the police report was false and requesting arbitration).  While the Debtors presented evidence suggesting the FPR Claimant had engaged in fraud, that evidence goes to the merits of the claim, not to the issue of whether the Debtors were aware that the FPR Claimant was asserting a claim for false arrest.  D.I. 354 Ex. E, at *23-38.

Jason Cook and Jessica Malone.  D.I. 413, at *83:3, *87:1-2, D.I. 354 Ex. T Declaration of Jason Cook, at ¶¶ 3, 5, 7-8, 11 & Overdue Vehicle Print Report (though Mr. Cook was not the renter, his credit card was used to rent the car, Ms. Malone told the Debtors he had been falsely arrested, and the Debtors' own records reflect calls with him personally) & Ex. D Declaration of Jessica Malone, at ¶¶ 4-8, 14 & Overdue Vehicle Print Report (evidencing a series of contacts regarding the return of the car and Mr. Cook's arrest).

Mary Lindsay Flannery.  D.I. 413, at *78:25-79:1, D.I. 354 Ex. EE Declaration of Mary Lindsay Flannery, at ¶¶ 8, 20, 22 (stating that after being pulled over by the police, she repeatedly called the Debtors and told them that she had not stolen the car and that eventually her mother received evidence from the Debtors showing full payment and the charges were dropped).

Heather Kasdan.  D.I. 413, at *81:3-4, D.I. 354 Ex. GG Declaration of Heather Kasdan, at ¶¶ 4, 9-15, 18-20, Emails, Overdue Vehicle Print Report (stating that she had repeated contacts with the Debtors explaining that she did not steal the rental car but it had instead been in an accident and the Debtors had hired a company to tow it; attaching emails, copies of the Debtors' own records, and information related to the towing company).

Raelena Lewis.  D.I. 413, at *82:15-16, D.I. 354 Ex. HH Declaration of Raelena Lewis, at ¶ 16 (stating that after her release from jail, she called Hertz numerous times to retrieve her belongings from the impounded car) & D.I. 351 Ex. B at *152 (attaching copies of the Debtors' records detailing a call where she alleged that she had been falsely arrested).

Zanders Pace.  D.I. 413, at *83:20, D.I. 354 Ex. F Declaration of Zanders Pace, at ¶¶ 6, 9-10, 13, 15-16, 25, 27-40 (stating that he emailed the Debtors accusing them of making false statements to the police and called the Debtors threatening legal action) & D.I. 351 Ex. B at *153 (attaching a call report produced by the Debtors that mentions a threat to sue).  While

hereto and on the Appendices to the Order accompanying this
Opinion.

        c.   <u>Calls to Debtors' Customer Service Number</u>

    The Debtors argued that two FPR Claimants, whose only
evidence that they advised the Debtors that they were falsely
arrested were in calls to the Debtors' 1-800 customer hotline,
could not be known on that basis.  The Debtors asserted that, as

---

the Debtors presented evidence suggesting that the FPR Claimant
had engaged in fraud, that evidence goes to the merits of the
claim, not to the issue of whether the Debtors were aware that
the FPR Claimant was asserting a claim for false arrest.  D.I.
354 Ex. F, at 34-50.

    Jenelle Reece-Williams.  D.I. 413, at *84:11, D.I. 354 Ex.
II Declaration of Jenelle Reece-Williams, at ¶¶ 22-24 (stating
that she called the Debtors numerous times after being released
from jail and threatened the Debtors with legal action, before
charges were ultimately dropped against her).

    Tonia Rich and Darnay Taper.  D.I. 413, at *85:13-14, 17,
D.I. 354 Ex. U & Ex. JJ Declaration of Darnay Taper and Tonia
Rich, at ¶¶ 6, 18-23 (stating that Ms. Rich spoke to the Debtors
multiple times advising them that Mr. Taper had been arrested as
a result of their false police report, emailed the debtors that
the police report was false, and received a call from the Debtors
advising her that they would contact their legal department about
her complaints).

    Edward Sturkie.  D.I. 413, at *92:15, D.I. 354 Ex. R
Declaration of Edward Sturkie, Jr., at ¶ 15 (stating that, during
his prosecution, he spoke with the Debtors' attorney and advised
him that the police report was false).

    Marc Bednarcyzk.  D.I. 545, at *75:2-20, D.I. 504 Ex. 4
Supplemental Declaration of Marc Bednarcyzk, at ¶¶ 4-13 (evidence
of post-arrest contacts with an independent claims manager for
the Debtors confirming that he had paid in full which resulted in
dismissal of the charges against him).

