**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| Rental Car Intermediate Holdings, LLC,[1] | Case No. 20-11247 (MFW) |
| Reorganized Debtor. | |

**JOINT PROPOSED PRETRIAL ORDER**

## I.   STATEMENT OF THE NATURE OF THE ACTION

Hertz objects to five proofs of claims filed by ACI,[2] a collection of five entities that contracted with Hertz to provide vehicle body damage repair work for six Hertz locations — four airports (Miami, West Palm Beach/Fort Lauderdale, and Orlando) and two Hertz service locations (Port Newark, New Jersey, and Sterling, Virginia). ACI alleges that Hertz breached its contracts with ACI by vending certain damage repairs to other companies. ACI claims it was entitled to all damage repairs written at Port Newark and Sterling, and certain fixed percentages of body repairs written at the above-referenced Florida locations. ACI seeks the lost profits it alleges that it would have made had Hertz sent it all vehicles that it contends the ACI-Hertz contracts required.

Hertz's objection to ACI's proofs of claim rests primarily on six arguments. [D.I. 1401.] Specifically, that: (1) portions of ACI's claims (and associated alleged damages) are barred by

---

[1] The last four digits of the tax identification number of Reorganized Debtor Rental Car Intermediate Holdings, LLC ("RCIH") are 2459. The location of RCIH's service address is 8501 Williams Road, Estero, FL 33928. On September 28, 2021, the Court entered a final decree closing each of the chapter 11 cases for The Hertz Corporation ("Hertz") and its affiliated reorganized debtors other than RCIH's chapter 11 case. Commencing on September 28, 2021, all motions, notices, and other pleadings relating to any of the Reorganized Debtors shall be filed in RCIH's chapter 11 case, Case No. 20-11247 (MFW). "D.I." references are to the docket in Case No. 20-11247.

[2] "ACI" means, collectively, 900 Atlantic Collision, Inc., 950 Atlantic Collision, Inc., 1050 Atlantic Collision, Inc., 1100 Atlantic Collision, Inc., and Virginia Collision Corp.

New York's six-year statute of limitations for breach of contract claims; (2) ACI may not seek lost profits; (3) ACI is not entitled to pre-judgment interest; 4) ACI lacked the ability and/or capacity to timely repair the volume of vehicles at each of the relevant locations for which it seeks lost profits; (5) ACI waived Hertz's breaches of contract; and (6) ACI has not proven its damages. ACI responded to each of these arguments in its response to Hertz's claim objection. [D.I. 1416.]

After submitting the above-cited competing claim objection pleadings [D.I. 1401, 1416] and agreeing to a scheduling stipulation entered by this Court [D.I. 1400-1], the parties engaged in robust written and oral fact discovery. After fact discovery, ACI issued an expert report asserting its actual damages to be $13,652,883, plus prejudgment interest. Hertz thereafter issued an expert rebuttal report. On August 7, 2024, ACI filed its "Motion to Bar Use of Documents Not Produced in Discovery and to Strike Hertz's 'Rebuttal' Expert Report Relying on Them" ("Motion to Strike") [D.I. 1520], which this Court granted on September 25, 2024 [D.I. 1565].

## II.   BASIS OF FEDERAL JURISDICTION

The parties do not dispute jurisdiction or venue. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 157 and 1334. Venue of this proceeding is proper under 28 U.S.C. § 1409. This action is a core proceeding within the meaning of 28 U.S.C. § 157(b). The parties have consented to this Court rendering final orders and judgments in this proceeding.

## III.   FEDERAL RULE OF BANKRUPTCY PROCEDURE 7016(b) MATTERS

Pursuant to L. R. 7016-1(f), the Parties consent to entry of final orders or judgment by this Court with respect to the Claim Objection.

## IV.   STATEMENT OF FACTS NOT IN DISPUTE

1.      Hertz is a global rental car company with its headquarters in Estero, Florida.

2.      As rental cars are sometimes returned with body damage, Hertz works with outside vendors to repair body-damaged vehicles so that they can be returned to its operational fleet.

3.      ACI owned and operated several vehicle repair shops, including the repair shops at issue here. ACI's owner and sole principal is Marc Capus.