    Daydan Carter.  D.I. 545, at *75:2-20, D.I. 504 Ex. 11
Supplemental Declaration of Daydan Carter, at ¶¶ 4-7 (after his
arrest, he spoke with an unnamed local employee of the Debtors
and left multiple voice mails at the Debtors' Vehicle Control
department, which produced the theft reports, advising that he
had not stolen the car and had proof he had returned it).

a consumer-facing enterprise that fields myriad calls through their customer hotline, they cannot reasonably ascertain known creditors from the contents of those calls.  The Debtors further contended that their records reflected numerous calls to and from the two FPR Claimants directly and so it would not have been reasonable for them to go beyond those records and review the millions of calls to their 800 number.[74]

        The Court agreed with the Debtors.  Because the Debtors are a national enterprise serving millions of customers, calling the Debtors' 1-800 number meant to deal with a myriad of customer issues is not likely to give the Debtors notice of a significant claim such as a claim for damages for false arrest.  This is particularly true because the Debtors' records reflected that the two FPR Claimants had direct calls from/to the Debtors related to their accounts with no evidence in the Debtors' record that the FPR Claimants had asserted they were falsely arrested.[75] Therefore, the Court concluded that the declarations presented by those FPR Claimants which stated only that they had advised the Debtors of their claims of a false arrest through the Debtors' customer hotline[76] were insufficient evidence that the Debtors knew that they had a false arrest claim.[77]

---

[74]    D.I.  413, at *79:23-80:9.
[75]    D.I. 354 Ex. FF, at *21-23 & Ex. Q, at *19-20.
[76]    Id. at Ex. FF Declaration of Dedrick Jackson, at ¶ 12 & Ex. Q Declaration of Jeffrey Smith, at ¶ 15.
[77]    D.I. 413, at *80:12-15 & *88:1.  Those FPR Claimants are Dedrick Jackson and Jeffrey Smith.

24

d.   <u>Third Party Contacts</u>

Several FPR Claimants alleged that third parties (i.e., police, prosecutors, or various ride-sharing companies) had contacted the Debtors regarding the FPR Claimants.[78]  The Debtors contended that they had no records evidencing any such communications.

The Court weighed the evidence presented and concluded that, where the FPR Claimants did not present sufficient evidence that the third parties had expressly advised the Debtors of their claims of being falsely arrested,[79] the evidence was insufficient to establish that the FPR Claimants were known to the Debtors.[80] Where the FPR Claimants did present sufficient evidence that the Debtors were contacted and advised by third parties of their false arrest claims,[81] however, the Court found them to be known

---

[78]   D.I. 354 Ex. S Declaration of Charles Bort and Kwai Yee Chan, at ¶¶ 3, 7, 21-23, 25, Ex. X Declaration of Reginald Brown, at ¶¶ 8, 10, 17, Ex. CC Declaration of Marissa White, at ¶ 11, & Ex. DD Declaration of Charles Bort and Kwai Yee Chan, at ¶¶ 7, 21-23, 25; D.I. 504 Ex. 9 Declaration of Wayne Kim, Esquire, at ¶¶ 7-9.

[79]   D.I. 354 Ex. O Declaration of Tyresha Caudle, at ¶ 25 (states only that prosecutor <u>may</u> have reached out to Hertz but not that they did) & Ex. P Declaration of Holly Harris, at ¶¶ 4, 20 (did not state that the prosecutor told the Debtors that she alleged she was falsely arrested).  D.I. 504 Ex. 9 Declaration of Wayne Kim, Esquire, at ¶¶ 7-9 (hearsay: Evan Tanner's attorney stated that a police officer told him that the police officer had told the Debtors about the alleged falsity of the police report).

[80]   D.I. 413, at *89:5-7, *91:14-15 & D.I. 545, at *83:16-25. Those FPR Claimants are Tyresha Caudle, Holly Harris, and Evan Tanner.

[81]   D.I. 354 at Ex. S Declaration of Charles Bort and Kwai Yee Chan, at ¶¶ 21-23 & p 24 (stating their attorney contacted paralegal in Debtors' legal department asking that they drop the

creditors.[82]  These FPR Claimants are listed on Exhibit D
attached hereto and on the Appendices to the Order accompanying
this Opinion.

      e.  <u>Employee Present at Trial</u>

Several FPR Claimants asserted that they were known
creditors because an employee of the Debtors was present at their
trials, where the charges were dismissed.[83]  The Debtors argued
that the presence of low-level employees at trials that ended in
dismissal did not put them on notice of a potential claim against
them.