4.      At different times throughout 2009–2017, ACI contracted with Hertz to operate vehicle body repair shops at or near Hertz locations — four airports (Miami, West Palm Beach/Fort Lauderdale, and Orlando) and two Hertz service locations (Port Newark, New Jersey, and Sterling, Virginia) (the "ACI-Hertz Locations").

5.      ACI and Hertz signed individual commercial lease and service contracts for the Port Newark, New Jersey, and Sterling, Virginia, locations (the "Port Newark Contract" and "Sterling Contract"). In the Port Newark Contract and Sterling Contract, ACI agreed to lease Hertz's property on-site, and Hertz agreed to refer to ACI "all body work repairs for vehicles prepared by [Hertz] at Pork Newark facility," with Hertz reserving the right to send repairs to other vendors if ACI "is unable to perform the work in a timely manner, including but not limited to lacking the proper equipment or excessive volume of repairs."

6.      ACI and Hertz signed one contract as to the Florida locations, starting with Miami, which was later amended on three separate occasions, including to add the West Palm Beach/Fort Lauderdale and Orlando locations (the "Florida Contract").[3] In the Florida Contract, Hertz agreed to vend a percentage its "vehicle body work" (between 50%-70%) from those locations to ACI.

---

[3] The parties refer to the Port Newark Contract, the Sterling Contract, and the Florida Contract as the "ACI-Hertz Contracts."

**Hertz Systems and Repair Process**

7. Hertz primarily utilized two systems for tracking both the repair process and the location of a vehicle that was out for repair.

8. Hertz used its Vehicle Admin Web ("VAW") system to track the number of days that a vehicle was out of service.

9. Hertz used its "Mitchell" estimating system to store Vehicle Damage Appraisals ("VDAs").

10. Hertz's body damage appraisers were responsible for writing estimates in Mitchell.

11. Body damage appraisers were responsible for ordering parts.

12. Once a vehicle repair was complete, a body damage appraiser would mark it as complete in the Mitchell system.

**Port Newark, New Jersey—900 ACI**

13. On November 16, 2009, 900 Atlantic Collision, Inc. ("900 ACI") and Hertz entered the Port Newark Contract under which 900 ACI would lease shop space at Hertz's Port Newark, New Jersey, location.

14. Under the Port Newark Contract, Hertz agreed to refer to 900 ACI "all body work repairs for vehicles prepared by [Hertz] at Port Newark facility" and to "refer all of its vehicle body work for the Port Newark service area to [ACI]." The Port Newark Contract also provides that "[i]f ACI is unable to perform the work in a timely manner, including but not limited to lacking the proper equipment or excessive volume of repairs, [Hertz] reserves the right to refer the repair to other body shops."

15. The Port Newark Contract did not allow 900 ACI to repair non-Hertz vehicles.

16. The Port Newark Contract did not limit the hours or days 900 ACI could operate.

4

17. Hertz reserved the right to terminate the Port Newark Contract with six months prior written notice.

18. The Port Newark Contract provided an initial term of five (5) years, beginning on the Commencement Date of April 1, 2010, with two options to extend another five years upon written notice to Hertz.

19. On November 20, 2012, following Hertz's acquisition of Dollar Thrifty Automotive Group ("DTAG"), 900 ACI and Hertz amended the Port Newark Contract to add DTAG vehicles to the vehicles Hertz agreed to refer to 900 ACI under the Port Newark Contract.

20. On August 31, 2014, 900 ACI and Hertz extended the Port Newark Contract for an additional five years to March 31, 2020.

21. In or around January or February 2015, 900 ACI moved out of the shop space it had leased at Hertz's Port Newark, New Jersey, location.

**Sterling, Virginia—VCC**

22. On October 18, 2010, Virginia Collision Corporation ("VCC") and Hertz entered the Sterling Contract under which VCC would lease shop space at Hertz's Sterling, Virginia, location.