The Court disagreed with the Debtors' contention.  The Court
concluded that the evidence established that the Debtors knew or
reasonably should have known, through their employee, that their
claims that the car had been stolen were adjudicated against them
and, hence, were on notice that the FPR Claimants had a potential

---

charges because they had paid in full and attaching email to that
effect), Ex. X Declaration of Reginald Brown, at ¶¶ 8, 10, 17
(stating that before his arrest he advised the Debtors'
investigator that he had proof that he had returned the car and
that after his arrest the prosecutor contacted the Debtors
regarding his case and his claims), & Ex. CC Declaration of
Marissa White, at ¶ 11 (stating that, at her request upon her
arrest, the police called the Debtors and told them of her
assertion that she was falsely arrested).
[82]    D.I. 413, at *67:14-68:2, *76:9-16, *78:9-13, & *86:12.
Those FPR Claimants are Charles Bort, Kwai Yee Chan, Reginald
Brown, and Marissa White.
[83]    D.I. 354 Ex. W Declaration of Janette Brown, at ¶¶ 18-23 &
Ex. Y Declaration of Larryelle Magee, at ¶¶ 18-22, D.I. 504 Ex. 7
Supplemental Declaration of William West, at ¶¶ 7-9.

claim for false arrest.[84]  These FPR Claimants are listed on
Exhibit E attached hereto and on the Appendices to the Order
accompanying this Opinion.

   B.   Contents of Publication Notice

   The FPR Claimants argued that, even if individual claimants
are unknown, the publication notice in this case was insufficient
because, inter alia,[85] it did not conform with the requirements
of sections 342(c) and (g) of the Bankruptcy Code[86] and Rules
1005 and 2002(n) of the Bankruptcy Rules.[87]  In particular, the

---

[84]   D.I. 413, at *54:6-12, *68:22-24, & *79:8-17.  Those FPR
Claimants are Janette Brown, Larryelle Magee, and William West.
See Arch Wireless, 534 F.3d at 81 (holding a claim is reasonably
ascertainable where a debtor has "some specific information that
reasonably suggests . . . the claim for which the debtor may be
liable").

[85]   The FPR Claimants' other arguments regarding the
insufficiency of the publication notice were not the subject of
the June 22 hearing and are not discussed here.

[86]   Section 342(c) states that "[i]f notice is required to be
given by the debtor to a creditor under this title, any rule, any
applicable law, or any order of the court, such notice shall
contain the name, address, and last 4 digits of the taxpayer
identification number of the debtor."  11 U.S.C § 342(c)(1).
Section 342(g) states that "[n]otice provided to a creditor by
the debtor or the court other than in accordance with [the other
provisions of section 342] shall not be effective notice until
such notice is brought to the attention of such creditor."  11
U.S.C. § 342(g)(1).

[87]   Rule 1005 states that "[t]he caption of a petition
commencing a case under the Code shall contain the name of the
court, the title of the case, and the docket number.  The title
of the case shall include the following information about the
debtor: name, employer identification number, last four digits of
the social-security number or individual debtor's taxpayer-
identification number, any other federal taxpayer-identification
number, and all other names used within eight years before filing
the petition."  Fed. R. Bankr. P. 1005.  Rule 2002(n) states that
"[t]he caption of every notice given under this rule shall comply
with Rule 1005.  The caption of every notice required to be given

FPR Claimants contended that the notice captions were deficient because they lacked the names of all Debtors except The Hertz Corporation.  The FPR Claimants asserted that, in amending section 342 to include the current language of 342(g), Congress made it clear that courts are to apply section 342(c) strictly. They argued, therefore, that even if an individual claimant was unknown to the Debtors, the publication notice provided by the Debtors did not afford them due process.[88]  Consequently, the FPR Claimants asserted that they are entitled to the same relief as known creditors.

The Debtors argued that the caption in the publication notice conforms to the requirements of the Bankruptcy Code and Rules as well as to common practice.  They further contended that the FPR Claimants are collaterally estopped from advancing their current arguments because the FPR Claimants were represented, at the very least, by the official committee of unsecured creditors (the "Creditors' Committee") when the Court approved the form of publication notice.  Finally, the Debtors argued that no individual FPR Claimant was prejudiced by any technical

---

by the debtor to a creditor shall include the information required to be in the notice by § 342(c) of the Code."  Id. at 2002(n).