23. Under the Sterling Contract, Hertz agreed to refer to VCC "all body work repairs for vehicles prepared by [Hertz] at [its Sterling Virginia, location]" and to "refer all of its vehicle body work generated at the [Sterling, Virginia location]." The Sterling Contract also provides that "[i]f [VCC] is unable to perform the work in a timely manner, whether due to the lack of the proper equipment or excessive volume of repairs or otherwise, [Hertz] reserves the right to refer the repair to other automotive body repair shops."

24.     The Sterling Contract also provided VCC a right of first refusal for "vehicles requiring automotive body repair work from [Hertz's] facility at Baltimore Washington Airport." However, "[VCC], at [VCC]'s expense w[as] . . . responsible for the cost of transporting up to twenty-five (25) vehicles per week."

25.     The Sterling Contract did not allow VCC to repair non-Hertz vehicles.

26.     The Sterling Contract did not limit the hours or days that VCC could operate.

27.     Hertz reserved the right to terminate the Sterling Contract with six (6) months of prior written notice.

28.     The Sterling Contract provided an initial term of five (5) years, with two five-year extension options that required written notice to Hertz "which shall be received by [Hertz] at least six [6] months before the expiration of the prior term . . . ."

29.     On September 1, 2011, VCC and Hertz amended the Sterling Contract to increase the size of the space that VCC leased and set a commencement date of the lease for September 1, 2011.

30.     On June 1, 2012, VCC and Hertz amended the Sterling Contract to extend the initial term of the contract to May 31, 2017 and to reduce VCC's rent for the first nineteen (19) months of the lease (through May 31, 2013) from $5,203 per month to $2,000 per month.

31.     On November 20, 2012, VCC and Hertz amended the Sterling Contract to add DTAG vehicles to the vehicles Hertz agreed to refer to VCC under the Sterling Contract.

**Florida—950 ACI, 1050 ACI, and 1100 ACI**

32.     On May 3, 2011, 950 ACI and Hertz entered into the Florida Contract, under which Hertz agreed to refer 75% of its vehicle body repair work to 950 ACI from its Miami, Florida, locations ("Florida Contract"). The Florida Contract states that "upon quarterly review, [950 ACI]

will provide Hertz with repair turn around times either equal to or better than the average of the Southeast Region. [950 ACI] will outperform the current average of 8 days per repair. Any vehicle which is held up as a result of verifiable parts issues for more than 10 days will be backed out of the average. Down time will be calculated from VDA date to return date." ACI was also "responsible for pick up and delivery of the vehicles."

33.    On July 8, 2011, 950 ACI and Hertz amended the Florida Contract to reflect that Hertz agreed to refer 50% of its vehicle body repair work to 950 ACI from its "Miami, Florida locations."

34.    Under the Florida Contract, unlike the Port Newark Contract and the Sterling Contract, 950 ACI did not lease property from Hertz to operate an on-site shop but rather agreed to "open an Auto Body repair shop as close as possible to Miami International Airport."

35.    Hertz and ACI agreed that "[e]ither party ha[d] the right to cancel th[e] agreement with (6) months written notice."

36.    On September 30, 2012, ACI and Hertz further amended the Florida Contract to provide that Hertz would assign 60% "of total work of Hertz automobiles vended from its Miami, Ft. Lauderdale, and West Palm Beach locations" to 950 ACI. This amendment to the Florida Contract also required 950 ACI to "open a second location in Ft. Lauderdale suitable for performing work assigned by Hertz" and to set up a new Florida corporation to conduct business from the new location, which it did by creating 1050 Atlantic Collision, Inc. ("1050 ACI").

37.    1050 ACI entered a lease for a Ft. Lauderdale location on December 7, 2012.

38.    The amendment to the Florida Contract further provided that either party's right to terminate the Florida Contract upon six months' notice would not become effective until one year from the date the amendment was signed — October 1, 2012.

39.     On November 20, 2012, the Florida Contract was again amended to add DTAG vehicles to the vehicles for which Hertz agreed to refer a percentage of body-damaged vehicles to ACI entities under the Florida Contract.

40.     On September 5, 2013, ACI and Hertz again amended the Florida Contract to provide that Hertz would vend to an ACI entity "70% of all body shop vended work for the Orlando, Florida location."