[88]   Mullane, 339 U.S. at 314; Wright v. Owens Corning, 679 F.3d 101, 109 (3d Cir. 2012) (finding publication notice insufficient under the circumstances, and consequently that unknown creditors "were not afforded due process.  Accordingly their claims were not discharged by the Plan and Confirmation Order, and they retained their cause of action against Owens Corning.").

deficiency in the form of the publication notice because the FPR Claimants all aver that they did not see or read the notice.

The Court agreed with the Debtors and concluded that the content of the publication notice in this case, which content the Court approved, provided unknown creditors with due process.[89] The Court specifically found that the form of publication notice in the instant case complied with section 342 and Rule 1005 by notifying creditors that the names of the Debtors and other required information could be found online at the provided internet address of the Debtors' claims agent where that information was readily available.

The Court declined to find that the FPR Claimants' due process rights were violated because the Debtors failed to list the name of every Debtor on the publication notice caption itself.[90] It is not uncommon in large chapter 11 cases involving multiple related debtors for the cases to be jointly administered under the name of one of the debtors, with all pleadings being filed in the main case. Typically, the names of the other debtors (and the last four digits of their tax identification

---

[89]   D.I. 584, at *30:23-31:3.

[90]   Even if the caption of the Debtors' publication notice did not fully comply with the Bankruptcy Code and Rules, it is at most a technical deficiency and does not rise to the level of a deprivation of the FPR Claimants' due process rights. The case cited by the FPR Claimants was, in the Court's opinion, distinguishable. Cf. Ellett v. Stanislaus, 506 F.3d 774, 781 (9th Cir. 2007) (erroneous social security number in notice caption was a significant violation because it misled the taxing authority as to the debtor's identity).

number) are included in a footnote or by reference to the docket
or the website maintained by the debtors or, as here, their
claims agent.[91]

Moreover, the Court also agreed with the Debtors that the
FPR Claimants were collaterally estopped from raising the
argument.  While the relevant FPR Claimants had not appeared in
the case, their interests were represented at that time by the
Creditors' Committee which had a fiduciary duty to represent the
interests of all unsecured creditors, because bankruptcy cases
involve numerous issues and not all parties are able to protect
their rights on all issues.  The Creditors' Committee did not
object to the form of notice[92] and the Court found that the form
of publication notice was appropriate.[93]  Therefore, the Court
disagreed with the FPR Claimants' argument that the form of
publication notice was defective or that it violated the due
process rights of unknown FPR Claimants.[94]

    C.   <u>Relief Granted to Known Creditors</u>[95]

        1.   <u>Group 3</u>

---

[91]   D.I. 569.

[92]   The Office of the U.S. Trustee, which exists as an
independent guardian of the bankruptcy process, also did not
object to the form of publication notice approved in this case.

[93]   Main D.I. 1240, 4111.

[94]   D.I. 584, at *31:4-19.

[95]   In addition to the FPR Claimants at issue in the March 2 and
June 2 hearings, this relief is also granted to the 12 claimants
listed on Exhibit A attached hereto, for whom the Debtors dropped
their timeliness objection before the March 2 hearing, and the 52
claimants listed on Exhibit B hereto, for whom the Debtors did
not press their timeliness objection after the March 2 hearing.

The Group 3 FPR Claimants sought to have their claims deemed timely filed notwithstanding that they were filed after the Bar Date, so that they may be adjudicated within the bankruptcy process (in this Court or the District Court).[96]  The Debtors did not oppose this relief for known creditors; they only disputed the underlying assertion that certain Group 3 FPR Claimants were known creditors.[97]  The Court agreed that this is the relief due to known Group 3 FPR Claimants.  The Third Circuit granted such relief at the request of a known creditor that had not received actual notice, finding that it had "an absolute right to file and prove its claim in the proceeding, despite the fact that the bar date had passed and the plan was confirmed."[98]  Therefore, the Court found that the known Group 3 FPR Claimants were entitled to the relief they sought, namely, to have their claims deemed timely filed.  They are listed on Appendix A to the accompanying Order.

     2.  <u>Group 4</u>

        a.  <u>Relief Granted</u>

The known Group 4 FPR Claimants sought different relief, namely an order declaring that the discharge and Plan injunction did not bind them and they were free to pursue their claims in

---

[96]    D.I. 190, at ¶ 1.
[97]    D.I. 214, at ¶¶ 50-69.
[98]    <u>In re Harbor Tank Storage Co.</u>, 385 F.2d 111, 114 (3d Cir. 1967).

different forums.[99]  The Debtors argued that the known Group 4
FPR Claimants should be permitted only to file late claims, as
the known Group 3 FPR Claimants were allowed to do.