41.     As part of the September 5, 2013 amendment, 950 ACI agreed to "provide a suitable offsite location to perform the body shop vended work for the Orlando, Florida location," and ACI had the right to create a new entity to conduct body shop work in Orlando. Capus formed 1100 Atlantic Collision, Inc. ("1100 ACI") to operate the Orlando ACI location for Hertz.

42.     The September 5, 2013 amendment to the Florida Contract also provided that the term of the Florida Contract was further extended to now run for five years from the date a lease commenced for operation of the Orlando location. All other terms of the Florida Contract were to remain in full force and effect.

43.     Hertz terminated the Florida Contract in April 2015.

## V.     STATEMENT OF ISSUES OF DISPUTED FACT

The parties refer the Court to their pre-hearing briefs.

## VI.     STATEMENT OF THE ISSUES OF LAW REMAINING IN DISPUTE

As set forth in their competing claim objection pleadings [D.I. 1401, 1416], three primary issues of law are in dispute: (1) whether portions of ACI's claims (and associated alleged damages) are barred by New York's six-year statute of limitations for breach of contract claims; (2) whether New York law permits ACI to seek lost profits; and (3) whether ACI is entitled to prejudgment interest and, if so, whether the appropriate interest rate is the federal judgment rate or the rate under

New York law. Additionally, whether ACI waived its breach of contract claims is a disputed issue of law and fact. There may also be other issues of law as implicated by the issues of disputed fact detailed in the parties' pre-hearing briefs. These blended issues of law and fact are fully detailed in the parties' pre-hearing briefs and, to the extent additional issues of law are implicated by the facts at hearing, the parties will provide further briefing to assist the Court in its analysis.

The parties have set forth the law upon which they rely for each of the above issues of law in their claim objection pleadings and, to the extent the parties wish to supplement those pleadings, in their pre-hearing briefs. Authority relating to application of New York's six-year statute of limitations for breach of contract claims is set forth at paragraph 67 of Hertz claim objection [D.I. 1401] and at paragraphs 52–54 of ACI's response to Hertz's claim objection [D.I. 1416]. Authority relating to ACI's ability to seek lost profits is set forth at paragraphs 57–63 of Hertz's claim objection [D.I. 1401] and at paragraphs 26–31 of ACI's response to Hertz's claim objection [D.I. 1416]. Authority relating to prejudgment interest is set forth at page 26 (subsection III.C) of Hertz's claim objection [D.I. 1401] and at paragraphs 32–35 of ACI's response to Hertz's claim objection [D.I. 1416].

## VII.    EXHIBIT LIST AND DESIGNATIONS

The Parties' Joint List of Exhibits, including designations for which party is offering the exhibit, which exhibits may be admitted without objection, and the exhibits to which there is an objection, is attached as **Exhibit 1**.[4] The Parties reserve the right to use any document for impeachment or rebuttal. The Parties' Joint Deposition Designations, including designations for

---

[4] The Parties have marked those exhibits to which there is no objection as JX 1–103. The Parties agree that these exhibits may be admitted without objection.

which testimony is being offered by each party, which testimony may be admitted without objection, and the testimony to which there is an objection, is attached as **Exhibit 2**.[5]

The Parties will also submit virtual binders of exhibits and deposition transcripts corresponding to Exhibits 1–2.

## VIII.    WITNESS LIST

A. ACI's Live Witnesses

   a. Marc Capus

   b. William Metzdorff

      i. ACI will offer Mr. Metzdorff as an expert in financial, accounting, and economic analyses.

B. ACI further designates deposition testimony of Jeffrey Pitz, John Dolobach, John Dilanian, and Louis Scarpelli as noted in its deposition designations provided to the Court.

C. Hertz's Live Witnesses

   a. Zachary Mitchell

   b. Christopher Meza

   c. Joseph (John) Dilanian[6]

   d. Jack Schwager

      i. Hertz will offer Mr. Schwager as a rebuttal expert.

D. Hertz further designates deposition testimony for Louis Scarpelli, Jeffrey Pitz, and John Dolobach, as noted in its deposition designations provided to the Court.

## IX.    STATEMENT OF WHAT CLAIMANT INTENDS TO PROVE

ACI refers the Court to its pre-hearing brief.