The Court disagreed with the Debtors' contention.  The
caselaw is clear that "[i]nadequate notice is a defect which
precludes discharge of a claim in bankruptcy."[100]  While known
creditors can be allowed to file a late claim in the bankruptcy
case if that is the relief they choose,[101] they are not limited to
that relief.[102]

---

[99]    D.I. 193 & D.I. 332.

[100]   Chemetron, 72 F.3d at 346.  See Owens Corning, 679 F.3d at
109 (holding that unknown creditors "were not afforded due
process.  Accordingly their claims were not discharged by the
Plan and Confirmation Order, and they retained their cause of
action against Owens Corning."); In re Grossman's Inc., 607 F.3d
114, 126 (3d Cir. 2010) ("Inadequate notice therefore 'precludes
discharge of a claim in bankruptcy.'") (citing Chemetron, 72 F.3d
346); Arch Wireless, 534 F.3d at 87 ("Finding no clear error in
the bankruptcy court's determination that Nationwide was a 'known
creditor' with no more than a general awareness of Arch's
bankruptcy, we hold that the discharge injunction does not apply
to Nationwide's pre-confirmation claim."); Trans World Airlines,
96 F.3d at 690 ("Because [known creditors] were not given actual
notice of the confirmation hearing, their postpetition defamation
claims could not have been discharged in bankruptcy."); In re
CareMatrix Corp., 306 B.R. 478, 486-87 (Bankr. D. Del. 2004)
("[The Debtor] overlooks the exception to the general rule: when
a creditor does not receive adequate notice, the creditor is not
bound by the confirmation order.").  Cf. Elliot v. General Motors
LLC (In re Motors Liquidation Co.), 829 F.3d 135, 165 (2d Cir.
2016) (declining to enforce section 363 sale order against known
creditors who did not get actual notice because "enforcing the
Sale Order would violate procedural due process").

[101]   Harbor Tank Storage, 385 F.2d at 114.

[102]   Reliable Elec. Co., Inc. v. Olson Constr. Co., 726 F.2d 620,
623 (10th Cir. 1984) (rejecting debtor's argument that "the only
remedy available to [known creditor] Olson is to file a late
claim under the confirmed Plan" and holding that "Olson's claim
cannot be bound to the Plan and, thus, it is not dischargeable").

b.   <u>Prejudice</u>

The Debtors also argued that the known Group 4 FPR Claimants must show they suffered prejudice from the lack of actual notice before they can be allowed to pursue their claims in other forums.[103]  The Court did not agree.  The caselaw requires only a finding that the creditor was a known creditor and did not receive actual notice.[104]  Having found that the Group 4 FPR Claimants were known creditors, the Court concluded that the FPR Claimants did not need to prove that they were prejudiced by the lack of actual notice.

Even if such a showing were required, the Court concluded it had been shown.  Because the Debtors did not give them actual notice, the Group 4 FPR Claimants were deprived of the opportunity to participate in the bankruptcy and plan process.[105]  In addition, forcing known Group 4 FPR Claimants to litigate in this Court or the Delaware District Court would deprive them of their choice of forum and potential jury trial rights.  As a result, the Court denied the Debtors' request for discovery on the prejudice the Group 4 FPR Claimants suffered from the lack of actual notice.

---

[103]   D.I. 472.
[104]   <u>Arch Wireless</u>, 534 F.3d at 82-87; <u>Trans World Airlines</u>, 96 F.3d at 690; <u>Olson</u>, 726 F.2d at 623.
[105]   <u>See Motors Liquidation</u>, 829 F.3d at 161-66 (while not holding that prejudice was a necessary element, court concluded that ignition switch plaintiffs were prejudiced by lack of notice because they were unable to participate in plan negotiations about an appropriate process to resolve their claims).

c.  <u>Actual Knowledge of the Bankruptcy</u>

The Debtors also argued that actual knowledge of the
Debtors' bankruptcy case defuses any due process violation
suffered by known Group 4 FPR Claimants because of the Debtors'
failure to provide actual notice.  The Court found the cases
cited by the Debtors[106] were distinguishable and concluded that a
creditor's actual knowledge of the pendency of a bankruptcy case
does not relieve a debtor of its obligation to provide a known
creditor with actual notice of matters in that case that affect
its rights.[107]  As a result, the Court denied the Debtors' request

---

[106]  <u>United Student Aid Funds, Inc. v. Espinosa</u>, 559 U.S. 260,
263-72 (2010) (holding creditor was bound by chapter 13 plan
because it had received actual notice of the plan); <u>In re
Carribean Petro. Corp.</u>, 580 F. App'x 82, 89 (3d Cir. 2014)
(creditor bound by terms of plan because it had actually received
the plan); <u>In re DB Holdings Liquidation, Inc.</u>, 592 B.R. 539, 588
(D. Del. 2018) (concluding that creditor was bound by sale order
because it had received actual notice of the sale motion and had
participated in the sale process).