---

[5] The Parties are also attaching highlighted copies of the deposition designation transcripts to assist the Court's review. ACI's designations are in blue highlight, and Hertz's designations are in yellow highlight.

[6] Hertz expects that Mr. Dilanian will appear at trial but the Parties are submitting deposition designations in the event he does not testify live.

**X.    STATEMENT OF WHAT DEBTOR INTENDS TO PROVE**

Hertz refers the Court to its pre-hearing brief.

**XI.    STATEMENTS BY COUNTER- OR CROSS-CLAIMANTS**

Not applicable.

**XII.    AMENDMENTS TO THE PLEADINGS**

None.

**XIII.    CERTIFICATION OF SETTLEMENT EFFORTS**

The parties certify that they have engaged in a good faith attempts to resolve their dispute, which have proven unsuccessful.

**XIV.    OTHER MATTERS**

Because the Parties have filed pre-hearing briefs and trial is only three days, the Parties will not present opening arguments.

The Parties agree that witnesses may be called in any order, all scope objections will be waived, and witnesses shall testify on direct examination before cross examination.

The Parties agree to forgo closing statements and will submit simultaneous post-trial briefs 35 days after the receipt of the final hearing transcript, followed by simultaneous rebuttals 21 days thereafter.

**THIS ORDER SHALL CONTROL THE SUBSEQUENT COURSE OF THE ACTION UNLESS MODIFIED BY THE COURT TO PREVENT MANIFEST INJUSTICE.**

Dated: October 15, 2024

/s/ Jordan L. Williams
**BLANK ROME LLP**
Jordan L. Williams (DE No. 7128)
1201 N. Market Street, Suite 800
Wilmington, Delaware 19801
Telephone: (302) 425-6400

/s/ Robert J. Stearn, Jr.
**RICHARDS, LAYTON & FINGER, P.A.**
Mark D. Collins (No. 2981)
Robert J. Stearn, Jr. (No. 2915)
John H. Knight (No. 3848)
Cory D. Kandestin (No. 5025)

11

E-mail: Jordan.williams@blankrome.com

    - and –

John E. Lucian, Esq. (*pro hac vice*)
Rick Antonoff, Esq. (*pro hac vice*)
**BLANK ROME LLP**
One Logan Square
130 North 18th Street
Philadelphia, PA 19103
Telephone: (215) 569-5500
Facsimile: (215) 569-5555
john.lucian@blankrome.com
rick.antonoff@blankrome.com

-and-

Christopher E. Kentra, Esq. (*pro hac vice*)
Joshua J. Cauhorn, Esq. (*pro hac vice*)
**BURKE,   WARREN,   MACKAY   & SERRITELLA, P.C.**
330 North Wabash Avenue, Suite 2100
Chicago, IL 60611-3607
(312) 840-7000
ckentra@burkelaw.com
jcauhorn@burkelaw.com

*Counsel to 900 Atlantic Collision, Inc., 950 Atlantic Collision, Inc., 1050 Atlantic Collision, Inc., 1100 Atlantic Collision, Inc., and Virginia Collision Corp*

Emily R. Mathews (No. 6866)
One Rodney Square
920 N. King Street
Wilmington, DE 19801
Telephone:    (302) 651-7700
Facsimile:    (302) 651-7701
Collins@rlf.com
Stearn@rlf.com
Knight@rlf.com
Kandestin@rlf.com
Mathews@rlf.com

—and—

**WHITE & CASE LLP**
J. Christopher Shore (admitted *pro hac vice*)
David M. Turetsky (admitted *pro hac vice*)
Samuel P. Hershey (admitted *pro hac vice*)
1221 Avenue of the Americas
New York, NY 10020
Telephone:    (212) 819-8200
cshore@whitecase.com
david.turetsky@whitecase.com
sam.hershey@whitecase.com

**WINSTON & STRAWN LLP**
William C. O'Neil
Gretchen V. Scavo
Tyler Richards
35 W. Wacker Drive
Chicago, IL 60604
(312) 558-5600

*Counsel to the Reorganized Debtor*

12