[107]  <u>City of N.Y. v. N.Y., N.H. & H.R. Co.</u>, 344 U.S. 293, 297
(1953) (holding that absent actual notice to a known creditor,
"the bar order against [the creditor cannot] be sustained because
of the [creditor's] knowledge that the reorganization of the
railroad was taking place in the court."); <u>In re Kendavis Holding
Co.</u>, 249 F.3d 383, 388 (5th Cir. 2001) ("Despite Christopher's
actual knowledge of Kendavis's bankruptcy proceeding, an
unrepresented person in his position should not be expected to
file a claim in the bankruptcy court to protect his rights.");
<u>Fogel v. Zell</u>, 221 F.3d 955, 964 (7th Cir. 2000) (holding that,
while a chapter 7 bar date can perhaps be intuited from the
petition date, a chapter 11 bar date is not predictable from
simple knowledge that the bankruptcy exists); <u>In re Hairopoulos</u>,
118 F.3d 1240 (8th Cir. 1997) (finding that the IRS did not have
a duty to investigate a chapter 13 case where it received no
actual notice of the conversion to chapter 13); <u>Trans World
Airlines</u>, 96 F.3d at 690 (holding that it is "well-settled law
that a known creditor is entitled to formal notice . . . . even
where, as here, the creditor has actual knowledge of the pendency

for discovery on the actual knowledge the known FPR Claimants had about the Debtors' bankruptcy cases.

            d.   <u>Waiver</u>

                i.   <u>Filing Claims</u>

The Debtors argued that the Group 4 FPR Claimants had already subjected themselves to the jurisdiction of the Court by filing proofs of claims and, therefore, they must litigate the merits of their claims in this forum.  The Group 4 FPR Claimants responded that the Group 4 claims were filed only at the Court's explicit instruction, with the understanding that doing so would not prejudice their right to argue that they were not bound by the Plan to litigate their claims in the Bankruptcy Court.

The Court agreed with the Group 4 FPR Claimants.  While, in general, filing a proof of claim subjects a claimant to the Bankruptcy Court's jurisdiction to determine the allowance of that claim,[108] that is not the case here.  The Group 4 FPR Claimants did not file their proofs of claim until after the January 4 hearing at which the Court directed them to do so in order to give the Court the information necessary to determine if those FPR Claimants were known creditors.[109]  The Court did so at

---

of bankruptcy proceedings generally").
[108]   See <u>Langenkamp v. Culp</u>, 498 U.S. 42, 44 (1990) (concluding that by filing a claim a creditor submitted to the bankruptcy court's jurisdiction and waived its right to a jury trial); <u>Travelers Int'l AG. v. Robinson</u>, 982 F.2d 96, 98 (3d Cir. 1992) (same).
[109]   D.I. 251, at *27:22-28:5.

the behest of the Debtors, because it agreed that individualized proofs of claim, with declarations identifying the basis for the claim and the contacts that the Group 4 FPR Claimants had with the Debtors before the Bar Date, would help resolve the Individual Contacts Issue.[110]  In directing the filing of those materials, the Court held that compliance with its request for that information would not prejudice the Group 4 FPR Claimants' rights to argue that their lack of actual notice meant that they were not bound by any orders in the bankruptcy case and were entitled to pursue their claims in other forums.[111]  The Debtors did not object to this condition at the hearing.

### ii.  Filing For Affirmative Relief

The Debtors also argued that the Group 4 FPR Claimants had waived any argument that the Bankruptcy Court has no jurisdiction over them and their claims because they sought affirmative relief in this Court by filing Motions for relief from the Plan injunction and other orders entered by this Court.

The Group 4 FPR Claimants argued that filing their Motions in this Court did not subject them to the Court's jurisdiction for all purposes (and specifically not for any determination of the merits of their claims against the Debtors).  They contended that if they had not filed the Motions and had instead proceeded to liquidate their claims in alternative forums, they would have

---

[110]   Id. at *25:13-26:14.
[111]   Id. at *26:22-28:5.

risked being held in contempt of the Plan confirmation order.

The Court agreed with the Group 4 FPR Claimants. While normally seeking affirmative relief subjects the movant to a court's jurisdiction,[112] seeking relief from an injunction does not. Where a party believes an injunction is not applicable to it on due process or other grounds, the preferred course of action is to petition the enjoining court for relief from that order rather than risk contempt of court.[113] The Group 4 FPR Claimants did precisely that in their Motions for relief from the Plan injunction.[114] By filing those Motions (and engaging in discovery related only to the merits of the Motions – and not the

---

[112] Bel-Ray Co., Inc. v. Chemrite (Pty) Ltd., 181 F.3d 435, 443 (3d Cir. 1999).

[113] GTE Sylvania, Inc. v. Consumers Union of U.S., Inc., 445 U.S. 375, 386-87 (1980) (parties are supposed to "obey the injunctions out of 'respect for judicial process'") (internal citations omitted); In re Johnson, 548 B.R. 770, 798-99 (Bankr. S.D. Ohio 2016) (finding against a creditor that violated the stay and observing that "'it is safer to ask permission than forgiveness'") (quoting In re Durango Georgia Paper Co., 297 B.R. 316, 321 (Bankr. S.D. Ga. 2003)); In re Steward, 338 B.R. 654, 662 (Bankr. D.N.J. 2006) (awarding damages, costs, and fees to debtors related to enforcing the stay and stating "any uncertainty as to the automatic stay should have lead [sic] the firm to bankruptcy court for a ruling"); In re Johns-Manville Corp., 26 B.R. 919, 922 (Bankr. S.D.N.Y. 1983) (holding creditor and her lawyers in contempt for violation of the automatic stay and observing that "the proper mode of raising the issue of an alleged defect in an injunctive order is not as a defense to a contempt proceeding, but as an application to the court which issued the injunction for a construction of its terms or to modify or dissolve it").

[114] It was only in the alternative, if the Bankruptcy Court determined that they were bound by the Plan injunction, that the FPR Claimants sought permission to file late claims. D.I. 193, at ¶ 3 & D.I. 332, at ¶ 99.

merits of their claims), the Group 4 FPR Claimants did not
subject themselves to the jurisdiction of this Court for purposes
of adjudicating the merits of their claims.  To hold otherwise
would effectively preclude a party from arguing that it is not
bound by a court's injunction order (or subject it to a finding
of contempt of court by proceeding in another forum).

Therefore, the Court, having overruled the Debtors'
objections, held that the known Group 4 FPR Claimants were
entitled to the relief they, namely, to have relief from the Plan
injunction.  They are listed on Appendix B to the accompanying
Order.


IV.  <u>CONCLUSION</u>

For the foregoing reasons the Court will enter an order
granting the Motion of the Group 3 FPR Claimants with respect to
FPR Claimants whom the Court determined were known creditors and
deeming their claims timely filed.  The Court will also grant the
Motions of the Group 4 FPR Claimants with respect to FPR
Claimants whom the Court determined were known creditors and
grant them relief from the Plan injunction to pursue their claims
in other forums.  Finally, the Court will deny the Motion of the
Reorganized Debtor to take discovery of any known FPR Claimant
regarding whether it had any actual knowledge of the Debtors'
bankruptcy case or suffered any prejudice by not receiving actual

notice of orders entered in the case that affected their rights.

An appropriate Order is attached.


Dated: July 14, 2022          BY THE COURT:

Mary F. Walrath
United States Bankruptcy Judge

## EXHIBIT A[1]

1. Nirbhay Agarwal (Claim No. 15763) (B)
2. Jessica Andolino (Claim No. 15755) (B)
3. Krystal Carter (Claim No. 15759) (B)
4. Sean Hurt (Claim No. 15706) (A)
5. Christian Mangano (Claim No. 15949) (B)
6. Kellan McClellan (Claim No. 15915) (B)
7. ReJeana Meado (Claim No. 15754) (B)
8. Paula Murray (Claim No. 15,652) (A)
9. Saurabh Rathi (Claim No. 15740) (B)
10. Steven Robinson Valdes (Claim No. 15760) (B)
11. Andrew Seaser (Claim No. 15953) (B)
12. James Tolen (Claim No. 15761) (B)

---

[1]     In these Exhibits, FPR Claimants appearing on Appendix A
(Group 3 FPR Claimants) of the accompanying Order will have "(A)"
after their name.  Those appearing on Appendix B (Group 4 FPR
Claimants) will have "(B)" after their name.

**EXHIBIT B**

1.   Patrick Andrews (Claim No. 15837) (B)
2.   Cody Breedlove (Claim No. 15888) (B)
3.   Lisa Brower (Claim No. 15909) (B)
4.   Jason Don Campbell (Claim No. 15934) (B)
5.   Abraham Carmichael (Claim No. 15940) (B)
6.   Faristina Collins (Claim No. 15801) (B)
7.   Adam Cuevas (Claim No. 15931) (B)
8.   Angela Delafontaine (Claim No. 15857) (B)
9.   Angela Delafontaine (for minor child G.M.) (Claim No. 15853)
     (B)
10.  Bianca Deloach (Claim No. 15764) (B)
11.  Bianca Deloach (for minor child A.P.) (Claim No. 15765) (B)
12.  Bianca Deloach (for minor child C.P.) (Claim No. 15766) (B)
13.  Lakeshia Dowlen (Claim No. 15933) (B)
14.  Iasia Eaves (Claim No. 15802) (B)
15.  Howard English (Claim No. 15941) (B)
16.  Melanie Evans (Claim No. 15926) (B)
17.  Melanie Evans (for minor child N.E.) (Claim No. 15929) (B)
18.  Melanie Evans (for minor child N.E.) (Claim No. 15930) (B)
19.  Daniel Morales Hernandez (Claim No. 15889) (B)
20.  Antwanette Hill (Claim No. 15923) (B)
21.  Raynard Hill (Claim No. 15922) (B)
22.  Celita James (Claim No. 15918) (B)
23.  Aniyah Johnson (Claim No. 15860) (B)
24.  Jason Kearny (Claim No. 15894) (B)
25.  Casey Krupjuweit (Claim No. 15914) (B)
26.  Saleema Lovelace (Claim No. 15873) (B)
27.  Anne Maha (Claim No. 15867) (B)
28.  Anne Maha (for minor child A.J.) (Claim No. 15862) (B)
29.  Anne Maha (for minor child A.J.) (Claim No. 15861) (B)
30.  Charles Malone (Claim No. 15798) (B)
31.  Jose Montiero (Claim No. 15863) (B)
32.  Sophia Ortiz (Claim No. 15875) (B)
33.  Amber Rather (Claim No. 15835) (B)
34.  Jason Reeder (Claim No. 15882) (B)
35.  Franklin Richards (Claim No. 15919) (B)
36.  Kevin Richardson (Claim No. 15913) (B)
37.  Kevin Richardson, Jr. (Claim No. 15908) (B)
38.  Sierra Ryan (Claim No. 15836) (B)
39.  Dan Shurtz (Claim No. 15902) (B)
40.  Ameerah Singleton (Claim No. 15794) (B)
41.  Samantha Simpson (Claim No. 15839) (B)
42.  Latricia Taylor (Claim No. 15874) (B)
43.  Amir Thomas (Claim No. 15917) (B)
44.  Jamol Toney (Claim No. 15891) (B)
45.  Connie Totman (Claim No. 15893) (B)
46.  Nkem Uwagboi (Claim No. 15899) (B)

47.  Jennifer Weems (Claim No. 15808) (B)
48.  Tiffany West (Claim No. 15905) (B)
49.  Anson Westerfield (Claim No. 15795) (B)
50.  Monique Wheeler (Claim No. 15898) (B)
51.  Jeric Wilson (Claim No. 15903) (B)
52.  Duni Zenaye (Claim No. 15799) (B)

**EXHIBIT C**

1.  Siobhan Abrams (Claim No. 15950) (A)
2.  Marc Bednarczyk (Claim No. 15921) (B)
3.  Daydan Carter (Claim No. 15935) (B)
4.  Jason Cook (Claim No. 15657) (A)
5.  Mary Lindsay Flannery (Claim No. 15736) (B)
6.  Heather Kasdan (Claim No. 15945) (A)
7.  Raelena Lewis (Claim No. 15663) (A)
8.  Jessica Malone (Claim No. 15649) (A)
9.  Zanders Pace (Claim No. 15662) (A)
10. Jenelle Reece-Williams (Claim No. 15746) (B)
11. Tonia Rich (Claim No. 15742) (B)
12. Edward Sturkie Jr. (Claim No. 15946) (B)
13. Darnay Taper (Claim No. 15749) (B)

**EXHIBIT D**

1.    Charles Bort (Claim No. 15948) (A)
2.    Reginald Brown (Claim No. 15739) (B)
3.    Kwai Yee Chan (Claim No. 15666) (A)
4.    Marissa White (Claim No. 15650) (A)

**EXHIBIT E**

1.    Janette Brown (Claim No. 15705) (A)
2.    Larryelle Magee (Claim No. 15737) (B)
3.    William West (Claim No. 15847) (B)